ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS, SBN 321994
CARSON R. NIELLO, SBN 329970
HANSON BRIDGETT LLP
  1676 N. California Boulevard, Suite 620
  Walnut Creek, CA 94596
  Telephone: (925) 746-8460
  Fax: (925) 746-8490
  E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF ERICK RIZZOTTO, M.D. IN SUPPORT OF DEFENDANTS' POSITION STATEMENT IN THE PARTIES' JOINT REPORT IN RESPONSE TO AUGUST 11, 2023 ORDER ON INPATIENT TRANSFER TIMELINES (ECF NO. 7916)** |

1

19376383.4

## DECLARATION OF ERICK RIZZOTTO, M.D.

I, Erick Rizzotto, M.D., declare as follows:

1.      I am currently employed as the Assistant Deputy Director, Psychiatry and Complex Mental Health, of the California Department of Corrections and Rehabilitation's (CDCR) Statewide Mental Health Services Delivery System (MHSDS). I have held this position since February 01, 2023.  I have been employed by CDCR since July 31, 2014.  I worked as a Staff Psychiatrist at San Quentin State Prison (SQSP) in 2014 and 2015.  From 2015 through 2022, I held the position of Senior Psychiatrist also at SQSP.  From 2022 through January 31, 2023, I was the Chief Psychiatrist at SQSP.  I make this declaration in response to the Court's August 11, 2023 order (ECF No. 7916), and in support of Defendants' position statement in the Parties' Joint Report in Response to August 11 Order on Inpatient Transfer Timelines filed on September 26, 2023.  I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

**CDCR's Inpatient Referral and Admission Policy**

2.      In my capacity as Assistant Deputy Director, I oversee CDCR's Inpatient Referral Unit (IRU).  Since 2017, IRU has worked with CDCR's Healthcare Placement Oversight Program (HCPOP) internally and with the Department of State Hospitals (DSH) and its Patient Management Unit (PMU) to maintain sustained compliance with Program Guide transfer timelines.  HCPOP is staffed by an experienced team that includes a Correctional Administrator, a Captain, and a Correctional Counselor, who review each patient's custody factors to determine his least restrictive housing designation (LRH) and endorsement location.  IRU is staffed by a dedicated team including the IRU Chief Psychologist, seven Senior Psychologist Specialists, and one Senior Psychiatrist, Specialist who conduct a clinical review of each patient referred to an inpatient bed and make a clinical housing recommendation based on the patient's presenting problems.  HCPOP and IRU follow processes under the current inpatient referral policies and maintain oversight of admission timeliness to inpatient care.

3.      The current processes for the referral and admission of patients to inpatient mental health programs are set forth in the policies that were developed, negotiated, and adopted as part

19376383.4

of the 2017 CDCR-DSH Memorandum of Understanding and as part of the policies that were implemented in 2017 when CDCR assumed responsibility from DSH for the Psychiatric Impatient Programs (PIP) in the institutions.  Attached as Exhibit A are copies of  CDCR's current referral policy, 12.11.2101(A), Treatment Planning and Procedures: Referral and Admission Policy and Procedure and the addendum to the policy that sets forth the exceptions to the inpatient transfer timelines.  Attached as Exhibit B is a copy of DSH Policy Directive 3601 that sets forth the joint policy for referrals to DSH.  Attached as Exhibit C are copies of flow charts that show the current process IRU follows for referrals to ICF and APP levels of care. Under these referral and admission policies, CDCR maintained longstanding compliance with the Program Guide transfer timeframes to admit Acute Psychiatric Program (APP) patients within ten days of referral and to admit Intermediate Facility Program (ICF) patients within 30 days of referral.

4. The collaboration and communication between IRU and HCPOP throughout the referral process ensures that any known obstacles to a patient's timely referral and admission to an inpatient program are addressed and remedied.  IRU communicates daily with HCPOP to review statewide bed availability at the APP and ICF levels of care and any pending referrals to those programs.  IRU also communicates daily with the PIPs to ensure that the review of referrals is completed promptly, that requests from DSH for additional information on referrals are addressed, and that any rejections from DSH are resolved to ensure the prompt placement of patients in the appropriate beds.

5. IRU is in daily contact with referring institutions to ensure that referrals move through the various phases of the referral process timely, including confirmation of transportation arrangements and admissions.  CDCR's monthly inpatient reports indicate the timelines for all referrals, including the number of days between the date of a referral and the date of the patient's admission and any explanation for patients who were admitted to an inpatient program outside of the Program Guide requirements.

DECL. OF ERICK RIZZOTTO, M.D. ISO DEFS' POSITION
IN THE PARTIES' JOINT REPORT (2:90-cv-00520 KJM-DB (PC))

19376383.4

6.      Based on the past and current sustained periods of compliance, CDCR has a high level of confidence that the current inpatient referral process will continue to result in sustained compliance with the Program Guide transfer timeline requirements.

**CDCR's Flex Bed Policy**

7.      CDCR implemented a Flex Bed Policy on March 4, 2023, that allows IRU and HCPOP to flex inpatient beds at five designated institutions to meet statewide bed needs.  A copy of the policy is attached as Exhibit D.  A Flex Bed can be used to provide any level of inpatient care, Mental Health Crisis Beds (MHCB), APP, and ICF, in response to increases in statewide bed demand.  The Flex Bed Policy allows IRU and HCPOP to monitor any change in the number of referrals for a particular level of care in real-time and to identify whether a bed flex may be needed to provide additional beds at the needed level of care.  This policy makes it possible to change a patient's level of care without the need to move the patient to a new bed.  The following shows the locations and levels of care that can flex in response to statewide need:

**Programs that may flex between MHCB, APP, and ICF**:  California Health Care Facility (CHCF) MHCB – 98 beds; CMF A/B Wing – 32 beds; California Men's Colony (CMC) MHCB – 10 beds; and SQSP Psychiatric Inpatient Program (PIP) – 40 beds.

**Programs that may flex between APP and ICF**: all APP beds at CHCF – 214 beds; all APP beds at CMF – 218 beds; and all of the ICF beds at California Institution for Women (CIW) – 45 beds.

8.      CDCR is confident that the Flex Bed Policy will help it maintain compliance with the inpatient transfer timeline requirements.  This confidence level is based on the past ability the policy has shown to enable CDCR to adapt to a fluctuating pattern of inpatient bed demand.  In 2012, CDCR opened a PIP at CIW.   The CIW PIP has always had the flexibility to use beds based on patient needs for APP or ICF.  In 2014 CDCR opened a PIP at SQSP that has always been able to flex between APP, ICF, and MHCB, depending on patient needs. As an example, CDCR successfully flexed beds at SQSP and CMC in July 2023 from APP to MHCB to meet statewide need.  Those flexes included 10 APP beds at CMC on July 25, 2023, and 6 APP beds at SQSP on July 27, 2023.

1   9.   IRU and HCPOP continue to monitor statewide referral trends and can activate

2   flex beds in the identified locations to meet referral need.  Because the Flex Bed Policy is

3   relatively new, additional time is needed to gather data on the benefits realized from

4   implementation of the policy.

5   **Continued Access to DSH Beds**

6   10.   In response to the need to adjust the inpatient referral process when the pandemic

7   paused patient movement, a small workgroup consisting of the Special Master's experts, DSH,

8   and CDCR was developed in 2020 to review inpatient referrals.  Notably, during the period when

9   the small workgroup process was in place (between May of 2020 and March of 2023), the

10  admission rate for patients referred to an unlocked dorm LRH decreased.  This decrease is

11  commensurate with the decreased number of inpatient referrals that CDCR has observed over

12  recent years.

13  11.   To address the decrease in admissions to an unlocked dorm LRH, CDCR and DSH

14  recently developed a two-step plan anticipated to increase the number of patients accepted into

15  DSH.  First, Defendants will ensure that all patient referrals with unlocked dorm eligibility,

16  regardless of clinical factors, are reviewed by DSH for possible admission.  Second, CDCR and

17  DSH are instituting a joint review of unlocked dorm–eligible patients housed in a CDCR PIP to

18  determine whether they may now be eligible for DSH admission.  CDCR and DSH will conduct a

19  joint review of a sample of that population every 30–45 days.

20  **Staffing Issues**

21  12.   Staffing directly impacts operating capacity at the PIPs.  For instance, due to

22  staffing challenges in the CHCF PIP, it is operating at 81% capacity with 415 of 514 beds

23  available.  Similarly, CMF is operating at 88% capacity, with 347 of 396 beds available.  As

24  staffing levels improve, additional beds within those programs will be available for patient

25  placement.

26  13.   Staffing deficiencies have also affected the regular audits of patients housed

27  outside their LRH.  Each patient's Interdisciplinary Treatment Team (IDTT) routinely reviews the

28  patient's LRH to confirm whether the current level is appropriate.  When clinical staffing levels

4

1    are low, direct patient care is necessarily prioritized over local utilization review, including LRH

2    auditing. Once staffing improves, those regular audits can resume.  Independent of local staffing

3    levels, the IRU continues to conduct monthly reviews of patients housed out of LRH and provides

4    feedback and consultation to the PIP treatment teams for patients who appear clinically

5    appropriate to transition to a less-restrictive ICF setting.  Additionally, in April through July

6    2023, the IRU, in conjunction with the PIP treatment teams, completed a comprehensive review

7    of all patients housed out of their LRH to identify barriers to, and readiness for, transfer to a less

8    restrictive setting.  DSH and CDCR are also discussing a proposal to jointly review all patients

9    housed out of their LRH to identify additional patients appropriate for transfer to DSH.  Finally,

10   CDCR has recently allocated Nursing positions for statewide PIP Utilization Management for

11   additional assistance with the development and implementation of utilization reviews at every

12   PIP.

13           I declare under penalty of perjury under the laws of the United States of America that the

14   foregoing is true and correct.

15           Executed on this 26th day of September, 2023, at San Quentin, California.

16

17                                         */s/ Erick Rizzotto*
                                          Erick Rizzotto, M.D.

18

19

20

21

22

23

24

25

26

27

28

DECL. OF ERICK RIZZOTTO, M.D. ISO DEFS' POSITION
IN THE PARTIES' JOINT REPORT (2:90-cv-00520 KJM-DB (PC))

19376383.4

# Exhibit A

| **VOLUME 12:** MENTAL HEALTH SERVICES | Effective Date: | 6/21/2018 |
|---|---|---|
| **CHAPTER 11:** CORRECTIONAL TREATMENT CENTER: PSYCHIATRIC INPATIENT PROGRAM | Revision Date(s): | 2014, 2017 |
| | Supersedes: | 6/30/2017 |
| **12.11.2101(A)** TREATMENT PLANNING AND PROCEDURES: REFERRAL AND ADMISSION POLICY AND PROCEDURE | Attachments: | Yes ☐ No ☒ |

**Policy**

Patients requiring 24-hour inpatient care for treatment of mental health disorders shall be referred and admitted to Acute or Intermediate Care Facilities (ICF) inpatient level of care (LOC) in accordance with the following timelines:

**Acute:**

Referral shall be submitted to headquarters within two (2) business days of the Interdisciplinary Treatment Team (IDTT) decision.

If accepted, admission shall occur as soon as possible and not exceed ten (10) calendar days from headquarters receipt of the referral.

No patient shall be accepted or admitted for care without an order by a clinician who is credentialed and privileged to do so.

**ICF:**

Referral shall be submitted to Headquarters within five (5) business days of the IDTT decision.

If accepted, admission shall occur as soon as possible and not exceed 30 calendar days from headquarters receipt of the referral.

No patient shall be accepted or admitted for care without an order by a clinician who is credentialed and privileged to do so.

**Definitions**

See Policy 12.11.2100 for all definitions related to this policy and procedure.

**Purpose**

To ensure patients requiring 24-hour inpatient care for mental health disorders are referred, accepted, and admitted for treatment within required timeframes, without discrimination on the basis of sex, gender identity, race, color, religion, ancestry, national origin, sexual orientation, disability, medical condition, marital status, or registered domestic partner status.

**Procedure**

**Criteria for Acute and Intermediate Care**

1. **Criteria for Acute Admission:** A patient may be appropriate for admission to Acute care when the patient is identified by a qualified mental health clinician as experiencing acute exacerbation or active symptoms consistent with one or more of the mental disorders as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) and, as a result, meets one or more of the following criteria:

a. The patient has been unable to stabilize in a Mental Health Crisis Bed (MHCB) within ten (10) calendar days and/or is unable to provide for his/her basic needs or use the supportive treatment resources available to him/her.

b. The patient has been assessed as a severe suicide risk.

c. The patient has a documented pattern of repeated admissions to the MHCB for suicidal ideation.

d. The patient engages in recent and severe self-injurious behavior.

e. The patient is a high risk of harming others, as evidenced by:
   i. Recent serious assaultive behavior.
   ii. Expressed intention to harm others that is intensified by psychotic symptoms with a plan and/or means to carry out.

Staff shall anticipate patients admitted to Acute care will be stabilized sufficiently for discharge from Acute care within 30 to 45 calendar days.

Patients may also be admitted for Acute care when determined to be a danger to self in the absence of a diagnosed mental disorder.

2. Criteria for Intermediate Care: A patient may be appropriate for admission to Intermediate care when identified by a qualified mental health clinician as experiencing active symptoms consistent with one or more of the mental disorders as defined in the current edition of the DSM and, as a result, meets one or more of the following criteria:

a. The patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a serious mental disorder, serious to major impairment of functioning in most life areas, stabilization or elimination of chronic ritualistic or repetitive self-injurious/suicidal behavior.

b. The patient is unable to function in his or her current setting and requires long term stabilization.

c. The patient would benefit from a comprehensive treatment program with an emphasis on skill development (i.e., coping skills, daily living, and medication compliance).

d. The patient has a documented pattern of escalation of threats or behavioral patterns suggestive of risk, that have not stabilized within an outpatient setting.

e. The patient's behavior is considerably influenced by psychotic symptoms; or serious impairment in communication or judgment; or inability to function in almost all areas.

f. The patient has a documented pattern of repeated admissions to the MHCB for suicidal ideation or self-injurious behavior.

g. The patient requires a neurological/neuropsychological consultation.

h. The patient requires an inpatient diagnostic evaluation.

i. The patient's psychiatric medication history indicates that a clozapine trial might be useful and the trial cannot be completed in the patient's designated housing.

## **Referral – Staff Responsibilities**

1. Primary Clinician (PC)

a. When the mental health PC identifies a patient who may require ICF or Acute LOC, the mental health representative shall initiate discussion of the patient in the morning huddle (and/or rounds or other meeting), to determine whether medical conditions may impact the referral decision and/or placement. If a

patient has complex medical needs that require inpatient medical service and preclude immediate admission to available Acute or Intermediate inpatient programs, a medical hold shall be ordered and the patient shall be referred to Acute or Intermediate LOC. If clinically appropriate, from a medical and mental health perspective, the referring institution shall coordinate with Health Care Placement Oversight Program (HCPOP) to facilitate admission of the patient to the Correctional Treatment Center (CTC) at California Health Care Facility (CHCF) or California Medical Facility (CMF) for medical and psychiatric treatment until the patient can be transferred safely to the Acute or Intermediate program, according to Inmate Medical Services Policies & Procedures, Volume 4, Chapter 3.2, Health Care Transfer Procedure. If the patient cannot be admitted to the CTC at CHCF, the CTC at CMF will be considered.

b.  If a patient is identified during the IDTT as requiring ICF or Acute LOC, presentation at the morning huddle is not required prior to referral.

c.  IDTT shall discuss consideration for referral at the patient's next scheduled IDTT, or sooner if clinically indicated, and make a determination. If the IDTT determines that the referral is warranted, the PC shall complete the Inpatient Consult and ICF or Acute Place In Order on the same day as the IDTT.

d.  During the IDTT, the PC shall discuss the reason for referral to inpatient care, or to a different level of inpatient care, and inform the patient of the benefits of inpatient treatment, as well as inherent risks should the patient not be admitted for inpatient treatment.

e.  Within inpatient treatment programs, Sensitive Needs Yard (SNY) and General Population (GP) designations are not recognized or utilized for the purposes of housing. In non-designated units, it is expected that all inmates will program together and comply with integrated housing expectations regardless of prior GP or SNY programming or level designations. The PC shall address any distress expressed by the patient related to the referral and upcoming transfer, as applicable, in a therapeutic manner. The PC shall document any distress, provide treatment as indicated, and develop treatment plan goals related to coping with any distress.

f.  If the patient is referred to ICF/Acute LOC from an outpatient or MHCB program, the PC shall ask the patient to sign a Transfer to ICF/Acute Due Process Chrono. The institution inpatient coordinator will be notified of the referral via electronic messaging. The PC will provide the inpatient coordinator with the Transfer to ICF/Acute Due Process Chrono. The ICF/Acute Due Process Chrono is not required for transfer from Acute to ICF or from ICF to Acute LOC.

g.  The referring clinician shall ensure that all required documentation for referral to ICF/Acute is completed and available for the inpatient coordinator for review the same day as the IDTT for Acute and within three (3) business days from IDTT for Intermediate.
The following documentation is required:

  i.  For patients referred from the outpatient or MHCB LOC, the patient's consent to transfer, or documentation that the transfer has been determined appropriate and necessary following a due process hearing, or confirmation that the transfer meets emergency certification criteria; unless a due process hearing is required as described below.

  ii.  Clinical reason/justification for referral.

     iii.  Suicide Risk and Self Harm Evaluation.

     iv.  Treatment plan.

     v.  Penal Code (PC) Section 2602 and or PC Section 2604 Court Order (when relevant) or supporting documentation regarding whether or not the patient meets critieria for conservatorship or involuntary medications.

     vi.  Tuberculosis status.

     vii.  Clozapine supporting documentation, if a Clozapine trial is requested.

Medical evaluation for transportation, and a medical release for transfer, shall only be required for patients who have a medical hold. Transfer shall proceed according to IMSP&P, Volume 4, Chapter 3.2, Health Care Transfer Procedure.

A complete History and Physical (H&P) examination, with no contraindications to transfer, conducted by a qualified provider within five calendar (5) days before admission, will suffice for the H&P required within 24 hours of admission (Section 79601, Title 22, California Code of Regulation; The Joint Commission CTS standard 02.01.07), if no new medical hold is placed.

2. Correctional Counselor

The referring institution Correctional Counselor shall inform all patients referred from an outpatient or MHCB LOC that inpatient programs do not recognize sensitive needs SNY or general GP designations and shall document this advisement in a Strategic Offender Management System case note.

3. Inpatient Coordinator

    a.  The Inpatient Coordinator or ADU shall ensure all required documentation is completed. Additionally, the Inpatient Coordinator or ADU shall complete the Acute/ICF Coordinator Review orders in the healthcare record as soon as possible, not to exceed two (2) business days from IDTT for an Acute referral, and within five (5) business days from IDTT for an Intermediate referral. If a due process hearing is necessary, the Inpatient Coordinator or ADU shall submit the Acute/ICF Coordinator Review orders, to ensure the referral begins processing while awaiting results from the due process hearing.

    b.  The Inpatient Coordinator shall schedule a due process hearing if the patient refuses to sign the consent form, to be conducted within five (5) business days from the IDTT for Acute and within 10 business days from the IDTT for Intermediate.

    c.  The Inpatient Coordinator shall transmit documentation of the due process hearing, if applicable, to the IRU and HCPOP within five (5) business days from the IDTT for Acute and within 10 business days from the IDTT for Intermediate.

## Referral - Unit Responsibilities

1. Headquarters Inpatient Referral Unit (IRU)

    a.  The IRU shall provide oversight of the referral process for completeness and clinical need as soon as possible, and not to exceed one (1) business day of receipt for all Acute referrals and not to exceed three (3) business days for all ICF referrals. Inpatient coordinators will be notified of any deficient referrals via electronic message.

    b. If the referral is incomplete or lacks justification, the referring inpatient coordinator and clinician shall provide all required information that same day.

    c. If housing concerns due to clinical factors are present, IRU shall immediately notify HCPOP in accordance with the policy 12.11.2111, Housing Review/Least Restrictive Housing.

    d. IRU shall maintain data on all referrals.

2. HCPOP Custodial Review

HCPOP shall conduct a custodial review of each ICF/Acute referral to determine the Least Restrictive Housing (LRH) based on CDCR custodial factors once HCPOP receives the referral from IRU via email, within one (1) business day for Acute and three (3) business days for Intermediate. HCPOP shall notify the receiving ADT/ADU of the transfer endorsement via email, once a bed is available. HCPOP shall notify the Classification and Parole Representative (C&PR) at the sending institution that the patient shall be transferred immediately after clinical acceptance. A "Pending Bed Availability" list will be maintained by HCPOP and patients will be endorsed for transfer upon bed availability. IRU may request that a patient be endorsed for transfer on an expedited basis into the next available bed for clinical reasons.

3. Psychiatric Inpatient Program (PIP) Clinical Acceptance

The ADT/ADU designated staff at the PIP shall complete the Acute/ICF Pre-Admission Screening, and submit the decision order set in the healthcare record, which includes the MH Acute/ICF Disposition within one (1) business day of receipt of the endorsement decision for Acute and within three (3) business days for ICF. The disposition order indicates, "Accept," "More Information Needed," or "Reject." The patient may also be deferred to a different LOC or to different housing. If a patient is deferred by the ADT/ADU to a different LOC (e.g., referred to ICF and found to be clinically appropriate for Acute), the disposition order shall indicate "More Information Needed," and the deferral shall be communicated to IRU. IRU shall review the deferral and schedule a case conference if the referring team does not agree with the deferral. IRU shall notify HCPOP whether the deferral is approved or denied. HCPOP shall then re-evaluate the case and endorse to a location consistent with the patient's new LOC or housing restriction, once a bed is available at the appropriate LOC. HCPOP shall communicate the endorsement decision to the new receiving inpatient program.

**<u>Endorsement and Transfer</u>**

1. C&PR of the referring institution, IRU, and HCPOP shall immediately be notified of clinical acceptance via electronic message.

2. The C&PR shall coordinate and effect transfer as soon as possible after clinical acceptance.

3. The Transportation Team at the sending institution shall schedule the patient to arrive at Acute programs seven (7) days per week, from 8am until 4pm, and Intermediate Care programs Monday through Friday from 8am until 4pm. Intake after usual business hours must be pre-approved by the Executive Director or designee as delineated in the PIP local operating procedure. To arrange intake after usual business hours, the sending C&PR shall contact the receiving ADU/ADT for approval. The ADU/ADT may request information about the referral timeline from IRU in order to make the decision regarding approval of intake after usual business hours.

### Admission

1. The PIP Admission/Discharge Coordinator (ADC) shall coordinate the admission.
2. The ADC or designee shall notify the receiving treatment team of the referral acceptance, and immediately provide the referral information to the receiving IDTT. The ADC shall notify the receiving treatment team of any patient who is placed in a more restrictive environment than the patient's designated LRH.
3. A signed CDCR Form 7511, *Informed Consent to Admission into the PIP*, will be obtained upon admission to the PIP.
4. The PIP encounter shall be immediately opened in the Electronic Health Record System (EHRS) by the receiving nursing staff upon admission. The assigned program Psychiatrist or Psychologist shall assume immediate responsibility for the respective patient's care and treatment and complete all receiving patient orders in the ICF/Acute Powerplan within the healthcare record.  If a psychologist completes the ICF/Acute EHRS admission process, a psychiatrist shall complete the phases of the admission that are not within the psychologist scope of practice, including the "Meds, Labs, Diet" phase. The psychiatrist shall review the medications, reconcile all orders, and re-order medications as clinically indicated for each admitted patient.

### Rejection

1. If a patient is not accepted for admission, the ADC and designated supervisory team shall consult with the Clinical or Medical Director/designee before entering a denial into the health record. The Clinical or Medical Director/designee shall be provided, from the ADC, a detailed explanation of the reason for the proposed denial. The Clinical or Medical Director shall notify the Executive Director and consult to make a final determination to accept or deny the admission. The ADC shall  enter the reason for the rejection and indicate that the Clinical/Medical Director and Executive Director reviewed and accepted the denial.  If the Clinical/Medical Director and Executive Director are not in agreement, the decision shall be referred for case conference through the CCAT process, to include appropriate headquarters executive staff, including the Chief Psychiatrist or designee.
2. If a patient is denied for admission and the referring clinician disagrees with the decision, a case conference by the Coordinated Clinical Assessment Team (CCAT) will be convened to review the referral, and to decide upon the appropriate disposition. The CCAT shall be scheduled at the next available CCAT date and time, and within seven calendar (7) days of the admission denial. In the event the CCAT cannot resolve the decision disagreement, the referral shall immediately be forwarded to the Deputy Director of the Statewide Mental Health Program. The IRU and/or involved clinicians are encouraged to arrange an informal discussion between stakeholders prior to the CCAT to attempt to resolve the admission decision.

### Rescinded Referrals

If a treatment team determines that it is clinically appropriate to rescind a referral, a designated clinician shall document the reason for the rescinded referral in a free-text note in EHRS, and shall notify IRU of the decision to rescind the referral. IRU shall review the justification for rescinding the referral within one (1) business day and shall either approve the rescission, or make a recommendation to the treatment team using the EHRS message center. IRU shall notify HCPOP of all approved rescissions.

### Emergency Transfers

The PIP may move patients between housing at the same LOC and type of housing (e.g., single cell to single cell). During regular work hours, IRU shall be consulted if a patient engages in disruptive, destructive, or dangerous behavior that cannot be managed within the same LOC and type of housing. The patient's LOC cannot be changed by an individual. However, if an emergency situation occurs outside of regular work hours, the on-call psychiatrist or psychologist may make a decision to temporarily move the patient into a different type of housing, which may include temporary placement into a higher LOC or more restrictive housing within the same institution. The move shall be approved retroactively by PIP leadership at the supervisor or manager level as soon as possible and not to exceed two (2) hours, based on local operating procedure. When a patient is moved, IRU shall be immediately notified by the on-call psychiatrist, psychologist, or designee, and the reason for the move shall be documented in the EHRS in the form of a free-text note. The patient's treatment team shall convene during the next business day to discuss the need for ongoing placement in a higher LOC or more restrictive housing within the same institution. If the treatment team determines that a new LOC is appropriate, the patient shall be discharged from the current LOC and referred to the new LOC. IRU shall review the reason for the housing move or LOC change, and request that HCPOP re-endorse the patient to the appropriate bed, or IRU shall contact the Executive Director to discuss the decision.

### Bed Prioritization

Prioritizing for admission shall be based upon the clinical acuity of the patient and the length of time the patient has been on the pending admission list. The referring institution's inpatient coordinator shall provide updated information to IRU regarding acuity of patients as acuity changes.The IRU staff shall coordinate with HCPOP to ensure patients with high acuity are expeditiously endorsed and transferred to the inpatient program (CTS.01.02.01 EP#2).

### Referral and Admission Oversight

All referrals to ICF/Acute are tracked and monitored by IRU and HCPOP.

The local PIP policy shall include the designation of a responsible position to prepare a daily census report, along with weekly and monthly statistical reports, for distribution to appropriate administrative staff, also designated in the local operating procedure. The daily census report shall also include a listing of all patients approved for admission who are on the current waiting list (CTS.01.02.01).

| | |
|---|---|
| **References** | <ul><li>Joint Commission, BHC Standard: Care, Treatment, and Services Chapter.</li><li>California Code of Regulations, Title 22, Ch. 12, Correctional Treatment Centers.</li><li>Mental Health Services Delivery System Program Guide, 2009 Revision.</li><li>Inmate Medical Services Policies and Procedures, Volume 4, Chapter 3.2, Health Care Transfer Procedure.</li></ul> |
| **Questions** | If you have any questions or need any additional information related to this policy, you may contact the policy unit via e-mail at: CDCR_MHPolicyUnit@cdcr.ca.gov. |

**Addendum to 12.11.2101 (A) PIP Policy and Procedure Referral and Admission**

Exceptions to Transfer Timelines:

There are circumstances under which the timelines identified above cannot be met as outlined below. The circumstances identified below shall temporarily suspend the transfer timelines only for the period of time in which the governing exception applies, as detailed below.  More than one exception may apply.

**Transfer Refusal:**

If a patient is accepted to a Psychiatric Inpatient Program (PIP) and, after signing a form consenting to treatment, refuses to transfer, the transfer timeline shall be suspended for a period of no more than five (5) business days in order to allow for the completion of a due process hearing.  While the due process hearing is occurring, CDCR shall continue the referral process and once the due process hearing is completed, CDCR shall transfer the patient as expeditiously as possible, but no later than five (5) calendar days for acute referrals and five (5) calendar days for intermediate care referrals.

If a patient is accepted to a Psychiatric Inpatient Program (PIP) and, after having a completed due process hearing, refuses to transfer, the transfer timeline shall be suspended. Every effort shall be made by the treating clinician to encourage the patient to vacate the cell voluntarily for transfer. If the patient continues to refuse to vacate the cell within 48 hours and still requires inpatient care, the controlled use of force policy shall be initiated. The transfer timeline suspended upon the patient's refusal to vacate the cell shall resume on the 49th hour after refusal.

**Medical Conditions:**

If a patient has a medical condition that cannot be treated at a PIP and that is deemed more urgent than the mental health treatment need at or after the time of the referral, as determined by a joint team of medical and mental health clinicians, a medical hold shall be ordered. The relative urgency of the medical and mental health needs shall be continually monitored by the joint team, and mental health staff shall document the reasons that the medical need continues to outweigh the mental health need as dictated by the patient's condition.  The Headquarters Inpatient Referral Unit (IRU) is responsible for tracking each exception to ensure transfer as soon as the exception is resolved.  If resolution of the medical issue delays CDCR's ability to transfer the patient to the PIP within the transfer timelines, upon clearance for transfer and acceptance to a PIP, the patient shall be transferred to the next available inpatient bed commensurate with the referral. That transfer shall be completed within five (5) calendar days of resolution of the medical issue for Acute referrals and within five (5) calendar days for ICF referrals.

**Out to Court:**

During the referral process, if a patient is physically unavailable for transfer to a PIP due to an order to appear in state or federal court, necessitating transfer out of the institution or to an institution nearest the court, or is already out to court when the complete referral is received by IRU, HCPOP shall track the patient and notify IRU, the referring institution and, if applicable, the receiving PIP upon the patient's return from court.

If the time spent out to court delays CDCR's ability to transfer the patient to a psychiatric inpatient program within the transfer timelines, the transfer timeline shall be modified.

Upon evaluation when the patient returns, which shall occur emergently, the evaluating mental health clinician shall ensure the patient is placed in the appropriate clinical setting and the facility's inpatient coordinator notified of the patient's return. If accepted, the admission shall occur as soon as possible and within five (5) calendar days of returning from court for Acute referrals and within five (5) calendar days for ICF referrals.

**Unusual Circumstances:**

Transfer timelines may be suspended in unusual circumstances outside the control of CDCR. Such circumstances shall be reported to the Statewide Director of the Mental Health Program, and documented by IRU in a report to the statewide Quality Management committee to monitor frequency and any possible corrective action. Staff shall complete the referral, transfer, and admission process within five (5) calendar days for Acute referrals and within five (5) calendar days for ICF referrals once the circumstances resulting in the delay in transfer have resolved.

# Exhibit B

# POLICY DIRECTIVE

| NUMBER | 3601 |
| --- | --- |
| TITLE | JOINT POLICY AND PROCEDURE RE:  Referral, Admission and Movement |
| EFFECTIVE DATE | July 1, 2017 |
| SUPERSEDES | AL2015-17 |

| | |
| --- | --- |
| **References/ Authority** | • By Order of the Director, Department of State Hospitals<br>• Mental Health Services Delivery System Program Guide – 2009 Edition<br>• Memorandum Of Understanding Between California Department Of Corrections and Rehabilitation And Department Of State Hospitals For Management And Oversight Of Intermediate Care And Acute Inpatient Programs |
| **Policy** | The California Department of Corrections and Rehabilitation (CDCR) and Department of State Hospitals (DSH) shall identify, accept, and place patients into the least restrictive DSH inpatient program consistent with custodial and clinical factors.  DSH and CDCR shall collaboratively manage all DSH inpatient program patient movement.<br><br>Patients requiring 24-hour inpatient care for treatment of mental health disorders, or transfer from a CDCR Psychiatric Inpatient Program (PIP) to a less restrictive housing environment shall be referred and admitted to Intermediate Care Facilities (ICF) or Acute inpatient level of care (LOC) in accordance with the following timelines:<br><br>ICF:<br><br>Referral shall be submitted to CDCR Headquarters within five (5) business days of the Interdisciplinary Treatment Team (IDTT).<br><br>If accepted by DSH, admission shall be completed as soon as possible and shall not exceed 30 calendar days from DSH receipt of the referral.<br><br>Acute:<br><br>Referral shall be submitted to CDCR headquarters within two (2) business days of the IDTT.<br><br>If accepted by DSH, admission shall occur as soon as possible and shall not exceed 10 calendar days from DSH receipt of the referral.<br><br>No patient shall be accepted or admitted for care without an order by a clinician who is credentialed and privileged to do so. |
| **Responsibility** | Responsibility for policy review and implementation: |

# POLICY DIRECTIVE

DSH Director or designee.

CDCR Deputy Director, Statewide Mental Health Program or designee.

Responsibility for compliance with the policy:

The Executive Directors or designees of the DSH state hospitals treating CDCR patients.

Responsibility for compliance with policy by Patient Management Unit staff at DSH-Sacramento:

DSH Deputy Director of Hospital Strategic Planning, or designee.

**Purpose**

To ensure patients requiring 24-hour inpatient care for mental health disorders, or transfer from a CDCR PIP to a less restrictive housing environment, are referred, accepted, and admitted for treatment within required timeframes, without discrimination on the basis of sex, gender identity, race, color, religion, ancestry, national origin, sexual orientation, disability, medical condition, marital status, or registered domestic partner status.

**Definitions**

**Acceptance:** DSH agrees to admit a patient for treatment at a DSH hospital.

**Acute:** Inpatient programs providing intensive, short-term mental health treatment for CDCR patients who have a serious mental disorder or an exacerbation of a chronic serious mental illness requiring treatment not available within the intermediate level of care. See also MHSDS Program Guide at 12-6-2.

**Admission and Discharge Unit (ADU):** A multidisciplinary team at each DSH facility that is responsible for processing and coordinating referrals, admissions, bed management, discharges, and transfers in and out of the facility. The ADU is, at a minimum, comprised of a registered nurse or a psychiatrist, an analyst, and a manager or administrator, and may include and other staff, as necessary.

**California Correctional Health Care Services (CCHCS):** Established to oversee and provide a constitutionally appropriate level of health care in all adult prisons operated by the CDCR throughout California.

**CDCR Inpatient Coordinator:** The designated CDCR institution clinical staff member responsible for facilitating DSH referrals and all DSH related activities with prison staff, other CDCR institutions, CDCR Headquarters, and DSH facilities.

**CDCR Inpatient Referral Unit (IRU):** The CDCR Headquarters Mental Health unit responsible for review and oversight of all CDCR referrals to DSH.

**Custodial Factors:** Custodial factors include, but are not limited to, disciplinary/segregated housing history, sentence length, security and custody levels, history of violence and escape, staff and inmate separation alerts, and

State of California – Health and Human Services Agency                    Department of State Hospitals

# POLICY DIRECTIVE

security threat group status.

**Classification Staff Representative (CSR):** A CDCR employee designated to represent the CDCR Director in the classification process during the review, approval, or deferral of actions by institution classification committees, including but not limited to, inmate transfers, inmate special housing program placements/retention, and custody designations.

**Clinical Factors:** Clinical factors include, but are not limited to: medical conditions and mental health levels of care, developmental and/or physical disabilities impacting placement.

**DSH Patient Management Unit (PMU):** The DSH Headquarters mental health unit responsible for management and oversight of all CDCR referrals to DSH.

**Health Care Placement Oversight Program (HCPOP):** The CCHCS unit responsible for bed management of health care beds and for determining each patient's Least Restrictive Housing.

**Intermediate:** Inpatient programs within DSH hospitals and PIPs providing longer term intermediate and sub-acute mental health treatment for CDCR patients who have a serious mental disorder. See also MHSDS Program Guide (2009 Edition) at 12-6-6.

**Least Restrictive Housing (LRH):** The lowest custody setting in which a patient may be housed within a Psychiatric Inpatient Program or DSH Hospital, as determined by CDCR HCPOP.

**Penal Code Section 2602 (PC 2602) Order:** A court order for involuntary medication of an inmate in the custody of, or housed in, a state prison issued pursuant to the statute. (See Joint DSH Referral and Penal Code Section 2602 Management Policy.)

**Primary Clinician (PC):** A psychologist, clinical social worker, or psychiatrist who performs the necessary case management functions for all patients in their caseloads. This includes assessment, treatment planning and treatment, clinical monitoring, and clinical case reviews.

**Psychiatric Inpatient Program (PIP):** An Acute or Intermediate level of care program operated by CDCR.

**Referral:** The process by which CDCR requests admission of a patient to DSH by providing all information outlined in Section IV of the Memorandum of Understanding (MOU) between CDCR and DSH.

**Rejection:** When the referral of a patient for placement at a DSH state hospital is declined by DSH.

**Transfer Endorsement (Endorsement):** CSR authorization to transfer/move an inmate/patient from his/her current institution and/or program/level of care to another institution and/or program/level of care.

# POLICY DIRECTIVE

**Procedure**

### CDCR Interdisciplinary Treatment Team (IDTT)

The CDCR IDTT determines whether a patient meets the criteria for a referral to a DSH Intermediate or Acute program.

**Primary Clinician (PC)**

1. When the mental health PC identifies a patient who may require ICF or Acute level of care, the mental health representative shall initiate discussion of the patient in the morning huddle (and/or rounds or other meeting), to determine whether medical conditions may impact the referral decision and or placement (Inmate Medical Services Policies and Procedure (IMSP&P), Chapter 12, Volume 11, Correctional Treatment Center; Psychiatric Inpatient Program; Medical Care).  If a patient has complex medical needs that require inpatient medical service and precludes immediate admission to available ICF or Acute inpatient programs, a medical hold shall be ordered and the patient shall be referred to ICF or Acute level of care.  If clinically appropriate from a medical and mental health perspective, the referring institution shall coordinate with HCPOP to facilitate admission of the patient to the CTC at CHCF or CMF for medical and psychiatric treatment until they can safely be transferred to the ICF or Acute inpatient program, according to IMSP&P (Health Care Transfer Procedure Chapter 4.3.2).  If the patient cannot be admitted to the CTC at CHCF, the CTC at CMF shall be considered.

2. If a patient is identified during the IDTT as requiring ICF or Acute level of care, presentation at the morning huddle is not required prior to referral.

3. The IDTT shall discuss consideration for referral at the patient's next scheduled IDTT, or sooner if clinically indicated, and make a determination. If the IDTT determines that the referral is warranted, the PC completes the Inpatient Consult and ICF or Acute Place In Order on the same day as the IDTT.

4. During the IDTT, the PC shall discuss the reason for referral to inpatient care, and inform the patient of the benefits of inpatient treatment and inherent risks should the patient not be admitted for inpatient treatment.

5. The PC shall address any distress expressed by the patient related to the referral, upcoming transfer, and suspension of Sensitive Needs Yard (SNY) status, as applicable, in a therapeutic manner.

6. The PC shall ask the patient to sign a Transfer to ICF/Acute Due Process Chrono. The institution inpatient coordinator is notified of the referral via electronic messaging. The PC provides the inpatient coordinator with the Transfer to ICF/Acute Due Process Chrono.

# POLICY DIRECTIVE

7. The referring clinician shall ensure that all required documentation for referral to ICF or Acute is completed and available for the inpatient coordinator for review within three (3) business days from IDTT for ICF and within the same day as the IDTT for Acute.

The following documentation is required:

a. The patient's consent to transfer to DSH from an MHCB or an outpatient program, or documentation that transfer has been determined appropriate and necessary following a due process hearing, or confirmation that the transfer meets emergency certification criteria (consent to transfer to DSH is not required for patients transferring from a CDCR PIP);

b. Clinical reason or justification for referral;

c. Most recent Suicide Risk and Self Harm Evaluation;

d. Current treatment plan;

e. Medical evaluation for transportation;

f. Documentation of medical needs, as applicable; (See also Joint Medical Needs Policy)

g. Pharmacy Profile or Medication Administration Record (MAR);

h. PC 2602 Court Order (when relevant) or supporting documentation;

i. Tuberculosis (TB) status, which may include a health care evaluation and clearance if TB test results are unavailable; and

j. Clozaril supporting documentation, if a Clozaril trial is requested.

**CDCR Correctional Counselor**

The referring institution Correctional Counselor shall inform patients through IDTT that while in a DSH psychiatric program or state hospital, SNY or general population designations are temporarily put in abeyance. The Correctional Counselor shall document this advisement in a Strategic Offender Management System (SOMS) case note.

**CDCR Inpatient Coordinator**

1. The CDCR Inpatient Coordinator shall ensure all required clinical documentation received from the PC is transmitted to the IRU within five (5) business days from the date of IDTT for an ICF referral and within two (2) business days from the date of IDTT for an Acute referral.

2. The CDCR Inpatient Coordinator shall schedule a due process hearing (Vitek) if the patient refuses to sign the consent form. A due process hearing (Vitek) shall be conducted within 10 business days from the

# POLICY DIRECTIVE

date of IDTT for ICF and within five (5) business days from the date of IDTT for Acute.

3. Documentation of the due process hearing (Vitek) shall be transmitted to the IRU and HCPOP within 10 business days from the IDTT for ICF and within five (5) business days from the IDTT for Acute.

**IRU**

1. Within three (3) business days for all ICF referrals and within one (1) business day of receipt for all Acute referrals, the IRU shall review each referral for completeness and clinical need and notifies the CDCR Inpatient Coordinator and referring clinician whether the referral is complete or incomplete.

2. If the referral is incomplete or lacks justification, the referring DSH Coordinator and clinician shall provide all required information within 24 hours for ICF referrals and within four hours of notification by IRU for Acute referrals.

3. Upon completion of the referral and its review, and not to exceed three (3) business days for ICF and one (1) business day for Acute, the IRU shall notify the ADU, PMU, and HCPOP that all clinical documentation is complete and ready for review.

## DSH Clinical Review

### Criteria

Criteria for ICF Admission: A patient may be appropriate for admission to ICF care when identified by a qualified mental health clinician as experiencing active symptoms consistent with one or more of the mental disorders as defined in the current edition of the DSM and, as a result, meets one or more of the following criteria:

1. The patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a serious mental disorder, serious to major impairment of functioning in most life areas, stabilization or elimination of chronic ritualistic or repetitive self-injurious/suicidal behavior;

2. The patient is unable to function in his or her current setting and requires long term stabilization;

3. Patient would benefit from a comprehensive treatment program with an emphasis on skill development (i.e. coping skills, daily living, and medication compliance);

4. The patient has a documented pattern of escalation of threats or behavioral patterns suggestive of risk, that have not stabilized within an outpatient setting;

# POLICY DIRECTIVE

5. The behavior is considerably influenced by psychotic symptoms; or serious impairment in communication or judgment; or inability to function in almost all areas;

6. The patient has a documented pattern of repeated admissions to the MHCB for suicidal ideation or self-injurious behavior;

7. The patient requires a neurological/neuropsychological consultation.

8. The patient requires an inpatient diagnostic evaluation;

9. The patient's psychiatric medication history indicates that a clozapine trial might be useful and the trial cannot be completed within CDCR.

<u>Criteria for Acute Admission</u>: A patient may be appropriate for admission to Acute care when he/she has been identified by a qualified mental health clinician as experiencing acute exacerbation or active symptoms consistent with one or more of the mental disorders as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) and, as a result, meets one or more of the following criteria:

1. Patient has been unable to stabilize in the MHCB LOC within 10 calendar days and/or is unable to provide for his basic needs or use the supportive treatment resources available to him;

2. Patient has been assessed as a severe suicide risk;

3. The patient has a documented pattern of repeated admissions to the MHCB for suicidal ideation;

4. The patient engages in recent and severe self-injurious behavior;

5. Patient is a high risk of harming others, as evidenced by:

    a. Recent serious assaultive behavior;

    b. Expressed intention to harm others that is intensified by psychotic symptoms, with a plan and/or means to carry out.

Patients admitted to Acute shall be anticipated to be stabilized sufficiently for discharge from the Acute LOC within 30 to 45 days.

Patients may also be admitted for Acute care when determined to be a danger to self in the absence of a diagnosed mental disorder.

**Admission Procedure**

Within three (3) business days of receipt of the CDCR DSH referral documentation from IRU for ICF and one (1) business day for Acute, DSH ADU/PMU shall review and provide the following to HCPOP via electronic means:

1. Level of care decision.

2. Any housing considerations based upon clinical evaluation. Housing

# POLICY DIRECTIVE

considerations are made in accordance with criteria in Attachment A (Joint Referral Admission DSH Clinical Placement Criteria).

3. DSH PMU and CDCR HCPOP will be responsible for the determination and coordination of the appropriate DSH inpatient program where the patient will be treated upon transfer from CDCR. If it is anticipated that the referral will be rejected by DSH staff, the procedure documented in the MOU, Section V, Acceptance or Rejection of Referrals, will be followed.

## HCPOP Custodial Review

HCPOP shall complete custodial reviews of each DSH referral to determine the LRH based on CDCR custodial factors within three (3) business days of receipt of the DSH LOC decision for ICF, and one (1) business day for Acute. In making Endorsement decisions, the clinical factors provided by DSH will be considered. DSH shall be provided an Endorsement location upon bed availability based on LRH and clinical factors received from DSH ADU/PMU. Note: All patients referred to a DSH state hospital must have an LRH of Unlocked Dorm.

## DSH Acceptance Transfer Chrono (ATC)

1. Within one business day of receipt of Endorsement location, DSH PMU shall submit the ATC to CDCR DSH Referral Unit (DRU).

2. If the ATC is not submitted or notification of disagreement is not received within one (1) business day, HCPOP shall proceed with Endorsement. In the case of disagreement regarding the Endorsement location, DSH PMU will contact HCPOP immediately for dispute resolution. If resolution cannot be achieved with HCPOP and DSH PMU within one (1) business day, the case shall be escalated to the Director of DSH and Deputy Director of CDCR Statewide Mental Health Program, or their designees, for resolution within one (1) business day.

## Endorsement and Transfer

1. The Classification & Parole Representative of the referring institution, IRU, and HCPOP shall be immediately notified of the ATC via electronic means. HCPOP shall endorse via SOMS upon receipt of the ATC.

2. CDCR shall transport the patient within 72 hours of HCPOP Endorsement.

## Referral Tracking

All referrals to DSH are tracked by CDCR and DSH. Accepted referrals with no bed available are placed on an accepted referrals list, which is provided electronically by DSH to CDCR HCPOP via the standardized Bed Utilization Management Meeting report each business day.

# POLICY DIRECTIVE

### Patient Movement Within DSH

### CDCR Housing Reviews while in an ICF or Acute Program

If the patient requires transfer to a CDCR PIP and a classification committee determines the patient is ineligible for retention in his or her LRH, the patient shall be referred to the DSH PMU for transfer coordination with HCPOP. HCPOP shall review and endorse each case requiring transfer in accordance with the program's custodial case factors as indicated within this document.

### Mental Health LOC Changes while in an ICF or Acute Program

1. In cases where a patient's mental health LOC changes from ICF to Acute or Acute to ICF, the facility's ADU shall notify the PMU. PMU shall coordinate with HCPOP for custodial review, Endorsement, and transfer as appropriate.

2. HCPOP will treat these LOC changes in the same manner as an initial referral to an ICF or Acute program.

**Signature**

PAMELA AHLIN
Director
Department of State Hospitals

KATHERINE TEBROCK, ESQ.
Deputy Director
Statewide Mental Health Program
Division of Health Care Services
California Department of Corrections
and Rehabilitation

# Exhibit C

# ICF Referral Process per 2017 MOU

Clock Start (IRU Approval to HCPOP) to Clock Stop (PIP or DSH Admission per SOMS):
30 Calendar Days
DSH referrals clock starts when they receive referral, not when IRU receives referral.



# ICF Referrals – Current Process

**If Vitek hearing:**
**IDTT → IRU**
**10 Total Business Days**

**IDTT/PC** — 3 Days → **Inpatient Coordinator** — 2 Business Days → **IRU** — 3 Business Days → **HCPOP** — 3 Calendar Days → **C&PR** — 3 Calendar Days → **Admission**

With cc: to HCPOP and CRU

Completed packet sent to HCPOP. Will also report on status back to Inpatient Coordinator

**CDCR PIP Referrals**
LRH is not ULD. 3 calendar days for endorsement. Parties notified include sending and receiving institution.

- Confirm referral packet is complete; return if incomplete.
- Review clinical housing recommendation provided by referring institution (if provided*) for clinical necessity. Consult with referring institution (if necessary) and affirm, modify, or reject the clinical housing recommendation.
- Provide HCPOP with clinical housing decision (if applicable) and the clinical justification for placement in the transfer endorsement chrono.

*A clinical housing restriction should only be provided if the patient is unable to receive treatment in one of the lower custody treatment options (ULD, LD, or MPC).

**DSH Referrals**
LRH is ULD and no clinical housing restrictions. Transfer endorsement within 3 calendar days. When transfer has been approved, HCPOP notifies:
- Sending CDCR (Inpatient Coordinators and C&PR office)
- Receiving DSH facility ASH/CSH/PSH
- CDCR HUB (ASH/CMC, CSH/PVSP, PSH/CIM)
- IRU, RIPA, HCPOP

↓ 3 Calendar Days

**DSH PMU** — 1 Business Day → **Accepted** Acceptance Transfer Chrono within 1 day

DSH to accept/reject within one day. If accept, issue ATC.

*DSH 30-day time frame starts upon receipt of referral from HCPOP, if they accept it. To be discussed with DSH.

**Rejected**

**DSH rejection to be reviewed by CDCR Dep. Dir, MH, and DSH.**

If rejected, patient case will be reviewed by CCAT. If decision is to affirm DSH rejection, case may be returned to HCPOP for re-endorsement to alternate MH program.

30 calendar days from when IRU determines referral is complete, except for referrals accepted by DSH.

**Clock Start (IRU Approval to HCPOP) to Clock Stop (PIP or DSH Admission per SOMS):**
30 Calendar Days

DSH referrals clock starts when they receive referral, not when IRU receives referral.

# APP Referral Current Process

Clock Start (IRU Approval to HCPOP) to Clock Stop (PIP or DSH Admission per SOMS):
10 Calendar Days
DSH referrals clock starts when they receive referral, not when IRU receives referral.



# Exhibit D

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

 **CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES** 

# MEMORANDUM

| | |
|---|---|
| **Date:** | 1/4/2023 |
| **To:** | Chief Executive Officers |
| | Chiefs of Mental Health |
| | Chief Psychiatrists |
| | Associate Directors, Division of Adult Institutions |
| | Wardens |
| | Classification and Parole Representatives |

**From:**

*Amar Mehta*
AMAR MEHTA, M.D.
Deputy Director
Statewide Mental Health Program

*Jared Dale Lozano*
JARED D. LOZANO
Deputy Director
Division of Adult Institutions

**Subject:    RELEASE OF USE OF INPATIENT FLEX BEDS POLICY AND PROCEDURE**

Currently, most California Department of Corrections and Rehabilitation mental health inpatient beds are designated as either Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), **or** Intermediate Care Facility (ICF) level of care, and the patient is physically moved to a different location if they need a different level of care.

At some locations, inpatient beds serve multiple purposes. Physical beds that can change between inpatient levels of care are called Inpatient Flex Beds (I-FLEX).

**Designation of New Flex Beds:**

Effective immediately, the following are designated as I-FLEX Beds:

- Psychiatric Inpatient Program (PIP) APP beds – May flex between APP and ICF
- California Health Care Facility (CHCF) MHCB – May flex between MHCB, APP, and ICF
- California Institution for Women (CIW) ICF beds – May flex between APP and ICF
- California Men's Colony (CMC) MHCB* - May flex between MHCB, APP, and ICF
- California Medical Facility (CMF) A/B Wing – May flex between MHCB, APP, and ICF
- San Quentin State Prison ICF beds – May flex between MHCB, APP, and ICF

*This location is able to flex a portion of the inpatient capacity based on treatment space.

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

# MEMORANDUM

Institutions with licensed MHCBs may be designated as I-Flex after an onsite review of programming and treatment space. All current I-Flex beds are listed on Attachment A. The Primary Use of Bed will now be reflected in SOMS as I-Flex or PIP.

Leadership at each facility with I-FLEX beds listed above is responsible for developing a Local Operating Procedure (LOP) based on the attached I-FLEX Bed LOP Template (Attachment B) to clearly designate the level of care of each patient in an I-FLEX Bed, and to provide individualized treatment meeting requirements of the designated level of care. Each facility must send their LOP to the Mental Health Policy Unit by email:  CDCR MHPolicyUnit@CDCR within 30 days of receipt of this memorandum.

Prior to operating I-FLEX beds, all staff treating patients in I-FLEX Beds must receive the standardized training from headquarters regarding policy and procedure related to treating patients at MHCB, APP, and ICF level of care. Training with staff must be completed within 60 days of the receipt of this memorandum.

If you have questions or require additional information related to this memorandum, you may contact the Mental Health Policy Unit by email:  CDCR MHPolicyUnit@CDCR.

Attachments

cc:  Steven Cartwright, Psy.D.
    Travis Williams, Psy.D.
    Wendy Worrell, Psy.D.
    Michael Golding, M.D.
    Toni Martello, M.D.
    Sophia Le, D.O.
    Daisy Minter, Ph.D.
    Gretchen Huntington, Psy.D.
    Lee Lipsker, Ph.D.
    Laurie Ball
    Jennifer Johnson
    Tennille Atchley
    Eric Baker
    Breann Cantu
    Mona Houston
    Pak Yan Leung
    Regional Mental Health Administrators
    Regional Psychiatrists
    Regional Health Care Executives

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

| **VOLUME 12:** MENTAL HEALTH SERVICES | Effective Date: | 1/4/2023 |
|---|---|---|
| **CHAPTER 11:** CORRECTIONAL TREATMENT CENTER: PSYCHIATRIC INPATIENT PROGRAM | Revision Date(s): | |
| | Supersedes: | |
| **12.11.2103** USE OF INPATIENT FLEX BEDS – MENTAL HEALTH CRISIS BED, ACUTE PSYCHIATRIC PROGRAM, AND INTERMEDIATE CARE FACILITY | Attachments: | Yes ☒ No ☐ |
| | Director Approval | DocuSigned by: **Amar Mehta** 46AE21AE5D5B4D3... |

**Policy**

To assist with inpatient level of care and least restrictive housing needs, provide timely access to care, and meet Mental Health Services Delivery System Program Guide (2021 Revision) requirements, designated inpatient beds are used as Inpatient Flex (I-FLEX) Beds. These physical beds can be used for Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), or Intermediate Care Facility (ICF) level of care (LOC) based on statewide need as determined by Corrections Services in consultation with the Statewide Mental Health Program, Inpatient Referral Unit (IRU).

**Responsibilities**

Warden and Chief Executive Officer (CEO) are responsible for developing a Local Operating Procedure (LOP) based on the attached I-FLEX Bed LOP Template (Attachment B) to clearly designate the level of care of each patient in an I-FLEX Bed, and to provide individualized treatment meeting requirements for the designated level of care.

CEO and management team are responsible for ensuring adequate staffing at the level that requires the maximum number of staff, since beds may be flexed at any time.

All staff treating patients in I-FLEX Beds must be trained on the policy and procedures related to treating patients at the MHCB, APP, and ICF levels of care.

Implementation of this policy must be done in coordination with the I-FLEX Procedures.

**Purpose[1]**

I-FLEX beds offer a more agile approach to patient needs throughout the statewide system by ensuring that patients requiring 24-hour inpatient care for mental health disorders are referred, accepted, and admitted for treatment per the Mental Health Services Delivery System Program Guide requirements, with the goal of ensuring continuity of care.

---

[1] *This policy is intended to reflect best practices in a correctional setting and should be updated periodically to incorporate insights and lessons learned from experience, and to maintain consistency with evolving best practices and new advancements in care recommendations. Nothing contained herein is intended to address what is required to satisfy constitutional obligations.*

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

| | |
|---|---|
| **References** | Mental Health Services Delivery System Program Guide – Chapters 5 and 6 |
| | Statewide Mental Health PIP Policy 12.11.2101 (A) – Referral and Admission |
| | Statewide Mental Health PIP Policy 12.11.2101 (B) – Discharge |
| | Statewide Mental Health PIP Policy 12.11.2109 – Treatment Planning and Procedures – Treatment Planning |
| | Statewide Mental Health PIP Policy 12.11.2100 – Housing Review |

| | |
|---|---|
| **Questions** | If you have any questions or need any additional information related to this policy, you may contact the policy unit via e-mail at: CDCR MHPolicyUnit@cdcr. |

| VOLUME 12:<br>MENTAL HEALTH SERVICES | Effective Date: | 1/4/2023 |
|---|---|---|
| **CHAPTER 11:**<br>CORRECTIONAL TREATMENT CENTER: PSYCHIATRIC INPATIENT PROGRAM | Revision Date(s): | |
| | Supersedes: | |
| **12.11.2103**<br>USE OF INPATIENT FLEX BEDS – MENTAL HEALTH CRISIS BED, ACUTE PSYCHIATRIC PROGRAM, AND INTERMEDIATE CARE FACILITY | Attachments: | Yes ☒ No ☐ |
| | Director Approval: | DocuSigned by:<br>Amar Mehta<br>46AE21AE5D5B4D3... |

|  | **Procedure** |
|---|---|
| **1.** | Use of I-FLEX Beds for treatment of patients requiring MHCB, Acute, or ICF Level of Care (LOC) must occur when Corrections Services, in consultation with the Inpatient Referral Unit (IRU), identifies there is bed need for a specific level of inpatient care.<br><br>Current referral and admission procedures and timelines for admission will not be impacted by the designation of I-FLEX Beds. Patients in I-FLEX Beds must be referred to a new level of care as clinically indicated, according to the Electronic Health Care Records System (EHRS) workflow and PIP Policy 12.11.2101 (A) – Referral and Admission for inpatient referrals.<br><br>If an MHCB patient in an I-FLEX Bed is referred to Acute or ICF level of care, the treatment team must change the mental health LOC (also known as MHI) and initiate Acute or ICF referral process per current procedure and prepare the patient for possible transfer to another unit where they will continue Acute or ICF care. Patients will continue to receive MHCB level of care services until endorsed and admitted to the new level of care for either APP or ICF.<br><br>When it is initially determined that beds will be designated as I-FLEX Corrections Services will notify California Department of Corrections and Rehabilitation Population Management Unit when a bed requires the I-FLEX[1] designation in the Strategic Offender Management System. Once beds are designated as I-FLEX, Corrections Services will be responsible for internally tracking beds as MHCB, APP and ICF via the Referrals to Inpatient Programs Application (RIPA). Necessary reports will be made available to I-FLEX designated inpatient programs for operational purposes. I-FLEX beds are a statewide resource, as such, Corrections Services will designate bed use and communicate it to the IRU and the Executive Director of each inpatient program. Patients must not be physically transferred within the I-FLEX unit without an endorsement and acceptance, unless such a move is needed for psychiatric emergencies (see Emergency Moves section of PIP Policy 12.11.2101 (A) – Referral and Admission).<br><br>When a patient is endorsed and admitted to a new level of care within the same facility's I-FLEX unit without moving to a different unit, the receiving treatment team is not required to complete new intake evaluations, as the patient continues to remain in the same licensed unit. The acceptance unit must initiate acceptance, admission, and housing arrival orders per PIP Policy 12.11.2101 (A) – Referral and Admission procedure<br><br>When there is bed need for multiple LOCs, I-FLEX Beds located in a MHCB must be used in the following priority order:<br><br>    1.  MHCB |

---

[1]The Primary Use of Bed will be reflected as I-Flex or PIP in SOMs

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

|  |  |
|---|---|
|  | 2. APP<br>3. ICF<br><br>When there is a bed need for multiple LOCs, I-Flex Beds located in CHCF PIP, CIW PIP, or CMF PIP must be used in the following priority order:<br><br>1. APP<br>2. ICF<br><br>CMF Health Care Treatment Center (HCTC) A/B Wing beds must be used in the following priority order:<br><br>1. ICF<br>2. APP<br>3. MHCB<br><br>San Quentin beds must be used in the following priority order:<br><br>1. APP Condemned<br>2. ICF Condemned<br>3. MHCB Condemned<br>4. APP Non-condemned<br>5. ICF Non-condemned<br>6. MHCB Non-condemned<br><br>IRU may recommend Corrections Services endorsement of patients to specific locations when Clozapine initiation/maintenance, psychological testing, and/or patients requiring dual medical and inpatient psychiatric treatment may be clinically indicated. |
| **2.** | **Changing Level of Care to Acute or ICF**<br><br>1. Patients in I-FLEX Beds must be referred to an Acute or ICF LOC as clinically indicated, consistent with PIP Policy 12.11.2101 (A) – Referral and Admission.<br><br>2. If a patient in an I-FLEX Bed is referred to a different inpatient LOC, the treatment team must change the mental health LOC and initiate Acute or ICF referral process per current procedure; and prepare the patient for possible transfer to another unit where they will continue inpatient care.<br><br>3. If a patient in an I-FLEX Bed is referred to a new LOC, and is endorsed to the same I-Flex bed at the new LOC or moving to a different I-Flex bed in the same unit, the receiving treatment team is not required to complete new intake evaluations, as the patient continues to remain in the same licensed unit. The acceptance unit must initiate acceptance, admission, and housing arrival orders per current procedure.<br><br>4. If a patient is physically transferred to a different institution due to a LOC change and endorsement, the receiving treatment team must complete mental health and medical intakes as required by California Code of Regulations, Title 22. The acceptance unit at the receiving facility must initiate acceptance, admission, and housing arrival orders per current procedure. |
| **3.** | **Provision of Treatment**<br><br>When a patient in an I-FLEX bed is referred to a different LOC, and the bed is flexed to allow the patient to receive the new level of treatment in the same bed, the patient must begin receiving |

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

|   |   |
|---|---|
|   | treatment consistent with requirements for the new LOC as soon as the patient is endorsed, accepted, and admitted at the new LOC.<br><br>Flex bed designations are managed by Corrections Services and patients will be placed in a bed that is flexed in accordance with their referred and accepted level of care. |
| **4.** | **<u>Discharges from I-FLEX Beds</u>**<br><br>1. If an Acute or ICF LOC patient in an I-FLEX Bed is discharged, the treatment team must follow discharge procedures and policy in accordance with PIP Policy 12.11.2101 (B) - Discharge. Patients will continue to receive care until the patient is physically transferred out of the I-Flex bed.<br><br>2. If a MHCB LOC patient in an I-FLEX Bed is discharged, the treatment team must follow discharge policy and procedures in accordance with the Mental Health Services Delivery System Program Guide Chapter 5 – MHCB and memorandum dated September 18, 2018 titled "Updated Mental Health Crisis Bed – Referral, Referral Rescission, and Discharge Policy and Procedures."<br><br>3. If the treatment team is discharging a patient from an I-FLEX Bed and referring the patient to Acute or ICF LOC, the treatment team must refer the patient in accordance with PIP Policy 12.11.2101 (A) – Referral and Admission; and EHRS workflow. |

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

### Designation of I-Flex Beds

Effective immediately, the following beds are designated as I-FLEX Beds:

**May flex between Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), and Intermediate Care Facilities (ICF)**

- California Health Care Facility (CHCF) MHCB – 80 beds
- CMF HCTC A/B Wing – 32 beds
- California Men's Colony MHCB – 12 beds
- San Quentin State Prison Psychiatric Inpatient Program (PIP) – 40 beds

**May flex between APP and ICF**

- All CHCF Acute – 202 beds
- All CMF Acute – 218 beds
- California Institution for Women ICF – 45 beds

Note: Number of beds are based on current designations per Corrections Services.

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

**Attachment B**

## Inpatient Flex Bed Local Operating Procedure Template

### IDENTIFICATION AND TRACKING OF INPATIENT FLEX BEDS (MHCB/APP/ICF)

Purpose:  Institutions with Inpatient Flex (I-FLEX) Beds shall clearly designate and track the level of care (LOC) of patients assigned to these beds in order to ensure that patients receive clinically appropriate care based on their mental health LOC.

Identification and Tracking Procedure

The LOC of each patient in an I-FLEX bed shall be clearly identified and monitored through use of a readily-available tracking system in real-time basis. Tracking shall specify each patient's current LOC.  Tracking shall also identify which patients are pending endorsement to a new LOC, which patients have been endorsed to current bed I-FLEX bed, and which patients have been endorsed to a different location and are awaiting transfer.
*<ADD LOCAL PROCEDURE TO IDENTIFY AND TRACK THE LOC OF EACH PATIENT IN I-FLEX BEDS>*

Information updated in the tracking system shall be communicated by/through use of
*<ADD LOCAL PROCEDURE TO COMMUNICATE BED STATUS INFORMATION/UPDATES. Examples of this may include: noting on cell door with a magnet, disseminating on a status report or end of shift report, updating on a bed map or nursing station communication board >*

The LOC of each patient in an I-FLEX bed shall be reviewed daily during
*<ADD LOCAL PROCEDURE TO BE UTILIZED TO REVIEW INFORMATION ACROSS DISCIPLINES.  Examples of this may include daily huddles or nursing rounds>*

Identification of Treatment Team Responsible for Care

When a patient in an I-FLEX bed is referred to a different level of care, and the bed is flexed to allow the patient to receive the new level of treatment in the same bed, the patient may be re-assigned to a new treatment team responsible for providing services at their new LOC.
*<ADD LOCAL PROCEDURE TO BE USED TO ASSIGN TREATMENT TEAM RESPONSIBLE FOR PATIENT CARE>*