DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:    (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
AMY XU – 330707
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
MAYA CAMPBELL – 345180
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520-KJM-DB |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S RESPONSE TO THE MAY 24, 2023 ORDER** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | Judge:  Hon. Kimberly J. Mueller |

[4367669.2]

**INTRODUCTION**

On March 9, 2023, the Special Master filed a Report and Recommendations Regarding Third Level Data Remediation Disputes, in which he addressed, *inter alia*, the parties' dispute regarding the provisionally approved key indicator entitled Transfer to STRH [Short Term Restricted Housing]/LTRH [Long Term Restricted Housing] within Timeframes (AC6).  *See* ECF No. 7755 at 16.  The dispute revolved around how to assess compliance with STRH/LTRH transfer timelines where a patient at the Correctional Clinical Case Management System (CCCMS) level of care remains in a non-mental health segregation unit for more than 30 days because of a temporary medical hold.  *Id.*  Defendants filed objections, and Plaintiffs, with leave of Court, filed a response.  *See* ECF Nos. 7805 & 7825, respectively.  On May 24, 2023, the Court issued an order referring the parties' dispute back to the Special Master for further consideration.  ECF No. 7847 at 12.  On August 8, 2023, the Special Master filed a response to the Court's May 24, 2023 Order, recommending that "[t]he medical hold exception in the existing indicator's documentation should be removed.  All transfers to STRH and LTRH units that exceed 30 days should be scored as not satisfying the 30-day transfer business requirement."  ECF No. 7907 at 15.  On September 7, 2023, Defendants filed objections.  ECF No. 7939.  Plaintiffs requested, and the Court granted, leave to respond to Defendants' objections by October 3, 2023.  Sept. 27, 2023 Minute Order, ECF No. 7973.

The purpose of this response is to alert the Court to a remedial policy relevant to the pending dispute—a September 22, 2016 Memorandum entitled "Reasons for Retaining Inmates in Segregation, Removing Medical Hold from COMPSTAT," which is incorporated into the 2021 Compendium of Custody-Related Remedial Requirements and provides "that inmates shall not be housed or retained in segregated housing due to a medical hold …."  *See* ECF No. 7333-2 at 5 & Ex. A, hereto.[1]  The September 2016

---

[1] A copy of the September 22, 2016 Memorandum is attached hereto as Exhibit A.

1    Memorandum was not considered by the Special Master or the parties during the data

2    dispute resolution process.  As set forth below, this remedial policy bolsters the Special

3    Master's conclusion that "the March 3, 2016 Memorandum [entitled 'Transfer of

4    Correctional Clinical Case Management System Inmate-Patients to Male Short Term

5    Restricted Housing Units,' *see* 2021 Program Guide, ECF No. 7333-1 at 456-58] is

6    insufficient to create an exception to the rule that all STRH/LTRH patients (male and

7    female) transfer within 30 days."  ECF No. 7907 at 8-9.  The Court should adopt the

8    Special Master's recommendation as to the Transfer to STRH/LTRH within Timeframes

9    (AC6) indicator.  *See id.* at 15.

10   **I.       STANDARD OF REVIEW**

11           The Special Master's August 8, 2023 Response to the Court's May 24 Order

12   includes findings regarding the data remediation process to support his recommendations

13   regarding the outcome of the Transfer to STRH/LTRH within Timeframes (AC6) indicator

14   dispute now before the Court, and is therefore a compliance report within the meaning of

15   the Order of Reference.  *Cf.* Mar. 27, 2020 Order, ECF No. 6539 at 3; Order of Reference,

16   ECF No. 640 at 4.  The Order of Reference provides that "the court shall accept the special

17   master's findings of fact unless they are clearly erroneous."  *Id.* at 8.  A finding is "clearly

18   erroneous if, on review of the entire evidence, the reviewing court arrives at the firm

19   conviction that the finding is mistaken."  *In re U.S.A. Motel Corp.*, 450 F.2d 499, 503 (9th

20   Cir. 1971); *see also McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) ("To

21   be clearly erroneous, a decision must strike the court as more than just maybe or probably

22   wrong; it must … strike [the court] as wrong with the force of a five-week-old,

23   unrefrigerated dead fish." (internal citations and quotation marks omitted)).  The objecting

24   party has the burden of proving clear error.  *See Oil, Chemical & Atomic Workers Int'l*

25   *Union v. N.L.R.B.*, 547 F.2d 575, 580 (D.C. Cir. 1976).

26           Moreover, this Court has held that the provisionally approved key indicators should

27   "replicate[] the corresponding information captured by the Special Master in his

28   monitoring reports," and that "any disputes over [his] decisions will be reversed by the

[4367669.2]                                      2

1   court only if the decisions are clearly erroneous." *See* May 24, 2023 Order, ECF No. 7847

2   at 8-9.  Defendants' Objections do not acknowledge this holding, nor include a

3   certification that Defendants' counsel reviewed the entirety of the May 24, 2023 Order in

4   preparation of their filing.  *See generally* ECF No. 7939.

5   **II.    THE SPECIAL MASTER'S FINDINGS ARE NOT CLEARLY**
       **ERRONEOUS, ESPECIALLY IN LIGHT OF THE SEPTEMBER 2016**
6      **MEMORANDUM**

7              On September 21, 2023, while drafting comments on Defendants' draft EOP and

8   CCCMS Restricted Housing Unit ("RHU") policies, Plaintiffs located a short, one-page

9   remedial policy in the Compendium of Custody-Related Remedial Requirements entitled

10  "Reasons for Retaining Inmates in Segregation, Removing Medical Hold from

11  COMPSTAT," dated September 22, 2016.  *See* ECF No. 7333-2 at 5; *see also* Decl. of

12  Cara E. Trapani In Support of Pls. Resp. to Defs.' Objections ("Trapani Decl.), filed

13  herewith, ¶ 2.  Plaintiffs alerted Defendants and the Special Master to the existence of this

14  memorandum on September 21, 2023, as neither the parties, nor the Special Master, appear

15  to have considered it in prior stages of the dispute resolution process.  *Id*.  Defendants

16  responded to Plaintiffs' notice later that same day and argued that the memorandum is not

17  relevant.  *Id.* ¶ 3.  Plaintiffs disagree.

18             The operative portion of the September 2016 Memorandum provides:

19             The purpose of this memorandum is to reiterate that inmates shall not be
               housed or retained in segregated housing due to a medical hold or pending
20             Department of State Hospital Placement.  Reasons for placement in
               segregated housing are detailed in California Code of Regulations, Title 15,
21             Section 3335, *Administrative Segregation.*

22  Exhibit A at 1.  This prohibition on retaining incarcerated people is segregation due

23  solely to a medical hold is highly relevant to the instant dispute.  While the

24  September 2016 Memorandum does not ban retention of an incarcerated person in

25  segregation who has both a medical hold *and* a valid retention reason in accordance with

26  Title 15, this remedial policy recognizes the danger of segregation to incarcerated

27  people's well-being—particularly those with a mental illness.  This risk of harm

28  contributed to CDCR developing, and the Court adopting as part of the Program Guide, a

[4367669.2]
                                              3

1   short 30-day transfer timeframe for CCCMS class members to move from non-mental

2   health segregation units to the more protective STRH and LTRH units, which are

3   required to offer enhanced mental health treatment and out of cell activities to CCCMS

4   patients.  *See* 2021 Program Guide, ECF No. 7333-1 at 450-54.

5          The September 2016 Memorandum is not limited to a particular housing unit, and

6   post-dates CDCR's creation of the STRH and LTRH units in 2015 (*see id.* at 450).

7   Accordingly, CCCMS patients waiting to move to the correct segregation setting are

8   covered by this policy.  Nor is the September 2016 Memorandum limited to a particular

9   level of mental health care, unlike the March 2016 Memorandum, which only applies to

10  male STRH units, as Defendants concede.  *See* ECF No. 7939 at 6 ("[T]he Special Master

11  notes, correctly, that the 2016 policy on its face applies only to male and STRH transfers,

12  and not to female or LTRH transfers.").  Accordingly, the memorandum's policy against

13  retaining patients in segregation solely due to medical holds lends support to the Special

14  Master's interpretation of the Program Guide that there are no allowable exceptions to the

15  30-day STRH/LTRH transfer timelines.  *See* ECF No. 7907 at 8-9.

16         Both the Special Master's conclusion and the September 2016 Memorandum align

17  with this Court's finding, after trial, in 2014 that "placement of seriously mentally ill

18  inmates in California's segregated housing units can and does cause serious psychological

19  harm, including decompensation, exacerbation of mental illness, inducement of psychosis,

20  and increased risk of suicide."  Apr. 10, 2014 Order, ECF No. 5131 at 45-46.  These

21  concerns are as urgent now as they were nine years ago.  Of the 22 incarcerated people

22  who, to date, have died by suicide in CDCR in 2023 alone, five suicides (23%) occurred in

23  segregated housing, and seven people (32%) were at the CCCMS level of care when they

24  died.  *See* Trapani Decl. ¶ 5.  While Defendants cite a lengthy policy defining medical

25  holds in their Objections, they fail to mention that the definition of "Temporary Medical

26  Hold" that Defendants developed for the purpose of data remediation is very broad, can

27  last for up to six months, and covers non-urgent medical care with no attempt to balance a

28  patient's mental health needs.  *See* ECF No. 7755-1 at 10.  Allowing CCCMS patients to

[4367669.2]

4

1   remain in a non-mental health segregation setting for months on end with no mental health

2   care for broadly defined medical reasons should not be scored as "compliant" under this

3   indicator.  Defendants have not established that the Special Master's recommendation

4   reaching the same conclusion is clearly erroneous.  As such, this Court should adopt it.[2]

5                                                     **CONCLUSION**

6         For all the foregoing reasons, the September 22, 2016 Memorandum entitled

7   "Reasons for Retaining Inmates in Segregation, Removing Medical Hold from

8   COMPSTAT," which is included in the Compendium of Custody-Related Remedial

9   Requirements, *see* ECF No. 7333-2 at 5, supports the Special Master's findings and

10  recommendations regarding the AC6 indicator and establishes that they are not clearly

11  erroneous.  Accordingly, the Court should adopt the Special Master's recommendation that

12  that "[t]he medical hold exception in the existing indicator's documentation should be

13  removed" and "[a]ll transfers to STRH and LTRH units that exceed 30 days should be

14  scored as not satisfying the 30-day transfer business requirement."  ECF No. 7907 at 15.

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24

25  ───────────────────────

26  [2] If the Court declines to adopt the Special Master's recommendation (it should not),
    Plaintiffs respectfully request that the Court adopt Defendants' proposals from earlier this
    year to set up automated alerts to clinicians whenever a CCCMS patient remains in a non-

27  mental health segregation setting for more than 30 days due to a medical hold, and to
    create an unusual events flag that identifies when medical holds occur.  *See* ECF No. 7805

28  at 6-7.

[4367669.2]

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION**

The undersigned counsel for Plaintiffs certifies that she reviewed the following orders relevant to this filing:  ECF Nos. 640, 5131, 6539, 7847, 7973.

DATED:  October 3, 2023                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By:  */s/ Cara E. Trapani*
       Cara E. Trapani

Attorneys for Plaintiffs

[4367669.2]

6

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S RESPONSE TO
THE MAY 24, 2023 ORDER

# Exhibit A

State of California                                                    Department of Corrections and Rehabilitation

# Memorandum

Date  :   September 22, 2016

To    :   Associate Directors, Division of Adult Institutions
          Wardens
          Chief Executive Officers
          Classification & Parole Representatives

Subject:   **REASONS FOR RETAINING INMATES IN SEGREGATED HOUSING**

The purpose of this memorandum is to reiterate that inmates shall not be housed or retained in segregated housing due to a medical hold or pending Department of State Hospital placement.  Reasons for placement in segregated housing are detailed in California Code of Regulations, Title 15, Division 3, Section 3335, *Administrative Segregation*.

The COMPSTAT Administrative Segregation Unit (ASU) tracking system has been modified by removing "Medical Hold" as an option for retaining inmates in segregated housing.

If you have any questions relative to COMPSTAT ASU, please contact Angella Debusk, Correctional Counselor III, Classification Services Unit, at (916) 445-0373 or Angella.DeBusk@cdcr.ca.gov.  For questions regarding medical holds, please contact Jay Powell, Captain, Health Care Population Management Unit, at (916) 691-0336 or Jay.Powell@cdcr.ca.gov.


KATHLEEN ALLISON                        JOHN DOVEY
Director                                Director
Division of Adult Institutions          Corrections Services
                                        California Correctional Health Care Services


cc:  Connie Gipson
     Jeff Macomber
     Katherine Tebrock
     Joseph Williams
     Jay Powell
     Angella Debusk
     Regional Health Care Executives
     Regional Mental Health Administrators


* CDC 1617 (3/89)