| | |
|---|---|
| 1  Rob Bonta, State Bar No. 202668<br>   Attorney General of California<br>2  Monica N. Anderson, State Bar No. 182970<br>   Senior Assistant Attorney General<br>3  Damon McClain, State Bar No. 209508<br>   Supervising Deputy Attorney General<br>4  Elise Owens Thorn, State Bar No. 145931<br>   Namrata Kotwani, State Bar No. 308741<br>5  Deputy Attorneys General<br>     1300 I Street, Suite 125<br>6    P.O. Box 944255<br>     Sacramento, CA 94244-2550<br>7    Telephone: (916) 210-7318<br>     Fax: (916) 324-5205<br>8    E-mail: Elise.Thorn@doj.ca.gov<br>   *Attorneys for Defendants* | HANSON BRIDGETT LLP<br>PAUL B. MELLO, SBN 179755<br>SAMANTHA D. WOLFF, SBN 240280<br>KAYLEN KADOTANI, SBN 294114<br>LAUREL O'CONNOR, SBN 305478<br>DAVID C. CASARRUBIAS, SBN 321994<br>CARSON R. NIELLO, SBN 329970<br>1676 N. California Blvd., Suite 620<br>Walnut Creek, California 94596<br>Telephone:   925-746-8460<br>Facsimile:    925-746-8490<br>*Attorneys for Defendants* |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.<br><br>        Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO LIFT INJUNCTION HALTING VRJS/FALCON TOURS**<br><br>Judge:   Hon. Kimberly J. Mueller |

19981656.3

DEFS.' MOT. TO LIFT INJUNCTION HALTING TOURS

**TABLE OF CONTENTS**

Page

I. NOTICE OF MOTION AND MOTION TO LIFT INJUNCTION HALTING VRJS/FALCON TOURS ...................................................................................................1

II. INTRODUCTION...........................................................................................................1

III. RELEVANT FACTS .......................................................................................................2

    A. Background of VRJS/Falcon's Retention and Project ..............................................2

    B. Despite Defendants' good faith attempts to address and resolve Plaintiffs' concerns about the VRJS/Falcon tours, the parties could not agree on all aspects of the tours. ...............................................................................................4

    C. Relevant Procedural History ....................................................................................5

IV. LEGAL ARGUMENT .....................................................................................................6

    A. The order prohibiting Defendants' expert tours should be lifted because the basis for the court's order is now moot. .......................................................6

    B. The VRJS/Falcon Tours should resume immediately because Defendants have an absolute right to self-monitor and evaluate their facilities and operations. ...............................................................................................................6

    C. These tours are not impermissible discovery for which leave of court is required................................................................................................................8

    D. Defendants and their experts have been, and will continue to be, unduly prejudiced if the VRJS/Falcon tours are not permitted to continue. .........................9

    E. When the tours restart, VRJS/Falcon should be permitted to observe 1:1 patient treatment sessions. ....................................................................................11

V. CONCLUSION ..............................................................................................................12

VI. CERTIFICATION..........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Wolfish*,
    441 U.S. 520 (1979) .................................................................................................... 8

*Doe v. Eli Lilly & Co., Inc.*,
    99 F.R.D. 126 (D.D.C. 1983) ..................................................................................... 8

I. **NOTICE OF MOTION AND MOTION TO LIFT INJUNCTION HALTING VRJS/FALCON TOURS**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants hereby move this Court for an order lifting the stay previously imposed by this Court on further prison tours to be conducted by Defendants' retained experts from Voorhis Robertson Justice Services and Falcon, Inc. (VRJS/Falcon). ECF No. 7918. Because all parties have agreed to waive the hearing on this motion, Defendants further request that the Court issue its ruling on this motion on the briefing once it is complete. Defendants' motion is based on this Notice, their supporting Memorandum of Points and Authorities, the Declarations of Samantha Wolff and Elizabeth Falcon, Psy.D., filed herewith, and the records on file in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

II. **INTRODUCTION**

All parties, the Special Master, and their respective counsel and experts, are no strangers to touring Defendants' prison facilities for purposes of monitoring and evaluating the provision of mental health care and services to incarcerated persons. Historically, these tours can last several days at each institution and include, among other things, inspections of Defendants' facilities; interviews of staff and patients; and observations of treatment sessions.

In April 2023, Defendants notified Plaintiffs and the Special Master that they had retained an expert group from Voorhis Robertson Justice Services and Falcon, Inc. ("VRJS/Falcon") to conduct a system-wide study of CDCR's mental health care system that would likely include prison tours slated to begin in July 2023. Plaintiffs' counsel and the Special Master both stated they would attend these tours, without objection, requesting only that they receive notice of when the tours were scheduled. In June 2023, Defendants' counsel provided such notice. Thereafter, however, Plaintiffs' counsel sought to place unreasonable and baseless restrictions on VRJS/Falcon's study, including refusing to permit silent observation of treatment or patient interviews. Defendants attempted to work with Plaintiffs' counsel to resolve their concerns, yet these restrictions continued even after Defendants agreed to obtain patient consent to observe

confidential and non-confidential treatment and agreed that Plaintiffs' counsel could meet privately with each patient before any patient interviews, among other concessions. Only after the tours commenced, over a month after Plaintiffs were first notified of the timing of the tours, did Plaintiffs' counsel also argue that these tours were too burdensome in light of the enforcement proceedings set for the end of September 2023 and constituted impermissible discovery. In response, the court, without responding to the merits of the dispute, suspended the VRJS/Falcon tours until the completion of the enforcement proceedings.

Now that the enforcement proceedings have concluded the basis for the court's stay of the VRJS/Falcon tours is moot. Thus, for this reason alone, the court should lift the stay and permit the tours to proceed immediately and without any of the unreasonable restrictions demanded by Plaintiffs.

Furthermore, Plaintiffs' contention that the VRJS/Falcon tours require leave of court because they constitute impermissible discovery is meritless because Defendants have the right to evaluate and monitor their own facilities and operations, regardless of the purpose. Indeed, Defendants previously hired the same experts who conducted tours in 2021 without objection from Plaintiffs' counsel.

In sum, the Court should lift the injunction and allow Defendants' tours to continue. There is no legal basis to prohibit Defendants from undertaking this self-evaluation and Defendants have been and will continue to be unfairly prejudiced by a continued stay of these tours.

## III.    RELEVANT FACTS

### A.    Background of VRJS/Falcon's Retention and Project

In September 2020, Defendants notified the court, Plaintiffs, and the Special Master that Defendants retained experts from VRJS/Falcon to provide consultation and, if necessary, expert testimony for the court's July 30, 2020 Order concerning the 2009 Staffing Plan. ECF No. 6853 at 33:5-7. At that time, Defendants also explained in detail the anticipated scope of VRJS/Falcon's project, including touring Defendants' prisons. *See* ECF No. 6855-1. While the underlying purpose of VRJS/Falcon's initial retention was in relation to the 2009 Staffing Plan, the Court "accept[ed] defendants' representation at hearing that the staffing tours will be conducted

consistent with Dr. Mehta's ongoing responsibilities as Deputy Director of Mental Health Care to *continue to improve CDCR's delivery of mental health care to class members*, to anticipate and solve any issues related to staffing, and to inform defendants' participation in the court-ordered settlement process." ECF No. 7283 at 4:3-7 (emphasis added). Thereafter, from August through September, 2021, tours were conducted with Plaintiffs' counsel present. Decl. of Samantha Wolff at ¶ 2. Notably, at that time, neither Plaintiffs, the Special Master, nor the Court contended that these 2021 tours constituted impermissible discovery. *Id.*

After concluding its initial study, VRJS/Falcon found that CDCR's Program Guide exceeded nationwide standards for providing patient care in a correctional setting, including the Program Guide's staffing level requirements. ECF No. 7884, ¶ 4. However, VRJS/Falcon "recommended that 'CDCR undertake a broader, systemwide study of mental health care delivery to more fully understand how services are delivered, the quality of care delivered, and how Program Guide requirements are conducted on site.'" *Id.* (quoting VRJS/Falcon's August 26, 2022 memo. at pg. 3). "[T]he primary objective of this [proposed] study is to gain a comprehensive understanding of the mental health systems and the day-to-day delivery of services within the CDCR. . . . The conclusions derived from this study will offer an unbiased and objective assessment of the functioning of CDCR's MHSDS at both the systemic and facility levels, allowing for meaningful comparisons to external correctional and community standards." ECF No. 7884, ¶ 12.

To conduct this broader evaluation, CDCR authorized VRJS/Falcon to retain a large and diverse team of experts in various fields, including behavioral health, psychiatry, security, operations, nursing, programming, staffing, and data analytics. *Id.*, ¶ 5. The study entails reviewing data, surveying national and state standards, conducting data validation, interviewing CDCR employees, reviewing charts, conducting facility studies, interviewing patients, and observing treatment. *Id.*, ¶ 6. The on-site facility tours, including the patient interviews and treatment observations, are critical to this study. *Id.*, ¶¶ 7, 9. Indeed, according to Elizabeth Falcon, Psy.D., one of the principals leading this study, patient interviews and direct 1:1 observation are standard practices and immensely important in evaluating mental health systems.

1  *Id.*, ¶ 7. "To fully comprehend the quality of care, it is essential to assess the systems in place and
2  the actual process, and the quality of the *delivery* itself." *Id*. (emphasis in original.)

3  In April 2023, Defendants' counsel notified Plaintiffs' counsel and the Special Master that
4  VRJS/Falcon would "conduct a broader, systemwide study of the [MHSDS]," which "*will likely*
5  *include on-site visits in the future – currently estimated to begin in July 2023*." ECF No. 7885, ¶ 2;
6  7885-1, pg. 4 (emphasis added). In response, Plaintiffs' counsel and the Special Master indicated
7  they would attend these site visits without objection and requested only that they be notified of the
8  tour dates. ECF Nos. 7885, ¶ 2; 7885-2. VRJS/Falcon's tours would conduct its tours in a similar
9  way to how the Special Master's experts, Plaintiffs' experts, and Defendants' telepsychiatry expert
10 conducted theirs in the recent past:  they would observe group and individual treatment sessions,
11 tour areas where mental healthcare is delivered, and speak with clinical staff and patients where
12 appropriate. ECF Nos. 7885, ¶ 9; 7884 ¶¶ 7, 9.

13        **B.    Despite Defendants' good faith attempts to address and resolve Plaintiffs'
              concerns about the VRJS/Falcon tours, the parties could not agree on all
14            aspects of the tours.**

15  On June 13, 2023, Defendants' counsel provided Plaintiffs' counsel with the specific dates
16 and locations for the initial VRJS/Falcon tours set to occur in July and August 2023. ECF No.
17 7885, ¶ 3. The following week, Defendants' counsel followed up to provide start times for the
18 scheduled tours and asked if Plaintiffs had any objection to VRJS/Falcon interviewing patients as
19 part of the tours. ECF Nos. 7885, ¶ 3; 7885-4.

20  The parties negotiated back and forth via email and videoconference over the course of the
21 next couple weeks regarding the scope and substance of the tours. As part of these discussions,
22 Defendants' counsel provided information requested by Plaintiffs' counsel relating to: (1) the
23 names of the clinician-consultants who would be conducting the interviews, (2) the purpose of the
24 interviews (*i.e*., "to assist the Falcon team in evaluating CDCR's MHSDS" and explaining that
25 "[p]art of their evaluation will involve an assessment of patient quality of care, and include patient
26 interviews" because "patients' honest feedback regarding their experiences receiving care at
27 various levels would help the experts make that assessment and could provide valuable insight
28 into patient perspectives"), (3) sample interview questions, (4) the patient selection methodology,

1  and (4) the methodology regarding the number of patient interviews that would be conducted at
2  each institution.. ECF Nos. 7885, ¶ 5; 7885-6, pg. 2.

3  On July 6, 2023, Defendants outlined the parties' areas of agreement and disagreement via
4  email. ECF Nos. 7885, ¶ 7; 7885-8 at pgs. 22-24. As of that date, the parties had agreed that
5  Defendants' experts may interview patients, Plaintiffs' counsel may meet with their clients
6  privately before interviews occurred, that the interviews would be recorded, and set parameters on
7  the timing recordings would be provided to counsel and who may have access to those recordings,
8  among other areas of agreement. ECF No. 7885-8 at pgs. 23-25. Plaintiffs' counsel raised
9  concerns with the experts' silent observation of 1:1 treatment but also agreed to permit observation
10 of intake and screening, IDTTs, and group treatment with Plaintiffs' counsel present and with
11 patient consent. ECF Nos. 7885, ¶ 8; 7885-8, pgs. 15-16.

12 Thereafter, counsel for the parties exchanged several more emails to resolve Plaintiffs'
13 remaining concerns. ECF No. 7885-8, pgs. 1-15. Unfortunately, these discussions broke down and
14 Plaintiffs' counsel ultimately rescinded their prior agreements and demanded that Defendants
15 immediately stop the tours to present the issues to the Court for resolution. *Id.*

16 **C.    Relevant Procedural History**

17 On July 25, 2023, the parties filed a joint statement with supporting declarations regarding
18 their disputes over the VRJS/Falcon tours. *See*, ECF Nos. 7883-7893. On July 28, 2023, the court
19 issued an Order immediately suspending the VRJS/Falcon tours pending further discussion of the
20 matter at the August 10, 2023 status conference. ECF No. 7897 at 1:21-22.

21 During the August 10 status conference, the court stated its intention to continue its stay of
22 the VRJS/Falcon tours in light of the forthcoming contempt proceedings set for hearing on
23 September 29, 2023. Reporter's Transcript of Pre-Hearing Status Conference (Aug. 10, 2023) at
24 28:5-8. A few days later, the court issued an Order confirming that "[t]he July 28, 2023 stay of the
25 VRJS/Falcon expert tours is CONTINUED until further order of court" and instructed that unless
26 the court approves a stipulation between the parties governing the resumption and conduct of the
27 tours, the court would discuss resumption of the tours following the September 29, 2023 contempt
28 proceedings, including the scheduling for motion practice as necessary. ECF No. 7918 at 2:18-25.

19981656.3

5

DEFS.' MOT. TO LIFT INJUNCTION HALTING TOURS

On September 1, 2023, Defendants' counsel attempted to continue meet and confer discussions with Plaintiffs' counsel about the VRJS/Falcon tours, but those efforts were rejected as Plaintiffs' counsel declined to discuss these issues until after the upcoming contempt proceedings. Wolff Decl., ¶ 4. At the conclusion of the contempt proceedings on October 7, 2023, the Court instructed that Defendants may file a motion and seek expedited hearing if the parties were unable to agree upon a schedule. *Id.*

## IV. LEGAL ARGUMENT

### A. The order prohibiting Defendants' expert tours should be lifted because the basis for the court's order is now moot.

As discussed during the August 10, 2023 pre-enforcement hearing and confirmed in the court's subsequent order, ECF 7918, the basis for the court's ruling to continue the "stay" of the VRJS/Falcon tours was to keep the parties focused on the September 29th enforcement proceedings. *See* Reporter's Transcript of Pre-Hearing Status Conference (Aug. 10, 2023) at 28:5-8, 18-19 ("I think all attention should be on the September 29 proceedings at this point"), 29:8-14 (similar); ECF 7918 at 2:13-22 ("[I]t is critically important that all the parties' and the court's resources remain focused on preparing to address the issues presented by the upcoming enforcement proceedings . . . ."). Now that the enforcement proceedings have concluded and sufficient time and resources can be devoted towards the VRJS/Falcon tours, the grounds for keeping the stay in place are now moot. Accordingly, the court should immediately lift the stay and allow the VRJS/Falcon tours to resume.

### B. The VRJS/Falcon Tours should resume immediately because Defendants have an absolute right to self-monitor and evaluate their facilities and operations.

Defendants have the right to self-monitor and evaluate their own facilities and operations, which is the very purpose of these tours. Just as a property owner is free to inspect her own property or a businessowner can evaluate the operations of her own business, Defendants should be free to tour, inspect, and evaluate their properties and operations without preapproval of the court. This concept becomes even more significant and obvious where the Defendants have a responsibility to "'*self*-monitor, and as necessary, *self*-correct inadequacies in the delivery of

mental health care.'" ECF No. 6846 at 10:17-18 (discussing that Defendants' development and implementation of an improved quality improvement process is fundamental to ending federal oversight), quoting Feb. 27, 2014 Order, ECF No. 5092, at 4-5 (emphasis added). Defendants are not aware of any order or agreement in this case that requires them to obtain preapproval to perform such self-evaluations of their own system.

      Yet, Defendants have nevertheless provided Plaintiffs, the Special Master and the court with substantial information about the purpose, scope, and other relevant details about the tours. Indeed, Defendants responded in full to each of Plaintiffs' questions and requests for clarification. Although not required to do so, Defendants explained why they engaged VRJS/Falcon for this study: VRJS/Falcon recommended that Defendants undertake "a broader, systemwide study of mental health care delivery to more fully understand how services are delivered, the quality of care delivered, and how Program Guide requirements are conducted on site.'" ECF No. 7884, ¶ 4 (quoting August 26, 2022 memo. at pg. 3.)[1] Defendants' counsel has further explained that the study is meant to aid Defendants in their continuing responsibility to self-monitor the delivery of mental health care to CDCR patients and, if necessary, make corrections to any inadequacies. ECF No. 7883 at 7:2-5 (citing ECF No. 6846 at 10.) Defendants' counsel also explained that the proposed patient interviews are a necessary component of the experts' evaluation of CDCR's MHSDS because a "patients' honest feedback regarding their experiences . . . would help the experts make [an assessment of the quality of care provided to patients] and could provide valuable insights into patient perspectives." ECF No. 7885-6, pg. 2.

      Further, Defendants have been entirely transparent with all tour details, including the timing and scope, and have offered Plaintiffs and the Special Master the opportunity to attend. Thus, contrary to concerns raised by the Court from prior tours, ECF No. 7897 at 3:5-24, there is no risk here of secret or unilateral defense tours, improper *ex parte* communications, or similar

---

[1] *See also*, *id*., ¶ 12 ("the primary objective of this study is to gain a comprehensive understanding of the mental health systems and the day-to-day delivery of services within the CDCR. This involves a wide-ranging assessment that extends beyond the simple review of policies, procedures, chart reviews, dashboards and reports. Direct observations of services, assessments and interventions are integral components of this process.")

1  issues. In addition, although the Court expressed concern that the tours may relate to a motion to
2  modify or terminate, Defendants have not decided whether to make that motion. *See* ECF No.
3  7885-1, pg. 4. Depending on VRJS/Falcon's findings and recommendations (if any), it is *possible*
4  that Defendants may decide in the future to bring a motion to terminate in whole or in part, at
5  which time Defendants will provide the requisite six months' notice set forth in the court's
6  February 21, 2018 order. *Id*. And the mere possibility that Defendants *may* at some point in the
7  future decide to seek termination or modification of this case should not preclude Defendants from
8  taking affirmative steps to self-monitor and evaluate their mental healthcare system through the
9  work of VRJS/Falcon.

      **C.  These tours are not impermissible discovery for which leave of court is required**

12  Plaintiffs' argument that the tours constitute impermissible discovery lacks merit. It is
13  well-established that a party's own investigation and fact development in litigation do not
14  necessarily constitute discovery as defined in the FRCP. *See, e.g., Doe v. Eli Lilly & Co., Inc.*, 99
15  F.R.D. 126, 128 (D.D.C. 1983) ("while the [FRCP] have provided certain specific formal methods
16  of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to
17  preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a
18  witness who is willing to speak"). That information derived from tours may be used if Defendants
19  seek to terminate the case does not transform it into "impermissible discovery." Indeed,
20  Defendants' regularly produced reports on staffing and transfer timelines could also be relevant
21  for such a motion, yet no party has contended those reports are governed by relevant discovery
22  rules. Moreover, Defendants must be permitted to evaluate and assess their own systems, and
23  make policy changes where appropriate. Judicial pre-approval of such tasks that do not modify the
24  Program Guide, Compendium, or court orders is not required; to the contrary, "the operation of
25  our correctional facilities is peculiarly the province of the Legislative and Executive Branches of
26  our Government, not the Judicial." *Bell v. Wolfish*, 441 U.S. 520, 548 (1979).
27  Defendants are also unaware of any order in this case that has found that self-monitoring
28  tours (particularly where Plaintiffs' counsel are present) constitute impermissible discovery. *Cf.*

ECF No. 5774, at 3:2-7 (ruling that self-monitoring tours without Plaintiffs' counsel present may open the door to *future* discovery). Defendants are likewise not aware of any rule or decision in this case that enjoins their ability to engage expert consultants to assist Defendants in self-monitoring and evaluating their own MHSDS. Tellingly, at no point has the Special Master suggested that the tours were improper because Defendants had not obtained court approval, and Plaintiffs raised this argument for the first time after a lengthy weeks-long meet and confer about the scope and conduct of the tours proved to be unsuccessful. Wolff Decl. ¶ 3. In fact, Plaintiffs' counsel attended tours at four institutions before raising this concern and before the court entered the stay. *Id.* Thus, Plaintiffs' unsupported and belated suggestion that the tours are impermissible discovery should be rejected.

Accordingly, as there is no basis to prevent Defendants from self-monitoring through the VRJS/Falcon study, the court should lift the stay and allow the tours to resume without further delay.

### D. Defendants and their experts have been, and will continue to be, unduly prejudiced if the VRJS/Falcon tours are not permitted to continue.

Defendants have made significant efforts to coordinate and plan the VRJS/Falcon tours, including coordinating schedules and logistics among the CDCR facilities, approximately 30 experts, and counsel. ECF No. 7885, ¶ 11. Defendants have also attempted to give Plaintiffs and the Special Master approximately four weeks' advance notice of the tour schedule, and sometimes even longer, to accommodate their stated intention to attend the tours. *Id*. Further delays will preclude Defendants from completing the system-wide evaluation of CDCR's MHSDS proposed by VRJS/Falcon, and will therefore interfere with Defendants' responsibility to self-monitor and self-correct any deficiencies.

Defendants' experts have also been, and will continue to be, unduly prejudiced by the stay of these tours. As explained by Elizabeth Falcon, Psy.D., the team hired approximately 30 experts to collaborate on this study. ECF No. 7884, ¶ 5. These experts are nationally recognized leaders in the industry and "are in extremely high demand, especially those with [other] part-time and full-time jobs." *Id.* All experts had to clear their schedules months ago in order to accommodate the

work required for this study. *Id*. Unsurprisingly, "delays of several weeks or more will have detrimental effects on this study, resulting in diminished availability of experts and compromising the integration and completeness of the data collection." *Id*.

Furthermore, the expert team has already put in approximately eight months of work towards the development of a scientifically validated tool methodology in order to establish an impartial and independent framework for studying CDCR's MHSDS and its facilities. *Id*., ¶ 6. Now the expert team is prepared to engage in the next step – the tours – which "will enable them to fully refine and solidify their expert impressions." *Id*. However, Dr. Falcon is concerned that this delay and any further delays will likely result in losing these highly-recruited experts to other industry projects. Declaration of Elizabeth Falcon, Psy.D., Supp. Defendants' Motion to Lift Stay ("Falcon Decl. re Stay"), ¶¶ 4, 5. A potential loss of experts at this stage would have significant implications for the evaluation process because the experts assigned to the study have not only been trained in the Program Guide and workflows but have also gained experience and partially evaluated the system through extensive health record reviews. *Id.* at ¶ 6. Replacing a significant proportion of experts would result in a loss of specific expertise in CDCR behavioral health practices and documentation. *Id.* The insights and recommendations provided by the experts who have gone through the entire study without disruption are crucial for enhancing the effectiveness of the program. *Id.* Losing these experts could result in a less comprehensive and thorough evaluation overall. *Id.* Further delays in conducting facility studies will inevitably require more time to re-orient the expert team and re-evaluate items that have already been assessed. *Id.* at ¶ 7.

In addition, the contemplated patient interviews and 1:1 treatment observations are also critical components of this study for a variety of reasons, including as a potential confirmatory mechanism to assess whether the intended work aligns with the actual practice implemented; to shed light on existing barriers and uncover potential opportunities for improvement; to assess the systems in place, the actual process, and the quality of the delivery of care itself to CDCR patients; among others. ECF No. 7884, ¶¶ 7-9. The delays in collecting data from the prison tours create a disconnect with the other non-tour data previously collected by VRJS/Falcon, leading to fragmented data sets that lack context, incomplete information, an inability to capture evolving

conditions, limited perspective, and missed opportunities for follow-up investigations. Falcon Decl. re Stay, ¶ 8. The investment in time and resources by Defendants and the VRJS/Falcon team are significant and should not be ignored.

### E. When the tours restart, VRJS/Falcon should be permitted to observe 1:1 patient treatment sessions.

From approximately June 20, 2023 to July 10, 2023, counsel for the parties engaged in significant meet and confer efforts, both through written correspondence and video conference, to negotiate the scope and conduct of the proposed VRJS/Falcon tours. *See generally,* ECF No. 7885. However, Plaintiffs' counsel refused to permit experts from the VRJS/Falcon team to silently observe 1:1 patient treatment, despite the fact that prior defense experts and members of the Special Master's team have observed 1:1s in the past without objection from Plaintiffs' counsel, and despite agreements by Defendants that said observations will only occur with patient consent and both Plaintiffs' counsel and an expert from the Special Master's team could also sit in for the 1:1 observation (without defense counsel present). ECF No. 7885, ¶¶ 8, 12.

If sustained, Plaintiffs' objections to the observation of 1:1 treatment would eliminate an important element of CDCR's self-evaluation of its MHSDS, and would significantly impact the important work being performed by the VRJS/Falcon team. ECF No. 7884, ¶¶ 7, 10. In fact, the limitations and restrictions proposed by Plaintiffs are unheard of in this context. According to Elizabeth Falcon, Psy.D.:

> I personally and those who work for my company have been employed by scores of other jurisdictions – jails and state prisons alike – across the country to conduct neutral evaluations of their delivery of mental health services. My experts have practiced as clinical supervisors, regional administrators, facility and statewide leadership, quality assurance specialists, surveyors and expert witnesses in many arenas—and **I and my experts have never heard of, nor personally experienced, the types of limitations that Plaintiffs' counsel are seeking to impose here – including exclusion from silently observing 1:1 treatment, demanding written informed consent, and requiring a written script for verbal informed consent, among other things**. In fact, I obtained feedback from our highest-level experts assigned to this project called the Formulation Team. In addition to serving as senior clinicians and administrators, Chiefs of Mental Health or Psychiatry, representing well over a dozen department-of-corrections, these experts have served in evaluative roles, conducting surveys for The Joint Commission on Accreditation of Healthcare Organizations, ACA, NCCHC and

providing technical assistance to prison systems which **all relied upon observation of care delivery processes**.

ECF No. 7884, ¶ 10 (emphases added.) VRJS/Falcon needs to review the systems in place and the quality of the process – in other words, the quality of the *delivery* of care. *Id.*, ¶ 7.

Indeed, Plaintiffs' objections to the scope of this study are a reversal from their previous positions in this case. In 2018, Plaintiffs filed a motion regarding future prison tours and stated "**it is unclear how the experts could be expected to [conduct an analysis] without ever observing the care provided**." ECF No. 5764-1 at 12:24-13:4 (emphasis added). Thus, the parties are in agreement that observation of patient care is a necessary component of such an evaluation. Plaintiffs' sudden shift on this issue is unsettling. The court should reject Plaintiffs' objections to the experts' observations of 1:1 treatment sessions.

## V.     CONCLUSION

Defendants request that the injunction be lifted and VRJS/Falcon be permitted to resume their tours of Defendants' facilities without further delay and without the imposing restrictions previously called for by Plaintiffs. The prior rationale for the delay – the impending contempt proceeding – is now moot and Defendants will continue to be irreparably harmed, as set forth above, if the stay remains in effect.

## VI.    CERTIFICATION

The undersigned certify that they have reviewed the following orders in the preparation of this motion: ECF Nos. 4539, 5092, 5774, 5794, 6846, 7283, 7897, 7918.

DATED: October 10, 2023

ROB BONTA
Attorney General of California

By:     */s/ Elise Owens Thorn*
DAMON MCCLAIN
Supervising Deputy Attorney General
ELISE OWENS THORN
Deputy Attorney General
*Attorneys for Defendants*

19981656.3

12

DEFS.' MOT. TO LIFT INJUNCTION HALTING TOURS

| | | |
|---|---|---|
| 1 | DATED: October 10, 2023 | HANSON BRIDGETT LLP |

By: _____/s/ Kaylen Kadotani_____
PAUL B. MELLO
SAMANTHA D. WOLFF
KAYLEN KADOTANI
*Attorneys for Defendants*