UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On August 8, 2023, the Special Master filed a further report and recommendations regarding a third level data remediation dispute regarding the provisionally approved indicator entitled Transfer to STRH [Short-Term Restricted Housing]/LTRH [Long-Term Restricted Housing] within Timeframes. ECF No. 7907. This indicator will be included in the continuous quality improvement tool (CQIT), which is an essential component of the self-monitoring defendants must ultimately undertake to ensure the durability of the remedy in this action and, eventually, end federal court oversight. *See*, *e.g.*, September 3, 2020 Order, ECF No. 6846, at 10 (quoting February 27, 2014 Order, ECF No. 5092 at 4-5). Defendants have filed objections to the Special Master's filing. ECF No. 7939. On September 26, 2023, plaintiffs filed a request for leave to file a response to defendants' objections to address the application of a memorandum dated September 22, 2016 to the pending dispute. ECF No. 7968. On September 27, 2023, the court granted plaintiffs' request and required plaintiffs to file their response by October 3, 2023.

1

ECF No. 7973.  Also on September 27, 2023, defendants filed a request for leave to file a reply to plaintiffs' response.  ECF No. 7974.  Defendants' request contains several substantive arguments related to whether the court should consider the September 22, 2016 memorandum at all and, if so, how it should be viewed, and does not propose a deadline for submission of a reply.  *See generally id*.  The court grants defendants' request to the extent it construes the arguments therein as defendants' reply to plaintiffs' response.[1]  On October 3, 2023, plaintiffs timely filed their response to defendants' objections.  ECF No. 7995.

For the reasons explained below the court adopts the Special Master's further report and recommendations in full.[2]

I. **BACKGROUND**

The court required the Special Master's further report and recommendations on the STRH/LTRH indicator in its May 24, 2023 order, ECF No. 7847.  In his initial report and recommendations on this indicator, the Special Master reported that "the indicator as written reports transfers as compliant with the thirty-day requirement for inmate-patients whose transfer is suspended because of a medical hold." *Id*. at 10 (citing ECF No. 7755 at 17).  The Special Master recommended "defendants modify this 'indicator design to score transfers beyond 30 days as non-compliant, unless or until the parties negotiate and the court adopts an exception to this Court-approved policy." ECF No. 7755 at 20, 34.

In their objections to the initial report and recommendations, defendants for the first time raised application of a March 3, 2016 Memorandum, included in the 2021 Program Guide Update, ECF No. 7333-1, which the court approved on February 7, 2022.  The March 3, 2016 memo covers transfers of male inmate-patients (IPs) in the Correctional Clinical Case

/////

/////

---

[1] Both plaintiffs' response and defendants' request/reply make clear the parties discussed the memorandum with each other before coming to the court.

[2] By separate order, the court is streamlining the dispute resolution process for data remediation while continuing to allow full opportunities for necessary objections to be brought to the court.

Management System (CCCMS) to male STRHs.  ECF No. 7333-1 at 456.  It provides in relevant part:

> Institutions without a designated STRH shall transfer CCCMS IPs retained in administrative segregation by the Institution Classification Committee (ICC) to a designated STRH within 30 days of Administrative Segregation Unit (ASU) placement.

*Id*.  For IPs identified for CCCMS placement after placement in an ASU, the 30 day period starts to run "on the date of the Mental Health Placement Chrono" designates the IP for CCCMS care.

*Id*.  The memo goes on to provide:

> IPs NOT TRANSFERRED TO AN STRH WITHIN ALLOTTED TIME FRAME
>
> In order to avoid adversely impacting the IP's other custodial or medical needs, there may be situations where an IP will not be transferred to an STRH within 30 days. Some examples of situations include, but are not limited to, an imminent Board of Parole Hearing date, medical hold, scheduled transfer to a mainline placement, scheduled court hearing, pending release to parole within 60 days of CCCMS ASU placement, and scheduled mental health evaluations for Mentally Disordered Offender or Sexually Violent Predator screenings.
>
> In these instances, the Warden or designee, in coordination with the treating Mental Health staff, may elect to temporarily retain the IP in their existing ASU.
>
> The Warden or designee shall ensure a collaborative approach between Custody and Mental Health staff is employed to ensure the wellbeing of IPs housed in non-STRH administrative segregation.
>
> Custody and Mental Health staff shall meet daily, during ASU morning meetings, to discuss any ongoing behavioral issues or concerns, and shall participate jointly in scheduled Interdisciplinary Treatment Teams and ICCs to ensure Information is shared.  When retention of an IP that would otherwise meet criteria for placement in an STRH will cause transfer timeframe [*sic*] to exceed the 30-day mandate, institution classification staff shall specify the exceptional reason for retention (including mental health considerations) in the Classification Committee Chrono.  A case note shall be placed in SOMS articulating the case-by-case reason for retention under the "STRH Retention Note Type."

*Id*. at 457.

Because defendants had not raised application of this memo with the Special Master, the court declined to consider their objection and instead referred the issue back to the Special Master for further consideration.  ECF No. 7847 at 10.  In his further report and recommendations, the

3

Special Master finds that, while the March 3, 2016 memo "acknowledges transfer delays due to medical holds," it "does not contain language sufficient to suspend" the 30 day STRH/LTRH transfer timeline for purposes of creation of an accurate indicator for STRH/LTRH transfers. ECF No. 7907 at 7-10.  He reports he "has not historically in his monitoring and reporting and does not now" interpret the March 3, 2016 memorandum as creating a "Court-approved exception to the 30-day STRH/LTRH transfer timeline." *Id*. at 10.  The Special Master makes two recommendations:

> • The medical hold exception in the existing indicator's documentation should be removed. All transfers to STRH and LTRH units that exceed 30 days should be scored as not satisfying the 30-day transfer business requirement.
>
> • Concurrently, the indicator should include drill-down information including any explanation for delayed transfers, including medical holds.

*Id*. at 15.  His recommendation is based in large part on the court's directive that "each key indicator must be designed and operationalized to accurately capture the corresponding information gathered and reported on by the Special Master as part of his monitoring responsibilities" as well as his express recognition that "[t]he ultimate question of what compliance threshold will apply to this indicator, and the extent to which patient medical holds impact compliance, remains with the Court for determination at a future date." ECF No. 7907 at 14 (citing ECF No. 7847 at 9; also citing June 30, 2021 Order, ECF No. 7216 at 4).

Defendants do not object to the second recommendation, that the indicator be designed to include "drill-down information including any explanation for delayed transfers, including medical holds."  They do, however, object on several grounds to the revised recommendation to remove the medical hold exception from the indicator's documentation.  First, they contend it runs afoul of a provision of the California Department of Corrections and Rehabilitation (CDCR) Health Care Departmental Operations Manual that provides for use of a medical classification system in making patient placement decisions.  ECF No. 7939 at 2 (quoting HCDOM 1.2.14). That system includes "temporary medical hold[s]," which are "used when a patient requires medically necessary health care services, and it is medically prudent to provide those services at the institution where the patient is currently housed." *Id*. at 16.  Defendants contend the March 3,

4

2016 memorandum "expressly contemplates not transferring a patient within 30 days because of a medical hold." *Id*. at 2. They contend the STRH/LTRH indicator must be designed to report compliance with the required transfer timelines "as modified by appropriate timeframe exceptions," here, as covered by the March 3, 2016 memorandum. *Id*. at 3. They argue the Special Master's reasons for recommending the medical hold exception be removed from the STRH/LTRH indicator are "misguided and clearly erroneous." *Id*. at 4-7.

In response to defendants' objections, plaintiffs point to a September 22, 2016 Memorandum entitled "Reasons for Retaining Inmates in Segregation, Removing Medical Hold from COMPSTAT." ECF No. 7995, Ex. A. This memorandum is included in the 2021 Compendium of Custody-Related Remedial Requirements (hereafter "Compendium"), *see id*. at ECF No. 7333-2 at 5.[3] The memorandum provides in relevant part:

> The purpose of this memorandum is to reiterate that inmates shall not be housed or retained in segregated housing due to a medical hold or pending Department of State Hospital placement. Reasons for placement in segregated housing are detailed in California Code of Regulations, Title 15, Division 3, Section 3335, *Administrative Segregation.*
>
> The COMPSTAT Administrative Segregation Unit (ASU) tracking system has been modified by removing "Medical Hold" as an option for retaining inmates in segregated housing.

ECF No. 7995 at 9. Acknowledging that this memorandum apparently was not considered by the Special Master or the parties at earlier stages of the dispute resolution process, plaintiffs contend it is "highly relevant to the instant dispute" and "bolsters" the Special Master's recommendation. *Id*. at 3-4.

Defendants contend plaintiffs do not explain why they could not have raised this memorandum earlier, and that the court should not consider it since it was not first presented to the Special Master. ECF No. 7974 at 2. Defendants also contend the memorandum does not apply to the current dispute, arguing the memorandum "only resolves whether a patient can be held in segregation solely for a medical hold and does not preclude retention of an inmate in

---

[3] The Compendium is one "of the two primary remedial plans in this action." December 17, 2020 Order, ECF No. 6996, at 1. The court approved the 2021 Update to the Compendium on February 7, 2022. *See* February 7, 2022 Order, ECF No. 7456, at 3.

segregation who has both a medical hold and a valid retention reason in accordance with Title 15"; they also say the memorandum "does not pertain to transfer timelines or mandate that transfers between segregation units are required notwithstanding a medical hold." *Id*.

## II.   REQUIRED CERTIFICATION

Before turning to its legal analysis, the court addresses a housekeeping matter. On November 16, 2017, the court issued an order that requires "each brief filed by any party [to] be accompanied by counsel's certification that they have read all court orders relevant to any issue addressed in such brief, including a list of those orders." November 6, 2017 Order, ECF No. 5726, at 10. Although all of the documents filed by defendants in connection with the Special Master's reports and recommendations on this data remediation issue cite to various court orders, none contain the required certification. *See generally* ECF Nos. 7805; ECF No. 7939; ECF No. 7974. This is not the first time defendants have failed to comply with the certification requirement. *See*, *e.g.*, May 14, 2021 Minute Order, ECF No. 7162 (disregarding defense reply due to noncompliance with the certification requirement).

Going forward, the court will disregard all briefs, including but not limited to briefing on reports from the Special Master, filed without the required certification, nor will the court allow amendment to any disregarded brief.

## III.   LEGAL STANDARD

The court adopts the Special Master's findings of fact unless those findings are "clearly erroneous." December 11, 1995 Order of Reference, ECF No. 640, at 8; *see also* ECF No. 7847 at 8-9. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (quoted in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

## IV.   ANALYSIS

The issue before the court is whether in the data remediation process documentation, i.e., business rules, for the STRH/LTRH timeline indicator should be written so that periods when

inmate-patient are subject to medical holds are exempted from the thirty-day timeline for STRH/LTRH transfer. The Special Master recommends that such periods not be exempted from the STRH/LTRH transfer timeline indicator and, instead, be explained together with any other periods of delay in "drill-down information" for the indicator. ECF No. 7907 at 15.

Defendants do not object to including drill-down information, including medical holds, in the indicator. Their objections focus almost entirely on how adoption of the Special Master's recommendation will impact their compliance with the STRH/LTRH transfer timeline remedial requirements. In so doing, they ignore the fact, noted by the Special Master, that the ultimate question of compliance with this requirement is for the court. Except as discussed below, defendants' objections are properly construed as arguments for excluding medical hold periods from the requirement of compliance with STRH/LTRH transfer timelines ultimately required by the court.

In Section II of their filing, defendants object on several grounds to the Special Master's findings as to why the March 3, 2016 policy should not be treated as a court-approved exception to the 30-day STRH/LTRH transfer timeline. ECF No. 7939 at 3-7. Only some aspects of these objections require discussion; none have merit.

First, the Special Master does not recommend that the court "ignore CDCR policy and require the indicator to be programmed without accounting for patients on medical holds." *Id*. at 3. To the contrary, he recommends the indicator include drill-down information on transfer delays, including those caused by medical holds. ECF No. 7907 at 15. As noted, defendants do not object to this recommendation.

Second, the Special Master's observations about the absence of a specific definition of medical hold in the March 3, 2016 memorandum or how it would be operationalized provide defendants the type of guidance required to ensure that defendants' data reports are fully transparent and accurate and, most importantly, free of any risk of "end runs and hiding the ball" that has infected defendants' remedial reporting and required the current overhaul of the mental health data reporting system. *See generally* December 17, 2019 Order, ECF No. 6427.

Third, and importantly, the Special Master's findings that the language of the March 3,

7

2016 policy is not comparable to court-approved exceptions to other timelines is not "an apples to oranges comparison," ECF No. 7939, at 4.  It bears directly on the issue presented:  how to ensure that data presented to the court to assess defendants' compliance with the Eighth Amendment is transparent and accurate.

The court has approved two addenda to the Program Guide that create exceptions to specific transfer timelines set out in the Program Guide:  one for transfers to mental health crisis beds (MHCBs) and one for transfers to psychiatric inpatient programs (PIPs).  *See* September 27, 2019 Order, ECF No. 6295 (approving addendum to MHCB transfer timeline, ECF No. 6261-1); *see also* December 15, 2017 Order, ECF No. 5750 (approving addendum to PIP transfer timeline, ECF No. 5744 at Exhibit 1).  These documents each specify suspension of the relevant transfer timeline.  *See* ECF No. 6261-1 at 2; ECF No. 5750 at 5.  Each also applies to the entire universe of patients covered by the addendum.  *See* ECF No. 6261-1 at 2 (addendum applies to all patients whose level of care is changed to MHCB); ECF No. 5744 at 5 (addendum applies to all patients accepted to PIPs).

The January 15, 2015 memorandum announcing the creation of STRH and LTRH units, included in the court-approved 2021 Program Guide update, ECF No. 7333-1 at 450-454, requires transfers to STRH/LTRH units within thirty days of an ICC decision to place a CCCMS inmate-patient in an administrative segregation unit (ASU) or a segregated housing unit (SHU) or within thirty days of issuance of a mental health chrono placing an ASU or SHU inmate in the CCCMS level of care.  *Id*. at 451, 453.  There are no exceptions to or suspensions of the 30-day time frames set out in that memo.  *See id*.  In contrast to the court-approved exceptions identified above, the March 3, 2016 policy applies only to male inmates set for transfer to STRH units; it does not apply to female inmates, and it does not apply to any inmates set for transfer to LTRH units.  *See* ECF No. 7907 at 8 (quoting ECF No. 7333-1 at 456).  The Special Master's comparison of the language of the March 3, 2016 memorandum with the language of court-approved exceptions to transfer timelines is accurate and defendants' objections do not demonstrate otherwise.

/////

1          Finally, defendants assert that court-approved exceptions to the MHCB and PIP transfer timelines are not comparable to transfer to STRH/LTRH units because the latter category of inmates "are not patients in need of inpatient care; they are patients at the lowest level of care being considered for transfer to another restricted housing setting." ECF No. 7939 at 5. The STRH and LTRH units were created to avoid the risk of serious additional harm to class members through placement in administrative segregation units; as the court found in its April 2014 order, "placement of seriously mentally ill inmates in California's segregated housing units can and does cause serious psychological harm, including decompensation, exacerbation of mental illness, inducement of psychosis, and increased risk of suicide." April 10, 2014 Order, ECF No. 5131 at 45-46. Defendants' attempt to minimize what is at stake for these inmates betrays a fundamental misunderstanding of the importance of timely STRH/LTRH transfers and cannot be countenanced.

          In sum, the Special Master has properly analyzed the issue of whether, in order to ensure transparent and accurate reporting, the March 3, 2016 memorandum should be incorporated into the business rules of the STRH/LTRH transfer timeline indicator as an exemption to that timeline or, instead, as an explanation for delays in the drill-down portion of this indicator. He has correctly concluded it is the latter and defendants have not demonstrated his conclusion is erroneous.

          Plaintiffs' presentation of the September 16, 2016 memorandum does not run afoul of the requirements of the Order of Reference, ECF No. 640. The Order of Reference requires parties to raise objections with the Special Master; there is nothing in the order that limits presentation of evidence in support of a recommendation. *See id*. at 8. Nor does the court's reminder to the parties to "timely present the Special Master with all relevant information and their respective positions during the dispute resolution process," May 24, 2023 Order, ECF No. 7847 at 10, necessarily foreclose presentation of additional relevant evidence in support of a recommendation to the court where, as here, notice is provided to the opposing party who has responded to that new information.

/////

On the merits, the September 16, 2016 memorandum stands for the general proposition that an inmate is not to be retained in administrative segregation solely on the basis of a medical hold if no other criteria for placement in administrative segregation remain applicable.  The STRH and LTRH units are specialized administration segregation units created for class members to mitigate the risks of serious harm identified in the court's April 10, 2014 order for those who otherwise meet Title 15 requirements for administrative segregation placement.  Defendants' cramped reasoning that the September 16, 2016 memorandum has no application here because STRH and LTRH units are equivalent to other administrative segregation units disregards the harm these units are intended to mitigate.  The spirit, if not the letter, of the September 16, 2016 memorandum supports the conclusion that a medical hold, without more, is insufficient to retain class members designated for STRH or LTRH transfers in other administrative segregation units past established timelines.

To the extent defendants' objection telegraphs a concern about ultimate questions of compliance, compliance requirements are not before the court at this time.  What is before the court is how the data on STRH/LTRH transfer timelines can be gathered and reported most accurately and transparently.  The Special Master's recommendation is grounded in the language of the Program Guide as well as in an accurate distinction between court-approved exceptions to specific timelines versus departmental policy language acknowledging possible reasons for delay.  Adoption of the Special Master's recommendation will result in accurate reporting of whether class members placed in administrative segregation units are transferred to an STRH or an LTRH within thirty days and, if they are not, the duration of and explanation for the delay.  This accurate and detailed reporting, in turn, will provide a solid foundation for ultimate questions of compliance when those are before the court.

### V.    CONCLUSION

For the foregoing reasons, the court will adopt in full the Special Master's August 8, 2023 Response and the modified recommendations.  Defendants' objections are overruled.  Any contentions that bear on the question of compliance may be raised, as necessary, at a later stage of these proceedings when compliance issues are before the court.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Special Master's August 8, 2023 Response is adopted in full.

2. Defendants' September 7, 2023 objections are overruled without prejudice in accordance with this order.

3. Defendants' September 27, 2023 request for leave to reply to plaintiffs' response, ECF No. 7974, is GRANTED to the extent explained above and the arguments contained therein are accepted as defendants' reply.

4. The medical hold exception to the existing STRH/LTRH transfer timeline indicator's documentation shall be removed and all transfers to STRH and LTRH units that exceed 30 days shall be scored as not satisfying the 30-day transfer business requirement. Concurrently, the indicator shall include drill-down information including any explanation for delayed transfers, including medical holds.

SO ORDERED.

DATED: October 10, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE