IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,
    Plaintiffs

    vs.                                  No. 2:90-CV-0520 KJM DB

GAVIN NEWSOM, et al.,
    Defendants

## SPECIAL MASTER'S DATA REMEDIATION STATUS REPORT

### Introduction

On June 30, 2023, the Special Master filed his Report on the Status of *Coleman* Data Remediation in response to the Court's January 3, 2023 Order (ECF No. 7695). *See* ECF No. 7863. As indicated in that report, the Special Master now submits this "further brief status update on data remediation." *Id.* at 50.

### I. Current Status

In his June 30, 2023 report regarding the status of the data remediation project, the Special Master discussed the ongoing work to update the list of provisionally approved indicators to reflect adjustments made by the stakeholders during the data remediation process. *See, e.g.*, ECF No. 7863 at 46-47. Specifically, in recent months, the stakeholders have considered the Special Master's placeholder indicators,[1] *see id.* at 40-42, and agreed to

---

[1] As the Special Master reported in his prior data remediation status report, "[O]n June 14, 2023, the Special Master provided the parties with the detail concerning the additional indicators ('placeholders') included in the original provisionally approved list of key indicators, but not developed in detail at the time the original list was filed with and provisionally approved by the court." ECF No. 7863 at 11-12. The placeholder indicators cover remedial requirements in the following categories: Additional Use of Force; Sustainability Process; ASU EOP Hub Certification; Psychiatric Inpatient Program (PIP); and Custody and Mental Health Partnership Collaboration. *See id.* at 40 and sources cited therein.

1

decommission at least 16 provisionally approved indicators. *See id.* at 36-40.[2] In addition, plaintiffs have requested that defendants create new indicators to measure remedial requirements that plaintiffs contend are not adequately captured in the operative list of provisionally approved key indicators. Through both the stakeholder review and dispute resolution processes, the stakeholders have also agreed to create new indicators. Finally, from time to time, defendants have renamed some provisionally approved indicators and split others into multiple indicators.

For the last several months, the stakeholders have worked collaboratively to identify the operative list of indicators derived from the original list of provisionally approved indicators, accounting for all of the activity described in the preceding paragraph. Concurrently, the Special Master's data team has encouraged defendants to track the progress of those indicators derived from the original list separately from any new indicators identified through the remediation process (e.g. placeholder indicators, new indicators derived from dispute resolution process). Additionally, the Special Master recently circulated a detailed assessment of the status of each indicator and steps he believed were required to move uncompleted indicators to the next step of the remediation process. The parties have commented on this assessment and the Special Master plans to utilize this as a mechanism to focus the stakeholders' efforts in this endeavor, starting with an emphasis on completion of those indicators on the provisionally approved list.

---

[2] As of the time of the Special Master's June 30, 2023 report, the parties had agreed to decommission 14 indicators. ECF No. 7863 at 36-37. Since that time, the parties have agreed to decommission two additional indicators, for a total of 16 decommissioned provisionally approved indicators. During the October 10, 2023 BRMR meeting, CDCR identified an additional indicator (AC21: MHSDS Inmates in ASU transferred within policy requirements) that may be proposed for decommissioning after CDCR's new Restricted Housing Unit (RHU) regulations are implemented.

As of the time of this writing there are 153 indicators derived from the original list of 148 provisionally approved key indicators (not including the placeholder indicators). The table below displays the status of each of the 153 indicators currently undergoing remediation.

**Provisionally Approved Key Indicator Status as of September 19, 2023**

| Percent | Number | Status[3] |
|---|---|---|
| 2% | 3 | Documentation not yet reviewed by stakeholders |
| 3% | 5 | Documentation being updated after initial the Business Rules Methodology Review (BRMR) |
| 13% | 20 | In BRMR, under active discussion |
| 18% | 28 | Completed BRMR validation; not yet verified |
| 18% | 27 | Completed verification; not yet remediated |
| 46% | 70 | Validated, Verified, Marked off as remediated by Special Master's Data Expert |

As the table demonstrates, the vast majority of the indicators derived from the list of provisionally approved indicators (125 of 153, or 82 percent) have completed the stakeholder review (or BRMR) step of the remediation process. In addition, the Special Master's data expert has marked off nearly half of the indicators derived from the original list as fully remediated.

As noted, these figures do not account for placeholder indicators or other new indicators. The placeholder indicators, per the Special Master's data team's direction, are being tracked separately to enable stakeholders to accurately assess the status of the indicators derived from the original list of provisionally approved indicators.

---

[3] The Special Master notes that, when possible, disputed indicators are allowed to complete BRMR to allow later steps in the remediation process to complete while the dispute is being resolved.

II.     **Update on Data Remediation Disputes**

As of October 10, 2023,[4] there are six unresolved data remediation disputes, the majority of which have completed the first and second levels of the data remediation dispute resolution process. The Special Master has submitted recommendations to the Court on one unresolved dispute, *see* ECF No. 7954; four other disputes have completed the second level of the dispute resolution without resolution. One dispute remains in discussion between the parties at Level 1.

**Unresolved Data Remediation Disputes as of October 10, 2023**

| Indicator Number | Indicator Name | Dispute | Level | Status |
|---|---|---|---|---|
| AC5 | Treatment Offered | 14-day exclusion | Level 1 | Pending |
| AC5 | Treatment Offered | Group Treatment: Core Groups | Level 3 | Pending |
| AC5 | Treatment Offered | Group Treatment: Confidentiality of Groups | Level 3 | Pending |
| Placeholder | PIP Max Custody Reviews | Process | Level 3 | Pending |
| AC7.1 / AC7.4 | Timely Transfer to 3CMS / Timely Transfer to EOP | Suspending Events | Level 3 | Pending |
| G1 | Glossary | Timely Compliance Methodology | Level 3 | SM Report Submitted – See ECF No. 7954. |

---

[4] In an October 10, 2023 order, the Court adopted the Special Master's August 8, 2023 report and recommendations for resolving the dispute regarding AC6, an indicator that measures compliance with Program Guide timeframes for transferring patients to Short-Term Restricted Housing (STRH) and Long-Term Restricted Housing (LTRH) units. *See generally* ECF No. 8010.

The table above confirms what the Special Master signaled in his most recent Third Level Report – that the stakeholders' recent inability to resolve disputes at the lower levels of the process has resulted in a backlog of disputes requiring formal reports and recommendations from the Special Master to the Court.  *See* ECF No. 7954 at 32.  The Special Master is preparing to address these remaining disputes in accordance with the modified dispute resolution process required by the Court's October 10, 2023 Order.  ECF No. 8008 at 2-3.

### III.  Update on Placeholder Indicators

Since the Special Master submitted his June 30, 2023 data remediation status report, the stakeholders have made significant progress in developing the placeholder indicators.[5]  To their credit, defendants have agreed to the develop nearly all of the indicators – both "new" and "extended" – identified in the Special Master' June 14, 2023 letter to the parties.  *See* ECF No. 7863 at 41 (discussing Special Master's correspondence with parties regarding placeholder indicators).  As of the time of this writing, defendants have agreed to create or extend indicators for 49 of the 55 measurements required by the Special Master's identification of placeholder indicators.  In contrast, defendants have objected in whole or in part to only six of the Special Master's placeholder indicators:  three "new" placeholder indicators and three "extended" indicators.

---

[5] *See* ECF No. 7863 at 40 ("Included in the list of 148 provisionally approved key indicators were five general categories of monitoring topics the Special Master identified as meeting the standard for 'key indicators' but did not yet have specific indicators in defendants CQIT."); *id.* at 41 (noting the Special Master identified "14 new indicators across the five placeholder categories" and "41 existing key indicators that should be extended to cover remedial requirements related to the PIPs and use of force.").

5

**Summary of Placeholder Indicator Status as of September 30, 2023**

|  | **Special Master's June 14 Letter** | **Defendants Agree To Develop** | **Defendants Object in Whole or in Part** |
|---|---|---|---|
| **New Placeholder** | 14[6] | 11 | 3 |
| **Extended Placeholder** | 41 | 37[7] | 3 |
| *Total* | 55 | 48 | 6 |

While the placeholder indicators were identified later in the data remediation process, the stakeholders have worked together to identify "extended" indicators whose documentation could be easily updated to include measurement of requirements in the PIPs. *See* Email from Ms. Melissa Bentz, Esq., CDCR Office of Legal Affairs, to Special Master Lopes and Plaintiffs' Counsel (July 31, 2023), attached hereto as Exhibit A. As of September 30, 2023, nearly all agreed upon extended items requested by the Special Master and agreed to by the defendants have begun the remediation process, beginning with stakeholder review.

Plaintiffs also responded to the Special Master's June 14, 2023 placeholder letter. In their June 28, 2023 letter to the Special Master, plaintiffs requested the extension of 21 indicators and the creation of four new indicators. ECF No. 7863-1 at 14-18. In a July 7, 2023 letter,

---

[6] In a letter dated June 14, 2023, the Special Master identified a total of 14 new indicators across the placeholder categories. ECF No. 7863-1 at 7-12. In their response dated June 28, 2023, defendants agreed to 11 of those requests, explaining that they would result in the creation of 22 new indicators, due to the requests including subparts that needed to be measured separately. *See id.* at 20-24. This chart uses a denominator of 14 for the new placeholder indicators, though the Special Master acknowledges these indicators will ultimately be operationalized to measure subparts separately.

[7] Here, there is a discrepancy in the total number of the Special Master's extended indicators (41) and the sum of the indicators defendants agreed to create (37) and the indicators defendants objected to in whole or in part (3). This discrepancy is due to the fact that one of the extended indicators related to staffing (SPTSR6) has been decommissioned. *See* ECF No. 7863-1 at 28.

plaintiffs requested eight additional new indicators not otherwise identified during the stakeholder review, dispute resolution, or placeholder indicator processes.[8]

While there are some disputes related to the creation of placeholder indicators, the stakeholders have agreed to create the vast majority of placeholder indicators identified in the Special Master's June 14, 2023 letter. Accordingly, the Special Master will request provisional approval of those non-disputed "new" and "extended" placeholder indicators to enable the stakeholders to complete remediation of these measurements.

## IV. Special Master's Assessment of Stakeholders' Ability to Complete Data Remediation by December 31, 2023

In his June 30, 2023 data remediation status report, the Special Master expressed "cautious[] optimi[sm] that the data remediation project will be completed by the end of the 2023." ECF No. 7863 at 11. "This guarded optimism" was based on a number of variables, including progress made in the stakeholder review step of the remediation process, the significant number of indicators impacted by the timely compliance methodology dispute, and defendants' representations that they have assigned sufficient staff to complete data remediation by the end of 2023. *See id.*

As noted above, the stakeholders have made significant additional progress since the filing of the Special Master's June 30, 2023 report. For instance, 125 of the 153, or 82 percent of the indicators derived from the original list of provisionally approved key indicators have completed the stakeholder review (BRMR) step of the remediation process. *See supra* p. 3. Moreover, the number of indicators fully remediated increased from 42 on June 30, 2023 to 70 as

---

[8] Specifically, plaintiffs requested eight new indicators related to program assignments, NDS Status and Length of Stay, RVR MHA process, staff-to-patient ratios, credits lost, alternative housing, treatment space, and IEX audits. *See* Letter from Ms. Cara Trapani, Esq., Plaintiffs' Counsel, to Special Master Lopes (July 7, 2023), attached hereto as Exhibit B.

of the time of this writing. *See supra* p. 3. Finally, the Special Master anticipates the modified dispute resolution process required by the Court's October 10, 2023 Order will result in more efficient resolution of data remediation related disputes going forward. ECF No. 8008 at 2-3.

Based on the overall progress made since filing his June 30, 2023 report, the Special Master remains cautiously optimistic "about the status of this behemoth-like undertaking." ECF No. 7863 at 7. Specifically, the status update included herein demonstrates that the indicators derived from the original list of provisionally approved key indicators have nearly completed the stakeholder review process. In addition, the stakeholders are working collaboratively to identify required next steps for those indicators that have not yet achieved complete remediation. This work will bolster the stakeholders' ability to "substantially complete[]" remediation of the indicators derived from the original list by December 31, 2023. ECF No. 8008 at 2.

However, remediating the placeholder indicators, resolving defendants' objections to the placeholder indicators, and addressing plaintiffs' requests for additional new indicators will require additional time to exhaust efforts to reach consensus before resorting to dispute resolution. Accordingly, the Special Master has determined a request for a limited extension of time for completing work on these new items is warranted. *Id.* (noting complete "remediation of outstanding placeholder indicators" may "trail[] into early 2024").

### V.     Recommendations

The Special Master acknowledges and appreciates that hard work that has gone into getting this complex and taxing project so close to completion and expects the parties will continue and as needed accelerate those efforts to bring it to a successful conclusion.

Accordingly, the Special Master recommends <u>no</u> extension of time to substantially complete remediation of the 153 indicators derived from the original list of provisionally

approved indicators.  The stakeholders should continue to work toward a December 31, 2023 goal for completing the remedial work on these originally identified indicators.

The Special Master recommends a three-month extension of time, until March 31, 2024, to complete remediation of all indicators, including placeholders and any other new indicators.

In addition, the Special Master requests the Court's provisional approval of those non-disputed "new" and "extended" placeholder indicators to enable the stakeholders to complete remediation of these measurements.  *See* Appendix A (listing non-disputed placeholder indicators).

                                        Respectfully submitted,

                                        */s/ Matthew A. Lopes, Jr.*

                                        Matthew A. Lopes, Jr., Esq.
                                        Special Master

October 13, 2023

# APPENDIX A

## Appendix A

## Placeholder Indicators Proposed for Provisional Approval

| New or Extended | Indicator Number/Identifier | Indicator Description |
|---|---|---|
| New[1] | Additional Use of Force | Total number of mental health and custody staff required to attend UOF training and total number that attended |
| New | Sustainability Process | Are sustainability visits and reports occurring in accordance with the sustainable process order? |
| New | PIP | LRH policy adhered to in implementation |
| New | PIP | Number of SIRS/Sentinel Events |
| New | PIP | Custody Staff with CPR Training |
| New | CMHPP | Was the CMHPP huddle report used to document required attendees during each program's required huddle during second and third shift? |
| New | CMHPP | Did all custody, mental health and nursing staff attend the mandatory one hour off post CMHPP training annually/within the past 12 months? |
| New | CMHPP | Did all required staff (mental health program supervisors, social worker psychologists, psychiatrist and recreations therapists and mental health housing unit officers, escort officer, treatment area officers, and mental health unit sergeants,) by required housing unit (EOP mainline, ASU-EOP Hub, PSU, MHCB, PIP, LTRH, and STRH) and required watches (second and third watch) attend the quarterly round table training, facilitated by the required staff (mental health supervisor and correctional sergeant)? |

---

[1] Here, the Special Master lists the new placeholder indicators as they were identified in his June 14, 2023 letter to the parties, *see* ECF No. 7863-1 at 7-12, though he acknowledges defendants' statement that the new placeholders include subparts that will require more than 11 indicators. *See id.* at 20.  Regarding extended indicators, the Special Master has utilized the most recent indicator names and number designations used by defendants.  In addition, he has added footnotes noting those instances where multiple provisionally approved indicators have been collapsed into a single indicator or, in the alternative, where a single provisionally approved indicator has been split into multiple indicators.

1

| | | |
|---|---|---|
| New | CMHPP | Was monthly joint executive rounding attended by required staff (at least one custody and healthcare leadership staff member) and conducted as required for programs (twice annually for EOP, ASU-EOP Hub, PSU, MHCB, PIP, STRH, LTRH and annually for 3CMS)? |
| New | CMHPP | Did 3CMS CMHPP activities (supervisor weekly meeting, monthly IAC meeting, monthly joint supervisory program tours) occur as required with required staff? |
| New | CMHPP | In the preceding month, were all newly placed patients into EOP level of care scheduled for four required Intro to EOP groups led by required facilitators (sergeant, mental health clinician and patient-peer)? |
| Extended - PIP | SPTSR1.4.8[2] | Allocated and Filled Psychiatrist Positions |
| Extended - PIP | SPTSR2.3.5.7.9.10.11.14[3] | Allocated and Filled Psychologist, Social Workers, Recreational Therapist, and Medical Assistants |
| Extended - PIP | SP4 | Suicide Resistant Cells |
| Extended - PIP | SP14 | MHCB Records with Rationale for Partial Issue |
| Extended - PIP | SP15.1[4] | MHCB Out of Cell Activities - Yard |
| Extended - PIP | SP15.2 | MHCB Out of Cell Activities - Phone Calls |
| Extended - PIP | SP15.3 | MHCB Out of Cell Activities - Visits |
| Extended - PIP | SP15.4 | MHCB Out of Cell Activities - Showers |
| Extended - PIP | SP15.5 | MHCB Out of Cell Activities - Dayroom |
| Extended - PIP | SP23[5] | SREs that Met All Audit Criteria |

---

[2] SPTSR1.4.8 will report allocated and filled psychiatry positions. Psychiatry staffing was previously covered by separate indicators: SPTSR1, SPTSR4, and SPTSR8. *See* ECF No. 7863-1 at 9.

[3] SPTSR2.3.5.7.9.10.11.14 will report allocated and filled psychology, social worker, recreational therapist, and medical assistant position. This indicator consolidates the information formerly captured in the following separate indicators: SPTSR2, SPTSR3, SPTSR5, SPTSR7, SPTSR9, SPTSR10, SPTSR11, and SPTSR 14. *See id.*

[4] SP15.1, SP15.2, SP15.3, SP15.4, and SP15.5 are split indicators measuring the information formerly measured by provisionally approved indicator SP15. *See id.* at 9.

[5] In their June 28, 2023 letter, defendants objected to the scope of the Special Master's extension of SP23 and SP24 to the PIPs. *See id. at 27-28*. Specifically, defendants objected to a footnote in the Special Master's June 14, 2023 letter which indicated "these indicators should be modified to measure timeliness and quality of SREs under defendants' PIP Suicide Prevention Policy."

| Extended - PIP | SP24 | Discharges from MHCB with Clinician Review of D/C Summary (SRASHE) |
| --- | --- | --- |
| Extended - PIP | QC3 | Treatment Plans with Satisfactory Documentation |
| Extended - PIP | QC12 | IDTTs with Observed Interactive Process |
| Extended - PIP | SC1 | Percentage of RVR MH Assessments where the Patient was Informed of the Limits of Confidentiality |
| Extended - PIP | SC2 | RVRs Recommended for Mitigation with Custody Documentation |
| Extended - PIP | SC3 | RVR MHAs where Captain Disagreed with Mitigation and Documented Rationale |
| Extended - PIP | SC4 | Days Alternative Out-of-Cell Activities were Offered to Patients on Heat Alert Medications when Indicated |
| Extended - PIP | SC5 | MHCB Patients Placed in TTM According to Policy |
| Extended - PIP | SC7 | Thermometer Checks Completed and Accurate |
| Extended - PIP | SC8[6] | Timely Submission of MH RVR MH Assessment Results |
| Extended – PIP | SC8.5 | Timely MH RVR Assessment Request |
| Extended – PIP | SC8.7 | RVR Custody Timelines |
| Extended - PIP | SC9 | RVRs Recommended for Mitigation That Were Mitigated |
| Extended - PIP | FEC1 | Adequate Group Treatment Spaces |
| Extended - PIP | FEC2 | Adequate IDTT Spaces |
| Extended - PIP | FEC3 | Adequate Individual Treatment Spaces |
| Extended - PIP | AC5 | Treatment Offered |
| Extended - PIP | SP6 | Percentage of Required MH Clinical Staff with Completed SRE Mentoring |
| Extended - PIP | SP9 | Mental Health Observations Reporting Tool |

---

*See id* (quoting *id.* at 9 n.9). In the interest of moving this step of the process forward, the Special Master's recommendation here is for the Court to provisionally approve the extension of SP23 and SP24 to the PIPs without the modification noted in footnote 9 in his June 14, 2023 letter leaving the scope of the extended indicator to be addressed through the usual stakeholder review process and if required in dispute resolution.

[6] At the time of defendants' June 28th letter, provisionally approved indicator SC8 (Timely MH RVR Assessments) has been split into two indicators: SC8, SC8.7. Since then, defendants' correspondence has also referred to SC8.5. This chart includes SC8, SC8.5, and SC8.7 to ensure all relevant RVR measurements are extended to the PIPs. *See id.* at 10.

| Extended - PIP | SP10 | Observed Initial Health Screenings in a Confidential Setting |
| Extended - PIP | SP11 | Housing Unit/Inmate Living Areas with Emergency Response Equipment and Daily Inventories |
| Extended - PIP | SP18 | Nursing Staff Current with CPR Training |
| Extended - PIP | SP19 | Healthcare Staff Current with Suicide Prevention Training |
| Extended - PIP | SP20 | Custody Staff with Suicide Prevention Training |
| Extended - PIP | PS3.1[7] | Seclusion Incidents |
| Extended - PIP | PS3.2 | Seclusion Incidents per Patient |
| Extended - PIP | PS3.3 | Seclusion Duration Incidents greater than 8 Hours |
| Extended - PIP | PS3.5 | Restraint Incidents |
| Extended - PIP | PS3.6 | Restraint Incidents per Patient |
| Extended - PIP | PS3.7 | Restraint Duration Incidents greater than 4 Hours |

---

[7] Provisionally approved indicator PS3 has been split into multiple indicators: PS3.1, PS3.2, PS3.3, PS3.5, PS3.6, and PS3.7.  *See id.* at 11.