# EXHIBIT A

**From:**       Bentz, Melissa@CDCR
**To:**         Coleman Team - RBG Only; Coleman Special Master; Steve Fama
**Cc:**         Weber, Nicholas@CDCR; Thind, Sundeep@CDCR; Cartwright, Steven@CDCR; Worrell, Wendy; Kirby, Melissa@CDCR; Garland, Latoya@CDCR; Minter, Daisy@CDCR; Leung, Pak Yan@CDCR
**Subject:**    Coleman: Extension of Indicators to PIP
**Date:**       Monday, July 31, 2023 5:57:04 PM

Good afternoon,

As discussed last week, CDCR has reviewed the list of items we have agreed to extend or create per our June 28th response to the Special Master's letter regarding placeholder indicators. After a preliminary review, we have determined that the following indicators will require little to no revision to extend to the PIP:

| Number | Court Approved Key Indicator Name |
|---|---|
| FEC 1 | Adequate Group Treatment Space |
| FEC 2 | Adequate IDTT Space |
| FEC 3 | Adequate Individual Treatment Space |
| PS 3.1 | Seclusion Incidents |
| PS 3.2 | Seclusion Incidents per Patient |
| PS 3.3 | Seclusion Duration Incidents Greater than 8 Hours |
| PS 3.5 | Restraint Incidents |
| PS 3.6 | Restraint Incidents per Patient |
| PS 3.7 | Restraint Duration Incidents Greater than 4 Hours |
| QC 3 | Treatment Plans with Satisfactory Documentation |
| QC12 | IDTTs Meeting All Audit Criteria |
| SC 1 | Percentage of RVR MHAs Where the Patient was Informed of the Limits of Confidentiality |
| SC 2 | RVRs Recommended for Mitigation with Documentation of Consideration of Mitigation |
| SC 3 | RVRs Where Hearing Officer Disagreed with MH Clinician's Recommendation to Document in an Alternative Manner and Documented Rationale for Disagreement on 128B |
| SC 4 | Percentage of Days Where Heat Plan was Activated, and Alternative Out of Cell Activities were Offered to Heat Alter Patients |
| SC 5 | Inmates Not Requiring Restraints for MH Treatment Attended Outside a TTM |
|  | Thermometer Checks Completed and |

| SC 7 | Accurate |
|---|---|
| SC 8 | Timely MH RVR Assessments |
| SC 8.7 | RVR Custody Timelines |
| SC 9 | RVRs Recommended for Mitigation That Were Mitigated |
| SC10 | Use of Force involving MH Inmates |
| SP 4 | Suicide-resistant MHCBs |
| SP 6 | SRE Mentor Program |
| SP 9 | Percentage of timely Nursing Rounds in MHCB patients on suicide watch and suicide precaution recorded in EHRS Clearly Marked, On Time, and Documented on Correct Form |
| SP10 | Percentage of Observed R&R and Reception Center Screens in Confidential Setting and Correct Documentation Used |
| SP11 | Housing Unit/Inmate Living Areas with emergency response equipment and Inventoried Daily |
| SP14 | MHCB Records with Rationale for Limited Issues of Clothing and Bedding |
| SP15.1 | MHCB property and privileges (Split Indicator) |
| SP15.2 | MHCB Out of Cell Activities – Phone Calls |
| SP15.3 | MHCB Out of Cell Activities - Visits |
| SP15.4 | MHCB Out of Cell Activities - Showers |
| SP15.5 | MHCB Out of Cell Activities – Dayroom |
| SP18 | Percentage of nursing staff current with CPR training |
| SP19 | Percentage of Health Care Staff with Suicide Prevention Training |
| SP20 | Percentage of Custody Officers with Suicide Prevention Training |
| SP23 | SREs that Met All Audit Criteria |
| SP24 | Discharges from MHCB with Clinician Review of D/C Summary (SRASHE) |
| SPTSR 1 | Chief Psychiatrist |
| SPTSR 2 | Chief Psychologist, Correctional Facility |
| SPTSR 3 | Senior Psychologist, Correctional Facility (Supervisor) |

| SPTSR 4 | Senior Psychiatrist (Supervisor), Correctional and Rehabilitative Services (Safety) |
|---|---|
| SPTSR 5 | Supervising Psychiatric Social Worker I, Correctional Facility |
| SPTSR 7 | Senior Psychologist, Correctional Facility (Specialist) |
| SPTSR 8 | Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) |
| SPTSR 9 | Recreation Therapist, Correctional Facility |
| SPTSR10 | Psychologist-Clinical, Correctional Facility |
| SPTSR11 | Clinical Social Worker (Health/Correctional Facility) – Safety |
| SPTSR14 | Allocated and filled positions |

Mental Health has started assigning these items for internal review and revision, as needed. CDCR will send out an email each Friday, beginning this Friday, August 4th, with one attachment for each indicator completed during the week showing a table with the changes (if any) and a link to the updated documentation. Comments should be limited to the revised sections or issues specific to extending the indicators to the PIP. Once we have received agreement on the changes, CDCR will send the items to CAPC for approval.

Please let me know if there are any questions.

Respectfully,

*Melissa C. Bentz*
Attorney III, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

# EXHIBIT B



**ROSEN BIEN**
**GALVAN & GRUNFELD LLP**

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Cara E. Trapani
Email: CTrapani@rbgg.com

July 7, 2023

VIA ELECTRONIC MAIL ONLY

Matthew A. Lopes
Special Master
mlopes@pldolaw.com

Patricia M. Williams
Deputy Special Master
harconwil@gmail.com

Kerry F. Walsh
Deputy Special Master
kwalsh@pldolaw.com

Nick Weber
CDCR Attorney
Nicholas.Weber@cdcr.ca.gov

Melissa Bentz
CDCR Attorney
Melissa.Bentz@cdcr.ca.gov

Sundeep Thind
CDCR Attorney
Sundeep.Thind@cdcr.ca.gov

Re:    *Coleman v. Newsom*:  Plaintiffs' Requests for New Indicators
       Our File No. 0489-03

Dear Special Master Lopes and CDCR Counsel:

As the Court recently restated, the CQIT "key indicators" must measure Defendants' compliance with the material provisions of the Program Guide and Compendium necessary to remedy CDCR's Eighth Amendment violations.  Order (May 24, 2023), ECF No. 7847 at 6.  The provisional list of key indicators (ECF No. 7151 at 21-26) omits certain benchmarks which are necessary to determine whether CDCR is providing *Coleman* class members constitutionally adequate care.

Concurrent with the data remediation process, and the specification of several "placeholder" indicators, we understand that the Special Master's team is open to considering identify whether additional new indicators should be recommended to the Court for inclusion in a final key indicator list.  *See* ECF No. 7693 at 2, 5.  Given that the Court will finalize the full list of CQIT indicators only at the conclusion of the data remediation project, *see* Order (Jan. 4, 2023), ECF No. 7695 at 2, and data remediation remains ongoing, Plaintiffs reserve the right to request additional new indicators if necessary at the conclusion of the process and the placeholder indicator negotiations.  In an effort to proceed expeditiously, however, Plaintiffs respectfully request that the

[4301903.7]

Kerry F. Walsh
Patricia M. Williams
Matthew A. Lopes
July 7, 2023
Page 2


following additional new indicators be added to the Special Master's recommended list of key indicators.

## 1.    Program Assignments

Consistent with the Special Master's longstanding monitoring practice, Plaintiffs request that CDCR develop an indicator that measures the percentage of work and education program assignments for patients at all levels of care, compared with non-MHSDS patients, systemwide.  *See, e.g.*, Special Master's 29th Round Report, ECF No. 7715 at 198-200.  The source of the information should likely be the Program Access Data that is routinely collected and provided through *Armstrong*.  A new indicator is necessary because the current QC9 indicator (EOP IDTTs Addressing Accommodations and Clinical Appropriateness for Work and Education) does not provide this data.

## 2.    NDS Status and Length of Stay Report

After issuing findings on the harms of administrative segregation to class members in 2014, the Court ordered swift removal of MHSDS patients from segregation if they were housed there for non-disciplinary reasons.  *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1099-1100 (E.D. Cal. 2014).  These findings resulted in several Program Guide pocket part policies that are not fully incorporated into the provisionally approved list of key indicators.  *See, e.g.*, ECF No. 7333-1 at 525-528, 530-533.  As Plaintiffs previously discussed in our position statement regarding the Level 2 dispute over the "Percentage of Required NDS Transfers that Occurred Within 72 Hours" indicator, we request a new indicator that measures whether the ICC appropriately identifies and designates as NDS-200 (i.e., eligible for expedited transfer) all patients who are eligible.  This could be achieved by developing a CQIT audit of the quality of ICC NDS determinations.

In addition, Plaintiffs request a new report-based indicator that provides historical census information about the NDS patient population, including length of stay.  CDCR currently does not have a systematic way of pulling historical NDS information statewide or calculating NDS length of stay.  As the Special Master's team has explained in prior BRMR meetings, some institutions provide this data, while others do not.  CDCR should make this critically important information available statewide.

## 3.    RVR MHA Automated Indicators

The *Coleman* RVR remedy includes mandatory diversion from the RVR process in various instances set forth in Title 15 and the 2021 Program Guide, and discretionary diversion in other instances where mental health impacted the behavior.  *See, e.g.*,

[4301903.7]

Kerry F. Walsh
Patricia M. Williams
Matthew A. Lopes
July 7, 2023
Page 3


Compendium, ECF No. 7333-2 at 2; 2021 Program Guide, ECF No. ECF No. 7333-1 at 292-93.  The Special Master's recent reports have identified that CDCR "continued to struggle to achieve compliance with many of the basic requirements" of the RVR process.  *See, e.g.*, Special Master's 29th Round Report, ECF No. 7715 at 143; *id.* at 148 ("Senior hearing officers failed to adequately document consideration of mental health assessments in over half of the reviewed institutions and some senior hearing officers continued to utilize canned language to document their consideration. Similarly, senior hearing officer documentation of mitigation remained noncompliant and alternative discipline was recommended and used minimally.").

The requirement to provide and incorporate mental health input and divert *Coleman* patients from the disciplinary process is a dead letter if it is never or rarely acted upon.  While some aspects of the RVR MHA remedy are measured by indicators on the provisionally approved key indicator list, none provide an overall view of the extent to which the process is successfully resulting in diversion and mitigated penalties for *Coleman* patients.  The Court ordered Defendants to conduct regular quality improvement reviews of the RVR process as part of CQIT.  *See* Stip. & Order in Resp. to the Special Master's Report on CDCR's Implementation of Policies and Procedure on Rules Violation Reports (May 4, 2015), ECF No. 5305 at 3 ("CDCR will revise its Continuous Quality Improvement Tool (CQIT) to include a quality improvement process for RVRs and to conduct regular RVR reviews.").  Accordingly, Plaintiffs request an automated indicator (or set of indicators) sufficient to answer the below questions.  These questions are drawn directly from the Special Master's pre-tour data requests for the 30th Monitoring Round (*see, e.g.,* **Attachment A**, hereto, showing excerpt from SAC document production):

Of the total number of RVRs issued to patients that were referred to mental health staff for completion of MHAs during the review period:

1.      How many MHAs answered "Yes" to Question 2 ("strongly influenced")?

2.      How many MHAs answered "Yes" to Question 3 ("contributed to")?

3.      How many times did the captain overturn the recommendation to document in an alternative manner?

4.      How many times did the senior hearing officer mitigate a penalty when mitigation was recommended in the MHA?

[4301903.7]

Kerry F. Walsh
Patricia M. Williams
Matthew A. Lopes
July 7, 2023
Page 4


**4.      Staff-to-Patient Ratios**

Consistent with the Special Master's monitoring practice, we request that CDCR develop a new indicator to report the mental health staff-to-patient ratios for each level of care and each mental health staff position classification at each institution. *See, e.g.*, Special Master's 29th Round Report, ECF No. 7715 at 165-68. We understand that CDCR already tracks this data, so creation of a new indicator should not be a burden.

**5.      Credits Lost**

Multiple provisions of the *Coleman* remedy, as incorporated in the Compendium of Custody-Related Remedial Measures, govern patient credit earning and forfeiture subsequent to the RVR process. *See, e.g.* 2021 Program Guide Compendium, ECF No. 7333-2 at 2-5 (listing CCR Title 15, Section 3043.2 (Good Conduct Credit); CCR Title 15, Section 3043.3 (Milestone Completion Credit)). As the Special Master has found, "[i]nappropriate impositions of loss of credits … may exacerbate serious mental illness, leading to decompensation or worse." Special Master's Report on CDCR's Implementation of Policies and Procedure on Rules Violation Reports (Jan. 30, 2015), ECF No. 5266 at 23; *see also id.* at 109 ("[L]ieutenants reported that … it was very important to assess loss of credits 'to keep in line with their points and level,' even when they believed that the inmate's behavior at the time of the offense was affected by his mental illness.").

As all stakeholders know, the provisional key indicator list includes RH32, which measures the rate at which MHSDS patients are *awarded* Milestone Completion Credits as compared with non-MHSDS individuals. However, there is no indicator measuring the rate at which *Coleman* patients *lose* credits (whether good conduct, milestone completion, and other types of credit) as a result of disciplinary penalties as compared to non-class members. This information is critical, because the differential loss of credits affect class members to the same or potentially greater extent than differential rates of awarded credits; the more credits MHSDS patients lose, the longer their sentences will be, which impacts overcrowding, and the higher their points and custody levels will be, limiting *Coleman* patients' access to less restrictive housing locations and facilities, where they would have greater access to programming and rehabilitation.

We understand from DAI's presentation during the June 28, 2023 BRMR meeting on RH32 (screenshot below) that SOMS keeps track of these lost credits under the category "Credit Lost (due to Disciplinary)":

Kerry F. Walsh
Patricia M. Williams
Matthew A. Lopes
July 7, 2023
Page 5



   Given that this data is already available in SOMS, it should not be burdensome to extract it into a new indicator.

**6.    Alternative Housing**

Plaintiffs request a new indicator measuring timely transfers from, and conditions within, alternative housing units. To our knowledge, there is currently no indicator measuring compliance with Policy Memorandum 12.05.301, Housing of Patients Pending Mental Health Crisis Bed Transfer (May 20, 2021), which includes the requirements that patients in crisis pending evaluation for MHCB may not stay in small holding cages for more than 4 hours, that they receive appropriate issue, water, and toilet access, that they be continually observed, and that they are timely transferred within 24 hours. 2021 Program Guide, ECF No. 7333-1 at 372-73. These requirements are not currently measured in the indicator "Percentage of Patients in Alternative Housing with a Bed."

**7.    Sufficient Treatment Space**

Plaintiffs originally raised the issue of measuring whether a given institution has adequate treatment spaces as a request to modify the FEC1 Adequate Group Treatment Space, FEC2 Adequate IDTT Space, and FEC3 Adequate Individual Treatment Space indicators. The Secretary and Special Master disagreed with Plaintiffs during Level 2 of the dispute resolution process.

Plaintiffs acknowledge that the lack of appropriate treatment space (such as clinicians having to share offices or not having a permanent office, areas being too small to accommodate necessary IDTT participants, lack of confidential space for groups, holding groups in hallways and dayrooms, etc.) is a multifaceted issue that does not lend

[4301903.7]

Kerry F. Walsh
Patricia M. Williams
Matthew A. Lopes
July 7, 2023
Page 6


itself well to an automated indicator. However, many of the existing CQIT audits focus on subjective assessments such as this. Moreover, monitoring treatment space issues is consistent with the Special Master's monitoring, which continues to find a lack of mental health treatment space statewide. As the Special Master recently reported:

> Most institutions with EOPs did not report any ongoing or anticipated construction or renovation of mental health treatment space. However, many institutions had insufficient mental health treatment space, particularly in their MHCBs but also for their EOP, 3CMS, STRH, and LTRH programs. Consequently, clinicians frequently resorted to non-confidential or cell-front contacts.

Special Master's 29th Round Report Part C – EOP Compliance, ECF No. 7715 at 161-63; *see also* Special Master's 28th Round Report, ECF No. 7074 at 176 ("Although construction resolved space concerns at some institutions, the lack of mental health treatment space still existed in CDCR"); Special Master's 27th Round Report, ECF No. 5779 at 128 ("While the [construction] projects discussed above have heled to ameliorate the serious treatment space problems CDCR faces, CDCR institutions continue to struggle from the lack of sufficient adequate treatment space.").

Alternatively, if a new indicator is not feasible, Plaintiffs would be satisfied with an agreement from CDCR to include more targeted questions about these issues to staff during CQIT tour staff interviews. Defendants should also add a requirement in the report-writing guide that future CQIT reports include a section on the status of treatment space, as the Special Master's reports do.

## 8. IEX Audit

The provisionally approved key indicator list does not currently address whether patients with Exhibitionism or who engage in IEX or related behaviors are receiving adequate access to appropriate mental health care. There should be an indicator (or indicators) to address whether the requirements set forth in the August 31, 2007 memorandum titled "Amended Policy for Adult Males Referred for Treatment of Exhibitionism," *see* Compendium, ECF No. 7333-2 at 4, and the related DOM Sections (51200 through 52100.7) are followed.

The Special Master monitors treatment of IEX patients. For example, during the recent 30th Round Monitoring tour of SAC, Defendants provided data from an IEX audit that answered the below three questions:

[4301903.7]

Kerry F. Walsh
Patricia M. Williams
Matthew A. Lopes
July 7, 2023
Page 7


      1.      Is the IEX behavior addressed in the Clinical Summary and/or the Case Formulation of the MH Treatment Plan?

      2.      Are measurable goals listed that address the IEX behavior int eh IPOCs?

      3.      Are specific interventions listed to address the IEX behavior in the IPOCs?

      A copy of this pre-tour data that Defendants provided to the Special Master is attached hereto as **Attachment B** for reference.  We request that CDCR develop a new CQIT audit and indicator along the lines of this audit for all institutions.

      Plaintiffs would be pleased to provide more information about, or discuss any of these proposed indicators.  Thank you for your consideration of our requests.

                  Sincerely,

                  ROSEN BIEN
                  GALVAN & GRUNFELD LLP

                  */s/ Cara E. Trapani*

            By:   Cara E. Trapani

CET:AWT
Attachments A-B
cc:    *Coleman* Co-Counsel
       *Coleman* Special Master team
       Elise Thorn
       Damon McClain
       Namrata Kotwani
       Samantha Wolff
       Paul Mello

[4301903.7]

# Attachment A

**Tab O: RVRs**

5. Provide the total number RVRs issued to patients that were referred to mental health staff forcompletion of MHA-115s during the review period. Of those, please provide:
   a. How many MHAs answered "Yes" to Question 2 ("strongly influenced")?
   b. How many MHAs answered "Yes" to Question 3 ("contributed to")?
   c. How many times did the captain overturn the recommendation to document in an alternative manner?
   d. How many times did the senior hearing officer mitigate a penalty whenmitigation was recommended in the mental health assessment?

<u>CSP-SAC Response</u>

See attached data.

Total RVRs issued: 473

   a. 7
   b. 312
   c. DAI unable to provide. No report available for requested information.
   d. DAI unable to provide. No report available for requested information.

# Attachment B



# IEX AUDIT December 2022

| A. Documentation | | |
|---|---|---|
| 1. Is the IEX behavior addressed in the Clinical Summary and/or the Case Formulation of the MH Treatment Plan? | 38/41 | 93% |
| 2. Are measureable goals listed that address the IEX behavior in the IPOCs? | 33/41 | 80% |
| 3. Are specific interventions listed to address the IEX behavior in the IPOCs? | 33/41 | 80% |
| IDTTS meet all 3 Audit items: | 32/41 | 78% |