# EXHIBIT A

# Chelsea C. Reyes

| | |
|---|---|
| **From:** | Jenny Yelin <JYelin@rbgg.com> |
| **Sent:** | Tuesday, October 17, 2023 1:21 PM |
| **To:** | Carson R. Niello; Lisa Ells; Adrienne Harrold; Ernest Galvan |
| **Cc:** | Paul B. Mello; Samantha Wolff; v_Elise.Thorn@doj.ca.gov; v_Damon.McClain@doj.ca.gov; Laurel E. O'Connor; David C. Casarrubias |
| **Subject:** | [EXTERNAL] RE: Coleman: Meet and Confer re Motion to Strike [IMAN-DMS.FID63117] |

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Dear Carson and all,

We have reviewed your chart. We do not agree that any of that testimony can or should be struck. We will oppose your motion.

Thanks,

Jenny

**From:** Carson R. Niello <CNiello@hansonbridgett.com>
**Sent:** Monday, October 16, 2023 9:17 PM
**To:** Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Adrienne Harrold <aharrold@rbgg.com>; Ernest Galvan <EGalvan@rbgg.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>
**Subject:** Coleman: Meet and Confer re Motion to Strike

[EXTERNAL MESSAGE NOTICE]

Counsel,

Consistent with the Court's Order last week (ECF No. 8006), we are reaching out to meet and confer on our anticipated motion to strike portions of testimony elicited during the evidentiary hearing. Please see the attached table of testimony identified by Defendants, describing the testimony, witness, citation, and grounds for the motion. We can be available for a call tomorrow if you have further questions after reviewing the table. We intend to file our motion on Thursday.

Thanks.

-Carson



**Carson R. Niello**
**Associate**
CNiello@hansonbridgett.com
Direct: (415) 995-5165

**Hanson Bridgett LLP**
500 Capitol Mall, Suite 1500
Sacramento, CA, 95814
Website | LinkedIn

Costa Mesa • Los Angeles • Sacramento • San Francisco • San Rafael • Walnut Creek

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

| Statement/Testimony | Witness | Citation | Grounds for Striking |
|---|---|---|---|
| All testimony by Angela Reinhold | | | Relevance (FRE 401, 403) – she does not hold a leadership position within CDCR or CCI and therefore cannot speak generally on behalf of Defendants, or as to any statewide impact or policy; Foundation, speculation (FRE 602) |
| Testimony re purpose of weekly conference calls about staffing matters<br><br>**A:** Okay. Sorry. Yes. So the purpose of these meetings, as I understand it, is to give us real-time updates.<br>Also, because so many things were getting lost, it gives me a chance to -- and everyone else who is on the call, with pending hires or vacancies that we believe have been posted or cert lists that we believe we should have gotten, contract updates -- to ask the people that are driving those different departments in real-time and make sure we get follow-up. So I keep a running list of everything that I'm reviewing, everyone's day, in that meeting, and ask everyone's day. | Dr. Alexandra David | 10/05 Transcript at 14:21-15:10 | Foundation (FRE 602) – Dr. David can speak to his institution (CMF), but the scope of his job does not entitle him to speak on behalf of Defendants, or statewide policies or their impacts on other CDCR institutions. |
| Testimony re onboarding process at CMF<br><br>**A:** He said he didn't know and he would look into it.<br>**Q:** And you haven't gotten any further response from him?<br>**A:** Checked my e-mail this morning. | Dr. Alexandra David | 10/05 Transcript at 16:21-17:8 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re statements by Kaiser staff<br><br>A: So I applied for a line staff position as a crisis counselor in the Vacaville Emergency Department. And when I was called by the person that calls and vets you and sort of explains what was going on, the starting salary would have been about 20, 30 thousand dollars, I think, more than what our starting salary is for psychologists at CMF. And it was work from home three days a week, work on-site in the emergency department one day a week, and | Dr. Alexandra David | 10/05 Transcript at 21:4-14 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |

20041526.1

| | | | |
|---|---|---|---|
| they would call you or bing (*sic*) you in when they needed emergency triage, and you would do it over the computer. And then the day that you went in, you ran a group. | | | |
| Testimony re salaries of other employees<br><br>A: The social workers who have left reported to me what they're going to be making at these outside agencies. | Dr. Alexandra David | 10/05 Transcript at 22:9-10 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re salaries of other employees<br><br>A: One social worker who left for UC Davis probation and parole program is making 30 to 40 thousand dollars more a year than she was making at the top of her range at CMF. | Dr. Alexandra David | 10/05 Transcript at 22:16-19 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re salaries of other employees<br><br>A: So I know the most about Kaiser, because the majority of my people left for Kaiser. But I've also had people leave for Sutter, UC Davis, and they all reported making higher salaries. How much more, I don't know, but these were people at the top of their range at CMF, so -- | Dr. Alexandra David | 10/05 Transcript at 23:11-15 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re statements by other employees<br><br>Q: Do you have -- did any of your mental health staff in the non-PIP programs tell you that the denial of these bonuses had an impact on their morale?<br>[objection]<br>A: Yes.<br>Q: Can you -- what kind of effect did they tell you that it had?<br>A: They were mad. They felt devalued. They felt like it wasn't a recruitment and retention bonus and that it was more a I got lucky and started my career at CDCR bonus. People were and still are very angry about it. | Dr. Alexandra David | 10/05 Transcript at 26:21-27:7 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re statements by other employees<br><br>Q: And did that exclusion from the 15 percent pay differential have an impact on the morale of those staff in the non-PIP program? | Dr. Alexandra David | 10/05 Transcript at 28:21 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter |

20041526.1

| | | | |
|---|---|---|---|
| [objection]<br>A: Yes, it did.<br>Q: And what kind of effect did it have on their morale?<br>A: People quit, and they were really angry. | | | within scope of employee relationship. (FRE 801(d)(2)). |
| Q: Are there any other conditions that mental health staff have complained to you about or any other conditions -- I'll start with the first part of that.<br>[objection]<br>A: We had a report of mice in a clinical work area yesterday, had to get vector control out there. You know, it's an old prison. There are smells and sometimes rodents. And, like I said, heating and air that doesn't work. It's -- it's an old building. | Dr. Alexandra David | 10/05 Transcript at 31:2-11 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Q: And did you get a response when you raised these ethical concerns?<br>A: They said that they were looking into it. | Dr. Alexandra David | 10/05 Transcript at 36:13-15 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| A: No. But she said that part of the reason why she was leaving was because they offered her a signing package that she couldn't turn down. | Dr. Alexandra David | 10/05 Transcript at 46:10-12 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re conversations with staff<br><br>A: During those stay conversations, I would often try to problem-solve, see what was -- their issues were. We had multiple departments and programs at Sac that we could shuffle people around to if they were not feeling like they were having fun or a good time or, you know, just being engaged in their work in one program. We would often talk about maybe another program or in any way try to help with the satisfaction and problem-solve issues that they might bring up. | Dr. Kelley Franceschi | 10/05 Transcript at 64:6-13 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re conversations with staff<br><br>Q: What did you learn during these stay conversations? | Dr. Kelley Franceschi | 10/05 Transcript at 65:2-24 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter |

20041526.1

| | | | |
|---|---|---|---|
| A: I learned that each person was very unique to what was<br>going on with their -- their processes in terms of why they were unhappy or why they were choosing to leave.<br>Q: What were some of the factors that people brought up in these conversations?<br>A: Some people didn't like the type of patients that were at Sac. They were having a hard time with navigating access to care issues; they felt that was very frustrating for them. They were having issues with the number of patients that they were required to see. They were having issues with – some were having issues with their supervisors. Those are some of the broad categories.<br>Q: Thank you. Are there any others that you can remember?<br>A: I mean, those are the big, broad categories that, like, I would put people into. Like, are they having a hard time with their job? Are they having a hard time with the people they work with? Are they having a hard time with patient care? Are they having a hard time with -- oh, money -- like, sometimes salaries would come up in terms of, like, I'm leaving because I -- I'm going here. Those are the broad categories. | | | within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re conversations with staff<br><br>Q: So before the break, you outlined some broad categories of concerns that staff have raised in your stay conversations; is that right?<br>A: Yes.<br>Q: And one of those broad categories was salary. And in these<br>stay conversations, can you tell me a bit more about what your<br>staff have told you about why they are concerned about<br>salaries?<br>[objection]<br>A: Can you repeat the question?<br>Q: Yeah, what have you learned from your staff about the concerns they've had about salaries?<br>A: That they are not paid compensation-wise to what they could<br>make out in the community, specifically Kaiser.<br>Q: In what way was it not comparable? | Dr. Kelley Franceschi | 10/05 Transcript at 67:10-68:2 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |

20041526.1

| | | | |
|---|---|---|---|
| A: It was too low. | | | |
| Testimony re conversations with staff<br><br>Q: So you mentioned that staff sometimes -- often cited Kaiser as an employer that offered higher<br>compensation. Did they ever tell you roughly how much more<br>they would make if they went to Kaiser in those conversations?<br>[objection]<br>Court: Just answer yes or no.<br>A: Yes.<br>Q: And what did they tell you?<br>[objection]<br>A: They would say that they -- they would often say what I'm making – what I was making as a chief, they<br>could make as a line staff at Kaiser. That's how they would<br>phrase it. | Dr. Kelley Franceschi | 10/05 Transcript at 68:19-69:8 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re conversations with staff<br><br>Q: And what do you learn in those conversations? What have<br>they told you?<br>[objection]<br>A: They're worried about their patients.<br>Q: What are they worried about?<br>A: They're worried that they can't see all their patients and something bad will happen.<br>Q: And, again, I'm not a mental health clinician. What –<br>A: Sorry.<br>Q: So it's helpful for me if you can explain what type of bad things you mean.<br>A: Decompensation. They're worry they will miss the patient becoming more psychotic or more depressed or more anxious or more impulsive, even, if – as their caseload increases.<br>Q: Are there any other reasons why they might be concerned about their patients while caseloads increase, aside from decompensation?<br>A: Like -- you mean, like, the potential for suicide?<br>Q: That could be one, yes.<br>A: I -- potential for suicide, a potential for missing things that might go on in their lives that | Dr. Kelley Franceschi | 10/05 Transcript at 77:17-78:15 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |

| | | | |
|---|---|---|---|
| would contribute to stress, which is decompensation, though. So that's generally. | | | |
| Testimony re conversations with staff<br><br>Q: In your experience in these stay conversations and managing your staff, did people ever cite<br>their work hours as a reason they were unsatisfied in their<br>positions?<br>MS. THORN: Objection. Calls for hearsay.<br>THE COURT: Overruled.<br>THE WITNESS: No.<br>Q: So just to be clear, in stay conversations, no one -- in stay conversations, did work hours ever come up?<br>MS. THORN: Objection. Asked and answered and calls for hearsay<br>THE COURT: Overruled, just for the purposes of clarification. Yes or no.<br>THE WITNESS: Yes. The -- yeah.<br>Q: And in those conversations, did staff ever cite -- were they ever concerned about their -- the number of hours they worked?<br>MS. THORN: Objection. Hearsay and calls for speculation.<br>THE COURT: Overruled.<br>THE WITNESS: They were concerned, but it was – they were very willing to do the work that was presented. I just want to make that very clear. They were very -- the staff are very dedicated. They want to do whatever it takes. And so while they might have said, I work a lot of hours, none of them said, I'm leaving because I work a lot of hours. | Dr. Kelley Franceschi | | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony about statements by other staff<br><br>Q. BY MR. GOURSE: What did primary clinicians say to you<br>about the effect of these high caseloads on their -- on the care they provide to their patients?<br>MS. THORN: Objection. Lacks foundation. Calls for speculation. And calls for hearsay.<br>THE COURT: Overruled.<br>THE WITNESS: They expressed liability issues. We lost a registry social worker for that exact reason. She was very concerned about the patients, and so was the other providers that were providing the care. They expressed the inability to see them in a one-to-one situation in | Dr. Shelly Minor | 10/05 Transcript at 104:1-16 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |

| | | | |
|---|---|---|---|
| a private room. They were having to go out to the units to do emergencies, and it was difficult for them to attend to their -- their schedule that was -- the patients that were already scheduled, so they weren't able to see them on that day. | | | |
| Testimony re statements by other staff<br><br>Q. BY MR. GOURSE: And what was your understanding as to the<br>meaning of the term liability in that context?<br>MS. THORN: Objection. Calls for speculation.<br>THE COURT: Overruled.<br>MS. THORN: Hearsay.<br>THE WITNESS: The providers were reporting that they were concerned, particularly the ones that had licenses, which,<br>of the four, there was one, and that was a registry social worker. And the other three that were unlicensed were worried<br>that it would affect their license if there was a negative outcome with a patient. And they had concerns about that, considering they weren't able to provide the care that they felt was reasonable and appropriate for the patients in their care. | Dr. Shelly Minor | 10/05 Transcript at 105:6-19 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re statements by other staff<br><br>Q. Prior to September 25th of this year, did you hear<br>complaints about inadequate salaries from -- from –from psychologists working in the non-PIP programs at CHCF?<br>A. Yes.<br>Q. And what did the people who -- who complained about their salaries say?<br>Q. And what did the people who -- who complained about their<br>salaries say?<br>A. The theme of the salary concerns were related to other<br>institutions. Like, we lost several to Kaiser who had higher wages, and it was not a forensic environment. And so those were the primary concerns. | Dr. Shelly Minor | 10/05 Transcript at 109:16-25 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re statements by other staff<br><br>BY MR. GOURSE: Has anyone told you that that -- that their ineligibility for that pay increase affected their morale?<br>MS. THORN: Objection. Calls for hearsay.<br>THE COURT: Overruled. | Dr. Shelly Minor | 10/05 Transcript at 114:10-115:8 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of |

20041526.1

| | | | |
|---|---|---|---|
| THE WITNESS: Yes.<br>Q. BY MR. GOURSE: Why?<br>MS. THORN: Objection. Calls for hearsay. Lack of foundation.<br>THE COURT: Overruled.<br>THE WITNESS: The supervisors as well as the line staff, we were -- we were bringing together the whole institution at CHCF under one broad team, and the 15 percent<br>increase not eligible for the outpatient side caused a lot of negative emotions, verbally stating that there is preferential<br>treatment for the inpatient PIP side. And it was very unfortunate. Because -- because of that, even the supervisors were upset, because the supervisors in the PIP were able to<br>have face-to-face and get the 15 percent.<br>Q. BY MR. GOURSE: Did anyone tell you that they were quitting<br>because they didn't get that salary increase?<br>MS. THORN: Objection. Calls for hearsay. Lack of foundation.<br>THE COURT: Overruled. Just yes or no.<br>THE WITNESS: No. | | | employee relationship. (FRE 801(d)(2)). |
| Testimony re statements by other staff<br><br>Q. BY MR. GOURSE: Did anybody tell you that they were leaving their position because they were ineligible for that bonus?<br>MS. THORN: Objection. Calls for hearsay. Lack of foundation.<br>THE COURT: Just yes or no.<br>THE WITNESS: No. | Dr. Shelly Minor | 10/05 Transcript at 116:9-14 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re statements by other staff<br><br>Q. Did you talk to this staff member about why they left?<br>MS. THORN: Objection. Calls for hearsay. Lack of foundation.<br>THE COURT: Overruled.<br>Just yes or no.<br>Q. BY MS. HARROLD: I can repeat the question.<br>A. Yes, please.<br>Q. You mentioned one staff member just left. Did you talk to<br>the staff member about why they left?<br>A. Yes.<br>Q. And you may have said this and I missed it. What was that<br>staff member's classification? | Angela Reinhold | 10/05 Transcript at 140:10-141:4 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |

20041526.1

| | | | |
|---|---|---|---|
| A. Social worker.<br>Q. And what did that staff member tell you about why they were<br>leaving?<br>MS. THORN: Objection. Calls for hearsay.<br>THE COURT: Overruled.<br>THE WITNESS: The social worker wanted a different institution where it's close to the ocean. She actually went to a state hospital where they pay more. So yeah. | | | |
| Testimony re statements by other staff<br><br>Q. Who did -- who have you spoken with or --<br>MS. THORN: Objection. Calls for hearsay. Lack of foundation.<br>THE COURT: Overruled.<br>Q. BY MS. HARROLD: You may answer.<br>A. I don't know her exact title, but she is the person that processes the paperwork and deals with region on getting the candidate hired.<br>Q. And what did you ask that person?<br>MS. THORN: Objection. Calls for hearsay.<br>THE COURT: Sustained.<br>Q. BY MS. HARROLD: In speaking with this person, did you learn anything about why it has taken three months? And you<br>can answer just yes or no to start.<br>A. No. Sorry. I'm remembering --<br>THE COURT: Just wait for the next question.<br>Q. BY MS. HARROLD: I saw you hesitate there. Is there any clarification you wanted to offer?<br>A. I'm remembering the conversation. So there has been delays in the paperwork, with signing, and going back and forth between the regional office and CCI. | Angela Reinhold | 10/05 Transcript at 142:4-24 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re hiring process<br><br>Q. I'm not very familiar with the hiring process, but can you -- can you explain a bit more about what you mean by paperwork going in between?<br>MS. THORN: Objection. Calls for a narrative. And speculation. And lack of foundation.<br>MS. HARROLD: I'm just asking for clarification, Your Honor.<br>THE COURT: You can answer briefly.<br>THE WITNESS: My honest answer is I don't know the entire process. I just know that region has -- paperwork goes to region, and so the staff member that's in charge of the paperwork for hiring has to work with region to some capacity. | Angela Reinhold | 10/05 Transcript at 142:25-143:11 | Relevance (FRE 401, 403) – she does not hold a leadership position within CDCR or CCI and therefore cannot speak generally on behalf of Defendants, or as to any statewide impact or policy; Foundation, speculation (FRE 602) |

20041526.1

| | | | |
|---|---|---|---|
| Q. BY MS. HARROLD: Do clinical social workers serve as primary clinicians in CDCR?<br>A. Yes.<br>Q. And do psychologists also serve as primary clinicians?<br>A. Yes.<br>Q. And do psychologists also serve as primary clinicians?<br>A. Yes.<br>Q. And can you please describe the job duties of clinical social workers?<br>A. It is the exact same as psychologists. We have an initial assessment when an inmate comes into the prison. We're assessing for suicidality, mental health diagnoses, whether or not -- you know, what the criteria is that they meet in order to be in the mental health program, and what we're going to be doing to treat them so that they -- that their symptoms are alleviated and they can go back to regular programming without the mental health services.<br>So they do initial assessments, and they go to an IDTT, which is -- it stands for Interdisciplinary Treatment Team. It is a formal meeting where the psychiatrist, the clinician, and custody staff -- certain custody staff are in a meeting, where it's a collaboration of minds, in addition to the inmate, where it would discuss what the inmate has agreed is the treatment plan and what they're going to be doing to work towards making that person better.<br>And then the line staff, the clinician, sees the inmate on one-to-one therapy sessions, working towards that treatment goal.<br>Q. Ms. Reinhold, what did you mean just now when you said that social workers have the exact same job duties as psychologists?<br>A. Meaning that we do the exact same work. We -- we have the initial assessment. We go through the IDTT process. We – and I'm going to say we because I'm a social worker, even though I'm a supervisor. We have one-to-one therapy sessions. We do all of the other extra duties that are associated with what is required from the mental health program, to include RVR assessments, evaluations. Any kind of emergent situations where an inmate is actively suicidal or reporting he's actively suicidal, we go and do those assessments to determine appropriate | Angela Reinhold | 10/05 Transcript at 144:15-146:3 | Relevance (FRE 401, 403) – she does not hold a leadership position within CDCR or CCI and therefore cannot speak generally on behalf of Defendants, or as to any statewide impact or policy; Foundation, speculation (FRE 602) |

20041526.1

| | | | |
|---|---|---|---|
| level of care. We do the exact same as psychologists. | | | |
| Testimony re letter to the Court and Plaintiffs' counsel<br><br>Q. In the letter you wrote to the Court and forwarded to Plaintiffs' counsel, did you raise concerns about the recent MOU?<br>A. Yes.<br>MS. THORN: Objection. Calls for hearsay. Lack of foundation.<br>THE COURT: Overruled.<br>THE WITNESS: Yes.<br>Q. BY MS. HARROLD: Now, Ms. Reinhold, what were the main concerns that you wanted to share?<br>MS. THORN: Objection. Calls for a narrative.<br>MS. HARROLD: I'm asking for just the main concerns here.<br>MS. THORN: Objection. Calls for a narrative.<br>THE COURT: Understood. I'll allow the answer as concisely as possible.<br>THE WITNESS: Pay disparity, lack of upward mobility.<br>Q. BY MS. HARROLD: Sorry. What was the word you just used?<br>A. Lack of upward mobility. The difference in retention bonus. | Angela Reinhold | 10/05 Transcript at 146:25-147:19 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |
| Testimony re letter to Court and Plaintiffs' counsel<br><br>Q. You mentioned one of the concerns that you had about --<br>that you wanted to share in your letter about the MOU was the<br>lack of upward mobility?<br>A. Correct.<br>Q. What did you mean when you said that?<br>MS. THORN: Objection. Vague and calls for a narrative.<br>MS. HARROLD: I'm asking for a clarification.<br>THE COURT: Overruled.<br>THE WITNESS: Within CDCR, in the mental health program, I can't go any higher than where I'm at. They don't<br>offer positions for social workers for, say, Chief of Mental Health or things of that nature.<br>MS. HARROLD: I'm going to look at my notes for a moment. | Angela Reinhold | 10/05 Transcript at 151:14-152:10 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |

20041526.1

| | | | |
|---|---|---|---|
| THE WITNESS: Sure.<br>MS. HARROLD: Thank you.<br>(Pause in proceedings.)<br>Q. BY MS. HARROLD: I believe you mentioned that after the MOU, this agreement, was reached with the State, some of your staff told you about it; is that right?<br>A. That is correct. | | | |
| Testimony re statements by other staff<br><br>Q. BY MS. HARROLD: And like you did for the one who left recently, who we talked about, did you talk to any of that handful about the reasons why they were leaving?<br>A. Yes.<br>Q. And what did they say?<br>MS. THORN: Objection. Calls for hearsay.<br>THE COURT: Overruled.<br>THE WITNESS: One is a very good friend of mine. She went to Kaiser. She left because of the retention bonus that was given to psychologists. She had more experience than I did in the prison setting, and she got tired. So she is making more money now at Kaiser. She's -- she's very excited that she gets a bathroom with two-ply toilet paper, not to mention the other office equipment that's state of the art, and treatment space, and an office that has a view, and she's not risking her safety with her patients, and she gets to telework three times a week. So it's really a lot of added bonuses that we don't get here in the prison setting.<br>Q. BY MS. HARROLD: Did you talk to any -- aside from your friend who went to Kaiser, any other of the handful who left within this past year, did you talk to them about the reasons why they're leaving?<br>MS. THORN: Objection. Calls for hearsay.<br>THE COURT: Overruled.<br>Just answer yes or no.<br>THE WITNESS: Yes.<br>Q. BY MS. HARROLD: And what are -- did you hear any concerns from them?<br>MS. THORN: Objection. Calls for hearsay.<br>THE COURT: Overruled.<br>THE WITNESS: Can you repeat the question? Sorry. | Angela Reinhold | 10/05 Transcript at 154:8-155:23 | Hearsay testimony by employee not authorized to make statement on subject and not on a matter within scope of employee relationship. (FRE 801(d)(2)). |

20041526.1

| | | | |
|---|---|---|---|
| Q. BY MS. HARROLD: So now we're talking about the handful who have left in this past year, minus the friend who went to Kaiser. What did you learn in speaking with them about their reasons that they are leaving?<br>MS. THORN: Objection. Leading and calls for hearsay.<br>THE COURT: Overruled.<br>THE WITNESS: They are happy that they left. They are making more money and have much more professional environment that they're working in so -- | | | |