# EXHIBIT B

1

2

3      **IN THE UNITED STATES DISTRICT COURT**
      **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

4

5

6    MARCIANO PLATA , et al.,                )        NO.  C01-1351-T.E.H.
                                            )
7         Plaintiffs                        )    **APPENDIX OF EXHIBITS SUPPORTING**
                                            )    **RECEIVER'S MOTION FOR WAIVER**
8         v.                                )    **OF STATE LAW**
                                            )
9                                           )
10   ARNOLD SCHWARZENEGGER,                 )
      et al.,                               )
11                                          )
         Defendants,                        )
12   _____)

13

14

15

16

17

18

19

20

21

22

23

24

25                                                  **PLAINTIFF'S**
                                                    **EXHIBIT**
26
                                               CASE   2:90-cv-520-
27                                             NO.    KJM-DB

28                                             EXHIBIT
                                               NO.    PL-002

**APPENDIX OF EXHIBITS**

**Exhibit #'s**

1. Primary Care Providers Vacancy Rate By Institution Chart – July 1-31, 2006 Reporting Period

2. Registry By Specialty for Impacted Classifications – July 1, 2005 through June 30, 2006

3. August 4, 2006 Performance Management Report Summary

4. Declaration of Terry Hill

5. Declaration of Jane Robinson

6. Proposed Salaries Effective September 1, 2006 – Chart

7. August 15, 2006 Letter to Linda Buzzini, Counsel to the Receiver from Paul Starkey, DPA Labor Relations Counsel

8. August 20, 2006 Letter to Louis Mauro, Chief Deputy Legal Affairs Secretary Office of the Governor from John Hagar, Chief of Staff to the Receiver

9. August 25, 2006 Letter to John Hagar, Chief of Staff to the Receiver from Andrea Hoch, Legal Affairs Secretary Office of the Governor

10. August 24, 2006 Letter to Linda Buzzini, Counsel to the Receiver from Yvonne Walker SEIU Vice President for Bargaining

11. August 21, 2006 Letter to Linda Buzzini, Counsel to the Receiver from Pam Manwiller, AFSCME Director of State Programs

12. August 25, 2006 Letter to Linda Buzzini, Counsel to the Receiver from Gary Robinson, UAPD Executive Director

13. August 22, 2006 Letter to Robert Sillen, Receiver from Richard Tatum, CCSO State President

14. August 30, 2006 Letter to Robert Sillen, Receiver from Tim Behrens, Assoc of California State Supervisors President

15. August 30, 2006 Letter to Robert Sillen, Receiver from Fred Aguiar, Cabinet Secretary Office of the Governor

# EXHIBIT 1

PL-002.003

California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services
Performance Management Report

Report 1 - Primary Care Providers:  Vacancy Rate By Institution

Reporting Period:  July 1-31, 2006

| | Institution | Class | Total Established Positions* | Total Filled Positions** | Total Vacant Positions** | Vacancy Rate | # of Staff Away From Institution* | Actual No. of Filled Positions | Actual No. of Vacant Positions | Registry Contract/PY Equivalents*** | Emergency Contract (Self Reporting for 7/1/06 - 7/23/06) | Information (Self Reporting for Institution 7/1/06 - 7/23/06)**** | Institution "Adjusted" Vacant Positions** | Institution "Adjusted" Vacancy Rate** | Comments: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | ASP | P&S | 7.00 | 6.00 | 1.00 | 14% | (1.50) | 4.50 | 2.50 | 0.00 | 0.95 | | 1.55 | 22% | An additional 64 "On-Call" hours not included in the P&S Emergency Contract hours. |
| | ASP | NP | 1.00 | 1.00 | 0.00 | 0% | 0.00 | 1.00 | 0.00 | 0.19 | 0.00 | | (0.19) | -19% | |
| | ASP | PA | 2.00 | 1.00 | 1.00 | 50% | 0.00 | 1.00 | 1.00 | 0.43 | 0.00 | | 0.57 | 29% | |
| | ASP | Total PCPs | 10.00 | 8.00 | 2.00 | 20% | (1.50) | 6.50 | 3.50 | 0.62 | 0.95 | | 1.94 | 19% | |
| 2 | CAL | P&S | 4.50 | 3.00 | 1.50 | 33% | (2.00) | 1.00 | 3.50 | 0.00 | 0.00 | | 3.50 | 78% | |
| | CAL | NP | 2.00 | 2.00 | 0.00 | 0% | 0.00 | 2.00 | 0.00 | 0.00 | 0.09 | | (0.09) | -5% | |
| | CAL | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 1.06 | 0.00 | | (1.06) | N/A | |
| | CAL | Total PCPs | 6.50 | 5.00 | 1.50 | 23% | (2.00) | 3.00 | 3.50 | 1.06 | 0.09 | | 2.35 | 36% | |
| 3 | CCC | P&S | 5.00 | 5.00 | 0.00 | 0% | 0.00 | 5.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0% | |
| | CCC | NP | 1.00 | 1.00 | 0.00 | 0% | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0% | |
| | CCC | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.72 | 0.00 | | (0.72) | N/A | |
| | CCC | Total PCPs | 6.00 | 6.00 | 0.00 | 0% | 0.00 | 6.00 | 0.00 | 0.72 | 0.00 | | (0.72) | -12% | |
| 4 | CCI | P&S | 6.00 | 3.00 | 3.00 | 50% | (1.00) | 2.00 | 4.00 | 0.00 | 2.09 | | 1.91 | 32% | An additional 144 "On-Call" hours not included in the P&S Emergency Contract hours. |
| | CCI | NP | 1.00 | 0.00 | 1.00 | 100% | 0.00 | 0.00 | 1.00 | 1.96 | 0.00 | | (0.96) | -96% | |
| | CCI | PA | 2.00 | 2.00 | 0.00 | 0% | 0.00 | 2.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0% | |
| | CCI | Total PCPs | 9.00 | 5.00 | 4.00 | 44% | (1.00) | 4.00 | 5.00 | 1.96 | 2.09 | | 0.95 | 11% | |
| 5 | CCWF | P&S | 8.50 | 8.50 | 0.00 | 0% | 0.00 | 8.50 | 0.00 | 0.00 | 0.00 | | 0.00 | 0% | |
| | CCWF | NP | 1.00 | 1.00 | 0.00 | 0% | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0% | |
| | CCWF | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | N/A | |
| | CCWF | Total PCPs | 9.50 | 9.50 | 0.00 | 0% | 0.00 | 9.50 | 0.00 | 0.00 | 0.00 | | 0.00 | 0% | |
| 6 | CEN | P&S | 5.00 | 3.00 | 2.00 | 40% | 0.00 | 3.00 | 2.00 | 0.00 | 1.25 | | 0.75 | 15% | |

Provision 1A.1 of the Dec. 14, 2005 Court Report
(Replaces 1A.1)

PL-002.004

California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services
Performance Management Report

Report 1 - Primary Care Providers: Vacancy Rate By Institution

Reporting Period: July 1-31, 2006

| Institution | Class | Total Established Positions* | Total Filled Positions** | Total Vacant Positions** | Vacancy Rate | # of Staff Away From Institution* | Actual No. of Filled Positions* | Actual No. of Vacant Positions* | Registry Contract PY Equivalence*** (Self Reporting for 7/1/06 - 7/31/06) | Emergency Contract Information / Self Reporting for 7/1/06 - 7/31/06 | Institution "Adjusted" Vacant Positions** | Institution "Adjusted" Vacancy Rate*** | Comments: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CEN | NP | 1.00 | 1.00 | 0.00 | N/A | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| CEN | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| CEN | Total PCPs | 6.00 | 4.00 | 2.00 | 33% | 0.00 | 4.00 | 2.00 | 0.00 | 1.25 | 0.75 | 13% | |
| 7 CIM | P&S | 15.50 | 15.50 | 0.00 | 0% | 0.00 | 15.50 | 0.00 | 0.71 | 1.25 | (0.71) | -5% | |
| CIM | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| CIM | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| CIM | Total PCPs | 15.50 | 15.50 | 0.00 | 0% | 0.00 | 15.50 | 0.00 | 0.71 | 0.00 | (0.71) | -5% | |
| 8 CIW | P&S | 6.00 | 6.00 | 0.00 | 0% | (1.95) | 4.05 | 1.95 | 1.44 | 0.00 | 0.51 | 9% | |
| CIW | NP | 2.00 | 2.00 | 0.00 | 0% | (0.55) | 1.45 | 0.55 | 0.00 | 0.00 | 0.55 | 28% | |
| CIW | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| CIW | Total PCPs | 8.00 | 8.00 | 0.00 | 0% | (2.50) | 5.50 | 2.50 | 1.44 | 0.00 | 1.06 | 13% | |
| 9 CMC | P&S | 16.50 | 15.50 | 1.00 | 6% | (1.70) | 13.80 | 2.70 | 0.47 | 0.00 | 2.23 | 13% | |
| CMC | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| CMC | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| CMC | Total PCPs | 16.50 | 15.50 | 1.00 | 6% | (1.70) | 13.80 | 2.70 | 0.47 | 0.00 | 2.23 | 13% | |
| 10 CMF | P&S | 18.00 | 11.00 | 7.00 | 39% | (1.00) | 10.00 | 8.00 | 0.00 | 6.21 | 1.79 | 10% | |
| CMF | NP | 6.90 | 6.90 | 0.00 | 0% | 0.00 | 6.90 | 0.00 | 0.62 | 1.89 | (2.51) | -36% | |
| CMF | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| CMF | Total PCPs | 24.90 | 17.90 | 7.00 | 28% | (1.00) | 16.90 | 8.00 | 0.62 | 8.11 | (0.72) | -3% | |

PL-002.005

California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services
Performance Management Report

Report 1 - Primary Care Providers:  Vacancy Rate By Institution

Reporting Period:  July 1-31, 2006

| | Institution | Class | Total Established Positions* | Total Filled Positions** | Total Vacant Positions** | Vacancy Rate | # of Staff Away From Institution* | Actual No. of Filled Positions* | Actual No. of Vacant Positions | Registry Contract PY Equivalents (Self Reporting for 7/1/06 - 7/31/06) | Emergency Contract Information* (Self Reporting for 7/1/06 - 7/31/06) | Institution "Adjusted Vacant Positions"** | Institution "Actual/Adjusted Vacancy Rate"** | Comments: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | COR | P&S | 10.50 | 6.50 | 4.00 | 38% | (3.00) | 3.50 | 7.00 | 0.00 | 0.90 | 6.10 | 58% | |
| | COR | NP | 4.00 | 4.00 | 0.00 | 0% | 0.00 | 4.00 | 0.00 | 0.51 | 0.00 | (0.51) | -13% | |
| | COR | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | COR | Total PCPs | 14.50 | 10.50 | 4.00 | 28% | (3.00) | 7.50 | 7.00 | 0.51 | 0.90 | 5.59 | 39% | |
| 12 | CRC | P&S | 8.00 | 8.00 | 0.00 | 0% | (3.75) | 4.25 | 3.75 | 0.00 | 0.00 | 3.75 | 47% | |
| | CRC | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | CRC | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | CRC | Total PCPs | 8.00 | 8.00 | 0.00 | 0% | (3.75) | 4.25 | 3.75 | 0.00 | 0.00 | 3.75 | 47% | |
| 13 | CTF | P&S | 10.00 | 8.50 | 1.50 | 15% | 0.00 | 8.50 | 1.50 | 0.00 | 0.00 | 1.50 | 15% | |
| | CTF | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | CTF | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | CTF | Total PCPs | 10.00 | 8.50 | 1.50 | 15% | 0.00 | 8.50 | 1.50 | 0.00 | 0.00 | 1.50 | 15% | |
| 14 | CVSP | P&S | 3.00 | 2.00 | 1.00 | 33% | (3.00) | (1.00) | 4.00 | 0.00 | 0.00 | 4.00 | 133% | |
| | CVSP | NP | 2.00 | 2.00 | 0.00 | 0% | 0.00 | 2.00 | 0.00 | 0.71 | 0.00 | (0.71) | -36% | |
| | CVSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | CVSP | Total PCPs | 5.00 | 4.00 | 1.00 | 20% | (3.00) | 1.00 | 4.00 | 0.71 | 0.00 | 3.29 | 66% | |
| 15 | DVI | P&S | 7.00 | 6.50 | 0.50 | 7% | (1.00) | 5.50 | 1.50 | 0.00 | 0.25 | 1.25 | 18% | |
| | DVI | NP | 1.00 | 1.00 | 0.00 | 0% | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| | DVI | PA | 1.00 | 1.00 | 0.00 | 0% | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| | DVI | Total PCPs | 9.00 | 8.50 | 0.50 | 6% | (1.00) | 7.50 | 1.50 | 0.00 | 0.25 | 1.25 | 14% | |

8/13/2006

Provision 1A.1 of the Dec. 14, 2005 Court Report
(Replaces 1A.1)

California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services
Performance Management Report

Report 1 - Primary Care Providers:  Vacancy Rate By Institution

Reporting Period:  July 1-31, 2006

| | Institution | Class | Total Established Positions* | Total Filled Positions** | Total Vacant Positions** | Vacancy Rate | # of Staff Away From Institution* | Actual No. of Filled Positions* | Actual No. of Vacant Positions | Registry Contract PY Equivalents*** Self Reporting for 7/1/06 - 7/31/06 | Emergency Contract Information** (Self Reporting 7/1/06 - 7/31/06) | Institution "Adjusted" Vacant Positions** | Institution "Adjusted" Vacancy Rate** | Comments: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | FSP | P&S | 6.00 | 6.00 | 0.00 | 0% | 0.00 | 6.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| | FSP | NP | 1.00 | 1.00 | 0.00 | 0% | (0.40) | 0.60 | 0.40 | 0.00 | 0.00 | 0.40 | 40% | |
| | FSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | FSP | Total PCPs | 7.00 | 7.00 | 0.00 | 0% | (0.40) | 6.60 | 0.40 | 0.00 | 0.00 | 0.40 | 6% | |
| 17 | HDSP | P&S | 4.00 | 2.00 | 2.00 | 50% | (1.00) | 1.00 | 3.00 | 0.00 | 0.24 | 2.76 | 69% | |
| | HDSP | NP | 2.00 | 2.00 | 0.00 | 0% | 0.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| | HDSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | HDSP | Total PCPs | 6.00 | 4.00 | 2.00 | 33% | (1.00) | 3.00 | 3.00 | 0.00 | 0.24 | 2.76 | 46% | |
| 18 | ISP | P&S | 4.00 | 4.00 | 0.00 | 0% | (0.50) | 3.50 | 0.50 | 0.00 | 0.00 | 0.50 | 13% | |
| | ISP | NP | 1.00 | 1.00 | 0.00 | 0% | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| | ISP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | ISP | Total PCPs | 5.00 | 5.00 | 0.00 | 0% | (0.50) | 4.50 | 0.50 | 0.00 | 0.00 | 0.50 | 10% | |
| 19 | KVSP | P&S | 4.00 | 3.00 | 1.00 | 25% | 0.00 | 3.00 | 1.00 | 0.00 | 0.28 | 0.72 | 18% | |
| | KVSP | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | KVSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | KVSP | Total PCPs | 4.00 | 3.00 | 1.00 | 25% | 0.00 | 3.00 | 1.00 | 0.00 | 0.28 | 0.72 | 18% | |
| 20 | LAC | P&S | 7.00 | 5.00 | 2.00 | 29% | (1.00) | 4.00 | 3.00 | 0.00 | 0.00 | 3.00 | 43% | |
| | LAC | NP | 1.00 | 1.00 | 0.00 | N/A | 0.00 | 1.00 | 0.00 | 0.28 | 0.00 | (0.28) | N/A | |
| | LAC | PA | 2.00 | 2.00 | 0.00 | 0% | (1.00) | 1.00 | 1.00 | 0.00 | 0.00 | 1.00 | 50% | |
| | LAC | Total PCPs | 10.00 | 8.00 | 2.00 | 20% | (2.00) | 6.00 | 4.00 | 0.28 | 0.00 | 3.72 | 37% | |

California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services
Performance Management Report

Report 1 - Primary Care Providers:  Vacancy Rate By Institution

Reporting Period:  July 1-31, 2006

| | Institution | Class | Total Established Positions* | Total Filled Positions** | Total Vacant Positions** | Vacancy Rate* | # of Staff Away From Institution* | Actual No. of Filled Positions* | Actual No. of Vacant Positions | Region Contract FY Equivalents*** (Self Reporting for 7/1/06 - 7/31/06) | Emergency Contract Information (Self Reporting for 7/1/06 - 7/31/06) | Institution "Adjusted" Vacant Positions** | Institution "Adjusted" Vacancy Rate** | Comments: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | MCSP | P&S | 4.00 | 4.00 | 0.00 | 0% | (1.00) | 3.00 | 1.00 | 0.00 | 0.00 | 1.00 | 25% | |
| | MCSP | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | MCSP | PA | 1.50 | 1.50 | 0.00 | 0% | 0.00 | 1.50 | 0.00 | 0.79 | 0.00 | (0.79) | -53% | |
| | MCSP | Total PCPs | 5.50 | 5.50 | 0.00 | 0% | (1.00) | 4.50 | 1.00 | 0.79 | 0.00 | 0.21 | 4% | |
| 22 | NKSP | P&S | 10.00 | 8.00 | 2.00 | 20% | 0.00 | 8.00 | 2.00 | 0.00 | 0.00 | 2.00 | 20% | |
| | NKSP | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | NKSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | NKSP | Total PCPs | 10.00 | 8.00 | 2.00 | 20% | 0.00 | 8.00 | 2.00 | 0.00 | 0.00 | 2.00 | 20% | |
| 23 | PBSP | P&S | 4.00 | 3.00 | 1.00 | 25% | (2.00) | 1.00 | 3.00 | 0.00 | 2.18 | 0.82 | 21% | |
| | PBSP | NP | 3.00 | 3.00 | 0.00 | 0% | 0.00 | 3.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| | PBSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | PBSP | Total PCPs | 7.00 | 6.00 | 1.00 | 14% | (2.00) | 4.00 | 3.00 | 0.00 | 2.18 | 0.82 | 12% | |
| 24 | PVSP | P&S | 6.00 | 0.00 | 6.00 | 100% | 0.00 | 0.00 | 6.00 | 0.00 | 7.34 | (1.34) | -22% | An additional 651 "On-Call" hours not included in the P&S Emergency Contract hours. |
| | PVSP | NP | 3.70 | 1.00 | 2.70 | 73% | 0.00 | 1.00 | 2.70 | 1.03 | 0.00 | 1.67 | 45% | 1.0 Reclass of P&S to NP. |
| | PVSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.43 | 0.00 | (0.43) | N/A | |
| | PVSP | Total PCPs | 9.70 | 1.00 | 8.70 | 90% | 0.00 | 1.00 | 8.70 | 1.46 | 7.34 | (0.10) | -1% | |
| 25 | RJD | P&S | 9.50 | 7.50 | 2.00 | 21% | (4.00) | 3.50 | 6.00 | 0.00 | 0.00 | 6.00 | 63% | |
| | RJD | NP | 4.00 | 1.00 | 3.00 | 75% | 0.00 | 1.00 | 3.00 | 1.14 | 0.00 | 1.86 | 47% | |
| | RJD | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | RJD | Total PCPs | 13.50 | 8.50 | 5.00 | 37% | (4.00) | 4.50 | 9.00 | 1.14 | 0.00 | 7.86 | 58% | |

California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services
Performance Management Report

Report 1 - Primary Care Providers:  Vacancy Rate By Institution

Reporting Period:  July 1-31, 2006

| | Institution | Class | Total Established Positions* | Total Filled Positions** | Total Vacant Positions** | Vacancy Rate | # of Staff Away From Institution* | Actual No. of Filled Positions | Actual No. of Vacant Positions | Registry Contract P/Y Equivalents*** (Self Reporting for 7/1/06 - 7/31/06) | Emergency Contract Information** (Self Reporting for 7/1/06 - 7/31/06) | Institution "Adjusted" Vacant Positions* | Institution "Adjusted" Vacancy Rate*** | Comments: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 26 | SAC | P&S | 6.00 | 6.00 | 0.00 | 0% | (1.65) | 4.35 | 1.65 | 0.00 | 0.47 | 1.18 | 20% | |
| | SAC | NP | 0.00 | 0.00 | 0.00 | N/A | (1.00) | (1.00) | 1.00 | 0.19 | 0.00 | 0.81 | N/A | |
| | SAC | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | SAC | Total PCPs | 6.00 | 6.00 | 0.00 | 0% | (2.65) | 3.35 | 2.85 | 0.19 | 0.47 | 1.99 | 33% | |
| 27 | SATF | P&S | 9.00 | 3.00 | 6.00 | 67% | (2.00) | 1.00 | 8.00 | 0.00 | 5.44 | 2.56 | 28% | |
| | SATF | NP | 2.00 | 2.00 | 0.00 | N/A | 0.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| | SATF | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | SATF | Total PCPs | 11.00 | 5.00 | 6.00 | 55% | (2.00) | 3.00 | 8.00 | 0.00 | 5.44 | 2.56 | 23% | |
| 28 | SCC | P&S | 7.00 | 7.00 | 0.00 | 0% | (1.00) | 6.00 | 1.00 | 0.00 | 0.00 | 1.00 | 14% | |
| | SCC | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | SCC | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | SCC | Total PCPs | 7.00 | 7.00 | 0.00 | 0% | (1.00) | 6.00 | 1.00 | 0.00 | 0.00 | 1.00 | 14% | |
| 29 | SOL | P&S | 6.00 | 6.00 | 0.00 | 0% | 0.00 | 6.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| | SOL | NP | 2.00 | 2.00 | 0.00 | N/A | 0.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | SOL | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| | SOL | Total PCPs | 8.00 | 8.00 | 0.00 | 0% | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| 30 | SQ | P&S | 10.00 | 7.50 | 2.50 | 25% | 0.00 | 7.50 | 2.50 | 0.00 | 3.79 | (1.29) | -13% | |
| | SQ | NP | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 1.12 | 1.42 | (2.54) | N/A | |
| | SQ | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.71 | 0.00 | (0.71) | N/A | |
| | SQ | Total PCPs | 10.00 | 7.50 | 2.50 | 25% | 0.00 | 7.50 | 2.50 | 1.83 | 5.21 | (4.54) | -45% | |

Provision 1A.1 of the Dec. 14, 2005 Court Report
(Replaces 1A.1)

PL-002.009

California Department of Corrections and Rehabilitation
Division of Correctional Health Care Services
Performance Management Report

Report 1 - Primary Care Providers: Vacancy Rate By Institution

Reporting Period: July 1-31, 2006

| Institution | Class | Total Established Positions* | Total Filled Positions** | Total Vacant Positions** | Vacancy Rate | # of Staff Away From Institution* | Actual No. of Filled Positions | Actual No. of Vacant Positions | Registry Contract FY Equivalents (Self Reporting for 7/1/06 - 7/31/06) | Emergency Contract Information (Self Reporting for 7/1/06 - 7/31/06) | Institution - Adjusted Vacant Positions | Institution - Adjusted Vacancy Rate** | Comments: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 SVSP | P&S | 4.00 | 0.00 | 4.00 | 100% | (0.38) | (0.38) | 4.38 | 1.12 | 2.86 | 0.39 | 10% | An additional 64 "On-Call" hours not included in the P&S Emergency Contract hours. |
| SVSP | NP | 3.00 | 3.00 | 0.00 | 0% | 0.00 | 3.00 | 0.00 | 1.25 | 0.00 | (1.25) | -42% | |
| SVSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| SVSP | Total PCPs | 7.00 | 3.00 | 4.00 | 57% | (0.38) | 2.62 | 4.38 | 2.38 | 2.86 | (0.86) | -12% | |
| 32 VSPW | P&S | 5.00 | 5.00 | 0.00 | 0% | (2.00) | 3.00 | 2.00 | 0.00 | 0.95 | 1.05 | 21% | |
| VSPW | NP | 4.00 | 4.00 | 0.00 | 0% | 0.00 | 4.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| VSPW | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| VSPW | Total PCPs | 9.00 | 9.00 | 0.00 | 0% | (2.00) | 7.00 | 2.00 | 0.00 | 0.95 | 1.05 | 12% | |
| 33 WSP | P&S | 10.00 | 7.00 | 3.00 | 30% | (0.30) | 6.70 | 3.30 | 0.00 | 0.00 | 3.30 | 33% | |
| WSP | NP | 1.00 | 1.00 | 0.00 | 0% | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | |
| WSP | PA | 0.00 | 0.00 | 0.00 | N/A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | N/A | |
| WSP | Total PCPs | 11.00 | 8.00 | 3.00 | 27% | (0.30) | 7.70 | 3.30 | 0.00 | 0.00 | 3.30 | 30% | |
| Total | P&S | 246.00 | 192.00 | 54.00 | 22% | (36.73) | 155.27 | 90.73 | 3.74 | 35.20 | 51.78 | 21% | |
| Total | NP | 50.60 | 43.90 | 6.70 | 13% | (1.95) | 32.00 | 17.97 | 9.00 | 3.41 | (3.75) | -7% | |
| Total | PA | 8.50 | 7.50 | 1.00 | 12% | (1.00) | 6.50 | 2.00 | 4.13 | 0.00 | -2.13 | -25% | Due to no established positions, formula is overriden, refer to total for all PCPs. |
| | All PCPs | 305.10 | 243.40 | 61.70 | 20% | (39.68) | 193.77 | 110.70 | 16.87 | 38.61 | 45.90 | 15% | |

*Based on the most current State Controllers Office MIRS report.
**Based on the current Office of Workforce Planning's Plata Vacancy Report, which provdes vacancy information as of the last day of the reporting period and the number of positions filled is adjusted based on OWP reported vacancies.
***Registry contract hours reported are based on self reporting by the institution. Emergency contract information reflects invoices received from "Emergency Contractors" for dates of services during this reporting period. It is possible that the numbers may need to be adjusted for this time frame. This is considered a conservative estimate of the primary contract usage during this period.

Provision 1A.1 of the Dec. 14, 2005 Court Report
(Replaces 1A.1)

PL-002.010

# EXHIBIT 2

**Registry by Specialty for Impacted Classifications**
**FY 05/06 - July 1, 2005 through June 30, 2006**

| Specialty | Annual Contract Hours | Annual Contract Expenditures | Average Cost Per Hour (July-June) | Average of Full-Time Contract Employees Used/Month |
|---|---|---|---|---|
| Registry - Dietary | 13,559 | $667,076 | $49.20 | 6.52 |
| Registry - LVN | 662,740 | $31,820,780 | $48.01 | 318.63 |
| Registry - Pharmacist | 92,265 | $7,430,590 | $80.54 | 44.36 |
| Registry - Pharmacist in Charge | 37,790 | $3,658,734 | $96.82 | 18.17 |
| Registry - Pharmacy Tech | 77,902 | $1,722,226 | $22.11 | 37.45 |
| Registry - Physician/RNP - Emergency Contracts | 88,169 | $15,012,890 | $170.27 | 42.39 |
| Registry - RN | 405,986 | $26,951,019 | $66.38 | 195.19 |
| Registry - RNP | 40,047 | $2,633,233 | $65.75 | 19.25 |
| Registry - Surgical Nurse | 469 | $53,659 | $114.41 | 0.23 |
| Registry - X-Ray | 13,285 | $607,220 | $45.71 | 6.39 |
| **Total Contract Services** | **1,432,212** | **$90,557,427** | **$63.23** | **688.58** |

*Based on actual FY 2005/06 benefit rates for classfication
/1 includes $12,000 (1,000/month) differential
/2 Includes $14,544 (1,212/month) in differentials does not includes Plata bonuses as they are not ongoing
/3 Includes $1,750 differential (per month), does not include Plata bonuses as they are not ongoing
/4 Includes $14,544 differential ($1,212/month), does not include Plata bonuses as they are not ongoing

PL-002.012

# EXHIBIT 3

Department of Correction and Rehabilitation
Division of Correctional Health Care Services

**For Discussion Only**

Performance Management Report Summary
August 4, 2006
Summary of Clinical Hiring Results

Primary Care Providers

| Reporting Period | Established Positions | Filled Positions | Vacancy Rate[1] | Adjusted Vacancy Rate[2] | Apps Received | Apps Accepted | Interviews Held | Offers Made | Started Work |
|---|---|---|---|---|---|---|---|---|---|
| 12-1 / 12-15 | 282.3 | 212 | 26% | 19% | 25 | 23 | 19 | 12 | 1 |
| 12-16 / 12-3 | 284.8 | 209.5 | 26% | 18% | 75 | 61 | 44 | 25 | 2 |
| 1-1 / 1-15 | 282.8 | 212.5 | 25% | 17% | 19 | 14 | 21 | 9 | 1 |
| 1-16 / 1-31 | 284.8 | 220 | 23% | 18% | 47 | 43 | 37 | 18 | 4 |
| 2-1 / 2-15 | 291.4 | 225 | 23% | 15% | 30 | 30 | 33 | 8 | 4 |
| 2-16 / 2-28 | 287.8 | 232.3 | 19% | 14% | 8 | 8 | 11 | 13 | 2 |
| 3-1 / 3-15 | 288.8 | 236.3 | 18% | 8% | 27 | 27 | 16 | 9 | 10 |
| 3-16 / 3-31 | 288.8 | 236.3 | 18% | 5% | 28 | 29 | 19 | 11 | 4 |
| 4-1 / 4-15 | 287.8 | 233 | 19% | 10% | 5 | 5 | 8 | 2 | 5 |
| 4-16 / 4-30 | 284.2 | 227.5 | 20% | 7% | 32 | 32 | 11 | 3 | 1 |
| 5-1 / 5-15 | 291.2 | 229 | 21% | 13% | 29 | 29 | 20 | 3 | 6 |
| 5-16 / 5-31 | 300.5 | 233 | 22% | 14% | 2 | 2 | 5 | 6 | 2 |
| 6-1 / 6-15 | 300.2 | 237.5 | 21% | 26% | 34 | 35 | 4 | 0 | 7 |
| 6-16 / 6-30 | 300.2 | 238.5 | 21% | 17% | 25 | 25 | 17 | 3 | 1 |
| 7-1/7-31 | 305.1 | 243.4 | 20% | 15% | 50 | 50 | 29 | 14 | 2 |
| Total | - | - | - | - | 436 | 413 | 294 | 136 | 52 |

Registered Nurse

| Reporting Period | Established Positions | Filled Positions | Vacancy Rate1 | Apps Received | Apps Accepted | Interviews Held | Offers Made | Started Work |
|---|---|---|---|---|---|---|---|---|
| 12-1 / 12-15 | 1177 | 785 | 33% | 80 | 80 | 83 | 54 | 7 |
| 12-16 / 12-3 | 1117 | 723 | 38.6% | 230 | 217 | 180 | 121 | 37 |
| 1-1 / 1-15 | 1176 | 791 | 32.7% | 24 | 23 | 84 | 45 | 29.5 |
| 1-16 / 1-31 | 1176 | 910 | 23% | 23 | 23 | 83 | 71 | 40 |
| 2-1 / 2-15 | 1200 | 981 | 18% | 193 | 193 | 88 | 71 | 52 |
| 2-16 / 2-28 | 1187 | 990 | 17% | 104 | 104 | 43 | 20 | 24 |
| 3-1 / 3-15 | 1189.49 | 1015.18 | 15% | 128 | 128 | 93 | 49.5 | 41 |
| 3-16 / 3-31 | 1188.29 | 1028.59 | 13% | 128 | 128 | 53 | 36 | 28 |
| 4-1 / 4-15 | 1188.29 | 1024.9 | 14% | 69 | 69 | 40 | 23 | 18 |
| 4-16 / 4-30 | 1188.32 | 1040.93 | 12% | 67 | 67 | 42 | 25 | 20 |
| 5-1 / 5-15 | 1211.19 | 1084.8 | 10% | 49 | 49 | 71 | 22 | 21 |
| 5-16 / 5-31 | 1245.11 | 1097.72 | 12% | 110 | 110 | 57 | 19 | 8 |
| 6-1 / 6-15 | 1245.11 | 1114.62 | 10% | 28 | 28 | 39 | 6 | 20 |
| 6-16 / 6-30 | 1280.51 | 1113.82 | 13% | 28 | 28 | 59 | 24 | 15 |
| 7/1-7/31 | 1325.29 | 1142.68 | 14% | 225 | 225 | 105 | 48 | 30 |
| Total | - | - | - | 1486 | 1472 | 1120 | 634.5 | 390.5 |

[1] Vacancy Rate:  The vacancy rate does not adjust for long-term absence of civil service employees or contractor hours.
[2] Adjusted Vacancy Rate: the adjusted vacancy rate adjusts for long-term absence of civil service employees and contractor hours converted to full-time equivalents.

Note:  The vacancy rates for this reporting period have increased slightly due to new positions being established.

1 of 3

PL-002.014

# EXHIBIT 4

PL-002.015

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

MARCIANO PLATA , et al.,                )
      Plaintiffs                            )
                       )
       v.                                     )
                       )
ARNOLD SCHWARZENEGGER,   )
 et al.,                                        )
      Defendants,                          )
_____)

NO.  C01-1351-T.E.H.

**DECLARATION OF TERRY HILL**

I, TERRY HILL, declare that if called I could and would competently testify as follows:

1.  I am a medical doctor licensed to practice in the State of California.  I am presently employed as the Chief Medical Officer for the Office of the Receiver.  Previously I was the Senior Medical Director for Lumetra which is the Medicare Quality Improvement Organization for California.  From 1999-2004, I was the Medical Director for Laguna Honda Hospital.  I am on the core faculty of the Stanford Geriatric Education Center and an Assistant Clinical Professor in the Department of Medicine, UC San Francisco. I am on the Board of the California Institute for Health Systems Improvement, and a consultant to the California Medical Association's Committee on Quality Care.

2.  Continuity of care is a fundamental aspect of any medical care delivery system.  Continuity is especially important for patients with chronic diseases and patients who suffer from a variety of medical and mental health complications, the type of problems that are common among a significant percentage of California prisoners.

3.  In response to serious staffing shortages, the California Department of Corrections and

1

PL-002.016

1   Rehabilitation (CDCR) has been fortunate in obtaining the services of contract medical care
2   providers, some of whom are qualified and professional.  However, health care cannot be as safely
3   or effectively provided by those who do not have an on-going relationship with their patients and
4   colleagues.  A continuous provider-patient relationship is the cornerstone of health care, including
5   correctional health care.

6       4. Without a continuous provider-patient relationship communication suffers, information
7   is lost, trust is lessened, expertise is squandered and outcomes are deficient.  Effective long term
8   medical care cannot be provided for California prisoners with the existing degree of CDCR reliance
9   on registry clinicians.  Replacing temporary, contract providers with permanent State employees is
10  entirely consistent with the mission of the Receivership.  The increased use of permanent State
11  employee clinicians will, without question, improve the continuity of care and, therefore, medical
12  care to inmate-patients in CDCR's institutions.

13      I declare under penalty of perjury that the foregoing is true and correct to the best of my
14  knowledge.  Executed this 7th of September, 2006, at San Quentin State Prison, California.

Terry Hill, MD
Declarant

2

# EXHIBIT 5

PL-002.018

1
2
3             **IN THE UNITED STATES DISTRICT COURT**
4             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
5
6   MARCIANO PLATA , et al.,            )
                                        )    NO.  C01-1351-T.E.H.
7         Plaintiffs                    )
                                        )    **DECLARATION OF JANE ROBINSON**
8         v.                            )
                                        )
9                                       )
10  ARNOLD SCHWARZENEGGER,              )
     et al.,                           )
11                                      )
          Defendants,                   )
12  _____)
13
14  I, JANE ROBINSON, declare that if called I could and would competently testify as follows:

15          1.  I am a Registered Nurse licensed to practice in the State of California. I am presently

16  employed as the Regional Director of Nursing, Northern Region for the California Department of

17  Corrections and Rehabilitation (CDCR). I have held this position since March of 2006. Prior to my

18  employment with CDCR I was employed by the Department of Corrections in the State of

19  Washington as the Health Care Manager for the McNeil Island Correction Center. I was employed

20  by the Washington Department of Corrections for eight years.  Before that I was employed as a Care

21  Coordinator for an acute care psychiatric unit at a community based hospital in Grand Forks, North

22  Dakota. I have been a Registered Nurse since 1986.

23          2.  Patients in the correctional setting often have complex and dynamic health care needs.

24  Nursing processes are used for assessment; the creation of nursing care plans; implementation of

25  those plans; and, to evaluate the patient's response to nursing intervention. In addition, nurses

26  coordinate the patient's plan of care with the other health care disciplines along the continuum of

27  health services or levels of care.  Each of these nursing functions is part of establishing and

28                                        1

1   maintaining a continuity of care.

2   　　　3. Consistency in nurse-patient interactions is the foundation for a professional, therapeutic

3   relationship. It is through repeated encounters that trust is formed. Patients disclose more information

4   and the nurses are able to elicit more information pertaining to the patient's long term and short term

5   health care needs. Nurses who are familiar with the details and history of a patient's condition can

6   anticipate an exacerbation or a difficulty more readily, and intervene to promote better patient

7   outcomes.  Patients and the health care team rely on constancy among staff for nursing follow-

8   through, patient advocacy and accountability.

9   　　　4. The CDCR currently relies heavily on the use of contract or "Registry" nurses to provide

10  care for the patients. The qualifications of these nurses can vary significantly.  Furthermore, registry

11  nurses with adequate experience in correctional health care are not usually available.  Registry nurses

12  can provide essential care in some areas, such as Urgent Care and Emergency Response, where the

13  nursing care is immediate to a specific problem. The majority of patient care activities in a prison

14  occur however in the ambulatory care setting where continuity of staff, especially nursing is

15  essential.  The long term needs California prison inmates cannot be adequately provided by a health

16  care system that relies heavily upon registry personnel.  Replacing the contract, temporary nursing

17  staff with permanent State employees will provide significant benefits to inmate/patients by

18  improving continuity of care which will result in better patient outcomes.

19  　　　I declare under penalty of perjury that the foregoing is true and correct to the best of my

20  knowledge.  Executed this 7th day of September, 2006, at San Quentin State Prison, California.

21

22  　　　　　　　　　　　　　　　_____

23  　　　　　　　　　　　　　　Jane Robinson
    　　　　　　　　　　　　　　CDCR Regional Director of Nursing

24

25

26

27

28  　　　　　　　　　　　　　　　　　　　2

# EXHIBIT 6

**PROPOSED SALARIES**
**Effective September 1, 2006**

| Classification | Proposed Incumbents $ | | | Proposed New Hires $ | |
|---|---|---|---|---|---|
| | Min | Max | | Min | Max |
| **Nursing Services** | | | | | |
| **Registered Nurse** | | | | | |
| Bay area | $ 8,154 | $ 8,989 | | $ 7,766 | $ 8,989 |
| All others | $ 7,397 | $ 8,154 | | $ 7,045 | $ 8,154 |
| | | | | | |
| **Nurse Instructor** | | | | | |
| Bay area | $ 7,740 | $ 9,408 | | $ 7,740 | $ 9,408 |
| All others | $ 7,021 | $ 8,534 | | $ 7,021 | $ 8,534 |
| | | | | | |
| **Nurse Anesthetist** | | | | | |
| Bay area | $ 8,406 | $ 10,218 | | $ 8,406 | $ 10,218 |
| All others | $ 7,626 | $ 9,269 | | $ 7,626 | $ 9,269 |
| | | | | | |
| **Public Health RN** | | | | | |
| Public Health Nurse I | | | | | |
| Bay area | $ 7,424 | $ 9,024 | | $ 7,424 | $ 9,024 |
| All others | $ 6,735 | $ 8,186 | | $ 6,735 | $ 8,186 |
| | | | | | |
| Public Health Nurse II | | | | | |
| Bay area | $ 7,924 | $ 9,632 | | $ 7,924 | $ 9,632 |
| All others | $ 7,189 | $ 8,738 | | $ 7,189 | $ 8,738 |
| | | | | | |
| **Surgical Nurse** | | | | | |
| Surgical Nurse I | | | | | |
| Bay area | $ 7,185 | $ 8,733 | | $ 7,185 | $ 8,733 |
| All others | $ 6,518 | $ 7,923 | | $ 6,518 | $ 7,923 |
| | | | | | |
| Surgical Nurse II | | | | | |
| Bay area | $ 7,653 | $ 9,302 | | $ 7,653 | $ 9,302 |
| All others | $ 6,942 | $ 8,438 | | $ 6,942 | $ 8,438 |
| | | | | | |
| **Supervising RN** | | | | | |
| Supervising RN I | | | | | |
| Bay Area | $ 8,345 | $ 10,143 | | $ 8,345 | $ 10,143 |
| All Others | $ 7,571 | $ 9,203 | | $ 7,571 | $ 9,203 |
| | | | | | |
| Supervising RN II | | | | | |
| Bay Area | $ 8,345 | $ 10,143 | | $ 8,345 | $ 10,143 |
| All Others | $ 7,571 | $ 9,203 | | $ 7,571 | $ 9,203 |

1 of 4

FINAL

PL-002.022

**PROPOSED SALARIES**
**Effective September 1, 2006**

| Classification | Proposed Incumbents $ | | | Proposed New Hires $ | | |
|---|---|---|---|---|---|---|
| | Min | | Max | Min | | Max |
| Supervising RN III | | | | | | |
|   Bay Area | $ | 8,715 | $ | 10,593 | $ | 8,715 | $ | 10,593 |
|   All Others | $ | 7,905 | $ | 9,609 | $ | 7,905 | $ | 9,609 |
| | | | | | | |
| **Nurse Consultant (hdqtrs)** | | | | | | |
| Nurse Consultant I | $ | 8,392 | $ | 10,201 | $ | 8,392 | $ | 10,201 |
| | | | | | | |
| Nurse Consultant II | $ | 8,475 | $ | 10,302 | $ | 8,475 | $ | 10,302 |
| | | | | | | |
| Nurse Consultant III (spec) | $ | 8,558 | $ | 10,403 | $ | 8,558 | $ | 10,403 |
| | | | | | | |
| Nurse Consultant III (supvr) | $ | 8,861 | $ | 10,771 | $ | 8,861 | $ | 10,771 |
| | | | | | | |
| Nursing Consultant, PR | $ | 8,725 | $ | 10,605 | $ | 8,725 | $ | 10,605 |
| | | | | | | |
| Nursing Consultant, PR (lead) | $ | 9,128 | $ | 11,095 | $ | 9,128 | $ | 11,095 |
| | | | | | | |
| **Directors of Nursing** | | | | | | |
| Regional DON (exempt) | $ | 9,106 | $ | 11,068 | $ | 9,106 | $ | 11,068 |
| | | | | | | |
| Statewide DON (exempt) | $ | 9,980 | $ | 12,131 | $ | 9,980 | $ | 12,131 |
| | | | | | | |
| **LVN** | | | | | | |
|   Bay Area | $ | 3,800 | $ | 4,619 | $ | 3,800 | $ | 4,619 |
|   All Others | $ | 3,385 | $ | 4,114 | $ | 3,385 | $ | 4,114 |
| **CNA** | $ | 2,200 | $ | 2,674 | $ | 2,200 | $ | 2,674 |
| | | | | | | |
| **Pharmacy Services** | | | | | | |
| **Pharmacist Tech** | | | | | | |
|   Bay area | $ | 2,894 | $ | 3,518 | $ | 2,894 | $ | 3,518 |
|   All others | $ | 2,650 | $ | 3,221 | $ | 2,650 | $ | 3,221 |
| | | | | | | |
| **Pharmacist I** | $ | 8,942 | $ | 9,389 | $ | 8,942 | $ | 9,389 |
| | | | | | | |
| **Pharmacist II** | $ | 9,836 | $ | 10,328 | $ | 9,836 | $ | 10,328 |
| | | | | | | |
| **Pharmacy Svcs Manager** | $ | 9,836 | $ | 10,328 | $ | 9,836 | $ | 10,328 |

FINAL

PL-002.023

**PROPOSED SALARIES**
**Effective September 1, 2006**

| Classification | Proposed Incumbents $ | | Proposed New Hires $ | |
|---|---|---|---|---|
| | Min | Max | Min | Max |
| **Transcriptionists:** | | | | |
| Medical  Transcriber | $ 2,661 | $ 3,234 | $ 2,661 | $ 3,234 |
| Sr Medical Transcriber | $ 2,977 | $ 3,619 | $ 2,977 | $ 3,619 |
| **X-Ray:** | | | | |
| Radiological Tech | $ 4,602 | $ 5,203 | $ 4,602 | $ 5,203 |
| Sr Radiological Tech (spec) | $ 4,786 | $ 5,411 | $ 4,786 | $ 5,411 |
| Sr Radiological Tech (supvr) | $ 5,073 | $ 5,628 | $ 5,073 | $ 5,628 |
| **Laboratory Services:** | | | | |
| Laboratory Assistant | (No change currently, still reviewing class) | | (No change currently, still reviewing class) | |
| Sr Laboratory Assistant | (No change currently, still reviewing class) | | (No change currently, still reviewing class) | |
| Clinical Laboratory Tech | (No change currently, still reviewing class) | | (No change currently, still reviewing class) | |
| Sr Clinical Laboratory Tech | (No change currently, still reviewing class) | | (No change currently, still reviewing class) | |
| Supvg Clinical Laboratory Tech | (No change currently, still reviewing class) | | (No change currently, still reviewing class) | |
| **Dietary Services:** | | | | |
| Clinical Dietician | $ 4,054 | $ 4,928 | $ 4,054 | $ 4,928 |
| Food Administration I | $ 4,054 | $ 4,928 | $ 4,054 | $ 4,928 |
| **Health Records:** | | | | |
| Health Records Tech I | $ 3,256 | $ 3,559 | $ 3,256 | $ 3,559 |
| Health Records Tech II | $ 3,578 | $ 3,911 | $ 3,578 | $ 3,911 |
| Health Records Tech III | $ 3,931 | $ 4,297 | $ 3,931 | $ 4,297 |
| MR Director | $ 4,320 | $ 5,251 | $ 4,320 | $ 5,251 |

FINAL

PL-002.024

**PROPOSED SALARIES**
**Effective September 1, 2006**

| Classification | Proposed Incumbents $ | | | Proposed New Hires $ | |
| --- | --- | --- | --- | --- | --- |
| | Min | Max | | Min | Max |
| **Mid-Level Practitioners:** | | | | | |
| **Nurse Practitioner** | | | | | |
| Bay area | $ 9,162 | $ 9,989 | | $ 8,766 | $ 9,989 |
| All others | $ 9,162 | $ 9,620 | | $ 8,766 | $ 9,620 |
| | | | | | |
| **Physician Assistant** | | | | | |
| Bay area | $ 9,162 | $ 9,989 | | $ 8,766 | $ 9,989 |
| All others | $ 9,162 | $ 9,620 | | $ 8,766 | $ 9,620 |

*Salary for Director, DCHCS to be set and adjusted within the range identified below at the discretion of the Receiver.*

| Director, DCHCS | Proposed Incumbents $ | | | Proposed New Hires $ | |
| --- | --- | --- | --- | --- | --- |
| | Annual Min | Annual Max | | Annual Min | Annual Max |
| Current Incumbent 1/ | $325,000 | $450,000 | | $325,000 | $450,000 |

1/ - Current incumbent is Peter Farber-Szekrenyi.  Increase retroactive to May 1, 2006.

*For classifications identified below, salaries will range up to $300,000 at the discretion of the Receiver:*

| Physicians: |
| --- |
| **Asst Deputy Dir, HCSD, CEA** |
| **Statewide Medical Director** |
| **Regional Medical Director** |
| **Chief Deputy Clin Svcs** |
| **Chief Medical Officer** |
| **Chief Physician/Surgeon** |
| **Physicians** |
| **Podiatrist** |

FINAL

PL-002.025

# EXHIBIT 7

PL-002.026

STATE OF CALIFORNIA                                                          ARNOLD SCHWARZENEGGER, *Governor*

## DEPARTMENT OF PERSONNEL ADMINISTRATION
LEGAL DIVISION
1515 "S" STREET, NORTH BUILDING, SUITE 400
SACRAMENTO, CA 95814-7243
(916) 324-0512   FAX (916) 323-4723



August 15, 2006

**SENT VIA E-MAIL AND U.S. MAIL**

Linda Buzzini
Counsel to the Receiver
California Prison Heath Care Receivership
501 J Street, Suite 605
Sacramento, CA 95814

Re:  Plata; Proposed Salary Increases

Dear Ms. Buzzini:

This responds to the Receiver's request for an analysis by the Department of Personnel Administration concerning the issue presented below.  Accompanying this letter is 1) a table identifying statutes and regulations re implementing salary increases; 2) a table comparing proposed and current salaries; and 3) a list of considerations relating to increasing salaries.  We have attempted to respond fully to the request posed to DPA.  If there are issues or concerns not adequately addressed by this response, please contact me.

### ISSUE PRESENTED

Does the Department of Personnel Administration (DPA) have power to implement increased salaries for California Department of Correction and Rehabilitation (CDCR ) health care employees, at the direction of the Office of Receiver, without a federal court order?

### SHORT ANSWER

No.  Salary setting for state employees is a matter of Legislative concern and governed by statute.  DPA must act within statutory requirements.  (1) For employees represented by an exclusive representative, increased salaries must be negotiated prior to implementation, absent waiver by the exclusive representative or emergency.  (2) In setting salaries, DPA must act consistently with administration of the state personnel classification plan.  Salaries must be comparable for like work.  Salaries must comply with all other statutory requirements.

PL-002.027

Linda Buzzini
August 15, 2006
Page 2

## DISCUSSION

On August 8, 2006, the Office of the Receiver, through its counsel, Linda Buzzini, informed DPA that the Receiver intended to provide increased salaries to CDCR health care providers, as set forth in a proposed salary schedule. Ms. Buzzini asked DPA to answer whether DPA could implement the increased salaries without a court order and to provide a response by August 15, 2006.

**Background**

The duties, power and authority of the Receiver are established by federal court order dated February 14, 2006. In exercising "executive management," the Receiver "shall have the duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR." (Order, p. 2.)  The Receiver has "all powers necessary" to fulfill the Receiver's duties. (Order, p. 4.) The powers of the CDCR Secretary with respect to health care are suspended, and the Receiver assumes those powers.  (Order, p. 4.) The Receiver has "all powers vested by law in the Secretary of the CDCR as they relate to the administration, control, management, operation, and financing of the California prison medical heath care system.  (Order, p. 4.)  With respect to personnel, the Receiver has power to do all of the following:  "hire, fire, suspend, supervise, promote, transfer, discipline, and take all other personnel actions regarding CDCR employees or contract employees who perform services related to the delivery of medical health care to the class members." (Order, p. 4.)  The Receiver has power "to negotiate new contracts and to renegotiate existing contracts, including contracts with labor unions, in the event that such action is necessary for the Receiver to fulfill his duties under this Order." (Order, p. 4.)  The Receiver is to exercise powers under the order "in a manner consistent with California state laws, regulations, and contracts, including labor contracts." (Order, p. 5.)  If the Receiver is unable to perform his charge without a change in State law, he may request that the court set aside the state law:

> In the event, however, that the Receiver finds that a state law, regulation, contract, or other state action or inaction is clearly preventing the Receiver from developing or implementing a constitutionally adequate medical heath care system, or otherwise clearly preventing the Receiver from carrying out his duties as set forth in this Order, and that other alternatives are inadequate, the Receiver shall request the Court to waive the state or contractual requirement that is causing the impediment.  Upon receipt of any such request, the Court shall determine the appropriate procedures for addressing such request on a case-by-case basis."

(Order, p. 5.)

Linda Buzzini
August 15, 2006
Page 3

**Analysis**

The Department of Personnel Administration is created "for the purposes of managing the non-merit aspects of the state's personnel system." (Gov. Code, § 19815.2.)  Among other things, the Director of DPA has power to "administer and enforce laws pertaining to personnel" and serves "as the Governor's designated representative" to negotiate with represented employees. (Gov. Code, § 19815.4; referencing § Gov. Code, § 3517 [Dills Act requirement for good faith negotiations].)  DPA administers salaries and has authority to set the salaries of managers and supervisors  (Gov. Code, §§ 19816, 19825) and Career Executive Appointments (CEA) (Gov. Code, § 19889).  DPA administers a personnel classification plan, "including the allocation of every position to the appropriate class in the classification plan."  (Gov. Code, § 19818.)  In setting salaries, DPA is required to set like salary ranges for comparable duties and responsibilities (Gov. Code, § 19826.)

A.  <u>A Court Order is Necessary to Relieve DPA from its Bargaining Obligation to the Exclusive Representative of its Represented Employees</u>

DPA has authority to set salaries of represented employees, subject to the collective bargaining process. (Gov. Code, §§ 19816; 3512 et seq.[Dills Act].)  The Dills Act requires collective bargaining in good faith between the State Employer and the exclusive representative of its employees concerning matters within the scope of representation.  Matters are within the scope of representation (1) if they involve the employment relationship and are of such concern to management and labor that conflict is likely and (2) the mediatory influence of collective bargaining is an appropriate means to resolve the conflict.  Salaries are a mandatory subject of bargaining, and the State Employer cannot implement salary increases without first meeting and conferring with the exclusive representative.  (Gov. Code, § 3516.)  The parties must exhaust the Dills Act procedures until they reach agreement or impasse.  (Gov. Code, § 3517.)  (See generally, *California Department of Transportation* (1983) PERB Dec. No. 361-S, 7 PERC 14295, p. 1184, *State of California* (1992) 927-S, 16 PERC 23061, p. 213; *California Department of Personnel Administration* (1992) 928-S, 16 PERC 23063, p. 217.)  In rare cases of "emergency," the employer may implement a unilateral change and bargain "at the earliest practical time" after the fact. (Gov. Code, § 3516.5.)  While we recognize the emergency nature of the situation here—as earlier stated by the court—at this time, without a court order, it is uncertain whether implementation of increased salaries constitutes an "emergency" within the meaning of the Dills Act.  The "emergency" exception is narrowly construed to favor the policy of collective bargaining.  (See generally, Zerger, et al., *California Public Sector Labor Relations* (Matthew Bender 2006), Duty to Bargain, § 10.07[8].)

Linda Buzzini
August 15, 2006
Page 4

Under the Dills Act, then, DPA cannot implement salary increases without prior agreement of the union or reaching impasse after negotiations. The limited exception for cases of emergency still requires DPA to bargain as soon as practical. As a result, the lawful, speedy implementation of salary increases depends upon union agreement, impasse, or an emergency that prevents "the mediatory influence of collective bargaining."

A court order is necessary to accomplish the Receiver's objective, (1) given the Receiver's intention to expedite implementation of increased salaries for recruitment and retention, (2) the Dills Act requirements clearly prevent speedy, unilateral action by DPA, and (3) there is no other adequate alternative under state law. (See Order, p. 5.)

B. A Court Order is Necessary to Relieve DPA from Other Statutory Requirements relating to the Proposed Salary Increases.

While DPA has authority to set salaries, it must do so within the requirements of existing statutes. Thus, salaries must be consistent with the state classification plan. (Gov. Code, § 19818; 2 Cal. Admin. Code, §§ 599.666 and 599.666.1.) Also, salaries must satisfy the principle of comparable pay for like work. (Gov. Code, § 19826.)

Government Code section 19818.6, relative to a state classification plan, provides:

> The department shall administer the Personnel Classification Plan of the State of California including the allocation of every position to the appropriate class in the classification plan. The allocation of a position to a class shall derive from and be determined by the ascertainment of the duties and responsibilities of the position and shall be based on the principle that all positions shall be included in the same class if:
> (a) The positions are sufficiently similar in respect to duties and responsibilities that the same descriptive title may be used.
> (b) Substantially the same requirements as to education, experience, knowledge, and ability are demanded of incumbents.
> (c) Substantially the same tests of fitness may be used in choosing qualified appointees.
> (d) The same schedule of compensation can be made to apply with equity.

(Emphasis added.)

The proposed salaries are set well above the salary ranges provided for under the current classification plan. The proposed salary schedule is based on considerations independent of the state plan requirement. The requirements of the statute prevent DPA from implementing the proposed salary increases.

Linda Buzzini
August 15, 2006
Page 5

Also, the proposed salary schedule is inconsistent with the statutory principle of comparable pay for like work.  Government Code section 19826, subdivision (a) provides:

> The department shall establish and adjust salary ranges for each class of position in the state civil service subject to any merit limits contained in Article VII of the California Constitution. *The salary range shall be based on the principle that like salaries shall be paid for comparable duties and responsibilities.* In establishing or changing these ranges, consideration shall be given to the prevailing rates for comparable service in other public employment and in private business. The department shall make no adjustments that require expenditures in excess of existing appropriations that may be used for salary increase purposes. The department may make a change in salary range retroactive to the date of application of this change.

(Emphasis added.)

Again, the proposed salary increases are premised on satisfying the court's order with respect to recruitment and retention for health care employees in the prisons.  Because the statute requires DPA to administer a state-wide pay system, the statute's requirements are an impediment in this instance.

## CONCLUSION

A court order is appropriate and necessary to remove statutory barriers that prevent DPA from implementing the proposed salary increases.

Sincerely,

Paul M. Starkey
Labor Relations Counsel

PMS:rw

Enclosures

cc:    John Hagar
       Dr. Peter Farber
       Brigid Hansen
       James Tilton
       Bill Curtis
       Jon Wolff

PL-002.031

**PLATA**

**TABLE IDENTIFYING STATUTES AND REGULATIONS Re IMPLEMENTING
SALARY INCREASES**

(Table below provides statutory reference, description, responsible agency, whether a
federal court order may be required, indicated by (X) or n/a (not applicable to salary
issue, and notes.  Note:  Table is sorted by order needed (X), then cite.)

| Cite | Code | Description | Agency | Order (X) | Notes |
|---|---|---|---|---|---|
| 3512 | GC | Dills Act | PERB | X | 3512-3524 |
| 3525 | GC | Excluded Employees Bill of Rights | DPA | X | 3525-3539.5 |
| 18801.1 | GC | DPA designates managerial positions | DPA | X | See Dills Act, Gov. Code, § 3513 |
| 18807 | GC | Establishes 5% "salary step" rule | SPB | X | |
| 19815 | GC | DPA Laws | DPA | X | 19815-19999.21 |
| 19816 | GC | DPA administers salaries of employees exempt from civil service and within range adjustments | DPA | X | |
| 19818.6 | GC | DPA administers Personnel Classification Plan "including the allocation of every position to the appropriate class in the classification plan" | DPA | X | 19818-19818.21 |
| 19819.7 | GC | DPA Labor Relations represents the Governor for labor relations | DPA | X | 19819.7 |
| 19826 | GC | Requires DPA to pay like salaries, ranges for comparable duties and responsibilities | DPA | X | |
| 19827.2 | GC | To establish a State policy of setting salaries for female-dominated jobs | DPA | X | |
| 19828 | GC | Requires DPA to provide reasonable opportunity to any employee to be heard when affected by a change in salary for his or her position | DPA | X | Dills Act, Gov, Code, § 3517.5 |
| 19829 | GC | Requires DPA to establish minimum and maximum salaries with intermediate steps | DPA | X | Possible issue |
| 19829.5 | GC | Requires DPA to provide MOU to Office of Legislative Analyst | DPA | X | |
| 19832 | GC | Establishes annual MSAs for | DPA | X | |

| Cite | Code | Description | Agency | Order (X) | Notes |
|------|------|-------------|--------|-----------|-------|
| | | employees who meet standards of efficiency | | | |
| 19835.5 | GC | Submitting budgetary requirements to the Director of Finance | DPA | X | |
| 19836 | GC | Provides for hiring at above minimum salary limit in specified instances | DPA | X | |
| 19837 | GC | Authorizes rates above the maximum of the salary range when a person's position is downgraded (Red Circle rates) | DPA | X | |
| 19889 | GC | DPA administers salaries of CEAs | DPA | X | |
| 599.666 | AC2 | Definitions of Salary Terms | DPA | X | |
| 599.688 | AC2 | Effect of salary upon reallocation | DPA | X | |
| 599.689 | AC2 | Effect of salary upon salary range changes | DPA | X | |
| 599.666.1 | AC2 | Definitions of Salary Terms for Nonrepresented Employees | DPA | X | |
| 19824 | GC | Establishes monthly pay periods | DPA | n/a | |
| 19825 | GC | Exempt salary setting in the Executive Branch | DPA | n/a | |
| 19833 | GC | Provides for annual salary increase for employees compensated at a fixed amount of unit of work | DPA | n/a | |
| 19834 | GC | Requires MSA payments to qualifying employees when funds are available | DPA | n/a | |
| 19835 | GC | Provides employees with the right to cumulative adjustments for a period not to exceed two years when MSAs are denied due to lack of funds | DPA | n/a | |
| 19838 | GC | Provides for methods of collecting overpayments and correcting payroll errors to employees. (Units 1, 4, 11, & 20 only) | DPA | n/a | |
| 431 | AC2 | Salary and Class Level Comparisons | SPB | n/a | |
| 433 | AC2 | Voluntary Transfers Between Classes | SPB | n/a | |
| 599.669 | AC2 | Definitions of Full-Time and Less Than Full-Time Rates | DPA | n/a | |
| 599.681 | AC2 | Salary movement between Alternate Ranges | DPA | n/a | |

2

PL-002.033

| Cite | Code | Description | Agency | Order (X) | Notes |
|------|------|-------------|--------|-----------|-------|
| 599.682 | AC2 | Qualifying service for Merit and Special In-Grade Salary Adjustment | DPA | n/a | |
| 599.683 | AC2 | Merit Salary Adjustment | DPA | n/a | |
| 599.687 | AC2 | Effects of breaks in State service on Merit and Special In-Grade Salary Adjustments | DPA | n/a | |
| | | | | | |

GC = Government Code
AC2 = California Administrative Code, Title 2


Link to Government Codes:  Right click on link below, click on Open Hyperlink
http://leginfo.public.ca.gov/calaw.html


Link to DPA Salary Rules: Right click on link below, click on Open Hyperlink
http://government.westlaw.com/linkedslice/search/default.asp?RS=GVT1.0&VR=2.0&SP=CCR-1000

Link to DPA website: Right click on link below, click on Open Hyperlink
http://www.dpa.ca.gov/statesys/dpa/welcome.shtm

PL-002.034

**Health Care Salary Relationship Comparisons**
**between**
**Receiver Proposed Salaries and Existing Civil Service Salaries**

| CDCR Receiver proposed maximum <u>base</u> salaries for "All others" (locations other than "Bay Area") | | Existing civil service maximum <u>base</u> salaries as of 7/1/06 | |
|---|---|---|---|
| Sup RN I, CF ($9203) – RN, CF ($8989) | 12.9% | **Sup RN I, CF ($5290) – RN, CF ($5613) | minus 5.5% |
| ***Sup RN II, CF ($9203) – ***Sup RN I, CF ($9203) | 0% | **Sup RN II, CF ($5833) – **Sup RN I, CF ($5290) | 10.3% |
| Sup RN III, CF ($9609) – Sup RN II, CF ($9203) | 4.4% | **Sup RN, III, CF ($6381) – **Sup RN II, CF ($5833) | 9.4% |
| *Public Health Nurse III, CF ($8738) – Public Health Nurse I, CF ($8186) | 6.7% | **Public Health Nurse III, CF ($6328) – Public Health Nurse I, CF ($5640) | 12.2% |
| *Public Health Nurse III, CF ($8738) – Public Health Nurse II, CF ($8590) | 1.8% | **Public Health Nurse III, CF ($6328) – Public Health Nurse II, CF ($6151) | 2.9% |
| Public Health Nurse II, CF ($8590) - Public Health Nurse I, CF ($8186) | 4.9% | Public Health Nurse II, CF ($6151) – Public Health Nurse I, CF ($5640) | 9.1% |
| Surgical Nurse II, CF ($8438) – Surgical Nurse I, CF ($7923) | 6.5% | Surgical Nurse II, CF ($6121) – Surgical Nurse I, CF ($5631) | 8.7% |
| Nurse Consultant III (Sup) ($10,771) – Nurse Consultant II ($10,302) | 4.6% | **Nurse Consultant III (Sup) ($6328) – Nurse Consultant II ($6289) | 0.6% |
| Nurse Consultant II ($10,302) – Nurse Consultant I ($10,201) | 1.0% | Nurse Consultant II ($6289) – Nurse Consultant I ($5757) | 9.2% |
| Nursing Con, Prog Rev ($10,605) – Nurse Consultant III (Spec) ($10,403) | 1.9% | **Nursing Con, Prog Rev ($6639) – Nurse Consultant III (Spec) ($6877) | minus 3.5% |
| Sup RN I, CF ($9203) – LVN ($3768) | 144.2% | **Sup RN I, CF ($5290) – LVN (Safety) | 72.3% |
| Sup RN I, CF ($9203) – CNA, CF ($2674) | 244.3% | **Sup RN I, CF ($5290) – CNA, CF | 105.2% |
| Pharmacy Svs Mgr ($10,328) – Pharmacy Technician ($3221) | 220.7% | **Pharmacy Svs Mgr ($6958) – Pharmacy Technician ($3103) | 124.2% |
| ***Pharmacy Svs Mgr ($10,328) – ***Pharmacist II ($10,328) | 0% | **Pharmacy Svs Mgr ($6958) – **Pharmacist II ($6312) | 10.2% |

PL-002.035

| | |
|---|---|
| Pharmacist II ($10,328) –          10%<br>Pharmacist I ($9389) | **Pharmacist II ($6312) –          6.1%<br>Pharmacist I ($5949) |
| Sr Radiologic Tech, CF (Sup) ($5628) – 8.2%<br>Radiologic Tech, CF ($5203) | **Sr Radiologic Tech, CF (Sup) ($3783) – 4.7%<br>Radiologic Tech, CF ($3951) |
| Sr Radiologic Tech, CF (Spec) ($5411) – 4%<br>Radiologic Tech, CF ($5203) | Sr Radiologic Tech, CF (Spec) ($3765) – 4.2%<br>Radiologic Tech, CF ($3614) |
| Clinical Lab Tech classes - Receiver's review<br>not yet completed | **Sup Clinical Lab Tech, CF ($5211) –     5.3%<br>Sr Clinical Lab Tech, CF ($4951) |
| | **Sup Clinical Lab Tech, CF ($5211) –     15.9%<br>Clinical Lab Tech, CF ($4496) |
| | Sr Clinical Lab Tech, CF ($4951 –     10.1%<br>Clinical Lab Tech, CF ($4496) |
| Laboratory Assistant classes – Receiver's<br>review not yet completed | Sr Lab Assistant, CF ($2931) –     15.9%<br>Lab Assistant, CF ($2528) |
| ***Food Administrator I, CF ($4928) –     0%<br>***Clinical Dietitian, CF ($4928) | **Food Administrator I, CF ($4349) –     8.8%<br>Clinical Dietitian, CF ($3996) |
| Medical Record Director ($5251) –     22.2%<br>Health Record Tech III ($4297) | **Medical Record Director ($4449) –     16.6%<br>**Health Record Tech III ($3817) |
| Health Record Tech III ($4297) –     9.9%<br>Health Record Tech II ($3911) | **Health Record Tech III ($3817) –     10%<br>Health Record Tech II (Spec) ($3470) |
| Health Record Tech II ($3911) –     9.9%<br>Health Record Tech I ($3559) | **Health Record Tech II (Sup) ($3355) – 8.1%<br>Health Record Tech I ($3103) |
| | Health Record Tech II (Spec) ($3470) – 11.8%<br>Health Record Tech I ($3103) |

*assumption that Receiver salaries for the Public Health Nurse II and III were transposed in typing. chart reflects the Public Health Nurse III receives the higher maximum salary.

**supervisory/managerial salaries do not reflect an anticipated 2006 excluded employee compensation program.

***anomaly in salary relationship between classes.

PL-002.036

**Considerations for Implementing CDCR Receiver Proposed Health Care Salaries**

A. When adjusting base salaries of existing classes to the levels identified by the Receiver, the following questions apply:

    1. Are the MOU provisions impacted? Yes, DPA is responsible for negotiating salaries for rank-and-file classes in accordance w/the Dills Act (Gov Code 3512 – 3524)

    2. Are DPA laws impacted? Yes, DPA sets salaries for employees excluded from collective bargaining (Gov Code 19816 and 19825).

    3. Are SPB laws and rules impacted? No.

    4. Are costs associated with adjusting the salaries? Yes, Department of Finance identifies/approves funding for the higher salaries and retirement costs; the Legislature approves and authorizes expenditure of those funds through an appropriations bill.

    5. Are there other legal considerations? Yes, 'like pay for like work' provisions. Gov Code 19826 requires DPA to pay like salaries for comparable duties and responsibilities.

B. In creating/establishing new health care classes to be used solely within CDCR, the following questions apply:

    1. Are MOU provisions impacted? Yes, each MOU contains specific language on the need for DPA to conduct formal discussion/negotiation with the union when establishing a new class and its proposed salary (Dills Act and MOUs 4, 11, 16, 19, and 20).

    2. Are DPA laws impacted? Yes, DPA sets salaries for employees excluded from collective bargaining (19816 and 19825).

    3. Are SPB laws impacted? Yes, SPB adopts classification changes and/or the establishment of new classes (Gov Code 18800).

    4. Would the proposed new classes be designated 'safety' for retirement purposes? Yes; the level of care classes would continue to meet existing criteria for designating classes "safety."

**PROOF OF SERVICE**

CASE NAME:    *Plata, et al. v. Schwarzenegger, et al.*

CASE NUMBER:    USCD #C-01-1351 TEH

I, Renee Whitehead, declare:

I am employed in the County of Sacramento, California. I am over the age of 18 years, and not a party to the within action. My business address is 1515 S Street, North Building, Suite 400, Sacramento, California 95814-7243. I am readily familiar with my employer's business practice for collection and processing of correspondence for UPS, U.S. Mail, Fax Transmission and/or Personal Service.

On August 15, 2006 I caused the following documents to be served:

**Correspondence to Linda Buzzini dated August 15, 2006**

on the parties listed as follows:

___XX___        via e-mail to:  Linda.Buzzini@cdcr.ca.gov on August 15, 2006;

___XX___        by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail on August 16, 2006.

Linda Buzzini
Counsel to the Receiver
California Heath Care Receivership
501 J Street, Suite 605
Sacramento, CA 95814

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 15, 2006, at Sacramento, California.

*Renee Whitehead*
Renee Whitehead

# EXHIBIT 8

PL-002.039

# CPR    Office of the California Prison Receivership
## Robert Sillen, Receiver

Federal District Courthouse
Law Library 18th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

August 20, 2006

BY E-MAIL (PDF) AND BY REGULAR MAIL

Louis Mauro
Chief Deputy Legal Affairs Secretary
Office of Governor Arnold Schwarzenegger
State Capitol
Sacramento, CA  95814

Subj:   Proposed Salary Increases

Dear Mr. Mauro:

Receiver Robert Sillen has determined that salary increases for certain clinical classifications are necessary to carry out the purpose of the receivership.  For the past several weeks the Receiver has endeavored to ascertain whether State law or inaction by State officials impedes his ability effectuate these salary increases.  The Receiver has encountered a problem concerning his inquires and requested that I write to you for assistance.

*Introduction.*

It is our understanding that Government Code section 19826 vests the Department of Personnel Administration (DPA) with authority to establish and adjust salary ranges, subject to certain considerations and limitations.  Consequently, on August 8, 2006, the Receiver's attorneys Jared Goldman and Linda Buzzini met with DPA Director David Gilb and representatives from his staff to provide DPA with a copy of the salary increases determined necessary by the Receiver.  DPA was then asked whether the State would effectuate these salary adjustments.  In addition, DPA was asked to determine whether the State had the authority to raise salaries, and if so, whether the State would exercise that authority.  DPA was also asked to provide a list of all relevant laws that may impact on this decision; for example statutes relating to DPA laws, the Dills Act (Gov. Code § 3512 et seq.), statutes pertaining to the State Personnel Board laws, and statutes pertaining to the Department of Finance.  These issues were again discussed with DPA representatives on August 14, 2006, at a meeting which you attended.

1

PL-002.040

DPA responded to this request, through its attorney, on August 15, 2006. That letter is attached. DPA concludes that statutes requiring DPA to administer a statewide pay system present an impediment which prevents DPA from implementing the salary increases as requested by the Receiver. It is the opinion of the Office of the Receiver that the August 15, 2006 letter ("Letter") raises four problems which require your attention. To begin, we are uncertain whether you were consulted prior to the transmission of the Letter. Second, the analysis in the Letter appears to be flawed. Third, the list of statutes attached to the Letter appear, for the most part, to be entirely irrelevant to the salary increases contemplated by the Receiver. Finally, we are concerned that the Letter may present an incomplete analysis in that there are no references to relevant statutes which involve the State Personnel Board or Department of Finance. We set forth in more detail our concerns relative to problems two through four below.

*Problem 2: DPA's Legal Analysis.*

    A.    Duty to Bargain.

The Letter opines that DPA is statutorily obligated to bargain salaries, unless there is an emergency. The emergency concerning the delivery of medical care in California's prisons, however, has been determined by the Federal court. Nevertheless, the Letter appears to take the position that the "emergency" exception to bargaining is a narrow exception which leaves DPA "uncertain" about whether implementing salary increases constitutes an emergency within the meaning of the Dills Act. This position seems unfounded given the factual findings which led to the appointment of a Receiver. Furthermore, the affected bargaining units have indicated that they support the salary increases determined to be necessary by the Receiver.

    B.  Classification Plan.

DPA takes the position that it must administer salaries consistent with Government Code section 19818.6, which provides for allocating every position to a classification if *inter alia* the same schedule of compensation can be made to apply with equity. We agree with this general proposition; however, Government Code section 19829 is also relevant concerning this issue in that it provides DPA with authority to establish more than one salary range and more than one rate or method of compensation within a classification given unusual working conditions, and prevailing rate practices for comparable services in other public and private businesses. No one disputes that the clinical staff employed in California's prison face work challenges far different from those encountered by clinical personnel in other State entities.

    C.  Comparable Salaries For Comparable Duties.

The Letter also suggest that Government Code section 19826, subdivision (a) prevents DPA from establishing salary ranges as determined necessary by the Receiver, taking the position that Section 19826 provides for salary ranges based on the principle that like salaries shall be paid for comparable duties and responsibilities. Again, this position denies the reality of the medical delivery crisis in California's prisons. It also ignores two important and undisputed facts: (a) DPA has for many years approved of pay differentials for prison employees because of

2

PL-002.041

unusual working conditions resulting in recruitment and retention problems; and (b) DPA's own salary surveys demonstrates that prison employees are underpaid in comparison to the public and private sector.

*Problem 3: DPA's Submission of Irrelevant Statutes.*

Because DPA establishes and adjusts salary ranges, it was asked to provide a list of all statutes related to implementing the proposed salaries. The Receiver's objective for this request was to identify what statutes, if any, may require waiver by Court order. As I am sure you can appreciate, any such order should be narrowly drawn. The DPA response, however, appears to be an invitation for the Court to waive a wide variety of statutes that are not relevant to the issue at hand. For example:

1.   *Every single* statute relating to DPA's authority, irrespective of whether it concerns compensation in any manner whatsoever. (Gov. Code § 19815-19999.21)

2.   DPA's authority to determine managerial positions. (Gov. Code § 18801.1)

3.   DPA's authority to represent the Governor in bargaining. (Gov. Code § 19819.7)

4.   DPA's responsibility to analyze information relevant to salary setting for female dominated occupations, and its responsibility to prepare a corresponding report for the Legislature. (Gov. Code § 19827.2)

5.   DPA's duty to submit collective bargaining agreements to the Legislature. (Gov. Code § 19829.5)

6.   The duty of every state department to notify the Department of Finance of funding needs growing out of automatic, annual merit salary increases due employees. (Gov. Code § 19835.5)

It would not be appropriate for the Receiver to recommend waiver concerning laws that do not inhibit his obligations under the Order filed February 14, 2006. It is therefore critical that the State focus its analysis to the relevant issue: the need to increase clinical salaries for the State employees who deliver medical care in California's prison.

3

PL-002.042

*Problem 4: The Failure to Address Other and Possibly Relevant Laws.*

At prior meetings staff from the Office of the Receiver specifically asked DPA to provide an analysis of all relevant California law relating the need to increase salaries, including those pertaining to the State Personnel Board and the Department of Finance. Unfortunately, the Letter does not respond to this request.

Thanks to your assistance, the Department of Finance has since responded by opining the only law regarding salaries is in Item 9800 of the annual Budget Act for the general fund, special fund and for non-governmental costs. Item 9800 states as follows:

> "The funds appropriated in this item are for employee compensation increases and increases, in benefits related thereto, whose compensation or portion thereof is chargeable to …. be allocated by executive order by the Department of Finance to the several state offices, departments, boards, bureaus, commissions, and other state agencies, in augmentation of their respective appropriations or allocations, in accordance with approved memoranda of understanding or, for employees excluded from collective bargaining, in accordance with salary and benefit schedules established by the Department of Personnel Administration."

This proviso, combined with Government Code section 19826[1], seems to suggest that absent a specific appropriation for salaries *per se* in the Budget Act, the executive branch of government is precluded from raising salaries, except insofar as any increase falls within the existing appropriation for salaries. Overlaying this possibility, however, is the $100 million fund which has made available for the Receiver's use. The Receiver therefore renews his request for an analysis of the law with this issue specifically addressed, along with all other laws governing the finances of the State.

To summarize, the Receiver requests an independent appraisal from the Office of the Governor concerning this entire issue, as well as a response to the following question: will the State of California implement these necessary salary increases without a court order? If the State is not prepared to implement the increases, inform the Receiver whether it is because the State is prevented from doing so by law, or whether as a matter of policy the State is electing not to exercise its discretion to increase salaries. When responding, please provide a list of all *relevant* statutes and California Constitutional provisions which bear upon this issue.

---

[1] The Department of Personnel Administration shall make no [salary] adjustments that require expenditures in excess of existing appropriations that may be used for salary increase purposes. (Gov. Code § 19826)

4

Given the delay already encountered and the need to move forward with salary increases in a timely manner, please respond no later than Friday, August 25, 2006.  If questions arise, do not hesitate to call at (415) 341-6569.  I will be available through noon Friday, August 25, 2006, and on vacation the week following.  If concerns arise after August 25, 2006 please contact Linda Buzzini at (916) 323-1263.  Thank you for your attention to this request.


Sincerely,

John Hagar
Chief of Staff



Cc.  Robert Sillen (with attachment)
       Jared Goldman (with attachment)
       Linda Buzzini (with attachment)
       Dave Gilb (with attachment)
       Paul Starkey (with attachment)
       Molly Arnold (with attachment)

5

PL-002.044

# EXHIBIT 9

PL-002.045



# OFFICE OF THE GOVERNOR

August 25, 2006

*Via Electronic and U.S. Mail*

John Hagar
Chief of Staff
Office of the California Prison Receivership
Federal District Courthouse
Law Library, 18th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    Proposed Salary Increases

Dear Mr. Hagar:

Thank you for your letter to my office dated August 20, 2006. We appreciate the opportunity to assist you and to respond to the Receiver's concerns.

Before responding to the specific comments in your letter, it may be helpful to set forth my understanding of the context of our correspondence. I understand that your August 20, 2006 letter was sent on behalf of Receiver Robert Sillen pursuant to the authority vested in him by the Court's order filed on February 14, 2006 in *Plata et al. v. Schwarzenegger et al.*, case no. C01-1351 TEH. Your letter mentioned that the Receiver has determined that salary increases for certain clinical classifications are necessary to carry out the purposes of the receivership. The Court's order provides that the Receiver shall make all reasonable efforts to exercise his powers in a manner consistent with California laws, regulations and contracts, including labor contracts. Accordingly, the Receiver and his staff have been working to identify applicable California laws.

On August 15, 2006, the Department of Personnel Administration (DPA) sent Linda Buzzini, counsel to the Receiver, a summary of certain California laws. Your letter to us indicated that the DPA summary was flawed and incomplete, and you requested our assistance. It is my understanding that you are not seeking legal advice, as the Governor's Legal Affairs Office provides counsel to the Governor and the Receiver has retained his own counsel to advise

GOVERNOR ARNOLD SCHWARZENEGGER • SACRAMENTO, CALIFORNIA 95814 • (916) 445-2841

Mr. John Hagar
August 25, 2006
Page 2

him regarding applicable law. Nonetheless, to the extent we can help coordinate the flow of information, we are pleased to be of assistance.

With this context in mind, I turn to the specific comments in your letter.[1]

**Uncertainty As To Whether DPA Consulted With The Governor's Office Of Legal Affairs Before Issuing The Summary To Linda Buzzini.**

We interpret this concern as expressing the Receiver's desire for a protocol to ensure prompt and responsive communications on legal issues. To avoid confusion in the future, we suggest that requests for legal information be submitted in writing and copied to Chief Deputy Legal Affairs Secretary Louis Mauro. This will help us track the requests, and we will be in a better position to know if a particular communication is responsive to the request.

**DPA's Legal Analysis.**

### DPA's Duty To Meet And Confer.

Your letter paraphrases DPA's reference to Government Code sections 3517 and 3516.5. Section 3517 requires the Governor or his representative to meet and confer in good faith with representatives of recognized employee organizations regarding wages and other terms and conditions of employment. Section 3516.5 provides that "[i]n cases of emergency when the employer determines that a law, rule, resolution, or regulation must be adopted immediately without prior notice" to a union, the employer "shall provide such notice and opportunity to meet and confer in good faith at the earliest practical time . . . ." These provisions are part of the State Employer-Employee Relations Act. In discussing these requirements, DPA made reference to the Court's prior statements, but noted that under California law, the definition of "emergency" as used in section 3516.5 is not clear. We conducted our own search of California authorities and did not find any published appellate decision defining the term "emergency" as used in section 3516.5. Moreover, Government Code section 3513 does not define the word "emergency" as used in the Act. Administrative decisions do not appear to apply in the instant context. In any event, there should be no dispute that California law requires the employer to meet and confer. Your letter mentions that the affected bargaining units support the salary increases, but absent a Court waiver, DPA still has a legal obligation to meet and confer.

### Personnel Classification Plan.

As you acknowledge in your letter, Government Code section 19818.6 provides that positions shall be included in the same classification if, among other things, "[t]he same schedule of compensation can be made to apply with equity." You correctly note, however, that DPA may establish more than one salary range or rate or method of compensation within a classification for positions with "unusual conditions or hours of work or where necessary to meet

---

[1] This response pertains only to represented employees in the State civil service system.

PL-002.047

Mr. John Hagar
August 25, 2006
Page 3

the provisions of state law . . . ." (Gov. Code, § 19829, subd. (a).)  Again, we have found no published California appellate decision interpreting the phrase "unusual conditions or hours of work," or setting forth the kind of showing necessary to make such a determination.  Even if such a determination were made, however, DPA would still have a legal obligation to meet and confer on the issue absent a waiver by the Court.

### Comparable Salaries For Comparable Duties.

Government Code section 19826 states that the "salary range shall be based on the principle that like salaries shall be paid for comparable duties and responsibilities."  You do not question the language of section 19826, but you suggest that special circumstances exist that would permit a deviation from this principle.

The Attorney General opined in 1964 that comparable pay is not necessary if special circumstances exist.  (43 Ops.Cal.Atty.Gen. 319 (1964).)  But in 1976, the Court of Appeal for the Third Appellate District held that "like-pay-for-like-work" is a cardinal objective of the Civil Service Act, and the statutory directive does not grant any discretion.  (State Trial Attorneys' Assn. v. State of California (1976) 63 Cal.App.3d 298, 304.)  The Court concluded that there is no authority under California law to fix salary ranges in violation of the principle "that like salaries shall be paid for comparable duties and responsibilities." (Ibid.)  Subsequent cases have permitted some flexibility, but the principle cannot be ignored in the absence of a waiver.

### DPA's List Of Statutes.

This part of my letter responds to your comments on pages 3 and 4 of your letter.  There appears to have been a misunderstanding.  In an email from Linda Buzzini to this office on August 15, 2006, at 7:34 p.m., Ms. Buzzini said the Receiver's Office had requested "a list of all statutes which the State believes are implicated when increasing salaries."  On August 16, 2006, at 1:55 p.m., we sent an email to Ms. Buzzini asking her to confirm the broad scope of the request.  Ms. Buzzini responded with an email at 6:05 p.m., reaffirming that the focus of the inquiry "is all laws implicated."  We were never told that the focus should be "laws that should be waived."  And Ms. Buzzini asked for a "list" of statutes, not an "analysis" of statutes as is suggested on page 4 of your letter.  Although DPA did not identify every state statute that could be implicated, it did submit to Ms. Buzzini a broad list of statutes pertaining to DPA.  We asked other departments and agencies to submit their own lists in an effort to comply with Ms. Buzzini's request.[2]  Because the request was for all laws implicated, it was our understanding that we should err on the side of over-inclusion.

---

[2]  As you note in your letter, the Department of Finance responded right away.  Other agencies and departments have also responded.  In addition to the list of statutes provided to you by DPA, the State Personnel Board cited the following Government Code sections as possibly being implicated: 18500, 18522, 18523, 18702, 18800, and 18802.  CalPERS cited Government Code sections 22750 et seq. and 22871.5-22871.9.  And an entity within the Labor and Workforce Development Agency cited Labor Code section 141, subd. (b).

Mr. John Hagar
August 25, 2006
Page 4

We agree that the Receiver should not recommend waiver of every statute contained on those lists. The lists were not prepared for that purpose. In fact, we question whether it would be appropriate for the State to advise the Receiver about which California laws should be waived. In any event, it is our understanding that the Receiver is tasked by the Court's order to make all reasonable efforts to comply with California law. Accordingly, we are working to assist the Receiver by identifying California laws that could be implicated.

**State Action To Raise Salaries.**

You concluded your letter by asking whether the State will implement the salary increases without an order from the Court. It appears that the State would have the *authority* to implement the salary increases for represented employees if bargaining was successful, and/or if appropriate and sufficient findings and determinations were made. But absent an order from the Court, there are variables involved in the process, and we cannot say for certain right now that the State *would* implement the proposed salary increases for represented employees in the time frame envisioned by the Receiver. One such variable, of course, is the meet-and-confer process. Another is that the Legislature retains and exercises fiscal oversight of collectively bargained agreements, and any modification of an existing, properly ratified labor agreement that involves expenditures of $250,000 relating to salary or benefits that is not already approved by the Legislature must be submitted for review and possible ratification by the Legislature. (Gov. Code, §§ 3517.7, 3517.63.)

The State will continue to assist you by providing helpful information. I am informed that the Department of Finance is also responding to your August 20, 2006 letter, and that other agencies intend to submit policy-related information to you next week. The Governor and his Administration are committed to achieving true and meaningful reform of California's prison healthcare system. By working together, I am confident we can achieve this common goal.

I hope this response has been helpful. Please do not hesitate to contact our office if we can be of further assistance.

Sincerely,

ANDREA LYNN HOCH
Legal Affairs Secretary

cc: Linda Buzzini

PL-002.049

# EXHIBIT 10

PL-002.050



**LOCAL 1000**

**SEIU**

**Stronger Together**

JIM HARD
President

CATHY HACKETT
Vice President
and Secretary-Treasurer

MARC BAUTISTA
Vice President
for Organizing/Representation

YVONNE WALKER
Vice President for Bargaining

SERVICE EMPLOYEES
INTERNATIONAL UNION

1108 O Street
Sacramento, CA 95814
(916) 444-8134
(916) 326-4215 (fax)
www.seiu1000.org

August 24, 2006

Linda Diane Buzzini, Counsel to the Receiver
California Prison Health Care Receivership
501 J Street, Suite 605
Sacramento, CA 95814

Re:  **Proposed Salary Increases for CDCR Health Care**
     **Classifications**

Dear Ms. Buzzini:

This letter constitutes SEIU Local 1000's (Local 1000) response to the position of the Department of Personnel Administration (DPA) in its August 15, 2006, letter to you concerning the receiver's plan to implement salary increases for Local 1000 represented employees. Local 1000 is disappointed with DPA's response which amounts to nothing more than a series of obstacles and roadblocks to achieving reform of the system of medical care delivery in the Department of Corrections and Rehabilitation (CDCR). In contrast, Local 1000 is amenable to the receiver taking immediate action on these matters as outlined herein.

In his February 14, 2006, court order, Judge Henderson empowered the receiver with the ability to negotiate and renegotiate contracts with labor unions. Since that order, Local 1000 has conducted a series of meetings with the receiver and his staff to discuss the need to immediately address the salary inequities of prison health care staff represented by our Union. On August 6, 2006, the receiver proposed salary increases for numerous health care classifications in CDCR. As the exclusive representative of most CDCR health care employees, Local 1000 has agreed to the increases proposed by the receiver.

In their August 15, 2006, letter to you, DPA refuses to implement our agreed upon salary increases, and instead recommends that the receiver seek a federal court order to implement any salary increases. DPA's primary argument is that their statutory obligation to bargain with the Union prevents speedy implementation of any salary increases. However, DPA's position, once again, stalls progress. Local 1000 has already agreed to the salary increases, so the

**Linda Diane Buzzini**
**August 24, 2006**
**Page 2 of 2**

Union is in no way the obstacle.  In fact, for the past year (two years for registered nurses), DPA has consistently rejected Local 1000 proposals to increase the salaries of health care classifications.

DPA is the sole obstacle blocking the receiver's efforts to implement the much needed reforms to the state prison medical system.  As such, Local 1000 supports the need for a federal court order to implement this specific action if it is necessary to remedy the impediments imposed by DPA.  For the purposes of obtaining and implementing such an order, the Union waives any statutory, regulatory or contractual requirements which would otherwise be an impediment to the implementation of these salary increases.  This waiver is made on a one-time basis and is limited to the matters raised herein and does not extend or apply to any other matter or for any other purpose.

Sincerely,

Jim Hard
President

Yvonne Walker
Vice President for Bargaining

Cc:    Larry Perkins, Chair, Bargaining Unit 4
        Connie Kabeary, Chair, Bargaining Unit 11
        Nancy Lyerla, Chair, Bargaining Unit 17
        Rionna Jones, Chair, Bargaining Unit 20
        Arnold Schwarzenegger, Governor, State of California
        David Gilb, Director, DPA
        James Tilton, Acting Secretary, CDCR

# EXHIBIT 11

PL-002.053



**American Federation of State, County, and Municipal Employees Local 2620, AFL–CIO**

555 Capitol Mall, Suite 1225, Sacramento, CA 95814      514 Shatto Place, Suite 215, Los Angeles, CA 90020
916.441.0833 • 916.441.0842 fax             213.388.9902 • 213.388.9921 fax
www.afscme2620.org

August 21, 2006

Linda Diane Buzzini
Counsel to the Receiver
California Prison Health Care Receivership

Dear Ms. Buzzini:

I am writing, on behalf of our affected members, to thank Mr. Sillen for his efforts to address the salary lags that impact the recruitment and retention of AFSCME dietitians, physician assistants and pharmacists.

Despite the valiant efforts of our bargaining team and the information provided by the Department of Personnel Administration's salary survey regarding vacancies created by tremendous salary lags, DPA refused to address these issues in a meaningful way.

Our members in the above referenced classifications and AFSCME, BU 19, applaud and appreciate the efforts of the Receiver to respond to the salary inequities which should fill the huge number of vacancies this lag has created.

We believe that it is unfortunate that when we are at the table armed with all relevant data to solve recruitment and retention difficulties that have existed for many years, DPA responds with 5%. This will not solve any existing problems, and while we attempted to resolve these issues through collective bargaining, DPA was unwilling to resolve these issues through this accepted method. Therefore, we welcome and appreciate the efforts of the Receiver to rectify the recruitment and retention problems for our members employed by CDCR. We support the salary increases from the Receiver to solve these problem.

Thank you for all of your efforts and intervention on behalf of our members.

Very truly yours,

Pam Manwiller
Pam Manwiller
Director of State Programs

# EXHIBIT 12



**UNION OF AMERICAN
PHYSICIANS & DENTISTS**
*Affiliated with AFSCME, AFL-CIO*

1330 BROADWAY, SUITE 730 ● OAKLAND, CA 94612-2506
PHONE (510) 839-0193 ● FAX: (510) 763-8756 ● TOLL FREE (800) 622-0909
E-MAIL: uapd@uapd.com ● WEBSITE: http://www.uapd.com

ROBERT L. WEINMANN, M.D.
*president*
STUART A. BUSSEY, M.D., J.D.
*vice president*
MICHAEL H. LISIAK, M.D.
*vice president*
CHARLES D. GOODMAN, M.D.
*secretary*
PETER A. STATTI, M.D.
*treasurer*

August 25, 2006


Ms. Linda Buzzini
Counsel to the Receiver
California Prison Health Receivership
501 J Street, Suite 605
Sacramento, CA 95814


Dear Ms. Buzzini,

There are many vacancies in the physician and surgeon classification in CDCR. The Union of American Physicians and Dentists supports the actions of CDCR receiver Mr. Bob Sillen to increase the salaries of the physicians in the department to substantially improve the recruitment and retention of physicians.

Kaiser in Southern California is currently hiring primary care physicians at $180,000 per year. Kaiser has a fringe benefit package comparable to that of the State of California. The California Department of Corrections and Rehabilitation, because of its difficult work locations and poor reputation as an employer, must pay doctors substantially more than $180,000 per year in order to fill its vacancies. The UAPD looks forward to working with the receiver to ensure that pay raises are compatible with the collective bargaining agreement and sufficient to solve the serious staffing problem.

Sincerely yours,

Gary Robinson
Executive Director

PL-002.056

# EXHIBIT 13

PL-002.057

08/22/2006  13:47    2098386759                    CCSO                                PAGE  02

# CALIFORNIA CORRECTIONAL SUPERVISORS ORGANIZATION

1461 Ulrey Avenue ~ Escalon, CA 95320
ccso@charterinternet.com ~ www.ccsonet.org
(800) 449-2940 ~ (209) 838-2940
Fax: (209) 838-6799 ~ 24 HR. Information Line: (888) 904-6100

August 22, 2006

Robert Sillen
California Prison Health Care Receivership
501 J Street, Suite 605
Sacramento, CA 95814

Dear Mr. Sillen:

The California Correctional Supervisors Organization (CCSO) is a labor organization that represents excluded employees in the California Department of Corrections and Rehabilitation (CDCR). CCSO membership is comprised of supervisors and managers working in all areas of CDCR. Currently, CCSO represents approximately 40% of supervising nurses and is rapidly welcoming into this Organization various medical supervising and managerial employees (pharmacists, dentist, etc.).

CCSO does not have collective bargaining rights, as we do not represent rank and file employees. CCSO does not negotiate contracts, and can only meet and confer with the Department of Personnel Administration to recommend enhanced wages, benefits and working conditions for CDCR supervisors and managers.

To date the DPA meet and confers regarding medical personnel in CDCR have been to no avail. The wages for CDCR medical employees is well below the salaries given in the private sector. Working within a prison environment is stressful and dangerous and if CDCR expects to recruit qualified medical personnel, salaries and benefits must be raised.

The California Correctional Supervisors Organization strongly supports Receiver Sillen's long awaited RN salary increases along with the pay increases for various other clinical classifications (see attached).

Cordially,

Richard Tatum
CCSO State President

Copy to:    Linda Buzzini, Counsel to the Receiver
            CCSO State Board
            CCSO Pat Le Sage, Chief Operations & Financial Officer
Enclosure

PL-002.058

# EXHIBIT 14

PL-002.059



**Association of**
**CALIFORNIA STATE SUPERVISORS**
Representing the "State's Management Team"

August 30, 2006

Robert Sillen
Receiver
501 J St., Suite 605
Sacramento, Calif. 95814

Attention: Linda Buzzini

Dear Mr. Sillen:

On behalf of the members of my organization, I would like to formally support your recommendations for staffing improvements and salary adjustments for the California Department of Corrections and Rehabilitation.

ACSS has agreed to the salary increases you have proposed; therefore, we find there are no reasons why the Department of Personnel Administration should not immediately implement those salary increases.

To provide you information about the Association of California State Supervisors, we are a 6,000-member volunteer organization whose members are managers, supervisors, confidential and exempt employees in California state service. ACSS serves the individual and collective interests of our members by educating the State's elected leaders about the issues and concerns of over 30,000 excluded employees who comprise the "State's Management Team." ACSS also participates in meet and confer sessions with DPA to discuss all matters relating to employment conditions, wages, hours and terms for our members.

I thank you for your thorough examination of the CDCR problems with staffing and salary levels and concur with your final recommendations.

Respectfully,

Tim Behrens
President

PL-002.060

# EXHIBIT 15

PL-002.061



# OFFICE OF THE GOVERNOR

August 30, 2006

Mr. Robert Sillen
Receiver
Office of California Prison Receivership
1731 Technology Drive, Suite 700
San Jose, California 95110

Dear Mr. Sillen,

I am taking this opportunity to write you in an effort to bring resolution to a request made by the Office of the Receiver to increase various medical salaries for employment classes impacted by Plata v. Schwarzenegger.

I understand your staff has been in communications with various state agencies in an attempt to determine whether or not the administration could legally increase salaries without a direct order by the court. If a determination were made that legal impediments prevented the administration from doing so, you asked to be provided with a basis for this determination. Conversely, if a determination were made that the administration could legally increase salaries for various employment classes under Plata, it is my understanding that you wanted to know if the state was willing to do so.

It is in this context that I provide the following response:

In her letter of August 25, Ms. Hoch presents to the Office of the Receiver, a legal analysis questioning the administration's authority to unilaterally increase the salaries of identified classes impacted by Plata in a timely manner. The essence of the analysis is that moving forward with implementing your request unilaterally, without the benefit of a court order, is uncertain at best and brings with it risks and challenges that may not be easily overcome.

It is the conclusion of the administration that these legal questions and uncertainties could easily be averted if the Court were to issue an order directing the salary changes. If such an order were to be drafted and issued by the Court, the administration stands ready to offer its assistance, technical or otherwise, to successfully implement the order.

Notwithstanding this decision, the complications and uncertainties identified for represented employees by Ms. Hoch do not, however, impact our authority to adjust salaries for certain excluded employees. These incumbents are not part of a collective bargaining agreement and they are exempt from other various civil service protections provided under current law.

GOVERNOR ARNOLD SCHWARZENEGGER • SACRAMENTO, CALIFORNIA 95814 • (916) 445-2841

PL-002.062

Mr. Robert Sillen
August 30, 2006
Page two

For this reason, the administration is prepared to comply with your prior request to adjust the salaries of the following positions:

- Regional Director of Nursing, Central
- Regional Director of Nursing, North
- Regional Director of Nursing, South
- Statewide Director of Nursing
- Director, Division of Correctional Health Care Services
- Statewide Medical Director
- Assistant Deputy Director, HCSD
- Chief Deputy Clinical Services
- Chief Physician
- Chief Surgeon

The documents accompanying the Office of the Receiver's original request for salary increases indicated a range of salaries, but did not specifically direct a salary level within the requested range. If the Office of the Receiver desires to have the salaries adjusted for current incumbents holding these limited number of exempt positions, please provide written instructions regarding the salary you wish to be granted to these incumbents.

For those positions listed which are currently vacant, please provide written confirmation of the salary range you desire. This information will be helpful in recruitment documents currently being developed by the California Department of Corrections and Rehabilitation and the Governor's Office. The administration is committed to working with the Office of the Receiver in identifying qualified candidates. However it is important to note that these positions are gubernatorial appointments and as such, necessitate an enhanced level of candidate evaluation and review. Further, appointments into exempt positions do require the concurrence of the Governor's Office.

I want to reiterate my desire to assist and respond to your concerns. Together, I am confident we can work to bring lasting reform to our prison system.

Regards,

*Fred Aguiar*

Fred Aguiar
Cabinet Secretary

cc:  Dr. Peter Farber-Szekrenyi, Ph.D.
     Secretary James Tilton, CDCR
     Mr. Dave Gilb, Director of DPA
     Ms. Susan Kennedy, Chief of Staff
     Mr. Mike Genest, Director of Finance
     Ms. Andrea Lynn Hoch, Legal Secretary

1  **PROOF OF SERVICE BY MAIL**

2     I, Kristina Hector, declare:

3     I am a resident of the County of Alameda, California; that I am over the age of eighteen (18) years
of age and not a party to the within titled cause of action.  I am employed as the Inmate Patient
4  Relations Manager to the Receiver in Plata v. Schwarzenegger.

5     On September 12, 2006 I arranged for the service of a copy of the attached documents described
as APPENDIX OF EXHIBITS SUPPORTING RECEIVER'S MOTION FOR WAIVER OF STATE
6  LAW on the parties of record in said cause by sending a true and correct copy thereof by pdf and by
United States Mail and addressed as follows:
7
   ANDREA LYNN HOCH
8  Legal Affairs Secretary
   Office of the Governor
9  Capitol Building
   Sacramento, CA 95814
10
   PETER FARBER-SZEKRENYI, DR., P.H.
11 Director
   Division of Correctional Health Care Services
12 CDCR
   P.O. Box 942883
13 Sacramento, CA 94283-0001

14 J. MICHAEL KEATING, JR.
   285 Terrace Avenue
15 Riverside, Rhode Island 02915

16 JONATHAN L. WOLFF
   Deputy Attorney General
17 455 Golden Gate Ave., Suite 11000
   San Francisco, CA 94102
18
   STEVEN FAMA
19 DON SPECTER
   ALISON HARDY
20 Prison Law Office
   General Delivery
21 San Quentin, CA 94964-0001

22 PAUL MELLO
   JERROLD SCHAEFER
23 Hanson Bridgett
   425 Market Street, 26th Floor
24 San Francisco, CA 94105

25 BRUCE SLAVIN
   General Counsel
26 CDCR-Office of the Secretary
   P.O. Box 942883
27 Sacramento, CA 94283-0001

28

1  KATHLEEN KEESHEN
   Legal Affairs Division
2  California Department of Corrections
   P.O. Box 942883
3  Sacramento, CA 94283

4  RICHARD J. CHIVARO
   JOHN CHEN
5  State Controller
   300 Capitol Mall, Suite 518
6  Sacramento, CA 95814

7  MOLLY ARNOLD
   Chief Counsel, Department of Finance
8  State Capitol, Room 1145
   Sacramento, CA 95814
9
   LAURIE GIBERSON
10 Staff Counsel
   Department of General Services
11 707 Third Street, 7th floor, Suite 7-330
   West Sacramento, CA 95605
12
   MATTHEW CATE
13 Inspector General
   Office of the Inspector General
14 P.O. Box 348780
   Sacramento, CA 95834-8780
15
   DONNA NEVILLE
16 Senior Staff Counsel
   Bureau of State Audits
17 555 Capitol Mall, Suite 300
   Sacramento, CA 95814
18
   WARREN C. (CURT) STRACENER
19 PAUL M. STARKEY
   Labor Relations Counsel
20 Department of Personnel Administration
   Legal Division
21 1515 "S" Street, North Building, Suite 400
   Sacramento, CA 95814-7243
22
   GARY ROBINSON
23 Executive Director
   UAPD
24 1330 Broadway Blvd., Suite 730
   Oakland, CA 94612
25
   YVONNE WALKER
26 Vice President for Bargaining
   CSEA
27 1108 "O" Street
   Sacramento, CA 95814
28

1   PAM MANWILLER
Director of State Programs
2   AFSME
555 Capitol Mall, Suite 1225
3   Sacramento, CA95814

4   RICHARD TATUM
CSSO State President
5   CSSO
1461 Ullrey Avenue
6   Escalon, CA95320

7   TIM BEHRENS
President
8   Association of California State Supervisors
1108 O Street
9   Sacramento, CA95814

10      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on September 12, 2006 at San Francisco, California.

13   Kristina Hector