# EXHIBIT C

PLAINTIFF'S EXHIBIT
CASE NO. 2:90-cv-520-KJM-DB
EXHIBIT NO. PL-003

ORIGINAL FILED

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | NO. C01-1351 TEH <br><br> CLASS ACTION <br><br> <u>ORDER RE: RECEIVER'S MOTION FOR A WAIVER OF STATE LAW</u> |

    This matter comes before the Court on the Receiver's Motion for a Waiver of State Law, filed September 12, 2006. Pursuant to this Court's Order of September 15, 2006, the parties filed their responses to the Receiver's Motion on September 26, 2006.[1] No party has objected to the Receiver's motion although the State has requested certain clarifications.

---

[1] On September 14, 2006, Defendants filed a "Request for Procedure Re Motions By the Receiver." The motion summarily requests that the Court set forth "briefing schedules so that parties, and other organizations noticed by the Receiver, have the opportunity to comment, support, object, and, when appropriate, submit evidence in support of their positions regarding motions filed by the Receiver." Request at 1-2. The Court set such a schedule for the instant motion in its Order of September 15, 2006. With respect to any future motions, the Court already addressed this issue in its February 14, 2006 Order Appointing Receiver. Defendants fail to address this Order or otherwise explain why the Court should deviate from it at this juncture. The Court further notes that since the circumstances surrounding future motions may vary, there is no apparent advantage to imposing a specific briefing schedule or procedure in advance. Accordingly, the request for a standardized process is denied. The parties can be assured, however, that they will always be afforded, as requested, a full opportunity to "comment, support, object, and, when appropriate, submit evidence in support of their positions regarding motions filed by the Receiver."

Having carefully considered the Receiver's Motion, the parties' responses, and the entire record herein, the Court grants the requested waiver with certain clarifications as set forth below.

I. BACKGROUND

In February 2006, this Court appointed a Receiver to take control of the delivery of medical services for prisoners confined in California state prisons. The Court took this extraordinary step of last resort because the State's conceded inability to discharge its constitutional obligations has led to such a crisis in the delivery of medical care in California state prisons that, on average, "one inmate needlessly dies every six to seven days due to constitutional deficiencies." *See* October 3, 2005 Findings of Fact and Conclusions of Law Re Appointment of Receiver at 1. It is also uncontested that the crisis is due, in significant part, to the chronic failure of the California Department of Corrections and Rehabilitation ("CDCR") to adequately staff clinical positions at California state prisons – positions which are often situated in remote locations and/or present a far more challenging work environment than presented by other employment opportunities. For example, in June 2005, the Court heard undisputed testimony that clinical vacancies "plague" the CDCR; that any efforts to address the issue become mired in bureaucracy; that compensation levels for medical staff are "simply too low"; and that the CDCR's own study shows that it paid registered nurses 20-40 % below market, and some of its supervising nurses up to 57 % below market. *Id*. at 17.

By November 2005, the staffing crisis had worsened. *See* Correctional Expert's November 14, 2005 Report re Clinical Staff. In December 2005, this Court concluded that Defendants still failed to grasp the gravity of the situation and were "content to invoke bureaucratic red tape and 'business as usual' procedures as roadblocks to reform." *See* Dec. 1, 2005 Order at 1. Accordingly, the Court ordered Defendants to, *inter alia*, streamline their hiring processes and implement certain salary differentials as an interim measure pending

PL-003.002

appointment of the Receiver. The Court explained, however, that the Receiver would have the option of modifying the differentials or making other structural changes to compensation if necessary. *Id.* at 3.

Since the effective date of his appointment in April 2006, the Receiver has undertaken a thorough review of (1) the adequacy of clinical staffing within CDCR institutions as well as in its headquarters in Sacramento, California, and (2) the adequacy of compensation provided to clinical personnel essential to the adequate delivery of medical services in CDCR institutions. *See* Receiver's Motion for Waiver of State law at 3. This review revealed, among other things, that, as of July 31, 2006, CDCR institutions had a 20% vacancy rate statewide for primary care positions, and that this rate increased to 30% at six prisons, 50% at two prisons, and 90% at one. It also showed that while nursing vacancy rates declined from 39% in November 2005 to 15% in March 2006, due to the differentials ordered by the Court in December 2005, that the vacancy rate since then has remained steady, and is as high as 51% in the San Francisco Bay Area. *Id.* at 4-5.[2] Other critical clinical positions are also severely understaffed. For example, 39-42 % of pharmacy staff, 44% of Radiological Technicians, and 63% of Clinical Dietician positions remain vacant. None of these findings are disputed by Defendants. *See* Receiver's Mot. at 5.

Nor do Defendants dispute the fact that the CDCR's current salary structure lags significantly behind that available to clinicians in other settings. The CDCR's own survey, for example, shows that the median salary for pharmacists in the public sector is 43% higher (and in the San Francisco Bay Area, 54% higher) than that paid to CDCR pharmacists. *See* Receiver's Mot. at 7. Nor do Defendants dispute that its current salary structure has made it impossible overcome its chronically high vacancy rates and to attract

---

[2] Three institutions lie within the San Francisco Bay Area: San Quentin State Prison, Salinas Valley State Prison, and the Correctional Training Facility at Soledad.

and retain sufficient numbers of qualified clinicians to bring its medical health care system up to constitutional standards.

Because Defendants are consistently unable to fill their clinical positions they have been forced to rely upon short-term contract personnel and Registries (who provide short-term personnel) as a stop-gap method of providing partial coverage for vacant positions. This approach has not only proven extremely costly for the State[3] but it also prevents Defendants from providing the continuity of care that is critical to providing constitutionally adequate medical services to California's inmates, particularly given that the roughly 170,000 plus inmate population now includes many older inmates and inmates who suffer from chronic and long-term diseases. As Jane Robinson, CDCR's Regional Director of Nursing, states "[c]onsistency in nurse-patient interactions is the foundation for a professional, therapeutic relationship." *See* Receiver's Mot., Ex. 5 (Robinson Dec.) at 1-2; *id.* Ex. 4 (Hill Dec.) at 1 ("Continuity of care is a fundamental aspect of any medical care delivery system.").

After completing his review of the CDCR's staffing patterns and compensation for clinicians, the Receiver made the following findings:

> 1. Staffing levels in CDCR institutions are so inadequate that the remedial programs necessary to bring prison medical care up to constitutional levels clearly cannot begin to be implemented without significant increases in clinical personnel.
>
> 2. The programs and services needed to provide constitutionally adequate care to prisoner/patients with chronic diseases, health problems that involve both medical and mental health issues, and

---

[3] Registry and contract personnel cost the State substantially more than full-time state employees. For example, CDCR pays approximately $67 per hour for contract nurses while its civil service nurses cost approximately $49 per hour including benefits. *See* Receiver's Mot. at 6 and n. 7. CDCR also reports paying an average of $170 per hour for contract primary care providers while its permanent physicians make approximately $80 per hour. *Id.* at 8. For just the fiscal year 2005-06, the CDCR spent approximately $90 million for contract and registry personnel. *Id.* at 8. The Receiver has also found that the pay differentials between contract and state employees leads to friction between temporary and permanent employees which detracts from the institution's ability to provide effective medical care. *Id.* at 8.

> long-term and aging issues clearly cannot begin to be implemented until California prisons stop relying upon short-term registry personnel and commence the hiring of adequate numbers of permanent full time State employees.
>
> 3. The salaries offered by the State to applicants for clinical positions in its prisons are so low that the prison system is unable to hire and retain an adequate number of qualified clinical personnel at all clinical levels, including physicians, mid-level practitioners, registered nurses, licensed vocational nurses, pharmacists and other necessary professions. To remedy this problem, salary increases are necessary as an initial step to begin to correct the health care delivery crisis in California's prisons.

*Id*. at 3-4. Defendants do not dispute any of these findings.

In light of these findings, the Receiver developed adjusted salary ranges for CDCR clinicians that are more consistent with those paid by the State to clinicians employed at hospitals operated by the University of California health care system. *See* Receiver's Mot., Ex. 6. The Receiver and his staff then spent several weeks discussing this matter with Defendants and the relevant state agencies. Defendants did not dispute either the reasonableness of the recommended salary ranges or the necessity of implementing them promptly. They declined, however, to unilaterally implement them because of questions regarding constraints imposed upon them by state law. *See* Receiver's Mot., Ex. 7 (Letter from Paul Starkey, Labor Relations Counsel for Department of Personnel Administration ("DPA"), Ex. 9 (Letter from Andrea Hoch, Legal Affairs Secretary to the Governor), Ex. 15 (Letter from Fred Aguiar, Cabinet Secretary to the Governor). Defendants also indicated that while the State would have the "*authority* to implement the salary increases for represented employees *if bargaining was successful* . . . we cannot say for certain right now that the State *would* implement the proposed salary increases for represented employees in the time frame envisioned by the Receiver." *See id*. at Ex. 9 at 4 (emphasis in original and added).

Although Defendants concluded that they could not implement the recommended salary adjustments promptly on their own, they invited the Receiver to request a waiver of those state laws that posed obstacles to making the recommended salary adjustments in a timely fashion, and offered to assist the Receiver in their implementation:

5

> The essence of the [Defendants' position] is that moving forward with implementing [the Receiver's request unilaterally, without the benefit of a court order is uncertain at best and brings with it risks and challenges that may not be easily overcome. It is the conclusion of the administration that these legal questions and uncertainties could easily be averted if the Court were to issue an order directing the salary changes. If such an order were to be drafted and issued by the Court, the administration stands ready to offer its assistance, technical or otherwise, to successfully implement the order.

*See* Receiver's Mot., Ex. 9 (Aguiar letter) at 1. Accordingly, the Receiver subsequently filed the instant Motion for Waiver of State Law. The Motion requests that the Court waive the following state requirements so as to permit the Receiver to "direct the implementation, adjustment and administration of the proposed salaries and structural changes to the pay system" attached to his motion as Exhibit 6. *See* Receiver's Mot. at 14 and Ex. 6.[4]

Government Code Sections:

Section 19816     (vesting DPA with duties, purposes, responsibilities and jurisdiction with respect to the administration of salaries for civil service and exempt employees).

Section 19826     (designating DPA as the agency responsible for establishing and adjusting salary ranges for civil service classifications).

Section 19829     (requiring DPA to provide for intermediate steps with salary ranges which govern the extent of the salary adjustment an employee may receive at any one time, and providing for DPA to establish more than one salary range or rate or method of compensation within a classification).

Section 19832     (authorizing DPA to set standards of efficiency applied for purposes of granting employees annual merit salary adjustments, as implemented through California Code of Regulations, title 2, section 599.683).

Section 19836     (vesting DPA with authority to approve payment of salaries at any step above the minimum of the salary range for recruitment purposes; to obtain persons with extraordinary qualifications or as credit for prior State service).

---

[4] The job classifications affected are: Nursing Services, Pharmacy Services, Medical Transcriptionists, Radiology, Laboratory Services, Dietary Services, Health Records, Mid-Level Practitioners (Nurse Practitioners and Physician Assistants), Podiatrist, Physicians, Chief Medical Officers and managerial positions within CDCR's Health Care Services Division).

PL-003.006

| | | |
|---|---|---|
| | Section 3516.5 | (requiring DPA to provide written notice to employee unions, and provide them an opportunity to meet and confer (bargain) when there is a change that falls within the scope of representation (e.g., wages)). |
| | Section 3517 | (requiring the Governor or his representative (DPA) to bargain in good faith regarding wages, hours and other terms and conditions of employment prior to arriving at a determination of policy or course of action). |

California Code of Regulations

| | | |
|---|---|---|
| | Title 2, § 599.681 | (setting forth the methodology for determining salaries when employees move between ranges in the same classification). |

## II. DISCUSSION

In its February 14, 2006 Order Appointing Receiver the Court stated that the "Receiver shall make all reasonable efforts to exercise his powers, as described in this Order, in a manner consistent with California state laws, regulations, and contracts, including labor contracts." *Id.* at Section II (D). The Court further provided, however, that the Receiver could request a waiver of state law in the event such waiver became necessary and other alternatives were inadequate:

> In the event, however, that the Receiver finds that a state law, regulation, contract, or other state action or inaction is clearly preventing the Receiver from developing or implementing a constitutionally adequate medical health care system, or otherwise clearly preventing the Receiver from carrying out his duties as set forth in this Order, and that other alternatives are inadequate, the Receiver shall request the Court to waive the state or contractual requirement that is causing the impediment.

*Id.*

In his motion, the Receiver questions Defendants' assertion that state law requirements prevent them from implementing the proposed salary adjustments in a timely manner. Defendants' position, he suggests, may instead just be yet another example of the State's inability to break out of its "business-as-usual" bureaucratic frame of mind and invoke its full authority to address the constitutional violations at issue. Specifically, the Receiver notes that at least some of the statutes invoked by Defendants may present less of a

7

barrier than suggested. For example, while California Government Code § 3517 requires the Governor or his representative to meet and confer in good faith with recognized employee organizations regarding wages and other terms and conditions of employment, this requirement can, as DPA acknowledges, be waived by the employee organization. *See* Receiver's Mot., Ex. 7 (Letter from counsel for DPA explaining that salaries must be negotiated prior to implementation "absent waiver"). Yet DPA never made any effort to obtain such waivers. Given that the Receiver obtained letters endorsing the recommended salary adjustments from all affected bargaining units, it appears likely that DPA could have obtained such waivers had the effort been made. *See* Receiver's Mot. at 13, and Exs. 10-14.

In their response to the Receiver's motion, Defendants do not discuss any of the statutes at issue. Rather, they simply reaffirm their support for the proposed salary adjustments and the need for a waiver given the requirements of California law. *See* Defs.' Response at 1-2 ("Specifically, Defendants confirm that they support the salary increases requested in the Receiver's Motion. Although Defendants have explained that they are not able to proceed as quickly as the Receiver desires in effectuating the salary increases because Defendants must comply with the requirements of California law, Defendants recognize the need to move faster and they support the Receiver's request for a waiver of certain state law in this particular instance."). Plaintiffs also filed a response supporting the Receiver's request for a waiver.

Having carefully considered this matter, the parties' responses, and the record herein, the Court concludes that the standard set forth in this Court's February 14, 2006 Order is satisfied, and therefore the requested waiver should be granted in this instance.

First, regardless of whether Defendants could arguably take the position that it has the authority to unilaterally implement the salary adjustments at issue in a timely manner without running afoul of any state law, the critical point is that they have not taken this position. Instead, they clearly refuse to take any action to implement the salary adjustments in the time frame requested by the Receiver, invoking state law requirements. Defendants' position –

8

and inaction – has thus required the Receiver to seek relief from this Court in order to implement the salary adjustments. In fact, Defendants have expressly invited the requested waiver.

Second, there is no doubting – and no party disputes – that the on-going crisis existing with respect to the delivery of medical care in California state prisons is costing lives on a weekly basis. Thus, the Court can not, consistent with its jurisprudential obligations, permit the State to attempt to address the issue of inadequate salaries through normal collective bargaining channels – which would take months if not years – when lives are unnecessarily being lost. Moreover, the Court has zero confidence that the State would succeed in adequately raising salaries through the normal collective bargaining process since it has already had this opportunity and failed. For example, despite the State being fully aware of the salary issues discussed in this Order, and despite a CDCR study finding pharmacy salaries 43% below the public sector market, it recently concluded an agreement that raised pharmacy position salaries by only 3.5%. *See* Receiver's Mot. at 7. Accordingly, the Court does not view reliance on the normal collective bargaining process as a viable alternative to a waiver in this instance.

Third, it is similarly clear that the alternative of using short-term contract and registry personnel is not a reasonable alternative. Indeed, as the record in this case makes all too painfully clear, Defendants' practice of relying heavily on such personnel to at least partially reduce the vacancy rate and deliver a constitutionally adequate system of medical care has been an abject failure, and as noted above, a costly exercise. Further, as the Receiver has found, and no party disputes, "[t]he programs and services needed to provide constitutionally adequate care to prisoner/patients with chronic diseases, health problems that involve both medical and mental health issues, and long-term and aging issues clearly cannot begin to be implemented until California prisons stop relying upon short-term registry personnel and commence the hiring of adequate numbers of permanent full time State employees." *See* Receiver's Mot. at 3.

9

Finally, the Court notes that the history of this case demonstrates that salary increases can effectively address the high vacancy rates that have chronically plagued the CDCR's ability to attract and retain qualified medical clinicians. As noted above, the interim salary differential applied to nurses in December 2005 has been credited with reducing the vacancy rate from 39% to 15% in a matter of months.

In sum, and given all of the above, the Court makes the following findings, which as discussed above, are essentially undisputed:

1. The recommended salary adjustments are appropriate and necessary to attract and retain qualified permanent, full-time, clinical employees within the CDCR, and without such adjustments Defendants will be unable to address their chronically high vacancy rates in the area of medical health care.

2. Satisfactorily addressing the chronically high vacancy rates within CDCR's health care division is a necessary predicate to achieving a constitutionally adequate medical health delivery system.

3. Defendants have been given every opportunity to address this issue in a timely manner and are unable or unwilling to remedy the chronically high vacancy rates on their own and this inaction is clearly preventing the Receiver from developing or implementing a constitutionally adequate medical health care system and otherwise carrying out his duties as set forth in this Court's February 14, 2006 Order.

4. The requested waiver, as invited by Defendants, is necessary because there are no adequate alternatives that have been presented to the Court.

In light of these findings the Court concludes that the Receiver has satisfactorily demonstrated that he has satisfied the standard for obtaining a waiver set forth in this Court's February 14, 2006 Order. Specifically, he has shown that he has "made all reasonable efforts to exercise his powers . . . in a manner consistent with California state laws" but that a "state law" or "state inaction" is "clearly preventing him from developing or implementing

a constitutionally adequate medical health care system" and that "other alternatives are inadequate." *See* February 14, 2006 Order at Section II (D).

Accordingly, and good cause appearing, it is HEREBY ORDERED that:

1. The following state law requirements shall be waived *for the sole and limited purpose* of enabling the Receiver to direct the implementation, adjustment, and administration of the proposed salaries and structural changes to the pay system set forth in Exhibit 6 to the Receiver's Motion for Waiver:

California Government Code Sections: 19816, 19826, 19829, 19832, 19836, 3516.5, 3517.

California Code of Regulations:  Title 2, section 599.681

In granting this limited waiver, the Court clarifies that such waiver is not intended to relieve Defendants or the State of any of their duties and responsibilities under California law, including the obligation to collectively bargain regarding salaries.

2. Defendants shall cooperate fully with the Receiver concerning the implementation, administration, and adjustments of the salary ranges established by the Receiver in Exhibit 6.[5]

3. The Court further finds, pursuant to 18 U.S.C. § 3626 (a) (1), that the above remedy is narrowly drawn to remedy the constitutional violations at issue, extends no further than necessary to correct a current and ongoing violation of a federal right, and is the least intrusive means necessary to correct these violations. The Court also is amply satisfied that

---

[5] As Defendants have expressly affirmed their commitment to the prompt implementation of the proposed adjustments, and the remedial process in the case in general, the Court does not anticipate any problems in this regard.

PL-003.011

this relief will impose no unnecessary burden on defendants and will have no adverse impact on either the safety of the public or the operation of the criminal justice system.[6]

As noted above, Defendants seek two "clarifications" with respect to the Receiver's motion which the Court will now address. First, they raise the concern that if the waiver only "applies to" the Receiver, then State employees will not be able to assist the Receiver in implementing the salary adjustments. This confusion arises because the Receiver's motion suggests that the waiver would apply only to the Receiver. This language was only used, however, in an effort to emphasize that the waiver is *not*, as explained above, intended to relieve Defendants or the State of its usual collective bargaining obligations under the statutes at issue. The waiver does not, however, in fact, attach to particular persons; rather, the waiver attaches to the statute for the limited purpose of the waiver. Thus, any state employee will be fully able to assist the Receiver in implementing the proposed salary adjustments, set forth in Exhibit 6, and such actions shall be governed by the waiver granted herein. In fact, as noted above, the Court has specifically directed Defendants to cooperate in this endeavor.

Second, Defendants request that the Court clarify that the requested waiver not be ongoing but of limited duration. The Court agrees that while an "on-going waiver" might prove more efficient in the event that the Receiver determines that additional salary modifications are necessary, it does not sufficiently maintain the balance required by Section

---

[6] The Prison Litigation Reform Act also provides that a Court can not order any prospective relief that requires or permits a government official to exceed his or her authority under State law unless certain findings can be made. *See* 18 U.S.C. § 3626 (B). The Court concludes that the standard set forth in paragraph II (D) of the Court's February 14, 2006 Order is consistent with findings required under § 3626(B), and that the findings set forth above are sufficient to comply with this section. In an abundance of caution, however, the Court also expressly finds that (1) federal law requires the relief ordered herein because it is necessary to cure the constitutional violations at issue, (2) the relief ordered herein is necessary to correct the violation of a federal right, and (3) no other relief will correct the violation of the federal right at issue.

PL-003.012

II(D) of the Court's February 14, 2006 Order. Accordingly, the Court declines the Receiver's request to make the waiver "on-going."

In the event that the Receiver determines that additional salary modifications are necessary to achieve a constitutionally adequate medical health care system, the Receiver shall meet and confer with the parties. In the event that the parties agree that all of the requirements of section II.D of the Court's February 14, 2006 Order continue to be satisfied, the Receiver may submit a stipulation to this effect in lieu of the motion required by this section. If, however, disputes remain, the Receiver shall proceed with the procedure set forth in the February 14, 2006 Order.[7]

IT IS SO ORDERED.

Dated: October 17, 2006

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE

---

[7] As a final comment, Defendants reference a letter from counsel for the Department of Finance which discusses potential impacts from a waiver and asks the Court to "consider these matters when ruling on the Receiver's motion." See Defs.' Response at 4. Defendants' purpose in making this comment is unclear since Defendants have otherwise expressly confirmed their support of the Receiver's motion and requested salary increases.
In any event the Court has considered the letter which raises two primary points. First, it raises the concern that employees from other agencies may seek employment with the CDCR shortly before they intend to retire in an attempt to increase their retirement benefits which would have a fiscal impact for the State. The Court is confident, however, that the Receiver can adequately screen out such persons during the application and hiring process and is specifically directed by way of this Order to make all reasonable efforts to do so. Further, if the Department of Finance is truly concerned that the issue is of sufficient magnitude to justify some type of intervention, it can seek a legislative remedy. Second, the letter raises the concern that employees may leave other state agencies to work at the CDCR in such numbers that it could adversely affect those agencies. The Court, however, can not subjugate its obligations to remedy constitutional violations – violations that involve, in this instance, issues of life and death – because of speculative impacts on other agencies not under court order. Again, however, if this becomes a serious concern the Department of Finance can work with the legislature to address this broader governmental issue.

13

PL-003.013