# EXHIBIT F

1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURTS

7                    FOR THE EASTERN DISTRICT OF CALIFORNIA

8                   AND THE NORTHERN DISTRICT OF CALIFORNIA

9    RALPH COLEMAN, et al.,

10              Plaintiffs,              No. CIV S-90-0520 LKK JFM P (E.D.Cal.)

11         vs.

12   ARNOLD SCHWARZENEGGER,
     et al.,
13
                Defendants.
14   _____/

15   MARCIANO PLATA, et al.,

16              Plaintiffs,              No. C 01-1351 TEH (N.D.Cal.)

17         vs.

18   ARNOLD SCHWARZENEGGER,
     et al.,
19
                Defendants.
20   _____/

21   CARLOS PEREZ, et al.,

22              Plaintiffs,              No. C 05-05241 JSW (N.D.Cal.)

23         vs.

24   JAMES TILTON, et al.,              ORDER

25              Defendants.

26   _____/

                                    1

PLAINTIFF'S
EXHIBIT

CASE
NO.    2:90-cv-520-
       KJM-DB

EXHIBIT
NO.    PL-100

1    The Receiver in <u>Plata</u>, the Special Master in <u>Coleman</u>, and the Court

2    Representatives in <u>Perez</u> have presented to the judges in the above-captioned cases six

3    agreements that they have reached during the coordination meetings that they have held to date.

4    The agreements, which are attached to this order, are presented to the undersigned for review and

5    approval.  The undersigned are aware that there is a hearing scheduled on June 1, 2007 in the

6    <u>Perez</u> matter with respect to increasing dental salaries and a hiring and management plan.  All

7    parties are advised that this hearing shall go forward and the motion shall be considered on its

8    own merits.

9    Good cause appearing, IT IS HEREBY ORDERED that the parties in the above-

10    captioned cases are granted until June 15, 2007 to file and serve a response to the request for

11    court approval of these agreements.  Any response to this order shall be filed in each of the

12    above-captioned cases and served on all of the parties to all of the cases and on the Receiver, the

13    Special Master, and the Court Representatives.  Thereafter, the request for approval of the

14    agreements will be taken under submission for individual and joint consideration by the

15    undersigned.

16    DATED: 5/29/07

17
_____
18    LAWRENCE K. KARLTON
SENIOR JUDGE
19    UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

20    DATED: 5/29/07

/s/
21    _____
THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE
22    NORTHERN DISTRICT OF CALIFORNIA

23    DATED: 5/29/07

/s/
24    _____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE
25    NORTHERN DISTRICT OF CALIFORNIA

26

PL-100.002

1                                                **CIM-GACH**

2              The Receiver and the Special Master have agreed that the General Acute Care
     Hospital (GACH) license at the California Institute for Men (CIM) should be suspended.  The
3    physical unit will remain open and house 40-45 Mental Health Crisis Beds (MHCBs).  Staffing
     levels will not change for mental health care.
4
             The Receiver and the Special Master are concerned that defendants will not be
5    allowed to operate MHCBs in unlicensed facilities.  A state court decision, *Budd, et al. v.
     Cambra, et al.*, Case No.319578, required the California Department of Corrections and
6    Rehabilitation (CDCR) to bring its correctional treatment centers (CTCs) into compliance with
     state law licensing requirements.  Counsel for the parties may argue that *Budd* requires
7    defendants to provide inpatient health services to inmates presently below an acute level of care
     in a licensed facility.
8
             The *Coleman* Special Master has agreed to explore whether a CTC license is
9    necessary to operate a MHCB.  If such a license is necessary, the Special Master will seek an
     emergency order from the *Coleman* Court to allow for the operation of the MHCBs at CIM, as
10   was done in the case of CMC.

11            On May 1, 2006, when faced with a MHCB crisis, the *Coleman* Court ordered the
     establishment of 36 MHCBs in the former locked observation unit (LOU) at California Men's
12   Colony (CMC).  The LOU at CMC had been closed and reopened as an outpatient housing unit,
     in light of *Budd*.  The *Coleman* Court stated that until further notice and on a temporary
13   emergency basis "defendants shall not close any intermediate inpatient bed or mental health crisis
     bed on the basis of state licensing requirements without approval of the special master."  In its
14   order, the Court stated that "it is essential to provide immediately mental health crisis beds to
     critically ill inmates in the CDCR…Under present circumstances, state licensing requirements
15   must temporarily give way to measures necessary to remedy the Eighth Amendment violations
     that remained unsolved in this action."  (See *Coleman* Order dated May 1, 2006, document
16   number 1800).

17            The purpose of the order was to provide, on an interim basis, sufficient temporary
     MHCBs until the 50-bed MHCB projects at CMF and CMC were completed.  Allowing the
18   license to remain for the 40-45 agreed upon MHCBs at CIM-GACH could possibly avoid
     *Budd*-driven complications.

19

20

21

22

23

24

25

26

                                                    3

                                                                                    PL-100.003

## **Contracts**

Effective April 17, 2006 the Receiver assumed responsibility for overseeing the State's compliance with the Federal Court's mandate (1) that "all current outstanding, valid, and CDCR-approved medical invoices" be paid within 60 days of March 30, 2006; and (2) that under the direction of the Receiver, the CDCR and State entities responsible for contracts develop and institute health care-oriented policies and standards to govern the CDCR medical contract management system considering both the need for timely on-going care and the fiscal concerns of the State.

The Receiver has created a Contract Pilot Unit that includes personnel from CDCR's Office of Business Services, staff who now report directly to the Office of the Receiver through the *Plata* Support Division.  In addition, selected personnel from the Health Care Operations Support Section of the DCHCS, as well as personnel from the Health Care Cost and Utilization Program have been added to the Pilot, as have staff at four prisons (San Quentin State Prison, Pelican Bay State Prison, California Medical Facility, and the Central California Women's Facility) and two Regional Accounting Offices (North Coast and Corcoran).  Upon successful completion of the Pilot, the new streamlined contract procurement and payment policies established by the Pilot will be adopted by all CDCR facilities according to a time-phase schedule which has not yet been determined.

These new policies are supported by a newly created, computerized Health Care Document Management System (HCDMS) which will manage all medical contracts, replacing the former paper based system.  The HCDMS has three primary components in that it:

- Assists CDCR staff by utilizing uniform contract templates for the creation of contracts that do not permit deviation from health care policies and standards.
- Stores all health care contracts in a database accessible to all authorized users.
- Establishes an effective payment system designed to receive, store and communicate invoices electronically.  By computerizing all contracts and invoices, the HCDMS eliminates the time spent transferring paper copies throughout CDCR and electronically prints invoices with their governing contracts for faster information retrieval.

The Receiver will assume responsibility for direct oversight of the contracting functions for medical, dental and mental health programs.  The *Coleman* Special Master and *Perez* Court appointed experts will participate in the design and implementation of periodic reports to monitor the status of contract management.  The *Coleman* Special Master and *Perez* Court appointed experts, along with defendants' mental health and dental administrators, will also be involved in establishing standards (including proposed rates of reimbursement for contract clinicians) for registry contracts within their respective areas of concern.

4

PL-100.004

1

2                                              **Credentialing**

3            **Credentialing** is the process of obtaining, verifying, and assessing the
qualifications of an applicant to provide patient care, treatment, and services in a California
4    Department of Corrections and Rehabilitation (CDCR) medical facility.  The credentials review
process is the basis for making appointments to the clinical staff; it also provides information for
5    granting clinical privileges to licensed independent practitioners.  The purpose of verifying
credential data is to ensure that the individual requesting privileges is in fact the same individual
6    that is identified in the credentialing documents.  In addition, it is to ensure that the applicant has
attained the credentials as stated, that the credentials are current, and that there are no challenges
7    to any of the credentials.

8            **Privileging** is the process used to grant to a specific practitioner the authorization
to provide specific inmate-patient care services. Privileging ensures that the individual is capable
9    of providing those services in accordance with the standard of care of the Division of
Correctional Health Care Services (DCHCS).

10
            These processes are performed at time of appointment and at least every two years
11   to ensure the credentials remain current.  Final approvals of credentialing/privileging are made by
the chief of either the medical, dental or mental health programs as appropriate.

12
            These functions are currently performed by the Division of Correctional Health
13   Care Services Pre-Employment Credential Unit which consists of three positions.  These
positions are all classified as Staff Services Analyst/Associate Governmental Program Analyst.
14   The Receiver will assume responsibility for the credentialing/privileging functions for the
medical, mental health, and dental programs to include direct oversight of the Pre-Employment
15   Credential Unit.

16           The *Coleman* Special Master and the *Perez* Court experts will consult with the
defendants' mental health and dental administrators and will participate in, and have final
17   approval of, the establishment of credentialing/privileging standard within their respective
disciplines.

18

19

20

21

22

23

24

25

26

PL-100.005

1

2                                       **Hiring**

3          The Receiver has established the *Plata* Support Division to provide administrative
support for the reform initiatives he has established.  The Personnel Services and Staff
4   Development Section have implemented new recruiting and hiring programs to improve the
retention of medical staff (including creating new or revising current job classifications,
5   implementing salary increases for specified classifications, designing new hiring and on-boarding
processes, establishing training programs for institution personnel staff and for new supervisors,
6   and improving the credentialing process of medical staff).  This section has assumed full
responsibility for all human resources-related functions for the *Plata* classifications, removing
7   those functions from the CDCR's Support Services Division.

8          The *Plata* Workforce Development Section is working to recruit and hire
additional medical professionals to fill the many vacancies that exist throughout California's
9   prison system.  To ensure that proactive steps are taken on a daily basis to fill medical
professions vacancies in an expeditious manner, a pilot for "one-day hiring" was rolled out
10  February 22, 2007.

11         The Receiver will assume responsibility for hiring of medical personnel only.
However, *Plata* Support Division staff will provide consultation to the *Coleman* Special Master
12  and *Perez* Court experts, as well as to defendants' mental health and dental administrators, on
recruitment and hiring practices.

13
          The Receiver will consider assuming responsibility for hiring dental and mental
14  health personnel only after:

15                 •      The *Plata* hiring programs are fully implemented and the future workload
                         has been assessed.

16

17

18

19

20

21

22

23

24

25

26

PL-100.006

**IT**

The objective of the Receiver's long term IT program is to construct and support the California Correction Health Care Information System based on the importance of "correct data at the point of care." The core design is based on an Electronic Medical Record (EMR) for each inmate/patient. The EMR will be paperless, medical information gathered in one location for physicians and clinicians to access, at various locations, and thereby enable them to make informed and safe medical decisions. All data obtained will be patient centric to allow for an "Information at the Point of Care" system.

To support the establishment of an EMR, a foundation will be formed. It will contain four components: 1) technical infrastructure, 2) clinical infrastructure, 3) data infrastructure, and 4) operational infrastructure. The technical infrastructure will provide a high-speed connection to a network of multiple sites. The clinical infrastructure will provide a repository of standardized data through verifiable data processes and compile medical data across all compliant data sources into a unified database that can be used to generate information valuable for patient care and healthcare management. The data infrastructure will implement a secure clinical web-based portal tool that allows clinical staff appropriate access to verified and standardized patient data at the point of care or clinical work areas (i.e. university hospitals, local specialty care centers). The operational infrastructure will provide clinical informatics with a near zero fault tolerance system to support various operations (i.e. Maxor Pharmaceuticals). Upon this foundation, the EMR will be supported by uniform clinical data provided by two types of clinical information systems: 1) clinical business systems and 2) clinical systems. The Clinical Business System will sustain such areas as access tracking, scheduling, correctional interface, clinical resource scheduling, clinical contracting, credentialing, and CME (define acronym) verification. The clinical systems will sustain such areas as laboratory, radiology, pharmacy, clinical department workflow, telemedicine, digital imaging, dental systems and mental health systems.

Based on these systems the EMR will facilitate:

- a clinical data warehouse
- views on data - patient, clinician, administrator portals and reports
- integrated patient care at the a regional level
- clinical/case management and outcome reporting
- chronic disease registries
- enterprise wide/common scheduling
- supported clinical decisions
- cost effective and timely patient-centered care
- telemedicine delivery

The Receiver will assume responsibility for implementation of the long term IT program to include the medical, dental and mental health programs. The *Coleman* Special Master, the *Perez* Court experts, and defendants' mental health and dental administrators will be kept informed of the progress of this long range project and will provide necessary input concerning mental health and dental clinical data needs.

Telemedicine is a critical component of the Receiver's plan to bring the California Prison Health Care system to a constitutional standard. The Receiver has determined that the

7

current Telemedicine program managed by the Division of Correctional Health Care Services (DCHCS) has been mismanaged resulting in lack of utilization and understaffing.  The Receiver will assume responsibility for the telemedicine program serving the medical, dental and mental health programs to include direct oversight of the office of telemedicine services comprised of eight personnel (4 RNs, 2 SSAs, 1 HRT II, and 1 TCA II).  The *Coleman* Special Master will consult with defendants' mental health administrators to assist in establishing clinical guidelines for the mental health component of the telemedicine program.

The Receiver will assume responsibility to support the current Mental Health Tracking System until it can be integrated into the long term IT program.

The *Perez* Court experts will meet with the Receiver's IT staff to determine:

- Whether the "intermediate" dental IT system ordered by Judge White can be implemented within the prescribed time constraints?
- If it cannot be implemented as directed, whether the Court experts should seek a modification of the court order to integrate the dental IT system within the infrastructure and timeline of the long term IT program?

PL-100.008

1

2                                          **Pharmacy**

3          In late 2006 the Office of the Receiver entered into an agreement with Maxor
National Pharmacy Services Corporation (Maxor) to provide pharmacy management consulting
4   services.  That contract was effective January 1, 2007.  On March 30, 2007 the Receiver's
request for an order *nunc pro tunc* to waive state law applicable to this agreement was granted by
5   the Court.

6          Maxor has developed a "road map" designed to restructure and manage a
constitutionally adequate pharmacy services delivery system.  The primary objective of the road
7   map is to produce sustainable, patient-centered, outcome-driven processes, with the ultimate goal
of creating a CDCR-managed and operated "best practice" pharmacy system within three years.
8   The road map consists of the following interior goals for pharmacy operations that will serve
medical, dental and mental health delivery systems:

9

10         •        Develop meaningful and effective centralized oversight, control and
                    monitoring of the pharmacy services program.
11         •        Implement and enforce clinical pharmacy management processes including
                    formulary controls, Pharmacy and Therapeutics (P&T) committee, disease
                    management guidelines, and the establishment of a program of regular
12                  institutional operational audits.
           •        Establish a comprehensive program to review, audit and monitor
13                  pharmaceutical contracting and procurement processes to ensure cost
                    efficiency in pharmaceutical purchases.
14         •        Develop a meaningful pharmacy human resource program that effectively
                    manages staffing, compensation, job descriptions, competency,
15                  performance, assessment, discipline, training, and use of the workforce
                    including temporary employees and non-pharmacist staff.
16         •        Redesign and standardize overall institution level pharmacy drug
                    distribution operations for inpatient and outpatient needs.  Design,
17                  construct and operate a centralized pharmacy facility.
           •        Design and implement a uniform pharmacy information management
18                  system needed to successfully operate and maintain the CDCR pharmacy
                    operation in a safe, effective and cost efficient way, based on a thorough
19                  understanding of a redesigned work process.
           •        Develop a process to assure that CDCR pharmacy meets accreditation
20                  standards of the designated healthcare review body (NCCHC or ACA) and
                    assist in obtaining accredited status.
21
           The Receiver through Maxor will assume oversight of pharmacy operations
22   serving medical, dental and mental health programs.  *Coleman* and *Perez* Court appointed
experts will consult with defendants' mental health and dental administrators and participate in
23   the P&T committee in development of formularies within their respective areas of concern.
Maxor will provide periodic reports to the Receiver, the *Coleman* Special Master and the *Perez*
24   Court appointed experts concerning road map compliance.

25

26

PL-100.009