UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>   v.<br><br>GAVIN NEWSOM, et al.,<br><br>  Defendants. | No. 2:90-cv-0520 KJM DB P<br><br>ORDER |

The parties have filed closing briefs following the evidentiary hearing on staffing enforcement that began on September 29, 2023. ECF Nos. 8019 (defendants' brief), 8021 (plaintiffs' briefs). The court has set virtual oral argument for November 2, 2023 at 10:00 a.m. ECF No. 8000. At hearing, the parties shall be prepared to address the following questions. The parties also may file concise supplemental briefs addressing the following questions on or before October 31, 2023. Nothing in this order precludes oral argument on other issues raised in the closing briefs or suggested by the court's questions.

As it has in the past, the court invites the United States Attorney General to participate in this matter by filing a response to the court's questions or addressing the matter pending before the court generally. *See* January 6, 2023 Order, ECF No. 7699; ECF Nos. 7723, 7713 (Attorney General accepting court's invitation and appearing through Deputy Chief Kerry K. Dean).

/////

1

I.  **QUESTIONS RE ECONOMIC EXPERT TESTIMONY**

- The Eighth Amendment and numerous court orders applying the Eighth Amendment require defendants to hire enough mental health staff "'to identify and treat in an individualized manner those treatable inmates suffering from serious mental disorders.'" *Coleman v. Wilson*, 912 F. Supp. 1282, 1306 (E. D. Cal. 1995) (internal citation omitted).  It is settled that the level of staffing required to satisfy the Eighth Amendment and court orders in this case is determined by the ratios of staff to inmate-patients in defendants' 2009 Staffing Plan, ECF No. 3693, as modified, at a ten percent maximum vacancy rate.  *See generally*, *e.g.*, February 28, 2023 Order, ECF No. 7742.  Does the fact that defendants are required by the Eighth Amendment and court orders to meet the demand for mental health staff affect an application of market analysis in this context?  If so, how is that analysis affected?

- Did the defense experts consider inflation?  If so, how?  If not, why not?

- Assume for sake of argument that California Department of Corrections and Rehabilitation (CDCR) wages generally are higher than wages paid by other employers in California and the United States at large.  Do the defense experts' reports disprove that defendants (1) could increase hiring and retention by raising wages further or (2) cannot use other measures to increase hiring and retention?

- Do the defense experts rely on academic studies about whether and how healthcare providers respond to changes in wages?  If so, are their opinions about those studies reflected in their reports?  Please provide pin citations.  If not, why not?

- Did the defense experts test how well the regression models reported in Appendix A of the Greulich report explained variations in the data, such as by using an r-squared measurement, F-test or a similar method?[1]  If so, what were the results of these tests, and how should the court interpret those results?

- In several of the regression models reported in Appendix A to the Greulich report, it appears none of the coefficients was statistically significant.  *See, e.g.,* Appendix Table A1 (results reported in column (1)).  Does this mean none of these variables had any observed effects on filled positions?  How should the court interpret those results and other similar results reported in Appendix A?

---

[1] Statisticians use an "r-squared" measurement to test how well a model fits the data. In other words, are the model's predictions any good? R-squared "[m]easures how well a regression equation fits the data. R-squared varies between 0 (no fit) and 1 (perfect fit)." Federal Judicial Center, Reference Manual on Scientific Evidence 293 (3d ed. 2011).

An "F test" also can yield useful information. It measures the chance there is no association at all between the dependent variable (hiring in this case) and the explanatory variables (wages, coronavirus pandemic, time, position, etc.).  *See, e.g.*, Edward K. Cheng, et al., The Basics of Multiple Regression, 1 Mod. Sci. Evidence Ch. 6 Appendix 6A (2022-2023 Edition).

- Is it reasonable to expect factors other than wages, the coronavirus pandemic, a time trend, and the other variables reported in the defense experts' regression models to explain differences in hiring and retention?  For example, is it reasonable to expect working conditions, location, and the availability of telework to have an effect on hiring and retention?  How should the court consider the omission of these variables in evaluating the coefficient estimates reported in Appendix A to the Greulich report?

- Do the regression models reported in Appendix A to the Greulich report disprove that larger increases in wages could increase employment and retention?

## II.  POSSIBLE OTHER STEPS DEFENDANTS COULD TAKE?

What inferences, if any, can or should the court draw from the absence of evidence concerning any other options available to defendants to come into compliance with the court's staffing orders, including but not limited to clustering of *Coleman* class members at locations most easily staffed with mental health clinicians and/or voluntary reduction of the mentally ill prison population?

## III.  ABSENCE OF TESTIMONY FROM PERSONS WITH ULTIMATE AUTHORITY?

At hearing, defendants did not offer testimony from any person with the ultimate decision-making authority for defendants with respect to budgeting, hiring, class member housing locations or population management.  What inferences, if any, can or should the court draw from this aspect of the record?

The Clerk of Court shall electronically serve a copy of this order on Kerry K. Dean, Deputy Chief, United States Department of Justice, Civil Rights Division at kerry.k.dean@usdoj.gov and Regan Rush, Principal Deputy Chief, at regan.rush@usdoj.gov.[2]

IT IS SO ORDERED.

DATED:  October 24, 2023.

CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The court's docket also reflects Laura Lee Coon, Laura.Coon@usdoj.gov, had made an appearance in this case but the court is unable to confirm her title or current status with the Department of Justice.