1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   MONICA N. ANDERSON, State Bar No. 182970
    Senior Assistant Attorney General
3   DAMON MCCLAIN, State Bar No. 209508
    Supervising Deputy Attorney General
4   ELISE OWENS THORN, State Bar No. 145931
    NAMRATA KOTWANI, State Bar No. 308741
5   Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102-7004
     Telephone:  (415) 510-4431
7    Fax:  (415) 703-5843
     E-mail:  Namrata.Kotwani@doj.ca.gov
8   *Attorneys for Defendants*

    PAUL B. MELLO, State Bar No. 179755
    SAMANTHA D. WOLFF, State Bar No. 240280
    KAYLEN KADOTANI, SBN 294114
    DAVID C. CASARRUBIAS, SBN 321994
    CARSON R. NIELLO, SBN 329970
    HANSON BRIDGETT LLP
     1676 N. California Boulevard, Suite 620
     Walnut Creek, CA 94596
     Telephone:  (925) 746-8460
     Fax:  (925) 746-8490
     E-mail:  PMello@hansonbridgett.com
    *Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTE ON AC7.1 (TIMELY TRANSFER TO EOP) AND AC7.4 (TIMELY TRANSFER TO CCCMS) – SUSPENDING EVENTS** |

**INTRODUCTION**

On October 18, 2023, the Special Master provided the parties with a proposed written

resolution of a dispute concerning the remediation of the provisionally approved indicators,

AC7.1 (Timely Transfer to EOP) and AC7.4 (Timely Transfer to CCCMS). *See* ECF No. 8008

at 2 (October 11, 2023 Order modifying the data remediation dispute resolution process). These

two indicators measure Program Guide required timeframes for transfers to Correctional Clinical

Case Management System (CCCMS) and Enhanced Outpatient Program (EOP) settings. *See* ECF

No. 7333-1 at 19 (requiring transfers to CCCMS to occur "[w]ithin 90 days of referral; 60 days of

referral if clinically indicated" and transfers to EOP to occur "[w]ithin 60 days of referral; 30 days

1

Defendants' Objections to the Special Master's Proposed Resolution of Data Remediation Dispute (2:90-cv-00520
KJM-DB (PC))

20069787.1

1    of referral if clinically indicated"). CDCR physicians are authorized to place holds which override

2    patient transfers based on their medical judgment, *i.e.*, to prevent transfers when the patient

3    requires medically necessary healthcare services. (Decl. Mehta Supp. Defs.' Obj. (Mehta Decl.)

4    ¶ 5.)  This dispute focuses on whether transfers to CCCMS and EOP which exceed applicable

5    transfer timelines solely due to valid medical holds placed by physicians should be scored as non-

6    compliant. As resolution to this dispute, the Special Master has proposed that transfers to

7    CCCMS and EOP that have been suspended due to a medical hold should be scored as non-

8    compliant if they exceed applicable timeframes. *See* Ex. A (Special Master's Proposed Resolution

9    of Data Remediation Dispute on AC7.1 and AC7.4), at 2.

10        Defendants object to the Special Master's position because CDCR's Health Care

11    Departmental Operations Policy authorizes CDCR physicians to temporarily hold a patient's

12    transfer due to an overriding medical concern. Defendants should not be scored as non-compliant

13    when its physicians are exercising their medical judgment guided by the best interests of a patient

14    and place a valid medical hold on a patient who would otherwise transfer to CCCMS or EOP

15    care. Nor is it reasonable to find CDCR is non-compliant with the Program Guide – and possibly

16    violates that patient's Eighth Amendment to mental health treatment – under such circumstances.

17    Certain forms of care must be prioritized based upon the patient's present needs and Defendants

18    should not be penalized as a result. Moreover, departmental policy concerning medical holds and

19    Program Guide requirements regarding transfer timelines can be read harmoniously even though

20    there are no explicit pre-existing Court-approved exceptions to these transfer timelines. *See* ECF

21    No. 8010 at 10 (Oct. 11, 2023 Order).

22        Further, the Special Master's recommendation that CCCMS and EOP transfers that exceed

23    applicable timelines due to medical holds should automatically be scored as non-compliant is also

24    at odds with the purpose of data remediation. The aim of data remediation is to ensure that key

25    indicators should accurately measure Defendants' compliance with CDCR policy. Here, the

26    Special Master's proposal would lead to the creation of misleading data insofar non-compliance

27    would be artificially inflated and create an erroneous business rule where medically necessary

28    delays predicated on a clinical assessment to be in the patients' best interests authorized by

2

20069787.1

reasonable departmental policy would be equated with other delays not authorized by policy or the Program Guide.

Because the Special Master's proposal would improperly penalize CDCR for following important departmental policy designed to prevent transfers where a patient requires medically necessary healthcare services, Defendants object to the proposal.

**I.     REASONABLE DEPARTMENTAL POLICY REQUIRES LIFTING OF A VALID MEDICAL HOLD BEFORE A MENTAL HEALTH TRANSFER CAN BE INITIATED.**

CDCR policy requires suspending transfers when there is a valid medical hold in place. Notwithstanding this policy, the Special Master recommends removing medical holds as "suspending events" from indicator documentation. Ex. A (Special Master's Proposed Resolution of Data Remediation Dispute on AC7.1 and AC7.4), at 2. (*Id.*) As explained below, the Court should reject the Special Master's approach because it is clearly erroneous and because it penalizes Defendants for complying with a reasonable policy that is designed to ensure patient safety. Moreover, to the extent that data remediation is meant to ensure indicators accurately measure compliance with Program Guide requirements based on correct business rules, the Special Master's recommendation does not accurately reflect the underlying business rule because it ignores policy that requires suspension of transfers while a medical hold is in place.

California Correctional Health Care Services (CCHCS) provides medical care to California's incarcerated population at all CDCR institutions statewide.[1] The Health Care Department Operations Manual (HCDOM) outlines the delivery of medical and dental care provided to patients.[2] All of the provisions are designed to meet the minimum community standard of healthcare. (*Id.*) The HCDOM covers healthcare transfer procedures at CDCR, which are "designed to ensure seamless continuity of patient care" and "mitigate risk, promote patient safety, maintain continuity of care, improve access, and enhance professionalism, teamwork, and

---

[1] California Correctional Health Care Services, https://cchcs.ca.gov/ (last visited Oct. 24, 2023).

[2] California Correctional Health Care Services, Health Care Department Operations Manual, https://cchcs.ca.gov/hcdom/ (last visited Oct. 24, 2023).

Defendants' Objections to the Special Master's Proposed Resolution of Data Remediation Dispute (2:90-cv-00520 KJM-DB (PC))

20069787.1

1    the formation of new patient-provider care relationships." HCDOM, 3.1.9(a)(2).[3]

2    A medical hold is defined as a "transfer restriction placed on an individual patient *when the*

3    *patient requires medically necessary healthcare services*, and it is medically prudent to provide

4    these services at the California Department of Corrections and Rehabilitation institution where

5    the patient is currently housed."[4] *See also* HCDOM, 1.2.14, Appendix 1(b)(1) (stating that

6    examples of patients who should be reviewed for potential medical holds may include patients

7    scheduled for, or recovering from, major surgery; receiving radiation or chemotherapy;

8    undergoing a diagnostic workup, especially for cancer or other high risk conditions; being fitted

9    for a major prosthetic, which may require multiple adjustments and follow-up visits; awaiting

10   provision of major durable medical equipment; scheduled for specialist visits that cannot readily

11   be provided elsewhere; requiring urgent medical services; requiring close management of

12   medication access and continuity of care for post-transplant follow-up or treatment of hemophilia,

13   Hepatitis C, , or human immunodeficiency virus/acquired immunodeficiency syndrome;

14   undergoing a speech, occupational, or physical therapy regimen which would be adversely

15   impacted by transfer; being treated with clozapine; experiencing a high-risk pregnancy in the

16   second or third trimester; in quarantine or isolation for a variety  diseases such as tuberculosis,

17   influenza-like illness, gastroenteritis, or a sexually transmitted illness under treatment; awaiting or

18   undergoing endodontic treatment or care for a jaw fracture; or being monitored after denture

19   fitment).[5] A medical hold may be placed on a patient by healthcare staff at the licensure level of

20   Registered Nurse or higher.

21   The HCDOM requires that a medical hold be lifted before a mental health transfer can be

22

---

23   [3] HCDOM, Health Care Transfer, 3.1.9, *available at* https://cchcs.ca.gov/wp-content/uploads/sites/60/HC/HCDOM-ch03-art1.9.pdf.

24   [4] HCDOM, Health Care Definitions, at 16, *available at* https://cchcs.ca.gov/wp-content/uploads/sites/60/HC/HCDOM-Definitions.pdf (emphasis added).

25   [5] HCDOM, The Medical Classification Factors, 1.2.14 Appendix 1, *available at* https://cchcs.ca.gov/wp-content/uploads/sites/60/HC/HCDOM-ch01-art2.14.pdf. In addition,

26   "patients newly committed to CDCR with pending high priority specialty services shall be placed on a medical hold to prevent transfer and discontinuity of care in accordance with the HCDOM,

27   Section 1.2.14, Medical Classification System." HCDOM, Reception Center, 3.1.8(c)(2)(C)(7)(e), *available at* https://cchcs.ca.gov/wp-content/uploads/sites/60/HC/HCDOM-ch03-art1.8.pdf.

28

4

Defendants' Objections to the Special Master's Proposed Resolution of Data Remediation Dispute (2:90-cv-00520 KJM-DB (PC))

1    initiated. *See* HCDOM, 3.1.9(c)(3)(G)(3).[6]  For transfers involving a change in institution, the

2    Receiving and Release (R&R) Nurse is required to review contraindications to transfer, including

3    a medical hold or potential medical hold. *Id.* at 3.1.9(c)(3)(A)(2)(a). The care team then resolves

4    transfer-related concerns and the primary care provider may initiate a hold, if it is determined to

5    be medically necessary. *Id.* at 3.1.9(c)(3)(A)(2)(b); Health Care Definitions. "Patients on a

6    medical hold shall remain at the institution due to medical necessity until the PCT [Primary Care

7    Team] can assess and collaborate with mental health to determine the patients' most appropriate

8    location and transfer." *Id.* at 3.1.9(c)(3)(G)(3). The care team convenes a huddle each day to

9    "discuss recent health care events" affecting patients on medical holds as well as "identify

10   services that may need to be provided" and "determine how and when services will be provided."

11   *Id.* at 3.1.2(c)(4)(A)(2)(b).[7] The detailed policies concerning transfer and medical care

12   demonstrate the reasonableness of the process, and clearly evince the prioritization of risk

13   mitigation, patient safety, continuity of care, and access to necessary services. *See id.* at

14   3.1.9(a)(2).

15       The Special Master's recommendation does not acknowledge that CDCR is required to

16   yield CCCMS and EOP transfers to medical holds, notwithstanding the fact that he does not

17   challenge the reasonableness of CCHCS's medical hold policy. Yet, the Special Master's

18   suggested resolution creates a direct conflict between the HCDOM and the Program Guide and

19   presents Defendants with an unnecessary Catch-22. If Defendants follow their medical hold

20   policy, as they are required to do, the Special Master will score them as non-compliant. However,

21   if Defendants attempt to ignore a medical hold to effectuate a patient's timely transfer to EOP or

22   CCCMS care, they will violate departmental policy and potentially deprive the patient of

23   medically necessary healthcare services. Thus, the Special Master's approach is clearly erroneous

24   because it does not comport with rational system design—it scores Defendants as non-compliant

25   for doing *exactly* what they are required to under the circumstances. Defendants should not be

26

27       [6] HCDOM, Health Care Transfer, 3.1.9, *available at* https://cchcs.ca.gov/wp-content/uploads/sites/60/HC/HCDOM-ch03-art1.9.pdf.

28       [7] HCDOM, Care Teams and Patient Panels, 3.1.3, *available* at https://cchcs.ca.gov/wp-content/uploads/sites/60/HC/HCDOM-ch03-art1.3.pdf.

5

20069787.1

1    penalized for following their reasonable policy and prioritizing patient safety and medical

2    necessity. For these reasons, Defendants object to the Special Master's proposal.

3    **II.    DATA REMEDIATION SHOULD NOT FOCUS ON POLICY DISPUTES.**

4           Data remediation should be guided by reasonable interpretations of existing policies. In

5    April 2022, Defendants raised concerns that "[t]his process is increasingly becoming an overhaul

6    of long-established and court-approved policies and processes rather than a transparency check or

7    data validation project." ECF No. 7523, Ex. A at 14. Despite this Court's admonishment that "the

8    data remediation project should not be resolving policy disputes" (April 22, 2022, Tr. at 29:25-

9    30:1), many of the parties' disagreements relate to policy interpretation. To the extent that data

10   remediation involves the resolution of disputes concerning policy language, interpretation of

11   policy language, or CDCR's approach to operationalize a policy, deference should be given to

12   CDCR's reasonable interpretation of its own policies. Unless CDCR's policy interpretations

13   clearly exceed constitutional bounds, those interpretations are due deference. *See Lewis v. Casey*,

14   518 U.S. 343, 363 (1996); *see also* ECF no. 5711 (stating that "requiring specific remedial

15   measures would in a number of instances be redundant and, more importantly, would tip the

16   balance unacceptably toward micromanagement and substitute this court's judgment for that of

17   prison administrators.").

18          Thus, here, to the extent that CDCR proposes a reasonable reading of the HCDOM medical

19   hold policy in conjunction with Program Guide requirements governing CCCMS and EOP

20   transfer guidelines, the Court should approve it. Defendants are not requesting an exemption from

21   their remedial requirements—they are merely requesting that the Special Master score

22   compliance in a rational and fair manner that would not undermine or ignore other pre-existing

23   departmental policies that are for the benefit of patients.

24   **III.   THE SPECIAL MASTER'S RECOMMENDATION DOES NOT ALIGN WITH WELL-
            REASONED CLINICAL JUDGMENT.**
25

26          As explained above, before each transfer takes place, an R&R Nurse is required to review

27   contraindications to transfer, which are then discussed with the patient's care team. (Mehta Decl.)

28   ¶ 4.) The primary care physician may then initiate a hold, if necessary. (*Id.*) The patient is then

6

Defendants' Objections to the Special Master's Proposed Resolution of Data Remediation Dispute (2:90-cv-00520
KJM-DB (PC))

20069787.1

1   transferred when the primary care team and mental health together determine the optimal timing

2   and destination. (*Id.*) The transfer process, then, is a collaborative exercise wherein the patient's

3   care team evaluates whether a transfer would be in the patient's best interest and if so, how best to

4   effectuate that transfer. (*Id.*) The Special Master's recommendation disregards the clinical

5   judgement of the patient's care team to suspend the transfer due to medical necessity in favor of a

6   mechanistic check-the-box approach, which appears to implicitly endorse a transfer, even if

7   medical providers have determined that a transfer is not in the patient's best interest. (*See id.*

8   at ¶ 5.)

9   **IV.    THE SPECIAL MASTER'S RECOMMENDED DRILLDOWN IS TECHNICALLY
          INFEASIBLE.**

10

11      The Special Master recommends that Defendants modify the indicators to include drill

12  down information regarding *any* reasons for delayed transfers to CCCMS and EOP, including

13  medical holds. *See* Ex. A (Special Master's Proposed Resolution of Data Remediation Dispute on

14  AC7.1 and AC7.4), at 2. On an average, there are approximately 885 inter-institution transfers to

15  CCCMS and EOP on a monthly basis. It is not feasible or reasonable to collect data on the

16  specific reasons for late transfers on an automated basis from each institution after interviewing

17  the staff involved in a transfer because the potential universe of reasons for delayed transfers is

18  extensive. Defendants already track data on transfers that are delayed due to a medical hold or a

19  patient being out to court, and could include that information in the drilldown that shows when a

20  late transfer to CCCMS or EOP may involve those events. Accordingly, to the extent the Court

21  orders such information included in the drilldown, Defendants request that it only require

22  reporting on whether a medical hold or court appearance occurred during the transfer timeframe

23  for a late transfer.

24                                    **CONCLUSION**

25      The Court should reject the Special Master's Proposed Resolution of the data remediation

26  dispute on whether medical holds should count as suspending events for scoring compliance with

27  respect to the AC7.1 (Timely Transfer to EOP) and AC7.4 (Timely Transfer to CCCMS)

28  indicators. Here, CDCR is required to act in accordance with departmental policy and delay these

                                          7

Defendants' Objections to the Special Master's Proposed Resolution of Data Remediation Dispute (2:90-cv-00520
KJM-DB (PC))

20069787.1

transfers for the duration of a pending medical hold. This Court should not issue an order that disregards patient care teams' clinical judgment in favor of a mechanistic approach, which appears to implicitly endorse a transfer, even if it is not in the patient's best interests. Compliance should not be measured in a way that penalizes Defendants for adhering to a reasonable policy designed to ensure patient safety.

In addition, the recommendation's proposal to build a drilldown that includes *any* reasons for delayed transfers to EOP and CCCMS is technically infeasible. It is impossible for Defendants to capture data on every reason for a delayed transfer from all institutions, especially as this task cannot be automated. Accordingly, the Court should allow medical holds to count as suspending events while scoring compliance with AC7.1 and AC7.4, and allow Defendants to supplement these indicators with drilldowns that show data on whether a medical hold or a court appearance occurred in relation to a late transfer.

## CERTIFICATION

The undersigned certify that they have read the following orders in preparing these objections: ECF Nos. 5711, 6296, 8008, and 8010.

Dated: October 27, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
DAMON MCCLAIN
Supervising Deputy Attorney General

*/s/ Namrata Kotwani*
Namrata Kotwani
Deputy Attorney General
*Attorneys for Defendants*

Dated:  October 27, 2023

HANSON BRIDGETT LLP

*/s/ Samantha D. Wolff*
PAUL MELLO
SAMANTHA D. WOLFF
*Attorneys for Defendants*

8

Defendants' Objections to the Special Master's Proposed Resolution of Data Remediation Dispute (2:90-cv-00520 KJM-DB (PC))

20069787.1

# EXHIBIT A

**Special Master's Proposed Resolution[1] of Data Remediation Dispute: AC7.1 (Timely Transfer to EOP) and AC7.4 (Timely Transfer to CCCMS) – Suspending Events**

I.      Brief Statement of Dispute

These indicators measure Program Guide required timeframes for transfers to

Correctional Clinical Case Management System (3CMS or CCCMS) and Enhanced Outpatient

Program (EOP) settings.  *See* ECF No. 7333-1 at 19 (requiring transfers to 3CMS to occur

"[w]ithin 90 days of referral; 60 days of referral if clinically indicated" and transfers to EOP to

occur "[w]ithin 60 days of referral; 30 days of referral if clinically indicated").[2]  Defendants

added "medical holds" as "suspending events" in the documentation for these indicators.

Plaintiffs opposed the inclusion of medical holds as a suspending event for these transfer

timeframes.  During the BRMR process, the stakeholders agreed to defer further consideration of

this dispute until the Court had ruled on a similar dispute regarding AC6, which measures

Program Guide required timeframes for transfers to Short Term Restricted Housing (STRH) and

Long Term Restricted Housing (LTRH) settings.  That order was issued on October 11, 2023

(ECF No. 8010).

II.     Date Proposed Resolution was Delivered to the Parties

This proposed resolution was provided to the parties on October 18, 2023.

---

[1] This proposal is made in accordance with the Court's October 11, 2023 Order modifying the data remediation dispute resolution process.  ECF No. 8008 at 2 ("For any dispute that remains unresolved at the end of a two-week discussion period, the Special Master shall within seven days thereafter provide the parties with a proposed written resolution of the dispute, including a brief statement of reasons for the proposed resolution and the date on which the proposed resolution was delivered to the parties.").

[2] *See also id.* at 30-31 ("All EOP designated inmate-patients shall be transferred to a treatment setting within 60 days of level of care designation, or 30 days of such designation, if clinically indicated.  All CCCMS designated inmate-patients, with the exception of parole violators with 90 days or fewer to parole, shall be transferred to a mainline institution within 90 days of level of care designation or 60 days of such designation, if clinically indicated.").

1

III.     Special Master's Proposed Resolution

The Special Master proposes the following: the medical hold language should be

removed from the suspending events sections of the documentation for AC7.1 and AC7.4 and

transfers to 3CMS and EOP settings that exceed required timeframes should be scored as not

satisfying the relevant Program Guide requirement.  Concurrently, defendants should modify the

indicators to include drill down information regarding any reasons for delayed transfers to EOP

and 3CMS settings, including medical holds.

IV.     Brief Statement of Reasons for the Proposed Resolution

As noted, the stakeholders deferred further consideration of this dispute until the Court

resolved the medical hold-related dispute regarding AC6, which measures timeframes for

transfers to STRH and LTRH.

In its October 11, 2023 Order on the STRH/LTRH dispute, the Court compared the

language contained in the relevant STRH/LTRH memoranda to the court approved exceptions to

inpatient and MHCB transfer timeframes.  Unlike the court-approved exceptions to the inpatient

and MHCB transfer timeframes, the Court noted "[t]here are no exceptions to or suspensions of

the 30-day time frames set out in" the STRH/LTRH memos.  ECF No. 8010 at 8.  The Court

noted further:

> The Special Master's recommendation is grounded in the language of the Program
> Guide as well as an accurate distinction between court-approved exceptions to
> specific timelines versus departmental policy language acknowledging possible
> reasons for delay.  Adoption of the Special Master's recommendation will result in
> accurate reporting of whether class members placed in administrative segregation
> units are transferred to an STRH or an LTRH within thirty days and, if they are not,
> the duration of and explanation for the delay.  This accurate and detailed reporting,
> in turn, will provide a solid foundation for ultimate questions of compliance when
> those are before the court.

*Id.* at 10. [3]

Similar to the policies at issue in the STRH/LTRH medical hold dispute, there are "no exceptions to or suspensions of," *id.* at 8, the timeframes set forth in the Program Guide. *See supra* note 2. Accordingly, the Special Master proposes a resolution to this dispute that is congruent with the Court's October 11, 2023 Order that will ensure accurate and transparent reporting of data regarding 3CMS and EOP transfer timeframes, including information regarding delayed transfers due to medical holds.

---

[3] The Special Master recommended the following resolution of the STRH/LTRH transfer timeframe dispute:

- The medical hold exception in the existing indicator's documentation should be removed. All transfers to STRH and LTRH units that exceed 30 days should be scored as not satisfying the 30-day transfer business requirement.

- Concurrently, the indicator should include drill-down information including any explanation for delayed transfers, including medical holds.

ECF No. 7907 at 15.

3