| | |
|---|---|
| DONALD SPECTER – 083925 | MICHAEL W. BIEN – 096891 |
| STEVEN FAMA – 099641 | ERNEST GALVAN – 196065 |
| MARGOT MENDELSON – 268583 | LISA ELLS – 243657 |
| PRISON LAW OFFICE | JENNY S. YELIN – 273601 |
| 1917 Fifth Street | THOMAS NOLAN – 169692 |
| Berkeley, California 94710-1916 | MICHAEL S. NUNEZ – 280535 |
| Telephone: (510) 280-2621 | MARC J. SHINN-KRANTZ – 312968 |
| | ALEXANDER GOURSE – 321631 |
| CLAUDIA CENTER – 158255 | GINGER JACKSON-GLEICH – 324454 |
| DISABILITY RIGHTS EDUCATION | ADRIENNE PON HARROLD – 326640 |
| AND DEFENSE FUND, INC. | AMY XU – 330707 |
| Ed Roberts Campus | MAYA E. CAMPBELL – 345180 |
| 3075 Adeline Street, Suite 210 | ROSEN BIEN |
| Berkeley, California 94703-2578 | GALVAN & GRUNFELD LLP |
| Telephone: (510) 644-2555 | 101 Mission Street, Sixth Floor |
| | San Francisco, California 94105-1738 |
| | Telephone: (415) 433-6830 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTES (AC7.1 AND AC7.4 – TIMELY TRANSFER SUSPENDING EVENTS) (ECF NO. 8040)**<br><br>Judge: Hon. Kimberly J. Mueller |

[4383371.2]

## INTRODUCTION

The Special Master has recommended that medical hold language should be removed from the suspending events sections of the documentation for Defendants' indicators measuring the timeliness of transfers to EOP and CCCMS programs (AC7.1 and AC7.4, respectively), and that transfers exceeding the Program Guide-required timeframes should be scored as not compliant. The Court should adopt this recommendation over Defendants' objections, which largely ignore the Court's recent Order settling a nearly identical issue in the context of transfers to LTRH and STRH units.

## ARGUMENT

Less than one month ago, the Court overruled Defendants' objections to the Special Master's recommendation that all transfers to STRH and LTRH units that exceed 30 days be scored as non-compliant, and that the medical hold exception in that indicator's documentation be removed. Oct. 11, 2023 Order, ECF No. 8010.[1] The Court observed that "[t]he Special Master's recommendation [was] grounded in the language of the Program Guide as well as in an accurate distinction between court-approved exceptions to specific timelines versus departmental policy language acknowledging possible reasons for delay." *Id.* at 10. The Special Master's recommendation to resolve the parties' disputes about AC7.1 (Timely Transfers to EOP) and AC7.4 (Timely Transfers to CCCMS) is rooted in precisely the same analysis as his recommendation regarding the indicator about transfers to LTRH and STRH units that the Court approved—the Program Guide does not include any exceptions to or suspensions of the timeframes for transfer to EOP and CCCMS programs. Defendants' Objections to the Special Master's Proposed Resolution of Data Remediation Disputes (AC7.1 and AC7.4 – Timely Transfer Suspending Events) ("Defs' Obj."), Oct. 27, 2023, ECF No. 8040 at 12 (Special Master recommendation).

Defendants' objections to the Special Master's recommendation do not explain why

---

[1] The Order was signed on October 10, but docketed on October 11, 2023.

the analysis of the medical hold issue for the indicators related to Timely Transfers to EOP and CCCMS is different in any material way from the Court's well-reasoned assessment regarding the STRH/LTRH transfer timeline indicator. *See generally* Defs' Obj. In fact, Defendants only reference the Court's October 11 Order once in their 8-page brief, to argue erroneously that "departmental policy concerning medical holds and Program Guide requirements regarding transfer timelines can be read harmoniously even though there are no explicit pre-existing Court-approved exceptions to these transfer timelines." *Id.* at 2. This is a misrepresentation of the Court's Order. The Court held that where there are not clear exceptions to transfer timelines in the Program Guide itself or elsewhere adopted by the Court, transfers that are not completed within the Program Guide timeframe must be reported as such, notwithstanding other departmental policies. ECF No. 8010 at 8.

The Court should overrule Defendants' objections on that basis alone. But there are additional grounds to reject Defendants' position and approve the Special Master's recommended resolution of this dispute. The Court has made very clear that the purpose of the data remediation process is "to properly measure the core requirements of the Program Guide and the Compendium" so "the court will ultimately be able to rely on the defendants' data to assess whether and when they have come into compliance with the Eighth Amendment." Order, May 24, 2023, ECF No. 7847 at 6, 9. Defendants' argument that "[t]he aim of data remediation is to ensure that key indicators should accurately measure Defendants' compliance with *CDCR policy*," Defs' Obj. at 2 (emphasis added), and that therefore Defendants' indicators can circumvent Program Guide requirements as long as another departmental policy allows it, flies in the face of the Court's unambiguous statements to the contrary. *See also id.* at 3 (asserting "the Special Master's recommendation does not accurately reflect the underlying business rule because it ignores policy that requires suspension of transfers while a medical hold is in place.").

Defendants assert that the purported conflict between the Program Guide's requirements for transfers to EOP and CCCMS programs and the HCDOM's medical hold provisions "presents Defendants with an unnecessary Catch-22." Defs' Obj. at 5.

Defendants entirely ignore that Plaintiffs have repeatedly offered over the course of the year to negotiate a policy change to amend Program Guide transfer requirements to include a narrow medical hold exception and present the proposed change to the Court, as the parties did in the context of MHCB and PIP transfers. *See* Decl. of Cara Trapani in Support of Plaintiffs' Response to Defs' Objections to Special Master's Report and Recommendations Regarding Third-Level Data Remediation Disputes, May 1, 2023, ECF No. 7825 at ¶ 8 ("I and other members of Plaintiffs' counsel have repeatedly proposed, including during the Level I dispute meetings and the April 27, 2023 meeting, that the parties negotiate [medical hold exceptions]…Defendants have consistently rejected this proposal, including on April 27, when Dr. Cartwright stated again that CDCR did not wish to negotiate such a policy"); *see also* ECF Nos. 5744, 5750, 6261, 6295. If the Court were to approve such a modification to the Program Guide transfer requirements, Defendants would be released entirely from the alleged Catch-22.

Plaintiffs reached out to Defendants again on October 31, 2023, offering to meet and confer with Defendants "to develop a mutually-agreeable medical hold exception to the EOP and CCCMS transfer timelines." Declaration of Jenny S. Yelin in Support of Plaintiffs' Response to Defs' Objections to the Special Master's Proposed Resolution of Data Remediation Disputes (AC7.1 and AC7.4 – Timely Transfer Suspending Events) ("Yelin Decl."), filed herewith, at ¶ 2, Ex. A. Defendants' counsel responded on November 1, noting that in December 2022, Defendants had proposed as a potential resolution to the parallel dispute regarding LTRH/STRH transfers to "issue a policy memorandum to RHU clinicians[2] memorializing the expectation that they work collaboratively with local medical staff when medical holds prevent transfers." *Id.* Plaintiffs' counsel rejected that proposal in December 2022 because it would not actually

---

[2] Since the segregation units formerly known as ASU, SHU, LTRH, and STRH are now referred to as RHU units as of November 1, 2023, Defendants' counsel's email refers to the "CCCMS RHU transfer process" and "RHU clinicians" even though at the time of the December 2022 proposal, the former terminology was in effect.

resolve the purported conflict between the Program Guide and operational policy, as it would not modify the Program Guide requirements. For the same reasons, Plaintiffs responded to Defendants' email on November 2, 2023, explaining that Plaintiffs were proposing a "medical hold exception modeled very closely on the court-adopted exceptions used in the MHCB and PIP transfer contexts (with appropriate edits to the language to make it applicable to this context). . .[, which] would need to be submitted to the Court for adoption, and would modify the existing PG provisions regarding transfers to CCCMS and EOP programs." *Id.* After a further e-mail exchange, Defendants refused to commit to such an approach. *Id.* Defendants' Catch-22 is entirely of their own making, and their suggestion that a memorandum operating entirely outside of the Program Guide could justify suspending the transfer clock for up to six months while a medical hold is in place is a *sua sponte* circumvention of the Court-approved remedy and an affront to the Court's orders.

Finally, despite submitting two briefs regarding the nearly identical dispute in the LTRH/STRH transfer context, *see* ECF Nos. 7805 and 7939, Defendants for the first time state that they already have a practice of multi-disciplinary treatment teams—including mental health members—evaluating the appropriateness of medical-based transfer restrictions, and cite to HCDOM Section 3.1.9(c)(3)(G)(3). Defs' Obj. at 4-7; Mehta Decl., ECF No. 8040-1 at ¶¶ 4-5. That section only requires that patients on a medical hold remain at the current facility until their primary care teams "collaborate with mental health to determine the patients' most appropriate location and transfer." HCDOM Section 3.1.9(c)(3)(G)(3). It does not require medical practitioners to consider the input of mental health clinicians when making decisions about the appropriateness of a medical hold or its duration when a patient requires a higher level of mental health care, or for the treating clinicians to balance the individual's medical and mental health needs, as do the Court-ordered exceptions in the inpatient and MHCB transfer contexts. Nor does it require CDCR to provide mental health treatment at the appropriate new levels of care, which patients' own clinicians have identified as necessary, while the patients wait transfer for up

to six months due to the medical hold. Regardless, the "collaborat[ion]" process described in the HCDOM section is neither part of the Program Guide nor a requirement Defendants propose to monitor in their data system or CQIT. *See generally* Defs' Obj. It does not justify a departure from the clear timelines for transfer to CCCMS and EOP required by the Program Guide for necessary mental health care.

## CONCLUSION

The Court should overrule Defendants' objections and approve the Special Master's recommendation to remove medical holds as suspending events in the indicators measuring timely transfers to CCCMS (AC7.4) and EOP (AC7.1) programs.

## CERTIFICATION

Plaintiffs' counsel certifies that she reviewed the following Orders relevant to this filing: ECF Nos. 8010, 8008, 7847, 6295, and 5750.

DATED: November 3, 2023          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Jenny S. Yelin*
    Jenny S. Yelin

Attorneys for Plaintiffs