DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
AMY XU – 330707
MAYA E. CAMPBELL – 345180
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al., <br><br> Defendants. | CASE NO. 2:90-CV-00520-KJM-DB <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTES (AC5 – CONFIDENTIAL TREATMENT) (ECF NO. 8036)** <br><br> Judge: Hon. Kimberly J. Mueller |

[4383352.2]

## INTRODUCTION

The Special Master has recommended that Defendants be required to track and report—as part of their indicator regarding structured treatment (AC5)—whether groups led by primary clinicians or psychiatrists offered to EOP patients were conducted in confidential settings. The Special Master's proposed resolution would not require the scoring of the indicator to be adjusted, but requires Defendants to report in a drill down, including a summary statistic, the percentage of EOP groups conducted in confidential settings. The Court should adopt this approach, even though it does not provide the full relief Plaintiffs requested. The Special Master's proposal is supported by the Program Guide, consistent with the monitoring practices of the Special Master, and in the best interests of patients. Defendants' arguments to the contrary are unavailing for the reasons discussed below.

## I.   DISPUTE BACKGROUND

The AC5 indicator measures, *inter alia*, the structured treatment offered to Enhanced Outpatient Program (EOP) patients.[1] The instant dispute focuses on whether Defendants should be required to track—in a drill down with a summary statistic—if EOP groups led by a primary clinician or psychiatrist ("clinician-led groups") were conducted in confidential settings. Plaintiffs agree with the Special Master, who recommends that Defendants should be required to report this information separately from the scoring of AC5. Defendants oppose the recommendation.

## II.   DISCUSSION

Defendants first contend that the Program Guide—because it does not expressly mention confidentiality in the context of the structured treatment required for EOP

---

[1] Groups offered to CCCMS patients in the STRH and LTRH unit are also measured in AC5, but, as Defendants concede, all such groups are explicitly required by the Program Guide to be confidential. *See* ECF No. 8036 at 3; *see also* ECF No. 7333-1 at 444, 452-53. This dispute, and the Special Master's recommendation,, are specific to the measurement and reporting of EOP groups in AC5.

[4383352.2]

1

PLTFFS' RESP. TO DEFS' OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTES (AC5 – CONFIDENTIAL TREATMENT) (ECF NO. 8036)

patients—does not require Defendants to track whether clinician-led groups were conducted confidentially. *See* ECF No. 8036 at 3–4. However, there is no question that the Program Guide contemplates the importance of confidentiality as a critical tenet of mental health treatment. *See, e.g.*, ECF No. 7333-1 at 24 (noting that confidentiality "encourage[s] full disclosure and open, candid responses" from patients); *id.* at 206 (explaining that a communication between a patient and a clinician during the course of treatment "is considered confidential if the [patient] does not intend it to be disclosed to third persons"). Defendants concede, as they must, that this is the case. *See* ECF No. 8036 at 24 ("CDCR acknowledges the importance of confidentiality").

      Confidentiality in group treatment for EOP patients is critically important because the Program Guide allows group treatment to serve as the required weekly primary clinician contact every other week. *See* ECF No. 7333-1 at 59. In the context of individual clinician contacts, there is no dispute that confidentiality is required. *See* ECF No. 8036 at 11. Further, the Program Guide contemplates that a varied slate of structured therapeutic activities will be offered to class members, including group therapy and psycho-educational groups led by qualified clinicians focusing on highly sensitive issues including symptom management, family issues, specific mental health issues such as depression, anger management and offense-specific therapy. *See* 2021 Program Guide, ECF No. 7333-1 at 60–62. And as the Special Master notes, clinician-led groups, as opposed to groups led by Recreation Therapists, "tend to address sensitive, personal topics." ECF No. 8036 at 10 n.3.

      Defendants' approach would eviscerate any way to know whether CDCR was providing *any* hours of confidential structured therapeutic activity to each and every class member, because the system would simply not track that information. That position is contrary to the clear intent of the Program Guide and this Court's orders. The Special Master's suggestion will have no bearing on the scoring of AC5 for EOP patients; the provision of information about confidentiality will merely help all stakeholders and the Court understand the treatment that is being provided to patients. As the Court has

[4383352.2]

2

PLTFFS' RESP. TO DEFS' OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTES (AC5 – CONFIDENTIAL TREATMENT) (ECF NO. 8036)

ordered: "[T]he process of data remediation is fundamentally to equip defendants to accurately and transparently report data to replicate the substance of Special Master's monitoring." ECF No. 7954 at 2. The ability to accurately and transparently report data is precisely what the Special Master's proposal will achieve in this context.

Next, Defendants wrongly assert that the Special Master does not monitor the confidentiality of clinician-led groups. *See* ECF No. 8036 at 4–5. As the Special Master's proposed resolution and the history of this dispute make clear: "the Special Master regularly monitors and reports on confidentiality of treatment space, including group treatment space, during his monitoring rounds." ECF No. 8036 at 10. In order to do so, "the Special Master observes IDTTs and group treatment sessions while on site, noting any concerns about lack of confidentiality . . . ." *Id.* Those observations are then discussed in detail as part of the Special Master's formal monitoring reports. *Id.* at 10–11 (collecting examples). Accordingly, Defendants must, in order to "transparently report data to replicate the substance of [the] Special Master's monitoring" (ECF No. 7954 at 2), be required to track the confidentiality of clinician-led groups.

Defendants contend that AC13 (Group Treatment in a Confidential Setting) and FEC1 (Adequate Group Treatment Spaces) adequately report on confidentiality. *See* ECF No. 8036 at 4–5. This contention is also mistaken. AC13 measures the total number and percentage of all completed mental health group appointments across the entire system that were confidential. However, it is distinct from what the Special Master proposes here in important ways. AC13 does not allow for any insights into whether individual patients are being offered confidential treatment; instead, it measures the confidentiality of all group treatment appointments as a percentage of total group treatment appointments in the aggregate. AC13 also excludes all yard groups precisely because they are rarely conducted confidentially. As such, AC13 both fails to capture the provision of confidential groups at the patient level (as opposed to system level), and it excludes from its calculation an entire category of non-confidential groups. Thus, it does not reflect the true picture of confidential groups overall—and indeed, it will necessarily report a greater percentage of

[4383352.2]

3

confidential groups than are truly occurring. FEC1, for its part, reports on the percentage of group treatment *areas* that have confidential treatment spaces; it does not reveal anything about whether patients are actually offered treatment in a confidential space. The Special Master's proposed addition to AC5 would not overlap with AC13 or FEC1, but would provide insight into a separate but equally critical issue—how often individual patients' clinician-led group treatment is conducted confidentially. The use of all three of these indicators together will enable Defendants to monitor treatment as the Special Master does.

Finally, Defendants contend that even if CDCR "were to implement the Special Master's proposed resolution, technical limitations would result in the compilation of incomplete data." ECF No. 8036 at 2. Fundamentally, however, Defendants must resolve these alleged limitations in order to measure whether STRH and LTRH groups are confidential, which are also part of this indicator and which they agree the Program Guide explicitly requires to be confidential. *See* ECF No. 8036 at 3; *see also* ECF No. 7333-1 at 444, 452–53. They therefore cannot use these purported technical difficulties as an excuse here—particularly because the requested information does not affect scoring of AC5 in any way.

Nor do the specifics of Defendants' claims provide a basis to reject the Special Master's recommendation. Defendants claim first that "EHRS cannot track the classification of a staff member for groups that patients refuse to attend," which they assert will result in an undercounting. *See* ECF No. 8036 at 5. This is a red herring. While Defendants may not track this information *in EHRS*, they do not—and cannot—dispute that they track in their underlying database each of the necessary elements to report the required information—what group was offered to the patient, whether that group was confidential, and which classification of staff member conducted the group. Even if the patient in question refused to attend the offered group, Defendants nonetheless track the other two pieces of data for that group—indeed, they must, in order to report it for the patients who did attend. That information exists in Defendants' data warehouse, and

Defendants have presented no evidence that it would be difficult or burdensome, much less impossible, to pull the necessary pieces of data to allow for reporting that will conform to the Special Master's existing monitoring practices—particularly given the availability of the Special Master's data expert to provide any necessary technical assistance.

Second, Defendants claim, without substantiation, that different staff members "*may*" check patients in and out of groups than the staff person conducting the group. *See* ECF No. 8036 at 5 (emphasis added). This, however, is contrary to Defendants' established workflow, and is a problem best addressed through training. Indeed, from Defendants' recitation, it appears to be a rare, largely hypothetical concern. *See* ECF No. 8036 at 25 (Defendants' Level 2 position statement claiming: "This [problem] *could* occur if a supervisor checks patients in and out while a line staff member, *maybe* a new recreational therapist or nurse, facilitates the group." (emphasis added)). Defendants do not even insinuate that this is a large enough problem to meaningfully affect accuracy, and the stakeholders have routinely addressed known limitations of this sort by noting them transparently in the indicator documentation.

Finally, Defendants identify a data bug, for which they have already identified mitigation strategies and are working to identify a long-term fix. *See* ECF No. 8036 at 5 & n.3. Of course, this bug affects numerous indicators—including AC13, which Defendants urge this Court to rely on instead of adopting the Special Master's recommendation here—and will need to be addressed regardless of the outcome of this dispute. It is not a legitimate reason to reject the recommendation.

Defendants propose the creation of a separate report—independent of AC5—that would "provide[] data regarding whether completed mental health group appointments were documented as confidential or not, and what classification led those groups." ECF No. 8036 at 6. This proposal is insufficient to capture what the Special Master puts forth in this proposed resolution for two reasons. First, by measuring the confidentiality of *completed*, rather than *offered* groups, Defendants fail to measure what the Program Guide requires, which is the *offering* of group treatment. Second, Defendants' proposed

[4383352.2]

5

PLTFFS' RESP. TO DEFS' OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTES (AC5 – CONFIDENTIAL TREATMENT) (ECF NO. 8036)

approach will inevitably report a larger percentage of confidential groups than would the Special Master's recommendation.  That is because patients are more likely to attend confidential groups, and to refuse nonconfidential ones, as the Special Master has reported. *See, e.g.*, ECF No. 7074 at 497 ("During interviews several EOP inmates reported that one of the reasons they refused to attend group treatment was because it was held in the dayroom.")  To the extent the Court is inclined to order a separate report, rather than a summary statistic, Plaintiffs request that the report go through the data remediation process.

## CONCLUSION

For the reasons outlined above, Defendants should be required to track whether clinician-led groups were conducted in confidential settings and report (in a drill down, including a summary statistic) the percentage of groups so documented.  Plaintiffs agree with the Special Master's recommendation that this information not be considered in scoring AC5.

## CERTIFICATION

Plaintiffs' counsel certifies that she reviewed the following Orders relevant to this filing: 7216, 7847, 7954, 8008, 8028.

DATED:  November 3, 2023            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Ginger Jackson-Gleich*
       Ginger Jackson-Gleich

Attorneys for Plaintiffs

[4383352.2]