DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
AMY XU – 330707
MAYA E. CAMPBELL – 345180
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>   v.<br><br>GAVIN NEWSOM, et al.,<br><br>  Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS RE SPECIAL MASTER'S TIMELY COMPLIANCE METHODOLOGY REPORT AND RECOMMENDATION**<br><br>Judge:  Hon. Kimberly J. Mueller |

[4388574.3]

# INTRODUCTION

On September 21, 2023, the Special Master filed a Report and Recommendations Regarding Third Level Data Remediation Dispute Regarding Timely Compliance Methodology ("Report" or "TCM Report"), in which he addressed, *inter alia*, the parties' dispute regarding whether, for 25 provisionally approved key indicators, Defendants should be required to report on "how many individual members of the *Coleman* class timely received the particular treatment service required by the Program Guide and its expression of minimally adequate mental health treatment" (the "patient-wise methodology" or the "Special Master's methodology") in addition to their preferred methodology, which "tend[s] to lump together the number of times they completed a certain task in a timely manner" (the "opportunity-based/LDD methodology" or "Defendants' methodology"). ECF No. 7954 at 3; *see also* ECF No. 8033 (Special Master errata correcting number of indicators affected by dispute to 25 instead of 26). The Special Master's extremely thorough and well-substantiated Report ultimately recommends:

- Defendants provide data and summary statistics in accordance with the patient-wise approach –inclusive of flexible scoring – for 2[5] of the provisionally approved key indicators *in addition* to CDCR's preferred methodology (not instead of it); and

- The patient-wise data be placed in context by use of a degree of impact statistic showing extent of non-compliance.

ECF No. 7954 at 35. Defendants filed objections on October 23, 2023 ("Objections"). ECF No. 8025. At Plaintiffs' request, this Court granted leave to respond to Defendants' objections by November 9, 2023. ECF No. 8049.

## I. STANDARD OF REVIEW

The Special Master's September 21, 2023 Report includes findings regarding the data remediation process and his monitoring to support his recommendation regarding the outcome of the TCM dispute now before the Court, and is therefore a compliance report within the meaning of the Order of Reference. *Cf.* Mar. 27, 2020 Order, ECF No. 6539 at 3; Order of Reference, ECF No. 640 at 4. The Order of Reference provides that "the court shall accept the special master's findings of fact unless they are clearly erroneous." *Id.* at

8.  A finding is "clearly erroneous if, on review of the entire evidence, the reviewing court arrives at the firm conviction that the finding is mistaken." *In re U.S.A. Motel Corp.*, 450 F.2d 499, 503 (9th Cir. 1971); *see also McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) ("To be clearly erroneous, a decision must strike the court as more than just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." (internal citations and quotation marks omitted)).  The objecting party has the burden of proving clear error.  *See Oil, Chemical & Atomic Workers Int'l Union v. N.L.R.B.*, 547 F.2d 575, 580 (D.C. Cir. 1976).

Moreover, this Court has held that the provisionally approved key indicators should "replicate[] the corresponding information captured by the Special Master in his monitoring reports," and that "any disputes over [his] decisions will be reversed by the court only if the decisions are clearly erroneous."  *See* May 24, 2023 Order, ECF No. 7847 at 8-9.

## II.   THE SPECIAL MASTER'S FINDINGS ARE NOT CLEARLY ERRONEOUS AND HIS RECOMMENDATIONS ARE FULLY SUPPORTED

The Special Master's TCM Report thoroughly and clearly explains the basis for his recommendations, including anticipating and addressing most of Defendants' objections, and is not predicated on clearly erroneous findings.  His recommendations are well-taken and Plaintiffs fully support them, as they properly reflect the focus of both the Eighth Amendment and the Program Guide on class members' experiences.  *See, e.g.*, *Coleman v. Wilson*, 912 F. Supp. 1282, 1296 (E.D. Cal. 1995) ("[T]he Eighth Amendment requires the state to provide *inmates* with access to adequate mental health care." (emphasis added)); *see generally* 2021 Program Guide, ECF No. 7333-1 (mentioning the word "patient" more than 2,000 times and setting forth countless patient-centered requirements, such as that "[e]ach inmate-patient shall be offered at least ten hours per week of scheduled structured therapeutic activities as approved by the IDTT").  Adoption of his recommendations is also consistent with the Order of Reference, which allows the Special Master to access available data in any form he requires to conduct his monitoring—and there is no dispute

1 that the data necessary for patient-wise measurement is available. *See* Order of Reference, ECF No. 640 at 4. Plaintiffs' response to Defendants' Objections therefore focuses only on aspects of the Objections that misstate the record or that otherwise require further clarification.

First, Defendants' attempts to cast the Special Master's recommendations as unstable or constantly changing misrepresent the record. *See* Objections at 6-8. The Special Master and his team, and in particular his data expert, have spent countless hours listening to Defendants' insistent claims that their preferred methodology is the only correct one, while addressing Defendants' criticisms about the patient-wise methodology and indeed repeatedly refining that that methodology in an attempt to assuage Defendants' concerns. *Cf.* Report at 14-15. The Special Master's expert has provided detailed demonstrations and multiple examples to help the parties better understand the methodology. The Special Master's recommended methodology is extremely sophisticated and allows for both flexibility in scoring and an ability to capture, in cases of non-compliance, how off the mark Defendants are. And he is not seeking to force Defendants to abandon the methodology they represent is best for their own internal quality assurance purposes, even though it has clear limitations and problems. *See, e.g.*, Report at 22. Yet no amount of listening, explaining, or negotiating on the part of the Special Master has affected Defendants' outright insistence on their own preferred methodology, even while refusing to provide the information the Special Master needs to best do his job. Defendants request that this Court force the Special Master to report compliance in the way they like best, against his better judgment and the advice of the only data expert involved in this process. Particularly in light of the Court's findings regarding Defendants' intentional presentation of false and misleading compliance data that gave rise to this process, Defendants' position is galling.

Defendants also appear to question the good faith of the Special Master's determination that the patient-wise methodology best aligns "his historic focus on the individual people in the *Coleman* class with his need to report global performance

[4388574.3]

4

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS RE SPECIAL MASTER'S TIMELY COMPLIANCE METHODOLOGY REPORT AND RECOMMENDATION

statistics" (Report at 3), asserting that the patient-wise methodology "seem[s] specifically designed to hide relevant information." Objections at 2. This claim is utterly baseless, and Defendants do not attempt to substantiate it. The Special Master's methodology utilizes the same data as Defendants' proposed methodology and presents it with a different summary statistic. *See* Report at 13 n.17. Defendants acknowledge that presenting multiple summary statistics can be appropriate, and do not dispute the Special Master's expert's representation that doing so is standard in the industry. *See* Report at 6-7, 20.

      Defendants rely on the declaration of Dr. Cartwright, head of CDCR's data remediation team, for the proposition that "the underpinnings of the Special Master's methodologies have not been recognized as a generally accepted method in academic research or industry standards in measuring compliance." Objections at 9 (citing ECF No. 8025-1 ¶ 20). Dr. Cartwright provides no further explanation or indeed any articulated basis for his strident opinion, and it is unclear how he could opine on this issue so definitively given his background and training as a psychologist with no identified academic or industry experience in data science outside of his recent work on the data remediation project at CDCR. The Special Master's data expert, meanwhile, was hired – with both parties' consent – precisely because of his deep knowledge in this area, spanning both academia and multiple industries. *See* Jan. 7, 2020 Order, ECF No. 6441 at 4; *see also* Apr. 29, 2020 Order, ECF No. 6646 at 1 (granting Special Master's request to appoint Daniel F. Potter, Ph.D., CAIA, as his data expert); ECF No. 6604 at 7-10 (Potter curriculum vitae). Defendants cannot substantiate their insinuation that Dr. Potter made up the patient-wise methodology out of whole cloth or their multitudinous accusations that it is unsound, infeasible, unreliable, unworkable, "half-baked" and lacks integrity (*see, e.g.*, Objections at 7-8, 10, 16, 17), and their accusations certainly do not rise to the level of establishing clear error.

      Defendants repeated assertion that the patient-wise methodology cannot be trusted because it is "untested" (*see* Objections at 11, 20, 21) similarly ignores the fact that both Defendants' and the Special Master's methodologies represent a departure from CDCR's

[4388574.3]
5

1   current compliance reporting methodology.  Even Defendants are not defending their
2   current use of the "patient-weeks" methodology, uncovered during the Golding proceed-
3   ings, that the Special Master correctly deems "highly problematic."   Report at 29-30.  As
4   such, Defendants' new proposed methodology is equally untested.  And, assuming the
5   Court adopts the Special Master's recommendations, both methodologies will be thor-
6   oughly tested via the same robust data validation and verification process all of the remedi-
7   ated data is currently undergoing to ensure reliability and transparency of Defendants'
8   compliance reporting.  Similarly, Defendants' claims of confusion about how exactly the
9   patient-weeks methodology will be operationalized can and should be worked out during
10  the normal documentation development and stakeholder review process, as they have been
11  for all of the other indicators subject to the data remediation process.  *See* Objections at 11-
12  16.  The fact that the Special Master's methodology is, like Defendants', untested at this
13  stage is not a foundational deficiency; it is a normal part of the process.
14          Moreover, Defendants' claim that developing patient-wise data alongside their
15  preferred summary statistic will be burdensome directly contradicts their representation to
16  the Special Master during the dispute resolution process.  *See* Objections at 18.
17  Defendants specifically informed the Special Master that "CDCR is able to build a
18  methodology that includes multiple high-level summary statistics," and that doing so
19  presents "no workload issue."  ECF No. 7954-1 at 2 n.2 (Defendants' Level 2 dispute
20  statement).  The Special Master's data expert substantiated Defendants' representations,
21  and indeed demonstrated to them "a technical approach to remediating data for these
22  measures using both methods that was not overly time-consuming or resource intensive
23  and that would have little to no impact on the data remediation timeline."  Report at 5.
24  Nor is Defendants' suggestion reasonable that the Special Master ought to monitor patient-
25  level care through examining data in existing On Demand reports, which CDCR does not
26  intend to remediate, or by pouring over individual patient records for a class of 33,000
27  when Defendants admit they can provide remediated, patient-level data at a systemic level
28  without significant additional workload.  *See* Objections at 10.  Given Defendants'

objections directly contradict both their own prior statements and the Special Master's findings, they cannot possibly claim clear error.

Next, Defendants' repeated complaints that various aspects of the Special Master's methodology, including the degree of impact statistic and the flexible scoring approach, have not been fully defined puts the cart before the horse for two reasons. First, Defendants made abundantly clear during the lengthy discussions during stakeholder review and dispute resolution that they were not open to any type of patient-wise metric, even as the Special Master's data expert repeatedly refined the methodology to address their stated concerns. Further item-by-item definition would have been a pointless waste of resources giving rise to unnecessary disputes. If and when the Court adopts the Special Master's recommendations, that work can and should begin, to the extent it is within the purview of the data remediation process.

Second, to that end, the Court has made clear that it has reserved the task of setting compliance thresholds for itself. The Special Master's recommendations respect that. *See* Report at 13 ("Importantly, the Special Master's proposed compromise preserves the Court's ability to make future determinations about compliance thresholds with a comprehensive, patient-centered view of defendants' remedial compliance"); *see also* July 1, 2021 Order, ECF No. 7216 at 4 ("The degree of compliance for each indicator remains for the court to determine by subsequent order…."). Defendants' claims that they cannot implement the Special Master's methodology without knowing the precise thresholds and parameters of the ultimate summary statistic are unavailing and ignore this Court's orders.

Finally, Defendants' requests for alternative relief are unwarranted. *See* Objections at 22. Their request that the Court order the Special Master to file a report defining precisely how the patient-wise methodology would be applied to each affected indicator, subject to formal objections, is a brazen attempt to circumvent the stakeholder review process, and will almost certainly lead to unnecessary litigation. It also appears to ask the Special Master to set compliance thresholds in direct contravention of the Court's orders. Similarly, their request that the Court order the Special Master to report their preferred

summary statistics in addition to those reflecting the methodology he has determined best mirrors his monitoring and reflects compliance with the remedial orders in this case should be rejected. It amounts to an attempt to force words into the Special Master's mouth. Defendants are remediating the data using the methodology they prefer. They are free to present and explain that data in litigation, where it will be subject to appropriate scrutiny without forcing the Special Master to unwillingly give his imprimatur.

## CONCLUSION

The Special Master's Report more than substantiates his recommendations that Defendants be required to develop the ability to report on the 25 indicators at issue using the patient-wise methodology, in addition to their own. Defendants have identified no clear error or well-founded basis for rejecting the recommendations. The Court should adopt them forthwith so the parties can continue their progress in remediating the provisionally approved key indicators promptly.

## CERTIFICATION

Plaintiffs' counsel certifies that she reviewed the following orders in preparing this filing: ECF Nos. 640, 7847, 6539, 6996, 7954, 6441, 6646, 7216.

DATED: November 9, 2023    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Lisa Ells*
    Lisa Ells

Attorneys for Plaintiffs

[4388574.3]

8

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS RE SPECIAL MASTER'S TIMELY COMPLIANCE METHODOLOGY REPORT AND RECOMMENDATION