| | |
|---|---|
| Rob Bonta, State Bar No. 202668<br>Attorney General of California<br>Monica N. Anderson, State Bar No. 182970<br>Senior Assistant Attorney General<br>Damon McClain, State Bar No. 209508<br>Supervising Deputy Attorney General<br>Elise Owens Thorn, State Bar No. 145931<br>Namrata Kotwani, State Bar No. 308741<br>Deputy Attorneys General<br>1300 I Street, Suite 125<br>P.O. Box 944255<br>Sacramento, CA 94244-2550<br>Telephone: (916) 210-7318<br>Fax: (916) 324-5205<br>E-mail: Elise.Thorn@doj.ca.gov<br>*Attorneys for Defendants* | Hanson Bridgett LLP<br>PAUL B. MELLO, SBN 179755<br>SAMANTHA D. WOLFF, SBN 240280<br>KAYLEN KADOTANI, SBN 294114<br>LAUREL O'CONNOR, SBN 305478<br>DAVID C. CASARRUBIAS, SBN 321994<br>CARSON R. NIELLO, SBN 329970<br>1676 N. California Boulevard, Suite 620<br>Walnut Creek, CA 94596<br>Telephone: (925) 746-8460<br>Fax: (925) 746-8490<br>E-mail: PMello@hansonbridgett.com<br>*Attorneys for Defendants* |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S OCTOBER 13, 2023 DATA REMEDIATION STATUS REPORT (ECF NO. 8011)** |

**INTRODUCTION**

The Special Master's October 13, 2023 status report on data remediation ("Report") provides his overview of the work done to achieve data remediation as of September 2023. (ECF No. 8011.) But the status report omits the full history of data remediation and the complete picture of the outstanding work that remains to be done given the significant changes in the scope of data remediation since 2021. The Report ignores information that is central to the Special Master's recommendation that the Court should not extend the December 31, 2023 deadline for completion of data remediation and the recommendation that all other data be remediated by March 31, 2024. (*Id.* at 8-9.) Defendants object to the Special Master's recommendations as they

1

Defs.' Obj. to 10/13/23 Status Report on Data Remediation (2:90-cv-00520 KJM-DB (PC))

20072732.1

are not based in fact. Instead, Defendants request that the Court review the progress made in the data remediation process, as discussed further below, and allow the process to proceed at its current rate. Defendants also request that the Court allow Defendants to file Data Activation Schedules with updates on the process every ninety days.

### I. THE SPECIAL MASTER'S RECOMMENDATIONS REGARDING COMPLETION OF DATA REMEDIATION ARE CLEARLY ERRONEOUS

Since the inception of the data remediation project, the number of key indicators has nearly doubled—from 148 to 264—and most of those contingencies CDCR warned of in 2021 have occurred. In addition, nearly all steps of the process are taking longer than anticipated, resulting in a shift of the basic assumptions underlying the December 2023 estimated completion date, rendering that deadline unrealistic. The Special Master's recommendation that the stakeholders "should continue to work toward a December 31, 2023 goal for completing the remedial work" of the provisionally approved indicators and for a "three-month extension of time, until March 31, 2024, to complete remediation of all indicators" does not account for deviations from the facts and assumptions underlying the original December 2023 estimated goal. As such, the recommendations are clearly erroneous.

### II. THE DATA REMEDIATION PROJECT HAS BEEN IMPACTED BY THE PREVIOUSLY-IDENTIFIED CONTINGENCIES REQUIRING AN EXTENSION OF THE DEADLINE.

Defendants' 2021 preliminary activation schedule was based on Defendants' then-understanding of the scope of data remediation. (ECF No. 7334 at 3.) The preliminary activation schedule's timeline was limited to the completion of 148 key indicators, "which include 497 subcomponents." (*Id.* at 7.) Defendants expressly stated that the estimated completion date of December 2023 was based on the multistep "process for data remediation, known contingencies that may slow down the process, and the estimated time and volume of work." (*Id.* at 8.) All three of those factors have changed since Defendants estimated that data remediation would be completed by December 31, 2023.

In fact, delays in the remediation process became apparent shortly after filing the September 2021 preliminary activation schedule. In their January 7, 2022 update (ECF No.

2

Defs.' Obj. to 10/13/23 Status Report on Data Remediation (2:90-cv-00520 KJM-DB (PC))

20072732.1

7415), Defendants identified three new sources of delay that, if not mitigated, could result in a delay of completion until mid-2025, if not later. (*Id*. at 7.) The January 2022 activation schedule also noted other possible contingencies that could further impact the completion date. (*Id*. at 11-20.)

In April 2022, Defendants again identified further delays in the process, namely a new stakeholder review process, the need to collect live data, the identification of nine new glossary and data elements, prolonged stakeholder review meetings, and the expanding scope of remediation, all of which posed a "significant risk" to meeting the December 31, 2023 goal. (ECF No. 7523-1 at 3-4.) Defendants flagged that these contingencies could further delay completion of the overall project. In fact, nearly every contingency listed in CDCR's September 2021 activation schedule has occurred. (Worrell Decl. ¶ 4.) These include updates to the CQI Guidebook and other audits, receiving an ill-defined list of initial indicators, major disagreements—some of which involve dispute resolution, the need for policy creation or revision, a then-untested verification process that eventually required revision, revisions to the indicator documentation components, the onboarding of new staff, sporadic delays in meetings, disruptions to continuous flow, never achieving the full speed envisioned by the data activation schedule, gaps or delays in stakeholder feedback, extensive exploratory data analysis requests, internal disagreements, minor disagreements between stakeholders, and unusual or unexpected issues discovered during programming of indicators. (*Id*.; *see also* ECF No. 7334 at 11-14 (identifying these as possible contingencies).) Each of the above occurrences delayed the completion of the data remediation process and are not accounted for in the Special Master's recommendations.

> A. **The Number of Indicators Reviewed in the Data Remediation Process Has Significantly Expanded Since Defendants' 2021 Activation Schedule, Requiring an Extension of the Deadline.**

At the same time these contingencies occurred, the project also underwent unprecedented expansion. As of this filing, the project has grown from 148 key performance indicators (KPI) to 264. (Worrell Decl. ¶¶ 5-6.) In September 2022, CDCR estimated that those original 148 indicators listed in the Special Master's 2021 Report included a total of 497 components (KPI

3

Defs.' Obj. to 10/13/23 Status Report on Data Remediation (2:90-cv-00520 KJM-DB (PC))

20072732.1

pages, data elements, business rules, glossary terms, and associated reports) that required completion and sign off to ensure remediation.  During the data remediation process, some indicators were decommissioned and removed from the list, while other indicators were split into multiple indicators to audit all of the requirements or capture all of the data recommended by the stakeholders.  (*Id.*)  The stakeholders also agreed to add several new indicators.  (*Id*.)  With the various revisions agreed to by all stakeholders, the current list of indicators based on the provisionally approved key indicators, excluding placeholder indicators, is currently 178.  The Special Master has since recommended eighty-six additional indicators, including new indicators and extended indicators requested in the Special Master's June 14, 2023 letter (*see* ECF No. 7863-1 at 7-12), bringing the total number of indicators to 264 as of November 9, 2023.  (Worrell Decl. at ¶ 6.)

Appendix A to the Report lists fifty-one indicators that the Special Master has requested Defendants create or extend.  (ECF No. 8011 at 11-14.)  Footnote 1 of the Report acknowledges Defendants' statements that some of the new indicators listed in Appendix A will require more than one indicator.  (*Id*. at 11.)  In fact, Defendants anticipate that as of November 9, 2023, eighty-six indicators are necessary to provide the information requested for the new and extended indicators agreed to in Defendants' June 28, 2023 response to the Special Master's June 14 letter.  (*See* ECF No. 7863-1 at 20-24.)  Based on the how the data remediation project has progressed over the past two years, it is likely that these figures will increase even more as CDCR works through the complexities of these new and extended indicators.  (Worrell Decl. ¶ 6.)

Further, resolution of the timely compliance methodology dispute may require the creation of additional indicators and components to account for the multiple methodologies advocated for by the Special Master.  (*See* ECF No. 8025 at 18.)  The creation and review of the indicators using the Special Master's recommended timely compliance methodology may also be delayed as CDCR has not been provided with information regarding the internal thresholds, degree of impact statistics, and the applicable reporting periods necessary to create and document the indicators.  (*Id*. at 11-16.)  Additional disputes may arise once this information is provided.

4
Defs.' Obj. to 10/13/23 Status Report on Data Remediation (2:90-cv-00520 KJM-DB (PC))

20072732.1

Only seventy-four indicators, or twenty-eight percent, have been remediated since the court's July 1, 2021 order approving the key indicator list. (*Id.*; *See also* ECF No. 7216.) Despite the inescapable fact of these delays and the progress to date, the Special Master recommends that the remaining seventy-two percent of key performance indicators be completely remediated by March 31, 2024. (ECF No. 8011 at 9.) This recommendation is unrealistic in light of the parties' pace to date.

**B.     Nearly Every Step of the Data Remediation Process Has Taken Longer Than Anticipated in the December 2021 Data Activation Schedule, Requiring an Extension of the Deadline.**

The Report recommends that remediation of the original indicators be substantially completed by December 31, 2023, and that full remediation of those plus the additional recommended placeholder and new indicators be completed by March 31, 2024. (ECF No. 8011 at 9.) These recommended deadlines ignore the delays that have occurred (*see supra* Section I(A)), the expansion of the project (*see supra* Section I(B)), and the actual pace at which data remediation has progressed over the past two years.[1] In sum, these deadlines are not grounded in any factual basis and the recommendation is clearly erroneous.

In 2021, CDCR initially predicted that data remediation of the initial 148 indicators could be completed by December 31, 2023. The estimated completion date was based in large part on the assumption that the parties would follow the schedule for the then 13-step process. (*See* ECF No. 7334 at 27 (original workflow and timeframes for each step); *see also* ECF No. 7523-1 at 6 (revised workflow and timeframes).) Despite the best efforts of the stakeholders, those timeframes have rarely been met.

CDCR's most recent workflow, submitted in April 2022, was designed to remove an unnecessary step from the prior September 2021 plan. (*Id.*) It predicted that each indictor would take eighteen weeks from initial documentation to verification. (*Id.*) The Special Master's data

---

[1] The Report suggests that the modified dispute resolution process required by the Court's October 10, 2023 Order will result in more efficient resolution of data remediation related disputes going forward. (ECF No. 8011 at 8.) The process will shorten the time for disputes to be presented to the Court, but does not address the need for additional time to complete most other steps of the data remediation process. In short, implementation of the revised dispute resolution process will not result in the ability to complete data remediation by December 31, 2023, or by March 31, 2024.

5

Defs.' Obj. to 10/13/23 Status Report on Data Remediation (2:90-cv-00520 KJM-DB (PC))

20072732.1

expert informed CDCR that he would need one week after that to "remediate" the indicator. (*Id.* at 9.) Despite these timeframes, in reality the process has taken closer to an average of thirty-seven weeks per indicator—nearly double the predicted pace. And taking into account that the number of indicators has also nearly doubled—from 148 to 264—there is little likelihood that the project can be completed, substantially or otherwise, by the Special Master's recommended deadline.

| Data Remediation Step[2] | April 2022 Plan | Actual Time |
|---|---|---|
| Documentation Prep | 4 Weeks | 4 Weeks |
| Pre-Stakeholder Review | 1 Week | 1.28 Weeks |
| Stakeholder Feedback | 1 Week | 1.14 Weeks |
| Pre-BRMR Meeting | 1 Week | 3 Weeks |
| BRMR Meeting | 2 Weeks | 8 Weeks |
| Change Advisory and Prioritization Committee | 1 Week | 1.14 Weeks |
| Programming | 2 Weeks | 3.57 Weeks |
| Verification | 6 Weeks | 7.7 Weeks |
| Remediation | 1 Week | 7 Weeks |
| TOTAL | 19 Weeks | 36.83 Weeks |

(Worrell Decl ¶ 7.) Given these data, the court must reject the Special Master's recommended deadlines as they are not grounded in fact and thus are clearly erroneous.

## CONCLUSION

While CDCR understands the importance of promptly completing the data remediation project, there are limits to how fast the project can proceed given its vast scope and myriad steps involving both stakeholder feedback and technical expertise. CDCR remains committed to completing the project as expeditiously as possible, while ensuring that the project is completed to the satisfaction of all stakeholders. Therefore, while the court should reject the Special

---

[2] The Special Master's October 13, 2023 report omits or simplifies many of these steps. (*See* ECF No. 8011 at 3.)

Defs.' Obj. to 10/13/23 Status Report on Data Remediation (2:90-cv-00520 KJM-DB (PC))

20072732.1

1  Master's unrealistic deadlines, the court should direct CDCR to file quarterly status reports on the
2  progress of the data activation project.
3  **CERTIFICATION**
4  Defendants' counsel certify that they reviewed the following orders relevant to this filing:
5  ECF Nos. 640, 5092, 5726, 6846, 6996, 7216, 7283, 7847, 8008, and 8028.

6  Dated: November 13, 2023            Respectfully submitted,

7                                       ROB BONTA
                                     Attorney General of California
8                                       DAMON MCCLAIN
9                                       Supervising Deputy Attorney General

10                                      */s/ Elise Owens Thorn*
                                     Elise Owens Thorn
11                                      Deputy Attorney General
                                     *Attorneys for Defendants*
12

13 Dated: November 13, 2023            HANSON BRIDGETT LLP

14                                      */s/ Samantha D. Wolff*
15                                      PAUL MELLO
                                     SAMANTHA D. WOLFF
16                                      *Attorneys for Defendants*

17
18
19
20
21
22
23
24
25
26
27
28

7

Defs.' Obj. to 10/13/23 Status Report on Data Remediation (2:90-cv-00520 KJM-DB (PC))

20072732.1

# CERTIFICATE OF SERVICE

Case Name:   **Coleman v. Newsom, et al.,**           No.   **2:90-cv-00520 KJM-DB (PC)**

I hereby certify that on November 13, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S OCTOBER 13, 2023 DATA REMEDIATION STATUS REPORT (ECF NO. 8011)

DECLARATION OF WENDY WORRELL, Psy.D. IN SUPPORT OF DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S OCTOBER 13, 2023 DATA REMEDIATION STATUS REPORT (ECF NO. 8011)

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 13, 2023, at Los Angeles, California.

| Lois E. Smith | /s/Lois E. Smith |
|---|---|
| Declarant | Signature |

CF1997CS0003
66376489.docx