UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | No. 2:90-cv-0520 KJM DB P<br><br>ORDER |

On November 7, 2023 the court heard from the parties regarding defendants' progress toward compliance with court orders requiring timely transfer of class members to necessary inpatient mental health care and issues raised by defendants' June 30, 2023 Unmet Bed Needs Assessment Report, ECF No. 7865-3. *See* ECF No. 7916 (August 11, 2023 order setting hearing). Prior to hearing, the parties filed their joint report as required. *See* ECF No. 7969.

I.　　Transfer Timelines

Having reviewed the joint report and discussed it with the parties, the court confirms the general agreement that work should continue on defendants' Least Restrictive Housing (LRH) policy. Defendants implemented the LRH policy in 2015. The policy enhances use of low custody inpatient beds at Atascadero State Hospital (ASH) to treat class members custodially eligible for those beds and keeps high custody inpatient beds available in the California Department of Corrections and Rehabilitation (CDCR) Psychiatric Inpatient Programs (PIPs), as

1

part of an overall effort to reduce or eliminate historically long waitlists for access to high custody inpatient beds. *See* March 24, 2017 Order, ECF No. 5583, at 15.[1] The LRH policy is a key component of defendants' comprehensive remedial structure, developed over the past decade in an effort to ensure class members have timely access to necessary inpatient mental health care. Defendants are taking some encouraging steps to ensure or revive their robust implementation of the LRH policy. *See* ECF No. 7969 at 6. The parties agree these steps would be aided by a meet and confer process supervised by the Special Master to discuss possible additional revisions to the LRH process. The court therefore will order that this meet and confer process take place promptly.

      Also at hearing, defendants reported they have voluntarily undertaken to include new data in their monthly reports on the census, waitlists, and timeliness of transfers to inpatient care. Defendants first added this data in the monthly report filed September 15, 2023, in a new Exhibit G including information on the timeliness of inpatient referrals that are rescinded, rejected, or dropped because the referred inmates have been released to parole or otherwise discharged from custody. *See* ECF Nos. 7947 at 24-25, 8014 at 24. The Program Guide[2] sets out timelines within which defendants must transfer class members to mental health programs or levels of care within CDCR's Mental Health Services Delivery System (MHSDS). *See* ECF No. 7333-1 at 19. Previously, as the court required on April 19, 2017, ECF No. 5610 at 14, defendants had filed monthly reports on the timeliness of transfers to inpatient care and those reports had not included information on referrals to inpatient care that were rejected or rescinded, though defendants had been required to provide that information to the Special Master. *Id*. Defendants have now taken the initiative by proactively providing the new Exhibit G. The court applauds defendants' initiative in this respect, as the new exhibit facilitates transparency and a full understanding among all stakeholders and also aids an assessment of how well, overall, defendants' systems are

---

[1] In this order citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system and located in the upper right-hand corner of the page.

[2] The Program Guide is "defendants' remedial plan for the identified violations in the delivery of mental health care to California's prisoners." July 9, 2019 Order, ECF No. 6214, at 2.

working in the crucial area of timely access to inpatient mental health care. The court understands and expects defendants will continue to include Exhibit G in their monthly reports going forward. The court also notes that the fines accumulating under its April 19, 2017 order, ECF No. 5610, do not apply to the data reported in Exhibit G and will not unless or until the court orders otherwise, as it currently is not contemplating.

II.     Unmet Bed Needs Assessment

Turning to defendants' Unmet Bed Needs Assessment Report, ECF No. 7865-3 (hereafter UNA Report), the court makes some general observations and one specific order. The record demonstrates the UNA Report reflects a very comprehensive assessment conducted both diligently and collaboratively by all stakeholders.[3] As a consequence, the Report is persuasive in its finding that CDCR has enough inpatient beds and mental health crisis beds (MHCBs) to meet class member need for these levels of care. As discussed at hearing, the record, including plaintiffs' objections to the UNA Report, ECF No. 7900, and defendants' response to those objections, ECF No. 7936, shows the UNA process identified some questions not intended to be answered by the UNA or the Report but nonetheless best addressed promptly in aid of a sustainable remedy. Those questions include why referrals to inpatient mental health care have not returned to the referral levels that preceded the onset of the COVID-19 pandemic; what lessons were learned during the UNA study about the impact of staffing shortages on access to

---

[3] At various places in their response to plaintiffs' objections, defendants refer to methodology used for UNA incorrectly as the Special Master's methodology. *See*, *e.g.*, ECF No. 7936 at 3 ("The Special Master provided the final methodology to Defendants per Court Order, . . . , and Defendants adhered to it despite their objection to the methodology"), 10 ("According to the Special Master's methodology . . ."), 13 (the impact of the pandemic was not part of the Special Master's UNA methodology), 17 ("Plaintiffs know that the methodology was not of Defendants' design. Instead, it was designed by the Special Master, and Defendants were ordered to follow it."). The UNA Report contains a detailed discussion of the development of the UNA methodology. *See* ECF No. 7865-3 at 22-25. While the court gave the Special Master "final authority over the scope of and methodology for the study," September 13, 2021 Order, ECF No. 7305 at 16, the record and the Report make clear the methodology was developed through a robust process with considerable participation by all stakeholders. *See*, *generally*, *e.g.*, Reporter's Transcript of Proceedings, ECF No. 7476; *see also* ECF No. 7477. Thus, as the court clarified at hearing, the methodology for the 2022/23 UNA is properly characterized in the Report as the UNA methodology and the court construes all references to the methodology as such. The parties shall use this descriptor in all future filings.

3

care and interdisciplinary treatment team (IDTT) referral decisions; what are reason(s) for the significant number of inpatient referrals made outside the UNA process during Phase II of the UNA study; and whether patients whose UNA referrals were rejected by IDTTs were subsequently referred to inpatient care. The court is persuaded that the answers to those questions will aid defendants in assuring the remedial process for ensuring timely access to inpatient mental health care is fully and durably implemented.[4] The court will not at this time make any specific orders requiring defendants to supplement the UNA Report with answers to those questions. Rather the court encourages defendants to take the kind of voluntary initiative exemplified by the addition of Exhibit G to the monthly transfer timeline reports, discussed above, to address the questions, including whether answers would be found more readily in a fully functional quality improvement/assurance program, and to seek the guidance and expertise of the Special Master and his team in these efforts. Given the significant expertise of the Special Master and his team, defendants can and should work collaboratively with him in an effort to hasten the achievement of constitutionally adequate mental health care for class members and an end to court supervision.

The court will make one order based on the UNA results. The court expressly required the scope of the UNA to be sufficient to "identify with specificity the size of" the "subset of class members with severe personality disorders associated with significant functional impairments who have special treatment needs not yet available in an inpatient setting." ECF No. 7305 at 15. The UNA Report identifies 470 class members in this subset. *See*, *e.g.*, ECF No. 7865-2 at 2. Given the court's discussion with the parties at hearing, the court will order them to meet and confer under the supervision of the Special Master to discuss more prompt development of a pilot program for this subgroup of class members, with the specific goal of developing a plan for the pilot program within three months and implementing the pilot program within six months thereafter.

/////

---

[4] As the court observed and the parties appeared to acknowledge at hearing, it is likely a fully functional quality improvement/quality assurance program would enable defendants to readily access data-driven answers to these questions.

III.     Conclusion

The court is encouraged by the progress defendants have made in returning to earlier gains in timely access to inpatient care. The court will defer further enforcement proceedings in this area pending discussion at the further hearing set by this order for April 26, 2024.

Good cause appearing, IT IS HEREBY ORDERED that:

1. The court sets a further hearing on April 26, 2024 at 10:00 a.m. in Courtroom # 3 on issues related to enforcement of remedial requirements for timely transfer to inpatient care and the status of defendants' compliance with the court's October 11, 2023 Order, ECF No. 8009, regarding compliance with required staffing levels in the CDCR PIPs.

2. Between now and the time set for hearing in April 2024, the parties shall meet and confer under the supervision of the Special Master regarding two matters:  a) to discuss possible revisions to the Least Restrictive Housing policy and other steps to enhance class members' access to Department of State Hospital (DSH) programs, including but not limited to the new two-step plan developed by CDCR and DSH to enhance review of referrals of inmate-patients who are eligible for placement in unlocked dormitory inpatient settings to determine their eligibility for admission to DSH ; and b) to discuss more prompt development of programs for class members with personality disorders including a possible pilot program as discussed in this order.

3. On or before April 12, 2024, the parties shall file a joint status report on the results of the discussions required by paragraph 2 of this order and the status of defendants' compliance with the court's October 11, 2023 order, ECF No. 8009.

4. Defendants shall file an official updated mental health salary schedule within three days after it is issued by the Office of the State Comptroller.[5]

DATED:  November 15, 2023.

CHIEF UNITED STATES DISTRICT JUDGE

---

[5] As discussed at hearing, defendants filed the updated estimated mental health salary schedule on November 9, 2023.  ECF No. 8063.