R0B BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-4431
 Fax: (415) 703-5843
 E-mail: Namrata.Kotwani@doj.ca.gov
*Attorneys for Defendants*

PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
DAVID C. CASARRUBIAS, State Bar No. 321994
HANSON BRIDGETT LLP
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                               Plaintiffs,<br><br>     v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                              Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**MOTION TO EXCLUDE PIP MAX CUSTODY PLACEHOLDER INDICATOR FROM CQIT AND TO ENFORCE SETTLEMENT** |

20148458.3                                           1

# NOTICE OF MOTION

**TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants move this Court to exclude CDCR's policy to review maximum custody inmate-patients placed in the Psychiatric Inpatient Program from the continuous quality improvement tool (CQIT) and enforce the terms of the Court-approved stipulation between the parties regarding the use of Therapeutic Treatment Modules in inpatient settings (*see* Feb. 7, 2022 Order, ECF No. 7456, at 3).[1] The Court directed Defendants to bring a motion focusing on "whether this policy should be included in CQIT" within fourteen days of its November 16, 2023 Order. (ECF No. 8069, at 13.) This motion is based upon this notice, the supporting memorandum of points and authorities, the pleadings, records and files in this action, and any other matters that may properly come before the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Special Master's recommendation to create a new CQIT key indicator to measure compliance with CDCR's policy to review Maximum custody ("Max Custody") Psychiatric Inpatient Program (PIP) patients ("PIP Max Custody Review Policy") must be rejected. (*See* ECF No. 8039, at 2-6.) This recommendation violates material terms of the TTM Stipulation, which is a court-approved settlement agreement between the parties governing the use of Therapeutic Treatment Modules (TTMs) to treat Max Custody patients in the PIPs. Specifically, the TTM Stipulation created the PIP Max Custody Review Policy, but expressly excluded it from the Eighth Amendment remedy in this case; in other words, the parties agreed that no portion of TTM Stipulation—including the PIP Max Custody Review Policy—would be included in the Program Guide and Compendium. (*Id.* at 1-2; ECF Nos. 7392 at ¶¶ 13-15; 7456.)

The exclusion of the PIP Max Custody Review Policy from the remedy in this case was critical to Defendants' decision to settle the issue and forego litigating the use of TTMs to treat Max Custody patients in the PIPs. (*See* Stip., ECF Nos. 7392 and 7456.) But the Special Master's

---

[1] Citations to page numbers in documents filed in this action are to the page number assigned by the Court's Electronic Case Filing (ECF) system located in the upper right hand corner of the page.

20148458.3

2

recommendation to now include this policy in CQIT would effectively expand the remedy and amount to an end-run around the parties' agreement. As this Court has held, CQIT indicators measure the key components of the remedy in this case and signify those aspects of the remedy that are material and must be durably implemented. (*See, e.g.*, ECF Nos. 6846, 7847.) Thus, inclusion of the PIP Max Custody Review Policy in CQIT would equate to its inclusion in the remedy, and critically, would deprive Defendants of a key bargained-for component of the TTM Stipulation, result in manifest injustice, nullify the agreement, and chill future agreements between the parties.

Accordingly, pursuant to the Court's direction to file a motion to resolve Defendants' objections to the Special Master's recommendation, (Nov. 16, 2023 Order, ECF No. 8069, at 13) Defendants bring this motion to enforce the terms of the TTM Stipulation and exclude the proposed placeholder indicator measuring compliance with the PIP Max Custody Review Policy from CQIT. Said differently, the Court should reject the Special Master's recommendation.

But if the Court adopts the recommendation and requires the creation of the placeholder indicator measuring compliance with the PIP Max Custody Review Policy, then it should vacate the February 7, 2022 Order approving the TTM Stipulation and the Stipulation itself. Otherwise, adopting the Special Master's recommendation would effectively rewrite the parties' settlement agreement, which expressly precludes the inclusion of the PIP Max Custody Review Policy from the remedy in this case.

**BACKGROUND OF THE DISPUTE**

I.  **THE PARTIES ENGAGED IN SETTLEMENT NEGOTIATIONS REGARDING THE USE OF TTMS IN THE PIPS WHICH RESULTED IN THE TTM STIPULATION**

On July 26, 2021, the Court ordered the parties to engage in settlement negotiations with the assistance of a magistrate judge to address disagreements concerning Defendants' use of TTMs in the PIPs. (Jul. 26, 2021 Order, ECF No. 7246.) Following three mediation sessions overseen by Magistrate Judge Newman (with the Special Master in attendance), and negotiations that spanned over six weeks, the parties reached an agreement on the use of TTMs to deliver mental health care to class members on Max Custody in the PIPs. (ECF No. 7392 at 1:23-28.) In

close consultation with Magistrate Judge Newman, the parties reduced their agreement to the carefully crafted TTM Stipulation filed with this court on November 4, 2021. (Stip., ECF No. 7366.)

## II. THE TTM STIPULATION SPECIFICALLY EXCLUDED DEFENDANTS' MAX CUSTODY REVIEW POLICY FROM THE PROGRAM GUIDE AND COMPENDIUM AND SET FORTH HOW THE POLICY WOULD BE MONITORED.

The express purpose of the TTM Stipulation was to improve access to inpatient mental health care for the *Coleman* class members by allowing CDCR's use of TTMs at all PIPs for Max Custody patients. (ECF No. 7392 at 1-2.) Plaintiffs requested that CDCR finalize a plan to conduct regular custody reviews of Max Custody patients referred to inpatient treatment or already receiving inpatient treatment. Defendants agreed with that approach and attached a draft plan—the "PIP Max Custody Review Policy"—to the stipulation filed on November 19, 2021. (ECF No. 7381 at 2:4-10.)

Critical to Defendants' assent to the TTM Stipulation was the inclusion of Paragraph 15, which provides in relevant part: "The parties agree that Defendants' plan shall not be included in the MHSDS Program Guide or Compendium." (ECF No. 7381 at ¶ 15; *see also* ECF Nos. 7380 at 4-5 (the language in paragraph 15 was "critical in particular to Defendants' agreement to the Stipulation") & 7412 at 2 (same).) Defendants' assent to the TTM Stipulation was also conditioned on Paragraphs 9-11, which require the production of a quarterly status report containing specific information, that Defendants allow Plaintiffs to observe Max Custody reviews for a two-year period, and a meet and confer process to discuss whether further document production or observations are required beyond the initial two-year period. (*See* ECF Nos. 8039, at 4-6 and 7392 at ¶¶ 9-11.)[2]

Thus, the TTM Stipulation specifically excluded the PIP Max Custody Review Policy from the Program Guide and Compendium and explicitly addressed how the policy would be monitored going forward. Pursuant to the stipulation, CDCR implemented the final version of the

---

[2] It should be noted that even though CDCR's quarterly document production obligations and Plaintiffs' right to observe Max Custody review ICCs end after two years and are subject to re-negotiation through a meet-and-confer process (*see* ECF No. 7393 at ¶¶ 9-11), the TTM Stipulation does not expire after the initial two-year monitoring period.

PIP Max Custody Review Policy on March 9, 2022. (ECF No. 8039-1, Thorn Decl. ¶ 2, Exhibit A.)

### III. THIS COURT APPROVED THE TTM STIPULATION, INCLUDING THE PROVISION THAT SPECIFICALLY EXCLUDED THE PIP MAX CUSTODY REVIEW POLICY FROM THE PROGRAM GUIDE OR COMPENDIUM.

After the parties finalized and filed the TTM Stipulation for court approval, this Court issued an order to show cause why the Court should not enter an order declining to approve Section III of the Stipulation, which included Paragraph 15. (Nov. 8, 2021, Order, ECF No. 7368 at 1-2.) Again, Paragraph 15 was the key provision in the TTM Stipulation for Defendants as it memorialized the parties' agreement that the PIP Max Custody Review Policy "shall not be included in the MHSDS Program Guide or Compendium" and that the TTM Stipulation "sets forth the entirety of the remedy related to" Defendants' use of TTMs in inpatient settings. (Stip., ECF No. 7392 at ¶ 15.)

The parties jointly responded to the November 8, 2021 order to show cause by advising the Court that the parties would not reach agreement absent inclusion of the existing language of Section III in the stipulation. (Jt. Resp., ECF No. 7380 at 4:13-5:5.) The parties emphasized that, "Section III is critical in particular to Defendants' agreement to the Stipulation as a whole. *In the event any of this language is stricken* from the Stipulation set forth in Exhibit A, *Defendants withdraw their agreement from all parts of the Stipulation*." (*Id.* at 5:3-5, emphasis added.) The Court issued an order approving paragraphs 1 through 14 of the TTM Stipulation, but only "conditionally" approved paragraph 15, "pending final resolution of what updating process the court will adopt for the Program Guide in the future." (Dec. 9, 2021 Order, ECF No. 7392 at 6:5-7.)

Defendants sought relief from this order because Paragraph 15 was a core term that was critical to Defendants' assent to the TTM Stipulation because it "expressly and *intentionally* removes the Plan from the [Program Guide] updating process" without conditions. (ECF No. 7412, at 3-5 (citing ECF No. 7380 at 4:26-27) (emphasis added).) Defendants requested that the Court set aside the TTM Stipulation if it did not approve Paragraph 15.

Ultimately, the Court approved Paragraph 15 of the TTM Stipulation, thereby approving the parties' settlement agreement in full. (ECF No. 7456, at 4.) In addition, the Court referred "provisions regarding TTMs . . . to the Special Master for consideration as to whether they are, or should be, reflected in the list of CQIT indicators." (*Id.*)

**IV. DESPITE THE CLEAR TERMS OF THE TTM STIPULATION, THE SPECIAL MASTER RECOMMENDED CREATING A CQIT INDICATOR FOR THE PIP MAX CUSTODY REVIEW POLICY.**

On June 14, 2023, the Special Master disclosed plans to create an indicator to track the custody reviews required by the PIP Max Custody Review Policy as set forth in the TTM Stipulation. (ECF No. 8039-1, Thorn Decl., Exhibit B, June 2023 Letter from M. Bentz to M. Lopes.) CDCR advised the Special Master that the inclusion of provisions from the TTM Stipulation as CQIT key indicators directly contradicted and constituted an improper end-run around the parties' Court-approved agreement, and extended Defendants' obligation to provide data and documentation on the custody reviews beyond the agreed-upon two-year period. (*Id.*)

Despite these objections, the Special Master recommended the creation of a new CQIT placeholder indicator to measure compliance with the PIP Max Custody Review Policy. (ECF No. 7392.) Defendants submitted their formal objections to the Court (ECF No. 8039), and the Court directed them to "bring an appropriate motion focusing for the court the question whether this policy should be included in CQIT." (ECF No. 8069, Nov. 16, 2023 Order, at 13.)

**V. THIS COURT HAS NOT FOUND THAT RESTRICTIONS ON TTM USAGE ARE PART OF THE *COLEMAN* REMEDY.**

The Court has never made findings that the use of TTMs for treating Max Custody patients in PIPs violates the constitution or that restrictions on TTM usage are part of the Eighth Amendment remedy in this action, even though numerous orders have specifically identified the complex scope of the remedial framework and enumerated corresponding court-approved policies to guide the parties. (*See e.g.* Sep. 3, 2020 Order, ECF No. 6846, at 28 ("In this order, the court *reviews and confirms* the remedial framework for this action and the road map to the end of federal court oversight.") (emphasis added); *id.* at 8-9, 26-28 (identifying seven projects to be completed by defendants to fully implement the Program Guide and Compendium, and twelve

areas of deficiencies in the delivery of mental health care); *id.* at 12-14 (identifying relief for Plaintiffs related to inpatient mental health treatment, segregated housing, and use of force and disciplinary measures on class members); *id.* at 14 (describing the "road map to end of federal court oversight" and stating that "remedial requirements are consolidated in the two primary remedial documents, the Program Guide and the Compendium, and the accompanying plans"); *id.* at 20-23 (identifying transfer timelines to inpatient care and from desert institutions, staffing, and Custody and Mental Health Partnership Plan (CMHPP) as remedial requirements that must be met).)

## ARGUMENT

I. **CQIT'S PURPOSE IS TO MONITOR THE MATERIAL ELEMENTS OF THE *COLEMAN* REMEDY AND THE PIP MAX CUSTODY REVIEW POLICY IS NOT PART OF THE REMEDY.**

The Special Master's recommendation to create a new CQIT placeholder indicator to measure compliance with the PIP Max Custody Review Policy is at odds with the TTM Stipulation and this Court's prior guidance which links the "list of key CQIT indicators" to the "full implementation of the material provisions of the court-ordered remedy in this case as necessary to meet the requirements of the Eighth Amendment." (Feb. 7, 2002 Order, ECF No. 7456, at 3; *see also* Jul. 1, 2021 Order, ECF No. 7216, at 3.)

    A.    **The PIP Max Custody Policy Is Not Part of the *Coleman* Remedy And Thus, Cannot Be Incorporated Into CQIT.**

This Court has long articulated the contours of the remedy in this action. The "primary court-approved remedial documents in this action are the California Department of Corrections and Rehabilitation (CDCR) Mental Health Services Delivery System (MHSDS) Program Guide (Program Guide) and the Compendium of Custody Related Remedial Measures (Compendium)." (Sept. 3, 2020 Order, ECF No. 6846 at 4 (citing August 3, 2020 Order, ECF No. 6806, at 9).) In addition, the Court has approved "several additional remedial plans in aid of the primary remedies," including a "court-ordered mental health staffing plan, *see* ECF Nos. 3613 at 2 (court order), 3693 (staffing plan), regular mental health bed projections, *see* ECF No. 3629, and concomitant planning for and building of necessary mental health beds and clinical treatment

space, *see, e.g.*, ECF No. 3556." (July 9, 2019 Order, ECF No. 6214, at 2.) The Court has also noted that the "Program Guide sets out the objective standards that the Constitution requires" for the delivery of adequate mental health care to members of the plaintiff class." *See Coleman v. Brown*, 756 Fed. Appx. 677, 679 (9th Cir. 2018).

Likewise, the Court has provided clear guidance on CQIT and key indicators. The Court has emphasized that CQIT is "a comprehensive tool that, once finalized, defendants will ultimately use as part of a process to 'self-monitor' the key components of the remedy in this action." (Sept. 3, 2020 Order, ECF No. 6846, at 10 (citing ECF No. 5439 at 108); Jul. 1, 2021 Order, ECF No. 7216, at 2); *see also* Feb. 7, 2022 Order, ECF No. 7456, at 2.) Numerous court orders state that "CQIT's purposes are to accurately measure remedial requirements and transition monitoring from the Special Master to defendants." (*See*, *e.g.* May 24, 2023 Order, ECF No. 7847, at 7.) CQIT "distil[s] elements of the Program Guide, the Compendium and the other remedial measures." The "key indicators" in CQIT "signify the material provisions of the Program Guide and the Compendium that must be durably implemented" in order to satisfy the Eighth Amendment. (Sep. 3, 2020 Order, ECF No. 6846, at 28; *see also* Dec. 17, 2020 Order, ECF No. 6996, at 8; Jul. 1, 2021 Order, ECF No. 7216, at 4.)  Notably, the Court has also held that "new indicators should generally be limited to indicators required by court approved updates to the remedial plans and necessary for CQIT to serve its intended purpose." (May 24, 2023 Order, ECF NO. 7847 at 8 (citing ECF No. 6996 at 9-10).)

Here, the TTM Stipulation and its provisions are not part of the remedial plan, nor are they part of any updates to the remedial plan. *See, supra,* Sec. V. Accordingly, compliance with any portion of the TTM Stipulation should not be part of CQIT. The TTM Stipulation is a voluntarily negotiated policy that benefits the *Coleman* class, but it cannot be retroactively shoehorned into the remedy, particularly when the parties expressly excluded it from the remedy. (*See* May 24, 2023 Order, ECF No. 7847, at 5 (stating that "the court's direction to finalize the list of indicators is 'neither an opportunity to reinvent the wheel . . . nor is it an invitation to depart from the law of the case.'") (internal citations omitted).)

### B. Inclusion of the PIP Max Custody Policy In CQIT Would Violate The Court-Approved TTM Stipulation and Override the Parties' Intended Agreement.

The TTM Stipulation itself establishes that the parties had clearly intended to exclude its provisions from the remedy of the case. Section I of the TTM Stipulation memorializes Defendants' obligations, and in exchange, Section III, paragraph 15, indicates that "[t]he parties agree that Defendants' plan shall not be included in the MHSDS Program Guide or Compendium. (Stip., ECF No. 7392, at 5 ¶ 15.) As the parties have noted, the language in paragraph 15 was "critical in particular to Defendants' agreement to the Stipulation," and without this language, Defendants would not have agreed to its terms. (*See* Jt. Resp. to Order to Show Cause ("Jt. Resp."), ECF No. 7380 at 4-5.) Notably, the parties also advised the Court that the TTM Stipulation "expressly and *intentionally* remove[d] the Plan from the [Program Guide] updating process," without conditions. (*Id.* at 4:26-27, emphasis added.) The Special Master's recommendation to include a placeholder indicator measuring compliance with the PIP Max Custody Review Policy in CQIT, thus, nullifies a material provision of the TTM Stipulation.

Inclusion of provisions from the TTM Stipulation as CQIT key indicators directly contradicts both the parties' Court-approved stipulation and this Court's May 24, 2023 order. (ECF No. 7847 at 6.) Defendants made clear that Section III of the parties' TTM agreement, which includes Paragraph 15, was critical to reaching an agreement on this issue and Defendants would withdraw their agreement from all parts of the stipulation if any language related to excluding the TTM Stipulation from the *Coleman* remedy was struck. (*See* Jt. Resp. ECF No. 7380 at 4-5.) An order requiring indicators related to the PIP Max Custody Review Policy in CQIT would effectively rewrite the agreement without the consent of both parties. *See In re Palmdale Hills Prop.*, No. 8:08-BK-17206-ES, 2011 WL 7478771, *4 (Bankr. C.D. Cal. Nov. 3, 2011) ("'[A] court may not rewrite into a contract conditions the parties did not insert or, under the guise of construction, add or excise terms.'") (internal citations omitted). "A stipulation is akin to a contract [citations omitted]; therefore, the interpretation and the enforceability of the stipulation here are governed by the basic principles of contract law." *Fred Hutchinson Cancer Rsch. Ctr. v. United of Omaha Life Ins. Co.*, 821 F. Supp. 644, 647 (D. Or. 1993).

Although there was a meeting of the minds on the TTM Stipulation, the Court's subsequent inclusion of the PIP Max Custody Review Policy in CQIT would erase a critical contractual term. *See Quackenbush v. Omnicor, Inc.*, 34 Cal. App. 4th 1283, 1288 (1995) (a meeting of the minds is a pre-requisite of contract formation); *see also Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1089 (9th Cir. 2015) (recognizing that basic contract principles in federal court are based on forum state's law). The Court should reject the Special Master's recommendation, which will unjustifiably incorporate the TTM Stipulation into the *Coleman* remedy and effectively expand the monitoring requirements to which the parties' expressly agreed.

**C.    This Court Should Enforce The TTM Stipulation.**

Requiring the creation of new indicators to measure provisions of the TTM Stipulation in perpetuity impermissibly expands a two-year implementation check into an ongoing and permanent reporting obligation. The TTM Stipulation prescribes post-implementation monitoring, as described in Paragraphs 9 through 11 of the TTM Stipulation. CDCR is required to share data on the status of the implementation of the Max Custody Review Memo in quarterly status reports for a period of "two years following the initial implementation report." (Stip., ECF No. 7392 at 3-4, ¶ 9.) The data includes the status of *Coleman* class members in PIPs who are on Max Custody; a roster of patients the Mental Health Care Team (MHCT) recommended for removal from Max Custody during the reporting period; a report with information regarding the bi-weekly MHCT and Deputy Director reviews and subsequent ICCs for the reporting period, including comments as to why a patient was retained or placed on Max Custody; and ICC determinations, including the classification chrono, rules violation report packet(s), and supporting documents, excluding confidential memoranda, for a random sample of the patients retained or placed on Max Custody during the reporting period. (*Id.*) CDCR issued its initial implementation report in September 2022. (ECF No. 8039-1, Thorn Decl., Ex. A.) Subsequently, CDCR negotiated the exact content and form of the required data and document production with Plaintiffs' counsel and the first quarterly report was produced in April 2023. (*Id.* at ¶ 3, Exhibit C.)

In addition to this two-year document production requirement, the TTM Stipulation allows Plaintiffs to observe Max Custody ICCs for a two-year period before requiring a meet and confer process to discuss whether further document production or observations are needed (*Id.* at 3-4, ¶¶ 10, 11).

Plaintiffs now assert that "the creation of a new indicator is warranted and necessary" because "CDCR's information-sharing obligations under the parties' stipulation expire after two years, which will run at the end of December 2023." (ECF No. 8039, at 23.)[3] But this is exactly what Plaintiffs bargained for and agreed to, with the caveat that once the monitoring period ends, the parties are to "meet and confer about the frequency and scope" of Defendants' information-sharing obligations.

## II.  REFERRAL OF THE ISSUE TO THE SPECIAL MASTER DOES NOT MODIFY THE COURT-ORDERED TTM STIPULATION.

The Special Master predicates his recommendation on the Court's referral of issues to him in its February 7, 2022 order. (ECF No. 8039, at 10.) The relevant provision of the February 7, 2022 order states:

> The court gives FINAL APPROVAL to Paragraph 15 of the parties' stipulation regarding the use of Therapeutic Treatment Modules (TTMs) in inpatient settings, *see* Stipulation and Order, ECF No. 7392, at 6, and the parties' agreement over the use of TTMs in inpatient settings, which the court otherwise previously approved on December 9, 2021, ECF No. 7392, **with the provisions regarding TTMs referred to the Special Master** for consideration as to whether they are, or should be, reflected in the list of CQIT indicators currently under review during the Twenty-Ninth Monitoring Round.

(ECF No. 7456 at 3:27-4:6 (emphasis added).) The Court's February 7, 2022 order refers the issue of whether provisions of the TTM Stipulation are, or should be, reflected in the list of provisionally approved CQIT indicators. But that referral does not hold that any portion of the TTM Stipulation is a part of the *Coleman* remedy, and it does not otherwise invalidate or modify

---

[3] According to the TTM Stipulation, CDCR's information-sharing obligations run "for two years following the initial implementation report." (Stip., ECF No. 7392, at ¶ 9.) CDCR issued its initial implementation report in September 2022. (ECF No. 8039-1, Thorn Decl., Ex. A.) Thus, the information-sharing obligations end after a two-year period, in September 2024.

any terms of the Court-approved TTM Stipulation. (*See* Dec. 11, 1995 Order, ECF No. 640, at 4 (holding that Special Master may only "monitor defendants' implementation of and compliance with any *remedial* plan that this court may order." (emphasis added).) In fact, the Court's February 7, 2022 Order grants final approval to Paragraph 15 of the TTM Stipulation, which explicitly articulates the parties' agreement to exclude Defendants' settlement obligations from the *Coleman* remedy. (*See* Stip., ECF No. 7392 at 5:1-3.) Accordingly, the Special Master's recommendation to create a placeholder indicator measuring compliance with the PIP Max Custody Review Policy is clearly erroneous because it impermissibly expands the *Coleman* remedy beyond court-approved updates to the remedial plans.

### III. THE SPECIAL MASTER'S ARTICULATED REASONS FOR CREATING PIP MAX CUSTODY PLACEHOLDER INDICATOR ARE CLEARLY ERRONEOUS.

As justification for creating the PIP Max Custody Placeholder Indicator, the Special Master states that Defendants have "provided woefully inadequate mental health care" to Max Custody status patients in inpatient care, citing prior monitoring reports which state that these patients received no structured treatment and limited out-of-cell time. (*See* ECF No. 8039 at 12, n. 5.) That argument does not match the facts.

To begin, Defendants have never objected to the Special Master monitoring and measuring structured treatment and out-of-cell time, which are a core part of the *Coleman* remedy. The proposed placeholder indicator, however, is not reflective of the treatment or out-of-cell time received by PIP Max Custody patients. By the Special Master's own admission, the proposed indicator would measure the following requirements:

- Pre-transfer ICC review for Max Custody patients referred to the ICF [intermediate care facility] level of care;
- PIP ICC review of Max Custody patients within 10 calendar days of arrival;
- Mental Health Care Team bi-weekly review of Max Custody patients;
- DAI Deputy Director results of bi-weekly videoconference of Max Custody PIP patients;
- The number and percent of PIP patients retained on Max Custody; and

- The number and percent of PIP patients removed from Max Custody.

(ECF No. 8039 at 11-12.)

On their face, those metrics do not cover structured treatment and limited out-of-cell time. More generally, it is unclear how any of these requirements correspond to the quality of inpatient care being provided to Max Custody patients or whether these requirements were traditionally a part of the Special Master's monitoring tours prior to the parties' agreement. The Special Master has not explained how these metrics are part of the remedial plan or other court-approved policies that constitute the *Coleman* remedy. Turning any variable that *could* possibly influence patient care into a "key" indicator undermines the purpose of CQIT. CQIT is not intended to be a catch-all data repository—it is a self-monitoring tool that should only capture the most salient and material aspects of the remedy.

### IV. AN ORDER ADOPTING THE SPECIAL MASTER'S RECOMMENDATION WOULD RUN AFOUL OF THE PRISON LITIGATION REFORM ACT.

An order adopting the Special Master's proposed placeholder indicator as *necessary* to measure a constitutionally adequate mental health delivery system would also violate the Prison Litigation Reform Act, which requires that injunctive relief be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. 3626(a)(2). This Court has never undertaken such a needs-narrowness-intrusiveness analysis with respect to the use of TTMs to provide treatment to Max Custody patients in PIPs. *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 1998) (recognizing that district courts must find prospective relief is narrowly drawn, extends no further than necessary to correction the violation of a federal right, and is the least intrusive means necessary to correct the violation.) Nor has the Court ever found that CDCR's TTM policy—or that any restrictions on the use of TTMs—is necessary to address a constitutional violation.

## CONCLUSION

The PIP Max Custody Review Policy was a result of negotiated settlement between the parties that specifically stated that the policy would not be part of the *Coleman* remedy. The

Special Master's recommendation to include the policy as a CQIT indicator would eviscerate this key provision of the parties' Court-approved agreement and directly contradict this Court's May 24, 2023 order. Accordingly, the Court should enforce the parties' agreement and exclude the PIP Max Custody Review Policy from the CQIT key indicators.

In the event that the Court adopts the Special Master's recommendation to include a placeholder indicator related to the PIP Max Custody Review Policy into CQIT, contrary to the parties' intent, it should set aside the TTM Stipulation and vacate the February 7, 2022 Order approving it.

## CERTIFICATION

The undersigned certify that they have read the following orders in preparing this motion: ECF Nos. 640; 3556; 3613; 5131; 5188; 6214; 6806; 6846; 6996; 7216; 7246; 7368; 7392; 7456; 7695; 7847; and 8069.

| | |
|---|---|
| Dated: November 30, 2023 | Respectfully submitted,<br><br>ROB BONTA<br>Attorney General of California<br>DAMON MCCLAIN<br>Supervising Deputy Attorney General<br><br>*/s/ Namrata Kotwani*<br>Namrata Kotwani<br>Deputy Attorney General<br>*Attorneys for Defendants* |
| Dated:  November 30, 2023 | HANSON BRIDGETT LLP<br><br>*/s/ Samantha D. Wolff*<br>PAUL MELLO<br>SAMANTHA D. WOLFF<br>*Attorneys for Defendants* |