1   DONALD SPECTER – 083925
    STEVEN FAMA – 099641
2   MARGOT MENDELSON – 268583
    PRISON LAW OFFICE
3   1917 Fifth Street
    Berkeley, California  94710-1916
4   Telephone:   (510) 280-2621

5   CLAUDIA CENTER – 158255
    DISABILITY RIGHTS EDUCATION
6   AND DEFENSE FUND, INC.
    Ed Roberts Campus
7   3075 Adeline Street, Suite 210
    Berkeley, California  94703-2578
8   Telephone:   (510) 644-2555

    MICHAEL W. BIEN – 096891
    ERNEST GALVAN – 196065
    LISA ELLS – 243657
    JENNY S. YELIN – 273601
    THOMAS NOLAN – 169692
    MICHAEL S. NUNEZ – 280535
    MARC J. SHINN-KRANTZ – 312968
    ALEXANDER GOURSE – 321631
    GINGER JACKSON-GLEICH – 324454
    ADRIENNE PON HARROLD – 326640
    AMY XU – 330707
    ADRIENNE SPIEGEL – 330482
    MAYA E. CAMPBELL – 345180
    ROSEN BIEN
    GALVAN & GRUNFELD LLP
    101 Mission Street, Sixth Floor
    San Francisco, California  94105-1738
    Telephone:   (415) 433-6830

10  Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>GAVIN NEWSOM, et al.,<br><br>          Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PIP MAX CUSTODY PLACEHOLDER INDICATOR FROM CQIT AND TO ENFORCE SETTLEMENT**<br><br>Judge:  Hon. Kimberly J. Mueller |

[4401252.13]

**INTRODUCTION**

Defendants ask the Court to reject the Special Master's well-reasoned recommendation to adopt a data indicator to measure the Max custody review process, fixating on the argument that the TTM Stipulation is not part of the Program Guide or Compendium.  But the TTM Stipulation is an enforceable court order that is part of the *Coleman* remedy and should be measured by a key indicator in CQIT.  And even though the parties negotiated the TTM Stipulation, it does not and cannot limit the monitoring powers of the Special Master, who has long monitored inadequate treatment provided to high-custody patients in inpatient settings, including recently the new Max custody review process implemented pursuant to the TTM Stipulation.  Finally, the Special Master's monitoring of the Max custody review process does not violate the Prison Litigation Reform Act because it does not constitute prospective relief; further, the Court has made plenty of findings about substandard treatment provided in the PIPs, and how that care is further impeded by Defendants' custodial restrictions on patients needing inpatient psychiatric hospitalization.  The Court should deny Defendants' motion and find that it was not clearly erroneous for the Special Master to recommend that Max custody policy requirements should be included in the CQIT key indicators, with the hope that Defendants can eventually "self-monitor" this important aspect of the *Coleman* remedy.

**I.      BACKGROUND**

The Court has repeatedly found that Defendants' continuing failure to provide *Coleman* patients timely access to adequate psychiatric inpatient care violates the Eighth Amendment.  *See Coleman v. Wilson*, 912 F. Supp. 1282, 1309 (E.D. Cal. 1995); *Coleman v. Brown*, 938 F. Supp. 2d 955, 981-82 (E.D. Cal. 2013); *Coleman v. Newsom*, No. 2:90-cv-0520 KJM DB P, 2023 WL 5428481, at *4 (E.D. Cal. Aug. 23, 2023).  And within CDCR's failing Psychiatric Inpatient Programs (PIPs), it is clear that *Coleman* patients on Maximum (Max) custody are among the most in need of care, yet remain the most neglected.  *See, e.g.*, Twenty-Ninth Monitoring Round Report – Part A: Special Master's Monitoring Report on the Psychiatric Inpatient Programs for Mental Health Patients of the

California Department of Corrections and Rehabilitation ("29th Round Monitoring Report, Part A"), ECF No. 7555 at 44-45 & n.26.

The parties have long disagreed about how Defendants should provide treatment to PIP patients on Max custody.  Rather than addressing the staffing shortages, lack of treatment standards, and other management and operational deficiencies plaguing the PIPs, Defendants unilaterally installed cages—euphemistically named Therapeutic Treatment Modules (TTMs)—in inpatient settings for use during mental health treatment.  Plaintiffs have repeatedly objected to Defendants' routine use of cages to provide psychiatric treatment for all PIP patients on Max custody, without accounting for the patients' individual circumstances or mental health needs.  Based on this dispute, the Court ordered the parties to engage in settlement negotiations about the use of TTMs in inpatient settings. July 26, 2021 Order, ECF No. 7246 at 1-2.

Beginning in October 2021, the parties attended three settlement conferences overseen by Magistrate Judge Newman to negotiate CDCR's use of TTMs in inpatient settings and the treatment of patients on Max custody.  *See id.*; Dec. 9, 2021 Stipulation and Order, ECF No. 7392 at 1-2.  As a result of the settlement conferences, the parties reached an agreement governing the use of TTMs to provide mental health care to *Coleman* class members in PIPs, coupled with a new policy to reduce the number of patients subjected to Max custody restrictions, and filed a stipulation for the Court's approval.  Nov. 4, 2021 Stipulation, ECF No. 7366 (stipulation and proposed order); 7367 (Memo re Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants).

On November 8, 2021, this Court issued an order to show cause why the Court should not enter an order: (1) approving Section I of the Stipulation; (2) modifying Section II of the Stipulation to set a deadline of one year from court approval of Defendants' plan for resolution of any and all enforcement or interpretation issues; and (3) declining to approve Section III of the Stipulation.  Nov. 8, 2021 Order to Show Cause ("OSC"), ECF No. 7368 at 1-2.  The parties filed a joint response to the OSC on

November 19, 2021 that provided revisions to Section II of the Stipulation clarifying the parties' agreement.  Nov. 19, 2021 Joint Response to OSC, ECF No. 7380 at 2-3.  The parties also stated that Section III of the Stipulation was critical to reaching an agreement, but did not revise that originally agreed upon language.  *Id.* at 4.  Along with the joint response to the OSC, the parties filed a revised version of the TTM Stipulation and proposed order reflecting the clarifying changes in Section II.  *See* ECF No. 7381. Nothing else changed with the revised version of the stipulation submitted by the parties, including paragraph 15, which provides:  "The parties agree that Defendants' plan shall not be included in the MHSDS Program Guide or Compendium.  This stipulation sets forth the entirety of the remedy related to the issues set forth above."  *See* Exhibit A, Nov. 19, 2021 Joint Response to OSC, ECF No. 7380 at 7-12 (redlined version of the Stipulation and [Proposed] Order with proposed modifications to Section II only).

The Court granted the revised TTM Stipulation on December 9, 2021.  Stipulation and Order, ECF No. 7392 ("TTM Stipulation").  In so doing, however, the Court conditionally approved paragraph 15 of the TTM Stipulation "pending final resolution of what updating process the court will adopt for the Program Guide in the future."  *Id*. at 6. On January 6, 2022, Defendants filed a motion to amend the December 9, 2021 order based on the Court's conditional approval of Paragraph 15, asserting that the language in that provision was expressly intended to "remove[] the Plan from the [Program Guide] updating process."  *See* ECF No. 7412 at 3-5.  On February 7, 2022, the Court discontinued the Program Guide and Compendium updating process, gave final approval to paragraph 15 of the TTM Stipulation, and referred to the Special Master the question of whether the TTM Stipulation should be reflected in the list of CQIT indicators.  Feb. 7, 2022 Order, ECF No. 7456 at 3-4.  Defendants appealed the order, but then voluntarily dismissed their appeal.  *See* Ninth Cir. Case No. 22-15369.

In response to the Court's directive, the Special Master recommended creating "a new placeholder indicator to measure adherence to CDCR's policy regarding max custody patients housed in psychiatric inpatient programs (PIPs)."  Appendix A, Special Master's

Proposed Resolution of Data Remediation Dispute: Placeholder – PIP – Max Custody Review ("Special Master Report re Max Custody Indicator", or "Report"), ECF No. 8039 at 10-14.  The Special Master recommended measuring the following requirements with the new indicator:

- Pre-transfer ICC review for Max custody patients referred to the ICF level of care;
- PIP ICC review of Max custody patients within 10 calendar days of arrival;
- MHCT bi-weekly review of Max custody patients;
- DAI Deputy Director results of bi-weekly videoconference of Max custody PIP patients;
- The number and percent of PIP patients retained on Max custody; and
- The number and percent of PIP patients removed from Max custody.

*Id.* at 11-12.  In support of his recommendation, the Special Master detailed Defendants' consistent failure to provide adequate mental health care to Max custody PIP patients, an issue on which he has consistently monitored and reported.  *Id.* at 13.  The Special Master found that it is necessary to measure the requirements of Defendants' Max custody reduction review process because it is "intended to remedy this longstanding deficiency," and is therefore a "a foundational element of defendants' efforts to improve access to care for these patients that should be measured by a key indicator."  *Id.*

Defendants filed objections to the Special Master Report re Max Custody Indicator on October 27, 2023.  ECF No. 8039 at 1.  Plaintiffs filed their response on November 3, 2023.  ECF No. 8051.  On November 16, 2023, the Court directed Defendants to "bring an appropriate motion focusing for the court the question whether this policy should be included in CQIT" and noting that it may seek additional input from the Special Master to resolve the motion.  ECF No. 8069 at 13.  Defendants filed their motion on November 30, 2023.  ECF No. 8076 ("Motion").

II.   **LEGAL STANDARD**

The Special Master Report re Max Custody Indicator includes findings regarding

[4401252.13]

4

1    the data remediation process and the Special Master's monitoring to support his

2    recommendation regarding the outcome of the PIP Max custody placeholder indicator

3    dispute now before the Court, and is therefore a compliance report within the meaning of

4    the Order of Reference.  *Cf.* Mar. 27, 2020 Order, ECF No. 6539 at 3; Order of Reference,

5    ECF No. 640 at 4.  The Order of Reference provides that "the court shall accept the special

6    master's findings of fact unless they are clearly erroneous." *Id.* at 8.  A finding is "clearly

7    erroneous if, on review of the entire evidence, the reviewing court arrives at the firm

8    conviction that the finding is mistaken." *In re U.S.A. Motel Corp.*, 450 F.2d 499, 503 (9th

9    Cir. 1971); *see also McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) ("To

10   be clearly erroneous, a decision must strike the court as more than just maybe or probably

11   wrong; it must … strike [the court] as wrong with the force of a five-week-old,

12   unrefrigerated dead fish." (internal citations and quotation marks omitted)).  Because

13   Defendants' Motion requests that the Special Master's recommendation arising from those

14   findings be rejected, Defendants have the burden of proving clear error.  *See Oil,*

15   *Chemical & Atomic Workers Int'l Union v. N.L.R.B.*, 547 F.2d 575, 580 (D.C. Cir. 1976);

16   *see also* Motion at 3.

17          Moreover, this Court has held that the provisionally approved key indicators should

18   "replicate[] the corresponding information captured by the Special Master in his monitoring

19   reports," and that "any disputes over [his] decisions will be reversed by the court only if the

20   decisions are clearly erroneous." *See* May 24, 2023 Order, ECF No. 7847 at 8-9.

21   **III.   THE SPECIAL MASTER'S RECOMMENDATION TO INCLUDE THE PIP**
     **MAX CUSTODY PLACEHOLDER INDICATOR IN THE KEY**
22   **INDICATORS LIST IS NOT CLEARLY ERRONEOUS.**

23          **A.   The TTM Stipulation is an Enforceable Court Order and a Part of the**
                 ***Coleman* Remedy.**
24

25          Defendants repeatedly insinuate that the Program Guide and Compendium are

26   coextensive with the Eighth Amendment requirements in this case, and therefore argue by

27   extension that because the parties agreed the TTM Stipulation is not part of those

28   documents, it is necessarily not part of the remedy.  *See* Motion at 2-3 (asserting, *inter*

1   *alia*, that the TTM Stipulation "expressly precludes the inclusion of the PIP Max Custody

2   Review Policy from the remedy in this case"), 8 (claiming "the parties expressly excluded

3   [the TTM Stipulation] from the remedy"). But their argument rests on a fundamental

4   misreading of both this Court's orders and the express language of the TTM stipulation.

5         First, this Court has repeatedly and specifically held that the remedy in this case

6   extends beyond the Program Guide and Compendium to include other court-ordered

7   requirements. Examples include bed planning and minimum clinical staffing requirements

8   (*see* ECF No. 6846 at 5, n.2) and the recently issued PIP minimum treatment and clinical

9   staffing requirements (ECF No. 7923, 7924). All of these are enforceable aspects of the

10  remedy, yet are not included in the Program Guide. Indeed, Defendants have agreed to

11  measure requirements from each of these aspects of the remedy in the key indicator process.

12  This is consistent with the Court's repeated statements, which Defendants acknowledge, that

13  CQIT is required to "distill[] elements of the Program Guide, the Compendium and *the other*

14  *remedial measures*," *see* Feb. 7, 2022 Order, ECF No. 7456 at 2, and to "accurately measure

15  *remedial requirements* and transition monitoring from the Special Master to defendants."

16  *See* May 24, 2023 Order, ECF No. 7847 at 7 (emphasis added).

17        Nor does the text of the TTM Stipulation exclude its provisions from the *Coleman*

18  remedy as Defendants assert. Indeed, their argument contradicts the exact wording of the

19  TTM Stipulation, which describes its contents as "set[ting] forth the entirety of the *remedy*

20  related to the issues set forth above." ECF No. 7392 at 5 (emphasis added). While

21  Defendants negotiated to exclude the TTM Stipulation from the Program Guide and

22  Compendium as part of their overall objection to the now-defunct Program Guide updating

23  process, *see* ECF No. 7412 at 3-5, the language of the stipulation very clearly labels its

24  provisions "the remedy" for the parties' disputes around the use of TTMs and Max custody

25  in the PIPs, while maintaining their respective legal positions. *See* ECF No. 7392 at 4

26  (paragraphs 13 and 14 providing the parties' respective positions). The TTM Stipulation is

27  undeniably an enforceable remedial court order that sets out the terms for how Defendants

28  are permitted to use TTMs to deliver mental health care to PIP patients. *Id.* at 2. Among

other obligations, the TTM Stipulation requires that Defendants implement and train staff

on the Max custody reduction review process, structure PIP treatment so that it addresses

patients' underlying behaviors that cause them to be placed on Max custody, and "train

staff to respond to [patient] behaviors in the PIPs without using RVRs" and without

placing patients on Max custody.  *Id.* at 2-3.  Certain document production provisions of

the TTM Stipulation are time-limited, but as Defendants recognize, their underlying

obligations under the TTM Stipulation do not expire.  *See id.*; *see also* Motion at 4, n.2.

Indeed, the parties jointly represented that "the Court will have jurisdiction to enforce the

terms set forth in the Stipulation . . .."  ECF No. 7380 at 4 (referencing Section II of the

TTM Stipulation).

As such, the TTM Stipulation is an enforceable remedy despite its omission from

the Program Guide and Compendium.  Defendants' claim that adopting the Special

Master's recommendation would fundamentally and impermissibly alter the terms of the

TTM Stipulation does not withstand scrutiny, and there is no basis for their request that the

Court set aside the stipulation and order adopting it.

**B.    The Max Custody Review Process Should Be Included In CQIT Because Of The Special Master's History Of Monitoring Custodial Impediments to Inpatient Treatment And The Terms Of The Max Custody Review Process**

When the Court approved the entire TTM Stipulation, it also referred the question

of whether to include "provisions regarding TTMs . . . in the list of CQIT indicators

currently under review during the Twenty-Ninth Monitoring Round" to the Special Master.

ECF No. 7456 at 4.  This directive is logical given that the TTM Stipulation is part of the

*Coleman* remedy, and CQIT is intended to be a "comprehensive tool for monitoring the

key remedies in this case" including "institutional compliance with the court-approved []

remedies."  ECF No. 6846 at 26.  In response to the February 7 order, the Special Master

recommended, based on factual findings that Defendants do not challenge, "creation of a

new placeholder indicator to measure adherence to CDCR's policy regarding max custody

patients housed in [PIPs]."  ECF No. 8039 at 10 (Special Master Report re Max Custody

Indicator).  Defendants' Motion must be denied to ensure compliance with the Court's requirement that "each key indicator must [] be designed and operationalized to accurately capture the corresponding information gathered and reported on by the Special Master. . .." May 24, 2023 Order, ECF No. 7847 at 7.

The Special Master Report re Max Custody Indicator described the long history of "woefully inadequate mental health care to the most acutely mentally ill members of the plaintiff class (i.e. those at the ICF and APP levels of care) who are placed on maximum custody status."  ECF No. 8039 at 12.  The Special Master further found that Defendants' Max custody review process created pursuant to the TTM stipulation appears "intended to remedy this longstanding deficiency," such that it constitutes "a foundational element of defendants' efforts to improve access to care" for Max custody patients.  *Id.* at 13.  Thus, in this context, the Special Master determined that it is necessary to measure the requirements of the Max custody memorandum to determine if Defendants are taking the necessary, court-ordered steps to remove barriers to access to mental health treatment for Max custody PIP patients.  *Id.* at 13.  Defendants do not seriously contest any of these findings and certainly identify no clear error.

It was not clearly erroneous for the Special Master to conclude that Max custody policy requirements should be included in the CQIT key indicators so that Defendants can eventually "self-monitor" this aspect of the remedy.  The Special Master has a long history of raising alarm bells about inadequate treatment provided to high custody patients in inpatient settings, stretching back at least to 2013 when the Court, upon the recommendation of the Special Master, first ordered Defendants to review its overly restrictive inpatient custodial policies and to submit a plan to address the Special Master's concerns.  *See* November 13, 2013 Order, ECF No. 4925 at 20-21.  Since then, the Special Master has routinely monitored and documented the ways in which CDCR's overuse of Max custody restrictions impedes mental health treatment in the PIP.  *See, e.g.*, ECF No. 8039 at 12-13, n.5 (Special Master Report re Max Custody Indicator identifying relevant findings in the 29th and 30th Round PIP Monitoring Reports).

1    The most recent Special Master monitoring report concluded that, "[a]cross all
2    PIPs, patient access to group and individual treatment was negatively impacted by their
3    maximum security status."  May 11, 2023, 30th Round Monitoring Report, Part A: Special
4    Master's Monitoring Report on the Psychiatric Inpatient Programs ("30th Round
5    Monitoring Report, Part A"), ECF No. 7833 at 32.  The Special Master has consistently
6    observed that CDCR continues to provide inadequate care to maximum custody patients in
7    the PIPs.  *See* Jan. 28, 2021, Special Master's Monitoring Report on the Mental Health
8    Inpatient Care Programs for Inmates of the California Department of Corrections and
9    Rehabilitation ("Jan. 28, 2021 Inpatient Monitoring Report"), ECF No. 7039 at 47; *see*
10   *also* 29th Round Monitoring Report, Part A, ECF No. 7555 at 43-44 ("Findings from the
11   review period and at the time of the site visits could not be clearer: many *Coleman* patients
12   on maximum custody status received virtually no structured treatment and limited out-of-
13   cell time during the monitoring round and have not for years."); Jan. 28, 2021 Inpatient
14   Monitoring Report, ECF No. 7039 at 49 ("Maximum custody patients generally received
15   inadequate access to group treatment and extraordinarily little out-of-cell time."); Aug. 30,
16   2018, Special Master's Monitoring Report on the Mental Health Inpatient Care Programs
17   for Inmates of CDCR, ECF No. 5894 at 163 ("Out-of-cell time provided to Maximum
18   Custody patients [at CMF-PIP] was inadequate."); at 171 (Max custody patients were not
19   permitted to participate in group therapies).
20   The extensive history of inadequate mental health treatment provided to Max
21   custody PIP patients provided the backdrop for the parties' TTM Stipulation.  Plaintiffs
22   agreed to continued but limited use of cages in inpatient settings only because Defendants
23   agreed to adopt a regular process by which they would review and remove patients who
24   were unnecessarily on Max custody.  *See generally* ECF No. 7367 at 1-7, Ex. A (Memo re:
25   Maximum Custody Reduction Review for Psychiatric Inpatient Program Participants).
26   Plaintiffs agreed to this compromise in hopes of significantly decreasing the number of PIP
27   patients designated as Max custody, and thereby increasing overall access to care.  The
28   Special Master correctly found these entrenched problems, identified in monitoring report

1  after monitoring report, motivated Defendants' creation of the Max custody review

2  process.  ECF No. 8039 at 13.

3      In the 30th Round Monitoring Report, the Special Master began monitoring whether

4  Defendants are in compliance with the requirements of the Max custody reduction review

5  memorandum.  30th Round Monitoring Report, Part A, ECF No. 7833 at 29-32 (providing

6  update on Max custody PIP patients and implementation of the parties' agreement

7  regarding Max custody reduction reviews); *id.* at 32 ("The 210 previews conducted

8  during the monitoring period resulted in 56 (26.7%) maximum custody reductions.").  And

9  though the Special Master found that there was "relative improvement in maximum

10 custody patients' access to mental health treatment observed during monitoring round, this

11 subpopulation of *Coleman* class members continued to experience significant access to

12 care issues in nearly all PIP institutions."  *Id.* at 32 (internal quotations omitted).

13 Defendants did not object to the substance of these findings, or assert that monitoring of

14 the Max custody review process was beyond the scope of the remedy or the Special

15 Master's powers.

16     The Special Master correctly determined that the court-ordered Max custody review

17 process contained in the TTM Stipulation is specifically designed to address the ongoing,

18 severe impediments to care faced by high-custody patients in the PIPs, and the Special

19 Master has monitored it for that very reason as stated in his Report.  *See* ECF No. 8039 at

20 13.  It is a critical part of the remedy in this case, and should be included as a key indicator

21 as the Special Master recommends.  *Id.*

22     Defendants also argue that the Special Master's determination that a PIP Max

23 custody placeholder indicator is necessary is clearly erroneous because it focuses on

24 whether Defendants are complying with the Max custody reduction review memorandum

25 rather than measures of structured treatment and/or out-of-cell time.  Motion at 12-13.

26 This ignores the Special Master's findings that Defendants' overuse of Max custody status

27 in the PIPs has severely impeded access to desperately need care, above and beyond any

28 overall treatment deficiencies suffered by non-Max PIP patients.  *See, e.g.*, 30th Round

[4401252.13]

10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PIP MAX CUSTODY
PLACEHOLDER INDICATOR FROM CQIT AND TO ENFORCE SETTLEMENT

1  Monitoring Report, Part A, ECF No. 7833 at 32 (finding that "patient access to group and

2  individual treatment was negatively impacted by their maximum security status.").

3  Indicators generally measuring structured treatment and out-of-cell time offered in the

4  PIPs will not capture that disparity, and will not measure compliance with the court-

5  ordered remedy Defendants agreed to implement to minimize the barriers specific to the

6  subgroup of Max custody PIP patients.  *See* ECF No. 8039 at 13.

7        **C.**     **The TTM Stipulation Does Not Limit the Special Master's Authority or Ability to Monitor Treatment for Max Custody PIP Patients.**

8

9        The TTM Stipulation requires Defendants to submit a report to the Special Master

10  and Plaintiffs on the status of implementing the Max custody reduction review process

11  within nine months of approval of the stipulation and thereafter, provide quarterly

12  document productions for a minimum of two years.  ECF No. 7392 at 3-4.  It further

13  permits Plaintiffs' counsel to "observe a reasonable number of Max custody review ICCs

14  for a two-year period."  *Id.* at 4.  Defendants argue that the Court should reject the Special

15  Master's recommendation to create a PIP Max custody placeholder indicator because it

16  would impermissibly "expand[] a two-year implementation check into an ongoing and

17  permanent reporting obligation," beyond the parties' agreement.  Motion at 10-11.

18  Defendants' argument misstates the extent of their obligations in multiple key ways.

19        First, while Defendants insinuate that the reporting obligations become

20  automatically obsolete after two years, that is not the case.  The TTM Stipulation requires

21  the parties to meet and confer regarding the frequency and scope of the reporting

22  obligations at the end of the two-year period, which will then be subject to the dispute

23  resolution process and future litigation if the parties disagree.  ECF No. 7392 at 4.  While

24  the reporting obligations may or may not change after the initial two-year period, they do

25  not automatically self-destruct as Defendants seem to imply.

26        More significantly, Defendants are simply wrong to claim that the TTM Stipulation

27  "explicitly addressed how the policy would be monitored going forward."  Motion at 4; *see*

28  *also id. at* 10-11.  The TTM Stipulation addresses the parameters of *Plaintiffs' rights* to

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PIP MAX CUSTODY
PLACEHOLDER INDICATOR FROM CQIT AND TO ENFORCE SETTLEMENT

1   monitor the agreement directly.  The negotiated provisions necessarily bind the parties—

2   not the Special Master, who is not a party to the TTM Stipulation, and did not negotiate or

3   agree to be bound by its terms.  Nor is there any legitimate argument that the TTM

4   Stipulation supersedes the Order of Reference, which expressly tasks the Special Master

5   with monitoring the remedy and provides him with "unlimited access to the records, files

6   and papers maintained by defendants to the extent that such access is related to the

7   performance of the special master's duties . . .."  Dec. 11, 1995, Order of Reference, Dkt.

8   No. 640 at 6.  Under the Order of Reference, the Special Master is entitled to "unlimited

9   access" to information regarding implementation of the Max custody reduction review

10  process, including in the process of development and implementation of Defendants'

11  quality improvement process.  There is no conflict between the TTM Stipulation and the

12  Special Master's recommendation to create a new CQIT indicator.

13          There is no dispute that the TTM stipulation is a court-ordered remedy subject to

14  ongoing jurisdiction and monitoring, regardless of whether it is part of the Program Guide

15  and regardless of whether Defendants are obliged to facilitate Plaintiffs' direct monitoring.

16  *See* Motion at n.2.  The Special Master's recommendation to create a new PIP Max

17  custody placeholder indicator in CQIT is even more important now that it is apparent that

18  there is no other reliable source of information regarding Max custody usage for *Coleman*

19  class members.  Defendants acknowledge that the report Plaintiffs previously relied on to

20  see information and trends regarding the Max custody issues—the "Current Inpatient

21  Census" report—is "an older report and not one that has or will be reviewed in data

22  remediation."  Declaration of Jenny S. Yelin in Support of Plaintiffs' Response to

23  Defendants' Objections to the Special Master's Proposed Resolution of Data Remediation

24  Disputes (PIP Max Custody), ECF No. 8051-1 at 2, ¶ 2 & Ex. A.  They have offered no

25  substitute.  It is therefore unpersuasive for Defendants to argue that Plaintiffs "bargained

26  for and agreed to" the data being provided pursuant to the TTM Stipulation, *see* Motion at

27  11, when Plaintiffs could not have been aware in 2021 that the information provided by

28  Defendants upon which they had historically relied was unreliable and would not be

[4401252.13]                                                12

1  remediated.

2       More importantly, Defendants' refusal to remediate data necessary for the Special

3  Master to monitor compliance with the court-ordered Max custody remedy interferes with

4  his ability to monitor under the Order of Reference.  It also impedes Defendants' own

5  quality assurance program, which is itself a key component of the remedy, given that

6  Defendants admit their substantive obligations under the TTM Stipulation remain ongoing,

7  *see* Motion at n.2, yet have identified no mechanism for reliably self-monitoring their

8  compliance absent adoption of the Special Master's recommendation.  *See Coleman v.*

9  *Wilson*, 912 F. Supp. 1282, 1308 (E.D. Cal. 1995) (finding that "development of a quality

10  assurance program is an appropriate remedy for constitutional deficiencies in the delivery

11  of prison health care.").  The Court should deny Defendants' Motion and adopt the Special

12  Master's recommendation to ensure that there is transparent and accurate information

13  about this vulnerable population and important aspect of the remedy available to the

14  Special Master and the Court, as well as CDCR itself.

15       **D.    The Special Master's Monitoring of the Max Custody Review Process
           Does Not Violate the PLRA.**
16

17       Finally, Defendants half-heartedly assert that an order adopting the Special Master's

18  proposed placeholder indicator would run afoul of the Prison Litigation Reform Act.

19  Motion at 13.  But Defendants waived this argument by failing to raise it in their informal

20  objections to the Special Master's initial recommendation.  *See* ECF No. 8039 at 25-26

21  (Defendants' Level Two Dispute Statement objecting to Special Master's June 23, 2023

22  letter recommending development of "an indicator for '[t]imely review of max custody

23  patients in compliance with CDCR policy' for patients referred and admitted to Psychiatric

24  Inpatient Programs (PIP)").

25       Moreover, Defendants' argument is legally incorrect.  Identifying a placeholder

26  indicator to measure adherence to CDCR's policy regarding Max custody PIP patients—a

27  part of the *Coleman* remedy—is not prospective relief pursuant to 18 U.S.C.

28  § 3626(a)(1) (A).  Regardless of whether the TTM Stipulation's requirements form the

[4401252.13]

13

1   basis for a key indicator or not, Defendants admit they are bound to comply with its

2   substantive terms indefinitely.  *See* Motion at n.2   They also cannot contest that the

3   Special Master is required to monitor Defendants' compliance with the court-ordered

4   remedy under the Order of Reference (and indeed has monitored the policy in question),

5   and is entitled to transparent and accurate information in order to do so.  The Special

6   Master's recommendation thus facilitates his monitoring, which this Court has repeatedly

7   held does not constitute prospective relief.  *See* Sept. 5, 2013 Order, ECF No. 4784 at 3-5

8   (collecting cases and prior holdings in this case).

9   Further, Defendants' argument that the Court has never addressed the PLRA

10  standards "with respect to the use of TTMs to provide treatment to Max Custody patients

11  in PIPs" (Motion at 13) ignores the fact that they willingly negotiated the TTM Stipulation

12  and submitted it for Court approval, and in doing so, did not ever dispute the Court's

13  power to order the substantive terms of that stipulation.  Far from claiming the Court

14  lacked authority to order the relief to which they stipulated, Defendants expressly

15  represented that the Court has ongoing jurisdiction to enforce the TTM Stipulation.  ECF

16  No. 7380 at 4.  Defendants cannot now claim that an order merely facilitating monitoring

17  of that stipulation somehow runs afoul of the PLRA.

18  Even if an order adopting the Special Master's recommendation did constitute

19  prospective relief, it would simply be an implementation of an existing remedy, which

20  does not require new PLRA findings.  *See Parsons v. Ryan*, 912 F.3d 486, 501 (9th Cir.

21  2018).  Moreover, again assuming arguendo that § 3626 does apply, the Court has made

22  the required findings by adopting findings made by the Special Master about abysmal

23  treatment provided in the PIPs, and how it is exacerbated by patients' placement on Max

24  custody status.  *See, e.g.*, 29th Round Monitoring Report, Part A, ECF No. 7555 at 30-31

25  and n.26; Aug. 29, 2022 Order, ECF No. 7608 at 6; *see also* ECF No. 8039 at 13 (Special

26  Master Report re Max Custody Indicator making similar findings).  The Special Master has

27  determined the Max custody review process implemented pursuant to the TTM Stipulation

28  seeks to remedy these deficiencies and is therefore a "foundational element of defendants'

[4401252.13]                                    14

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PIP MAX CUSTODY
PLACEHOLDER INDICATOR FROM CQIT AND TO ENFORCE SETTLEMENT

1   efforts to improve access to care for these patients."  ECF No. 8039 at 13 (Report).

2   Defendants do not dispute these findings, much less attempt to show clear error.  The

3   Court can therefore certainly find that the Special Master's proposed placeholder indicator

4   is necessary to ensure that Defendants remedy this entrenched, ongoing violation.

**CONCLUSION**

6          For the forgoing reasons, the Court should deny Defendants' motion to exclude the

7   PIP Max custody placeholder indicator from the key indicator list, and reject Defendants'

8   call to set aside the TTM Stipulation and order approving it.

**CERTIFICATION**

10         Plaintiffs' counsel certifies that she reviewed the following Orders relevant to this

11  filing: *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995), *Coleman v. Brown*, 938 F.

12  Supp. 2d 955 (E.D. Cal. 2013); *Coleman v. Newsom*, No. 2:90- cv-0520 KJM DB P, 2023

13  WL 5428481 (E.D. Cal. Aug. 23, 2023); ECF Nos. 640, 4784, 4925, 6539, 6846, 7246,

14  7368, 7392, 7456, 7608, 7847, 7923, 7924, 8069.

16  DATED:  December 14, 2023          Respectfully submitted,

17                                     ROSEN BIEN GALVAN & GRUNFELD LLP

18                                     By:  */s/ Amy Xu*
                                            Amy Xu
19

20                                     Attorneys for Plaintiffs

[4401252.13]

15
