ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS, SBN 321994
CARSON R. NIELLO, SBN 329970
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                    Plaintiffs,<br><br>   v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                                    Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF BRIAN ZOLLWEG, Psy.D. IN SUPPORT OF DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S THIRTIETH ROUND MONITORING REPORT – PART B: SPECIAL MASTER'S MONITORING REPORT ON THE INPATIENT MENTAL HEALTH CARE PROGRAMS AT THE CALIFORNIA DEPARTMENT OF STATE HOSPITALS** |

1

Zollweg Decl. ISO Objections to 30th Round Monitoring Report – Part B (2:90-cv-00520 KJM-DB (PC))

19376383.4

I, Brian Zollweg, Psy.D., declare as follows:

1. I am currently employed as the Assistant Chief Psychologist of the Department of State Hospitals (DSH). I have held this position since February 2022. I have been employed by DSH since December 2020. Prior to my employment with DSH, I was employed by the California Department of Corrections and Rehabilitation (CDCR) as a Senior Psychologist Specialist within the Inpatient Referral Unit (IRU). I worked for CDCR in the Statewide Mental Health Program for approximately four-and-a-half years. I make this declaration in support of Defendants' objections to the Special Master's December 15, 2023 thirtieth round monitoring report on the DSH inpatient mental health programs (Report). I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

2. Following my receipt and review of the Special Master's draft monitoring report in June 2023, I reviewed the charts of patients admitted to and discharged from DSH during the reporting period. Based on that review, *Coleman* patients' post-discharge status supports the adequacy of treatment DSH provided to those patients. Of the seventy-four *Coleman* patients discharged to a lower level of care during the monitoring period, twelve were admitted to a MHCB within thirty days of discharge. Only four of those patients were admitted to the MHCB due to genuine psychiatric distress and of those four, only two were admitted to inpatient care (one was admitted to an acute level of care and one was admitted to an intermediate level of care). The other eight patients who were admitted to the MHCB within thirty days of discharge were determined to have used the MHCB for secondary gain, had safety concerns, or had difficulty adjusting to prison due to spending prolonged time in a state hospital setting.

3. The Special Master's Report includes clinical reviews of patients treated in DSH programs during the monitoring period. (ECF No. 8085 at 133-227.) These reviews include criticisms that focus on individual treatment issues and present clinical opinions that are not supported by patients' charts or the clinical opinions and impressions of my staff.

4. In response to the Special Master's finding that the lack of individual therapy resulted in patients not receiving adequate treatment, I met with the Special Master and his experts and asked them for evidence to support their finding that not using one-on-one treatment

resulted in patients not receiving adequate treatment. The Special Master and his experts were not able to point to any specific patient or chart reviewed to support their finding and I am not aware of any standards or requirements for the provision of individual therapy.

5. The Report references the review of Patient Y's chart (ECF No. 8085 at 167-169) and concludes he was clinically indicated for individual treatment, but it provides no rationale or explanation that shows the individual therapy was clinically indicated. Although not included in Patient Y's summary in the Report, the clinical discharge summary that was provided to the monitoring team notes that Patient Y attended 81% of his treatment groups, socialized well with peers, played games in the day room, and showed no signs of vegetative symptoms that would be consistent with a depressive disorder. Given his group attendance and significant improvement in signs and symptoms, there was no indication for individual treatment.

6. The Report references Patient O (ECF No. 8085 at 191-193) as an example of a patient whose treatment was inadequate due to a lack of individual treatment. But the findings in the Report reflect reasons other than a need for individual treatment to justify their finding that Patient O's treatment was inadequate. A reduction in group attendance from 100% to 80% is not a clinically indicated rationale for requiring individual therapy as the Report contended because Patient O continued to have high attendance and participation in group for over six months of his treatment at DSH-Coalinga.

7. The Special Master's findings concerning individual treatment are not consistent with evidence-based psychiatric or psychological treatment standards. DSH practitioners utilize individual treatment when clinically indicated. Patients receive individual therapy only when clinicians believe treatment objectives will be met through individual therapy. The Report does not provide any psychiatric or scientific support that individual therapy is the appropriate default standard of care.

8. In response to the Special Master's recommendation that the Court enter an order requiring that DSH "take all necessary steps to prioritize the identification and referral of all appropriate Coleman patients to DSH, DSH is already taking reasonable steps to ensure that DSH beds are appropriately used for patients who qualify for placement and treatment in the unlocked

2
Zollweg Decl. ISO Objections to 30th Round Monitoring Report – Part B (2:90-cv-00520 KJM-DB (PC))

19376383.4

dorm setting. Those patients' qualifications are based on thorough assessments and vetting under current policies that govern placement in DSH. The steps under the referral process are used to manage inpatient referrals and admissions to DSH. CDCR refers patients to DSH based on CDCR clinical input. And DSH conducts a thorough chart review of the patient and previous hospitalizations in accordance with the MOU and Policy Directive 3601: Referral, Admission and Movement.

9. Defendants have recently taken additional steps to augment the reviews of patients under the current policies. The *Trial Processes for DSH Review of Coleman Patients* was recently presented to the Special Master and Plaintiffs and includes the review every inpatient referral with a Least Restrictive Housing designation of Unlocked Dorms regardless of clinical housing recommendation. The purpose of the additional reviews is to increase the pool of referrals DSH reviews and may lead to increase in admissions to DSH.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4th day of January, 2024, at Sacramento, California.

*/s/ Brian Zollweg*
Brian Zollweg, Psy.D.

3

Zollweg Decl. ISO Objections to 30th Round Monitoring Report – Part B (2:90-cv-00520 KJM-DB (PC))

19376383.4