ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
Attorneys for Defendants

PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS, SBN 321994
CARSON R. NIELLO, SBN 329970
HANSON BRIDGETT LLP
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF KAYLEN KADOTANI IN SUPPORT OF DEFENDANTS' PORTION OF JOINT STATEMENT RE: TOUR DISPUTE** |

I, Kaylen Kadotani, declare as follows:

1.      I am an attorney duly admitted to practice before this Court. I am a partner with Hanson Bridgett LLP, attorneys of record for Defendants. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2.      Shortly following the conclusion of the November 7, 2023 enforcement proceedings, my office, on behalf Defendants, contacted Plaintiffs' counsel by email to reinitiate

1

20301421.1

1    the parties' prior meet-and-confer discussions regarding the scope and conduct of the

2    VRJS/Falcon expert tours that were previously stayed by the Court. I was copied on that email

3    correspondence, along with most, if not all, subsequent emails between the parties with respect to

4    this subject matter.

5        3.    Thereafter, counsel for the parties met and conferred by video conference four

6    times and exchanged numerous emails and draft documents over the course of several weeks in

7    order to discuss and negotiate the terms, conduct, scope, and logistics of the VRJS/Falcon tours. I

8    personally attended these video conference meetings and was copied on these email exchanges.

9        4.    Through these meet-and-confer discussions, the parties were able to reach

10   agreement on several issues regarding the continuation of the VRJS/Falcon tours, as set forth in

11   the parties' joint submission, filed herewith. Counsel for the parties also agreed that once the

12   tours restarted, they would maintain ongoing discussions, as necessary, in order to address any

13   unanticipated issues that might arise.

14       5.    However, despite conferring for almost six weeks, the parties were not able to

15   reach agreement with respect to: (1) the observation of 1:1 treatment sessions and screenings; and

16   (2) the scope and pacing of the tours, including whether Defendants' experts should be permitted

17   to visit all 28 institutions where mental health care is provided and the number of tours that would

18   occur per month. As a result, the parties agreed to file a joint submission to apprise the Court of

19   the areas of agreement and disagreement, and to request a ruling as to the outstanding issues.

20       6.    Defendants also contend that the Court should issue its ruling based on the joint

21   written submission without oral argument in order to avoid further delays. Plaintiffs, on the other

22   hand, will not agree to waive oral argument.[1]

23       7.    Through the parties' meet-and-confer discussions, Plaintiffs' counsel stated that

24   their objection to permitting VRJS/Falcon to observe 1:1 treatment sessions and screenings was

25   based on the concern that the presence of a silent third-party observer during the session may

26   impact the manner in which the patient interacted with his or her clinician, such as withholding

27   _____

[1] Notably, Plaintiffs had previously stated they "will not object to submitting [briefing on
Defendants' Motion to Lift Injunction Halting VSJR/Falcon Tours (ECF No. 8004)] without oral
28   argument so that the matter can be decided sooner." (Dec. of S. Wolff, ECF No. 8004-1, at ¶ 5).

1   information or not speaking freely.

2       8.     Counsel for Defendants proposed several concessions, safeguards, and other

3   conditions in an attempt to reach agreement with Plaintiffs with respect to the observation of 1:1

4   treatment sessions, but Plaintiffs' counsel were unwilling to compromise. Specifically,

5   Defendants have proposed the following:

- At each facility toured, upon obtaining **informed consent** from the patient, a VRJS/Falcon clinician would **silently observe** a small number of 1:1 treatment sessions and screenings.

- Plaintiffs' counsel would be permitted to meet privately with the patients beforehand;

- Copies of the informed consent script would be available in both English and Spanish and consent would be requested from the patient before the expert enters the room so as to eliminate any pressure the patient may feel to consent;

- The CDCR clinician would have the option to object to the observation if they believe informed consent was not obtained or if it might interfere with or disrupt the treatment or worsen a patient's condition;

- During the session, only the CDCR clinician, patient, VRJS/Falcon clinician, and Plaintiffs' counsel would remain in the room (i.e., Defense counsel would leave);

- The patient could revoke the informed consent at any time and terminate VRJS/Falcon's silent observation; and

- The patient would have the opportunity to meet with the CDCR clinician privately immediately following the observed portion of the session without the expert or Plaintiffs' counsel present.

18       9.     Defendants' counsel have also invited Plaintiffs' counsel to suggest other

19   conditions or safeguards with respect to 1:1 observations, but no response or proposals were

20   provided.

21       10.    Plaintiffs' counsel also object to VRJS/Falcon touring all 28 CDCR institutions

22   where mental health care is provided. Rather, Plaintiffs' counsel seek to limit the tours to a "pilot

23   of a subset of institutions, with further discussions to follow before any further tours occur." (*See*

24   Email from Jenny Yelin, dated 12/11/23 [attached hereto as **Exhibit C**].) Specifically, Plaintiffs

25   proposed to limit VRJS/Falcon to just ten additional tours. (Email from Ms. Yelin, dated 12/13/23

26   [Exhibit C].) However, other than arguing that it would be burdensome to tour the 28 prisons,

27   Plaintiffs' counsel have not articulated any other basis for this proposed restriction, nor has

28   Plaintiffs' counsel specified which institutions they believed could be omitted or how

1  VRJS/Falcon could adequately evaluate the entire mental health care system with a subset of

2  tours.  Further, when asked how they arrived at the proposed ten additional tours, Plaintiffs'

3  response was that when adding the prior VRJS/Falcon tours, it equaled roughly half of the 28

4  institutions.  In other words, Plaintiffs' proposal is not based on some kind of scientific or

5  statistical methodology, nor is it the result of any analysis of the institutions, but is simply an

6  offer to split the difference.

7          11.    Despite the fact that the VRJS/Falcon tours are already at least six months behind

8  schedule, Plaintiffs' counsel also seek to further slow the pace of the tours, once resumed.  During

9  the parties' meet and confer discussions, they proposed just two facilities and 10 tour days per

10  month. (Email from Ms. Yelin, Dated 12/13/23 [Exhibit C].)[2]  On the other hand, Defendants

11  have already made significant concessions about the scheduling and pacing of tours, such as only

12  touring one institution at a time, avoiding touring on weekends and evenings (except in limited

13  circumstances as they may arise), and reducing the number of tours per month.  Defendants'

14  current proposal is for VRJS/Falcon to conduct up to three tours and 13 touring days per month.

15          12.    Attached hereto as **Exhibit A** is a true copy of the English version of the informed

16  consent script agreed to by the parties.

17          13.    Attached hereto as **Exhibit B** is a true copy of the Tour Parameters agreed to by

18  the parties.

19          I declare under penalty of perjury under the laws of the United States of America that the

20  foregoing is true and correct.

21          Executed on of January 17, 2024, at San Francisco, California.

22

23                                        */s/ Kaylen Kadotani*
                                          Kaylen Kadotani

24

25

26

27

---

28      [2] Plaintiffs have now backtracked on this proposal and are now seeking just one tour and
    five touring days per month.

4

20301421.1

# EXHIBIT A

**[To be translated into Spanish]**

<u>Informed Consent Script</u>

"Hello [insert patient(s)' name(s)].  Today, we are joined by two attorneys who have introduced themselves to you.  They are here today because a mental health expert has asked to silently observe our mental health treatment session.  The expert, [Expert's name], works for a team of experts from a group called VRJS/Falcon hired by CDCR, to study how mental health services are provided at this and other prisons.  The purpose of their observation is to help CDCR with mental health services.  CDCR may use what it learns to ask the Court to change mental health services or end court oversight of these services.

The decision to allow the expert to observe is up to you.  Whether you decide to allow observation or not, you will not be rewarded or punished in any way.

If you agree that it is okay for the expert to observe your treatment today, then he/she will come into the room.  If you do not feel comfortable with the expert observing, they will not join us and both attorneys here will also leave.  If you agree to the observation, but change your mind during our meeting, please let me know and we will ask them to leave.

Plaintiffs' counsel in *Coleman* are present and members of the Special Master Team may be present but this is not a tour or study by the *Coleman* Special Master or Plaintiffs' counsel.  Are you OK if the expert observes your [insert type of assessment/intervention]?"

[Please obtain verbal consent from each patient.  If you believe the patient does not understand, then the patient should be deemed to have declined consent.  No observation of a group shall take place if any patient objects to the observation.]

# EXHIBIT B

Falcon Tour Parameters

1. Plaintiffs' counsel may meet with their clients alone in advance of any patient interview.
    a. Plaintiffs' counsel agree not to preview the questions on the experts' question templates. Plaintiffs' counsel agree to maintain the confidentiality of the experts' question templates and agree not to disclose the experts' question templates outside of *Coleman*.
    b. Plaintiffs' counsel reserve the right to speak and terminate the interview if needed to protect their clients' attorney-client privilege or privilege against self-incrimination.
2. Defendants will provide Plaintiffs with a list of interviewees typically 48 hours in advance of the interviews. In atypical circumstances where Defendants are unable to provide the list of interviewees 48 hours in advance, they will make every effort to notify Plaintiffs as soon as practicable.
3. Plaintiffs' counsel, Defense counsel, and the expert will briefly explain to the clinician (outside the presence of any patients) that:
    a. CDCR has retained a team of experts to study how mental health services are provided at this and other prisons. The purpose of their observation is to help CDCR with mental health services. CDCR may use what it learns to ask the Court to change mental health services or end court oversight of these services.
    b. They are there to evaluate system and not individual clinician performance.
    c. They would like to silently observe the patient's treatment session and ask that the clinician read the agreed-upon informed consent script to the patient prior to proceeding with the treatment session.
    d. Verbal consent must be obtained from each patient. If the clinician believes that the patient does not understand, then the patient should be deemed to have declined consent. The clinician can otherwise object to the expert's observation if they believe the observation may interfere with or disrupt the treatment or worsen a patient's condition.
    e. No observation of a group may occur if the clinician or any patient objects to the observation.
    f. Printed copies of the consent script will be available in both English and Spanish and the treating clinician shall offer to provide each patient with a copy.
4. During the treatment session:
    a. Plaintiffs' counsel and defense counsel will briefly introduce themselves to the patient by stating their name, where they work, and their role (defense for the State or counsel for the patient) in the *Coleman* case.
    b. Plaintiffs' counsel and Defense counsel will be present when the informed consent script is read by the clinician to the patient(s). If the patient(s) consent(s), the Falcon expert will join the treatment session.
    c. Neither Plaintiffs' counsel nor Defense counsel will speak during the treatment session with the exception of responding to patient questions regarding the meaning of the informed consent script. Plaintiffs' counsel expect to remain silent during the observation but reserve the right to speak and even terminate an observation if needed to protect their clients' attorney-client privilege or privilege against self-incrimination.
    d. Otherwise, if Plaintiffs' counsel is asked a question during the treatment session (after informed consent is obtained), they will respond: "I'm unable to answer your questions here but can talk privately after your session concludes."
    e. If a patient asks questions regarding the meaning of certain lines in the informed consent script, Plaintiffs' counsel and Defense counsel agree to respond to the

question in as neutral a manner as possible.  For instance, if a patient asks, "what does it mean to end oversight in the Coleman lawsuit?" counsel's response is limited to: "it means that the Court currently oversees how mental health care is provided and it would end the Court's involvement, but CDCR would still provide mental health care to patients in its custody."

5.  The Falcon expert will observe the treatment session silently.  If the patient asks a direct question of the Falcon expert, he/she will respond: "I am only here to observe.  I'm sorry I cannot answer your questions."  If the clinician asks a direct question of the Falcon expert, he/she will respond: "I am only here to observe.  I'm sorry I cannot answer your questions though I would be glad to discuss after this session concludes if time permits."

6.  Defendants and the experts shall maintain class members' confidentiality.  They shall not publicly disclose any class member's name and CDCR number and shall not provide personally identifying information to CDCR clinicians or custody staff at the prison.  The only exception to this is if an expert learns of information that indicates there is a risk of harm to the patient or to others in which case they may disclose that information to the appropriate CDCR clinician or custody staff.  The experts' report will not identify patients by name, CDCR number, or any other personally identifying information, but may have a key to cross-reference those patients described in the report.

# EXHIBIT C

| From: | Jenny Yelin |
|---|---|
| To: | Samantha Wolff; Marc Shinn-Krantz; Michael W. Bien; Ernest Galvan; Lisa Ells; Steve Fama |
| Cc: | Paul B. Mello; v_Damon.McClain@doj.ca.gov; v_Elise.Thorn@doj.ca.gov; Kaylen Kadotani; Lawrence M. Cirelli; Laurel E. O'Connor; David C. Casarrubias; Carson R. Niello; v_Namrata.Kotwani@doj.ca.gov; Donald Specter; Marissa Hatton; Coleman Team - RBG Only |
| Subject: | [EXTERNAL] RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440] |
| Date: | Wednesday, December 13, 2023 1:57:45 PM |

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Thank you, Sam.

In order to make our meeting this afternoon as productive as possible, I write to provide you with responses to some of they key issues raised in your email below.

1. We will not agree to observations of 1:1 treatment or screenings.  That remains a dispute and will need to presented to the Court.
2. We do agree to the patient interviews, but only if CDCR agrees to no recording (and we appreciate your agreement to our other conditions).
3. We do not agree that your experts can tour all 28 MHSDS institutions.  We agree to 10 additional tours beyond the 5 conducted this summer.
4. We cannot agree to 3 tours per month and 13 days of touring per month.  We will agree to no more than 2 tours per month, and no more than 10 days of touring per month.

We will follow up either prior to the meeting or after the meeting with a few redlines to your draft protocol and the revised consent script. We suggest that we discuss during the meet and confer how best to proceed procedurally, including the appropriate way to present our disputes to the Court.

Jenny

**From:** Samantha Wolff <SWolff@hansonbridgett.com>
**Sent:** Wednesday, December 13, 2023 10:01 AM
**To:** Jenny Yelin <JYelin@rbgg.com>; Marc Shinn-Krantz <MShinn-Krantz@rbgg.com>; Michael W. Bien <MBien@rbgg.com>; Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter <dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Subject:** RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Jenny,

Thanks for your email below laying out the areas of agreement and disagreement, and remaining issues to work through. I'm providing responses to each of your points in order:

<u>Scope and Schedule</u>

1. We do not agree to conduct a pilot of a subset of institutions. We have been attempting to conduct these tours for months, and we cannot agree to further delays and possible extended negotiations again. As we said during one of our first meet and confer discussions, we will agree to discuss and address issues as they arise and we believe that is sufficient. Additionally, and as we've said previously, in order for our experts to opine on the quality of care delivered at all institutions, they must actually tour all institutions. No two prisons are the same; the staff is different, layouts are different, leadership is different, and the patient population is different, among other variances. We cannot agree to visit only some institutions.

2. A limit of 1 tour per month is unworkable. It would take over two years to conduct these tours, at which point the data will be stale. We understand and are sympathetic to your staffing concerns, and so we can agree to tour no more than 13 days per month, and will not go to more than 3 institutions per month. We've also previously agreed to avoid touring on nights and weekends to the extent possible. We cannot set a limit of 5 days per tour at this point because we don't know what our experts will be allowed to observe, and that will impact the duration of the tours as we've previously explained.

3. We are doing our best to accommodate Plaintiffs' concerns regarding scheduling, and would appreciate Plaintiffs' commitment to make similar best efforts to accommodate our request to split into 3 groups. This directly impacts the duration of the tours – the more groups our experts can split into, the quicker they can see everything they need to see. If you are only able to send 2 attorneys, that will impact the duration of a tour. However, as we have said before, our experts will not observe patients or interact with patients without Plaintiffs' counsel (or a representative) present. We will need to work together in finalizing the tour schedule given that the number of attorneys Plaintiffs send will dictate, in part, the length of the tours.

4. In terms of the areas of agreement, we agree on items 1-4; I'm still awaiting confirmation that 5 (providing the list of patients whose treatment events are observed) is possible. Regarding 6, we agree to provide Plaintiffs' counsel with copies of documents the experts are handed while onsite.

<u>Consent and Process:</u>

1. A revised version of the script is attached to reflect these changes in the process.
2. I included that proposed language in the protocol I sent Monday.
3. Sent Monday.

<u>Patient interviews:</u>

1. We understand you have not decided whether you will allow patient interviews and understand you will not consent to recording.
2. We will agree to provide the complete list of questions that will be asked of patients at each

level of care when/if Plaintiffs agree that patient interviews may proceed. We already provided a list of "sample questions" which are actual questions that will be asked of patients at one level of care. I also provided pin cites to references to interviews in other reports in my email Monday (12/11).

3. We understand and agree that Plaintiffs' counsel can meet with their clients ahead of the interviews and further understand our agreement in relation to sharing the questions with your clients and outside of this case.

4. We agree to provide you with the list of interviewees 48 hours in advance, though we would ask for some degree of leeway in the event circumstances arise that make this impossible.

Observation of 1:1 appointments and screenings:

1. Pin cites provided in my email Monday (12/11). I note that we don't consider the Special Master's observation of telepsychiatry encounters to be distinct; the point remains the same that an outside expert sat in on 1:1 treatment to evaluate the care provided.

We look forward to working through the remaining issues together today.

Sincerely,
Sam

---

**From:** Jenny Yelin <JYelin@rbgg.com>
**Sent:** Monday, December 11, 2023 9:31 AM
**To:** Samantha Wolff <SWolff@hansonbridgett.com>; Marc Shinn-Krantz <MShinn-Krantz@rbgg.com>; Michael W. Bien <MBien@rbgg.com>; Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; v_Elise.Thorn@doj.ca.gov <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter <dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Subject:** [EXTERNAL] RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440]

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Dear Sam and All,

Thank you for another productive meeting last week. I write to try to summarize where the parties stand with regard to the various issues we have been discussing in the meet and confer sessions about the Falcon tours.

Scope and schedule:

1. We do not agree that Defendants' experts can tour all 28 prisons with MH programs. We are willing to agree to a pilot of a subset of institutions, with further discussions to follow before any further tours occur.

2. As we have previously communicated, we request that Defendants schedule no more than 1 tour per month.  We also request that Defendants set a limit of 5 days per tour.  Please let us know your position on this.

3. We have committed to sending two attorneys to each tour, and have said we will make efforts to send 3, but may not be able to staff 3 for many tours.  Please confirm that the experts will only split into two groups on tours where Plaintiffs are unable to send a 3rd person, or at the very least there will not be any direct observation of or interaction with patients by experts who are not accompanied by someone from Plaintiffs' counsel.

4. Areas of agreement—please correct us if we got any of this wrong:

    1. Only one tour will be scheduled at a time
    2. Defendants will give 30 days' notice prior to tour starts
    3. Defendants will give detailed information about the tour schedule as soon as practicable, and will give the daily schedule by the end of the day prior.
    4. Defendants will avoid tours on nights and weekends as much as possible.
    5. Defendants will provide us with the list of patients whose treatment events are observed (preferably prior to the date)
    6. Defendants will provide us copies of any documents their experts receive from the institutions in connection with the tours.

Consent and Process:

1. You are going to add in language to the script reflecting the fact that it is read prior to the expert entering the room, and before defense counsel leaves the room, and we otherwise agreed to the version of the script I sent you on Thursday morning.

2. You will send us draft language for what the experts will say if a clinician or patient tries to talk to them during an observation

3. You will send us your draft "protocol" for the tours, which we understand will include, among other things, the seven points we agreed to in your November 22 email at 3:20pm and the November 30  meet and confer.

Patient Interviews:

1. We have not decided whether we are going to allow patient interviews.

2. We informed you that we are not willing to allow recording of any patient interviews.

3. We asked you to provide us with the complete list of questions by LOC.  We also asked you to provide us with more narrow citations to where and how the experts have used patient interviews in past reports or litigation.

4. You agreed that if we allow the interviews, Plaintiffs' counsel would be allowed to meet with our clients before the interviews. We committed to not showing them or reading them the list of questions ahead of time.  We agreed not to disclose the questions outside of *Coleman*.  We cannot agree to any other limitations on our right to communicate with our clients.

5. We asked Defendants to provide us with a list of interviewees selected for each tour at least 48 hours before the interviews occur.

<u>Observation of 1:1 appointments and screenings</u>:

1. We told you that we are still not inclined to agree to this.  We will consult with one additional expert this week and give you our final position by our next meeting on Wed.
2. We asked you for pincites to the experts' reports or declarations where they describe observations of 1:1 mental health treatment.  We did not see that in any of the materials you circulated last week (except for a few references in SM reports to telepsychiatry observations, which we consider distinct).

Please let us know if any of this misstates the status of the issues above.  We look forward to speaking with you further on Wed.

Jenny

---

**From:** Samantha Wolff <SWolff@hansonbridgett.com>
**Sent:** Wednesday, December 6, 2023 8:26 PM
**To:** Marc Shinn-Krantz <MShinn-Krantz@rbgg.com>; Michael W. Bien <MBien@rbgg.com>; Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter <dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Subject:** RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Marc,

Thanks for your recent round of edits.  We further modified the language in dispute and I *think* (hope) we came up with something that both sides can live with.  I didn't further add to the comments since I think we both understand where each side is coming from.

Thanks,
Sam

---

**From:** Marc Shinn-Krantz <MShinn-Krantz@rbgg.com>
**Sent:** Tuesday, December 5, 2023 8:38 PM
**To:** Samantha Wolff <SWolff@hansonbridgett.com>; Michael W. Bien <MBien@rbgg.com>; Ernest

Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Steve
Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov
<Damon.McClain@doj.ca.gov>; v_Elise.Thorn@doj.ca.gov <Elise.Thorn@doj.ca.gov>; Kaylen
Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>;
Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias
<DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>;
v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter
<dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only
<ColemanTeam-RBGOnly@rbgg.com>
**Subject:** [EXTERNAL] RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440]

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Sam,

We are very close on the consent script but have made one responsive edit. Aside from that one
point, we have accepted all outstanding edits and removed the associated comments.

We look forward to meeting with you and your colleagues on Thursday.

Best,
Marc

**Marc J. Shinn-Krantz**
(he/him)
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
MShinn-Krantz@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from
disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly
prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at
mshinn-krantz@rbgg.com.

**From:** Samantha Wolff <SWolff@hansonbridgett.com>
**Sent:** Friday, December 1, 2023 8:30 AM
**To:** Marc Shinn-Krantz <MShinn-Krantz@rbgg.com>; Michael W. Bien <MBien@rbgg.com>; Ernest
Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Steve
Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov

<Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani
<KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E.
O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias
<DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>;
v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter
<dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only
<ColemanTeam-RBGOnly@rbg.com>
**Subject:** RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Marc and all,

Attached are our responses to your further edits to the informed consent script.  We accepted your
changes in some places and proposed changes in others, but I think we're getting close.  We also
deleted comments where we were all in agreement and responded to a couple outstanding
comments.

Thanks,
Sam

---

**From:** Marc Shinn-Krantz <MShinn-Krantz@rbg.com>
**Sent:** Tuesday, November 28, 2023 1:56 PM
**To:** Samantha Wolff <SWolff@hansonbridgett.com>; Michael W. Bien <MBien@rbg.com>; Ernest
Galvan <EGalvan@rbg.com>; Lisa Ells <LElls@rbg.com>; Jenny Yelin <JYelin@rbg.com>; Steve
Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov
<Damon.McClain@doj.ca.gov>; v_Elise.Thorn@doj.ca.gov <Elise.Thorn@doj.ca.gov>; Kaylen
Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>;
Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias
<DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>;
v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter
<dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only
<ColemanTeam-RBGOnly@rbg.com>
**Subject:** [EXTERNAL] RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440]

EXTERNAL: Use caution when opening attachments, links or responding to this e-mail.

Sam,

We hope everyone had a good Thanksgiving break.

Thank you for your below responses regarding the procedures and for sending a redline of the
informed consent script.  We further redlined the informed consent script, leaving responsive
comments and indicating where we accepted your simplifying redlines.  We also redlined the first

paragraph in an effort to accommodate both your concerns and ours regarding how to explain the purpose of the observations.

I will be traveling for another case on Thursday but my colleagues are looking forward to meeting with you then.

Best,
Marc

---

**From:** Samantha Wolff <SWolff@hansonbridgett.com>
**Sent:** Wednesday, November 22, 2023 3:20 PM
**To:** Marc Shinn-Krantz <MShinn-Krantz@rbgg.com>; Michael W. Bien <MBien@rbgg.com>; Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter <dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Subject:** RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Marc,

Thanks again for sending your position along and for the brief discussion regarding informed consent last week.  Our thoughts on your procedures are included below in red.  We also attach our changes to your redline of the informed consent script.

We look forward to discussing this further with you and your colleagues on 11/30.

Happy Thanksgiving to you all.

Sam

---

**From:** Marc Shinn-Krantz <MShinn-Krantz@rbgg.com>
**Sent:** Thursday, November 16, 2023 8:13 PM
**To:** Samantha Wolff <SWolff@hansonbridgett.com>; Michael W. Bien <MBien@rbgg.com>; Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov

<Damon.McClain@doj.ca.gov>; v_Elise.Thorn@doj.ca.gov <Elise.Thorn@doj.ca.gov>; Kaylen
Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>;
Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias
<DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>;
v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter
<dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only
<ColemanTeam-RBGOnly@rbg.com>
**Subject:** [EXTERNAL] RE: Coleman - Meet and Confer re Tours [IMAN-DMS.FID12440]

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Sam:

Thank you for circulating Defendants' Tours proposal.  We look forward to a productive discussion
with you tomorrow at noon.

In advance of that meeting, we write to respond to the informed consent portion of Defendants'
proposal.  This is not intended to respond to the other portions of the proposal.

We request the following procedures for obtaining informed consent, for all types of observations
where patients are present.  These procedures are based on concerns from our observations of
Defendants' experts' July tours.

1.      Prior to obtaining patient consent the treating clinician(s) shall be informed of the below
        procedures and also have the opportunity to decline observation of the treatment session.

<span style="color:red">Agree.  We will need to reach an agreement as to what specifically we say to treating clinicians to
ensure transparency and consistency.</span>

2.      After the patient(s) are in the treatment room, and before Defendants' experts enter the
        room, the treating clinician shall read the informed consent script to their patients in the
        presence of Plaintiffs' counsel.

<span style="color:red">Agree so long as Defense counsel may be present in the room while the informed consent script is
read.  Defense counsel agree to leave the room after the script is read and do not need to be
present during treatment observation.</span>

3.      Printed copies of the consent script will be available in both English and Spanish and the
        treating clinician shall offer to provide each patient with a copy.

<span style="color:red">Agree</span>

4.      If any patient in the group does not consent to the observation, the Falcon expert should
        leave so that the group can proceed.

<span style="color:red">Agree</span>

5.       If the patients' clinician or Plaintiffs' counsel believes effective communication and informed consent was not obtained with any patient(s) the patient(s) shall be deemed to have declined consent.

Disagree in part.  As we explained during our call, we do not believe it is appropriate for Plaintiffs' counsel to be making determinations of whether informed consent is given.  This is a clinical determination.  As such, it is our position that only the patient's clinician can determine whether the patient has provided informed consent.

6.       Experts shall conduct all observations silently.

Agree.  As we discussed during the call, we should come up with agreed upon language for the experts to use if they are asked questions by the patient, treating clinician, or custody staff during their observations (perhaps something like, "I'm sorry but I'm only here to observe, not answer questions.  [If asked by custody or the treating clinician, they could add: I'm available after this session to discuss your question.")

7.       Defendants and the experts shall not publicly disclose any class member's name and CDCR number and shall not provide personally identifying information to CDCR clinicians or custody staff at the prison.

Agree with a caveat.  As we discussed during the call, we agree to maintain confidentiality however, if an expert learns of information that indicates there is a risk of harm (either to the patient or to others), they have a reporting obligation and would need to disclose that information to the appropriate CDCR clinician or custody staff.  Additionally, the experts' report will not identify patients by name, CDCR number, or any other personally identifying information, but will likely have a key to cross-reference those patients described in the report (just as the Special Master's team has done in the past).

Attached is our redline of your current proposed script, incorporating many elements from the script Defendants proposed on July 17, 2023.

Best,
Marc

**Marc J. Shinn-Krantz**
(he/him)
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
MShinn-Krantz@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at mshinn-krantz@rbgg.com.

**From:** Samantha Wolff <SWolff@hansonbridgett.com>
**Sent:** Thursday, November 16, 2023 2:05 PM
**To:** Michael W. Bien <MBien@rbgg.com>; Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter <dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Subject:** RE: Coleman - Meet and Confer re Tours

[EXTERNAL MESSAGE NOTICE]

Counsel,

Attached is Defendants' proposal regarding the components and scheduling/pace of their experts' tours, as requested.  We look forward to discussing this with you further tomorrow at noon.

Sincerely,
Sam

---

**From:** Samantha Wolff
**Sent:** Monday, November 13, 2023 2:31 PM
**To:** Michael W. Bien <MBien@rbgg.com>; Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; v_Elise.Thorn@doj.ca.gov <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter <dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Subject:** RE: Coleman - Meet and Confer re Tours

Michael,

Thanks for your response below.  We will work on a proposal and aim to send it to you by COB Thursday.  In the meantime, I'll send around a calendar invite for Friday at 12pm.

Sam

---

**From:** Michael W. Bien <MBien@rbgg.com>
**Sent:** Thursday, November 9, 2023 3:29 PM
**To:** Samantha Wolff <SWolff@hansonbridgett.com>; Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; v_Elise.Thorn@doj.ca.gov <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Donald Specter <dspecter@prisonlaw.com>; Marissa Hatton <mhatton@prisonlaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Subject:** [EXTERNAL] RE: Coleman - Meet and Confer re Tours

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Sam

We agree that it will be helpful to identify in advance the areas in dispute. We assume that defendants have modified their approach to the Falcon tours based on the concerns plaintiffs and the Court have identified to date.

To help us identify what is still in dispute and areas of agreement, we propose that in advance of this meeting, Defendants provide a concrete written proposal addressing the following: the proposed pace and scope of their expert tours (simultaneous prison tours, number of defense experts per tour, evening and weekends); requested observations: group treatment, 1:1s, IDTTs, screenings, and any other observations where class members are present; patient interviews; the presence of class counsel for all activities involving direct contact or observation of class members; the process and wording for patient and clinician informed consent and refusal; notice of tour dates; and notice of daily schedules; overall number of prisons to be toured and number of days for each prison.

We are willing to meet and confer about all issues in dispute. We will not agree to allow observations of or contact with class members outside of our presence. We are not inclined to permit interviews of our clients by Falcon. We are unlikely to allow observations of 1:1s. To ensure we can adequately staff these tours, we request that Defendants limit their tours to one prison at a time, with experts not attending more than two simultaneous activities involving patients. We also request that Defendants provide one-month advance notice of tours including specifying which days will involve night and weekend activities. The number of proposed tour days per prison and in total in the original Falcon proposal was unduly burdensome, unnecessary and excessive. We request that defendants make a more reasonable renewed proposal.

We hope that we can reach agreement on all of these issues.  If the parties cannot resolve any remaining disputes after a reasonable meet and confer period, we should jointly present anything that remains open to the Court for resolution.

Please set up a meet and confer for next Friday at Noon.  We hope that you will provide a written proposal as requested no later than close of business on Thursday.

Thank you.


Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission St.  Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
(415) 439-9821 (cell)
mbien@rbgg.com
www.rbgg.com

---

**From:** Samantha Wolff <SWolff@hansonbridgett.com>
**Sent:** Thursday, November 9, 2023 9:07 AM
**To:** Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Michael W. Bien <MBien@rbgg.com>; Steve Fama <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Kaylen Kadotani <KKadotani@hansonbridgett.com>; Lawrence M. Cirelli <lcirelli@hansonbridgett.com>; Laurel E. O'Connor <LOConnor@hansonbridgett.com>; David C. Casarrubias <DCasarrubias@hansonbridgett.com>; Carson R. Niello <CNiello@hansonbridgett.com>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>
**Subject:** Coleman - Meet and Confer re Tours

[EXTERNAL MESSAGE NOTICE]

Dear counsel,

Now that the contempt proceedings have concluded, we are reaching out again to set a time to meet and confer regarding defendants' experts' tours.  Next week, we are available Monday before 10, Tuesday before 10 or 12-2:30, Wednesday before 10 or 11-2:30, Thursday from 10-12, and Friday all day.

I think it would be helpful to identify the areas in dispute to keep our discussions organized and to ensure we're fully prepared to address the issues.  This is my understanding of the areas in dispute:

- Patient interviews
- Observation of treatment sessions
- Informed consent

We look forward to hearing from you.

Thanks,
Sam

**Samantha Wolff**
**Partner**
SWolff@hansonbridgett.com
Direct: (415) 995-5020



**Hanson Bridgett LLP**
1676 N. California Blvd., Suite 620
Walnut Creek, CA, 94596
Website  |  LinkedIn
Costa Mesa • Los Angeles • Sacramento • San Francisco • San Rafael • Walnut Creek

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.