DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
AMY XU – 330707
ADRIENNE SPIEGEL – 330482
MAYA E. CAMPBELL – 345180
LUMA KHABBAZ – 351492
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520-KJM-DB |
| Plaintiffs, | **DECLARATION OF PABLO STEWART, M.D. IN SUPPORT OF PLAINTIFFS' POSITION IN JOINT STATEMENT ON DEFENDANTS' EXPERT TOURS** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | Judge:  Hon. Kimberly J. Mueller |

[4408522.12]

## INTRODUCTION

1. I am a board-certified psychiatrist and Clinical Professor at the John A. Burns School of Medicine, University of Hawaii Department of Psychiatry, and currently serve as an attending psychiatrist supervising psychiatric residents providing acute and chronic care to mentally ill persons incarcerated at the Oahu Community Correctional Center. My curriculum vitae is attached hereto as **Exhibit A**.

2. I have over 35 years of experience in correctional mental health care, including serving as the court's expert in class action cases challenging the provision of mental health care to incarcerated persons. After medical school, I completed my psychiatric residency at the University of California, San Francisco ("UCSF") in part as a Primary Therapist and Medical Consultant for the adult inpatient units at San Francisco General Hospital and the San Francisco Veterans Affairs Medical Center, including service at the VA's Substance Abuse Inpatient Unit. During my residency, I also practiced at several community health programs. Between 1986 and 1990, I was the Senior Attending Psychiatrist for the Forensic Unit of UCSF, which was located at San Francisco General Hospital. In that capacity, I had administrative and clinical responsibility for a 12-bed maximum-security psychiatric ward and worked as the liaison with the Jail Psychiatric Services of the City and County of San Francisco. Between August 1988 and December 1989, I was the Director of Forensic Psychiatric Services for the City and County of San Francisco. In that capacity, I had administrative and clinical oversight responsibility for the psychiatric care provided to the incarcerated person population in San Francisco at both the county jails and in the locked inpatient treatment unit at San Francisco General Hospital.

3. From September 2006 to June of 2018 I served as a Clinical Professor at the University of California, San Francisco, School of Medicine. From 1990 through 1996, I served in various medical leadership posts at the Department of Veterans Affairs Medical Center, San Francisco, including as Chief of the Substance Abuse Inpatient Unit, Chief of the Intensive Psychiatric Community Care Program, focusing on services for homeless

veterans, and Medical Director of the VA's Comprehensive Homeless Center.

4.      From 1996 to the present, I have served as a psychiatric consultant to governmental and private agencies on a variety of psychiatric, forensic, substance abuse and organizational issues, with a focus on correctional psychiatry.  I have served as a psychiatric expert or consultant to various federal courts, the United States Department of Justice, and other organizations evaluating the provision of mental health treatment and implementing remedial decrees covering the provision of mental health care in correctional institutions.  From May 2016 to June 2022, I served as the court-appointed monitor in *Rasho v. Baldwin*, No. 1:07-CV-1298 (C.D. Ill.), monitoring the implementation of improvements to mental health care for a class of patients incarcerated in the Illinois Department of Corrections.

5.      I estimate that I have treated several thousands of psychiatric patients in both community and correctional settings over the course of my career.  In addition, in my monitoring work, I have closely observed the care provided psychiatric inpatient programs in correctional institutions in other states, including Illinois and Arizona.  In monitoring the implementation of the *Rasho* settlement agreement in Illinois over the past seven years, I observed the care provided to patients in the custody of the Illinois Department of Corrections at the Elgin Mental Health Hospital on at least ten occasions.

6.      I have provided testimony by declaration and at trial in *Coleman v. Newsom* on the adequacy of mental health care in the California Department of Corrections and Rehabilitation ("CDCR"), including four declarations in 2023: two on telepsychiatry, *see* ECF No. 7703-1 and ECF No. 7739, Attach. A, and two on Psychiatric Inpatient Program ("PIP") minimum treatment standards, *see* ECF No. 7812-2 and ECF No. 7838-1.  I also have conducted numerous tours of CDCR prisons in the last 25 years.  My first experience with CDCR was in the early-1990s, when I spent several years monitoring mental health care at the California Medical Facility ("CMF"), a CDCR prison in Vacaville, California, as a court expert in the *Gates v. Deukmejian* case.  I testified on behalf of Plaintiffs in the *Plata/Coleman* overcrowding trial before the three-judge court in 2008.  In preparation for

my testimony, I toured many prisons, spoke with numerous patients and CDCR staff and reviewed extensive medical records, Special Master reports, and deposition testimony.  In 2013, I toured six prisons as Plaintiffs' expert witness in opposing the termination motion filed by Defendants in this matter.  I also provided several declarations and gave testimony in several live hearings before Judge Karlton in support of subsequent enforcement motions filed by Plaintiffs later in 2013, after the termination motion was denied.  Most recently, on April 14 and 15, in preparation for a report on minimum treatment standards, I toured the PIPs at CMF, California Health Care Facility ("CHCF"), and San Quentin ("SQ") and spoke with six patients across those three PIPs.

7.      My publications and presentations address a broad range of treatment and assessment problems for mentally ill patients in both community and institutional settings. In compliance with Rule 26(a)(2)(B), my CV at Exhibit A lists my publications authored at pages 24 through 25.

8.      Attached hereto as **Exhibit B** is a list of cases in which I have testified at trial or deposition during the previous 4 years.

9.      My current compensation to be paid in this case is $400 per hour for study and $600 per hour for testimony.

10.      In preparing this report, I have reviewed relevant portions of the following documents:

- My prior declaration filed in Opposition to Termination, *see* ECF No. 4381, and my prior four declarations filed in 2023, including two on telepsychiatry, *see* ECF No. 7703-1 and ECF No. 7739, Attach. A, and two on PIP minimum treatment standards, *see* ECF No. 7812-2 and ECF No. 7838-1.
- Excerpts from Special Master's 29th Rd. Report Part C (EOP Programs) ECF No. 7715 at 1, 30-34, 72-78.
- Excerpts from Special Master's 29th Rd. Report Part D (CCCMS Programs) ECF No. 7716 at 1, 33-38, 48-49.
- Excerpts from Special Master's 30th Rd. Report Part A (PIP Programs) ECF

DECLARATION OF PABLO STEWART, M.D. IN SUPPORT OF PLAINTIFFS' POSITION IN JOINT STATEMENT ON DEFENDANTS' EXPERT TOURS

No. 7833 at 1, 37-43, 50-55.

- Declaration of Amy Xu in Support of Joint Statement Re Defendants' Expert Tours, filed July 25, 2023, ECF No. 7891.

- Declaration of Arielle Tolman in Support of Plaintiffs' Position for Joint Statement Re Defendants' Expert Tours, filed July 25, 2023, ECF No. 7893.

- Excerpts from Staffing Contempt Hearing Transcript, Oct. 5, 2023,  ECF No. 8013 at 1-51, 94-133.

- Excerpts from California Department of Corrections and Rehabilitation's 2022 Annual Report on Suicides and Suicide Prevention Efforts in the CDCR, ECF No. 8017 at 47, 53-55, 105-106.

- Special Master's 30th Rd. Report Part C (EOP Programs) ECF No. 8095 at 1, 32-41.

- Martin T. Orne & Wayne G. Whitehouse, *Demand Characteristics*, ENCYCLOPEDIA OF PSYCHOLOGY 469-70 (A.E. Kazdin ed., 2000), *available at* https://www.sas.upenn.edu/psych/history/orne/ornewhitehouse2000inkazdinbc.html.

- Pamela Grimm, *Social Desirability Bias*, WILEY INTERNATIONAL ENCYCLOPEDIA OF MARKETING (Jagdish N. Sheth & Naresh K. Malhotra eds., 2010), *available at* https://doi.org/10.1002/9781444316568.wiem02057.

- Anton J. Nederhof, *Methods of Coping With Social Desirability Bias: A Review*, 15(3) EUROPEAN JOURNAL OF SOCIAL PSYCHOLOGY 263-80 (1985), *available at* https://doi.org/10.1002/ejsp.2420150303.

- Francis C. Harris & Benjamin B. Lahey, *Subject Reactivity in Direct Observational Assessment: A Review and Critical Analysis*, 2(4) CLINICAL PSYCHOLOGY REVIEW 523-538 (1982), *available at* https://doi.org/10.1016/0272-7358(82)90028-9.

- María Jiménez-Buedo, *Reactivity in Social Scientific Experiments: What Is It and How Is It Different (and Worse) than a Placebo Effect?*, 11(42)

EUROPEAN JOURNAL FOR PHILOSOPHY OF SCIENCE 1-22 (2021), *available at* https://doi.org/10.1007/s13194-021-00350-z.

- Defendants' November 16, 2023 Tours Proposal identifying Defendants' proposed components for their expert tours, attached hereto as **Exhibit C**.

- Declaration of Elizabeth Falcon, Psy.D., in Support of Defendants' Portion of Joint Statement Regarding Tour Dispute, filed July 25, 2023, ECF No. 7884.

- Dr. Falcon's *curriculum vitae*, attached as Exhibit A to her July 25, 2023 declaration, ECF No. 7884-1.

- Memorandum entitled "Consultant Contract in the Matter of *Coleman, Ralph, et al. v. Gavin Newsom, et al.* Agreement Number: 21-031U," attached as Exhibit B to Dr. Falcon's July 25, 2023 declaration, ECF No. 7884-2.

- Declaration of Michael W. Bien in Support of Plaintiffs' Position for Joint Statement Re Defendants' Expert Tours, filed July 25, 2023, ECF No. 7886.

- Declaration of Elizabeth Falcon, Psy.D., in Support of Defendants' Motion to Lift Injunction Halting VRJS/Falcon Tours, filed October 10, 2023, ECF No. 8005-1.

- Informed Consent Script (English version) for Defendants' proposed expert tours.

**SUMMARY OF KEY OPINIONS IN THIS MATTER**

11. I have been asked to give my opinion regarding Defendants' proposal for their retained experts to tour CDCR prisons and observe mental health treatment. My opinions are summarized below:

- The activities CDCR proposes its experts undertake are unprecedented in scope and scale, necessarily come at a significant cost to the mental health services delivery system and to the health and safety of individual patients, and thus should be restricted and limited as much as possible.

- Given the current staffing crisis across CDCR, it is dangerous to allow disruptions to treatment on the scale CDCR proposes.

[4408522.12]

DECLARATION OF PABLO STEWART, M.D. IN SUPPORT OF PLAINTIFFS' POSITION IN JOINT STATEMENT ON DEFENDANTS' EXPERT TOURS

- I recommend entirely avoiding the planned observations of 1:1 mental health treatment and mental health screenings.

- Confidentiality is the bedrock of all psychiatric care.

- There are significant costs and risks associated with monitoring of 1:1 treatment and screenings.

- Allowing outside observers into a 1:1 treatment or screening setting changes the nature of and interferes with the interaction, and adding multiple observers and non-clinicians creates more disruption, which in turn decreases the value of the both the clinician-patient interaction and the observation itself.

- Observations of treatment conducted in the adversarial context of discovery for litigation add to the overall disruption compared with monitoring by a single clinician in a non-adversarial context.

- While treatment observations are one potentially valuable source of information about quality of mental health care, there are other less disruptive methods of gathering such information.

I. **THE ACTIVITIES CDCR PROPOSES ITS EXPERTS UNDERTAKE ARE UNPRECEDENTED IN SCOPE AND SCALE, NECESSARILY COME AT A SIGNIFICANT COST TO THE MENTAL HEALTH SERVICES DELIVERY SYSTEM AND THE HEALTH AND SAFETY OF INDIVIDUAL PATIENTS, AND THUS SHOULD BE RESTRICTED AND LIMITED AS MUCH AS POSSIBLE**

12. I have reviewed a list of activities Defendants propose to monitor including interdisciplinary treatment team meetings (IDTTs), institutional classification committee meetings (ICCs), huddles, group treatment, patient interviews, and various types of screening and 1:1 treatment. In my role as a neutral court monitor evaluating a correctional mental health system, I would find these to be useful activities to monitor, alongside other sources of information, although both as a neutral expert and a party's expert, I am always mindful of the disruption that my monitoring activities necessarily cause to the mental health system as a whole, to a particular prison's programs, and to any

individual treatment sessions I observe.  I try to avoid conducting monitoring that is of lower value and higher disruption.  In general, for reasons detailed in Section II below, I would recommend carefully proscribing and in some cases entirely avoiding observations of 1:1 treatment and screenings.

13.     Most of my expert testimony as a retained litigation expert involved a single day of observations of a prison by one expert.  As a neutral monitor in cases where prisons had multiple psychiatric programs similar to an EOP and PIP, my monitoring typically would involve a single day of observations by one expert at each of those subprograms. As detailed in my April 27, 2023 declaration in this case, in developing my opinions regarding PIP minimum treatment standards, I relied on reports by this Court's neutral Special Master, systemwide data, an in-depth review of records and reports, and a total of two days of on-site visits where I conducted interviews with six patients, observed living and treatment spaces, and observed a subset of treatment activities including two IDTTs, four group treatment sessions, and two huddles.  *See* ECF No. 7812-2 at ¶¶ 26, 29-32.

14.     Here, the scope and scale of Defendants' proposal is more akin to the monitoring undertaken by a court-appointed monitor such as the *Coleman* Special Master than to discovery in litigation.  I understand Defendants here have retained a group of approximately 30 experts and are proposing observations at each of 28 prisons with three different experts simultaneously at each prison apparently for one or more weeks. Defendants' original plan this past summer was to tour each prison for two weeks, and I understand that Defendants currently will not agree to any limit on the number of days at any given prison.  I understand Defendants instead propose to limit touring to 13 days (times three experts) per month.  I am not aware of any case where a party's litigation experts have been permitted to engage in the scale and scope of discovery that Defendants are proposing for their experts here.

15.     In my experience, a litigation expert engaging in formal or informal discovery regarding correctional mental health care is not similarly situated with a neutral court monitor whose role is to help establish a common body of information necessary for

1  the court (and parties) to address the adequacy of a mental health delivery system

2  including tailoring any remedies to identified deficiencies.

3      16.    Nor is an expert retained for such discovery similarly situated with a

4  clinician observing treatment in a teaching setting, where the observer is also the provider

5  and the purpose of having two providers in the room is to train clinicians for the benefit of

6  the patients.  For example, in my experience at university teaching hospitals, a resident and

7  I as the attending physician would typically conduct a patient evaluation together and we

8  introduce ourselves as the patient's providers.  In a typical encounter the resident may lead

9  the contact with my looking over their shoulder and providing input only as needed, but I

10 am still one of the patient's providers.  Outside observers are not present.

11     **A.**    **Given the Current Staffing Crisis Across CDCR, It Is Dangerous to Allow Disruptions to Treatment on the Scale CDCR Proposes.**

12

13     17.    In my opinion, the scope and scale of touring described above is likely to

14 impose a significant burden on the provision of mental health care across CDCR.  Based

15 on the documents I have reviewed, it is clear that CDCR is in the midst of a dangerous

16 staffing crisis, and the additional burden Defendants' planned touring would impose would

17 greatly exacerbate the problem, placing patients at even greater risk of harm.

18     18.    I reviewed portions of the Special Master's recent reports on the CCCMS,

19 EOP, and PIP programs, which all document significant staffing shortages and inadequate

20 care.  *See, e.g.*, Special Master's 29th Round Report Part C (EOP Programs) ECF No. 7715

21 at 30 ("[T]he most disturbing development" since the prior round of touring was "the

22 vacancy rate explosion among primary clinicians (psychologists and social workers). With

23 the vacancy rates observed at some institutions, it was virtually impossible to provide

24 anything close to Program Guide-compliant mental health care."); *id.* at 77-78 (noting

25 "extremely high staff vacancy rates for virtually all disciplines" and explaining "[i]t is

26 axiomatic that defendants' failure to satisfy the established staffing requirements

27 significantly contributed to its inability to provide the *Coleman* class with Program Guide-

28 compliant mental health treatment"); Special Master's 30th Round Report Part C (EOP

1  Programs) ECF No. 8095 at 32 (noting the staffing emergency "continued virtually

2  unabated"); Special Master's 29th Round Report Part D (CCCMS Programs) ECF No.

3  7716 at 48 (summarizing 159 individual case reviews and noting 44% of cases received

4  inadequate care plus 16% of cases received marginally adequate care); Special Master's

5  30th Round Report Part A (PIP Programs) ECF No. 7833 at 42-43, 51-52 (detailing how

6  "staffing vacancies impacted all aspects of the provision of mental health care to *Coleman*

7  class members… hav[ing] pervasive, negative impacts on the *Coleman* class.").

8       19.    I have also reviewed portions of a transcript from the recent staffing

9  contempt proceedings in which Defendants' clinicians explained that they could not

10 provide adequate mental health treatment because the system was stretched too thin.  For

11 example, one clinician testified, "We can't provide Program Guide services.  We're not

12 even providing what you could consider to be standard of care in the community at this

13 point.  Clinical continuity is nonexistent.  We're doing the best we can, and it is nowhere

14 good enough for the needs of our patients."  Tr. 10-5-23 ECF No. 8013 at 31:2-34:13

15 (Dr. David).  The clinician went on to note, "I have patient safety concerns every day.  It's

16 exhausting and draining and difficult to know that we have men in our care who are ill,

17 who are sick, who are coming to us for help, and we are not able to give them the help that

18 they need.  It is not why I came into this field.  It is not why my employees came into this

19 field." *Id.* at 35:6-36:22 (Dr. David).  Another clinician explained that high caseloads in

20 the non-PIP programs at their prison had led to increases in RVRs and self-harm incidents.

21 *See id.* at 116:19-117:15, 122:14-21, 124:6-125:5, 125:15-127:3: (Dr. Minor).  I find these

22 statements to be extraordinarily concerning.

23      20.    I was also very concerned to read in excerpts from CDCR's 2022 Annual

24 Report on Suicides and Suicide Prevention Efforts in the CDCR that institutions were

25 unable to comply with Program Guide requirements and that CDCR had suspended certain

26 suicide prevention measures due to inadequate staffing.  *See* ECF No. 8017 at 54, 105-106.

27 Although CDCR has not yet released an annual report for 2023, I am informed by

28 Plaintiffs' counsel that the rate of CDCR patient suicides in 2023 is substantially higher

1   than the already high rate in 2022.

2      21.   Based on the above, I was thus concerned, though not surprised given the

3   level of staffing shortages and my experience with monitoring in a correctional setting, to

4   read Plaintiffs' counsels' declarations about disruptions caused by Defendants' expert

5   tours this past July.  For example, one of the declarations notes:  "At SAC, I observed both

6   mental health leadership and clinicians repeatedly explain to experts that due to staffing

7   vacancies, that they were limiting care for EOP patients to monthly 1:1 PC contacts, in

8   violation of Program Guide requirements.  Nevertheless, I observed clinical staff spend

9   significant time escorting the Falcon experts around the facility, answering basic questions

10  about program operations, and participating in unscheduled group interviews." *See*

11  Tolman Decl. ECF No. 7893 at ¶ 14.  In another example Plaintiffs' counsel recounts how

12  she objected to the tour disrupting the single clinician who covers 150 EOP patients on

13  SVSP A-Facility and who has to conduct cell-front rounding in lieu of routine contacts due

14  to staffing shortages.  *See* Xu Decl. ECF No. 7891 at ¶ 14.

15     22.   Given the crisis levels of staffing in CDCR at this time, where patients in the

16  EOP program already do not receive required and important weekly contacts with their

17  assigned psychologist or social worker, and where patients in the CCCMS program do not

18  timely receive required and important quarterly contacts, it would be simply too

19  compromising to treatment for Defendants to interfere with treatment on the scope they

20  propose.

21     23.   In sum, I recommend limiting the scope and scale of CDCR's proposed

22  expert tours in this context to take account of the harm to patient care in proportion to the

23  need for discovery.  And given both the staffing crisis described above, and for all the

24  additional reasons discussed below, I recommend entirely avoiding the intrusive and

25  excessive observations of 1:1 treatment and screening activities.

26  **II.   I RECOMMEND ENTIRELY AVOIDING THE PLANNED**
    **OBSERVATIONS OF 1:1 MENTAL HEALTH TREATMENT AND**
27  **MENTAL HEALTH SCREENINGS**

28     24.   Specifically in this matter, for the reasons detailed above in Section I and

1  below in Section II, I recommend entirely avoiding observations of 1:1 mental health

2  treatment and mental health screenings.  First, the observations would destroy

3  confidentiality, which is the bedrock of all psychiatric care.  Second, the costs and harm

4  are more significant and the relative value of the observations is lower when undertaken as

5  part of adversarial proceedings.  Third, observations involving multiple observers and non-

6  clinicians are especially disruptive.  Fourth, critically, because CDCR's mental health

7  delivery system is already far overstretched, adding further burden to the system is

8  dangerous, and the observations proposed by Defendants would add substantial burden.  In

9  my opinion, Defendants' proposal of extensive observations of 1:1 mental health treatment

10  and screenings over multiple days at all 28 prisons is a dangerous intrusion on the already

11  strained CDCR mental health delivery system, which would put patients' health and safety

12  at increased risk.  The risks include worsening symptoms, self-harm, and suicide.  I would

13  entirely avoid such observations especially given the other useful and less-intrusive types

14  of information available such as electronic medical records, patient and staff interviews,

15  group treatment observations, and the comprehensive and ongoing monitoring reports of

16  the Court's neutral Special Master.

17      **A.  Confidentiality is the Bedrock of All Psychiatric Care.**

18      25.  Patients have the right to therapeutic and private interactions with their

19  treating clinicians.  The point of providing treatment in a confidential 1:1 setting, including

20  in assessments by psychiatrists, psychologists, and social workers, is to help the patient

21  and clinician form a therapeutic and transparent relationship in which the two can discuss

22  and address mental health symptoms and medication side effects, including among other

23  things command auditory hallucinations and violent delusional thoughts, as well as

24  suicidal ideation, plan, and intent.

25      26.  As I have previously explained, privacy and confidentiality are critical to

26  establishing trust and openness so that the patient can share as much as possible with the

27  clinician.  *See* ECF No. 7703-1 at ¶ 82.  For example, seeing patients either in chaotic

28  dayroom setting or cell-front lacks confidentiality and increases the risk that patients will

1   not be forthcoming about their true feelings.  *See* ECF No. 4381 at ¶¶ 114, 190;

2        27.    Similarly, bringing Defendants' experts and attorneys as observers into 1:1

3   mental health treatment and mental health screenings necessarily removes the key

4   component of confidentiality from the interaction by allowing others to hear and observe

5   what is being said and to use what they learn in litigation.  The patient will be far less

6   likely to be open about symptoms, fears, and thoughts with multiple strangers in the room.

7   This defeats the purpose of the 1:1 mental health treatment session and puts the patient at

8   grave risk of harm up to and including suicide.

9       **B.**    **There are Significant Costs and Risks Associated With Monitoring of 1:1 Mental Health Treatment and Mental Health Screenings.**

10

11       28.    Defendants' November 16, 2023 Tours Proposal identifies the types of non-

12  screening 1:1 treatment that Defendants propose to have their experts observe as follows:

13  "1:1 Treatment," "1:1 MHMD assessments (across all LOCs)," and "1:1 MHPC

14  assessments (across all LOCs)."  *See* Exhibit C at 1.  I understand that "MHMD" refers to

15  psychiatrists, "MHPC" refers to psychologists and social workers, and "all LOCs" refers to

16  all mental health levels of care.  In my opinion, introducing any outside observers removes

17  privacy and confidentiality, interferes with the critical connection between the patient and

18  the provider, and would tend to make the patient less likely to disclose important

19  information.  These concerns are present even where there is only one outside observer

20  who is a clinician.  As discussed further below, I would be especially concerned about

21  allowing a team of observers including one or more non-clinicians to disrupt 1:1 therapy

22  sessions for the purpose of gathering evidence for use in litigation.

23       29.    Defendants' November 16, 2023 Tours Proposal identifies the types of

24  screening interactions that Defendants propose to have their experts observe as follows:

25  "Screening (including, but not limited to, R&R nurse screenings, initial mental health

26  screens, crisis intervention team, urgent and emergent referral assessments, pre-Ad Seg

27  screening, alternative housing assessments, and psych tech rounds)."  *See* Exhibit C at 1.

28  In my opinion, each of these are important mental health contacts because they provide an

1   opportunity for clinicians to identify and triage mental health concerns, and they inform

2   treatment planning.  These concerns include the potential for a patient to decompensate if

3   placed or retained in specific settings, potential feelings of suicidality or self-harm,

4   potential need for further evaluation for urgent adjustments to prescribed psychotropic

5   medications, and potential need for evaluation for treatment at a higher level of care or for

6   specific treatment interventions.  Nearly all of these screenings occur in 1:1 settings,

7   raising many of the same concerns identified in the paragraph above.  While some of these

8   screenings are not part of an ongoing course of treatment with a regular provider, these

9   interactions provide patients a brief opportunity to identify key feelings or symptoms that

10  they may consider embarrassing or private.  Disrupting these interactions by introducing

11  outside observers introduces risks that providers will miss such key clinical information,

12  including command auditory hallucinations and violent delusional thoughts, as well as

13  suicidal ideation, plan, and intent, among other things.

14          30.     Defendants' November 16, 2023 Tours Proposal also includes RVR mental

15  health assessments.  *See* Exhibit C at 1.  I consider these to be another type of screening

16  because the purposes include screening the potential need for a staff assistant, evaluating

17  any nexus between a patient's behavior and their mental illness, and screening the patient

18  for risk of decompensating as a result of punishments imposed if the RVR is adjudicated

19  guilty.  Thus, all of the concerns I identified above also apply to these screenings.

20  Additionally, I understand that the RVR mental health assessment is intended in part to

21  identify whether mental health should be considered as a factor in the custody disciplinary

22  process and whether to document a rule violation in an alternate manner.  In my opinion,

23  introducing outside observers who work for CDCR would be likely to affect the patient's

24  level of candor in discussing CDCR's allegations of rule violations.

25

26

27

28

**C.    Allowing Outside Observers Into a 1:1 Mental Health Treatment or Mental Health Screening Setting Changes the Nature of and Interferes With the Interaction, and Adding Multiple Observers and Non-Clinicians Creates More Disruption, Which In Turn Decreases the Value of Both the Clinician-Patient Interaction and the Observation Itself.**

31.    I am always mindful that when I observe mental health treatment in a 1:1 treatment or screening setting, my presence necessarily affects the interaction.  There are a number of potential biases that are introduced in social research whenever participants are aware of the fact that they are being studied.  For these reasons, the upside value of invading a 1:1 mental health treatment session for purposes of observation is limited, because the treatment session will be markedly changed or biased by the presence of the observer.

32.    One set of biases derives from what are referred to as "demand characteristics," the fact that research participants behave in response to the characteristics of the study setting rather than the way they would normally behave if they were not aware of being studied.  Martin Orne, who originally coined the term, defined demand characteristics as "the totality of cues and mutual role expectations that inhere in a social context … which serve to influence the behavior and/or self-reported experiences of the research participant or patient."  Martin T. Orne & Wayne G. Whitehouse, *Demand Characteristics*, ENCYCLOPEDIA OF PSYCHOLOGY 469-70 (A.E. Kazdin ed., 2000).  A closely related bias is termed "social desirability," which can occur when people know they are being studied and behave—especially in answering questions—in ways they believe conform to the expectations of the researchers/observers or to what they believe are conventional norms.  *See, e.g.*, Pamela Grimm, *Social Desirability Bias*, WILEY INTERNATIONAL ENCYCLOPEDIA OF MARKETING (Jagdish N. Sheth, & Naresh K. Malhotra eds., 2010); *see also* Anton J. Nederhof, *Methods of Coping With Social Desirability Bias: A Review*, 15(3) EUROPEAN JOURNAL OF SOCIAL PSYCHOLOGY 263-80 (1985).  Another potential bias, sometimes termed the "Hawthorne effect" but better described as participant or "subject reactivity," occurs when people's behavior is changed in unspecified ways in

1  response to the fact that they know they are being studied and observed by others. *See,*

2  *e.g.*, Francis C. Harris & Benjamin B. Lahey, *Subject Reactivity in Direct Observational*

3  *Assessment: A Review and Critical Analysis*, 2(4) CLINICAL PSYCHOLOGY REVIEW 523-

4  538 (1982); *see also* María Jiménez-Buedo, *Reactivity in Social Scientific Experiments:*

5  *What is it and How is it Different (and Worse) than a Placebo Effect?*, 11(42) EUROPEAN

6  JOURNAL FOR PHILOSOPHY OF SCIENCE 1-22 (2021).  Depending on the circumstances, this

7  knowledge may impede candor and lead people to be less forthcoming than they might be

8  otherwise.  In each instance, the overall biasing effect means that the behavior being

9  observed—in this instance, the behavior of *both* the patient and the clinician—is likely to

10  be different from the behavior that would occur without the known presence of an

11  observer.

12      33.    In CDCR, providing mental health treatment (including crisis care,

13  psychotherapy, medication management, and many screening and assessment activities) in

14  a 1:1 setting is valuable because it tends to foster a therapeutic alliance and transparent and

15  thorough communication about topics that patients typically find difficult to discuss.

16  Bringing an outside observer into a 1:1 mental health interaction by definition makes the

17  interaction not 1:1 and affects the nature of the treatment.  The CDCR clinician under

18  observation will act differently because he or she has been informed that they are being

19  evaluated by a peer who will be reporting to their employer.  The patient may fail to

20  disclose information about his symptoms, fears or side-effects in the presence of observers.

21  This in turn reduces the value of the information the observer can obtain because the point

22  of the observation is to understand what would happen if the observer was not present, but

23  the presence of the observe makes the interaction different from what would have

24  happened without the observer.

25      34.    In my opinion, the effects described in the previous two paragraphs would be

26  significantly increased by the presence of multiple observers.  I understand from reviewing

27  the parties' negotiated tour Protocol that in most cases the outside observers would include

28  at least one Defense expert, one Plaintiffs' attorney, one Special Master's expert, and one

1  attorney for the Defendants.  In my opinion each one of these extra participants would

2  certainly increase the magnitude of the effects by changing the nature of the 1:1 and

3  screening treatment sessions that Defendants have proposed to observe.  Thus these

4  observations would have ever more reduced value.

**D.  Observations of Treatment Conducted in the Adversarial Context of Discovery for Litigation Add to the Overall Disruption Compared With Monitoring by a Single Clinician in a Non-Adversarial Context.**

7  35.  Informed consent is a foundational tenet in the field of psychiatry.  Patients

8  have a right to be informed and actively involved in their medical and mental health care.

9  Informed consent protects a person's dignity and autonomy by ensuring that patients have

10  the right to make decisions about their psychiatric treatment and to be informed of the risks

11  of allowing or declining to participate in treatment.  The level of detail needed for adequate

12  informed consent depends on the type of intervention at issue.  I always obtain informed

13  consent when treating patients as the sole provider, treating patients as the attending

14  physician supervising a resident for training purposes, and when observing treatment as a

15  court monitor or expert in litigation.

16  36.  It is my opinion that the potential risks to a patient of an observation are

17  greatly heightened when the observation is not by a neutral clinician monitor, but rather for

18  discovery in litigation, especially where the expert's opinion may be used to terminate or

19  modify court-ordered relief secured by the patient's litigation counsel.  Such observations

20  require special attention to providing adequate protections for the patient including

21  informing the patient and their clinician of the potential that the expert's opinion may be

22  used to terminate or modify court-ordered relief.  Unfortunately, the level of detail

23  necessary to ethically and adequately inform the patient of the nature of the observation

24  and the potential risk would add to the overall disruption both because of the length of time

25  and level of complexity required to adequately explain the observation, and because the

26  patient might be justifiably concerned during the treatment session about the nature of the

27  observation.

28  37.  I have reviewed the proposed Informed Consent Script and Protocols

17

1   documents that the parties have negotiated in this case for use during treatment

2   observations.  These documents are necessarily complex in order to inform clinicians and

3   patients about the purpose of the observations.  I do not believe that any simpler version of

4   the protocol and script would be adequate and indeed I am concerned that efforts to keep

5   the wording simple have unnecessarily obscured the likely litigation purpose of these

6   observations to the point that the importance of that purpose may be lost on some

7   clinicians and especially some patients.  At the same time, following the protocol including

8   briefing clinicians about the purpose of the observation and obtaining informed consent

9   from patients will likely take away at least 5-10 minutes from each treatment session

10   (including the clinician's preparation in advance of the session and time after the patient

11   arrives).  Even more than 10 minutes may be required if the participants have questions.

12   This is deeply concerning in a system that is so overstretched that many 1:1 and screening

13   contacts are as short as a few minutes long and often do not occur timely or in a

14   confidential setting.  I am also concerned that, to the extent participants do appropriately

15   grasp the litigation nature of these observations, the effect of allowing a group of observers

16   into a confidential 1:1 or screening session will be even more profound than the effect of

17   allowing a neutral clinical monitor.

18       **E.**     **While Treatment Observations Are One Potentially Valuable Source of**
19               **Information About Quality of Mental Health Care, There Are Other**
                  **Less Disruptive Methods of Gathering Such Information.**

20       38.     In my experience, a monitor or litigation expert can gain sufficient

21   information about the quality of mental health care, including 1:1 mental health treatment

22   and screenings, by analyzing health care records and other available documents and

23   conducting interviews.

24       39.     In my opinion, the benefit of observations of 1:1 mental health treatment and

25   screenings proposed here is not worth the harm as described above, especially where other

26   useful and lesser intrusive types of information are available.  Here, Defendants' experts

27   have numerous sources of valuable information at their disposal including relying on the

28   existing comprehensive and ongoing monitoring of the Court's neutral Special Master.

1  They can also conduct interviews of clinical and custody leadership and line staff, which I
2  have found tend to provide highly valuable information to monitors in a correctional
3  setting. I understand that Defendants' experts' also have unfettered ability to review the
4  full healthcare record of each patient and the extensive ongoing reporting on the mental
5  health and staffing metrics that CDCR makes available to the Special Master and the
6  Court. The experts can conduct interviews with patients, observe treatment in group
7  settings, and observe IDTTs, huddles, and ICCs, which collectively comprise every
8  clinical and custodial classification at the prison.

9       40.    In sum, given the current crisis nature of care in CDCR and the other sources
10  of information available to Defendants, I recommend that Defendants' experts not be
11  permitted to observe any 1:1 mental health treatment or mental health screenings.

12

13       I declare under penalty of perjury under the laws of the United States of America
14  that the foregoing is true and correct to the best of my knowledge, and that this declaration
15  is executed at Honolulu, Hawaii this 3RD day of January, 2024.

16

17  
   Pablo Stewart, M.D.

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

<u>CURRICULUM VITAE</u>

***PABLO STEWART, M.D.***
**3021 La Pietra Circle**
**Honolulu, HI 96815**
**(808) 352-8074**
**(415) 264-0237**
**e-mail: pablo.stewart.md@gmail.com**
**(Updated November 2023)**

| | |
|---|---|
| <u>Personal Statement:</u> | As evidenced in my CV, my psychiatric career is based on several guiding principles. These include but are not limited to a commitment to diversity at all levels of medical education, including medical students, residents and faculty members. Also, I have always believed that health care is a right and not a privilege. I have demonstrated this fact by my passion for social justice and health equity for everyone. |
| <u>Language Competency:</u> | Fluent in both Spanish and English. |
| <u>EDUCATION:</u> | University of California, San Francisco, Teaching Certificate in General Medical Education, 2017 |
| | University of California, San Francisco, School of Medicine, Department of Psychiatry, Psychiatric Residency Program, 1986 |
| | University of California, San Francisco, School of Medicine, M.D., 1982 |
| | United States Naval Academy, Annapolis, MD, B.S. 1973, Major: Chemistry |
| <u>LICENSURE:</u> | California Medical License #GO50899<br>Hawai'i Medical License #MD-11784<br>Federal Drug Enforcement Administration #BS0546981<br>Hawaii Controlled Substances Certificate of Registration #E14341<br>Diplomate in Psychiatry, American Board of<br>Psychiatry and Neurology, Certificate #32564 |

<u>ACADEMIC APPOINTMENTS:</u>

| | |
|---|---|
| September 1, 2021-<br>Present | <u>Academic Appointment:</u> Clinical Professor/Psychiatrist, Queens University Medical Group (QUMG), University of Hawaii, John A. Burns School of Medicine. |
| July 1, 2019-<br>August 31, 2021 | <u>Academic Appointment:</u> Clinical Professor/Psychiatrist, University Health Partners (UHP), University of Hawaii, John A. Burns School of Medicine. |

| | |
|---|---|
| February 22, 2018-<br>February 22, 2019 | <u>Academic Appointment:</u> Clinical Professor, Department of Psychiatry, University of Hawaii, John A. Burns School of Medicine. |
| September 2006-<br>Present | <u>Academic Appointment:</u> Clinical Professor, Department of Psychiatry, University of California, San Francisco.<br>School of Medicine. |
| July 1995 -<br>August 2006 | <u>Academic Appointment:</u>  Associate Clinical Professor, Department of Psychiatry, University of California, San Francisco, School of Medicine. |
| August 1989 -<br>June 1995 | <u>Academic Appointment:</u>  Assistant Clinical Professor, Department of Psychiatry, University of California, San Francisco, School of Medicine. |
| August 1986 -<br>July 1989 | <u>Academic Appointment:</u>  Clinical Instructor, Department of Psychiatry, University of California, San Francisco, School of Medicine. |

<u>EMPLOYMENT:</u>

| | |
|---|---|
| July 2019-<br>Present | Attending Psychiatrist John A. Burns School of Medicine, Department of Psychiatry, University of Hawaii. Current duties include supervising psychiatric residents in their provision of acute and chronic care to the mentally ill inmate population housed at the Oahu Community Correctional Center. In this capacity I was also involved with local agencies in formulating the jail's response to Covid-19. I present a lecture series to the psychiatric residents regarding Forensic Psychiatry. I also serve as an Attending Psychiatrist in the Emergency Department, the Psychiatric Inpatient Unit and the Medical and Surgical Units at the Queens Medical Center. |
| December 1996-<br>Present | <u>Psychiatric Consultant</u><br>Provide consultation to governmental and private agencies on a variety of psychiatric, forensic, substance abuse and organizational issues, extensive experience in all phases of capital litigation and correctional psychiatry. |
| January 1997-<br>September 1998 | <u>Director of Clinical Services, San Francisco Target Cities Project.</u>  Overall responsibility for ensuring the quality of the clinical services provided by the various departments of the project including the Central Intake Unit, the ACCESS Project and the San Francisco Drug Court  Also responsible for providing clinical in-service trainings for the staff of the Project and community agencies that requested technical assistance. |
| February 1996 -<br>November 1996 | <u>Medical Director, Comprehensive Homeless Center,</u><br><u>Department of Veterans Affairs Medical Center, San Francisco.</u><br>Overall responsibility for the medical and psychiatric services at the Homeless Center. |

| | |
|---|---|
| March 1995 - January 1996 | <u>Chief, Intensive Psychiatric Community Care Program,</u> <u>(IPCC) Department of Veterans Affairs Medical Center, San Francisco.</u>  Overall clinical/administrative responsibility for the IPCC, a community-based case management program.  Duties also include medical/psychiatric consultation to Veteran Comprehensive Homeless Center.  This is a social work managed program that provides comprehensive social services to homeless veterans. |
| April 1991 - February 1995 | <u>Chief, Substance Abuse Inpatient Unit, (SAIU), Department</u> <u>of Veterans Affairs Medical Center, San Francisco.</u> Overall clinical/administrative responsibility for SAIU. |
| September 1990 - March 1991 | <u>Psychiatrist, Substance Abuse Inpatient Unit, Veterans</u> <u>Affairs Medical Center, San Francisco.</u>  Clinical responsibility for patients admitted to SAIU.  Provide consultation to the Medical/Surgical Units regarding patients with substance abuse issues. |
| August 1988 - December 1989 | <u>Director, Forensic Psychiatric Services, City and County of</u> <u>San Francisco.</u>  Administrative and clinical responsibility for psychiatric services provided to the inmate population of San Francisco.  Duties included direct clinical and administrative responsibility for the Jail Psychiatric Services and the Forensic Unit at San Francisco General Hospital. |
| July 1986 - August 1990 | <u>Senior Attending Psychiatrist, Forensic Unit, University of</u> <u>California, San Francisco General Hospital.</u>  Administrative and clinical responsibility for a 12-bed, maximum-security psychiatric ward.  Clinical supervision for psychiatric residents, postdoctoral psychology fellows and medical students assigned to the ward.  Liaison with Jail Psychiatric Services, City and County of San Francisco.  Advise San Francisco City Attorney on issues pertaining to forensic psychiatry. |
| July 1985 June 1986 | <u>Chief Resident, Department of Psychiatry, University of</u> <u>California</u> <u>San Francisco General Hospital.</u>  Team leader of the Latino-focus inpatient treatment team (involving 10-12 patients with bicultural/bilingual issues); direct clinical supervision of 7 psychiatric residents and 3-6 medical students; organized weekly departmental Grand Rounds; administered and supervised departmental residents' call schedule; psychiatric consultant to hospital general medical clinic; assistant coordinator of medical student education; group seminar leader for introduction to clinical psychiatry course for UCSF second-year medical students. |
| July 1984 - March 1987 | <u>Physician Specialist, Westside Crisis Center, San Francisco,</u> <u>CA.</u>  Responsibility for Crisis Center operations during assigned shifts, admitting privileges at Mount Zion Hospital.  Provided psychiatric consultation for the patients admitted to Mount Zion Hospital when requested. |
| April 1984 - | <u>Psychiatric Consultant, Marin Alternative Treatment, (ACT).</u> |

| | |
|---|---|
| July 1985 | Provided medical and psychiatric evaluation and treatment of residential drug and alcohol clients; consultant to staff concerning medical/psychiatric issues. |
| August 1983 - November 1984 | <u>Physician Specialist, Mission Mental Health Crisis Center, San Francisco, CA.</u>  Clinical responsibility for Crisis Center clients; consultant to staff concerning medical/psychiatric issues. |
| July 1982- July 1985 | <u>Psychiatric Resident, University of California, San Francisco.</u> Primary Therapist and Medical Consultant for the adult inpatient units at San Francisco General Hospital and San Francisco Veterans Affairs Medical Center; Medical Coordinator/Primary Therapist - Alcohol Inpatient Unit and Substance Abuse Clinic at San Francisco Veterans Affairs Medical Center; Outpatient Adult/Child Psychotherapist; Psychiatric Consultant - Adult Day Treatment Center - San Francisco Veterans Affairs Medical Center; Primary Therapist and Medial Consultant - San Francisco General Hospital Psychiatric Emergency Services; Psychiatric Consultant, Inpatient Medical/Surgical Units - San Francisco General Hospital. |
| June 1973 - July 1978 | <u>Infantry Officer - United States Marine Corps.</u> Rifle Platoon Commander; Anti-tank Platoon Commander; 81mm Mortar Platoon Commander; Rifle Company Executive Officer; Rifle Company Commander; Assistant Battalion Operations Officer; Embarkation Officer; Recruitment Officer; Drug, Alcohol and Human Relations Counselor; Parachutist and Scuba Diver; Officer in Charge of a Vietnamese Refugee Camp. Received an Honorable Discharge.  Highest rank attained was Captain. |

<u>HONORS AND AWARDS:</u>

| | |
|---|---|
| June 2020 | Recognized by the Department of Psychiatry, John A. Burns School of Medicine, University of Hawaii as the recipient of the 2019-2020 Excellence in Teaching Award-Psychiatry. |
| June 2015 | Recognized by the Psychiatry Residents Association of the University of California, San Francisco, School of Medicine, Department of Psychiatry for "Excellence in Teaching" for the academic year 2014-2015. |
| June 1995 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as the outstanding psychiatric faculty member for the academic year 1994/1995. |
| June 1993 | Selected by the class of 1996, University of California, San Francisco, School of Medicine as outstanding lecturer, academic year 1992/1993. |
| May 1993 | Elected to Membership of Medical Honor Society, AOA, by the AOA Member of the 1993 Graduating Class of the University of California, San Francisco, School of Medicine. |

| | |
|---|---|
| May 1991 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as the outstanding psychiatric faculty member for the academic year 1990-1991. |
| May 1990 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as the outstanding psychiatric faculty member for the academic year 1989-1990. |
| May 1989 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as the outstanding psychiatric faculty member for the academic year 1988-1989. |
| May 1987 | Selected by the faculty and students at the University of California, San Francisco, School of Medicine as the recipient of the Henry J. Kaiser Award for Excellence in Teaching. |
| May 1987 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as Outstanding Psychiatric Resident. The award covered the period of 1 July 1985 to 30 June 1986, during which time I served as Chief Psychiatric resident, San Francisco General Hospital. |
| May 1985 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as Outstanding Psychiatric Resident. |
| 1985 | Mead-Johnson American Psychiatric Association Fellowship. One of sixteen nationwide psychiatric residents selected because of a demonstrated commitment to public sector psychiatry. Made presentation at Annual Hospital and Community Psychiatry Meeting in Montreal, Canada, in October 1985, on the "Psychiatric Aspects of the Acquired Immunodeficiency Syndrome." |

MEMBERSHIPS:

| | |
|---|---|
| June 2000-<br>May 2008 | California Association of Drug Court Professionals. |
| July 1997-<br>June 1998 | President, Alumni-Faculty Association, University of California, San Francisco, School of Medicine. |
| July 1996 -<br>June 1997 | President-Elect, Alumni-Faculty Association, University of California, San Francisco, School of Medicine. |
| July 1995 -<br>June 1996 | Vice President, Northern California Area, Alumni-Faculty Association, University of California, San Francisco, School of Medicine. |
| April 1995 -<br>April 2002 | Associate Clinical Member, American Group Psychotherapy Association. |
| July 1992 -<br>June 1995 | Secretary-Treasurer, Alumni-Faculty Association, University of California, San Francisco, School of Medicine. |

| | |
|---|---|
| July 1990 -<br>June 1992 | Councilor-at-large, Alumni-Faculty Association, University of California, San Francisco, School of Medicine |

PUBLIC SERVICE:

| | |
|---|---|
| June 1992 | Examiner, American Board of Psychiatry and Neurology, Inc. |
| November 1992 -<br>January 1994 | California Tuberculosis Elimination Task Force, Institutional Control Subcommittee. |
| September 2000-<br>April 2005 | Editorial Advisory Board, *Juvenile Correctional Mental Health Report.* |
| May 2001-<br>September 2010 | Psychiatric and Substance Abuse Consultant, San Francisco Police Officers' Association. |
| January 2002-<br>June 2003 | Psychiatric Consultant, San Francisco Sheriff's Department Peer Support Program. |
| February 2003-<br>April 2004 | Proposition "N" (Care Not Cash) Service Providers' Advisory Committee, Department of Human Services, City and County of San Francisco. |
| December 2003-<br>January 2004 | Member of San Francisco Mayor-Elect Gavin Newsom's Transition Team. |
| February 2004-<br>June 2004 | Mayor's Homeless Coalition, San Francisco, CA. |
| April 2004-<br>January 2006;<br>February 2017-<br>October 2018 | Member of Human Services Commission, City and County of San Francisco. |
| February 2006-<br>January 2007;<br>April 2013-<br>January 2015 | Vice President, Human Services Commission, City and County of San Francisco. |
| February 2007-<br>March 2013;<br>February 2015-<br>2017 | President, Human Services Commission, City and County of San Francisco. |
| January 2019- present | Certified Death Doula; Medical Aid In Dying practitioner. In this role I attend to dying patients to help them achieve a dignified, painless death. |

UNIVERSITY SERVICE:

| | |
|---|---|
| June 2020-<br>Present | Member of the John A. Burns School of Medicine, University of Hawaii Scholarship Committee. |

| | |
|---|---|
| June 2020-<br>Present | Member of the resident selection committee for the Department of Psychiatry, John A. Burns School of Medicine, University of Hawaii. |
| October 1999-<br>October 2001 | Lecturer, University of California, San Francisco, School of Medicine Post Baccalaureate Reapplicant Program. |
| July 1999-<br>July 2001 | Seminar Leader, National Youth Leadership Forum On Medicine. |
| November 1998-<br>November 2001 | Lecturer, University of California, San Francisco, School of Nursing, Department of Family Health Care Nursing.  Lecture to the Advanced Practice Nurse Practitioner Students on Alcohol, Tobacco and Other Drug Dependencies. |
| January 1994 -<br>January 2001 | Preceptor/Lecturer, UCSF Homeless Clinic Project. |
| June 1990 -<br>November 1996 | Curriculum Advisor, University of California, San Francisco, School of Medicine. |
| June 1987 -<br>June 1992 | Facilitate weekly Support Groups for interns in the Department of Medicine.  Also, provide crisis intervention and psychiatric referral for Department of Medicine housestaff. |
| January 1987 –<br>June 1988 | Student Impairment Committee, University of California San Francisco, School of Medicine.<br>Advise the Dean of the School of Medicine on methods to identify, treat and prevent student impairment. |
| January 1986 –<br>June 1996 | Recruitment/Retention Subcommittee of the Admissions Committee, University of California, San Francisco, School of Medicine.<br>Advise the Dean of the School of Medicine on methods to attract and retain minority students and faculty. |
| October 1986 -<br>September 1987 | Member Steering Committee for the Hispanic Medical Education Resource Committee.<br>Plan and present educational programs to increase awareness of the special health needs of Hispanics in the United States. |
| September 1983 -<br>June 1989 | Admissions Committee, University of California, School of Medicine.  Duties included screening applications and interviewing candidates for medical school. |
| October 1978 -<br>December 1980 | Co-Founder and Director of the University of California, San Francisco Running Clinic. Provided free instruction to the public on proper methods of exercise and preventative health measures. |

TEACHING RESPONSIBILITIES:

| | |
|---|---|
| July 2019- | Present a lecture series to the psychiatric residents of the |

| | |
|---|---|
| present | Department of Psychiatry, JABSOM, University of Hawaii on forensic psychiatry. Psychotherapy supervisor and career mentor Department of Psychiatry, JABSOM, University of Hawaii. |
| December 2018-May 2019 | Lecturer, Department of Psychiatry, JABSOM, University of Hawaii. |
| September 2016-June 2018 | Evidence-Based Inquiry Facilitator for the *Bridges Curriculum*, University of California, San Francisco, School of Medicine. |
| August 2014-June 2018 | Small Group Facilitator, Foundations of Patient Care, University of California, San Francisco, School of Medicine. |
| July 2003-June 2018 | Facilitate weekly psychotherapy training group for residents in the Department of Psychiatry. |
| January 2002-January 2004 | Course Coordinator of Elective Course University of California, San Francisco, School of Medicine, "Prisoner Health." This is a 1-unit course, which covers the unique health needs of prisoners. |
| September 2001-June 2003 | Supervisor, San Mateo County Psychiatric Residency Program. |
| April 1999-April 2001 | Lecturer, UCSF School of Pharmacy, Committee for Drug Awareness Community Outreach Project. |
| February 1998-June 2000 | Lecturer, UCSF Student Enrichment Program. |
| January 1996 -November 1996 | Supervisor, Psychiatry 110 students, Veterans Comprehensive Homeless Center. |
| September 1990-December 2002 | Supervisor, UCSF School of Medicine, Department of Psychiatry, Substance Abuse Fellowship Program. |
| September 1994 -June 1999 | Course Coordinator of Elective Course, University of California, San Francisco, School of Medicine. Designed, planned and taught course, Psychiatry 170.02, "Drug and Alcohol Abuse." This is a 1-unit course, which covers the major aspects of drug and alcohol abuse. |
| August 1994 -February 2006 | Supervisor, Psychiatric Continuity Clinic, Haight Ashbury Free Clinic, Drug Detoxification and Aftercare Project. Supervise 4th Year medical students in the care of dual diagnostic patients. |
| February 1994 -February 2006 | Consultant, Napa State Hospital Chemical Dependency Program Monthly Conference. |
| July 1992 -June 1994 | Facilitate weekly psychiatric intern seminar, "Psychiatric Aspects of Medicine," University of California, San Francisco, School of Medicine. |

| | |
|---|---|
| July 1991-<br>Present | Group and individual psychotherapy supervisor, Outpatient Clinic, Department of Psychiatry, University of California, San Francisco, School of Medicine. |
| January 1991 | Lecturer, University of California, San Francisco, School of Pharmacy course, "Addictionology and Substance Abuse Prevention." |
| September 1990 -<br>February 1995 | Clinical supervisor, substance abuse fellows, and psychiatric residents, Substance Abuse Inpatient Unit, San Francisco Veterans Affairs Medical Center. |
| September 1990 -<br>November 1996 | Off ward supervisor, PGY II psychiatric residents, Psychiatric Inpatient Unit, San Francisco Veterans Affairs Medical Center. |
| September 1990 -<br>June 1991 | Group therapy supervisor, Psychiatric Inpatient Unit, (PIU), San Francisco Veterans Affairs Medical Center. |
| September 1990 -<br>June 1994 | Course coordinator, Psychiatry 110, San Francisco Veterans Affairs Medical Center. |
| September 1989 -<br>November 1996 | Seminar leader/lecturer, Psychiatry 100 A/B. |
| July 1988 -<br>June 1992 | Clinical supervisor, PGY III psychiatric residents, Haight Ashbury Free Clinic, Drug Detoxification and Aftercare Project. |
| September 1987 -<br>Present | Tavistock Organizational Consultant. Extensive experience as a consultant in numerous Tavistock conferences. |
| September 1987 -<br>December 1993 | Course Coordinator of Elective Course, University of California, San Francisco, School of Medicine. Designed, planned and taught course, Psychiatry 170.02, "Alcoholism". This is a 1-unit course offered to medical students, which covers alcoholism with special emphasis on the health professional. This course is offered fall quarter each academic year. |
| July 1987-<br>June 1994 | Clinical supervisor/lecturer FCM 110, San Francisco General Hospital and Veterans Affairs Medical Center. |
| July 1986 -<br>June 1996 | Seminar leader/lecturer Psychiatry 131 A/B. |
| July 1986 -<br>August 1990 | Clinical supervisor, Psychology interns/fellows, San Francisco General Hospital. |
| July 1986 -<br>August 1990 | Clinical supervisor PGY I psychiatric residents, San Francisco General Hospital |
| July 1986 -<br>August 1990 | Coordinator of Medical Student Education, University of California, San Francisco General Hospital, Department of Psychiatry. Teach seminars and supervise clerkships to medical |

students including: Psychological Core of Medicine 100 A/B; Introduction to Clinical Psychiatry 131 A/B; Core Psychiatric Clerkship 110 and Advanced Clinical Clerkship in Psychiatry 141.01.

| July 1985 – August 1990 | Psychiatric Consultant to the General Medical Clinic, University of California, San Francisco General Hospital. Teach and supervise medical residents in interviewing and communication skills. Provide instruction to the clinic on the psychiatric aspects of ambulatory medical care. |

COMMUNITY SERVICE AND PRISON CONDITIONS EXPERT WORK:

February 2019-
Forensic psychiatric consultant to the British Charity, Reprieve. In this role, I have conducted postconviction, capital mitigation assessments. I have done this work in Indonesia and Malawi.

May 2016-
July 2022
Court-appointed monitor in *Ashoor Rasho, et al. v. Director John R. Baldwin, et al.*, No.:1:07-CV-1298-MMM-JEH (District Court, Peoria, Illinois.) This case involves the provision of constitutional mental health care to the inmate population of the Illinois Department of Corrections.

June 2015-
May 2017
Senior Fellow, University of California, Criminal Justice & Health Consortium.

April 2014-
October 2018
Plaintiffs' expert in *Hernandez, et al. v. County of Monterey, et al.*, No.: CV 13 2354 PSG. This case involves the provision of unconstitutional mental health and medical services to the inmate population of Monterey County Jail.

January-December 2014
Federal Bureau of Prisons: Special Housing Unit Review and Assessment. This was a year-long review of the quality of mental health services in the segregated housing units of the BOP.

August 2012-present
Plaintiffs' expert in *Parsons et al. v. Ryan* et al., (District Court, Phoenix, Arizona.) This case involves the provision of unconstitutional mental health and medical services to the inmate population of the Arizona Department of Corrections.

October 2007-
Present
Plaintiffs' expert in 2007-2010 overcrowding litigation and in opposing current efforts by defendants to terminate the injunctive relief in *Coleman v. Brown,* United States District Court, Eastern District of California, Case No. 2:90-cv-00520-LKK-JFM. The litigation involves plaintiffs' claim that overcrowding is causing unconstitutional medical and mental health care in the California state prison system. Plaintiffs won an order requiring the state to reduce its population by approximately 45,000 state prisoners. My expert opinion was cited several times in the landmark United States Supreme Court decision upholding the prison population reduction order. *See Brown v. Plata,* ___ U.S. ___, 131 S. Ct. 1910, 1933 n.6, 1935, 179 L.Ed.2d 969, 992 n.6, 994 (2011).

10

| | |
|---|---|
| July/August 2008-<br>July 2016 | Plaintiff psychiatric expert in the case of Fred Graves, et al., plaintiffs v. Joseph Arpaio, et al., defendants (District Court, Phoenix, Arizona.)  This case involved Federal oversight of the mental health treatment provided to pre-trial detainees in the Maricopa County Jails. |
| February 2006-<br>December 2009 | Board of Directors, Physician Foundation at California Pacific Medical Center. |
| June 2004-<br>September 2012 | Psychiatric Consultant, Hawaii Drug Court. |
| November 2003-<br>June 2008 | Organizational/Psychiatric Consultant, State of Hawaii, Department of Human Services. |
| June 2003-<br>December 2004 | Monitor of the psychiatric sections of the "Ayers Agreement," New Mexico Corrections Department (NMCD).  This is a settlement arrived at between plaintiffs and the NMCD regarding the provision of constitutionally mandated psychiatric services for inmates placed within the Department's "Supermax" unit. |
| October 2002-<br>August 2006 | Juvenile Mental Health and Medical Consultant, United States Department of Justice, Civil Rights Division, Special Litigation Section. |
| July 1998-<br>June 2000 | Psychiatric Consultant to the Pacific Research and Training Alliance's Alcohol and Drug Disability Technical Assistance Project.  This Project aids programs and communities that will have long lasting impact and permanently improve the quality of alcohol and other drug services available to individuals with disabilities. |
| July 1998-<br>February 2004 | Psychiatric Consultant to the National Council on Crime and Delinquency (NCCD) in its monitoring of the State of Georgia's secure juvenile detention and treatment facilities.  NCCD is acting as the monitor of the agreement between the United States and Georgia to improve the quality of the juvenile justice facilities, critical mental health, medical and educational services, and treatment programs.  NCCD ceased to be the monitoring agency for this project in June 1999.  At that time, the Institute of Crime, Justice and Corrections at the George Washington University became the monitoring agency.  The work remained unchanged. |
| July 1998-<br>July 2001 | Psychiatric Consultant to the San Francisco Campaign Against Drug Abuse (SF CADA). |
| March 1997-<br>Present | Technical Assistance Consultant, Center for Substance Abuse Treatment, Substance Abuse and Mental Health Services Administration, Department of Health and Human Services. |
| January 1996-<br>June 2003 | Psychiatric Consultant to the San Francisco Drug Court. |

11

| | |
|---|---|
| November 1993-<br>June 2001 | Executive Committee, Addiction Technology Transfer<br>Center (ATTC), University of California, San Diego. |
| December 1992 -<br>December 1994 | Institutional Review Board, Haight Ashbury Free Clinics, Inc.<br>Review all research protocols for the clinic per Department of<br>Health and Human Services guidelines. |
| June 1991-<br>February 2006 | Chief of Psychiatric Services, Haight Ashbury Free Clinic.<br>Overall responsibility for psychiatric services at the clinic. |
| December 1990 -<br>June 1991 | Medical Director, Haight Ashbury Free Clinic,<br>Drug Detoxification and Aftercare Project. Responsible for<br>directing all medical and psychiatric care at the clinic. |
| October 1996-July 1997 | Psychiatric Expert for the U.S. District Court, Northern District of<br>California, in the case of Madrid v. Gomez, No. C90-3094-TEH.<br>Report directly to the Special Master regarding the implementation<br>of constitutionally mandated psychiatric care to the inmates at<br>Pelican Bay State Prison. |
| April 1990 –January 2000 | Psychiatric Expert for the U.S. District Court, Eastern District of<br>California, in the case of Gates v. Deukmejian, No. C1V S-87-<br>1636 LKK-JFM. Report directly to the court regarding<br>implementation and monitoring of the consent decree in this case.<br>This case involves the provision of adequate psychiatric care to the<br>inmates at the California Medical Facility, Vacaville. A major<br>portion of this consent decree also involved establishing a program<br>for the identification and treatment of inmates with Mental<br>Retardation (currently referred to as Intellectual Disability.) |
| January 1984 -<br>December 1990 | Chief of Psychiatric Services, Haight Ashbury Free Clinic,<br>Drug Detoxification and Aftercare Project. Direct<br>medical/psychiatric management of project clients; consultant to<br>staff on substance abuse issues. Special emphasis on dual<br>diagnostic patients. |
| July 1981-<br>December 1981 | Medical/Psychiatric Consultant, Youth Services,<br>Hospitality House, San Francisco, CA. Advised youth services<br>staff on client management. Provided training on various topics<br>related to adolescents. Facilitated weekly client support groups. |

SERVICE TO ELEMENTARY AND SECONDARY EDUCATION:

| | |
|---|---|
| January 1996 -<br>June 2002 | Baseball, Basketball and Volleyball Coach, Convent of the<br>Sacred Heart Elementary School, San Francisco, CA. |
| September 1994 -<br>June 2002 | Soccer Coach, Convent of the Sacred Heart Elementary<br>School, San Francisco, CA. |
| June 1991-<br>June 1994 | Board of Directors, Pacific Primary School,<br>San Francisco, CA. |

April 1989 -            Umpire, Rincon Valley Little League, Santa Rosa, CA.
July 1996

September 1988 -       Numerous presentations on Mental Health/Substance
May 1995               Abuse issues to the student body, Hidden Valley Elementary
                       School and Santa Rosa Jr. High School, Santa Rosa, CA.


PRESENTATIONS:

1.    San Francisco Treatment Research Unit, University of California, San Francisco,
      Colloquium #1.  (10/12/1990).  "The Use of Anti-Depressant Medications with
      Substance-Abusing Clients."

2.    Grand Rounds.  Department of Psychiatry, University of California, San Francisco,
      School of Medicine.  (12/5/1990).  "Advances in the Field of Dual Diagnosis."

3.    Associates Council, American College of Physicians, Northern California Region,
      Program for Leadership Conference, Napa, California.  (3/3/1991).  "Planning a
      Satisfying Life in Medicine."

4.    24th Annual Medical Symposium on Renal Disease, sponsored by the Medical Advisory
      Board of the National Kidney Foundation of Northern California, San Mateo, California.
      (9/11/1991).  "The Chronically Ill Substance Abuser."

5.    Mentoring Skills Conference, University of California, San Francisco, School of
      Medicine, Department of Pediatrics.  (11/26/91).  "Mentoring as an Art."

6.    Continuing Medical Education Conference, Sponsored by the Department of Psychiatry,
      University of California, San Francisco, School of Medicine.  (4/25/1992).  "Clinical &
      Research Advances in the Treatment of Alcoholism and Drug Abuse."

7.    First International Conference of Mental Health and Leisure.  University of Utah.
      (7/9/1992).  "The Use of Commonly Abused Street Drugs in the Treatment of Mental
      Illness."

8.    American Group Psychotherapy Association Annual Meeting, San Francisco, California.
      (2/20/1993).  "Inpatient Groups in Initial-Stage Addiction Treatment."

9.    Grand Rounds.  Department of Child Psychiatry, Stanford University School of
      Medicine.  (3/17/93, 9/11/96).  "Issues in Adolescent Substance Abuse."

10.   University of California, Extension.  Alcohol and Drug Abuse Studies Program.
      (5/14/93), (6/24/94), (9/22/95), (2/28/97).  "Dual Diagnosis."

11.   American Psychiatric Association Annual Meeting.  (5/26/1993).  "Issues in the
      Treatment of the Dual Diagnosis Patient."

12.   Long Beach Regional Medical Education Center and Social Work Service, San Francisco
      Veterans Affairs Medical Center Conference on Dual Diagnosis.  (6/23/1993).  "Dual
      Diagnosis Treatment Issues."

13.    Utah Medical Association Annual Meeting, Salt Lake City, Utah. (10/7/93). "Prescription Drug Abuse Helping your Patient, Protecting Yourself."

14.    Saint Francis Memorial Hospital, San Francisco, Medical Staff Conference. (11/30/1993). "Management of Patients with Dual Diagnosis and Alcohol Withdrawal."

15.    Haight Ashbury Free Clinic's 27th Anniversary Conference. (6/10/94). "Attention Deficit Disorder, Substance Abuse, Psychiatric Disorders and Related Issues."

16.    University of California, San Diego. Addiction Technology Transfer Center Annual Summer Clinical Institute: (8/30/94), (8/29/95), (8/5/96), (8/4/97), (8/3/98). "Treating Multiple Disorders."

17.    National Resource Center on Homelessness and Mental Illness, A Training Institute for Psychiatrists. (9/10/94). "Psychiatry, Homelessness, and Serious Mental Illness."

18.    Value Behavioral Health/American Psychiatry Management Seminar. (12/1/1994). "Substance Abuse/Dual Diagnosis in the Work Setting."

19.    Grand Rounds. Department of Oral and Maxillofacial Surgery, University of California, San Francisco, School of Dentistry. (1/24/1995). "Models of Addiction."

20.    San Francisco State University, School of Social Work, Title IV-E Child Welfare Training Project. (1/25/95, 1/24/96, 1/13/97, 1/21/98, 1/13/99, 1/24/00, 1/12/01). "Demystifying Dual Diagnosis."

21.    First Annual Conference on the Dually Disordered. (3/10/1995). "Assessment of Substance Abuse." Sponsored by the Division of Mental Health and Substance Abuse Services and Target Cities Project, Department of Public Health, City and County of San Francisco.

22.    Delta Memorial Hospital, Antioch, California, Medical Staff Conference. (3/28/1995). "Dealing with the Alcohol and Drug Dependent Patient." Sponsored by University of California, San Francisco, School of Medicine, Office of Continuing Medical Education.

23.    Centre Hospitalier Robert-Giffaard, Beoupont (Quebec), Canada. (11/23/95). "Reconfiguration of Psychiatric Services in Quebec Based on the San Francisco Experience."

24.    The Labor and Employment Section of the State Bar of California. (1/19/96). "Understanding Alcoholism and its Impact on the Legal Profession." MCCE Conference, San Francisco, CA.

25.    American Group Psychotherapy Association, Annual Training Institute. (2/13-2/14/96), National Instructor - Designate training group.

26.    American Group Psychotherapy Association, Annual Meeting. (2/10/96). "The Process Group at Work."

27.    Medical Staff Conference, Kaiser Foundation Hospital, Pleasanton, California, "The Management of Prescription Drug Addiction". (4/24/96)

28.     International European Drug Abuse Treatment Training Project, Ankaran, Slovenia, "The Management of the Dually Diagnosed Patient in Former Soviet Block Europe". (10/5-10/11/96)

29.     Contra Costa County Dual Diagnosis Conference, Pleasant Hill, California, "Two Philosophies, Two Approaches: One Client".  (11/14/96)

30.     Faith Initiative Conference, San Francisco, California, "Spirituality: The Forgotten Dimension of Recovery".  (11/22/96)

31.     Alameda County Dual Diagnosis Conference, Alameda, California, "Medical Management of the Dually Diagnosed Patient". (2/4/97, 3/4/97)

32.     Haight Ashbury Free Clinic's 30th Anniversary Conference, San Francisco, California, "Indicators for the Use of the New Antipsychotics". (6/4/97)

33.     DPH/Community Substance Abuse Services/San Francisco Target Cities Project sponsored conference, "Intake, Assessment and Service Linkages in the Substance Abuse System of Care", San Francisco, California.  (7/31/97)

34.     The Institute of Addictions Studies and Lewis and Clark College sponsored conference, 1997 Northwest Regional Summer Institute, "Addictions Treatment: What We Know Today, How We'll Practice Tomorrow; Assessment and Treatment of the High-Risk Offender".  Wilsonville, Oregon. (8/1/97)

35.     The California Council of Community Mental Health Agencies Winter Conference, Keynote Presentation, "Combining funding sources and integrating treatment for addiction problems for children, adolescents and adults, as well as coordination of addiction treatment for parents with mental health services to severely emotionally disturbed children." Newport Beach, California.  (2/12/98)

36.     American Group Psychotherapy Association, Annual Training Institute, Chicago, Illinois. (2/16-2/28/1998), Intermediate Level Process Group Leader.

37.     "Multimodal Psychoanalytic Treatment of Psychotic Disorders: Learning from the Quebec Experience."  The Haight Ashbury Free Clinics Inc. sponsored this seminar in conjunction with the San Francisco Society for Lacanian Studies and the Lacanian School of Psychoanalysis.  San Francisco, California.  (3/6-3/8/1998)

38.     "AIDS Update for Primary Care: Substance Use & HIV: Problem Solving at the Intersection."  The East Bay AIDS Education & Training Center and the East Bay AIDS Center, Alta Bates Medical Center, Berkeley, California sponsored this conference. (6/4/1998)

39.     Haight Ashbury Free Clinic's 31st Anniversary Conference, San Francisco, California, "Commonly Encountered Psychiatric Problems in Women."  (6/11/1998)

40.     Community Networking Breakfast sponsored by San Mateo County Alcohol & Drug Services and Youth Empowering Systems, Belmont, California, "Dual Diagnosis, Two Approaches, Two Philosophies, One Patient." (6/17/1998)

41.     Grand Rounds, Department of Medicine, Alameda County Medical Center-Highland Campus, Oakland, California, "Medical/Psychiatric Presentation of the Patient with both Psychiatric and Substance Abuse Problems." (6/19/1998)

42.     "Rehabilitation, Recovery, and Reality: Community Treatment of the Dually Diagnosed Consumer."  The Occupational Therapy Association of California, Dominican College of San Rafael and the Psychiatric Occupational Therapy Action Coalition sponsored this conference.  San Rafael, California.  (6/20/1998)

43.     "Assessment, Diagnosis and Treatment of the Patient with a Dual Diagnosis", Los Angeles County Department of Mental Health sponsored conference, Los Angeles, CA.  (6/29/98)

44.     Grand Rounds, Wai'anae Coast Comprehensive Health Center, Wai'anae, Hawaii, "Assessment and Treatment of the Patient who presents with concurrent Depression and Substance Abuse."  (7/15/1998)

45.     "Dual Diagnostic Aspects of Methamphetamine Abuse", Hawaii Department of Health, Alcohol and Drug Abuse Division sponsored conference, Honolulu, Hawaii.  (9/2/98)

46.     9th Annual Advanced Pain and Symptom Management, the Art of Pain Management Conference, sponsored by Visiting Nurses and Hospice of San Francisco.  "Care Issues and Pain Management for Chemically Dependent Patients."   San Francisco, CA.  (9/10/98)

47.     Latino Behavioral Health Institute Annual Conference, "Margin to Mainstream III: Latino Health Care 2000."  "Mental Illness and Substance Abuse Assessment: Diagnosis and Treatment Planning for the Dually Diagnosed", Los Angeles, CA.  (9/18/98)

48.     Chemical Dependency Conference, Department of Mental Health, Napa State Hospital, "Substance Abuse and Major Depressive Disorder."  Napa, CA.  (9/23/98)

49.     "Assessment, Diagnosis and Treatment of the Patient with a Dual Diagnosis", San Mateo County Drug and Alcohol Services, Belmont, CA.  (9/30/98)

50.     "Assessment, Diagnosis and Treatment of the Patient with a Dual Diagnosis", Sacramento County Department of Mental Health, Sacramento, CA.  (10/13/98)

51.     California Department of Health, Office of AIDS, 1998 Annual AIDS Case Management Program/Medi-Cal Waiver Program (CMP/MCWP) Conference, "Triple Diagnosis: What's Really Happening with your Patient."  Concord, CA.  (10/15/98)

52.     California Mental Health Director's Association Meeting: Dual Diagnosis, Effective Models of Collaboration; "Multiple Problem Patients: Designing a System to Meet Their Unique Needs", San Francisco Park Plaza Hotel.  (10/15/98)

53.     Northwest GTA Health Corporation, Peel Memorial Hospital, Annual Mental Health Conference, "Recognition and Assessment of Substance Abuse in Mental Illness."  Brampton, Ontario, Canada.  (10/23/98)

54.     1998 California Drug Court Symposium, "Mental Health Issues and Drug Involved Offenders."  Sacramento, CA.  (12/11/98)

55.     "Assessment, Diagnosis and Treatment Planning for the Dually Diagnosed", Mono County Alcohol and Drug Programs, Mammoth Lakes, CA.  (1/7/99)

56.     Medical Staff Conference, Kaiser Foundation Hospital, Walnut Creek, CA, "Substance Abuse and Major Depressive Disorder."  (1/19/99)

57. "Issues and Strategies in the Treatment of Substance Abusers", Alameda County Consolidated Drug Courts, Oakland, CA. (1/22/99 & 2/5/99)

58. Compass Health Care's 12th Annual Winter Conference on Addiction, Tucson, AZ: "Dual Systems, Dual Philosophies, One Patient", "Substance Abuse and Developmental Disabilities" & "Assessment and Treatment of the High-Risk Offender." (2/17/99)

59. American Group Psychotherapy Association, Annual Training Institute, Houston, Texas. (2/22-2/24/1999). Entry Level Process Group Leader.

60. "Exploring A New Framework: New Technologies For Addiction And Recovery", Maui County Department of Housing and Human Concerns, Malama Family Recovery Center, Maui, Hawaii. (3/5 & 3/6/99)

61. "Assessment, Diagnosis and Treatment of the Dual Diagnostic Patient", San Bernardino County Office of Alcohol & Drug Treatment Services, San Bernardino, CA. (3/10/99)

62. "Smoking Cessation in the Chronically Mentally Ill, Part 1", California Department of Mental Health, Napa State Hospital, Napa, CA. (3/11/99)

63. "Dual Diagnosis and Effective Methods of Collaboration", County of Tulare Health & Human Services Agency, Visalia, CA. (3/17/99)

64. Pfizer Pharmaceuticals sponsored lecture tour of Hawai'i. Lectures included: Major Depressive Disorder and Substance Abuse, Treatment Strategies for Depression and Anxiety with the Substance Abusing Patient, Advances in the Field of Dual Diagnosis & Addressing the Needs of the Patient with Multiple Substance Dependencies. Lecture sites included: Straub Hospital, Honolulu; Maui County Community Mental Health; Veterans Administration Hospital, Honolulu; Hawai'i (Big Island) County Community Mental Health; Mililani (Oahu) Physicians Center; Kahi Mohala (Oahu) Psychiatric Hospital; Hale ola Ka'u (Big Island) Residential Treatment Facility. (4/2-4/9/99)

65. "Assessment, Diagnosis and Treatment of the Patient with Multiple Disorders", Mendocino County Department of Public Health, Division of Alcohol & Other Drug Programs, Ukiah, CA. (4/14/99)

66. "Assessment of the Substance Abusing & Mentally Ill Female Patient in Early Recovery", Ujima Family Services Agency, Richmond, CA. (4/21/99)

67. California Institute for Mental Health, Adult System of Care Conference, "Partners in Excellence", Riverside, California. (4/29/99)

68. "Advances in the Field of Dual Diagnosis", University of Hawai'i School of Medicine, Department of Psychiatry Grand Rounds, Queens Hospital, Honolulu, Hawai'i. (4/30/99)

69. State of Hawai'i Department of Health, Mental Health Division, "Strategic Planning to Address the Concerns of the United States Department of Justice for the Alleged Civil Rights Abuses in the Kaneohe State Hospital." Honolulu, Hawai'i. (4/30/99)

70. "Assessment, Diagnosis and Treatment Planning for the Patient with Dual/Triple Diagnosis", State of Hawai'i, Department of Health, Drug and Alcohol Abuse Division, Dole Cannery, Honolulu, Hawai'i. (4/30/99)

71.   11th Annual Early Intervention Program Conference, State of California Department of Health Services, Office of Aids, "Addressing the Substance Abuse and Mental Health Needs of the HIV (+) Patient." Concord, California. (5/6/99)

72.   The HIV Challenge Medical Conference, Sponsored by the North County (San Diego) AIDS Coalition, "Addressing the Substance Abuse and Mental Health Needs of the HIV (+) Patient." Escondido, California. (5/7/99)

73.   "Assessment, Diagnosis and Treatment of the Patient with Multiple Disorders", Sonoma County Community Mental Health's Monthly Grand Rounds, Community Hospital, Santa Rosa, California. (5/13/99)

74.   "Developing & Providing Effective Services for Dually Diagnosed or High Service Utilizing Consumers", third annual conference presented by the Southern California Mental Health Directors Association. Anaheim, California. (5/21/99)

75.   15th Annual Idaho Conference on Alcohol and Drug Dependency, lectures included "Dual Diagnostic Issues", "Impulse Control Disorders" and "Major Depressive Disorder." Boise State University, Boise, Idaho. (5/25/99)

76.   "Smoking Cessation in the Chronically Mentally Ill, Part 2", California Department of Mental Health, Napa State Hospital, Napa, California. (6/3/99)

77.   "Alcohol and Drug Abuse: Systems of Care and Treatment in the United States", Ando Hospital, Kyoto, Japan. (6/14/99)

78.   "Alcoholism: Practical Approaches to Diagnosis and Treatment", National Institute On Alcoholism, Kurihama National Hospital, Yokosuka, Japan. (6/17/99)

79.   "Adolescent Drug and Alcohol Abuse", Kusatsu Kinrofukushi Center, Kusatsu, Japan. (6/22/99)

80.   "Assessment, Diagnosis and Treatment of the Patient with Multiple Diagnoses", Osaka Drug Addiction Rehabilitation Center Support Network, Kobe, Japan. (6/26/99)

81.   "Assessment, Diagnosis and Treatment of the Patient with Multiple Diagnoses", Santa Barbara County Department of Alcohol, Drug, & Mental Health Services, Buellton, California. (7/13/99)

82.   "Drug and Alcohol Issues in the Primary Care Setting", County of Tulare Health & Human Services Agency, Edison Ag Tac Center, Tulare, California. (7/15/99)

83.   "Working with the Substance Abuser in the Criminal Justice System", San Mateo County Alcohol and Drug Services and Adult Probation Department, Redwood City, California. (7/22/99)

84.   1999 Summer Clinical Institute In Addiction Studies, University of California, San Diego School of Medicine, Department of Psychiatry. Lectures included: "Triple Diagnosis: HIV, Substance Abuse and Mental Illness. What's Really Happening to your Patient?" "Psychiatric Assessment in the Criminal Justice Setting, Learning to Detect Malingering." La Jolla, California. (8/3/99)

85.     "Assessment, Diagnosis and Treatment Planning for the Patient with Dual and Triple Diagnoses", Maui County Department of Housing and Human Concerns, Maui Memorial Medical Center.  Kahului, Maui.  (8/23/99)

86.     "Proper Assessment of the Asian/Pacific Islander Dual Diagnostic Patient", Asian American Recovery Services, Inc., San Francisco, California.  (9/13/99)

87.     "Assessment and Treatment of the Dual Diagnostic Patient in a Health Maintenance Organization", Alcohol and Drug Abuse Program, the Permanente Medical Group, Inc., Santa Rosa, California.  (9/14/99)

88.     "Dual Diagnosis", Residential Care Providers of Adult Residential Facilities and Facilities for the Elderly, City and County of San Francisco, Department of Public Health, Public Health Division, San Francisco, California.  (9/16/99)

89.     "Medical and Psychiatric Aspects of Methamphetamine Abuse", Fifth Annual Latino Behavioral Health Institute Conference, Universal City, California.  (9/23/99)

90.     "Criminal Justice & Substance Abuse", University of California, San Diego & Arizona Department of Corrections, Phoenix, Arizona.  (9/28/99)

91.     "Creating Balance in the Ohana: Assessment and Treatment Planning", Hale O Ka'u Center, Pahala, Hawai'i.  (10/8-10/10/99)

92.     "Substance Abuse Issues of Runaway and Homeless Youth", Homeless Youth 101, Oakland Asian Cultural Center, Oakland, California.  (10/12/99)

93.     "Mental Illness & Drug Abuse - Part II", Sonoma County Department of Mental Health Grand Rounds, Santa Rosa, California.  (10/14/99)

94.     "Dual Diagnosis/Co-Existing Disorders Training", Yolo County Department of Alcohol, Drug and Mental Health Services, Davis, California.  (10/21/99)

95.     "Mental Health/Substance Abuse Assessment Skills for the Frontline Staff", Los Angeles County Department of Mental Health, Los Angeles, California.  (1/27/00)

96.     "Spirituality in Substance Abuse Treatment", Asian American Recovery Services, Inc., San Francisco, California.  (3/6/00)

97.     "What Every Probation Officer Needs to Know about Alcohol Abuse", San Mateo County Probation Department, San Mateo, California.  (3/16/00)

98.     "Empathy at its Finest", Plenary Presentation to the California Forensic Mental Health Association's Annual Conference, Asilomar, California.  (3/17/00)

99.     "Model for Health Appraisal for Minors Entering Detention", Juvenile Justice Health Care Committee's Annual Conference, Asilomar, California.  (4/3/00)

100.    "The Impact of Alcohol/Drug Abuse and Mental Disorders on Adolescent Development", Humboldt County Department of Mental Health and Substance Abuse Services, Eureka, California.  (4/4-4/5/00)

101.    "The Dual Diagnosed Client", Imperial County Children's System of Care Spring Training, Holtville, California.  (5/15/00)

102.    National Association of Drug Court Professionals 6th Annual Training Conference, San Francisco, California.  "Managing People of Different Pathologies in Mental Health Courts", (5/31 & 6/1/00); "Assessment and Management of Co-Occurring Disorders" (6/2/00).

103.    "Culture, Age and Gender Specific Perspectives on Dual Diagnosis", University of California Berkeley Extension Course, San Francisco, California.  (6/9/00)

104.    "The Impact of Alcohol/Drug Abuse and Mental Disorders on Adolescent Development", Thunder Road Adolescent Treatment Centers, Inc., Oakland, California.  (6/29 & 7/27/00)

105.    "Assessing the Needs of the Entire Patient: Empathy at its Finest", NAMI California Annual Conference, Burlingame, California.  (9/8/00)

106.     "The Effects of Drugs and Alcohol on the Brain and Behavior", The Second National Seminar on Mental Health and the Criminal Law, San Francisco, California.  (9/9/00)

107.    Annual Conference of the Associated Treatment Providers of New Jersey, Atlantic City, New Jersey.  "Advances in Psychopharmacological Treatment with the Chemically Dependent Person" & "Treatment of the Adolescent Substance Abuser" (10/25/00).

108.    "Psychiatric Crises In The Primary Care Setting", Doctor Marina Bermudez Issues In College Health, San Francisco State University Student Health Service.  (11/1/00, 3/13/01)

109.    "Co-Occurring Disorders: Substance Abuse and Mental Health", California Continuing Judicial Studies Program, Center For Judicial Education and Research, Long Beach, California. (11/12-11/17/00)

110.    "Adolescent Substance Abuse Treatment", Alameda County Behavioral Health Care Services, Oakland, California. (12/5/00)

111.    "Wasn't One Problem Enough?"  Mental Health and Substance Abuse Issues.  2001 California Drug Court Symposium, "Taking Drug Courts into the New Millennium." Costa Mesa, California. (3/2/01)

112.    "The Impact of Alcohol/Drug Abuse and Mental Health Disorders on the Developmental Process."  County of Sonoma Department of Health Services, Alcohol and Other Drug Services Division. Santa Rosa, California.  (3/8 & 4/5/01)

113.    "Assessment of the Patient with Substance Abuse and Mental Health Issues."  San Mateo County General Hospital Grand Rounds.  San Mateo, California.  (3/13/01)

114.    "Dual Diagnosis-Assessment and Treatment Issues."  Ventura County Behavioral Health Department Alcohol and Drug Programs Training Institute, Ventura, California.  (5/8/01)

115.    Alameda County District Attorney's Office 4th Annual 3R Conference, "Strategies for Dealing with Teen Substance Abuse." Berkeley, California.  (5/10/01)

116.    National Association of Drug Court Professionals 7th Annual Training Conference, "Changing the Face of Criminal Justice."  I presented three separate lectures on the following topics: Marijuana, Opiates and Alcohol.  New Orleans, LA.  (6/1-6/2/01)

117. Santa Clara County Drug Court Training Institute, "The Assessment, Diagnosis and Treatment of the Patient with Multiple Disorders." San Jose, California. (6/15/01)

118. Washington Association of Prosecuting Attorneys Annual Conference, "Psychiatric Complications of the Methamphetamine Abuser." Olympia, Washington. (11/15/01)

119. San Francisco State University, School of Social Work, Title IV-E Child Welfare Training Project, "Adolescent Development and Dual Diagnosis." (1/14/02)

120. First Annual Bi-National Conference sponsored by the Imperial County Behavioral Health Services, "Models of Family Interventions in Border Areas." El Centro, California. (1/28/02)

121. The California Association for Alcohol and Drug Educators 16th Annual Conference, "Assessment, Diagnosis and Treatment of Patients with Multiple Diagnoses." Burlingame, California. (4/25/02)

122. Marin County Department of Health and Human Services, Dual Diagnosis and Cultural Competence Conference, "Cultural Considerations in Working with the Latino Patient." (5/21/02)

123. 3rd Annual Los Angeles County Law Enforcement and Mental Health Conference, "The Impact of Mental Illness and Substance Abuse on the Criminal Justice System." (6/5/02)

124. New Mexico Department of Corrections, "Group Psychotherapy Training." Santa Fe, New Mexico. (8/5/02)

125. Judicial Council of California, Administrative Office of the Courts, "Juvenile Delinquency and the Courts: 2002." Berkeley, California. (8/15/02)

126. California Department of Alcohol and Drug Programs, "Adolescent Development and Dual Diagnosis." Sacramento, California. (8/22/02)

127. Haight Ashbury Free Clinic's 36th Anniversary Conference, San Francisco, California, "Psychiatric Approaches to Treating the Multiple Diagnostic Patient." (6/6/03)

128. Motivational Speaker for Regional Co-Occurring Disorders Training sponsored by the California State Department of Alcohol and Drug Programs and Mental Health and the Substance Abuse Mental Health Services Administration-Center for Substance Abuse Treatment, Samuel Merritt College, Health Education Center, Oakland, California. (9/4/03)

129. "Recreational Drugs, Parts I and II", Doctor Marina Bermudez Issues In College Health, San Francisco State University Student Health Service. (10/1/03), (12/3/03)

130. "Detecting Substance Abuse in our Clients", California Attorneys for Criminal Justice Annual Conference, Berkeley, California. (10/18/03)

131. "Alcohol, Alcoholism and the Labor Relations Professional", 10th Annual Labor and Employment Public Sector Program, sponsored by the State Bar of California. Labor and Employment Section. Pasadena, California. (4/2/04)

132.    Lecture tour of Japan (4/8-4/18/04).  "Best Practices for Drug and Alcohol Treatment."  Lectures were presented in Osaka, Tokyo and Kyoto for the Drug Abuse Rehabilitation Center of Japan.

133.    San Francisco State University, School of Social Work, Title IV-E Child Welfare Training Project, "Adolescent Development and Dual Diagnosis." (9/9/04)

134.    "Substance Abuse and the Labor Relations Professional", 11th Annual Labor and Employment Public Sector Program, sponsored by the State Bar of California. Labor and Employment Section.  Sacramento, California.  (4/8/05)

135.    "Substance Abuse Treatment in the United States", Clinical Masters Japan Program, Alliant International University.  San Francisco, California. (8/13/05)

136.    Habeas Corpus Resource Center, Mental Health Update, "Understanding Substance Abuse."  San Francisco, California. (10/24/05)

137.    Yolo County Department of Behavioral Health, "Psychiatric Aspects of Drug and Alcohol Abuse."  Woodland, California. (1/25/06), (6/23/06)

138.    "Methamphetamine-Induced Dual Diagnostic Issues", Medical Grand Rounds, Wilcox Memorial Hospital, Lihue, Kauai. (2/13/06)

139.    Lecture tour of Japan (4/13-4/23/06).  "Assessment and Treatment of the Patient with Substance Abuse and Mental Illness."  Lectures were presented in Hiroshima and Kyoto for the Drug Abuse Rehabilitation Center of Japan.

140.    "Co-Occurring Disorders: Isn't It Time We Finally Got It Right?" California Association of Drug Court Professionals, 2006 Annual Conference.  Sacramento, California. (4/25/06)

141.    "Proper Assessment of Drug Court Clients", Hawaii Drug Court, Honolulu. (6/29/06)

142.    "Understanding Normal Adolescent Development," California Association of Drug Court Professionals, 2007 Annual Conference.  Sacramento, California. (4/27/07)

143.    "Dual Diagnosis in the United States," Conference sponsored by the Genesis Substance Abuse Treatment Network.  Medford, Oregon.  (5/10/07)

144.    "Substance Abuse and Mental Illness: One Plus One Equals Trouble," National Association of Criminal Defense Lawyers 2007 Annual Meeting & Seminar.  San Francisco, California.  (8/2/07)

145.    "Capital Punishment," Human Writes 2007 Conference.  London, England.  (10/6/07)

146.    "Co-Occurring Disorders for the New Millennium," California Hispanic Commission on Alcohol and Drug Abuse, Montebello, California.  (10/30/07)

147.    "Methamphetamine-Induced Dual Diagnostic Issues for the Child Welfare Professional," Beyond the Bench Conference.  San Diego, California. (12/13/07)

148.    "Working with Mentally Ill Clients and Effectively Using Your Expert(s)," 2008 National Defender Investigator Association (NDIA), National Conference, Las Vegas, Nevada.  (4/10/08)

149.    "Mental Health Aspects of Diminished Capacity and Competency," Washington Courts District/Municipal Court Judges' Spring Program.  Chelan, Washington.  (6/3/08)

150.    "Reflection on a Career in Substance Abuse Treatment, Progress not Perfection," California Department of Alcohol and Drug Programs 2008 Conference.  Burlingame, California.  (6/19/08)

151.    Mental Health and Substance Abuse Training, Wyoming Department of Health, "Diagnosis and Treatment of Co-occurring Mental Health and Substance Abuse." Buffalo, Wyoming. (10/6/09)

152.    2010 B.E. Witkin Judicial College of California, "Alcohol and Other Drugs and the Courts." San Jose, California. (August 4th & 5th, 2010)

153.    Facilitating Offender Re-entry to Reduce Recidivism: A Workshop for Teams, Menlo Park, CA.  This conference was designed to assist Federal Courts to reduce recidivism. "The Mentally Ill Offender in Reentry Courts," (9/15/2010)

154.    Juvenile Delinquency Orientation, "Adolescent Substance Abuse." This was part of the "Primary Assignment Orientations" for newly appointed Juvenile Court Judges presented by The Center for Judicial Education and Research of the Administrative Office of the Court.  San Francisco, California. (1/12/2011, 1/25/12, 2/27/13 & 1/8/14)

155.    2011 B.E. Witkin Judicial College of California, "Alcohol and Other Drugs and the Courts." San Jose, California. (August 4th, 2011)

156.    2012 B.E. Witkin Judicial College of California, "Alcohol and Other Drugs and the Courts." San Jose, California. (August 2nd, 2012)

157.    Mexican Capital Legal Assistance Program Meeting, "Issues Related to Mental Illness in Mexican Nationals." Santa Fe, New Mexico (10/12/12); Houston, Texas (4/23/13)

158.    Los Angeles County Public Defender's Capital Case Seminar, "Mental Illness and Substance Abuse." Los Angeles, California. (9/27/13)

159.    "Perspectives on Race and Ethnicity for Capital and Non-Capital Defense Lawyers," conference sponsored by the Administrative Office of the US Courts, New York, NY., September 18-20, 2015.

160.    San Francisco Collaborative Courts, Superior Court of California, County of San Francisco sponsored training, "Personality Disorders," February 19, 2016.

161.    Administrative Office of the United States Courts, Federal Death Penalty Resource Counsel Projects, 2016 Strategy Session: "Ethnocultural Competency Issues in Working with Experts;" "Understanding Drug Use and Abuse by our Clients and Strategies for Effectively Incorporating this Information into the Mitigation Narrative." Denver, Colorado, November 17-19, 2016.

162.    "Evaluating the mentally ill and substance abusing client." Idaho Association of Criminal Defense Lawyers, Sun Valley, Idaho, March 10, 2017.

163.    Mental Health & Death Penalty Training, Community Legal Aid Institute (LBH Masyarakat), Jakarta, Indonesia, February 12 -16, 2019.

164.    Mental Health & Death Penalty Training, Blantyre, Malawi, October 6, 2023.


PUBLICATIONS:

1)    Kanas, N., Stewart, P. and Haney, K. (1988). *Content and Outcome in a Short-Term Therapy Group for Schizophrenic Outpatients*. Hospital and Community Psychiatry, 39, 437-439.

2)    Kanas, N., Stewart, P. (1989*). Group Process in Short-Term Outpatient Therapy Groups for Schizophrenics.* Group, Volume 13, Number 2, Summer 1989, 67-73.

3)    Zweben, J.E., Smith, D.E. and Stewart, P. (1991). *Psychotic Conditions and Substance Use: Prescribing Guidelines and Other Treatment Issues.* Journal of Psychoactive Drugs, Vol. 23(4), Oct.-Dec. 1991, 387-395.

4)    Banys, P., Clark, H.W., Tusel, D.J., Sees, K., Stewart, P., Mongan, L., Delucchi, K., and Callaway, E. (1994). *An Open Trial of Low Dose Buprenorphine in Treating Methadone Withdrawal*. Journal of Substance Abuse Treatment, Vol. 11(1), 9-15.

5)    Hall, S.M., Tunis, S., Triffleman, E., Banys, P., Clark, H.W., Tusel, D., Stewart, P., and Presti, D. (1994). *Continuity of Care and Desipramine in Primary Cocaine Abusers.* The Journal of Nervous and Mental Disease, Vol. 182(10), 570-575.

6)    Galloway, G.P., Frederick, S.L., Thomas, S., Hayner, G., Staggers, F.E., Wiehl, W.O., Sajo, E., Amodia, D., and Stewart, P. (1996). *A Historically Controlled Trial Of Tyrosine for Cocaine Dependence.* Journal of Psychoactive Drugs, Vol. 28(3), pages 305-309, July-September 1996.

7)    Stewart, P. (1999). *Alcoholism: Practical Approaches To Diagnosis And Treatment.* Prevention, (Newsletter for the National Institute On Alcoholism, Kurihama Hospital, Yokosuka, Japan) No. 82, 1999.

8)    Stewart, P. (1999). *New Approaches and Future Strategies Toward Understanding Substance Abuse.* Published by the Osaka DARC (Drug Abuse Rehabilitation Center) Support Center, Osaka, Japan, November 11, 1999.

9)    Stewart, P. (2002). *Treatment Is A Right, Not A Privilege.* Chapter in the book, *Understanding Addictions-From Illness to Recovery and Rebirth,* ed. by Hiroyuki Imamichi and Naoko Takiguchi, Academia Press (Akademia Syuppankai): Kyoto, Japan, 2002.

10)    Stewart, P., Inaba, D.S., and Cohen, W.E. (2004). *Mental Health & Drugs.* Chapter in the book, *Uppers, Downers, All Arounders, Fifth Edition*, CNS Publications, Inc., Ashland, Oregon.

11) James Austin, Ph.D., Kenneth McGinnis, Karl K. Becker, Kathy Dennehy, Michael V. Fair, Patricia L. Hardyman, Ph.D. and Pablo Stewart, M.D. (2004) *Classification of High Risk and Special Management Prisoners, A National Assessment of Current Practices.* National Institute of Corrections, Accession Number 019468.

12) Stanley L. Brodsky, Ph.D., Keith R. Curry, Ph.D., Karen Froming, Ph.D., Carl Fulwiler, M.D., Ph.D., Craig Haney, Ph.D., J.D., Pablo Stewart, M.D. and Hans Toch, Ph.D. (2005) *Brief of Professors and Practitioners of Psychology and Psychiatry as AMICUS CURIAE in Support of Respondent: Charles E. Austin, et al. (Respondents) v. Reginald S. Wilkinson, et al. (Petitioners), In The Supreme Court of the United States, No. 04-495.*

13) Stewart, P., Inaba, D.S., and Cohen, W.E. (2007). *Mental Health & Drugs.* Chapter in the book, *Uppers, Downers, All Arounders, Sixth Edition*, CNS Publications, Inc., Ashland, Oregon.

14) Stewart, P., Inaba, D.S. and Cohen, W.E. (2011). *Mental Health & Drugs.* Chapter 10 in the book, *Uppers, Downers, All Arounders, Seventh Edition,* CNS Publications, Inc., Ashland, Oregon.

15) Carl Fulwiler, M.D., Ph.D., Craig Haney, Ph.D., J.D., Pablo Stewart, M.D., Hans Toch, Ph.D. (2015) Brief of Amici Curiae Professors and Practitioners of Psychiatry and Psychology in Support of Petitioner: Alfredo Prieto v. Harold C. Clarke, et al., On Petition For A Writ of Certiorari To The United States Court of Appeals For The Fourth Circuit, In The Supreme Court of the United States, No. 15-31.

16) Brief of Medical and Other Scientific and Health-Related Professionals as Amici Curiae in Support of Respondents and Affirmance: Ahmer Iqbal Abbasi, et al., Respondents v. James W. Ziglar, John D. Ashcroft, et al., and Dennis Hasty, et al. Petitioners, On Writs of Certiorari to the United States Court of Appeals for the Second Circuit, In the Supreme Court of the United States, Nos. 15-1358, 15-1359 and 15-1363.

17) Brief of Professors and Practitioners of Psychiatry, Psychology, and Medicine as Amici Curiae in Support of Plaintiff-Appellant Eric Joseph Depaola, Denis Rivera & Luis Velazquez, Plaintiffs v. Virginia Department of Corrections, et al., External Review Team, et al., Defendants. On appeal from the United States District Court for the Western District of Virginia, Case No. 7:14-cv-00692 in the United States Court of Appeals for the Fourth Circuit, No. 16-7358.

*18)* Brief of Professors and Practitioners of Psychiatry, Psychology, and Medicine in support of Petitioner Shawn T. Walker v. Michael A. Farnan, et al., Respondents on petition for Writ of Certiorari to the United States Court of Appeals for the Third Circuit in the Supreme Court of the United States, No. 17-53.

*19)* Brief of Professors and Practitioners of Psychiatry, Psychology, and Medicine in support of Plaintiff-Appellant Edgar Quintanilla v. Homer Bryson, Commissioner, State of Georgia's Department of Corrections, et al., On appeal from the United States District Court for the Southern District of Georgia, Case No. 6:17-cv-00004-JRH-RSB in the United States Court of Appeals for the Eleventh Circuit, No. 17-14141.

# Exhibit B

*PABLO STEWART, M.D.*
**Psychiatric Consultant**
**3021 La Pietra Circle**
**Honolulu, HI 96815**
**808-352-8074**
**pablo.stewart.md@gmail.com**

---

## TESTIMONY/DEPOSITIONS January 2000-Present

1. People versus Juan Duarte Gonzales (Lincoln County, Washington, January 2000)
2. People versus Jerry Lane Davis (Stanislaus County, California, September 2000)
3. James Andrew Melton versus Arthur Calderon, et al. (United States District Court, Los Angeles, California, December 2000)
4. Fremont Unified School District versus James Parks (Deposition taken in San Francisco, California, April 2001)
5. People versus Pablo Lomeli (Douglas County, Arizona, August 2001)
6. Dunlap versus County of Mendocino (Deposition taken in Oakland California, September 2001)
7. Maxwell Hoffman versus A.J. Arave, Warden, et al. (Deposition taken in San Francisco, October 2001)
8. People versus Michelle Michaud (Alameda County, California, April 2002)
9. People versus David Attias (Santa Barbara County, California, May/June 2002)
10. People versus Larry Christopher Graham (Contra Costa County, California, October 2002)
11. People versus Miguel Enrique Diaz (San Mateo County, California, November/December 2002)
12. United States versus Eugene Frederick Boyce, III (District Court, Honolulu, Hawai'i December 2002)
13. People versus Robert Daniel Weston (Stanislaus County, California, April/July 2003)
14. People versus Vincent Sanchez (Ventura County, California, August 2003)
15. Armstrong Petition JW01-6450 (San Francisco Juvenile Court, December 2003)
16. People versus Daniel Mugnolo (San Francisco City and County, December 2003)
17. Brandon Astor Jones versus Frederick Head, Warden (Deposition taken in San Francisco, January 2004)
18. David Perkins versus Frederick Head, Warden (Deposition taken in San Francisco, March 2004)
19. People versus Marino Hernandez (San Mateo County, California, June 2004)
20. Raphael Camargo versus Larry Norris, Director, Arkansas Department of Correction (Deposition taken in San Francisco, July 2004)
21. People versus Ronald Mathews (King County, Washington, August 2004)
22. People versus Huberto Mendoza (Stanislaus County, California, December 2004)
23. People versus James Essick (San Diego County, California, June 2005)

24. People versus Jesse Ignacio Sanchez Gomez (Ada County, Idaho, July/August 2005)
25. People versus Adrian Camacho (San Diego County, California, October 2005)
26. People versus Huberto Mendoza (Stanislaus County, California, November 2005)
27. People versus Paul Speer (Maricopa County, Arizona, January 2006)
28. People versus Mark Thigpen (San Mateo County, California, January 2006)
29. United States versus Tommy Ray Elam (District Court, Los Angeles, California, February 2006)
30. Enrique Arevalo versus Frederick Head, Warden (Deposition taken in San Francisco, March 2006)
31. United States versus Danny Lee Jones (District Court, Phoenix, Arizona, March 2006)
32. People versus Omar Dent, III (Los Angeles County, California, May 2006)
33. People versus Delaney Marks (Alameda County, California, May 2006)
34. People versus Angel Maturino Resendiz (Harris County, Texas, June 2006)
35. People versus Antonio Nicolosi (San Mateo County, California, July 2006)
36. Gregory Paul Lawler versus Frederick Head, Warden (Deposition taken in San Francisco, July 2006)
37. United States versus Todd Sarver (District Court, San Francisco, California, August 2006)
38. United States versus Eugene Frederick Boyce, III (United States District Court, Honolulu, Hawaii, October 2006)
39. Arthur Torlucci versus W.A. Duncan, (District Court, Santa Ana, California, November 2006)
40. Joaquin Enrique Arevalo versus William Terry, Warden, (Butts County, Georgia, December 2006)
41. People versus Jerry Cabonce, (San Mateo County, California, January 2007)
42. People versus Rodrigo Paniagua, (Santa Clara County, California, February 2007)
43. Gregory Paul Lawler versus William Terry, Warden, (Butts County, Georgia, February 2007)
44. United States versus Francisco Rodriguez, (District Court, Santa Ana, California, April 2007)
45. People versus O'Neal Durgin, (San Mateo County, California, June 2007)
46. Sepulveda versus Beard et al., (Bartonsville, Pennsylvania, June 2007)
47. Webster versus Ayers et al., (District Court, Sacramento, California, September 2007)
48. Ronald Deere versus Jeanne Woodford, et al., (District Court, Los Angeles, California, October 2007)
49. People versus Eric V. Hall (Ada County, Idaho, October 2007)
50. Rickey Dale Newman versus Larry Norris, Director, Arkansas Department of Correction (District Court, Fort Smith, Arkansas, November 2007
51. Ralph Coleman, et al. versus Arnold Schwarzenegger, et al. (Deposition taken in Sacramento, December 2007)
52. People versus Matthew Cunningham (Maricopa County, Arizona, January & February 2008)
53. People versus Alfredo Prieto (Fairfax County, Virginia, February 2008)

54. People versus Edward Gutierrez (Santa Clara County, California, May 2008)
55. Fred Graves, et al., Plaintiffs v. Joseph Arpaio, et al., Defendants. (Deposition taken in Phoenix, Arizona, July 2008). A supplemental deposition was also taken in July 2008 approximately 2 weeks after the initial deposition.
56. Fred Graves, et al., Plaintiffs v. Joseph Arpaio, et al., Defendants (District Court, Phoenix, Arizona, August 2008)
57. Ralph Coleman, et al. versus Arnold Schwarzenegger, et al. (Deposition taken in Sacramento, California, September 2008)
58. United States versus Naeem Williams (District Court, Honolulu, Hawaii, November 2008)
59. Ralph Coleman, et al. versus Arnold Schwarzenegger, et al. (Three Judge Panel, District Court, San Francisco, California, December 2008)
60. United States versus Michael Behenna (United States Army Court Marshall, Fort Campbell, Kentucky, February 2009)
61. United States versus Steven Green (District Court, Paducah, Kentucky, May 2009)
62. People versus Francisco Merino (San Mateo County, California, July 2009)
63. Milton Lewis versus State of California (District Court, Sacramento, California, October 2009)
64. People versus Adrian Sedano (San Mateo County, California, November 2009)
65. United States versus Noshir S. Gowadia (District Court, Honolulu, Hawaii, November 2009)
66. Johnny A. Johnson versus State of Missouri (St. Louis, Missouri, December 2009)
67. Martin Kipp versus State of California (District Court, Los Angeles, California, December 2009)
68. David Welch versus State of California (Martinez, California, September 2010)
69. State of Arizona versus Eddy Rose (Phoenix, Arizona, September 2010)
70. State of Delaware versus Gary Ploof (Dover, Delaware, October 2010)
71. State of Arizona versus Steven Ray Newell (Phoenix, Arizona, March 2011)
72. State of Arkansas versus Ricky Lee Newman (Fort Smith, Arkansas, March 2011)
73. People versus Kerri Livingston (San Mateo County, California, March 2011)
74. People versus Alexander Youshock (San Mateo County, California, April 2011)
75. United States versus Francisco Rodriguez (District Court, Santa Ana, California, May 2011)
76. State of Connecticut versus Robert Breton (Hartford, Connecticut, July 2011)
77. United States versus Billie Allen (St. Louis, Missouri, December 2011)
78. People versus Mohammed Ali (San Mateo County, California, February 2012)
79. Clemency Hearing re: Robert Towery (Florence, Arizona, March 2012)
80. United States versus Danny John, Jr. (Prescott, Arizona, March 2012)
81. State of Ohio versus Abdul H. Awkal (Cleveland, Ohio, June 2012)
82. People versus Monica McCarrick (Solano County, California, June 2012)
83. People versus Robert Hall (Ada County, Idaho, October 2012)
84. People versus Alamoti Finau (San Mateo County, California, November 2012)
85. United States versus Merrell Hobbs (District Court, Philadelphia, Pennsylvania, November 2012)

86. Ex Parte Juan Lizcano, W05-59563-S(A) (Dallas, Texas, November 2012)

87. People versus David Vanalstine (San Mateo County, California, December 2012)

88. Sinisterra versus the United States (District Court, Kansas City, Missouri, January 2013)

89. People versus Jing Hua Wu (San Jose, California, February & March 2013)

90. Coleman versus Brown (Deposition taken in San Francisco, California, March 2013)

91. Coleman versus Brown (District Court, Sacramento, CA, June 2013)

92. Tate versus Humphrey (Deposition taken in San Francisco, California, June 2013)

93. Coleman versus Brown (District Court, Sacramento, CA, October 2013)

94. People versus Alegria (Tucson, Arizona, October 2013)

95. Commonwealth v. Michael Pruitt (Reading, PA, November 2013)

96. Coleman versus Brown (District Court, Sacramento, CA, December 2013)

97. Fred Graves, et al., Plaintiffs v. Joseph Arpaio, et al., Defendants (District Court, Phoenix, Arizona, March 2014)

98. Deposition taken in Parsons, et al v. Ryan. March 28, 2014, San Francisco, CA.

99. Evidentiary hearing in State of Arizona v. Albert Martinez Carreon. Phoenix Arizona, April 21 & 22, 2014.

100. United States v. Naeem Williams, (District Court, Honolulu, HI, April 29 & 30, and June 3, 2014

101. Deposition taken in Hernandez v. County of Monterey, San Francisco, CA, July 8, 2014

102. United States v. Thomas Steven Sanders, (District Court, Alexandria, LA, September 22 & 23, 2014)

103. Deposition taken in Kurian David, et al., plaintiffs v. Signal International, LLC, defendant, San Francisco, California, October 2014)

104. People v. Dennis McGraw (Vallejo, California, November 2014)

105. People v. Leticia Serna (San Jose, California, December 2014)

106. Wilridge v. Marshall, (District Court, San Francisco, California, February 2015)

107. People v. Hugo Munguia-Hernandez (Redwood City, California, July 2015)

108. Deposition taken in Goddard v. State of California, et al., San Mateo, California, September 2015.

109. People v. Bryan Thomas (Redwood City, California, October 2015)

110. Carlos Gutierrez v. E.K. McDaniel, Warden, et al. (Reno, Nevada, January 2016)

111. State of Arkansas v. Rickey Dale Newman (Fort Smith, Arkansas, January 2016)

112. Deposition taken in Roscoe Walker v. Ford Motor Company, et al., San Mateo, California, February 2016.

113. People v. Philip Law (Boise, Idaho, May 2016)

114. United States v. Joel Manuel Taylor, (District Court, San Francisco, CA, March 18, April 25 & May 25, 2016)

115. United States v. Henry Cervantes, et al, (District Court, Oakland, CA, June 28, 2016)

116. Manual Camacho v. State of Arkansas, (District Court, Fort Smith, Arkansas, November 8, 2016)

117. The People of Guam vs. Mark Anthony Torre, Jr. (Superior Court of Guam, Agana, Guam, February 22, 2017)

118. Kevin Webb, et. al., v. Brad Livingston, et. al. (civil action no. 4:14-cv-03302). Deposition taken in San Francisco, California, June 2, 2017)

119. State of Missouri v. Marvin Rice (11DE-CR00590-2), video deposition taken in Honolulu, HI, July 20, 2017.

120. Ashoor Rasho et al. v. Director John Baldwin, (District Court, Peoria, Illinois, December 18 & 19, 2017)

121. United States v. Nna Alpha Onuoha, (District Court, Riverside, California, January 24, 2018)

122. Ashoor Rasho et al. v. Director John Baldwin, (District Court, Peoria, Illinois, February 27 & 28, March 1, and August 27-30, 2018)

123. United States v. Alfonso Rodriguez, Jr. Deposition taken in Honolulu, HI, September 6, 2018.

124. People v. Omar Pettigen (Superior Court, Alameda County, CA, July 22, 2019)

125. United States v. Roger Trent Skaggs (District Court, Cincinnati, Ohio, July 25, 2019)

126. Parsons, et al v. Shin (District Court, Phoenix, AZ, November 3, 2021)

127. Ashoor Rasho et al. v. Director John Baldwin, (District Court, Peoria, Illinois, February 1, 2022)

128. Joseph O'Malley v. Hawaii Department of Safety (Superior Court, Honolulu, HI, February 3, 2022)

129. Barrientos v. Core Civic (Deposition), April 14, 2022.

130. State of Missouri v. Marvin Rice (11DE-CR00590-2), (Superior Court, Clark County, MO, March 31, 2022)

131. United States v. Jason Solatario Brown (District Court, Guam, January 6, 2023)

132. Daniels v. Jeffreys (Deposition), March 1, 2023.

133. Washington v. Essex, Banyas (Deposition), November 9, 2023.

134. State of Idaho v. John Cody Hart, McCall, Idaho, December 4, 2023.

# Exhibit C

*Coleman* **– Defendants' Expert Tours**

It is vital that Defendants be able to independently monitor and asses their own systems, and it is our hope that the parties can work together to facilitate this important review.

Tour Components
Observation of the following types of treatment and interactions is a standard practice in evaluating a mental health system and the quality of the delivery of care.  Defendants agree that Plaintiffs' counsel may observe and be present for any interactions between Defendants' experts and class members, including silent observations of treatment by the experts.

- *IDTTs*
- *ICCs*
- *Huddles*
- *Screening* (including, but not limited to, R&R nurse screenings, initial mental health screens, crisis intervention team, urgent and emergent referral assessments, pre-Ad Seg screening, alternative housing assessments, and psych tech rounds)
- *Group Treatment*
- *1:1 Treatment*
- *1:1 MHMD assessments* (across all LOCs)
- *1:1 MHPC assessments* (across all LOCs)
- *RVR mental health assessments*
- *Patient Interviews* (these interviews would be recorded to preserve the integrity of all patients' responses and the recordings would be made available to Plaintiffs' counsel)
- *Informed consent:* Obtaining patient informed consent via written script has never, to our knowledge, been required in any other tours in this case, including those conducted by the Special Master team.  When outside clinicians silently observe a treatment process, it is common practice for the treating clinician to obtain verbal consent from the patient for the observation without the use of a written script.  Nonetheless, in the interest of compromise, Defendants will agree to the use of a script so long as it is basic, simple, and concise so as not to intimidate, confuse, exacerbate symptoms or destabilize the patient.  We propose the clinician conducting the assessment or treatment read the following statement to the patient:

  *"Hello [insert patient's name].  We have an outside expert here today, [insert VRJS/Falcon expert's name], observing the delivery of clinical services.  The purpose of their observation is to help CDCR evaluate and improve overall mental health services.  If you do not feel comfortable with [insert VRJS/Falcon expert's name] observing, we can ask them to observe another individual's treatment.  If you agree, but change your mind during our meeting, please let me know and we will ask them to leave.  Are you OK if [insert VRJS/Falcon expert's name] observes your [insert type of assessment/intervention]?"*

Scheduling & Pace of Tours
We understand Plaintiffs' concerns with the previous schedule and will agree with Plaintiffs' counsel's request not to conduct more than one tour at a time to help alleviate your staffing concerns.  We also agree with your request to provide 1-month advance notice of future tours (though there may a need for slightly less notice upon occasion, but will work to minimize those occasions).

We are also working to reduce the number of tour days at each prison, though that will depend largely upon the substantive components the experts are allowed to observe.  In other words, if the experts are permitted to observe all substantive components described above, the number of tour days will be fewer because they will have been able to observe a variety of treatment modalities.  If they are only permitted to observe a small number of the components above, they will need to stay longer to observe more of those limited interactions.  For example, if the experts are able to see all forms of treatment that occur on a daily basis, and are not limited to a few clinical interactions that occur less frequently each day, the overall length of the onsite visit would be shorter.

To further alleviate your scheduling concerns, we also agree not to conduct tours on nights and weekends, however, there may be the rare occasion when an exception needs to be made for a particular patient or observation.

We also agree to conduct the tours in the same manner as the Special Master team in terms of providing the start time for the first day of each tour, and discussing the next day's schedule at the conclusion of each day.  This approach seems to work well and, to our knowledge, Plaintiffs have not previously complained about this approach.

Because we have agreed to conduct only one tour at a time and are working on ways to reduce the total number of days at each prison, we cannot agree to limit the experts to observing no more than two simultaneous activities.  Doing so would unnecessarily extend the tours and lead to idle time onsite.  We will, however, agree to limit the experts to observing no more than three simultaneous activities.

To date, Defendants' experts have toured five facilities including: California State Prison Sacramento (SAC); California Medical Facility (CMF); San Quentin State Prison (SQ); California Health Care Facility (CHCF); and Salinas Valley State Prison (SVSP).  The initial plan was for each of these facilities to be visited twice over two separate weeks, one in July and one in August.  The July visits occurred, albeit with very limited ability to observe patient interactions.  Each of these facilities will need to be revisited.  Defendants' experts also plan to visit an additional 23 institutions for varying durations, the length of which will be informed by the parties' agreement to the scope of the tours as discussed above.