UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

The Special Master filed his Data Remediation Status Report on October 13, 2023 (hereafter "Status Report"). ECF No. 8011. Defendants filed objections to the Status Report. ECF No. 8065. As ordered by the court, ECF No. 8081, plaintiffs have filed a response to defendants' objections, ECF No. 8098.

The court has approved the joinder of two remedial efforts – the data remediation process and finalization of a list of "key indicators" for the Continuous Quality Improvement Tool (CQIT). *See generally* January 4, 2023 Order, ECF No. 7695. Ultimately, this joinder aids efficient completion of both tasks; it also is now apparent that the court needs to provide strict guidelines to ensure timely completion. At this juncture, the court cannot and will not tolerate further delay unless it is essential to remediation of the ongoing Eighth Amendment violations in this action, and remediation that is both complete and durable.

/////

1

The court-ordered data remediation process, required by the court's findings that "defendants had knowingly presented misleading information to the court and the Special Master," has been underway since 2020. November 16, 2023 Order, ECF No. 8069, at 2[1] (citing *Coleman v. Newsom*, 424 F. Supp. 3d 925 (E.D. Cal. 2019)). Since at least April 2022, the court had expected the data remediation process to be completed by the end of 2023. *See* October 11, 2023 Order, ECF No. 8008, at 2 (citing April 29, 2022 Minute Order).

As the court explained in its November 16, 2023 order, as defendants continue to work under the Special Master's supervision to remediate their mental health data system, they also

> continue to develop their mental health quality management system, also known as the Continuous Quality Improvement (CQI) process. *See generally* December 17, 2020 Order, ECF No. 6996. An adequate quality management system is a required part of the remedy in this action. *See id*. at 2 (citing *Coleman v. Wilson*, 912 F. Supp. 1282, 1308 (E. D. Cal. 1995)). "Quality assurance and quality improvement are components of an adequate quality management system: quality assurance focuses on quantification of system performance, while quality improvement focuses on the quality of that same system's performance." ECF No. 6996 at 2 (citing ECF No. 4205 at 74-75); *see also* May 24, 2023 Order, ECF No. 7847, at 2 (quoting August 30, 2012 Order, ECF No. 4232, at 5, for proposition improved quality improvement process will enable defendants to "address issues with the quality of care that is delivered").
>
> The continuous quality improvement tool (CQIT), which defendants will use to measure and quantify "'all degrees of compliance with monitored [remedial] requirements, from zero percent to 100 percent'" is part of the larger mental health quality management system. *See generally* ECF No. 6996. [Footnote omitted.] CQIT comprises numerous indicators that measure various components of the California Department of Corrections and Rehabilitation (CDCR) Mental Health Services Delivery System (MHSDS). *See id*. at 4-5. The "key indicators" in CQIT are "the functional equivalent of 'benchmarks' that. . . signify the material provisions" of the remedial plans in this action "that must be durably implemented to a degree of compliance" to be confirmed by the court at a later date. September 30, 2020 Order, ECF No. 6846, at 28. Other CQIT indicators serve functions integral to full implementation and adequacy of defendants' mental health quality management system. *See* ECF No. 6996 at 5.

---

[1] In this order citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page numbers assigned by the ECF system and located in the upper right-hand corner of the page.

> In July 2021, the court gave provisional approval to a preliminary list of CQIT key indicators. *See generally* July 1, 2021 Order, ECF No. 7216 (approving list of key indicators found at pages 21 through 26 of the Special Master's May 6, 2021 Report on the [CQIT] Indicators, ECF No. 7151). Because "[d]ata systems now play a critical role in monitoring delivery of mental health care to the plaintiff class and the required custody remedies . . . finalization of the list of CQIT key indicators '"is progressing jointly" with the ongoing data remediation process."'" ECF No. 7847 at 6 (quoting January 4, 2023 Order, ECF No. 7695, at 2) (internal citation omitted).

ECF No. 8069 at 2-3.

In October 2023, the court acknowledged information provided by the Special Master indicating "data remediation for the original list of provisionally approved [CQIT] indicators" would be "substantially completed" by the end of 2023, "with remediation of outstanding placeholder indicators perhaps trailing into early 2024." ECF No. 8008 at 2. In his subsequent Status Report, the Special Master reported he remained "cautiously optimistic" that those deadlines would be met. ECF No. 8011 at 8. He recommended no extension of the deadline set for substantial remediation of the provisionally approved CQIT indicators and a formal deadline of March 31, 2024 to complete remediation of all indicators. *Id*. at 9. He also recommended the court give provisional approval to "non-disputed 'new' and 'extended' placeholder indicators to complete remediation of these measurements." *Id*. Defendants object to the Status Report and to two of the Special Master's recommendations.

In the Status Report, the Special Master focuses on the work that has been completed to date, the work that remains, and steps that have been taken to streamline the process. *See generally* ECF No. 8011. In their objections, defendants assert that potential delays in the data remediation process they had identified in activation schedules and updates filed in September 2021, January 2022, and April 2022, in fact occurred, that the number of indicators that must be remediated has expanded, and that the data remediation process to date has taken almost twice as long as initially predicted. They argue the Special Master has not adequately reviewed these factors and that there is "little likelihood" his proposed deadline can be met. *See generally* ECF No. 8065. Defendants' retrospective review of what has or might have happened in the past does not demonstrate the Special Master is clearly erroneous in his prospective analysis of the time it

3

1  will take to complete what remains to be done.  Defendants' objections do not take into account
2  efficiencies and increased collaboration that the Special Master reports have been achieved over
3  the course of the process.  *See* ECF No. 8011 at, *e.g.*, 8.  Moreover, at least one of the reasons the
4  number of indicators appears to have ballooned is because some individual indicators have been
5  split into multiple indicators.  *Id*. at 2.  At this juncture, the Special Master is in the best position
6  to assess the impact of proposals to split indicators, or to add new indicators, and whether those
7  proposals increase or decrease the efficiency of the data remediation process and the overall goals
8  to be served by data remediation.

9  Defendants request that the court reject the Special Master's recommended deadlines, set
10 no new deadlines, and "direct CDCR to file quarterly status reports on the progress" of data
11 remediation.  ECF No. 8065 at 7.  In their reply, plaintiffs state that, in their view, "full
12 completion of all remediation steps by March 31, 2024 is . . . not realistically achievable" but they
13 believe the data remediation process can be finished in two to three months thereafter.  ECF No.
14 8098 at 3.  Plaintiffs oppose defendants' request to assume responsibility for reporting on the
15 status of data remediation.  *Id*.

16 The Special Master and his team have done a remarkable, professional and solid job of
17 supervising what everyone agrees is a "'behemoth-like undertaking.'"  ECF No. 8011 at 8
18 (quoting ECF No. 7863 at 7).  There is no basis in the record for turning quarterly reporting on
19 this process over to defendants at this stage.  The record shows progress to date that now puts the
20 end of the road well into view.  The only real question for the court is whether to adopt deadlines
21 recommended by the Special Master that both parties contend are at least somewhat overly
22 optimistic.  It is clear the Special Master and all stakeholders must always have a firm deadline in
23 place to keep the necessary forward momentum.  For that reason, and good cause appearing, the
24 court will adopt the findings of the Special Master's Status Report in full, as well as his second
25 and third recommendations, and will extend the time for final completion of the data remediation
26 process to March 31, 2024.[2]  The court will direct the Special Master to inform the court by

---

[2] The Special Master's first recommendation focused on remediation of the CQIT indicators derived from the list of key indicators the court provisionally approved on July 1, 2021.

March 15, 2024 of the status of efforts to meet the March 31, 2024 deadline.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The findings in the Special Master's October 13, 2023 Data Remediation Status Report are adopted in full;

2. The Special Master's second and third recommendations are adopted in full;

3. The deadline for completion of the data remediation projection is extended to March 31, 2024;

4. On or before March 15, 2024, the Special Master shall inform the court whether the March 31, 2024 deadline will be met; and

5. The court gives provisional approval to the non-disputed placeholder indicators listed in Appendix A to the Special Master's October 13, 2023 Data Remediation Status Report, ECF No. 8011.

DATED:  February 1, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

The deadline for complete remediation of these indicators was December 31, 2023, and the Special Master recommended "no extension of time to substantially complete" remediation of these indicators.  ECF No. 8011 at 8.  Given that the December 31, 2023 deadline has now passed, the court expects this aspect of data remediation to be complete before the March 31, 2024 deadline suggested by the Special Master's second recommendation.