## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

**RALPH COLEMAN, et al.,**
    **Plaintiffs**

      **vs.**                              **No. 2:90-CV-0520 KJM DB**

**GAVIN NEWSOM, et al.,**
    **Defendants**

_____

**SPECIAL MASTER'S REPORT ON HIS EXPERT'S SIXTH RE-AUDIT AND UPDATE OF SUICIDE PREVENTION PRACTICES IN THE PRISONS OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION AND RE-AUDIT OF SUICIDE PREVENTION PRACTICES IN THE PSYCHIATRIC INPATIENT PROGRAMS**

Attached is the seventh report from the *Coleman* Special Master's expert, Lindsay M. Hayes, entitled, "The Sixth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Re-Audit of the Suicide Prevention Practices in the Psychiatric Inpatient Programs" [hereinafter "Report"].[1]  The attached report is a follow-up to Mr. Hayes' sixth report to the Special Master and Court on suicide prevention practices in CDCR prisons, entitled, "The Fifth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs," filed on October 24, 2022.  ECF No. 7636-1.  This report is submitted as part of the Special Master's continuing review of defendants' compliance with court-ordered remediation in this matter.

_____

[1] Included as Appendix A is a list of acronyms and abbreviations used in Mr. Hayes' Report.

## I.    <u>BACKGROUND</u>

On July 12, 2013, the *Coleman* court issued an order directing defendants to establish the Suicide Prevention Management Workgroup (SPMW)[2] and to work under the supervision of the Special Master to address and resolve the problem of persistently elevated rates of suicide among incarcerated persons housed in CDCR prisons.  ECF No. 4693 at 5-6.  Shortly after the SPMW was established and began its work, it became clear that an expert assessment of CDCR's suicide prevention practices was necessary.  *See* ECF No. 5259 at 1 ("[The SPMW's] members decided and agreed that an expert assessment of current suicide prevention practices in all 34 CDCR prisons was needed for the workgroup to carry out its charge.").  Accordingly, the Special Master requested and the Court approved Mr. Hayes' appointment as an expert in suicide prevention practices.  *See id.*; *see also* ECF No. 4857.

Upon his appointment, the Special Master directed Mr. Hayes to conduct an assessment of suicide prevention practices in CDCR prisons.  Mr. Hayes' first audit, which began on November 12, 2013 and concluded on July 24, 2014, covered all 34 prisons.  Mr. Hayes filed his initial audit report, "An Audit of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation" on January 14, 2015.  This report contained 33 recommendations. *See* ECF No. 5258 at 5-9.  On February 3, 2015, the Court issued an order requiring defendants to adopt the recommendations and directing the Special Master to provide an update to the Court on defendants' progress in their implementation. ECF No. 5271 at 3.

Mr. Hayes' first re-audit covered 18 prisons; it began on February 2, 2015 and concluded

---

[2] As noted in the Report: "The SPMW, established by CDCR under the supervision of the Special Master, held periodic meetings from 2013 through 2020."  Report at 4 n. 2.

on July 24, 2015.  This report, "A Re-Audit and Update on Suicide Prevention Practices in the

Prisons of the California Department of Corrections and Rehabilitation" was filed on January 13,

2016.  ECF No. 5396.  The first re-audit report contained a recommendation that defendants

continue to fully implement the recommendations contained in Mr. Hayes' initial audit report

and that Mr. Hayes conduct a re-audit of those prisons which chronically struggled with their

suicide prevention programs, in addition to all prisons with MHCBs.  *Id*. at 32.  On April 4,

2016, the Court issued an order adopting the report in full.  ECF No. 5429.

Mr. Hayes' second re-audit covered 23 prisons; it began on February 23, 2016, and

concluded on November 9, 2016.  His second re-audit report, "The Second Re-Audit and Update

of Suicide Prevention Practices in the Prisons of the California Department of Corrections and

Rehabilitation," was filed on September 7, 2017.  ECF No. 5671-1.  By the time of the writing of

that report, Mr. Hayes determined that three unresolved recommendations—

14, 15, and 16—were no longer warranted and recommended that they be withdrawn.  *Id.* at 23.

The Court issued an order adopting the second re-audit report in full on January 24, 2018.

 ECF No. 5762.  The recommendation to withdraw the three unresolved recommendations was

adopted and the February 3, 2015 order was deemed modified accordingly.  *Id*. at 3.  The Special

Master was directed to provide the Court with an updated report on the status of "defendants'

continued implementation of the initial recommendations and the development of related

corrective action plans (CAPs)."  *Id*. at 4.

Mr. Hayes' third re-audit covered 23 prisons; it began on May 23, 2017 and concluded on

February 15, 2018.  His third re-audit report, "The Third Re-Audit and Update of Suicide

Prevention Practices in the Prisons of the California Department of Corrections and

Rehabilitation," was filed on November 5, 2018.  ECF No. 5993-1.  In this fourth audit report,

Mr. Hayes recommended that CDCR continue their efforts to fully implement his previous Recommendations, as well as develop Corrective Action Plans (CAPs) based upon deficiencies he found during the third re-audit. *Id*. at 38.

On July 3, 2019, the Court issued an order adopting Mr. Hayes' third re-audit report in full. ECF No. 6212. The Court found that although some progress was being made in the implementation of the court-ordered suicide prevention measures, there nonetheless remained a substantial amount of work to be done, and complete implementation was "dragging out and taking too long." *Id*. at 14. Defendants were ordered to "continue with, and expedite, implementation of the remaining 29 initial recommendations and [] develop corrective action plans based upon deficiencies found in Mr. Hayes' most recent assessment." *Id*. The Special Master was directed to provide the Court with an updated report on "the status of defendants' implementation of the initial recommendations and the development of related corrective action plans." *Id*.

Following a December 13, 2019 third quarterly status conference, on January 7, 2020, the Court issued an order stating that if the Special Master and Mr. Hayes were unable to report defendants' full compliance at the end of the fourth re-audit period, their reporting should include specific recommendations for steps defendants must take to implement any recommendations that remained incomplete, and a date certain for the commencement of the fifth re-audit. ECF No. 6441 at 8.

Mr. Hayes' fourth re-audit covered 20 prisons; it began on November 13, 2018 and concluded on December 18, 2019. His fourth re-audit report, "The Fourth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation," was filed on September 23, 2020. ECF No. 6879-1. As the Special Master and

Mr. Hayes were unable to report defendants' full compliance upon completion of the fourth re-audit, the Special Master's report included a list of 18 outstanding recommendations and the actions required to complete their implementation. ECF 6879 at 16-25.

On September 3, 2020, the Court issued an order confirming "the framework developed over the past twenty-five years for the requirements defendants must satisfy to achieve compliance with the Constitution and against which their progress toward constitutional compliance is being measured." ECF No. 6846 at 2. In that order, the Court directed defendants to complete any outstanding work on Mr. Hayes' initial recommendations prior to the commencement of the fifth re-audit. *Id*. at 22.

On December 3, 2020, the Court issued an order adopting Mr. Hayes' fourth re-audit report in full. ECF 6973. The order also amended the Court's February 2, 2015 order (ECF 5271) to "specifically include that the findings in Mr. Hayes' original audit report [] are adopted in full." *Id*. at 12. The Court overruled defendants' objections to the way Mr. Hayes historically measured compliance with Recommendation 21's suicide precaution and suicide watch observation requirements and adopted the "90- and 100-percent compliance standards recommended by the Special Master for determining compliance with Mr. Hayes' recommendations." *Id*. at 3, 5, 7- 10.

In an order issued on December 24, 2020, defendants were directed to fully implement recommendations 1, 3, 6, 7, 8, 9, 10, 12, 13, 17, 18, 20, 21, 26, 28, 29, 31 and the remaining parts of 32, by the time of Mr. Hayes' fifth re-audit, with recommendations 12, 13, 17, and 21 designated as top priority for action. ECF 7004 at 2. The order clarified that the recommendations were now court-ordered requirements. Defendants were further directed to complete and file proposed activation schedules for the outstanding recommendations, to

"include, as defendants deem[ed] necessary, interim deadlines toward completion of the recommendations and identification of all persons responsible for completing each step." *Id*. Pursuant to the court's order, defendants filed the first in a series of suicide prevention activation schedules[3] on January 15, 2021.  ECF 7024.

Mr. Hayes' fifth re-audit of CDCR's suicide prevention practices covered 23 prisons; it began on May 24, 2021 and concluded on April 22, 2022.  Between May 2021 and October 2021, Mr. Hayes also conducted a baseline audit of suicide prevention practices in CDCR's psychiatric inpatient programs (PIPs).  ECF No. 7636-1 at 1.  His fifth re-audit report, "The Fifth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs," was filed on October 24, 2022.  *Id*.  In his fifth re-audit report, Mr. Hayes found that defendants "had additional, although limited, success with fully implementing the remaining outstanding recommendations."  *See* ECF No. 7636 at 21-22.

Specifically, Mr. Hayes found that defendants had "successfully implemented" Recommendations 1, 6, and 26,[4] but had not fully implemented 15 of his original

---

[3] See Report at 5, 55-56, for Mr. Hayes' discussion of defendants' suicide prevention activation schedules.

[4] These recommendations are described below:

- Recommendation 1 – Expand the length and content of the pre-service "Crisis Intervention and Suicide Prevention" training workshop to include topics as described above [i.e., including (1) self-injurious v. suicidal behavior and dealing effectively with inmates perceived to be manipulative; (2) identifying inmates at risk for suicide despite their denials of risk; (3) updated research on CDCR suicides; (4) identified problem areas and corrective actions from previous CDCR Suicide Reports; and (5) results of any recent Coleman and/or SPRFIT audits of suicide prevention practices.
- Recommendation 6 – Intake screening should be conducted only in the nurse's office within an R&R unit.

recommendations, *see id.* at 22 ("Recommendations 3, 7, 8, 9, 10, 12, 13, 17, 18, 20, 21, 28, 29, 31, 32 remain[ed] in varying stages of implementation."). In the fifth re-audit report, Mr. Hayes provided a "Roadmap to Full Implementation" of these remaining recommendations. *Id.* at 22-29. Finally, as noted above, the fifth re-audit report also included Mr. Hayes' baseline "assessment of suicide prevention practices in CDCR's PIPs resulted in 16 recommendations." *Id.* at 29-31.

On January 6, 2023, the Court issued an order adopting the findings contained in Mr. Hayes' fifth re-audit report in full and finding defendants in compliance with implementation of Recommendations 1, 6, and 26. ECF No. 7696 at 22. The Court also ordered defendants to implement Mr. Hayes' 16 recommendations resulting from his baseline assessment of the PIPs. *Id.* The Court deferred consideration of the Special Master's request that he be directed to provide a further update report to the Court on the status of defendants' implementation of the remaining suicide prevention recommendations. *Id.*

Following the February 10, 2023 status conference, the Court issued an order, noting the following:

> It is undisputed that defendants failed to implement fifteen of a total twenty-nine recommendations by the time Mr. Hayes filed his fifth round re-audit report with the court….
>
> The court finds further delay in the defendants' full implementation of the required suicide prevention measures is unacceptable. The court therefore sets a final deadline for full implementation of all suicide prevention recommendations and put defendants on notice that failure to come into full and permanent compliance will be enforceable by civil contempt and, if necessary, monetary sanctions.

---

- Recommendation 26 – Any inmate housed in an OHU for more than 24 hours should be provided with a suicide-resistant bed.

*See* ECF No. 7636 at 22.

Mr. Hayes' re-audit reports provide the factual foundation for the court's assessment of defendants' compliance with the court's orders to implement the required suicide prevention measures. For the last two re-audit rounds, defendants have not met deadlines for compliance. The court deferred ruling on the Special Master's request that he be ordered to provide a further re-audit report pending the February 10, 2023 status conference. The Special Master has now advised the court that, if ordered to do so, Mr. Hayes would start his sixth re-audit at the beginning of April 2023.

Accordingly, defendants shall complete implementation of all outstanding suicide prevention recommendations on or before April 1, 2023 so that implementation is complete before Mr. Hayes starts his sixth round re-audit. Fines in the amount of $1,000 per outstanding recommendation per institution per day will begin accumulating on April 1, 2023.

ECF No. 7743 at 2-4.

## II.    CURRENT COMPLIANCE STATUS

Upon conclusion of his sixth re-audit, Mr. Hayes determined that defendants had fully implemented only one (Recommendation 20) of the fifteen remaining suicide prevention recommendations. Report at 6.[5] In addition, Mr. Hayes notes defendants' progress on "several suicide prevention practices have even regressed since" the fifth re-audit. Report at 9.[6] Consistent with Mr. Hayes' established practice, the Report delineates "necessary corrective actions" which are "offered to accelerate the defendants' full compliance with the initial court-approved recommendation." Report at 1.

---

[5] "Recommendation 20: CDCR should develop a corrective action plan (CAP) to ensure that supervising nursing staff regularly audits psych tech practices during daily rounds of mental health caseload IPs in administrative segregation and during weekly and bi-weekly rounds in the SHUs." Report at 8.

[6] Specifically, Mr. Hayes reported: "Other areas showed regression from the previous assessment, including use of suicide-resistant cells for newly admitted administrative segregation IPs, thorough completion of the intake screening process with reasonable privacy and confidentiality, offering clinically-approved possessions and privileges to MHCB patients, and both suicide risk evaluations and safety planning training." Report at 9.

In his Report, Mr. Hayes included a table summarizing the status of each remaining

recommendation, which is reproduced below:

## TABLE 1

| Court-Ordered Recommendations | Implementation Status |
|---|---|
| **Recommendation 3**:  Ensure that all custody and health care staff receive both pre-service and **annual suicide prevention training**. | *52% (11 of 21) compliance*<br>***Full implementation has not been achieved***; *there continue to be multiple audited facilities with combined disciplines (custody, medical, and mental health) under 90 percent compliance with annual suicide prevention training.  See Report at 53-54 for details.* |
| **Recommendation 7**:  The nurse's office should be of sufficient size to conduct adequate **intake screening** and the door to the office (which should contain a large viewing window) should remain closed during the screening process. | *80% (16 of 20) compliance*<br>***Full implementation has not been achieved***; *there continue to be multiple audited facilities in which **nurses did not always ask all 15 mental health/suicide risk questions** on the Initial Health Screening form.  See Report at 15-16 for details.* |
| **Recommendation 8**:  Nurse and officer safety should remain the top priority during the intake screening process.  If an [incarcerated person's] (IP's) security classification or unknown security status creates a safety concern, the screening should be conducted in the least restrictive setting that ensures both staff safety and IP **confidentiality**. | *75% (15 of 20) compliance*<br>***Full implementation has not been achieved***; *there continue to be multiple audited facilities in which intake screening took place in the presence of custody personnel, thus compromising **adequate privacy and confidentiality for IPs**, oftentimes because TTMs were not available.  See Report at 15-16 for details.* |
| **Recommendation 9**:  CDCR should revise its **SRE Mentoring** Program to eliminate its "graduation" component after completion of two adequate assessments, conduct ongoing mentoring throughout the year, and audit clinicians' SREs on a regularly scheduled basis. | *52% (11 of 21) compliance*<br>***Full implementation has not been achieved***; *multiple audited facilities had compliance rates below 90 percent for either the seven-hour SRE training or SRE mentoring training.  See Report at 35-40 for details.* |
| **Recommendation 10**:  Each facility's SPRFIT should audit the quality of **completed SREs** on a monthly basis. | *71% (15 of 21) compliance (at 90%)*<br>***Full implementation has not been achieved***; *completion of SRASHEs for IPs presenting as possible risk for suicide by expressing SI and/or engaging in SIB requires 100 percent compliance, and only two the facilities were at 100 percent compliance; six facilities were below 90 percent (or using a non-approved form).  **When 100 percent compliance rate utilized, compliance was only 10 percent (2 of 21)**.  See Report at 35-40 for details.* |
| **Recommendation 12**:  CDCR should ensure that there are a **sufficient number of suicide-resistant retrofitted cells** to house | *65% (13 of 20) compliance*<br>***Full implementation has not been achieved***; *despite CDCR's incremental construction project for new* |

| **Court-Ordered Recommendations** | **Implementation Status** |
|---|---|
| newly admitted IPs (i.e., those within their first 72 hours of their housing in the unit) and the IPs of special concern or heightened risk of suicide (e.g., IPs recently released from suicide observation status). | *retrofitted new intake cells during 2021-2022, seven of the audited facilities continued to struggle with ensuring that all new intake IPs were in suicide-resistant retrofitted cells.  See Report at 19-22 for details.* |
| **Recommendation 13**:  CDCR should enforce its existing policy of **housing only newly admitted IPs in retrofitted cells**, and immediately re-house IPs remaining in the retrofitted cells beyond their first 72 hours. | ***Same as above.*** *See Report at 19-22 for details.* |
| **Recommendation 17**:  CDCR should adopt the recommendations made in connection with SREs (Recommendations 9 and 10) set forth above, which will also improve **safety planning** contained in the SREs section above. | *10% (2 of 21) compliance*<br>***Full implementation has not been achieved***; *the safety planning model was revised based upon prior problematic practices in plan development (with the new program initiated in February 2023), almost all facilities with MHCB units and/or utilized alternative housing were well under 90 percent compliance with safety planning completion at MHCB discharge, and only one audited facility conducted timely and adequate supervisory review of discharge safety plans.  See Report at 40-47 for details.* |
| **Recommendation 18**:  CDCR should develop a specific timetable for the **training** of all of its mental health clinicians on treatment planning for the suicidal IP, using its PowerPoint presentation, "Safety/Treatment Planning for Suicide Risk Assessment." | *71% (15 of 21) compliance*<br>***Full implementation has not been achieved***; *multiple audited facilities had compliance rates below 90 percent for safety planning training.  See Report at 40-47 for details.* |
| **Recommendation 20**:  CDCR should develop a corrective action plan (CAP) to ensure that supervising nursing staff regularly audits **psych tech practices** during daily rounds of mental health caseload IPs in administrative segregation and during weekly and bi-weekly rounds in the SHUs. | *95% (19 of 20) compliance*<br>***Full implementation has been achieved***; *psych techs in almost all audited facilities accurately completed the Psych Tech Daily Rounds Form for MHSDS IPs and/or spoke with non-caseload IPs during daily administrative segregation rounds.  See Report at 40-47 for details.* |
| **Recommendation 21**:  CDCR should enforce its Program Guide requirements authorizing only the two levels of **observation** which may be provided for suicidal IPs: (1) observation at staggered intervals not exceeding every 15 minutes on Suicide Precaution, and (2) continuous observation for IPs on Suicide Watch. | *56% (10 of 18) compliance (at 90%)*<br>***Full implementation has not been achieved***; *although CDCR developed an automated "Mental Health Observations Reporting Tool" designed to assist nursing supervisors in auditing the observation of suicidal patients in MHCB units, **none** of the audited facilities with MHCB units achieved the required 100 percent compliance with this measure.  In addition, only 56 percent of facilities were over 90 percent complaint with* |

| Court-Ordered Recommendations | Implementation Status |
|---|---|
| | ***both*** *Suicide Precaution and Suicide Watch rounds.  See Report at 23-27 for details.* |
| **Recommendation 28**:  All IPs discharged from an MHCB or alternative housing, where they had been housed due to suicidal behavior, should be observed at **30-minute intervals by custody staff**, regardless of the housing units to which they are transferred. | ***35% (7 of 20) compliance*** <br> ***Full implementation has not been achieved***; *low compliance rates were found in almost all audited facilities regarding the custody personnel requirement to accurately complete **Page 2** of the "Discharge Custody Check Sheet" (CDCR MH-7497) form.  See Report at 47-50 for details.* |
| **Recommendation 29**:  The length of time an IP is observed at 30-minute intervals following MHCB or alternative housing discharge should be **determined on a case-by-case basis by the mental health clinician** and clinically justified in the IP's treatment plan.  No other frequency of observation should be authorized. | ***25% (5 of 20) compliance*** <br> ***Full implementation has not been achieved***; *low compliance rates were found in almost all audited facilities regarding mental health clinician requirement to accurately complete **Page 1** of the "Discharge Custody Check Sheet" (CDCR MH-7497) form. See Report at 47-50 for details.* |
| **Recommendation 31**:  CDCR under the guidance of the Special Master, should re-examine and revise its local **SPRFIT** model to make the local SPRFITs a more effective quality assurance/improvement tool. | ***33% (7 of 21) compliance*** <br> ***Full implementation has not been achieved***; *the SPRFIT process was "rebooted," and several audited facilities continued to have problems maintaining monthly meeting quorums, did not always track Suicide Risk Management Program (SRMP) patients and report their current statuses during monthly SPRFIT meetings minutes. A few facilities did not conduct semi-annual root cause analyzes for serious suicide attempts (or case summaries to be discussed during monthly meetings), and several facilities did not provide documentation for corrective action plans resulting from this reviewer's prior assessment report and/or regional SPRFIT audits. Most facilities had local operational procedures (LOPs) for SPRFIT, "Inmate-Patients Receiving Bad News," CIT, and the SRMP. See Report at 50-53 for details.* |
| **Recommendation 32**:  CDCR, under the guidance of the Special Master, should examine and consider taking reasonable corrective actions to address these additional miscellaneous issues:  **Possessions and Privileges for IPs in MHCBs, Continuous Quality Improvement, and Reception Centers**.  *See* ECF No. 6879 at 24-25 for specific discussion of remaining parts of this recommendation to be implemented. | ***Full implementation has not been achieved***; *multiple audited facilities with MHCB units had problematic practices regarding* <u>*Possessions and Privileges for Inmates in MHCBs*</u>, *ranged from MHCB patients not receiving out-of-cell activities due to their maximum-security custody status, misunderstanding/misinterpretation of COVID-19 quarantine directives, incorrect belief that patients could only receive out-of-cell activities when they were approved for "full issue" clothing, and clinical misuse of safety smocks (see page 32). Regarding* <u>*Continuous Quality Improvement*</u>*, the Suicide Prevention On-Site* |

| Court-Ordered Recommendations | Implementation Status |
|---|---|
|  | *Audit Guidebook is revised periodically (most recently in January 2024) but not fully implemented (see page 11). Finally, there were some problems in CDCR's three audited <u>Reception Centers</u> regarding diagnostic clinicians consistently reviewing nurses' Initial Health Screening forms, county jail records, and requesting signed release of information forms from IPs for outside medical records (see pages 66-70).* |

Report at 6-9.

The Report also includes a table comparing compliance rates from the current re-audit to those found in Mr. Hayes' fifth re-audit, which is also reproduced below:

**<u>TABLE 2: Suicide Prevention Measure Compliance Rate Comparison Table[7] [8]</u>**

| Suicide Prevention Measure | Fifth Re-Audit Compliance Rate | Sixth Re-Audit Compliance Rate |
|---|---|---|
| Initial health screening and receiving and release unit environment (**Rec. 7-8**) | 78% (18 of 23) | 80% (16 of 20) – Rec. 7<br>75% (15 of 20) – Rec. 8 |
| Psychiatric technician (PT) practices (**Rec. 20**) | 86% (19 of 22) | 95% (19 of 20) |
| Use of suicide-resistant cells for newly admitted IPs in administrative segregation units (**Rec. 12-13**) | 82% (18 of 22) | 65% (13 of 20) |
| Practices for Observing MHCB Patients (**Rec. 21**) | 15% (3 of 20) | 56% (10 of 18) |

---

[7] Of note, Section F (Practices for Observing Suicidal Patients) and Section I (Mental Health Referrals and Suicide Risk Evaluations) requires 100 percent compliance, whereas all other sections require a minimum of 90 percent compliance.

[8] Of note, the denominator in columns may vary depending upon on-site findings, e.g., 20 of 21 audited facilities had MHCBs, and one MHCB unit was temporarily closed during the on-site assessment period; one ASU was temporarily closed, one facility did not have any new admissions going through intake screening during on-site assessment, etc.

| Suicide Prevention Measure | Fifth Re-Audit Compliance Rate | Sixth Re-Audit Compliance Rate |
|---|---|---|
| MHCB practices for possessions and privileges (**Rec. 32**) | 53% (10 of 19) | 33% (6 of 18) |
| Mental health referrals and suicide risk evaluations (**Rec. 10**) | 61% (14 of 23) | 71% (15 of 21) |
| SRE training (**Rec. 9**) | 65% (15 of 23) | 52% (11 of 21) |
| Safety planning for suicidal IPs (**Rec. 17**) | Not reviewed | 10% (2 of 21) |
| Safety planning training (**Rec. 18**) | 96% (22 of 23) | 71% (15 of 21) |
| MHCB and alternative housing and efficacy of five-day clinical follow-up and custody welfare checks (**Rec. 28-29**) | 9% (2 of 23) | 35% (7 of 20) – Rec. 28<br>25% (5 of 20) – Rec. 29 |
| Quorums at SPRFIT meetings (**Rec. 31**) | 26% (6 of 23) | 52% (11 of 21) |
| LOPs for SPRFIT, IPs Receiving Bad News, CIT, and the SRMP (**Rec. 31**) | 87% (20 of 23) | 81% (17 of 21) |
| SRMP tracking by local SPRFIT (**Rec. 31**) | N/A | 62% (13 of 21) |
| Local SPRFIT tracking of corrective action plans prior assessments (**Rec. 31**) | N/A | 81% (17 of 21) |
| Suicide prevention training (**Rec. 3**) | 70% (16 of 23 – custody)<br>65% (15 of 23 – medical)<br>78% (18 of 23 – mental health) | 95% (20 of 21 – custody)<br>62% (13 of 21 – medical)<br>86% (18 of 21 – mental health) |
| Continuous Quality Improvement (CQI) (**Rec. 32**) | Not all 19 suicide prevention measures included in either CQI Guidebook or facility CQI audit reports. | *Suicide Prevention On-Site Audit Guidebook* is revised periodically (most recently in January 2024) but not fully implemented; quarterly regional SPRFIT on-site reviews are not always timely and do not always include the required 19 suicide prevention measures. |

| Suicide Prevention Measure | Fifth Re-Audit Compliance Rate | Sixth Re-Audit Compliance Rate |
|---|---|---|
| Reception center suicides (**Rec. 32**) | Review of relevant documents remains problematic. | Review of relevant documents by diagnostic clinicians remains problematic; required audits not reported in SPRFIT minutes of two reception center SPRFITs. |

Report at 10-11.

### III.    RE-AUDIT OF PIP SUICIDE PREVENTION PRACTICES

As noted, Mr. Hayes' baseline assessment of suicide prevention practices within CDCR's

PIPs included within his Fifth Re-Audit Report resulted in 16 recommendations, as follows:[9]

- Develop a CAP to ensure uniformity during the nursing intake screening process within the PIPs whereby all PIPs utilize the current Initial Health Screening form (which contains adequate mental health and suicide risk questions) or revise either the "Admission Assessment and History" and "Acute/ICF Nursing Assessment" forms to include adequate mental health and suicide risk questions.

- Develop a CAP to ensure that SRASHEs are always completed consistent with the requirements of the PIP suicide prevention policy, including by psychiatry in all programs, as well as by CIW-PIP clinicians on the weekend.

- Develop CAPs at both CMF-PIP and SVSP-PIP to ensure that all cells designated to house suicidal patients are suicide-resistant.

- Develop a CAP to ensure that only Suicide Precaution and Suicide Watch statuses are permitted for the observation for suicidal patients, and that terms such "stags," "mental health observation," "Q-11," "behavioral suicide watch," and "enhanced observation" are prohibited to be used in provider orders and progress notes.

- Develop a CAP to ensure that regular nursing rounds conducted at 15-minute intervals (meant for non-suicidal patients) should never be utilized as a substitute for Suicide Precaution status.

---

[9] Notably, these recommendations were accepted by the court without objection from defendants. January 6, 2023 Order, ECF No. 7696 at 3 ("There are no objections concerning the baseline audit of suicide prevention practices in the PIPs.").

- Develop CAPs at both SVSP-PIP and CIW-PIP to ensure patients on suicide observation status are always assessed on a daily basis, and that orders for discharge from Suicide Watch and Suicide Precaution at SVSP-PIP are only completed following an assessment by a provider.

- Develop CAPs at CMF-PIP, CHCF-PIP, SVSP-PIP, and SQ-PIP to ensure that all patients on suicide observation status are always adequately observed.

- Develop CAPs at CMF-PIP, CHCF-PIP, CIW-PIP, and SQ-PIP to ensure that all provider orders regarding clothing and possessions are clinically justified in medical charts, and that patients not on Suicide Watch or Suicide Precaution are provided all clothing and possessions.

- Develop a CAP for all PIPs to ensure that suicidal patients have access to out-of-cell activities that are clinically justified, including those on maximum-security status.

- Develop a CAP to improve the reliability of data generated from the Mental Health NCAT (Non-Clinical Activity Tracking) database regarding out-of-cell activities.

- Develop a CAP in improve the consistency of IDTT meetings for suicidal patients within all of the PIPs, to include adequate case presentations; higher level of care discussions (during meetings for ICF patients); adequate discussion regarding suicide risk histories; current suicide risk and observation; clothing, possessions, and out-of-cell activities; and safety planning to reduce further recurrence of SI.

- Develop a CAP to improve the adequacy of safety planning within all of the PIPs, as well as a CAP to enforce the PIP suicide prevention policy requirement for supervisory review of a safety plan prior to, or during the IDTT in which the discharging SRASHE is completed. In addition, both CAPs should include clear guidance that a patient's current low acute risk at discharge and/or refusal or lack of cooperation for safety plan development should never be considered reasons for exemption to both safety plan development and supervisory review.

- Develop a CAP to ensure that "contracting for safety" is not utilized in either the assessment of suicide risk or documentation of decision-making within the PIPs.

- Develop CAPs to increase custody, medical, and mental health staff compliance for annual suicide prevention training at CMF-PIP and CHCF-PIP.

- Develop CAPs to increase mental health clinician compliance rates for both SRE mentoring program and seven-hour SRE training at CMF-PIP, CHCF-PIP, and SVSP-PIP.

- Develop a CAP to ensure that SPRFITs at each PIP meet required monthly meetings

15

quorums, and that deficient suicide prevention practices, including those cited in this reviewer's report, are remedied.

ECF No. 7636 at 29-31.

Accordingly, Mr. Hayes' re-audit of CDCR's PIPs included "examination of suicide prevention training; assessment of suicide risk upon admission, during placement, and upon discharge; observation of suicidal patients; placement of suicidal patients in suicide-resistant rooms; provision of clothing commensurate with the level of suicide risk; provision of out-of-cell activities; and safety planning." Report at 3. Mr. Hayes provides detailed findings regarding the current status of CDCR's suicide prevention efforts in the PIPs, *see* Report at 70-85, and concludes that "because this first re-audit assessment of those programs occurred in the midst of defendants' implementation of corrective actions to address this reviewer's initial 16 recommendations, a determination of full and durable implementation is deferred until the next re-audit." Report at 91.

## IV.    CONCLUSION AND RECOMMENDATIONS

The Special Master continues to share the concerns expressed by Mr. Hayes in each of his audit reports. As noted, during this re-audit, Mr. Hayes determined that defendants had fully implemented one additional recommendation (Recommendation 20), leaving 14 of Mr. Hayes' original recommendations yet to be fully implemented. As the Special Master has stated previously, defendants' successful implementation of 15 of Mr. Hayes' recommendations "demonstrate[s] both their comprehension and ability to execute." ECF No. 7636 at 31. Equipped with that comprehension and ability to execute, defendants must complete implementation of the remaining recommendations forthwith.

Mr. Hayes' finding of backsliding with respect to some of the remaining recommendations is deeply concerning, particularly in light of the nine years that have passed since he initially offered these recommendations.

In view of all of the foregoing, the Special Master requests that:

(1) The Court find defendants in compliance with the implementation of Recommendation 20;[10] and

(2) The Court direct the Special Master to provide and update report to the Court on the status of (a) defendants' continued implementation of the remaining 14 recommendations; and (b) defendants' continued implementation of the initial 16 recommendations related to suicide prevention practices in the PIPs.

Mr. Hayes' most recent Report speaks for itself. Sadly, defendants have continued what the Court recently described as their "long history of failure to fully implement the required suicide prevention measures." ECF No. 7743 at 1.

Respectfully submitted,


*/s/ Matthew A. Lopes, Jr.*
Matthew A. Lopes, Jr.
Special Master

March 1, 2024

---

[10] With regard to the remaining 14 outstanding recommendations—3, 7, 8, 9, 10, 12, 13, 17, 18, 21, 28, 29, 31, and the remaining parts of 32—defendants should continue their court-ordered efforts toward full implementation without further delays, focusing on ways to accelerate the process wherever possible.

# APPENDIX A

## ACRONYMS and ABBREVIATIONS

| | |
|---|---|
| 3CMS | Correctional Clinical Case Management System |
| ADA | Americans with Disabilities Act |
| ADHD | Attention Deficit Hyperactivity Disorder |
| AED | Automated External Defibrillator |
| AH | Auditory Hallucinations |
| Ambu bag | Ambulatory Bag Used for CPR |
| APP | Acute Psychiatric Program |
| ASU | Administrative Segregation Units |
| AVSS | Audio Video Surveillance System |
| BCOA | Basic Correctional Officer Academy |
| BCP | Budget Change Proposal |
| BPH | Board of Parole Hearings |
| BRMR | Business Rules and Methodology Review |
| C-SSRS | Columbia-Suicide Severity Rating Scale |
| CAP | Corrective Action Plan |
| CAT | Chart Audit Tool |
| CBT | Cognitive Behavioral Therapy |
| CC | Correctional Counselor |
| CC I | Correctional Counselor I |
| CC II | Correctional Counselor II |
| CCCMS | Correctional Clinical Case Management System |

| | |
|---|---|
| CCHCS | California Correctional Health Care Services |
| CCI | California Correctional Institution |
| CCWF | Central California Women's Facility |
| CDCR | California Department of Corrections and Rehabilitation |
| CHCF | California Health Care Facility |
| CIM | California Institution for Men |
| CIT | Crisis Intervention Teams |
| CITPP | Condemned Inmate Transfer Pilot Program |
| CIW | California Institution for Women |
| CMC | California Men's Colony |
| CMF | California Medical Facility |
| CMH | Chief of Mental Health |
| CNA | Certified Nursing Assistant |
| CNE | Chief Nurse Executive |
| CPAP | Continuous Positive Airway Pressure (battery operated device) |
| CPR | Cardiopulmonary Resuscitation |
| CQI | Continuous Quality Improvement |
| CQIT | Continuous Quality Improvement Tool |
| CSATF | California Substance Abuse Treatment Facility |
| CSP/Corcoran | California State Prison, Corcoran |
| CSP/LAC | California State Prison, Los Angeles County |
| CSP/Sac | California State Prison, Sacramento |
| CSP/Solano | California State Prison, Solano |

| | |
|---|---|
| CTC | Correctional Treatment Center |
| CYA | California Youth Authority |
| DAI | Division of Adult Institutions |
| D/C | Discharge |
| DBT | Dialectical Behavior Therapy |
| DCHCS | Division of Correctional Health Care Services |
| DDP | Developmental Disability Program |
| DSH | Department of State Hospitals |
| DTO | Disability or Danger to Others |
| DTS | Danger to Self |
| EHRS | Electronic Health Record System |
| EOP | Enhanced Outpatient Program |
| ERMS | Electronic Record Management System |
| FDA | Food and Drug Administration |
| FTF | Face-to-Face |
| GAS | Gender Affirming Surgery |
| GASRC | Gender Affirming Surgery Review Committee |
| GED | General Education Development |
| GIQ | Gender Identity Questionnaire |
| GP | General Population |
| HCDOM | Health Care Department Operations Manual |
| HCITC | High Custody Intermediate Treatment Center |
| HDSP | High Desert State Prison |

| | |
|---|---|
| HIV | Human Immunodeficiency Virus |
| HLOC | Higher Level of Care |
| HQ | Headquarters |
| HRT | High-Risk Team |
| ICC | Institutional Classification Committee |
| ICE | Immigration and Customs Enforcement |
| ICF | Intermediate Care Facility |
| IDTT | Interdisciplinary Treatment Team |
| IP | Incarcerated Person |
| IPOC | Individual Plan of Care |
| IST | In-Service Training |
| ISUDT | Integrated Substance Use Disorder Treatment |
| KOP | Keep-on-Person |
| KVSP | Kern Valley State Prison |
| LEP | Limited English Proficiency |
| LOC | Level of Care |
| LOP | Local Operating Procedures |
| LVN | Licensed Vocational Nurse |
| MAR | Medication Administration Record |
| MAT | Medication Assisted Therapy |
| MCSP | Mule Creek State Prison |
| MD | Medical Doctor |
| MH | Mental Health |

| | |
|---|---|
| MHCB | Mental Health Crisis Bed |
| MHCT | Mental Health Compliance Team |
| MHPC | Mental Health Primary Clinician |
| MHSDS | Mental Health Services Delivery System |
| NCAT | Non-Clinical Activity Tracking |
| NDPF | Non-Designated Program Facility |
| NKSP | North Kern State Prison |
| NP | Nurse Practitioner |
| OHU | Outpatient Housing Unit |
| OIA | Office of Internal Affairs |
| PBSP | Pelican Bay State Prison |
| PC | Primary Clinician |
| PCP | Patient Care Plan |
| PIPs | Psychiatric Inpatient Programs |
| PMU | Patient Management Unit |
| PREA | Prison Rape Elimination Act |
| PRN | *pro-re-nata* (Take) As Needed (re: meds) |
| PSR | Program Status Report |
| PSU | Psychiatric Services Unit |
| PT | Psychiatric Technician or Psych Tech |
| PTSD | Post-Traumatic Stress Disorder |
| QIP | Quality Improvement Plan |
| R&R | Receiving and Release |

| | |
|---|---|
| RC | Reception Center |
| RCA | Root Cause Analyses |
| RHU | Restrictive Housing Unit |
| RJD | Richard J. Donovan Correctional Facility |
| RN | Registered Nurse |
| RNC | Regional Nursing Consultant |
| ROI | Release of Protected Health Information |
| RT | Recreational Therapist |
| RVR | Rules Violation Report |
| SBCJ | Santa Barbara County Jail |
| SH | Self-Harm |
| SHU | Security Housing Unit |
| SI | Suicidal Ideation |
| SIB | Self-Injurious Behavior |
| SMHP | Statewide Mental Health Program |
| SMY | Small Management Yard |
| SNF | Skilled Nursing Facility |
| SNY | Sensitive Needs Yard |
| SOGI | Sexual Orientation and Gender Identity |
| SOMS | Strategic Offender Management System |
| SPI | Safety Planning Intervention |
| SPMW | Suicide Prevention Management Workgroup |
| SRMP | Suicide Risk Management Program |

| | |
|---|---|
| SPMW | Suicide Prevention Management Workgroup |
| SPRFIT | Suicide Prevention and Response Focused Improvement Team |
| SPRU | Suicide Prevention and Response Unit |
| SQ | San Quentin State Prison |
| SRASHE | Suicide Risk Assessment and Self-Harm Evaluation |
| SRE | Suicide Risk Evaluation |
| SRMP | Suicide Risk Management Program |
| SRN | Supervising Registered Nurse |
| STRH | Short-Term Restricted Housing |
| SVSP | Salinas Valley State Prison |
| SW | Suicidal Watch |
| T4T | Training-for-Trainers |
| TBD | To be determined |
| TMHU | Temporary Mental Health Unit |
| TTA | Triage and Treatment Area |
| TTM | Therapeutic Treatment Module |
| Tx | Treatment |
| WSP | Wasco State Prison |