UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | No. 2:90-cv-0520 KJM DB P<br><br>ORDER |

  On January 18, 2024, the parties filed a Joint Statement Regarding Tour Dispute. ECF No. 8110. The Joint Statement arises from a defense motion to lift a temporary stay of prison tours by retained defense experts the court imposed on July 28, 2023. *See* July 28, 2023 Order, ECF No. 7897. Defendants filed their motion to lift the stay on October 10, 2023. ECF No. 8005. On October 24, 2023, the court denied the motion without prejudice due to defendants' failure to satisfy the court's meet-and-confer requirements. October 24, 2023 Order, ECF No. 8029, at 5. The Joint Statement sets out the results of the meet-and-confer process the parties engaged in after the court's October 24, 2023 order. The Joint Statement reflects one broad disagreement--whether the court should permit the tours—and several narrower disagreements which the parties ask the court to resolve in the event the court grants defendants' motion to lift the temporary stay. For the reasons explained in this order, defendants' motion to lift the temporary stay of the VJRS/Falcon tours is **denied**.

1

**I.      BACKGROUND**

In the fall of 2020, defendants contracted with Voorhis/Robertson Justice Services, LLC (VRJS) and Falcon, Incorporated (Falcon) to conduct a "comprehensive study" of the defendants' 2009 Mental Health Staffing Plan, ECF No. 3693, "the relationship between the 2009 Staffing Plan" and general requirements of the Program Guide as the primary remedial plan for this action, "and whether changes in circumstances since the development of the 2009 Staffing Plan, . . . warrant modifications to the 2009 Staffing Plan or alternatives to come into compliance with" that plan.  Decl. of Robertson, ECF No. 6855-1, ¶ 1; *see also* Decl. of Falcon, ECF No. 7884, at ¶ 2.[1]

As part of this study, defendants planned prison tours for the VRJS/Falcon consultants. After the Special Master brought those planned tours to the court's attention, the court convened a status conference to determine whether those tours would conflict with, or "divert attention and resources from," ongoing remedial work in this action.  July 30, 2021 Minute Order, ECF No. 7255.  The court accepted the representation made by defendants at hearing then that the tours would "be conducted consistent with" the responsibilities of California Department of Corrections and Rehabilitation (CDCR) Deputy Director of Mental Health Care Dr. Amar Mehta "to continue to improve CDCR's delivery of mental health care to class members, to anticipate and solve any issues related to staffing, and to inform defendants' participation in the court-ordered settlement process."  August 25, 2021 Order, ECF No. 7283, at 4.  The court therefore directed the Special Master not to attend those tours.  *Id*.

CDCR retained VRJS/Falcon to conduct the recommended study, and VRJS/Falcon hired "approximately 30" experts to conduct the study.  ECF No. 7884, ¶ 5.  In August 2022, VRJS/Falcon shared with defendants the results of their 18-month study.  ECF No. 7884, ¶¶ 3, 4 & Ex. B.  VRJS/Falcon reported the following findings:

/////

---

[1] In 2017 and 2018, defendants retained consultants to unilaterally tour several CDCR prisons for substantially the same purpose, namely review of the 2009 Staffing Plan.  *See generally* Corrected Decl. of McClain, ECF No. 5781 and Ex. A thereto, ECF No. 5781-1.

1
2
3
4
5
6
7
8
9
10
11
12
13
14

- "CDCR's Program Guide exceeds nationwide standards [but that] additional study is warranted to determine how services are implemented and delivered on-site." ECF No. 7884-2 at 3.
- As of the eighteen-month study period, "the 2009 Staffing Plan ratios continue to be adequate to support the Program Guide, with the model allowing for core staff and core allocations to adequately sustain and service the Program Guide requirements. Accordingly, no augmentation to the 2009 staffing plan ratios is necessary to support the Program Guide requirements at this time." *Id*. at 3-4.
- "Staffing levels required by the Program Guide exceed national consensus standards and exceed the levels needed for providing clinically adequate care for patients in a correctional setting." *Id*. at 4.
- "In many instances, it was also found that CDCR's staffing plan exceeds staffing standards in other comparison states studied." *Id*.
- "CDCR should continue to address recruitment and retention concerns." *Id*.

15  The VRJS/Falcon consultants recommended (1) "considering a realignment of the
16 Program Guide to align with nationwide standards more closely, which will allow for more
17 efficient and effective allocations of staffing and improved outcomes for treatment and
18 programming"; (2) that "CDCR undertake a broader, systemwide study of mental healthcare
19 delivery to more fully understand how services are delivered, the quality of care delivered, and
20 how Program Guide requirements are conducted on site"; and (3) "assess[ment of] how this
21 delivery of care compares to nationwide standards, community standards, and other similar State
22 Departments of Correction." *Id*.

23  In a letter dated April 21, 2023, defense counsel informed the Special Master and
24 plaintiffs' counsel that VRJS/Falcon had "recommended that 'a broader, more comprehensive
25 study is warranted and recommended for evaluating the quality and adequacy of CDCR's mental
26 health care and programming being provided within its facilities,'" that defendants had retained
27 VRJS/Falcon to conduct the study, and that the study would "likely include" prison visits,
28 /////

3

anticipated to begin in July 2023. Ex. A to Decl. of McClain, ECF No. 7885-1 at 3–4. Counsel included a copy of the VRJS/Falcon memorandum as an attachment to the letter. *Id*. at 5-8.

On July 25, 2023, with leave of court, July 19, 2023 Min. Order, ECF No. 7880, the parties filed a joint statement about disputes that had arisen over the VRJS/Falcon tours which by then were underway. ECF No. 7897 at 1. On July 28, 2023, the court issued its order directing defendants to halt the VRJS/Falcon tours until further order. *Id*. at 4. The relevant history set out in that order is incorporated herein. *Id*. at 1-3. On August 10, 2023, the court discussed the tours with the parties at a pre-hearing status conference.[2] In its order after the status conference, the court continued the stay of the VRJS/Falcon tours, explaining its reasoning as follows:

> During the pre-enforcement hearing conference, the court confirmed with the parties that the VRJS/Falcon tours are unrelated to the September 29, 2023 proceedings or the discovery authorized for those proceedings. While defendants' counsel suggested defendants would be prejudiced if the tours remain suspended until conclusion of the enforcement proceedings, he did not explain in what way they would be prejudiced. It is not otherwise clear from the record which if any specific pending matters the VRJS/Falcon tours are related to or whether at this late stage of these remedial proceedings the tours are a form of discovery for which leave of court is required.
>
> In this long-running case, it is critically important that all the parties' and the court's resources remain focused on preparing to address the issues presented by the upcoming enforcement proceedings. The court therefore confirms its bench order issued at the pre-enforcement hearing conference, that VRJS/Falcon tours will remain suspended until further order of court unless the parties arrive at a stipulation governing the conduct of those tours and the court approves any such stipulation. In the absence of such an approved stipulation, the court will have a further discussion with the parties about resumption of the VRJS/Falcon tours, including the schedule for motion practice as necessary, following the conclusion of proceedings beginning on September 29, 2023.

August 14, 2023 Order, ECF No. 7918, at 2.

Defendants sought to resume discussions with plaintiffs about the tours by September 1, 2023, though plaintiffs declined to participate in those discussions pending conclusion of the September 29, 2023 enforcement proceedings. ECF No. 8029 at 3. Four days after the close of

---

[2] The August 10, 2023 pre-hearing conference was set in connection with enforcement proceedings on staffing then set for September 29, 2023. *Id*. at 1; *see also* July 11, 2023 Order, ECF No. 7872.

4

1  evidence in the enforcement proceedings, on October 9, 2023 defendants again sought to resume
2  the discussions. *Id*. at 4. Defendants filed their motion to lift the temporary stay the next day.
3  ECF No. 8005. As discussed above, the court denied that motion without prejudice. ECF No.
4  8029. The Joint Statement now before the court satisfies the court's meet-and-confer
5  requirements on which it based the October 24, 2023 order.

## II.     LEGAL STANDARD

It is well-established that "a district court possesses inherent powers that are 'governed not by rule or statute but by the controls necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). The court's exercise of this power "must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice," *id*. (quoting *Degen v. United States*, 517 U.S. 820, 823-24 (1996)), and it "cannot be contrary to any express grant of or limitation on the district court's power contained in rule or statute," *id*. It is also well-established that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Id*. at 47 (citations omitted). The court must use restraint in exercising its inherent powers to avoid "undermining other vital interests related to the fair administration of justice." *Id*. at 48.

## III.    ANALYSIS

Though framed as a dispute over whether the proposed VRJS/Falcon tours are a form of discovery, the essential question for the court is whether and if so to what extent it should exercise its case management authority with respect to the proposed tours. Defendants contend the tours are part of their "self-evaluation" of their Mental Health Services Delivery System (MHSDS) and not discovery because, while the expert findings will "inform [defendants'] litigation strategy," defendants "cannot predetermine" what those findings will be. ECF No. 8110 at 5 n.2. Plaintiffs argue "the tours are discovery in preparation for litigation," *id*. at 12, pointing to defense counsel's April 21, 2023 letter in which counsel states "Defendants may, in the future, take action to terminate or modify all or parts of this case – or none at all – pending the experts'

5

1  determination and recommendation(s), at which time Defendants will provide six months' notice
2  [of intent to file a termination motion] as required by this Court's February 21, 2018 Order," ECF
3  No. 7885-1 at 4.

4  In 2016, "the court laid out a 'road map to the end of federal court oversight.'"  Sept. 3,
5  2020 Order at 14, ECF No. 6846 (quoting ECF No. 5477 at 2).  In 2019, the court "clarifie[d] for
6  the record that remedial planning in this action is substantially complete," that the "content of the
7  completed remedial plan [was] fully transparent and [would] serve as a reference point for the
8  court and the parties going forward" and that, separately, "a number of implementation tasks
9  remain."  July 9, 2019 Order at 4-5, ECF No. 6214.  Since then, with some detours and
10 interruptions, the parties have been working to complete the remaining tasks identified by the
11 court and toward full and durable implementation of the established remedies in this action.
12 Whether or not the proposed VRJS/Falcon tours are "discovery," the issues presented by the
13 parties implicate the heart of the court's case management responsibilities and require careful
14 assessment of the impact of the proposed tours on the most fair, expeditious and efficient
15 resolution of this action at this late stage.

16 **A.  Connection Between Proposed Tours and This Litigation/Absence of
17      Threshold Showing Adequate to Support Tours for Purposes of this
18      Litigation**

19 One of the hallmarks of this action has been "the long-standing practice of joint tours . . .
20 both before the original trial and during the course of the remedial phase."  Feb. 15, 2018 Order,
21 at 2–3, ECF No. 5774.  Among other things, joint tours preclude the need for additional discovery
22 to "create the 'common factual baseline' necessary to proper assessment of any recommendations
23 proffered by the consultants."  *Id*. at 3 (citing ECF No. 2495 at 4).  This court's authority over this
24 matter arises directly from, and only to the extent that, the proposed tours may be used in
25 litigation in these proceedings.  At least two possible areas of litigation arising from the proposed
26 tours are apparent from the record:  a motion to modify the Program Guide, and a motion to
27 terminate the action.
28 /////

Defendants' retention of VRJS/Falcon for the current study arises from VRJS/Falcon's assertion at the end of its first study that the Program Guide "exceeds nationwide standards." ECF No. 7884-2 at 3. VRJS/Falcon concluded that the 2009 Staffing Plan was adequate to support the Program Guide, but that the Plan's staffing levels also "exceed national consensus standards," *id*. at 4, presumably because the Program Guide, in their view, exceeds those standards. While this suggests defendants ultimately may bring a motion to modify the Program Guide, the record is devoid of several pieces of threshold evidence necessary to support the costly and time-consuming prison tours defendants propose.

The standards relevant for this court's purposes are constitutional standards required by the Eighth Amendment. It is settled in this action that "'the Program Guide sets out the objective standards that the Constitution requires' for the delivery of adequate mental health care to members of the plaintiff class." July 1, 2021 Order at 3, ECF No. 7216 (quoting *Coleman v. Brown*, 756 Fed. Appx. 677, 679 (9th Cir. 2018)). There is no evidence before the court to support a finding that Program Guide standards exceed nationwide standards: no comparative analysis of the Program Guide and the national standards undergirding VRJS/Falcon's finding and, importantly, no analysis of whether, or how, those national standards themselves satisfy the Eighth Amendment. Without this threshold showing, the court has no basis to find that the proposed tours will aid in the most expeditious resolution of this action at this point. This is particularly so where the tours would be a costly and time-consuming detour from the tasks remaining to implement the Program Guide, whose nexus to the requirements of the Eighth Amendment is well-established.

Defendants also expressly acknowledge, and have not ruled out, the possibility that the results of the experts' study, including the tours, may lead them to "take action to terminate or modify all or parts of this case – or none at all. . . ." ECF No. 7885-1 at 4. As discussed below, the record is replete with the court's factual findings of the present state of mental health care delivery to class members. These findings are readily available to defendants to guide their analysis of whether they are sufficiently compliant with their constitutional obligations to move

/////

for termination of some or all parts of this action. The proposed prison tours are not necessary to that analysis.

          **B.**        **Purpose of the VRJS/Falcon Study**

Defendants assert that the purpose of the current VRJS/Falcon study "is to conduct a broad, unbiased and objective assessment of CDCR's delivery of mental healthcare and services," as part of a "self-evaluation" of their MHSDS and that the tours are a necessary component of the VRJS/Falcon study. ECF No. 8110, at 5 & n.2. The court is not persuaded that either of these asserted purposes warrant court authorization of the proposed tours.

          **1.**        **The Special Master provides regular objective assessments of the MHSDS through his periodic monitoring reports, which are served on the parties and publicly available**

Since April 1998, the Special Master has completed twenty-nine rounds of monitoring and reporting on defendants' implementation of and compliance with Program Guide requirements and, most recently, has completed a thirtieth comprehensive monitoring round and filed three parts of a four part report of his findings from that round.[3] *See* Thirtieth Round Monitoring Report–Part A, ECF No. 7833; June 9, 2023 Order, ECF No. 7854 (adopting same); Thirtieth Round Monitoring Report–Part B, ECF No. 8085; Thirtieth Round Monitoring Report–Part C, ECF No. 8095. The Special Master's monitoring reports are based on data and documents provided by defendants and observations gathered by members of the Special Master's team, accompanied by institutional staff, during monitoring tours of each state prison with one or more mental health programs. After each site visit, the Special Master's team reviews their preliminary findings and observations with institutional staff. Thereafter, the Special Master circulates a copy of his monitoring report in draft form to the parties. The parties have a period of thirty days to comment on the draft, and the Special Master responds to those comments and edits the draft report as necessary prior to filing it with the court. The court reviews those reports and any

---

[3] The Special Master has also filed numerous other reports on remedial issues in this action, as well as seven reports on defendants' implementation of required suicide prevention measures. These reports also provide information about various aspects of defendants' delivery of mental health care to the plaintiff class and are reviewed by the court in the same manner as the monitoring reports.

1  objections to them and accepts factual findings in those reports unless a party shows the findings
2  are "clearly erroneous." December 11, 1995 Order of Reference, ECF No. 640 at 8. Where the
3  parties make no objections, the Special Master's compliance reports are "adopted as the findings
4  of fact and conclusions of law of the court." *Id.* Through this process, the Special Master's
5  periodic monitoring reports adopted by the court provide precisely the "broad, unbiased and
6  objective assessment[s] of CDCR's delivery of mental healthcare and services" defendants
7  purport to seek.

8  In 2013, the court confirmed these monitoring reports are grounded in constitutional
9  requirements. *See generally* Feb. 28, 2013 Order, ECF No. 4361. Defendants had raised a
10 general objection to the Special Master's Twenty-Fifth Round Monitoring Report, "that the
11 Special Master 'ha[d] not even attempted to assess' defendants' mental health care delivery
12 system against a constitutional standard." *Id*. at 2 (quoting Defs.' Amended Objections at 4, ECF
13 No. 4347), 7. The court overruled that objection, holding that the Program Guide is defendants'
14 court-approved plan to remedy identified Eighth Amendment violations in the delivery of mental
15 health care to the plaintiff class, and that because the Program Guide "is grounded in the
16 requirements of the Eighth Amendment as they have been developed in the context of this action
17 . . . the Special Master's Report to the court on defendants' compliance with the provisions of
18 the . . . Program Guide is also grounded in the requirements of the Eighth Amendment and is
19 precisely in accordance with his duties." *Id*. at 3.

20 As noted, VRJS/Falcon conducted its initial study between October 2020 and
21 March 2022. During this period, the Special Master filed his Twenty-Eighth Round Monitoring
22 Report, ECF No. 7074, and conducted tours of inpatient programs as part of his twenty-ninth
23 round monitoring round, s*ee* ECF No. 7555 at 14; ECF No. 7625 at 9. Since, then, the Special
24 Master has completed the remainder of the twenty-ninth monitoring round, filed all four parts of
25 the report on that monitoring, *see* ECF Nos. 7555, 7625, 7715, and 7716, and, as noted above,
26 completed his thirtieth round of monitoring and filed three parts of the four-part monitoring report
27 from this round, *see* ECF Nos. 7833, 8085, 8095. On June 8, 2023, the court adopted Part A of
28 the Thirtieth Round Monitoring Report without objection. ECF No. 7854. Defendants'

9

objections to Parts B and C are pending court review. *See* ECF Nos. 8106, 8108. At least two recent court-approved monitoring reports are available to the VJRS/Falcon consultants at this time, and the complete thirtieth round monitoring report will be available well before the tours proposed by defendants could be completed, even if the court were inclined to authorize them.

Defendants have made no showing, nor could they, that the Special Master's periodic monitoring reports, which are part of the public record and available to the VRJS/Falcon experts, are anything other than unbiased, objective assessments of the delivery of mental health care throughout the MHSDS.

### 2. "Self-evaluation"

Defendants also assert the VJRS/Falcon study is part of a "self-evaluation" of their MHSDS. Separate from this litigation, defendants are of course free to monitor their own prison facilities. *See* Oct. 24, 2023 Order at 2 n.2. However, for purposes of this litigation the mechanisms for evaluating and monitoring defendants' MHSDS and for transitioning that evaluation and monitoring to defendants are well-established. *See, e.g.*, ECF No. 6846 at 10–11, 15, 18, 24–26, 28. With the Special Master's supervision, the parties in this action are nearing completion of more than three years of effort remediating defendants' mental health data system, and work continues on the development of a continuous quality improvement system and monitoring tool that, once complete, will enable defendants to regularly evaluate their MHSDS.

Absent a threshold showing that the proposed prison tours would aid complete constitutional compliance more expeditiously and efficiently than the current roadmap to the end of this litigation, the court cannot approve tours that, at best, appear largely redundant of efforts already well underway and nearing completion.

### IV. CONCLUSION

For the reasons explained above, the court finds the proposed VRJS/Falcon prison tours will not aid the most efficient and expeditious resolution of this action. Rather, the tours will be a

/////

/////

1  costly detour from the established roadmap to the end of this litigation.  Accordingly, defendants'
2  motion to lift the stay of tours is DENIED.
3       IT IS SO ORDERED.
4  DATED: March 5, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE