1   DONALD SPECTER – 083925                 MICHAEL W. BIEN – 096891
    STEVEN FAMA – 099641                     ERNEST GALVAN – 196065
2   MARGOT MENDELSON – 268583                LISA ELLS – 243657
    PRISON LAW OFFICE                        JENNY S. YELIN – 273601
3   1917 Fifth Street                        THOMAS NOLAN – 169692
    Berkeley, California  94710-1916         MICHAEL S. NUNEZ – 280535
4   Telephone:   (510) 280-2621              MARC J. SHINN-KRANTZ – 312968
                                             ALEXANDER GOURSE – 321631
5   CLAUDIA CENTER – 158255                  ADRIENNE PON HARROLD – 326640
    DISABILITY RIGHTS EDUCATION              AMY XU – 330707
6   AND DEFENSE FUND, INC.                   ADRIENNE SPIEGEL – 330482
    Ed Roberts Campus                        BENJAMIN W. HOLSTON – 341439
7   3075 Adeline Street, Suite 210           MAYA E. CAMPBELL – 345180
    Berkeley, California  94703-2578         LUMA KHABBAZ – 351492
8   Telephone:   (510) 644-2555              JARED MILLER – 353641
                                             ROSEN BIEN
9                                            GALVAN & GRUNFELD LLP
                                             101 Mission Street, Sixth Floor
10                                           San Francisco, California  94105-1738
                                             Telephone:   (415) 433-6830
11  Attorneys for Plaintiffs

12

13                  UNITED STATES DISTRICT COURT

14                  EASTERN DISTRICT OF CALIFORNIA

15

16  RALPH COLEMAN, et al.,                   Case No. 2:90-CV-00520-KJM-DB

17           Plaintiffs,                     **PLAINTIFFS' RESPONSE TO
                                             DEFENDANTS' OPPOSITION TO
18      v.                                   THE SPECIAL MASTER'S REQUEST
                                             FOR ADDITIONAL STAFF AND
19  GAVIN NEWSOM, et al.,                    INCREASED COMPENSATION**

20           Defendants.                     Judge:   Hon. Kimberly J. Mueller

21

22

23

24

25

26

27

28
    [4454086.1]

1

# TABLE OF CONTENTS

**Page**

2

3    INTRODUCTION ................................................................................................ 1

4    I.    THE SPECIAL MASTER'S REQUEST FOR ADDITIONAL STAFF AND
          COMPENSATION IS REASONABLE AND APPROPRIATE ............................... 2

5

6          A.    The Special Master's Request Has Sufficiently Justified Hiring Two
                Additional Team Members ................................................................... 2

7          B.    The Court Should Grant the Special Master's Rate Increase Request ............ 7

8          C.    Defendants' Request for Limitations on the Special Mastership Must
                Be Rejected ...................................................................................... 8

9

    CONCLUSION .................................................................................................... 8

10

    CERTIFICATION ................................................................................................ 9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[4454086.1]

i

PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO THE SPECIAL MASTER'S REQUEST FOR
ADDITIONAL STAFF AND INCREASED COMPENSATION

**INTRODUCTION**

On February 15, 2024, the Special Master requested the appointment of six additional staff members—three clinical experts, two monitors, and a paralegal—in part to help replace three monitors and one clinical expert who either have retired or are on medical leave. *See* Special Master's Request for Appointment of Additional Staff and for Compensation, ECF No. 8130 at 1-13.[1] He also requested that the Court increase compensation rates for his team, given the lack of any adjustment in compensation for the Special Master, Deputy Special Master, and experts in nearly 19 years, and the lack of any adjustment for monitors' pay in more than 13 years. *Id.* at 13-17.

In opposing the Special Master's request, Defendants do not contest the Special Master's core contentions: (1) that the Special Master team's responsibilities have expanded in recent years, such that his request for a net of two additional staff members to help handle that increased workload is eminently reasonable, *see* Defendants' Response to the Special Master's Request for Additional Staff and Increased Compensation, ECF No. 8138 at 8 ("Defendants do not dispute the Special Master's characterization of his team's workload."); and (2) that the rates paid to his team have not been increased a single time in more than a decade, leaving his team's compensation rates out of step with rates in other jurisdictions across the country, *see* ECF No. 8130 at 14-16, as well as the rate of inflation. *See* United States Inflation Calculator, *available at* https://www.usinflationcalculator.com/ (last visited Mar. 13, 2024) (calculating the cumulative rate of inflation since 2005, when the pay of the Special Master and his experts was last changed, as 58.9%); *see also* ECF No. 8130 at 17 n.17 (describing adjusted compensation rates for the Special Master's team if they had kept pace with inflation).

Instead, Defendants boldly assert that they have made "substantial progress toward a sustainable remedy," seemingly ignoring the fact that they are imminently facing nearly $95 million in contempt fines for their failure to staff their outpatient programs, as well as

---

[1] Page citations to documents in the docket are based on ECF pagination.

[4454086.1]

1

PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO THE SPECIAL MASTER'S REQUEST FOR ADDITIONAL STAFF AND INCREASED COMPENSATION

possible upcoming contempt proceedings concerning their psychiatric inpatient program (PIP) staffing and suicide prevention practices.  *See* ECF Nos. 8147, 8009, 7743. Defendants also complain about the Special Master's lack of "efficiency" and seek court orders to impose specific limits on the Special Master that are inappropriate for this filing and inapplicable to the request that is before the Court.  While the Special Master should be open to reasonable suggestions about how to make the work of his team more efficient and effective, these should be raised informally with him in the first instance.

Because Defendants have failed to rebut the factual bases for the Special Master's requests, their opposition is unavailing.  This Court should approve the requests for both additional staff and rate increases, consistent with the Order of Reference's mandate that the Special Master be authorized to hire staff he "deems necessary to the effective fulfillment of his duties," subject to court approval.  ECF No. 640 ¶ B.7.

## I.    THE SPECIAL MASTER'S REQUEST FOR ADDITIONAL STAFF AND COMPENSATION IS REASONABLE AND APPROPRIATE

### A.    The Special Master's Request Has Sufficiently Justified Hiring Two Additional Team Members

In his filing, the Special Master lists the many duties that fall upon him and his team:  (1) monitoring compliance with the Program Guide in CDCR institutions, which include dozens of multi-day, on-site monitoring tours per year; (2) monitoring the work of CDCR mental health headquarters; (3) monitoring CDCR's implementation of his team's suicide-prevention measures; (4) regularly coordinating with the *Armstrong* Court Expert and the *Plata* receiver; (5) monitoring the treatment provided to class members in Department of State Hospitals and CDCR psychiatric inpatient facilities; (6) supervising the remediation of CDCR's mental health data systems; (7) overseeing implementation of an appropriate tele-mental health and telepsychiatry program; (8) supervising longstanding efforts to solve CDCR's staffing issues; (9) overseeing implementation of an appropriate Personality Disorder program; and (10) reviewing proposed revisions to regulations and polices connected to the delivery of mental health services, among other duties.  ECF No. 8130 at 4-5.  As noted by the Special Master—and not refuted by Defendants—more than

1  a third of the substantive reports that he has filed since 2007 have been filed in the last

2  three years alone, reflecting a clear and marked increase in both the Special Master team's

3  writing responsibilities and his overall monitoring workload.  *Id.* at 5.  Given that the

4  Special Master has capably managed his team to fulfill these many duties, it is certainly

5  reasonable for him to assert that adding a net of two individuals to his team will help

6  enhance his team's ability to continue to fulfill its obligations.  Deciding otherwise would

7  run the risk of impairing the Special Master's ability to properly monitor Defendants'

8  provision of mental health care.

9        Notably, Defendants "do not dispute the Special Master's characterization of his

10  team's workload."  ECF No. 8138 at 8.  Instead, their opposition to the Special Master's

11  request is based largely on the fact that the amount of fees paid to the Special Master has

12  grown since 2020.  *See id.* at 4-8, 14-15.  They argue that the recent growth in fees paid to

13  the Special Master is "indicative of a continuous expansion that ignores the direction of the

14  case and Defendants' substantial progress toward a sustainable remedy." *Id.* at 4.

15        But Defendants' statement about their "progress toward a sustainable remedy" flies

16  in the face of the factual and historical record of this case.  Defendants' opposition comes

17  on the heels of the Special Master's most recent monitoring report regarding Defendants'

18  EOP programs, in which he wrote that his findings "paint a bleak picture of defendants'

19  progress toward a durable remedy, driven in large part by the reverberating impact of the

20  ongoing mental health staffing crisis" at CDCR.  Special Master's Thirtieth Round

21  Monitoring Report – Part C, ECF No. 8095 at 11.  Defendants' opposition was also filed

22  just before the publication of the Special Master's expert's sixth re-audit of CDCR's

23  suicide prevention practices, in which that expert determined that Defendants had fully

24  implemented only *one* of the fifteen remaining suicide prevention recommendations, and

25  had actually *regressed* in several of the recommended suicide prevention practices.  *See*

26  ECF No. 8143 at 8.  As was the case with the issue of staffing in Defendants' outpatient

27  programs—where this Court recently made a tentative finding that Defendants are in

28  contempt of court, *see* Mar. 8, 2024 Order, ECF No. 8147 at 2, 6—the suicide prevention

1  deficiencies will be set for an enforcement hearing in the coming months.  *See id.* at 8.

2  Defendants' opposition also comes in the midst of Defendants' continued failure to

3  sufficiently staff their psychiatric inpatient programs, which the Court has signaled may

4  necessitate contempt proceedings if Defendants do not come into complete compliance by

5  April 2024. [2]  *See* ECF No. 8009 at 3.

6          Defendants' citation to the total amount of fees paid to the Special Master is also

7  irrelevant, without the context of *why* that money has been paid.  Defendants' chart

8  displaying the growth in the money paid to the Special Master team over time—revealing

9  an average of expenditure of $9.6 Million between 2020-2023, compared to an average of

10 $4.4 Million during the preceding 13 years, *see* ECF No. 8138 at 7-8—simply ignores

11 several principal drivers of these fees:  the COVID-19 pandemic; CDCR's continuing

12 inability to staff its inpatient and outpatient programs, implement long-required suicide

13 prevention measures, and deliver minimally adequate mental health care, *see, e.g.*, ECF

14 Nos. 8009, 8095, 8143; and the creation of the court-ordered data remediation process,

15 "one of the most complex and challenging projects the mastership has undertaken in the

16 long history of this case," ECF No. 8130 at 6 (quoting ECF No. 7863 at 7).

17         The recent increase in yearly fees coincided with the onset of the pandemic, an

18 unprecedented event that left the Special Master with a host of new and complex

19 responsibilities, including convening and overseeing a special weekly task force to address

20 the acute needs of class members at risk of serious illness or death, as well as participating

21 in other regular, issue-specific workgroups over the course of 2020 and 2021.  *See*

22 Transcript of March 20, 2020 Status Conference, ECF No. 6636 at 25-26; May 8, 2020

23 Order, ECF No. 6661 at 10.

24         The Special Master's pandemic-related work was on top of his regular monitoring

25 efforts, which also increased in recent years due to Defendants' continued non-compliance

26

27 _____

28 [2] As of January 2024, Defendants were not close to being in compliance with the required maximum ten percent vacancy rate for PIP staffing.  ECF No. 8142 at Ex. B.

[4454086.1]

PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO THE SPECIAL MASTER'S REQUEST FOR
ADDITIONAL STAFF AND INCREASED COMPENSATION

1   with court orders.  *See, e.g.*, ECF No. 8143 at 2-8 (Special Master's suicide prevention

2   expert has conducted audits and made unfulfilled recommendations for nearly ten years);

3   ECF Nos. 8095, 8085, 7833 (Special Master's Thirtieth Round Monitoring Report Parts A,

4   B and C, describing the many challenges in Defendants' PIP, DSH inpatient mental health

5   care, and EOP programs).  And the data remediation project has engaged the Special

6   Master team for several years now, requiring many hours of meetings per week and the

7   regular required involvement of many subject matter experts, a Deputy Special Master, and

8   several monitors, in addition to the data remediation expert.  *See* Special Master's Proposal

9   for Additional Staff, ECF No. 6461 at 3-4; ECF No. 7863 at 7-8 (noting the unanticipated

10  need for "hundreds" of meetings with Defendants and their representatives "in furtherance

11  of the data remediation project").  That process came as the direct result of Defendants'

12  "knowing presentation of misleading information to the court and the Special Master"—

13  actions that led the Court to order the Special Master to begin monitoring CDCR head-

14  quarters and to begin oversight of CDCR's mental health data systems.  Dec. 17, 2019

15  Order, ECF No. 6427 at 46; *see also* Dec. 23, 2019 Order, ECF No. 6435 at 4.

16          Defendants claim that the ongoing data remediation project cannot justify additions

17  to the Special Master's staff because it is set to be completed by March 31, 2024.  ECF No.

18  8138 at 10.  But this contention flies in the face of representations repeatedly made by

19  Defendants, who previously stated that "there is little likelihood that the project can be

20  completed, substantially or otherwise, by [this] deadline."  ECF No. 8065 at 5-6.  They

21  also argued that the project was so far behind schedule that no deadline should be set and

22  CDCR should be allowed to file quarterly status reports instead.  *Id.* at 6-7.  As expected,

23  the Special Master recently informed the Court that the parties will not meet that March 31

24  deadline, and the matter is now set for a status conference on March 28, 2024.  *See*

25  March 12, 2024 Minute Order, ECF No. 8152.  The ongoing work on the data remediation

26  process will continue to pull resources away from the Special Master team's other duties,

27  particularly given the "vast scope and myriad steps" involved in ensuring that Defendants'

28  data is accurate.  ECF No. 8065 at 6.

1    Defendants' own recent staff increases further support the contention that the

2   Special Master's workload has increased in recent years, belying Defendants' claims of

3   inefficiency.  As the Special Master noted—and Defendants do not refute or explain—

4   "CDCR recently received authorization to add six new attorney positions and eight

5   administrative support positions to bolster the Office of Legal Affairs (OLA)'s class action

6   division," ECF No. 8130 at 5 n.7, a CDCR budget request justified in part by the fact that

7   the "*Coleman* case has … seen a marked uptick in litigation over the past four years."

8   *State of California Budget Change Proposal 5225-081-BCP-2022-GB*, at 7 (Jan. 10,

9   2022), *available at*

10  https://esd.dof.ca.gov/Documents/bcp/2223/FY2223_ORG5225_BCP5062.pdf (last visited

11  Mar. 13, 2024).  Likewise, in July 2020, Defendants hired Hanson Bridget LLP to bolster

12  its legal team, *see* ECF No. 6775, and those lawyers have been actively involved in

13  supplementing the work of CDCR and the Office of the Attorney General since their

14  retention.  This Court has noted that Defendants have chosen repeatedly to engage in a

15  "scorched-earth litigation strategy," Jan. 6, 2023 Order, ECF No. 7699 at 3, where

16  "litigation once again has trumped substantive compliance," ECF No. 6427 at 45-46—a

17  strategy that has, unfortunately, necessitated more work from all stakeholders, including

18  the Special Master and his team.  *See* ECF No. 8130 at 5 (noting that the 8,100 docket

19  entries "speaks to the litigiousness of the case, which clearly has an impact on the volume

20  of work required at any given time").

21    In sum, the argument that the Special Master team's inefficiency is to blame for the

22  recent increase in fees is not supported by the record.  Defendants have failed to show that

23  the Special Master's request for two additional staff members is unreasonable.  Given that

24  Defendants also admit that they have no objections to the qualifications of the proposed

25  individuals, *see* ECF No. 8138 at 9 n.6, Defendants have not made the requisite showing to

26  demonstrate that the Special Master's request is inappropriate—especially since the Order

27  of Reference gives substantial deference to the Special Master's judgment about what staff

28  he requires to perform his duties.  ECF No. 640 ¶ B.7.  This Court should reject their

1   opposition and permit the addition of the named individuals in the Special Master's filing.

2       **B.**    **The Court Should Grant the Special Master's Rate Increase Request**

3         In requesting a pay raise for the first time in 13 years (for monitors) and 19 years

4   (for the Special Master and experts), respectively, the Special Master writes that the hourly

5   rates paid to his staff "have fallen deeply out of step with expert and monitor compensation

6   rates in similar cases both nationally and in California." ECF No. 8130 at 14. The Special

7   Master is tasked with ensuring that individuals with adequate credentials and experience

8   are providing him with assistance and expertise. *See* Order of Reference, ECF No. 640

9   ¶ B.7 (granting the Special Master the power "to retain or employ independent experts,

10  specialists, assistants, administrative support staff or any other such person whose advice

11  or assistance the special master deems necessary to the effective fulfillment of his duties").

12  It follows that, unless he is able to provide competitive pay, he is unlikely to be able to

13  recruit and retain the necessary staff. And when rates have not been raised to keep up with

14  the pace of inflation or the rates of staff in similar cases, those rates necessarily will not be

15  competitive.

16        Defendants do not dispute that the Special Master's team has not had a pay raise in

17  over a decade, nor do they seriously contest the idea that compensation rates that have not

18  been raised in that long would cease to be competitive. Defendants also do not dispute that

19  they pay many of their own retained subject matter experts at much higher hourly rates for

20  their work on *Coleman*—evidence that the Special Master's experts' compensation is, in

21  fact, lower than market rate. Instead, Defendants attack the Special Master's comparison

22  to the higher hourly rates paid to the court experts in *Armstrong v. Newsom* by way of their

23  own inapt comparison to the totals billed by the *Coleman* Special Master and the

24  *Armstrong* Court Expert. ECF No. 8138 at 13-14. The <u>total</u> amount of fees paid in both

25  cases is irrelevant because the *Armstrong* experts' monitoring duties are very limited

26  compared to the extensive duties of the Special Master in *Coleman*. *See Armstrong v.*

27  *Newsom*, No. 4:94-cv-02307 (N.D. Cal.), ECF No. 1121 at 2 (June 11, 2007) (order

28  appointing court expert and limiting his duties to "assisting the Court and parties in

[4454086.1]

7

PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO THE SPECIAL MASTER'S REQUEST FOR
ADDITIONAL STAFF AND INCREASED COMPENSATION

facilitating coordination of enforcement of [certain *Armstrong* injunctions] with the remedial processes in the other class actions").  On the other hand, it is certainly relevant that the *Armstrong* court experts and plaintiffs' counsel are paid an <u>hourly rate</u> that is much higher than both the Special Master team and his subject matter experts in this case, because that comparison shows how *Coleman* Special Master team members are comparatively underpaid.  ECF 8138 at 13-14.

As with the request for additional staff members, Defendants simply point to no reason why the Special Master's request for increased compensation rates is unwarranted or unreasonable.  Having failed to do that, this Court should accept the Special Master's request.

**C.    Defendants' Request for Limitations on the Special Mastership Must Be Rejected**

Defendants' request that the Court impose constraints—supposedly recommended by the United States Department of Justice—on the Special Master should be rejected.  Specifically, Defendants state that "[t]he Court should also require the Special Master to develop a plan to streamline his team and establish the safeguards identified in the DOJ memo including setting forth short-term and long-term timelines for compliance."  ECF No. 8138 at 15.  The Special Master should welcome any reasonable suggestions from the parties to make the work of his team more effective and efficient.  But these suggestions should be brought to the Special Master informally for his consideration and not to this Court in the first instance.  In any case, Defendants' request is exactly the kind of "suggestion for court action presented under the guise of status reports and other documents" that the Court has disapproved of and prohibited.  Dec. 24, 2020 Order, ECF No. 7003 at 1.

**CONCLUSION**

For the reasons discussed above, the Court should overrule Defendants' objections.  The goal of this Court and the Special Master has always been to "transition … into self-monitoring and … eventual removal of federal court oversight."  May 24, 2023 Order,

[4454086.1]

8

1    ECF No. 7847 at 5 (quoting ECF No. 4205 at 65) (emphasis removed).  But Defendants

2    are far from achieving that benchmark, and helping them get there requires substantial

3    work from all stakeholders, including the Special Master.  At this stage of the litigation, it

4    would be counterproductive to hamstring the Special Master by denying this request.

5    Because Defendants have failed to show that the Special Master's requested staff and rate

6    increases are unreasonable, Plaintiffs urge the Court to approve the Special Master's

7    requests to add the six named individuals to his staff and to increase compensation to his

8    team for the first time in over a decade.

10    DATED:  March 13, 2024                Respectfully submitted,

11                                          ROSEN BIEN GALVAN & GRUNFELD LLP

12                                          By:  /s/ Jared Miller

13                                               Jared Miller

14                                          Attorneys for Plaintiffs

17                          **CERTIFICATION**

18          Plaintiffs' counsel certifies that he reviewed the following orders in preparing this

19    filing: ECF Nos. 640, 4205, 6427, 6435, 6661, 7003, 7699, 7743, 7847, 8009, 8147, 8152.

21    DATED:  March 13, 2024                ROSEN BIEN GALVAN & GRUNFELD LLP

22                                          By:  /s/ Jared Miller

23                                               Jared Miller

24                                          Attorneys for Plaintiffs

[4454086.1]

9

PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO THE SPECIAL MASTER'S REQUEST FOR
ADDITIONAL STAFF AND INCREASED COMPENSATION