Exhibit B

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                      GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



March 14, 2024

Paul Mello
Hanson Bridgett
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached please find the California Department of Corrections and Rehabilitation's March 2024 quarterly Status Update for the Three-Judge Court proceeding.

Sincerely,

*Jennifer Neill*

Jennifer Neill
General Counsel
Office of Legal Affairs
California Department of Corrections and Rehabilitation

cc: Corinna Albiter, Deputy Attorney General

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATIONGAVIN NEWSOM, GOVERNOR



### March 15, 2024 Quarterly Update to the Three-Judge Court

On February 10, 2014, the Three-Judge Court ordered CDCR to reduce the in-state adult prison population to 137.5 percent of design capacity by February 28, 2016. (ECF Nos. 2766/5060 & 2767/5061.) Defendants first informed the Court that its population was below 137.5 percent of design capacity on February 17, 2015 (ECF No. 2838/5278). Since then, Defendants have submitted 89 reports. Defendants have complied with the population cap for nine years. On March 25, 2022, the Court granted Defendants' unopposed motion to reduce the frequency of these reports from monthly to quarterly. (ECF No. 3795/7515.) As a result, reports are filed on the 15th of March, June, September, and December of each year, until further order of the Court.

CDCR's institutional design capacity is 75,530 as of March 13, 2024.[1]

As of March 13, 2024, the State's adult institutional population is 90,331, occupying 119.6 percent of design capacity. (*See* Exhibit A at 1, attached.) Below are updates regarding Defendants' population reduction efforts and evidence of durable compliance with the 137.5 percent benchmark.

**A. Update on Proposition 57 Measures:**

Proposition 57, passed in November 2016, is the State's durable remedy that enacts many Court-ordered reforms, expands credit-earning opportunities, and creates a parole consideration process for nonviolent incarcerated persons who have served the full term of their primary offense in state prison. Information about these regulations can be found at https://www.cdcr.ca.gov/proposition57/. Details regarding measures CDCR implemented can be found in previously-filed monthly status reports. (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).) Updated statistics showing the impact of these regulations are included below.

1. Increased credit-earning opportunities for all incarcerated persons except the condemned and those serving life without parole sentences:

    4,229 incarcerated persons released between December 1, 2023, and February 29, 2024, earned an estimated average of 304.4 days of additional credit towards their advanced release date. This does not include incarcerated persons released from fire camps.

---

[1] *Id.*, *Weekly Report of Population* (Mar. 13, 2024), https://www.cdcr.ca.gov/research/2023-weekly-total-population-reports-tpop1-archive/. CDCR's institutional design capacity will not be impacted by the termination of its contract with California City Correctional Facility because it is an In-State Contract facility and was never assigned a design capacity on CDCR's total population reports. As of October 31, 2023, the population of California City Correctional Facility was zero.

2. <u>Determinately-sentenced nonviolent offender parole process</u>:

   Between July 1, 2017, and February 29, 2024, CDCR has made 37,649 referrals to the Board for this parole process. The Board has reviewed 33,791 of these referrals on the merits, approving 4,822 incarcerated persons for release and denying 28,969. 3,516 referrals have been closed because the Board's jurisdictional review of the incarcerated persons' criminal history and central file revealed they were not eligible for parole consideration. The remaining referrals are pending review, including those within the 30-day period for written input from incarcerated persons, victims, and prosecutors.

3. <u>Indeterminately-sentenced nonviolent offender parole process</u>:

   Since January 2019, when CDCR began screening indeterminately-sentenced, nonviolent offenders for eligibility, CDCR has referred 3,044 incarcerated persons to the Board for a parole consideration hearing. As of February 29, 2024, 123 of these referrals were closed because the Board's jurisdictional review of criminal histories and central files revealed those incarcerated persons were not eligible for parole consideration. The Board has conducted 3,093 hearings for indeterminately sentenced nonviolent offenders resulting in 821 grants, 1,962 denials, and 310 stipulations to unsuitability. An additional 2,787 hearings were scheduled, but postponed, waived, continued, or canceled. The remaining referrals are pending parole suitability hearings.

B. **Updates on Other Population Reduction Measures:**

1. <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds</u>:

   a. The population of California City Correctional Facility, California's only private prison, is zero incarcerated persons as of October 31, 2023.[2]

   b. The State currently has no contracted-for beds in community correctional facilities (CCFs), modified community correctional facilities (MCCFs), or Female Community Reentry Facilities (FCRFs). Seven incarcerated people are housed at the Community Prisoner Mother Program as of March 13, 2024. (*See* Exhibit A at 2.)

   c. California no longer houses incarcerated persons out of state.[3] The last incarcerated persons in out-of-state contract beds returned to California in June 2019.

---

[2] On December 6, 2022, CDCR announced that it will not renew its lease with CoreCivic for the California City Correctional Facility. The contract will terminate in March 2024. As a result, this facility will no longer be used as a state prison. Cal. Dep't Corr. & Rehabilitation, *California Department of Corrections and Rehabilitation Announces the Planned Closure of Chuckawalla Valley State Prison* (Dec. 6, 2022), https://www.cdcr.ca.gov/news/2022/12/06/california-department-of-corrections-and-rehabilitation-announces-the-planned-closure-of-chuckawalla-valley-state-prison/.

[3] This statistic excludes incarcerated persons housed in other states under interstate compact agreements.

2. <u>Expanded medical parole process for medically incapacitated incarcerated persons:</u>

    The Board conducts expanded medical parole hearings for incarcerated persons referred to the Board by the head physician at their institutions. The Board's medical parole hearing decision approving an incarcerated person for placement in a skilled nursing facility is forwarded to the California Correctional Health Care Services (CCHCS) and Receiver's Office, which place the incarcerated person in a community facility that will accept the person and enforce any restrictions imposed by the Board. If CCHCS is unable to place the incarcerated person within 120 days of the decision, the decision expires and the person remains in CDCR custody. Between July 1, 2014, and March 9, 2024, the Board has held 383 medical parole hearings, resulting in 261 approvals and 122 denials. An additional 96 hearings were scheduled, but postponed, continued, or canceled.

3. <u>Parole process for elderly incarcerated persons:</u>

    Under Penal Code section 3055, incarcerated persons aged 50 and above who serve at least 20 years of continuous incarceration qualify for elderly parole consideration. Certain persons sentenced under strike-sentencing laws (Penal Code sections 667(b)-(i) or 1170.12) or convicted of first-degree murder of a peace officer are excluded from the statutory scheme, but are eligible for elderly parole consideration as set forth in the February 10, 2014 order, which covers incarcerated persons aged 60 and above who serve at least 25 years of continuous incarceration. Previous status reports further detail these parole processes. (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).)

    Between February 11, 2014, and February 29, 2024, the Board has held 10,721 hearings for eligible incarcerated persons, resulting in 3,074 grants, 6,644 denials, 1,002 stipulations to unsuitability, and one tie vote. The Board scheduled 6,577 additional hearings that were waived, postponed, continued, or canceled.

4. <u>Male community reentry programs:</u>

    The State continues to refer eligible incarcerated persons for possible placement in Male Community Reentry Programs (MCRPs). As of March 13, 2024, 604 incarcerated persons are housed in MCRP facilities the State contracts within San Diego, Los Angeles, Kern, and Butte counties.

5. <u>Expanded alternative custody program:</u>
    The Custody to Community Treatment Reentry Program (CCTRP), the State's expanded alternative custody program for female incarcerated persons, provides a range of rehabilitative services that assist with substance use recovery, employment, education, housing, family reunification, and social support. As of March 13, 2024, 374 females are participating in the CCTRP, and are housed at facilities in San Diego, Santa Fe Springs, Bakersfield, Stockton, Sacramento, and Los Angeles.

6. <u>Incarcerated Persons Released Under Proposition 36</u>
   Proposition 36, passed in November 2012, revised the State's three-strikes law to permit resentencing for qualifying incarcerated persons whose third strike was not serious or violent.  As of February 29, 2024, approximately 2,255[4] persons have been released under this measure.

7. <u>Incarcerated Persons Released Under Proposition 47</u>
   Proposition 47, passed on November 4, 2014, requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits incarcerated persons previously sentenced for these reclassified crimes to petition for resentencing.  As of February 29, 2024, approximately 4,761 persons have been released under this measure.

8. <u>Compassionate Release</u>
   Assembly Bill 960, approved in September 2022, amends Penal Code sections 1170 and 1170.02, and adds section 1172.2 to the Penal Code to change the criteria for compassionate release of eligible incarcerated persons.  These provisions require CDCR to recommend to the court that an incarcerated person's sentence be recalled if that person is permanently medically incapacitated or has a serious and advanced illness with an end-of-life trajectory.  These changes took effect on January 1, 2023 and can be reviewed at https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=202120220AB960&showamends=false.

   Since January 1, 2023, the Department has submitted 185 recommendations for recall to the court under Penal Code section 1172.2, and 77 recall and resentencing applications were granted.[5]  Twelve recommendations are pending court hearings to consider whether the incarcerated person's sentence should be recalled.

---

[4] This number excludes inmates who were eligible for Proposition 36 resentencing but released in other ways (e.g. Proposition 47 resentencing or nonviolent parole process).

[5] Of the 77 applications granted, nine applications were initiated prior to January 1, 2023.