# APPENDIX A

| **VOLUME 12:**<br>MENTAL HEALTH SERVICES | Effective Date: | |
|---|---|---|
| **CHAPTER 8:** | Revision Date(s): | |
| | Supersedes: | |
| **12.08.100**<br>TELEMENTAL HEALTH PROGRAM | Attachments: | Yes   No ☒ |
| | Director Approval: | *Amar Mehra, M.D.* |

**Purpose**

This policy ensures services provided by the Telemental Health Program (also referred to as telemental health) comply with the California Department of Correction and Rehabilitation (CDCR) Mental Health Services Delivery System (MHSDS) Program Guidelines and relevant *Coleman* related court orders. Telemental health providers shall conduct care consistent with CDCR rules, regulations, policies, and Local Operating Procedures (LOP) of the institution(s) to which they provide services. These services shall also comply with existing federal and state statutes that guide the provision of telehealth services.

**Policy**

Telemental health enables Licensed Psychologists and Licensed Clinical Social Workers (LCSWs) to provide real-time evaluations and treatment to patients by utilizing videoconferencing to facilitate live communication between the psychologist, LCSW, patient, and the patient's treatment team. Telemental health can be a safe and efficient vehicle to increase access to mental health services for many CDCR patients.

Telemental health provides a supplement to onsite providers of mental health services at the Correctional Clinical Case Management System (CCCMS) and Enhanced Outpatient (EOP) levels of care and may, under specified emergent circumstances outlined in this policy and procedure, be utilized for higher levels of mental health care. On-site psychologists and LCSWs shall remain the preferred method of care within the MHSDS, especially in the Mental Health Crisis Bed (MHCB) and Psychiatric Inpatient Program (PIP) programs. Telepsychologists and telesocial workers will work from within the State of California, be supervised by civil service telepsychology and telesocial work supervisors and will be assigned to caseloads at the institution(s) they serve. As appropriate, some telepsychologists and telesocial workers may be split between hybrid allocations (part-time onsite and part-time off-site via telemental health) or may not be assigned to caseloads and may instead provide focused services such as assisting the Crisis Intervention Team, under specified emergency circumstance, or short-term coverage during times when the assigned on-site psychologist or telepsychologist or on-site social worker or telesocial worker is unavailable to provide treatment to their assigned caseload. Telepsychologists and telesocial workers shall not utilize the telemental health modality to provide or conduct group treatment.

**Equipment**

Telemental health providers shall work in CDCR hubs or in home offices that meet the following requirements.

The telemental health provider shall be given the following equipment and resources:

1. Computer, monitor, speaker, microphone, camera, and state cell phone.
2. Computer access to all resources, or equivalent resources utilized by their on-site counterparts, including the Electronic Health Records System.
3. When working from a CDCR hub, internet access of sufficient speed and stability to allow a videoconference where the patient and telemental health services provider can be seen and heard clearly. Telemental health providers working from home must provide the same standard of internet access.

Telemental health providers working from home must provide a confidential space with their own office furniture. Telemental health providers will also have access to office space at a CDCR-operated hub should they prefer or need to work from the office. Each hub office will be a single, enclosed, and confidential space with a door, desk, and chair, as well as a full technological set-up. This office space will be sound-proofed, where possible.

Telemental health providers must onboard and begin their clinical assignments while working from the CDCR-operated hub. Prior to transitioning to work from home, telemental health providers must demonstrate appropriate use of the technology and workflow, adequate integration with their onsite team(s), and reliability and responsivity while working in the hub.

Only once the telemental health supervisors, with input from local on-site supervisors, are fully satisfied with both the provider's performance while working in the hub and ability to function effectively from home will the transition be allowed.

Work from home is allowed only for civil service telemental health providers. It is not an available assignment for registry telemental health providers.

**Physical Environment**

The patient's interview room and environment shall allow for both the telemental health provider and the patient to be seen and heard clearly by each other. The patient's and telemental health provider's cameras shall be positioned to allow their faces to be clearly visible to each other. The telemental health provider shall also be able to clearly see the patient's body to assess for any signs of movement that may be clinically relevant. When indicated, the telemental health provider can request assistance from the telepresenter, who shall receive appropriate training on how to assess for relevant physical signs (e.g., tremors). The telemental health administration and the institution receiving services shall ensure others are not able to enter the telemental health provider's or patient's rooms accidently or overhear conversations from inside or outside the rooms. Telemental health providers working from home must ensure this level of privacy and confidentiality in their home offices.

Seating and lighting should be adjusted to provide the clearest video and audio transmission, as well as to ensure the safety of the participants. Rooms for the telemental health provider and the patient shall be appropriately sound-proofed, when possible, or alternative mechanisms shall be utilized (for example, sound-cancelling devices) to ensure privacy. When possible, the telepresenter should be seated closest to the door.

**Professional and Patient Identity and Informed Consent**

At the beginning of an initial appointment with a patient, the telemental health provider shall

introduce themself and verify the patient's identity verbally and/or by having the patient show their CDCR-issued photo identification card on the video screen. At the beginning of the patient's first telemental health contact, the telemental health provider shall obtain written and oral informed consent for the use of telemental health.

Informed consent must include the following:

1. the benefits and risks of telemental health, especially as related to confidentiality and privacy,
2. the benefits and risks of in-person mental health services, especially as related to confidentiality and privacy,
3. the role of the telepresenter,
4. the incarcerated person's option to not have the telepresenter in the room during the therapy session, confirmed at each appointment,
5. the informed consent process should also make clear that participation in telemental health is voluntary and consent may be revoked at any time, and
6. the informed consent process should include other options available for mental health services (i.e., treatment by an on-site clinician) if the patient declines to consent (e.g., potentially delayed services depending on staffing vacancies).
7. The actions to be taken if a clinical emergency arises shall be discussed with the patient during the initial telemental health appointment. If a clinical emergency arises during a telemental health session (for example, a suicidal, violent, or homicidal patient), the telemental health provider shall immediately notify the appropriate institution staff, as identified by the institution's LOP. The telemental health provider shall coordinate with institutional mental health leadership and follow local institutional protocol for managing such emergencies. This may include, but is not limited to, coordinating arrangements for the patient to be seen by an on-site psychologist or LCSW, arrangements for safe holding, transport to an emergency triage area, communication with local emergency team members, and placing emergency orders as needed.

**Participation in Interdisciplinary Treatment Teams, Meetings, and Huddles**

Telemental health providers must participate in the receiving institution's Interdisciplinary Treatment Teams (IDTT) meetings as required by their assigned clinical duties.  To facilitate their participation, IDTT meetings that include a telemental health provider shall be held in a location with videoconference capabilities that allow for the telemental health provider's full participation when their patients are being reviewed. At least one of an EOP patient's assigned psychiatrist or assigned primary mental health clinician must attend the IDTT in person unless the EOP supervising psychologist is in attendance on-site.

In addition to IDTT meetings, telemental health providers shall participate to the same extent as on-site primary clinicians in all meetings and huddles relevant to the clinical care of their assigned patients.

**Refusals**

Patient refusals of individual telemental health clinical encounters or IDTT meetings shall be handled in accordance with current policies and procedures for patient refusals at each level of care (see Memoranda "Mental Health Appointment Refusals" dated July 5, 2017 and "Clinical Contacts and Documentation" dated February 7, 2020).  Specifically, when a

patient receiving care at the CCCMS or EOP levels of care does not refuse a clinical encounter in person, the telemental health provider should go to the patient to encourage the patient to participate in a confidential contact, confirm the refusal, discuss the risks associated with refusing treatment, and discuss the reasons for the refusal.  If a visit with the patient by the telemental health provider is not feasible, the patient should be seen by an on-site mental health clinician, who will address the issues listed.  Any patient who reports refusing a clinical encounter due to the modality (i.e., use of telemental health) or who refuses two consecutive telemental health appointments, will be scheduled to be seen by an on-site clinician to determine the needs of the patient, including scheduling an IDTT to change treatment modalities.  All patients who refuse scheduled individual appointments shall be re-scheduled as soon as possible and within Program Guide timeframes. Non-confidential contacts for telemental health shall not be considered a Program Guide required clinical contact under any circumstances.

**Contraindications for Telemental Health**

Patients shall not be entirely excluded (e.g., see emergency exceptions in MHCB & PIP) from participation in telemental health services based solely on their level of care or diagnosis. Telemental health providers and supervisors should consider a patient's cognitive capacity, level of reality testing, history regarding cooperativeness with treatment, current and past difficulties with effective communication, and histories of violence or self-injurious behavior when considering the appropriate use of telemental health services. Telemental providers should also determine whether there are any aspects of care that would require an in-person examination of the patient on a regular basis. If the telepsychologist and Chief of Telepsychology, or telesocial worker and Supervising Social Worker II, determine that the patient needs to be seen by an on-site psychologist or on-site LCSW, they will work with mental health leadership at the institution (Chief and/or Senior Psychologist and Chief of Mental Health) to ensure the patient has an appropriate on-site psychologist and/or LCSW assigned. Similarly, if the treatment team determines that telemental health services are not appropriate for a patient, the team will work with mental health leadership to assign the patient to an on-site psychologist and/or LCSW.

A patient's participation in MH treatment must always be voluntary. As a result, tele MH is contraindicated for a patient who declines to participate in that modality but is otherwise amenable to engage in treatment.

**American with Disabilities Act (ADA)**

The use of telemental health will be consistent the *Armstrong* requirements for offering reasonable accommodations.

**Use of Force**

Telemental health services shall not be used to fulfill policy obligations related to use of force incidents (e.g., clinical intervention).

**Restricted Housing Unit**

Telemental health may be used in RHUs if the incarcerated person provides written informed consent. At least one FTE on-site clinician must be assigned to the RHU. The total number of such FTE clinicians assigned to the RHU should be based on the number of RHU beds in

a particular institution. Consistent with existing policy, an on-site RHU clinician is responsible for conducting cell-front contacts with patients who refuse more than 50% of their offered programming.  Cell-front telemental health contacts in RHU are not permitted.

**Telemental Health and Levels of Care**

**Correctional Clinical Case Management Services and Enhanced Outpatient Program**

Telemental health services may be utilized to supplement treatment for patients at the CCCMS and EOP levels of care provided all other conditions pertaining to the CCCMS and EOP levels of care contained within this policy are followed. There shall be a minimum of 20% of allocated provider positions for CCCMS and 40% of allocated provider positions for EOP filled by onsite clinicians present at the facility.

**Mental Health Crisis Bed**

Telemental health may not be used at the MHCB level of care except as a last resort in emergency situations when the assigned on-site psychologist and/or licensed clinical social worker (LCSW) is not available. It shall only be utilized for the shortest duration of time necessary. MHCB discharges shall only be determined by an on-site psychologist, psychiatrist, and/or LCSW except under emergencies circumstances as described above. If a telemental health provider is required to serve in an MHCB for greater than 14 consecutive calendar days, this would not be consistent with this policy's objective. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel. Within 16 calendar days from the provision of the notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how the staffing issue was resolved.

**Psychiatric Inpatient Program**

Telemental health may not be used at the PIP level of care except as a last resort in emergency situations when an on-site psychologist and/or LCSW is not available. PIP discharges shall only be determined by an on-site psychologist, psychiatrist, and/or LCSW. The use of telemental health in the PIP setting shall only be utilized for the shortest duration of time as necessary and with all policy requirements as above. If a telemental health provider is required to serve in a PIP for greater than 30 consecutive calendar days, this would be inconsistent with this policy's objective. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel. Within 30 calendar days from the provision of the notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how the staffing issue was resolved.

**Use of Telemental Health for Risk of Harm - Emergency/Crisis Services**

*Responding to Clinical Emergencies*

Consistent with the procedure below relating to "clinical emergency management," telemental health may not be used to respond to emergent/urgent mental health referrals or incidents involving danger to self/suicidality/self-harm, except as a last resort in emergency situations when the institution's assigned on-site crisis clinician (i.e., psychologist and/or licensed clinical social worker (LCSW) personnel) are not available. During normal business

hours, such incidents shall be responded to by an on-site psychologist or LCSW as part of the facility's crisis intervention team or assigned on-site crisis clinicians. Outside of normal business hours, current procedures remain in place.

A suicide risk assessment shall be completed by an on-site psychologist, LCSW, or psychiatrist for all referrals and/or incidents involving danger to self/suicidality/self-harm or other mental health emergencies according to existing policy requirements consistent with the above paragraph.

*Clinical Emergency Management*

If a clinical emergency arises during a scheduled telemental health session (for example, a suicidal, violent or homicidal patient), the telemental health provider shall immediately notify the appropriate institution staff as identified by the institution's LOP. The telemental health provider shall coordinate with institutional Mental Health Leadership and follow local institutional protocol for managing such emergencies. This may include, but is not limited to, arranging for the patient to be seen by an on-site psychiatrist, psychologist, and/or LCSW, arranging for safe holding, transport to an emergency triage area, communicating with local emergency team members, and placing emergency orders for medications, etc.

*Other Considerations*

Telemental health shall not be utilized for 5-day clinical follow ups except as a last resort in emergency situations when the institution's on-site are not available.

**Site Visits**

Telemental health providers are expected to establish and maintain relationships with members of their assigned on-site treatment team through regular communication, meetings/huddles, and by visiting institutions. Telemental health providers shall visit their assigned institution within 30 days of assignment and no less than semi-annually thereafter for CCCMS telemental health providers and every three months for EOP telemental health providers. The telemental health provider will spend at least one day during each site visit at the facility. During this visit, the telemental health provider shall participate in the IDTT, meet with necessary health care staff, attend staff meetings if applicable on that day, and see patients in person.

**Organizational Structure**

All telemental health staff shall report as appropriate within the Telemental Health Services Program supervisory chain.

**Workflow Interruptions**

In the event of technology or equipment failure, telemental health providers shall immediately notify their direct supervisor and mental health leadership at the institution (Chief and/or Senior Psychologist and Chief of Mental Health), as well as the Integrated Communications Technology Unit. The telemental health provider shall also make arrangements with institutional mental health leadership to ensure appropriate patient coverage based on patient need (for example, coverage by an on-site provider or rescheduling of appointments). Telemental health providers may also be redirected to

another telemental health assignment when this occurs.

If a telemental health provider has a sustained interruption in technology or significant equipment malfunction, or if there are supervisory concerns that interfere with their ability to see and treat patients, they may be required to report to an office space in the hub.

**On-Call or After-Hours Coverage by Telemental Health Providers**

Telemental health providers shall contribute to on-call or after-hours coverage as assigned, and their provision of services shall be in accordance with applicable California Correctional Health Care Services (CCHCS) Health Care Department Operations Manual (HCDOM) policies, statewide mental health policies, and applicable bargaining unit Memorandums of Understanding.

Telemental health providers are not required to travel to the institution where they are providing on-call or after-hours coverage. Therefore, institutions receiving on-call or after-hours coverage from the Telemental Health Program must provide a backup clinician whose obligation is to respond to the facility when indicated such as incidents of planned use of force. This backup clinician shall be within one hour of travel time to the facility in order to attend to incidents requiring an in-person presence if needed.

---

**Responsibilities**  The institution receiving telemental health shall be responsible for providing the following:

- Timely access for patients to the telemental health provider.
- A dedicated and appropriately clinically trained telepresenter who facilitates the patient encounter from the originating site to the telemental health provider and is responsible for providing clinical support and coordination. The telepresenter shall be required to introduce themselves to the patient and may remain in the room during the therapy session only if the patient has provided inform consent in this context. Under such circumstances, the telepresenter shall explain that they are subject to the same confidentiality requirements as the telemental health provider and other treatment providers.
- Responsibilities of the telepresenter include, but are not limited to, reviewing the patient health record prior to the appointment, facilitating the videoconferencing connection with the telemental health provider, assisting with on-site correspondence and care coordination, and remaining immediately available to the patient during the appointment.
- Telepresenters shall be assigned from, but not limited to, position classifications in the following order of priority: medical assistant, certified nursing assistant, psychiatric technician assistant, psychiatric technician, licensed vocational nurse, registered nurse, clinical nurse specialist, nurse practitioner, rec/rehab therapist, social worker, psychologist, psychiatrist, or other physicians. When the telepresenter is a nurse practitioner, social worker, psychologist or physician, the clinical contact shall be considered a joint appointment when consistent with the relevant policy. In emergency circumstances, other non-custody classifications, such as Dental Assistants or Office Technicians, may be used.
- An appropriately trained backup telepresenter when the primary telepresenter is on leave or unavailable.
- Availability of appropriate clinical staff.

- Support staff responsible for scheduling appointments and processing clinical paperwork, as appropriate.
- An institutional contact list of important names and numbers for the telemental health provider. This includes, but is not limited to, the following:

    1. Laboratory
    2. Pharmacy
    3. Nursing station(s)
    4. Housing unit(s)
    5. Custody Health Care Access Unit staff
    6. Primary Clinician(s)
    7. Medical Provider(s)
    8. Mental Health Supervisor(s)
    9. Chief of Mental Health
    10. IT Department
    11. Chief and Senior Psychologist
    12. Chief Psychiatrist or Senior Psychiatrist Supervisor
    13. Scheduler
    14. Medical Records Supervisor
    15. Watch Commander

- The contact information for telemental health providers assigned to the institution will be made available to relevant onsite staff, including but not limited to telepresenters, onsite leadership, nursing, laboratory, and pharmacy staff.
- A confidential treatment space to facilitate patient encounters. This space shall include all equipment needed to facilitate the telemental health encounter, including, but not limited to a computer, phone, scanner, printer, desk, and chair.
- Caseload assignments and scheduled appointments for the telemental health provider.
- Maintenance of teleconferencing connectivity between institutions and telemental health providers.
- Confirmation that telemental health providers are appropriately privileged to provide clinical services to any licensed or inpatient units, when applicable.
- Audit reports for local compliance indicators.
- Organized tours for the telemental health providers during their initial visits to the institution.
- On-site clinical contingency plans and patient prioritization strategies to manage absences of telemental health providers.
- An LOP for telemental health services that shall be submitted to the Chief of Telepsychology, or designee, and Supervising Social Worker II for review and approval prior to local distribution or implementation. Any revisions of the LOP for telemental health shall be reviewed and approved by the Chief of Telepsychology, or designee, and Supervising Social Worker II prior to implementation at the institution. The LOP must be reviewed annually.
- Routine system tests to ensure that telemental health equipment is safe, operational, and secure.

---

**Compliance Indicators**

To be in compliance with this policy, the following requirements shall be met jointly by the Telemental Health Program and the institution receiving services:

1. Telemental health providers are provided with the appropriate equipment and resources.
2. Telemental health providers participate in the same manner as on-site providers in the receiving institutions' IDTTs and all meetings and huddles relevant to the clinical care of their assigned patients.
3. On-site staff and members of the treatment team communicate with the telemental health providers regarding any important patient issues and concerns related to patient care.
4. Telemental health providers have access to all necessary clinical information via the patient's health record.
5. Telemental health providers communicate any important patient issues and concerns related to patient care to the on-site staff and members of the treatment team.
6. Telemental health providers complete all documentation in the health record by the close of each business day.
7. Telemental health provider and patient identity are verified at the beginning of a mental health treatment videoconference.
8. Telemental health providers visit their receiving institutions as directed by this policy.
9. Ongoing mandatory trainings are completed for all telemental health providers.
10. Telemental health providers are privileged at each licensed or inpatient unit they serve.

---

**References**

- CDCR Mental Health Services Delivery System Program Guide, 2021 Revision
- CCHCS Health Care Department Operations Manual
- Memorandum entitled "Mental Health Appointment Refusals" (July 5, 2017)
- Memorandum entitled "Clinical contacts and documentation" (February 7, 2020)

---

**Questions**

If you have any questions or need any additional information related to this policy, you may contact the policy unit via e-mail at: CDCR MHPolicyUnit@CDCR

# APPENDIX B

| **VOLUME 12:**<br>MENTAL HEALTH SERVICES | Effective Date: | |
|---|---|---|
| **CHAPTER 8:** | Revision<br>Date(s): | |
| | Supersedes: | |
| **12.08.100**<br>TELEMENTAL HEALTH PROGRAM | Attachments: | Yes    No ☒ |
| | Director<br>Approval: | *Amar Mehra, M.D.* |

---

**Purpose**

This policy ensures services provided by the Telemental Health Program (also referred to as telemental health) comply with the California Department of Correction and Rehabilitation (CDCR) Mental Health Services Delivery System (MHSDS) Program Guidelines and relevant *Coleman* related court orders. Telemental health providers shall conduct care consistent with CDCR rules, regulations, policies, and Local Operating Procedures (LOP) of the institution(s) to which they provide services. These services shall also comply~~This policy is intended to reflect best practices in a correctional setting (not constitutional requirements) and will be updated periodically to incorporate insights and lessons learned from experience, and to maintain consistency~~ with existing federal and state statutes that guide the provision of telehealth services. ~~evolving best practices and new advancements in care recommendations.~~

---

**Policy**

Telemental health enables Licensed Psychologists~~psychologists~~ and Licensed Clinical Social Workers (LCSWs~~CSW~~) to provide real-time evaluations and treatment to patients by utilizing videoconferencing to facilitate live communication between the psychologist, LCSW~~CSW~~, patient, and the patient's treatment team. Telemental health can be~~is designed to facilitate improved patient outcomes and thereby reduce the~~ need for hospitalization and emergency services. Telemental health is a safe and efficient vehicle to increase access to mental health services~~care~~ for many CDCR patients.

Telemental health provides a supplement to onsite providers of mental health services at~~to~~ the Correctional Clinical Case Management System (CCCMS) and Enhanced Outpatient (EOP) levels of care and may, under specified emergent circumstances outlined in this policy and procedure, be utilized for higher levels of mental health care. On-site psychologists and LCSWs~~CSWs~~ shall remain the preferred method of care within the MHSDS, especially in~~for~~ the Mental Health Crisis Bed (MHCB) and Psychiatric Inpatient Program (PIP) programs. Telepsychologists and telesocial workers will work from within the State of California, be supervised by civil service telepsychology and telesocial work supervisors and will be assigned to caseloads at the institution(s) they serve. As appropriate, some telepsychologists and telesocial workers may be split between hybrid~~half-time~~ allocations (part-time onsite and part-time off-site via telemental health) or may not be assigned to caseloads and may instead provide focused services such as assisting the Crisis Intervention Team, under specified emergency circumstance, or short-term coverage during times when the assigned on-site psychologist or telepsychologist or on-site social worker or telesocial worker is unavailable to provide treatment to their assigned caseload. Telepsychologists and telesocial workers shall not utilize the telemental health modality to provide or conduct group treatment.

## Equipment

Telemental health providers shall work in CDCR hubs or in home offices that meet the following requirements.

The telemental health provider shall be given the following equipment and resources:

1. Computer, monitor, speaker, microphone, camera, and state cell phone.
2. Computer access to all resources, or equivalent resources utilized by their on-site counterparts, including the Electronic Health Records System.
3. When working from a CDCR hub, internetInternet access of sufficient speed and stability to allow a videoconference where the patient and telemental health services provider can be seen and heard clearly. Telemental health providers working from home must provide the same standard of internet access.

Telemental health providers working from home must provide a confidential space with their own office furniture. Telemental health providers will also have access to office space at a CDCR-operated hub should they prefer or need to work from the office. Each hub office will be a single, enclosed, and confidential space with a door, desk, and chair, as well as a full technological set-up. This office space will be sound-proofed, where possible.

Telemental health providers must onboard and begin their clinical assignments while working from the CDCR-operated hub. Prior to transitioning to work from home, telemental health providers must demonstrate appropriate use of the technology and workflow, adequate integration with their onsite team(s), and reliability and responsivity while working in the hub.

Only once the telemental health supervisors, with input from local on-site supervisors, are fully satisfied with both the provider's performance while working in the hub and ability to function effectively from home will the transition be allowed.

Work from home is allowed only for civil service telemental health providers. It is not an available assignment for registry telemental health providers.

## Physical Environment

The patient's interview room and environment shall allow for both the telemental health provider and the patient to be seen and heard clearly by each other. The patient's and telemental health provider's cameras shall be positioned to allow their faces to be clearly visible to each other. The telemental health provider shall also be able to clearly see the patient's body to assess for any signs of movement that may be clinically relevant. When indicated, the telemental health provider can request assistance from the telepresenter, who shall receive appropriate training on how to assess for relevantsuch physical signs (e.g., tremors). The telemental health administration and the institution receiving services shall ensure others are not able to enter the telemental health provider's or patient's rooms accidently or overhear conversations from inside or outside the rooms. Telemental health providers working from home must ensure this level of privacy and confidentiality in their home offices.

Seating and lighting should be adjusted to provide the clearest video and audio transmission, as well as to ensure the safety of the participants. Rooms for the telemental

health provider and the patient shall be appropriately sound-proofed, when possible, or alternative mechanisms shall be utilized (for example, sound-cancelling devices) to ensure privacy. When possible, the telepresenter should be seated closest to the door.

**Professional and Patient Identity and Informed Consent**

At the beginning of an initial appointment with a patient, the telemental health provider shall introduce themself and verify the patient's identity verbally and/or by having the patient show their CDCR-issued photo identification card on the video screen. At the beginning of the patient's first telemental health contact, the telemental health provider shall obtain written and oral ~~use~~method of informed consent for the ~~use~~method of telemental health.

Informed consent must include the following:

1.  the benefits and risks of telemental health, especially as related to confidentiality and privacy,
2.  the benefits and risks of in-person mental health services, especially as related to confidentiality and privacy,
3.  the role of the telepresenter,
4.  the incarcerated person's option to not have the telepresenter in the room during the therapy session, confirmed at each appointment,
5.  the informed consent process should also make clear that participation in telemental health is voluntary and consent may be revoked at any time, and
~~1.~~6.       the informed consent process should include other options available for mental health services (i.e., treatment by an on-site clinician) if the patient declines to consent (e.g., potentially delayed services depending on staffing vacancies).
~~2.~~7.       The actions to be taken if ~~, at~~ a clinical emergency arises shall be discussed with the patient during the initial telemental health appointment. If~~minimum, explaining the treatment modality, including~~ a clinical emergency arises during ~~description of the role of the telepresenter and~~ a telemental health session (for example, ~~plan for~~ a suicidal, violent, or homicidal patient), the telemental health provider shall immediately notify the appropriate institution staff, as identified by the institution's LOP. The telemental health provider shall coordinate with institutional mental health leadership and follow local institutional protocol for managing such emergencies. This may include, but is not limited to, coordinating arrangements for the patient to be seen by an on-site psychologist or LCSW, arrangements for safe holding, transport to an emergency triage area, communication with local emergency team members, and placing emergency orders as needed.~~response to interruption in services.~~

**Participation in Interdisciplinary Treatment Teams, Meetings, and Huddles**

Telemental health providers must participate in the receiving institution's Interdisciplinary Treatment Teams (IDTT) meetings as required by their assigned clinical duties.  To facilitate their participation, IDTT meetings that include a telemental health provider shall be held in a location with videoconference capabilities that allow for the telemental health provider's full participation when their patients are being reviewed. At least one of an EOP patient's assigned psychiatrist or assigned primary mental health clinician must attend the IDTT in person unless the EOP supervising psychologist is in attendance on-site.

In addition to IDTT meetings, telemental health providers shall participate to the same

extent as on-site primary clinicians in all meetings and huddles relevant to the clinical care of their assigned patients.

**Refusals**

Patient refusals of individual telemental health clinical encounters or IDTT meetings shall be handled in accordance with current policies and procedures for patient refusals at each level of care (see Memoranda "Mental Health Appointment Refusals" dated July 5, 2017 and "Clinical Contacts and Documentation" dated February 7, 2020). Specifically, when a patient receiving care at the CCCMS or EOP levels of care does not refuse a clinical encounter in person, the telemental health provider should go to the patient to encourage the patient to participate in a confidential contact, confirm the refusal, discuss the risks associated with refusing treatment, and discuss the reasons for the refusal. If a visit with the patient by the telemental health provider is not feasible, the patient should be seen by an on-site mental health clinician, who will address the issues listed. Any patient who reports refusing a clinical encounter due to the modality (i.e., use of telemental health) or who refuses two consecutive telemental health appointments, will be scheduled to be seen by an on-site clinician to determine the needs of the patient, including scheduling an IDTT to change treatment modalities. All patients who refuse scheduled individual appointments shall be re-scheduled as soon as possible and within Program Guide timeframes. Non-confidential contacts for telemental health shall not be considered a Program Guide required clinical contact under any circumstances.

~~If a patient refuses treatment via telemental health, the patient's telemental health provider(s) may meet with the other members of the patient's treatment team to consider mental health reasons, behavioral issues, custodial issues, or any other relevant factors to determine whether telemental health is an appropriate delivery method for the patient. The treatment team shall work toward resolving any issues contributing to the patient's refusal of telemental health services. A member from the treatment team may utilize brief, focused cell-front discussions with the patient to determine the reasons for appointment refusals. If the patient requires a clinical contact, the telemental health provider may request a consultation from an on-site provider or conduct a cell-front telemental health contact, as clinically indicated.~~

~~If the treatment team is unable to resolve the patient's refusal of telemental health visits, a formal IDTT meeting shall be convened. During this IDTT meeting, the treatment team shall develop a plan to address the reasons for the patient's refusals. Contingency plans shall also be developed to provide on-site psychological care or social work services to the patient.~~

~~If the treatment team concludes telemental health is not an appropriate treatment modality for the patient due to refusals, the team shall report this finding to mental health leadership (Chief and/or Senior Psychologist Supervisor and Chief of Mental Health) of the institution receiving telemental health services, as well as the Chief of Telepsychology and Supervising Social Worker II. If it is determined that the patient is not appropriate for telemental health, the Chief of Telepsychology and telemental health Supervising Social Worker II will work with mental health leadership at the institution to ensure the patient has access to appropriate on-site mental health treatment.~~

**Contraindications for Telemental Health**

Patients shall not be entirely excluded (e.g., see emergency exceptions in MHCB & PIP) from participation in telemental health services based solely on their level of care or diagnosis. Telemental health providers and supervisors should consider a ~~If the~~ patient's

cognitive capacity, level of reality testing, history regarding cooperativeness with treatment, current and past difficulties with effective communication, and histories of violence or self-injurious behavior when considering the appropriate use of telemental health services. Telemental providers should also determine whether there are any aspects of care that would require an in-person examination of the patient on a regular basis. If the IDTT, telepsychologist and Chief of Telepsychology, or telesocial worker and telemental health Supervising Social Worker II, determine that the patient needs to be seen by an on-site psychologist or on-site LCSWCSW, they will work with mental health leadership at the institution (Chief and/or Senior Psychologist Supervisor and Chief of Mental Health) to ensure the patient has an appropriate on-site psychologist and/or LCSWCSW assigned. Similarly, if the treatment team determines that telemental health services are not appropriate for a patient, the team will work with mental health leadership to assign the patient to an on-site psychologist and/or LCSW.CSW.

A patient's participation in MH treatment must always be voluntary. As a result, tele MH is contraindicated for a patient who declines to participate in that modality but is otherwise amenable to engage in treatment.

**American with Disabilities Act (ADA)**

The use of telemental health will be consistent the *Armstrong* requirements for offering reasonable accommodations.

**Use of Force**

Telemental health services shall not be used to fulfill policy obligations related to use of force incidents (e.g., clinical intervention).

**Restricted Housing Unit**

Telemental health may be used in RHUs if the incarcerated person provides written informed consent. At least one FTE on-site clinician must be assigned to the RHU. The total number of such FTE clinicians assigned to the RHU should be based on the number of RHU beds in a particular institution. Consistent with existing policy, an on-site RHU clinician is responsible for conducting cell-front contacts with patients who refuse more than 50% of their offered programming. Cell-front telemental health contacts in RHU are not permitted.

**Telemental Health and Levels of Care**

Telemental health providers will be assigned to CCCMS and EOP levels of care. CDCR seeks to employ psychologists and CSWs who can deliver in-person, on-site treatment and care to patients in all inpatient facilities. CDCR will not use telemental health in lieu of on-site mental health providers at the inpatient levels of care for any reason other than a lack of availability of on-site mental health providers.

**Correctional Clinical Case Management Services and Enhanced Outpatient Program**

Telemental health services may be utilized to supplement treatment fortreat patients at the CCCMS and EOP levels of care provided all other conditions pertaining to the CCCMS and EOP levels of care contained within this policy are followed. There shall be a minimum of 20% of allocated provider positions for CCCMS and 40% of allocated provider positions for

EOP filled by onsite clinicians present at the facility.

**Mental Health Crisis Bed** ~~and Psychiatric Inpatient Program~~

Telemental health may not be used at the MHCB level of care except as a last resort in emergency situations when the assigned on-site psychologist and/or licensed clinical social worker (LCSW) is not available. It shall only be utilized for the shortest duration of time necessary. MHCB discharges shall only be determined by an on-site psychologist, psychiatrist, and/or LCSW except under emergencies circumstances as described above. If a telemental health provider is required to serve in an MHCB for greater than 14 consecutive calendar days, this would not be consistent with this policy's objective. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel. Within 16 calendar days from the provision of the notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how the staffing issue was resolved.
~~The use of telemental health services in the MHCB and PIP levels of care is restricted to only circumstances when on-site care is not available and shall be used for the shortest duration of time as necessary.~~

**Psychiatric Inpatient Program**

Telemental health may not be used at the PIP level of care except as a last resort in emergency situations when an on-site psychologist and/or LCSW is not available. PIP discharges shall only be determined by an on-site psychologist, psychiatrist, and/or LCSW. The use of telemental health in the PIP setting shall only be utilized for the shortest duration of time as necessary and with all policy requirements as above. If a telemental health provider is required to serve in a PIP for greater than 30 consecutive calendar days, this would be inconsistent with this policy's objective. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel. Within 30 calendar days from the provision of the notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how the staffing issue was resolved.

**Use of Telemental Health for Risk of Harm ----Emergency/Crisis Services** ~~Clinical Emergency Management~~

*Responding to Clinical Emergencies*

Consistent with the procedure below relating to "clinical emergency management," telemental health may not be used to respond to emergent/urgent mental health referrals or incidents involving danger to self/suicidality/self-harm, except as a last resort in emergency situations when the institution's assigned on-site crisis clinician (i.e., psychologist and/or licensed clinical social worker (LCSW) personnel) are not available. During normal business hours, such incidents shall be responded to by an on-site psychologist or LCSW as part of the facility's crisis intervention team or assigned on-site crisis clinicians. Outside of normal business hours, current procedures remain in place.

A suicide risk assessment shall be completed by an on-site psychologist, LCSW, or psychiatrist for all referrals and/or incidents involving danger to self/suicidality/self-harm or other mental health emergencies according to existing policy requirements consistent with the above paragraph.

*Clinical Emergency Management*

If a clinical emergency arises during a scheduled telemental health session (for example, a suicidal, violent, or homicidal patient), the telemental health provider shall immediately notify the appropriate institution staff, as identified by the institution's LOP. The telemental health provider shall coordinate with institutional Mental Health Leadership~~mental health leadership~~ and follow local institutional protocol for managing such emergencies. This may include, but is not limited to, ~~coordinating~~ arrang~~ing~~ements for the patient to be seen by an on-site psychiatrist, psychologist, and/~~-~~or LCSW~~CSW~~, arrang~~ing~~ements for safe holding, transport to an emergency triage area, communica~~ting~~tion with local emergency team members, and placing emergency orders for medications, etc.~~as needed.~~

~~**MHCB and Psychiatric Inpatient Programs**~~
*Other Considerations*

Telemental health shall not be utilized for 5-day clinical follow ups except as a last resort in emergency situations when the institution's on-site are not available.

~~In the event that a telemental health provider is needed in an MHCB or inpatient setting, the telemental health provider, to facilitate familiarity with the program and patients, shall participate in clinical staff meetings and case conferences, and coordinate patient care. On-site staff shall ensure that the telemental health services provider has the necessary and pertinent information about the patient and the unit for the ongoing assessment and treatment of the patient. Similar to on-site psychologists and CSWs, telepsychologists and telesocial workers shall be involved in treatment and discharge decisions.~~

~~All elements of seclusion and restraint protocol shall follow existing policies and procedures and all applicable laws and regulations, including the need for a backup physician (psychiatrist or medical provider) who can physically examine the patient within the mandated timeframes. In the event that a telepsychologist is contacted for seclusion and restraint, a psychiatrist shall also be consulted to assess for the need for emergency medication, as clinically indicated.~~

~~To ensure continuity of care, telemental health providers shall provide relevant clinical information during the hand-off to the on-call clinician to convey details regarding a new admission, to coordinate patient care tasks that require follow up during after-hours coverage, or if they anticipate specific patient concerns. Telemental health and clinical staff, including~~

~~nursing staff when needed, shall have access to each other to address patient needs.~~
**Site Visits**

Telemental health providers are expected to establish and maintain~~responsible for maintaining~~ relationships with members of their assigned on-site treatment team through regular communication, meetings/huddles, and by visiting institutions. Telemental health providers shall visit their assigned institution within 30 days of assignment and no less than semi-annually thereafter for CCCMS telemental health providers and every three months for EOP telemental health providers. The telemental health provider will spend at least one day during each site visit at the facility. During this visit, the telemental health provider shall participate in the IDTT, meet with necessary health care staff, attend staff meetings if applicable on that day, and ~~may~~ see patients in person.

**Organizational Structure**

All telemental health staff shall report as appropriate within the Telemental Health Services Program supervisory chain.

**Workflow Interruptions**

In the event of technology or equipment failure, telemental health providers shall immediately notify their direct supervisor and mental health leadership at the institution (Chief and/or Senior Psychologist and Chief of Mental Health), as well as the Integrated Communications Technology Unit. The telemental health provider shall also make arrangements with institutional mental health leadership to ensure appropriate patient coverage based on patient need (for example, coverage by an on-site provider or rescheduling of appointments). Telemental health providers may also be redirected to another telemental health assignment when this occurs.

If a telemental health provider has a sustained interruption in technology or significant equipment malfunction, or if there are supervisory concerns that interfere with their ability to see and treat patients, they may be required to report to an office space in the hub.

**On-Call or After-Hours Coverage by Telemental Health Providers**

Telemental health providers shall contribute to on-call or after-hours coverage as assigned, and their provision of services shall be in accordance with applicable California Correctional Health Care Services (CCHCS) Health Care Department Operations Manual (HCDOM) policies, statewide mental health policies, and applicable bargaining unit Memorandums of Understanding.

Telemental health providers are not required to travel to the institution where they are providing on-call or after-hours coverage. Therefore, institutions receiving on-call or after-hours coverage from the Telemental Health Program must provide a backup clinician whose obligation is to respond to the facility when indicated such as incidents of planned use of force. This backup clinician shall be within one hour of travel time to the facility in order to attend to incidents requiring an in-person presence if needed.

---

**Responsibilities**    The institution receiving telemental health shall be responsible for providing the following:

- Timely access for patients to the telemental health provider.
- A dedicated and appropriately clinically trained telepresenter who facilitates the patient encounter from the originating site to the telemental health provider and is responsible for providing clinical support and coordination. The telepresenter Telepresenters are not required to be in the room with the patient for the entirety of an encounter, though may be requested to stay for part or all of an encounter at the telemental health provider's discretion. The telepresenter shall be required to introduce themselves to the patient and may remain in the room during the therapy session only if the patient has provided inform consent when they are in this context. Under such circumstances, the telepresenter shall room and explain that

they are subject to the same confidentiality requirements as the telemental health provider and other treatment providers.

- • Responsibilities of the telepresenter include, but are not limited to, reviewing the patient health record prior to the appointment, facilitating the videoconferencing connection with the telemental health provider, assisting with on-site correspondence and care coordination, and remaining immediately available to the patient during the appointment.
- Telepresenters shall be assigned from, but not limited to, position classifications in the following order of priority: medical assistant, certified nursing assistant, psychiatric technician assistant, psychiatric technician, licensed vocational nurse, registered nurse, clinical nurse specialist, nurse practitioner, rec/rehab therapist, social worker, psychologist, psychiatrist, or other physicians. When the telepresenter is a nurse practitioner, social worker, psychologist or physician, the clinical contact shall be considered a joint appointment when consistent with the relevant policy. In emergency circumstances, other non-custody classifications, such as Dental Assistants or Office Technicians, may be used.
- • An appropriately trained A backup telepresenter when the primary telepresenter is on leave or unavailable.
- Availability of appropriate clinical staff.
- Support staff responsible for scheduling appointments and processing clinical paperwork, as appropriate.
- An institutional contact list of important names and numbers for the telemental health provider. This includes, but is not limited to, the following:

  1. Laboratory
  2. Pharmacy
  3. Nursing station(s)
  4. Housing unit(s)
  5. Custody Health Care Access Unit staff
  6. Primary Clinician(s)
  7. Medical Provider(s)
  8. Mental Health Supervisor(s)
  9. Chief of Mental Health
  10. IT Department
  11. Chief and Senior Psychologist
  12. Chief Psychiatrist or Senior Psychiatrist Supervisor
  13. Scheduler
  14. Medical Records Supervisor
  15. Watch Commander

- The contact information for telemental health providers assigned to the institution will be made available to relevant onsite staff, including but not limited to telepresenters, onsite leadership, nursing, laboratory, and pharmacy staff.
- A confidential treatment space to facilitate patient encounters. This space shall include all equipment needed to facilitate the telemental health encounter, including, but not limited to a computer, phone, scanner, printer, desk, and chair.
- Caseload assignments and scheduled appointments for the telemental health provider.
- Maintenance of teleconferencing connectivity between institutions and telemental health providers.

- Confirmation that telemental health providers are appropriately privileged to provide clinical services to any licensed or inpatient units, when applicable.
- Audit reports for local compliance indicators.
- Organized tours for the telemental health providers during their initial visits to the institution.
- On-site clinical contingency plans and patient prioritization strategies to manage absences of telemental health providers.
- An LOP for telemental health services that shall be submitted to the Chief of Telepsychology, or designee, and Supervising Social Worker II for review and approval prior to local distribution or implementation. Any revisions of the LOP for telemental health shall be reviewed and approved by the Chief of Telepsychology, or designee, and Supervising Social Worker II prior to implementation at the institution. The LOP must be reviewed annually.
- Routine system tests to ensure that telemental health equipment is safe, operational, and secure.

---

**Compliance Indicators**

To be in compliance with this policy, the following requirements shall be met jointly by the Telemental Health Program and the institution receiving services:

1. Telemental health providers are provided with the appropriate equipment and resources.
2. Telemental health providers participate in the same manner as on-site providers in the receiving institutions' IDTTs and all meetings and huddles relevant to the clinical care of their assigned patients.
3. On-site staff and members of the treatment team communicate with the telemental health providers regarding any important patient issues and concerns related to patient care.
4. Telemental health providers have access to all necessary clinical information via the patient's health record.
5. Telemental health providers communicate any important patient issues and concerns related to patient care to the on-site staff and members of the treatment team.

1. ~~Patients are notexcluded from participation in the Telemental Health Program based solely on their level of care or diagnosis.~~
6. Telemental health providers complete all documentation in the health record by the close of each business day.
7. Telemental health provider and patient identity are verified at the beginning of a mental health treatment videoconference.
8. Telemental health providers visit their receiving institutions as directed by this policy.
9. Ongoing mandatory trainings are completed for all telemental health providers.
10. Telemental health providers are privileged at each licensed or inpatient unit they serve.

---

**References**

- CDCR Mental Health Services Delivery System Program Guide, 2021 Revision

- CCHCS Health Care Department Operations Manual
- ~~Bargaining Unit 19~~ Memorandum entitled "Mental Health Appointment Refusals" (July 5, 2017) ~~of Understanding~~
- Memorandum entitled "Clinical contacts and documentation" (February 7, 2020)

---

**Questions**   If you have any questions or need any additional information related to this policy, you may contact the policy unit via e-mail at: CDCR MHPolicyUnit@CDCR

# APPENDIX C

## Telemental Health Literature Review

1. Jessica Abram et al., Practical Issues in Delivery of Clinician-to-Patient Telemental Health in an Academic Medical Center, Harvard Review of Psychiatry, 135-145 (2017).

2. American Academy of Child and Adolescent Psychiatry (AACAP) Committee on Telepsychiatry and AACAP Committee on Quality Issues, Clinical Update: Telepsychiatry with Children and Adolescents, 56 Journal of the American Academy of Child and Adolescent Psychiatry 10, 875-893 (2017).

3. Diana J. Antonacci, M.D. et al., Empirical Evidence on the Use and Effectiveness of Telepsychiatry via Videoconferencing: Implications for Forensic and Correctional Psychiatry, Behav. Sci. Law 26, 253-269 (2008).

4. Phoebe Barnett et al., Implementation of Telemental Health Services Before COVID-19: Rapid Umbrella Review of Systematic Reviews, 23 Journal of Medical Internet Research (2021).

5. Barrera-Valencia et al, Cost-effectiveness of synchronous vs. asynchronous telepsychiatry in prison inmates with depression, Asociaci ́on Colombiana de Psiquiatr ́ıa 46, 65-73 (2017).

6. Ashley B. Batastini and Robert D. Morgan, Connecting the Disconnected: Preliminary Results and Lessons Learned from a Telepsychology Initiative with Special Management Inmates, 13 Psychological Services 3, 283-291 (2016).

7. Benjamin B. Brodey et al, Satisfaction of Forensic Psychiatric Patients with Remote Telepsychiatric Evaluation, 51 Psychiatry Services 10, 1305-1307 (2000).

8. Subho Chakrabarti, Usefulness of Telepsychiatry: A Critical Evaluation of Videoconferencing-based Approaches, 5 World Journal of Psychiatry 3, 286-304 (2015).

9. Stacie Anne Deslich et al., Telepsychiatry in Correctional Facilities: Using Technology to Improve Access and Decrease Costs of Mental Health Care in Underserved Populations, 17 The Permanente Journal 3, 80-86 (2013).

10. Jeffrey DeVido et al., Telepsychiatry for Inpatient Consultations at a Separate Campus of an Academic Medical Center, Telemedicine and e-Health, 572-576 (2015).

11. Amy Donahue et al., Telemental Health and the Management of Psychosis, Psychiatry in the Digital Age (2021).

12. David Farabee et al., An Experimental Comparison of Telepsychiatry and Conventional Psychiatry for Parolees, Psychiatry Services 67:5, 562-565 (2016).

13. Francisca García-Lizana and Ingrid Muñoz-Mayorga, What About Telepsychiatry? A Systematic Review, Primary Care Companion to the Journal of Clinical Psychiatry (2010).

14. Michelle Glaser et al., Provider Satisfaction and Patient Outcomes Associated with a Statewide Prison Telemedicine Program in Louisiana, Telemedicine and e-Health, 472-479 (2010).

15. David Goldbloom and David Gratzer, Telepsychiatry 2.0, The Canadian Journal of Psychiatry (2017).

16. Mohammad Haidous et al., A Review of Evaluation Approaches for Telemental Health Programs, International Journal of Psychiatry in Clinical Practice (2020).

17. Donald M. Hilty et al., An Update on Telepsychiatry and How It Can Leverage Collaborative, Stepped, and Integrated Services to Primary Care, Academy of Consultation-Liaison Psychiatry, 227-250 (2018).

18. Donald M. Hilty et al., The Effectiveness of Telemental Health: A 2013 Review, Telemedicine and e-Health, 444-454 (2013).

19. Natalia Krzyzaniak et al., The Effectiveness of Telehealth Versus Face-to-Face Interventions for Anxiety Disorders: A Systematic Review and Meta-Analysis, Internation Society for Telemedicine and eHealth (2021).

20. Brittanie LaBelle et al., Characterizing the Use of Telepsychiatry for Patients with Opioid Use Disorder and Cooccurring Mental Health Disorders in Ontario, Canada, Hindawi International Journal of Telemedicine and Applications (2018).

21. Mostafa Langarizadeh et al., Telemental Health Care, An Effective Alternative to Conventional Mental Care: a Systematic Review, ACTA Inform Med., 240-246 (2017).

22. Deborah Larsen et al., Prison Telemedicine and Telehealth Utilization in the United States: State and Federal Perceptions of Benefits and Barriers, Telemedicine and e-Health (2004).

23. S. Leonard et al., The Development and Evaluation of a Telepsychiatry Service for Prisoners, 11 Journal of Psychiatric and Mental Health Nursing, 461-468 (2004).

24. Philip R. Magaletta et al., Telehealth in the Federal Bureau of Prisons: Inmates' Perceptions, 31 Professional Psychology: Research and Practice 5, 497-502 (2000).

25. Luisa Manfredi et al., Rural Jail Telepsychiatry: A Pilot Feasibility Study, 11 Telemedicine and e-Health, 574-577 (2005).

26. Robert D. Morgan et al, Does the Use of Telemental Health Alter the Treatment Experience? Inmates' Perceptions of Telemental Health Versus Face-to-Face Treatment Modalities, 76 Journal of Consulting and Clinical Psychology,  158-162 (2008).

27. Eve-Lynn Nelson et al., A Comparison of Psychiatrist Evaluation and Patient Symptom Report in a Jail Telepsychiatry Clinic, 10 Telemedicine Journal and e-Health, 2004.

28. Richard O'Reilly et al., Is Telepsychiatry Equivalent to Face-to-Face Psychiatry? Results From a Randomized Controlled Equivalence Trial, 58 Psychiatry Services, 836-843 (2007).

29. Nasreen Roberts et al., Child and Adolescent Emergency and Urgent Mental Health Delivery Through Telepsychiatry: 12-Month Prospective Study, 23 Telemedicine and e-Health 10, 842-846 (2017).

30. Sy Atezaz Saeed et al., Training Residents in the Use of Telepsychiatry: Review of the Literature and a Proposed Elective, 88 Psychiatry Q, 271-283 (2017).

31. Alberto Salmoiragi et al., A Systematic Review of the Use of Telepsychiatry in Acute Settings, 21 Journal of Psychiatric Practice 5, 389-393 (2015).

32. Merle Schlief, Synthesis of the Evidence on What Works for Whom in Telemental Health: Rapid Realist Review, 11 Interactive Journal of Medical Research (2022).

33. Ian Sharp et al., The Use of Videoconferencing with Patients with Psychosis: A Review of the Literature, Annals of General Psychiatry (2011).

34. Jay Shore et al., Diagnostic Reliability of Telepsychiatry in American Indian Veterans, American Journal of Psychiatry (2007).

35. Jay Shore et al., Best Practices in Videoconferencing-Based Telemental Health, American Psychiatry Association (2018).

36. Surendra P. Singh et al., Accuracy of Telepsychiatric Assessment of New Routine Outpatient Referrals, BMC Psychiatry, 2007.

37. Dawn E. Sugarman and Alisa B. Busch, Telemental Health for Clinical Assessment and Treatment, BMJ (2023).

38. John F. Thomas, The Use of Telepsychiatry to Provide Cost-Efficient Care During Pediatric Mental Health Emergencies, Psychiatric Services 69:2, 161-168 (2018).

39. Charles Zaylor et al., Clinical Outcomes in a Prison Telepsychiatry Clinic, 7 Journal of Telemedicine and Telecare, 47-49 (2001).

40. Charles Zaylor et al., Telemedicine Services to a County Jail, 6 Journal of Telemedicine and Telecare, 93-95 (2000).

41. Wanhong Zheng et al., Treatment Outcome Comparison between Telepsychiatry and Face-to-Face Buprenorphine Medication-Assisted Treatment (MAT) for Opioid Use Disorder: A 2-Year Retrospective Data Analysis, J Addict Med (2018).