UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Ralph Coleman, et al.,

Plaintiffs,

v.

Gavin Newsom, et al.,

Defendants.

No. 2:90-cv-00520-KJM-DB

ORDER

On November 16, 2023, this court directed defendants to bring an appropriate motion regarding whether the California Department of Corrections and Rehabilitation (CDCR) policy to review maximum custody inmate-patients in psychiatric inpatient programs (PIPs) should be included in the continuous quality improvement tool (CQIT). Nov. 16, 2023 Order at 13, ECF No. 8069. Defendants have now moved the court to exclude the CDCR policy from the CQIT. The motion is **denied**.

## I. BACKGROUND

### A. Development of the Continuous Quality Improvement Tool

Almost three decades ago, the court found defendants violated their Eighth Amendment duty to provide access to adequate mental health care to the inmates in their custody who suffer from serious mental disorders. *See Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (E.D. Cal. 1995). The court granted injunctive relief and appointed a special master to monitor compliance

with the court's injunction. *See id.* at 1324 & n.63; *see also* Sept. 3, 2020 Order at 3, ECF No. 6846 (citing prior orders).[1] The duties of the Special Master include working with defendants and experts to develop an effective remedial plan to address the constitutional violations identified by the court's 1995 order and to monitor defendants' implementation of and compliance with any court-ordered remedial plans. *See* Feb. 28, 2013 Order at 3–4, ECF No. 4361.

As noted in previous orders, "[a] quality assurance program and a quality improvement process are required parts of the remedy in this action." Dec. 17, 2020 Order at 2, ECF No. 6996 (citing prior orders). "A key component of a durable remedy is the development and implementation of an adequate quality improvement process by which defendants will self-monitor and, as necessary, self-correct inadequacies in the delivery of mental health care to the thousands of seriously mentally ill inmates incarcerated in California's prisons." Mar. 3, 2014 Order at 5, ECF No. 5092. To achieve the goal of transitioning to self-monitoring and to end federal court oversight, the Special Master and the parties have been working on finalizing the continuous quality improvement tool (CQIT), the comprehensive tool, defendants "will ultimately use as part of a process to 'self-monitor' the key components of the remedy in this action." Sept. 3, 2020 Order at 10. The CQIT includes key indicators to monitor compliance. *Id.* at 24.

There are two primary court-approved remedial documents in this action: (1) the CDCR Mental Health Services Delivery System (MHSDS) Program Guide (Program Guide) and (2) the Compendium of Custody Related Remedial Measures (Compendium). *See id.* at 4 (citing Aug. 3, 2020 Order, ECF No. 6806). While the court has discontinued the parties' obligations to file further annual updates to both the Program Guide and Compendium "unless or until further order of the court," Annual Update Order at 4, ECF No. 7456, both documents remain essential to the development of the CQIT, *see* May 24, 2023 Order at 6, ECF No. 7847.

The first remedial document, the Program Guide, "represents the bulk of the operative remedy." July 9, 2019 Order at 6, ECF No. 6214. It "represents <u>defendants'</u> considered assessment, made in consultation with the Special Master and his experts, and approved by this

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

court, of what is required to remedy the Eighth Amendment violations identified in this action and meet their constitutional obligation to deliver adequate mental health care to seriously mentally ill inmates." Feb. 28, 2013 Order at 3 (emphasis in original); *see also* Sept. 3, 2020 Order at 4 (noting Program Guide is defendants' plan to remedy constitutional violations).

The Compendium, on the other hand, is "the complete list of remedies in this action related to custodial measures not already included in the Program Guide." Feb. 11, 2020 Order at 2, ECF No. 6460; July 9, 2019 Order at 16. It identifies remedies found in state regulations, provisions of the CDCR Department Operations Manual, departmental memoranda and court orders. Sept. 3, 2020 Order at 6. In addition to these two remedial documents, the court has "ordered development of several additional remedial measures in aid of full implementation of the Program Guide" and has also "ordered defendants to adopt specific measures recommended by the Special Master[.]" *Id.* at 5.

Once finalized, the CQIT will be used "to monitor compliance with the material provisions of the Program Guide and the Compendium[.]" *Id.* at 24. Thus, "[t]he 'key indicators' in CQIT are likely equivalent to the material provisions of the Program Guide and the Compendium that may not be modified without court approval." *Id.* at 24 n.11; May 24, 2023 Order at 6 ("CQIT key indicators must be operationalized to properly measure the core requirements of the Program Guide and the Compendium.").

Fundamentally, however, "[d]efendants' ultimate constitutional obligation is to provide the tens of thousands of seriously mentally ill inmates in their custody with access to adequate mental health care, as well as to remedy the identified custody-related violations of plaintiffs' constitutional rights." Dec. 17, 2020 Order at 8 (internal marks and citation omitted). As noted in a prior order, "[w]hile key CQIT indicators must be identified as an aid to measurement of compliance with remedial plans in this action, namely the Program Guide and the Compendium, that identification is but a component of full implementation of CQIT and the quality improvement process." *Id.* at 7. The "full implementation of CQIT and the quality improvement process is required as part of the constitutional remedy in this action to the same extent as all other court-ordered remedies." *Id.* at 7–8. Thus, although "[d]urable implementation" of the

remedy in this action includes the Program Guide and Compendium, it is not limited to those two documents. *See* July 1, 2021 Order at 3; *see also* Special Master's Rep. on CQIT Key Indicators at 13, ECF No. 7151, *adopted by* July 1, 2021 Order (noting CQIT indicators have been drawn "strongly but not exclusively from the material requirements of the Program Guide and key court orders").

To meet their constitutional obligation, defendants must not only implement all material aspects of court-ordered relief, but also demonstrate their ability to assume full responsibly for self-monitoring. Dec. 17, 2020 Order at 8. Because the purpose of the CQIT is, in part, to "transition monitoring from the Special Master to defendants," "[e]ach key indicator must substantively track the areas the Special Master has monitored so the court can assess defendants' compliance with the Eighth Amendment." May 24, 2023 Order at 7; *see also* Nov. 16, 2023 Order at 20. In other words, one goal of the CQIT indicators is to replicate the Special Master's monitoring process and to capture the data and relevant information the Special Master has monitored and included in his monitoring reports to date. May 24, 2023 Order at 7–8.

**B. Therapeutic Treatment Modules Stipulation**

As relevant here, in response to the court's order directing the parties to engage in settlement negotiations regarding defendants' use of therapeutic treatment modules (TTMs) in inpatient settings, the parties reached a stipulated agreement. *See* Stip. & Order, ECF No. 7392. The stipulation incorporates defendants' Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants memorandum (Max Custody Memo). *Id.*

Section III of the stipulation provides as follows:

> 13. Defendants contend that the use of TTMs to deliver mental health care to Max custody patients does not violate the Eighth Amendment, and that nothing in this agreement should be construed as an admission of such. Defendants further contend that the plan set forth in Part II above, including the Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants memorandum, is not necessary to remedy any Eighth Amendment violations, and accordingly, is not part of the Eighth Amendment remedy in this case.

> 14. Plaintiffs maintain their objection that the use of TTMs in any treatment setting, including Defendants' PIPs, is violative of the Eighth Amendment. To the extent that Defendants utilize TTMs in the PIPs, Plaintiffs further maintain that Defendants' plan set forth in Part II above, including the Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants memorandum, is a necessary part of the Eighth Amendment remedy in this case.
>
> 15. The parties agree that Defendants' plan shall not be included in the MHSDS Program Guide or Compendium. This stipulation sets forth the entirety of the remedy related to the issues set forth above.

*Id.* ¶¶ 13–15.

The court conditionally approved paragraph 15, pending resolution of questions related to updating the Program Guide in the future. *Id.* at 6. Previously, the court had ordered the parties to show cause why the court should not decline to approve Section III because 1) it covers an ongoing dispute concerning whether the use of TTMs violates the Eighth Amendment and 2) it contains an agreement defendants' plan will not be included in the Program Guide or Compendium and thus appeared to implicate the outstanding questions related to the Program Guide updating process. OSC Order at 2, ECF No. 7368.

In response, the parties filed a joint response stating Section III sets forth each party's position with respect to the TTMs' constitutionality. Resp. at 4, ECF No. 7380. While the parties disagree on the TTMs' constitutionality and on whether the plan and defendants' Max Custody Memo are necessary parts of the Eighth Amendment remedy in this case, the parties entered the stipulation to ensure "care is provided along the parameters set forth in the parties' agreement." *Id.* The parties explained they "expressly and intentionally remove[d]" defendants' plan from the Program Guide updating process. *Id.* They also noted Section III is critical to defendants' agreement to the stipulation and if any of the language is stricken, they would withdraw their agreement. *Id.* at 5.

Subsequently, the court approved both the 2021 Program Guide and the Compendium Update. Annual Update Order at 3. It also gave final approval to paragraph 15 of the parties' stipulation. *Id.* at 3–4. The court then referred the provisions regarding TTMs to the Special

Master "for consideration as to whether they are, or should be, reflected in the list of CQIT indicators[.]" *Id.* at 4. No party objected to this referral.

**C. PIP Maximum Custody Placeholder[2] Indicator**

In response to the court's referral, the Special Master recommended "defendants create a new PIP placeholder indicator to measure timely review of max custody patients in accordance with CDCR policy related to the same." PIP Indicator Resol. at 2. The Special Master explained "defendants have provided woefully inadequate mental health care to the most acutely mentally ill members of the plaintiff class . . . who are placed on maximum custody status." *Id.* at 12 (citing prior monitoring reports). As part of his duties, the Special Master "has consistently monitored and reported his findings regarding treatment inadequacies for PIP patients on max custody status" and has also "consistently identified the lack of mental health treatment provided to max custody patients – particularly those housed in the PIPs – to be a highly concerning deficiency." *Id.* at 13. The Special Master notes the Max Custody Memo appeared "intended to remedy [the] longstanding deficiency" noted above. *Id.* His proposed indicator is designed to measure adherence to some key elements of defendants' policy, and the Special Master considers the Max Custody Memo "a foundational element of defendants' efforts to improve access to care for these patients that should be measured by a key indicator." *Id.* The Special Master thus has determined "the requirements of the Max Custody Memo, aimed at removing barriers to access to mental health treatment for these patients, should be measured by a key indicator as part of defendants' ongoing full implementation of CQIT" and found the inclusion of an indicator to be "[c]onsistent with his historic practice of monitoring the quantity and quality of mental health treatment provided to class members on max custody status[.]" *Id.*

Defendants objected to the Special Master's recommendation to create a new placeholder indicator to measure defendants' adherence to the CDCR's policy regarding max custody patients

[2] As explained in the Special Master's Proposed Resolution of Data Remediation Dispute: Placeholder—PIP—Max Custody Review (PIP Indicator Resolution), "[t]he placeholder indicators were 'included in the original provisionally approved list of key indicators, but not yet developed in detail at the time the original list was filed with and provisionally approved by the court.'" PIP Indicator Resol. at 1 n.3, Defs.' Objs., App. A, ECF No. 8039 (quoting ECF No. 7863 at 11–12).

in PIPs. Defs.' Objs., ECF No. 8039. As noted, defendants move to exclude the CDCR policy from the CQIT and to enforce the terms of the court-approved stipulation regarding the use of TTMs in inpatient settings. Mot., ECF No. 8076. Plaintiffs oppose, Opp'n, ECF No. 8084, and defendants have replied, Reply, ECF No. 8100.

## II. DISCUSSION

Defendants make four main arguments: 1) the recommendation to create a new CQIT placeholder indicator is at odds with the parties' stipulation and court's prior guidance; 2) the recommendation is clearly erroneous because it impermissibly expands the *Coleman* remedy; 3) the Special Master's articulated reasons for creating the indicator are clearly erroneous; and 4) an order adopting the recommendation would run afoul of the Prison Litigation Reform Act. *See generally* Mot.

First, nothing in the TTM stipulation prevents the Special Master from considering defendants' TTM policy as part of the Eighth Amendment remedy in this case. The parties agreed defendants' plan would not be included in the Program Guide or Compendium. Stip. & Order ¶ 15. Neither party argues the Program Guide and Compendium include or should include defendants' plan. *Cf.* Annual Update Order at 3 (approving Program Guide and Compendium update). The parties agree the stipulation sets forth the entirety of the remedy related to the issues set forth in the stipulation itself. Stip. & Order ¶ 15. The issues the stipulation addresses are related to the disagreement the parties had concerning defendants' use of TTMs in inpatient settings. *Id.* at 1. Thus, the "remedy" in paragraph 15 refers to the parties' agreement regarding the use of TTMs in inpatient settings in conjunction with the policy set out in the Max Custody Memo. *See id.* ¶ 15. The parties expressly memorialized their ongoing disagreement over whether the use of TTMs violates the Eighth Amendment and whether the policy set out in the Max Custody Memo is a necessary part of the Eighth Amendment remedy in this action. *See id.* ¶¶ 13–14. While the parties expressly left this question open in the stipulation, they resolved their dispute over whether defendants could use TTMs to deliver inpatient mental health care to members of the plaintiff class: as paragraph 15 provides, the TTM stipulation is "the entirety of the remedy" with respect to that dispute. *See id.* ¶ 15. As with other components of the remedy

in this action, the parties' agreement is, at a minimum, in aid of the remediation in the delivery of inpatient mental health care required by the Eighth Amendment and properly the subject of monitoring by the Special Master and inclusion in CQIT.

Second, the inclusion of defendants' policy in the CQIT is not at odds with the court's prior guidance. As noted, the primary court-approved remedial documents are the Program Guide and the Compendium. Sept. 3, 2020 Order at 4 (citing Aug. 3, 2020 Order). However, the CQIT is also part of the remedy in this action "to the same extent as all other court-ordered remedies." Dec. 17, 2020 Order at 2, 7–8; *see* Mar. 3, 2014 Order at 4. Although the CQIT must measure material provisions and core requirements of the Program Guide and Compendium, Sept. 3, 2020 Order at 24 n.11; May 24, 2023 Order at 6, the CQIT indicators are not limited to monitoring and measuring implementation of the provisions of those two documents. The key indicators must also track the areas the Special Master has monitored for defendants to assume full responsibility for self-monitoring. *See* Dec. 17, 2020 Order at 8; May 24, 2023 Order at 7–8.

Here, as the Special Master notes, he has consistently monitored and reported findings regarding mental health treatment inadequacies for PIP patients in maximum custody. *See* PIP Indicator Resol. at 12 & n.5, 13; *see, e.g.*, Thirtieth Monitoring Report Part A at 55–56, 58–59, ECF No. 7833, *adopted by* June 9, 2023 Order, ECF No. 7854 (reporting access to care issues in PIP institutions, including for maximum custody patients); Twenty-Ninth Monitoring Report Part A at 43–44, ECF No. 7555, *adopted by* Aug. 29, 2022 Order, ECF No. 7608 (reporting on care for maximum custody patients); 2021 Monitoring Report on Mental Health Inmate Care Programs at 47, ECF No. 7039, *adopted by* Aug. 17, 2022 Order, ECF No. 7605 (noting treatment provided to maximum custody patients in PIPs continue to be inadequate); 2018 Monitoring Report on Mental Health Inpatient Care Programs at 40, 162, 171, ECF No. 5894, *adopted by* July 6, 2022 Order, ECF No. 7581 (reporting inadequate out of cell time for maximum custody patients in PIP). The Special Master's monitoring supports his conclusion that "[f]or years, defendants have provided woefully inadequate mental health care to the most acutely mentally ill members of the plaintiff class . . . who are placed on maximum custody status." PIP Indicator Resol. at 12. The proposed TTM indicator is designed to measure adherence to certain

key elements of defendants' policy, including "efforts to improve access to care" for maximum custody patients in PIPs. *Id.* at 13. The indicator is consistent with the Special Master's "historic practice of monitoring the quantity and quality of mental health treatment provided to class members on max custody status[.]" *Id.* It also is consistent with this court's orders requiring key indicators to track the areas the Special Master has monitored. *See, e.g.*, Dec. 17, 2020 Order at 8; May 24, 2023 Order at 7–8. Moreover, the court specifically referred the provisions regarding TTMs in the parties' stipulation to the Special Master "for consideration as to whether they are, or should be, reflected in the list of CQIT indicators," without objection. Annual Update Order at 4.

Third, and relatedly, defendants have not shown the Special Master's articulated reasons for creating the PIP Max Custody Placeholder Indicator are clearly erroneous. Mot. at 12–13. As noted, the indicator is consistent with the Special Master's practice of monitoring the mental health treatment for maximum custody patients in PIPs, and the key indicators must track the areas the Special Master has monitored. The placeholder indicator likewise does not impermissibly expand the *Coleman* remedy beyond court-approved updates to the remedial plans, Mot. at 12, because as noted, CQIT is part of the remedy in this case, and that remedy is not limited to the Program Guide and Compendium.

Finally, defendants' argument that an order adopting the Special Master's proposed placeholder indicator violates the Prison Litigation Reform Act (PLRA) is unpersuasive. *See* Mot. at 13. The court is not considering now whether the use of TTMs itself violates the Constitution or whether restrictions on the use of TTMs is constitutionally necessary. It does not disturb in any way the language of the parties' agreement. As explained, a durable remedy in this action requires the "development and implementation of an adequate quality improvement process by which defendants will self-monitor and, as necessary, self-correct inadequacies in the delivery of mental health care to the thousands of seriously mentally ill inmates incarcerated in California's prisons." Mar. 3, 2014 Order at 4–5. CQIT is a key part of this remedy and an important tool to transition monitoring from the Special Master to defendants. Sept. 3, 2020 Order at 10. As part of this remedy, the key indicators must track areas the Special Master has monitored, including the quality and quantity of mental health treatment provided to maximum

custody patients in PIPs. Including the placeholder indicator in the CQIT does not violate the PLRA. *Cf. Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070–71 (9th Cir. 2010) (court considers necessity of relief as a whole, not each individual provision in isolation); *Armstrong v. Newsom*, 58 F.4th 1283, 1297 (9th Cir. 2023).

## III. CONCLUSION

For the reasons above, defendants' motion is denied. The court overrules their objections to the Special Master's recommendation to create a new PIP placeholder indicator to measure timely review of maximum custody patients in accordance with CDCR's TTM policy.

This order resolves ECF Nos. 8039 and 8076.

IT IS SO ORDERED.

DATED: March 27, 2024.

CHIEF UNITED STATES DISTRICT JUDGE