UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | No. 90-cv-0520 KJM DB P<br><br>ORDER AND<br><br>ORDER TO SHOW CAUSE |

The court held a status conference in this matter on March 28, 2024 to address issues related to completion of the data remediation project following the Special Master's informal report to the court that the project would not be completed by the March 31, 2023 deadline set most recently by the court. *See generally* Feb. 1, 2024 Order, ECF No. 8121. At the status conference, in response to the court's questions, defendants estimated an additional two years will be needed to complete data remediation if the remediation project remains on its current path.

I.     **STEPS IN THE DATA REMEDIATION PROCESS**

In May 2022, in accordance with the court's direction, *see* Apr. 29, 2022 Minute Order, ECF No. 7541, then-California Department of Corrections and Rehabilitation (CDCR) Secretary Kathleen Allison filed a declaration including a template for the six step data remediation process she and the Special Master agreed to. *See* Decl. of Allison at 2 and Ex. A, ECF Nos. 7556, 7556-

1.[1]  These steps are as follows:

Step 1: DOCUMENTATION

CDCR Mental Health creates preliminary documentation for the indicator and its business rules. This documentation includes a list of business requirements that the indicator intends to measure and then describes how the software (or an audit) will operate to achieve this.

Step 2: VALIDATION

Stakeholders then validate the indicator's documentation (in the context of business requirements and workflows it is intended to measure) to ensure its design will create transparent and accurate data. When issues are discovered, stakeholders work by consensus to correct the deficiency or use the agreed dispute resolution process. Stakeholder validation takes place through written comments provided by the Special Master's team and plaintiffs along with detailed discussion during BRMR meetings.

Step 3: APPROVALS

The agreed-upon documentation approved by all stakeholders including the Special Master's data expert then enters CDCR's current change management process for approval by CDCR Mental Health.

Step 4: PROGRAMMING

The indicator is programmed according to the validated documentation by CDCR programmers under the supervision of MH.

Step 5: VERIFICATION

Software tests are created to confirm that the indicator is working as designed on an ongoing basis. These tests are created by a separate team of CDCR programmers working with CDCR subject matter experts in order to verify that the CDCR's data products (including row-level "case data" and summary statistics) are correctly generated per their previously validated designs.

Remediation of Individual Indicators

Finally, when indicators and their business rules complete the five-step validation and verification process, and there are no outstanding stakeholder disputes, the Special Master's data expert marks them as remediated and communicates the same to the date remediation stakeholders.[Footnote omitted.]

---

[1] In this order citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by ECF located in the upper right hand corner of the page.

>   Data System Certification
>
>   In order for the data remediation process to be completed, the individual remediated indicators must operate in a system that is transparent and has adequate version control to enable users to easily track and compare current documentation to prior versions. This will provide for the durability of the gains made during the remediation endeavor. The Special Master's data expert has committed to reviewing and certifying that such processes are in place so that the significant achievements of the data remediation process are durable and that the Court can rely on the accuracy of defendants' mental health-related data after the remediation process has completed.

Special Master's Report on Data Remediation at 28-30, ECF No. 7863.[2]

## II. CURRENT STATUS OF DATA REMEDIATION

Although the specific number may vary slightly, the Special Master and the parties generally agree there are approximately 267 indicators proceeding through the data remediation process. The Special Master's data expert has marked 101 of those as remediated.

Of the remaining approximately 166 indicators, the parties agree one group of 41 has proceeded through all five steps of the data remediation process and are with the Special Master's expert to confirm whether any stakeholder disputes remain and then mark as remediated when such outstanding disputes, if any, are resolved.

The parties also agree a second group of 38 indicators is covered by the court's December 5, 2023 Order, ECF No. 8078. By that order, the court required defendants to include a "patient-wise methodology" to report data and summary statistics for an identified subset of continuous quality improvement tool (CQIT) indicators. ECF No. 8078 at 3-4.[3] At hearing, the parties confirmed the court's understanding that only one of these 38 indicators has passed the first step in the data remediation process.

At hearing the court probed the status of the foregoing two groups, representing a total of 79 outstanding indicators, and also discussed with the parties obstacles to completion of data remediation.

---

[2] Neither party filed objections to this Report.

[3] When the court issued the December 5, 2023 order, the record suggested there were twenty-five key CQIT indicators affected by the addition of this methodology. *See* ECF No. 8078 at 3. The court accepts the representation that number is now thirty-eight.

### III. NEXT STEPS

#### A. The Forty-One Indicators Verified Through Step Five

As noted above, all parties agree 41 indicators have been verified through Step Five of the data remediation process and are now with the Special Master for final review and, as appropriate, marking as remediated. The court will require the Special Master to take all steps to complete the process of marking these indicators as remediated no later than April 25, 2024. If the Special Master believes it is absolutely necessary to meet this deadline, he may postpone work on other indicators in the Business Rules and Methodology Review meetings and set such additional interim deadlines as may be required so that he will meet the deadline set in this order. The court will accept an oral report from the Special Master at the April 26, 2024 status conference that these 41 indicators are marked as remediated.

#### B. The Thirty-Eight Patient-Wise Indicators

The parties are in general agreement that only one of the 38 patient-wise indicators has completed the first step of the five-step process outlined above and still needs to proceed through the remaining four steps, and that the other 37 patient-wise indicators still need to move through all of that five-step process. The court ordered development of these indicators in accordance with the Special Master's proposal, *see generally* ECF No. 8078; there should be minimal, if any, disputes as these indicators now proceed through the data remediation steps. Nonetheless, at hearing, defendants expressed uncertainty about what precisely is required to accurately document, validate, program and verify these 38 indicators, and suggested there is a "learning curve" for their technical staff in this process.

In its original order following hearing on the whistleblower reports that led to the data remediation process, the court observed that Dr. David Leidner, who at the time worked at CDCR Headquarters, has a significant skill set that "could continue to play an important role both in" data remediation "and at CDCR Headquarters more generally." Dec. 17, 2019 Order at 19, ECF No. 6427; *see also* ECF No. 7541 (court anticipates clarification of issues related to data remediation "will be achieved in discussions involving Special Master Lopes, Secretary Allison, Undersecretary Toche, Dr. Daniel Potter, and Dr. David Leidner.") The court believes significant

4

efficiencies in moving these 38 indicators through the data remediation process may be achieved if the court (1) delegates to the Special Master responsibility to ensure these 38 indicators move through all five steps of the data remediation process so he can mark them as remediated no later than May 31, 2024 and (2) directs defendants to make Dr. Leidner available to work directly with the Special Master as needed to meet this deadline, together with such CDCR mental health staff as Dr. Leidner may identify to complete necessary tasks.[4]  Good cause appearing, the parties will be granted seven days from the date of this order to show cause in writing, if any they have, why the court should not make these orders.

### C. Additional Issues Affecting Timely Remediation

At hearing, the court discussed with the parties two substantive areas affecting data remediation:  (1) proposed new regulations for Restricted Housing Units (RHUs) and the parties' dispute over the effect, if any, of the court's February 7, 2022 Order, ECF No. 7456, on defendants' obligation to inform the court to the extent such regulations may replace certain chapters of the Program Guide, a primary remedial plan in this action; and (2) the parties' dispute over the scope of the court's August 23, 2023 Order, ECF No. 7924, regarding minimum treatment standards in the CDCR Psychiatric Inpatient Programs (PIPs).

Plaintiffs agreed to bring a motion for clarification of the August 23, 2023 order within twenty-one days.  That will be the order of the court.  Defendants will be directed to file opposition, if any they have, within fourteen days thereafter, and plaintiffs' reply will be due seven days thereafter.  The motion will be submitted without hearing unless the court orders otherwise.

/////

---

[4] The court is aware of defendants' preferred approach, expressed by Dr. Cartwright at hearing, under which all CDCR staff assigned to this project learn the necessary technical steps as the work progresses.  While the court applauds Dr. Cartwright's inclination to ensure the entire quality assurance team has the same knowledge base and skillset, that inclination appears to be contributing to the slowdown in data remediation.  The Special Master is responsible for guiding the data remediation process, not for training CDCR's quality assurance team.  This is particularly true in light of former CDCR Secretary Allison's representation "that the staff assigned to work on data remediation including its technical writers are sufficient in number and qualifications to complete data remediation before December 2023."  ECF No. 7556 at ¶ 6.

At hearing, the parties signaled general agreement with the contours of the proposed RHU regulations, which defendants represent will go into effect in April 2024. As noted, the dispute centers on the impact of the court's February 7, 2022 order on defendants' obligation to inform the court to the extent they intend such regulations to replace certain chapters of the Program Guide, a primary remedial plan in this action. In order to avoid any potential conflict between defendants' obligations to this court and state regulations, as well as to avoid duplicative or redundant efforts in the data remediation process, the court will resolve this dispute expeditiously.[5] Good cause appearing, the parties will take all steps necessary to file a joint motion for clarification of the February 7, 2022 order setting forth their respective positions, accompanied by a stipulation of counsel setting forth their agreements with respect to the substantive provisions of the RHU regulations. The parties shall include in the stipulation a joint representation of what they understand to be the position of the Special Master with respect to these regulations. These documents shall be filed on or before April 15, 2024 to enable the court to resolve the motion before the end of April 2024.

## IV.  CONCLUSION

Defendants' projection at the status conference that it will require an additional two years to complete data remediation, on its current path, is unacceptable. The court finds the deadlines and processes outlined in this order to complete remediation of 79 outstanding indicators will, if implemented promptly, aid in efficient earlier completion of a significant portion of the data remediation remaining. The court will consider the status of remediation of these indicators in April and May respectively to assess whether it needs to issue further orders to ensure timely completion of remediation. If sufficient progress is not made soon, as it signaled at the status conference, the court may have no choice but to retain an outside contractor to complete the necessary remedial work.

/////

---

[5] As of November 1, 2023, CDCR had implemented the new RSUs. *See* Restricted Housing - Division of Adult Institutions (DAI) (ca.gov) (last checked 3/30/24). At hearing, defendants suggested the final RHU regulations are scheduled to go into effect in April 2024 but did not provide an exact date.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Special Master shall take all steps necessary so that, not later than April 25, 2024, 41 indicators described in this order are marked as remediated. The court will accept an oral report from the Special Master at the April 26, 2024 status conference that these 41 indicators are marked as remediated.

2. Within seven days from the date of this order the parties shall show cause in writing if any they have why the court should not (1) delegate to the Special Master responsibility to ensure the 38 patient-wise indicators move through all five steps of the data remediation process so he can mark them as remediated by May 31, 2024 and (2) direct defendants to make Dr. Leidner available to work directly with the Special Master as needed to meet this deadline and to make equally available such CDCR mental health staff as Dr. Leidner may identify to complete necessary tasks.

3. On or before April 18, 2024, plaintiffs shall file a motion for clarification of the court's August 23, 2023 order. Defendants' response shall be filed on or before May 2, 2024, and plaintiffs' reply shall be filed on or before May 9, 2024. The motion will be submitted without oral argument absent further order of the court.

4. On or before April 15, 2024, the parties shall file a joint motion for clarification of the court's February 7, 2022 order setting out their respective positions together with a stipulation that sets forth their agreements with respect to the substantive provisions of the pending Restricted Housing Unit regulations and a joint representation of their understanding of the position of the Special Master with respect to the substance of these regulations. Absent further order of the court, the motion will be submitted without oral argument upon the filing of the motion and stipulation required by this order.

IT IS SO ORDERED.

DATED: April 1, 2024.

CHIEF UNITED STATES DISTRICT JUDGE