DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:    (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
ADRIENNE PON HARROLD – 326640
AMY XU – 330707
ADRIENNE SPIEGEL – 330482
BENJAMIN W. HOLSTON – 341439
MAYA E. CAMPBELL – 345180
LUMA KHABBAZ – 351492
JARED MILLER – 353641
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520-KJM-DB |
| Plaintiffs, | **PLAINTIFFS' MOTION TO CLARIFY ORDER RE: PIP MINIMUM TREATMENT STANDARDS** |
| v. | |
| GAVIN NEWSOM, et al., | Judge:   Hon. Kimberly J. Mueller |
| Defendants. | |

[4470617.5]

1   Pursuant to the Court's April 2, 2024 Order, ECF No. 8181 at 7, Plaintiffs hereby

2   move the Court for an order clarifying its August 23, 2023 Order ("August 2023 Order")

3   relating to minimum treatment standards in CDCR's Psychiatric Inpatient Programs

4   ("PIPs"), *see* ECF No. 7924.  Clarification is necessary to resolve the Parties'

5   disagreement about whether the August 2023 Order, in granting Plaintiffs' motion by

6   establishing a clear, measurable minimum treatment standard for structured group therapy,

7   rejected all other aspects of Defendants' March 2023 plan for setting and tracking of

8   minimum treatment standards relating to individual clinical contacts, treatment planning,

9   and unstructured out-of-cell time in the PIPs.  The text and history of the August 2023

10  Order make clear that the Court's intent in granting Plaintiffs' motion in part was to permit

11  Defendants to implement their proposed March 28, 2023 plan (ECF No. 7787, "the Plan"),

12  except to the extent that it set a 20-hour per week minimum for structured group therapy

13  rather than accepting Defendants' standardless proposal to provide such treatment based

14  on "clinical need."

## FACTUAL BACKGROUND

16  In 2013, the Court ordered the Special Master to report on the adequacy of

17  Defendants' inpatient mental health programs "and whether any modifications to

18  [D]efendants' remedial plan are required to ensure that members of the plaintiff class are

19  receiving adequate inpatient mental health care."  ECF No. 7924 at 3 (quoting July 11,

20  2013 Order, ECF No. 4688 at 11-12).

21  Between 2013 and 2022, the Special Master issued at least five stand-alone

22  monitoring reports on Defendants' inpatient mental health programs.  ECF No. 7924 at 3.

23  "Each report identifies inadequate levels of group and individual therapy offered at

24  inpatient programs that have now become the CDCR PIPs."  *Id.*

25  In light of these deficiencies, the Special Master's January 2021 inpatient report

26  recommended that the Court order Defendants to "develop minimum standards" not only

27  "for the provision of structured therapeutic activities" in the PIPs, but also for the

28  provision of "unstructured out-of-cell activities, treatment planning, and individual

1  treatment, consistent with a psychiatric inpatient level of care," as well as plans to

2  implement and track such minimum requirements. *Id.* at 5 (quoting ECF No. 7039 at 118

3  and ECF No. 7555 at 164-65). The Court adopted the Special Master's findings in full, but

4  declined to order the Special Master's January 2021 recommendation because Defendants

5  represented to the Court that they would "develop and submit plans" addressing these

6  issues "within 90 days." August 17, 2022 Order, ECF No. 7605 at 9-10 (quoting

7  Declaration of Elise Thorn, ECF No. 7051-1 at 11-12).

8     Defendants failed to follow through on this commitment. Accordingly in his

9  Twenty-Ninth Round monitoring report filed in May 2022, which continued to identify

10  problems relating to inadequate clinical contacts, treatment planning, and unstructured-out-

11  of-cell time, the Special Master again recommended, *inter alia*, that the Court order

12  Defendants to develop minimum standards for "structured therapeutic activities" in the

13  PIPs as well as "unstructured out-of-cell activities, treatment planning, and individual

14  treatment," plus plans for implementation and tracking. ECF No. 7924 at 5 (quoting ECF

15  No. 7555 at 164-65). The Court again adopted the SM's findings, over Defendants'

16  objections, while declining to issue the recommended order. ECF No. 7608 at 6. The

17  Court instead allowed CDCR Secretary Kathleen Allison to engage in "discussions" with

18  the Special Master "aimed at remediating the deficiencies…by a date certain." ECF

19  No. 7608 at 5.

20     These discussions "stalled" and Secretary Allison retired at the end of 2022. *See*

21  ECF No. 7697 at 2-3. The Court therefore vacated its August 29, 2022 order and ordered

22  Defendants to produce whatever plans they had developed "to address the issues covered

23  by" the Special Master's recommendation. *Id.* at 3. The Court further ordered the parties

24  to meet and confer regarding the adequacy of Defendants' plans under the supervision of

25  the Special Master for a period of 45 days and then file a joint report on the results of the

26  meet-and-confer process, along with either a stipulated resolution or a schedule for motion

27  practice if any issues remained unresolved. *Id.*

28     Defendants produced "preliminary plans" to Plaintiffs and the Special Master on

1   January 13, 2023, and the parties and the Special Master team met and conferred about

2   those preliminary plans on February 2, February 17, February 24, and March 9, 2023.

3   ECF No. 7758 at 2.  The parties filed the court-ordered Joint Report on March 13, 2023, in

4   which they reported that they had been unable to resolve their disagreements and therefore

5   proposed a briefing schedule.  *Id.* at 3.

6       Pursuant to the schedule in the Joint Report, Defendants filed their plan in response

7   to the Court's directive on March 28, 2023.  *See* ECF No. 7787.  This plan ("the Plan")

8   addressed some but not all of the specific requirements included in the Special Master's

9   recommendations.  As to the reporting and tracking requirement, Defendants committed to

10  develop key indicators measuring compliance with each of the proposed minimum

11  treatment standards as part of the data remediation process.  *See id.* at 7 ("CDCR will

12  develop audits and automated indicators to track and report on compliance with these

13  policies, including indicators to track timely contacts with psychiatrists and primary

14  clinicians and timely IDTTs.  The Special Master's list of provisional key indicators

15  includes a place holder for PIP indicators.  (See ECF No. 7151 at 26.) CDCR will propose

16  a package of key PIP indicators once its policies are finalized and bring each one through

17  the data remediation process.").  As to the four required categories of minimum treatment

18  standards, however, although it included measurable requirements governing treatment

19  planning, individual clinical contacts, and unstructured programming, the Plan did not

20  provide any minimum standards for structured group treatment.  ECF No. 7787 at 6-7.

21  Instead, the Plan stated that the amount of "structured programming" offered to each PIP

22  patient would be "[b]ased on individual clinical assessment and treatment planning by the

23  Interdisciplinary Treatment team."  *Id.* at 7.

24      Plaintiffs subsequently filed a motion in which they asked the Court to order

25  Defendants to revise their proposed treatment standards to provide, at a minimum, 20

26  hours of structured therapeutic treatment per week and 20 hours of unstructured out-of-cell

27  activities per week.  *See* ECF No. 7812 at 2, 22.  In particular, Plaintiffs objected to the

28  Plan's lack of any clear standard for structured group treatment, both as a substantive

1  matter and because it would be impossible to track and measure for compliance purposes.

2  *See, e.g.*, ECF No. 7812 at 9-16.  While Plaintiffs also raised concerns regarding aspects of

3  Defendants' Plan related to individual treatment contact frequencies for acute patients

4  (ECF No. 7812 at 20-21), they did not seek specific relief on this point, nor did they

5  challenge any other aspect of the Plan.  *See generally id.*

6  On August 23, 2023, the Court issued an order ("August 2023 Order") that granted

7  Plaintiffs' motion in part, and ordered Defendants to adopt and implement the same 20-

8  hour minimum structured treatment standard the Court had previously approved for

9  *Coleman* patients in the Department of State Hospitals.  ECF No. 7924 at 10.  In doing so,

10  the Court implicitly denied Plaintiffs' request that Defendants be required to provide

11  additional out-of-cell time beyond that proposed in the Plan.  *Id.* (stating that Plaintiffs'

12  motion was "GRANTED to [the] extent consistent with this order").

13  In early 2024, Defendants notified Plaintiffs that, because the Court's August 2023

14  order purportedly "rejected" the Plan's standards "for frequency of services, structured

15  programming, and unstructured programming," Defendants intended to draft a new

16  minimum-treatment policy establishing a 20-hour minimum for structured group treatment,

17  "unless clinically contraindicated," as well as "a method for documenting clinical

18  documentation for patients who are clinically contraindicated."  *See* Declaration of

19  Alexander Gourse ("Gourse Decl."), ¶ 2 & Ex. A.  Defendants further stated that they

20  intended to create a data indicator that measures compliance with the 20-hour standard

21  only, and that ignores the other standards in their plan.  *Id.*  When Plaintiffs' expressed

22  their disagreement with Defendants' interpretation of the August 2023 Order, Defendants

23  initially stated that they would seek leave from the Court to file a motion for clarification

24  of the August 2023 Order.  *Id.*  One week later, however, Defendants notified Plaintiffs

25  that they had "decided not to move forward with a motion to clarify" and would instead

26  "continue to work on a PIP minimum treatment policy that complies with the Court's

27  order."  *Id.*  Defendants subsequently produced a draft policy that included a 20-hour

28  minimum structured treatment standard as well as the standards relating to unstructured

1  programming, treatment planning, and individual clinical contacts that were included in

2  the Plan filed with the Court in March 2023. *Id.* But, despite promising in their Plan that

3  compliance with all four categories of treatment minimums would be measured as key

4  performance indicators through the data remediation process (*see* ECF No. 7787 at 7),

5  Defendants now refuse to create any compliance tracking mechanism for standards other

6  than the 20-hour minimum for structured group treatment, based on their belief that the

7  other standards in the draft policy "are not required by court order and, thus, are not part of

8  the Coleman remedy," Gourse Decl. ¶ 2 & Ex. A.

9      Plaintiffs disagree with Defendants' assertion that the August 2023 Order "rejected"

10  the other standards in their Plan related to individual therapy, treatment planning, and

11  unstructured out-of-cell activities and replaced them with a single 20-hour per week

12  structured therapy requirement. Plaintiffs request an order from the Court clarifying that

13  Defendants must implement and measure compliance with the standards set forth in their

14  March 2023 Plan *in addition to* the standard established by the August 2023 Order

15  requiring that patients be offered a minimum of 20-hours of structured group treatment per

16  week.[1]

17                              **ARGUMENT**

18      "A court may clarify its order for any reason." *In re Twitter, Inc. Sec. Litig.*,

19  No. 16-cv-05314-JST, 2020 WL 2519890, at *1 (N.D. Cal. May 18, 2020) (quoting *Wahl*

20  *v. Am. Sec. Ins. Co.*, No. C 080555 RS, 2010 WL 2867130, at *3 (N.D. Cal. July 20,

21  2010)). Clarification of a prior order is "undoubtedly proper" as a precursor to enforce-

22  ment proceedings because clarification can "facilitate compliance with the order" and

23  ───────────────

24  [1] Although Defendants have appealed the August 2023 Order, *see* ECF No. 7953, this
   Court retains jurisdiction to clarify the Order because doing so would not materially alter

25  the status of the appeal; instead, it would *preserve* the status quo by "effectuat[ing] the
   underlying purposes" of the Order. *NRDC, Inc. v. Southwest Marine, Inc.* 242 F.3d 1163,

26  1166-67 (9th Cir. 2001); *see also Meinhold v. U.S. Dep't of Defense*, 34 F.3d 1469, 1480
   n.14 (9th Cir. 1994) (no violation of divestiture rule where "district court issued the

27  amended order to clarify its original injunction and to supervise compliance"); *Morris v.
   Morgan Stanley & Co.*, 942 F.2d 648, 654-55 (9th Cir. 1991) (permitting clarification of

28  appealed order).

"prevent 'unwitting contempt.'" *Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945)). "[A] court should construe the scope of an injunction in light of its purpose and history, in other words, 'what the decree was really designed to accomplish.'" *Salazar v. Buono*, 559 U.S. 700, 762 (2010) (Breyer, J., dissenting) (quoting *Mayor of Vicksburg v. Henson*, 231 U.S. 259, 273 (1913)).

Here, both the text of the August 2023 Order and the context in which it was issued make it clear that the Court did not "reject" the standards in Defendants' March 2023 Plan relating to individual clinical contacts, treatment planning, and unstructured out-of-cell time – the first two categories of which Plaintiffs did not even challenge in their Motion. Instead, the Court granted Plaintiffs' Motion only insofar as it refused to accept Defendants' purported "standard" for structured group treatment, which did not comport with the Special Master's recommendation and was in fact standardless and unmeasurable. In all other respects, Defendants' Plan stands as put forth in March 2023, and that same Plan constitutes Defendants' proposed remedy to address the undisputed findings regarding longstanding treatment inadequacies in CDCR's inpatient psychiatric hospitals.

## I. THE TEXT OF THE AUGUST 2023 ORDER SUPPORTS PLAINTIFFS' INTERPRETATION.

The August 2023 Order states that "Defendants shall immediately adopt and implement in the CDCR PIPs the minimum treatment standards set out in the DSH CQI process approved by the Court." ECF No. 7924 at 10. According to Defendants, the absence of similar language stating that Defendants must *also* adopt and implement the standards from their own court-required plan means that the Court ordered them to adopt the DSH 20-hour minimum standard for structured treatment *but not* the standards in their Plan relating to treatment planning, unstructured treatment, and individual therapy.

But all the August 2023 Order says is that Defendants must adopt and implement the DSH minimum structured treatment standards because Defendants' plan failed to

include any actual minimum treatment standards, in contravention of the Special Master's recommendation. *Id.* It says nothing at all about Defendants' proposed standards for unstructured treatment, individual therapy, or treatment planning—each of which Defendants developed in response to the Court's prior order requiring them to address "the issues covered by" the Special Master's recommendation. *See, e.g.*, ECF No. 7697 at 3. Defendants assume that the August 2023 Order *implicitly* repealed their obligation to address the serious deficiencies the Special Master repeatedly identified in monitoring round after monitoring round relating to insufficient clinical contacts, delayed IDTTs, and inadequate treatment planning – findings the Court adopted each and every time. *See* ECF No. 7924 at 3 (citing ECF Nos. 5188, 5573, 7581, 7605, 7608). This assumption is squarely at odds with widely accepted interpretive norms—*see, e.g.*, *Swinomish Indian Tribal Comm. v. BNSF Railway Co.*, 951 F.3d 1142, 1156 (9th Cir. 2020) ("repeals by implication are not favored" in the context of legislation, absent "clear and manifest" evidence the legislature intended that result)—and the Court should reject it out of hand.

Defendants similarly mischaracterize the relationship between the August 2023 Order and the Plaintiffs' April 2023 Motion. According to Defendants, "Plaintiffs moved the court to reject [Defendants'] March plan in full," and the Court granted that request by ordering Defendants to adopt DSH's 20-hour structured treatment standards instead of the standards in Defendants' plan. *See* Gourse Decl., ¶ 2 & Ex. A. But Plaintiffs did not even challenge or seek relief regarding the Plan's standards related to individual clinical contacts and treatment planning,. *See generally* ECF No. 7812. And while Plaintiffs did seek an order requiring Defendants to provide 20 hours of unstructured out-of-cell time per week instead of the Plan's proposed 10 hours per week (*id.* at 2, 22), the August 2023 Order did not grant Plaintiffs' motion in full. Instead, it addressed only the deficiencies concerning structured therapeutic activity Plaintiffs identified in Defendants' Plan, and therefore implicitly denied Plaintiffs' request for more stringent standards relating to unstructured out-of-cell activities.

In short, Defendants' interpretation ignores the Court's statement that Plaintiffs'

1  April 2023 motion was granted only "to th[e] extent consistent with this order."  ECF
2  No. 7924 at 10.  This language makes clear that the rest of the Plan—which the Court
3  required Defendants to develop to address entrenched and well-documented deficiencies in
4  the PIPs—was accepted by the Court, over Plaintiffs' asserted objections.  The claim that
5  the Court's August 2023 Order "rejected" aspects of Defendants' Plan that Plaintiffs never
6  challenged, or that the Court declined to order Plaintiffs' requested relief, makes no sense.

7       The Court should grant Plaintiffs' Motion to Clarify in full because the text of the
8  August 2023 Order is inconsistent with Defendants' narrow interpretation.

9  **II.     BOTH THE HISTORY AND PURPOSE OF THE AUGUST 2023 ORDER
10           CONFIRM THAT DEFENDANTS MUST IMPLEMENT ALL STANDARDS
           IN THEIR PLAN.**

11       The history and purpose of the August 2023 Order further confirm that the Court
12  intended to require Defendants to adopt the 20-hour minimum structured treatment
13  standard *in addition to* Defendants' proposed PIP standards, not *instead of* them.  The
14  Court issued the August 2023 Order in response to Defendants' previous failures to
15  remediate *multiple* clinical deficiencies identified by the Special Master – not just those
16  related to structured therapeutic activity.  Those deficiencies included, *inter alia*,
17  Defendants' systemic failures to provide PIP patients with adequate treatment planning,
18  individual therapy, and unstructured out-of-cell activities.  *See, e.g.*, ECF No. 5448 at 62-
19  65, 183, 213, 241-42; ECF No. 5894 at 26-27, 40-43, 50-55, 171, 173; ECF No. 7039 at
20  20-21, 77-79, 117; ECF No. 7555 at 35, 49, 67-69, 111-14, 160-61; *see also* ECF No. 7039
21  at 118 and ECF No. 7555 at 164-65 (recommending that the Court order Defendants to
22  "develop minimum standards" not only "for the provision of structured therapeutic
23  activities" in the PIPs, but also for the provision of "unstructured out-of-cell activities,
24  treatment planning, and individual treatment, consistent with a psychiatric inpatient level
25  of care").  Defendants offer no basis whatsoever for their assertions that the Court
26  "reject[ed]" their proposed standards relating to individual clinical contacts, treatment
27  planning, and unstructured out-of-cell activities, and that compliance with those standards
28  need not be tracked because they "are not part of the *Coleman* remedy."  Gourse Decl.,

1    ¶ 2 & Ex. A.

2         Both the history and purpose of the August 2023 Order confirm that Defendants

3    must implement and develop compliance tracking mechanisms not only for the 20-hour

4    minimum requirement for structured treatment set forth in the Order, but also the standards

5    Defendants developed to address the undisputed deficiencies in the other three categories

6    of treatment identified in the Special Master's recommendation and the Court's prior

7    orders.  The notion that the Court's August 2023 Order implicitly determined that only

8    structured therapeutic treatment minimums are required to remediate the constitutional

9    violations in this case when it specifically required Defendants to develop a plan to set

10   minimum standards for all four categories of identified treatment deficiencies defies belief.

11   Plaintiffs' Motion challenged the structured therapeutic activity minimum standard, and

12   this Court granted relief setting a more stringent standard than Defendants' proposed.  As

13   to the aspects of Defendants' Plan that Plaintiffs never even challenged or where Plaintiffs'

14   challenge was denied by the Court, Defendants' proposed Plan stands, and is required by

15   this Court's Orders to remedy entrenched ongoing constitutional violations.  *Cf.*  ECF

16   No. 5711 at 16 n.5 (rejecting Defendants' claim that compliance with staffing plan was

17   voluntary, where Defendants had developed the plan in response to repeated findings of

18   constitutional violations and had not met their burden of proving that modification would

19   advance remediation of the underlying constitutional violations).  That includes not only

20   Defendants' proposed minimum treatment standards for individual clinical contacts,

21   treatment planning, and unstructured out-of-cell time, but also their Plan's commitment to

22   develop key indicators measuring compliance with those standards as part of the data

23   remediation and CQIT processes.  This Court should so clarify.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

**CONCLUSION**

The Court should grant Plaintiffs' Motion in full because Defendants' interpretation of the August 2023 Order is inconsistent with its text, history, and purpose alike.

**CERTIFICATION**

Plaintiffs' counsel certifies that he reviewed the following orders in preparing this filing: ECF Nos. 8181, 7924, 7697, 7608, 7605, 7581, 5711, 5573, 5188, 4688.

DATED: April 18, 2024                  Respectfully submitted,

                                       ROSEN BIEN GALVAN & GRUNFELD LLP


                                       By:  /s/ Alexander Gourse
                                            Alexander Gourse

                                       Attorneys for Plaintiffs

[4470617.5]

11