# APPENDIX 3

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                           GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



August 17, 2023

Tom Nolan
Cara Trapani
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, 6th Floor
San Francisco, CA 94105

VIA EMAIL

Tom and Cara,

I write in response to your July 31, 2023 letter regarding the California Department of Corrections and Rehabilitation's (CDCR) revision to its restricted housing unit (RHU) regulations.

As noted in my June 29 letter, the goal of the RHU project is to reduce and limit the use of restricted housing for all incarcerated persons, including those in the Mental Health Services Delivery System (MHSDS). CDCR understands that reduction in the use of, and length of stay in, restricted housing has long been a goal of *Coleman* Plaintiffs as well. CDCR has met at least twice with Plaintiffs this year to discuss this project, most recently on July 14 and August 1, 2023.

CDCR is disappointed that Plaintiffs have declined to stipulate to lift the population cap on the R.J. Donovan Correction Facility Administrative Segregation Unit (ASU) Enhanced Outpatient Program (EOP) hub. A key goal of CDCR's RHU project is to reduce unnecessary transfers as much as possible which, for EOP patients, would have the added benefit of ensuring continuity of care. Although CDCR predicts the need for less restricted housing beds going forward, flexibility in bed use is an important tool in reducing unnecessary transfers.

CDCR's responses to your July 31, letter are below.

    I.       C-Status and Privilege Group C

In Plaintiffs' July 31, 2023 letter and during our August 1, 2023 meet and confer, Plaintiffs raised several questions about the differences between C-status and Privilege Group C. With minor exceptions, this regulation package does not modify existing sanctions pertaining to C-status or Privilege Group C. The RHU project focuses on reducing the number of offenses eligible for restricted housing placement. As part of that plan, fourteen offenses have been removed from the restricted housing matrix. Instead of placement in restricted housing, inmates charged with those offenses may face the sanctions outlined in Title 15 section 3315(f)(5). Amongst those sanctions is possible placement on Privilege Group C. (Title 15 section

Page 2

3315(f)(5)(C).)[1]

Privilege Group C is distinct from C-status. C-status is reserved for inmates who are program failures in accordance with Title 15 section 3000. Inmates on C-status are placed on both Privilege Group C and Work Group C, which collectively impacts privileges, the ability to work, and credit earning. Program failure inmates can be placed on C-status for up to 180 days or time equal to the credit loss associated with the rules violation that resulted in program failure, whichever is shorter. These penalties cannot be assessed consecutively and must be applied by committee action.

Privilege Group C, however, only impacts privileges. Those privileges, such as visiting and canteen draws, are outlined in Title 15 section 3044(f)(2). Inmates on Privilege Group C continue in their work and education assignments. Placement in Privilege Group C does not bar placement in an assignment if the inmate is not already assigned. Inmates on Privilege Group C continue to participate in self-help programs, mental health treatment, rehabilitative programs, and other health care programs. Inmates on Privilege Group C continue to have access to unrestrained yard at least ten hours per week.

Notably, Title 15, section 3044(f)(2)(K) requires referral of EOP patients placed on Privilege Group C to the patient's interdisciplinary treatment team. The treatment team may recommend that certain privileges be granted back to the patient on a case-by-case basis when it is determined that the suspension of privileges would cause decompensation or would be detrimental to the patient's mental health status. Relatedly, section 3376(d)(3)(E)1. – 5. outlines the process for the Interdisciplinary Treatment Team to communicate with custody staff on recommendations for privilege restoration. These processes have been in place for over six years after having been negotiated with *Coleman* plaintiffs in 2016.

During our August 1 meet and confer, Plaintiffs raised questions about what is available on tablets for inmates on Privilege Group C. Free content includes games, religious materials, education materials, institutional handbooks, institution-initiated communications, inmate tablet account information, and electronic forms. Restricted content not available includes phone dialers, video calling, movies, music, messaging, photo gallery, and news and sports.

CDCR will not be making further changes to the C-status regulations, such as reducing the length of time an inmate can remain on C-status, modifying the definition or thresholds therein for program failure, or creating separate C-status rules for MHSDS patients.

    II.    Psychiatric Services Unit at California State Prison, Sacramento

CDCR will convert the Psychiatric Services Unit (PSU) housing units to EOP RHUs. Patients housed in the PSU will become EOP RHU patients and will transfer out of those housing units when their RHU terms end. CDCR does not plan to specially transfer patients from the PSU

---

[1] Inmates charged with indecent exposure or sexually disorderly conduct (two within a twelve-month period) shall be placed in Privilege Group C prior to adjudication of the offense. (Title 15 section 3044(f)(1)(B)1.)

housing units to other institutions' EOP RHUs.  Rather, CDCR expects the populations within the former PSU and the new RHU EOPs to naturally change over the next several months.

   III.   Program Guide and Compendium Rules for Long- and Short-Term Restricted Housing and PSU

CDCR does not believe that the RHU program materially modifies the *Coleman* remedy.  As described more below, CDCR will ensure patients in the CCCMS or EOP RHUs continue to be offered care commensurate with that offered in existing restricted housing programs such as the Short- or Long-Term Restricted Housing units, the ASU EOP Hubs, or PSUs.

At this time, it is too early to predict which exact housing units or beds will close due to anticipated reductions in the restricted housing population.  CDCR is currently in the process of assessing which beds to close and when to close those beds.  That assessment will continue after the RHU project goes live on November 1, 2023.  As previously noted, the Pelican Bay Security Housing Unit will close in December 2023.  For now, existing CCCMS restricted housing units will convert to CCCMS RHUs and existing EOP restricted housing units will convert to EOP RHUs.  Closure or expansion of CCCMS or EOP RHUs will be handled through mission change letters.

CDCR will soon share a copy of its EOP RHU and CCCMS RHU healthcare policies.  CDCR plans to offer the highest amount of care available between either Short- or Long-Term Restricted Housing programs, or between ASU EOP Hub and PSU programs.  For instance, CCCMS RHU patients will receive daily rounding, be offered at least weekly clinical contacts, be offered psychiatry contacts at least every ninety days, and be offered an initial IDTT within fourteen days of admission and quarterly thereafter.  Similarly, EOP RHU patients will receive daily rounding, be offered at least weekly clinical contacts, be offered psychiatry contacts at least every month, be offered at least ten hours of structured treatment per week, and be offered an initial IDTT within fourteen days of admission with follow up IDTTs sixty days after admission, 120 days after admission, and every quarter thereafter.

CDCR's mental health staffing will be set at a level that requires the highest level of staff based on current program design.  The tables below show CDCR's proposed staffing packages for the EOP and CCCMS RHU programs.

| Staff Psychiatrist | Current Staffing Ratios | Proposed CCCMS-RHU Ratios |
|---|---|---|
| STRH | 1:101 on Meds/ 1:303 Not on Meds | **1:101 on Meds/1:303 Not on Meds** |
| LTRH | 1:161 on Meds/ 1:483 Not on Meds | |

| Psychologist | Current Staffing Ratios | Proposed CCCMS-RHU Ratios |
|---|---|---|
| STRH | 1:29 (+1.0 for every STRH building for up to 125 patients in addition to this ratio) | **1:29 (+1.0 for every CCCMS RHU building for up to 125 patients in addition to this ratio)** |
| LTRH | 1:29 | |

| Social Worker | Current Staffing Ratios | Proposed CCCMS-RHU Ratios |
|---|---|---|
| STRH | 1:68 | **1:68** |
| LTRH | 1:81 | |

| Staff Psychiatrist | 2009 Staffing Ratios | Proposed EOP-RHU Ratios |
|---|---|---|
| EOP ASU | 1:52 | **1:51** |
| PSU | 1:51 | |

| Psychologist | 2009 Staffing Ratios | Proposed EOP-RHU Ratios |
|---|---|---|
| EOP ASU | 1:10.5 | **1:10.5** |
| PSU | 1:14 | |

| Social Worker | 2009 Staffing Ratios | Proposed EOP-RHU Ratios |
|---|---|---|
| EOP ASU | 1:45 | **1:32** |
| PSU | 1:32 | |

Mental health staff will also receive training on the new RHU programs, including changes to the RHU matrix.

As stated during the August 1, 2023 meeting and my June 29, 2023 letter, CDCR will use the existing ASU EOP Hub certification process to assess the care provided in the EOP RHUs.

CDCR will also continue to use intake cells in accordance with policy. Like today, all inmates placed in an RHU will be placed in an intake cell or double celled for at least seventy-two hours. Given anticipated population reductions, CDCR does not foresee the need for additional intake cells at this time but will continue to assess the need as the population shifts in the coming months.

The RHU regulations, including the changes in RHU terms, will not apply retroactively.

    IV.    Out of Cell Time

All inmates in RHU will be offered at least twenty-hours of out of cell time per week. This includes patients housed in housing units that are currently female Short Term Restricted Housing, reception center Short Term Restricted Housing (STRH), and Long Term Restricted Housing (LTRH). Operationally, out-of-cell time minimums will be achieved by offering mental health treatment, day room, or yard time depending on the type of RHU and each institution's physical plant. Aside from setting a twenty-hour minimum, no additional expansion of out-of-cell time is anticipated as part of this regulation package.

Staffing packages are being developed to ensure each program has adequate custody staffing to provide required out of cell services.

     V.      EOP and CCCMS RHU Transfer Timeframe Exceptions

CDCR understands that Plaintiffs object to inclusion of transfer timeframe exceptions in the RHU regulations. Both the timeframes and their exceptions are consistent with CDCR policy and practices. The RHU regulations reiterate that transfers to the appropriate RHU must occur within 30 days. Notably, the regulations "suspend" timeframes in four ways:
1) Healthcare staff determine based on medical necessity a transfer cannot occur and places a medical hold.
2) The delay results from the inmate's refusal to transfer.
3) The inmate is out to court.
4) The inmate is placed in a Mental Health Crisis Bed or higher level of care.

Once the exception resolves, timeframes resume. (See e.g., Title 15 section 3335.2(d) and 3335.3(d).)

The four exceptions are consistent with CDCR policy and practice. While CDCR adheres to timeframe policies governing movement to and between restricted housing units, CDCR also adheres to medical policies, including those governing medical holds, and appropriately balances between both mandates. In addition to transfer timeframes found in regulations and Program Guide policies, CDCR also adheres to Chapter 1, Article 2, Section 14, Appendix 1 (Medical Classification Factors) of the Health Care Department Operation Manual (HCDOM) which governs placement of medical holds. Patients placed on medical holds remain in their assigned institution until healthcare clears the patient for transfer. Medical staff always attempt to resolve the issue or see if the care can be provided at the receiving institution to expedite the transfer.[2]

Likewise, transfer timelines must yield to valid court orders, such as those requiring a patient to leave the institution for court appearances. And transfer timeframes must suspend when a patient transfers out of restricted housing to the crisis bed or inpatient levels of care.

When patients refuse to transfer, a situation outside of CDCR's control, timeframes must also yield in order to avoid dangerous results. Transfer refusals usually occur on the same day the transfer is set to occur. Inmates may refuse to transfer based on safety fears which must then be investigated and the inmate must be returned to committee. The alternative – forcing the inmate to transfer – is also not ideal. CDCR previously understood that Plaintiffs opposed unnecessary uses of force and transfers that resulted in avoidable victimization. Accordingly, in order to ensure staff and inmate safety, CDCR will find safe alternatives to forcing an inmate's transfer, even if that means waiting beyond transfer timeframes.

To codify longstanding practices and conform with existing HCDOM requirements, CDCR will include these exceptions in the final RHU regulations. CDCR understands that transfer timeframe exceptions are a dispute between the parties in mental health's data remediation project. The design of data indicators and whether and how policy or regulations apply to those indicators is best handled in that setting. Additionally, indicators impacted by this regulation

---

[2] To the extent Plaintiffs take issue with how medical holds are placed and reviewed, that issue may be more appropriate for court coordination as the HCDOM policies are managed by California Correctional Health Care Services.

package, such as those governing STRHs, LTRHs, ASU EOP Hubs, and PSUs will require updating during the annual review process.  The time to discuss the applicability of transfer timeframe exceptions to those indicators is during that process.  Finally, issues of compliance in the data remediation process are not yet ripe for discussion as those will be presented to the court later.

VI.   Objections to Section 3335

Plaintiffs object to two new provisions of section 3335, regarding non-disciplinary restricted housing (NDRH) patients.  Both provisions are consistent with court adopted plans as well as the court ordered MHSDS Program Guide.  Plaintiffs object to section 3335(b)(1)(E), which extends NDRH property and privileges to those inmates "post restricted housing unit maximum release date (RHU MRD) pending transfer to" general population.  Plaintiffs also object to section 3335(b)(1)(F), which extends NDRH property and privileges to patient waiting in restricted housing due to lack of available bed.  These rules are consistent with CDCR's August 14, 2014 policy on NDRH processing procedures for MHSDS patients (see ECF No. 5190 at 17) which has also been included in the 2021 MHSDS Program Guide at page 524.  (See ECF No. 7333-1 at 524-528.)

Regarding the post-RHU MRD rule, it appears that Plaintiffs mistakenly believe that post-MRD inmates are subject to the 72-hour transfer timeline.  That is not correct.  Post-MRD inmates have never been subject to the 72-hour transfer timeline.  CDCR's August 14, 2014 policy states that "Post MERDs will retain NDS status for privileges and property but not be considered for the accelerated transfer process."  (*Id*., see also ECF No. 5190 at 17.)

Similarly, the rule governing NDRH property and privileges for patients lacking an available bed is also consistent with CDCR's 2014 plans and the August 14, 2014 memo.  (*Id*.)  The Program Guide policy states that NDS property and privileges will be extended to "[i]nmates placed into segregation units upon transfer to their endorsed institution due to lack of appropriate bed."  Plaintiffs note that holding a patient in restricted housing due to lack of available bed may violate the *Armstrong* remedial plan.  CDCR's February 3, 2015 *Armstrong* policy prohibits housing *Armstrong* class members in segregation due to lack of *accessible* beds and remains in effect.  This regulation does not modify that court ordered requirement.

/

/

/

/

/

/

Page 7

VII.    Next Steps

CDCR's RHU regulation package will significantly limit the use of restricted housing which will benefit all inmates, including those in the MHSDS.

CDCR will submit these regulations to Office of Administrative Law by October 1 and will begin the RHU programs on November 1. CDCR will notify the Plaintiffs when this regulation package goes to public comment.

Sincerely,

*/s/ Nick Weber*

NICK WEBER
Attorney
California Department of Corrections and Rehabilitation
Office of Legal Affairs