APPENDIX 5



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830  ▪  F: (415) 433-7104
www.rbgg.com

Thomas Nolan
Email:  tnolan@rbgg.com

September 21, 2023

<u>VIA EMAIL ONLY</u>

Nicholas Weber
Attorney IV
CDCR Office of Legal Affairs

Re:    *Coleman v. Newsom*: Plaintiffs' Comments, Questions and Objections to
       Proposed CCCMS RHU and EOP RHU Policies
       <u>Our File No. 0489-03</u>

Dear Nick:

We write to raise concerns, questions, and request changes regarding CDCR's draft healthcare policies governing the CCCMS and EOP Restricted Housing Unit ("RHU") programs in order to bring them into alignment with the Program Guide and other *Coleman* policies and regulations.  The draft policies, which you provided on August 22, 2023, are attached hereto as **Attachments A** and **B** for ease of reference.

As a preliminary matter, we have four global concerns:

<u>First</u>, CDCR should draft a third policy covering mental health care, surveillance, screening and referrals in the general RHU units that are not specialized for EOP or CCCMS patients.  Defendants' new RHU plan will take the six current segregation housing types and consolidate them into three new types of units:  RHU Units (merging ASU and SHU unit types), CCCMS RHU Units (merging STRH and LTRH unit types) and EOP RHU Units (merging EOP ASU and PSU unit types).  In addition to the CCCMS RHU and EOP RHU policies CDCR has drafted, and which we comment on here, CDCR should create a third policy to combine and harmonize the Program Guide requirements that currently apply to the non-MHSDS segregation units (i.e., the ASU and SHU, which will now be combined as "RHU").  The Program Guide contains important substantive requirements for these non-mental health segregation settings, covering pre-placement screening, rounding, referral processes to specialized segregation units, and other key parts of the *Coleman* remedy.  *See generally* 2021 Program Guide, ECF No. 7333-1 at 126-53 (Chapters 7 and 8 of the Program Guide, outlining requirements for incarcerated people housed in the ASU and SHU, respectively); *see also id*. at 127-28

[4361441.2]

Nicholas Weber
September 21, 2023
Page 2

(sections 12-7-2 & 12-7-3, requiring "[d]aily clinical rounds of all inmates" in ASU and pre-placement mental health screening; referrals by any "staff member who observes possible signs or symptoms of a serious mental disorder" using the MH-5 form; and requiring individuals to receive the Ad Seg Orientation Mental Health Guide); *id.* at 130 (section 12-7-5, requiring that the "LPT shall make initial contact with each inmate placed into ASU within 24 hours of ASU placement," and requiring a morning check-in between clinical and custody staff in the ASU). In addition, the SHU exclusion orders will need to be addressed in the RHU conversion process. *Id.* at 12-8-1 and 12-8-2 (setting forth PBSP SHU exclusionary criteria). If the entire PBSP SHU is closed before the conversion, that will not be a factor.

Second, Defendants will need to inform the Court of all changes to the Program Guide and seek approval from the Court. If we are able to work through our concerns below and any other concerns raised by the Special Master team during our discussions of these new policies, we would be willing to join Defendants in notifying the Court of the proposed changes and seeking the Court's approval.

Third, while we have attempted in our below comments to ensure that all relevant Program Guide, Compendium, Court orders, and other operative remedial requirements have been incorporated in CDCR's draft EOP and CCCMS RHU policies, Plaintiffs reserve the right to request incorporation of additional *Coleman* remedial requirements should we identify any that are missing in the future.

Fourth, during the parties' July 14, 2023 meeting regarding the proposed RHU regulation package, you assured us that in drafting the EOP RHU and CCCMS RHU policies, you would compare the two sets of requirements (i.e., PSU and EOP ASU Hub requirements on the one hand, and LTRH and STRH requirements on the other) and maintain the most generous treatment requirements/most protective options from whichever policy currently exists. What was your process for researching the relevant requirements, and what remedial documents did you consult during the drafting process?

## I.    Plaintiffs' Comments on Draft EOP RHU Policy

We have the following concerns about the draft EOP RHU policy (Attachment A, hereto).

### A.    Double Counting Concern With Respect to Weekly Yard Time

The proposed EOP RHU policy, at section (e)(4)(1), currently provides that "[a]ll patients assigned to an EOP RHU shall be offered a minimum of ten hours of out-of-cell exercise each week, which may include supervised recreational therapy." As Steve Fama noted in his September 11, 2023 email, this provision could be interpreted to allow

Nicholas Weber
September 21, 2023
Page 3

recreational therapy hours to count *both* towards the mandated 10 hours of structured therapeutic activity *and* towards the 10 hours of yard required to be offered to EOP patients in segregation. This perverse interpretation would result in EOPs in RHUs receiving far fewer than the 20 hours of out-of-cell time than will be guaranteed to non-MHSDS individuals in RHU units under the new regulations. Although this language is from the Program Guide (section 12-9-12), it is critical to clarify that double counting is not appropriate. We suggest revising this section of the draft policy on page 5, section (e)(4)(1), as follows:

> All patients assigned to an EOP RHU shall be offered a minimum of ten hours of out-of-cell exercise each week, which may include supervised recreational therapy. This is in *addition* to the minimum ten hours of structured therapeutic activity that must be offered, for a total minimum weekly amount of out-of-cell time of least twenty hours.

**B.      Request to Expand Total Out-of-Cell Time Beyond 20 Hours for EOP and CCCMS Patients**

Given the expansion of out-of-cell time in RHU segregation units for individuals who do not have mental health issues to 20 hours, CDCR should expand EOP and CCCMS out-of-cell recreation time and non-structured therapeutic activity time beyond the current ten hours. EOP patients were originally given greater out-of-cell time in segregation units—10 hours of therapy plus 10 hours of yard—because of their greater risk of decompensation due to the isolation and stress of segregated environments. They should receive extra out-of-cell time for non-structured recreation time similar to what other, non-mentally ill individuals will receive under the new revised RHU program and regulations. We propose offering at least 15 hours of yard/recreation time to EOP and CCCMS patients in RHUs.

**C.      Weekly Individual PC Contacts Mandated in Program Guide Missing in EOP RHU Policy**

The proposed EOP RHU Policy provides that "[i]ndividual clinical contacts shall occur at least every other week." Draft EOP RHU Policy at 4, section (e)(3)(C)(1)(b). However, the Program Guide requires that each patient's assigned primary clinician provide "[w]eekly **individual** contacts for CCCMS and EOP patients" in Administrative Segregation Units. *See* 2021 Program Guide, ECF No. 7333-1 at 138 (section 12-7-13, emphasis added); *see also id.* at 135 (section 12-7-10, requiring "[w]eekly PC contact"). This is in contrast to the PSU, where patients can be seen every other week in a group setting. *See id*. at 161 (section 12-9-8, requiring "[w]eekly PC contact (either individually or in group psychotherapy) with assigned inmate patients. Individual

clinical contacts shall occur at least every other week").  In keeping with your promise to adopt the more stringent requirements when combining the EOP ASU and PSU policies, the requirement for individual weekly PC contacts must be adopted for the EOP RHU. The relevant Program Guide requirement also applies to CCCMS patients in ASU units. The proposed CCCMS RHU Policy, discussed below, actually does require weekly individual PC contacts for CCCMS RHU patients.  *See* Draft CCCMS RHU Policy at 3 (section (e)(3)(A)(2)).  If the current language in the EOP RHU policy is retained, it would have the odd effect of making the treatment provided to CCCMS individuals in RHU more intensive and stringent in this respect than that provided to higher level of care EOPs.

### D.    Daily Rounding by Licensed Psychiatric Technician (LPT)

The Program Guide requires LPT rounding seven days a week in EOP ASU hubs. *See* 2021 Program Guide, ECF No. 7333-1 at 135 (section 12-7-10).  This requirement is missing from the draft EOP RHU policy.  Instead, the draft policy states on page 6 in section (e)(3)(7)(A):

> The EOP RHU shall have mental health staff on duty during Second Watch.  Each day, the assigned physician, Registered Nurse (RN), or LPT will tour the unit and assess any patient with medical or dental needs.

Although the final clause in the above sentence is copied directly from Program Guide section 12-9-12 (the PSU Chapter), this "tour the unit" language could be read as requiring only checking on people with previously known medical or dental conditions. Accordingly, the Program Guide language from the ASU Chapter must be added to the draft policy.  We request that it be added on page 4 under section (e)(3)(C)(1) of the draft EOP RHU Policy as follows under subpart (d):

(e) Daily LPT rounds seven days per week.

### E.    Stricter Program Guide Rules for Working With High Refusers Are Missing from the Draft EOP RHU Policy

The Program Guide has stricter rules for the frequency and intensity of work with high treatment refusers for EOP ASU Hub patients that are missing in the draft policy. Instead, the new policy contains only the weaker PSU mandates.  *See* Draft EOP RHU Policy at 4-5 (sections (e)(3)(D)(1)-(4)).  For ASU EOP Hub patients, the Program Guide mandates daily interactions on work days with high refusers, treatment plan modification to address failure to attend treatment, discussion of such patients in morning huddles with custody staff, and consideration of higher level of care referrals that are documented, among other requirements.  *See* 2021 Program Guide, ECF No. 7333-1 at 135-36

Nicholas Weber
September 21, 2023
Page 5

(sections 12-7-10 & -11); *id.* at 467-68 (Feb. 25, 2015 memo titled "Review Of Refusal To Attend Mental Health Treatment By Administrative Segregation Unit Enhanced Outpatient Program Hub And Psychiatric Services Unit Inmates"). These mandates must be included *in addition to* the requirements that currently appear in the draft policy.

> ### F.    ASU Suicide Prevention Remedies

All of the suicide prevention remedies currently applicable to segregation units must be incorporated into the new RHU policies. It is not clear that this is the case. For example, there are numerous ASU intake cell policies in the Program Guide that are not reflected in the draft policy. CDCR is currently working to consolidate some of the Program Guide pocket part policies in a draft memorandum titled "Updated Process and Procedure for Segregated Housing Program Intake Cell Usage Within California Department of Corrections and Rehabilitation Reporting." (2023 Memo). The 2023 Memo is still in draft form as of the date of this letter.

According to Dillon Hockerson's September 1, 2023 letter regarding the draft 2023 Memo, there is an April 26, 2022 memorandum titled "Process and Procedure for Administrative Segregation Unit Intake Cells Usage Within The Strategic Offender Management System"—which apparently superseded the October 15, 2015 Program Guide memorandum titled "Revised Administrative Segregation Unit Intake Cell Procedure" (*see* 2021 Program Guide, ECF No. 7333-1 at 569-71)—that "will be consolidated, rescinded, and incorporated in the 2023 Memo." This is important because the October 30, 2015 Revised ASU Intake Cell Procedure contains requirements that must be employed in all of the new RHU units and reflected in the relevant policies. Once the 2023 Memo is finalized, it should at least be referenced in the RHU policies.

In addition, updated policies and procedures that were Court-ordered as a result of Mr. Hayes' monitoring reports on suicide prevention issues need to be included, including recently updated mandates for automated tracking of intake cell usage in SOMS and related governance training, *see* Oct. 31, 2022 Updated Activation Schedule, ECF No. 7646 at 4, and mandates for fidelity checks of psychiatric technician rounding in segregation units by nursing supervisors that were implemented in response to Lindsay Hayes' Recommendation 20. *See id.* at 8.

Also, the EOP RHU policy should include the suicide prevention policy implemented through the May 5, 2015 Memo Re Weekly Supervisory Review of Form 114-A Inmate Segregation Records, which states that "[t]o ensure inmates in ASU are offered and receiving required access to mandated programming, DAI will now require documentation of the necessary weekly review by the assigned ASU custody supervisor" and which also announces "weekly audit[s] of the CDC Form 114-A1" and required

monthly Warden review of documentation and certification of ASU units.  *See* September 29, 2021 Program Guide Compendium, ECF 7333-2, at ECF 4 (May 5, 2015 Memo Re Weekly Supervisory Review of CDC Form 114-A Inmate Segregation Records & CDC Form 114-A1 Inmate Segregation Profiles Requiring Warden Certification of Administrative Segregation Units.).

### G.    12-Step Programs Authorized as Treatment Activities in EOP RHU

The draft EOP RHU policy on page 4 under section (e)(3)(C)(2)(k) lists "12-Step Program and other substance use treatment" as a possible treatment activity that can counts towards EOP patients' required ten hours of offered structured therapeutic activities per week.  But while 12-Step programs and other substance abuse programming is currently authorized as a treatment activity in PSU units, it is not specifically authorized in EOP ASU programs.  *Compare,* 2021 Program Guide, ECF No. 7333-1 at 135 (section 12-7-10, EOP ASU treatment activities) *with id.* at 162 (section 12-9-9, PSU treatment modality list specifically authorizing 12-step program and other substance abuse).  We would like to know if the Special Master's experts have any concerns about 12-step program meetings, which are generally led by incarcerated individuals, counting as structured therapeutic activities in the EOP ASU context or the future RHU context.  We do not think that programs with no clinician leaders should count as "structured" treatment.

### H.    Behavioral Incentive Program

We understand that the SAC PSU has a behavioral incentive program (BIP), while the EOP ASU Hub programs do not.  *See* September 29, 2021 Program Guide Compendium, ECF 7333-2, at ECF 5 (March 12, 2018 SAC PSU LOP 129 setting forth BIP for CSP-SAC PSU).  There new EOP RHU policy on page 3 at section (e)(3) appears to require a local BIP as part of the local Operational Plan in all EOP ASU Hub units once they become RHU units.  Is this in fact a change from current EOP ASU Hub practice?  We are concerned with any use of behavioral incentive plans that would make short-term ASU placement even more restrictive than they are currently for people with mental health concerns.  We would like to see a draft of the operational BIP policies for all RHU units once drafted to ensure that they are not punitive and include appropriate positive incentives.

### I.    DSH/PIP Returns to PSU Require a Case Conference and Related ICC and C&PR Mandates

Our understanding is that DSH/PIP returns to PSU/SHU units require a case conference between clinical staff  to make a recommendation to the ICC upon the

Nicholas Weber
September 21, 2023
Page 7

patients' return to the SHU/PSU about appropriate housing, with the intent of possibly reassessing or suspecting SHU terms (with the involvement of the C&PR). *See* 2021 Program Guide, ECF 7333-1 at 473 (Policy 15-0225, Required Case Conference – Discharge); *see also* Compendium of Custody-Related Remedial Measures, ECF No. 7333-2 at 4 (September 19, 2014 DSH memo Case Conference for Returning DSH Level of Care Inmates with Prior Security Housing Unit Placement). The process is not the same for EOP ASU Hub patients. The more protective process outlined in the 2015 Program Guide policy should be mandated in the EOP RHU policy for all returns from all inpatient programs, including PIPs, as well as in the instance of returns to CCCMS RHUs and regular RHU units (which will be the equivalent of SHU units covered in the policy). Defendants should also consider requiring a case conference for all returns from inpatient hospital programs to RHU units of any kind including the C&PR review for giving "special consideration of reassessment and suspension of SHU terms in order to avoid segregated housing placement upon discharge, if appropriate …." *Id*.

In addition, the new policies should also address the psych and return casework expectations set for in the March 21, 2013 CDCR Memo on Casework Expectations, Classification Time Frames, and Psychiatric and Return Policy for Department of State Hospital Acute and Intermediate Care Facility Patients, which requires that in the two-week period before a discharge back to CDCR, CDCR staff will "determine if the inmate-patient's case factors remain appropriate prior to return to the sending institution or if additional ICC review is required to address and resolve safety concerns or disciplinary issues *in order to avoid ASU/SHU placement upon discharge." See,* September 29, 2021 Program Guide Compendium, ECF 7333-2, at ECF 4 (March 31, 2013 Memo Re Casework Expectations, Classification Time Frames, and Psychiatric and Return Policy for Department of State Hospital Acute and Intermediate Care Facility Patients). (emphasis supplied). We would also like to know if this policy has been applied to PIP transfers back to segregation units since lift and shift.

## J.    Length of Stay Reviews and Long Term Segregated Case Conferences

The Program Guide requires:

Inmate-patients housed in ASU for more than 90 days shall be reviewed every thirty days outside of the ICC process, by the Facility Captain and Correctional Counselor II. The status of each case, with detailed information regarding reasons for delays in the referral, disciplinary, classification, and/or transfer process, shall be compiled and reviewed by the Warden or designee (Chief Deputy Warden, or Associate Warden for Health Care). The Warden shall ensure that reviewers take action to resolve any issues that impact length of stay in ASU.

Nicholas Weber
September 21, 2023
Page 8

2021 Program Guide, ECF No. 7333-1 at 134 (section 12-7-9).  These length of stay reviews are not discussed in the EOP RHU policy, but they should be.

The Program Guide separately requires long-term segregated case conferences under a September 15, 2014 memorandum titled "Priority Case-by-Case Review of Mental Health Delivery System Long-Term Segregated Inmates."  *Id.* at 535.  This memo requires that "all MHSDS ASU inmates retained in ASU over 150 days and those specified in MHSDS SHU/PSU cases also retained in segregated housing shall be referred for a Long Term Segregated Case Conference."  *Id.* at 538.  The purpose of these reviews are to "determine if the inmate demonstrates an ongoing security risk," and, if not, to be "considered for release to the General Population."  *Id.*  If, after the initial Long Term Segregated Case Review, the patient is retained in segregation, they must be re-reviewed at intervals not to exceed 180 days for SHU/PSU patients, and not to exceed 90 days for ASU patients.  *Id.* at 538-39.  The Warden, treating psychiatrist, senior psychologist supervisor of the mental health program, and other leadership staff are required to attend these conferences.  *Id.* at 538.

On August 29, 2023, you informed us that CDCR discovered a July 2023 policy memo that reiterated the expectations of the September 15, 2014 policy, and requested Plaintiffs' feedback.  We are in the process of reviewing the July 2023 memo.  In any event, these case conferences should be referenced somewhere in the EOP and CCCMS RHU policies.

### K.    Clinician Attendance at Institutional Classification Committee (ICC) Meetings

The Program Guide requires that for all ASU and PSU/SHU patients, "[t]he assigned psychiatrist or Primary Clinician (PC) shall attend all Institutional Classification Committee (ICC) meetings to provide mental health input."  *See* 2023 Program Guide, ECF No. 7333-1 at 126, 144, 158 (sections 12-7-1, 12-8-4, and 12-9-5, respectively).  In October 2022, during the Level 1 Data Dispute Resolution Process for the indicator titled *ICCs with Mental Health Clinicians Present, and Relevant Information Provided* (RH7), the parties negotiated a revised policy, allowing mental health supervisors to designate non-assigned clinicians as a representative at ICCs under certain circumstances.  This 2022 memorandum, titled "Clinician Attendance at Institutional Classification Committee In Segregation Programs," should be referenced in the RHU policies.

### L.    Post-Placement Screening For Non-MHSDS Patients

While the draft CCCMS and EOP RHU policies contain the Program Guide's pre-placement screening requirements for EOP and CCCMS patients, they are missing the

Nicholas Weber
September 21, 2023
Page 9

Program Guide requirement for post-placement screening of all non-MHSDS patients in segregation by mental health staff within 72 hours of placement. *See* 2021 Program Guide, ECF No. 7333-1 at 131 (section 12-7-6); *id.* at 461 (June 7, 2016 memo, "Release of New Mental Health Post-Placement Screening Form for Administrative Segregation Units"). This requirement should be included in a separate policy for general RHU units, as discussed in the introduction above.

      **M.**      **Structured Therapeutic Activities**

The Program Guide requires "ten hours per week of **scheduled structured therapeutic activities**" in EOP ASU Hub units. 2021 Program Guide, ECF No. 7333-1 at 135 (section 12-7-10, emphasis added). The draft EOP RHU policy discusses offering "at least ten hours per week of **scheduled therapeutic activities** as approved by the IDTT." EOP RHU Policy at 4 (section (e)(3)(B)(7), emphasis added). The EOP RHU policy language should be changed to add the word "structured" in the description of the 10-hour mandate.

      **N.**      **Transfer Timeline for EOP ASU Hub Patients**

The draft EOP RHU policy does not include the 30-day transfer timeline for sending EOP patients placed into an ASU unit to an EOP ASU hub. *See* 2021 Program Guide, ECF No. 7333-1 at 19 (section 12-1-16, requiring Hub transfer within 30 days of ASU placement or referral to EOP level of care). We previously objected in our July 31, 2023 letter about the proposed RHU Regulations to exceptions included therein to the 30 day transfer timeline for EOP RHU units in that policy. *See* Proposed Cal. Code of Regs, tit 15 § 3335 & Plaintiffs' July 31, 2023 Letter. Is there a reason that the 30 day timeline is in the regulations but not in the EOP RHU policy? Even though it is also in the regulations, the 30-day EOP RHU transfer timeline should be included expressly in the text of the EOP RHU policy (rather than in a vague reference to Section 3335 that does not recite the 30-day transfer timeline).

In addition, regarding the exceptions to the timeline, a memo in the compendium specifically forbids medical holds being used as a reason to retain someone in segregation. *See* September 29, 2021 Program Guide Compendium, ECF 7333-2, at ECF 5 (September 22, 2016 Memo Re Reasons for Retaining Inmates in Segregated Housing, Removing Medical Hold from COMSTAT, stating that "the purpose of this memorandum is to reiterate that inmates shall not be housed or retained in segregated housing due to a medical hold or pending Department of State Hospitals placement.")

[4361441.2]

Nicholas Weber
September 21, 2023
Page 10

**O.     Department of Operations Manual (DOM) Rule About Using Private Location When Strip Searching in EOP RHU Units:**

Currently, DOM § 52050.16.6, which is incorporated into the Compendium (ECF No. 7333-2 at 3) requires that when conducting an unclothed body search in an EOP ASU Hub or PSU unit, the following shall apply:

> Unclothed body searches shall be conducted within the cell unless the physical design prevents visibility, at which point the inmate will be escorted to an alternate private/secure setting where the unclothed body search will be conducted.

This requirement emerged from the 2014 segregation trial, and applied to the EOP ASU Hub only because the CCCMS segregation units did not exist at that time. CDCR later created the STRH and LTRH units as part of the package of plans responding to the Court's April 10, 2014 Order, which included a requirement for a plan regarding strip searches in segregation units generally. *See* ECF No. 5131 at 63-64. Plaintiffs request that these provisions requiring strip searches to occur within a patient's cell be added to the EOP RHU Policy, and, as discussed below, to the CCCMS RHU Policy.

**P.     *Armstrong* Class Members in RHU Units**

The draft EOP RHU policy's recitation on pages 5 and 6 of the rule barring/restricting the placement of *Armstrong* class members in RHU units does not fully capture *Armstrong* remedial requirements. The requirements stem from the February 3, 2015 *Armstrong* Order, ECF No. 2496, and Defendants' subsequent plan memo to the field to address the issue, which was filed with the *Armstrong* Court on March 16, 2015. *See* Defs.' Report in Resp. to Court's Feb. 3, 2015 Order, ECF No. 2507 at Exhibit A (Mar. 16, 2015). Defendants' plan mandates a number of steps prior to placement of an *Armstrong* individual within ASU, and additional steps within 24 hours of any such placement or retention in ASU due to lack of accessible space. *Id.* at 8-11. The steps required prior to placement or retention of an *Armstrong* class member in an ASU unit due to lack of an accessible bed include: (1) the receiving institution must determine whether an appropriate accessible bed can be made available through bed compaction, (2) if that fails, the receiving institution must then determine whether the class member can be housed in an accessible bed in another unit, even if that unit is out of level, (3) if that fails, the receiving institution must determine whether the inmate can be housed in an accessible medical bed, which would require CEO approval and checking with HCPOP that the bed is actually available. *Id.* at 8 (Memo p. 3). If none of these work, prior to placement, the receiving institution must determine whether the individual

Nicholas Weber
September 21, 2023
Page 11

can be appropriately housed at an alternate institution via expedited transfer.  *Id.*  These pre-placement requirements are not fully captured in the draft policy.

The draft EOP RHU policy does a better job of reciting the post-placement requirements, but it still fails to adequately capture them.  The 2015 *Armstrong* policy requires a report to CAMU and the Associate Director for "each and every day that you have an *Armstrong* class member housed in administrative segregation to the lack of accessible GP bed space," *id.* at 10, not "within 48 hours," as stated in the draft RHU EOP policy at page 6.  The report must include information on the status of all accessible beds at the institution, including medical beds, information on why cell compaction was not an option, a list of all steps taken to find an accessible placement before placing or retaining the individual in ASU, and the duration of the placement in hours.  *Id.*  We recommend that the draft EOP RHU policy capture all of these requirements.

The same language is in the draft CCCMS RHU policy and we have the same concerns about it there.

## II.    Plaintiffs' Comments on Draft CCCMS RHU Policy

We have the following concerns, questions and requests for changes relating to the draft CCCMS RHU policy (Attachment B, hereto).

### A.    CCCMS RHU Transfer Timeline Exceptions

We appreciate that, unlike the EOP RHU policy, the CCCMS RHU Policy expressly sets forth the Program Guide requirement to transfer individuals who are in ASU and become CCCMS, or who are CCCMS and are assigned to ASU/RHU, to the specialized CCCMS RHU within 30 days.  *See* Draft CCCMS RHU Policy section (e)(1)(F); 2021 Program Guide, ECF 7333-1 at 451 (January 15, 2015 STRH/LTRH Memo).  However, for the same reasons we objected to the EOP Transfer Timeline exceptions in Proposed Regulation Section 3335.2, as set out in our July 31, 2023 Letter, we also object to these exceptions to the transfer timeframes for CCCMS RHU transfers in the proposed policy.

First, the issue is pending with the Special Master and the Court, and being addressed in the data process.  Second, we object particularly to the exceptions for medical holds and a patient's refusal to transfer, which are generally not justified.  Third, as noted above in our EOP comments, a memo in the compendium specifically forbids medical holds being used as a reason to retain someone in segregation.  *See* September 29, 2021 Program Guide Compendium, ECF 7333-2, at ECF 5 (September 22, 2016 Memo Re Reasons for Retaining Inmates in Segregated Housing, Removing Medical Hold from COMSTAT, stating that "the purpose of this memorandum is to

[4361441.2]

Nicholas Weber
September 21, 2023
Page 12

reiterate that inmates shall not be housed or retained in segregated housing due to a medical hold or pending Department of State Hospitals placement.").

### B.    20 Hours Total of Out-of-Cell Time in CCCMS RHU Units

Although the new CCCMS RHU Policy appropriately references the Program Guide STRH unit requirement for weekly case manager contacts and 90 minutes of confidential structured group therapeutic activities weekly, **it does not** contain or reference the Program Guide mandate for 20 hours total each week of out-of-cell activities. *See* 2021 Program Guide, ECF 7333-1 at 452 (January 15, 2015 STRH/LTRH Memo at page 3). The new CCCMS RHU Policy should include the mandate for 20 total hours of out-of-cell time each week including the 90 minutes of group therapy. This is especially important because the LTRH offered lower amounts of out-of-cell time—only 15 hours of out-of-cell activities per week. *Id*. at 453. The new policy should make clear that the more generous 20 hour per week standard from the STRH provisions will be used in the combined policy.

### C.    Request To Extend The Policy on Unclothed Body Searches in EOP ASU/RHU Units to CCCMS RHU Units

As noted above, we request that Defendants extend the policy currently in the DOM on unclothed body searches taking place in private to CCCMS RHU Units. The Policy in DOM Section 52050.16.6 (Unclothed or Clothed Body Search of Inmates in Enhanced Outpatient Program Administrative Segregation Hubs and Psychiatric Services Units) became effective on January 30, 2015, and requires:

> Unclothed body searches shall be conducted within the cell unless the physical design prevents visibility, at which point the inmate will be escorted to an alternate private/secure setting where the unclothed body search will be conducted.

This policy gap was raised in the data remediation process regarding the indicator titled *Percentage of Staff Who Report Who Report Unclothed Body Searches Conducted in a Private Area* (RH10), and Defendants said they were willing to receive a proposal about it from us. Our proposal is that the above policy be extended to include CCCMS RHU Units.

The evidence at the 2014 segregation trial showed that subjecting people "to strip searches each time they leave their housing unit for treatment and each time they return … serves as a disincentive for mentally ill inmates to go to treatment because the searches are humiliating and degrading." Apr. 10, 2014 Order, ECF No. 5131 at 51 (internal quotations and citations omitted). You informed us during our data negotiations

[4361441.2]

Nicholas Weber
September 21, 2023
Page 13

that patients in STRH and LTRH units are generally strip searched any time they leave their cell, including for treatment and yard, regardless of whether those activities are available on the unit (such as in a standalone STRH). Given that STRH and LTRH patients may also be deterred from attending treatment due to frequent strip searches, there is no justifiable reason not to extend this policy to the CCCMS RHU.

**D.    Housing Armstrong Class Members in CCCMS RHU Units:**

The same language discussed in the EOP comments regarding housing *Armstrong* class members in restrictive mental health units due to lack of available bed space is included in the CCCMS policy on page 4. We have the same concerns as discussed above in section I(P).

**E.    ASU Suicide Prevention Remedies:**

As noted in section I(F) above, all suicide prevention remedies developed for ASU units, including intake cell requirements, must incorporated into the new CCCMS RHU policies.

**III.   Staffing Ratios**

CDCR should apply the richest staffing ratios to the EOP and CCCMS RHU units. The current ratios under the 2009 Staffing Plan (ECF No. 3693) differ slightly for each segregation program. We have bolded the ratios we think should apply to the new units:

**Table 1 – CCCMS Staffing Ratios (ECF No. 3693 at 14-15)**

|                                  | CCCMS – ASU | CCCMS-SHU |
|----------------------------------|-------------|-----------|
| Primary Clinician                | **1:25**    | 1:50      |
| Staff Psychiatrist               | **1:125**   | 1:200     |
| Office Technician                | **1:175**   | 1:175     |
| Senior Psychologist, Supervisor  | **1:150**   | 1:300     |
| Recreational Therapist           | **1:150**   | 1:150     |

Nicholas Weber
September 21, 2023
Page 14


**Table 2 – EOP Staffing Ratios (ECF No. 3693 at 19-20)**

|                                 | EOP – ASU | PSU  |
| ------------------------------- | --------- | ---- |
| Primary Clinician               | **1:11**  | 1:12 |
| Staff Psychiatrist              | **1:64**  | 1:64 |
| Office Technician               | **1:50**  | 1:76 |
| Senior Psychologist, Supervisor | **1:66**  | 1:76 |
| Recreational Therapist          | **1:45**  | 1:62 |


We appreciate Defendants' willingness to engage in discussions on the creation of these units and the appropriate policies that should govern in the combined units. We hope the parties can have a meeting soon where these issues are discussed with the Special Master team.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/  Thomas Nolan*

By:  Thomas Nolan
Of Counsel

TN:fgl
Attachments A-B
cc:  *Coleman* Co-counsel          Elise Thorn
     *Coleman* Special Master Team   Namrata Kotwani
     Melissa Bentz               Damon McClain
     Dillon Hockerson            Samantha Wolff
     Sundeep Thind               Paul Mello

[4361441.2]

# Attachment A

**Restricted Housing Unit Program: Enhanced Outpatient Program**

(a) **Policy**

Patients at the Enhanced Outpatient Program (EOP) level of care who require placement in restricted housing shall be placed in an EOP Restricted Housing Unit (RHU).

(b) **Purpose**

To assure the effective delivery of EOP services to patients in a restricted housing unit setting.

(c) **Definitions**

**Restricted Program Housing Units:** Restricted Program Housing Units (RPHU) are designated for short and extended term programming of patients not suited for housing in the general population (GP). They are specialized programming units with established placement criteria. RPHU include the following: EOP RHU, Correctional Clinical Case Management System (CCCMS) RHU, and GP RHU.

**Enhanced Outpatient Program Restricted Housing Unit:** Secure housing and care for patients with diagnosed psychiatric disorders and not able to function in the General Population but not requiring crisis or inpatient hospital care, but who require placement in restricted housing.

(d) **Responsibility**

(1) The overall institutional responsibility for the program rests jointly with the Chief Executive Officer (CEO) and the Warden.

(2) The coordination of clinical activities within the RHU is the responsibility of the Chief of Mental Health (CMH). The CMH is responsible for ensuring that the RHU Mental Health Program is in compliance with the Mental Health Services Delivery System (MHSDS), MHSDS Program Guide, Health Care Department Operations Manual, and all applicable policies.

(3) The Facility Captain will oversee custodial responsibilities, correctional counseling services, and classification actions.

(4) Decisions on patient treatment plans, individual patient program activities, and level of care are made by the Interdisciplinary Treatment Team (IDTT).

(e) **Procedure**

(1) **Placement in a Restricted Housing Unit**

(A) A patient shall be housed in an EOP RHU if:

1. The patient is included in the MHSDS at the EOP level of care and meets criteria pursuant to the California Code of Regulations (CCR), Title 15, section 3335.

2. The patient is included in the Developmental Disability Program at DD3 and the patient meets the criteria pursuant to CCR, Title 15, section 3335.

(B) Patients assigned to an EOP RHU shall be classified pursuant to CCR, Title 15, section 3340. Patients assigned to an EOP RHU with an imposed RHU term shall be classified pursuant to CCR, Title 15, section 3341.

(C) Pre-placement mental health screening: All patients shall be screened by medical personnel for possible suicide risk, safety concerns, and mental health problems before placement in an EOP RHU. If a patient screens positive, they are referred for a mental health evaluation on an emergent, urgent, or routine basis, depending on their answers to the screening questions.

(D) Sources of Referral for Mental Health Services

1. Current MHSDS patients

   a. All patients placed into an EOP RHU shall be reviewed for identification of current MHSDS treatment status at the time of the initial automated Restricted Housing Unit Placement Notice. This shall occur on the first workday following a patient's placement.

   b. During the initial review, mental health staff will ensure the continuity of mental health care, including the delivery of prescribed medications.

2. Staff referral

   a. Any staff member who observes possible signs or symptoms of a serious mental health disorder shall refer a patient for clinical evaluation by completing a CDCR 128-MH5, Mental Health Referral Chrono.

   b. Any patient who is observed to be a suicide risk, or in any other condition that requires crisis care, shall be immediately screened by the primary clinician (PC) to assess the potential for suicide and, if appropriate, referral to a Mental Health Crisis Bed (MHCB) for admission.

3. Self-referral
   a. Patients in an EOP RHU may request a clinical interview to discuss their mental health needs. These requests shall be made on a CDCR 7362, Health Care Services Request.

4. Clinical rounds
   a. A mental health staff member shall conduct rounds weekly, unless clinically needed more often, in all EOP RHUs.
   b. Patients not previously identified as having mental health treatment needs who exhibit possible signs and symptoms of serious mental disorders shall be referred for clinical evaluation.

5. The following shall occur for all acts of indecent exposure (IEX) or intentionally sustained masturbation without exposure:
   a. A CDCR 128-MH5, Mental Health Referral Chrono, shall be completed and staff shall immediately notify the CMH or designee of the referral for services requested. This step is required to maximize the ability of a mental health clinician to screen the patient as close to the incident as possible.
   b. An initial mental health screen, per the MHSDS Program Guide timelines for an urgent referral to rule out serious mental health decompensation and/or intoxication that may have triggered the sexual disorderly conduct.
   c. A CDCR 115-MH, Rules Violation Report: Mental Health Assessment.
   d. An IEX IDTT shall be conducted within 10 business days of the IEX or intentionally sustained masturbation without exposure incident to review the mental health screen and determine if the existing mental health diagnosis, treatment plan, and/or level of care are appropriate, and whether a comprehensive mental health evaluation is required.

(E) Patients shall receive orientation material within 24 hours of placement into an EOP RHU.

**(2) Clinical Services**

(A) Intake Assessment

1. The Senior Psychologist Supervisor or designee shall appoint a PC for each patient admitted to an EOP RHU. The PC shall complete a brief evaluation of the patient, including a review of the patient's mental health history and an interview in a timeframe clinically determined appropriate but not more than five calendar days after arrival in the EOP RHU.

2. All patients will be evaluated by the IDTT prior to the initial ICC and not later than 14 calendar days after arrival in the EOP RHU.

3. A comprehensive mental health clinical assessment shall be done by the PC and other IDTT members prior to the initial IDTT. This assessment shall include at minimum:
   a. Comprehensive review of the central file and health record of mental health treatment needs, including prior placements and medications.
   b. Current mental status examination, including diagnosis and level of functioning.
   c. Daily observation by mental health and custody staff to assess Activities of Daily Living and social interactions.
   d. Review of medication history and adjustments to current prescriptions, including involuntary medications as necessary, by a staff psychiatrist.
   e. Review of disciplinary history and custodial placements by the assigned Correctional Counselor or Lieutenant.
   f. Review of specific risk factors for violence toward self and others. This includes a suicide risk assessment if indicated.

4. The IDTT will make a decision regarding appropriate placement. This decision includes the following options:
   a. Retention for an additional 14 calendar days to determine the patient's appropriateness for EOP RHU placement.
   b. Referral for inpatient care.
   c. Placement in an MHCB (short term crisis stabilization, including initiation of involuntary medications when required).
   d. Retention in the EOP RHU treatment program if the patient requires EOP level of care.
   e. Referral to the classification committee recommending alternative RHU placement if the patient qualifies for CCCMS care or has been discharged from the MHSDS.

    f.   If the RHU term has been served, GP placement at the appropriate level of care, including EOP.

(B) Interdisciplinary Treatment Team

1. The EOP RHU IDTT shall be chaired by the EOP RHU Senior Psychologist Supervisor or designee. All clinical decisions regarding intake, treatment planning, re-justification of level of care, and discharge, are made by the EOP RHU IDTT. The IDTT is composed of, at minimum:
   a. Senior Psychologist.
   b. Assigned Psychiatrist.
   c. EOP RHU Facility Captain.
   d. Correctional Counselor II.
   e. Assigned PC.
   f. Licensed Psychiatric Technician (LPT)
   g. Patient.

2. Other EOP RHU staff such as a recreation therapist, nursing staff, Sergeant and correctional officers, and custody representatives may attend.

3. A representative from the IDTT (assigned PC or designee) shall be present in all classification hearings regarding patients to provide mental health input into the classification decision-making process.

4. The patient shall be included in the IDTT unless the patient refuses to participate. Patients shall not receive a CDCR 115, Rules Violation Report, for not participating in the IDTT. The PC shall document the reason for refusal on the CDCR 7230-MH, Mental Health Progress Notes or in the health record. The PC is responsible for presenting the patient's concerns to the IDTT.

5. After the initial IDTT, patients will be evaluated by the IDTT minimally at 60 and 120 days after admission and at least every 90 days thereafter or sooner, whenever there is a significant change in level of functioning.
   a. The IDTT will evaluate treatment progress, update the treatment plan, and review discharge goals. The initial treatment plan and all subsequent treatment plans shall include a discharge plan and behavioral goals to discharge the patient from the EOP RHU to a less intensive level of care.
   b. The PC assigned to the case will present a case summary with recommendations for continued treatment or discharge.
   c. The results of all IDTT reviews, decisions, and recommendations will be documented in the health record.
   d. Initial and level of care changes are documented on a CDCR 128-MH-3, Mental Health Placement Chrono and forwarded to the Correctional Counselor II.

(C) Primary Clinician

Each patient in an EOP RHU shall be assigned a PC, usually a Licensed Clinical Social Worker or psychologist, although other clinicians may be assigned to cases with special needs. The PC will maintain active clinical involvement with the patient, as well as perform casework functions, including the following:

1. Documentation of initial treatment plan and updates.
2. Regular clinical contacts with assigned patients.
3. Ensuring scheduling of periodic IDTT reviews.
4. Attendance at IDTT reviews of the patient.
5. Referral to, and coordination with, the assigned staff psychiatrist
6. Response to California Department of Corrections and Rehabilitation (CDCR) inquiries regarding clinical status of the patient.

**(3) Treatment Program**

Each EOP RHU shall have an Operational Plan that describes its treatment program. The Operational Plan shall include a behavioral incentive program (BIP), with criteria for achieving and retaining each level.

(A)  Refer to the Operational Plan at each institution for a complete description.

(B) Treatment Plan

1. Each patient in an EOP RHU shall have a Master Treatment Plan within the Electronic Health Records System (EHRS).
2. Within the EOP RHU, each patient shall have an individualized treatment plan that provides treatment consistent with the patient's clinical needs.

3. The treatment plan shall be reviewed by the IDTT 60 and 120 days after admission and at least every 90 days thereafter, or whenever there is a significant change in the patient's functioning requiring a change in the treatment plan.
   a. There shall be a progress note documenting the IDTT meeting that includes a list of members in attendance.
4. Each treatment intervention shall be directed to a problem on the patient's problem list.
5. Each treatment intervention shall indicate the provider, type of intervention (e.g., individual or group therapy), frequency of intervention, outcome objectives, and specific measurable behavioral goals.
6. Discharge from the EOP or transfer to another level of care shall be documented in a CDCR 128-MH3, Mental Health Placement Chrono.
7. Each patient will be offered at least ten hours per week of scheduled therapeutic activities as approved by the IDTT.
   a. It is recognized that not all patients can participate in or benefit from ten hours per week of treatment services. For some patients, ten hours per week may be clinically contraindicated.
   b. For those patients scheduled for fewer than ten hours per week of treatment services, the PC shall present the case and recommended treatment program to the IDTT for approval. The Master Treatment Plan must include a detailed description of the diagnosis, problems, level of functioning, medication compliance, and rationale for scheduling fewer than ten hours.
   c. For patients who are scheduled for fewer than ten hours of treatment activities per week, the IDTT shall meet at least monthly and be responsible to review and increase the treatment activities and consider higher level of care as appropriate.

(C) Treatment
1. Required treatment within an EOP RHU includes the following:
   a. Individual treatment planning involves a meeting of the IDTT and the patient 60 and 120 days after admission and at least every 90 days thereafter for the purpose of identifying treatment needs, developing treatment plans, assessing treatment progress, and updating or revising individual treatment plans in accordance with the patient's needs and progress.
   b. Weekly PC contact, either individually or in group psychotherapy, with assigned patients. Individual clinical contacts shall occur at least every other week.
   c. Medication evaluation and management.
   d. A psychiatrist shall evaluate each EOP patient at least every 30 days to address psychiatric medication issues.
      Refer to the Health Care Department Operations Manual regarding procedures for administration of medication, medication refusals, Directly Observed Therapy, medication adherence, and other aspects of medication administration. Refer to the CCR, Title 15, section 3999.344, for information on involuntary medication administration.
2. Other treatment activities may include the following:
   a. Individual psychotherapy.
   b. Group therapy, such as anger management, stress management, offense-related issues, and current events.
   c. Medication education.
   d. Crisis intervention.
   e. Pre-release planning.
   f. Monitoring and assistance with daily living skills.
   g. Cognitive Behavioral Therapy directed to specific behaviors or symptoms.
   h. Recreational activities.
   i. Vocational and pre-vocational training as available.
   j. Education as available.
   k. 12-Step Program and other substance use treatment.

(D) Patient Refusal to Attend Treatment
1. Within one week of the identification of a patient who has refused more than 50 percent of structured therapeutic treatment hours offered and attended an average of less than five hours per week of offered

structured treatment hours in a two-month period, the IDTT, clinical staff, or other custody staff must work together to determine the reason for treatment refusal.

2. For patients on a modified treatment program, attendance at 50 percent or less of the required treatment hours specified in the modified treatment plan shall trigger the review.

3. The Correctional Lieutenant responsible for the EOP RHU and the PC shall work collaboratively to evaluate the circumstances underlying the patient's refusal to attend offered scheduled treatment sessions.

4. If a specific cause for the patient's refusal can be identified and reasonably resolved, custody and mental health staff shall work together with the patient to attempt to resolve such issues.

5. If the patient identifies barriers related to security policies as a cause for their refusal to attend treatment, custody and mental health staff shall jointly document their findings on a CDC 128-B, General Chrono, and submit to both the Chief Deputy Warden and CMH.

   a. The Chief Deputy Warden and CMH shall confer and consider various methods to encourage the patient to attend treatment, including viable alternatives to the identified security policies that do not jeopardize the security of the unit or safety of staff or patients.

   b. Should the Chief Deputy Warden and CMH disagree on the proper resolution of the matter, the issue shall be elevated to the Warden and CEO for their review and resolution.

**(4) Out-of-Cell Exercise**

1. All patients assigned to an EOP RHU shall be offered a minimum of ten hours of out-of-cell exercise each week, which may include supervised recreational therapy.

2. A patient's yard designation shall be established by the ICC with input from the IDTT as part of the individual treatment plan.

**(5) Monitoring Requirements for Developmental Disability Program Patients Placed in Restricted Housing**

(A) Developmental Disability Program (DDP) patients housed in an EOP RHU shall be interviewed by a mental health clinician within 24 hours of placement and receive weekly monitoring by a DDP psychologist or designee. For this purpose, "weekly" is defined as a seven-day calendar week.

(B) Documentation of the initial 24-hour and weekly clinical contacts for DDP patients housed in an RHU shall be completed in the EHRS using either the "MH DDP Restricted Housing Check" PowerForm, or the "DDP Progress Note" note type.

   1. Documentation must indicate the patient's current housing setting, the evaluation type ("Initial 24-hour" or "Weekly"), and if the setting where the contact occurred was confidential ("Confidential" or "Non-confidential").

   2. Documentation shall also include a description of the content for this contact, relevant clinical observations, a statement describing the patient's functioning related to their DDP adaptive supports, any collateral information obtained (e.g., reports from the DDP officer or housing unit officers), and any follow-up steps taken, if indicated.

(C) An initial 24-hour contact is not required if there are no modifications to the DDP patient's programming (e.g., a determination for restricted housing was made, but the patient was never housed in that unit) or if the patient leaves and returns to the same RHU environment within a 24-hour period.

(D) An initial 24-hour contact is not required if the DDP patient transfers to another RHU environment within the same institution or transfers from an RHU environment at one institution to an RHU environment at another institution, unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(E) If a DDP patient transfers to another RHU environment within the same institution, a second weekly contact is not required, unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(F) A weekly contact is required within seven calendar days of arrival at the receiving institution if a patient transfers from an RHU environment at one institution to an RHU environment at another institution.

**(6) *Armstrong* Class Members Housed in Restricted Housing Units**

(A) It is the policy of CDCR to not house *Armstrong* class members in an RHU due solely to a lack of appropriate accessible GP housing (including Sensitive Needs GP).

(B) If RHU is the only available accessible housing that can immediately accommodate the disability needs of the patient, the reasons for exceptional housing shall be clearly documented using the CDC-114-D process.

    1. At the time of the initial 114-D review, absent any other compelling penological interest, the patient shall be approved to be released from the RHU to GP housing.

    2. Failure to move the affected patient out of the RHU into appropriate GP housing within 48 hours will require immediate notification to designated headquarters staff.

(C) This policy shall also apply to *Armstrong* class members who were placed in an RHU for security reasons and who are subsequently reviewed by the ICC and determined to be eligible for release to GP housing.

**(7) Sick and Dental Call and Mental Health Referrals**

(A) The EOP RHU shall have mental health staff on duty during Second Watch. Each day, the assigned physician, Registered Nurse (RN), or LPT will tour the unit and assess any patient with medical or dental needs.

(B) During Second Watch, patients requiring medical attention will be referred to the EOP RHU RN.

(C) Staff referrals may be made on a CDCR 128-MH5, Mental Health Referral Chrono.

(D) Self-referrals shall be made on a CDCR 7362, Health Care Services Request.

    1. Monday through Friday, the following shall occur:

        a. A health care staff member shall collect all the CDCR 7362, Health Care Services Requests, each day from the designated areas.

        b. Upon receipt of the collected forms, nursing staff shall initial and date each CDCR 7362, Health Care Services Request.

        c. The CDCR 7362, Health Care Services Request, shall be delivered to the designated program representative in mental health services, dental services, or pharmacy services for same-day processing.

    2. On weekends and holidays, the following shall occur:

        a. The Triage and Treatment Area (TTA) RN shall review each CDCR 7362, Health Care Services Request, for medical, dental, and mental health services, establish priorities on an emergent and non-emergent basis, and refer accordingly.

        b. If a physician, mental health clinical, or dentist is not available, the physician on-call or psychiatrist on-call shall be contacted.

(E) Patients shall be seen by a mental health clinician, or on weekends by the physician or psychiatrist on-call, within the following clinically determined time frames.

    1. Emergent: Emergency cases shall be seen immediately or escorted to the TTA.

    2. Urgent: Urgent cases shall be seen within 24 hours.

    3. Routine: Other cases shall be seen within five calendar days.

**(8) Discharge Procedures**

(A) At the time of admission to the EOP RHU, a preliminary discharge plan shall be developed based on the clinical and security needs of the patient as well as the patient's EOP RHU term.

(B) Patients admitted to an EOP RHU may be discharged to a CCCMS RHU to complete their term when they no longer require an EOP level of care.

(C) Patients who complete their RHU term and still require EOP care will be discharged to a GP EOP for continuing mental health treatment.

    1. The EOP RHU PC will document recommendations regarding the patient's specific treatment needs, including any concerns about facilitating the patient's successful transition to general population.

    2. The receiving EOP IDTT will consider documentation by the EOP RHU clinician in developing the patient's treatment plan.

    3. The treatment plan for patients transferred from RHU to GP-EOP shall include services provided to aid in the transition to the GP environment.

(D) Patients may be referred to an inpatient program as clinically indicated.

(E) Treatment recommendations upon discharge from an EOP RHU shall be made by the IDTT and documented in the EHRS.

(F) The ICC shall review the discharge recommendations of the IDTT, considering both the clinical and custody needs of the patient. The decision of the ICC shall be documented on a CDCR 128-G Chrono.

**References**

- California Code of Regulations, Title 15, Division 3, Subchapter 4, Article 7, sections 3335 – 3344.
- California Code of Regulations, Title 15, Division 3, Chapter 2, Subchapter 3, Article 5, section 3999.344, Involuntary Medication

- Mental Health Services Delivery System Program Guide, 2021 Revision
- Statewide Mental Health Program, Monitoring Requirements for Patients in the Developmental Disability Program Placed in Restricted Housing Memorandum, October 14, 2022
- Review of Refusal to Attend Mental Health Treatment by Administrative Segregation Unit Enhanced Outpatient Program Hub and Psychiatric Services Unit Inmates Memorandum, February 2, 2015
- Operational Plan for Armstrong Class Members Housed in Administrative Segregation Memorandum, December 17, 2012

**Revision History**
Effective: MM/YYYY

# Attachment B

**Restricted Housing Unit Program: Correctional Clinical Case Management System**

**(a) Policy**

Patients at the Correctional Clinical Case Management System (CCCMS) level of care who are serving a Restricted Housing Unit (RHU) term shall be offered enhanced mental health treatment and additional out-of-cell custody supervised activities.  The RHU shall be collaboratively administered between custody and mental health staff.

**(b) Purpose**

To provide enhanced mental health services and prevent decompensation of patient's requiring restricted housing.

**(c) Definitions**

**Restricted Program Housing Units:** Restricted Program Housing Units (RPHU) are designated for short and extended term programming of patients not suited for housing in the general population (GP). They are specialized programming units with established placement criteria. RPHU includes the following: Enhanced Outpatient Program (EOP) RHU, CCCMS RHU, and GP RHU.

**Correctional Clinical Case Management System Restricted Housing Unit:** Secure housing and enhanced care for patients in the CCCMS level of care with diagnosed psychiatric disorders not requiring higher levels of care, but who require placement in restricted housing.

**(d) Responsibility**

**(1)** The overall institutional responsibility for the program rests jointly with the Chief Executive Officer and the Warden.

**(2)** The coordination of clinical activities within the RHU is the responsibility of the Chief of Mental Health (CMH). The CMH is responsible for ensuring that the RHU Mental Health Program is in compliance with the Mental Health Services Delivery System (MHSDS), Mental Health Program Guide, Health Care Department Operations Manual, and all applicable policies.

**(3)** The Facility Captain will oversee custodial responsibilities, correctional counseling services, and classification actions.

**(4)** Decisions on patient treatment plans, individual patient program activities, and level of care are made by the Interdisciplinary Treatment Team (IDTT).

**(e) Procedure**

**(1) Placement in a Restricted Housing Unit**

(A) A patient shall be housed in a CCCMS RHU if the patient is included in the MHSDS at the CCCMS level of care and meets criteria pursuant to California Code of Regulations (CCR), Title 15, section 3335.

(B) Patients assigned to a CCCMS RHU shall be classified pursuant to CCR, Title 15, section 3340. Patients assigned to a CCCMS RHU with an imposed RHU term shall be classified pursuant to CCR, Title 15, section 3341.

(C) Pre-placement mental health screening: All patients shall be screened by medical personnel for possible suicide risk, safety concerns, and mental health problems before placement in a CCCMS RHU. If a patient screens positive, they are referred for a mental health evaluation on an emergent, urgent, or routine basis, depending on their answers to the screening questions.

(D) Sources of Referral for Mental Health Services

1. Current MHSDS patients

   a. All patients placed into a CCCMS RHU shall be reviewed for identification of current MHSDS treatment status at the time of the initial automated Restricted Housing Unit Placement Notice. This shall occur on the first workday following a patient's placement.

   b. During the initial review, mental health staff shall ensure the continuity of mental health care, including the delivery of prescribed medications.

2. Staff referral

   a. Any staff member who observes possible signs or symptoms of a serious mental health disorder shall refer a patient for clinical evaluation by completing a CDCR 128-MH5, Mental Health Referral Chrono.

   b. Any patient who is observed to be a suicide risk, or in any other condition that requires crisis care, shall be immediately screened by mental health staff to assess the potential for suicide and, if appropriate, referral to a Mental Health Crisis Bed (MHCB) for admission.

3. Self-referral

      a. Patients in a CCCMS RHU may request a clinical interview to discuss their mental health needs. These requests shall be made on a CDCR 7362, Health Care Services Request.

4. Clinical rounds
      a. A mental health staff member shall conduct rounds weekly, unless clinically needed more often, in all CCCMS RHUs.
      b. Patients not previously identified as having mental health treatment needs who exhibit possible signs and symptoms of serious mental health disorders shall be referred for clinical evaluation.

5. The following shall occur for all acts of indecent exposure (IEX) or intentionally sustained masturbation without exposure:
      a. A CDCR 128-MH5, Mental Health Referral Chrono, shall be completed and staff shall immediately notify the CMH or designee of the referral for services requested. This step is required to maximize the ability of a mental health clinician to screen the patient as close to the incident as possible.
      b. An initial mental health screen, per the MHSDS Program Guide timelines for an urgent referral, to rule out serious mental health decompensation and/or intoxication that may have triggered the sexual disorderly conduct.
      c. A CDCR 115-MH, Rules Violation Report: Mental Health Assessment.
      d. An IEX IDTT shall be conducted within ten business days of the IEX or intentionally sustained masturbation without exposure incident to review the mental health screen and determine if the existing mental health diagnosis, treatment plan, and/or level of care are appropriate, and whether a comprehensive mental health evaluation is required.

(E) Patients receiving treatment at the CCCMS level of care prior to placement in an RHU and those who are newly identified as requiring treatment at this level of care shall be assigned a PC.

(F) A patient included in the MHSDS at the CCCMS level of care and retained in an RHU by an Institution Classification Committee (ICC) shall be transferred to a designated CCCMS RHU within 30 days of RHU placement. If the patient's inclusion in the MHSDS at the CCCMS level of care occurs after RHU placement, the patient shall be transferred within 30 days from the date of the inclusion in the CCCMS level of care.

1. An exception to the 30-day requirement is allowed and time constraints suspended under certain circumstances. These include, but are not limited to:
      a. Health care staff determines, based on medical necessity, a transfer cannot occur and places a medical hold.
      b. The patient refuses transfer.
      c. The patient is out to court.
      d. The patient is placed in an MHCB or higher level of care.

2. In these instances, the Warden or designee, in coordination with the treating mental health staff, may elect to temporarily retain the patient in their existing GP RHU. The Warden or designee shall ensure a collaborative approach between custody and mental health staff is employed to ensure the wellbeing of CCCMS patients housed in a GP RHU.

3. When retention of a patient that would otherwise meet criteria for placement in a CCCMS RHU will cause the transfer timeframe to exceed the 30-day mandate, institution classification staff shall specify the exceptional reason for retention, including mental health considerations, in the Classification Committee Chrono.

4. A case note shall be placed in SOMS articulating the case-by-case reason for retention under the "CCCMS RHU Retention Note Type."

5. Custody and mental health staff shall meet daily, during RHU morning meetings, to discuss any ongoing behavioral issues or concerns, and shall participate jointly in scheduled IDTTs and ICCs to ensure information is shared.

**(2) Interdisciplinary Treatment Teams and Institutional Classification Committees**
(A) Mental health staff shall attend daily morning meetings with custody staff to discuss high risk patients, new arrivals, and any behavior issues or ongoing concerns of individual patients.
(B) Mental health staff shall attend and participate in IDTTs and ICCs.
(C) The responsibilities for overall treatment planning within the CCCMS program rest with the IDTT. These responsibilities include:
    1. Placement decisions for individual cases.

2. Review of relevant clinical data for diagnostic formulation.
3. Review of relevant case factors.
4. Formulation and approval of treatment plans.
5. Annual and special reviews for continuation or termination of services.
6. Review of treatment response.
7. Discharge planning.

(D) The IDTT is composed of, at minimum:
1. Assigned PC (either a psychologist or Clinical Social Worker).
2. Assigned psychiatrist.
3. Assigned Correctional Counselor.
4. Patient, if clinically and custodially appropriate. The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in a progress note. Patients shall not be disciplined for not participating in the IDTT.

(E) The IDTT shall include the patient's Correctional Counselor who shall present case factors of the restricted housing unit placement for consideration in development of the treatment plan and initiation of an aftercare plan.

(F) All CCCMS patients are seen in the initial IDTT that is held prior to the initial ICC hearing (within 14 calendar days of arrival in the CCCMS RHU) and quarterly thereafter.

(G) Some patients may be seen more frequently by the IDTT in special reviews at the request of the assigned PC or psychiatrist whenever changes in the level of care or treatment plans are indicated.

**(3) Treatment for CCCMS Patients Placed in a Restricted Housing Unit**
(A) The treatment interventions shall meet the guidelines set forth in the MHSDS Program Guide and include the following:
1. Regular monitoring of symptoms by Licensed Psychiatric Technicians (LPT) through daily rounds.
2. Individual contact every week by the PC, or more frequently if clinically indicated.
3. Crisis intervention.
4. Medication evaluation, review, and monitoring of compliance by psychiatric and nursing staff.
5. Psychiatric contact every 90 days, when indicated.
6. Quarterly IDTT update of treatment plan.
7. 90 minutes of confidential structured group therapeutic activity weekly.
8. Clinical discharge or clinical pre-release planning.

(B) The following treatment interventions shall be provided on an as-needed basis:
1. Orientation and supportive counseling for institutional adjustment.
2. Social skills training.
3. Consultation services, such as to education and work programs.
4. In-cell therapeutic activities each week, such as self-help and recreational activities, as determined by the IDTT.
5. Supportive care for Activities of Daily Living.

**(4) Monitoring Requirements for Developmental Disability Program Patients Placed in Restricted Housing**
(A) Developmental Disability Program (DDP) patients housed in a CCCMS RHU shall be interviewed by a mental health clinician within 24 hours of placement and receive weekly monitoring by a DDP psychologist or designee. For this purpose, "weekly" is defined as a seven-day calendar week.

(B) Documentation of the initial 24-hour and weekly clinical contacts for DDP patients housed in an RHU shall be completed in the Electronic Health Records System (EHRS) using either the "MH DDP Restricted Housing Check" PowerForm, or the "DDP Progress Note" note type.
1. Documentation must indicate the patient's current housing setting, the evaluation type ("Initial 24-hour" or "Weekly"), and if the setting where the contact occurred was confidential ("Confidential" or "Non-confidential").
2. Documentation shall also include a description of the content for this contact, relevant clinical observations, a statement describing the patient's functioning related to their DDP adaptive supports, any collateral information obtained (e.g., reports from the DDP officer or housing unit officers), and any follow-up steps taken, if indicated.

(C) An initial 24-hour contact is not required if there are no modifications to the DDP patient's programming (e.g., a determination for restricted housing was made, but the patient was never housed in that unit) or if the patient leaves and returns to the same RHU environment within a 24-hour period.

(D) An initial 24-hour contact is not required if the DDP patient transfers to another RHU environment within the same institution or transfers from an RHU environment at one institution to an RHU environment at another institution, unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(E) If a DDP patient transfers to another RHU environment within the same institution, a second weekly contact is not required, unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(F) A weekly contact is required within seven calendar days of arrival at the receiving institution if a patient transfers from an RHU environment at one institution to an RHU environment at another institution.

**(5)** *Armstrong* **Class Members Housed in Restricted Housing Units**

(A) It is the policy of the California Department of Corrections and Rehabilitation to not house *Armstrong* class members in an RHU due solely to a lack of appropriate accessible GP housing (including Sensitive Needs GP).

(B) If an RHU is the only available accessible housing that can immediately accommodate the disability needs of the patient, the reasons for exceptional housing shall be clearly documented using the CDC-114-D process.

  1. At the time of the initial 114-D review, absent any other compelling penological interest, the patient shall be approved to be released from the RHU to GP housing.

  2. Failure to move the affected patient out of the RHU into appropriate GP housing within 48 hours will require immediate notification to designated headquarters staff.

(C) This policy shall also apply to *Armstrong* class members who were placed in an RHU for security reasons and who are subsequently reviewed by the ICC and determined to be eligible for release to GP housing.

**(6)** **Enhanced Programming**

(A) Out-of-Cell Activities

To improve the conditions of confinement for CCCMS patients placed in restricted housing, the CCCMS RHU will offer 20 hours of out-of-cell activities per week.

  1. Patients will be offered 18.5 hours per week of recreational time outside of their cell.

  2. In addition, patients will be offered 90 minutes of confidential structured therapeutic activity.

(B) In-Cell and Therapeutic Activities

  1. Upon arrival in the CCCMS RHU, patients will receive their standard property and orientation package.

  2. Patients will be offered a weekly clinical contact with their PC and daily rounds will be completed by an LPT.

  3. Patients will be offered in-cell therapeutic activities, such as self-help materials and recreational activities, as determined by the IDTT.

**References**

- California Code of Regulations, Title 15, Division 3, Subchapter 4, Article 7, sections 3335 – 3344.
- Mental Health Services Delivery System Program Guide, 2021 Revision
- Statewide Mental Health Program, Monitoring Requirements for Patients in the Developmental Disability Program Placed in Restricted Housing Memorandum, October 14, 2022
- Statewide Mental Health Program, Transfer of Correctional Clinical Case Management System Inmate-Patients to Male Short Term Restricted Housing Units, March 3, 2016
- Statewide Mental Health Program, Short-Term Restricted Housing Mental Health Requirements Policy, February 8, 2016
- Statewide Mental Health Program, Long Term Restricted Housing Mental Health Requirements Policy, February 8, 2016
- Statewide Mental Health Program, Creation of Clinical Case Management System Short Term and Long Term Restricted Housing Memorandum, January 15, 2015

**Revision History**
Effective: MM/YYYY