# APPENDIX 7

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                         GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



December 19, 2023

Kerry Walsh
Pannone Lopes Devereaux and O'Gara LLC
Northwoods Office Park, Suite 215N
1301 Atwood Avenue
Johnston, RI 02919

Tom Nolan
Rosen Bien Galvan and Grunfeld
101 Mission Street, Sixth Floor
San Francisco, CA 94105

VIA EMAIL

Dear Kerry and Tom,

I write in response to the Special Master and Plaintiffs' September 21, 2023 letters regarding the Restricted Housing Unit (RHU) healthcare policies for Enhanced Outpatient Program (EOP) and Correctional Clinical Case Management System (CCCMS) patients. Based on feedback provided, CDCR has revised the policy and combined the documents into one unified RHU policy with three sections: 1) general provisions; 2) CCCMS RHU; and 3) EOP RHU. A copy of the new policy is attached.

The general provisions section, covering mental health RHU policies applicable to all RHUs regardless of level of care, is included at the top of the policy document. General provisions include an overarching policy and purpose, definitions, responsibilities, transfer timeframes, admission screenings, intake cell placement, mental health referrals, clinical rounding, and monitoring requirements for patients with developmental disabilities. CDCR has also struck language from prior drafts regarding *Armstrong* class members.

    A.  Response to the Special Master's Letter

    I.       Questions and Comments on the CCCMS and EOP RHU Policies

The mental health RHU policy has been developed to combine and replace the myriad Program Guide requirements and associated mental health policy memos that cover EOP and CCCMS patients in EOP administrative segregation unit (ASU) hubs, security housing units (SHU), Psychiatric Services Units (PSU), Short Term and Long Term Restricted Housing units (STRH and LTRH). (See Program Guide at Chapters 7, 8, and 9, and Program Guide at pages 443,

Page 2

446, 448, 455, and 469[1].) To avoid confusion, once finalized the EOP, CCCMS, and GP RHU policies will replace and supersede Chapters 7 through 9 of the Program Guide as well as the policy memos on the now defunct STRH and LTRH programs.

The Special Master asks why the policy descriptions in each policy are not more similar. (Special Master Letter at page 1.) In this revision, the policy description has been revised to read:

> All Restricted Housing Units (RHU) shall maintain general expectations that allow all incarcerated individuals assigned to these units access to mental health services. Patients in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management System (CCCMS) or Enhanced Outpatient (EOP) level of care who are serving a Restricted Housing Unit (RHU) term shall be offered enhanced mental health treatment. The RHU shall be collaboratively administered between custody and mental health staff.

(Revised Policy at page 1, subdivision (a).)

CCCMS and EOP RHU programs are not in the same housing unit. As discussed previously, existing ASU EOP Hubs and PSUs will convert to EOP RHUs while existing STRH and LTRHs will convert to CCCMS RHUs. (See also October 26, 2023 Mission Change Letter for current list of EOP and CCCMS RHU locations.)

Regarding the requirement to conduct a pre-placement mental health screen before placement in an RHU, the Special Master recommends adding the word "physical" prior to the word "placement." CDCR declines to adopt this suggestion. (Special Master Letter at page 2.) The language in the RHU policy mirrors that in Chapters 7, Administrative Segregation, of the Program Guide. (See Program Guide at 12-7-2 requiring screening "before placement in ASU.") However, to align with agreed upon business rules in data remediation, CDCR has modified the language to add "within 24 hours" before the words "before placement in…RHU." (Revised Policy at page 1, subdivision (e)(2)(A).)

Language on staff referral and clinical rounds has been moved to section (e)(4) and (e)(5) of the general provisions. (Revised Policy at page 1.) Mental health clinicians shall respond to mental health referrals. Clinical rounds are conducted daily by psychiatric technicians. Documentation processes for psychiatric technicians will not change. CDCR has also added language to the clinical rounds section to require morning meetings and require documentation in the unit logbook or electronic health records.

CDCR has struck language regarding indecent exposure from the policy.

---

[1] February 8, 2016 memo re Short-Term Restricted Housing Mental Health Requirements, February 4, 2016 memo re Short-Term and Long-Term Restricted Housing Policies, January 15, 2015 memo re Creation of Correctional Clinical Case Management System Short Term and Long Term Restricted Housing, March 3, 2016 memo re Transfer of Correctional Clinical Case Management System Inmate-Patients to Male Short Term Restricted Housing Units, and February 8, 2016 memo re Long Term Restricted Housing Mental Health Requirements.

II.     Questions and Comments on the CCCMS RHU Policy

The Special Master asks the meaning of classifying CCCMS RHU as housing units for "patients in the CCCMS level of care *with diagnosed psychiatric disorders not requiring higher levels of* care, but require placement in restricted housing."  (Special Master Letter at page 3.)  The language is to differentiate a CCCMS RHU from an EOP RHU – a unit that houses patients with a higher level of mental health needs.

The Special Master asks why Developmentally Disabled Program patients (DDP) are omitted from the policy.  (*Id*.)  DDPs are discussed in the general provisions section. (Revised Policy at page 3, subdivision (e)(6).)

CDCR has added the words "RHU placement" to the CCCMS RHU placement policy.  (Revised Policy at page 3, subdivision (a)(1)(A).)

The Special Master recommends adding to section new CCCMS RHU section (a)(2)(E)4 "and treatment plan updates, when necessary" and adding to section (a)(2)(E)6 "and documentation" to the duties of the IDTT.  (Special Master Letter at page 4, see Revised Policy at page 4 subdivision (a)(2)(E)4, 6.)  No changes will be made.  The language is identical to that at 12-8-7 through 12-8-8 of the Program Guide.

The Special Master recommends that CDCR strike language requiring the patient to be "custodially appropriate" for attendance at his or her IDTT.  (Special Master Letter at page 4, see Revised Policy at page 4, subdivision (a)(2)(F)4.)  This language is identical to language found at 12-8-8 of the Program Guide regarding IDTTs for CCCMS patients in a SHU.  The Special Master also recommends clarifying that the Primary Clinician must be licensed.  (Special Master Letter at page 4.)  That is not consistent with the Program Guide or CDCR practice.  CDCR employs and assigns licensed and unlicensed primary clinicians.

The Special Master recommended that the policy require that the quarterly IDTT review the prior treatment plan when completing its updates.  (*Id*.)  The IDTT is required to review relevant data in CCCMS RHU section (a)(2)(E).

The Special Master recommended that the word "DDP" be added before the word "mental health clinician" when describing "Monitoring Requirements for Developmental Disability Program Patients Placed in Restricted Housing."  Per the Clark Remedial Plan, any mental health clinician can conduct this contact.  (See Revised Policy at page 3, subdivision (e)(6)(A) for DDP policy.)

The Special Master recommends that the CCCMS RHU section include reference to property as well as an opportunity to meet with the assigned Primary Clinicians.  (Special Master Letter at page 4.)  Property schedules are included in the regulations package and the CCCMS RHU healthcare policy already addresses access to primary clinicians.  (See Revised Policy at page 4, subdivision (a)(3)(A)2.)

CDCR has added the word "group" to the CCCMS RHU section (a)(3)(A)7 to clarify that the

90 minutes of structured treatment refers to the weekly group.

> III.     Questions and Comments on the EOP RHU Policy

The Special Master asks for rational for the following definition of EOP RHU:

> Secure housing and care for patients with <u>diagnosed psychiatric disorders and not able to function in the General Population but not requiring crisis or inpatient hospital care, but who require placement in restricted housing.</u>

(Special Master Letter at page 4, see also Revised Policy at page 1 section (c).)  EOP patients are those who cannot function in the general population and require a higher level of care, but not so high as to require crisis bed or inpatient hospital care.  The underlined section is to clarify that EOP RHUs are for such patients – those who cannot function at a lower level of care but not those who require referral to higher levels of care.  Such patients who require higher levels of care should be referred and transferred to those settings within established timeframes.

The Special Master recommends that language be added to the EOP RHU policy requiring morning meetings.  (*Id*.)  Morning meeting language has been added to the general provisions section at page 3, section (e)(5)(C).

The Special Master notes that some IDTT language appears redundant.  (*Id*. at page 5.)  CDCR has struck redundant language.

The Special Master recommends adding the words "are encouraged" prior to "to attend" regarding the additional unit staff that may be part of an EOP IDTT.  (*Id*., see Revised Policy at page 6, section (a)(2)(B)2.)  The language in the EOP RHU section is identical to that found at 12-9-5 of the Program Guide regarding IDTTs in the old PSU programs.

The Special Master recommends that the words "and document" be added after "evaluate" to EOP RHU section (a)(2)(B)4.a.  (*Id*.)  That edit is unnecessary because that same sentence already directs the reader to "update the treatment plan."

The Special Master recommends that EOP RHU section (a)(2)(B)4.b identify potential discharge locations.  (*Id*.)  Discharge levels of care and programs are well known to CDCR clinicians.  No further enumeration of those levels of care is necessary in this policy.

The Special Master recommends adding the word "licensed" before "psychologists."  (*Id*. at 6.)  CDCR employs and assigns unlicensed psychologists as Primary Clinicians in accordance with the Program Guide and CDCR policy.  No edit is required to this policy.

The Special Master also recommends adding the words "[a]ttend ICC" as enumerated duties of the assigned primary clinician.  (*Id*.)  CDCR has added components of the September 25, 2023 memo regarding ICC attendance to the EOP RHU policy at (a)(2)(B)3.  Similar language is found in the CCCMS RHU section at (a)(2)(D).

Regarding references to EOP RHU behavioral incentive programs in EOP RHU section (a)(3) (Revised Policy at pages 6-7), CDCR will include this information in the template operating procedure for the EOP RHUs much like the PSU BIP is included in the California State Prison, Sacramento PSU operating procedure.

CDCR has struck references to an IDTT progress note listing the members in attendance because the attendees are logged in the master treatment plan in EHRS.

The Special Master recommends modification to section (a)(3)(B)4 regarding treatment intervention description. (*Id*.)  No modification is needed.  The language is identical to the Program Guide at 12-9-7, PSU treatment planning.

The Special Master asks several questions about EOP RHU section (a)(4), pertaining to out of cell time offered to EOP RHU patients (*Id*.)  Section (a)(4)1 of the Revised Policy states:

> At least ten hours must be out-of-cell exercise shall be offered each week, **which may include supervised recreational therapy.**

The language mirrors similar language in the Programs Guide at 12-9-12, regarding out of cell time for PSU patients:

> All inmate-patients assigned to the PSU shall be offered a minimum of ten hours of out-of-cell exercise each week, **which may include supervised recreational therapy.**

Measurement of out-of-cell time offered to EOP RHU patients will not deviate from the manner in which CDCR measures out-of-cell time for PSU patients. As mentioned previously, all RHU indicators will be reviewed and updated during their annual review to ensure adherence to updated policies.

The Special Master recommends that nursing staff categorize each CDCR 7362 received Monday through Friday as emergent, urgent, or routine. (*Id*.)  Referral requirements are now included in the general provisions section at (e)(4)(D).  (Revised Policy at page 2.)

The Special Master requests additional information on the requirement to develop discharge plans laid out in section (a)(5)(A):

> **At the time of admission to the** EOP RHU, **a preliminary discharge plan shall be developed based on the clinical and security needs of the patient as well as the patient's EOP RHU term.**

This language is nearly identical to the Program Guide at 12-9-14 regarding PSU discharge plans:

> **At the time of admission to the** PSU, **a preliminary discharge plan shall be developed based on the clinical and security needs of the inmate-patient as well as the inmate-patient's SHU term.**

Discharge plans are developed consistent with current treatment planning practices. No changes to current policy or practice are contemplated.

Additional changes made in response to the Special Master's letter are below:

| Change | Section |
|---|---|
| Added the word "Supervisor" after "Senior Psychologist" | (a)(2)(B)1.a |
| Changed "participating in" to "attending" | (a)(2)(B)1.g |
| Added "and the outcome of the IDTT to the patient" to the end of (e)(2)(B)4 | (a)(2)(B)1.g |

    B. Response to Plaintiffs' Letter

Plaintiffs raise four global concerns at the outset of their letter. First, Plaintiffs recommend CDCR draft a third policy to cover "surveillance, screening and referrals in the general [population] RHU[s]…that are not specialized for EOP or CCCMS patients." (Plaintiffs' Letter at 1.) As noted above, CDCR's Revised Policy incorporates this concept by including a section on RHU policies applicable to all RHUs, not just those with a CCCMS or EOP program.

Second, Plaintiffs request that the parties inform the court of these changes and seek court approval. Defendants have agreed to meet and confer with Plaintiffs on their request to update the court on changes to the Program Guide and Compendium. Despite this, Defendants are unclear how Plaintiffs or the Special Master reconcile this request to update the court with a new Program Guide and Compendium with the court's February 7, 2022 order noting that the "final approval of a list of CQIT indicators will replace the need for annual updates to the Program Guide and the Compendium" and ordering that the "parties' obligations to file further annual updates to those documents is discontinued unless or until further order of the court." (ECF No. 7456 at 4.) CDCR has already committed to including RHU policy and regulation in pertinent CQIT indicators and no further orders have issued on this subject.

Third, Plaintiffs note that they reserve the right to request incorporation of Coleman remedies that they may have missed in reviewing these RHU policies. (*Id.*) CDCR agrees.

Fourth, Plaintiffs request information on how CDCR determined which policy was most generous between mental health long and short term segregation programs (i.e. ASU EOP v. PSU, STRH v. LTRH). (*Id.*) CDCR staff compared the common program requirements of the short and long term programs, including, for instance, the requirements for contact frequencies, structured treatment hours, psychiatric technician rounds, IDTT required attendees, out-of-cell time, and other program specific functions. CDCR reviewed all existing policies and procedures including Chapters 7 through 9 of the Program Guide and the associated policies governing the STRH and LTRH programs. CDCR also compared all data indicator business rules associated with ASU, PSU, STRH, and LTRH programs to determine whether the rules between the short- and long-term programs were identical or whether there were conflicts. In the case of a conflict, CDCR selected the rule that best fit the new RHU programs.

I. Plaintiffs' Comments on the Draft EOP RHU Policy

a. Weekly Yard Time

Plaintiffs request that clarifying language be added to EOP RHU section (a)(4)(1) to ensure that exercise yard time is not duplicative of CDCR's obligation to provide EOP patients with ten hours of structured treatment per week. (Plaintiffs' Letter at page 3.)

> All patients assigned to an EOP RHU shall be offered a minimum of ten hours of out-of-cell exercise each week, which may include supervised recreational therapy. **This is in addition to the minimum ten hours of structured therapeutic activity that must be offered, for a total minimum weekly amount of out-of-cell time of least twenty hours.**

Although this language largely mirrored the Program Guide's provisions on PSU out-of-cell time, CDCR has revised (a)(4)(1) to clarify that EOPs must be offered twenty hours of out-of-cell time, ten of which must be exercise:

> All patients assigned to an EOP RHU shall be offered a minimum of twenty hours out of cell time each week. At least ten hours must be out-of-cell exercise shall be offered each week, which may include supervised recreational therapy. EOP RHU patients are also offered ten hours of structured therapeutic activities each week.

b. Expansion of Out-of-Cell Time for EOP and CCCMS Patients

Plaintiffs request that EOP and CCCMS patients be offered more than twenty-hours of out-of-cell time. (Plaintiffs' Letter at page 3.) CDCR is not planning on further expanding offered yard time to EOP or CCCMS patients at this time.

c. Weekly Individual Primary Clinician Contacts

Plaintiffs note that the EOP RHU policy requires Primary Clinician (PC) contacts every other week while Chapter 7 (ASU) of the Program Guide requires weekly contacts and Chapter 9 (PSU) allowing for biweekly psychotherapy groups in lieu of a one on one contact. (*Id*.) CDCR has revised the EOP RHU policy to require weekly contacts in line with the ASU EOP Hub requirement. (See Revised Policy at page 7, section (a)(3)(C)1.B.)

d. Daily Licensed Psychiatric Technician Rounds

Plaintiffs request that CDCR add requirement for "daily LPT rounds seven days per week." (Plaintiffs' Letter at page 4.) CDCR has added the requirement for daily rounding to the general provisions section of the Revised Policy. (See Revised Policy at page 2, section (e)(5)(A).)

e. High Refusers

Plaintiffs request that the section on Patient Refusal to Attend Treatment be augmented with language from the Program Guide on treatment refusals, namely that found at 12-7-10 through

12-7-11. (Plaintiffs' Letter at pages 4-5.) CDCR will add the enumerated requirements to the EOP RHU policy:

> • Interact with these inmate-patients daily on scheduled work days (instead of weekly)
> • Include in the treatment plan efforts to reduce resistance to participation in group therapy
> • Discuss these inmate-patients during the ASU morning meeting with custody
> • Consider referral of inmate-patients to higher levels of care and document the results of this consideration.

(See Revised Policy at page 8, section (a)(3)(D)6.)

    f. Suicide Prevention Policies

Plaintiffs request that the EOP RHU policy be updated to include certain suicide prevention policies aimed at segregation units. (Plaintiffs' Letter at page 5.) Plaintiffs state that "[a]ll of the suicide prevention remedies currently applicable to segregation units must be incorporated into the new RHU policies. It is not clear that this is the case." (*Id*.) It is also not clear why all suicide prevention policies must be replicated in these RHU policies, especially since CDCR is taking no action to rescind or supersede those existing policies. Most suicide prevention policies are found in general Program Guide sections, not those sections pertaining only to segregation.

Plaintiffs request that the EOP RHU policy include reference to RHU intake cell procedures. CDCR has added intake cell language to the RHU policy in the general provisions section applicable to all inmates in RHU. (Revised Policy at page 2, section (e)(3).) CDCR has also added language on fidelity monitoring of psychiatric technician rounding on section (e)(5) of the general provisions. (*Id*.)

The policy on custody reviews of 114-A logs is a standalone compendium custodial policy and does not need to be included in this policy.

    g. 12-Step Programs

Plaintiffs question why "12-Step Programs" are included in the EOP RHU policy. (Plaintiffs' Letter at page 6.) Plaintiffs state that 12-step programs are lead by incarcerated individuals, and not mental health clinicians. The reference to 12-step programs is directly from the PSU chapter of the Program Guide. The same line also references substance abuse programs.

    h. Behavioral Incentive Program (BIP)

Plaintiffs ask whether CDCR plans to expand the BIP to the EOP RHUs. (*Id*.) CDCR is planning on adding BIP requirements to EOP RHU operating procedures and plans to share a copy of that operating procedure with the Plaintiffs and Special Master when drafted.

Page 9

i. Inpatient Returns to RHU

Plaintiffs point to two policies on case conferences following returns from inpatient care within CDCR or at Department of State Hospitals and recommend those processes be applies to the EOP RHU.  (*Id*. at 7.)  Neither policy relates the EOP population, however.  The Compendium's September 19, 2014 DSH policy on Case Conferences for Returning DSH Level of Care Inmates with Prior Security Housing Unit Placement and the Program Guide's February 25, 2015 procedure on the same only apply to patients discharging from inpatient care and returning to a SHU.  In fact, the February 25, 2015 policy[2] makes clear that the case conferences apply to those in the CCCMS or not in the MHSDS at all and returning to a SHU – not a PSU, LTRH or any mental health restricted housing unit.

The policy and procedures stem from the court's April 10, 2014 order, specifically the line stating that "[i]n addition, defendants are prohibited from returning any seriously mentally ill inmate to any SHU unit if said inmate has at any time following placement in a SHU required a higher level of mental health care."  (ECF No. 5131 at 74.)  The court's concern was with certain patients discharging from inpatient care and being returned to non-MHSDS segregation units.  In line with those concerns, that same order lead to the creation of CCCMS restricted housing units – now CCCMS RHU.  Accordingly, these policies are inapplicable here and may not be applicable to any scenario since CDCR has since activated mental health restricted housing units from both EOP and CCCMS patients.

Plaintiffs also request that the compendium's March 21, 2013 memo on Psych and Return be referenced in the EOP RHU policy.  (Plaintiffs' Letter at page 7.)  That policy is classification related and is directed at patients housed in inpatient care.  It directs CDCR staff working with DSH to determine if restricted housing remains an appropriate return program for patients about to discharge from DSH programs.  It does not touch on treatment or custodial programs for patients housed in an EOP RHU or equivalent.  It would not be appropriate to include that policy in the EOP or CCCMS RHU policies.  The policy remains in the Compendium.

j. Length of Stay and Long Term Segregated Case Conferences

Plaintiffs first request that the EOP RHU policy reference the Program Guide's requirement for Facility Captain and Correctional Counselor II reviews of patient retained in ASU more than 90 days.  (*Id*. at 7—8, citing to Program Guide at 12-7-9.)  CDCR has added that provision at page six of the Revised Policy in section (a)(2)(C).

Second, Plaintiffs note that the September 15, 2014 memo regarding long term segregated case conferences is under review.  That memo will be revised in the future to relate to the RHUs but does not need to be incorporated into this healthcare policy.  Its provision for custody reviews will be applied to the RHU population in the meantime.

---

[2] For reasons unclear, the February 25, 2015 procedures are included in the Program Guide but the policy of the same date is not.  It is attached to this letter for review.

Page 10

    k. Primary Clinician Attendance at ICC

Plaintiffs note that primary clinician attendance at ICC is governed by the September 25, 2023 memorandum negotiated during data remediation. (*Id*. at 8.) This concept is referenced at page six of the Revised Policy in section (a)(2)(B)3.

    l. Post Placement Screenings for Non-MHSDS Patients

Plaintiffs reiterate their request for an RHU policy governing non-MHSDS patients. (*Id*. at 8-9.) CDCR has created a general provisions section for the RHU policy.

    m. Structured Therapeutic Activities

Plaintiffs request adding the word "structured" to the phrase "at least ten hours per week of scheduled **structured** therapeutic activities as approved by the IDTT." CDCR has revised section (a)(3)(B)6. of the EOP RHU section of the Revised Policy to read "[e]ach patient will be offered at least ten hours per week of structured therapeutic activities as approved by the RHU IDTT."

    n. Transfer Timelines

Plaintiffs request that the policy include transfer timelines. (*Id*.) Transfer timelines are included in regulations as well as Chapter 1 of the Program Guide and do not need to be included in this healthcare policy. The Revised Policy refers to Title 15 for transfer timelines.

    o. Department Operations Manual Requirements for Unclothed Body Searches (DOM 52050.16.6)

Plaintiffs request that the EOP RHU policy reference DOM Section 52050.16.6 regarding unclothed body search procedures negotiated in response to the April 10, 2014 order. (*Id*. at 10, referencing ECF No. 5131 at 74.) These procedures apply to EOP patients in restricted housing and remain in effect. This compendium policy is in the DOM and does not need to be referenced in the healthcare policy.

    p. *Armstrong*

CDCR has struck language from the policy regarding Armstrong procedures.

  II. Plaintiffs' Comments on the Draft CCCMS RHU Policy

  a. CCCMS RHU Transfer Timelines

Plaintiffs request that exceptions to transfer timelines in the CCCMS RHU be struck from policy. (*Id*. at 11.) The policy has been revised to refer to Title 15 for timeframes.

Page 11

    b.  Out of Cell Time

Plaintiffs request that the CCCMS RHU policy reference the requirement for 20-hours of out of cell time. (*Id*. at 12.) That language is included in the CCCMS policy at page four of the Revised Policy in section (a)(4).

    c.  Unclothed Body Searches in CCCMS RHUs

Plaintiffs request that CDCR expand DOM Section 52050.16.6 to the CCCMS RHU population. (*Id*.) That DOM section applies currently to EOPs in restricted housing. The DOM section stems from the April 10, 2014 order requiring CDCR to revise its "policy concerning strip searches in EOP ASU hubs." (ECF No. 5131 at 74.) The order only applies to the EOP population. That same order resulted in the creation of the STRH and LTRH programs. Both the DOM section on unclothed body searches in EOP restricted housing units and the creation of the STRH and LTRH were negotiated during the same set of meet and confers in summer 2014. To the extent that the Plaintiffs believed the order required application of the DOM section to the CCCMS RHU population, the time to raise that issue was in 2014, not today.

    d.  Armstrong

As noted above, references to *Armstrong* policies and procedures have been struck from the Revised Policy.

    e.  Suicide Prevention Remedies

Plaintiffs reiterate their request for suicide prevention remedies to be referenced in the RHU policies. (*Id*.) That issue is addressed above.

    C.  Conclusion

CDCR requests your comments and questions by January 19, 2024. Please let me know if you would like to meet and confer in the interim.

Sincerely,

*/s/ Nick Weber*

NICK WEBER
Attorney
Office of Legal Affairs