APPENDIX 8

**Silvia Abrignani**

| | |
|---|---|
| **From:** | Gail LaPurja <GLaPurja@rbgg.com> |
| **Sent:** | Tuesday, January 16, 2024 3:33 PM |
| **To:** | Weber, Nicholas@CDCR |
| **Cc:** | Coleman Special Master Team; Steve Fama; Elise Thorn; Bentz, Melissa@CDCR; Thind, Sundeep@CDCR; Damon McClain; Namrata Kotwani; Samantha Wolff; Paul B. Mello; Coleman Team - RBG Only |
| **Subject:** | Proposed Changes to RHU Mental Health Draft Policy (0489-03), 01-16-2024 [IMAN-DMS.FID12440] |
| **Attachments:** | TN-NW Letter Re Proposed Changes to RHU Mental Health Draft Policy 01-16-2024 0489-03(4420063.1).pdf; Plaintiffs January 2024 Redline of Defendants' MH Restricted Housing Unit Program Policy (Also including edits provide by SM team in meeting) 12.19.23(4419.docx |

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Counsel:

Please see attached letter from Tom Nolan; the Word version of the redlined exhibit is also attached.

Sincerely,
~gail

F. Gail LaPurja
Sr. Paralegal
**ROSEN BIEN GALVAN & GRUNFELD LLP**
101 Mission Street, 6th Floor / San Francisco, CA 94105
(415) 433-6830 (main) / (415) 907-0567 (direct)

glapurja@rbgg.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at glapurja@rbgg.com.



ROSEN BIEN
GALVAN & GRUNFELD LLP

P.O. Box 390
San Francisco, California 94104-0390
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Thomas Nolan
Email:  tnolan@rbgg.com

January 16, 2024

<u>VIA EMAIL ONLY</u>

Nick Weber, Esq.
California Department of Corrections and
Rehabilitation
Nicholas.Weber@cdcr.ca.gov

Re:    *Coleman v. Newsom*
RHU Mental Health Policy – Bulleted List of Items Discussed and
Requested RHU Policy Changes at Meeting on January8, 2024
<u>Our File No. 0489-3</u>

Dear Nick:

We are writing to provide you with a list of changes proposed during the meeting on Monday January 8, 2024 regarding Defendants' Draft RHU Mental Health Policies. Thank you for a productive meeting.  We appreciate your extension of the deadline for final comments on the mental health RHU policies until January 31, 2024, and Defendants' willingness to review a list of the changes proposed at last Monday's meeting and consider implementing them.  Please get back to us about your willingness to incorporate of the proposed changes below (and in the redline of the policy attached hereto as **Exhibit A**) as soon as possible, so we can finalize our formal comments before the revised deadline you have given of January 31, 2024.

In addition to the requested changes to mental health RHU policies below, we want to reiterate our prior objection to the language about restrictions on providing the mandated out of cell time in the October 7, 2023 Memo on out of cell time in RHU units. That memo said that "unless security and safety considerations preclude such activity, an incarcerated person in RHU shall be offered a  minimum of 20 hours of out-of-cell time per week."  10//7/23 Memo at 1.  However, there is no exception in the program guide or the remedy in this case that supports the assertion in that policy of an exception to the 20 hours mandate when "security and safety" considerations preclude providing yard. This vague exception should be stricken from the October policy.

[4420008.2]

Nick Weber
January 16, 2024
Page 2

       Below is the bulleted list of changes requested to the December Draft Mental Health RHU Policies that that parties discussed during the meeting on Monday January 8, 2024.  In addition, we have included below additional requirements from Chapter 7 of the Program Guide not included in Defendants' draft and not specifically discussed on Monday because they are numerous.  If Defendants think some of these provisions are no longer relevant or necessary, please let us know as we are always willing to meet and confer about such provisions and hear your reasoning.  In addition, we have enclosed a redlined version of the draft RHU policy reflecting the requested changes listed below:

- Chapter 7 of the Program Guide at 12-7-5 requires the following:

  o The policy should be modified to specify that the pre-placement screening will be done by "a mental health staff member, usually an LPT."  The current draft policy provides only that this screening will be done by "medical personnel."  *See* Draft New RHU Mental Health Policy at (e)(2)(A).

  o At the ASU morning huddle, there are several additional requirements not captured in the new section (e)(5)(C) that Defendants added to this draft, including discussion of "pertinent suicide risk assessment information from the MHTS Suicide Tracking Report."  Program Guide 12-7-5 (clinical rounds section, second paragraph).

  o The Special Master team also asked that this meeting be referred to as a "huddle" in accordance with current terminology in the CMHPP, and that the policy reference the third watch huddle in addition to the second watch morning huddle.

  o More detailed referral and monitoring requirements are missing from the new policy for individuals not identified for MHSDS but who "exhibit possible signs and symptoms of serious mental disorders" including the requirement that "interaction shall be sufficient to ascertain the inmate's mental health condition particularly during the first ten days."  *Id.* (Language covering this provision added to attached redline with proposed edits to the policy at (e)(2)(C).)

  o LPTs shall document clinical rounds for MHSDS individuals in the health record on a weekly basis, and for non MHSDS individuals by initialing next to the individuals name on the CDCR 114 Isolation Log book each

[4420008.2]

Nick Weber
January 16, 2024
Page 3

time the individual is seen. *Id.* (Language added in attached redline to (e)(5)(A)(2))

- Chapter 7 of the Program Guide at 12-7-6 and 12-6-7 contains the following requirements that need to be added to the policy:

  o Requirements that the screenings of individuals in ASU using the 31-question mental health screening tool take place as follows are not in the current policy: "Screening interview appointments shall be announced by custody staff as "health appointments" to avoid stigmatization and possible retribution by other inmates. Every effort shall be made to encourage inmates to attend these appointments." This language has been added in the redlined draft of the policy at § (e)(2)(B).

  o Requirements for the clinical evaluation when referred for one from RHU, including:

    ▪ the evaluation shall include a review of the EHRS, and if necessary, the Central File, and past treatment needs, medications and program placements shall be noted.
    ▪ The evaluation shall include an individual clinical interview to determine the nature of the problem and full mental status examination.
    ▪ When necessary, in consultation with the IDTT, psychologic and neuropsychological testing may be conducted as part of the diagnostic assessment of all cases not previously identified as having mental health treatment needs.
    ▪ All assessments shall conclude with a diagnosis and be placed in the EHRS.
    ▪ Those identified as meeting the clinical criteria for MHSDS placement may be referred to a psychiatrist for possible medication and other interventions.

    Those requirements have been added to the redlined version of the new policy at § (e)(2)(D) a new sub-section.

- In the Chapter 7 Section on CCCMS treatment in ASU unit, there are two additional elements not captured or not fully captured in Section (a)(3)(A) and (B) of the CCCMS RHU policy. First, the Program Guide at 12-7-7 states that CCCMS individuals in segregation units shall receive "group therapy when

Nick Weber
January 16, 2024
Page 4

deemed clinically appropriate." Group therapy has been added to the list of as needed treatments in the draft CCCMS RHU policy in redline at (a)(3)(B). Second, the program guide on the same page requires "medication **treatment** and monitoring of compliance by psychiatric and nursing staff." There is language about medication in (a)(3)(A), but we have proposed adding the work "treatment" in the sentence describing medication related care.

- In the Chapter 7 Section on EOP Treatment in ASU units at 127-7 to 12-7-8, there are some important elements not captured in the policy. First, in the discussion of the presentation of recommendations from the IDTT to the ICC in ASU, Program Guide Chapter 7 includes one recommendation option as "referral to an EOP for inmate-patients who are involved in non-violent incidents and determined not to be a risk to others." 2021 Program Guide, ECF 7333-1 at 133 (12-7-8). That should be included in the new policy and we have added it in redline to the draft policy at (a)(2)(B)(3)(d). Second, the following important provision is not included in the new policy: "In no event shall a pending CDCR 115, *Rules Violation Report,* impede or delay the transfer of these inmate-patients to a hub ASU institution." We have added language to this effect in the general RHU section as a new section (e)(1) (B).

- As noted by the Special Master team during the meeting, the Case by Case review process and the Long -Term Case Review process needs to be added to the mental health RHU policy. *See* 2021 Program Guide, ECF 7333-1, Chapter 7 at 12-7-9 (discussing the related 90-day review process which is already in the EOP RHU policy at § (a)(2)(C)). During the meeting on January 8, 2024, Nick Weber mentioned that this policy may change, but thought it made sense to reference the policy. We think the entire policy should be included. We did not add mandates to the policy based on these processes given the planned changes, but we think it is important to include the most current version of these policies as part of the new RHU policy so staff can find the requirements in the same document as the other key mandates for these units.

- Daily LPT rounds are mentioned in the general RHU policy section and this section applies by its language to all RHUs. *See* Draft Policy at p.2, § (e)(5)(A). The requirement for daily LPT rounds seven days a week is also mentioned in the CCCMS treatment section at § (a)(3)(A), but we have suggested a minor change to the wording in the redlined CCCMS section of the draft policy to make it clear the "daily rounds" are 7 days per week. Also, these rounds, which are in the required treatment list for EOP segregation units at 12-7-10 of the Program Guide, need to be added to the list of required treatment in the EOP RHU policy.

[4420008.2]

Nick Weber
January 16, 2024
Page 5

We have added this LPT rounding requirement to the required treatment EOP RHU policy section at § (a)(3)(C)(1)(c) in the attached redline with proposed changes to the policy.

- Chapter 7 of the Program Guide at 12-7-10 in the section on other treatment activities specifies that recreational activities will be both in cell and out of cell. For that reason we added "both within cell and out of cell" to the mention of Recreational activities in § (a)(3)(C)(2)(h) of the draft policy.

- The language about referrals out of standalone RHUs in the draft policy at § (e)(1)(A)(1) has been slightly modified to track the start of the 24-hour period for removal from stand-alone units as from "identification" rather than from "level of care changes," since level of care changes is vague and could refer to when the paperwork is done or the IDTT approves the person for a change in level of care. See Program Guide at 12-7-11.

- We added language to the description of IDTT duties in § (a)(2)(B)(4) of the draft EOP RHU policy to be consistent with the mandate to develop treatment plans as well as updating them, and mandate to include the patient in treatment plan formulation that are in the Program Guide at 12-7-12.

- Primary Clinician duties have been augmented at § (a)(2)(D) (5) through (11) of the policy to include more of the duties listed in the Program Guide at 12-7-13 and 12-7-14.

- In addition, we reiterate our objection to the fact that the 30-calendar day time frame for the transfer of CCCMS or EOP individuals to specialized RHU units is not specifically set forth in the policy. The policy refers people to title 15, but does not even give the relevant citation sections. We have added proposed language to include the 30 calendar day timeline and reference the Title 15 sections in the enclosed redline. We also object to the proposed exceptions to the transfer timeline in the December 15, 2023 Draft regulations (we will also formally object). There is no exception to the 30 day timeline in the Program Guide. We added proposed language in redline in the attached draft at (e)(1)(A) on the first page of the draft policy.

- We also do not think Defendants have fully addressed the concern about making sure EOP RHUs have appropriate behavior incentive programs (BIPs). While we appreciate the inclusion of the mandate that each EOP RHU will have an operational plan that includes a Behavioral Incentive Program (BIP), we

[4420008.2]

Nick Weber
January 16, 2024
Page 6

recommend that the new policy include a model operational plan for the BIP.  We also request that the new policy include monitoring of patient progress under the BIP in the section on Treatment.  *See* December Draft EOP RHU Policy at § (a)(3)(C).

- Defendants have helpfully revised the policy to require weekly contacts in the EOP ASU units.  However, the policy does not specify weekly *individual* contacts and could still be interpreted to allow caseload-style group contacts.  We request that Defendants add the word "individual" to section (a)(3)(C)(1)(b) of the EOP RHU policy.  This is clearly required by Chapter 7 of the Program Guide.

- Defendants also made changes to the suicide prevention section.  However, as discussed during the meeting, if the policy on custody review of 114-A logs is deemed a standalone policy, Defendants should at least reference it and other key suicide prevention policies that also apply in RHU units here.

- <u>Requested Additional Changes By Special Master Team</u>:  There were a number of additional changes requested by Tim Rougeux of the Special Master team (in addition to the ones discussed above, some of which are based on or the same as their comments).

    o  The policy statement in § (a)(1) of the overall policy has been changed in the redline to reflect Tim Rougeux's comment that the policy applies to all individuals in RHU units, not just those "serving" and RHU term.

    o  The morning meetings mentioned in several places in the policy have been changed to "second and third watch huddles."  *See* Draft Policy Redline at §§ (e)(5)(A)(2) and (e)(5)(C) of the general RHU policy, § (a)(2)(A) of the CCCMS RHU section, and § (a)(3)(D)(5)(c)(3) of the EOP RHU section.

    o  Section (e)(3)(A)(1)(a) has been edited to required direct and constant observation of anyone not housed in a double cell or intake cell until they are moved to such a cell.

    o  Section (e)(3)(A)(3) has been modified to make clear that if a cell mate moves out before the first 72 hours is concluded the patient must be rehoused within 8 hours from the cellmate's removal.

    o  Plaintiffs and the Special Master team expressed support for the requirement in CCCMS RHU policy Section (a)(1)(C) to provide patients

Nick Weber
January 16, 2024
Page 7

with their property "upon arrival in the CCCMS RHU."  Property delays
have been a longstanding source of stress and decompensation for people
in RHUs.

o   New language has been added in the CCCMS RHU section at § (a)(1)(D)
and in the EOP section at § (a)(1)(D) to make clear the intake cell language
in the general RHU section applies to CCCMS RHUs as well.

o   Defendants initially declined to add the clarifying word "physical" to the
phrase "before placement in the RHU" in the Section on pre-placement
screening in the draft policy.  *See* Draft Policy Section (e)(2)(A).  After the
meeting, Defendants seemed more open to this clarification to make it
abundantly clear this screening must happen before the patient is placed
into and RHU cell.  We have included this edit in the attached redline of
proposed changes.

o   Plaintiffs also request that the phrase "medical personnel" in the same
section be changed to "mental health personnel."

o   The Special Master team asked about language in two sections indicating
that people in the program have "diagnosed psychiatric disorders."  Those
sections at the top of the policy have been edited to avoid any
misunderstanding about who is eligible for the specialized mental health
RHUs.

o   In the CCCMS RHU Section, § (a)(2)(B), it says the primary clinician will
have their initial contact within 10 working days.  It should say "<u>assigned</u>
primary clinician."

o   In CCCMS RHU § (a)(2)(G) (4), it says the patient should only participate
in the IDTT if clinically and custodially appropriate.  This language should
be cut.  They should attend unless they refuse.  The program guide
mandates a collaborative process with the patient.

o   In the EOP Section at (a)(4)(2) it says the ICC shall establish a patient's
yard designation with input from the IDTT.  This should also be included
in the CCCMS RHU section.

o   In the EOP Section at (a)(2)(B) it should specify "assigned CCII or
assigned CCI acting as designee."

Nick Weber
January 16, 2024
Page 8

      We have done our best to capture from our notes the points discussed on Monday, however, other parties should supplement this list above with anything we may have missed.

      We reserve our right to request additional changes to the policy in light of the current requirements of the Program Guide, and as noted in the meeting, we do not agree that this new policy can rescind and replace the Program Guide requirements without a different process to ensure all of the relevant requirements are captured and that the Court approves.

      Please feel free to call me to discuss any of the above requested changes.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/  Thomas Nolan*

By:  Thomas Nolan
      Of Counsel

TN:fgl
Enclosure:  **Exhibit A** (Redline of Proposed Mental Health RHU Policy with Requested Changes)

cc:  Coleman Special Master Team
      Steve Fama
      Elise Thorn
      Melissa Bentz
      Sundeep Thind
      Damon McClain
      Namrata Kotwani
      Samantha Wolff
      Paul Mello

# Exhibit A

MENTAL HEALTH SERVICES DELIVERY SYSTEM

**Restricted Housing Unit Program: Mental Health Services**

**(a) Policy**

All Restricted Housing Units (RHU) shall maintain general expectations that allow all incarcerated individuals assigned to these units access to mental health services. Patients in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management System (CCCMS) or Enhanced Outpatient (EOP) level of care who are ~~serving a~~ housed in a Restricted Housing Unit (RHU) ~~term~~ shall be offered enhanced mental health treatment. The RHU shall be collaboratively administered between custody and mental health staff.

**(b) Purpose**

To assure all incarcerated individuals have access to mental health services while housed in a restricted housing unit setting. For patients in the MHSDS requiring restricted housing, enhanced mental health services to prevent decompensation shall be provided.

**(c) Definitions**

**Restricted Housing Units:** Restricted Housing Units are designated for short and extended-term programming of incarcerated individuals not suited for housing in the general population. They are specialized programming units with established placement criteria. RHUs include EOP RHU, CCCMS RHU, and GP RHU.

**Correctional Clinical Case Management System Restricted Housing Unit:** Secure housing and enhanced care for patients in the CCCMS level of care ~~with diagnosed psychiatric disorders not requiring higher levels of care but~~ who require placement in restricted housing.

**Enhanced Outpatient Program Restricted Housing Unit:** Secure housing and care for patients at the EOP level of care ~~with diagnosed psychiatric disorders and not able to function in the General Population but~~ not requiring crisis or inpatient hospital care, but who require placement in restricted housing.

**General Population Restricted Housing Unit:** Secure housing units designated for incarcerated individuals not suited for housing in the general population and who do not have any identified mental health concerns.

**Reception Center Restricted Housing Unit:** Secure housing units designated for incarcerated individuals in the reception center who require placement in restrictive housing

**Non-Disciplinary Restrictive Housing Unit:** Secure housing units with enhanced property and privileges designed for incarcerated individuals who require placement in restrictive housing for non-disciplinary reasons.

**(d) Responsibility**

**(1)** The overall institutional responsibility rests jointly with the Chief Executive Officer (CEO) and the Warden.

**(2)** The coordination of clinical activities within the RHU is the responsibility of the Chief of Mental Health (CMH), the Chief Psychiatrist (CP), and the Chief Nurse Executive (CNE). The CMH, the CP, and the CNE ensure that the RHU Program complies with the Mental Health Services Delivery System (MHSDS) Program Guide, the Health Care Department Operations Manual, and all applicable policies.

**(3)** The Facility Captain will oversee custodial responsibilities, correctional counseling services, and classification actions.

**(4)** Decisions on patient treatment plans, individual patient program activities, and level of care are made by the Interdisciplinary Treatment Team (IDTT).

**(e) Procedure**

**(1) Transfer Timeframes**

(A) Patients shall transfer to CCCMS or EOP RHUs in accordance with Title 15, which requires that patients at these levels of care be transferred to a specialized EOP or CCCMS RHU within 30 calendar days from the date of initial placement in RHU, or within 30 calendar days from the date the patient was made EOP or CCCMS. *See* Cal. Code of Regs., tit. 15 §§ 3335.2 (EOP) and 3335.3 (CCCMS). No patients included in the MHSDS shall be housed in a stand-alone GP RHU (these units only exist at the following institutions: ___, ___, ___). Any patient included in the MHSDS who is inadvertently placed in a stand-alone GP RHU shall be transferred out within 24 hours.

1. A mental health clinician shall assess any inmate in a stand-alone GP RHU identified and referred by the PT or any staff immediately or within 24 hours, depending on the urgency of the referral. An incarcerated individual who meets the criteria for MHSDS shall be transferred to another RHU as soon as possible but no longer than 24 hours following ~~the level of care changes~~. identification.

~~1.~~(B)  In no event shall a pending CDCR 115, *Rules Violation Report*, impeded or delay the transfer of an inmate patient to a CCCMS or EOP RHUs.

> **Formatted:** Justified, Right:  0.08", Space Before:  0 pt, Tab stops:  0.82", Left + Not at  1.07" +  1.07"

MENTAL HEALTH SERVICES DELIVERY SYSTEM

**(2) Admission Screening and referral**

(A) Pre-placement mental health screening: All incarcerated individuals shall be screened by ~~medical~~ mental health personnel, usually an LPT, for possible suicide risks, safety concerns, and mental health problems within 24 hours before physical placement in an RHU. If a patient screens positive, they are referred for a mental health evaluation on an emergent, urgent, or routine basis, depending on their answers to the screening questions.

(B) All incarcerated individuals not currently enrolled in the Mental Health Services Delivery System (MHSDS) shall receive a post-placement screening using the 31-questions mental health screening questionnaire within 72 hours after RHU placement, conducted by a mental health clinician or a trained nursing staff in a private and confidential setting that affords confidentiality of sight and sound from other incarcerated individuals and confidentiality of sound from staff. These screening interview appointments shall be announced by custody staff as "health appointments" to avoid stigmatization and possible retribution by other incarcerated individuals. Every effort shall be made to encourage incarcerated individuals to attend these appointments.

(C) Interaction s with newly admitted individual in RHU units shall be sufficient to ascertain the incarcerate individual's mental health condition particularly during the first ten days.

(D) When referred for a clinical evaluation from RHU, the evaluation shall include a review of the EHRS, and if necessary, the Central File, and past treatment needs, medications and program placements shall be noted. The evaluation shall include an individual clinical interview to determine the nature of the problem and full mental status examination. When necessary, in consultation with the IDTT, psychologic and neuropsychological testing may be conducted as part of the diagnostic assessment of all cases not previously identified as having mental health treatment needs. All assessments shall conclude with a diagnosis and be placed in the EHRS. Those identified as meeting the clinical criteria for MHSDS placement may be referred to a psychiatrist for possible medication and other interventions.

> **Formatted:** Indent: Left: 0.82", No bullets or numbering

MENTAL HEALTH SERVICES DELIVERY SYSTEM

1. All incarcerated individuals scoring positive on the screening shall be referred to a mental health clinician to be seen within the clinically appropriate time frame.

(C)(E) Patients shall receive orientation material within 24 hours of placement into a GP RHU, CCCMS RHU or EOP RHU.

**(3) Intake cell placement**

(A) All incarcerated individuals shall be housed in an Intake Cell or with a compatible cellmate for the first 72 hours of initial placement in an RHU.

1. All intake cells shall be suicide resistant.
   a. If an incarcerated individual is housed in a non-suicide-resistant intake cell, the incarcerated individual shall be placed under direct and constant observation by a trained staff until moved to an intake or double celled.

2. Institutions shall ensure that incarcerated individuals are re-housed in non-intake cells after the initial 72 hours are completed.

3. If the cellmate moves out of the cell before the 72 hours has concluded, a new cellmate must be assigned, or the incarcerated individual must be rehoused in an intake cell within 8 hours from the cellmate's removal.

(B) Institutions shall ensure that all requirements for the documentation of intake cell usage within the Strategic Offender Management System (SOMS) are followed according to current policies and procedures.

1. Institutions shall ensure that all necessary staff remain compliant with required training related to the governance of intake cell usage.

**(4) Referrals**

(A) Each day, the assigned physician, Registered Nurse (RN), or LPT will tour the unit and assess any patient with medical or dental needs.

(B) During Second Watch, patients requiring medical attention will be referred to the RHU RN.

(C) Sources of Referral for Mental Health Services

1. Staff referrals may be made on a CDCR 128-MH5, Mental Health Referral Chrono, or as a Consult Order in the Electronic Health Records System (EHRS).
   a. Any staff member who observes possible signs or symptoms of a serious mental health disorder shall refer a patient for clinical evaluation by completing a CDCR 128-MH5, Mental Health Referral Chrono.
   b. Any staff member who observes a patient to be at risk for suicide or any other condition that requires crisis care shall be immediately screened by a mental health clinician to assess the potential for suicide and, if appropriate, referral to a Mental Health Crisis Bed (MHCB) for admission.

2. Self-referrals shall be made on a CDCR 7362, Health Care Services Request.
   a. Monday through Friday, the following shall occur:
   b. A health care staff member shall collect all the CDCR 7362, Health Care Services Requests daily from the designated areas.
   c. Upon receipt of the collected forms, nursing staff shall initial and date each CDCR 7362, Health Care Services Request.
   d. The CDCR 7362, Health Care Services Request, shall be delivered to the designated program representative in mental health, dental, or pharmacy services for same-day processing.

3. On weekends and holidays, the following shall occur:
   a. The Triage and Treatment Area (TTA) RN shall review each CDCR 7362, Health Care Services Request for medical, dental, and mental health services, establish priorities on an emergent and non-emergent basis, and refer accordingly.
   b. If a physician, mental health clinician, or dentist is unavailable, the on-call physician or mental health provider shall be contacted.

(D) Patients shall be seen by a mental health clinician or on weekends by an on-call provider within the following clinically determined time frames.

1. Emergent: Emergency referrals shall be seen within 4 hours or escorted to the TTA.
2. Urgent: Urgent referrals shall be seen within 24 hours.
3. Routine: Routine referrals shall be seen within five calendar days.

**(5) Clinical rounds:**

(A) A mental health staff member, usually a licensed Psychiatric Technician (PT), shall conduct rounds seven days per week in all RHUs to attend to the mental health needs of all incarcerated individuals.

1. Patients not previously identified as having mental health treatment needs who exhibit possible signs and

MENTAL HEALTH SERVICES DELIVERY SYSTEM

symptoms of serious mental disorders shall be referred for clinical evaluation.

1.2. The PT shall document clinical rounds for MHSDS individuals in the health record.  For non-MHSDS individuals, the round shall be documented by initialing next to the individual's name in the 114 Isolation Log Book, or the SOMS equivalent each time the individual is seen.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

(B) The PT shall make initial contact with each incarcerated individual placed into an RHU within 24 hours after placement.

   1.  Institutions shall ensure that fidelity monitoring of these rounds is completed, as required, and reported to the appropriate governing committee.

(C) A second watch morning "check-in" meetingand a third watch huddle between custody and clinical staff shall be held each business day. At a minimum, an RHU Sergeant and an RHU Mental Health clinician (psychologist or social worker) shall attend the morning meetinghuddles.

   1.  During the meeting, involved personnel shall identify new arrivals, discuss current behavioral issues and concerns, and share pertinent information regarding new arrivals and at-risk incarcerated individuals.

   2.  This meeting should be documented in the RHU Logbook; shall include a review of pertinent suicide risk assessment information from the Suicide Tracking Report; salient clinical information shall be documented in the EHRS; if necessary, a referral for mental health services shall be made at the appropriate level of urgency.

   2.3.  For individuals not in the MHSDS, staff shall closely monitor those who exhibit possible signs and symptoms of serious mental disorders, and interactions with new arrivals shall be sufficient to ascertain the individual's mental health condition during the first ten days.

**(6) Monitoring Requirements for Developmental Disability Program Patients Placed in Restricted Housing**

(A) Developmental Disability Program (DDP) patients housed in a GP RHU shall be interviewed by a mental health clinician within 24 hours of initial RHU placement and receive weekly monitoring by a DDP psychologist or designee. For this purpose, "weekly" is a seven-day calendar week.

(B) Documentation of the initial 24-hour and weekly clinical contacts for DDP patients housed in an RHU shall be completed in the EHRS using either the "MH DDP Restricted Housing Check" PowerForm or the "DDP Progress Note" note type.

   1.  Documentation must indicate the patient's current housing setting, the evaluation type ("Initial 24-hour" or "Weekly"), and if the location where the contact occurred was confidential ("Confidential" or "Non-confidential").

   2.  Documentation shall also include a description of the content for this contact, relevant clinical observations, a statement describing the patient's functioning related to their DDP adaptive supports, any collateral information obtained (e.g., reports from the DDP officer or housing unit officers), and any follow-up steps taken if indicated.

(C) An initial 24-hour contact is not required if there are no modifications to the DDP patient's programming (e.g., a determination for restricted housing was made, but the patient was never housed in that unit) or if the patient leaves and returns to the same RHU environment within a 24-hour period.

(D) An initial 24-hour contact is not required if the DDP patient transfers to another RHU environment within the same institution or transfers from an RHU environment at one institution to an RHU environment at another institution unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(E) If a DDP patient transfers to another RHU environment within the same institution, a second weekly contact is not required unless clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(F) A weekly contact is required within seven calendar days of arrival at the receiving institution if a patient transfers from an RHU environment at one institution to an RHU environment at another institution.

**Restricted Housing Unit Program: Correctional Clinical Case Management System**

**(a) Procedure**

  **(1) Placement in a CCCMS Restricted Housing Unit**

    (A) A patient shall be housed in a CCCMS RHU if included in the MHSDS at the CCCMS level of care and meets RHU placement criteria under California Code of Regulations (CCR), Title 15, section 3335.

    (B) Patients assigned to a CCCMS RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to a CCCMS RHU with an imposed RHU term shall be classified under CCR, Title 15, section 3341.

    (C) Upon arrival in the CCCMS RHU, patients will receive their standard property and orientation package.

    (C)(D) The Intake Cell provisions above in the general RHU section apply to CCCMS RHUs and EOP RHUs as well

  **(2) Interdisciplinary Treatment Teams and Institutional Classification Committees**

    (A) Mental health staff shall attend daily second and third watch huddlesmorning meetings with custody staff to

Formatted: Not Expanded by / Condensed by

Formatted: Not Expanded by / Condensed by

MENTAL HEALTH SERVICES DELIVERY SYSTEM

discuss high-risk patients, new  arrivals, and any behavior issues or ongoing concerns of individual patients.

(B) Initial contact by the assigned primary clinician shall occur within 10 working days of arrival to the CCCMS RHU and before the initial IDTT.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

(C) Initial contact by the assigned psychiatrist shall occur within 10 working days of arrival to the CCCMS RHU and before the initial IDTT.

(D) The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after they arrive in the CCCMS RHU.

(E) Mental health staff shall attend and participate in IDTTs and ICCs. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist as a representative for the assigned psychiatrist or Primary Clinician to attend ICC meetings to provide mental health input. The designee must:

    1. Consult the patient's mental health treatment records.

    2. Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.

    3. Be current on all required training related to removing patients from MAX custody.

(F) The responsibilities for overall treatment planning within the CCCMS program rest with the IDTT. These responsibilities include:

    1. Placement decisions for individual cases.

    2. Review of relevant clinical data for diagnostic formulation.

    3. Review of relevant case factors.

    4. Formulation and approval of treatment plans.

    5. Annual and special reviews for continuation or termination of services.

    6. Review of treatment response.

    7. Discharge planning.

(G) The IDTT is composed of, at minimum:

    1. Assigned PC (either a psychologist or Clinical Social Worker).

    2. Assigned psychiatrist.

    3. Assigned Correctional Counselor.

    4. Patient, ~~if clinically and custodially appropriate~~ . The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT.  The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.

(H) The IDTT shall include the patient's Correctional Counselor, who shall present case factors of the RHU placement for consideration in developing the treatment plan and initiating an aftercare plan.

(I) Some patients may be seen more frequently by the IDTT in special reviews at the request of the assigned PC or psychiatrist whenever changes in the level of care or treatment plans are indicated.

**(3) Treatment for CCCMS Patients Placed in a Restricted Housing Unit**

    (A) The treatment interventions shall meet the guidelines outlined in the MHSDS Program Guide and include the following:

        1. Regular monitoring of symptoms by licensed Psychiatric Technicians through daily rounds seven days a week.

        2. Individual contact every week by PC or more frequently if clinically indicated.

        3. Crisis intervention.

        4. Medication treatment, evaluation, review, and compliance monitoring by psychiatric and nursing staff.

        5. Psychiatric contact every 90 calendar days.

        6. IDTT every 90 calendar days to update the treatment plan.

        7. 90 minutes of confidential, structured group therapeutic activity weekly.

        8. Clinical discharge or clinical pre-release planning.

    (B) The following treatment interventions shall be provided on an as-needed basis:

        1. Group Therapy

        ~~1.~~2 Orientation and supportive counseling for institutional adjustment.

        ~~2.~~3 Social skills training.

        ~~3.~~4 Consultation services, such as education or rehabilitative programs.

        ~~4.~~5 In-cell therapeutic activities each week, such as self-help and recreational activities, as determined by the IDTT.

        ~~5.~~6 Supportive care for Activities of Daily Living.

**(4) Out of Cell Time**

    (A) The CCCMS RHU will offer 20 hours of out-of-cell activities per week.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

1. Patients will also be offered 18.5 hours per week of recreational time outside their cell.
2. Patients will also be offered 90 minutes of confidential, structured therapeutic activity each week.
3. Structured mental health treatment hours attended by CCCMS patients shall earn credits to reduce their RHU term.

**Restricted Housing Unit Program: Enhanced Outpatient Program**

**(a) Procedure**

**(1) Placement in an EOP Restricted Housing Unit**

(A) A patient shall be housed in an EOP RHU if included in the MHSDS at the EOP level of care and are required to be housed in an RHU unit and meets criteria under California Code of Regulations (CCR), Title 15, section 3335 .

(B) Patients assigned to an EOP RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to an EOP RHU with an imposed RHU term shall be classified in accordance with CCR, Title 15, section 3341.

(C) Upon arrival in the EOP RHU, patients will receive their standard property and orientation package.

(C)(D) The intake cell provisions in the general RHU section above apply to EOP RHU units as well.

> **Formatted:** Not Expanded by / Condensed by

**(2) Clinical Services**

(A) Intake Assessment

1. The Senior Psychologist Supervisor or designee shall assign a PC for each patient in an EOP RHU. The PC shall complete an initial evaluation of the patient, including a review of the patient's mental health history and an interview in a timeframe clinically determined appropriate but not more than five calendar days after arrival in the EOP RHU

2. For all patients placed in an EOP RHU, a psychiatrist shall complete an initial psychiatry evaluation no later than 10 calendar days after arrival in the EOP RHU and before the initial IDTT.

3. The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after arrival in the EOP RHU.

4. The PC and other IDTT members shall do a comprehensive mental health clinical assessment before the initial IDTT. This assessment shall include, at minimum:
   a. Comprehensive review of the Strategic Offender Management System (SOMS) and health record of mental health treatment needs, including prior placements.
   b. Current mental status examination, including diagnosis and level of functioning.
   c. Daily observation by mental health and custody staff to assess Activities of Daily Living and social interactions.
   d. Review of disciplinary history and custodial placements by the assigned Correctional Counselor or Lieutenant.
   e. Review of specific risk factors for violence toward self and others. This includes a suicide risk assessment if indicated.

5. The IDTT will decide on the appropriate placement. This decision includes the following options:
   a. Referral for inpatient care.
   b. Placement in a MHCB (short-term crisis stabilization, including initiating involuntary medications when required).
   c. Referral to the classification committee recommending alternative RHU placement if the patient qualifies for CCCMS care or has been discharged from the MHSDS.
   d. If the RHU term has been served, placement at the appropriate level of care, including EOP.

(B) Interdisciplinary Treatment Team

1. The EOP RHU Senior Psychologist Supervisor or designee shall chair the EOP RHU IDTT. All clinical decisions regarding intake, treatment planning, re-justification of level of care, and discharge are made by the EOP RHU IDTT. The IDTT is composed of, at minimum:
   a. Senior Psychologist Supervisor or designee.
   b. Assigned Psychiatrist or designee.
   c. EOP RHU Facility Captain.
   d. Assigned Correctional Counselor II or assigned CCI acting as designee.
   e. Assigned PC or designee.
   f. Licensed Psychiatric Technician (PT)

MENTAL HEALTH SERVICES DELIVERY SYSTEM

    g.  Patient. The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT.  The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.

2.  Other EOP RHU staff may attend, such as a recreation therapist, nursing staff, Sergeant and correctional officers, and custody representatives.

3.  A representative from the IDTT (assigned PC or designee) shall be present in all classification hearings regarding patients to provide mental health input into the classification decision-making process. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist to represent the assigned psychiatrist or primary clinician to attend ICC meetings to provide mental health input. The designee must:

    a.  Consult the patient's mental health treatment records.

    b.  Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.

    c.  Be up to date on all required training related to removing patients from MAX custody.

    c.d.  The representative from the IDTT shall present the recommendations of the IDTT with respect to the case. The recommendations may include requesting referral to an EOP (non-RHU) program for patients who are involved in non-violent incidents and determined not to be a risk to others.

4.  After the initial IDTT, patients will be evaluated by the IDTT minimally at 60 and 120 calendar days after arrival at RHU and at least every 90 calendar days thereafter or sooner, whenever there is a significant change in level of functioning.

    a.  The IDTT will evaluate treatment progress, develop and update the treatment plan, with input from the patient and review discharge goals. The initial treatment plan and all subsequent treatment plans shall include a discharge plan and behavioral goals to discharge the patient from the EOP to a lower level of care if possible.

    b.  The assigned PC, or designee, will present a case summary with recommendations for continued treatment or discharge.

    c.  The results of all IDTT reviews, decisions, and recommendations will be documented in the health record.

    d.  Initial placements and level of care changes are documented in EHRS.

(C) Length of Stay More Than 90 Days

1.  Patients housed in EOP RHU for more than 90 calendar days shall be reviewed every 30 calendar days outside of the ICC process by the Facility Captain and Correctional Counselor II. The status of each case, with detailed information regarding the reasons for delays in the referral, disciplinary, classification, and transfer process, shall be compiled and reviewed by the Warden or designee (Chief Deputy Warden or Associate Warden for Health Care). The Warden shall ensure that reviewers take action to resolve any issues that impact the length of stay in RHU.

2.  Patients housed in EOP RHU for more than 90 days who postpone an RVR hearing pending referral to the District Attorney shall be reviewed for alternate housing. If the time housed in EOP RHU is equivalent to the projected RHU term (if the patient has been found guilty of the RVR), the patient shall be released to a general population setting. The Warden or designee shall contact the District Attorney to discuss expediting pending cases.

(D) Primary Clinician

Each patient in an EOP RHU shall be assigned a PC. The PC will maintain active clinical involvement with the patient, as well as perform casework functions, including the following:

1.  Documentation of initial treatment plan and updates.

2.  Regular clinical contact with assigned patients.

3.  Ensuring scheduling of periodic IDTT reviews.

4.  Attendance at IDTT reviews of the patient.

5.  Referral to and coordination with the assigned psychiatrist

6.  Participation in ICC to provide mental health input.

7.  Liasson with custody and correctional counseling staff regarding overall management of patients.

8.  Provide group therapy as defined in the inmate-patient's treatment plan.

9.  Crisis intervention and referral as needed.

5.10.  Review of weekly summary of clinical rounds and document this review in the EHRS.

Formatted: Not Expanded by / Condensed by

Formatted: Not Expanded by / Condensed by

Formatted: Not Expanded by / Condensed by

Formatted: Not Expanded by / Condensed by

Formatted: Not Expanded by / Condensed by

Formatted: Not Expanded by / Condensed by

MENTAL HEALTH SERVICES DELIVERY SYSTEM

6.11.    Response to California Department of Corrections and Rehabilitation (CDCR) inquiries regarding the patient's clinical status.

(D) Psychiatrist

Each patient in an EOP RHU shall have an assigned psychiatrist.

**(3) Treatment Program**

(A) Each EOP RHU shall have an Operational Plan that describes its treatment program. The Operational Plan shall include a behavioral incentive program (BIP) with criteria for achieving and retaining each level.  A sample BIP is attached hereto as Exhibit ____.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

   1. Refer to the Operational Plan at each institution for a complete description.
(B) Treatment Plan
   1. Each patient in an EOP RHU shall have a Master Treatment Plan within the EHRS.
   2. Within the EOP RHU, each patient shall have an individualized treatment plan that provides treatment consistent with the patient's clinical needs.
   3. The treatment plan shall be reviewed by the IDTT 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter or whenever a significant change in the patient's functioning requires a change in the treatment plan.
   4. Each treatment intervention shall indicate outcome objectives and specific, measurable behavioral goals.
   5. Discharge from the EOP or transfer to another level of care shall be documented in the EHRS.
   6. Each patient will be offered at least ten hours per week of structured therapeutic activities as approved by the RHU IDTT.
     a. It is recognized that not all patients can participate in or benefit from ten hours per week of treatment services. For some patients, ten hours per week may be clinically contraindicated.
     b. For those patients scheduled for fewer than ten hours per week of treatment services, the PC shall present the case and recommended treatment program to the IDTT for approval. The treatment plan must include a detailed description of the diagnosis, problems, level of functioning, medication compliance, and rationale for scheduling fewer than ten hours.
     c. For patients scheduled for fewer than ten hours of treatment activities per week, the IDTT shall meet at least every 30 calendar days and be responsible for reviewing and increasing the treatment activities and considering a higher level of care as appropriate.
(C) Treatment
   1. Required treatment within an EOP RHU includes the following:
     a. Individual treatment planning involves a meeting of the IDTT and the patient 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter to identify treatment needs, develop treatment plans, assess treatment progress, and update or revise individual treatment plans in accordance with the patient's needs and progress.
     b. Weekly (assigned or covering) PC contact.
     b.c. Daily rounding by the LPT seven days a week.
     c.d. A psychiatrist shall evaluate each EOP patient at least every 30 calendar days.
       Refer to the Health Care Department Operations Manual regarding medication administration procedures, medication refusals, Directly Observed Therapy, medication adherence, and other aspects of medication administration. Refer to the CCR, Title 15, section 3999.344, for information on involuntary medication administration.

   2. Other treatment activities may include the following:
     a. Individual psychotherapy.
     b. Group therapy, such as anger management, stress management, offense-related issues, and current events.
     c. Medication education.
     d. Crisis intervention.
     e. Pre-release planning.
     f. Monitoring and assistance with daily living skills.
     g. Cognitive Behavioral Therapy directed to specific behaviors or symptoms.
     h. Recreational activities both within cell and out of cell.
     i. Vocational and pre-vocational training, as available.
     j. Education as available.
     k. 12-Step Program and other substance use treatment.
(D) Patient Refusal to Attend Treatment
   1. Within one week of the identification of a patient who has refused more than 50 percent of structured therapeutic treatment hours offered and attended an average of less than five hours per week of offered structured treatment hours in a two-month period, the IDTT, clinical staff, or other custody staff must work together to determine the reason for treatment refusal.
   2. For patients on a modified treatment program, attendance at 50 percent or less of the required treatment hours specified in the modified treatment plan shall trigger the review.

**Formatted:** Not Expanded by / Condensed by

MENTAL HEALTH SERVICES DELIVERY SYSTEM

3. The Correctional Lieutenant responsible for the EOP RHU and the PC shall work collaboratively to evaluate the circumstances underlying the patient's refusal to attend the scheduled treatment sessions offered.
4. If a specific cause for the patient's refusal can be identified and reasonably resolved, custody and mental health staff shall work with the patient to resolve such issues.
5. If the patient identifies barriers related to security policies as a cause for their refusal to attend treatment, custody, and mental health staff shall jointly document their findings on a CDC 128-B, General Chrono, and submit to both the Chief Deputy Warden and CMH.
   a. The Chief Deputy Warden and CMH shall confer and consider various methods to encourage the patient to attend treatment, including viable alternatives to the identified security policies that do not jeopardize the unit's security or the safety of staff or patients.
   b. Should the Chief Deputy Warden and CMH disagree on the proper resolution of the matter, the issue shall be elevated to the Warden and CEO for their review and resolution.
   c. For patients who refuse more than 50% of offered treatment during a one-week period, the PC shall:
      1) Interact with these patients daily on scheduled work days (instead of weekly)
      2) Include in the treatment plan efforts to reduce resistance to participation in group therapy.
      3) Discuss these patients during the RHU second and third watch huddles morning meetings with custody
      4) Consider referral of patient to higher levels of care and document the results of this consideration in the Master Treatment Plan.

**(4) Out-of-Cell Time**
1. All patients assigned to an EOP RHU shall be offered a minimum of twenty hours out of cell time each week. At least ten hours of out-of-cell exercise shall be offered each week, which may include supervised recreational therapy. EOP RHU patients are also offered ten hours of structured therapeutic activities each week.
   a. Structured mental health treatment hours attended by EOP patients shall earn credits that can be applied towards a reduction of their RHU term.
2. The ICC shall establish a patient's yard designation with input from the IDTT as part of the individual treatment plan.

**(5) Discharge Procedures**
(A) At the time of admission to the EOP RHU, a preliminary discharge plan shall be developed based on the clinical and security needs of the patient as well as the patient's EOP RHU term.
(B) Patients admitted to an EOP RHU may be discharged to a CCCMS RHU to complete their term when they no longer require an EOP level of care.
(C) Patients who complete their RHU term and still require EOP care will be discharged to a GP EOP for continuing mental health treatment.
   1. The EOP RHU PC will document recommendations regarding the patient's specific treatment needs, including any concerns about facilitating the patient's successful transition to general population.
   2. The receiving EOP IDTT will consider documentation by the EOP RHU clinician in developing the patient's treatment plan.
   3. The treatment plan for patients transferred from RHU to GP-EOP shall include services provided to aid in the transition to the GP environment.
(D) Patients may be referred to an inpatient program as clinically indicated.
(E) Treatment recommendations upon discharge from an EOP RHU shall be made by the IDTT and documented in the EHRS.
(F) The ICC shall review the discharge recommendations of the IDTT, considering both the clinical and custody needs of the patient. The decision of the ICC shall be documented on a CDCR 128-G Chrono.

**References**
- California Code of Regulations, Title 15, Division 3, Subchapter 4, Article 7, sections 3335 – 3344.
- Mental Health Services Delivery System Program Guide, 2021 Revision

MENTAL HEALTH SERVICES DELIVERY SYSTEM

- Statewide Mental Health Program, Monitoring Requirements for Patients in the Developmental Disability Program Placed in Restricted Housing Memorandum, October 14, 2022
- Operational Plan for Armstrong Class Members Housed in Administrative Segregation Memorandum, December 17, 2012

**Restricted Housing Unit Program: Mental Health Services**

**(a) Policy**
All Restricted Housing Units (RHU) shall maintain general expectations that allow all incarcerated individuals assigned to these units access to mental health services. Patients in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management System (CCCMS) or Enhanced Outpatient (EOP) level of care who are housed in a Restricted Housing Unit (RHU) shall be offered enhanced mental health treatment. The RHU shall be collaboratively administered between custody and mental health staff.

**(b) Purpose**
To assure all incarcerated individuals have access to mental health services while housed in a restricted housing unit setting. For patients in the MHSDS requiring restricted housing, enhanced mental health services to prevent decompensation shall be provided.

**(c) Definitions**
**Restricted Housing Units:** Restricted Housing Units are designated for short and extended-term programming of incarcerated individuals not suited for housing in the general population. They are specialized programming units with established placement criteria. RHUs include EOP RHU, CCCMS RHU, and GP RHU.
**Correctional Clinical Case Management System Restricted Housing Unit:** Secure housing and enhanced care for patients in the CCCMS level of care who require placement in restricted housing.
**Enhanced Outpatient Program Restricted Housing Unit:** Secure housing and care for patients at the EOP level of care not requiring crisis or inpatient hospital care, but who require placement in restricted housing.
**General Population Restricted Housing Unit:** Secure housing units designated for incarcerated individuals not suited for housing in the general population and who do not have any identified mental health concerns.
**Reception Center Restrictive Housing Unit:** Secure housing units designated for incarcerated individuals in the reception center who require placement in restrictive housing
**Non-Disciplinary Restrictive Housing Unit:** Secure housing units with enhanced property and privileges designed for incarcerated individuals who require placement in restrictive housing for non-disciplinary reasons.

**(d) Responsibility**
**(1)** The overall institutional responsibility rests jointly with the Chief Executive Officer (CEO) and the Warden.
**(2)** The coordination of clinical activities within the RHU is the responsibility of the Chief of Mental Health (CMH), the Chief Psychiatrist (CP), and the Chief Nurse Executive (CNE). The CMH, the CP, and the CNE ensure that the RHU Program complies with the Mental Health Services Delivery System (MHSDS) Program Guide, the Health Care Department Operations Manual, and all applicable policies.
**(3)** The Facility Captain will oversee custodial responsibilities, correctional counseling services, and classification actions.
**(4)** Decisions on patient treatment plans, individual patient program activities, and level of care are made by the Interdisciplinary Treatment Team (IDTT).

**(e) Procedure**
**(1) Transfer Timeframes**
(A) Patients shall transfer to CCCMS or EOP RHUs in accordance with Title 15, which requires that patients at these levels of care be transferred to a specialized EOP or CCCMS RHU within 30 calendar days from the date of initial placement in RHU, or within 30 calendar days from the date the patient was made EOP or CCCMS. *See* Cal. Code of Regs., tit. 15 §§ 3335.2 (EOP) and 3335.3 (CCCMS). No patients included in the MHSDS shall be housed in a stand-alone GP RHU (these units only exist at the following institutions: ___,___, ___, __). Any patient included in the MHSDS who is inadvertently placed in a stand-alone GP RHU shall be transferred out within 24 hours.
1. A mental health clinician shall assess any inmate in a stand-alone GP RHU identified and referred by the PT or any staff immediately or within 24 hours, depending on the urgency of the referral. An incarcerated individual who meets the criteria for MHSDS shall be transferred to another RHU as soon as possible but no longer than 24 hours following identification.
(B) In no event shall a pending CDCR 115, *Rules Violation Report*, impeded or delay the transfer of an inmate patient to a CCCMS or EOP RHUs.

**(2) Admission Screening and referral**
(A) Pre-placement mental health screening: All incarcerated individuals shall be screened by mental health

personnel, usually an LPT, for possible suicide risks, safety concerns, and mental health problems within 24 hours before physical placement in an RHU. If a patient screens positive, they are referred for a mental health evaluation on an emergent, urgent, or routine basis, depending on their answers to the screening questions.

(B) All incarcerated individuals not currently enrolled in the Mental Health Services Delivery System (MHSDS) shall receive a post-placement screening using the 31-questions mental health screening questionnaire within 72 hours after RHU placement, conducted by a mental health clinician or a trained nursing staff in a private and confidential setting that affords confidentiality of sight and sound from other incarcerated individuals and confidentiality of sound from staff.  These screening interview appointments shall be announced by custody staff as "health appointments" to avoid stigmatization and possible retribution by other incarcerated individuals. Every effort shall be made to encourage incarcerated individuals to attend these appointments.

(C) Interaction s with newly admitted individual in RHU units shall be sufficient to ascertain the incarcerate individual's mental health condition particularly during the first ten days.

(D) When referred for a clinical evaluation from RHU, the evaluation shall include a review of the EHRS, and if necessary, the Central File, and past treatment needs, medications and program placements shall be noted. The evaluation shall include an individual clinical interview to determine the nature of the problem and full mental status examination.  When necessary, in consultation with the IDTT, psychologic and neuropsychological testing may be conducted as part of the diagnostic assessment of all cases not previously identified as having mental health treatment needs.  All assessments shall conclude with a diagnosis and be placed in the EHRS.  Those identified as meeting the clinical criteria for MHSDS placement may be referred to a psychiatrist for possible medication and other interventions.

       1. All incarcerated individuals scoring positive on the screening shall be referred to a mental health clinician to be seen within the clinically appropriate time frame.

(E) Patients shall receive orientation material within 24 hours of placement into a GP RHU, CCCMS RHU or EOP RHU.

**(3) Intake cell placement**

(A) All incarcerated individuals shall be housed in an Intake Cell or with a compatible cellmate for the first 72 hours of initial placement in an RHU.

    1. All intake cells shall be suicide resistant.

       a. If an incarcerated individual is housed in a non-suicide-resistant intake cell, the incarcerated individual shall be placed under direct and constant observation by a trained staff until moved to an intake or double celled.

    2. Institutions shall ensure that incarcerated individuals are re-housed in non-intake cells after the initial 72 hours are completed.

    3. If the cellmate moves out of the cell before the 72 hours has concluded, a new cellmate must be assigned, or the incarcerated individual must be rehoused in an intake cell within 8 hours from the cellmate's removal.

(B) Institutions shall ensure that all requirements for the documentation of intake cell usage within the Strategic Offender Management System (SOMS) are followed according to current policies and procedures.

    1. Institutions shall ensure that all necessary staff remain compliant with required training related to the governance of intake cell usage.

**(4) Referrals**

(A) Each day, the assigned physician, Registered Nurse (RN), or LPT will tour the unit and assess any patient with medical or dental needs.

(B) During Second Watch, patients requiring medical attention will be referred to the RHU RN.

(C) Sources of Referral for Mental Health Services

    1. Staff referrals may be made on a CDCR 128-MH5, Mental Health Referral Chrono, or as a Consult Order in the Electronic Health Records System (EHRS).

       a. Any staff member who observes possible signs or symptoms of a serious mental health disorder shall refer a patient for clinical evaluation by completing a CDCR 128-MH5, Mental Health Referral Chrono.

       b. Any staff member who observes a patient to be at risk for suicide or any other condition that requires crisis care shall be immediately screened by a mental health clinician to assess the potential for suicide and, if appropriate, referral to a Mental Health Crisis Bed (MHCB) for admission.

    2. Self-referrals shall be made on a CDCR 7362, Health Care Services Request.

       a. Monday through Friday, the following shall occur:

       b. A health care staff member shall collect all the CDCR 7362, Health Care Services Requests daily from the designated areas.

       c. Upon receipt of the collected forms, nursing staff shall initial and date each CDCR 7362, Health Care Services Request.

       d. The CDCR 7362, Health Care Services Request, shall be delivered to the designated program representative in mental health, dental, or pharmacy services for same-day processing.

    3. On weekends and holidays, the following shall occur:

       a. The Triage and Treatment Area (TTA) RN shall review each CDCR 7362, Health Care Services Request for medical, dental, and mental health services, establish priorities on an emergent and non-emergent basis, and refer accordingly.

       b. If a physician, mental health clinician, or dentist is unavailable, the on-call physician or mental health provider shall be contacted.

(D) Patients shall be seen by a mental health clinician or on weekends by an on-call provider within the following clinically determined time frames.

    1. Emergent: Emergency referrals shall be seen within 4 hours or escorted to the TTA.

    2. Urgent: Urgent referrals shall be seen within 24 hours.

    3. Routine: Routine referrals shall be seen within five calendar days.

**(5) Clinical rounds:**

(A) A mental health staff member, usually a licensed Psychiatric Technician (PT), shall conduct rounds seven days per week in all RHUs to attend to the mental health needs of all incarcerated individuals.

    1. Patients not previously identified as having mental health treatment needs who exhibit possible signs and

symptoms of serious mental disorders shall be referred for clinical evaluation.

2.  The PT shall document clinical rounds for MHSDS individuals in the health record.  For non-MHSDS individuals, the round shall be documented by initialing next to the individual's name in the 114 Isolation Log Book, or the SOMS equivalent each time the individual is seen.

(B) The PT shall make initial contact with each incarcerated individual placed into an RHU within 24 hours after placement.
  1. Institutions shall ensure that fidelity monitoring of these rounds is completed, as required, and reported to the appropriate governing committee.

(C) A second watchand a third watch huddle between custody and clinical staff shall be held each business day. At a minimum, an RHU Sergeant and an RHU Mental Health clinician (psychologist or social worker) shall attend the huddles.
  1. During the meeting, involved personnel shall identify new arrivals, discuss current behavioral issues and concerns, and share pertinent information regarding new arrivals and at-risk incarcerated individuals.
  2. This meeting shall be documented in the RHU Logbook; shall include a review of pertinent suicide risk assessment information from the Suicide Tracking Report; salient clinical information shall be documented in the EHRS; if necessary, a referral for mental health services shall be made at the appropriate level of urgency.
  3. For individuals not in the MHSDS, staff shall closely monitor those who exhibit possible signs and symptoms of serious mental disorders, and interactions with new arrivals shall be sufficient to ascertain the individual's mental health condition during the first ten days.

**(6) Monitoring Requirements for Developmental Disability Program Patients Placed in Restricted Housing**
(A) Developmental Disability Program (DDP) patients housed in a GP RHU shall be interviewed by a mental health clinician within 24 hours of initial RHU placement and receive weekly monitoring by a DDP psychologist or designee. For this purpose, "weekly" is a seven-day calendar week.

(B) Documentation of the initial 24-hour and weekly clinical contacts for DDP patients housed in an RHU shall be completed in the EHRS using either the "MH DDP Restricted Housing Check" PowerForm or the "DDP Progress Note" note type.
  1. Documentation must indicate the patient's current housing setting, the evaluation type ("Initial 24-hour" or "Weekly"), and if the location where the contact occurred was confidential ("Confidential" or "Non-confidential").
  2. Documentation shall also include a description of the content for this contact, relevant clinical observations, a statement describing the patient's functioning related to their DDP adaptive supports, any collateral information obtained (e.g., reports from the DDP officer or housing unit officers), and any follow-up steps taken if indicated.

(C) An initial 24-hour contact is not required if there are no modifications to the DDP patient's programming (e.g., a determination for restricted housing was made, but the patient was never housed in that unit) or if the patient leaves and returns to the same RHU environment within a 24-hour period.

(D) An initial 24-hour contact is not required if the DDP patient transfers to another RHU environment within the same institution or transfers from an RHU environment at one institution to an RHU environment at another institution unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(E) If a DDP patient transfers to another RHU environment within the same institution, a second weekly contact is not required unless clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(F) A weekly contact is required within seven calendar days of arrival at the receiving institution if a patient transfers from an RHU environment at one institution to an RHU environment at another institution.

**Restricted Housing Unit Program: Correctional Clinical Case Management System**

**(a) Procedure**
  **(1) Placement in a CCCMS Restricted Housing Unit**
    (A) A patient shall be housed in a CCCMS RHU if included in the MHSDS at the CCCMS level of care and meets RHU placement criteria under California Code of Regulations (CCR), Title 15, section 3335.
    (B) Patients assigned to a CCCMS RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to a CCCMS RHU with an imposed RHU term shall be classified under CCR, Title 15, section 3341.
    (C) Upon arrival in the CCCMS RHU, patients will receive their standard property and orientation package.
    (D) The Intake Cell provisions above in the general RHU section apply to CCCMS RHUs and EOP RHUs as well
  **(2) Interdisciplinary Treatment Teams and Institutional Classification Committees**
    (A) Mental health staff shall attend daily second and third watch huddles with custody staff to discuss high-risk

patients, new  arrivals, and any behavior issues or ongoing concerns of individual patients.

(B) Initial contact by the assigned primary clinician shall occur within 10 working days of arrival to the CCCMS RHU and before the initial IDTT.

(C) Initial contact by the assigned psychiatrist shall occur within 10 working days of arrival to the CCCMS RHU and before the initial IDTT.

(D) The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after they arrive in the CCCMS RHU.

(E) Mental health staff shall attend and participate in IDTTs and ICCs. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist as a representative for the assigned psychiatrist or Primary Clinician to attend ICC meetings to provide mental health input. The designee must:

1. Consult the patient's mental health treatment records.
2. Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.
3. Be current on all required training related to removing patients from MAX custody.

(F) The responsibilities for overall treatment planning within the CCCMS program rest with the IDTT. These responsibilities include:

1. Placement decisions for individual cases.
2. Review of relevant clinical data for diagnostic formulation.
3. Review of relevant case factors.
4. Formulation and approval of treatment plans.
5. Annual and special reviews for continuation or termination of services.
6. Review of treatment response.
7. Discharge planning.

(G) The IDTT is composed of, at minimum:

1. Assigned PC (either a psychologist or Clinical Social Worker).
2. Assigned psychiatrist.
3. Assigned Correctional Counselor.
4. Patient,  . The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT. The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.

(H) The IDTT shall include the patient's Correctional Counselor, who shall present case factors of the RHU placement for consideration in developing the treatment plan and initiating an aftercare plan.

(I) Some patients may be seen more frequently by the IDTT in special reviews at the request of the assigned PC or psychiatrist whenever changes in the level of care or treatment plans are indicated.

**(3) Treatment for CCCMS Patients Placed in a Restricted Housing Unit**

(A) The treatment interventions shall meet the guidelines outlined in the MHSDS Program Guide and include the following:

1. Regular monitoring of symptoms by licensed Psychiatric Technicians through daily rounds seven days a week.
2. Individual contact every week by PC or more frequently if clinically indicated.
3. Crisis intervention.
4. Medication treatment, evaluation, review, and compliance monitoring by psychiatric and nursing staff.
5. Psychiatric contact every 90 calendar days.
6. IDTT every 90 calendar days to update the treatment plan.
7. 90 minutes of confidential, structured group therapeutic activity weekly.
8. Clinical discharge or clinical pre-release planning.

(B) The following treatment interventions shall be provided on an as-needed basis:

1. Group Therapy
2. Orientation and supportive counseling for institutional adjustment.
3. Social skills training.
4. Consultation services, such as education or rehabilitative programs.
5. In-cell therapeutic activities each week, such as self-help and recreational activities, as determined by the IDTT.
6. Supportive care for Activities of Daily Living.

**(4) Out of Cell Time**

(A) The CCCMS RHU will offer 20 hours of out-of-cell activities per week.

1. Patients will be offered 18.5 hours per week of recreational time outside their cell.
2. Patients will also be offered 90 minutes of confidential, structured therapeutic activity each week.
3. Structured mental health treatment hours attended by CCCMS patients shall earn credits to reduce their RHU term.

**Restricted Housing Unit Program: Enhanced Outpatient Program**

**(a) Procedure**
**(1) Placement in an EOP Restricted Housing Unit**
   (A) A patient shall be housed in an EOP RHU if included in the MHSDS at the EOP level of care and are required to be housed in an RHU unit .
   (B) Patients assigned to an EOP RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to an EOP RHU with an imposed RHU term shall be classified in accordance with CCR, Title 15, section 3341.
   (C) Upon arrival in the EOP RHU, patients will receive their standard property and orientation package.
   (D) The intake cell provisions in the general RHU section above apply to EOP RHU units as well.
**(2) Clinical Services**
   (A) Intake Assessment
      1. The Senior Psychologist Supervisor or designee shall assign a PC for each patient in an EOP RHU. The PC shall complete an initial evaluation of the patient, including a review of the patient's mental health history and an interview in a timeframe clinically determined appropriate but not more than five calendar days after arrival in the EOP RHU
      2. For all patients placed in an EOP RHU, a psychiatrist shall complete an initial psychiatry evaluation no later than 10 calendar days after arrival in the EOP RHU and before the initial IDTT.
      3. The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after arrival in the EOP RHU.
      4. The PC and other IDTT members shall do a comprehensive mental health clinical assessment before the initial IDTT. This assessment shall include, at minimum:
         a. Comprehensive review of the Strategic Offender Management System (SOMS) and health record of mental health treatment needs, including prior placements.
         b. Current mental status examination, including diagnosis and level of functioning.
         c. Daily observation by mental health and custody staff to assess Activities of Daily Living and social interactions.
         d. Review of disciplinary history and custodial placements by the assigned Correctional Counselor or Lieutenant.
         e. Review of specific risk factors for violence toward self and others. This includes a suicide risk assessment if indicated.
      5. The IDTT will decide on the appropriate placement. This decision includes the following options:
         a. Referral for inpatient care.
         b. Placement in an MHCB (short-term crisis stabilization, including initiating involuntary medications when required).
         c. Referral to the classification committee recommending alternative RHU placement if the patient qualifies for CCCMS care or has been discharged from the MHSDS.
         d. If the RHU term has been served, placement at the appropriate level of care, including EOP.
   (B) Interdisciplinary Treatment Team
      1. The EOP RHU Senior Psychologist Supervisor or designee shall chair the EOP RHU IDTT. All clinical decisions regarding intake, treatment planning, re-justification of level of care, and discharge are made by the EOP RHU IDTT. The IDTT is composed of, at minimum:
         a. Senior Psychologist Supervisor or designee.
         b. Assigned Psychiatrist or designee.
         c. EOP RHU Facility Captain.
         d. Assigned Correctional Counselor II or assigned CCI acting as designee.
         e. Assigned PC or designee.
         f. Licensed Psychiatric Technician (PT)

g. Patient. The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT.  The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.

2. Other EOP RHU staff may attend, such as a recreation therapist, nursing staff, Sergeant and correctional officers, and custody representatives.

3. A representative from the IDTT (assigned PC or designee) shall be present in all classification hearings regarding patients to provide mental health input into the classification decision-making process. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist to represent the assigned psychiatrist or primary clinician to attend ICC meetings to provide mental health input. The designee must:

    a. Consult the patient's mental health treatment records.

    b. Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.

    c. Be up to date on all required training related to removing patients from MAX custody.

    d. The representative from the IDTT shall present the recommendations of the IDTT with respect to the case. The recommendations may include requesting referral to an EOP (non-RHU) program for patients who are involved in non-violent incidents and determined not to be a risk to others.

4. After the initial IDTT, patients will be evaluated by the IDTT minimally at 60 and 120 calendar days after arrival at RHU and at least every 90 calendar days thereafter or sooner, whenever there is a significant change in level of functioning.

    a. The IDTT will evaluate treatment progress, develop and update the treatment plan, with input from the patient and review discharge goals. The initial treatment plan and all subsequent treatment plans shall include a discharge plan and behavioral goals to discharge the patient from the EOP to a lower level of care if possible.

    b. The assigned PC, or designee, will present a case summary with recommendations for continued treatment or discharge.

    c. The results of all IDTT reviews, decisions, and recommendations will be documented in the health record.

    d. Initial placements and level of care changes are documented in EHRS.

(C) Length of Stay More Than 90 Days

1. Patients housed in EOP RHU for more than 90 calendar days shall be reviewed every 30 calendar days outside of the ICC process by the Facility Captain and Correctional Counselor II. The status of each case, with detailed information regarding the reasons for delays in the referral, disciplinary, classification, and transfer process, shall be compiled and reviewed by the Warden or designee (Chief Deputy Warden or Associate Warden for Health Care). The Warden shall ensure that reviewers take action to resolve any issues that impact the length of stay in RHU.

2. Patients housed in EOP RHU for more than 90 days who postpone an RVR hearing pending referral to the District Attorney shall be reviewed for alternate housing. If the time housed in EOP RHU is equivalent to the projected RHU term (if the patient has been found guilty of the RVR), the patient shall be released to a general population setting. The Warden or designee shall contact the District Attorney to discuss expediting pending cases.

(D) Primary Clinician

Each patient in an EOP RHU shall be assigned a PC. The PC will maintain active clinical involvement with the patient, as well as perform casework functions, including the following:

1. Documentation of initial treatment plan and updates.

2. Regular clinical contact with assigned patients.

3. Ensuring scheduling of periodic IDTT reviews.

4. Attendance at IDTT reviews of the patient.

5. Referral to and coordination with the assigned psychiatrist

6. Participation in ICC to provide mental health input.

7. Liasson with custody and correctional counseling staff regarding overall management of patients.

8. Provide group therapy as defined in the inmate-patient's treatment plan.

9. Crisis intervention and referral as needed.

10. Review of weekly summary of clinical rounds and document this review in the EHRS.

11. Response to California Department of Corrections and Rehabilitation (CDCR) inquiries regarding the patient's clinical status.

(D) Psychiatrist

Each patient in an EOP RHU shall have an assigned psychiatrist.

**(3) Treatment Program**

(A) Each EOP RHU shall have an Operational Plan that describes its treatment program. The Operational Plan shall include a behavioral incentive program (BIP) with criteria for achieving and retaining each level.  A sample BIP is attached hereto as Exhibit ___.

1. Refer to the Operational Plan at each institution for a complete description.

(B) Treatment Plan

1. Each patient in an EOP RHU shall have a Master Treatment Plan within the EHRS.
2. Within the EOP RHU, each patient shall have an individualized treatment plan that provides treatment consistent with the patient's clinical needs.
3. The treatment plan shall be reviewed by the IDTT 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter or whenever a significant change in the patient's functioning requires a change in the treatment plan.
4. Each treatment intervention shall indicate outcome objectives and specific, measurable behavioral goals.
5. Discharge from the EOP or transfer to another level of care shall be documented in the EHRS.
6. Each patient will be offered at least ten hours per week of structured therapeutic activities as approved by the RHU IDTT.
   a. It is recognized that not all patients can participate in or benefit from ten hours per week of treatment services. For some patients, ten hours per week may be clinically contraindicated.
   b. For those patients scheduled for fewer than ten hours per week of treatment services, the PC shall present the case and recommended treatment program to the IDTT for approval. The treatment plan must include a detailed description of the diagnosis, problems, level of functioning, medication compliance, and rationale for scheduling fewer than ten hours.
   c. For patients scheduled for fewer than ten hours of treatment activities per week, the IDTT shall meet at least every 30 calendar days and be responsible for reviewing and increasing the treatment activities and considering a higher level of care as appropriate.

(C) Treatment

1. Required treatment within an EOP RHU includes the following:
   a. Individual treatment planning involves a meeting of the IDTT and the patient 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter to identify treatment needs, develop treatment plans, assess treatment progress, and update or revise individual treatment plans in accordance with the patient's needs and progress.
   b. Weekly (assigned or covering) PC contact.
   c. Daily rounding by the LPT seven days a week.
   d. A psychiatrist shall evaluate each EOP patient at least every 30 calendar days.
      Refer to the Health Care Department Operations Manual regarding medication administration procedures, medication refusals, Directly Observed Therapy, medication adherence, and other aspects of medication administration. Refer to the CCR, Title 15, section 3999.344, for information on involuntary medication administration.

2. Other treatment activities may include the following:
   a. Individual psychotherapy.
   b. Group therapy, such as anger management, stress management, offense-related issues, and current events.
   c. Medication education.
   d. Crisis intervention.
   e. Pre-release planning.
   f. Monitoring and assistance with daily living skills.
   g. Cognitive Behavioral Therapy directed to specific behaviors or symptoms.
   h. Recreational activities both within cell and out of cell.
   i. Vocational and pre-vocational training, as available.
   j. Education as available.
   k. 12-Step Program and other substance use treatment.

(D) Patient Refusal to Attend Treatment

1. Within one week of the identification of a patient who has refused more than 50 percent of structured therapeutic treatment hours offered and attended an average of less than five hours per week of offered structured treatment hours in a two-month period, the IDTT, clinical staff, or other custody staff must work together to determine the reason for treatment refusal.
2. For patients on a modified treatment program, attendance at 50 percent or less of the required treatment hours specified in the modified treatment plan shall trigger the review.

3. The Correctional Lieutenant responsible for the EOP RHU and the PC shall work collaboratively to evaluate the circumstances underlying the patient's refusal to attend the scheduled treatment sessions offered.

4. If a specific cause for the patient's refusal can be identified and reasonably resolved, custody and mental health staff shall work with the patient to resolve such issues.

5. If the patient identifies barriers related to security policies as a cause for their refusal to attend treatment, custody, and mental health staff shall jointly document their findings on a CDC 128-B, General Chrono, and submit to both the Chief Deputy Warden and CMH.

   a. The Chief Deputy Warden and CMH shall confer and consider various methods to encourage the patient to attend treatment, including viable alternatives to the identified security policies that do not jeopardize the unit's security or the safety of staff or patients.

   b. Should the Chief Deputy Warden and CMH disagree on the proper resolution of the matter, the issue shall be elevated to the Warden and CEO for their review and resolution.

   c. For patients who refuse more than 50% of offered treatment during a one-week period, the PC shall:

      1) Interact with these patients daily on scheduled work days (instead of weekly)
      2) Include in the treatment plan efforts to reduce resistance to participation in group therapy.
      3) Discuss these patients during the RHU second and third watch huddles with custody
      4) Consider referral of patient to higher levels of care and document the results of this consideration in the Master Treatment Plan.

**(4) Out-of-Cell Time**

1. All patients assigned to an EOP RHU shall be offered a minimum of twenty hours out of cell time each week.  At least ten hours of out-of-cell exercise shall be offered each week, which may include supervised recreational therapy.  EOP RHU patients are also offered ten hours of structured therapeutic activities each week.

   a. Structured mental health treatment hours attended by EOP patients shall earn credits that can be applied towards a reduction of their RHU term.

2. The ICC shall establish a patient's yard designation with input from the IDTT as part of the individual treatment plan.

**(5) Discharge Procedures**

(A) At the time of admission to the EOP RHU, a preliminary discharge plan shall be developed based on the clinical and security needs of the patient as well as the patient's EOP RHU term.

(B) Patients admitted to an EOP RHU may be discharged to a CCCMS RHU to complete their term when they no longer require an EOP level of care.

(C) Patients who complete their RHU term and still require EOP care will be discharged to a GP EOP for continuing mental health treatment.

1. The EOP RHU PC will document recommendations regarding the patient's specific treatment needs, including any concerns about facilitating the patient's successful transition to general population.

2. The receiving EOP IDTT will consider documentation by the EOP RHU clinician in developing the patient's treatment plan.

3. The treatment plan for patients transferred from RHU to GP-EOP shall include services provided to aid in the transition to the GP environment.

(D) Patients may be referred to an inpatient program as clinically indicated.

(E) Treatment recommendations upon discharge from an EOP RHU shall be made by the IDTT and documented in the EHRS.

(F) The ICC shall review the discharge recommendations of the IDTT, considering both the clinical and custody needs of the patient. The decision of the ICC shall be documented on a CDCR 128-G Chrono.

**References**

- California Code of Regulations, Title 15, Division 3, Subchapter 4, Article 7, sections 3335 – 3344.
- Mental Health Services Delivery System Program Guide, 2021 Revision

- Statewide Mental Health Program, Monitoring Requirements for Patients in the Developmental Disability Program Placed in Restricted Housing Memorandum, October 14, 2022
- Operational Plan for Armstrong Class Members Housed in Administrative Segregation Memorandum, December 17, 2012

