APPENDIX 10



ROSEN BIEN
GALVAN & GRUNFELD LLP

P.O. Box 390
San Francisco, California 94104-0390
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Thomas Nolan
Email: tnolan@rbgg.com

January 31, 2024

<u>VIA EMAIL ONLY</u>

Nicholas Weber, Esq.
CDCR Office of Legal Affairs
Nicholas.Weber@cdcr.ca.gov

      Re:     *Coleman v. Newsom*
             RHU Mental Health Policy Comments and Requested Changes
             <u>Our File No. 0489-3</u>

Dear Nick:

      We write with supplemental comments and objections to Defendants' revised
Mental Health RHU Policy. We are appreciative of the numerous proposed changes from
Plaintiffs' and from the Special Master team that Defendants accepted following our meet
and confer earlier this month, which are documented in the revised draft you sent to us on
January 24, 2024. This new draft has significantly narrowed our differences with respect
to the proposed policy. We have included your redline showing changes not made along
with Defendants' few additional changes to the policy as **Exhibit A** to this letter for ease
of reference. (The redline does not show the requested changes that Defendants accepted
with any highlighting or different colors.)

      Below is a list of our remaining concerns:

**A.     Plaintiffs' Reservation of Program Guide Remedy and Request for a Process
to Notify the Court of Changes to the Remedy**

      Defendants continue to maintain that the new mental health RHU policy will
"revoke and replace" Chapters 7 through 9 of the Program Guide, as well as the memos
creating the STRH and LTRH units that are in the 2021 Program Guide, ECF No. 7333-1,
at 443, 446, 448, 455, and 469. Defendants' December 19, 2023 Letter at 1-2. We do
not agree to this.

      As we did in our prior comments on the policy, we have tried to capture all of the
required mandates of these Chapters and policies in our comments and requested
changes, and we agree that staff should be instructed to primarily rely upon the new

Nicholas Weber
January 31, 2024
Page 2

memo.  However, as we have noted in our prior letters on the RHU policy and elsewhere, we do not agree that Defendants can unilaterally replace parts of the remedy without notice to the Court and some process to ensure important remedial elements that might have been missed can be added back to the relevant policies in the future, and to protect in general against waiver or loss to the class of previously agreed upon or ordered components of the MHSDS.  *See* December 29, 2023 Marc Shinn Krantz Letter to Defendants.

**B.     Coverage of Non-Disciplinary Restrictive Housing Issues**

In your responsive draft sent to us on January 24, 2024, you indicated that the term "Non-Disciplinary RHU" is not used in the revised regulations, and Defendants therefore declined to include a definition of the NDRH units and the NDRH program in the definitions section of the policy.  *See* Revised Draft, Comment at p. 1.

However, that assertion is wrong.  The December 15, 2023 revised RHU regulations actually do discuss Non-Disciplinary RHU units at Section 3044(b)(7)(D) and elsewhere, and for that reason such units should be described in the mental health policy in the definitions section.  *See* December 15, 2023 Emergency Regulations at §§ 3044(b)(7)(D) and 3044(b)(8)(E) (both discussing placement in "RHU or other restricted housing designated by Institutional Classification Committee as NDRH pursuant to § 3335(b)")  Moreover, the new RHU regulations at Section 3335(b)(1) define NDRH as follows "Non Disciplinary Restricted Housing means temporary restricted housing placements for administrative reasons including but not limited to: (A) RHU placement for investigation of safety concerns not resulting from the inmate's own misconduct."  *See* December 15, 2023 Emergency RHU regulations at § 3335(b)(1).

In some important ways, the non-disciplinary segregation remedy remains incomplete.  In his April 2014 Order, Judge Karlton found that it is unconstitutional to mix people for extended periods in segregation for non-disciplinary reasons with people there for discipline, subjecting them to needless harsh conditions and punishment:

> For all of the foregoing reasons, the court finds that placement of seriously mentally ill inmates in the harsh, restrictive and non-therapeutic conditions of California's administrative segregation units for non-disciplinary reasons for more than a minimal period necessary to effect transfer to protective housing or a housing assignment violates the Eighth Amendment.

4/10/14 Order, ECF No. 5131, at 55:1-7.  The remedy for this problem included NDS status, as well as NDS units.

[4429656.2]

Nicholas Weber
January 31, 2024
Page 3

The new mental health policy should cover both NDS status and NDS units.  As we discussed on the phone earlier this week, the main NDS unit was located at CSP-Sacramento.  You indicated this week that you believe the NDS unit at SAC remains open.  You agreed to investigate the current status of the specialized NDS Housing Unit that currently exists at CSP-Sacramento.  Please also let us know how often this unit is used for NDS status individuals and how many such NDS status people are in the program at this time.  Please let us know if there is a similar unit for women.  We would also like to know more about how many people statewide are on NDS status.  We think it is important for the new RHU mental health policy to discuss the general NDS policy, including the location of specialized NDS units, and instructions for how and when individuals are sent to those units.

Also, there should be an explanation in the general RHU section of policy of the existence of NDRH status itself and the criteria for such designation, as explained in the new § 3335(b)(1), and listing the privileges of such placement including the retention of workgroup as explained in new § 3335(b)(4) including the more generous NDRH property and privileges as provided in § 3044(c)(6)(A)(1) and 3190(c) and (d) (citing and incorporating by reference NDRH personal property Matrix).  Mental health staff need to know about patients with this status and be able to advocate for their patients who should be getting NDRH property and privileges.

**C.    RHU Transfer Timelines**

We appreciate the changes in the procedure section of the new policy to specify that the transfer timeline for transfers to specialized RHU units for class members is 30 calendar days, and to reference the Title 15 regulations at § 3335.2 and 3335.3 which set forth the timelines.

However, we continue to object to the exceptions to the transfer timelines that are contained in the regulations, and in the proposed regulations, as follows:

(1)    An exception to the 30-day requirement is allowed, and time constraints suspended, in the following circumstances:

    (A)    Healthcare staff determines, based on medical necessity, that a transfer cannot occur, and places a hold.

    (B)    During a delay resulting from the inmate's refusal to transfer.

    (C)    The inmate is out-to-court.

Nicholas Weber
January 31, 2024
Page 4

> (D)     The inmate is placed in a Mental Health Crisis Bed or higher level of
>         care.

*See* Cal. Code of Regs. tit. 15, §§ 3335.2 (d)(1)(A) (EOP timeline exceptions) and 3335.3
(d)(1)(A) (CCCMS timeline exceptions).

We will include our objection to these provisions in our forthcoming comments on
the December 15, 2023 RHU regulation package, but we also want to maintain our
objections to the exceptions here in the mental health RHU policy context, particularly as
to the exceptions for medical holds and for delays due to a refusal by the incarcerated
person to move.  We believe the 30-day deadline initially set forth in the Program Guide
for such transfers includes adequate time for resolving these kinds of issues prior to
transfer in virtually all cases.

**D.     Pre-Placement Mental Health Screening**

In the Section on pre-placement mental health screening, Defendants added new
language explaining that "Patients only being housed in the RHU for alternative housing,
pending transfer to an MHCB do not require a pre-placement screen."  For clarity, we
recommend changing the provision to make clear that this is only true if one-to-one
suicide watch is being done.  So, the revised sentence would read: "Patients only being
housed in the RHU for alternative housing pending transfer to an MHCB do not require a
pre-placement screening so long as they are on a 1:1 suicide watch for the duration of
their stay in the unit."  (Requested changes in blue.)

**E.     Department of Operations Manual (DOM) Rule About Using Private
        Location When Strip Searching in EOP RHU Units**

Currently, DOM § 52050.16.6, which is incorporated into the Compendium (ECF
No. 7333-2 at 3) requires that when conducting an unclothed body search in an EOP ASU
Hub or PSU unit, the following shall apply:

> Unclothed body searches shall be conducted within the cell unless the
> physical design prevents visibility, at which point the inmate will be
> escorted to an alternate private/secure setting where the unclothed body
> search will be conducted.

We previously asked that this information be included in the new RHU mental
health policies.  *See* September 21, 2023 Letter from Thomas Nolan at 10.  This
requirement emerged from the 2014 segregation trial, and applied to the EOP ASU Hub
only because the CCCMS segregation units did not exist at that time.  CDCR later created
the STRH and LTRH units as part of the package of plans responding to the Court's

Nicholas Weber
January 31, 2024
Page 5

April 10, 2014 Order, which included a requirement for a plan regarding strip searches in segregation units generally. *See* ECF No. 5131 at 63-64. Plaintiffs request that these provisions requiring strip searches to occur within a patient's cell be added to the EOP RHU Policy, and to the CCCMS RHU Policy.

Your December 19, 2023 letter stated that these policies remain in effect and that the policy "does not need to be referenced in the healthcare policy."

Given the serious consequences in terms of treatment refusals in segregated housing units that this policy was intended to address, and the requirements for a strip search plan in the remedy regarding segregation units, we think it is critical that this directive be added to the mental health RHU policy. Like the NDS rules, it is critical that mental health staff know about these strip searching rules so that they can advocate appropriately for their patients.

**F.      Intake Cell Procedure Changes in Language**

The revised draft policy accepted several minor changes we proposed to language about what happens when someone who is a new arrival in a segregation unit cannot be placed into an intake cell and double celling is not appropriate. The last draft we reviewed provided that in this situation, "the incarcerated person shall be placed under constant observation by a trained staff." We asked for changes based on the Special Master's team comments so that this would read "under direct and constant observation by a trained staff until moved to an intake cell or double celled." (Requested changes in blue.)

However, in the new draft, Defendants removed the statement about constant observation altogether, weakening the provision and replacing it with a vague statement that the individuals will be "placed in a cell with close proximity (clustering) to each other and near high-traffic areas or control booths which will allow for better observation by staff." We strongly object to this language which weakens the policy and would potentially create dangerous conditions for new arrivals in RHU units.

**G.      Providing Property Upon Arrival in RHU Units.**

In my January 16, 2024 letter, I noted that we and the Special Master team both expressed support in the meet and confer for the language in the Section (a)(1)(C) to provide patients with their property "upon arrival in the CCCMS RHU" and the similar language in the same section of the EOP RHU policy. The Special Master team noted that property is a big source of stress when people are placed into restrictive housing and thought the commitment to providing property quickly was positive. We also note that property delays have been a longstanding source of stress and decompensation for people

Nicholas Weber
January 31, 2024
Page 6

in segregated housing.  Upon further reflection, the language "upon arrival" may be a little vague however.  We recommend language specifying that property will be provided within 8 hours of arrival into the specialized mental health RHU units.

**H.      Removal of "Assigned" Clinician and "Assigned" Correctional Counselor Language Clearly Required by Program Guide.**

Defendants declined to accept our proposed edit to specify that the initial CCCMS RHU evaluation is done by the *assigned* primary clinician in CCCMS RHU policy § (a)(2)(B), and that IDTT membership must include the *assigned* Correctional Counselor in CCCMS RHU § (a)(2)(G).  Although not noted in our last draft, we also think the EOP RHU Policy section on the IDTT composition at § (a)(2)(B)(c) must specify that the requirement is for participation by the *assigned* correctional counselor or CCII.  This language is required by all three relevant Program Guide Chapters.  *See* Program Guide at 12-8-8 (CCCMS SHU program IDTT includes "Assigned PC" and "assigned Correctional Counselor"); 12-7-13 (duties of assigned PC include IDTT attendance); 12-7-12 to 12-7-13 (requiring for all ASU IDTTs presence of both the assigned PC and the assigned correctional counselor); 12-9-6 (assigned PC in PSU to attend IDTT).

**I.      In-Cell Recreation Activities in EOP RHU, and Specifying Substantive Group Therapy Types in CCCMS RHU**

In the EOP RHU policy, Defendants have included the list of different types of groups from PSU Chapter at 12-9-8 and 12-9-9 into the new policy at § (a)(3)(C)(2). However, defendants declined to specify that there should be recreational activities "both within cell and out of cell" in § (a)(3)(C)(2)(h).  That language about in-cell activities is not in the PSU Chapter of the Program Guide, but it is in the ASU Chapter for the EOP hub programs at 12-7-10.  It is also in the STRH policy on page 444 of the 2021 Program Guide ("All patients shall be offered in-cell therapeutic activities, such as self-help materials and/or recreational activities, as determined by the IDTT.") and in the LTRH policy on page 454 of the Guide.  It would be counter-intuitive to provide for such in cell activities in the lower level of care CCCMS RHU but not in the EOP RHU.

Please add that language back into the EOP RHU policy as mandated by the Program Guide at 12-7-10.

In addition, in the CCCMS RHU Policy discussion of the types of treatment for CCCMS Patients in RHU Housing, at § (a)(3)(B) of the new policy, it mentions Group Therapy and other treatment interventions in the CCCMS RHU.  However, in the SHU Program Guide Chapter, at 12-8-10, it is more specific about some of the examples of group therapy, indicating "Group therapy such as anger management and relapse

Nicholas Weber
January 31, 2024
Page 7

prevention." 2021 Program Guides, ECF 7333-1 at 12-8-10. We request the addition of that language "such as anger management and relapse prevention" in the CCCMS RHU policy at § (a)(3)(B) to make clear that the groups must be substantive and that CDCR cannot rely entirely on recreational therapy in these units.

**J.    Staffing Allocations**

Your December 19, 2023 letter failed to respond to our request in our September 21, 2023 letter regarding which staffing ratios will be used in the new combined PSU/EOP ASU units and combined STRH/LTRH units.

As we explained, CDCR should apply the richest staffing ratios for each position to the EOP and CCCMS RHU units. The current ratios under the 2009 Staffing Plan (ECF No. 3693) differ slightly for each segregation program. We have bolded the ratios we think should apply to the new units:

**Table 1 – CCCMS Staffing Ratios (ECF No. 3693 at 14-15)**

|                                   | CCCMS – ASU | CCCMS-SHU |
|-----------------------------------|-------------|-----------|
| Primary Clinician                 | **1:25**    | 1:50      |
| Staff Psychiatrist                | **1:125**   | 1:200     |
| Office Technician                 | **1:175**   | 1:175     |
| Senior Psychologist, Supervisor   | **1:150**   | 1:300     |
| Recreational Therapist            | **1:150**   | 1:150     |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Nicholas Weber
January 31, 2024
Page 8

**Table 2 – EOP Staffing Ratios (ECF No. 3693 at 19-20)**

|                                 | EOP – ASU | PSU  |
|---------------------------------|-----------|------|
| Primary Clinician               | **1:11**  | 1:12 |
| Staff Psychiatrist              | **1:64**  | 1:64 |
| Office Technician               | **1:50**  | 1:76 |
| Senior Psychologist, Supervisor | **1:66**  | 1:76 |
| Recreational Therapist          | **1:45**  | 1:62 |

We request that Defendants confirm that they will be using the more intensive staffing ratios in the new combined RHU units.

Similarly, in the January revised draft of the policy, Defendants removed the "EOP RHU Facility Captain" from the list of EOP RHU IDTT participants. Defendants noted that "unlike the PSU program, EOP RHUs do not have a captain assigned." However, we would like to discuss whether the combined programs, particularly if in higher security levels, should have that added staffing, and hear if Defendants have considered such augmentation, or whether they think other staffing in the EOP RHUs can and should substitute for that position and should possibly be added to the EOP RHU IDTT attendance/participant list.

**K.    Weekend review of MH-5 Forms by the TTA Nurse**

The Draft Policy captures most of the referral policies from the SHU Chapter of the Program Guide. *See* Revised MH RHU Policy at (e)(4)(c)(3) (requiring TTA nurse review of 7262 forms for emergent priority items on weekends). However, we think the policy on weekend referrals needs to capture the SHU Chapter process for the same TTA nurse to review MH-5 referrals from staff for urgent referrals, unless there is currently a different process for processing these on weekends. We recommend that § (e)(4)(c)(3)(a) be edited to read as follows with respect to weekends and holidays, with the additional language in blue: "The Triage and Treatment Area (TTA) RN shall review each CDCR 7362, Health Care Services Request for medical dental, and mental health services, and shall review all MH-5 staff referral chronos, and shall establish priorities on an emergent and non-emergent basis, and refer accordingly." This is required by Program Guide 12-8-6. (It is not clear why similar language was not also included in Program Guide 12-9-13 in the otherwise very similar referral language, but it should have been. )

Nicholas Weber
January 31, 2024
Page 9

**L.     Objection to October 2023 Memo on RHU Out of Cell Time And Similar Regulations with "Safety and Security" Exception to Out-of-Cell Minimum Times Given That The Program Guide Contains No Such Exception**

We reiterate our objection, as set forth in our January 16, 2024 letter regarding the safety and security exception to providing adequate yard to class members in RHU units. As we explained, the October 7, 2023 memo said that "unless security and safety considerations preclude such activity, an incarcerated person in RHU shall be offered a minimum of 20 hours of out-of-cell time per week."  10//7/23 Memo at 1.

However, there is no exception in the Program Guide or the remedy in this case that supports the assertion in that policy of an exception to the 20 hours mandate when vague "security and safety" considerations preclude providing yard.  This vague exception should be stricken from the October policy and from the new regulations where it appears. *See* December 15, 2023 Amendments to Cal. Code of Regs. tit. 15 § 3348(i) ("inmates assigned to RHU shall be offered a minimum of twenty (20) hours of out-of cell time per week, unless security and safety considerations preclude such activity.") and § 3378.9(a) ("Programming for those inmates housed in the RCGP shall be comprised of at least 20 hours of out-of-cell time per week unless safety and security considerations preclude such activity.")

**M.     DSH Discharge Conference**

The 2021 Program Guides include several requirements relating to DSH transfers and discharges.  First, there is a requirement for individuals being discharged from DSH or a PIP to SHU units to have a formal clinical case conference prior to discharge to a SHU unit, and a requirement that 21 days prior to discharge from DSH/PIP the treatment team will work together to make a recommendation to ICC regarding appropriate housing and efforts will be made to potentially reassess or suspend the SHU term.  *See* 2021 Program Guide, ECF No. 7333-1, at 435 (policy 15-0215) and 473-74 (Policy 15-0225, requiring clinical case conference before release from inpatient care, and C&PR effort to "address and resolve safety concerns or disciplinary issues, with special consideration to reassessment and suspension of SHU terms in order to avoid segregated housing placement upon discharge, if appropriate, in accordance with established procedures.").  Second, there are policies which require staff to document on the referral paperwork the effect of segregated environments on patients referred to inpatient units from a SHU.  *See* 2021 Program Guide at 442.

These policies should be added to the general RHU regulations for mental health care.

[4429656.2]

Nicholas Weber
January 31, 2024
Page 10

### N.    Long-Term Case Conferences

It is our understanding from the data remediation process that CDCR may be planning to rescind its September 15, 2014 Memo re: *Priority Case-By-Case Review of Mental Health Delivery System Long-Term Segregated Inmates* and its July 20, 2023 Memo re: *Reiteration of Priority Case-By-Case Review of Mental Health Services Delivery System Long-Term Segregated Inmates* and issue a new memo to conform those requirements to the new RHU system.  We request the opportunity to comment on the new proposed memo, and ask that it be incorporated into the final Mental Health RHU Policy.

That said, we believe that at least a reference to the Long-Term Case-by-Case Conference process should be included in the new policy.  *See* 2021 Program Guide at 535-39  (long term case conference review at intervals of 90 days for individuals retained for longer than 150 days in EOP ASU and not to exceed 180 days for individuals in SHU/PSU units).

### O.    Patient Participation in Treatment Planning by the IDTT

In the draft policy we provided with redlined edits, in Section (a)(2)(B)(4)(a) of the EOP RHU policy, in the section on IDTTs, we added the words "with input from the patient" to the item discussing IDTT development and updating of the treatment plan.  Defendants declined to accept this change in the redline sent back on January 24, 2024 (see Exhibit A).  We request that Defendants re-consider this decision to decline the edit here.  The Program Guide is clear that IDTTs should develop treatment plans with input from the patient.  Even if the patient does not attend, the primary clinician is supposed to seek their input into their treatment plan.  The first program guide chapter which provides an overview of the entire MHSDS states that *"[t]he IDTT shall generally be responsible for developing and updating treatment plans.  This process shall include input from the inmate-patient . . ."* 2021 Program Guide, ECF No. 7333-1, at 12-1-9.  This provision is critical and including this requirement in the RHU policy will underscore its importance to clinical staff.

*    *    *    *

/ / /

/ / /

/ / /

Nicholas Weber
January 31, 2024
Page 11


       We continue to believe the creation of the new RHU units is very positive, and look forward to another discussion or a written response from Defendants regarding our concerns and requests for additional changes to the policies.

                                Sincerely,

                                ROSEN BIEN
                                GALVAN & GRUNFELD LLP

                By:   */s/ Thomas Nolan*

                                Thomas Nolan
                                Of Counsel

TN:fgl

Enclosure:     Exhibit A  (Defendants' Redline of RHU Mental Health Policy)

cc:     Coleman Special Master Team
        Steve Fama
        Elise Thorn
        Melissa Bentz
        Sundeep Thind
        Damon McClain
        Amar Mehta
        Namrata Kotwani
        Samantha Wolff
        Paul Mello

# Exhibit A

MENTAL HEALTH SERVICES DELIVERY SYSTEM

**Restricted Housing Unit Program: Mental Health Services**

**(a) Policy**

All Restricted Housing Units (RHU) shall maintain general expectations that allow all incarcerated individuals assigned to these units access to mental health services. Patients in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management System (CCCMS) or Enhanced Outpatient (EOP) level of care who are housed in a Restricted Housing Unit (RHU)  shall be offered enhanced mental health treatment.  The RHU shall be collaboratively administered between custody and mental health staff.

**(b) Purpose**

To assure all incarcerated individuals have access to mental health services while housed in a restricted housing unit setting.  For patients in the MHSDS requiring restricted housing, enhanced mental health services to prevent decompensation shall be provided.

**(c) Definitions**

**Restricted Housing Units:** Restricted Housing Units are designated for short and extended-term programming of incarcerated individuals not suited for housing in the general population. They are specialized programming units with established placement criteria. RHUs include EOP RHU, CCCMS RHU, and GP RHU.

**Correctional Clinical Case Management System Restricted Housing Unit:** Secure housing and enhanced care for patients in the CCCMS level of care  who require placement in restricted housing.

**Enhanced Outpatient Program Restricted Housing Unit:** Secure housing and care for patients at the EOP level of care not requiring crisis or inpatient hospital care, but who require placement in restricted housing.

**General Population Restricted Housing Unit:** Secure housing units designated for incarcerated individuals not suited for housing in the general population and who do not have any identified mental health concerns.

~~Reception Center Restrictive Housing Unit:~~ ~~Secure housing units designated for incarcerated individuals in the reception center who require placement in restrictive housing~~

~~Non-Disciplinary Restrictive Housing Unit:~~ ~~Secure housing units with enhanced property and privileges designed for incarcerated individuals who require placement in restrictive housing for non-disciplinary reasons.~~

**Commented [NW1]:** These terms are not used in the policy.  These are not programs in Title 15's RHU revision.

**(d) Responsibility**

**(1)** The overall institutional responsibility rests jointly with the Chief Executive Officer (CEO) and the Warden.

**(2)** The coordination of clinical activities within the RHU is the responsibility of the Chief of Mental Health (CMH), the Chief Psychiatrist (CP), and the Chief Nurse Executive (CNE). The CMH, the CP, and the CNE ensure that the RHU Program complies with the Mental Health Services Delivery System (MHSDS) Program Guide, the Health Care Department Operations Manual, and all applicable policies.

**(3)** The Facility Captain will oversee custodial responsibilities, correctional counseling services, and classification actions.

**(4)** Decisions on patient treatment plans, individual patient program activities, and level of care are made by the Interdisciplinary Treatment Team (IDTT).

**(e) Procedure**

**(1) Transfer Timeframes**

(A) Patients shall transfer to CCCMS or EOP RHUs in accordance with Title 15, which requires that patients at these levels of care be transferred to a ~~specialized~~ EOP or CCCMS RHU within 30 calendar days from the date of initial placement in RHU, or within 30 calendar days from the date the patient was made EOP or CCCMS. *See* Cal. Code of Regs., tit. 15 §§ 3335.2 (EOP) and 3335.3 (CCCMS).  No patients included in the MHSDS shall be housed in a stand-alone GP RHU ~~(these units only exist at the following institutions: ____, ____, ____).~~ Any patient included in the MHSDS who is ~~inadvertently~~ placed in a stand-alone GP RHU shall be transferred out within 24 hours.

**Commented [NW2]:** Location changes in the future would necessitate policy changes.

1. A mental health clinician shall assess any inmate in a stand-alone GP RHU identified and referred by the PT or any staff immediately or within 24 hours, depending on the urgency of the referral. An incarcerated individual who meets the criteria for MHSDS shall be transferred to another RHU as soon as possible but no longer than 24 hours following the mental health level of care changes ~~the level of care changes. identification.~~

(B) In no event shall a pending CDCR 115, *Rules Violation Report*, impede or delay the transfer of an inmate patient to a CCCMS or EOP RHUs.

**(2) Admission Screening and referral**

MENTAL HEALTH SERVICES DELIVERY SYSTEM

(A) Pre-placement mental health screening: All incarcerated individuals shall be screened by medical ~~mental health~~ personnel, usually an L PT, for possible suicide risks, safety concerns, and mental health problems within 24 hours before first physical ~~placement~~ arrival to in an RHU. If a patient screens positive, they are referred for a mental health evaluation on an emergent, urgent, or routine basis, depending on their answers to the screening questions.

> **Commented [NW3]:** PTs are medical staff.

~~(A)~~1.    Patients only being housed in the RHU for alternative housing, pending transfer to an MHCB do not require a pre-placement screening.

> **Formatted:** Justified

(B) All incarcerated individuals not currently enrolled in the Mental Health Services Delivery System (MHSDS) shall receive a post-placement screening ~~using the 31 questions mental health screening questionnaire~~ within 72 hours after RHU placement, conducted by a mental health clinician or a trained nursing staff in a private and confidential setting that affords confidentiality of sight and sound from other incarcerated individuals and confidentiality of sound from staff.  These screening interview appointments shall be announced by custody staff as "health appointments" to avoid stigmatization and possible retribution by other incarcerated individuals. Every effort shall be made to encourage incarcerated individuals to attend these appointments.

> **Commented [NW4]:** New screener was released 6/7/16 to replace the 31 item.

(C) Interactions with newly admitted individual in RHU units shall be sufficient to ascertain the incarcerated individual's mental health condition particularly during the first ten days.

> **Formatted:** Indent: Left: 0.82", No bullets or numbering

~~When referred for a clinical evaluation from RHU, the evaluation shall include a review of the EHRS, and if necessary, the Central File, and past treatment needs, medications and program placements shall be noted. The evaluation shall include an individual clinical interview to determine the nature of the problem and full mental status examination.  When necessary, in consultation with the IDTT, psychologie and neuropsychological testing may be conducted as part of the diagnostic assessment of all cases not previously identified as having mental health treatment needs.  All assessments shall conclude with a diagnosis and be placed in the EHRS.  Those identified as meeting the clinical criteria for MHSDS placement may be referred to a psychiatrist for possible medication and other interventions.~~

> **Commented [NW5]:** Instructions on how to conduct a clinical evaluation are not necessary.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

    1.  All incarcerated individuals scoring positive on the screening shall be referred to a mental health clinician to be seen within the clinically appropriate time frame.

(D) Patients shall receive orientation material within 24 hours of placement into a GP RHU, CCCMS RHU or EOP RHU.

**(3) Intake cell placement**

(A) All incarcerated individuals shall be housed in an Intake Cell or with a compatible cellmate for the first 72 hours of initial placement in an RHU.

    1.  All intake cells shall be suicide resistant.

        a.  If an incarcerated individual is housed in a non-suicide-resistant intake cell and double celling is not appropriate, the incarcerated individual shall be placed in a cell with close proximity (clustering) to each other and near high–traffic areas or control booths which will allow for better observation by staff. under direct and constant observation by a trained staff until moved to an intake or double-celled.

    2.  Institutions shall ensure that incarcerated individuals are re-housed in non-intake cells after the initial 72 hours are completed.

    3.  If the cellmate moves out of the cell before the 72 hours has concluded, a new cellmate must be assigned, or the incarcerated individual must be rehoused in an intake cell within 8 hours from the cellmate's removal.

(B) Institutions shall ensure that all requirements for the documentation of intake cell usage within the Strategic Offender Management System (SOMS) are followed according to current policies and procedures.

    1.  Institutions shall ensure that all necessary staff remain compliant with required training related to the governance of intake cell usage.

**(4) Referrals**

(A) Each day, the assigned physician, Registered Nurse (RN), or LPT will tour the unit and assess any patient with medical or dental needs.

(B) During Second Watch, patients requiring medical attention will be referred to the RHU RN.

(C) Sources of Referral for Mental Health Services

    1.  Staff referrals may be made on a CDCR 128-MH5, Mental Health Referral Chrono, or as a Consult Order in the Electronic Health Records System (EHRS).

        a.  Any staff member who observes possible signs or symptoms of a serious mental health disorder shall refer a patient for clinical evaluation by completing a CDCR 128-MH5, Mental Health Referral Chrono.

        b.  Any staff member who observes a patient to be at risk for suicide or any other condition that requires crisis care shall be immediately screened by a mental health clinician to assess the potential for suicide and, if appropriate, referral to a Mental Health Crisis Bed (MHCB) for admission.

    2.  Self-referrals shall be made on a CDCR 7362, Health Care Services Request.

        a.  Monday through Friday, the following shall occur:

        b.  A health care staff member shall collect all the CDCR 7362, Health Care Services Requests daily from the designated areas.

        c.  Upon receipt of the collected forms, nursing staff shall initial and date each CDCR 7362, Health Care Services Request.

        d.  The CDCR 7362, Health Care Services Request, shall be delivered to the designated program representative in mental health, dental, or pharmacy services for same-day processing.

    3.  On weekends and holidays, the following shall occur:

        a.  The Triage and Treatment Area (TTA) RN shall review each CDCR 7362, Health Care Services Request for medical, dental, and mental health services, establish priorities on an emergent and non-emergent basis, and refer accordingly.

        b.  If a physician, mental health clinician, or dentist is unavailable, the on-call physician or mental health provider shall be contacted.

(D) Patients shall be seen by a mental health clinician or on weekends by an on-call provider within the following clinically determined time frames.

    1.  Emergent: Emergency referrals shall be seen within 4 hours or escorted to the TTA.

    2.  Urgent: Urgent referrals shall be seen within 24 hours.

    3.  Routine: Routine referrals shall be seen within five calendar days.

**(5) Clinical rounds:**

(A) A mental health staff member, usually a licensed Psychiatric Technician (PT), shall conduct rounds seven days

**Formatted:** Font: (Default) Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt

MENTAL HEALTH SERVICES DELIVERY SYSTEM

per week in all RHUs to attend to the mental health needs of all incarcerated individuals.

1.  Patients not previously identified as having mental health treatment needs who exhibit possible signs and symptoms of serious mental disorders shall be referred for clinical evaluation.
2.  The PT shall document clinical rounds for MHSDS individuals in the health record.  For non-MHSDS individuals, the round shall be documented by initialing next to the individual's name in the 114 Isolation Log Book, or the SOMS equivalent each time the individual is seen.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

(B) The PT shall make initial contact with each incarcerated individual placed into an RHU within 24 hours after placement.
   1. Institutions shall ensure that fidelity monitoring of these rounds is completed, as required, and reported to the appropriate governing committee.
(C) A second watch and a third watch huddle between custody and clinical staff shall be held each business day. At a minimum, an RHU Sergeant and an RHU Mental Health clinician (psychologist or social worker) shall attend the huddles.
   1. During the meeting, involved personnel shall identify new arrivals, discuss current behavioral issues and concerns, and share pertinent information regarding new arrivals and at-risk incarcerated individuals.
   2. This meeting shall be documented in the RHU Logbook; shall include a review of ~~patients in the Suicide Risk Management Program, who are at increased risk for suicide;~~ pertinent suicide risk assessment information from the Suicide Tracking Report; salient clinical information shall be documented in the EHRS; if necessary, a referral for mental health services shall be made at the appropriate level of urgency.
   ~~2. For individuals not in the MHSDS, staff shall closely monitor those who exhibit possible signs and symptoms of serious mental disorders, and interactions with new arrivals shall be sufficient to ascertain the individual's mental health condition during the first ten days.~~

> **Formatted:** Not Expanded by / Condensed by

> **Commented [NW6]:** This is not part of the huddle. It is captured in section (d)(5), above, though.

**(6) Monitoring Requirements for Developmental Disability Program Patients Placed in Restricted Housing**
(A) Developmental Disability Program (DDP) patients housed in a GP RHU shall be interviewed by a mental health clinician within 24 hours of initial RHU placement and receive weekly monitoring by a DDP psychologist or designee. For this purpose, "weekly" is a seven-day calendar week.
(B) Documentation of the initial 24-hour and weekly clinical contacts for DDP patients housed in an RHU shall be completed in the EHRS using either the "MH DDP Restricted Housing Check" PowerForm or the "DDP Progress Note" note type.
   1. Documentation must indicate the patient's current housing setting, the evaluation type ("Initial 24-hour" or "Weekly"), and if the location where the contact occurred was confidential ("Confidential" or "Non-confidential").
   2. Documentation shall also include a description of the content for this contact, relevant clinical observations, a statement describing the patient's functioning related to their DDP adaptive supports, any collateral information obtained (e.g., reports from the DDP officer or housing unit officers), and any follow-up steps taken if indicated.
(C) An initial 24-hour contact is not required if there are no modifications to the DDP patient's programming (e.g., a determination for restricted housing was made, but the patient was never housed in that unit) or if the patient leaves and returns to the same RHU environment within a 24-hour period.
(D) An initial 24-hour contact is not required if the DDP patient transfers to another RHU environment within the same institution or transfers from an RHU environment at one institution to an RHU environment at another institution unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.
(E) If a DDP patient transfers to another RHU environment within the same institution, a second weekly contact is not required unless clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.
(F) A weekly contact is required within seven calendar days of arrival at the receiving institution if a patient transfers from an RHU environment at one institution to an RHU environment at another institution.

**Restricted Housing Unit Program: Correctional Clinical Case Management System**

**(a) Procedure**
  **(1) Placement in a CCCMS Restricted Housing Unit**
   (A) A patient shall be housed in a CCCMS RHU if included in the MHSDS at the CCCMS level of care and meets RHU placement criteria under California Code of Regulations (CCR), Title 15, section 3335.
   (B) Patients assigned to a CCCMS RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to a CCCMS RHU with an imposed RHU term shall be classified under CCR, Title 15, section 3341.
   (C) Upon arrival in the CCCMS RHU, patients will receive their standard property and orientation package.
   (D) The Intake Cell provisions above in the general RHU section apply to CCCMS RHUs and EOP RHUs as well

> **Formatted:** Not Expanded by / Condensed by

  **(2) Interdisciplinary Treatment Teams and Institutional Classification Committees**
   (A) Mental health staff shall attend daily second and third watch huddles with custody staff to discuss high-risk

MENTAL HEALTH SERVICES DELIVERY SYSTEM

patients, new arrivals, and any behavior issues or ongoing concerns of individual patients.

(B) Initial contact by the ~~assigned~~ primary clinician shall occur within 10 working days of arrival to the CCCMS RHU and before the initial IDTT.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

(C) Initial contact by the assigned psychiatrist shall occur within 10 working days of arrival to the CCCMS RHU and before the initial IDTT.

(D) The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after they arrive in the CCCMS RHU.

(E) Mental health staff shall attend and participate in IDTTs and ICCs. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist as a representative for the assigned psychiatrist or Primary Clinician to attend ICC meetings to provide mental health input. The designee must:

  1. Consult the patient's mental health treatment records.
  2. Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.
  3. Be current on all required training related to removing patients from MAX custody.

(F) The responsibilities for overall treatment planning within the CCCMS program rest with the IDTT. These responsibilities include:

  1. Placement decisions for individual cases.
  2. Review of relevant clinical data for diagnostic formulation.
  3. Review of relevant case factors.
  4. Formulation and approval of treatment plans.
  5. Annual and special reviews for continuation or termination of services.
  6. Review of treatment response.
  7. Discharge planning.

(G) The IDTT is composed of, at minimum:

  1. Assigned PC (either a psychologist or Clinical Social Worker).
  2. Assigned psychiatrist.
  3. ~~Assigned~~ Correctional Counselor.
  4. Patient.    The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT. The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.

(H) The IDTT shall include the patient's Correctional Counselor, who shall present case factors of the RHU placement for consideration in developing the treatment plan and initiating an aftercare plan.

(I) Some patients may be seen more frequently by the IDTT in special reviews at the request of the assigned PC or psychiatrist whenever changes in the level of care or treatment plans are indicated.

**(3) Treatment for CCCMS Patients Placed in a Restricted Housing Unit**

  (A) The treatment interventions shall meet the guidelines outlined in the MHSDS Program Guide and include the following:

  1. Regular monitoring of symptoms by licensed Psychiatric Technicians through daily rounds seven days a week.
  2. Individual contact every week by PC or more frequently if clinically indicated.
  3. Crisis intervention.
  4. Medication treatment, evaluation, review, and compliance monitoring by psychiatric and nursing staff.
  5. Psychiatric contact every 90 calendar days.
  6. IDTT every 90 calendar days to update the treatment plan.
  7. 90 minutes of confidential, structured group therapeutic activity weekly.
  8. Clinical discharge or clinical pre-release planning.

  (B) The following treatment interventions shall be provided on an as-needed basis:

  1. Group Therapy
  2. Orientation and supportive counseling for institutional adjustment.
  3. Social skills training.
  4. Consultation services, such as education or rehabilitative programs.
  5. In-cell therapeutic activities each week, such as self-help and recreational activities, as determined by the IDTT.
  6. Supportive care for Activities of Daily Living.

**(4) Out of Cell Time**

  (A) The CCCMS RHU will offer 20 hours of out-of-cell activities per week.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

1. Patients will be offered 18.5 ~~hours~~ hours per week of recreational time outside their cell.
2. Patients will also be offered 90 minutes of confidential, structured therapeutic activity each week.
3. Mental health group treatment therapeutic program ~~Structured mental health treatment~~ hours attended by CCCMS patients shall earn credits to reduce their  RHU term.

> **Commented [NW7]:** Amended to align with Title 15 section 3345(c)

**Restricted Housing Unit Program: Enhanced Outpatient Program**

**(a) Procedure**

**(1) Placement in an EOP Restricted Housing Unit**
  (A) A patient shall be housed in an EOP RHU if included in the MHSDS at the EOP level of care and are required to be housed in an RHU unit. .
  (B) Patients assigned to an EOP RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to an EOP RHU with an imposed RHU term shall be classified in accordance with CCR, Title 15, section 3341.
  (C) Upon arrival in the EOP RHU, patients will receive their standard property and orientation package.
  (D) The intake cell provisions in the general RHU section above apply to EOP RHU units as well.

**(2) Clinical Services**
  (A) Intake Assessment
    1. The Senior Psychologist Supervisor or designee shall assign a PC for each patient in an EOP RHU. The PC shall complete an initial evaluation of the patient, including a review of the patient's mental health history and an interview in a timeframe clinically determined appropriate but not more than five calendar days after arrival in the EOP RHU
    2. For all patients placed in an EOP RHU, a psychiatrist shall complete an initial psychiatry evaluation no later than 10 calendar days after arrival in the EOP RHU and before the initial IDTT.
    3. The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after arrival in the EOP RHU.
    4. The PC and other IDTT members shall do a comprehensive mental health clinical assessment before the initial IDTT. This assessment shall include, at minimum:
      a. Comprehensive review of the Strategic Offender Management System (SOMS) and health record of mental health treatment needs, including prior placements.
      b. Current mental status examination, including diagnosis and level of functioning.
      c. Daily observation by mental health and custody staff to assess Activities of Daily Living and social interactions.
      d. Review of disciplinary history and custodial placements by the assigned Correctional Counselor or Lieutenant.
      e. Review of specific risk factors for violence toward self and others. This includes a suicide risk assessment if indicated.
    5. The IDTT will decide on the appropriate placement. This decision includes the following options:
      a. Referral for inpatient care.
      b. Placement in an MHCB (short-term crisis stabilization, including initiating involuntary medications when required).
      c. Referral to the classification committee recommending alternative RHU placement if the patient qualifies for CCCMS care or has been discharged from the MHSDS.
      d. If the RHU term has been served, placement at the appropriate level of care, including EOP.
  (B) Interdisciplinary Treatment Team
    1. The EOP RHU Senior Psychologist Supervisor or designee shall chair the EOP RHU IDTT. All clinical decisions regarding intake, treatment planning, re-justification of level of care, and discharge are made by the EOP RHU IDTT. The IDTT is composed of, at minimum:
      a. Senior Psychologist Supervisor or designee.
      b. Assigned Psychiatrist or designee.
      c. ~~EOP RHU Facility Captain.~~
      ~~d.~~c. Correctional Counselor I or Correctional Counselor II.
      ~~e.~~d. Assigned PC or designee.
      ~~f.~~e. Licensed Psychiatric Technician (PT)

> **Commented [NW8]:** Unlike the PSU program, EOP RHUs do not have a captain assigned.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

g. f. Patient. The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT. The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.

2. Other EOP RHU staff may attend, such as a recreation therapist, nursing staff, Sergeant and correctional officers, and custody representatives.

3. A representative from the IDTT (assigned PC or designee) shall be present in all classification hearings regarding patients to provide mental health input into the classification decision-making process. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist to represent the assigned psychiatrist or primary clinician to attend ICC meetings to provide mental health input. The designee must:

   a. Consult the patient's mental health treatment records.
   b. Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.
   c. Be up to date on all required training related to removing patients from MAX custody.
   d. The representative from the IDTT shall present the recommendations of the IDTT with respect to the case. The recommendations may include requesting referral to an EOP (non-RHU) program for patients who are involved in non-violent incidents and determined not to be a risk to others.

4. After the initial IDTT, patients will be evaluated by the IDTT minimally at 60 and 120 calendar days after arrival at RHU and at least every 90 calendar days thereafter or sooner, whenever there is a significant change in level of functioning.

   a. The IDTT will evaluate treatment progress, develop and update the treatment plan, with input from the patient and review discharge goals. The initial treatment plan and all subsequent treatment plans shall include a discharge plan and behavioral goals to discharge the patient from the EOP to a lower level of care if possible.
   b. The assigned PC, or designee, will present a case summary with recommendations for continued treatment or discharge.
   c. The results of all IDTT reviews, decisions, and recommendations will be documented in the health record.
   d. Initial placements and level of care changes are documented in EHRS.

(C) Length of Stay More Than 90 Days

1. Patients housed in EOP RHU for more than 90 calendar days shall be reviewed every 30 calendar days outside of the ICC process by the Facility Captain and Correctional Counselor II. The status of each case, with detailed information regarding the reasons for delays in the referral, disciplinary, classification, and transfer process, shall be compiled and reviewed by the Warden or designee (Chief Deputy Warden or Associate Warden for Health Care). The Warden shall ensure that reviewers take action to resolve any issues that impact the length of stay in RHU.

2. Patients housed in EOP RHU for more than 90 days who postpone an RVR hearing pending referral to the District Attorney shall be reviewed for alternate housing. If the time housed in EOP RHU is equivalent to the projected RHU term (if the patient has been found guilty of the RVR), the patient shall be released to a general population setting. The Warden or designee shall contact the District Attorney to discuss expediting pending cases.

(D) Primary Clinician

Each patient in an EOP RHU shall be assigned a PC. The PC will maintain active clinical involvement with the patient, as well as perform casework functions, including the following:

1. Documentation of initial treatment plan and updates.
2. Regular clinical contact with assigned patients.
3. Ensuring scheduling of periodic IDTT reviews.
4. Attendance at IDTT reviews of the patient.
5. Referral to and coordination with the assigned psychiatrist
6. Participation in ICC to provide mental health input.
7. Liaison with custody and correctional counseling staff regarding overall management of patients.
8. Provide group therapy as defined in the inmate-patient's treatment plan.
7. 9. Crisis intervention and referral as needed.
8. 10. Review of weekly summary of clinical rounds and document this review in the EHRS.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

~~9.~~11.         Response to California Department of Corrections and Rehabilitation (CDCR) inquiries regarding the patient's clinical status.

(D) Psychiatrist

Each patient in an EOP RHU shall have an assigned psychiatrist.

**(3) Treatment Program**

~~(A)~~ Each EOP RHU shall have an Operational Plan that describes its treatment program. The Operational Plan shall include a behavioral incentive program (BIP) with criteria for achieving and retaining each level. ~~A sample BIP is attached hereto as Exhibit ___.~~

MENTAL HEALTH SERVICES DELIVERY SYSTEM

1. Refer to the Operational Plan at each institution for a complete description.

(B) Treatment Plan
1. Each patient in an EOP RHU shall have a Master Treatment Plan within the EHRS.
2. Within the EOP RHU, each patient shall have an individualized treatment plan that provides treatment consistent with the patient's clinical needs.
3. The treatment plan shall be reviewed by the IDTT 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter or whenever a significant change in the patient's functioning requires a change in the treatment plan.
4. Each treatment intervention shall indicate outcome objectives and specific, measurable behavioral goals.
5. Discharge from the EOP or transfer to another level of care shall be documented in the EHRS.
6. Each patient will be offered at least ten hours per week of structured therapeutic activities as approved by the RHU IDTT.
   a. It is recognized that not all patients can participate in or benefit from ten hours per week of treatment services. For some patients, ten hours per week may be clinically contraindicated.
   b. For those patients scheduled for fewer than ten hours per week of treatment services, the PC shall present the case and recommended treatment program to the IDTT for approval. The treatment plan must include a detailed description of the diagnosis, problems, level of functioning, medication compliance, and rationale for scheduling fewer than ten hours.
   c. For patients scheduled for fewer than ten hours of treatment activities per week, the IDTT shall meet at least every 30 calendar days and be responsible for reviewing and increasing the treatment activities and considering a higher level of care as appropriate.

(C) Treatment
1. Required treatment within an EOP RHU includes the following:
   a. Individual treatment planning involves a meeting of the IDTT and the patient 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter to identify treatment needs, develop treatment plans, assess treatment progress, and update or revise individual treatment plans in accordance with the patient's needs and progress.
   b. Weekly (assigned or covering) PC contact.
   c. Daily rounding by the PT seven days a week.
   d. A psychiatrist shall evaluate each EOP patient at least every 30 calendar days.
      Refer to the Health Care Department Operations Manual regarding medication administration procedures, medication refusals, Directly Observed Therapy, medication adherence, and other aspects of medication administration. Refer to the CCR, Title 15, section 3999.344, for information on involuntary medication administration.

2. Other treatment activities may include the following:
   a. Individual psychotherapy.
   b. Group therapy, such as anger management, stress management, offense-related issues, and current events.
   c. Medication education.
   d. Crisis intervention.
   e. Pre-release planning.
   f. Monitoring and assistance with daily living skills.
   g. Cognitive Behavioral Therapy directed to specific behaviors or symptoms.
   h. Recreational activities both within cell and out of cell.
   i. Vocational and pre-vocational training, as available.
   j. Education as available.
   k. 12-Step Program and other substance use treatment.

(D) Patient Refusal to Attend Treatment
1. Within one week of the identification of a patient who has refused more than 50 percent of structured therapeutic treatment hours offered and attended an average of less than five hours per week of offered structured treatment hours in a two-month period, the IDTT, clinical staff, or other custody staff must work together to determine the reason for treatment refusal.
2. For patients on a modified treatment program, attendance at 50 percent or less of the required treatment hours specified in the modified treatment plan in a two-month period shall trigger the review.

MENTAL HEALTH SERVICES DELIVERY SYSTEM

3. The Correctional Lieutenant responsible for the EOP RHU and the PC shall work collaboratively to evaluate the circumstances underlying the patient's refusal to attend the scheduled treatment sessions offered.
4. If a specific cause for the patient's refusal can be identified and reasonably resolved, custody and mental health staff shall work with the patient to resolve such issues.
5. If the patient identifies barriers related to security policies as a cause for their refusal to attend treatment, custody, and mental health staff shall jointly document their findings on a CDC 128-B, General Chrono, and submit to both the Chief Deputy Warden and CMH.
   a. The Chief Deputy Warden and CMH shall confer and consider various methods to encourage the patient to attend treatment, including viable alternatives to the identified security policies that do not jeopardize the unit's security or the safety of staff or patients.
   b. Should the Chief Deputy Warden and CMH disagree on the proper resolution of the matter, the issue shall be elevated to the Warden and CEO for their review and resolution.
   c. For patients who refuse more than 50% of offered treatment during a one-week period, the PC shall:
      1) Interact with these patients daily on scheduled work days (instead of weekly)
      2) Include in the treatment plan efforts to reduce resistance to participation in group therapy.
      3) Discuss these patients during the RHU second and third watch huddles with custody
      4) Consider referral of patient to higher levels of care and document the results of this consideration in the Master Treatment Plan.

**(4) Out-of-Cell Time**
1. All patients assigned to an EOP RHU shall be offered a minimum of twenty hours out of cell time each week. At least ten hours of out-of-cell exercise shall be offered each week, which may include supervised recreational therapy. EOP RHU patients are also offered ten hours of structured therapeutic activities each week.
   a. Structured mental health treatment hours attended by EOP patients shall earn credits that can be applied towards a reduction of their RHU term.
2. The ICC shall establish a patient's yard designation with input from the IDTT as part of the individual treatment plan.

**(5) Discharge Procedures**
(A) At the time of admission to the EOP RHU, a preliminary discharge plan shall be developed based on the clinical and security needs of the patient as well as the patient's EOP RHU term.
(B) Patients admitted to an EOP RHU may be discharged to a CCCMS RHU to complete their term when they no longer require an EOP level of care.
(C) Patients who complete their RHU term and still require EOP care will be discharged to a GP EOP for continuing mental health treatment.
   1. The EOP RHU PC will document recommendations regarding the patient's specific treatment needs, including any concerns about facilitating the patient's successful transition to general population.
   2. The receiving EOP IDTT will consider documentation by the EOP RHU clinician in developing the patient's treatment plan.
   3. The treatment plan for patients transferred from RHU to GP-EOP shall include services provided to aid in the transition to the GP environment.
(D) Patients may be referred to an inpatient program as clinically indicated.
(E) Treatment recommendations upon discharge from an EOP RHU shall be made by the IDTT and documented in the EHRS.
(F) The ICC shall review the discharge recommendations of the IDTT, considering both the clinical and custody needs of the patient. The decision of the ICC shall be documented on a CDCR 128-G Chrono.

**References**
- California Code of Regulations, Title 15, Division 3, Subchapter 4, Article 7, sections 3335 – 3344.
- Mental Health Services Delivery System Program Guide, 2021 Revision

MENTAL HEALTH SERVICES DELIVERY SYSTEM

- Statewide Mental Health Program, Monitoring Requirements for Patients in the Developmental Disability Program Placed in Restricted Housing Memorandum, October 14, 2022
- Operational Plan for Armstrong Class Members Housed in Administrative Segregation Memorandum, December 17, 2012

