# APPENDIX 11



ROSEN BIEN GALVAN & GRUNFELD LLP

P.O. Box 390
San Francisco, California 94104-0390
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Thomas Nolan
Email: tnolan@rbgg.com

February 2, 2024

<u>VIA EMAIL ONLY</u>

California Department of Corrections
  and Rehabilitation (CDCR)
Regulation and Policy Management
Branch (RPMB)
P.O. Box 942883
Sacramento, CA 94283-0001
RPMB@cdcr.ca.gov

    Re:    *Coleman v. Newsom* – Plaintiffs' Comments re: Notice of Change to Regulations re: Restricted Housing Units (NCR No. 23-15)
          <u>Our File No. 0489-3</u>

Dear Sir/Madam:

    We write to provide comments regarding CDCR's Notice of Change to Regulations concerning the new Restricted Housing Units (RHUs), including General Population (GP) RHU units, Correctional Clinical Case Management System (CCCMS) RHU units, and Enhanced Outpatient Program (EOP) RHU units, which were published on December 15, 2023 (NCR No. 23-15) ("Proposed RHU Regulations") with a deadline for comments of February 2, 2024.

    We are counsel for the Plaintiff Class in *Coleman v. Newsom*, Case No. 2:90-cv-00520-KJM-DB (E.D. Cal.), wherein we represent the approximately 33,000 incarcerated persons in the California Department of Corrections and Rehabilitation (CDCR) with serious mental health disabilities who are receiving mental health treatment as part of the Mental Health Services Delivery System (the "MHSDS").

    In general, Plaintiffs are hopeful that the proposed RHU Regulations will reduce the number of people placed into segregation units and the length of time they remain there, and increase property and privileges while people are there.

    However, restricted housing units are particularly dangerous places for our clients with mental health issues, who frequently decompensate in harsh, restrictive, locked-

down segregated environments where access to programming, socialization, and recreation is severely limited. The judge in *Coleman* highlighted the reasons people with mental health conditions are vulnerable to decompensate in segregation units in a 2014 order, which resulted in the creation of the STRH and LTRH units that the new regulations will combine into CCCMS RHU units:

> … the court concludes that confinement in California's administrative segregation units presents significant risks for seriously mentally ill individuals. As recently as last year, defendants own experts reports on the harsh, "generally non-therapeutic environment" of California's administrative segregation units and recommended that lengths of stay in such units be minimized for seriously mentally ill inmates. In addition, a disproportionately high rate of inmate suicides occur in these units.

4/10/14 Order at 43:11-21 (internal citation omitted). Elsewhere in the same order, the Court explained that "the overwhelming weight of the evidence in the record is that placement of seriously mentally ill inmates in California's segregated housing units can and does cause serious psychological harm, including decompensation, exacerbation of mental illness, inducement of psychosis, and increased risk of suicide." *Id*. at 45:20-46:2.

Because of these significant harms for people with mental health issues, it is critical that *Coleman* class members be moved to specialized mental health RHU units as quickly as possible, and class members receive as much out of cell time, and property and privileges as possible whenever they must be housed in restrictive housing units.

In particular, we object to four aspects of the proposed regulations that do not align with relevant *Coleman* Court-ordered remedy: (1) some provisions would result in delays beyond the strict 30 day time frame for transfers to specialized mental health segregation units that are safer for individuals with mental health issues because they have more resources for keeping people safe, more treatment opportunities, and more privileges, (2) other provisions would permit staff to claim vague "safety and security" concerns as a pretext to provide less than the maximum amount of out of cell time possible to people with mental health problems in these units, (3) there is a need for a new provision to prevent CDCR staff from housing people with mental health conditions in ad hoc "overflow" restrictive housing units, and finally (4) there is need to include a provision expanding out of cell time for people with mental health conditions in a similar manner to the way the regulations expand out of cell time for everyone else.

The full remedy in the *Coleman* case, which is set forth in the *Coleman* docket most recently in the 2021 Mental Health Services Delivery System ("MHSDS") Program

Regulation and Policy Management Branch
February 2, 2024
Page 3

Guide, includes comprehensive rules and procedure related to the placement and treatment of individuals in the MHSDS when they are placed into and housed in segregated housing units. *See generally*, MHSDS Program Guide, *Coleman v. Newsom* (Sep. 29, 2021), ECF NO. 7333-1, Chapters 1, 7, 8, and 9.

We discuss each of our four concerns in turn below.

I. **THE COLEMAN REMEDY DOES NOT ALLOW THE EXCEPTIONS IN THE PROPOSED REGULATIONS TO THE 30-DAY TIME FRAME FOR TRANSFERS TO SPECIALIZED MENTAL HEALTH RESTRICTED HOUSING UNIT PROGRAMS.**

The proposed RHU regulations correctly specify that the required transfer timeline for transfers of *Coleman* class members to the two specialized RHU units for people with mental health disabilities is 30 calendar days. *See* Proposed Regulations at §§ 3335.2 and 3335.3 (setting forth the timelines for EOP RHU units and CCCMS RHU unit respectively). As explained below, these timelines are taken from the *Coleman* Program Guides. However, the proposed regulations also include the following four exceptions to the 30-calendar-day mandate for these transfers – exceptions which are not contained in the *Coleman* remedy and are not authorized by the *Coleman* remedy. The four exceptions are as follows in the regulations:

(1) An exception to the 30-day requirement is allowed, and time constraints suspended, in the following circumstances:

(A) Healthcare staff determines, based on medical necessity, that a transfer cannot occur, and places a hold.

(B) During a delay resulting from the inmate's refusal to transfer.

(C) The inmate is out-to-court.

(D) The inmate is placed in a Mental Health Crisis Bed or higher level of care.

*See* Cal. Code of Regs. tit. 15, §§ 3335.2 (d)(1)(A) (EOP timeline exceptions) and 3335.3 (d)(1)(A) (CCCMS timeline exceptions).

These exceptions are potentially harmful because they delay transfers of class members to RHU units that specialize in treating mentally ill people and keeping them safe. The exceptions also violate the *Coleman* court-ordered Program Guide, which

[4432181.1]

requires only that transfers for EOPs and CCCMS individuals to specialized segregation units take place within 30 days of arrival in restricted housing or from identification as having mental health needs.  See MHSDS Program Guide, *Coleman v. Newsom* (Sep. 29, 2021), ECF NO. 7333-1, at 12-1-16 (EOP hub transfer "within 30 days of ASU placement or referral to EOP level of care") and ECF at 451, 453, 456 (January 15, 2015 memorandum on creation of CCCMS Short Term and Long-Term Restricted Housing, which specifies that institutions without a CCCMS restricted housing unit "shall transfer all CCCMS inmates retained by the ICCs" to a designated CCCMS-STRH or LTRH "within 30 days of ASU placement" or within 30 days from the placement into the mental health program of the individual.)

There is no exception in the strict Program Guide timeframes – for good reason. As explained above, segregation units are dangerous for people with mental health concerns.

Moreover, the *Coleman* Court, which has not specifically addressed the other three exceptions, has explicitly rejected the medical hold exception for measuring CDCR's compliance with the 30-day deadline in *Coleman*.  In the context of a court-supervised process to create data-elements to measure compliance with the *Coleman* remedy, CDCR proposed these same exceptions (to be clear, at the time, the measurement being developed was timely transfers to the specialized mental health segregation programs still called STRH and LTRH, and those programs are now combined and called CCCMS RHU units.)

In an October 11, 2023 Order, the Court noted that these specialized mental health restrictive housing units "were created to avoid the risk of serious additional harm to class members through placement in administrative segregation units," and found that there was no justification for the proposed vague medical hold exception contained in CDCR's proposed data element, which the Court noted failed to include "a specific definition of medical hold" or explain "how it would be operationalized."  *See* 10/11/23 Order, ECF No. 8010 at 9:5-6 and 7:22-23.

The Court also approved the finding by the Special Master that the data indicator on timely 30 day transfers to these units should be designed "to score transfers beyond 30 days as non-compliant unless or until the parties negotiate and the court adopts an exception to the Court-approved policy."  *Id* at 2:15-18.  The Special Master also recommend more generally, and the Court approved the finding, that "all transfers to STRH and LTRH units that exceed 30 days should be scored as not satisfying the 30-day transfer business requirement."  *Id*. at 4:11-12 (Special Master recommendations) and 8:20-28, 10:25-26 (adopting the Special Master recommendations and noting "[t]here are no exceptions to or suspension of the 30-day time frames set out in the memo" in the

Program Guide setting forth the transfer timeline.) and ¶ 4 (ordering the removal of the medical hold exception).

We also object to the other proposed exceptions, and in particular to the suspension of the time-frame for transfer for delays when a prisoner refuses to transfer. The 30-day deadline initially set forth in the Program Guide for such transfers includes adequate time for resolving these kinds of issues prior to transfer in virtually all cases.

II. **THERE IS NO JUSTIFICATION FOR A "SAFETY AND SECURITY" EXCEPTION TO THE REQUIREMENT TO PROVIDE 20 HOURS PER WEEK OF YARD TIME**

The new policy includes a broad, and vague, exception to the mandate to provide 20 hours of out of cell time to individuals in RHU units, by stating that 20 hours of yard time need not be provided if safety and security considerations dictate that such hours should not be provided. *See* December 15, 2023 Amendments to Cal. Code of Regs. tit. 15 § 3348(i) ("inmates assigned to RHU shall be offered a minimum of twenty (20) hours of out of cell time per week, *unless security and safety considerations preclude such activity*.") and § 3378.9(a) ("Programming for those inmates housed in the RCGP shall be comprised of at least 20 hours of out-of-cell time per week *unless safety and security considerations preclude such activity*.").

However, there is no exception in the Program Guide or the remedy in the *Coleman* case that supports the assertion in the proposed regulations of an exception to the 20 hours mandate when vague "security and safety" considerations preclude providing yard. This vague exception should be stricken from the new regulations.

Some of the key dangers of segregation units for people with mental health concerns are isolation in a cell, the lack of activity, and the lack of social interaction, all of which cause people to decompensate and sometimes to take their own lives. One of the key *Coleman* reforms to reduce the danger of these units is expanded out of cell time. The Program Guides in *Coleman* require that mental health patients be provided with 10 hours of out of cell structured therapeutic activity in restricted housing units, in addition to standard out of cell yard time, which generally results in 20 hours of out of cell time. *See* 2021 Program Guides, ECF 7333-1, at 12-7-10 (general requirement for 10 hours of weekly structured therapeutic activities for EOP individuals in EOP ASU units which are now EOP RHU units under the new policy, without exceptions for safety and security); 12-9-12 (requiring 10 hours of out of cell exercise in PSU units, which are now EOP RHU units under the new policy, without exceptions for safety and security), 452 (male STRH programs "will offer 20 hours of out-of-cell activities per week" including 18.5 hours of exercise outside of their cell.)

[4432181.1]

Because there is no "safety and security" exception to these out of cell time mandates in the *Coleman* remedy, there should be none in the regulations. Allowing staff to fail to provide the mandated hours of out of cell exercise and therapy on "safety and security" groups risks putting class members in danger of decompensation and other serious harms, including suicides and self-harm.

### III. THE PROPOSED REGULATIONS SHOULD BE AMENDED TO RESTRICT OVERFLOW RHU UNITS

In representing the Plaintiff class in *Coleman*, we have become aware of a dangerous pattern and practice in CDCR of housing class members in ad hoc "overflow" restricted housing units. Often, these units cannot provide the yard, privileges, supervision, safety or treatment mandated by the *Coleman* case. We understand, for example, that one such ad hoc overflow RHU unit is currently operating at CSP-Los Angeles County on C-Yard and we have received numerous complaints about the lack of programming, yard, clothing, and basic privileges from our class members.

Formal RHU units include important safeguards designed to ensure *Coleman* mandates to protect vulnerable class members in these units are met. These safeguards include safety cells where new arrivals to segregated units must be placed in order to reduce their risk of suicide and self-harm. *See* Coleman Program Guide, ECF 7333-1, at 569 (setting forth procedure for the use of suicide resistant intake cells within segregation units). Another key safeguard is the requirement for minimum out of cell times of 20 hours a week, discussed above. However, safely providing that yard time for restricted housing individuals often requires the use of walk-alone yards, which are generally not present in the locations where overflow restricted housing units are created by CDCR staff. Other key safeguards in EOP RHU units and CCCMS RHU unit are the mental health treatment programs and groups mandated for these units. *See generally*, *id.* at Chapters 7, 8 and 9.

Because these critical safeguards are not available when individuals are placed on segregation status in ad hoc units, the regulations should be amended to specifically ban ad hoc overflow RHU units that cannot provide the suicide prevention, supervision and treatment mandates required to comply with the *Coleman* Program Guides. If a true emergency exists, there should a requirement for approval by the Secretary of the CDCR that includes a description of the nature and likely duration of the emergency, and a plan to provide *Coleman*-mandated privileges and treatment in the unit, and this certification should be required to be renewed and updated on a weekly basis so long as a given ad hoc overflow segregation unit is in use.

[4432181.1]

### IV. THE NEW RHU REGULATIONS EXPAND YARD AND OUT OF CELL TIME FOR EVERYONE ELSE IN RHU UNITS SIGNIFICANTLY, BUT DOES NOT EXPAND YARD OR OUT OF CELL TIME FOR EOP AND CCCMS INDIVIDUALS IN RHU – THEY SHOULD DO SO.

As part of the *Coleman* remedy, individuals receiving mental health care in the CDCR have long received more out of cell yard and treatment time that non-mental health caseload individuals in CDCR, as a way to reduce the harms of administrative segregation for such individuals. *See* 2021 Program Guides, ECF 7333-1, at 12-7-10 (general requirement for 10 hours of weekly structured therapeutic activities for EOP individuals in EOP ASU units which are now EOP RHU units under the new policy, which in addition to 10 hours of yard time mandated for all in segregation units generally results in 20 hours of out of cell time); 12-9-12 (requiring 10 hours of out of cell exercise in PSU units, which are now EOP RHU units under the new policy, without exceptions for safety and security), 452 (male STRH programs "will offer 20 hours of out-of-cell activities per week" including 18.5 hours of exercise outside of their cell.)

The new regulations will permit 20 hours of out of cell time for all residents of restricted housing units, which we believe is a very favorable change. *See* December 15, 2023 Amendments to Cal. Code of Regs. tit. 15 § 3348(i) ("inmates assigned to RHU shall be offered a minimum of twenty (20) hours of out of cell time per week, *unless security and safety considerations preclude such activity*.") and § 3378.9(a) ("Programming for those inmates housed in the RCGP shall be comprised of at least 20 hours of out-of-cell time per week *unless safety and security considerations preclude such activity*.")

However, the practical result of this important change is to increase the amount of out-of-cell time for all prisoners in restricted housing units to equal what has long been provided to the most vulnerable individuals in these units – those with mental health and developmental disabilities – without increasing out of cell time for the most vulnerable residents of these units. The 20 hours per week – which is still less than 3 hours per day – of out of cell time for *Coleman* class members in the existing specialized mental health programs has been insufficient: high rates of suicide and decompensation requiring transfers to higher levels of care have continued to plague these programs.

The Regulations should be modified, recognizing the special vulnerability of these groups, to substantially expand the out of cell time for EOP and CCCMS individuals in RHU units, beyond 20 hours to 30 hours (still less than 5 hours per day) or even more. Given that EOP patients are, by definition, more acutely ill and dysfunctional than CCCMS patients, they should receive more out of cell time (40 hours per week).

Many jurisdictions are doing away with segregation units altogether because of the long-term harms and dangers associate with these units.  *See*, New York Times, January 30, 2024, "Mayor Adams Loses Showdown Over 2 Criminal Justice Bills," (explaining passage of bill in New York City that will bar solitary confinement at the notorious Rikers Jails), available at https://www.nytimes.com/2024/01/30/nyregion/adams-veto-police-solitary.html.

Given the vulnerability of *Coleman* class members, if California wants to present its prisons as a model of humane approaches to incarceration as suggested by the promotion of the "California Model," the very least it can do, short of eliminating segregation, is to expand out of cell time in restricted housing units for the most vulnerable residents of these units beyond the 20 hours a week that will henceforth be provided to others.

        Sincerely,

        ROSEN BIEN
        GALVAN & GRUNFELD LLP

        */s/  Thomas Nolan*

    By:   Thomas Nolan
        Of Counsel

TN:fgl
cc:    Coleman Special Master Team
       Steve Fama
       Nick Weber
       Elise Thorn
       Melissa Bentz
       Sundeep Thind
       Damon McClain
       Amar Mehta
       Namrata Kotwani
       Samantha Wolff
       Paul Mello

[4432181.1]