# APPENDIX 12



PANNONE LOPES
DEVEREAUX & O'GARA LLC
counselors at law

February 2, 2024

California Department of
Corrections and Rehabilitation, RPMB
Attn: Joshua Jugum (joshua.jugum@cdcr.ca.gov)
P.O. Box 942883
Sacramento, CA 94283-0001

  *RE: NCF Number 23-15*

Dear Mr. Jugum:

  Thank you for the opportunity to provide comments on NCF Number 23-15 which announces the "proposed amendment, adoption, and/or repeal of several sections within the California Code of Regulations, Title 15, Crime Prevention and Corrections, Division 3, Chapter 1, regarding Restricted Housing Units."

  As an initial matter, we are thankful that Secretary Jeffrey Macomber met with members of the Special Master's team to discuss restricted housing units (RHU). We believe that our discussion was positive and a model for collaboration in the *Coleman* case.

  While our overall impression of the RHUs is positive, we have deeply rooted concerns that CDCR has utilized the regulatory process to upend components of the remedial plan in *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal., Sept. 13, 1995).

**I.  Overall Impression of the Restricted Housing Unit**

Generally, we believe that the creation of the RHU is positive for the following reasons:

- Increased access to tablets and other privileges based on the patients' privilege group at the time of being placed into RHU;
- Ability of RHU patients to reduce an assessed RHU term via programming opportunities including self-help groups and mental health treatment;
- Reduction of the number of offenses that require placement into an RHU;
- Reduction in the length of time for all RHU offenses; and
- Increase in out of cell time to 20 hours for incarcerated persons housed in an RHU program.

California Department of
Corrections and Rehabilitation, RPMB
Attn: Joshua Jugum(joshua.jugum@cdcr.ca.gov)
January 31, 2024
Page 2

## II. Remedial Plan in Coleman v. Wilson

CDCR is subject to remedial court orders issued pursuant to *Coleman v. Wilson*. The *Coleman* Court has held that modifications to regulations created to remedy Eight Amendment violations cannot be modified without the court's approval. Below is the text of the court order:

> Defendants have adopted and implemented numerous custodial regulations, policies and practices as part of the remedial process in this action, most recently, but not exclusively, as the result of litigation before the court in 2013 and 2014 over use of force and other custodial practices applied to class members. *See*, *e.g.*, August 11, 2014 Order, ECF No. 5196. Those remedies were required by the Eighth Amendment. *See*, *e.g.*, ECF No. 5131, at 2-3 (order on plaintiffs' May 9, 2013 motion related to housing and treatment of class members in administrative segregation, ECF No. 4580, finding defendants had not yet "sufficiently remedied Eighth Amendment violations in use of force, disciplinary measures, and segregated housing relative to class members" and applying Eighth Amendment standards to); and, *e.g.*, 13 (discussing what "remediation of the identified Eighth Amendment violation" requires). Consistent with the legal principles the court discussed in its April 24, 2020 order, defendants in this action "may not rely solely on state law to take unilateral action that undermines" those remedies. ECF No. 6639 (citing *Hook v. Arizona Dept. of Corrections*, 107 F.3d 1397, 1402-03 (9th Cir. 1997) and *Valdivia v. Schwarzenegger*, 599 F.3d 984, 995 (9th Cir. 2010)). <u>Whether or not some or all of the regulations or policies extend more broadly, to the extent they are part of the court-ordered and/or approved remedies in this action, they cannot be modified with respect to members of the plaintiff class without approval of this court.</u> (ECF No. 6806 at 10. Emphasis added).

CDCR has not sought the *Coleman* Court's approval to modify the remedy. On January 30, 2024, CDCR wrote the following to the Special Master and stated the following regarding potential changes to the Program Guide and the remedial plan:

> As noted in a December 19, 2023 letter (attached here for reference), the mental health RHU policy has been developed to combine and replace the myriad Program Guide requirements and associated mental health policy memos that cover EOP and CCCMS patients in EOP administrative segregation unit (ASU) hubs, security housing units (SHU), Psychiatric Services Units (PSU), Short Term and Long Term Restricted Housing units (STRH and LTRH). (See Program Guide at Chapters 7, 8, and 9, and Program Guide at pages 443, 446, 448, 455, and 469.) <u>To avoid confusion, once finalized the EOP, CCCMS, and GP RHU policies will replace and supersede Chapters 7 through 9 of the Program Guide as well as the policy memos on the now defunct STRH and LTRH programs.</u> (See attachment A)

Based on this representation, it appears that this regulation will in fact modify the remedy in *Coleman* by at a minimum making the STRH and LTRH programs "defunct."

California Department of
Corrections and Rehabilitation, RPMB
Attn: Joshua Jugum (joshua.jugum@cdcr.ca.gov)
January 31, 2024
Page 3

Further, CDCR's RHU regulations do not address the court's order regarding data remediation. On October 11, 2023, the *Coleman* court held:

> The medical hold exception to the existing STRH/LTRH transfer timeline indicator's documentation shall be removed and all transfers to STRH and LTRH units that exceed 30 days shall be scored as not satisfying the 30-day transfer business requirement. Concurrently, the indicator shall include drill-down information including any explanation for delayed transfers, including medical holds. (ECF No. 8010 at 11.)

However, the RHU regulation retains an exception to transfer timelines for medical holds for 3CMS patients.

> **§3335.3. Correctional Clinical Case Management System Restricted Housing Unit.**
> (d) An inmate included in the MHSDS at the CCCMS level of care and retained in RHU by an Institution Classification Committee shall be transferred to a designated CCCMS RHU within 30 days of RHU placement. If the inmate's inclusion in the MHSDS at the CCCMS level of care occurs after RHU placement, the inmate shall be transferred within 30 days from the date of the inclusion at the CCCMS level of care.
> (1) An exception to the 30-day requirement is allowed, and time constraints suspended, in the following circumstances:
> (A) Healthcare staff determines, based on medical necessity, that a transfer cannot occur and places a medical hold.
> (B) During a delay resulting from the inmate's refusal to transfer.
> (C) The inmate is out-to-court.
> (D) The inmate is placed in a Mental Health Crisis Bed or higher level of care.
> (2) Upon resolution of the exception, the time constraints will resume

In addition, the regulations do not address case by case reviews and/or long term segregated case conferences of *Coleman* patients. The requirement to conduct these reviews stemmed from the *Coleman* Court's April 10, 2014 Order concerning restricted housing. *See* ECF No. 5196. Omission of this requirement in the regulations would constitute a change to the remedy for which leave of the court must be sought.

### III.    Conclusion

While our general impressions of the RHU regulation are favorable, we are concerned that this sweeping change modifies the remedy issued by the *Coleman* Court and we strongly urge CDCR to notify the court of any changes to the remedial plan.

Sincerely,

Kerry F. Walsh
Deputy Special Master

