# APPENDIX 14

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                                GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



April 8, 2024

Tom Nolan
Rosen Bien Galvan and Grunfeld
101 Mission Street, Sixth Floor
San Francisco, CA 94105

VIA EMAIL

Tom,

I write in response to your January 31, 2024 letter regarding CDCR's Restricted Housing Unit (RHU) healthcare policy. The attached revised policy and this letter are meant to focus discussions during the upcoming meet and confer regarding the court's order to file a stipulation by April 15, 2024. (ECF No. 8181 at 7.) Changes made to the RHU healthcare policy in response to your letter are discussed below. Many of your requests are to integrate pre-existing custody related policies into the new RHU healthcare policy. As noted in prior communications, none of those pre-existing custody policies are being rescinded or replaced as part of this project and will remain part of the Program Guide. Accordingly, CDCR has not duplicated those policies within the RHU healthcare policy.

The attached RHU policy only replaces Chapters 7, 8, and 9 of the Program Guide as well as the Program Guide memos on the Short Term and Long Term Restricted Housing (STRH and LTRH) units. (ECF No. 7333-1 at 443, 446, 448, 455, and 469.) Other policies, such as those on Non-Disciplinary Restricted Housing status, unclothed body searches, intake cells, issuance of property, and long term case by case reviews are entirely custodial in nature and are not being rescinded or modified by this RHU policy. Those policies remain in the Program Guide or Compendium untouched.

Your letter also discussed several issues unrelated to the RHU policy including notifying the court about remedial changes, language in the regulations package regarding transfer timeframe exceptions, program staffing allocations, and the October 2023 out-of-cell time memo. Given the court's and Defendants' focus on finalizing the RHU healthcare policy, those items are not discussed in this letter.

/

/

/

Page 2

I. Changes Made to the RHU Policy

    A. Pre-Placement Mental Health Screen (Plaintiffs' letter at 4)

At Plaintiffs' request, CDCR has made the following edit to section (e)(2)(A)(1.):

> Patients only being housed in the RHU for alternative housing pending transfer to an MHCB do not require a pre-placement screening so long <u>as they are on a 1:1 suicide watch for the duration of their stay in the unit.</u>

    B. In Cell Activities and Substantive Group Therapy Types (Plaintiffs' letter at 6)

At Plaintiffs' request, CDCR has revised EOP section (a)(3)(C)(2)(h) to clarify that recreation activities can occur both within cell and out of cell. CDCR has also modified CCCMS section (a)(3)(B)(1.)'s language on group therapy to include references to anger management and relapse prevention.

    C. Weekend review of MH-5 Forms by the TTA Nurse (Plaintiffs' letter at 8)

At Plaintiffs' request, CDCR has added the following language to general section (e)(4)(c)(3):

> The Triage and Treatment Area (TTA) RN shall review each CDCR 7362, Health Care Services Request for medical dental, and mental health services, <u>and shall review all MH-5 staff referral chronos, and</u> shall establish priorities on an emergent and non-emergent basis, and refer accordingly.

    D. Patient Participation in the IDTT

At Plaintiffs' request, CDCR has added language regarding "input from the patient" during IDTT. (See EOP section (a)(2)(B)(4.)(a.).)

II. CDCR Has Considered but Declines to Make the Following Changes

    A. Non-Disciplinary Restricted Housing (Plaintiffs' letter at 2)

Plaintiffs request that language regarding Non-Disciplinary Restricted Housing units or status be added to RHU policy. CDCR is not operating a Non-Disciplinary Restricted Housing unit. Accordingly, no changes to the RHU policy are warranted.

Non-Disciplinary Restricted Housing (NDRH) status is outlined in the RHU regulations. (See e.g. Title 15 section 3335(b)(1).) NDRH status is a custodial policy and is not part of the RHU healthcare policy. Additionally, the RHU healthcare policy does not rescind or modify any part of the NDRH regulations or policies. NDRH policies are not found in Chapters 7, 8, or 9 of the Program Guide or in the STRH/LTRH policies at pages 443, 446, 448, 455, and 459. No further changes to the RHU policy are required.

Page 3

    B. Unclothed Body Searches (Plaintiffs' letter at 4)

Plaintiffs request that the RHU healthcare policy include policy language regarding the custodial unclothed body search policy. The unclothed body search policy is located in CDCR's Department Operations Manual and also in the Compendium. (See DOM section 52050.16.6 and ECF No. 7333-2 at 3.) CDCR is not rescinding or modifying this policy as a result of in conjunction with the RHU regulations or RHU healthcare policy. The unclothed body search policy therefore does not need to be included in the RHU healthcare policy.

    C. Intake Cells (Plaintiffs' letter at 5)

Plaintiffs request revisions to the custodial intake cell policy to require constant one-to-one observation in some situations. An intake cell is not suicide watch and CDCR will not expand this long settled remedial policy as part of these negotiations. The policy has since been codified in a key performance indicator as well. ASU Intake Inmates Appropriately Housed (sharepoint.com)

CDCR's custodial intake cell policy is not impacted by the RHU healthcare policy and it remains in the Program Guide. (See ECF No. 7333-1 at 568.) No further edits to the RHU policy are needed.

    D. Property Upon Arrival to RHU (Plaintiffs' letter at 5)

Plaintiffs ask that the RHU healthcare policy include a timeline for providing inmates' personal property upon arrival to an RHU. However, the RHU policy does not address personal property – only standard property. Patients will receive "standard property and orientation package" upon arrival to the RHU. (See CCCMS and EOP sections (a)(1)(C).) Standard property is property issued by CDCR upon arrival to a program such as toiletries, state issued supplies, and a tablet where authorized. No section of the Program Guide subject to revision discusses timelines for issuance of personal property to patients in Restricted Housing. No further edits will be made to the policy.

    E. Assigned Clinicians (Plaintiffs' letter at 6)

Plaintiffs request the word "assigned" be added to the RHU policy at CCCMS section (a)(2)(B) and (a)(2)(G) and EOP section (A)(2)(B)(c). Such language is unnecessary because the policy is sufficiently clear in this regard. CCCMS section (a)(2)(B) reads "Initial contact by the primary clinician shall occur within 10 calendar days of arrival to the CCCMS RHU and before the initial IDTT." CCCMS section (a)(2)(G) reads "The IDTT shall include the patient's Correctional Counselor…" And EOP section (a)(2)(B)(c ) is consistent with the PSU chapter requiring a "Correctional Counselor II" to attend the EOP IDTT. (12-9-5.) No further edits are necessary.

    F. DSH Discharge Conferences (Plaintiffs' letter at 9)

Plaintiffs ask that CDCR integrate various DSH discharge memos into the RHU policy (see ECF No. 7333-1 at 435, 442, 473). But none of those polies are being rescinded or replaced as part of

Page 4

the RHU regulations or RHU healthcare policy and they remain in the Program Guide. No further edits are necessary.

        G.  Long Term Case Conferences (Plaintiffs' letter at 10)

Plaintiffs ask that CDCR integrate the September 15, 2014 custody memo regarding priority case by case reviews. CDCR is in the process of updating that policy independent of the RHU healthcare policy and a new version will be circulated for review soon. Until then, that policy remains part of the Program Guide. (See ECF No. 7333-1 at 534.) The RHU healthcare policy is not rescinding or modifying this policy. No further edits are necessary.

Sincerely,

*/s/ Nick Weber*

NICK WEBER
Attorney
Office of Legal Affairs

**Restricted Housing Unit Program: Mental Health Services**

(a) **Policy**
All Restricted Housing Units (RHU) shall maintain general expectations that allow all incarcerated individuals assigned to these units access to mental health services. Patients in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management System (CCCMS) or Enhanced Outpatient (EOP) level of care who are housed in a Restricted Housing Unit (RHU) shall be offered enhanced mental health treatment. The RHU shall be collaboratively administered between custody and mental health staff.

(b) **Purpose**
To assure all incarcerated individuals have access to mental health services while housed in a restricted housing unit setting. For patients in the MHSDS requiring restricted housing, enhanced mental health services to prevent decompensation shall be provided.

(c) **Definitions**
**Restricted Housing Units:** Restricted Housing Units are designated for short and extended-term programming of incarcerated individuals not suited for housing in the general population. They are specialized programming units with established placement criteria. RHUs include EOP RHU, CCCMS RHU, and GP RHU.
**Correctional Clinical Case Management System Restricted Housing Unit:** Secure housing and enhanced care for patients in the CCCMS level of care who require placement in restricted housing.
**Enhanced Outpatient Program Restricted Housing Unit:** Secure housing and care for patients at the EOP level of care not requiring crisis or inpatient hospital care, but who require placement in restricted housing.
**General Population Restricted Housing Unit:** Secure housing units designated for incarcerated individuals not suited for housing in the general population and who do not have any identified mental health concerns.

(d) **Responsibility**
  (1) The overall institutional responsibility rests jointly with the Chief Executive Officer (CEO) and the Warden.
  (2) The coordination of clinical activities within the RHU is the responsibility of the Chief of Mental Health (CMH), the Chief Psychiatrist (CP), and the Chief Nurse Executive (CNE). The CMH, the CP, and the CNE ensure that the RHU Program complies with the Mental Health Services Delivery System (MHSDS) Program Guide, the Health Care Department Operations Manual, and all applicable policies.
  (3) The Facility Captain will oversee custodial responsibilities, correctional counseling services, and classification actions.
  (4) Decisions on patient treatment plans, individual patient program activities, and level of care are made by the Interdisciplinary Treatment Team (IDTT).

(e) **Procedure**
  (1) **Transfer Timeframes**
     (A) Patients shall transfer to CCCMS or EOP RHUs in accordance with Title 15, which requires that patients at these levels of care be transferred to a EOP or CCCMS RHU within 30 calendar days from the date of initial placement in RHU, or within 30 calendar days from the date the patient was made EOP or CCCMS. *See* Cal. Code of Regs., tit. 15 §§ 3335.2 (EOP) and 3335.3 (CCCMS). No patients included in the MHSDS shall be housed in a stand-alone GP RHU Any patient included in the MHSDS who is placed in a stand-alone GP RHU shall be transferred out within 24 hours.
        1. A mental health clinician shall assess any inmate in a stand-alone GP RHU identified and referred by the PT or any staff immediately or within 24 hours, depending on the urgency of the referral. An incarcerated individual who meets the criteria for MHSDS shall be transferred to another RHU as soon as possible but no longer than 24 hours following the mental health level of care change.
     (B) In no event shall a pending CDCR 115, *Rules Violation Report*, impede or delay the transfer of an inmate patient to a CCCMS or EOP RHUs.
  (2) **Admission Screening and referral**
     (A) Pre-placement mental health screening: All incarcerated individuals shall be screened by medical personnel, usually a PT, for possible suicide risks, safety concerns, and mental health problems within 24 hours before first physical arrival to a RHU. If a patient screens positive, they are referred for a mental health evaluation on an emergent, urgent, or routine basis, depending on their answers to the screening questions.
        1. Patients only being housed in the RHU for alternative housing, pending transfer to an MHCB do not require a pre-placement screening so long as they are on a 1:1 suicide watch for the duration of their stay in the

        unit.
- (B) All incarcerated individuals not currently enrolled in the Mental Health Services Delivery System (MHSDS) shall receive a post-placement screening within 72 hours after RHU placement, conducted by a mental health clinician or a trained nursing staff in a private and confidential setting that affords confidentiality of sight and sound from other incarcerated individuals and confidentiality of sound from staff. These screening interview appointments shall be announced by custody staff as "health appointments" to avoid stigmatization and possible retribution by other incarcerated individuals. Every effort shall be made to encourage incarcerated individuals to attend these appointments.
  1. Interactions with newly admitted individual in RHU units shall be sufficient to ascertain the incarcerated individual's mental health condition particularly during the first ten days. All incarcerated individuals scoring positive on the screening shall be referred to a mental health clinician to be seen within the clinically appropriate time frame.
- (C) Patients shall receive orientation material within 24 hours of placement into a GP RHU, CCCMS RHU or EOP RHU.

**(3) Intake cell placement**
- (A) All incarcerated individuals shall be housed in an Intake Cell or with a compatible cellmate for the first 72 hours of initial placement in an RHU.
  1. All intake cells shall be suicide resistant.
     a. If an incarcerated individual is housed in a non-suicide-resistant intake cell and double celling is not appropriate, the incarcerated individual shall be placed in a cell with close proximity (clustering) to each other and near high-traffic areas or control booths which will allow for better observation by staff.
  2. Institutions shall ensure that incarcerated individuals are re-housed in non-intake cells after the initial 72 hours are completed.
  3. If the cellmate moves out of the cell before the 72 hours has concluded, a new cellmate must be assigned, or the incarcerated individual must be rehoused in an intake cell within 8 hours from the cellmate's removal.
- (B) Institutions shall ensure that all requirements for the documentation of intake cell usage within the Strategic Offender Management System (SOMS) are followed according to current policies and procedures.
  1. Institutions shall ensure that all necessary staff remain compliant with required training related to the governance of intake cell usage.

**(4) Referrals**
- (A) Each day, the assigned physician, Registered Nurse (RN), or PT will tour the unit and assess any patient with medical or dental needs.
- (B) During Second Watch, patients requiring medical attention will be referred to the RHU RN.
- (C) Sources of Referral for Mental Health Services
  1. Staff referrals may be made on a CDCR 128-MH5, Mental Health Referral Chrono, or as a Consult Order in the Electronic Health Records System (EHRS).
     a. Any staff member who observes possible signs or symptoms of a serious mental health disorder shall refer a patient for clinical evaluation by completing a CDCR 128-MH5, Mental Health Referral Chrono.
     b. Any staff member who observes a patient to be at risk for suicide or any other condition that requires crisis care shall be immediately screened by a mental health clinician to assess the potential for suicide and, if appropriate, referral to a Mental Health Crisis Bed (MHCB) for admission.
  2. Self-referrals shall be made on a CDCR 7362, Health Care Services Request.
     a. Monday through Friday, the following shall occur:
     b. A health care staff member shall collect all the CDCR 7362, Health Care Services Requests daily from the designated areas.
     c. Upon receipt of the collected forms, nursing staff shall initial and date each CDCR 7362, Health Care Services Request.
     d. The CDCR 7362, Health Care Services Request, shall be delivered to the designated program representative in mental health, dental, or pharmacy services for same-day processing.
  3. On weekends and holidays, the following shall occur:
     a. The Triage and Treatment Area (TTA) RN shall review each CDCR 7362, Health Care Services Request for medical, dental, and mental health services, and shall review all MH-5 staff referral chronos and establish priorities on an emergent and non-emergent basis, and refer accordingly.

  b. If a physician, mental health clinician, or dentist is unavailable, the on-call physician or mental health provider shall be contacted.
- (D) Patients shall be seen by a mental health clinician or on weekends by an on-call provider within the following clinically determined time frames.
    1. Emergent: Emergency referrals shall be seen within 4 hours or escorted to the TTA.
    2. Urgent: Urgent referrals shall be seen within 24 hours.
    3. Routine: Routine referrals shall be seen within five calendar days.

**(5) Clinical rounds:**
- (A) A mental health staff member, usually a licensed Psychiatric Technician (PT), shall conduct rounds seven days per week in all RHUs to attend to the mental health needs of all incarcerated individuals.
    1. Patients not previously identified as having mental health treatment needs who exhibit possible signs and symptoms of serious mental disorders shall be referred for clinical evaluation.
    2. The PT shall document clinical rounds for MHSDS individuals in the health record. For non-MHSDS individuals, the round shall be documented by initialing next to the individual's name in the 114 Isolation Logbook, or the SOMS equivalent each time the individual is seen.
- (B) The PT shall make initial contact with each incarcerated individual placed into an RHU within 24 hours after placement.
    1. Institutions shall ensure that fidelity monitoring of these rounds is completed, as required, and reported to the appropriate governing committee.
- (C) A second watch and a third watch huddle between custody and clinical staff shall be held each business day. At a minimum, an RHU Sergeant and an RHU Mental Health clinician (psychologist or social worker) shall attend the huddles.
    1. During the meeting, involved personnel shall identify new arrivals, discuss current behavioral issues and concerns, and share pertinent information regarding new arrivals and at-risk incarcerated individuals.
    2. This meeting shall be documented in the RHU Logbook; shall include a review of patients in the Suicide Risk Management Program, who are at increased risk for suicide; salient clinical information shall be documented in the EHRS; if necessary, a referral for mental health services shall be made at the appropriate level of urgency.

**(6) Monitoring Requirements for Developmental Disability Program Patients Placed in Restricted Housing**
- (A) Developmental Disability Program (DDP) patients housed in a GP RHU shall be interviewed by a mental health clinician within 24 hours of initial RHU placement and receive weekly monitoring by a DDP psychologist or designee. For this purpose, "weekly" is a seven-day calendar week.
- (B) Documentation of the initial 24-hour and weekly clinical contacts for DDP patients housed in an RHU shall be completed in the EHRS using either the "MH DDP Restricted Housing Check" PowerForm or the "DDP Progress Note" note type.
    1. Documentation must indicate the patient's current housing setting, the evaluation type ("Initial 24-hour" or "Weekly"), and if the location where the contact occurred was confidential ("Confidential" or "Non-confidential").
    2. Documentation shall also include a description of the content for this contact, relevant clinical observations, a statement describing the patient's functioning related to their DDP adaptive supports, any collateral information obtained (e.g., reports from the DDP officer or housing unit officers), and any follow-up steps taken if indicated.
- (C) An initial 24-hour contact is not required if there are no modifications to the DDP patient's programming (e.g., a determination for restricted housing was made, but the patient was never housed in that unit) or if the patient leaves and returns to the same RHU environment within a 24-hour period.
- (D) An initial 24-hour contact is not required if the DDP patient transfers to another RHU environment within the same institution or transfers from an RHU environment at one institution to an RHU environment at another institution unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.
- (E) If a DDP patient transfers to another RHU environment within the same institution, a second weekly contact is not required unless clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.
- (F) A weekly contact is required within seven calendar days of arrival at the receiving institution if a patient transfers from an RHU environment at one institution to an RHU environment at another institution.

**Restricted Housing Unit Program: Correctional Clinical Case Management System**

(a) **Procedure**
  (1) **Placement in a CCCMS Restricted Housing Unit**
    (A) A patient shall be housed in a CCCMS RHU if included in the MHSDS at the CCCMS level of care and meets RHU placement criteria under California Code of Regulations (CCR), Title 15, section 3335.
    (B) Patients assigned to a CCCMS RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to a CCCMS RHU with an imposed RHU term shall be classified under CCR, Title 15, section 3341.
    (C) Upon arrival in the CCCMS RHU, patients will receive their standard property and orientation package.
    (D) The Intake Cell provisions above in the general RHU section apply to CCCMS RHUs and EOP RHUs as well
  (2) **Interdisciplinary Treatment Teams and Institutional Classification Committees**
    (A) Mental health staff shall attend daily second and third watch huddles with custody staff to discuss high-risk patients, new arrivals, and any behavior issues or ongoing concerns of individual patients.
    (B) Initial contact by the primary clinician shall occur within 10 calendar days of arrival to the CCCMS RHU and before the initial IDTT. Initial contact by the assigned psychiatrist shall occur within 10 calendar days of arrival to the CCCMS RHU and before the initial IDTT.
    (C) The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after they arrive in the CCCMS RHU.
    (D) Mental health staff shall attend and participate in IDTTs and ICCs. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist as a representative for the assigned psychiatrist or Primary Clinician to attend ICC meetings to provide mental health input. The designee must:
      1. Consult the patient's mental health treatment records.
      2. Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.
      3. Be current on all required training related to removing patients from MAX custody.
    (E) The responsibilities for overall treatment planning within the CCCMS program rest with the IDTT. These responsibilities include:
      1. Placement decisions for individual cases.
      2. Review of relevant clinical data for diagnostic formulation.
      3. Review of relevant case factors.
      4. Formulation and approval of treatment plans.
      5. Annual and special reviews for continuation or termination of services.
      6. Review of treatment response.
      7. Discharge planning.
    (F) The IDTT is composed of, at minimum:
      1. Assigned PC (either a psychologist or Clinical Social Worker).
      2. Assigned psychiatrist.
      3. Correctional Counselor.
      4. Patient. The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT. The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.
    (G) The IDTT shall include the patient's Correctional Counselor, who shall present case factors of the RHU placement for consideration in developing the treatment plan and initiating an aftercare plan.
    (H) Some patients may be seen more frequently by the IDTT in special reviews at the request of the assigned PC or psychiatrist whenever changes in the level of care or treatment plans are indicated.
  (3) **Treatment for CCCMS Patients Placed in a Restricted Housing Unit**
    (A) The treatment interventions shall meet the guidelines outlined in the MHSDS Program Guide and include the following:
      1. Regular monitoring of symptoms by licensed Psychiatric Technicians through daily rounds seven days a week.
      2. Individual contact every week by PC or more frequently if clinically indicated.
      3. Crisis intervention.
      4. Medication treatment, evaluation, review, and compliance monitoring by psychiatric and nursing staff.
      5. Psychiatric contact every 90 calendar days.

      6. IDTT every 90 calendar days to update the treatment plan.
      7. 90 minutes of confidential, structured group therapeutic activity weekly.
      8. Clinical discharge or clinical pre-release planning.
  (B) The following treatment interventions shall be provided on an as-needed basis:
      1. Group Therapy such as anger management and relapse prevention.
      2. Orientation and supportive counseling for institutional adjustment.
      3. Social skills training.
      4. Consultation services, such as education or rehabilitative programs.
      5. In-cell therapeutic activities each week, such as self-help and recreational activities, as determined by the IDTT.
      6. Supportive care for Activities of Daily Living.

**(4) Out of Cell Time**
    1. The CCCMS RHU will offer 20 hours of out-of-cell activities per week. Patients will be offered 18.5 hours per week of recreational time outside their cell.
    2. Patients will also be offered 90 minutes of confidential, structured therapeutic activity each week.
    3. Mental health group treatment therapeutic program hours attended by CCCMS patients shall earn credits to reduce their RHU term.

### Restricted Housing Unit Program: Enhanced Outpatient Program

**(a) Procedure**
**(1) Placement in an EOP Restricted Housing Unit**
  (A) A patient shall be housed in an EOP RHU if included in the MHSDS at the EOP level of care and are required to be housed in an RHU unit.
  (B) Patients assigned to an EOP RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to an EOP RHU with an imposed RHU term shall be classified in accordance with CCR, Title 15, section 3341.
  (C) Upon arrival in the EOP RHU, patients will receive their standard property and orientation package.
  (D) The intake cell provisions in the general RHU section above apply to EOP RHU units as well.

**(2) Clinical Services**
  (A) Intake Assessment
    1. The Senior Psychologist Supervisor or designee shall assign a PC for each patient in an EOP RHU. The PC shall complete an initial evaluation of the patient, including a review of the patient's mental health history and an interview in a timeframe clinically determined appropriate but not more than five calendar days after arrival in the EOP RHU
    2. For all patients placed in an EOP RHU, a psychiatrist shall complete an initial psychiatry evaluation no later than 10 calendar days after arrival in the EOP RHU and before the initial IDTT.
    3. The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after arrival in the EOP RHU.
    4. The PC and other IDTT members shall do a comprehensive mental health clinical assessment before the initial IDTT. This assessment shall include, at minimum:
      a. Comprehensive review of the Strategic Offender Management System (SOMS) and health record of mental health treatment needs, including prior placements.
      b. Current mental status examination, including diagnosis and level of functioning.
      c. Daily observation by mental health and custody staff to assess Activities of Daily Living and social interactions.
      d. Review of disciplinary history and custodial placements by the assigned Correctional Counselor or Lieutenant.
      e. Review of specific risk factors for violence toward self and others. This includes a suicide risk assessment if indicated.
    5. The IDTT will decide on the appropriate placement. This decision includes the following options:
      a. Referral for inpatient care.
      b. Placement in an MHCB (short-term crisis stabilization, including initiating involuntary medications when required).
      c. Referral to the classification committee recommending alternative RHU placement if the patient qualifies for CCCMS care or has been discharged from the MHSDS.

      d. If the RHU term has been served, placement at the appropriate level of care, including EOP.

(B) Interdisciplinary Treatment Team
1. The EOP RHU Senior Psychologist Supervisor or designee shall chair the EOP RHU IDTT. All clinical decisions regarding intake, treatment planning, re-justification of level of care, and discharge are made by the EOP RHU IDTT. The IDTT is composed of, at minimum:
   a. Senior Psychologist Supervisor or designee.
   b. Assigned Psychiatrist or designee.
   c. Correctional Counselor I or Correctional Counselor II.
   d. Assigned PC or designee.
   e. Licensed Psychiatric Technician (PT)Patient. The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT. The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.
2. Other EOP RHU staff may attend, such as a recreation therapist, nursing staff, Sergeant and correctional officers, and custody representatives.
3. A representative from the IDTT (assigned PC or designee) shall be present in all classification hearings regarding patients to provide mental health input into the classification decision-making process. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist to represent the assigned psychiatrist or primary clinician to attend ICC meetings to provide mental health input. The designee must:
   a. Consult the patient's mental health treatment records.
   b. Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.
   c. Be up to date on all required training related to removing patients from MAX custody.
   d. The representative from the IDTT shall present the recommendations of the IDTT with respect to the case. The recommendations may include requesting referral to an EOP (non-RHU) program for patients who are involved in non-violent incidents and determined not to be a risk to others.
4. After the initial IDTT, patients will be evaluated by the IDTT minimally at 60 and 120 calendar days after arrival at RHU and at least every 90 calendar days thereafter or sooner, whenever there is a significant change in level of functioning.
   a. The IDTT will evaluate treatment progress, develop and update the treatment plan, with input from the patient and review discharge goals. The initial treatment plan and all subsequent treatment plans shall include a discharge plan and behavioral goals to discharge the patient from the EOP to a lower level of care if possible.
   b. The assigned PC, or designee, will present a case summary with recommendations for continued treatment or discharge.
   c. The results of all IDTT reviews, decisions, and recommendations will be documented in the health record.
   d. Initial placements and level of care changes are documented in EHRS.

(C) Length of Stay More Than 90 Days
1. Patients housed in EOP RHU for more than 90 calendar days shall be reviewed every 30 calendar days outside of the ICC process by the Facility Captain and Correctional Counselor II. The status of each case, with detailed information regarding the reasons for delays in the referral, disciplinary, classification, and transfer process, shall be compiled and reviewed by the Warden or designee (Chief Deputy Warden or Associate Warden for Health Care). The Warden shall ensure that reviewers take action to resolve any issues that impact the length of stay in RHU.
2. Patients housed in EOP RHU for more than 90 days who postpone an RVR hearing pending referral to the District Attorney shall be reviewed for alternate housing. If the time housed in EOP RHU is equivalent to the projected RHU term (if the patient has been found guilty of the RVR), the patient shall be released to a general population setting. The Warden or designee shall contact the District Attorney to discuss expediting pending cases.

(D) Primary Clinician

Each patient in an EOP RHU shall be assigned a PC. The PC will maintain active clinical involvement with the patient, as well as perform casework functions, including the following:
1. Documentation of initial treatment plan and updates.

2. Regular clinical contact with assigned patients.
3. Ensuring scheduling of periodic IDTT reviews.
4. Attendance at IDTT reviews of the patient.
5. Referral to and coordination with the assigned psychiatrist
6. Participation in ICC to provide mental health input.
7. Liaison with custody and correctional counseling staff regarding overall management of patients.
8. Group therapy as defined in the inmate-patient's treatment plan.
9. Crisis intervention and referral as needed.
10. Review of weekly summary of clinical rounds and document this review in the EHRS.
11. Response to California Department of Corrections and Rehabilitation (CDCR) inquiries regarding the patient's clinical status.

(D) Psychiatrist
Each patient in an EOP RHU shall have an assigned psychiatrist.

**(3) Treatment Program**
(A) Each EOP RHU shall have an Operational Plan that describes its treatment program. The Operational Plan shall include a behavioral incentive program (BIP) with criteria for achieving and retaining each level.
Refer to the Operational Plan at each institution for a complete description.

(B) Treatment Plan
1. Each patient in an EOP RHU shall have a Master Treatment Plan within the EHRS.
2. Within the EOP RHU, each patient shall have an individualized treatment plan that provides treatment consistent with the patient's clinical needs.
3. The treatment plan shall be reviewed by the IDTT 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter or whenever a significant change in the patient's functioning requires a change in the treatment plan.
4. Each treatment intervention shall indicate outcome objectives and specific, measurable behavioral goals.
5. Discharge from the EOP or transfer to another level of care shall be documented in the EHRS.
6. Each patient will be offered at least ten hours per week of structured therapeutic activities as approved by the RHU IDTT.
   a. It is recognized that not all patients can participate in or benefit from ten hours per week of treatment services. For some patients, ten hours per week may be clinically contraindicated.
   b. For those patients scheduled for fewer than ten hours per week of treatment services, the PC shall present the case and recommended treatment program to the IDTT for approval. The treatment plan must include a detailed description of the diagnosis, problems, level of functioning, medication compliance, and rationale for scheduling fewer than ten hours.
   c. For patients scheduled for fewer than ten hours of treatment activities per week, the IDTT shall meet at least every 30 calendar days and be responsible for reviewing and increasing the treatment activities and considering a higher level of care as appropriate.

(C) Treatment
1. Required treatment within an EOP RHU includes the following:
   a. Individual treatment planning involves a meeting of the IDTT and the patient 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter to identify treatment needs, develop treatment plans, assess treatment progress, and update or revise individual treatment plans in accordance with the patient's needs and progress.
   b. Weekly (assigned or covering) PC contact.
   c. Daily rounding by the PT seven days a week.
   d. A psychiatrist shall evaluate each EOP patient at least every 30 calendar days.
      Refer to the Health Care Department Operations Manual regarding medication administration procedures, medication refusals, Directly Observed Therapy, medication adherence, and other aspects of medication administration. Refer to the CCR, Title 15, section 3999.344, for information on involuntary medication administration.
2. Other treatment activities may include the following:
   a. Individual psychotherapy.
   b. Group therapy, such as anger management, stress management, offense-related issues, and current events.
   c. Medication education.

- d. Crisis intervention.
- e. Pre-release planning.
- f. Monitoring and assistance with daily living skills.
- g. Cognitive Behavioral Therapy directed to specific behaviors or symptoms.
- h. Recreational activities both within cell and out of cell.
- i. Vocational and pre-vocational training, as available.
- j. Education as available.
- k. 12-Step Program and other substance use treatment.

(D) Patient Refusal to Attend Treatment
1. Within one week of the identification of a patient who has refused more than 50 percent of structured therapeutic treatment hours offered and attended an average of less than five hours per week of offered structured treatment hours in a two-month period, the IDTT, clinical staff, or other custody staff must work together to determine the reason for treatment refusal.
2. For patients on a modified treatment program, attendance at 50 percent or less of the required treatment hours specified in the modified treatment plan in a two-month period shall trigger the review. The Correctional Lieutenant responsible for the EOP RHU and the PC shall work collaboratively to evaluate the circumstances underlying the patient's refusal to attend the scheduled treatment sessions offered.
3. If a specific cause for the patient's refusal can be identified and reasonably resolved, custody and mental health staff shall work with the patient to resolve such issues.
4. If the patient identifies barriers related to security policies as a cause for their refusal to attend treatment, custody, and mental health staff shall jointly document their findings on a CDC 128-B, General Chrono, and submit to both the Chief Deputy Warden and CMH.
   - a. The Chief Deputy Warden and CMH shall confer and consider various methods to encourage the patient to attend treatment, including viable alternatives to the identified security policies that do not jeopardize the unit's security or the safety of staff or patients.
   - b. Should the Chief Deputy Warden and CMH disagree on the proper resolution of the matter, the issue shall be elevated to the Warden and CEO for their review and resolution.
   - c. For patients who refuse more than 50% of offered treatment during a one-week period, the PC shall:
     1) Interact with these patients daily on scheduled work days (instead of weekly)
     2) Include in the treatment plan efforts to reduce resistance to participation in group therapy.
     3) Discuss these patients during the RHU second and third watch huddles with custody
     4) Consider referral of patient to higher levels of care and document the results of this consideration in the Master Treatment Plan.

**(4) Out-of-Cell Time**
1. All patients assigned to an EOP RHU shall be offered a minimum of twenty hours out of cell time each week. At least ten hours of out-of-cell exercise shall be offered each week, which may include supervised recreational therapy. EOP RHU patients are also offered ten hours of structured therapeutic activities each week.
   - a. Structured mental health treatment hours attended by EOP patients shall earn credits that can be applied towards a reduction of their RHU term.
2. The ICC shall establish a patient's yard designation with input from the IDTT as part of the individual treatment plan.

**(5) Discharge Procedures**
(A) At the time of admission to the EOP RHU, a preliminary discharge plan shall be developed based on the clinical and security needs of the patient as well as the patient's EOP RHU term.
(B) Patients admitted to an EOP RHU may be discharged to a CCCMS RHU to complete their term when they no longer require an EOP level of care.
(C) Patients who complete their RHU term and still require EOP care will be discharged to a GP EOP for continuing mental health treatment.
1. The EOP RHU PC will document recommendations regarding the patient's specific treatment needs, including any concerns about facilitating the patient's successful transition to general population.
2. The receiving EOP IDTT will consider documentation by the EOP RHU clinician in developing the patient's treatment plan.
3. The treatment plan for patients transferred from RHU to GP-EOP shall include services provided to aid in the transition to the GP environment.

(D) Patients may be referred to an inpatient program as clinically indicated.
(E) Treatment recommendations upon discharge from an EOP RHU shall be made by the IDTT and documented in the EHRS.
(F) The ICC shall review the discharge recommendations of the IDTT, considering both the clinical and custody needs of the patient. The decision of the ICC shall be documented on a CDCR 128-G Chrono.

**References**
- California Code of Regulations, Title 15, Division 3, Subchapter 4, Article 7, sections 3335 – 3344.
- Mental Health Services Delivery System Program Guide, 2021 Revision Statewide Mental Health Program, Monitoring Requirements for Patients in the Developmental Disability Program Placed in Restricted Housing Memorandum, October 14, 2022
- Operational Plan for Armstrong Class Members Housed in Administrative Segregation Memorandum, December 17, 2012