| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>MARGOT MENDELSON – 268583<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Telephone: (510) 280-2621<br><br>CLAUDIA CENTER – 158255<br>DISABILITY RIGHTS EDUCATION<br>AND DEFENSE FUND, INC.<br>Ed Roberts Campus<br>3075 Adeline Street, Suite 210<br>Berkeley, California 94703-2578<br>Telephone: (510) 644-2555 | MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>LISA ELLS – 243657<br>JENNY S. YELIN – 273601<br>THOMAS NOLAN – 169692<br>MICHAEL S. NUNEZ – 280535<br>MARC J. SHINN-KRANTZ – 312968<br>ALEXANDER GOURSE – 321631<br>ADRIENNE PON HARROLD – 326640<br>AMY XU – 330707<br>ADRIENNE SPIEGEL – 330482<br>BENJAMIN W. HOLSTON – 341439<br>MAYA E. CAMPBELL – 345180<br>LUMA KHABBAZ – 351492<br>JARED MILLER – 353641<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California 94105-1738<br>Telephone: (415) 433-6830 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CLARIFY ORDER RE: PIP MINIMUM TREATMENT STANDARDS**<br><br>Judge: Hon. Kimberly J. Mueller |

[4485561.4]

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CLARIFY ORDER RE: PIP MINIMUM TREATMENT STANDARDS

The Parties' disagreement over the meaning of the Court's August 23, 2023 Order ("August 2023 Order") is simpler than it looks. There is no dispute that, in 2021 and 2022, the Special Master identified four categories of deficiencies in the care provided to *Coleman* class members in CDCR's Psychiatric Inpatient Programs ("PIPs") and recommended that the Court order Defendants to adopt a plan to establish minimum treatment standards to remedy those deficiencies and track compliance thereto. Nor is there any dispute that, in January 2023, the Court ordered Defendants to develop and implement a plan "to address the issues" identified in the Special Master's recommendation. *See* ECF No. 8226 at 3 n.2. Finally, there is no dispute that, in response to the Court's order, Defendants filed a proposed plan that provided minimum treatment standards for only three of the four categories of deficiencies identified by the Special Master. The question before the Court is whether it intended for its August 2023 Order to *correct* that omission from Defendants' proposed plan, as Plaintiffs contend, or whether the Court intended to *replace* Defendants' obligation to address all four deficiencies with a narrower obligation that *only* requires them to address the fourth deficiency, as Defendants contend. Because neither the text nor the history of the August 2023 Order supports Defendants' interpretation, the Court should grant Plaintiffs' current motion in full.

I. **NOTHING IN THE TEXT OF THE AUGUST 2023 ORDER SUGGESTS THAT THE COURT REJECTED THE OTHER THREE MINIMUM TREATMENT STANDARDS IN DEFENDANTS' COURT-ORDERED PLAN.**

Defendants repeatedly assert that Plaintiffs asked the Court to reject each and every element of the plan Defendants filed with the Court in March 2023 ("the Plan"), and that the August 2023 Order granted that relief in full. *See* Defs' Opposition, ECF No. 8226 at 1, 3, 4-5, 8. That is not accurate. In addition to demanding a standard requiring Defendants to offer at least 20-hours of structured treatment each week, Plaintiffs expressly asked the Court to reject the proposed 10-hour minimum for weekly unstructured out-of-cell time in Defendants' Plan and instead impose a 20-hour weekly minimum. *See, e.g.*, Pls.' Reply, ECF No. 7838 at 2. The August 2023 Order did not do so.

  Further, Plaintiffs' Motion did not argue that the Plan's requirements relating to treatment planning and individual clinical contacts were inadequate or ask for more intensive standards to be imposed. *See generally* ECF No. 7812; ECF No. 7838. Nor did Plaintiffs ask the Court to reject those aspects of the Plan and replace them with nothing. *Id.* Although Plaintiffs stated that the Court should "reject" Defendants' Plan, that request was explicitly premised on the Plan's omission of any standard requiring a weekly minimum number of structured group treatment hours and its inclusion of an insufficient number of weekly unstructured out-of-cell hours, which, according to Plaintiffs, rendered the Plan inadequate for the purpose of remedying the entirety of the constitutional violation. *See, e.g.*, ECF No. 7812 at 3, 22; ECF No. 7838 at 2. Indeed, in both their Motion and their Reply brief, Plaintiffs repeatedly and expressly asked for an order requiring Defendants to "revise" the Plan to include such requirements—not to eliminate any minimum treatment requirements whatsoever for the other categories of treatment Plaintiffs did not challenge. *See* ECF No. 7812 at 3 ("The Court should order Defendants to revise their treatment standards to provide at least 20 hours of structured therapeutic treatment and 20 hours of unstructured out-of-cell activities per week to the patients in CDCR's psychiatric inpatient units."); *id.* at 22 ("The Court should order Defendants to revise their treatment standards for the PIP so that they provide, at a minimum, 20 hours of structured therapeutic treatment and 20 hours of unstructured out-of-cell activities per week."); ECF No. 7838 at 2 ("The Court should order Defendants to revise their Plan to provide PIP patients with a minimum of 20 hours of structured treatment and 20 hours of unstructured out-of-cell activities per week.").

  Even if Defendants were right about the scope of relief Plaintiffs sought—and they are not—there is nothing in the text of the August 2023 Order that suggests the Court granted that relief in full or otherwise directed Defendants to adopt the 20-hour group-treatment minimum "instead" of the rest of the elements in Defendants' Plan, as Defendants repeatedly assert. *See, e.g.*, ECF No. 8226 at 3, 6, 8. Rather, the August 2023 Order states that Plaintiffs' motion was granted "to that extent consistent with this order."

ECF No. 7924 at 10.  The Order does not discuss any of the other proposed standards in Defendants' Plan at all, including the minimum out-of-cell time requirement Plaintiffs expressly challenged in their Motion.  As Defendants concede, the Order "simply directed CDCR to implement the [group] treatment hours set out in DSH's CQI process."  ECF No. 8226 at 2; *see generally* ECF no. 7924.  That is entirely consistent with Plaintiffs' interpretation of the Order—it requires Defendants to correct their *omission* of one of the four minimum treatment standards called for in the Special Master's recommendation, not to jettison the rest of the Plan that responds to other specifically enumerated treatment deficiencies not addressed by the 20-hour weekly minimum structured treatment standard.  Nothing in the August 2023 Order requires the Court to endorse Defendants' nonsensical interpretation.

II. **THE HISTORY AND PURPOSE OF THE AUGUST 2023 ORDER SUPPORT PLAINTIFFS' INTERPRETATION.**

The text of the August 2023 Order is silent on the question of whether Defendants must implement and track their compliance with the standards in the Plan relating to treatment planning, individual clinical contacts, and unstructured-out-of-cell treatment.  But the history and purpose of the Order weigh heavily in favor of Plaintiffs' interpretation, notwithstanding Defendants' unsupported assertions to the contrary.  *See* ECF No. 8207 at 2-6.  The Court therefore should grant Plaintiffs' Motion in full.  *See Salazar v. Buono*, 559 U.S. 700, 762 (2010) (Breyer, J., dissenting) ("[A] court should construe the scope of an injunction in light of its purpose and history, in other words, 'what the decree was really designed to accomplish.'").

Defendants offer distractions and red herrings instead of a coherent history of the August 2023 Order.  For one thing, Defendants' suggestion that it would be "untenable," "unprecedented," or "excessive" to require "thirty hours of treatment" per week (a figure that includes the 10-hours of unstructured out-of-cell time from the Plan) is preposterous.  ECF No. 8226 at 6.  Thirty hours per week means just over four hours of out-of-cell time per day.  Plaintiffs' Motion was supported by ample evidence that *forty* hours of treatment

per week represents the bare minimum for an inpatient level of care. *See, e.g.*, ECF No. 7812 at 17-18, 19-24. Defendants' suggestion that patients at an inpatient psychiatric hospital should, as a general practice, receive only half that amount—and be locked in their cells for the remaining *twenty-one hours per day*—is outrageous.

The claim that Plaintiffs mischaracterize the history of the August 2023 Order, meanwhile, is itself highly misleading. *See* ECF No. 8226 at 3. Contrary to Defendants' assertion, it is indisputably true that they failed to follow through on their promise to voluntarily develop minimum treatment standards. . The Court itself described Defendants' actions this way in the August 2023 Order. ECF No. 7924 at 5. And even if it were true that the Special Master refused to clarify his recommendations—a claim for which Defendants cite no evidence whatsoever, *see* ECF No. 8226 at 3—nothing prevented Defendants from proposing standards consistent with their understanding of those recommendations and then revising them in the event the Special Master disagreed with that understanding. Instead, Defendants deliberately exploited what was at most a minor ambiguity in the recommendations[1] as an excuse to do no nothing at all, even after the Court adopted the (unambiguous, scathing) factual findings underlying those recommendations in full. Defendants do not explain why their supposed confusion about the Special Master's recommendation is relevant to the meaning of the Court's August 2023 Order in any event.

---

[1] The Special Master recommended that the Court Order Defendants to "develop plans within 90 days to provide structured therapeutic activities, unstructured out-of-cell activities, treatment planning, and individual treatment, including for maximum custody patients consistent with a psychiatric inpatient level of care, as well as implement a system for tracking and reporting adherence to the standards developed." ECF No. 7039 at 118. Defendants raised numerous objections to this recommendation, only one of which can plausibly be characterized as a "request for clarification." See ECF No. 7051 at 8-10. This "request" asserted, in relevant part, that the recommendation "does not indicate whether it calls for a specific plan to address every criticism in the report and only with respect to those programs that fall short, or whether it is a more general recommendation for systematic improvements at all of the inpatient programs." *Id.* at 9; *see also* ECF No. 7051-1 at 11, ECF No. 7559 at 3-4, and ECF No. 7555-1 at 12-13 (raising an identical objection to the Special Master's recommendations the following year).

1    Defendants' also accuse Plaintiffs of "misrepresenting the record" and "attribut[ing]
2 statements to Defendants that were never made." *See* ECF No. 8226 at 5, 7.  But Plaintiffs
3 did not misrepresent or misattribute anything.  The alleged "misrepresentation" consists of
4 a straightforward description of what Defendants assume the August 2023 Order means—
5 i.e., that "the August 2023 order *implicitly* repealed their obligation to address the serious
6 deficiencies the Special Master repeatedly identified…relating to insufficient clinical
7 contacts, delayed IDTTs, and inadequate treatment planning." *See id.* at 5 (quoting ECF
8 No. 8207 at 8:6-10).  Defendants claim they "have not stated anything close" to this, but
9 their entire argument is premised on this assumption.  *Id.*  There is no reason for
10 Defendants to oppose Plaintiffs' current request for clarification if they concede that the
11 August 2023 Order did *not* eliminate their obligation to adopt standards for treatment
12 planning, individual clinical contacts, and unstructured out-of-cell activities in addition to
13 structured group treatment.  The Court can simply grant Plaintiffs' Motion as unopposed.

14    So too with Defendants' assertion that Plaintiffs "attribute statements to Defendants
15 that were never made." *Id.* at 7.  Defendants claim they have "never" taken the position
16 that the August 2023 Order does not require them to track compliance with their own
17 proposed standards for treatment planning, individual clinical contacts, and unstructured
18 out-of-cell time.  *Id.*  This is not true.  Although Defendants have circulated a draft policy
19 that includes all of the standards from their Plan plus the 20 hours of structured treatment
20 required by the August 2023 Order (*see* ECF No. 8207 at 5-6; Reply Declaration of
21 Alexander Gourse ("Gourse Reply Decl.") ¶ 2 & Ex. A),[2] in an email to Plaintiffs' counsel
22 dated February 23, 2024, Defendants asserted that the only element of this draft policy that
23 is "required by court order" and thus "part of the *Coleman* remedy" is the element
24 requiring Defendants to offer PIP patients at least 20 hours of structured group treatment
25 each week.  *See* ECF No. 8207-1 at 5-6.  On March 14, 2024, Defendants again confirmed

---

[2] Defendants circulated an updated draft of this policy on the afternoon of May 9, 2024 – the due date of this Reply – which Plaintiffs are in the process of reviewing.

that they "will <u>only</u> create an indicator that measures whether PIP patients were offered 20 hours of treatment" because this is all they believe the Court's orders require. ECF No. 8207-1 at 4 (emphasis added).

The Court should not credit Defendants' disingenuous assertion in their opposition brief that they have never taken this position; as with Plaintiffs' supposed "misrepresentation" discussed above, there would be no reason for Defendants to oppose Plaintiffs' Motion if this were true. Defendants are clearly trying to have their cake and eat it too by adopting a remedial policy but disclaiming any enforceable obligation to comply with (or track their compliance with) any element of it besides the 20-hour group treatment standard. The Court must clarify that the August 2023 Order does not eliminate Defendants' obligation to comply with and track their compliance with the other elements in the March 2023 Plan they filed with the Court to address the uncontested, longstanding PIP treatment deficiencies; it requires them to comply with and track their compliance with the 20-hour structured treatment standard in the DSH CQIT reports *as well as* the standards in that Plan.

## CONCLUSION

The Court should grant Plaintiffs' Motion to Clarify in full because both the text and history of the August 2023 Order show that it requires Defendants to adopt and track compliance with the 20-hour minimum standard for structured group treatment *in addition* to (not instead of) the standards for individual clinical contacts, treatment planning, and unstructured out-of-cell activities presented in the remedial Plan they filed with the Court.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# CERTIFICATION

Plaintiffs' counsel certifies that he reviewed the following orders in preparing this filing: ECF Nos. 7924, 7697.

DATED: May 9, 2024

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Alexander Gourse*
    Alexander Gourse

Attorneys for Plaintiffs