UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On December 22, 2023, the Special Master filed a monitoring report on the delivery of mental health care in California Department of Corrections and Rehabilitation (CDCR) Enhanced Outpatient Programs (EOP), as part of his comprehensive thirtieth round of monitoring in this action. ECF No. 8095 (30C Report). The 30C Report reviews EOP care at the 15 prison institutions where CDCR operates EOP programs. *Id*. at 11.[1] The Special Master makes numerous findings of inadequate mental health care, attributing the inadequacy largely to ongoing inadequate mental health staffing levels, "particularly among primary clinicians," throughout CDCR's Mental Health Services Delivery System (MHSDS). *Id*. at 137-140. Because "[d]efendants' ongoing noncompliance with the Court's orders related to mental health staffing is

---

[1] Citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to page numbers assigned by ECF and located in the upper right hand corner of the page.

1

before the Court," the Special Master makes no recommendations or requests for court orders. *Id*. at 141. On March 8, 2024, the court issued a tentative ruling informing defendants it intended to hold some or all of them in civil contempt for longstanding violations of court orders to remedy ongoing mental health understaffing and to "impose civil fines as sanctions until defendants achieve compliance in delivering critically necessary, long overdue staffing relief for members of the plaintiff class." Mar. 8, 2024 Bench Order at 2, ECF No. 8147. The court referred the matter of staffing to a Ninth Circuit Mediator for a period of sixty days, *id*. at 8, and is now poised to issue a final order of contempt pending receipt of supplemental briefing from the parties, *see* May 14, 2024 Minute Order, ECF No. 8235.

On January 12, 2024, after receiving an extension of time, Dec. 28, 2023 Order, ECF No. 8103, defendants filed objections to the 30C Report, ECF No. 8108, and on February 1, 2024, plaintiffs filed a response to defendants' objections, ECF No. 8122. Defendants raise several objections to findings in the 30C Report; plaintiffs contend all the objections lack merit.

Defendants' objections consist of arguments that violate longstanding orders in this case, that disregard and fail to acknowledge the Special Master's response to an identical objection defendants raised in response to his draft 30C Report, that are without factual basis, and/or that attack neither factual findings nor conclusions of law offered by the Special Master. Fundamentally, the objections do not advance the fair resolution of important issues at stake in this litigation.

Defendants first object to the 30C Report on the grounds that it is based on Program Guide Standards rather than standards set by the National Commission on Correctional Health Care (NCCHC) and they "object to the Special Master's characterization that requirements set forth in the Program Guide are necessarily tethered to the constitutional minimum." ECF No. 8108 at 2-4. It is settled that the "Program Guide is grounded in the requirements of the Eighth Amendment" and that the Special Master's reports "to the court on defendants' compliance with the provisions of the . . . Program Guide [are] also grounded in the requirements of the Eighth Amendment and . . . precisely in accordance with his duties." Feb. 28, 2013 Order at 3, ECF No. 4361; *see also Coleman v. Brown*, 938 F.Supp.2d 955, 962 n.5, 973 (E. D. Cal. 2013); *see also*

1  *Coleman v.* Brown, 756 Fed. Appx. 677, 679 (9th Cir. 2018) ("the Program Guide sets out the
2  objective standards that the Constitution requires" for the delivery of adequate mental health care
3  to the plaintiff class).  The principle—that "the requirements of the Program Guide [are] a
4  constitutional minimum"—is "the law of the case." *Coleman v.* Brown, 756 Fed. App'x at 679.
5  The court has several times, in the face of arguments raised by defendants, articulated the
6  application of the law of the case doctrine in this case in particular.  *See*, *e.g.*, *Coleman v. Brown*,
7  28 F. Supp. 3d 1068, 1077 (E. D. Cal. 2014); *see also* Oct. 10, 2017 Order at 17, ECF No. 5711;
8  *see also* April 12, 2023 Order at 9, ECF No. 7807.[2]  The court also has cautioned all counsel that
9  "any party seeking relief from this court, including from any existing order of this court, must
10 first file a request for leave to file a motion, describing with particularity the relief to be sought
11 and the steps the party has taken" to exhaust meet and confer requirements and communicate with
12 the Special Master.  Dec. 24, 2020 Order at 2, ECF No. 7003.  In making their first objection,
13 defendants disregard these and other longstanding orders and fail to comply with the specific
14 court order setting out the proper procedure for seeking relief from prior court orders.  This
15 objection is summarily overruled.
16     Defendants next object that the Special Master "improperly parse[s] . . . staffing data to
17 dramatize vacancy rates." ECF No. 8108 at 4.  Defendants base this objection on two assertions:
18 that the Special Master has improperly separated vacancy rates among "civil service line staff"
19 from "overall vacancy rates including registry staff, " *id*. (citing ECF No. 8095 at 32, 54), and
20 that the 30C Report "misstates the 'functional' vacancy rates for staff psychiatrists by not
21 including" psychiatric nurse practitioners (PNPs) and "separat[ing] telepsychiatry positions from
22 on-site psychiatry positions," *id*. at 5.  The first part of this objection flies in the face of the fact
23 that defendants themselves report both civil service and functional vacancy rates to the court in
24 their monthly vacancy reports, *see*, *e.g.*, ECF No. 8142 at 5-9, and the additional fact that the 30C
25 Monitoring Report plainly and clearly reports overall vacancy rates (also referred to as
26 "functional vacancy rates"), expressly using those vacancy rates as the basis for the Special

---

[2] This order is pending on appeal at the United States Court of Appeals for the Ninth Circuit.  *See* Notice of Appeal, May 11, 2023, ECF No. 7834.

Master's crucial finding that "except for staff psychiatry, overall vacancy rates for all disciplines for the 15 EOP institutions exceeded ten percent," ECF No. 8095 at 54.  The second part of this objection is, as plaintiffs correctly observe, *see* ECF No. 8122 at 9-10, a reiteration of the objection defendants raised to the Special Master's draft 30C report and which the Special Master responded to by correcting the 30C Report before he filed it with the court.  *See* ECF No. 8095 at 19.  Defendants do not acknowledge the Special Master's response.  *See* ECF No. 8108 at 4-5.  Both aspects of this objection are frivolous and are overruled.

Defendants next object to the Special Master's reiteration of his observation from the preceding monitoring round that it may be time for "CDCR to consider targeted EOP population reductions and 'potential clustering of higher-acuity mentally ill inmates at those institutions where it has been shown that mental health staff can be more readily attracted and retained.'" ECF No. 8095 at 44-45 (quoting ECF No. 7555 at 164) (in turn quoting Aug. 9, 2016 Order at 5, ECF No. 5477).  Defendants "request that any reference to clustering be stricken from any order adopting the findings in the Report as irrelevant and not supported by facts."  ECF No. 8018 at 6.  This is not an objection to either a finding of fact or a conclusion of law.  *Cf*. ECF No. 640 at 8.  It is summarily overruled.

In their fourth objection, defendants contend the 30C Report "contains inaccurate statements about defendants' telemental health policy."  ECF No. 8108 at 6.  Specifically, defendants challenge the statement in the Report that "[c]oncerningly, defendants issue the policy to field prior to resolving plaintiffs' and the Special Master's experts' questions and concerns about the policy," contending the statement "lacks context."  *Id*. at 6 (quoting Report at 47).  Defendants also challenge the Report's statement referencing CDCR's Telemental Health Policy's "facilitation of the replacement of on-site services for EOPs (as opposed to the Telepsychiatry Policy, where remote services only 'supplement' on-site services in EOPs)," contending it "is a misrepresentation of the Telemental Health Policy since CDCR has never indicated it would stop on-site recruitment."  *Id*. at 7 (quoting Report at 48),  While defendants argue about the context in which the Report makes the two challenged statements, they present no

/////

4

evidence to refute the accuracy of those statements. Even a brief review of the entire context in which the statements appear discloses the invalidity of this objection. This objection is overruled.

      Defendants next object to terms the Special Master uses to report on the quality of mental health care defendants provide as measured by Program Guide requirements. ECF No. 8108 at 7. As the Special Master notes and plaintiffs show, the court has already rejected this objection. April 12, 2023 Order at 9-10, ECF No. 7808 (quoted in ECF No. 8095 at 23 and ECF No. 8122 at 14). Defendants also contend the Report does not "include detailed information regarding the methodology or criteria the Special Master used to make these determinations." ECF No. 8108 at 7. The court has repeatedly rejected this position, which defendants raise yet again nonetheless, *see* ECF No. 7808 at 5; *see also* May 24, 2023 Order at 7, ECF No. 7847. This objection is summarily overruled.

      Defendants' sixth objection is to what they contend is "application of an arbitrary compliance threshold" to certain "sub-measures and composite measures" within the Medication Administration Process Improvement Program (MAPIP). ECF No. 8108 at 10. It is settled that the proper focus of monitoring in this action is "tracking compliance . . . from zero percent to 100 percent" and that "[t]he court will resolve ultimate questions of constitutional compliance." ECF No. 7847 at 9 (citing July 1, 2021 Order at 4, ECF No. 7216); *see also* Dec. 17, 2020 Order at 9, ECF No. 6996 ("With the court's approval, the Special Master has for years used a 90 percent compliance rate as the target for monitoring most of the key measures in [the comprehensive set of remedial] plans" "finally developed in this action."). To the extent defendants' objection seeks to exclude patient refusals from certain MAPIP measures, the 30C Report is based on data defendants themselves provide to the Special Master. *See*, *e.g.*, ECF No. 8095 at 84-85. Moreover, as the Special Master correctly observes, "many MAPIP measures are going through the data remediation process . . . and defendants' concerns are best addressed in that forum." ECF No. 8095 at 24. Once again, defendants' objection ignores well-established principles for reporting compliance in this case. It is overruled.

      Defendants' seventh objection, to the Special Master's statement in the 30C Report that "[t]he Program Guide provides for a clinical stay of up to 10 days in the MHCB," ECF No. 8018

at 12, again repeats an objection the court has previously overruled, *see* ECF No. 8095 at 28 (citing Apr. 13, 2023 Order at 9, ECF No. 7808).  The other components of this objection are, as defendants acknowledge, currently under review in data remediation.  To the extent defendants' object that the Special Master does not understand how "offered hours" are calculated, the objection is belied by statements in the 30C Report.  *See* ECF No. 8095 at 25 n.10.  This objection is overruled.

Finally, defendants request a court order directing the Special Master to "use . . . remediated data and on-site audits, including sample size, audit questions, and scoring, in all future monitoring rounds." ECF No. 8108 at 12.  Defendants acknowledge the Special Master's observation in the 30C Report that he in fact "expects Defendants to provide remediated data derived from the provisionally approved key indicators upon conclusion of the data remediation process, subject to further instruction from the Court." *Id*. (quoting ECF No. 8095 at 31).  The remainder of the request is a thinly disguised reiteration of previous defense requests to require the Special Master to provide specific material related to his monitoring, which the court has rejected.  *See* Aug. 25, 2021 Order, ECF No. 7283 at 4-6; *see also* Apr. 13, 2023 Order, ECF No. 7808 at 5; May 24, 2023 Order, ECF No. 7847, at 7-8.  Overall, this request misperceives the processes by which data remediation will be completed and the finalized CQIT tool will be implemented, all of which the court has established in prior orders.  *See, e.g.*, Nov. 16, 2023 Order, ECF No. 8069 and orders cited therein.  The request is denied.

As explained above, the bulk of defendants' objections waste the valuable time and limited resources of all involved in this complex litigation, including those of the Special Master and the court itself.  This need not be countenanced.  *See* Aug. 30, 2012 Order, ECF No. 4232 at 4 n.2 ("The Special Master's time is a resource that going forward need not be spent on objections that have been raised. . . .").  The objections also point to a recurring pattern of defendants' disregard for this court's orders, which appears to be either willful or a significant derogation of duty on the part of counsel.

Rule 11 of the Federal Rules of Civil Procedure authorizes the court, after notice and an opportunity to respond, to "impose an appropriate sanction on any attorney, law firm, or party"

who violates the requirements of Rule 11(b).³  As the court recently explained in a separate order, it has "inherent" authority to manage matters before it "so as to achieve the orderly and expeditious disposition of cases." Mar. 6, 2024 Order at 5, ECF No. 8144 (quoting *Dietz v. Bouldin*, 579 U.S. 820, 823-24 (2016) (internal quotation omitted)).  Counsel are cautioned that going forward monetary sanctions of $500 per occurrence will be imposed on any counsel who files briefs or objections containing arguments that have been resolved by prior court orders unless counsel seeks and obtains leave of court under established procedures to bring an appropriate motion for relief from those orders.

In accordance with the above, and good cause appearing, IT IS HEREBY ORDERED:

1. Defendants' objections to the Special Master's Thirtieth Round Monitoring Report – Part C, ECF No. 8108, are overruled as explained in this order; and
2. The Special Master's Thirtieth Round Monitoring Report – Part C, ECF No. 8095, is adopted in full.

DATED: May 15, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

³ (b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

   (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

   (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

   (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

   (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11.