1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:   (510) 280-2621

5  CLAUDIA CENTER – 158255
   DISABILITY RIGHTS EDUCATION
6  AND DEFENSE FUND, INC.
   Ed Roberts Campus
7  3075 Adeline Street, Suite 210
   Berkeley, California  94703-2578
8  Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
ADRIENNE PON HARROLD – 326640
AMY XU – 330707
ADRIENNE SPIEGEL – 330482
BENJAMIN W. HOLSTON – 341439
MAYA E. CAMPBELL – 345180
LUMA KHABBAZ – 351492
JARED MILLER – 353641
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

11  Attorneys for Plaintiffs

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15  RALPH COLEMAN, et al.,                    Case No. 2:90-CV-00520-KJM-DB

16          Plaintiffs,                       **PLAINTIFFS' RESPONSE TO
                                              DEFENDANTS' GENERAL
17      v.                                    OBJECTIONS TO SPECIAL
                                              MASTER'S REPORT AND HIS
18  GAVIN NEWSOM, et al.,                     EXPERT'S SIXTH RE-AUDIT OF
                                              CDCR'S SUICIDE PREVENTION
19          Defendants.                       PRACTICES**

20                                            Judge:  Hon. Kimberly J. Mueller

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

I.    THE COURT SHOULD APPLY A CLEAR ERROR STANDARD OF
      REVIEW CONSISTENT WITH THE LONGSTANDING ORDER OF
      REFERENCE ........................................................................................... 1

II.   THE COURT SHOULD OVERRULE EACH OF DEFENDANTS'
      GENERAL OBJECTIONS ...................................................................... 4

      A.    Defendants' Claim That the Filing of the Special Master's Report
            Directly With the Court Was Prejudicial Ignores the Countless
            Opportunities That Defendants Have Had to Demonstrate Compliance ........ 4

      B.    Defendants' Objections to the Special Master Using Compliance
            Thresholds Have Already Been Rejected and Have No Legal Basis.............. 6

      C.    Mr. Hayes Is Not Required to Tie Compliance to Outcomes ........................ 9

      D.    Defendants' Attacks on Mr. Hayes's Methodology and Evidence Fail........ 10

      E.    Mr. Hayes's Recommendations Are Not Vague or Overbroad ................... 13

      F.    Defendants' Complaint About Mr. Hayes Using Metrics That Do Not
            Track the Plain Language of the Recommendations Is an Attempt to
            Evade What They Have Long Been Ordered to Do ..................................... 16

      G.    Defendants' Objection Regarding the Propriety of a Bar Graph Should
            be Overruled as Irrelevant .............................................................................. 19

CONCLUSION................................................................................................... 20

CERTIFICATION .............................................................................................. 20

[4490782.5]

i                          Case No. 2:90-CV-00520-KJM-DB

PLAINTIFFS' RESPONSE TO DEFENDANTS' GENERAL OBJECTIONS TO SPECIAL MASTER'S REPORT
AND HIS EXPERT'S SIXTH RE-AUDIT OF CDCR'S SUICIDE PREVENTION PRACTICES

1

# TABLE OF AUTHORITIES

2

**Page**

3

<u>**CASES**</u>

4

5
*Armstrong v. Brown*,
    768 F.3d 975 (9th Cir. 2014) ................................................................. 7

6
*Balla v. Idaho State Bd. of Corr.*,
    595 F. Supp. 1558 (D. Idaho 1984) ....................................................... 8

7

8
*Coleman v. Brown*,
    756 F. App'x 677 (9th Cir. 2018) .......................................................... 7

9
*Gonzalez v. Arizona*,
    677 F.3d 383 (9th Cir. 2012) ................................................................. 7

10

11
*In re U.S.A. Motel Corp.*,
    450 F.2d 499 (9th Cir. 1971) ................................................................. 4

12
*McCormack v. Hiedeman*,
    694 F.3d 1004 (9th Cir. 2012) ............................................................... 4

13

14
*Miller v. Harbaugh*,
    698 F.3d 956 (7th Cir. 2012) ................................................................. 8

15
*Oil, Chem. & Atomic Workers Int'l Union v. N.L.R.B.*,
    547 F.2d 575 (D.C. Cir. 1976) ............................................................... 4

16

17
*Rouser v. White*,
    825 F.3d 1076 (9th Cir. 2016) ............................................................... 8

18
*Taylor v. Barkes*,
    575 U.S. 822 (2015) ............................................................................... 8

19

20

# OTHER AUTHORITIES

21

22
Hayes, L.M., *Suicide prevention in correctional facilities: Reflections and next steps*, 36 Int'l J. Law & Psychiatry 188-194 (2013) ................................. 10

23
Zhong, S., Senior, M., Yu, R., Perry, A., Hawton, K., Shaw, J., & Fazel, S., *Risk factors for suicide in prisons: a systematic review and meta-analysis*, 6 The Lancet Public Health e164–74 .................................................................... 13

24

25

26

27

28

[4490782.5]                                            ii                               Case No. 2:90-CV-00520-KJM-DB

PLAINTIFFS' RESPONSE TO DEFENDANTS' GENERAL OBJECTIONS TO SPECIAL MASTER'S REPORT
AND HIS EXPERT'S SIXTH RE-AUDIT OF CDCR'S SUICIDE PREVENTION PRACTICES

**INTRODUCTION**

After having failed for nearly a decade to fully implement court-ordered suicide prevention requirements recommended by the Special Master's expert, Lindsay Hayes, Defendants responded to Mr. Hayes's latest audit of Defendants' suicide prevention practices by filing a litany of meritless objections. *See generally* Defendants' Objections to Special Master's Report, ECF No. 8179 (hereinafter "Defendants' Objections"). The parties have already briefed whether some of Defendants' "General Objections" violate the Court's prior orders and are therefore sanctionable. *See* Plaintiffs' Brief Regarding Propriety of Defendants' Objections, ECF No. 8198; Defendants' Response, ECF No. 8208. Whether the Court strikes Defendants' improper objections or overrules them, they should not be sustained. Defendants should not be permitted to wage collateral attacks on long-settled standards, metrics, and orders in a clear attempt to avoid the potential contempt sanctions the Court is contemplating. *See* Feb. 28, 2023 Order, ECF No. 7743 at 3-5.[1] None of Defendants' "General Objections" are appropriate and none prove that the Special Master's findings of fact constitute clear error—the standard by which this Court should review these objections, in accordance with this case's Order of Reference. Dec. 11, 1995 Order, ECF No. 640 at 8. This Court should overrule all eight of them.

**I.    THE COURT SHOULD APPLY A CLEAR ERROR STANDARD OF REVIEW CONSISTENT WITH THE LONGSTANDING ORDER OF REFERENCE**

Defendants claim that the Court must review the Special Master's findings under a *de novo* standard, simply because the Court bypassed the normal draft review process and ordered the Special Master to file his report directly with the Court. Defendants' Objections at 11-12. Defendants' position defies logic and ignores the history of this case. The Court's decision to accelerate the normal procedure put forth in the Order of Reference comes in the context of Defendants' dangerous failure to implement court-ordered suicide prevention measures for nearly a decade, as well as impending contempt

---

[1] Page citations to documents in the docket are based on ECF pagination.

1   proceedings designed to enforce the Court's repeated compliance orders.  *See* Feb. 26,

2   2024 Minute Order, ECF No. 8137; Feb. 28, 2023 Order, ECF No. 7743.  Given the rising

3   suicide rate in CDCR facilities, it is not hyperbole to say that Defendants' immediate

4   implementation of these recommendations is a matter of life and death.  But just because

5   the urgency of this situation compelled the Court to modify one aspect of the Order of

6   Reference does not mean that other aspects of the Order of Reference should be

7   automatically discarded as well.

8        This Court's longstanding practice, as mandated by the Order of Reference, is to

9   accept the Special Master's findings of fact "unless they are clearly erroneous."  Dec. 11,

10  1995 Order, ECF No. 640 at 8.  Defendants cite to language put forth in a 2013 Court

11  order indicating that this standard of review does not apply when compliance reports are

12  filed directly with the Court.  Defendants' Objections at 11 (quoting Nov. 13, 2013 Order,

13  ECF No. 4925 at 2 n.1).  That order appears to be the *only* instance in the 28-plus years

14  since the Order of Reference was issued that this Court did not follow the "clearly

15  erroneous" standard of review, and the cited language came in a footnote on an issue that

16  had not been briefed by either side.

17       On the other hand, there are numerous instances of this Court applying the clear

18  error standard of review even in cases where the Special Master filed a report directly on

19  the docket without first circulating a draft version, all occurring after the 2003 revision of

20  Federal Rule of Civil Procedure 53.  *See* Feb. 1, 2024 Order, ECF No. 8121 at 3, 5 (Court

21  adopting Special Master's Data Remediation Status Report and finding that Defendants

22  failed to demonstrate that the Special Master was "clearly erroneous"); Special Master's

23  Data Remediation Status Report, ECF No. 8011 (filed directly with the Court); July 1,

24  2021 Order, ECF 7216 at 6, 14 (Court adopting Special Master's CQIT Key Indicators

25  Report and finding that Defendants did not meet burden to show that Special Master was

26  "clearly erroneous"); Special Master's CQIT Key Indicators Report, ECF No. 7151 (filed

27  directly with the Court); July 12, 2013 Order, ECF No. 4693 at 5 (Court overruling

28  Defendants' objections to Special Master's First Half 2012 Suicide Report, without any

1  reference to following a *de novo* standard of review); Special Master's First Half 2012

2  Suicide Report, ECF No. 4375 (filed directly with the Court); March 15, 2023 Order, ECF

3  No. 4394 (Court overruling Defendants' objections to Special Master's 2011 Suicide

4  Report, without any reference to following a *de novo* standard of review); Special Master's

5  2011 Suicide Report, ECF No. 4307 (filed directly with the Court); Nov. 18, 2010 Order,

6  ECF No. 3954 at 2, and July 21, 2011 Order, ECF No. 4044 at 8 (Court orders adopting

7  Special Master's recommendations on Defendants' review of suicide prevention practices,

8  without any reference to following a *de novo* standard of review); Special Master's Report

9  on Defendants' Review of Suicide Prevention Practices, ECF No. 3918 (filed directly with

10  the Court).  In fact, in objecting to the Special Master's 2023 Data Remediation Report,

11  Defendants themselves just months ago acknowledged that the standard of review is still

12  "clear error," even though a draft version of that report was not provided to the parties

13  before it was filed with the Court.  *See* Defendants' Objections to the Special Master's

14  Data Remediation Status Remediation Report, ECF No. 8065 at 2, 5, 6 (arguing that

15  various Special Master findings are "clearly erroneous").

16          In addition, Defendants fail to mention that the parties have agreed that no existing

17  aspect of the Order of Reference—including its provisions regarding the clear error

18  standard of review for factual findings—should be altered when the Special Master files a

19  compliance report directly with the Court.  In a 2019 stipulation adopted by the Court, the

20  parties agreed to amend the Order of Reference to provide thirty days to respond to a

21  report that has been filed directly with the Court, because the original Order did not specify

22  a timeframe.  July 29, 2019 Order, ECF No. 6230 at 2-3.  Notably, the Stipulation states

23  that the parties agree that "[n]o other aspect of the Order of Reference is herein

24  modified"—including any standard of review.  *Id.* at 2.  Defendants cannot argue now for a

25  different standard of review than what is in the Order of Reference, particularly since they

26  have continually operated under the assumption that the clear error standard applied and

27  have never moved to modify that requirement in the Order of Reference.

28          Thus, this Court should find that the "clearly erroneous" standard set forth in the

1    Order of Reference applies here, as always.  A finding is "clearly erroneous if, on review

2    of the entire evidence, the reviewing court arrives at the firm conviction that the finding is

3    mistaken." *In re U.S.A. Motel Corp.*, 450 F.2d 499, 503 (9th Cir. 1971); *see also*

4    *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) ("To be clearly erroneous,

5    a decision must strike the court as more than just maybe or probably wrong; it must …

6    strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish."

7    (internal citations and quotation marks omitted)).  The objecting party has the burden of

8    proving clear error.  *See Oil, Chem. & Atomic Workers Int'l Union v. N.L.R.B.*, 547 F.2d

9    575, 580 (D.C. Cir. 1976).  As explained in greater detail below, because Defendants have

10   not met their burden of showing that any of the matters addressed in their "General

11   Objections" are clearly erroneous, the Court should overrule those objections.  Even if this

12   Court were to adopt a *de novo* standard of review in this instance, however, Defendants'

13   objections are still groundless and should be overruled.

14   **II.    THE COURT SHOULD OVERRULE EACH OF DEFENDANTS' GENERAL
            OBJECTIONS**

15
16           **A.    Defendants' Claim That the Filing of the Special Master's Report
                    Directly With the Court Was Prejudicial Ignores the Countless
                    Opportunities That Defendants Have Had to Demonstrate Compliance**
17

18           In Section III(A) of their filing, Defendants contend that they have been prejudiced

19   by the Court's decision to direct the Special Master to file his final report directly with the

20   Court, "thereby cutting off Defendants' ability to informally demonstrate compliance."

21   Defendants' Objections at 12.[2]  Defendants' argument confuses having an opportunity to

22

23   _____
     [2] Defendants claim that Plaintiffs "admit that [this] objection … was proper." ECF No.
24   8208 at 2-3.  This is untrue.  Even if Plaintiffs agree that Objection III(A) was not a
     violation of the Court's prior orders in that it did not amount to a request for relief without
25   a properly-noticed motion, *see* Dec. 24, 2020 Order, ECF No. 7003 at 2, Plaintiffs do not
     agree that the objection is "proper."  Plaintiffs argued that it would be helpful to the Court
26   to allow the Special Master to respond to Defendants' "specific" objections or create some
     sort of alternative process to create a common evidentiary basis for the upcoming contempt
     proceedings, *see* Transcript of April 26, 2024 Status Conference (hereinafter "April 26,
27   2024 Transcript") at 35-44.  Plaintiffs do not, and have not, agreed that the procedure
     "prejudiced" Defendants, as further detailed in this section.  Similarly, Plaintiffs have not
28   (footnote continued)

     [4490782.5]
     PLAINTIFFS' RESPONSE TO DEFENDANTS' GENERAL OBJECTIONS TO SPECIAL MASTER'S REPORT
     AND HIS EXPERT'S SIXTH RE-AUDIT OF CDCR'S SUICIDE PREVENTION PRACTICES

comment on Mr. Hayes's draft report with having an informal opportunity to demonstrate compliance to the Special Master and his team—which Defendants certainly had for many months up until Mr. Hayes's report was formally published.

In February 2023, the Court ordered Defendants to "complete implementation of all outstanding suicide prevention recommendations on or before April 1, 2023 so that implementation is complete before Mr. Hayes starts his sixth round re-audit." Feb. 28, 2023 Order, ECF No. 7743 at 4. The Court also noted that "the Special Master *may, in his discretion*, allow defendants during the period up to and including the time for objections to the draft report to demonstrate to the Special Master and to Mr. Hayes that they have completed work on outstanding recommendations after the April 1, 2023 deadline." *Id.* (emphasis added). While the Court's February 2024 order may have curtailed Defendants' submission of informal objections to Mr. Hayes's draft report, Defendants had countless opportunities to present evidence of compliance to Mr. Hayes and the Special Master team over the last year before the final Sixth Re-Audit report was filed. As noted by this Court in its May 16, 2024 Order, Defendants were aware of the problems that Mr. Hayes identified at the time of each tour, by way of both their attendance at each and every tour and through the exit interviews that Mr. Hayes conducted with senior staff at each institution at the end of each tour, which were also routinely attended by CDCR's headquarters staff and lawyers. *See* May 16, 2024 Order, ECF No. 8238 at 3-4. Mr. Hayes also had monthly meetings with Defendants and sat in on weekly Suicide Prevention and Response Focused Improvement Team (SPRFIT) staff meetings that included CDCR's SPRFIT coordinators—all further opportunities for Defendants to provide updates on their compliance. *Id.* To say that Defendants did not have a chance to "informally demonstrate compliance" ignores the fact that Mr. Hayes has continually

---

forfeited any argument regarding Objections III(E) and (H), as Defendants contend, *see* ECF No. 8208 at 2-3, merely because Plaintiffs did not address them in their focused briefing on the propriety of Defendants' objections. Just because Plaintiffs did not assert that this objection violated a prior court order does not mean that Plaintiffs are barred from responding to the substance of these objections.

PLAINTIFFS' RESPONSE TO DEFENDANTS' GENERAL OBJECTIONS TO SPECIAL MASTER'S REPORT AND HIS EXPERT'S SIXTH RE-AUDIT OF CDCR'S SUICIDE PREVENTION PRACTICES

1  engaged with Defendants over the past year, and has set up processes for Defendants to

2  provide relevant information regarding their compliance to Mr. Hayes and the Special

3  Master team.  Defendants simply have not availed themselves of any of those

4  opportunities.

5        Furthermore, while it appears from Defendants' objections that they intended to

6  demonstrate compliance to Mr. Hayes through their own SPRFIT audits, *see* Defendants'

7  Objections at 12-13 ("as explained in [Defendants' 'Specific Objections'], CDCR can

8  demonstrate compliance with many of the suicide prevention recommendations"); *id.* at

9  20-102 (generally relying on various 2023 SPRFIT audits in objecting to Mr. Hayes's

10 findings), Mr. Hayes already had access to and considered those audits before filing his

11 report.  Indeed, Mr. Hayes specifically requested that Defendants share the audit reports

12 with him, and he intentionally waited to finalize his report until he had reviewed all 57

13 reports.  *See* April 26, 2024 Transcript at 48-49; *see also* Lindsay Hayes's Sixth Re-Audit

14 and Update of CDCR's Suicide Prevention Practices, ECF No. 8143-1 at 59-63

15 [hereinafter "Hayes's Sixth Re-Audit Report"] (analyzing content of CDCR's 2023

16 SPRFIT audit reports).  Clearly, in his review of Defendants' SPRFIT audits, Mr. Hayes

17 determined that the proffered information did not change or undermine his findings and

18 conclusions (or, at a minimum, were already accounted for in the final version of his

19 report).  *See id.* (describing examples of the SPRFIT coordinators' "deficient monitoring"

20 found in those audit reports).  Given these facts, Defendants' claim that the Court's

21 decision to curtail the draft review process prejudiced them rings hollow.

22        **B.    Defendants' Objections to the Special Master Using Compliance
             Thresholds Have Already Been Rejected and Have No Legal Basis**

23

24        Defendants next argue that the compliance thresholds that Mr. Hayes uses are

25 improper, either because his focus should be on implementation of policy rather than

26 compliance with those policies (Objection III(B)), or because 90- and 100-percent

27 compliance thresholds are higher than what is constitutionally required (Objection III(C)).

28 Defendants' Objections at 13-16.  As already noted in Plaintiffs' focused briefing on

1   whether Defendants' General Objections violate prior Court orders, these objections go

2   back at least a decade, and have been rejected each time they have been raised.  ECF No.

3   8198 at 6, 10-11 (citing Feb. 28, 2013 Order, ECF No. 4361 at 2-3, 8-9 (rejecting these

4   arguments regarding Special Master's Twenty-Fifth Round Monitoring Report); Dec. 3,

5   2020 Order, ECF No. 6973 at 7-10 (same regarding Special Master's Fourth Suicide

6   Prevention Practices Re-Audit); Jan. 6, 2023 Order, ECF No. 7696 at 14-17 (same

7   regarding Special Master's Fifth Re-Audit)).

8        The Court should therefore once again reject these arguments based on the law-of-

9   the-case doctrine, given that the Ninth Circuit has affirmed that this Court can require

10  Defendants to follow its prior orders without analyzing the constitutional standard every

11  time it re-orders compliance.  *Coleman v. Brown*, 756 F. App'x 677, 678-79 (9th Cir.

12  2018) (affirming this Court's orders requiring full compliance with Program Guide MHCB

13  transfer timelines because the Court "was entitled to rely on its previous rulings"); *see also*

14  *Armstrong v. Brown*, 768 F.3d 975, 985-87 (9th Cir. 2014) (upholding broad, more-

15  detailed remedial order under PLRA requiring CDCR to track all allegations of non-

16  compliance, where CDCR had repeatedly failed to comply with prior, narrowed remedial

17  orders.").  Defendants had the chance to appeal the use of these compliance thresholds

18  when the Court ordered them following the Special Master's Fourth Re-Audit, but they

19  voluntarily dismissed their own appeal of the Court's order.  *See* May 17, 2021 Order, ECF

20  No. 7179.  They have no basis to change those standards now.

21       In their response to Plaintiffs' focused briefing on the impropriety of the general

22  objections, Defendants claim that the Court can re-examine this issue as an exception to

23  the law-of-the-case doctrine where "substantially different evidence was adduced at a

24  subsequent trial."  ECF No. 8208 at 6 (citing *Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th

25  Cir. 2012)). The "substantially different evidence" to which they cite is a declaration

26  provided by Joel T. Andrade, a forensic social worker hired by Defendants.  *Id.*  But

27  Dr. Andrade's "substantially different evidence" consists of a paragraph where he merely

28  opines that the "requirement of 100% compliance for certain recommendations is

1    unreasonable." Decl. of Joel T. Andrade, ECF No. 8180-3 at 10-11. Defendants'

2    inclusion of Dr. Andrade's cursory opinion in the record is not a valid reason to renew an

3    argument that this Court already has rejected several times.

4         Substantively, Defendants do not cite a single applicable case that should convince

5    the Court that its prior decisions were incorrect. Defendants cite to a 1984 District Court

6    decision from the long-running *Balla* case to supposedly establish that "[t]he Eighth

7    Amendment *only* requires Defendants to establish a 'basic program for the identification,

8    treatment, and supervision of inmates with suicidal tendencies.'" Defendants' Objections

9    at 13-14 (quoting *Balla v. Idaho State Bd. of Corr.*, 595 F. Supp. 1558, 1577 (D. Idaho

10   1984) (emphasis added)). But that language comes in the context of a court finding that

11   Idaho's state penitentiary was not providing constitutionally adequate mental health care,

12   and that its suicide prevention program could not be deemed even minimally adequate,

13   following the original trial in that case. It was not an analysis of what the Eighth

14   Amendment does *not* require, it was not an analysis of what requirements are proper in a

15   remedial order, and it certainly was not an analysis of what requirements are proper in a

16   remedial order where Defendants have repeatedly failed to correct deficient suicide

17   prevention practices over the course of nearly 30 years.

18        Likewise, the *Taylor*, *Miller* and *Rouser* cases cited by Defendants are inapposite.

19   In both *Taylor* and *Miller*, courts were examining the question of qualified immunity in a

20   case involving an individual suicide, not the propriety of remedial orders in a long-running

21   class action lawsuit connected to the implementation of suicide prevention practices. *See*

22   *Taylor v. Barkes*, 575 U.S. 822 (2015); *Miller v. Harbaugh*, 698 F.3d 956 (7th Cir. 2012).

23   *Rouser* involved an interpretation of the term "substantial compliance" under California

24   state contract law because the underlying document was a negotiated consent decree, and

25   its analysis is therefore not applicable to this case. *Rouser v. White*, 825 F.3d 1076, 1082

26   (9th Cir. 2016).

27        Defendants cite no authority demonstrating that the court-ordered compliance

28   standards for Mr. Hayes's recommendations run afoul of the Constitution or other federal

1  law, because they cannot do so.  As this Court has said previously, "there is no basis in the

2  record for defendants' unilateral decision to 'decouple implementation' of the Hayes

3  recommendations from 'compliance' with those recommendations."  Jan. 6, 2023 Order,

4  ECF No. 7696 at 15 (quoting Defendants' Objections to Fifth Re-Audit, ECF No. 7654 at

5  3).  The Court should maintain that stance, despite Defendants' repeated efforts to achieve

6  "compliance" merely by moving the goalposts in this case.

7         **C.    Mr. Hayes Is Not Required to Tie Compliance to Outcomes**

8         Defendants next object that the Report fails to analyze whether non-compliance

9  with Mr. Hayes's recommendations is correlated with an increase in suicides or self-harm

10 events.  Defendants' Objections at 16-17 (Objection III(D)).  The Court has never required

11 Mr. Hayes to tie compliance with his recommendations to a reduction of suicide-related

12 harm.  Defendants cannot and do not claim otherwise.  *Id.*  In fact, the Court has already

13 found that compliance with Mr. Hayes's recommendations will likely reduce the

14 substantial risk of suicide-related harm in CDCR, as required by the Constitution, noting

15 that "[t]he twenty-nine recommendations are interim steps that, when fully implemented,

16 are designed to bring defendants significantly closer to meeting their Eighth Amendment

17 obligations in the area of suicide prevention."  Jan. 6, 2023 Order, ECF No. 7696 at 8

18 (quoting Dec. 3, 2020 Order, ECF No. 6973 at 7-10).

19        As an example, Defendants object that Mr. Hayes's finding of non-compliance with

20 the Program Guide requirement that PIP admission and discharge Suicide Risk Evaluations

21 and Self-Harm Assessments ("SRASHEs") be completed by licensed psychologists or

22 psychiatrists did not result in patient harm because licensed social workers performed the

23 other SRASHEs in their place.  Defendants' Objections at 16-17 (citing Hayes's Sixth Re-

24 Audit Report at 313).  They argue that because social workers can perform these

25 assessments in other settings and Mr. Hayes asserted in an academic article that social

26 workers are qualified to determine when patients no longer need suicide precautions, their

27 admitted non-compliance should be overlooked.  *Id.*

28        However, the Program Guide is a central component of the court-ordered remedy in

[4490782.5]                                      9                    Case No. 2:90-CV-00520-KJM-DB

1  this action, and Mr. Hayes's monitoring of Defendants' compliance with Program Guide

2  requirements relevant to suicide prevention is proper and furthers the Special Master's

3  monitoring responsibilities.  Dec. 11, 1995 Order, ECF No. 640 at 3-4.  That Mr. Hayes

4  has elsewhere opined that social workers can sometimes assess when patients can be

5  discharged from suicide precautions is irrelevant to, and cannot alter, the Program

6  Guide's requirements or the Special Master's duty to monitor compliance with those

7  requirements.  In addition, the Program Guide requirement here—performing SRASHEs

8  upon admission and discharge from the PIP—is distinct from the question of whether

9  social workers are qualified to determine whether patients can be discharged from

10 suicide precautions in general, so Mr. Hayes's 2013 journal article that Defendants cite is

11 not even inconsistent with the Program Guide requirement.  *See generally* Hayes, L.M.,

12 *Suicide prevention in correctional facilities: Reflections and next steps*, 36 Int'l J. Law &

13 Psychiatry 188-194 (2013).

14       At bottom, Defendants appear to seek relief from this longstanding Program Guide

15 requirement, but the Court has made clear that objections to a Special Master report are not

16 the appropriate vehicle to seek such relief.  Dec. 24, 2020 Order, ECF No. 7003.  If

17 Defendants wish to seek modification of this requirement, they must seek leave to file a

18 motion requesting this relief in accordance with the Court's 2020 Order.  The Court should

19 summarily overrule this objection.

20       **D.     Defendants' Attacks on Mr. Hayes's Methodology and Evidence Fail**

21       Defendants object that Mr. Hayes's analysis "is based on faulty methodology and

22 objectively unverifiable evidence."  Defendants' Objections at 17 (Objection III(E)).

23 Defendants offer only two specific examples of purportedly flawed methodology in

24 Mr. Hayes's Report to support this sweeping claim: a discussion in the Report regarding

25 inadequate staffing's impact on the provision of mental health care and a comparison of

26 annual suicide rates.  *Id.* at 17-18.  As an initial matter, neither of these two specific

27 sections of the Report address Defendants' compliance with any of Mr. Hayes's court-

28 ordered recommendations, so these objections are not relevant to the anticipated contempt

1   proceedings.  *See* Hayes's Sixth Re-Audit Report at 11-12, 86.  Furthermore, as discussed

2   below, neither of these objections stand up to scrutiny.

3       First, Defendants object that Mr. Hayes does not offer support for his observations

4   regarding the negative impacts that critical staffing shortages are having on mental health

5   care.  Defendants' Objections at 17-18.  Defendants' objection overstates Mr. Hayes's

6   claims and ignores reality.  Defendants criticize Mr. Hayes for making "no effort to link

7   staffing shortages to actual suicide attempts or self-harm or completed suicides."  *Id.* at 18.

8   However, the portion of the Report to which Defendants point does not claim that staffing

9   shortages caused any specific suicide attempts, self-harm, or suicides, or that staffing

10  shortages caused an increase in these specific events, so there is no reason why the Report

11  would attempt to establish such an explicit link here.  Hayes's Sixth Re-Audit Report at

12  11-12.

13      Instead, the Report asserts that staffing shortages have caused "struggles" to provide

14  "routine clinical contacts" and "increasing frustration" amongst patients, and it identifies a

15  correlation between worsening staffing and "increases in mental health crises," "discord"

16  amongst class members, "emergent/urgent mental health referrals," "use of alternative

17  housing," and "subsequent MHCB rescissions."  *Id.*  The Report provides ample evidence

18  showing the staffing crisis's negative impact on clinical contacts and support for the

19  identified correlation.  Hayes's Sixth Re-Audit Report at 12-14 (description of inadequate

20  clinical contacts due to short staffing and data showing correlation between reduction in

21  staffing levels and increased urgent and emergent referrals and MHCB recissions); *id.* at

22  135, 149, 161, 165, 179, 242, 248, 263, 284 (describing inadequate clinical contacts and

23  mental health treatment, including inadequate contacts for some patients who died by

24  suicide, due to short staffing at SVSP, CMF, COR, CHCF, SATF, CMC, and MCSP).

25  Furthermore, despite Defendants' suggestion that inadequate staffing has not directly

26  impacted suicides, Defendants' own Suicide Reports and Quality Improvement Plan

27  reports admit that eight patients who committed suicide in 2023 received inadequate

28  mental health contacts specifically because of staffing deficiencies, and, for several of

1  these reports, the institutional staff submitted their institutional triage plans showing the

2  very limited mental health treatment provided to class members due to the extreme staffing

3  vacancies.  *See generally* Under Seal Decl. of Michael Nunez, lodged herewith; Decl. of

4  Michael Nunez.

5      Similarly, there is nothing improper about Mr. Hayes's transparent comparison of

6  the 2023 annual suicide rate in CDCR against the 2019 national average suicide rate in

7  state prisons, despite Defendants' objection to the contrary.  Defendants' Objections at 18

8  (citing Hayes's Sixth Re-Audit Report at 86).  The Report clearly states that the national

9  suicide rate in state prisons covers 2019, not 2023, and that it uses the 2019 statistic

10  because it was the most recent national data available at the time.  *See* Hayes's Sixth Re-

11  Audit Report at 86 n.25.  In fact, Defendants themselves have made similar comparisons in

12  their annual suicide reports filed with the Court.  *See* Notice of Submission of CDCR's

13  Annual Report on Suicides in CDCR and 2022 Annual Suicide Report, ECF No. 8017 at

14  55-56 (comparing CDCR annual suicide rate in 2022 and over time to 2019 national

15  suicide rate in state prisons); Notice of Submission of CDCR's 2021 Annual Suicide

16  Report, ECF No. 7710 at 15-16 (discussing CDCR's 2021 annual suicide rate alongside

17  2019 national suicide rate in state prisons).  Defendants offer no reason why such

18  comparisons are appropriate in their annual suicide reports but not in Mr. Hayes's Report,

19  and Defendants' silence on this point shows that there is none.

20      Finally, Defendants include a discussion of trends in suicide rates and risk factors

21  for incarcerated people in an apparent attempt to frame CDCR's rising annual suicide rate

22  as merely part of a national trend rather than a consequence of Defendants' failure to fully

23  implement Mr. Hayes's court-ordered recommendations and other components of the

24  remedy in this action.  Defendants' Objections at 18-20.  Defendants overstate the import

25  of the evidence that they cite.  The trend in the national annual state prison suicide rate in

26  recent years is unknown given that, as Defendants acknowledge, the most recent national

27  annual rate available is from 2019.  *Id.* at 19.  Furthermore, the research that Defendants

28  cite for their argument that people who remain in CDCR's custody are inherently more at

1   risk of suicide is an international study, not focused specifically on CDCR's population,

2   and it makes clear that mental health history and single-cell status are the greatest suicide

3   risk factors, not criminal offense type. *Id.* at 20 n.5 (citing Zhong, S., Senior, M., Yu, R.,

4   Perry, A., Hawton, K., Shaw, J., & Fazel, S., *Risk factors for suicide in prisons: a*

5   *systematic review and meta-analysis*, 6 The Lancet Public Health e164–74 (2021),

6   available at https://doi.org/10.1016/S2468-2667(20)30233-4 ("The five strongest factors

7   associated with suicide risk were suicidal ideation during current period in prison, previous

8   suicide attempt, history of self-harm, single-cell occupancy, and current psychiatric

9   diagnosis.")).  Even if the national state prison suicide rate continues to rise and people in

10  CDCR's custody are now at greater risk of suicide, this would only make it more alarming

11  that Defendants have yet to fully implement fourteen of Mr. Hayes's recommendations in

12  the *nine-plus years* since the Court first ordered them to do so.

13      Defendants' objections point to no error at all, much less a clear error.  The Court

14  should reject these objections.

15      **E.   Mr. Hayes's Recommendations Are Not Vague or Overbroad**

16      In their sixth general objection, Objection III(F), Defendants object that

17  "Mr. Hayes's recommendations are both vague and overbroad."  Defendants' Objections at

18  20.  Defendants provide four examples of these purported problems.  Aside from the fact

19  that challenging Mr. Hayes's court-ordered recommendations in objections to a Special

20  Master Report violates the Court's December 24, 2020 Order, *see* Plaintiffs' Brief

21  Regarding Propriety of Defendants' Objections, ECF No. 8198, none of these complaints

22  establish clear error.  The Court should overrule this objection.

23      First, Defendants object to Mr. Hayes' methodology for computing compliance with

24  his recommendations.  Defendants' Objections at 20-21.  However, Mr. Hayes has

25  consistently used this compliance measurement methodology since the Court approved it

26  when adopting Mr. Hayes's Fourth Re-Audit Report.  Dec. 3, 2020 Order, ECF No. 6973

27  at 7-10; Hayes's Fifth Re-Audit Report, ECF No. 7636-1 at 10 (showing compliance rates

28  based on number of compliant institutions divided by number of audited institutions);

1  Hayes's Fourth Re-Audit Report, ECF No. 6879-1 at 5-7 (same).  Defendants cannot

2  challenge Mr. Hayes's court-approved compliance measurement methodology in

3  objections to a Special Master report.  They must seek relief from the Court's prior orders

4  approving Mr. Hayes's methodology in accordance with the procedure in the Court's

5  December 24, 2020 Order.  *See* ECF No. 7003.  They have never done so.  Even if

6  Defendants could challenge the methodology here, Defendants' preferred approach of

7  focusing attention solely on deficient institutions is problematic—it ignores the need to

8  ensure overall systemic compliance, which Mr. Hayes and the Court have repeatedly

9  emphasized, and to ensure that institutions remain in compliance even when attention

10  shifts to other institutions.

11       Second, Defendants' objection that Mr. Hayes's "process of review does not allow

12  for" a "rapid and specific corrective action response" to timely correct non-compliance

13  with the portion of Recommendation 32 regarding provision of property and privileges to

14  patients in MHCBs is vague and ignores the Report's recommendations regarding this

15  issue.  Defendants' Objections at 21-22.  There is a deep irony to Defendants' complaint

16  that Mr. Hayes's monitoring is causing delay, given that Defendants face impending

17  contempt proceedings for failing to fully implement this and other court-ordered

18  recommendations for nearly a decade.  Defendants do not explain what they mean when

19  they assert that Mr. Hayes's "process of review" prevents them from responding rapidly by

20  developing individualized CAPs to correct the specific compliance problems at each

21  institution.  *Id*.  In fact, Mr. Hayes recommends that Defendants do exactly that.  *See*

22  Hayes's Sixth Re-Audit Report at 34 (recommending that Defendants "develop CAPs for

23  12 facilities […] to remedy misuse of CDCR policies" regarding MHCB property and

24  privileges).  None of Mr. Hayes's other recommendations regarding the MHCB property

25  and privileges component of Recommendation 32—which consist of issuing a clarifying

26  memo regarding phone privileges, preparing an updated draft policy regarding use of

27  safety smocks and blankets, and updating the Special Master regarding the status of

28  funding for a yard for the CSP-COR MHCB, *see id.*—prevent Defendants from making a

1    "rapid and specific corrective action response" to achieve compliance with this component

2    of Recommendation 32.

3         Third, Mr. Hayes's findings regarding each institution's compliance with

4    Recommendation 31 are quite clear despite Defendants' argument to the contrary.

5    Defendants have not shown that the Report fails to clearly communicate the areas of

6    compliance and non-compliance for each institution or that Mr. Hayes's findings related to

7    Recommendation 31 are clearly erroneous.  *See* Defendants' Objections at 22-23.

8    Recommendation 31 consists of five subcomponents, and Mr. Hayes only formally audited

9    Defendants' institutions for four of the five subcomponents.  *See* Hayes's Sixth Re-Audit

10   Report at 52; *id.* n.12.  The Report identifies the compliance rate for the four

11   subcomponents of Recommendation 31 that he audited, and it clearly lists which

12   institutions failed to comply with each subcomponent in the recommendations subsection

13   for Recommendation 31.  *Id.* at 52-53.

14        Defendants' general objection about the organization of the Report and the

15   purported lack of clarity regarding compliance is not relevant to the substance of any of

16   Mr. Hayes's findings.  *See* Defendants' Objections at 22-23.  This objection is also vague

17   and unsupported, and it ignores that Mr. Hayes provided Defendants with ample

18   opportunities to clarify his compliance findings at each institution.  As Mr. Hayes noted at

19   the April 26 status conference, he regularly met with Defendants to convey his preliminary

20   findings for each institution at the end of each institution audit and repeatedly offered to

21   meet with Defendants to discuss compliance with his recommendations.  *See* May 16,

22   2024 Order, ECF No. 8238 at 3-4.

23        Fourth, Defendants contend that "the structure" of Recommendation 32 and other

24   unspecified recommendations are "overbroad," "resulting in a significant impediment to

25   compliance."  Defendants' Objections at 23-24.  However, aside from listing the

26   requirements for Recommendation 32, Defendants offer no reason why its breadth is "a

27   significant impediment to compliance."  *Id.*  In addition, Defendants' assertion that they

28   can demonstrate compliance with Recommendation 32 undermines their claim that the

1  breadth of that recommendation impedes compliance.  *Id.* at 24 n.18.  Furthermore,

2  Defendants' complaints about Recommendation 32 ring hollow given that they waited

3  until nearly a decade after the Court adopted the recommendation before raising this issue.

4  *See generally* Defendants' Objections to Fifth Re-Audit, ECF No. 7654 (failing to raise

5  objection to Recommendation 32 as overbroad); Defendants' Objections to Fourth Re-

6  Audit, ECF No. 6898 (same); Defendants' Objections to Third Re-Audit, ECF No. 6007

7  (same).  If Defendants wish to seek relief from any of Mr. Hayes's court-ordered

8  recommendations on any grounds, including purported overbreadth, they must do so in

9  accordance with the Court's December 24, 2020 Order, not in objections to a Special

10  Master's report.  The Court should summarily overrule Defendants' objections regarding

11  vagueness and overbreadth.

12 | 13  **F.    Defendants' Complaint About Mr. Hayes Using Metrics That Do Not Track the Plain Language of the Recommendations Is an Attempt to Evade What They Have Long Been Ordered to Do**

14          In Section III(G), Defendants cite several instances where they contend that

15  Mr. Hayes judged noncompliance based on findings that did not match the language of the

16  court-ordered recommendations.  Defendants' Objections at 24-26.  They claim this

17  creates "moving targets" that make implementation "impossible to achieve."  *Id.* at 24.

18  But Defendants' arguments that they are unaware of or confused about what they need to

19  do to achieve compliance strain credulity.  All of the compliance metrics about which

20  Defendants complain are either metrics that Mr. Hayes has been using in multiple re-audits

21  going on several years, or are metrics that Mr. Hayes and the Special Master set forth in

22  their court-ordered "Roadmap to Full Implementation of the Remaining

23  Recommendations," (hereinafter "Roadmap") published in both the Fourth and Fifth Re-

24  Audits.  *See* Special Master's Fourth Re-Audit, ECF No. 6879 at 16-25; Special Master's

25  Fifth Re-Audit, ECF No. 7636 at 22-29; *see also* Dec. 3, 2020 Order, ECF No. 6973 at 12

26  (adopting Fourth Re-Audit in full); Jan. 6, 2023 Order, ECF No. 7696 at 21-22 (adopting

27  Fifth Re-Audit in full).

28          For example, Defendants argue that it was improper for Mr. Hayes to find eight

institutions noncompliant with Recommendations 7 and 8 because he audited staff on the

adequacy of their administration of the intake screening questions, when the text of those

recommendations do not explicitly focus on the intake screening process.  Defendants'

Objections at 24.  But Defendants' claim that adequate intake screening is an "additional

requirement[]" of these recommendations flies in the face of the long history of this case,

and Defendants' own participation in the audit process.  *Id.*  Since Mr. Hayes's first audit

in 2015, and in <u>every</u> audit thereafter, he has explicitly reviewed "the adequacy of the

intake screening form and the completeness of nursing staff's conduct of the intake

process" as part of his assessment of compliance with these recommendations.  Hayes's

First Audit Report, ECF No. 5259 at 9-12; *see also* Hayes's First Re-Audit Report, ECF

No. 5396 at 6-8; Hayes's Second Re-Audit Report, ECF No. 5672 at 3-4; Hayes's Third

Re-Audit Report, ECF No. 5993-1 at 4-5; Hayes's Fourth Re-Audit Report, ECF

No. 6879-1 at 7-9; Hayes's Fifth Re-Audit Report, ECF No. 7636-1 at 12-14.

Defendants themselves also developed activation schedules for implementing

Recommendations 6-8 that explicitly include training and audits regarding appropriate

intake screening procedures.  *See* Defendants' Activation Schedules for Completion of

Suicide Prevention Recommendations, ECF No. 7024 at 5.  And, according to Defendants'

objections and the SPRFIT audits cited therein, CDCR's own internal audits also measure

whether the screening nurse asked all intake screening questions adequately.  *See, e.g.,*

Defendants' Objections at 33 ("In all three cases, the nurse asked all the questions

appropriately"); *id.* at 34 ("The nurse asked all questions appropriately"); *id.* at 37 ("the

reviewer noted that … all intake screenings were completed appropriately, in a

confidential setting, with all questions asked.").  Defendants have known for nearly a

decade that compliance with Recommendation 7 includes an assessment of whether

CDCR's staff conducts appropriate intakes, which requires properly asking all 15 suicide

risk questions; to argue otherwise is simply disingenuous.

The same is true for <u>all</u> of the other monitoring practices about which Defendants

complain.  For Recommendations 9 and 10, Mr. Hayes has been assessing compliance

1  rates with training requirements (Rec 9) and compliance rates for completion of suicide

2  risk evaluations (Rec 10) since the First Re-Audit.  *See* ECF No. 5396 at 8-9; ECF No.

3  5672 at 13-14; ECF No. 5993-1 at 16-17; ECF 6879-1 at 20-22; ECF 7636-1 at 33-39.  For

4  Recommendation 17, Mr. Hayes did not "rewrite the core requirements of the

5  recommendation," as Defendants claim.  Defendants' Objections at 25-26.  He judged the

6  adequacy of the safety planning for patients discharged from Alternative Housing and

7  MHCB units—something he has consistently done since the First Re-Audit.  *See* ECF No.

8  5396 at 13-15; ECF No. 5672 at 14-15; ECF No. 5993-1 at 17-21; ECF No. 6879-1 at 23-

9  28; ECF No. 7636-1 at 40-43.  For Recommendation 31, though Defendants complain

10  about how Mr. Hayes judges the effectiveness of local SPRFITs, *see* Defendants'

11  Objections at 26, they have had notice about how Mr. Hayes measures compliance on this

12  metric for years:  Since the First Re-Audit, he has been examining the attendance of

13  mandatory staff members at monthly meetings, *see* ECF No. 5396 at 24-25; ECF No. 5672

14  at 17-18; ECF No. 5993-1 at 23-25; ECF No. 6879-1 at 30-33; ECF No. 7636-1 at 46-50,

15  while the other metrics came from Defendants' own "Enhancements to the Suicide

16  Prevention and Response Focused Improvement Teams" policy memorandum that the

17  Court ordered them to implement following Mr. Hayes's Second Re-Audit.  *See* Jan. 25,

18  2018 Order, ECF No. 5762 at 4; *see also* Hayes's Sixth Re-Audit Report at 50-51

19  (describing history of requirements).[3]

20      If there was ever any confusion about the metrics Mr. Hayes was using to monitor

21  Defendants' compliance with these recommendations, those standards certainly became

22  crystal clear when, in response to the Court's request that the Special Master and

23

24  ─────────────────────
    [3] Defendants also object to the compliance metrics that Mr. Hayes uses for
25  Recommendation 20 (psych tech practices) as not tied to the text of the recommendation,
    Mr. Hayes found this recommendation to be fully implemented, so it is unclear why
26  exactly Defendants are still lodging an objection.  Hayes's Sixth Re-Audit Report at 8, 16-
    17.  Nonetheless, this recommendation is another example where Mr. Hayes has audited
27  Defendants in the same way—by examining the psych tech rounding practices—in every
    audit since the First Re-Audit.  *See* ECF No. 5396 at 16-17; ECF No. 5672 at 4-5; ECF No.
28  5993-1 at 6; ECF No. 6879-1 at 9; ECF No. 7636-1 at 15.

PLAINTIFFS' RESPONSE TO DEFENDANTS' GENERAL OBJECTIONS TO SPECIAL MASTER'S REPORT
AND HIS EXPERT'S SIXTH RE-AUDIT OF CDCR'S SUICIDE PREVENTION PRACTICES

1   Mr. Hayes provide "specific recommendations for each step defendants must take to

2   implement any items that remain incomplete," Jan. 7, 2020 Order, ECF No. 6441 at 8, the

3   Special Master and Mr. Hayes published the aforementioned "Roadmap."  ECF No. 6879

4   at 16-25.  Defendants complain that "Mr. Hayes's audits are out of sync with what is

5   actually required under each recommendation," *see* Defendants' Objections at 26, but each

6   of the metrics that Mr. Hayes used in the Sixth Re-Audit were explicitly offered in that

7   "Roadmap"—which the Court adopted in full four years ago.  *See* ECF No. 6879 at 19

8   (recommending compliance thresholds for training requirements for recommendation 9

9   and compliance thresholds for completion of suicide risk evaluations for recommendation

10  10); *id.* at 20 (recommending compliance thresholds for adequate safety planning for

11  recommendation 17); *id.* at 23 (recommending compliance thresholds for adequate

12  SPRFIT practices for recommendation 31); Dec. 3, 2020 Order, ECF No. 6973 at 12

13  (adopting these recommendations).

14      Defendants' attempts to lawyer their way out of these requirements must be

15  rejected.  Even if Mr. Hayes's auditing practices do not match exactly what is in the

16  specific text of each original recommendation, Defendants have been well aware of how

17  Mr. Hayes interprets the recommendations for many years, and the Court has explicitly

18  ordered them to implement the recommendations in accordance with the Roadmap.

19  Defendants have not established any error (much less clear error) by the Special Master or

20  Mr. Hayes, and their grievances about "moving targets" should be ignored.

21      **G.    Defendants' Objection Regarding the Propriety of a Bar Graph Should
           be Overruled as Irrelevant**

22

23      Defendants' final "general objection" is actually an objection to a specific table that

24  Mr. Hayes included in his report to help illustrate an increase in emergent/urgent mental

25  health referrals and related data since April 2022.  Defendants Objections at 27-28 (citing

26  Hayes's Sixth Re-Audit Report at 12).  But Mr. Hayes's decision to present the data in a

27  certain way is not a "finding of fact" that this Court needs to review; even if it were, it

28  certainly was not "clearly erroneous" for Mr. Hayes to present the data in this fashion.

1      Mr. Hayes's larger conclusion—that staffing shortages remain an issue connected to

2 deficiencies in care—is informed not only by the data but also by his visits to various

3 institutions, conversations with mental health staff, and an analysis of vacant positions, not

4 to mention Defendants' own suicide reports and QIP reports tying eight 2023 suicides to

5 staffing shortages, as noted above. *See* Hayes's Sixth Re-Audit Report at 11-14; *id.* at 135,

6 149, 161, 165, 179, 242, 248, 263, 284 (describing inadequate clinical contacts and mental

7 health treatment, including inadequate contacts for some patients who died by suicide, due

8 to short staffing at SVSP, CMF, COR, CHCF, SATF, CMC, and MCSP); *see also* Under

9 Seal Decl. of Michael Nunez, lodged herewith; Decl. of Michael Nunez. His presentation

10 of the data in a bar graph does not rise to the level of clear error (or even error) and is, in

11 any event, irrelevant to Mr. Hayes's very serious findings regarding Defendant's suicide

12 prevention practices. The Court should overrule this objection.

13                           **CONCLUSION**

14      For the reasons discussed above, Defendants' "General Objections" are meritless.

15 Plaintiffs urge the Court to overrule all of the objections put forth in Section III of

16 Defendants' pleading.

17                           **CERTIFICATION**

18      Plaintiffs' counsel certifies that he reviewed the following orders in preparing this

19 filing: ECF Nos. 640, 3954, 4044, 4361, 4394, 4693, 4925, 5762, 6230, 6441, 6973, 7003,

20 7179, 7216, 7696, 7743, 8121, 8137, 8238.

21

22 DATED: May 17, 2024            Respectfully submitted,

23                          ROSEN BIEN GALVAN & GRUNFELD LLP

24                          By: */s/ Jared Miller*

25                             Jared Miller

26                          Attorneys for Plaintiffs

27

28

[4490782.5]

20

PLAINTIFFS' RESPONSE TO DEFENDANTS' GENERAL OBJECTIONS TO SPECIAL MASTER'S REPORT
AND HIS EXPERT'S SIXTH RE-AUDIT OF CDCR'S SUICIDE PREVENTION PRACTICES