1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RALPH COLEMAN, et al.,                    Case No. 2:90-0520 KJM DB P

12                    Plaintiffs,              ORDER

13        v.

14   GAVIN NEWSOM, et al.,

15                    Defendants.

16

17        The court held a status cconference in this case on April 26, 2024.  The agenda for the

18   status conference included three matters.  *See* April 18, 2024 Order at 2, ECF No. 8205.  The

19   court makes this order following its discussion with the parties of the first agenda item,

20   development of programs for class members with personality disorders, and review of the parties'

21   joint report on their respective positions concerning the development of these programs.

22   **I.      BACKGROUND**

23        On September 13, 2021, the court ordered defendants, under the guidance and supervision

24   of the Special Master, to assess whether there is an unmet need for inpatient care among members

25   of the plaintiff class, comprising more than 30,000 mentally ill inmates.  Sept. 13, 2021 Order,

26   ECF No. 7035.  The court directed the Special Master "to ensure that the scope of the unmet bed

27   needs study . . . is sufficient to identify with specificity the size" of the "subset of class members

28   /////

                                              1

1   with severe personality disorders associated with significant function impairments who have

2   special treatment needs not yet available in an inpatient setting." *Id*. at 15.

3          On June 30, 2023, defendants filed the California Department of Corrections and

4   Rehabilitation's (CDCR) Unmet Needs Assessment (UNA) Report, ECF No. 7865-3, together

5   with a Cover Report explaining the background of the UNA and responding to written comments

6   by the Special Master and plaintiffs' counsel, ECF No. 7865-2. *See* ECF No. 7865 at 2.

7   Defendants reported CDCR identified 470 patients "that did not need inpatient care but had

8   personality disorders that may benefit from a special treatment program for patients that is not

9   available within the existing Mental Health Services Delivery System [(MHSDS)]." ECF No.

10   7865-2 at 2.[1]  This identification notwithstanding, in the UNA Report, CDCR concluded that

11   "[w]hether there is an unmet need for patients with personality disorder requires further study."

12   ECF No. 7865-3 at 8; *see also id*. at 10 ("[t]he UNA Review Teams identified 470 patients who

13   do not qualify for inpatient hospitalization but who *may* benefit from a special treatment needs

14   program) (emphasis in original).  Defendants recommended that CDCR implement a "12-month

15   plan . . . aiming to validate the findings from the . . . UNA and evaluated the treatment needs of

16   the 470 patients" identified during the UNA. *Id*. at 11.

17          On November 7, 2023, the court heard from the parties regarding, among other matters,

18   issues raised by the UNA Report.  Nov. 15, 2023 Order at 1, ECF No. 8066.  On November 15,

19   2023, following the November 7, 2023 hearing the court issued an order directing the parties to

20   "meet and confer under the supervision of the Special Master to discuss more prompt

21   development of a pilot program" for the identified "subgroup of class members, with the specific

22   goal of developing a plan for the pilot program within three months and implementing the pilot

23   program within six months thereafter." *Id*. at 4.  The court also directed the parties to file a joint

24   report in advance of the April 26, 2024 status conference. *Id*. at 5.  The parties filed the joint

25   report on April 19, 2024.  ECF No. 8209.

---

[1] In this order citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page numbers assigned by ECF and located in the upper right hand corner of the pages.

1   II.    JOINT STATEMENT

2        A.    Defendants' Position

3        Defendants take the position that "[t]reatment of personality disorders is not part of the

4   Eighth Amendment remedy in this case."  ECF No. 8209 at 3.  They base this position on an

5   absence of findings in the court's September 23, 2021 order "that the patients with personality

6   disorder diagnoses were at risk of harm, that a lack of treatment options[2] for patients with

7   personality disorder diagnoses somehow violated their Eighth Amendment rights, or that

8   treatment of personality disorders was a required part of the 1995 remedy in this case" and that

9   "there have been no orders entered to date that establish Defendants' obligation under the Eighth

10  Amendment to provide class members with treatment for their personality disorders." *Id*.

11  Defendants contend the Program Guide, a primary remedial plan in this action, does not require

12  them to "provide specialized treatment for patients with personality disorders."  *Id*. at 3 n.2 (citing

13  Program Guide at 12-1-6, 12-2-1, 12-8-2, and 12-9-3).

14       CDCR acknowledges there is a subset of class members "with  personality disorders who

15  may benefit from treatment."  *Id*.  CDCR has proposed a *Plan to Provide Treatment for MHSDS*

16  *Patients with Personality Disorders* (CDCR's Plan).  The plan includes

17          four treatment options that may be included in the proposed menu of specialized
18          treatment options:  (1) Systems Training for Emotional Predictability and Problem
19          Solving for Borderline Personality Disorder (STEPPS), a program that offers a
20          manualized group treatment format that is designed for outpatient treatment use for
21          patients diagnosed with borderline personality disorder; (2) Dialectical Behavior
22          Therapy (DBT) Skills Groups, a program that offers groups focus on four main
23          topics: mindfulness, interpersonal effectiveness, emotion regulation and distress
24          tolerance; (3) START-NOW, a manual-guided skills training originally developed
25          for correctional settings and also adapted for forensic psychiatric units; and (4)
26          Thinking for a Change (T4C), a program developed with cooperation by the
27          National Institute of Corrections (NIC) by a panel of experts in cognitive behavioral
28          therapies.

29  ECF No. 8209 at 5.  The Special Master and plaintiffs are "receptive to" CDCR's Plan.  *Id*.

30  CDCR has tentatively identified two institutions, San Quentin State Prison and Valley State

_____

      [2] Except when used in a quote from the parties' briefing, throughout this order the court
refers to these as "treatment modalities."

3

1    Prison, subject to change, for "the first phase of the roll-out" with subsequent rollouts at other

2    institutions "taking into account lessons learned from the implementation of the plan at the first

3    two institutions." *Id*. at 6-7.  CDCR has decided to roll out the START-NOW treatment option

4    first because it "can be implemented quickly relative to the other modalities." *Id*. at 7.  CDCR

5    also is of the view that "DBT Skills Groups can likely be implemented quickly" but that

6    implementation of T4C and STEPPS will take longer because training for these two modalities

7    "must be completed by official trainers for each program." *Id*.  CDCR will not be able to send

8    participants for T4C training in 2024 and "will aim to attend the 2025 sessions"; it is "still waiting

9    to hear from STEPPS regarding their training requirements and timelines." *Id*. at 8.

10        Treatment groups generally are "provided in cycles of four to eight months" and CDCR

11   proposes to update the Special Master regarding implementation and success of the pilot groups

12   at designated institutions after two cycles. *Id*.  Defendants oppose plaintiffs' request for a court

13   order requiring them to file a final implementation plan within 60 days that includes a "detailed

14   activation schedule" for these treatment programs with regular updates every ninety days

15   thereafter. *Id*. at 8, 13.

16        **B.    Plaintiffs' Position**

17        Plaintiffs contend treatment for personality disorders is a required part of the remedy in

18   this case and is clearly required by the Program Guide. *Id*. at 9.  Plaintiffs are "generally

19   supportive" of CDCR's Plan, but are "concerned" about defendants' failure to commit to firm

20   timelines, particularly since the court ordered implementation of the pilot within nine months. *Id*.

21   at 9 (citing ECF No. 8066 at 4).

22        Plaintiffs note that the 2021 Program Guide "includes a 2017 Dialectical Behavioral

23   Therapy (DBT) program that was designed by CDCR clinicians and leadership at the time to treat

24   this very population." *Id*. at 11.  According to plaintiffs, defendants "abandoned" this program

25   "without notice to Plaintiffs or the Court." *Id*.  Plaintiffs also note the treatment modalities

26   defendants identify "have been studied in correctional contexts with favorable results, or are

27   designed specifically with a correctional population in mind." *Id*.

1    III.    DISCUSSION

2            Defendants' contention that treatment for class members with personality disorders is not

3    part of the remedy in this action is without merit.  Defendants' plan for remediation of identified

4    Eighth Amendment violations in the delivery of mental health care in this action is the Program

5    Guide.  Sept. 3, 2020 Order at 4, ECF No. 6846.    On March 3, 2006, the court gave final

6    approval to most provisions of the January 2006 Revised Program Guide and ordered defendants

7    "to immediately implement all such provisions."  Mar. 3, 2006 Order at 2, ECF No. 1773.

8    Chapter 2 of the January 2006 Revised Program Guide, governing mental health assessments at

9    prison reception centers, included the following:  "Commonly regarded mental health issues

10   which may be identified in the screening process, but which are not included in the treatment

11   services provided by the Department's mental health treatment programs are sexual and substance

12   abuse disorders, and personality disorders.  However, if these mental health issues are also

13   accompanied by an Axis I serious mental disorder, or meet the requirements of medical necessity,

14   treatment is provided by the Department's mental health treatment programs."  ECF No. 1754

15   at 3.  That provision remains in the 2021 Program Guide, ECF No. 7333-1 at 23, approved by the

16   court on February 7, 2022.  Feb. 7, 2022 Order at 3, ECF No. 7456.  In short, for eighteen years

17   defendants have been required by court order to implement their remedial plan for the delivery of

18   mental health care, the Program Guide, including the  requirement to provide treatment for class

19   members with personality disorders.[3]  Defendants did not object to entry of that order and it has

20   not been modified.[4]

21           Defendants also did not object to the relevant requirements of the court's

22   September 13, 2021 order, including that the UNA be "conducted" in a manner "sufficient to

23   identify with specificity the size of" the need among class members for specialized treatment of

---

[3] The *Coleman* class consists of California state prisoners with serious mental disorders. The list of Axis I serious mental disorders for which treatment is provided in the MHSDS is listed in the first chapter of the Program Guide.  *See* ECF No. 7333-1 at 9.

[4] The court's March 3, 2006 order arose from a Report and Findings and Recommendations from the Special Master on Defendants' Revised Program Guide, ECF No. 1749.  Defendants filed only "limited objections to the Special Master's Report . . . concerning issues of classification and disability discrimination."  ECF No. 1773 at 2.

1   personality disorders "and what is required to ensure that it is met." ECF No. 7305 at 15. No

2   objection was supportable, given the plain reading of relevant requirements of the Program

3   Guide. Instead, defendants complied with the court's direction, identified this subset of class

4   members, and have now circulated an overall acceptable proposal for development and

5   implementation of necessary treatment programs.

6         At hearing, Dr. Amar Mehta, Deputy Director of CDCR's Statewide Mental Health

7   Program, acknowledged that defendants are able, and intend to, roll out a pilot of the START-

8   NOW treatment modality at San Quentin State Prison (San Quentin) and Valley State Prison

9   (VSP) by August of this year. That representation complies with the spirit, if not the letter, of the

10  court's November 15, 2023 order. The court will now confirm defendants are required to roll-out

11  a pilot of the START-NOW treatment modality at San Quentin and VSP by August of this year.

12        At hearing the parties also discussed the roll-out of other treatment modalities at

13  additional institutions following completion of the initial pilot program at San Quentin and VSP,

14  which Dr. Mehta estimates will take approximately thirty-two weeks. Plaintiffs urged roll-out of

15  an additional pilot program at a maximum custody institution. At hearing, Dr. Mehta represented

16  that defendants plan to roll out treatment programs across all other institutions with Enhanced

17  Outpatient Program units[5] beginning sixty days after completion of the initial pilot at San Quentin

18  and VSP. The court accepts Dr. Mehta's representations and will direct defendants to file a status

19  report not later than sixty days after completion of the initial pilot setting out their planned roll

20  out of personality disorder treatment programs at the additional 17 prisons with EOP units,

21  including the additional treatment modalities to be offered and at which institutions those will be

22  offered. The Special Master will be directed to monitor the pilot programs and subsequently

23  rolled out programs in a manner he deems appropriate and consistent with his authority under the

24  Order of Reference, ECF No. 640.

25  /////

26  /////

---

[5] There are currently a total of 19 institutions with EOP units, including San Quentin and VSP.

IV.    **CONCLUSION**

The court applauds the effort by all stakeholders that has resulted in CDCR's Plan, and welcomes the general agreement on the substance of the treatment defendants will finally provide to this subset of class members.  Given the potential for constructive collaboration and agreement represented by this effort, the improper arguments of defense counsel in their portion of the Joint Statement are extremely disappointing and far below the high level of dignity and professionalism called for by this important longrunning case.  The court hereby confirms its bench order striking footnote 3 at pages 5-6 of the parties Joint Status Report, ECF No. 8209, *see* April 26, 2024 Minute Order, ECF No. 8219, noting again that several of the defense arguments contravene longstanding orders of this court as well as clear directives from the court to afford its Special Master the respect due an arm of the court.

In accordance with the above, IT IS HEREBY ORDERED that:

1.   In accordance with the court's November 15, 2023 order and the representations of defendant Dr. Mehta at the April 26, 2024 hearing, defendants shall roll out a pilot of the START-NOW treatment modality for class members with personality disorders at San Quentin State Prison and Valley State Prison by August 31, 2024.

2.   On or before June 16, 2025, defendants shall file a status report setting out their planned roll out of personality disorder treatment programs at the additional 17 prisons with EOP units, including the additional treatment modalities to be offered and at which institutions those will be offered.

3.   The Special Master shall monitor the pilot programs and subsequently rolled out programs in a manner he deems appropriate and consistent with his authority under the Order of Reference, ECF No. 640.

IT IS SO ORDERED.

DATED:  May 16, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE