1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
    1300 I Street, Suite 125
6  P.O. Box 944255
   Sacramento, CA 94244-2550
7  Telephone: (916) 210-7318
   Fax: (916) 324-5205
8  E-mail: Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

   HANSON BRIDGETT LLP
   PAUL B. MELLO, State Bar No. 179755
   SAMANTHA D. WOLFF, State Bar No. 240280
   KAYLEN KADOTANI, State Bar No. 294114
   DAVID C. CASARRUBIAS, State Bar No. 321994
   CARSON R. NIELLO, State Bar No. 329970
    1676 N. California Boulevard, Suite 620
    Walnut Creek, CA 94596
    Telephone: (925) 746-8460
    Fax: (925) 746-8490
    E-mail: PMello@hansonbridgett.com
   *Attorneys for Defendants*

9

10                IN THE UNITED STATES DISTRICT COURT

11             FOR THE EASTERN DISTRICT OF CALIFORNIA

12                      SACRAMENTO DIVISION

13

14

15  **RALPH COLEMAN, et al.,**                2:90-cv-00520 KJM-DB (PC)

16                              Plaintiffs,   **DEFENDANTS' REQUEST FOR LEAVE
                                              TO FILE MOTION TO STAY MARCH 6,**
17       v.                                   **2024 ORDER (ECF NO. 8144)**

18  **GAVIN NEWSOM, et al.,**

19                              Defendants.

20

21          This request follows a lengthy dispute between the parties over whether Defendants should

22  be allowed to resume expert tours that were started in July 2023. By orders dated July 28, 2023,

23  August 14, 2023, October 24, 2023, and March 6, 2024, this Court has precluded Defendants

24  from completing those tours. (ECF Nos. 7897, 7918, 8029, and 8144.) Defendants have

25  appealed the March 6 Order denying Defendants the right to resume their retained experts' tours

26  of Defendant CDCR's mental health programs. ECF No. 8188; *Coleman v. Newsom et al.*, 24-

27  2263 (9th Cir.).

28

                                          1

1    Good cause exists to allow Defendants to seek a stay of the March 6 Order.  A standing bar

2    on Defendants' ability to resume the expert tours deprives Defendants of carrying out their

3    executive function, including self-assessments of their prisons, impedes Defendants' due process

4    right to bring possible motions to modify the remedy in the case to conform with constitutional

5    requirements or seek termination, and deprives Defendants of the ability to meet the threshold

6    showing the Court set as a condition for Defendants to resume the tours.

7    Per this Court's requirement, Defendants must seek leave of court to file the motion to stay.

8    (Order, Dec. 24, 2020, ECF 7003 (requiring "any party seeking relief from this court, including

9    from any existing order of this court, [to] … first file a request for leave to file a motion,

10   describing with particularity the relief to be sought and the steps the party has taken to exhaust

11   meet and confer efforts with all opposing counsel.").)  And Federal Rule of Appellate Procedure

12   8(a)(1)(A) states that a "party must ordinarily move first in the district court" for a stay of any

13   order pending appeal.  Defendants informed Plaintiffs' counsel on May 15, 2024, of their

14   intention to file a motion to stay the March 6 Order and asked whether Plaintiffs would oppose

15   On May 17, 2024, consistent with the parties' past efforts to meet and confer on this issue, as

16   reflected in the January 2024 joint filing, Plaintiffs indicated that they continue to oppose

17   Defendants' efforts to have their experts resume the tours and did not indicate there was room for

18   further negotiation on this subject.

19   Accordingly, Defendants request leave to file the attached motion to stay the March 6

20   Order.

21   / / /

22   / / /

23   / / /

24

25

26

27

28

**CERTIFICATION**

In preparing this filing, Defendants' counsel certify that they have reviewed the following relevant orders: ECF Nos. 4361, 4539, 5131, 5711, 6017, 7003, 7807, 7897, 7918, 8005, 8029, 8144, and 8239.  Counsel specifically addresses the Court's May 16, 2024 order that admonishes counsel against filing briefs or objections containing arguments that have been resolved by prior court orders unless counsel seeks and obtains leave of court under established procedures to bring an appropriate motion for relief from those orders.  (ECF No. 8239 at 6-7.)  This request and the attached motion set forth arguments that have not been resolved by prior court orders as they are specifically tailored to address the merits of Defendants' motion to stay the appealed March 6 order.  Counsel acknowledges this Court's prior orders concerning the subject expert tours (ECF Nos. 7897, 7918, and 8029), but those orders do not foreclose this request or the attached motion to stay.  Counsel make this filing under their obligation to represent their clients zealously under their right to relief under Fed. R. Civ. P. 62(c), *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988), and to satisfy Federal Rule of Appellate Procedure 8(a)(1)(A)'s requirement.  Counsel certify that they have conducted a reasonable inquiry and have determined that this filing and the attached motion to stay are well grounded in fact, legally tenable, and not presented for an improper purpose, to harass, cause unnecessary delay, or needlessly increase the cost of litigation.  Fed. R. Civ. P. 11(b)(1); and *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) (internal quotation marks omitted).  Each factual contention made in this filing is supported by a reference to evidence in the record and the legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.  Fed. R. Civ. P. 11(b)(2).

/ / /

/ / /

/ / /

1    Dated: May 22, 2024                                    Respectfully submitted,

2                                                           ROB BONTA
                                                            Attorney General of California
3                                                           DAMON MCCLAIN
                                                            Supervising Deputy Attorney General
4

5                                                           /s/ *Elise Owens Thorn*
                                                            Elise Owens Thorn
6                                                           Deputy Attorney General
                                                            *Attorneys for Defendants*
7

8                                                           *HANSON BRIDGETT LLP*

9                                                           /s/ *Samantha D. Wolff*
                                                            *PAUL B. MELLO*
10                                                          *SAMANTHA D. WOLFF*
                                                            *DAVID C. CASARRUBIAS*
11                                                          *Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
    1300 I Street, Suite 125
6   P.O. Box 944255
    Sacramento, CA 94244-2550
7   Telephone: (916) 210-7318
    Fax: (916) 324-5205
8   E-mail: Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
KAYLEN KADOTANI, State Bar No. 294114
DAVID C. CASARRUBIAS, State Bar No. 321994
CARSON R. NIELLO, State Bar No. 329970
 1676 N. CALIFORNIA BLVD., SUITE 620
 WALNUT CREEK, CALIFORNIA 94596
 TELEPHONE: 925-746-8460
 FACSIMILE: 925-746-8490
*Attorneys for Defendants*

9

10                  **UNITED STATES DISTRICT COURT**

11                 **EASTERN DISTRICT OF CALIFORNIA**

12                      **SACRAMENTO DIVISION**

13

14  RALPH COLEMAN, et al.,                    Case No. 2:90-CV-00520- KJM-DB

15             Plaintiffs,                    **DEFENDANTS' MOTION TO STAY**
                                              **MARCH 6, 2024 ORDER**
16        v.                                  **(ECF NO. 8144)**

17  GAVIN NEWSOM, et al.

18             Defendants.                    Judge:    Hon. Kimberly J. Mueller

19

20                          **NOTICE OF MOTION**

21         Please take notice that subject to the Court's consideration of Defendants' request for

22  leave, Defendants will, at the time and date set by the Court, move this Court under Federal Rule

23  of Civil Procedure 62(c) to stay the March 6, 2024 order (March 6 Order or Order) denying

24  Defendants' motion to lift the injunction halting the VRJS/Falcon tours. (ECF. No. 8144.)

25  Defendants ask this Court to allow Defendants to proceed with their experts' on-site assessment of

26  Defendant California Department of Corrections and Rehabilitations' mental health care system

27  pending the appeal of the March 6 Order.

28

20785376.1

### INTRODUCTION

A case management order should be directed at the parties' obligations to prosecute and defend a case without undue delay in accordance with the rules of court. The March 6 Order far exceeds such a purpose. Instead of managing the case, it imposes strict limitations on Defendants' litigation strategy, deprives Defendants of a core component of an assessment it contracted for, interferes with Defendants carrying out their executive function, including self-assessments of the State's prisons, impedes Defendants' due process right to bring possible motions to modify the remedy in the case to conform with constitutional requirements or seek termination, and limits Defendants' ability to meet the threshold showing the Court created for Defendants to conduct the tours in the first place. On April 5, 2024, Defendants appealed this Court's March 6 Order denying Defendants the right to have their retained experts tour Defendant California Department of Corrections and Rehabilitations' (CDCR) prisons as part of their assessment of CDCR's mental health care system. (ECF No. 8188); *Coleman v. Newsom et al.*, 24-2263 (9th Cir.). Defendants respectfully request that this Court allow Defendants' experts to resume their prison tours until the Ninth Circuit resolves the pending appeal.

The March 6 Order should be stayed pending the appeal challenging this Court's order prohibiting expert tours to allow Defendants' experts to complete their work. Defendants have a substantial case for relief on the merits and will be irreparably harmed absent a stay, the balance of equities favors Defendants, and the public interest weighs in favor of a stay. Accordingly, because Defendants have satisfied the requirements of Federal Rule of Civil Procedure 62, they are entitled to a stay of the Order pending resolution of their appeal.

### PROCEDURAL AND FACTUAL BACKGROUND

Defendants first provided notice in April 2023 to Plaintiffs and the Special Master that they had retained an expert group from Voorhis Robertson Justice Services and Falcon, Inc. ("VRJS/Falcon") to conduct a system-wide study of CDCR's mental health care system that would likely include prison tours slated to begin in July 2023. (ECF No. 8005 at 4.) Plaintiffs' counsel and the Special Master both stated, without objection, that they would attend these tours, and requested only that they receive notice of when the tours were scheduled. (*Id.*) Only after the

1    tours commenced in July 2023 did Plaintiffs' counsel seek to place unreasonable restrictions on

2    the scope of the tours, and argue that the tours were too burdensome[1] in light of the enforcement

3    proceedings set for the end of September 2023, and that the tours constituted impermissible

4    discovery.  (*Id.* at 5.)  The parties presented their dispute concerning the tours to the Court.  (ECF

5    No. 7883.)

6        On July 28, 2023, this Court ordered Defendants to immediately suspend the expert tours

7    pending further discussion at the August 10, 2023 pre-hearing status conference.  (ECF No. 7897.)

8    On August 14, 2023, this Court confirmed its prior bench order and suspended the experts' tours

9    until the completion of enforcement proceedings scheduled to commence on September 29, 2023.

10   (ECF No. 7918.)  Shortly after the close of enforcement proceedings, on October 10, Defendants

11   moved to lift the Court's suspension of their experts' tours of CDCR's prisons.  (ECF No. 8005.)

12   That motion, supported by numerous declarations, detailed the factual and legal basis for the

13   expert tours.  Namely, Defendants presented evidence that showed that the primary ground for

14   keeping the stay in place was now moot because the enforcement proceedings concluded and

15   therefore, the Special Master's team and Plaintiffs could devote sufficient time and resources to

16   attend the tours should they choose to do so.  Defendants also demonstrated that the tours are not

17   impermissible discovery and Defendants have the right to self-monitor and evaluate their own

18   facilities and operations.  Lastly, Defendants showed that they would be prejudiced by further

19   delay.  (*Id.*)

20       The Court denied the motion without prejudice because it found that Defendants had not

21   met and conferred sufficiently with Plaintiffs before filing the motion.  (ECF No. 8029 at 5.)

22       Following this denial of the motion to lift the temporary injunction halting the tours, the

23   parties negotiated limitations on the expert tours so that CDCR could resume the tours without

24   further delay.  (ECF No. 8110.)  On January 18, 2024, the parties filed a joint statement setting

25   forth areas of agreement and disagreement with respect to the expert tours.  (*Id.*)  Despite

26

27   ---
[1] To be clear, although Defendants invited Plaintiffs to attend the tours and implemented certain
accommodations at Plaintiffs' request, Plaintiffs were under no obligation to attend Defendants'

28   expert tours.

3

1  Defendants' concerted efforts to negotiate a reasonable agreement for the tours to resume,

2  Plaintiffs sought strict limitations on the tours that would greatly diminish the scope of the

3  experts' study and greatly extend the period of touring unnecessarily.  (*Id.* at 18 ("Plaintiffs

4  request a protective order precluding any observations of 1:1 mental health treatment and

5  screenings, limiting defendants' tours to a maximum of ten prisons for no more than 5 days at

6  each, and one prison tour per month (5 days of touring per month).").)  Nonetheless, the parties'

7  joint statement shows they were close to resolving or had resolved many of their disputes.  The

8  Court could have resolved the remaining disputes by ordering reasonable parameters for the tours

9  rather than enjoin Defendants from touring altogether.  Almost two months later, on March 6,

10  2024, the Court denied Defendants' October 10 motion to lift the injunction halting the expert

11  tours.  (ECF No. 8144.)

12                                    **LEGAL STANDARD**

13          This Court is authorized under Federal Rule of Civil Procedure 62 to stay its March 6,

14  Order to ensure Defendants' rights are secured pending appeal.  Fed. R. Civ. P. 62(c).  A party

15  seeking a stay must make a four-factor showing: (1) there is a likelihood of success on the merits;

16  (2) there is a likelihood of irreparable harm in the absence of relief; (3) that the balance of equities

17  weigh in its favor; and (4) that a stay is in the public interest.  *Humane Soc'y of U.S. v. Gutierrez*,

18  558 F.3d 896, 897 (9th Cir. 2009); *see also Nken v. Holder*, 556 U.S. 418, 434-35 (2009).  The

19  likelihood of success on the merits and irreparable harm factors are "are the most critical."  *Nken*,

20  556 U.S. at 434 (explaining that when those are satisfied, courts will assess "the harm to the

21  opposing party" and weigh the public interest).

22          In determining whether to grant a stay, the Ninth Circuit has explained that for the

23  likelihood-of-success prong, Defendants "need not demonstrate that it is more likely than not that

24  they will win on the merits," but only that they have "a substantial case for relief on the merits."

25  *Leiva-Perez v. Holder*, 640 F. 3d 962, 966-68 (9th Cir. 2011).

26  **I.    DEFENDANTS HAVE A SUBSTANTIAL CASE FOR RELIEF ON THE MERITS**

27          The likelihood-of-success factor cannot be rigidly applied.  *Protect Our Water v. Flowers*,

28  377 F. Supp. 2d 882, 884 (E.D. Cal. 2004).  "Prior recourse to the initial decision maker would

1   hardly be required as a general matter if it could properly grant interim relief only on a prediction

2   that it has rendered an erroneous decision." *Himebaugh v. Smith*, 476 F. Supp. 502, 510 (C.D.

3   Cal. 1978) (quoting *Wash. Metro. Area v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

4   Rather, the rule fairly contemplates that courts may properly stay their own orders where there is a

5   "substantial case" on the merits and the status quo should be maintained. *See Ruiz v. Estelle*, 650

6   F.2d 555, 565 (5th Cir. 1981) (granting stay pending appeal of injunction requiring changes to

7   Texas prison system).

8       **A.    The Court Imposed and Maintained the Injunction under its Case
              Management Authority.**

9

10      The Order stated that it would maintain the injunction prohibiting the expert tours under

11  the Court's "case management authority," and it was therefore not constrained "by rule or statute."

12  (ECF No. 8144 at 5-6.)  Although the Court acknowledged that it "must use restraint in exercising

13  its inherent powers to avoid 'undermining other vital interests related to the fair administration of

14  justice[2],'" it concluded that its case-management interest outweighed Defendants' fundamental

15  right to evaluate its own mental health system, to marshal their own evidence concerning the

16  constitutional adequacy and functioning of that system, and Defendants' due process right to bring

17  possible motions to modify the remedy to conform with constitutional requirements or seek

18  termination based on the experts' work.

19      Despite this case being in a remedial phase for nearly 30 years, with vast increases in

20  mental health staffing, billions of dollars spent on improving the Mental Health Services Delivery

21  System (MHSDS)[3], and substantial decreases in the prison population, there is still no end in sight

22  for this ever-expanding case.  For that reason alone, Defendants have—at the very least—a

23  substantial argument on the merits that the Court did not correctly weigh its case-management

24  interests against Defendants' interests.

25      Moreover, the Court's order *enjoined* Defendants from conducting the self-assessment of

26  _____

27  [2] ECF No. 8144 at 5 (quoting *Dietz v. Bouldin*, 579 U.S. 40, 48 (2016)).

28  [3] The annual budget for one year is $650,000,000.00.  (ECF No. 8138 at 6:12-14.)

20785376.1

1   their own mental health care system that Defendants want to do.  But this case is not in a

2   receivership and therefore Defendants maintain authority to perform core executive functions,

3   such as running a prison, that do not contravene the Order of Reference.  *See Bell v. Wolfish*, 441

4   U.S. 520, 548 (1979).  Assessing the prison system's delivery of mental health care independent of

5   the court's monitor is one such function.  Accordingly, to interfere with this core executive

6   function, the Court was required to make all necessary findings to support an injunction, including

7   those independently required under the Prison Litigation Reform Act (PLRA).  It did not.  Nor did

8   it state the legal standard for imposing an injunction.  It instead leaned entirely on its case

9   management powers.  But the court's case management powers do not extend to enjoining conduct

10  that does not, at this time, affect Defendants' delivery of mental health care.

11         In short, Defendants have a substantial case on the merits because the Court applied the

12  wrong legal standard to enjoin Defendants' core executive function.

13  **B.    The Court's Requirement for a Threshold Showing Improperly Interferes**
        **with Defendants' Rights to Assess its Mental Health Program and Develop**
14      **Evidence to Demonstrate Constitutional Compliance or Changes Needed to**
        **Align Its System with Community Standards.**
15

16         The March 6 Order improperly requires Defendants to make a threshold showing before

17  exercising their executive function to evaluate the MHSDS under constitutional and national

18  standards, while at the same time precluding Defendants' experts from finishing the work that

19  would allow Defendants to make a complete showing.  No such showing is required.  As the

20  United States Supreme Court has stated, prison operations are a core executive function and not

21  within the reach of federal courts: "the operation of our correctional facilities is peculiarly the

22  province of the Legislative and Executive Branches of our Government, not the Judicial."  *Bell*,

23  441 U.S. at 548.  In this regard, Defendants have the right to evaluate their own mental health

24  system.  Indeed, the orders requiring a continuous quality improvement process recognize that

25  CDCR's self-assessment of the mental health program is not only a right, but a constitutional

26  requirement.  (ECF Nos. 6846 and 7216.)

27         The Court's refusal to allow the tours to proceed is based on an assumption that

28  Defendants will use the experts' work to file a motion to modify the Program Guide or to

terminate the action.  (ECF No. 8144 at 6.)  Under that assumption, the Court announced that

Defendants were required to make a threshold showing that the "Program Guide standards exceed

nationwide standards and … whether, or how, those national standards themselves satisfy the

Eighth Amendment."  (*Id.* at 7.)  The Court concluded that without demonstrating this threshold

showing there is no evidentiary basis to find that the proposed tours "will aid in the most

expeditious resolution of this action at this point."  (*Id.*) But this Order mandates a chronological

impossibility; Defendants are not permitted to collect all the evidence needed to support the

threshold showing the Court has mandated as a condition to resume those same tours.

### C.    Defendants should not be limited to the Special Master's findings to evaluate their Eighth Amendment compliance.

The Court concluded that Defendants do not need any additional evidence beyond what is

available to them within the confines of the Special Master's monitoring and reports:

> [T]he record is replete with the court's factual findings of the present state
> of mental health care delivery to class members.  These findings are
> readily available to defendants to guide their analysis of whether they are
> sufficiently compliant with their constitutional obligations to move for
> termination of some or all parts of this action.  The proposed prison tours
> are not necessary to that analysis.

(*Id.* at 7-8.)

The Court surmised that any data and information Defendants need to assess CDCR's

constitutional compliance may be gleaned from the Special Master's reports.  (*Id.*)  But those

materials are the very thing that Defendants must be permitted to contest under the Order of

Reference.  Nothing about the *adversarial process* requires Defendants to rely solely on the

Special Master's assessments and conclusions.

The Court also concludes that Defendants can use the Special Master's reports to support

any motion they might bring or to defend against any motion Plaintiffs may bring because the

orders adopting the Special Master's reports constitute the only factual showings needed in this

case.  (*Id.* at 8-9.)  Under the Court's reasoning, Defendants are precluded from gathering the

evidence they believe best responds to Plaintiffs' motions or the Special Master's findings and

recommendations, evidence that could contradict the Special Master's findings.  (*See e.g.* ECF No.

1  8179, Defs.' objections Special Master's Sixth Re-audit on Suicide Prevention.)

2      This evidentiary constraint is contrary to the Order of Reference, which recognizes the

3  parties will not always agree with the Special Master's monitoring or findings and sets forth a

4  process to resolve such disputes.  (ECF No. 640 at 4 and ECF No. 6230 at 2.)  Defendants should

5  not be required, as the Court here suggests, to accept the Special Master's findings and

6  conclusions.  In the adversary legal system, it is routine for a party to test evidence presented by

7  others, whether that evidence is from the opposing party or an expert appointed by the court.[4]  And

8  as the Court has repeatedly stated, the Special Master monitors Defendants' compliance with the

9  Program Guide, not the Constitution. (ECF No. 6846 at 19-20, and ECF No. 4316 at 2:7-14.)  The

10  latter is one of the issues the experts will evaluate.

11      Describing Defendants' ability to object to the Special Master's monitoring reports misses

12  the point.  As discussed, this case remains an adversarial proceeding, which allows Defendants to

13  investigate facts on their own behalf.  Moreover, as the March 6 Order restates, the Court has

14  adopted a very high bar for challenging the Special Master's findings and recommendations in the

15  face of Defendants' objections and evidence.  (ECF No. 8144 at 9.) (reiterating the clear-error

16  standard for challenging the Special Master's findings and recommendations).)[5]  For this reason, it

17  is a rare event when the Court sustains Defendants' objections to the Special Master's findings or

18  recommendations.  Indeed, the Court has seemingly already weighed the evidence before

19  Defendants have been allowed to collect and present it: "Defendants have made no showing, *nor*

20  *could they*, that the Special Master's periodic monitoring reports . . . are anything other than

21  unbiased, objective assessments of the delivery of mental health care throughout the MHSDS."

22

23  _____

24  [4] Plaintiffs typically file briefs that oppose Defendants' proposed policies or any relief Defendants
    seek and those briefs are frequently accompanied by requests for further relief from this Court.
    *See e.g.* Plaintiffs' objections to Defendants' 2022-2023 Unmet Needs Assessment Report (ECF

25  No. 7900); Plaintiffs' Motion to Reject Defendants' Plan to Provide Minimum Treatment
    Standards (ECF No. 7812); and Plaintiffs' filings opposing Defendants' objections to the Special

26  Master's recent report on suicide prevention.  (ECF No. 8192 at 1:18-19 and 8198 at 4 n. 2.)

27  [5] Although the Court has used a clear-error standard, the Federal Rules of Civil Procedure require
    de novo review of a special master's findings and recommendations.  Fed. R. Civ. Proc. 53.

28

1   (*Id.* at 10:6-9 (emphasis added).)  The Court's statement is certainly accurate if Defendants are

2   never permitted to marshal their own evidence demonstrating that those assessments are flawed.

3   (*Id.* at 10:6-9.)

4       **D.    Defendants Have Presented Ample Evidence to Justify the Need to
            Complete the Expert Tours.**

5

6       Defendants presented this Court, in both their October 10 motion to lift the injunction

7   halting the tours and in the January 2024 joint statement, with ample legal and factual support to

8   justify the resumption of the expert tours.  (ECF Nos. 8005 and 8110.)  Defendants' submissions

9   include the following factual justification for the tours:  the purpose of the VRJS/Falcon study is

10  to conduct a broad, unbiased and objective assessment of CDCR's delivery of mental healthcare

11  and services.  (ECF No. 8005 at 6:14-19.)  Defendants made significant concessions to address

12  Plaintiffs' concerns about the burden of the tours and any impact the expert tours may have on the

13  litigation. (ECF No. 8110 at 2-4.)  These concessions should be more than ample to address the

14  concerns raised in the March 6 Order and to have prevented the Court from simply enjoining the

15  tours altogether.

16      In sum, Defendants' showing of a substantial case on the merits strongly favors a stay of

17  the March 6 Order.  Moreover, this Court's disagreement on the merits does not foreclose the

18  propriety of a stay because of the substantial legal and factual issues that must be addressed on

19  appeal.  And as further explained below, the Order will likely have irrevocable effects that militate

20  in favor of allowing the expert tours to resume.

21  **II.    DEFENDANTS WILL BE HARMED ABSENT A STAY.**

22      It will likely be many months before the Ninth Circuit rules on Defendants' appeal of the

23  March 6 Order.  In the meantime, Defendants seek only to complete the tours started in July of

24  2023.  There has been no showing by Plaintiffs demonstrating that Defendants' touring will

25  unduly interfere with the Court's ability to manage this case or Plaintiffs' ability to prosecute it. [6]

26  _____

27  [6] Plaintiffs' complaints about the burdensomeness of the expert tours must be considered in the
    context of this case, where Defendants pay their attorneys' fees and costs.  Moreover, although

28  Defendants invited them to observe the tours, neither the Plaintiffs nor the Special Master are

1    Accordingly, no harm will arise if this Court stays the Order precluding the expert tours pending

2    resolution of the appeal.  On the other hand, Defendants will be harmed in concrete ways if the

3    March 6 Order enjoining the expert tours stands pending appeal.  (ECF No. 8005 at 12-13.)

4         First, the ban on tours interferes with CDCR's contract with VRJS/Falcon.  CDCR

5    contracted for an assessment that would be based on, among other things, tours of their facilities.

6    Now, however, CDCR will not receive the benefit of that bargain.

7         Second, further delays will impact the ability of Defendants' experts to complete the

8    system-wide evaluation of CDCR's MHSDS proposed by VRJS/Falcon, and will therefore

9    interfere with Defendants' responsibility to self-monitor and self-correct any deficiencies.  (ECF

10   No. 8005 at 12-14.)  Defendants have been, and will continue to be, unduly prejudiced by the stay

11   of these tours.  (*Id.* at 13.)  As explained by Elizabeth Falcon, Psy.D., the team hired

12   approximately 30 experts to collaborate on this study.  (ECF No. 7884, ¶ 5.)  These experts are

13   nationally recognized leaders in the industry and "are in extremely high demand, especially those

14   with [other] part-time and full-time jobs."  (*Id.*)  All experts had to clear their schedules months

15   ago in order to accommodate the work required for this study. (*Id.*)  Unsurprisingly, "delays of

16   several weeks or more will have detrimental effects on this study, resulting in diminished

17   availability of experts and compromising the integration and completeness of the data collection."

18   (*Id.*)

19        Defendants have also presented evidence that the Court's ban on the tours will prevent the

20   timely completion of the work the expert team has already done.  (ECF No. 8005 at 13.)  Further

21   delays will likely result in losing highly-recruited experts to other industry projects.  A potential

22   loss of experts at this stage would have significant implications for the evaluation process because

23   the experts assigned to the study have not only been trained in the Program Guide and workflows

24   but have also gained experience and partially evaluated the system through extensive health record

25   reviews.  (*Id.*)  Replacing a significant proportion of experts would result in a loss of specific

26   expertise in CDCR behavioral health practices and documentation.  (*Id.*)  The insights and

27   _____

28   obligated to attend the tours.

1    recommendations provided by the experts who have gone through the entire study without

2    disruption are crucial for enhancing the effectiveness of the program.  (*Id.*)  Further delays in

3    conducting facility studies will inevitably require more time to re-orient the expert team and re-

4    evaluate items that have already been assessed.  (*Id.*)

5         The delays in collecting data from the prison tours could likely also create a disconnect

6    with the other non-tour data previously collected by VRJS/Falcon, leading to fragmented data sets

7    that lack context, incomplete information, an inability to capture evolving conditions, limited

8    perspective, and missed opportunities for follow-up investigations.  (ECF No. 8005 at 13-14.)  All

9    these delays will undoubtedly harm Defendants' ability to bring appropriate motions to modify or

10   terminate (if they choose to do so).

11        Third, the delay in resuming the expert tours could improperly deprive Defendants of the

12   ability to support litigated positions in this case with the experts' completed body of work.

13   Defendants have not predetermined their experts' findings; findings that will naturally inform their

14   litigation strategy.  (ECF No. 8110 at 5.)  This includes any strategy Defendants may employ in

15   responding to future reports from the Special Master, to motions Plaintiffs may file, and to orders

16   this Court may issue or contempt proceedings the Court has stated will take place.  The Order of

17   Reference provides Defendants the right and opportunity to disagree with the Special Master's

18   findings and all Defendants seek is to exercise that right.  (ECF No. 640 at 8, and ECF No. 6320 at

19   2-3.)

20        Finally, the March 6 Order will deprive Defendants of the ability to conduct an

21   independent assessment of the Statewide Mental Health Program.  The Special Master's

22   monitoring reports, which have improperly included statements about whether the Statewide

23   Mental Health Program is performing at a constitutionally-adequate level, remain something of a

24   black box for Defendants with no ability to conduct discovery related to the Special Master's

25   monitoring or his methodologies to test their accuracy.  Consequently, the Special Master's

26   monitoring is not a substitute for Defendants' ability to conduct their own assessments of the

27   mental health system.

28        Because no harm arises from a stay, while Defendants will be significantly prejudiced

1   absent one, this Court should stay the impact of the March 6 Order until the important legal

2   questions raised by Defendants' appeal of the March 6 Order are addressed by the Ninth Circuit.

3   **III.    THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH HEAVILY IN
        DEFENDANTS' FAVOR**

4

5          The balance of equities in this case tips sharply in Defendants' favor, and supports

6   allowing the Defendants to complete the tours that commenced in July before the Court first

7   blocked them.  Given the lack of any finding that the tours have or will interfere with the Court's

8   ability to manage its case or Plaintiffs' ability to prosecute their claims, the likelihood that a stay

9   will injure the plaintiff class is wholly speculative, particularly in light of the numerous safeguards

10  negotiated by the parties.  Moreover, the other remedies under the 1995 Order will remain in

11  place, unaffected by a stay of the Court's March 6 Order.  Thus, there is no likelihood that the

12  plaintiff class will be injured.  By contrast, as explained above, the actual harms Defendants must

13  bear by the Court's injunction prohibiting their experts completing their work are concrete and

14  substantial. Accordingly, the equities in this case favor a stay of the Order pending appeal.

15         Similarly, the public interest in allowing Defendants to complete the tours also militates in

16  favor of staying the Order.  Defendants have invested time and money in carefully rolling-out their

17  experts' work, including the tours.  They have kept the Special Master and Plaintiffs informed of

18  their actions, careful to bear in mind the Court's previous orders regulating expert tours.

19  Notwithstanding these efforts and the fact that Defendants have conceded to Plaintiffs' requests

20  for safeguards and strict limits on the scope of the tours, the Court has shut them down, at great

21  expense to Defendants.

22                                      **CONCLUSION**

23         Defendants seek a stay of the March 6 Order so that they can proceed with their experts'

24  on-site assessment of the mental health system pending the appeal of the Order.  For the reasons

25  stated above, this Court should stay its Order precluding the expert tours pending the Ninth

26  Circuit's decision.

27

28

12

1

**CERTIFICATION**

2      In preparing this filing, Defendants' counsel certify that they have reviewed the following

3 relevant orders: ECF Nos. 4361, 4539, 5131, 5711, 6017, 7003, 7807, 7897, 7918, 8005, 8029,

4 8144, and 8239.  This motion sets forth arguments that have not been resolved by prior court

5 orders as they are specifically tailored to address the merits of Defendants' motion to stay the

6 appealed March 6 order.  Counsel acknowledges this Court's prior orders concerning the subject

7 expert tours (ECF Nos. 7897, 7918, 8029, and 8144), but those orders do not foreclose this

8 motion.  Counsel make this filing under their obligation to represent their clients zealously under

9 their right to relief under Fed. R. Civ. P. 62(c), *Operating Engineers Pension Trust v. A-C Co.*,

10 859 F.2d 1336, 1344 (9th Cir. 1988), and to satisfy Federal Rule of Appellate Procedure

11 8(a)(1)(A)'s requirement.  Counsel certify that they have conducted a reasonable inquiry and have

12 determined that this filing is well grounded in fact, legally tenable, and not presented for an

13 improper purpose, to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

14 Fed. R. Civ. P. 11(b)(1); and *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) (internal

15 quotation marks omitted).  Each factual contention made in this filing is supported by a reference

16 to evidence in the record and the legal contentions are warranted by existing law or by a

17 nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new

18 law.  Fed. R. Civ. P. 11(b)(2).

19 / / /

20 / / /

21 / / /

22

23

24

25

26

27

28

13

1

DATED:  May 22, 2024

ROB BONTA
Attorney General of California
DAMON MCCLAIN
Supervising Deputy Attorney General

2

3

4

/s/ *Elise Owens Thorn*
Elise Owens Thorn
Deputy Attorney General
*Attorneys for Defendants*

5

6

7

HANSON BRIDGETT LLP

8

/s/ *Samantha D. Wolff*
PAUL B. MELLO
SAMANTHA D. WOLFF
DAVID C. CASARRUBIAS
*Attorneys for Defendants*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20785376.1

14