1   Rob Bonta, State Bar No. 202668
    Attorney General of California
2   Monica N. Anderson, State Bar No. 182970
    Senior Assistant Attorney General
3   Damon McClain, State Bar No. 209508
    Supervising Deputy Attorney General
4   Elise Owens Thorn, State Bar No. 145931
    Namrata Kotwani, State Bar No. 308741
5   Deputy Attorneys General
      1300 I Street, Suite 125
6     P.O. Box 944255
      Sacramento, CA 94244-2550
7     Telephone:  (916) 210-7318
      Fax:  (916) 324-5205
8     E-mail:  Elise.Thorn@doj.ca.gov
    Attorneys for Defendants

    HANSON BRIDGETT LLP
    LAWRENCE M. CIRELLI, SBN 114710
    PAUL B. MELLO, SBN 179755
    SAMANTHA D. WOLFF, SBN 240280
    KAYLEN KADOTANI, SBN 294114
    DAVID C. CASARRUBIAS-GONZÁLEZ,
    SBN 321994
    CARSON R. NIELLO, SBN 329970
    1676 N. California Blvd., Suite 620
    Walnut Creek, California 94596
    Telephone:    925-746-8460
    Facsimile:    925-746-8490
    Attorneys for Defendants

9

10                    **UNITED STATES DISTRICT COURT**

11                  **EASTERN DISTRICT OF CALIFORNIA**

12                      **SACRAMENTO DIVISION**

13

14   RALPH COLEMAN, et al.,                Case No. 2:90-CV-00520- KJM-DB

15          Plaintiffs,                    **DEFENDANTS' RESPONSE TO
                                           PLAINTIFFS' SECOND BRIEF
16      v.                                 REGARDING DEFENDANTS' GENERAL
                                           OBJECTIONS TO SPECIAL MASTER'S
17   GAVIN NEWSOM, et al.                   SIXTH RE-AUDIT REPORT**
                                           [ECF No. 8241]
18          Defendants.

19                                         Judge:    Hon. Kimberly J. Mueller

20

21

22

23

24

25

26

27

28

20866117.2

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND BRIEF REGARDING DEFENDANTS' GENERAL
OBJECTIONS TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT**

# I.    INTRODUCTION[1]

The Court granted Plaintiffs' request to "file a full response to Section III of Defendants' objections to the Sixth Re-Audit Report." ECF No. 8227 at 2:26. In their response, Plaintiffs ask that the Court overrule all eight of Defendants' general objections. ECF No. 8241 at 1:17. Plaintiffs also fault Defendants for seeking to use their objections as a vehicle to demonstrate compliance with the Special Master's expert's suicide prevention recommendations. *Id.* at 1:11-13 (arguing that Defendants' objections are "a clear attempt to avoid the potential contempt sanctions the Court is contemplating"). But of course Defendants' objections seek to rebut the Special Master's expert's findings of non-compliance where those findings are not supported by the evidence or are otherwise improper. Due process guarantees Defendants an opportunity to be heard and show why certain findings of non-compliance should be rejected, particularly when faced with a looming contempt hearing. Indeed, the Court itself contemplated that Defendants would be able to demonstrate compliance with the suicide prevention recommendations after April 1, 2023, and expressly stated that it "would consider what fines if any should be imposed" after Defendants were given such an opportunity. ECF No. 7743 at 4.

The Court should conduct a *de novo* review of Defendants' objections and sustain them.

# II.    RESPONSE TO PLAINTIFFS' SECOND BRIEF

## A.    The standard of review, consistent with the Court's 2013 order and Federal Rule of Civil Procedure 53(f)(3), is *de novo*.

At the outset, Plaintiffs admit that "the Court bypassed the normal draft review process set forth in the Order of Reference." ECF No. 8241 at 4:21-25. They also do not dispute that this Court issued an order in 2013 that is directly on point for the applicable standard of review when compliance reports are filed directly with the Court. *Id.* at 5:8-16 (citing ECF No. 4925 at 2 n.1). That order expressly rejects clear error as the standard and requires the Court to conduct a *de novo* review. ECF No. 4925 at 2 n.1. Plaintiffs do not, and cannot, point to any subsequent order overruling the 2013 order. Instead, Plaintiffs point to various instances where the Court has

---

[1] Page citations to documents in the docket are based on ECF pagination.

1    erroneously applied a clear error standard to review Special Master reports when, pursuant to its

2    own 2013 order, it should have conducted a *de novo* review. ECF No. 8241 at 5:17-6:15. Plaintiffs

3    also cite to various orders where the Court did not clearly state what standard of review it was

4    applying. ECF No. 8241 at 5:17-6:15 (citing ECF Nos. 4693, 4394, 4044.) Naturally, those orders

5    are not determinative of the applicable standard of review, having failed to clearly articulate one.

6         Plaintiffs next claim that because Defendants argued that various findings in the Special

7    Master's 2023 Data Remediation Report were "clearly erroneous," and because that report was

8    directly filed with the Court, they somehow conceded that the standard of review was (and is

9    forever more) clear error. ECF No. 8241 at 6:10-15. However, they fail to explain why a Court

10   conducting a *de novo* review could not also find that an expert's finding was clearly erroneous.

11   The two are not mutually exclusive. To use Plaintiffs' own logic: "Just because [Defendants] did

12   not assert that [the standard of review was *de novo* in their objections to the Special Master's 2023

13   Data Remediation Report] does not mean that [Defendants] are barred from [raising the

14   appropriate standard of review in their objections to the Sixth Re-Audit report]." *Id*. at 8 n. 2.

15         Separately, Plaintiffs overstate the terms of a 2019 stipulation to claim that Defendants

16   somehow agreed to waive their rights under the Federal Rules of Civil Procedure to have Special

17   Master reports reviewed *de novo*. *Id.* at 6:16-27. Stipulations are interpreted according to

18   principles of contract interpretation. *Ray Fladeboe Lincoln-Mercury, Inc. v. Jaguar Cars, Inc.*, 867

19   F.2d 613, 1989 WL 7571 at *1, (9th Cir. 1989), *unpublished disposition*, citing *United States v.*

20   *McKinney*, 758 F.2d 1036, 1047 (5th Cir. 1985) (a stipulation is akin to a contract), and *National*

21   *Audobon Society, Inc. v. Watt*, 678 F.2d 299, 307 (D.C. Cir. 1982) (stipulations, like contracts,

22   must be interpreted in light of the circumstances under which the agreement was made). Here, the

23   representation that the stipulation embraced issues with the standard of review applicable to the

24   review of Special Master reports borders on frivolous. ECF No. 8241 at 8:22-24 (emphasizing that

25   the parties' stipulation "—include[ed] any standard of review"). The 2019 stipulation and

26   subsequent order were entirely silent on any standard of review and, instead, exclusively focused

27   on clarifying that the parties would "have thirty days from the date of service to file objections to,

28   or move to modify, reject, or adopt" a Special Master report that was filed without first providing

1   the parties an opportunity to review and comment on the draft report. ECF No. 6230 at 2:21-25.

2   The stipulation and order say nothing about any standard of review, nothing about Federal Rule of

3   Civil Procedure 53(f)(3), and nothing about the Court's 2013 order adopting a *de novo* standard

4   for reports filed directly with the Court. Accordingly, Plaintiffs' insinuations otherwise are

5   meritless. *See, also, Language Line Services, Inc., v. Language Services Associates, Inc.,* 500

6   Fed.App'x 678, 682 (9th Cir. 2012) (holding that district courts err where they apply clear error

7   standard of review to special master's facts and findings absent stipulation by the parties). Absent

8   a specific stipulation pursuant to Rule 53(f), Defendants have not waived their right to have the

9   Special Master's report reviewed *de novo*. *See Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1022

10  n.4 (9th Cir. 1997) (en banc) (O'Scannlain, J. concurring in part and dissenting in part) (observing

11  that the court, and not the parties, must determine the standard of review, and therefore, it cannot

12  be waived); *accord*, *Worth v. Tyer*, 276 F.3d 249, 262 n.4 (7th Cir. 2001).

13          Because the Special Master's expert's Sixth Re-Audit report was directly filed with the

14  Court, the standard of review—consistent with the Court's 2013 order and Federal Rule of Civil

15  Procedure 53(f)(3)—is *de novo*.

16  **B.      Defendants were prejudiced by not having the draft review process to demonstrate**
            **compliance with the Special Master's expert's suicide prevention measures.**
17

18          Plaintiffs perpetuate the fiction that Defendants had "countless opportunities" to

19  demonstrate compliance with the Special Master's expert's suicide prevention measures before

20  filing their objections to the Sixth Re-Audit report. ECF No. 8241 at 7:18-9:4; 18:18-22. That is

21  simply not true. At the outset, it is not possible for Defendants to "pre-object" to, or demonstrate

22  compliance with, findings that have not yet been made. In any event, and to add further context for

23  CDCR's actions during the audit process, back in June of 2023, Mr. Hayes admonished CDCR to

24  stop using his suicide prevention exit calls as a forum to discuss Mr. Hayes's preliminary findings,

25  to stop commenting on his preliminary findings, and to stop asking questions or requesting

26  information related to his auditing. Declaration of Travis Williams (Williams Decl.) Ex. A. He

27  promised that CDCR would have the opportunity to "respond to his final report in due course,"

28  and directed that:

> [T]he exit meetings should not be used to request information from me that your staff have ample access to (and indeed, provided to me). I hope my concerns are clear and I expect my suicide prevention exits to return to their intended purpose - to provide a high-level summary of my observations and preliminary findings - going forward. Thank you.

*Id.*

Mr. Hayes's earlier email to CDCR provides additional context to his statements made recently in court on the subject. Though Mr. Hayes stated at the recent status conference that the exit meetings "produce[] almost zero questions or comments in each facility," based on his prior email, CDCR was under the impression that any such questions or comments were not permitted. April 26, 2024 Transcript of Proceedings at 47:20-48:1; Decl. Williams at ¶¶ 4-5.

This leads to Plaintiffs' other argument speculating that Mr. Hayes determined that the proffered information in CDCR's SPRFIT audit reports did not change or undermine his findings and conclusions. ECF No. 8241 at 9:5-21. However, Mr. Hayes does not discuss all SPRFIT reports in his Sixth Re-Audit report, despite the fact that he was given access to most of the reports beginning in September of 2023. April 26, 2024 Transcript of Proceedings at 48:29-49:3. For this additional reason, it is critical that the Court conduct a *de novo* review of Defendants' objections and give due consideration to the relevant SPRFIT audit reports.

**C.     Objections III(B) & III(C) related to Mr. Hayes's method for evaluating compliance and the thresholds used to measure compliance should be sustained.**

Objections III(B) and III(C) relate to Mr. Hayes's method for evaluating compliance and the thresholds used to measure compliance. ECF No. 8179 at 13:3-16:16. As Defendants explicitly noted in their objections, they objected to Mr. Hayes's methodology and compliance thresholds in his Sixth Re-Audit report to preserve the issues for appellate review. ECF No. 8179 at 13 n.2 & 14 n.3. While Defendants asserted these objections under the axiom that parties must contemporaneously object to findings or issues to preserve them for appellate review, Defendants understand the Court's recent order to hold that Defendants are precluded from asserting objections in the future that have been previously overruled, and that such objections would be futile and sanctionable.

That said, Defendants' objections should be sustained because they rely on substantially

1   different evidence from prior objections. The substantially different evidence is presented by Dr.

2   Joel T. Andrade, a Clinical, Correctional and Forensic Social Worker, a Certified Correctional

3   Health Professional, and a Certified Correctional Healthcare Professional specializing in Mental

4   Health who has over 25 years of clinical and administrative experience in correctional healthcare.

5   ECF No. 8180-3 ¶ 1. Despite Plaintiffs' misrepresentations, Dr. Andrade does more than merely

6   state that a 100% compliance threshold is "unreasonable."[2] Relying on his decades of experience,

7   Dr. Andrade goes on to explain that "there are other ways to monitor and improve critical suicide

8   prevention tasks" including by establishing "a review process at each facility that identifies areas

9   that fall below a more reasonable threshold (such as 90%)." *Id*. at ¶ 21. He also provides specific

10  examples showing that a 100% compliance threshold at each institution is unattainable. *Id*. Why

11  Plaintiffs try to minimize this expert opinion that provides a realistic way to achieve compliance

12  with such "an extremely important area for Suicide Prevention Program that requires constant

13  vigilance and monitoring" is unclear. *Id*. Nonetheless, the presentation of new evidence should

14  merit consideration of an objection, even if the underlying argument supporting the objection was

15  made and rejected previously based on different circumstances then before the Court. *Gonzalez v.*

16  *Arizona*, 677 F.3d 383, 390 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of*

17  *Arizona, Inc.*, 570 U.S. 1 (2013) (recognizing an exception to the law-of-the-case doctrine where

18  "substantially different evidence was adduced at a subsequent trial.").

19          Plaintiffs similarly try to minimize Defendants' case law whose throughline is that neither

20  the Eighth Amendment nor the concept of substantial compliance requires perfection. *See* ECF

21  No. 8241 at 8:4-9:1. *Balla*, *Taylor*, *Miller*, and *Rouser*—in their varying contexts—support the

22  conclusion that a Court enforcing the Eighth Amendment must minimally guarantee substantial,

23  though not perfect, compliance with the establishment of a basic suicide prevention program that

24  identifies, treats and supervises inmates with suicidal tendencies. Nothing more. Nothing less.

25  _____

26  [2] Plaintiffs try to drastically understate Dr. Andrade's expert opinion related to the compliance
    methodology and thresholds employed in this case by simply referring to him as a "forensic social
    worker" and saying that he "merely opined" that a 100% threshold was "unreasonable." ECF No.
27  8241 at 10:26-8:1. They do so without providing any countervailing expert opinion to support Mr.
28  Hayes's methodology and compliance thresholds.

1    Finally, and throughout their brief, Plaintiffs suggest that Defendants should file a motion

2    to modify the Program Guide instead of filing objections. ECF No. 8241 at 13:14-19 (suggesting

3    Defendants move to modify prior orders); *see also id.* at 17:1-5 (same), 19:7-11 (same). This

4    simple response ignores the difficulty in the process suggested because Plaintiffs routinely oppose

5    such proposed modifications. *E.g.* ECF No. 6843 (Defendants' motion to modify inpatient-bed-

6    availability orders), 6849 (Plaintiffs' opposition); ECR No. 7250 (Defendants motion to modify

7    2009 Staffing Plan), 7268 (Plaintiffs' opposition). The Court has also since imposed pre-filing

8    hurdles that make filing a motion to modify all that more onerous. ECF No. 7003. Without the

9    need for bringing a motion, Defendants' objections to the Special Master's expert's reports give

10   the Court valuable information to neutrally evaluate the Special Master's work anew and ensure

11   equitable monitoring of Defendants' implementation of the remedy in this case. Otherwise,

12   Defendants would have no role in reviewing the Special Master's reports, and the special

13   mastership would be converted into a quasi-receivership without the attendant accountability.

14   The Court should give due consideration to Defendants' objections. Even if overruled

15   based on prior orders, Defendants should be allowed to preserve their objections to new reports for

16   appellate review.

17   **D.    Objection III(D) related to Mr. Hayes not showing a correlation between failure to**
         **implement his recommendations and self-harm events, completed suicides, or an**
18       **increase in suicide risk should be sustained.**

19   Objection III(D) relates to Mr. Hayes not showing a correlation between failure to

20   implement his recommendations and self-harm events, completed suicides, or an increase in

21   suicide risk. ECF No. 8179 at 16:17-17:21. Plaintiffs respond that Mr. Hayes has never been

22   required to show that implementation of his recommendations are actually reducing suicides or

23   self-harm events, so Defendants should keep quiet and stop asking questions.[3] But, as Defendants

24

25   [3] Plaintiffs present a misleading statement when they say that ECF No. 7696 at 8 shows that the
     Court has previously found that implementation of the suicide prevention recommendations will

26   likely reduce suicides in CDCR. ECF No. 9:12-18. At best, the Court's 7696 order says that full
     implementation would "reduce the pattern of foreseeable or preventable inadequacies in clinical

27   judgment and administrative action or inaction involved in inmate suicides." ECF No. 7696 at 8:4-
     5. It says nothing about Mr. Hayes's recommendations reducing inmate suicides and there is no

28

1   demonstrated in their objections—supported by competent expert evidence—there are some

2   requirements outlined in the Program Guide that, although not perfectly implemented, will not

3   negatively affect the clinical care being provided to the plaintiff class. ECF No. 8180-3 ¶ 14.[4]

4           On the issue of whether social workers can complete discharge SRASHEs, Plaintiffs do

5   not dispute the fact that the Special Master's expert has elsewhere taken the position that it is

6   perfectly fine for licensed clinical social workers to assess when patients can be discharged from

7   suicide precautions in other settings—they just do not want Defendants to avail themselves of this

8   classification for the PIPs in this case because the Program Guide does not expressly allow it. ECF

9   No. 8241 at 13:3-7. It puts suicide prevention in a vacuum devoid of the other complexities of this

10  30-year-old case that includes staffing shortages and onerous, ever-growing, documentation

11  requirements that hurt staffing retention. ECF No. 8013 at 42:10-20 (October 5, 2023 Transcript of

12  Hearing). It also ignores that the same SRASHE is used for a PIP discharge as for any other

13  discharge. Williams Decl. ¶ 6. By compartmentalizing suicide prevention from the rest of the case,

14  Plaintiffs avoid the uncomfortable reality that decades of litigation and the incremental expansion

15  of the remedy in this case will never end.

16          Defendants' objection should stand. The Court should, at a minimum, be cognizant that

17  Mr. Hayes's report fails to show a correlation between failure to implement his recommendations

18  and self-harm events, completed suicides, or an increase in suicide risk.

19  **E.      Objection III(E) related to Mr. Hayes's methodology and reliance on unverifiable
            evidence should be sustained.**

20

21          Objection III(E) relates to Mr. Hayes's methodology and reliance on unverifiable evidence.

22  ECF No. 8179 at 9:22-12:17. Plaintiffs' response is twofold. First, they essentially claim that these

23  sections of the Sixth Re-Audit report at issue are similar to dicta—observations made by Mr.

24  Hayes that are not essential to his findings on Defendants' compliance with court ordered

25

26  ———————————

    evidence in the record to date to support such a conclusion.

27  [4] Plaintiffs did not file any objections to Dr. Andrade's declaration. Thus, any evidentiary

28  objections are forfeited. Nor did Plaintiffs present any contrary expert evidence.

20866117.2                                    8

DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND BRIEF REGARDING DEFENDANTS' GENERAL
OBJECTIONS TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT

recommendations. ECF No. 8241 at 13:26-28. Thus, claim Plaintiffs, Defendants' concerns with these sections should be disregarded as irrelevant. *Id*. at 13:28. However, the Court has in the past adopted Mr. Hayes's reports "in full." *E.g.* ECF Nos. 7696, 6212, 5762, 5429. Thus, the Court's wholesale imprimatur on the reports calls for a critical review of all statements made, even if they are not essential to his findings.

Second, Plaintiffs try to do Mr. Hayes's work for him—tacitly conceding the deficiencies with the report. As discussed above, Mr. Hayes's report does not link staffing shortages to actual suicide attempts, self-harm, or completed suicides. Plaintiffs justify this omission by arguing that the portion of the report Defendants objected to did not relate to suicide prevention, hence there was no reason why the Report would attempt to establish a specific link between staffing shortages and actual suicide prevention. *See id.* at 14:8-12. But the chief subject of Mr. Hayes's report is suicide prevention. One naturally expects all criticisms within the report, including those related to staffing shortages, to be linked to suicide prevention. Plaintiffs also justify the shortfall with Mr. Hayes's report by supplementing Mr. Hayes's findings with interpretations of other sections of Mr. Hayes's report and Defendants' own Suicide Reports and Quality Improvement Plan reports by their lawyers.[5] *Id.* at 14:13-15:4 (citing to the attorney declaration of Michael Nunez). These after-the-fact justifications lack corroboration from any expert in the underlying subject. There is also a lack of proof that Mr. Hayes himself would agree with Plaintiffs' lawyers' non-expert opinions and characterizations of the record. By contrast, Defendants supported their objections with competent evidence by clinical experts. ECF Nos. 8180-1, 8180-2, 8180-3, 8180-4, 8180-5, 8180-6.

On the issue of Mr. Hayes's comparison of the 2023 annual suicide rate in CDCR against

---

[5] Plaintiffs attempt to extrapolate from Defendants' Suicide Reports and Quality Improvement Plan reports that inadequate staffing directly impacts suicides because the suicide case reviews note certain policy violations related to staffing. ECF No. 8241 at 14:25-15:4. This attempted comparison is flawed, however, because all policy violations, not just causal policy violations, are considered with suicide case reviews. Williams Decl. ¶ 7. Thus, just because a suicide case review makes note of staffing issues as a policy violation does not mean that CDCR determined staffing was causally related to a suicide.

1  the 2019 national average suicide rate in state prisons, Plaintiffs claim that there is nothing wrong

2  with the comparison because the 2019 national average was the most recent national data available

3  at the time. ECF No. 8241 at 15:5-19. They also say that the comparison is fine because

4  Defendants have also made similar comparisons to the 2019 statistic in their annual suicide reports

5  filed with the Court. *Id.* However, the comparison is more prejudicial than probative because it

6  ignores multiple data points between 2019 and 2023. Defendants' objection serves an important

7  purpose of pointing out the shortcomings with the evidence to avoid any confusion to the Court.

8      Plaintiffs' final point with regard to objection III(E) seeks to minimize the fact that the

9  national state prison suicide rate continues to rise, showing that increases in suicides are not

10  unique to CDCR. *Id.* at 15:20-16:12. Ironically, they fault Defendants for relying on an

11  international study because it is not focused specifically on CDCR's population. *Id.* at 16:1. Yet,

12  when Defendants hire experts to conduct a study focused specifically on CDCR's population,

13  Plaintiffs place obstacles along the way to ensure that no such study can ever take place, or if it

14  does, to ensure that it is significantly restricted. *E.g.* 7883 at 2-5 (seeking to prohibit CDCR's

15  experts from having any contact with patients or observations of patient treatment outside the

16  presence of Plaintiffs' counsel, from observing one-on-one treatment, and requiring patient and

17  staff consent to conduct interviews, treatment and/or hearing observations).

18      Defendants' general objection III(E) should be duly considered and sustained.

19  **F.    Objection III(F) related to the vagueness and overbreadth of Mr. Hayes's recommendations should be sustained.**

20

21      Objection III(F) relates to the vagueness and overbreadth of Mr. Hayes's

22  recommendations. ECF No. 8179 at 20:18-24:5. The first part of this objection relates to Mr.

23  Hayes's methodology that takes the number of compliant institutions divided by the number of

24  audited institutions to make an overall finding of systemic compliance or non-compliance.

25  Plaintiffs argue that Defendants' competing approach of focusing on deficient institutions in an

26  individualized manner ignores the need to ensure overall systemic compliance. ECF No. 8241 at

27  17:6-10. Conveniently, this position ignores Dr. Andrade's important point that Mr. Hayes's

28  current approach is problematic because it does not ensure that every facility achieves compliance

10

1  (only 90% of facilities), and because it wastes monitoring resources to continue to monitor sites

2  that have shown compliance. ECF No. 8180-3 ¶ 12. Plaintiffs' resistance to Mr. Hayes's shifting

3  his monitoring resources and focus to problematic institutions is antithetical to the remedial goals

4  of this case.

5          Next, Plaintiffs pretend not to know what Defendants mean when they describe Mr.

6  Hayes's process of review that does not allow for real-time corrective action that could help bring

7  Defendants into compliance. ECF No. 8241 at 17:11-18:2. To be clear, Defendants' concern is that

8  they have understood that they may not speak up during exit calls to discuss and proactively

9  address any deficiencies *before* Mr. Hayes issues his final report. As a result, the re-audit reports

10 often include "non-compliant" findings that might have otherwise been addressed earlier to bring

11 CDCR into compliance.

12         Plaintiffs also take issue with Defendants' objection to Recommendation 31 of the report

13 which fails to expressly identify the names of the institutions found compliant with the

14 recommendation. *Id.* at 8241 at 18:3-13. They essentially argue that it does not matter what

15 institutions were compliant so long as the report identifies the institutions that were not compliant,

16 which is included at page 53 of Mr. Hayes's report. *Id.* In doing so, Plaintiffs miss the importance

17 of highlighting those institutions that are doing things well. It is equally valuable to indicate which

18 institutions are compliant, and the CDCR personnel who work hard each and every day to improve

19 suicide prevention deserve this recognition. The Court should sustain Defendants' objection to

20 make clear which institutions were compliant with recommendation 31.

21         Finally, with regard to Defendants' general objection related to Recommendation 32,

22 Plaintiffs say that the structure of the recommendation, even if it contains 19 subparts, is not an

23 impediment to compliance. ECF No. 8241 at 18:23-19:11. The problem with an overbroad

24 recommendation that includes multiple subparts is that if an institution is compliant with 18 out of

25 19 subparts, it can still be marked as non-compliant with the overarching recommendation. That

26 can mislead the Court into perceiving that an institution is doing far worse on its implementation

27 of its suicide prevention recommendations than it actually is.

28         Critically, Defendants' III(F) objection does not ask for any order modifying any prior

20866117.2                                         11

1  recommendations. *See* ECF No. 8198 at 8:13-15. It simply highlights the problematic issues with

2  the presentation of the recommendations in the Sixth Re-Audit report and shows that greater

3  clarity and targeted guidance would be helpful to CDCR's implementation efforts. Accordingly,

4  the objection should be duly considered and sustained.

5  **G.    Objection III(G) related to Mr. Hayes auditing more than the plain text of the**
        **original Court-ordered recommendations should be sustained.**

6

7         Objection III(G) relates to Mr. Hayes auditing more than the plain text of the original

8  Court-ordered recommendations. ECF No. 8179 at 24:6-26:26. Plaintiffs have previously admitted

9  that Mr. Hayes engages in an "evolving practice" when it comes to monitoring Defendants'

10  compliance with the Court ordered recommendations—incrementally adding new requirements

11  with each new report. *See* ECF No. 8198 at 10:15-18. Now, Plaintiffs say that Defendants should

12  be familiar enough with this practice and should reserve their objections because they have

13  received everything they need to know piecemeal through multiple reports that have been filed

14  with the Court and subsequently adopted. ECF No. 8241 at 19:14-22:13. The important distinction

15  that is lost in Plaintiffs' argument is that Defendants' response to Mr. Hayes's objection is also

16  their opportunity to demonstrate compliance in anticipation of contempt sanctions. *See* ECF No.

17  7743 at 4. And, in order for contempt to be found, there has to be a showing by clear and

18  convincing evidence that Defendants violated a clear, specific, and definite order of the Court.

19  *F.T.C. v. Affordable Media*, 179 F.3d 1239 (9th Cir. 1999). Facing a tsunami of monetary fines,

20  Defendants have no choice but to demand that they be held to the clear, specific, and definite

21  terms of the original Court-ordered recommendations and not to a constantly evolving standard.

22  Because, as Plaintiffs admit, "Mr. Hayes's auditing practices do not match exactly what is in the

23  specific text of each original recommendation" (ECF No. 8241 at 22:15-16), Defendants' III(G)

24  objection should be sustained.

25  **H.    Defendants' objection to the misleading Table 3 in Mr. Hayes's report should be**
        **sustained.**

26

27         Finally, Plaintiffs assert that Table 3 and the data within it is not "a finding of fact" that

28  this Court needs to concern itself with. ECF No. 8241 at 22:23-28. Applying the wrong standard,

1   Plaintiffs say that Mr. Hayes's presentation of the data in a bar graph is not clear error. *Id.* at 23:9-
2   10. And, at worst, Plaintiffs say the graph is "irrelevant." *Id.* at 23:11. But, again, the problem with
3   Table 3 is that it presents a picture of CDCR's suicide prevention efforts that is more prejudicial
4   than probative because it relies on few data points, an uneven time interval, and by his own
5   admission, aggregates months' worth of data into a single point in time. ECF No. 8179 at 28:6-10.
6   As mentioned above, it is dangerous to include misleading information like Table 3 in the report
7   because of the possibility that the Court will adopt the report in full.

8       This concern highlights the foresight Judge Karlton had in 2013 when he recognized that
9   reports filed directly with the Court (without the opportunity for Defendants to make informal
10  objections) should be reviewed *de novo*. By removing Defendants from the pre-filing step, there is
11  a real risk that a voluminous report (like Mr. Hayes's re-audit reports) could inadvertently contain
12  inaccuracies and misrepresentations that could undermine the integrity of the record. Thus, those
13  reports must be subject to careful scrutiny

14                          **III.    CONCLUSION**

15      Upon conducting its *de novo* review of Defendants' general objections, the Court can and
16  should sustain Defendants' objections.

17                          **IV.    CERTIFICATION**

18      Defendants' counsel certify that they reviewed the following orders in preparing this filing:
19  ECF Nos. 640, 3954, 4044, 4361, 4394, 4693, 4925, 5271, 5429, 5762, 6212, 6230, 6441, 6973,
20  7003, 7004, 7006, 7179, 7216, 7696, 7699, 7743, 8121, 8137, 8192, 8238. Counsel specifically
21  addresses the Court's May 16, 2024 order that admonishes counsel against filing briefs or
22  objections containing arguments that have been resolved by prior court orders unless counsel
23  seeks and obtains leave of court under established procedures to bring an appropriate motion for
24  relief from those orders. ECF No. 8239 at 6-7. This brief sets forth arguments that have not been
25  resolved by prior court orders as they are specifically tailored to address the merits of Plaintiffs'
26  brief. Counsel make this filing under their obligation to represent their clients zealously under
27  their right to relief under Fed. R. Civ. P. 62(c). *Operating Engineers Pension Trust v. A-C Co.*,
28  859 F.2d 1336, 1344 (9th Cir. 1988). Counsel certify that they have conducted a reasonable

1  inquiry and have determined that this filing is well grounded in fact, legally tenable, and not

2  presented for an improper purpose, to harass, cause unnecessary delay, or needlessly increase the

3  cost of litigation. Fed. R. Civ. P. 11(b)(1); and *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384,

4  393 (1990) (internal quotation marks omitted). Each factual contention made in this filing is

5  supported by a reference to evidence in the record or elsewhere and the legal contentions are

6  warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing

7  existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2).

8  DATED: May 24, 2024                           ROB BONTA
                                                 Attorney General of California
9

10
                                       By:_____*s/ Elise Owens Thorn*_____
11                                          DAMON MCCLAIN
                                            Supervising Deputy Attorney General
12                                          ELISE OWENS THORN
                                            Deputy Attorney General
13                                          *Attorneys for Defendants*

14

15  DATED: May 24, 2024                           HANSON BRIDGETT LLP

16

17
                                       By:_____*s/ Paul B. Mello*_____
18                                          LAWRENCE M. CIRELLI
                                            PAUL B. MELLO
19                                          SAMANTHA D. WOLFF
                                            DAVID C. CASARRUBIAS-GONZÁLEZ
20                                          *Attorneys for Defendants*

21

22

23

24

25

26

27

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND BRIEF REGARDING DEFENDANTS' GENERAL
OBJECTIONS TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT