1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   MONICA N. ANDERSON, State Bar No. 182970
    Senior Assistant Attorney General
3   DAMON MCCLAIN, State Bar No. 209508
    Supervising Deputy Attorney General
4   ELISE OWENS THORN, State Bar No. 145931
    NAMRATA KOTWANI, State Bar No. 308741
5   Deputy Attorneys General
      1300 I Street, Suite 125
6     P.O. Box 944255
      Sacramento, CA 94244-2550
7   Telephone: (916) 210-7318
    Fax: (916) 324-5205
8   E-mail: Elise.Thorn@doj.ca.gov
    Attorneys for Defendants

    HANSON BRIDGETT LLP
    LAWRENCE M. CIRELLI, SBN 114710
    PAUL B. MELLO, SBN 179755
    SAMANTHA D. WOLFF, SBN 240280
    KAYLEN KADOTANI, SBN 294114
    DAVID C. CASARRUBIAS-GONZÁLEZ,
    SBN 321994
    CARSON R. NIELLO, SBN 329970
    1676 N. CALIFORNIA BLVD., SUITE 620
    WALNUT CREEK, CALIFORNIA 94596
    TELEPHONE:   925-746-8460
    FACSIMILE:   925-746-8490
    Attorneys for Defendants

9

10                    UNITED STATES DISTRICT COURT

11                  EASTERN DISTRICT OF CALIFORNIA

12                        SACRAMENTO DIVISION

13

| | |
|---|---|
| 14  RALPH COLEMAN, et al., | Case No. 2:90-CV-00520- KJM-DB |
| 15          Plaintiffs, | **DECLARATION OF DR. TRAVIS WILLIAMS IN SUPPORT OF DEFENDANTS' RESPONSE TO** |
| 16       v. | **PLAINTIFFS' SECOND BRIEF REGARDING DEFENDANTS' GENERAL** |
| 17  GAVIN NEWSOM, et al. | **OBJECTIONS TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT** |
| 18          Defendants. | [ECF No. 8241] |
| 19 | |
| 20 | Judge:   Hon. Kimberly J. Mueller |

21       I, Travis Williams, PsyD, CCHP-MH declare as follows:

22       1.       I am a Mental Health Administrator at the California Department of Corrections and

23  Rehabilitation ("CDCR"). I have personal knowledge of the facts set forth herein, except as to those

24  stated on information and belief and, as to those, I am informed and believe them to be true. If called

25  as a witness, I could and would competently testify to the matters stated herein.

26       2.       In my role at as a Mental Health Administrator for CDCR, I regularly work on the

27  Coleman Class Action as part of CDCR's Mental Health leadership team. I am familiar with

28  existing Program Guide policies and I regularly attend the small workgroup meetings held with

1  experts on the Special Master's team.

2      3.      I am also actively involved in CDCR's efforts to develop and maintain a durable

3  suicide prevention program in connection with court-ordered remediation in this matter. Lindsay

4  Hayes, the Special Master's expert in suicide prevention practices, has conducted several audits of

5  the suicide prevention practices in CDCR prisons.

6      4.      On June 5, 2023, I sent an email to Mr. Hayes explaining why it was important to

7  receive specific information regarding alleged deficiencies with CDCR's implementation of

8  suicide prevention measures so that they could be addressed and corrected in real time, versus

9  when his final re-audit report was released. Mr. Hayes responded to my email on June 13, 2023

10  suggesting that questions and comments were inappropriate for exit calls, and promising that

11  CDCR would have an opportunity to respond to his final re-audit report in due course. Attached

12  hereto as **Exhibit A** is a true and correct copy of my email to Mr. Hayes and his response. The

13  communication between myself and CDCR's attorneys has been redacted.

14      5.      Based on Mr. Hayes's June 13, 2023 email, myself and my colleagues were under

15  the impression that questions and comments regarding Mr. Hayes's preliminary findings that were

16  shared during exit calls were no longer permitted.

17      6.      CDCR's Suicide Risk and Self-Harm Evaluation, also known as a SRASHE, is

18  used by CDCR's mental health professionals to determine the level of risk of suicide, and to

19  develop individualized care plans for inmates identified as being at risk. The same SRASHE is

20  used for a discharge from a Psychiatric Inpatient Program, also known as a PIP, as for any other

21  discharge.

22      7.      Defendants' Suicide Reports and Quality Improvement Plan reports track all policy

23  violations. Thus, when conducting a suicide case review, both ordinary policy violations and

24  causal policy violations are considered. This means that even if a suicide case review makes note

25  of staffing issues as an ordinary policy violation, it does not mean that staffing was causally

26  related to a given suicide.

27      I declare under penalty of perjury under the laws of the United States of America that the

28  foregoing is true and correct.

DECLARATION OF DR. TRAVIS WILLIAMS ISO DEFS' RESPONSE TO PLFS' SECOND BRIEF
REGARDING DEFS' GENERAL OBJECTIONS TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT

1     Executed on this 24th day of May, 2024, at Carmichael, California.

2

3                                               *s/ Travis Williams*
                                        Travis Williams, PsyD, CCHP-MH
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DR. TRAVIS WILLIAMS ISO DEFS' RESPONSE TO PLFS' SECOND BRIEF
REGARDING DEFS' GENERAL OBJECTIONS TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT

# EXHIBIT A



**From:** Lindsay Hayes <lhayesta@msn.com>
**Sent:** Tuesday, June 13, 2023 1:25 PM
**To:** Williams, Travis@CDCR <Travis.Williams@cdcr.ca.gov>
**Cc:** Carda, Amber@CDCR <Amber.Carda@cdcr.ca.gov>
**Subject:** Re: Data request

**CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Travis:

I write in response to your email response of June 5, 2023, which responded to my concerns regarding the tone and tenor of comments, questions, and requests from your regional SPRFIT clinician during my most recent suicide prevention exits for CIW, CIW-PIP, and CIM. As I've previously stated, those comments, as well as those from other regional SPRFIT clinicians during earlier suicide prevention exits for CSP-SAC, CCI, and WSP, were inappropriate and interfered with the general purpose of my suicide prevention exits, which is to provide plaintiffs, the institution and their staff with my preliminary findings in real time.

In addition, specific requests during the exits for the data that I rely on for my preliminary findings—which have been infrequent in the past – have now become routine and are likewise obstructing the purpose of my exits.

In regard to the specific questions raised during the recent exits for CIW and CIM, including the seven (7) specific data requests in your email of June 5, the answers to those questions are all contained in the information that was provided to me by CDCR and/or each facility. CDCR will have ample opportunity to respond to my final report in due course, but the exit meetings should not be used to request information from me that your staff have ample access to (and indeed, provided to me).

I hope my concerns are clear and I expect my suicide prevention exits to return to their intended purpose – to provide a high-level summary of my observations and preliminary findings – going forward. Thank you.

Lindsay M. Hayes

---

**From:** Williams, Travis@CDCR <Travis.Williams@cdcr.ca.gov>
**Sent:** Monday, June 5, 2023 7:18 PM
**To:** Lindsay Hayes (lhayesta@msn.com) <lhayesta@msn.com>
**Cc:** Carda, Amber@CDCR <Amber.Carda@cdcr.ca.gov>
**Subject:** Data request

Hi Lindsay,

I know there were some unexpected requests for data on Friday during the exit calls you led. I wanted to start by providing a general comment on why we are asking for specific patient numbers. The regional coordinators have been working extensively with the institutions to improve their suicide prevention programs. They have conducted audits, provided guidance and mentoring, and established corrective action when necessary. So, when they hear about deficiencies, they want to jump on them quickly to make sure the institutions are prompt in correcting the problems found. Some of the comments from our team on Friday may have seemed irrelevant, given they highlighted different practices from what you saw on site. However, the coordinators also want the hard work of the institutions to be recognized because everyone is working tirelessly toward improvement. I can

understand, however, that getting so many requests and comments on the exit calls may be unsettling, particularly when that has not been common in the past.

To study the records and collaborate with the institution on effective corrective action now rather than when your final report is released, I am requesting that we receive patient names/CDCR numbers for the following concerns you raised:

1. CIW: the two identified patients that were on behavioral watch
2. CIW: Cases wherein SREs for urgent/emergent referrals for DTS were not completed
3. CIW: the IDTTs where there was uneven discussion regarding patient diagnosis and out-of-cell privileges
4. CIW: discharges, where there were no discharge SREs or the SRE was completed by non-0licensed staff, or where there was no safety plan
5. CIM: cases with uneven discussion of patient diagnosis and out-of-cell privileges at the IDTT
6. CIM: MHCB discharges that did not have a five-day f/u
7. CIM: cases wherein no SRE was completed for urgent/emergent referrals

While we provided the data used for your review, it would be beneficial to have the CDCR numbers so we didn't have to go through all of the records for all patients to locate the patients with deficiencies. We genuinely want to improve our system, as do our regional specialists, and having this information will allow us to make rapid improvements in cases where the problems are located.

-

Travis Williams, PsyD, CCHP-MH

Mental Health Administrator
Clinical Support | Suicide Prevention and Response | Mental Health Training Unit
Statewide Mental Health Program
Division of Health Care Services
CDCR
Office: 916-691-0297
iPhone: 661-709-7834
E-mail: travis.williams@cdcr.ca.gov

Adobe Systems

CONFIDENTIALITY NOTICE: This communication and contents may have sensitive, confidential and/or legally privileged information. Any unauthorized disclosure, distribution, or action in reliance on the contents of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact the sender and destroy all events of this communication. For IT issues contact our Solutions Center at 1-888-735-3470.