DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
MARISSA HATTON – 348678
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
ALEXANDER GOURSE – 321631
ADRIENNE PON HARROLD – 326640
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GAVIN NEWSOM, et al.,<br><br>  Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: STAFFING CONTEMPT REMEDIES**<br><br>Judge: Hon. Kimberly J. Mueller |

[4502898.5]

**INTRODUCTION**

More than seven months have passed since the multi-day evidentiary hearing on Defendants' undisputed, longstanding non-compliance with the Court's staffing orders. Defendants could have used this time to reassess their failed approach to mental health staffing and chart a new course. But they did not, and their mental health staffing crisis is worse today than it was in October 2023.[1] Because the mere threat of contempt has not sufficed to coerce Defendants into compliance, and because Defendants' non-compliance continues to have severe, life-threatening consequences for the Plaintiff class, the Court should finalize its tentative findings of contempt, order Defendants to immediately deposit all fines that have accumulated to date in the Court's registry, and appoint an administrator to oversee and direct the disbursement of those funds to pay for specific measures that will finally bring Defendants into compliance.

**I.  THE COURT SHOULD FINALIZE ITS TENTATIVE CONTEMPT FINDINGS.**

"Civil contempt … consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Institute of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993)). The Court's March 8, 2024 Tentative Ruling ("Tentative Ruling") correctly finds, based on clear and convincing evidence, that Defendants have not complied with the Court's orders requiring them to implement their own 2009 Staffing Plan, as modified, and that those orders are sufficiently specific and definite to be enforced by contempt. *See* ECF No. 8147 at 2-3. The Tentative Ruling also correctly finds that

---

[1] Only 59 percent of Defendants' psychologist positions were filled as of March 2024, the most recent month for which data is available—two percentage points lower than in October 2023. The fill-rate for social worker positions fell by one percentage point during the same time period, to 72 percent. And the fill-rates for psychiatrists, recreational therapists, and medical assistants fell by four, five, and seventeen percentage points, respectively. *Compare* ECF No. 8075 at 5-9 *with* ECF No. 8245 at 5-9.

Defendants have not met their burden of showing that compliance is impossible or that they took all reasonable steps within their power to comply. *Id.* at 4-6. The Court should finalize its tentative ruling that Defendants are in contempt.

## II. THE COURT SHOULD ORDER DEFENDANTS TO IMMEDIATELY DEPOSIT ALL FINES THAT HAVE ACCUMULATED TO DATE IN THE COURT'S REGISTRY.

The Court has "broad equitable power to order appropriate relief in civil contempt proceedings." *SEC v. Hickey,* 322 F.3d 1123, 1128 (9th Cir. 2003). Before imposing a monetary sanction for the purpose of coercing compliance, however, the Court must give "reasoned consideration" to "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Parsons v. Ryan*, 949 F.3d 443, 456–57 (9th Cir. 2020). In this case, both factors strongly support an order requiring Defendants to immediately deposit in the Court's registry all fines that have accumulated to date, pursuant to the Court's Order of February 28, 2023. *See* ECF No. 7742.

### A. Defendants' Continued Contumacy Threatens Significant Harm to the *Coleman* Class.

There is abundant evidence in the record that Defendants' continued non-compliance with their staffing obligations currently prevents and will continue to prevent them from complying with numerous other aspects of the remedy in this case. At trial, for example, multiple witnesses testified that widespread vacancies are preventing Defendants from complying with Program Guide requirements relating to treatment planning, individual and group therapy, and suicide prevention. *See, e.g.*, Tr. 10-4-23 at 137-39 (Dr. Mehta testifying that Defendants are unable to fulfill certain suicide-prevention requirements due to a lack of adequate staffing); Tr. 10-5-23 at 33-34 (Dr. David testifying that "we basically shut down CCC[MS]" due to staffing shortages and that there are no routine MHPC contacts or routine IDTTs in either CCCMS or EOP programs at CMF); *id.* at 86-89, 91-92 (Dr. Franceschi testifying that EOP program at CSP-SAC provides monthly instead of weekly MHPC contacts); *id.* at 117-22 (Dr. Minor testifying that

CCCMS and EOP programs at CHCF are unable to comply with Program Guide requirements relating due to IDTTs, MHPC contacts, and group treatment). Indeed, those witnesses testified that Defendants have adopted *formal policies* directing clinicians to comply with some Program Guide requirements and not others due to inadequate mental health staffing levels. *See, e.g.*, Tr. 10-4-23 at 137-39 (Dr. Mehta testifying that Defendants are rationing care systemwide due to staffing vacancies); Tr. 10-5-23 at 32-34 (Dr. David noting that "every level of care" at CMF is "currently under iterations of triage plans" due to staffing vacancies); Tr. 10-5-23 at 87-92 (Dr. Franceschi testifying about triage plan for EOP program at CSP-SAC); Tr. 10-5-23 at 117-18 (Dr. Minor testifying about triage plans for EOP and CCCMS programs at CHCF); *see also* Special Master's 30th Round Monitoring Report, Part C, ECF No. 8095 at 32-41 (summarizing the systemwide impacts of Defendants' "bona fide mental health staffing emergency" on Program Guide compliance).

The impact of Defendants' staffing crisis on their compliance with numerous aspects of the remedy in this case weighs heavily in favor of requiring immediate payment of the accrued fines. Defendants' behavior in the last seven months has made clear that more than just the threat of a substantial sanction is required to compel their compliance as quickly as possible.

**B.      The Fines Are Needed to Coerce Compliance.**

The fines that have accumulated pursuant to the Court's February 28, 2023 Order are properly structured to achieve compliance. The amount of the fines is directly related to the amount of money Defendants are saving by failing to fill the positions. *See* ECF No. 7742 at 5-6 (ordering Defendants to calculate monthly fines by identifying the number of vacant positions in each class at issue, multiplying it by 0.90 to account for the 90-percent substantial compliance threshold, multiplying the resulting numbers by the applicable average maximum monthly salary, and doubling the resulting figures to account for the additional savings related to employee benefits and to provide an incentive to fill positions instead of leaving them vacant); ECF No. 7956 ¶¶ 19-20 (stipulating to the

amount of additional costs Defendants would have incurred had they consistently filled 90 percent of the relevant positions between February and July 2023).  The fines are narrowly tailored because Defendants are only fined for vacancies above 10% in each classification. ECF No. 7742 at 5.  Defendants' ongoing non-compliance since February 2023 and especially since the hearing in October 2023 shows that the threat of contempt alone was not sufficient and the Court must require Defendants to pay the fines.  As the Court's Tentative Ruling states, the fines are likely to be effective because the money will be used to fund remedial measures Defendants have failed to take thus far but are "necessary to come into compliance." ECF No. 8147 at 7.

### C. The Court Should Impose the Fines Now.

Defendants have previously argued that the Court cannot order them to pay *any* of the fines that accrued before the Court issues its contempt findings. *See, e.g.*, ECF No. 7951 at 20; ECF No. 8019 at 35-37.  Instead, according to Defendants, the Court must give them *yet another* chance to "purge" the contempt before it imposes any sanctions. But that is not correct.  Prospective, conditional fines intended to coerce compliance with the Court's orders can be imposed so long as the contemnor was provided an opportunity to "reduce or avoid the fine through compliance." *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 829 (1994); *see also* ECF No. 5610 at 9. Defendants have had more than sufficient opportunity to do just that.  *See* Pls' Corrected Closing Brief, ECF No. 8023 at 51-52 (describing Defendants' numerous opportunities to reduce or avoid the fines through compliance).

There is no rule requiring that formal findings of contempt precede the accrual of prospective, conditional fines, like those in this case.  *See NLRB v. Ironworkers Local 433*, 169 F.3d 1217, 1218, 1221 (9th Cir. 1999) (rejecting due process defense where contempt judgment followed accrual of fines pursuant to enforcement provisions in earlier consent decree); *Salazar ex rel. Salazar v. D.C.*, 602 F.3d 431, 435, 437-40 (D.C. Cir. 2010) (same).  The Court should not countenance further delay; it should order Defendants to pay the full amount of the fines accrued to date, and it should require Defendants to continue

paying the additional fines that accrue each month as a result of any continued non-compliance immediately upon their accrual.

### III. THE COURT SHOULD APPOINT AN ADMINISTRATOR TO DISBURSE MONEY FROM THE COURT'S REGISTRY AS NEEDED TO FUND APPROPRIATE REMEDIAL MEASURES.

In addition to ordering Defendants to pay the accrued fines immediately, the Court's order should specify that the fines will be paid into an account the Court will make available to underwrite the expense of specific remedial measures designed to finally bring Defendants into compliance. The Court should also appoint a fund administrator and charge that administrator with recommending specific remedial measures to the Court for its approval, and then allocating and directing the disbursement of money from the fund as needed to pay for any remedial measures the Court approves. Appointing such an administrator would be well within the Court's discretion, provided the administrator's authority is limited to recommending measures to fill the staffing vacancies at issue in this proceeding, as well as allocating money from the account to finance specific remedial measures approved by the Court. *See, e.g., Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 481–82 (1986) (district court did not abuse its discretion by appointing fund administrator to oversee use of contempt fines to implement remedial measures); *Marion Cty. Jail Inmates v. Anderson*, 270 F. Supp. 2d 1034, 1039 (S.D. Ind. 2003) (ordering contempt fines be paid into a fund overseen by an administrator charged with "underwrit[ing] the expense of additional jail staffing," among other remedial measures).

Plaintiffs propose that the Court seek permission from the court in *Plata v. Newsom* to appoint that court's Receiver, J. Clark Kelso, as the Fund Administrator. Plaintiffs further propose that the Court direct the Fund Administrator to issue a set of initial recommendations within 30 days of his appointment for measures to increase compensation to a level that will swiftly reduce the vacancies at issue. The Court should then provide the parties an opportunity to comment on and/or object to those recommendations before the Court makes a final decision about whether to approve them.

If approved, the Fund Administrator would then have the authority to direct and oversee the disbursement of funds from the account to implement the measures approved by the Court.  Finally, Plaintiffs propose that every 60 days the Fund Administrator report to the Court and to the Parties on how the money is being spent, and that the Fund Administrator be authorized to make recommendations for additional remedial measures for the Court's approval if the initial measures are not sufficient to fill the vacancies to a 90% fill rate.

## CONCLUSION

The Court should finalize its tentative findings of contempt, order Defendants to immediately deposit all fines that have accumulated to date in the Court's registry, and appoint J. Clark Kelso as a fund administrator to oversee and direct the disbursement of those funds to pay for specific measures that will finally bring Defendants into compliance with their mental health staffing obligations.

## CERTIFICATION

Plaintiffs' counsel certifies that she reviewed the following orders in preparing this filing: ECF Nos. 5610, 7742, 7804, 8147, 8235, 8239.

DATED:  May 28, 2024            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Alexander Gourse*
     Alexander Gourse

Attorneys for Plaintiffs