1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:   (510) 280-2621

5  CLAUDIA CENTER – 158255
   DISABILITY RIGHTS EDUCATION
6  AND DEFENSE FUND, INC.
   Ed Roberts Campus
7  3075 Adeline Street, Suite 210
   Berkeley, California  94703-2578
8  Telephone:   (510) 644-2555
   Attorneys for Plaintiffs
9

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MARC J. SHINN-KRANTZ – 312968
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

10              UNITED STATES DISTRICT COURT

11              EASTERN DISTRICT OF CALIFORNIA

12

13  RALPH COLEMAN, et al.,

14          Plaintiffs,

15      v.

16  GAVIN NEWSOM, et al.,

17          Defendants.

Case No. 2:90-CV-00520-KJM-DB

**JOINT STIPULATION AND [PROPOSED] ORDER IN RESPONSE TO MAY 20, 2024 ORDER (ECF NO. 8243)**

Judge:   Hon. Kimberly J. Mueller

18

19

20

21

22

23

24

25

26

27

28

[4507432.8]

On May 20, 2024, the Court ordered the parties to file within fourteen days any motions to modify or enforce the Court's previous orders in connection with disputed Restrictive Housing Unit ("RHU") regulations and policies, and/or to file a stipulated request to modify this Court's previous orders to the extent necessary to conform those orders to specific RHU regulations and policies. *See* Order ECF No. 8243 at 6.

The parties have met and conferred and agreed to further modifications to Defendants' draft RHU Mental Health Policy. The agreed-upon revision of the RHU Mental Health Policy is attached hereto as **Attachment A**.

The parties have two remaining potential disputes regarding the regulations, related to two current exceptions to the transfer timelines for EOP and CCCMS patients—the exception for medical holds, *see* Cal Code Regs. Tit. 15 §§ 3335.2(d)(1)(A) [EOP]; 3335.3(d)(1)(A) [CCCMS], and the exception for patient refusals to transfer, *see* Cal Code Regs. Tit. 15 §§ 3335.2(d)(1)(B) [EOP]; 3335.3(d)(1)(B) [CCCMS]; 3335.4(c)(1)(B) [GP-RHU in Desert Institutions].

The parties are optimistic that they can resolve both potential disputes by negotiating language regarding medical holds based on the Court's resolution of the related medical hold issue in the context of transfers to CCCMS and EOP, *see* ECF No. 8216 (Joint Response), ECF No. 8206 (April 18, 2024 Order), and negotiating language regarding patient refusals to transfer. Assuming the parties reach agreement, Defendants would issue a policy consistent with their agreement.

The parties agree that the previously stipulated and ordered medical hold transfer timeframe exception and reporting obligations for desert institutions remains controlling in circumstances where patients are either in a desert institution RHU when they are referred to the MHSDS or are erroneously transferred to a desert institution RHU when they are already EOP or CCCMS. *See* September 26, 2019 Order, ECF No. 6296 at 6-7 (desert transfer medical hold exception); May 18, 2020 Order, ECF No. 6678 (reporting obligations). The parties shall interpret Cal. Code Regs. Tit. §§ 3335.4(c)(1)(A) [GP-RHU] consistent with this Court's prior orders. The parties intend to negotiate language

for a patient transfer refusal exception in this context.

**I.     STIPULATION**

1.     The parties shall meet and confer regarding the RHU medical hold exception for a period of 30 days from the date the Court resolves the related pending dispute regarding medical holds for CCCMS and EOP transfers with an intention to submit a stipulation and proposed order.  *See* ECF No. 8216 (Joint Response); ECF No. 8206 (April 18, 2024 Order).  If the parties cannot reach an agreement, they will inform the Court, and propose to file a joint report regarding their respective positions for resolution by the Court.

2.     The parties shall meet and confer regarding the patient refusal to transfer timeline exception.  The parties shall file a joint stipulation and proposed order regarding any agreement by July 3, 2024.  In the absence of an agreement, the parties shall brief this issue in the joint report discussed in paragraph 1.

3.     Upon resolution of the potential disputes discussed in paragraphs 1 and 2, the parties will request that the Court order that the RHU Mental Health Policy replace the following sections of the 2021 Program Guide Update:  Chapters 7-9 (ASU, SHU, PSU) and the memoranda and policies on the Short Term Restrictive Housing (STRH) and Long Term Restrictive Housing (LTRH).  ECF No. 7333-1 at 126-167, 443-459, 469-471.

4.     Subject to resolution of the potential disputes discussed in paragraphs 1 and 2, the parties also agree that the RHU regulations update certain aspects of the 2021 Compendium of Custody Related Remedial Measures and request that the Court approve the updated Compendium.  *See* ECF No. 7333-2.  A copy of the updated Compendium that

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

reflects changes made by the RHU regulations, but not other changes since the filing of the 2021 Compendium Update, is attached hereto as **Attachment B**.

   **IT IS SO STIPULATED.**


DATED:  June 3, 2024                Respectfully submitted,

                                    ROSEN BIEN GALVAN & GRUNFELD LLP


                                    By:  */s/ Marc J. Shinn-Krantz*
                                         Marc J. Shinn-Krantz

                                    Attorneys for Plaintiffs

DATED:  June 3, 2024                HANSON BRIDGETT LLP


                                    By:  */s/ Paul B. Mello*
                                         Paul B. Mello

                                    Attorneys for Defendants

DATED:  June 3, 2024                ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA


                                    By:  */s/ Elise Owens Thorn*
                                         Elise Owens Thorn

                                    Attorneys for Defendants

                        **[PROPOSED] ORDER**

   The parties' stipulation is approved.

   IT IS SO ORDERED.

DATED:  _____, 2024         _____
                                    Kimberly J. Mueller
                                    Chief United States District Judge

# Attachment A

**Restricted Housing Unit Program: Mental Health Services**

**(a) Policy**

All Restricted Housing Units (RHU) shall maintain general expectations that allow all incarcerated individuals assigned to these units access to mental health services. Patients in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management System (CCCMS) or Enhanced Outpatient (EOP) level of care who are housed in a Restricted Housing Unit (RHU) shall be offered enhanced mental health treatment. The RHU shall be collaboratively administered between custody and mental health staff.

**(b) Purpose**

To assure all incarcerated individuals have access to mental health services while housed in a restricted housing unit setting. For patients in the MHSDS requiring restricted housing, enhanced mental health services to prevent decompensation shall be provided.

**(c) Definitions**

**Restricted Housing Units:** Restricted Housing Units are designated for short and extended-term programming of incarcerated individuals not suited for housing in the general population. They are specialized programming units with established placement criteria. RHUs include EOP RHU, CCCMS RHU, and GP RHU.

**Correctional Clinical Case Management System Restricted Housing Unit:** Secure housing and enhanced care for patients in the CCCMS level of care who require placement in restricted housing.

**Enhanced Outpatient Program Restricted Housing Unit:** Secure housing and care for patients at the EOP level of care not requiring crisis or inpatient hospital care, but who require placement in restricted housing.

**General Population Restricted Housing Unit:** Secure housing units designated for incarcerated individuals not suited for housing in the general population and who do not have any identified mental health concerns.

**(d) Responsibility**

**(1)** The overall institutional responsibility rests jointly with the Chief Executive Officer (CEO) and the Warden.

**(2)** The coordination of clinical activities within the RHU is the responsibility of the Chief of Mental Health (CMH), the Chief Psychiatrist (CP), and the Chief Nurse Executive (CNE). The CMH, the CP, and the CNE ensure that the RHU Program complies with the Mental Health Services Delivery System (MHSDS) Program Guide, the Health Care Department Operations Manual, and all applicable policies.

**(3)** The Facility Captain will oversee custodial responsibilities, correctional counseling services, and classification actions.

**(4)** Decisions on patient treatment plans, individual patient program activities, and level of care are made by the Interdisciplinary Treatment Team (IDTT).

**(e) Procedure**

**(1) Transfer Timeframes**

(A) Patients shall transfer to CCCMS or EOP RHUs in accordance with Title 15, which requires that patients at these levels of care be transferred to a EOP or CCCMS RHU within 30 calendar days from the date of initial placement in RHU, or within 30 calendar days from the date the patient was made EOP or CCCMS. *See* Cal. Code of Regs., tit. 15 §§ 3335.2 (EOP) and 3335.3 (CCCMS). No patients included in the MHSDS shall be housed in a stand-alone GP RHU Any patient included in the MHSDS who is placed in a stand-alone GP RHU shall be transferred out within 24 hours.

1. A mental health clinician shall assess any inmate in a stand-alone GP RHU identified and referred by the PT or any staff immediately or within 24 hours, depending on the urgency of the referral. An incarcerated individual who meets the criteria for MHSDS shall be transferred to another RHU as soon as possible but no longer than 24 hours following the mental health level of care change.

(B) In no event shall a pending CDCR 115, *Rules Violation Report*, impede or delay the transfer of an inmate patient to a CCCMS or EOP RHUs.

**(2) Admission Screening and referral**

(A) Pre-placement mental health screening: All incarcerated individuals shall be screened by medical personnel, usually a PT, for possible suicide risks, safety concerns, and mental health problems within 24 hours before first physical arrival to a RHU. If a patient screens positive, they are referred for a mental health evaluation on an emergent, urgent, or routine basis, depending on their answers to the screening questions.

1. Patients only being housed in the RHU for alternative housing, pending transfer to an MHCB do not require a pre-placement screening so long as they are on a 1:1 suicide watch for the duration of their stay in the unit.

(B) All incarcerated individuals not currently enrolled in the Mental Health Services Delivery System (MHSDS) shall receive a post-placement screening within 72 hours after RHU placement, conducted by a mental health

clinician or a trained nursing staff in a private and confidential setting that affords confidentiality of sight and sound from other incarcerated individuals and confidentiality of sound from staff. These screening interview appointments shall be announced by custody staff as "health appointments" to avoid stigmatization and possible retribution by other incarcerated individuals. Every effort shall be made to encourage incarcerated individuals to attend these appointments.

1. Interactions with newly admitted individual in RHU units shall be sufficient to ascertain the incarcerated individual's mental health condition particularly during the first ten days. All incarcerated individuals scoring positive on the screening shall be referred to a mental health clinician to be seen within the clinically appropriate time frame.

(C) Patients shall receive orientation material within 24 hours of placement into a GP RHU, CCCMS RHU or EOP RHU.

**(3) Intake cell placement**

(A) All incarcerated individuals shall be housed in an Intake Cell or with a compatible cellmate for the first 72 hours of initial placement in an RHU.

1. All intake cells shall be suicide resistant.

    a. If an incarcerated individual is housed in a non-suicide-resistant intake cell and double celling is not appropriate, the incarcerated individual shall be placed in a cell with close proximity (clustering) to each other and near high-traffic areas or control booths which will allow for better observation by staff.

2. Institutions shall ensure that incarcerated individuals are re-housed in non-intake cells after the initial 72 hours are completed.

3. If the cellmate moves out of the cell before the 72 hours has concluded, a new cellmate must be assigned, or the incarcerated individual must be rehoused in an intake cell within 8 hours from the cellmate's removal.

(B) Institutions shall ensure that all requirements for the documentation of intake cell usage within the Strategic Offender Management System (SOMS) are followed according to current policies and procedures.

1. Institutions shall ensure that all necessary staff remain compliant with required training related to the governance of intake cell usage.

**(4) Referrals**

(A) Each day, the assigned physician, Registered Nurse (RN), or PT will tour the unit and assess any patient with medical or dental needs.

(B) During Second Watch, patients requiring medical attention will be referred to the RHU RN.

(C) Sources of Referral for Mental Health Services

1. Staff referrals may be made on a CDCR 128-MH5, Mental Health Referral Chrono, or as a Consult Order in the Electronic Health Records System (EHRS).

    a. Any staff member who observes possible signs or symptoms of a serious mental health disorder shall refer a patient for clinical evaluation by completing a CDCR 128-MH5, Mental Health Referral Chrono.

    b. Any staff member who observes a patient to be at risk for suicide or any other condition that requires crisis care shall be immediately screened by a mental health clinician to assess the potential for suicide and, if appropriate, referral to a Mental Health Crisis Bed (MHCB) for admission.

2. Self-referrals shall be made on a CDCR 7362, Health Care Services Request.

    a. Monday through Friday, the following shall occur:

    b. A health care staff member shall collect all the CDCR 7362, Health Care Services Requests daily from the designated areas.

    c. Upon receipt of the collected forms, nursing staff shall initial and date each CDCR 7362, Health Care Services Request.

    d. The CDCR 7362, Health Care Services Request, shall be delivered to the designated program representative in mental health, dental, or pharmacy services for same-day processing.

3. On weekends and holidays, the following shall occur:

    a. The Triage and Treatment Area (TTA) RN shall review each CDCR 7362, Health Care Services Request for medical, dental, and mental health services, and shall review all MH-5 staff referral chronos and establish priorities on an emergent and non- emergent basis, and refer accordingly.

    b. If a physician, mental health clinician, or dentist is unavailable, the on-call physician or mental health provider shall be contacted.

(D) Patients shall be seen by a mental health clinician or on weekends by an on-call provider within the following clinically determined time frames.

1. Emergent: Emergency referrals shall be seen within 4 hours or escorted to the TTA.

2. Urgent: Urgent referrals shall be seen within 24 hours.

3. Routine: Routine referrals shall be seen within five calendar days.

**(5) Clinical rounds:**

(A) A mental health staff member, usually a licensed Psychiatric Technician (PT), shall conduct rounds seven days per week in all RHUs to attend to the mental health needs of all incarcerated individuals.

1. Patients not previously identified as having mental health treatment needs who exhibit possible signs and symptoms of serious mental disorders shall be referred for clinical evaluation.

2. The PT shall document clinical rounds for MHSDS individuals in the health record. For non-MHSDS individuals, the round shall be documented by initialing next to the individual's name in the 114 Isolation Logbook, or the SOMS equivalent each time the individual is seen.

(B) The PT shall make initial contact with each incarcerated individual placed into an RHU within 24 hours after placement.

1. Institutions shall ensure that fidelity monitoring of these rounds is completed, as required, and reported to the appropriate governing committee.

(C) A second watch and a third watch huddle between custody and clinical staff shall be held each business day. At a minimum, an RHU Sergeant and an RHU Mental Health clinician (psychologist or social worker) shall attend the huddles.

1. During the meeting, involved personnel shall identify new arrivals, discuss current behavioral issues and concerns, and share pertinent information regarding new arrivals and at-risk incarcerated individuals.

2. This meeting shall be documented in the RHU Logbook; shall include a review of patients in the Suicide Risk Management Program, who are at increased risk for suicide; salient clinical information shall be documented in the EHRS; if necessary, a referral for mental health services shall be made at the appropriate level of urgency.

**(6) Monitoring Requirements for Developmental Disability Program Patients Placed in Restricted Housing**

(A) Developmental Disability Program (DDP) patients housed in a GP RHU shall be interviewed by a mental health clinician within 24 hours of initial RHU placement and receive weekly monitoring by a DDP psychologist or designee. For this purpose, "weekly" is a seven-day calendar week.

(B) Documentation of the initial 24-hour and weekly clinical contacts for DDP patients housed in an RHU shall be completed in the EHRS using either the "MH DDP Restricted Housing Check" PowerForm or the "DDP Progress Note" note type.

1. Documentation must indicate the patient's current housing setting, the evaluation type ("Initial 24-hour" or "Weekly"), and if the location where the contact occurred was confidential ("Confidential" or "Non-confidential").

2. Documentation shall also include a description of the content for this contact, relevant clinical observations, a statement describing the patient's functioning related to their DDP adaptive supports, any collateral information obtained (e.g., reports from the DDP officer or housing unit officers), and any follow-up steps taken if indicated.

(C) An initial 24-hour contact is not required if there are no modifications to the DDP patient's programming (e.g., a determination for restricted housing was made, but the patient was never housed in that unit) or if the patient leaves and returns to the same RHU environment within a 24-hour period.

(D) An initial 24-hour contact is not required if the DDP patient transfers to another RHU environment within the same institution or transfers from an RHU environment at one institution to an RHU environment at another institution unless it is clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(E) If a DDP patient transfers to another RHU environment within the same institution, a second weekly contact is not required unless clinically indicated and necessary to ensure the patient's prescribed adaptive supports remain current and sufficient for that environment.

(F) A weekly contact is required within seven calendar days of arrival at the receiving institution if a patient transfers from an RHU environment at one institution to an RHU environment at another institution.

**Restricted Housing Unit Program: Correctional Clinical Case Management System**

**(a) Procedure**

 **(1) Placement in a CCCMS Restricted Housing Unit**

  (A) A patient shall be housed in a CCCMS RHU if included in the MHSDS at the CCCMS level of care and meets RHU placement criteria under California Code of Regulations (CCR), Title 15, section 3335.

  (B) Patients assigned to a CCCMS RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to a CCCMS RHU with an imposed RHU term shall be classified under CCR, Title 15, section 3341.

  (C) Upon arrival in the CCCMS RHU, patients will receive their standard property and orientation package.

  (D) The Intake Cell provisions above in the general RHU section apply to CCCMS RHUs and EOP RHUs as well

 **(2) Interdisciplinary Treatment Teams and Institutional Classification Committees**

  (A) Mental health staff shall attend daily second and third watch huddles with custody staff to discuss high-risk patients, new arrivals, and any behavior issues or ongoing concerns of individual patients.

  (B) Initial contact by the primary clinician shall occur within 10 calendar days of arrival to the CCCMS RHU and before the initial IDTT. Initial contact by the assigned psychiatrist shall occur within 10 calendar days of arrival to the CCCMS RHU and before the initial IDTT.

  (C) The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after they arrive in the CCCMS RHU.

  (D) Mental health staff shall attend and participate in IDTTs and ICCs. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist as a representative for the assigned psychiatrist or Primary Clinician to attend ICC meetings to provide mental health input. The designee must:

   1. Consult the patient's mental health treatment records.

   2. Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.

   3. Be current on all required training related to removing patients from MAX custody.

  (E) The responsibilities for overall treatment planning within the CCCMS program rest with the IDTT. These responsibilities include:

   1. Placement decisions for individual cases.

   2. Review of relevant clinical data for diagnostic formulation.

   3. Review of relevant case factors.

   4. Formulation and approval of treatment plans.

   5. Annual and special reviews for continuation or termination of services.

   6. Review of treatment response.

   7. Discharge planning.

  (F) The IDTT is composed of, at minimum:

   1. Assigned PC (either a psychologist or Clinical Social Worker).

   2. Assigned psychiatrist.

   3. The Assigned Correctional Counselor.

   4. Patient. The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT. The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.

  (G) The IDTT shall include the patient's assigned Correctional Counselor, who shall present case factors of the RHU placement for consideration in developing the treatment plan and initiating an aftercare plan.

  (H) Some patients may be seen more frequently by the IDTT in special reviews at the request of the assigned PC or psychiatrist whenever changes in the level of care or treatment plans are indicated.

 **(3) Treatment for CCCMS Patients Placed in a Restricted Housing Unit**

  (A) The treatment interventions shall meet the guidelines outlined in the MHSDS Program Guide and include the following:

   1. Regular monitoring of symptoms by licensed Psychiatric Technicians through daily rounds seven days a week.

   2. Individual contact every week by PC or more frequently if clinically indicated.

   3. Crisis intervention.

   4. Medication treatment, evaluation, review, and compliance monitoring by psychiatric and nursing staff.

   5. Psychiatric contact every 90 calendar days.

   6. IDTT every 90 calendar days to update the treatment plan.

   7. 90 minutes of confidential, structured group therapeutic activity weekly.

   8. Clinical discharge or clinical pre-release planning.

  (B) The following treatment interventions shall be provided on an as-needed basis:

1. Group Therapy such as anger management and relapse prevention.
2. Orientation and supportive counseling for institutional adjustment.
3. Social skills training.
4. Consultation services, such as education or rehabilitative programs.
5. In-cell therapeutic activities each week, such as self-help and recreational activities, as determined by the IDTT.
6. Supportive care for Activities of Daily Living.

**(4) Out of Cell Time**

1. The CCCMS RHU will offer 20 hours of out-of-cell activities per week. Patients will be offered 18.5 hours per week of recreational time outside their cell.
2. Patients will also be offered 90 minutes of confidential, structured therapeutic activity each week.
3. Mental health group treatment therapeutic program hours attended by CCCMS patients shall earn credits to reduce their RHU term.


### Restricted Housing Unit Program: Enhanced Outpatient Program

**(a) Procedure**

**(1) Placement in an EOP Restricted Housing Unit**

(A) A patient shall be housed in an EOP RHU if included in the MHSDS at the EOP level of care and are required to be housed in an RHU unit.

(B) Patients assigned to an EOP RHU shall be classified under CCR, Title 15, section 3340. Patients assigned to an EOP RHU with an imposed RHU term shall be classified in accordance with CCR, Title 15, section 3341.

(C) Upon arrival in the EOP RHU, patients will receive their standard property and orientation package.

(D) The intake cell provisions in the general RHU section above apply to EOP RHU units as well.

**(2) Clinical Services**

(A) Intake Assessment

1. The Senior Psychologist Supervisor or designee shall assign a PC for each patient in an EOP RHU. The PC shall complete an initial evaluation of the patient, including a review of the patient's mental health history and an interview in a timeframe clinically determined appropriate but not more than five calendar days after arrival in the EOP RHU
2. For all patients placed in an EOP RHU, a psychiatrist shall complete an initial psychiatry evaluation no later than 10 calendar days after arrival in the EOP RHU and before the initial IDTT.
3. The IDTT will evaluate all patients before the initial ICC and not later than 10 calendar days after arrival in the EOP RHU.
4. The PC and other IDTT members shall do a comprehensive mental health clinical assessment before the initial IDTT. This assessment shall include, at minimum:
   a. Comprehensive review of the Strategic Offender Management System (SOMS) and health record of mental health treatment needs, including prior placements.
   b. Current mental status examination, including diagnosis and level of functioning.
   c. Daily observation by mental health and custody staff to assess Activities of Daily Living and social interactions.
   d. Review of disciplinary history and custodial placements by the assigned Correctional Counselor or Lieutenant.
   e. Review of specific risk factors for violence toward self and others. This includes a suicide risk assessment if indicated.
5. The IDTT will decide on the appropriate placement. This decision includes the following options:
   a. Referral for inpatient care.
   b. Placement in an MHCB (short-term crisis stabilization, including initiating involuntary medications when required).
   c. Referral to the classification committee recommending alternative RHU placement if the patient qualifies for CCCMS care or has been discharged from the MHSDS.
   d. If the RHU term has been served, placement at the appropriate level of care, including EOP.

(B) Interdisciplinary Treatment Team

1. The EOP RHU Senior Psychologist Supervisor or designee shall chair the EOP RHU IDTT. All clinical decisions regarding intake, treatment planning, re-justification of level of care, and discharge are made by

the EOP RHU IDTT. The IDTT is composed of, at minimum:

   a.  Senior Psychologist Supervisor or designee.

   b.  Assigned Psychiatrist .

   c.  Correctional Counselor I .

   d.  Assigned PC .

   e.  Licensed Psychiatric Technician (PT)Patient. The patient shall be included in the IDTT unless the patient refuses to participate. If the patient refuses to participate, the clinician must document the reason for refusal in the Master Treatment Plan or a progress note. The patient shall not receive a CDCR 115, Rules Violation Report, for not attending the IDTT.  The PC is responsible for presenting the patient's concerns to the IDTT and the outcome of the IDTT to the patient.

2.  Other EOP RHU staff may attend, such as a recreation therapist, nursing staff, Sergeant and correctional officers, and custody representatives.

3.  A representative from the IDTT (assigned PC or designee) shall be present in all classification hearings regarding patients to provide mental health input into the classification decision-making process. Mental Health supervisors may designate a psychologist, social worker, or psychiatrist to represent the assigned psychiatrist or primary clinician to attend ICC meetings to provide mental health input. The designee must:

   a.  Consult the patient's mental health treatment records.

   b.  Confer whenever possible with the patient's assigned psychiatrist or primary clinician before the ICC to ensure the designee can provide relevant mental health input.

   c.  Be up to date on all required training related to removing patients from MAX custody.

   d.  The representative from the IDTT shall present the recommendations of the IDTT with respect to the case.  The recommendations may include requesting referral to an EOP (non-RHU) program for patients who are involved in non-violent incidents and determined not to be a risk to others.

4.  After the initial IDTT, patients will be evaluated by the IDTT minimally at 60 and 120 calendar days after arrival at RHU and at least every 90 calendar days thereafter or sooner, whenever there is a significant change in level of functioning.

   a.  The IDTT will evaluate treatment progress, develop and update the treatment plan, with input from the patient and review discharge goals. The initial treatment plan and all subsequent treatment plans shall include a discharge plan and behavioral goals to discharge the patient from the EOP to a lower level of care if possible.

   b.  The assigned PC, , will present a case summary with recommendations for continued treatment or discharge.

   c.  The results of all IDTT reviews, decisions, and recommendations will be documented in the health record.

   d.  Initial placements and level of care changes are documented in EHRS.

(C) Length of Stay More Than 90 Days

1.  Patients housed in EOP RHU for more than 90 calendar days shall be reviewed every 30 calendar days outside of the ICC process by the Facility Captain and Correctional Counselor II. The status of each case, with detailed information regarding the reasons for delays in the referral, disciplinary, classification, and transfer process, shall be compiled and reviewed by the Warden or designee (Chief Deputy Warden or Associate Warden for Health Care). The Warden shall ensure that reviewers take action to resolve any issues that impact the length of stay in RHU.

2.  Patients housed in EOP RHU for more than 90 days who postpone an RVR hearing pending referral to the District Attorney shall be reviewed for alternate housing. If the time housed in EOP RHU is equivalent to the projected RHU term (if the patient has been found guilty of the RVR), the patient shall be released to a general population setting. The Warden or designee shall contact the District Attorney to discuss expediting pending cases.

(D) Primary Clinician

Each patient in an EOP RHU shall be assigned a PC. The PC will maintain active clinical involvement with the patient, as well as perform casework functions, including the following:

1.  Documentation of initial treatment plan and updates.

2.  Regular clinical contact with assigned patients.

3.  Ensuring scheduling of periodic IDTT reviews.

4.  Attendance at IDTT reviews of the patient.

5.  Referral to and coordination with the assigned psychiatrist

6.  Participation in ICC to provide mental health input.

7.  Liaison with custody and correctional counseling staff regarding overall management of patients.

8. Group therapy as defined in the inmate-patient's treatment plan.
9. Crisis intervention and referral as needed.
10. Review of weekly summary of clinical rounds and document this review in the EHRS.
11. Response to California Department of Corrections and Rehabilitation (CDCR) inquiries regarding the patient's clinical status.

(E) Psychiatrist

Each patient in an EOP RHU shall have an assigned psychiatrist.

**(3) Treatment Program**

(A) Each EOP RHU shall have an Operational Plan that describes its treatment program. The Operational Plan shall include a behavioral incentive program (BIP) with criteria for achieving and retaining each level. Refer to the Operational Plan at each institution for a complete description.

(B) Treatment Plan

1. Each patient in an EOP RHU shall have a Master Treatment Plan within the EHRS.
2. Within the EOP RHU, each patient shall have an individualized treatment plan that provides treatment consistent with the patient's clinical needs.
3. The treatment plan shall be reviewed by the IDTT 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter or whenever a significant change in the patient's functioning requires a change in the treatment plan.
4. Each treatment intervention shall indicate outcome objectives and specific, measurable behavioral goals.
5. Discharge from the EOP or transfer to another level of care shall be documented in the EHRS.
6. Each patient will be offered at least ten hours per week of structured therapeutic activities as approved by the RHU IDTT.
   a. It is recognized that not all patients can participate in or benefit from ten hours per week of treatment services. For some patients, ten hours per week may be clinically contraindicated.
   b. For those patients scheduled for fewer than ten hours per week of treatment services, the PC shall present the case and recommended treatment program to the IDTT for approval. The treatment plan must include a detailed description of the diagnosis, problems, level of functioning, medication compliance, and rationale for scheduling fewer than ten hours.
   c. For patients scheduled for fewer than ten hours of treatment activities per week, the IDTT shall meet at least every 30 calendar days and be responsible for reviewing and increasing the treatment activities and considering a higher level of care as appropriate.

(C) Treatment

1. Required treatment within an EOP RHU includes the following:
   a. Individual treatment planning involves a meeting of the IDTT and the patient 60 calendar and 120 calendar days after arriving at RHU and at least every 90 calendar days thereafter to identify treatment needs, develop treatment plans, assess treatment progress, and update or revise individual treatment plans in accordance with the patient's needs and progress.
   b. Weekly (assigned or covering) PC contact.
   c. Daily rounding by the PT seven days a week.
   d. A psychiatrist shall evaluate each EOP patient at least every 30 calendar days.
   Refer to the Health Care Department Operations Manual regarding medication administration procedures, medication refusals, Directly Observed Therapy, medication adherence, and other aspects of medication administration. Refer to the CCR, Title 15, section 3999.344, for information on involuntary medication administration.

2. Other treatment activities may include the following:
   a. Individual psychotherapy.
   b. Group therapy, such as anger management, stress management, offense-related issues, and current events.
   c. Medication education.
   d. Crisis intervention.
   e. Pre-release planning.
   f. Monitoring and assistance with daily living skills.
   g. Cognitive Behavioral Therapy directed to specific behaviors or symptoms.
   h. Recreational activities both within cell and out of cell.
   i. Vocational and pre-vocational training, as available.
   j. Education as available.
   k. 12-Step Program and other substance use treatment.

(D) Patient Refusal to Attend Treatment

1. Within one week of the identification of a patient who has refused more than 50 percent of structured therapeutic treatment hours offered and attended an average of less than five hours per week of offered structured treatment hours in a two-month period, the IDTT, clinical staff, or other custody staff must work together to determine the reason for treatment refusal.

2. For patients on a modified treatment program, attendance at 50 percent or less of the required treatment hours specified in the modified treatment plan in a two-month period shall trigger the review. The Correctional Lieutenant responsible for the EOP RHU and the PC shall work collaboratively to evaluate the circumstances underlying the patient's refusal to attend the scheduled treatment sessions offered.

3. If a specific cause for the patient's refusal can be identified and reasonably resolved, custody and mental health staff shall work with the patient to resolve such issues.

4. If the patient identifies barriers related to security policies as a cause for their refusal to attend treatment, custody, and mental health staff shall jointly document their findings on a CDC 128-B, General Chrono, and submit to both the Chief Deputy Warden and CMH.

    a. The Chief Deputy Warden and CMH shall confer and consider various methods to encourage the patient to attend treatment, including viable alternatives to the identified security policies that do not jeopardize the unit's security or the safety of staff or patients.

    b. Should the Chief Deputy Warden and CMH disagree on the proper resolution of the matter, the issue shall be elevated to the Warden and CEO for their review and resolution.

    c. For patients who refuse more than 50% of offered treatment during a one-week period, the PC shall:
        1) Interact with these patients daily on scheduled work days (instead of weekly)
        2) Include in the treatment plan efforts to reduce resistance to participation in group therapy.
        3) Discuss these patients during the RHU second and third watch huddles with custody
        4) Consider referral of patient to higher levels of care and document the results of this consideration in the Master Treatment Plan.

**(4) Out-of-Cell Time**

1. All patients assigned to an EOP RHU shall be offered a minimum of twenty hours out of cell time each week. At least ten hours of out-of-cell exercise shall be offered each week, which may include supervised recreational therapy. EOP RHU patients are also offered ten hours of structured therapeutic activities each week.

    a. Structured mental health treatment hours attended by EOP patients shall earn credits that can be applied towards a reduction of their RHU term.

2. The ICC shall establish a patient's yard designation with input from the IDTT as part of the individual treatment plan.

**(5) Discharge Procedures**

(A) At the time of admission to the EOP RHU, a preliminary discharge plan shall be developed based on the clinical and security needs of the patient as well as the patient's EOP RHU term.

(B) Patients admitted to an EOP RHU may be discharged to a CCCMS RHU to complete their term when they no longer require an EOP level of care.

(C) Patients who complete their RHU term and still require EOP care will be discharged to a GP EOP for continuing mental health treatment.

1. The EOP RHU PC will document recommendations regarding the patient's specific treatment needs, including any concerns about facilitating the patient's successful transition to general population.

2. The receiving EOP IDTT will consider documentation by the EOP RHU clinician in developing the patient's treatment plan.

3. The treatment plan for patients transferred from RHU to GP-EOP shall include services provided to aid in the transition to the GP environment.

(D) Patients may be referred to an inpatient program as clinically indicated.

(E) Treatment recommendations upon discharge from an EOP RHU shall be made by the IDTT and documented in the EHRS.

(F) The ICC shall review the discharge recommendations of the IDTT, considering both the clinical and custody needs of the patient. The decision of the ICC shall be documented on a CDCR 128-G Chrono.

**References**
- California Code of Regulations, Title 15, Division 3, Subchapter 4, Article 7, sections 3335 – 3344.
- Mental Health Services Delivery System Program Guide, 2021 Revision Statewide Mental Health Program,

Monitoring Requirements for Patients in the Developmental Disability Program Placed in Restricted Housing Memorandum, October 14, 2022

- Operational Plan for Armstrong Class Members Housed in Administrative Segregation Memorandum, December 17, 2012

# Attachment B

<u>REVISED 2021 COMPENDIUM</u>[1]

<u>Negotiated or Court-Ordered Remedial Measures Related to Custodial Issues Not
Included in the 2021 Program Guide Revision</u>

I.    Regulations

- California Code of Regulations (CCR), Title 15, Section 3040.1, subdivisions (a) and (b), regarding Cognitive Behavioral Treatment and Substance Abuse Treatment Criteria. This regulation codifies provisions of the April 16, 2013, memo Placement Criteria for Substance Abuse Treatment Programs.
- CCR Title 15, Section 3043.2 subdivisions (b)(5)(A) Good Conduct Credit.
- CCR Title 15, Section 3043.3, subdivision (f)(2), regarding Credit Earning.  This regulation codifies provisions of the July 7, 2014, memo Milestone Completion Credits for Participants in the Mental Health Services Delivery System at the Enhanced Outpatient Program Level of Care.
- CCR Title 15, Section 3044 subdivisions (b)(8)(B), (f)(2)(E), (f)(2)(J), (f)(2)(K), Inmate Work Groups and Privilege Groups.
- CCR Title 15, Section 3190, subdivisions (c) and (l)(3), General Policy regarding Personal Property and Religious Personal Property, specifically for inmates in segregation.   Subdivision (1)(3) codifies provisions of the March 12, 2007, memo Televisions in Segregation Units, the April 27, 2007, memo Classification Regarding Entertainment Appliances in Administrative Segregation Units, the December 14, 2010, memo Entertainment Appliances in Administrative Segregation, the March 20, 2013, memo Administrative Segregation Unit Requirements Regarding Clustering and Entertainment Appliances, and the January 22, 2014, memo Multi-Powered Radio Loaner Program in Administrative Segregation Units.
- CCR Title 15, section 3269, Inmate Housing Assignment.
- CCR Title 15, Section 3310, subdivision (d), Definitions as modified via the court's May 4, 2015 Order (ECF No. 5305).
- CCR Title 15, Section 3314 subdivision (e)(3), Administrative Rule Violations
- CCR Title 15, section 3315, subdivisions (d)(2)(A)3,(d)(2)(E)(1), and (f)(5)(C), regarding Serious Rule Violations
- CCR Title 15, Section 3317, Mental Health Assessment for Disciplinary Proceedings.
- CCR Title 15, Section 3317.1, Documenting Rules Violations in an Alternate Manner for Inmates in the MHSDS or the Developmental Disability Program.

---

[1] This document is an update to the 2021 Compendium filed at ECF No. 7333-2.  This June 2024 update incorporates regulatory changes regarding Restricted Housing Units (RHUs).

- CCR Title 15, Section 3317.2, Behaviors Related to Mental Illness or Developmental Disability/Cognitive or Adaptive Functioning Deficits Excluded from Rules Violation Reports.
- CCR Title 15, Section 3335, subdivision (b), Restricted Housing Unit Placement, Non Disciplinary Restricted Housing.
- CCR Title 15, Section 3335.2, Enhanced Outpatient Program Restricted Housing Unit
- CCR Title 15, Section 3335.3 Correction Clinical Case Management System Restricted Housing Unit
- CCR Title 15, Section 3335.4, subdivision (c), General Population Restricted Housing Unit, regarding Desert Transfers
- CCR Title 15, section 3344, subdivision (b)(4) and (b)(4)(A), regarding Assistance to Inmates for Restricted Housing Classification Hearings
- CCR Title 15, Section 3341, subdivision (g)(1)-(2), Imposed Restricted Housing Unit Term Classification Hearings codifying provisions of the September 12, 2014, memo 120-Day Pre-Minimum Eligible Release Date Review Expectations.
- CCR Title 15, section 3347, subdivision (b), regarding Case Review
- CCR Title 15, section 3349, subdivision (b), regarding Restricted Housing Records
- CCR Title 15, Section 3375.3, subdivision (a)(5), regarding CDCR Classification Score Sheet, CDCR Form 839, Calculations, Mental Illness (Box 43).  This regulation codifies provisions of the June 26, 2012, memo Classification Score Sheet (CDCR Form 839) Mental Health Services Delivery System (MHSDS) Assessment Points, and the September 5, 2008, memo Discontinuance of the "Four Points" Assessment.
- CCR Title 15, Section 3376, subdivision (d)(3)(E)(1)-(5), Classification Committees.
- CCR Title 15, Sections 3377.1, subdivisions (b)(6)-(b)7) Inmate Custody Designation.


II.     Department Operations Manual

- Department Operations Manual (DOM) sections 51020.1 through 51020.24, Use of Force[2].
- DOM section 51030.3, Reportable Incidents (Attempted Suicide).
- Revised DOM section 52050.16.6, Unclothed or Clothed Body Search of Inmates in Enhanced Outpatient Program Administrative Segregation Hubs and Psychiatric Services Units.
- DOM Section 52080.5.8, Special Consideration of Rules Violations Related to Mental Illness or Participation in the Developmental Disability Program.
- DOM section 52080.32, Case Review

---

[2] Section 51020.5 was modified by the October 28, 2015 Order.  (ECF No. 5371.)

[4509557.2]

- DOM Sections 52100 through 52100.7, Inmate Indecent Exposure and Sexual Disorderly Conduct Management.
- DOM section 54046.10, Recommendations for Double Cell or Single Cell Due to Mental Health Concerns.
- DOM sections 91020.18 through 91020.18.2, Electronic Control Device, Review of Medical/Psychiatric Records,  Documenting Review of Medical/Psychiatric Records
- Appendix A, Inmate Property – Matrix – Authorized Personal Property Schedules for Restricted Housing Unit Male Inmates and Female Inmates
- Appendix D, Non Disciplinary Restricted Housing (NDRH) Personal Property Matrix; This property matrix was first announced in CDCR's September 25, 2013, memo Non Disciplinary Segregation Training.

III.    Policies

- May 18, 2006, memo Instructions for Awarding Favorable Behavior Points to I/Ps assigned to EOP GP.
- March 30, 2007, memo CCCMS Housing and Program Accessibility.
- August 31, 2007, memo Amended Policy for Adult Males Referred for Treatment of Exhibitionism.
- May 3, 2012, memo regarding Therapeutic Treatment Module Specifications.
- February 13, 2013, memo Removal of Health Care Appliances.
- March 21, 2013, memo Case-Work Expectations, Classification Time Frames, and Psych and Return.
- March 25, 2013, memo Notification of All Attempted or Completed Suicides during Non-Business Hours.
- October 29, 2013 memo State Issued Clothing and Bedding for Crisis Bed Patients.
- August 14, 2014 memo regarding the Temporary Moratorium on the Use of Management Cell Status for Inmates in the MHSDS.  That moratorium subsequently became permanent when the Management Cell policy was struck on March 7, 2017.
- September 19, 2014 DSH memo Case Conference for Returning DSH Level of Care Inmates with Prior Security Housing Unit Placement
- January 7, 2015, memo Change in Credit Earning Status for Inmates Eligible for Day for Day Work Credit and Assigned Minimum A/B Custody
- May 5, 2015, memo Weekly Supervisory Review of CDCR For 114-A IM Segregation Log.
- June 5, 2015, memo Minimum A Custody and Minimum B Custody Criteria and Application.
- August 21, 2015, memo Elimination of Inmate Clerks Typing Rules Violation Report Hearing Summaries for Inmate Participants in the Mental Health Services Delivery System.

- September 11, 2015, memo (Update) Elimination of Inmate Clerks Typing Rules Violation Report Hearing Summaries for Inmate Participants in the Mental Health Services Delivery System.
- January 19, 2016, memo Inmate Housing Assignment Consideration During the Screening and Housing Process.
- July 5, 2016 memo Utilization of Administrative Determinants Based Upon Positive and Negative Inmate Behavior and Increased Access to Rehabilitative Programs, and associated regulations, 15 C.C.R. §§ 3375, 3375.2; and
- August 8, 2016 memo C&PR Approval for Movement to a Higher or Lower Level Facility Within the Same Institution
- September 22, 2016, memo Reason for Retaining Inmates in Segregation, Removing Medical Hold from COMPSTAT.
- April 21, 2017, memo regarding Expanded Telephone Access and Additional Canteen Draw for Reception Center Inmates.
- June 30, 2017, Policy Housing Review/Least Restrictive Housing (12.11.2111).
- July 1, 2017, Policy DSH Rules Violation Reporting Policy – CDCR Patients in DSH Inpatient Programs.
- September 6, 2017 Custody and Mental Health Partnership Plan
- January 22, 2018, memo Response to Suicide Attempts by Hanging or Asphyxiation, Introduction of the Replacement Cut-Down Tool, and Standardization of the Cut-Down Kit.
- September 5, 2018, Court Transfer Documentation and Determination of Patient Ability to Attend a Court Hearing Policy.
- September 12, 2019 Updated Custody and Mental Health Partnership Plan
- January 17, 2020 memo Implementation of the Updated Custody and Mental Health Partnership Plan
- February 26 , 2021 memo Clarification of Use of Force Policy per Assembly Bill 1196 and Deadly Force Investigation Team Review of Intentional Baton Head Strikes[3]
- May 3, 2021, 2021 Heat Plan and Updates.  This memorandum is updated annually.
- Psychiatric Services Unit Behavioral Incentive Plan (CSP-SAC OP 129).
- CDCR PIP STEP Policy – CDCR has not finalized this policy as of this writing.

## IV.    Court Orders

- March 24, 1992 and May 11, 1992 Orders Regarding the Heat Plan (ECF Nos. 161 and 232.)

---

[3] This memorandum announces changes to the Use of Force DOM provisions.  Once the DOM is revised in accordance with the February 26, 2021 memo, the memo will be removed from Compendium during the annual update process.

- July 26, 1999, Order Regarding Staff Obligation to Report Incidents (ECF No. 1055 at ¶ 10.)
- March 12, 2007 Order Regarding Exhibitionism Treatment (ECF No. 2157.)
- November 18, 2010 Order Regarding Suicide Prevention Policies and Practices (ECF No. 3954.)
- December 5, 2011 Order Regarding Suicide Resistant Beds in MHCBs.  (ECF No. 4125.)
- April 10, 2014 Order Regarding Use of Force, Segregation, and Discipline (ECF No. 5131.)
- August 11, 2014 Orders Implementing Defendants Plans and Policies in Response ECF No. 5131 (ECF No. 5196.)
- August 29, 2014 Orders Implementing Defendants Plans and Policies in Response to ECF No. 5131. (ECF No. 5212.)
- May 4, 2015 Order in Response to the Special Master's Report on CDCR's Implementation of Policies and Procedure on Rules Violation Reports (ECF No. 5305.)
- September 24, 2015 Order Regarding the Special Master's Report on Suicides in the Second Half of 2012 (ECF No. 5361.)
- October 28, 2015 Order Modifying the August 11, 2014, Order  (ECF no. 5371)
- August 9, 2016 Order Adopting the Special Master's Twenty-Sixth Round Monitoring Report (ECF No. 5477.)
- September 1, 2016 Order Regarding the Use of Guard One at Pelican Bay State Prison's Security Housing Unit (ECF No. 5487.)
- February 20, 2019 Order Regarding Defendant's Custody and Mental Health Partnership Plan (ECF No. 6095.)
- October 8, 2019 Order Regarding Custody and Mental Health Partnership Plan (ECF No. 6314.)

V.     Suicide Prevention Recommendations

In its December 24, 2020 Order regarding suicide prevention issues discussed at the December 18, 2020 Status Conference, the court provided a list "Suicide Prevention Recommendations Remaining to be Fully Implemented."  (ECF No. 7004 at 5-6.)  That list is incorporated by reference into this Compendium.  In addition, although the court and Special Master has found that Defendants are compliant with implementing the following six recommendations, (see ECF No. 6973) the parties agree that these six recommendations constitute a continuing obligation:

- Recommendation 2 – Expand the length and content of the annual "Crisis Intervention and Suicide Prevention" training workshop to include the following topics: (1) self-injurious v. suicidal behavior and dealing effectively with inmates perceived to be manipulative, (2) identifying inmates at risk for suicide despite their denials of risk, (3) updated research on CDCR suicides, (4) identified problem areas and corrective actions

from previous CDCR suicide reports, and (5) results of any recent Coleman and/or SPRFIT audits of suicide prevention practices.

- Recommendation 4 – Ensure that all pre-service and annual suicide prevention training is conducted by qualified mental health personnel.

- Recommendation 19 – The perception that all inmates who threaten suicide are manipulative persists among the treatment teams as a misguided mindset that should be repeatedly addressed at different levels including pre-service and annual suicide prevention trainings, the SRE Training and Mentoring Program, and the newly created SRE treatment planning webinar.

- Recommendation 24 – Until all alternative housing cells are suicide-resistant, any inmate housed in an alternative housing cell that is not suicide-resistant should be observed on a continuous basis until transferred to an MHCB.

- Recommendation 25 – Any inmate housed in an alternative housing cell that is suicide-resistant should be observed at staggered intervals not to exceed every 15 minutes (Suicide Precaution), or be on continuous observation (Suicide Watch), depending on the level of the inmate's suicide risk.

- Recommendation 30 – Five-day follow-up assessments and 30-minute checks by custody staff should never be utilized as an alternative to MHCB or alternative housing for an inmate expressing suicidal ideation and/or engaging in self-injurious behavior.