| | |
|---|---|
| ROB BONTA, State Bar No. 202668<br>Attorney General of California<br>MONICA N. ANDERSON, State Bar No. 182970<br>Senior Assistant Attorney General<br>DAMON MCCLAIN, State Bar No. 209508<br>Supervising Deputy Attorney General<br>ELISE OWENS THORN, State Bar No. 145931<br>NAMRATA KOTWANI, State Bar No. 308741<br>Deputy Attorneys General<br>  1300 I Street, Suite 125<br>  P.O. Box 944255<br>  Sacramento, CA 94244-2550<br>  Telephone: (916) 210-7318<br>  Fax: (916) 324-5205<br>  E-mail: Elise.Thorn@doj.ca.gov<br>*Attorneys for Defendants* | HANSON BRIDGETT LLP<br>LAWRENCE M. CIRELLI, SBN 114710<br>PAUL B. MELLO, SBN 179755<br>SAMANTHA D. WOLFF, SBN 240280<br>KAYLEN KADOTANI, SBN 294114<br>DAVID C. CASARRUBIAS, SBN 321994<br>CARSON R. NIELLO, SBN 329970<br>1676 N. CALIFORNIA BLVD., SUITE 620<br>WALNUT CREEK, CALIFORNIA 94596<br>TELEPHONE: 925-746-8460<br>FACSIMILE: 925-746-8490<br>*Attorneys for Defendants* |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.<br><br>    Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING RE STAFFING CONTEMPT FINES**<br><br>Judge: Hon. Kimberly J. Mueller |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

RESPONSE .................................................................................................................................... 1

I.    Contempt Sanctions Are Not Appropriate, Particularly In Light Of Defendants' Recent Efforts Towards Compliance. ............................................................................. 2

    A.    Defendants Have Worked To Implement New Programs, Classifications, And Improved Salaries Since The Conclusion Of The Contempt Proceedings. .................................................................................................... 3

    B.    The Imposition Of Fines And Appointment Of A Fund Administrator Is Not The Least Intrusive Form Of Relief. .................................................................. 5

II.    State Law Constrains How Employee Salaries Are Established. ................................ 8

III.    If Civil Coercive Fines Are Imposed, Defendants Request That A Stay Be Granted And The Supersedeas Bond Requirement Be Waived. ...................................................... 9

CONCLUSION ............................................................................................................................. 11

CERTIFICATION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Cooter & Gell v. Hartmax Corp.*,
   496 U.S. 384 (1990) .................................................................................................... 11

*Dillon v. City of Chicago*,
   866 F.2d 902 (7th Cir. 1988) ................................................................................. 10, 11

*Glover v. Johnson*,
   855 F.2d 277 ................................................................................................................. 8

*Glover v. Johnson*,
   934 F.2d 703 714 (6th Cir. 1991) ................................................................................. 8

*Hardesty v. Sacramento Metropolitan Air Quality Management District*,
   No. 2:10-cv-02414 KJM KJN, 2019 WL 2715616 (E.D. Cal. June 28, 2019) ................. 10, 11

*NLRB v. Westphal*,
   859 F.2d 818 (9th Cir. 1988) ....................................................................................... 10

*Operating Engineers Pension Trust v. A-C Co.*,
   859 F.2d 1336 (9th Cir. 1988) ..................................................................................... 11

*Shillitani v. U.S.*,
   384 U.S. 364 (1966) ...................................................................................................... 7

*Shuffler v. Heritage Bank*,
   720 F.2d 1141 (9th Cir. 1983) ....................................................................................... 7

*Spallone v. U.S.*,
   493 U.S. 265 (1990) .................................................................................................. 5, 7

*Stone v. City and Cty. Of San Francisco*,
   968 F.2d 850 (9th Cir. 1992) ...................................................................................... 5, 9

*U.S. v. City of Yonkers*,
   856 F.2d 444 (2nd Cir. 1988) ........................................................................................ 7

**Federal Statutes**

11 U.S.C.
   § 101(40) ..................................................................................................................... 10
   § 109(c) ...................................................................................................................... 10
   § 903 .......................................................................................................................... 10

**Other Authorities**

Fed. R. Civ. P.
  11(b)(1) ................................................................................................................ 11
  11(b)(2) ................................................................................................................ 12
  62(b) .................................................................................................................... 10

Sen. B. No. 418, 2019-2020 Reg. Sess. (Cal. 2019) ...................................................... 10

Sen. B. No. 939, 2017-2018 Reg. Sess. (Cal. 2018) ...................................................... 10

# INTRODUCTION

On May 13, 2024, Plaintiffs sought leave to file supplemental briefing "addressing the appropriate timing, scope, and use of any fines the Court may impose … prior to issuance of any final order regarding Defendants' contempt of outpatient staffing orders" ("Plaintiffs' Request"). (ECF No. 8233 at 2:2-5.) Plaintiffs proposed that such briefing would address the specific steps necessary for Defendants to come into compliance with the court's staffing orders and the deadlines for Defendants to implement them, "as well as the question of whether additional remedies beyond financial sanctions are warranted in light of Defendants' ongoing non-compliance." The Court granted Plaintiffs' request the following day (ECF No. 8235), and Plaintiffs filed their supplemental brief on May 24, 2024 ("Supplemental Brief"). (ECF No. 8251.) Defendants submit this response to address the issues raised in both Plaintiffs' Request and their Supplemental Brief, including to provide parameters that the court should consider in issuing its final order.

# RESPONSE

Under Governor Newsom's direction, CDCR has taken extraordinary steps to expand access to mental health care and improve the recruitment and retention of mental health staff. CDCR has expanded the use of telepsychiatry (although those efforts have been curtailed by an order now on appeal), implemented telemental health (although Plaintiffs have proposed curtailing its use even more than telepsychiatry, an issue currently pending resolution by this Court), invested in recruitment efforts, streamlined the hiring process, expanded the use of registry staff to alleviate staffing vacancies, and increased salaries and benefits through the last round of collective bargaining to retain and attract more mental healthcare providers amidst a national staffing shortage.

Notwithstanding these efforts, Defendants acknowledge and share Plaintiffs' and the Court's frustration with the extraordinarily complex and challenging task of filling staffing vacancies that is not unique to CDCR or to medical and mental health providers in California. Though incarcerated persons within CDCR have greater access to clinical mental health staff and care in custody than what presently exists in the community (even with unfilled positions),

Defendants remain committed to using all available means within their legal authority to expand and improve that access through the recruitment and retention of mental health clinicians. Their commitment is evidenced through their ongoing efforts, described below, to improve staffing fill rates, including since the conclusion of the contempt proceeding. Indeed, the State has never willfully ignored the Court's order on staffing, and no evidence was presented at the hearing to show otherwise. In light of these efforts, Defendants urge this Court to hold in abeyance the imposition of fines and permit Defendants to focus on the implementation of these and other efforts to improve staffing.

I. **Contempt Sanctions Are Not Appropriate, Particularly In Light Of Defendants' Recent Efforts Towards Compliance.**

Notwithstanding the Court's apparent intention to impose civil coercive fines (*see* ECF No. 8147 at 7:1-4), Defendants urge the Court to hold the fines in abeyance and consider as an alternative the specific actions described below that Defendants have recently taken to ameliorate the staffing issues faced by CDCR. The use of mental health professionals from new classifications—which can attract mental health professionals not previously recruited for CDCR positions, and the establishment of a new telemental health program to recruit clinicians from geographical areas not otherwise close to a prison, for instance, are efforts that are currently under way and will significantly impact existing vacancies. The State has also raised salaries and established pay differentials for some clinicians through the State's established processes. These recent efforts not only should be given time to demonstrate improvement, they further demonstrate that Defendants should not be held in contempt in the first place.[1]

/ / /

---

[1] While Plaintiffs appear to reargue certain aspects of their closing brief (*compare*, *e.g.*, ECF No. 8251 (Pltfs.' Supplemental Brief) at 3:17-4:13, 4:20-5:27 *with* ECF No. 8023 (Pltfs.' Closing Brief) at 22:1-25, 23:24-25:6), Defendants incorporate by reference their responses to those arguments raised in the contempt proceeding, including but not limited to those contained in their Closing Brief (ECF No. 8019). Defendants do not restate those arguments, but preserve them here. Instead, Defendants seek to address the issues raised in Plaintiffs' Request and Supplemental Brief, including steps necessary to reach compliance.

### A. Defendants Have Worked To Implement New Programs, Classifications, And Improved Salaries Since The Conclusion Of The Contempt Proceedings.

Plaintiffs argue in their Supplemental Brief that Defendants should have used the time since the conclusion of the staffing contempt proceedings to "chart a new course," but failed to do so. (ECF No. 8251 at 2:2-5.) Plaintiffs are mistaken.

During the staffing contempt proceedings, Defendants informed the Court of their efforts to expand telework opportunities, which their expert, Dr. Greulich, testified is a now-expected employer offering in a post-pandemic world. (10/3 RT 76:1-7.) Those efforts included the creation of a new telemental health program, which allows CDCR to recruit from a bigger pool of candidates in metropolitan areas where most doctors and clinicians are based, away from CDCR's remote institutions. (10/3 RT 229:18-24.) At the time of the hearing, CDCR was working to fill the initial leadership roles within the telemental health program and was then planning to expand its hiring efforts to focus on line staff.

Since the hearing concluded (and as of June 3, 2024), 33 additional telemental health providers have started employment with CDCR: 1 Assistant Deputy Director, 1 Supervising Psychiatric Social Worker II, 3 Supervising Psychiatric Social Worker Is, 3 Chief Psychologists, 1 Senior Psychologist Supervisor, 6 staff psychologists, and 18 clinical social workers. (Declaration of Jasinda Muhammad in Support of Defendants' Response to Plaintiffs' Supplemental Briefing Re Staffing Contempt Fines ("Muhammad Decl.") ¶ 3.) Three clinical social workers have accepted offers and are expected to start in the coming weeks. *Id*. Three additional providers have offers and CDCR is awaiting their decision. *Id*. Five more Senior Psychologist Supervisors have accepted offers and are completing the hiring process. *Id*. In short, tremendous progress has been shown in the time since the hearing concluded and the hiring and onboarding of 30 telemental health staff is not insignificant. Even more encouraging, there is a robust, steady stream of applicants for these positions and interviews are being held and offers extended on a rolling basis. (*Id.*)

Additionally, since the contempt proceedings concluded, Defendants are in the process of proposing the creation within state civil service two new classifications of additional mental health

providers: Marriage and Family Therapists (MFTs) and Professional Clinical Counselors (PCCs). (Muhammad Decl. ¶ 4.) The use of MFTs and PCCs to provide mental health care services within the scope of their practice is beneficial to class members and has the potential to address CDCR's vacancy rates. CDCR is in the process of creating a policy and Plaintiffs are generally supportive of this effort. (Declaration of Samantha Wolff in Support of Defendants' Response to Plaintiffs' Supplemental Briefing Re Staffing Contempt Fines ("Wolff Decl.") ¶ 2 & Ex. A.)

These classifications do not currently exist within state civil service and thus have not previously been used within CDCR's Mental Health Services Delivery System. (Muhammad Decl. ¶ 4.) Notably, there is presently a pool of approximately 50,000 actively licensed MFTs and PCCs within the State of California as of July 17, 2023.[2] CDCR has also added MFTs and PCCs to its contracts with registry providers and initiated orders for registry positions, and CDCR's registry contractor, Management Solutions, is in the process of hiring for these positions. (Muhammad Decl. ¶ 5.)

Further, Defendants have recently implemented new pay policies and bargained-for pay differentials. In April, CDCR implemented an interim direction on the Hiring Above Minimum (HAM) mental health classifications. (Muhammad Decl. ¶ 6.) This provided direction to CCHCS staff to automatically hire at the HAM rate and established mid-step as the rate. (*Id.*) Under this new direction, CDCR is able to use HAMs to hire candidates in the five classifications at issue here and offer salaries above the minimum pay scale. (*Id.*) Additionally, on April 3, 2024, CDCR extended the 15% PIP pay differential to the MHCBs. (*Id.* at ¶ 7.) Psychiatrists, psychologists, social workers, and recreation therapists, among others, will receive the pay differential, which is 12 months retroactive for eligible staff members. (*Id.*) Thus, Defendants have, and will continue to focus on increasing salaries which is the only recommendation Plaintiffs' have made for using the fines.

Finally, new collective bargaining agreements affecting compensation for the five

---

[2] August 9, 2023, Board of Behavioral Sciences Licensing Report, available at https://www.bbs.ca.gov/pdf/agen_notice/2023/20230817_18_item_15c.pdf

classifications at issue in this proceeding went into effect in October 2023. CDCR is tracking hiring and separation data for these classifications from January 1, 2024 onward and comparing it to 2023 data to assess the impact of the material increases in base salary, differentials, and retention bonuses provided under the new agreements, in addition to other initiatives to streamline hiring practices. (*Id.* at ¶ 8.)

These recent efforts, only some of which predate the contempt hearing, demonstrate Defendants' ongoing efforts to address staffing vacancies, including through the implementation of new measures specifically designed to "chart a new course," contrary to Plaintiffs' assertions. (*See* ECF No. 8251 at 2:4-5.)

### B.  The Imposition Of Fines And Appointment Of A Fund Administrator Is Not The Least Intrusive Form Of Relief.

Plaintiffs assert that the Court should require Defendants to "immediately deposit in the Court's registry all fines that have accumulated to date," and appoint a fund administrator to recommend specific remedial measures. (ECF No. 8251 at 3:12-14, 6:8-11.) Plaintiffs claim that these fines and the appointment of a fund administrator constitute the least intrusive form of relief, but their analysis falls short.

A court may hold a party in civil contempt to enforce its orders, but must impose the least intrusive measures necessary to rectify the problem before more intrusive measures may be justified. *Stone v. City and Cty. Of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992); *Spallone v. U.S.*, 493 U.S. 265, 280 (1990). While Defendants do not dispute that there have been periods of non-compliance as it relates to specific classifications and time periods, they have been dedicated to restoring compliance, including through implementing the measures described *supra*. Further, Plaintiffs' requested relief here—the imposition of over $100 million in fines—is not likely to bring about the durable remedy that is required. Accordingly, Defendants request that the Court hold the fines in abeyance while less intrusive measures are implemented.

Initially, Plaintiffs argue that the fines are "narrowly tailored because Defendants are only fined for vacancies above 10% in each classification." (ECF No. 8251 at 5:2-3.) But the fact that the fines bear some relation to the violation does not lead to the conclusion that they are "narrowly

tailored." (*See id.* at 5:2-3.) Rather, it must be clear that nothing short of the imposition of these fines will rectify the staffing vacancies, yet there has been no such showing here. To the contrary, Plaintiffs' own expert testified that he had no opinion as to how large an increase in pay is needed to increase staffing, nor did he express an opinion on whether CDCR has taken all reasonable efforts to fill its vacancies. (10/4/23 Transcript of Hearing ("RT") at 174:1-18, 198:18-23, 226:22.)

Plaintiffs also argue that the fines are "likely to be effective because the money will be used to fund remedial measures Defendants have failed to take thus far but are 'necessary to come into compliance.'" (ECF No. 8251 at 5:7-9, quoting ECF No. 8147 at 7.) Notably, Plaintiffs fail to state with any specificity what those remedial measures are, or exactly how they propose the fines be allocated—other than to push that obligation onto a "fund administrator." (ECF No. 8251 at 8-11.) Absent any suggestion of how Plaintiffs suggest the fines should be used, it cannot be said that the imposition of fines is "likely to be effective." Moreover, as explained in the following section, to the extent that Plaintiffs are proposing the sort of rapid, unilateral salary increases identified by their expert as a possible solution (*see, e.g.,* RT 10/4 at 198:18-23, 174:1-18), such an approach would violate state law that requires that salary increases be collectively bargained and ratified by the Legislature—not imposed unilaterally. Thus, Defendants have not "failed" to take action, but rather lack legal authority to act as Plaintiffs would like.

Plaintiffs also claim that a finding of contempt and the immediate payment of fines are warranted because staffing has purportedly worsened since the contempt proceedings concluded in October 2023. (ECF No. 8251 at 2:5-6.) But Plaintiffs omit mention of Defendants' increased allocations, which took effect in January 2024, and drove down compliance percentages by increasing the staffing denominator. (Muhammad Decl. ¶ 9.) In total, 160.5 new positions were added: 11 additional psychiatry positions were allocated, 45.5 additional psychology positions were allocated, 29 additional clinical social worker positions were allocated, 24 additional recreation therapist positions were allocated, and 51 additional medical assistant positions were allocated. (*Compare* ECF No. 8245 at 6-10 *with* ECF No. 8075 at 5-9.) It is therefore misleading for Plaintiffs to argue that Defendants' "mental health staffing crisis is worse today than it was in

October 2023" (ECF No. 8251 at 2:5-6), particularly when Defendants employ 79.13 *more* mental health professionals now, as compared to October 2023. (*Compare* ECF No. 8254 at 5-9 *with* ECF No. 8075 at 5-9.)

Defendants are also aware of Plaintiffs' criticism that these efforts are essentially too little too late. But this misses the point of civil contempt, which is to "enforce compliance" where a party "willfully disobeys a specific and definite order requiring him to do or refrain from doing an act." *Shillitani v. U.S.*, 384 U.S. 364, 371 (1966); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983). Contempt proceedings are designed to coerce a party to act where it has refused to take all reasonable steps to reach compliance, and in doing so, courts are "'obliged to use the least possible power adequate to the end proposed.'" *Spallone v. U.S.*, 493 U.S. 265, 276 (1990), quoting *U.S. v. City of Yonkers*, 856 F.2d 444, 454 (2nd Cir. 1988) (internal quotations omitted); *Shuffler*, 720 F.2d at 1146-1147.

Here, Defendants are actively taking steps to reach compliance through a number of wide-ranging efforts designed to target staffing recruitment and retention issues from all angles. This is not an instance where a party is "willfully disobey[ing]" a court order (*Shillitani*, 384 U.S. at 371); rather, Defendants are focused on attaining compliance through their extensive efforts, including through the new measures described above. The imposition of fines will not and cannot hasten these efforts, particularly where there is a shortage of mental health professionals both nationwide and within California. (9/29 RT 49:17-8; *see also* Defs.' Closing Brief (ECF No. 8019) at 27-28.) Compliance therefore need not be coerced, and instead, "the least possible power adequate to the end proposed" dictates that this Court not impose over $100 million in fines. *See Spallone*, 493 U.S. at 276 (internal quotations omitted). As noted, Defendants have taken and continue to take significant steps within their legal authority to address the staffing issue, and Plaintiffs make no showing why such appointment is warranted if the focus is on remedies that exceed that legal authority, as appears to be the case.

Given that the Court must utilize the "least possible power," it is perplexing that Plaintiffs continue to advocate for more restrictions on Defendants' ability to address staffing. For instance, most recently, Plaintiffs submitted briefing to this Court advocating for even greater restrictions

on Defendants' use of telemental health than those proposed by the Special Master. (*See, e.g.*, ECF No. 8252 at 2:6-7 ("The Special Master's Proposed Policy Has Too Few Safeguards For the Use of Telemental Health").) Plaintiffs advocate for banning the use of telemental health at certain security levels (*id.* at 12) and limiting the scope of work telemental health providers can perform (*id.* at 15, 19). Certainly, Plaintiffs must know that levying greater restrictions on the use of a modality proven to reduce staffing vacancies will not help CDCR improve its fill rates. (*See* RT 9/29 at 82:1-4 (Dr. Greulich testifying that "CDCR's expanded use of telepsychiatry throughout the 2018 to 2022 period coincided with a . . . large reduction in the vacancy rate among CDCR psychiatrist positions.") And yet, they advocate for those restrictions while assailing Defendants' non-compliance with staffing orders.

Nor is the appointment of a "fund administrator" the least possible intrusion. While courts may appoint monitors or administrators as a sanction for contempt, "'considerations of federalism and comity caution restraint in the intrusion of federal judiciary authority into the administration of state correctional institutions . . . .'" *Glover v. Johnson*, 934 F.2d 703 714 (6th Cir. 1991), quoting *Glover v. Johnson*, 855 F.2d 277, 285-86. On this record, Plaintiffs' request for the appointment of a fund administrator cannot be considered the least possible intrusion.[3]

## II.    State Law Constrains How Employee Salaries Are Established.

Plaintiffs propose that the Court-imposed fines be "available to underwrite the expense of specific remedial measures designed to finally bring Defendants into compliance." (ECF No. 8251 at 6:7-8.) Plaintiffs further suggest that the fund administrator should have the authority to "direct and oversee the disbursement of funds from the account to implement the measures approved by the Court." (ECF No. 8251 at 7:1-3.) But Plaintiffs' suggestion appears to lack an awareness of the state processes that must guide the use of fines in certain instances, including to enhance state salaries or provide bonuses to state employees. Defendants provide a brief

---

[3] If the Court ultimately proceeds with Plaintiffs' request and appoints a fund administrator over Defendants' objections, Defendants agree with Plaintiffs' suggestion that Clark Kelso is a suitable appointment. Mr. Kelso understands state processes and could bring a fresh set of ideas to this issue.

explanation of that process, below, including the parameters within which the parties must work.

The California Constitution requires the establishment of state civil service, and state law creates clear processes for collective bargaining as the sole means for setting salaries, including pay differentials, for state employees. State civil servant salaries (along with other terms and conditions of employment) must be bargained for with the affected union, voted on and approved by the members of that union, and ultimately approved by the Legislature, which must ratify the MOUs and adopt a budget that funds the bargained salary schedules. No singular state official may unilaterally raise wages because this process requires the involvement of both the legislative and executive branches of government.

Plaintiffs' proposal does not seem to account for these restrictions, and while federal courts can take the extraordinary step of waiving state law to effectuate a remedial scheme "if the action is essential to enforce the scheme," this violence to state sovereignty is only justifiable when "the least intrusive measures fail to rectify the problems." *Stone*, 968 F.2d at 861, 862. As stated above, less intrusive measures exist which should be given time for implementation. Additionally, the parties should be encouraged to work within the confines of state law to ensure a lasting solution to this intractable problem.

### III. If Civil Coercive Fines Are Imposed, Defendants Request That A Stay Be Granted And The Supersedeas Bond Requirement Be Waived.

Should the Court enter an order requiring the payment of accrued fines into the Court account, Defendants intend to seek leave to request that this Court stay enforcement of the judgment and exercise its discretion to waive the supersedeas bond requirement pending the Ninth Circuit's review of this Court's anticipated order. Defendants provide a brief summary of their anticipated request here, in response to Plaintiffs' Request that the parties brief the issue of the appropriate timing relating to the payment any fines (*see* ECF No. 8233 at 2:2-5), but intend to file a more fulsome request at the appropriate time.

The purpose of the supersedeas bond requirement pending appeal is "to secure an appellee from the 'risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment' that may result from the stay." *Hardesty v. Sacramento Metropolitan Air Quality*

*Management District*, No. 2:10-cv-02414 KJM KJN, 2019 WL 2715616 at *3 (E.D. Cal. June 28, 2019), quoting *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). But here, there is no risk of an uncollectible judgment, and so no bond should be required. Indeed, the key factors for consideration under the *Dillon* test commonly applied in determining a request to waive the supersedeas bond requirement under Federal Rule of Civil Procedure 62(b) are "the degree of confidence that the district court has in the ability of funds to pay the judgment," and "whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money." *Dillon v. City of Chicago*, 866 F.2d 902, 904-905 (7th Cir. 1988). As explained briefly below, these factors indisputably weigh in Defendants' favor.

There is no question that the State is able to promptly pay the full amount of the contempt fine once the appeal is resolved, given the State's vast resources and long history of regularly depositing substantial sums of money with the court and paying substantial attorney's fees to plaintiffs' counsel. In addition, the California Legislature regularly makes appropriations for the payment of such judgments. *See*, *e.g.*, Sen. B. No. 418, 2019-2020 Reg. Sess. (Cal. 2019) (appropriating $27 million from the General Fund for payment of claims, settlements, and judgments against the State); Sen. B. No. 939, 2017-2018 Reg. Sess. (Cal. 2018) (appropriating $6.2 million from the General Fund and specified fund for payment of claims, settlements and judgments against the State). CDCR anticipates seeking a similar appropriation to pay any fines imposed by this Court. These efforts will ensure that the anticipated court-ordered fines will be available as necessary pending the appeal.

It also bears noting that, while corporations and municipalities may declare bankruptcy, states may not. *See* 11 U.S.C. §§ 109(c), 101(40), 903.

A bond pending appeal is therefore unnecessary and the cost of obtaining a bond would be wasteful of State resources. *See Dillon*, 866 F.2d at 904-05. Indeed, similar concerns exist here as were present in *Hardesty*, where this Court stated that its decision was "informed in part by the public policy implications of requiring a public entity to divert a large sum away from public programs to secure a bond as large as this one would be." *Hardesty* at *5. Accordingly, no bond should be required here. If the Court issues a final contempt order imposing fines, Defendants

will seek leave to request that this Court stay enforcement of the judgment and exercise its discretion to waive the supersedeas bond requirement pending the Ninth Circuit's consideration of this Court's anticipated contempt finding.

## CONCLUSION

Defendants request that the newly-implemented measures described above, which are specifically designed to improve recruitment and retention among CDCR's mental health clinicians, be given time to demonstrate success before this Court imposes the more intrusive relief requested by Plaintiffs.

## CERTIFICATION

Defendants' counsel certify that they reviewed the following orders in preparing this filing: ECF Nos. ECF Nos. 5710, 5711, 7742, 7766, 7804, 8147, 8235, 8239. Counsel specifically addresses the Court's May 16, 2024 order that admonishes counsel against filing briefs or objections containing arguments that have been resolved by prior court orders unless counsel seeks and obtains leave of court under established procedures to bring an appropriate motion for relief from those orders. ECF No. 8239 at 6-7. This brief sets forth arguments that have not been resolved by prior court orders as they are specifically tailored to address Plaintiffs' Request and Supplemental Brief. Counsel make this filing under their obligation to represent their clients zealously. *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

Counsel certify that they have conducted a reasonable inquiry and have determined that this filing is well grounded in fact, legally tenable, and not presented for an improper purpose, to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b)(1); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) (internal quotation marks omitted). Each factual contention made in this filing is supported by a reference to evidence in the record or elsewhere and the legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2).

/ / /

/ / /

| | | |
|---|---|---|
| 1 | DATED: June 4, 2024 | ROB BONTA<br>Attorney General of California |
| 2 | | |
| 3 | | |
| 4 | | By: _____/s/ Elise Owens Thorn_____<br>DAMON MCCLAIN |
| 5 | | Supervising Deputy Attorney General<br>ELISE OWENS THORN |
| 6 | | Deputy Attorney General<br>*Attorneys for Defendants* |
| 7 | | |
| 8 | DATED: June 4, 2024 | HANSON BRIDGETT LLP |
| 9 | | |
| 10 | | By: _____/s/ Samantha Wolff_____ |
| 11 | | LAWRENCE M. CIRELLI<br>PAUL B. MELLO |
| 12 | | SAMANTHA D. WOLFF<br>*Attorneys for Defendants* |