DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
MARISSA HATTON – 348678
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
ALEXANDER GOURSE – 321631
ADRIENNE PON HARROLD – 326640
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' REPLY BRIEF RE: STAFFING CONTEMPT REMEDIES**<br><br>Judge: Hon. Kimberly J. Mueller |

[4512319.4]

In their Response to Plaintiffs' Supplemental Brief Re: Staffing Contempt, Defendants rehash many of the same arguments they have raised throughout these contempt proceedings before conceding that *Plata*-Receiver J. Clark Kelso would make a "suitable" contempt fund administrator. *See* ECF No. 8260 at 12 n.3. Because Defendants' arguments against contempt are meritless, and because Plaintiffs agree that Mr. Kelso "understands state processes and could bring a fresh set of ideas to this issue," *id.*, the Court should finalize its tentative contempt order and appoint Mr. Kelso as fund administrator without further delay.

## I. DEFENDANTS STILL HAVE NOT TAKEN ALL REASONABLE STEPS TO COMPLY WITH THE COURT'S STAFFING ORDERS.

Defendants first argue the Court should "hold the fines in abeyance and consider as an alternative the specific actions…that Defendants have recently taken to ameliorate the staffing issues faced by CDCR." ECF No. 8260 at 6. The Court should not hold the fines in abeyance because at least two of the "specific actions" Defendants identify are not new at all, and all their identified measures are, in any event, too little too late.

Neither Defendants' telemental health program nor their 2023 collective bargaining agreements are new measures. Both were discussed at length during the contempt hearing, and both were (and remain) insufficient to satisfy Defendants' obligation to take "*all* reasonable steps to comply" with the Court's staffing orders. *See, e.g.*, Tr. 10-3-23 at 31-240; Tr. 10-4-23 at 9-147; *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016). Plaintiffs previously argued that the collective bargaining agreements would not have a significant impact because they provide only small pay increases to select classifications and do not depart from CDCR's existing, unsuccessful framework for compensating mental health staff. *See* Pls.' Corrected Closing Brief, ECF No. 8023 at 38 n.1. This prediction was clearly correct—the vacancy rates at issue have continued to rise during the eight months since the agreements went into effect. *See* Pls.' Supp. Brief, ECF No. 8251 at 2 n.1.

It is no excuse that the number of positions Defendants must fill has risen since last

fall.  The number of positions went up because the number of patients in Defendants' mental health system went up.  Not only *should* Defendants have anticipated this increase in the patient population, they *did* anticipate it—they simply chose not to prepare for it.  *See, e.g.*, ECF No. 7421 at 19, 22 (forecasting an increase of nearly 4000 additional CCCMS and EOP patients between 2022 and 2024).  Defendants' own failure to prepare does not insulate them from contempt.  *See, e.g., A.B. by & through Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 681 F. Supp. 3d 1149, 1169  (W.D. Wash. 2023) (health services agency did not take all reasonable steps where it "fail[ed] to prepare for and react swiftly to" a sudden increase in demand for inpatient beds).

   So too with Defendants' telemental health program.  Even if fully implemented, that program would add only 77 telepsychologists and 41 telesocial workers—far fewer than are needed to fill at least 90 percent of the required positions.  *See* ECF No. 8023 at 46-47.  In fact, the net impact of the program is likely to be even smaller than these figures suggest because a significant percentage of the new hires are likely to be existing CDCR clinicians who are simply transitioning to remote work.  *Id.* at 47 (citing Dr. Martello's testimony that "some" program applicants are existing CDCR clinicians and that the only clinician hired into the program as of early October 2023 was a social worker already employed by CDCR).  Defendants do not say how many of the 33 individuals hired into their telemental health program since last October fall into this category—a conspicuous omission given the testimony at trial.  *See* ECF No. 8260 at 7; Muhammad Decl., ECF No. 8260-1 ¶ 3.

   Defendants' other initiatives are similarly inadequate.  Defendants argue that they are "in the process of proposing" new civil service classifications for Marriage and Family Therapists and Professional Clinical Counselors, and that their registry contractor "is in the process of hiring" MFTs and PCCs.  ECF No. 8260 at 7-8; ECF No. 8260-1 ¶¶ 4-5.  But Defendants have repeatedly proposed and then abandoned similar measures in the past.  *See* ECF No. 8023 at 43-44.  Their vague statements about hiring MFTs and PCCs now, more than four years into their current staffing crisis, are clearly too little too late.  *See Kelly v. Wengler*, 979 F. Supp. 2d 1104, 1113-14 (D. Idaho 2013) (defendant's "long

1  overdue move" did not support all-reasonable-steps defense because it was "part of the
2  reasonable steps [the defendant] should have taken years ago"), *aff'd*, 822 F.3d 1085 (9th
3  Cir. 2016).  Defendants offer no reason to believe their proposal will have a significant
4  impact on vacancy rates—either in the short term or the long term.  They do not state when
5  their "process of proposing" the new classifications will be complete, let alone when MFTs
6  and PCCs will begin treating patients.  Nor do they state what they intend to pay these
7  professionals or how many they believe they will be able to hire at the salary they plan to
8  offer.  Apparently Defendants have not analyzed this question—just as they previously did
9  not take steps to determine what salaries would be needed to fill the other positions at issue
10 here.  The Court's tentative contempt order correctly identified this failure as one basis for
11 concluding that Defendants have not taken all reasonable steps to comply with its staffing
12 orders  *See* ECF No. 8147 at 4:18-21.  Similar conclusions are warranted here.

13         Finally, Defendants point to two recent measures related to compensation—an
14 "interim direction on the Hiring Above Minimum (HAM) mental health classifications"
15 and an extension to clinicians working in MHCBs of the 15% pay premium previously
16 offered only to clinicians working in the PIPs, ECF No. 8260 at 8—but neither measure
17 justifies holding contempt fines in abeyance, either.  Extending the 15% PIP pay premium
18 to MHCB staff will only increase pay for a small number of the positions at issue here, and
19 in the absence of a similar increase for staff working in EOP and CCCMS programs it is
20 likely to trigger an exodus of existing staff to higher paid MHCB positions with little net
21 effect on overall vacancy rates.  As for Defendants' "interim direction" relating to the
22 hiring above minimum process, they do not provide the court with the text of this direction
23 and their vague description leaves multiple critical questions unanswered.  Why didn't
24 Defendants' take this step years ago?  How long will this "interim" measure remain in
25 effect?  Does it actually *require* Defendants to offer "mid-step" salaries in all cases, as one
26 part of their description implies, or are hiring staff simply "able to" offer the mid-step
27 salaries if they choose, as the next sentence suggests?  *See id.* at 8.  Have Defendants
28 studied the likely impact of these salary increases, which for many classifications will only

provide a few hundred dollars more per month? *See* ECF No. 8260-1 ¶ 6.  Will anything comparable be provided to existing clinicians?  If not, why not, and what impact will this have on staff retention?  In short, in its current form, Defendants' "interim" HAM measure appears to be both too small and too indefinite to justify holding contempt fines in abeyance.

Because Defendants still have not taken all reasonable steps to comply with their staffing obligations, the Court should finalize the tentative decision and hold them in contempt.

## II. THE FINES ARE PROPERLY CALIBRATED AND THE APPOINTMENT OF A FUND ADMINISTRATOR IS WITHIN THE COURT'S DISCRETION.

Defendants next suggest that the fines that have accumulated pursuant to the Court's February 28, 2023 Order (ECF No. 7742) cannot be imposed because they do not represent the "least intrusive measure necessary to rectify the problem." ECF No. 8260 at 9.  "In selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citations omitted).  "Courts have conceded, however, that when the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable." *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir.), *as amended on denial of reh'g* (Aug. 25, 1992).

Here, the contempt sanctions represent the least possible exercise of power adequate to the end if coercing compliance.  The Court tried many other less intrusive measures to bring about compliance before resorting to the contempt process.  *See, e.g.*, ECF Nos. 3613 (ordering Defendants to develop a staffing plan), 5171 (ordering Defendants to revisit and revise their existing staffing plan to facilitate compliance), 5307 (ordering Defendants to implement several of their own proposals for filling vacant positions), 5477 (ordering Defendants to work with the Special Master to devise additional remedial measures), 5711 (ordering Defendants to fully comply with staffing plan through means of their choosing), 7035 (approving stipulation to modify certain ratios in Defendants' staffing plan), 7742

1  (outlining structure of prospective contempt fines).  The purpose of the fines is to coerce
2  compliance with the Court's staffing orders, which require Defendants to fill at least 90
3  percent of certain mental health positions allocated under their 2009 Staffing Plan, as
4  modified.  And the fines are carefully calibrated to achieve this result and no more.  Fines
5  are clearly necessary to coerce compliance—Defendants have had 15 years to implement
6  their 2009 Staffing Plan and the mere threat of contempt has not been sufficient.  Under
7  the Court's formula, Defendants will not be sanctioned for vacancies above the 90-percent
8  threshold or for any other actions that do not violate the Court's specific and definite
9  orders.  *Compare* ECF No. 7742 at 5-6 (describing the Court's formula for calculating
10 fines), *with Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983) (abuse of
11 discretion to require payment of fines that accumulated after coercive purpose had been
12 accomplished).  And as Plaintiffs previously explained, the amount of the fines is proper
13 because it is directly related to the amount of money Defendants are saving by failing to
14 fill at least 90 percent of the positions at issue.  *See* ECF No. 8251 at 4-5.  Anything less
15 would be ineffective because it would not provide an adequate incentive for Defendants to
16 fill the necessary positions instead of leaving them vacant.

17         Neither of Defendants' cases raise any doubts about the propriety of the fines here.
18 In *Spallone*, the Supreme Court held that a trial court abused its discretion by imposing
19 contempt fines on municipal officials *in their individual capacities* before waiting to see if
20 a separate set of fines imposed on the city itself would be sufficient to coerce compliance.
21 *See* 493 U.S. at 279-80.  None of the fines here are analogous to the individual fines the
22 Court disapproved in *Spallone*; by imposing fines on the State this Court would be doing
23 exactly what the *Spallone* Court said it should do.  Defendants' reliance on *Stone v. City*
24 *and County of San Francisco*, 968 F.2d 850 (9th Cir. 1992) is also misplaced.  In *Stone*,
25 the Ninth Circuit *upheld* contempt fines as less intrusive than more direct enforcement
26 orders to remedy jail overcrowding.  *Id.* at 852, 858-59, 864-65.  And while Defendants
27 assume the Court will order them to use the money in a way that conflicts with state law,
28 they concede that no such proposals are currently before the Court.  *See* ECF No. 8260 at

[4512319.4]

5

PLAINTIFFS' REPLY BRIEF RE: STAFFING CONTEMPT REMEDIES

10.

Defendants' repeated invocations of state law as a barrier to compliance in this proceeding, without identifying *which* state laws are barriers or proposing any alternative uses for the money (*see* ECF No. 8260 at 12-13), perfectly illustrate why the Court should not only impose the fines but also appoint a fund administrator to propose remedial measures. Defendants' learned helplessness is and will continue to be one of the primary obstacles to compliance. Appointing a fund administrator is a necessary step toward overcoming that learned helplessness, and Defendants' argument to the contrary is meritless. They do not even try to explain why they believe "considerations of federalism and comity" weigh against the mere *appointment* of an administrator. ECF No. 8260 at 12. The only case Defendants cite for support on this point *affirmed* the appointment of such an administrator in light of the prison-defendants' "consistent and persistent pattern of obfuscation, hyper-technical objections, delay, and litigation by exhaustion…to avoid compliance" over a period of eleven years. *Glover v. Johnson*, 934 F.2d 703, 714-15 (6th Cir. 1991). In this case, an even more egregious record over an even longer period indisputably supports the appointment of a fund administrator to assist the Court in identifying further remedial measures, assessing whether waivers are necessary due to conflicts with state law, and disbursing money from the fund as needed to implement any measures the Court adopts. Defendants will have ample opportunity to dispute the validity of such measures when the administrator recommends them; in the meantime, the federalism concerns they raise are entirely hypothetical.

As Defendants do not object to Plaintiffs' suggestion that *Plata* Receiver J. Clark Kelso serve as fund administrator, *see* ECF No. 8260 at 12 n.3 (agreeing that Mr. Kelso "understands state processes and could bring a fresh set of ideas to this issue"), the Court should appoint Mr. Kelso without further delay.

**III. THERE IS NO BASIS FOR A STAY, BUT IN THE EVENT THE COURT GRANTS A STAY PLAINTIFFS DO NOT OBJECT TO DEFENDANTS' REQUEST THAT A SUPERSEDEAS BOND BE WAIVED.**

Finally, Defendants argue that the Court should waive the requirement that they

post a supersedeas bond as a prerequisite to obtaining a stay. *See* ECF No. 8260 at 13-15. But this puts the cart before the horse, as Defendants offer no argument whatsoever for why the Court should issue a stay in the first place. *Id.* In the event the Court concludes that a stay is warranted in spite of this—and it should not—Plaintiffs do not object to a waiver of the bond requirement.

## CONCLUSION

The Court should finalize its tentative findings of contempt, order Defendants to immediately deposit all fines that have accumulated to date in the Court's registry, and appoint J. Clark Kelso as a fund administrator to oversee and direct the disbursement of those funds to pay for specific measures that will finally bring Defendants into compliance with their mental health staffing obligations.

## CERTIFICATION

Plaintiffs' counsel certifies that he reviewed the following orders in preparing this filing: ECF Nos. 3613, 5171, 5307, 5477, 5711, 7035, 7742, 8147, 8235, 8239.

DATED: June 11, 2024　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　ROSEN BIEN GALVAN & GRUNFELD LLP

　　　　　　　　　　　　　　　　　　By: */s/ Alexander Gourse*
　　　　　　　　　　　　　　　　　　　　Alexander Gourse

　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs