| | |
|---|---|
| ROB BONTA, State Bar No. 202668<br>Attorney General of California<br>MONICA N. ANDERSON, State Bar No. 182970<br>Senior Assistant Attorney General<br>DAMON MCCLAIN, State Bar No. 209508<br>Supervising Deputy Attorney General<br>ELISE OWENS THORN, State Bar No. 145931<br>NAMRATA KOTWANI, State Bar No. 308741<br>Deputy Attorneys General<br>  1300 I Street, Suite 125<br>  P.O. Box 944255<br>  Sacramento, CA 94244-2550<br>  Telephone: (916) 210-7318<br>  Fax: (916) 324-5205<br>  E-mail: Elise.Thorn@doj.ca.gov<br>*Attorneys for Defendants* | HANSON BRIDGETT LLP<br>LAWRENCE M. CIRELLI, SBN 114710<br>PAUL B. MELLO, SBN 179755<br>SAMANTHA D. WOLFF, SBN 240280<br>DAVID C. CASARRUBIAS-GONZÁLEZ,<br>SBN 321994<br>1676 N. CALIFORNIA BLVD., SUITE 620<br>WALNUT CREEK, CALIFORNIA 94596<br>TELEPHONE: 925-746-8460<br>FACSIMILE: 925-746-8490<br>*Attorneys for Defendants* |

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.<br><br>    Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED RESOLUTION RE DATA REMEDIATION INDICATORS SP10E/SP10**<br><br>Judge: Hon. Kimberly J. Mueller |

**INTRODUCTION**

This data remediation dispute pertains to indicators SP10 and SP10E, which evaluate whether initial health screenings occur in a confidential setting, in non-Psychiatric Inpatient Program (PIPs) Receiving and Release and PIPs, respectively. Indicator SP10 completed data remediation and was deemed "remediated" by the Special Master's expert. Through this dispute, the Special Master seeks to restart the process for this previously remediated indicator to further expand what it is designed to measure. Because there must be finality and meaning to the term "remediated indicator," Defendants respectfully object to the Proposal to reopen SP10.

Indicator SP10E, on the other hand, was previously pending remediation but recent

requests from the Special Master's team have required the California Department of Corrections and Rehabilitation (CDCR) to move this indicator backwards in the data remediation process and consider significant changes. CDCR is still in the process of determining what changes may be necessary to address the Special Master's team's concerns, and accordingly, the dispute regarding SP10E is not yet ripe for resolution.

## OBJECTIONS

### I.   SP10

SP10, "Observed Initial Health Screenings in a Confidential Setting,"[1] was remediated by the Special Master's data expert effective April 3, 2023. (Carwright Decl. ¶ 9.) This followed extensive review, discussion, and agreement by the Special Master's team, Plaintiffs' counsel, and CDCR. (*Id.* at ¶ 10.) The remediated indicator is specifically designed to measure only whether initial R&R screens were conducted in a confidential setting. (*Id.*) Separately, CDCR audits whether nursing staff who perform intake screening are asking all requisite mental health and suicide risk questions on the intake screening form. (*Id.*) The results of that audit are not incorporated into the SP10 indicator by design, since these are separate requirements.

Nonetheless, the Special Master's team has now requested that SP10 essentially restart the data remediation process to include a new line of inquiry: whether the screening nurse asked all requisite questions (and not simply whether those questions were asked in a confidential setting). Because this indicator previously completed the parties' thorough data remediation process and was ultimately remediated by the Special Master's data expert (*see* Cartwright Decl. ¶ 9), Defendants oppose the Special Master's team's attempt to re-open this remediated indicator, and unnecessarily expand the scope. Allowing remediated indicators to be reopened undercuts the Court's goal in completed data remediation and is unnecessary.

/ / /

---

[1] Indicator SP10 was initially termed "Percentage of Observed R&R and Reception Center Screens in Confidential Setting and Correct Documentation Used." This indicator is now entitled "Observed Initial Health Screenings in a Confidential Setting." (Declaration of Steven Cartwright in Support of Defendants' Objections to the Special Master's Proposed Resolution re Data Remediation Indicators SP10E/SP10 ("Cartwright Decl.") ¶ 5, fn. 1.)

**A.     The SP10 Indicator Was Remediated By the Special Master's Expert, Indicating Agreement By All Stakeholders.[2]**

As stated above, SP10, "Observed Initial Health Screenings in a Confidential Setting," was remediated by the Special Master's data expert as of April 3, 2023. As this Court is aware, remediation is an extensive and extremely time-consuming process involving the stakeholders' painstaking review of every element of each indicator. (Cartwright Decl. ¶ 3.) At the conclusion of this process, once all stakeholders have reached agreement on every aspect of an indicator, the Special Master's expert determines whether an indicator may be deemed "remediated." (*Id.*) Here, notwithstanding the Special Master's expert's determination that SP10 had been fully vetted and agreed upon by the stakeholders, and thus deemed "remediated," the Special Master's proposed resolution states that there was no agreement to the scope of indicator. Instead, the Special Master insists that SP10 is missing necessary elements. But given the steps required by the data remediation process and the extensive involvement of all stakeholders, this is simply not possible. Rather, the Special Master's team's proposal seeks to unnecessarily expand this indicator notwithstanding their prior decision to deem it remediated.

The Court's April 2, 2024 order details the six steps of the agreed upon data remediation process as agreed to by the Secretary Allison and the Special Master. (ECF No. 8181 at 1-2 (citing Decl. of Allison at 2 and Ex. A, ECF Nos. 7556, 7556-1.) The steps include: (1) documentation, (2) validation, (3) approvals, (4) programming, and (5) verification. Indicators may only pass through these steps and be deemed remediated after "stakeholders work by consensus to correct" any deficiencies, agree upon necessary documentation, and "there are no outstanding stakeholder disputes." (ECF No. 7863 (Special Master's Report on Data Remediation) at 28-30.) In addition to the above steps, before remediation may occur, Plaintiffs' counsel must conduct a final review of the verified documentation and confirm there are any unresolved disputes regarding the indicator. (Cartwright Decl. ¶ 3.) Only then, after numerous

---

[2] Collectively, Defendants, Plaintiffs, and the Special Master's team are referred to as "the stakeholders" for the purposes of the data remediation project.

steps of review by all stakeholders and agreement that there are no further concerns, is the indicator remediated. (*Id.*) Completion of this process and the "remediated" designation lies solely within the Special Master's and his expert's discretion. (*Id.*)

          1.        **The Evidentiary Record Shows That All Concerns Related to SP10 Were Previously Resolved.**

On April 29, 2022, CDCR released the documentation for SP10, then called "Percentage of Observed R&R Screens in a Confidential Setting and the Correct Documentation Used," for stakeholder review. (Cartwright Decl. ¶ 5 & Ex. A.) As part of the Business Rules Methodology Review (BRMR) process, the stakeholders provide written comments before each indicator is brought to a BRMR meeting for a collective review and discussion of the written comments. (*Id.*; *see also* ECF No. 8181 at 2.) Comments are not resolved unless all parties agree that edits have been made to address the comment or that based on discussion, no changes are necessary. (Cartwright Decl. ¶ 5.)

As noted in the Special Master's proposed resolution and Exhibit B to the same, the Special Master's data team—including Mr. Hayes (identified in the comment bubbles as "LH"), and Plaintiffs' counsel reviewed the documentation and provided comments. The Special Master points to Exhibit B at 1 of his proposed resolution to demonstrate that his team asked about the scope of SP10 and whether it, or another indicator, included completeness of the nursing screen. Notably, the comment is muted in color. (Cartwright Decl. ¶ 6.) This means that the comment was resolved. (*Id.*) Further, the second comment on the page, with a dotted line connecting it to Mr. Hayes' comment regarding the scope of the indicator, notes that the "[c]omment [was] resolved at BRMR: all questions/comments addressed, no changes applied to the SPO document." (Special Master's Proposed Resolution, Ex. B at 1.)

A review of the Special Master's Exhibit B also demonstrates that all stakeholders, including the Special Master's team, were aware that SP10 was limited to whether the initial health screen was conducted in a confidential setting. This exhibit includes an excerpt from the CQIT Guidebook pertaining to the R&R Screens audit. (*See* Special Master's Proposed Resolution, Ex. B at 9-10.) All "yes" answers to question 1 of the audit, under the "Standardized

Questions" heading, are included in the numerator of SP10. (*See id.* at 1.) It is accepted practice in the data remediation process to grey out any parts of an audit or policy that may be *related* to an indicator but are not actually being *measured* in the indicator. (Cartwright Decl. ¶ 7.) Here, there were three questions in the R&R Screens audit in Exhibit B; only the first question (whether the screening occurred in a confidential setting) is in black. (*Id.*) The remaining two questions (whether all questions were asked and the proper documentation was used) are greyed out because they are not part of the SP10 indicator. (*Id.*) This was (and continues to be) common practice in the data remediation process and is understood by all stakeholders, including the Special Master and his expert. (*Id.*) After resolution of all of the comments in the documentation, SP10 completed validation and was moved forward to approvals, programming, and verification.

On April 3, 2023, CDCR released SP10 for final stakeholder review pending remediation. (Cartwright Decl. ¶ 8 & Ex. B.) Over the summer, Plaintiffs' counsel sent minor revisions to this indicator and Defendants responded with documentation demonstrating they had been incorporated and/or addressed. (*Id.* & Ex. C.) On September 5, 2023, Plaintiffs' counsel thanked CDCR for the comprehensive response and provided their final review to the Special Master's data expert, Dr. Potter, which included an acknowledgement that Plaintiffs had no unresolved disputes with the indicator. (*Id.*)

On November 30, 2023, the Special Master's data expert, Dr. Dan Potter, emailed CDCR staff to notify them that he had intended to mark SP10 as remediated but had forgotten to add a remediated tag. (Cartwright Decl. ¶ 9 & Ex. D.) Thus, he added a remediation tag and back-dated SP10's remediation date to April 3, 2023, the day CDCR notified stakeholders SP10 had passed verification and was being released for its final review. (*Id.*)

### 2. The Proposed Resolution Ignores this History and Implies that CDCR Acted Improperly.

In the proposed resolution, the Special Master not only disavows the clear agreement made regarding the scope of SP10, but also implies that CDCR acted improperly by limiting SP10's scope to only measure whether the R&R screen was conducted in a confidential setting. But as detailed above, all stakeholders were aware of and agreed to the scope of SP10. Further, the

Special Master's own June 30, 2023 report (ECF No. 7863) acknowledged that stakeholders' agreement to decommission the "correct documentation" portion of the indicator occurred on November 18, 2022. (*Id*. at 38.) Both Plaintiffs' counsel and the Special Master's team reviewed the SP10 documentation several times after this agreement was made.

In short, CDCR audits whether all nursing staff ask all mental health/suicide risk questions on the intake screening form (*see* ECF No. 8179 at 28-38); however, that audit question is not part of SP10 both by design and by agreement of both Plaintiffs' counsel and the Special Master's team.

### B. Remediated Indicators Should Not Be Reopened Absent a Change in Policy or Some Other Extraordinary, Changed Circumstance.

It was never contemplated that remediated indicators would be part of the dispute resolution process. Indeed, Step One of the agreed upon dispute resolution process anticipates disputes arising in the BRMR stage, and Step Two states that if there are remaining disputes, the indicator "will be put on hold" while the dispute is referred to the First Level Review Team. (ECF No. 7556-2 at 2.)[3] Thus, as drafted and adopted, the process contemplates disputes arising during BRMR or QAC discussions (*i.e.*, the validation step)—but not later in the process. If changes are made subsequent to the validation step, such as during verification, the changes are reviewed by Plaintiffs' counsel and the Special Master, and brought back to validation[4] if necessary. But this process does not anticipate or direct how to handle disputes that arise once an indicator has completed the entire data remediation process and has been marked as remediated.

Nonetheless, if the Court agrees with the Special Master that the agreed upon dispute resolution process sets forth a process for disputing already remediated indicators, new disputes should only be allowed as outlined in Subsection (e) of Step One. That subsection states:

---

[3] Defendants acknowledge that the Court removed Step Two of the Dispute Resolution Process in the October 11, 2023 order. (ECF No. 8008.) The language regarding Step Two is incorporated here to show the intent of the drafters.

[4] Validation is step two (out of six) "that requires input and consideration by both parties as to what is specifically required by each indicator and its corresponding remedial requirement so that it is accurately measured." (ECF No. 8195 at 2.)

> For all other types of disputes, the dispute will be resolved through the dispute resolution process outlined below. No new or settled disputes about an indicator, shall be raised after the BRMR process is complete except in the case when an indicator was revised after the BRMR and the dispute involves that revision, or under extraordinary, changed circumstances; in the latter instance, the dispute shall be brough directly to the Special Master and Secretary for resolution.

(ECF No. 7556-2 at 2.)

In the case of SP10, the BRMR process was complete and no subsequent changes were made to this indicator. Indeed, this indicator was remediated, which cannot and does not occur unless all disputes and disagreements among stakeholders have been resolved. Here, the Special Master has not pointed to any changes to the remediated indicator, nor extraordinary changed circumstances, that would allow any stakeholder to raise a new dispute to this indicator. Accordingly, based on Subsection (e) of Step One, "[n]o new or settled disputes about an indicator[ ] shall be raised," including the dispute currently before this Court. (ECF No. 7556-2 at 2.)

Attempts to reopen a remediated indicator absent a new policy change or extraordinary circumstances calls into question the finality and legitimacy of the data remediation process. This is also at odds with this Court's prior remarks concerning the need to conclude data remediation. In short, this Court should not permit stakeholders to draw out the remediation process by reopening previously remediated indicators, particularly absent any change or extraordinary circumstances. To do so means that data remediation will effectively never end.

### C. A Related Dispute is Currently Pending Before the Court That Directly Affects the Court's Consideration of the Special Master's Proposal.

Included in their objections to Mr. Hayes' Sixth Re-Audit, Defendants objected to Mr. Hayes' findings of non-compliance as it pertains to the requirement that the initial R&R screening occur in a confidential space. (ECF No. 8179 at 29.) Specifically, Defendants objected to Mr. Hayes' expansion of this requirement to now include an evaluation of whether all 15 mental health/suicide risk questions are asked (and not simply whether these questions were asked in a confidential setting). Defendants' objections on this issue are currently pending before the Court, and this Court's ruling on their objections could impact this present dispute as to indicator SP10.

Accordingly, the Court should defer ruling on this dispute until resolution of the above objections.

## II.     SP10E

SP10E, which measures the percentage of observed initial screens in a confidential setting for PIP patients, had proceeded through data remediation and was pending remediation by the Special Master's expert. While pending remediation, the Special Master's team raised concerns with the documentation of SP10E, noting for the first time that not all PIP patients pass through Receiving and Release (R&R). (Declaration of Steven Cartwright in Support of Defendants' Objections to the Special Master's Proposed Resolution re Data Remediation Indicators SP10E and SP10 ("Carwright Decl.") ¶ 4.) Instead, some PIP patients are admitted directly to the PIPs. (*Id.*) Because this indicator was only designed to measure screenings performed in R&Rs, the indicator was not capturing those patients who were directly admitted to the PIPs. (*Id.*) In light of these concerns, CDCR is currently considering how to separate out the PIP and non-PIP data, and how the indicator will need to be revised to address these different environments. (*Id.*) In short, CDCR is still reviewing what changes may be needed to address the Special Master's concerns. CDCR will continue to revise SP10E as necessary and will provide the updated documentation to the Special Master and Plaintiffs' counsel for review once it is ready. (*Id.*) Because CDCR is still in the process of determining what changes may be necessary to address the Special Master's team's concerns, the dispute regarding SP10E is not yet ripe for resolution. Consistently, Defendants object to the Special Master's proposed resolution as premature.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court sustain their objections to the Special Master's Proposals on SP10E and SP10.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# CERTIFICATION

In preparing this filing, Defendants' counsel certify that they have reviewed the following relevant orders: ECF Nos. 7283, 7339, 7541, 7847, 8008, 8069, 8078, 8121, 8181.

DATED: June 12, 2024

ROB BONTA
Attorney General of California

By: */s/ Elise Owens Thorn*
DAMON MCCLAIN
Supervising Deputy Attorney General
ELISE OWENS THORN
Deputy Attorney General
*Attorneys for Defendants*

DATED: June 12, 2024

HANSON BRIDGETT LLP

By: */s/ Samantha Wolff*
LAWRENCE M. CIRELLI
PAUL B. MELLO
SAMANTHA D. WOLFF
DAVID C. CASARRUBIAS-GONZÁLEZ
*Attorneys for Defendants*