1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   MONICA N. ANDERSON, State Bar No. 182970
    Senior Assistant Attorney General
3   DAMON MCCLAIN, State Bar No. 209508
    Supervising Deputy Attorney General
4   ELISE OWENS THORN, State Bar No. 145931
    NAMRATA KOTWANI, State Bar No. 308741
5   Deputy Attorneys General
     1300 I Street, Suite 125
6    P.O. Box 944255
     Sacramento, CA 94244-2550
7    Telephone: (916) 210-7318
     Fax: (916) 324-5205
8    E-mail: Elise.Thorn@doj.ca.gov
    *Attorneys for Defendants*

    HANSON BRIDGETT LLP
    PAUL B. MELLO, State Bar No. 179755
    SAMANTHA D. WOLFF, State Bar No. 240280
    KAYLEN KADOTANI, SBN 294114
    DAVID C. CASARRUBIAS, SBN 321994
     1676 N. California Boulevard, Suite 620
     Walnut Creek, CA 94596
     Telephone: (925) 746-8460
     Fax: (925) 746-8490
     E-mail: PMello@hansonbridgett.com
    *Attorneys for Defendants*

10              IN THE UNITED STATES DISTRICT COURT

11              FOR THE EASTERN DISTRICT OF CALIFORNIA

12                      SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF STEVEN CARTWRIGHT, Psy.D., IN SUPPORT OF DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S JUNE 5, 2024 PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTE: SP15.1/SP15.1E (OUT OF CELL ACTIVITIES-YARD)** |

1

19376383.4

### DECLARATION OF STEVEN CARTWRIGHT, Psy.D.

I, Steven Cartwright, Psy.D., declare as follows:

1.    I am employed as the Assistant Deputy Director of the California Department of Corrections and Rehabilitation's (CDCR) Statewide Mental Health Services Delivery System (MHSDS).  I have held this position since July 17, 2020. I have been employed by CDCR since January 1, 2016.  I have reviewed the Special Master's June 5, 2024 Proposal for Resolving Data Remediation Dispute: SP15.1/SP15.1E (Out of Cell Activities-Yard) and make this declaration in support of Defendants' objections to that proposal.  I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

2.    In my capacity as Assistant Deputy Director, I oversee Defendants' data remediation efforts.  I participate in all stages of validation and verification, including data analysis, planning, change management, reporting, and monitoring.  I work closely and regularly with Dr. Potter, the Special Master's data expert.  Additionally, I attend meetings related to data remediation to ensure that our efforts align with the objectives of the data remediation project – documentation, validation, and verification of the mental health reporting system.

3.    Attached hereto as Exhibit A is a true and correct copy of the documentation for the remediated Key Performance Indicator SP15.1.  The documentation includes the approved questions used for the audit as "how many patients have documentation in the 114-A identifying yard was offered" and "how many patients who have had an initial IDTT are NOT restricted from yard time (due to clinical reason) by the clinical team."

4.    Indicator SP15.1, including all related business rules, completed the five-step validation and verification process.

5.    The scope of SP15.1 was discussed over the course of four BRMR meetings between March and April 2023 with the Special Master's team and Plaintiffs' counsel.  As part of these discussions, each stakeholder comment was reviewed and either addressed through revisions to the documentation or resolved based on the agreement that no changes were necessary.

6.      Attached as Exhibit B is a true and correct copy of an e-mail dated April 13, 2023, from CDCR's Office of Legal Affairs (OLA) attorney Sundeep Thind.  The e-mail notified the stakeholders that CDCR split the SP15 indicator into five separate indicators, including SP15.1, and provided new language for the underlying audit in response to comments made during the BRMR meeting.  Ms. Thind's e-mail provided a link to the documentation for each indicator that includes comments from the Special Master team and Plaintiffs' counsel and the resolution of each comment.  As the e-mail indicates, absent any issues, CDCR would move the indicators to the approval stage of the process.

7.      Attached as Exhibit C is a true and correct copy of an e-mail dated April 14, 2023, from Deputy Special Master Kerry Walsh and Plaintiffs' counsel indicating their agreement on SP15.1, its validation, and its movement to Step 3 of the data remediation process.

8.      Attached as Exhibit D is a true and correct copy of an e-mail from Sundeep Thind to Plaintiffs' counsel and the Special Master team dated June 5, 2023, announcing that SP15.1 had completed verification and was ready for Plaintiffs' and the Special Master's final review.

9.      Attached as Exhibit E is a true and correct copy of an e-mail dated June 16, 2023, from Plaintiffs' counsel indicating that they had no further issues with respect to SP15.1.

10.      Attached as Exhibit F is a true and correct copy of a series of e-mails between Sundeep Thind and Plaintiffs' counsel dated June 26, 2023, that acknowledges CDCR addressed the corrections previously requested by Plaintiffs and that the response resolves all of Plaintiffs' remaining issues.

11.      Attached as Exhibit G is a true and correct copy of an e-mail dated August 7, 2023, from the Special Master's data expert, Dan Potter, to myself and my CDCR colleagues. This e-mail confirms that SP15.1 was remediated as of June 23, 2023.

12.      It was only after SP15.1 was remediated that the Special Master first suggested unilateral changes to the audit questions underlying the indicator that include a ten-hour minimum requirement.

13.      On April 8, 2024, the Special Master team suggested that the numerator for SP15.1E be revised to add the italicized text to the indicator's documentation.  Attached as

1    Exhibit H is a true and correct copy of an e-mail dated April 8, 2024, from Deputy Special Master

2    Kerry Walsh to me and my CDCR colleagues and Plaintiffs' counsel that provides the Special

3    Master team's comments to 18 of 41 extended indicators.  The comments were provided in an

4    Excel spreadsheet attached to Mr. Walsh's e-mail, and Exhibit H includes an excerpt from that

5    spreadsheet setting forth the comments and information that pertain to SP15.1E.

6         14.    Exhibit H confirms that the Special Master and Mr. Hayes, for the first time,

7    suggested policy modifications to that the KPI for MHCB and PIP yard.  Mr. Walsh suggested

8    modifications, shown in the italicized text, to the following questions from the SP15.1 audit:  "[2]

9    Of those, how many patients have documentation in the 114-A or NCAT identifying yard was

10   offered*, based on their custody designation?  o RHU patients are required to be offered at least*

11   *10 hours per week*;" and "[11] Of those, how many patients have documentation in the 114-A or

12   NCAT identifying dayroom was offered, *according to patient's custody designation?"*

13        15.    If the Proposal is accepted and adopted, all indicators that address out-of-cell time,

14   not just yard time, will be impacted, including revision of SP15.1/SP15.1E, and revision or

15   decommissioning of SP15.5./SP15.5E, which measure whether dayroom was offered to MHCB

16   and PIP patients.

17        16.    Attached hereto as Exhibit I is a true and correct copy of a letter dated April 24,

18   2024 from Melissa Bentz to Kerry Walsh.

19        17.    Attached hereto as Exhibit J is a true and correct copy of a letter dated May 7,

20   2024 from Melissa Bentz to Kerry Walsh.

21        18.    Attached hereto as Exhibit K is a true and correct copy of the validated, approved,

22   and verified documentation for the Key Performance Indicator SP15.1E.

23        I declare under penalty of perjury under the laws of the United States of America that the

24   foregoing is true and correct.

25        Executed on this 12th day of June, 2024, at Elk Grove, California.

26

27                                    */s/ Steven Cartwright*
                                     Steven Cartwright, Psy.D.

28

19376383.4

# Exhibit A

# KPI:
# MHCB Out of Cell Activities - Yard

## Summary
Percentage of MHCB patients who were offered yard according to policy.

| Numerator | Denominator |
|---|---|
| The sum of responses to the following question from the audits in the denominator:<br><br>**MHCB Yard Time:**<br>• Of those, how many patients have documentation in the 114-A identifying yard was offered? | The sum of responses to the following question in the Privileges - Hayes Item 14 audit during the review period:<br><br>**MHCB Yard Time:**<br>• How many patients who have had an initial IDTT are NOT restricted from yard time (due to clinical reason) by the clinical team? |

## Component Business Rules
MHCB Privileges-Yard.

## Reporting Location
The institution and placement where the audits were completed.

## Pop-up
Click here for general pop up information
KPI details: TBD
  KPI-specific pop-up information:
11. **Date:** the date the auditor entered into the CQIT application.
12. **Count:** number entered into the numerator question. Clicking on the number will direct
    the user to the specific audit on audit report.
13. **Details:** Audit date, Sub Area and the score the auditor entered into the CQIT application.



## Release Note

[Release Note 64](#).

## Additional Information

Refer to the most recent version of the [Comprehensive Continuous Quality Improvement Audits Guidebook](#) for additional information on how the audit is conducted, including sampling requirements. Archived versions of the guidebook can be found here: [Archived Guidebooks](#).

For internal use only: Item #SP15.1

## Rationale

None.

## Known Issues

None found.

## Potential limitations

**[Global CQIT limitations](#)**

Custody auditors rely on the MH issue order listing activities allowed that is located at the Cell front and do not have access to patient records in EHRS.

## Verification

Verification testing implemented in production on 6/5/23.

## FAQs

None

[CAPC] **Approval Date**

The date the KPI was approved by the Mental Health Change Committee
(CAPC: Change Advisory Prioritization Committee)

| MHCB Out of Cell Activities - Yard |
| --- |
| **Category** |
| Suicide Prevention |
| MHCB Privileges - Yard |

| Links |
| --- |
| Performance Report |

| SPO Version | Version # |
| --- | --- |
| Previous | |
| Approved by CAPC | |
| Verified | |
| Current | |

# BR:
# MHCB Privileges - Yard

| MHCB Privileges |
| --- |

| Effective Period |
|---|
| Effective 2001-01-01 to present. |
| **First Release Date:** |
| 5/6/2023 |
| **Latest Release Date:** |
| 5/6/2023 |

| **Links** |
|---|
| KPI Link |
| Workflow Link |
| On Demand Homepage Link |

| SPO Version | Version # |
|---|---|
| Previous | |
| Approved by CAPC | |
| Verified | |
| Current | |

## Overview

Measurement of eligible patients in the MHCB that were offered yard.

## Policy

### MEMO:  Mental Health Crisis Bed Privileges Revision 2/14/2017

This memorandum supersedes the memorandum dated June 23, 2016, titled "Mental Health Crisis Bed Privileges" (attached). The purpose of this memorandum is to ensure privileges are provided to all inmate-patients (IPs) admitted to the Mental Health Crisis Bed (MHCB) units only. Privileges shall not apply to Alternative Housing settings. Effective immediately, all MHCB units shall provide the privileges, as documented below, to IPs admitted to the MHCB unit. The Interdisciplinary Treatment Team (IDTT) shall review and update privileges at every IDTT meeting. Following the initial IDTT, the primary clinician in conjunction with the psychiatrist and recreational therapist may consider additional privileges or removal of privileges based on changes to the IPs treatment goals and mental health status. Any restrictions of privileges shall be specifically noted by the MHCB IDTT and the rationale for restriction shall be documented on the treatment plan. Within one business day of the

decision, restrictions shall be communicated to custody and nursing staff. For institutions not yet using the Electronic Health Records System (EHRS), mental health staff shall complete a CDC Form 128-C, Chrono Medical, Psych., Dental, also known as an "Informational Chrono." For institutions using the EHRS, staff will complete the Mental Health Inpatient Issue Order which is configured to print a requisition in the MHCB for custody and nursing review.

## Out-of-Cell Activity

IPs admitted to the MHCB shall attend out-of-cell activities consistent with their custody designation unless specifically restricted by the MHCB IDTT. Any restrictions of out-of-cell activities shall be determined by the MHCB IDTT, ordered in the healthcare record, and the rationale for restriction documented on the treatment plan. Restrictions shall be communicated to custody and nursing staff via a CDC Form 128-C or a printed requisition from the EHRS within one business day of the decision.

## Documentation of Privileges Received

Each time an IP receives or participates in out-of-cell activities and/or receives an identified privilege, custody staff shall be responsible for noting the occurrence on the CDC Form 114-A, Inmate Segregation Record to provide proof of practice. All offerings of out-of-cell activities and/or privileges refused by an IP shall be noted on the CDC Form 114-A as well.

## MEMO:  COVID-19 QUARANTINE AND TEST-TO-PROGRAM UPDATES 9/14/2022

### Test-to-Program for Residents who are in COVID Quarantine (revised process)

Asymptomatic patients in exposure-related COVID-19 quarantine will be eligible to program, if:

- They have no COVID related symptoms
- They consent to POC COVID testing on days 1, 3, 5, and 7 of the quarantine period
- Each POC COVID test is negative
- They consistently wear at least a procedure mask while out of their housing cell

The test-to-program option shall not apply to residents who are in movement-related quarantine. Asymptomatic residents who test negative for COVID shall, while masked, be eligible for all routine programing including but not limited to work, school, in-person visiting, religious services, library, canteen, yard and health care appointments including mental health groups and ISUDT programing. Test to program does not apply to overnight family visiting.

Full implementation of the Test-to-Program initiative is dependent upon staff resources to complete the testing as determined by the Warden and CEO.

Residents who are asymptomatic and refuse testing shall receive S time until which time they are cleared from quarantine status or elect to comply with the COVID testing-to-program process.

Testing shall remain optional but strongly encouraged. Should a patient decline to test, he/she shall be limited to in-wing, cohorted activities until they are released from quarantine. Arrangements shall be made to accommodate essential clinical care.

**Access to Health Care**
All patients regardless of COVID quarantine status shall have access to routine, urgent, and emergent medical care. Appropriate precautions (facial coverings, using well-ventilated spaces, etc.) shall be taken to minimize risks to the employee and resident population.


## Rule Population
All MHCB patients.

## Trigger
Completion of Privileges – Hayes Item 14.

## Exception
None.

**<u>Fulfillment</u>**
Completion of Privileges – Hayes Item 14.

**<u>Time Frame</u>**
N/A.

**<u>Release Note</u>**
Release Note 64.

**<u>Rationale</u>**
None.

**<u>Known Issues</u>**
None found.

**<u>Potential Limitations</u>**
Global CQIT limitations

**<u>Additional Info</u>**
Refer to the Comprehensive Continuous Quality Improvement Audits
Guidebook (03.02.2023) for additional information on how the audit is
conducted, including sampling requirements.
For internal use only: Item #SP15.1

**<u>Verification</u>**

**<u>FAQs</u>**
None.

**Approval Date**
The date the Business Rule was approved by the Mental Health Change Committee
(CAPC: Change Advisory Prioritization Committee)

# DE: Privileges - Hayes Item 14

## <u>Overview</u>

An on-site Continuous Quality Improvement Tool item measuring the out of cell activities offered to MHCB patients.

## <u>Data Pathway</u>

CQI Tool -> Dashboard -> Privileges - Hayes Item 14

| Area : MHCB | Audit : Privileges – Hayes Item 14 | Review Type : Suicide Prevention ONLY MH On-Site Observation Audits | Audit Status: Not Started |
|---|---|---|---|
| Auditor Status : Not Started | | | Audit Submitted Date/Time: |

**Sub Area***

**Start Date***

mm/dd/yyyy

**End Date***

mm/dd/yyyy

Question - 1    How many patients who have had an initial IDTT are NOT restricted from yard time (due to clinical reason) by the clinical team?                                                                            ✖

**Numeric**

Enter a value from 0 to 10,000

**Comments**

Add an optional comment for question 1.

Question - 2   Of those, how many patients have documentation in the 114-A identifying yard was offered?   ✖

**Numeric N/A**

Enter a value from 0 to 100

☐ N/A

**Comments**

Add an optional comment for question 2.

Question - 3   How many patients who have had an initial IDTT are NOT restricted from phone calls (due to clinical reason) by   ✖
the clinical team?

**Numeric**

Enter a value from 0 to 10,000

**Comments**

Add an optional comment for question 3.

Question - 4    Of those, how many patients have documentation in the 114-A identifying a phone call was offered at least once per week?    ✖

**Numeric N/A**

Enter a value from 0 to 100

☐ N/A

**Comments**

Add an optional comment for question 4.

Question - 5    How many patients who have had an initial IDTT are NOT restricted from visits (due to clinical reason) by the clinical team AND had visit/visitor arrive at the institution during their time in MHCB?    ✖

**Numeric**

Enter a value from 0 to 10,000

**Comments**

Add an optional comment for question 5.



Question - 6   Of those, how many patients were offered a visit?   ✖

**Numeric N/A**

Enter a value from 0 to 100

☐ N/A

**Comments**

Add an optional comment for question 6.

Question - 7   For those patients who had a visitor arrive at the institution for a visit, were any visits denied?   ✖

**Yes, No or N/A**

⌄

**Comments**

Add an optional comment for question 7.

Question - 8   How many MHCB patients were reviewed?   ✖

**Numeric**

Enter a value from 0 to 10,000

**Comments**

Add an optional comment for question 8.

Question - 9   Of those, how many patients were offered a shower at least three (3) times per week?   ✖

**Numeric N/A**

Enter a value from 0 to 100

☐ N/A

**Comments**

Add an optional comment for question 9.

Question - 10   How many patients who have had an initial IDTT are NOT restricted from dayroom (due to clinical reason) by the   ✖
clinical team?

**Numeric**

Enter a value from 0 to 10,000

**Comments**

Add an optional comment for question 10.

---

Question - 11   Of those, how many patients have documentation in the 114-A identifying dayroom was offered?   ✖

**Numeric N/A**

Enter a value from 0 to 100

☐ N/A

**Comments**

Add an optional comment for question 11.

---

**Conduct Audit Comments**

Save | Save and Close | Cancel

# Exhibit B

**Elise Thorn**

| | |
|---|---|
| **From:** | Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov> |
| **Sent:** | Thursday, April 13, 2023 1:49 PM |
| **To:** | Cara Trapani; Dan Potter; Lisa Ells; Jenny Yelin; Walsh Kerry F.; Millham, Sofia A.; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Arielle Tolman |
| **Cc:** | Hockerson, Dillon; Cartwright, Steven@CDCR; Worrell, Wendy; Kirby, Melissa@CDCR; Garland, Latoya@CDCR; Weber, Nicholas@CDCR; Bentz, Melissa@CDCR |
| **Subject:** | Coleman: BRMR- SP15.1.2.3.4.5 MHCB Out of Cell Activities (Yard, Phone Calls, Visits, Showers, Dayroom) |
| **Attachments:** | SP15.1 MHCB Out of Cell Activities - Yard.docx; SP15.2 MHCB Out of Cell Activities - Phone Calls.docx; SP15.3 MHCB Out of Cell Activities - Visits.docx; SP15.4 MHCB Out of Cell Activities - Showers.docx; SP15.5 MHCB Out of Cell Activities - Dayroom.docx |

All,

Yesterday at BRMR we discussed the SP15 MHCB Property and Privileges indicator and expressed we would do an email bring back on this. We have split this indicator into five separate KPIs and have included some proposed language for auditors to report whether a patient was not offered dayroom or yard due to physical plan design. Please review the screenshot below and let us know if the proposed language in the red square below is acceptable **by no later than noon PST tomorrow.** If there are no issues, we would like to add this indicator to our next Change Advisory Prioritization Committee meeting agenda so this item can be moved forward. We have also included the links to all 5 KPIs below, along with attaching the documentation for the five separate KPIs to this email.



The attached documentation can be found on SharePoint Online here:

1

- [SP15.1 MHCB Out of Cell Activities - Yard.docx (sharepoint.com)](sharepoint.com)
- [SP15.2 MHCB Out of Cell Activities - Phone Calls.docx (sharepoint.com)](sharepoint.com)
- [SP15.3 MHCB Out of Cell Activities - Visits.docx (sharepoint.com)](sharepoint.com)
- [SP15.4 MHCB Out of Cell Activities - Showers.docx (sharepoint.com)](sharepoint.com)
- [SP15.5 MHCB Out of Cell Activities - Dayroom.docx (sharepoint.com)](sharepoint.com)

Let us know if you have any questions or issues with accessing the documentation.

Kind regards,

*Sundeep Thind*
Attorney
Office of Legal Affairs, CDCR
Work Cell: (916) 215-4043
Email:  Sundeep.Thind@cdcr.ca.gov

*Pronouns – She, her, hers*

**CONFIDENTIALITY NOTICE**: This communication with its contents may contain confidential and/or legally privileged information including, but not limited to, the attorney/client privilege and/or the attorney work product doctrine. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of this communication.

# Exhibit C

**Elise Thorn**

| | |
|---|---|
| **From:** | Cara Trapani <CTrapani@rbgg.com> |
| **Sent:** | Friday, April 14, 2023 12:08 PM |
| **To:** | Walsh Kerry F.; Thind, Sundeep@CDCR; Dan Potter; Lisa Ells; Jenny Yelin; Millram, Sofia A.; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Arielle Tolman |
| **Cc:** | Hockerson, Dillon@CDCR; Cartwright, Steven@CDCR; Worrell, Wendy; Kirby, Melissa@CDCR; Garland, Latoya@CDCR; Weber, Nicholas@CDCR; Bentz, Melissa@CDCR; Walsh Kerry F. |
| **Subject:** | RE: Coleman: BRMR- SP15.1.2.3.4.5 MHCB Out of Cell Activities (Yard, Phone Calls, Visits, Showers, Dayroom) |

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Sundeep,

The new language you added to the audit also looks fine to Plaintiffs.

Thanks,

Cara Trapani



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
ctrapani@rbgg.com

**(Pronouns – she/her/hers)**

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at ctrapani@rbgg.com.

---

**From:** Walsh Kerry F. <kwalsh@pldolaw.com>
**Sent:** Friday, April 14, 2023 6:15 AM
**To:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Cara Trapani <CTrapani@rbgg.com>; Dan Potter <dpotter@alumni.brown.edu>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Sofia Millham <smillham@pldolaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Arielle Tolman <ATolman@rbgg.com>
**Cc:** Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; Melissa Bentz <Melissa.Bentz@cdcr.ca.gov>; Kerry F. Walsh <kwalsh@pldolaw.com>
**Subject:** RE: Coleman: BRMR- SP15.1.2.3.4.5 MHCB Out of Cell Activities (Yard, Phone Calls, Visits, Showers, Dayroom)

[EXTERNAL MESSAGE NOTICE]

Thank you Sundeep – we have no issues with the language.

**Kerry F. Walsh, Partner**
kwalsh@pldolaw.com
P 401.824.5118 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com • Legal Disclaimer

**From:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>
**Sent:** Thursday, April 13, 2023 4:49 PM
**To:** Cara Trapani <CTrapani@rbgg.com>; Dan Potter <dpotter@alumni.brown.edu>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Walsh Kerry F. <kwalsh@pldolaw.com>; Millham, Sofia A. <smillham@pldolaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Arielle Tolman <ATolman@rbgg.com>
**Cc:** Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Subject:** Coleman: BRMR- SP15.1.2.3.4.5 MHCB Out of Cell Activities (Yard, Phone Calls, Visits, Showers, Dayroom)

All,

Yesterday at BRMR we discussed the SP15 MHCB Property and Privileges indicator and expressed we would do an email bring back on this. We have split this indicator into five separate KPIs and have included some proposed language for auditors to report whether a patient was not offered dayroom or yard due to physical plan design. Please review the screenshot below and let us know if the proposed language in the red square below is acceptable **by no later than noon PST tomorrow.** If there are no issues, we would like to add this indicator to our next Change Advisory Prioritization Committee meeting agenda so this item can be moved forward. We have also included the links to all 5 KPIs below, along with attaching the documentation for the five separate KPIs to this email.

Privileges – Hayes Item 14

2.1. General Guidelines

- This Item ~~can be~~ is completed by ~~either~~ custody ~~or mental health~~ auditors.
- While onsite, review the 114-As for the patients currently housed in MHCB
- From the list, randomly select a total of 10 patients and review their 114-As. If the list is less than 10, then all patients on the list shall be audited.
    - In cases where MHCB has more than 1 subarea, conduct 1 audit per subarea.
- Exclude Patient days where they have been out to court or out to medicalDo not include ~~patients who have been out to court or out to medical~~ during their crisis bed stay for an entire 8-hour shift of second watch.
- Use the issue orders, which are posted on the cell door~~, as well as provider orders in EHRS,~~ to determine clinical restrictions.
- Ensure that despite a facility and/or housing unit being on 'modified program' or patient on 'quarantine status,' MHCB patients are still permitted all out-of-cell-activities.
- If a patient was clinically cleared but was not offered dayroom and/or yard due to physical plant design, the auditor will indicate the deficiency in the comments section of the audit.
- Identify other potential barriers to patients not receiving authorized privileges, e.g., yard and other out-cell activities not offered in absence of RT.
- Verify that patients on maximum security status have access to out of cell time, including yard, and phone calls, unless restricted due to a documented clinical/custodial reason. i.e., the MHCB yard has a small management yard (SMY).

The attached documentation can be found on SharePoint Online here:

- SP15.1 MHCB Out of Cell Activities - Yard.docx (sharepoint.com)
- SP15.2 MHCB Out of Cell Activities - Phone Calls.docx (sharepoint.com)
- SP15.3 MHCB Out of Cell Activities - Visits.docx (sharepoint.com)
- SP15.4 MHCB Out of Cell Activities - Showers.docx (sharepoint.com)
- SP15.5 MHCB Out of Cell Activities - Dayroom.docx (sharepoint.com)

Let us know if you have any questions or issues with accessing the documentation.

Kind regards,

*Sundeep Thind*
Attorney
Office of Legal Affairs, CDCR
Work Cell: (916) 215-4043
Email: Sundeep.Thind@cdcr.ca.gov

*Pronouns – She, her, hers*

**CONFIDENTIALITY NOTICE**: This communication with its contents may contain confidential and/or legally privileged information including, but not limited to, the attorney/client privilege and/or the attorney work product doctrine. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of this communication.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

# Exhibit D

**Elise Thorn**

| | |
|---|---|
| **From:** | Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov> |
| **Sent:** | Monday, June 5, 2023 3:58 PM |
| **To:** | Cara Trapani; Dan Potter; Lisa Ells; Jenny Yelin; Walsh Kerry F.; Millham, Sofia A.; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Arielle Tolman |
| **Cc:** | Cartwright, Steven@CDCR; Worrell, Wendy; Kirby, Melissa@CDCR; Garland, Latoya@CDCR; Hockerson, Dillon@CDCR; Weber, Nicholas@CDCR |
| **Subject:** | BRMR SM/SH Review Access Granted 6/5/2023 - 6/12/23 |

All,

The following item(s) within the links below are now turned on for review. These items will be discussed at an upcoming BRMR meeting.

**Items for Review:**

- [AC9 Timelines of IDTT Acute and ICF Referrals and IRU Review.docx](#)

As part of the new workflow, the review will now be conducted via a collaborative document. A collaborative document is a file that multiple people edit or contribute to, with the goal of creating single final version through collaboration. Edits made to the collaborative document is saved automatically on our site, and immediately available for others to read. CDCR will not review your comments during the week when Plaintiffs and Special Master feedback is on-going, but there will be a version history on the comments and CDCR will review the final comments at the end of allotted review period.

**\*\*These items will be turned off on Monday June 12 2023 at <mark>4:00 PM PST.\*\*</mark>**

The documentation is now published for the below Indicators, they have passed verification and are ready for their review.

- RH18 ASU EOP Hub CCII, Captain, and Warden Reviews for LOS Over 90 Days
- SP18 Nursing Staff Current with CPR Training
- SP4 Suicide Resistant Cells
- SP15.1 MHCB property and privileges – Yard
- SP15.2 MHCB property and privileges - Phone Calls
- SP15.3 MHCB property and privileges - Visits

**All published documentation here:**
- KPI: [MH Reporting KPI](#)
- BR: [MH Reporting Business Rules](#)
- DE: [MH Reporting Data Elements](#)

**NEW Dispute Resolution Items** for their review**:**

| Indicator | Dispute Summary |
|---|---|
| None | |

Please let us know if you have further questions or any issues with accessing the links above.

Thank you,

*Sundeep Thind*
Attorney
Office of Legal Affairs, CDCR
Work Cell: (916) 215-4043
Email:  Sundeep.Thind@cdcr.ca.gov

*Pronouns – She, her, hers*

**CONFIDENTIALITY NOTICE**: This communication with its contents may contain confidential and/or legally privileged information including, but not limited to, the attorney/client privilege and/or the attorney work product doctrine. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of this communication.

# Exhibit E

**Elise Thorn**

| | |
|---|---|
| **From:** | Cara Trapani <CTrapani@rbgg.com> |
| **Sent:** | Friday, June 16, 2023 12:42 PM |
| **To:** | Dan Potter; Thind, Sundeep@CDCR |
| **Cc:** | Walsh Kerry F.; Jeffrey Metzner; Henry D. Dlugacz; Tim Rougeux; Thind, Sundeep@CDCR; Weber, Nicholas@CDCR; Leung, Pak Yan@CDCR; Mehta, Amar@CDCR; Cartwright, Steven@CDCR; Lisa Ells; Jenny Yelin; Arielle Tolman; Coleman Team - RBG Only; Worrell, Wendy |
| **Subject:** | RE: Plaintiffs' Comments on SP15.1 MHCB property and privileges – Yard [IMAN-DMS.FID12440] |

---

**CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear OLA,

Please correct the following issues with this indicator:

- The most recent versions of the KPI and BR pages appears to be 3.1, not 3.0. Please correct the link and the SPO Version table on both pages.
- The "general pop-up information" link does not work for us – we get an "Access Denied" message.
- The Pop-Up descriptions lack a definition of "measurement," which is necessary to understand the Pop-Up.
- In the screenshot of the audit on the DE page, this portion of Question 2 that appears in the Guidebook is not included, and should be added: <Note the CDCR number and the reason (e.g., documented custody factors such as RVR sanction) why the patient was not offered yard in the comment box.>

Dear Dr. Potter:

Here is Plaintiffs' final feedback regarding your four questions for the *SP15.1 MHCB property and privileges – Yard* indicator.

#1 Can your team access the statewide user links to these indicators and their related system components starting from https://cdcr.sharepoint.com/sites/cchcs_mh_reporting_com_s

Yes

#2 Does the version comparison functionality (accessed by clicking version numbers in the SPO Version) work?

Yes, for the BR and KPI (no version history for the DE)

#3 What unresolved disputes, if any, do the plaintiffs have with the indicator(s) and related components as currently documented on the SPO?

None

#4 Does the site search functionality bring up the state-wide version URLs or some other version(s).

Per CDCR's instruction, we must access the current versions at the below links:

KPI: MH Reporting - Home (sharepoint.com)
BR: MH Reporting - Home (sharepoint.com)
DE: MH Reporting - Home (sharepoint.com)

Let us know if you have additional questions.

Cara Trapani

 ROSEN BIEN
GALVAN & GRUNFELD LLP

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
ctrapani@rbgg.com

**(Pronouns – she/her/hers)**

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at ctrapani@rbgg.com.

# Exhibit F

**Elise Thorn**

| | |
|---|---|
| **From:** | Cara Trapani <CTrapani@rbgg.com> |
| **Sent:** | Monday, June 26, 2023 4:36 PM |
| **To:** | Thind, Sundeep@CDCR |
| **Cc:** | Cartwright, Steven@CDCR; Worrell, Wendy; Kirby, Melissa@CDCR; Garland, Latoya@CDCR; Hockerson, Dillon@CDCR; Weber, Nicholas@CDCR; Dan Potter; Lisa Ells; Jenny Yelin; Walsh Kerry F.; Millham, Sofia A.; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Arielle Tolman |
| **Subject:** | RE: Coleman: CDCR's Response to Plaintiffs' Review of Items Pending Remediation [IMAN-DMS.FID12440] |

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Sundeep,

Thank you for your thorough response to the issues we raised for the below indicators and for clarifying the process regarding the Guidebook citations in the documentation. Your email resolves the issues we identified in our prior emails about these items.

Thank you,

Cara Trapani



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
ctrapani@rbgg.com

**(Pronouns – she/her/hers)**

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at ctrapani@rbgg.com.

---

**From:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>
**Sent:** Monday, June 26, 2023 10:50 AM
**To:** Cara Trapani <CTrapani@rbgg.com>; Dan Potter <dpotter@alumni.brown.edu>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Kerry F. Walsh <kwalsh@pldolaw.com>; Sofia Millham <smillham@pldolaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Arielle Tolman <ATolman@rbgg.com>
**Cc:** Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Hockerson,

Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>
**Subject:** Coleman: CDCR's Response to Plaintiffs' Review of Items Pending Remediation

[EXTERNAL MESSAGE NOTICE]

Cara, Ari, and Jenny,

CDCR appreciates the time you have taken to identify typos and errors while conducting your review of each indicator pending remediation. We have carefully reviewed your attached emails and have provided responses to your questions and edits in the table below. Please let us know if you have any remaining concerns for the items addressed below.

Please note that several of the issues were related to the CQIT Guidebook not being updated to the **most current version**.

- The BRMR team does not update the documentation to the most current version monthly.
- This would require every KPI, Business Rule, Report, and Data Element to be updated monthly and the version table would also have to be revised each time.
- We have routinely updated the CQIT guidebook to the most recent version after the CAPC approval.
- If the Guidebook was not updated in the most recent version after the CAPC approval then it would be the next guidebook that has the updates made to it
- Please note that we are aware of wanting the most recent update and are looking into ways to better improve this.

The following 7 items are being worked on an updated response will be emailed out in the early part of next week.

- FEC1 Adequate Group Treatment Space,
- FEC2 Adequate IDTT Space
- FEC3 Adequate Individual Treatment Space
- PS1: Heat Related Illness Incidents for MHSDS Patients Prescribed Heat Alert Medications
- SP10 Observed Initial Health Screenings in a Confidential Setting
- SP7 Patients referred to MHCB on Continuous Direct Visual Observation
- SP12 Custody Follow Ups 7497 Forms

| KPI | Updates made based on Emails received |
|-----|----------------------------------------|
| SP15.1 - MHCB Out of Cell Activities - Yard | 1. *The most recent versions of the KPI and BR pages appears to be 3.1, not 3.0. Please correct the link and SPO Version table on both pages.*<br>   Resolved. Updated Version table to 4.0 and published.<br>2. *The "general pop-up information" link does not work for us – we get an "Access Denied" message.*<br>   Access refreshed. Issue resolved now.<br>3. *The Pop-Up descriptions lack a definition of "measurement," which is necessary to understand the Pop*<br>   According to the KPI Pop Up "measurement" is defined as the denominator. You can clic<br>   KPI Pop Information that is provided on the document to the information. We have not be<br>   providing this on any of the previous remediated KPIs.<br>4. *In the screenshot of the audit on the DE page, this portion of Question 2 that appears in the Guidebook*<br>   *included and should be added: <Note the CDCR number and the reason (e.g., documented custody fac*<br>   *as RVR sanction) why the patient was not offered yard in the comment box.>*<br>   The CQIT audit tool is intended to be used along with the CQIT audit guidebook. This way t<br>   can refer to the most recent and accurate audit instructions. |
| SP15.2 - MHCB Out of Cell Activities – Phone Calls | 1. *The most recent versions of the KPI appears to be 2.4, not 3.0. And the most recent version of the BR p*<br>   *appears to be 3.1 not 3.0. Please correct this on both pages.*<br>   Resolved. Updated the version tables and published the most recent versions.<br>2. *The "general pop-up information" link does not work for us – we get an "Access Denied" message.*<br>   Access refreshed. Issue resolved now. |

3. *The Pop-Up descriptions lack a definition of "measurement," which is necessary to understand the Pop*

According to the <u>KPI Pop Up</u> "measurement" is defined as the denominator. You can clic
KPI Pop Information that is provided on the document to the information.  We have not be
providing this on any of the previous remediated KPIs

4. *The BR page has a table on the left-hand side that incorrectly includes "TBD" in the title of the indicato*

Resolved.: all 5 SP15's were updated. (SP15.1, SP15.2, SP15.3, SP15.4, SP15.5)

5. *In the screenshot of the audit on the DE page, this portion of Question 4 that appears in the Guidebo*
*included, and should be added: <Note the CDCR number and the reason (e.g., documented custody fac*
*as RVR sanction) why the patient was not offered phone call in the comment box.>*

The CQIT audit tool is intended to be used along with the CQIT audit guidebook. This way
can refer to the most recent and accurate audit instructions.

6. *The Guidebook (pdf p. 91 of 4.27.23 version) is missing <at least once per week> from the end of Ques*

This is captured in the draft version of the guidebook and will be reflected in the next itera
the guidebook.

| <u>SP15.3 -<br>MHCB Out of<br>Cell Activities<br>- Visits</u> | 1. *The numerator and denominator should <u>not</u> say "The sum of." Starting each definition with "The num*<br>*sufficient, and that is how it is written in SP15.1 and 15.2.  Please review and make it consistent with c*<br>*SP15 documentation.* |
|---|---|

The wording for the numerator and denominator was updated to reflect this change for a
items.

Numerator:

| Before | After |
|---|---|
| The sum of the number entered in response to the following question from the audit in the denominator: | The ~~sum of the number entered in~~ response to the following question from the audit in the denominator: |

Denominator:

| Before | After |
|---|---|
| The sum of the number entered in response to the following question in the <u>Privileges - Hayes Item 14</u> audit during the review period: | The ~~sum of the number entered in~~ response to the following question in the <u>Privileges - Hayes Item 14</u> audit during the review period: |

2. *The "general pop-up information" link does not work for us – we get an "Access Denied" message.*

Access refreshed. Issue resolved now.

3. *The Pop-Up descriptions lack a definition of "measurement," which is necessary to understand the Pop*

According to the <u>KPI Pop Up</u> "measurement" is defined as the denominator. You can click on
Pop Information that is provided on the document to the information.  We have not been pro
this on any of the previous remediated KPIs

4. *The Rationale and Known Issues sections of the KPI still have template language in them that should b*
*deleted.*

The rationale section is part of the KPI and Business Rules SharePoint site template. This sect
intended to be included even if "none" is displayed. This also matches the language used
CAPC approved documentation.

5. *The Rationale section on the BR page states "None Found" which does not seem accurate.  Usually thi*
*blank if there is no applicable rationale.  Please review and make consistent with other SP15 documen*

The rationale section is part of the KPI and Business Rules SharePoint site template. This sect[ion is] intended to be included even if "none" is displayed. This also matches the language used [in] CAPC approved documentation.

6. *The most recent versions of the KPI and BR appears to be 3.1, not 3.0. Please correct this on both pag[es]*
   Resolved. Updated version table and published 4.0

7. *In the screenshot of the audit on the DE page, this portion of Question 6 that appears in the Guideboo[k]* *included, and should be added: < Instructions: pull SOMS visiting history for all patients currently hous[ed]* *MHCB to verify whether a visitor arrived for a visit.>*
   The CQIT audit tool is intended to be used along with the CQIT audit guidebook. This way [they] can refer to the most recent and accurate audit instructions.

| SP15.4 - MHCB Out of Cell Activities - Showers | 1. *As with SP15.3, the numerator and denominator start with "The sum of," which is not how it is writter[in]* *SP15.1 and 15.2. Please review and make it consistent across all SP15 documentation.* <br> The wording for the numerator and denominator was updated to reflect this change for all 5 S[P15] items. <br> Numerator: |
|---|---|

| Before | After |
|---|---|
| The sum of the number entered in response to the following question from the audit in the denominator: | The ~~sum of the number entered in~~ respons[e] to the following question from the audit in the denominator: |

Denominator:

| Before | After |
|---|---|
| The sum of the number entered in response to the following question in the Privileges - Hayes Item 14 audit during the review period: | The ~~sum of the number entered in~~ response to the following question in the Privileges - Hayes Item 14 audit durin[g] the review period: |

2. *The "general pop-up information" link does not work for us – we get an "Access Denied" message.*
   Access refreshed. Issue resolved now.

3. *The Pop-Up descriptions lack a definition of "measurement," which is necessary to understand the Pop[up]*
   According to the KPI Pop Up "measurement" is defined as the denominator. You can click o[n] Pop Information that is provided on the document to the information. We have not been pro[vided] this on any of the previous remediated KPIs

4. *The BR still says TBD in this section (please check for this issue across all SP15 documentation):*
   Resolved: all 5 SP15's were fixed. (SP15.1, SP15.2, SP15.3, SP15.4, SP15.5)

| SP15.5 - MHCB Out of Cell Activities - Dayroom | 1. *As with SP15.3 and .4, the numerator and denominator start with "The sum of," which is not how it is [written in]* *SP15.1 and 15.2. Please review and make it consistent across all SP15 documentation.* <br> The wording for the numerator and denominator was updated to reflect this change for all 5 S[P15] items. <br> Numerator: |
|---|---|

| Before | After |
|---|---|
| The sum of the number entered in response to the following question from the audit in the denominator: | The ~~sum of the number entered in~~ response to the following question from the audit in the denominator: |

Denominator:

| Before | After |
|---|---|

| The sum of the number entered in response to the following question in the <u>Privileges - Hayes Item 14</u> audit during the review period: | The ~~sum of the number entered in~~ response to the following question in the <u>Privileges - Hayes Item 14</u> audit during the review period: |
|---|---|

2. *The "general pop-up information" link does not work for us – we get an "Access Denied" message.*
   Access refreshed. Issue resolved now.
3. *The Pop-Up descriptions lack a definition of "measurement," which is necessary to understand the Pop...*
   According to the <u>KPI Pop Up</u> "measurement" is defined as the denominator. You can click o
   Pop Information that is provided on the document to the information. We have not been pro
   this on any of the previous remediated KPIs
4. *The BR still says TBD in this section (please check for this issue across all SP15 documentation):*
   Resolved: all 5 SP15's were fixed. (SP15.1, SP15.2, SP15.3, SP15.4, SP15.5)

| <u>RH24 High Refusers due to Custody Reasons with Documented Plan of Action</u> | 1 But please note that the KPI and BR link to the Sept 2022 CQIT Guidebook version (rather than the 4.27.23 v and the CQIT audit links to the 3.2.23 version<br><br>Correct this date is based on when the item went through CAPC and was first released to statewide users, we update it on a routine basis. If there are changes made that require the CQIT guidebook to be changed then th version will be updated at that time. |
|---|---|
| <u>RH13 STRH/LTRH Custody Out of Cell Time Offered</u> | Please verify that the popup descriptions on the KPI page are correct for this indicator – we cannot tell if they date<br>Yes the KPI page has the correct pop up description. |
| <u>RH15.3: Weeks Where NDS Patients Are Offered Required Phone Calls</u> | Please note one typo in the Overview of the Business Rule: \<that\> should be removed from the following sen \<Measurement of weeks where Non-Disciplinary Segregation (NDS) patients that are offered required phone<br><br><br><br>Please note that the KPI, BR, and DE all link to the 3.2.23 CQIT Guidebook (rather than the 4.27.23 version).<br>Correct this date is based on when the item went through CAPC and was first released to statewide users, we update it on a routine basis. If there are changes made that require the CQIT guidebook to be changed then th version will be updated at that time.<br><br>Please note that the linked version of the BR does not have a SPO current version number (it appears that it li V2.0 rather than the latest version, v4.0).<br><br>The links have been updated to the most current versions. |

| | |
|---|---|
| **SC10 Use of Force Involving MH Inmates** | Please note an error in the **BR's Rule Population**: <MHSDS patients> should be adjusted to <Individuals> in th[e] sentence <MHSDS patients involved in controlled and immediate Use of Force incidents>, because the denom[...] the KPI covers all use of force incidents, not just those involving MHSDS patients. |



Please also note an error in the **DE's Overview**: <and immediate> should be added after <controlled> to ensu[re...] accurately captures the scope of this indicator (i.e., both types of use of force incidents).



Please note that the KPI, BR, and DE all link to an outdated version of the CQIT Guidebook (6.30.2022).

Correct, this date is based on when the item went through CAPC and was first released to statewide users, we [...] update it on a routine basis. If there are changes made that require the CQIT guidebook to be changed then th[...] version will be updated at that time.

| | |
|---|---|
| **SP4 Suicide Resistant Cells** | • On the KPI page, there are not definitions for the terms "measurements" and "percentage" that appe[ar...] below screenshot in the KPI pop-up section. Please add information about these columns show[...]

| | Measurements | Percentage | Compliance |
|---|---|---|---|
| Suicide Resistant Cells | 9 | 1.2 | 67% |
| Suicide Resistant Cells | 9 | 1.2 | 67% |

According to the KPI Pop Up "measurement" is defined as the denominator. You can click on the KPI [...] Information that is provided on the document to the information. We have not been providing this o[n...] the previous remediated KPIs.

• The screen shot of the audit on the Hayes Item 2 DE page is missing the following Guidebook langua[ge...] end of Question 4: <Include the cell number of each cell audited> and this language from the end of [...] 5: < Include the cell number of each failed cell>
• The screenshot of the audit on the Hayes Item 10 DE page is missing the following highlighted langua[ge...] the Guidebook: |

d) Standardized Questions:
- How many cells are in the MHCB and CTC used as MHCB?
  - Exclude red line cell. Add appropriate comments about red line cell in the comment box.
  - Only count the CTC beds being used as MHCB
  - Include the cell number of each cell audited
- Of those, how many met the criteria to be suicide-resistant?
  - See Intake Cells-Hayes Item 2 audit re: criteria of suicide resistant
  - Include the cell number of each failed cell

The Guidebook link provides the information for the auditors.  We do not include instructions in the CQIT application.  All BRs and KPIs are linked to the guidebook for review.  All auditors review the guidebook when completing the audits.

| | |
|---|---|
| AC19 Housing Units Where 128 MH-5s Are Accessible to Housing Unit Staff | Please note two minor typos in the Numerator of the KPI: there should be a space before <Mental> and a spa<(both)>.<br><br>All items have been fixed. |
| QC3 Treatment Plans with Satisfactory Documentation | The most recent versions of the KPI and BR pages appears to be 4.1, not 4.0.  Please correct the link and the S Version table on both pages.<br>This was updated.<br><br>The DE for this indicator (CAT #6) is not linked on the DE page.<br>This was updated.<br><br>The "Fulfillment" section in the BR is outdated – it needs to match what is stated in the numerator on the KPI <A passing score is 11 if the answer to Question 12 is not N/A and a passing score is 10 if the answer Question 12 is N/A.*>.<br>Previously updated. |
| SP25.1 Institution SPR-FIT Meetings Observed that Satisfy All Audit Criteria | Please note a few minor typos in the Numerator of the KPI: (1) in the RC section, <required facilities> should b adjusted to <required facilities'>; (2) there is a double <??> at the end of the last bullet point question.<br><br>All items were fixed.<br><br>Please also note that from the KPI, I also received an "Access Denied" page when I clicked on the link for Gene Up Information.  The link to the Performance Report was also broken.<br><br>All items were fixed.<br><br>We also emailed regarding the new policy being added to the Business rule and this was approved and is going through the CAPC process. |
| AC13 Group Treatment in a Confidential Setting | The most recent version of the KPI page appears to be 7.1, not 7.0. The most recent version of the BR page ap be 11.2, not 10.0.  Please correct the link and the SPO Version table on both pages.<br><br>Pages have been published to 12.0 and 8.0.<br><br>The KPI page states: Due to a Cerner bug, the Contact Confidentiality field and other fie the Check Out screen may be left blank. Results that are left blank are not consider this indicator.  Does CDCR have an update on when this bug will be fixed?  We have it in our notes that th issue we agreed to follow up on.<br><br>There is no update on this bug. |

On the BR page:

The link to "Group Treatment" brings us to the old version of the structured treatment page. The link should updated when the revised EHRS MH Appointments glossary page has completed stakeholder review/CAPC/et

These have been fixed.

In the policy section, "FORDISCLOSURE" is missing a space.

MH Program guide C
H. PARAMETERS OF C
FOR DISCLOSURE

In the exception section, "except for groups appointment" should be "except for group appointmen

For EHRS, except for group appointments that w

The link to the Performance Report is not working.

Link has been fixed.

Thank you,

*Sundeep Thind*
Attorney
Office of Legal Affairs, CDCR
Work Cell: (916) 215-4043
Email:  Sundeep.Thind@cdcr.ca.gov

*Pronouns – She, her, hers*

**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information including, but not limited to, the attorney/client privilege and/or the attorney work product doctrine. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of this communication.

# Exhibit G

| From: | Dan Potter |
|---|---|
| To: | Leung, Pak Yan@CDCR; Worrell, Wendy; Garland, Latoya@CDCR; Cartwright, Steven@CDCR; Walsh Kerry F. |
| Subject: | Indicators marked off as remediated |
| Date: | Monday, August 7, 2023 12:27:29 PM |

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Pak Yan, Wendy, and Latoya,

I have marked off some additional indicators as remediated.  Please see the table below. In some cases, documentation fixes and corrections were requested, and I assume CDCR will continue to let the stakeholders know when those have been applied.

Thank you,
Dan

| Indicator # | Remediated Effective |
|---|---|
| AC13 | 6/26/23 |
| FEC1 | 7/3/23 |
| FEC2 | 6/29/23 |
| FEC3 | 6/29/23 |
| QC3 | 6/26/23 |
| RH13 | 6/26/23 |
| RH14 | 3/29/23 |
| RH15.4 | 6/26/23 |
| RH18 | 6/23/23 |
| RH24 | 6/26/23 |
| SC9 | 6/12/23 |
| SP15.1 | 6/23/23 |
| SP15.2 | 6/24/23 |
| SP15.3 | 6/25/23 |
| SP15.4 | 6/26/23 |
| SP15.5 | 6/26/23 |
| SP17.4 | 8/4/23 |
| SP25 | 6/26/23 |
| SP4 | 6/26/23 |
| SP8 | 4/3/23 |

# Exhibit H

| From: | Walsh Kerry F. |
|---|---|
| To: | Bentz, Melissa@CDCR; Elise Thorn; Kirby, Melissa@CDCR; Cartwright, Steven@CDCR; Mehta, Amar@CDCR; Worrell, Wendy; Leung, Pak Yan@CDCR; LElls@rbgg.com; Jenny Yelin; Maya Campbell; Coleman Team - RBG Only; Thind, Sundeep@CDCR |
| Cc: | Walsh Kerry F.; jeffrey.metzner@cuanschutz.edu; hdlugacz@blhny.com; lhayesta@msn.com; trougeux@hotmail.com; karenrea01@gmail.com; Dan Potter; Ryan, Jr., Michael F.; Irizarry, Cristina; Gribbin Rachel |
| Subject: | 41 Indicators |
| Date: | Monday, April 8, 2024 7:34:08 AM |
| Attachments: | Copy of OSM comments on 18 of 41 2024-04-08.xlsx |

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning - we write in furtherance of the aspect of the court's order of April 2, 2024 (ECF No. 8181) requiring the remediation of a group of 41 indicators no later than April 25, 2024. Following the request of the parties at the BRMR meeting of April 2, 2024, the Special Master's team provided the parties with a list identifying which indicators were included in this group of 41 on April 3, 2024.

These 41 indicators are comprised of 28 indicators that were extended to the PIPs and 13 additional non-extended indicators.

We are providing our team's comments in two groups with the objective of having the parties review these comments and working with each other and the Special Master's team to resolve any differences and provide comments within 7 days of receipt of this email. This email sets out interim dates to achieve this but if the parties are able to provide comments sooner it will leave more time to resolve differences or allow for indicators to move forward sooner where no discussion is required.

Among those 41 indicators are 28 that involve extending existing indicators to the Psychiatric Inpatient Program (PIP) setting.

1.  First 18 of extended indicators:

    a.  Here, we provide the Special Master's team's comments concerning 18 of those indicators. (Please see attached spreadsheet with columns provided for both defendants and plaintiffs to insert their comments).

    b.  Both parties should please insert their comments concerning each of those 18 indicators by the close of business Thursday **April 11th.** This will provide time on April 12th and April 15th for any discussion or exchange of emails required to attempt to resolve any differences so that by COB on Monday **April 15th this group of 18** will be ready for review by Dr. Potter.

2.  Second group of 10 extended indicators:

    a.  By 12:00 p.m. pacific time **Wednesday April 10th** the Special Master's team will provide comments on the remaining ten extended indicators.

    b.  Both parties should please insert their comments concerning each of those ten indicators by **COB Monday April 16th.** This will allow Tuesday April 16th and

Wednesday April 17th for any discussion or exchange of emails required to attempt to resolve any differences so that by COB **on Wednesday April 17th this group of ten** will be ready for review by Dr. Potter.

3. Remaining 13 indicators

   a. As the parties are aware, also included in this group of 41 indicators are 13 indicators which require(d) comment from one or both of the parties. We acknowledge receipt of the plaintiffs' emails of April 5th and April 6th. Concerning the remaining 13 indicators, if plaintiffs have provided comments, defendants should please respond to those by COB Monday **April 15th.**

**Summary**:
April 3: List of 41 indicators to parties (OSM, done)
April 8: comments concerning initial group of 18 (of 28) extended indicators to parties (OSM, done)
April 11: comments concerning initial group of 18 extended indicators (defendants, plaintiffs)
April 10: comments concerning second group of 10 extended indicators (OSM)
April 15: initial group of 18 extended indicators ready for review by OSM (stakeholders)
April 15: comments concerning 13 indicators including defendants' responsive comments to plaintiffs' comments and resolution of issues related to plaintiffs' emails of April 5th and 6th (defendants, plaintiffs with respect to comments; all stakeholders concerning resolution of issues in email)
April 15: comments concerning second group of 10 extended indicators (defendants, plaintiffs)
April 15: group of 13 indicators ready for review by OSM (stakeholders)
April 17: second group of 10 extended indicators ready for review by OSM (stakeholders)

**Kerry F. Walsh, Partner**
kwalsh@pldolaw.com
P 401.824.5118 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park  Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com • Legal Disclaimer

| CQOR Source Code | Pos. | Statewide Indicator Name | Link to Statewide Indicator | Effective validation and verification date | Statewide Denominator | Statewide Numerator | [SSM Comments] Include dates |
|---|---|---|---|---|---|---|---|
| SP15.1E | 2 | MHCB and Acute/ICF Out of Cell Activities - Yard | Intra-node-sharepoint | 6/26/2023 | The sum of responses to the following question in the Privileges - Hayes Item: How many patients who have had an initial IDTT are NOT restricted from yard time (due to clinical reason) by the clinical team? during the review period: MHCB or Acute/ICF Yard Time. | The sum of response to the following question from the audit in the denominator: MHCB or Acute/ICF Yard Time: Of those, how many patients have documentation in the 114-A or NCAT identifying yard and was offered? | 2024-04-05: 1) Audit language states "In cases where the MHCB or Acute/ICF has more than one sub area, conduct one audit per sub area." We assume Sub Area means sub program (i.e., MHCB, ACUTE, ICF) and 10 patients will be sampled in each subprogram. 2) Audit instructions need to make clear each audit should be performed on a random calendar week during the review period. 3) Suggested audit question revision(s): [2] Of those, how many patients have documentation in the 114-A or NCAT identifying yard was offered, based on their custody designation? If their patients are required to be offered at least 10 hours per week. [11] Of those, how many patients have documentation in the 114-A or NCAT identifying dayroom was offered, according to patient's custody designation? 4) Incorrect denominator and numerator wording, see suggested correction: |

# Exhibit I

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



April 24, 2024


Kerry Walsh
Pannone Lopes Devereaux and O'Gara LLC
Northwoods Office Park, Suite 215N
1301 Atwood Avenue
Johnston, RI 02919

Re: 41 Indicators Pending Remediation- Category B

**VIA EMAIL ONLY**

Kerry,

I write in response your April 22, 2024 email detailing the Special Master's position regarding the 41 indicators pending remediation. Your email breaks the 41 indicators into three categories. I provided the California Department of Corrections and Rehabilitation's (CDCR) response to Categories A and C yesterday. I now write in response to the indicators placed in Category B.

    I.   Background

In general, Defendants are concerned the Special Master's approach to the final review of the 41 indicators pending remediation is drastically different than has been understood and adhered to up to this point. Our specific concerns are articulated below, but most importantly, we are concerned the new approach the Special Master is taking will further delay this project and not permit completion by the Court's deadline. Defendants have raised these concerns in the responses to the 41 indicators provided on April 11th and April 15th, as well as in the responses regarding re-verification of extended indicators and the Special Master's request for new sub-statistics, both sent on April 15th.

To understand CDCR's concerns with the indicators discussed below requires an appreciation of the timeline for the extended indicators. On June 14, 2023, the Special Master provided for the first time his recommendation regarding the "placeholder" indicators. (ECF No. 7863-1 at 2-12.) This included a recommendation to extend numerous indicators to CDCR's Psychiatric Inpatient Programs (PIP). (*Id.*) On June 28, 2023, Defendants responded to the recommendations and largely agreed to the proposed indicators, including the extension of certain indicators to the PIPs. (*Id.* at 20-44.) As part of that response, CDCR identified the extended indicators requiring no changes to capture PIP requirements, including SP6, SP10, SP18, SP19, and SP20. (*Id.* at 28-32.) The June 28th letter also noted that many indicators required only minimal changes to capture PIP requirements, and clearly stated "CDCR does not agree to re-review parts of existing

Kerry Walsh
Page 2

indicators that have already been reviewed and agreed upon in BRMR, unless revisions are made as a result of the expanded rule population/audit area or PIP-specific policy requirements." (*Id.* at 25.)

At the time, all of the referenced indicators had completed validation[1] and, in some cases, had completed the data remediation process.[2] Because the underlying indicators for all of the extended indicators at issue had completed validation prior to extension, there was agreement by all stakeholders, including the Special Master's team, to the documentation, substance, and operation of the indicators.

Upon agreement to extend certain indicators to the PIPs, CDCR assigned unique tracking numbers to the extended version of each indicator, noted by an "E" at the end of the indicator number. Separate tracking of the extended indicators was necessary to ensure the underlying indicator was reviewed for potential revisions. The "E" label was applied to all indicators CDCR agreed to extend, even if no changes or only minimal changes were required to the underlying indicator. As noted above, the underlying indicators had already completed validation with many pending remediation or already remediated by the Special Master's data expert. Thus, there should be no disputes regarding indicators where no changes or only minimal changes were required to extend the indicators to the PIPs.

In fact, when the extended indicators were sent to Plaintiffs' counsel and the Special Master's team for review, very few revisions were proposed. Yet now, after the underlying indicators have been completely remediated and after the extended indicators have also completed validation, approvals, programming, and verification, as necessary, the Special Master seeks to revise the indicators such that CDCR would have to move both sets, the extended indicator and the underlying remediated indicator, back to the validation stage of the data remediation process. This would require both the non-PIP and PIP versions of the indicators to undergo approvals, programming, verification, and ultimately remediation yet again due to the changes being proposed, making it impossible to meet the court's April 25th deadline to remediate these indicators.

Per the agreed upon process, "[n]o new or settled disputes about an indicator shall be raised after the BRMR process is completed except in the case when an indicator was revised after the BRMR and the dispute involves that revision, or under extraordinary, changed circumstances and the dispute stems from those circumstances…." (ECF No. 7556-2 at 2.) There were no significant changes to these indicators after completing BRMR at the validation step of the

---

[1] The court's April 2, 2024 order included a description of the steps of the data remediation process, which are Step 1: Documentation, Step 2: Validation, Step 3: Approval, Step 4: Programming, Step 5: Verification, and Step 6: Remediation. (ECF No. 8181 at 2.) Validation occurs through review of the indicator documentation in the BRMR meetings. *(Id.)* Only once the documentation is agreed upon by all stakeholders, including the Special Master's team, does the indicator move to Step 3: Approvals.

[2] As of June 28, 2023, the identified indicators were in the following stages of the data remediation process: Step 3: Approvals- SP15.1; Step 4: Programming- SP6; Step 5: Verification- SP20; Pending Remediation- SC9; SP10; SP18; SP19; Completed all 6 steps- SC2 (remediated on March 22, 2023); SC3 (remediated on January 23, 2023); SC7 (remediated on July 29, 2022); and SP11 (remediated on July 29, 2022). (ECF No. 7863-1 at 25-32.)

Kerry Walsh
Page 3

process[3], nor are there any changed circumstances necessitating revisions beyond what is needed to extend the indicators to the PIPs. Despite Defendants' repeated concerns, the Special Master continues to press for revisions to remediated indicators which have already completed data remediation. (*See diagram of six-step data remediation process* ECF No. 8195 at 2.) At this late stage, CDCR cannot agree to substantive changes to indicators that were previously remediated.

II.  Comments Regarding Indicators in Category B

Below are concerns specific to the indicators in Category B.

1.  SP10E: Observed Initial Health Screenings in a Confidential Setting

In the April 22nd email, the Special Master provided two notes for SP10E: (1) The audit does not include instructions for PIP intake screening; and (2) The reporting interface does not allow filtering for PIP-specific information. Your email indicates SP10E can be marked as remediated, subject to future stakeholder validation of updated audit instructions and the addition of the ability to filter by Mental Health Identifier (MHI).

The first note regarding audit instructions for PIP intake screening was not raised in the Special Master's comments provided on April 8, 2024. This is a new note for this remediated indicator. Regardless, audit instructions for PIP intake screenings are unnecessary as the screening process and the audit are the same for patients at all levels of care.

The second note pertains to the ability to filter audits by the patient's level of care. As noted in our response on April 11th, the request to revise the indicator to allow filtering by level of care was not made prior to the remediation of the underlying indicator on April 3, 2023, and is not a change related to the PIP extension. Attempts to revise a remediated indicator when the parties agreed no changes were required to capture the PIPs is contrary to the agreed upon process. Despite this, CDCR agreed in my April 11th correspondence to revise the Continuous Quality Improvement (CQI) Tool to allow auditors to gather information regarding the level of care for each patient being audited. The patient's MHI information will be available in the "details" column of the drill down, but due to the current design of the Performance report, users will be unable to filter solely by patient MHI. CDCR cannot agree to redesign a remediated indicator at this late date, as it will send the indicator back to steps three, four, five, and six (approvals, programming, verification, and remediation) of the data remediation process. (ECF No. 8181 at 2.)

SP10 was remediated on April 3, 2023. No changes were made to the documentation to extend SP10 to the PIPs. SP10E should be remediated as is.

---

[3] Validation is step two (out of six) "that requires input and consideration by both parties as to what is specifically required by each indicator and its corresponding remedial requirement so that it is accurately measured." (ECF No. 8195 at 2.)

Kerry Walsh
Page 4

2. SP15.1E MHCB and Acute/ICF Out of Cell Activities – Yard

In the April 22nd email, the Special Master noted that his suicide prevention expert monitors Mental Health Crisis Beds (MHCB) and Acute/Intermediate Care Facility (ICF) yard time by examining whether 10 hours of out of cell time, including yard and dayroom, were offered and indicated that SP15.1E can be remediated if CDCR re-designs the audit to match these practices.

It's unclear if the 10-hour threshold would apply to all patients or only those on Maximum (Max) Custody. On April 8th, the Special Master requested the following revisions to the numerator for SP15.1E which seemed to specifically apply the threshold to Restriction Housing Unit (RHU) patients.

> [2] Of those, how many patients have documentation in the 114-A or NCAT identifying yard was offered, based on their custody designation? o RHU patients are required to be offered at least 10 hours per week.

As explained in my April 11th response, the non-PIP version of this indicator that measures whether yard time was offered in MHCBs was remediated by the Special Master's data expert on June 26, 2023 without the above green language.[4] In accordance with the Program Guide's policy on out of cell time for patients in MHCB, the remediated indicator was built to focus solely on whether yard time was offered. (*See* ECF No. 7333-1 at 379, February 14, 2017 Mental Health Crisis Bed Privileges Revision.) Whether dayroom is offered is part of a separate indicator, SP15.5, which was remediated on June 26, 2023. The Special Master's suicide prevention expert was part of the review and validation of this indicator prior to remediation. The referenced audit question did not require revision to extend the indicator to the PIPs. Thus, this request is not related to the part of the indicator extended to the PIP, but instead a request to revise a remediated indicator.

On April 8th, the Special Master also included proposed revisions to the numerator for SP15.5 as part of the comments provided for SP15.1E. As noted above, SP15.5 was remediated by the Special Master's data expert on June 26, 2023. As with SP15.1E, SP15.5 required no revisions when it was extended to the PIP. Thus, the proposed revisions are unrelated to the PIP extension but are instead a request to revise a previously remediated indicator.[5]

Not only are these requests improper at this stage of the data remediation process, but they are also inconsistent with policy. There is currently no policy setting a minimum requirement for yard time for patients in the MHCB or PIPs, regardless of their custody status. CDCR's long established MHCB privileges memo sets no minimum threshold. (ECF No. 7333-1 at 379.)

---

[4] Defendants April 11th incorrectly stated that SP15.1 was remediated on June 23, 2023. The indicator was actually remediated on June 26, 2023.
[5] CDCR did not agree to the requested change for the application of a 10-hour threshold for SP15.5E. However, the April 22nd email from Kerry Walsh noted that SP15.5E was ready for remediation pending verification. SP15.5E was remediated by the Special Master's data expert on April 24, 2024, with a remediation date of April 11, 2024.

Kerry Walsh
Page 5

A patients' prior housing in an RHU is similarly inapplicable to this indicator.  Although section 3348(i) of Title 15 requires that inmates assigned to RHU shall be offered a minimum of 10 hours of exercise per week, that requirement applies to inmates housed in an RHU, not a crisis bed or a PIP. The current Title 15 section is consistent with the prior Section 3343 that was also limited to incarcerated persons assigned to segregation units. It would be inappropriate to apply a 10-hour threshold for yard time, or even out of cell time, offered to patients in MHCB or PIP, regardless of their custody status. To the extent this is the threshold used by the Special Master's suicide prevention expert, that was not discussed when SP15.1 or SP15.5 were remediated and was not apparent from prior monitoring. CDCR objects to the use of a standard unsupported by policy in any monitoring.

CDCR recently provided a draft policy that would require 10 hours of unstructured out of cell time for PIP patients per week; this draft policy recognizes out of cell time to include all custodial out of cell time, including yard and dayroom. However, the policy is still in draft form and is not finalized. As agreed by the stakeholders, SP15.1 and SP15.1E were created based on the policy in effect at the time of the agreement, not potential future policies. Further, CDCR has not agreed to create an indicator to measure this proposed requirement as it is not part of the remedy in this case.[6]

The Special Master's proposed revisions are inconsistent with policy. SP15.1E should be remediated as is.

3.  SP19E: Healthcare Staff Current with Suicide Prevention Training

The April 22nd email states SP19E can be marked remediated once CDCR shows how separate statistics for medical, nursing, and mental health are documented and available to users.

Please review the documentation for SP19 which was remediated on December 15, 2023.[7] The screenshot provided under the "Pop-Up" section of the documentation shows the sub-statistics for each group of professionals measured in this indicator. The original indicator included staff assigned to the PIPs, so no changes were necessary to extend the indicator.

SP19E is ready to be remediated.

4.  SP6E: Required Mental Health Clinical Staff with Completed SRE Mentoring and Biennial Training

In the April 22nd email, the Special Master states confusion regarding the source of data used in SP6. The current indicator documentation states the underlying information is from the Court

---

[6] Defendants acknowledge the question of whether the 10 hours of unstructured out of cell time in the PIPs is part of the remedy in this case is currently pending before the court.

[7] The documentation is available via the following link: Healthcare Staff Current with Suicide Prevention Training (sharepoint.com). The Business Rules and Data Element are linked on the KPI page.

Kerry Walsh
Page 6

Ordered Training site; however, a Suicide Prevention audit is also referenced in the documentation.

The Special Master is correct. The source for SP6 (and thus SP6E) is the Court Ordered Training site. However, there is also a Suicide Prevention audit that is referenced in the indicator documentation. The Suicide Prevention audit relies on the same source as SP6 and is used by the institutions and Regional SPRFIT coordinators for routine monitoring. The Suicide Prevention audit was created before SP6 was remediated and has not been revised in light of the remediated indicator. Now that SP6 has been agreed upon by all stakeholders and remediated, CDCR will review the Suicide Prevention Guidebook and determine if the current audit item should be revised or replaced with SP6. However, this should not delay remediation of SP6E.

SP6 was remediated by the Special Master's data expert on November 22, 2023, and did not require any revisions to include the PIPs. This indicator is ready for remediation.

5. **SC2E: Rules Violation Reports (RVRs) Recommended for Mitigation with Custody Documentation; SC3E: RVR MHAs Where Captain Disagreed with Mitigation and Documented Rationale; and SC9E: RVRs Recommended for Mitigation that were Mitigated**

In the April 22nd email, the Special Master thanks CDCR for agreeing to collect patient MHI data as part of these indicators and agrees these indicators can be remediated if the indicators can be revised to filter by patient MHI. Remediation of these indicators would also be subject to future stakeholder validation of updated sampling instructions and sample sizes.

CDCR has not agreed to collect patient MHI as part of any of the three referenced indicators. As explained in Defendants' April 15th response, these indicators are per institution audits and do not collect information regarding the patient MHI for the sampled indicators. The indicators would have to be revised significantly to capture this information in a form allowing users to filter as requested. The request to collect the patient MHI for these indicators goes to the original audit and is not specific to the PIP extension. The original indicators were remediated in early-to-mid 2023 and did not require any revisions to include the PIPs.[8] The attempt to revise remediated indicators at this late stage of the data remediation process is contrary to the agreed upon process.

Both the Special Master and Plaintiffs' counsel have raised questions about the sample size for SC2E and SC9E. On April 15th, CDCR agreed to stratify the sample for each referenced indicator so there is a representative number of RVRs from each level of care at the audited institution. On April 17th, CDCR also agreed to draw the sample for each of these indicators only from RVRs at issue instead of the larger pool of RVRs. CDCR has created a report allowing auditors to focus the sample appropriately for each indicator. Revisions to the Guidebook reflecting these agreements have already been approved by CAPC. The revisions are highlighted in Attachment A and will be added to the Guidebook during its next update.

---

[8] SC2 and SC3 were remediated on April 3, 2023, and SC9 was remediated on June 12, 2023.

Kerry Walsh
Page 7

The sample size for SC2 and SC9 (including the extended version of each indicator) is 20 final/concluded RVRs (or all if there are less than 20) per institution per quarter. This results in 80 RVRs per institutions per year. This is significantly more than the sample reviewed by the Special Master during monitoring tours. SC3 (including the extended version of the indicator) requires review of all appropriate RVRs. The current sample for each indicator is appropriate and CDCR is not willing to increase the sample size.

SC2E, SC3E, and SC9E are ready to be remediated.

6.  SC7E: Thermometer Checks Completed and Accurate

In the April 22nd email, the Special Master requests CDCR explain why the current denominator is correct or revise the documentation on how to restrict the denominator to checks completed from May through October. On April 10th, the Special Master requested the below revisions in green font to the numerator of SC7.

> The count of completed CQIT audit: Custody Housing Review audits during the on-site review period and were performed between May and October

SC7 was remediated by the Special Master's data expert on July 29, 2022, without the above green language. SC7 did not require any revisions to include the PIPs. Thus, this request is unrelated to the portion of SC7 extended to the PIPs and is instead a request to revise a remediated indicator, which is contrary to the agreed upon process.

As explained in CDCR's April 15th response, the Guidebook audit instructions already state the audit is only required May through October. If the on-site review occurs outside of those months, then the audit is not required.

SC7E is ready to be remediated.

7.  SP11E: Housing Unit/Inmate Living Areas with Emergency Response Equipment and Daily Inventories

In the April 22nd email, the Special Master notes the questions in the numerator for SP11 are not in the CQI Guidebook's Custody Housing Review audit. SP11 was remediated by the Special Master's data expert on June 29, 2022 and it did not require any revisions when it was extended to the PIPs. As explained in CDCR's April 15th response, at the time of remediation, the numerator questions for SP11 were in the referenced audit. However, after remediation, the questions were moved from the CQI audit to the Suicide Prevention CQI Guidebook meaning the indicator documentation, while substantively correct, will need to be revised to provide the current location for the audit.

Because this is simply a location change, CDCR envisioned making the change as part of the annual review process. CDCR is willing to make the change now, but it will require CDCR to

Kerry Walsh
Page 8

add new links and screenshots to the indicator documentation. SP11 will also have to go through programming and verification again. This will take time and will likely not be completed by the court's April 25th deadline to remediate this indicator. Please let us know if the Special Master would like CDCR to move forward with these revisions prior to remediation, understanding that it may delay remediation beyond the court-ordered deadline.

8.  SP24E: Discharges from MHCB with Clinician Review of D/C Summary

CDCR agrees that this should be removed from the list of extended indicators.

III. Conclusion

All indicators in Category B are extensions of previously remediated indicators CDCR extended to the PIPs that completed all six steps of the data remediation process and were already remediated by the Special Master's data expert. As articulated above, Defendants have serious concerns with the new approach for the review of the 41 indicators pending remediation as set forth in the Special Master's emails on April 8, 10, 12, and 22, 2024. If the Special Master proceeds in this manner and requires significant changes to the current process despite prior agreements, CDCR does not believe remediation can occur by the April 25th deadline. Such significant changes, including revisions to already remediated indicators, jeopardizes not only the looming deadline for the remediation of these 41 indicators, but completion of the data remediation project as a whole. If, however, the Special Master reverts to the prior process, Defendants believe timely completion of this work is possible.

Respectfully,

*/s/ Melissa C. Bentz*

MELISSA C. BENTZ
Attorney IV
Office of Legal Affairs
California Department of Corrections and Rehabilitation

Attachment A

RVRs [On-Site Paperwork]

a) General Instructions:

- Do not change the default "audit start date" as it needs to reflect that the audit was completed on site during the current quarter.
- The selection period for RVRs to review will be consistent with the rest of document review for this audit, which is the last complete prior quarter (e.g., Quarter 1: January 1, 2022 – March 31, 2022).
- Institutions completing a self-audit should reach out to regional lieutenants and request copies of all reports utilized for RVRs prior to completing any reviews.
- For questions 1-10:
  - Identify the number of RVRs by running the CQIT RVR Analytics report in SOMS Reporting (Oracle Reports > Team folder MHCT > CQIT > RVR analytics) for the audit period (Q1 Jan-March, Q2 April-June, Q3 July-Sept, Q4 Oct-Dec). For example, for an audit in April, audit Jan-March RVRs
  - Include all RVR levels (Administrative, Counseling Only, Serious)
- For questions 11 and 14:
  - Use the Continuous Quality Improvement RVRs report in SOMS Reporting  (Oracle Reports> RVR Tab> BI Publisher Column > Continuous Quality Improvement RVRs)
- CQIT Audit Fields (see CQIT Audit Fields section for field definitions):
  - Start Date

b) Standardized Questions:
1. During the prior quarter, how many RVRs were issued?
2. Of those, how many were issued to non-MHSDS participants?
3. How many were issued to patients at the CCCMS level of care?
4. How many were issued to patients at the EOP level of care?
5. How many were issued to patients at the MHCB level of care?
6. How many were issued to patients at the ICF level of care?
7. How many were issued to patients at the acute level of care?
8. How many Final/Concluded RVRs were reviewed?
   - Audit a randomly selected sample of 20 or all if the total number is less than the required sample size. Completed RVR's are defined as "Final/Concluded."
     - Random selection means without definite aim, direction, rule or method.
9. Of the RVRs reviewed, how many met the criteria for MH assessment?
   - This will be the total number of RVRs listed on the CQIT RVR Report.
10. Of those, how many were referred for MH assessment?
11. How many RVRs were recommended for the behavior to be documented in an alternate manner (in SOMS, RVR Mental Health Assessment question 2)?
    a) Using the Oracle Reports> RVR Tab> BI Publisher Column > Continuous Quality Improvement RVRs
    b) First, look at column P (2A-Clinician) and identify all RVRs with "Y" in this column.
    c) Second, for all those above look to column Q (2A- Prgm Supv) and count all RVRs with "Y", for all RVRs in column Q with "N", look at column R (2A Chief) and count all RVRs with "Y".
    d) The total is the sum of RVRs where; column P = "Y" *and* either column Q = "Y" or column R = "Y"
    e) Repeat this process using columns S (2B-Clinician), T (2B-Prgm Supv) and U (2A Chief).
    f) The final number entered the audit question is the total from step (d) + the total from step (e)

12.  Of those, how many did the captain disagree with the clinician's recommendation and document their rationale in the Captain's Review?

13.  Of the RVRs that met criteria for MH assessment, how many did the captain agree with (reduced to a 128A, 128B or void)?

14.  How many RVRs did the MH clinician recommend mitigation (in SOMS, RVR Mental Health Assessment question 4)?

    a)  Using the Oracle Reports> RVR Tab> BI Publisher Column > Continuous Quality Improvement RVRs

    b)  For all RVRs with a "Y" in column V (3A) or column W (3B) look up the RVR MHA and if mitigation was recommended in question 4, add to the total for this question

    c)  *Audit a randomly selected sample of 20 or all if the total number is less than the required sample size.*

    b)d)  Use column I to filter for MHI and ensure the sample has an equal representation of any/all MHIs.

15.  Of the RVRs reviewed in which mitigation was recommended, how many did the Senior Hearing Officer (SHO) document consideration of mitigation based on the MH clinician's recommendation and document in the disposition section of RVR?

16.  Of the RVRs reviewed in which mitigation was recommended, how many did the SHO mitigate?

    • Count how many RVRs were actually mitigated by the SHO by reviewing documentation in disposition section of RVR disposition.

17.  How many adjudicated RVRs requiring a CDCR 115 MH-A that could result in a SHU term were reviewed?

18.  Of those, how many did the ICC consider and document their consideration of the MHA input/recommendation?

    • Randomly select 20 RVRs per institution and use the CQIT RVR Report to identify the RVRs that are SHU-able from the prior quarter. Use SOMS to locate finalized ICC Chrono assessing the RVR.

        ▪ Random selection means without definite aim, direction, rule or method.

# Exhibit J

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



May 7, 2024

Kerry Walsh
Pannone Lopes Devereaux and O'Gara LLC
Northwoods Office Park, Suite 215N
1301 Atwood Avenue
Johnston, RI 02919

**VIA EMAIL ONLY**

Kerry,

I write in response to your email dated May 2, 2024, regarding the eight indicators still pending remediation. Defendants continue to have significant concerns regarding the new approach the Special Master is taking to data remediation, as well as specific responses to the Special Master's most recent comments on the eight indicators still pending remediation, as detailed below.

    I.      Defendants Continue to Have Concerns Regarding the Deviation from the Agreed Upon Data Remediation Process.

Again, I must reiterate Defendants concerns regarding the Special Master's approach to the final review of the indicators pending remediation over the last month.

The current approach is drastically different than has been understood and adhered to up to this point. Our specific concerns were articulated most recently during the data remediation meeting on April 30, 2024. Defendants also raised these concerns in the responses to the 41 indicators provided on April 11th and April 15th, in the responses regarding re-verification of extended indicators and the Special Master's request for new sub-statistics, both sent on April 15th, and in the response to the indicators pending remediation in Category C sent on April 24, 2024. The Special Master has not responded to these concerns.

The approach taken with these indicators, especially the eight still pending remediation, is troubling. Following a status conference held on March 28, 2024, the court issued an order on April 2, 2024 noting "the parties agree one group of 41 [indicators] has proceeded through all five steps of the data remediation process" and directing the Special Master to "take all steps necessary" to remediate the 41 indicators no later than April 26, 2024.[1] (ECF No. 8181 at 3, 7.)

---

[1] The Special Master recommended SP24E Discharges from MHCB with clinician review of d/c summary be removed from the list of 41 indicators pending remediation because the stakeholders mutually agreed it was not intended for this indicator to be extended to the Psychiatric Inpatient Program. Therefore, the total number of indicators the Special Master has been ordered to remediate in this group is now down to 40.

Special Master
Page 2

The court's order acknowledged that the 41 indicators were at the finish line of the data remediation process and provided clear direction to remediate the indicators at a pace unseen before in this process. Yet, to accomplish this herculean effort, the Special Master has deviated from the process not to make remediation faster, but instead to create additional burdensome steps and raise new potential disputes to achieve that result.

As detailed in the April 24, 2024 letter, after the underlying indicators have been completely remediated and after the extended indicators have also completed validation, approvals, programming, and verification, as necessary, the Special Master now seeks to revise the indicators such that CDCR would have to move both sets, the extended indicator and the underlying remediated indicator, back to the validation stage of the data remediation process. This would require both the Psychiatric Inpatient Program (PIP) and non-PIP versions of the indicators to undergo approvals, programming, verification, and ultimately remediation yet again due to the changes being proposed, making it impossible to meet the deadline to remediate these indicators.

Per the agreed upon process, "[n]o new or settled disputes about an indicator shall be raised after the BRMR process is completed except in the case when an indicator was revised after the BRMR and the dispute involves that revision, or under extraordinary, changed circumstances and the dispute stems from those circumstances…." (ECF No. 7556-2 at 2.) There were no significant changes to these indicators after completing Business Rules and Methodology and Review (BRMR) meeting at the validation step of the process[2], nor are there any changed circumstances necessitating revisions beyond what is needed to extend the indicators to the PIPs. Despite Defendants' repeated concerns, the Special Master continues to press for new revisions to remediated indicators which have already completed data remediation. (*See diagram of six-step data remediation process* ECF No. 8195 at 2.)

Requests to revise remediated indicators without significant changed circumstances were not contemplated by the agreed upon data remediation process, as all stakeholders[3] agree on indicators prior to remediation by the Special Master's data expert. These types of requests undermine the data remediation process. It also calls the entire data remediation process into question if prior agreements by the stakeholders that are approved by the Special Master's data expert can be tossed aside in favor of new revisions or standards.

II.    Responses to Requests for Eight Indicators Pending Remediation

Despite these significant concerns regarding the Special Master's requests and the effects on data remediation, Defendants are mindful of the May 10th deadline and provide specific responses to each of the remaining eight indicators below.

---

[2] Validation is step two (out of six) "that requires input and consideration by both parties as to what is specifically required by each indicator and its corresponding remedial requirement so that it is accurately measured." (ECF No. 8195 at 2.)

[3] Collaboratively, Defendants, Plaintiffs, and the Special Master's team are referred to as "the stakeholders" for the purposes of the data remediation project.

Special Master
Page 3

1.  SC2E: RVRs Recommended for Mitigation with Custody Documentation; SC3E: RVR
    MHAs where Captain Disagreed with Documenting in an Alternative Manner[4]; and
    SC9E: RVRs Recommended for Mitigation That Were Mitigated

The Special Master has several requests for the three rules violation report (RVR) related
indicators. First, for SC2E and SC9E, the Special Master requests Defendants revise the audit to
include a question that captures the number of relevant cases reviewed and to use the new
question in the denominators. CDCR understands the concern regarding the recently revised
denominator and agrees that further revisions are necessary. CDCR will revise the denominator
question for both indicators to the following: *Number of RVRs reviewed where the MH Clinician
recommended mitigation (in SOMS, RVR Mental Health Assessment question 4).*

Second, the Special Master requests all three indicators be revised to provide PIP-specific data
and reporting. The May 2, 2024 email erroneously states that the Division of Adult Institutions
(DAI) indicated that PIP-specific data was available for SC2E and SC9E either by MHI or
housing unit. This is not correct. During the April 30th data remediation meeting, a representative
from DAI stated that the underlying report used to focus the sample of reviewed RVRs could be
filtered by patient MHI or housing unit. However, Dr. Cartwright also clarified that while that
filtering capability was available on the underlying report, patient MHI and housing unit were
not available filter options on the indicators themselves as they were institution-wide indicators.
This was also explained in Defendants April 15th and April 24th responses regarding these
indicators.

During the April 30, 2024 data meeting, the Special Master's data expert stated that his team
always anticipated that the extended PIP indicators would have the ability to provide PIP specific
information. However, this expectation was not clearly relayed to CDCR until very recently. As
previously explained, SC2E, SC3E, and SC9E were not created to allow filtering between PIP
and non-PIP data. The most straightforward way to provide separate PIP and non-PIP data
without significantly revising the indicators is to run the audit underlying the indicators twice per
reporting period for institutions with PIPs, once for the PIP and once for the non-PIP. This will
result in separate compliance statistics for the PIP and non-PIP side of institutions with PIPs.

CDCR agrees to run the audit twice for all the above referenced indicators and to provide
separate summary statistics for each audit. For SC2E and SC9E that review a sample of RVRs,
CDCR will divide the agreed upon sample of 20 between the PIP and non-PIP audits. Thus, for
institutions with PIPs, CDCR will review RVRs for 10 non-PIP patients and 10 PIP patients
every quarter for SC2E and SC9E. The sample for institutions without PIPs will remain the
same.

---

[4] Upon review, the current indicator name for SC3 does not appropriately capture what is being measured. CDCR
proposes changing the indicator name to the above to appropriate reflecting what is being measured. CDCR will
revise the documentation to reflect the new indicator name. Please let us know if you have any concerns with this
non-substantive revision.

Special Master
Page 4

To implement this change, CDCR will have to build a new program area for the PIPs in the Continuous Quality Improvement (CQI) Tool, which will require re-programming and re-verification. The work required to accommodate this late request may not be completed by the May 10th deadline for remediation of this indicator.

Finally, the Special Master requests that CDCR provide updated documentation regarding the use of the underlying Strategic Offender Management System (SOMS) report, including column and parameter definitions for stakeholder validation. The underlying SOMS report was created solely to provide a list of RVRs from the reporting period and allow CDCR to focus the sample sizes for several of the RVR indicators by allowing auditors to filter for certain types of RVRs. This report is not a key indicator and will not be remediated.

This request from the Special Master's team is similar to a recently resolved request for AC5.2: Monthly Review of EOP Mod Treatment. Per the Guidebook instructions for AC5.2, supervisors will use CDCR's operational Appointments Report to view the completed and refused appointments for each EOP mod patient to determine if that patient was offered treatment consistent with the treatment plan in effect during that time. The Special Master's data expert asked CDCR to provide documentation for the Appointments Report, but CDCR did not agree because the report is operational and will not be remediated. Instead, the stakeholders agreed that CDCR would provide a link to the Appointments Report and include an explanation of how to filter the report to provide the required information.

CDCR will take a similar approach with the SOMS report for SC2E, SC3E, and SC9E. CDCR will not create separate documentation for the SOMS report.[5]

   2.  SC7E: Thermometer Checks Completed and Accurate

The Special Master requests Defendants revise the indicator denominator as follows:

"The count of completed CQIT audit: Custody Housing Review audits during the on-site review period **which were performed between May and October**" or otherwise update the KPI documentation to reflect that only Custody Housing Review audits done between May and October should be included.

Please note the requested change is to SC7, which was remediated on July 29, 2022, not SC7E, as it is not specific to the PIPs. CDCR recognizes the concern raised by the Special Master's team and will revise the denominator for SC7. However, upon review, changing the denominator will not be enough to address this issue. "N/A" is an available answer option for the questions in the audit underlying SC7. CDCR will revise the audit instructions to require the auditors to input an "N/A" answer to the audit questions underlying SC7 from November to April. This change

---

[5] The Special Master also asks for similar information for the SOMS report used to answer the first 10 questions in the audit. The first ten questions in the referenced audit relate to remediated indicators other than SC2, SC3, and SC9. CDCR will create the documentation as detailed above but will not make further revisions to documentation for other remediated indicators.

Special Master
Page 5

will require revisions to the documentation and the Guidebook, as well as re-programming and re-verification.

The Special Master also requests that SC7E be revised to provide PIP-specific data and reporting. As indicated above, during the April 30, 2024 data meeting, the Special Master's data expert stated that his team always anticipated that the extended PIP indicators would have the ability to provide PIP specific information. However, this expectation was not clearly relayed to CDCR until very recently.

As previously explained, SC7E was not created to allow filtering between PIP and non-PIP data. The most straightforward way to provide separate PIP and non-PIP data without significantly revising the indicator is to run the audit underlying the indicator twice per reporting period for institutions with PIPs, once for the PIP and once for the non-PIP. This will result in separate compliance statistics for the PIP and non-PIP side of institutions with PIPs.

CDCR agrees to run the audit underlying SC7E twice at institutions with PIPs and to provide separate summary statistics for the PIP and non-PIP. To implement this change, CDCR will have to build a new program area for the PIPs in the CQI Tool, which will require re-programming and re-verification.

CDCR has begun making the above changes and will provide the Guidebook and documentation changes to the Special Master's team and Plaintiffs' counsel for review. However, the work required to accommodate these late requests will likely not be completed by the May 10th deadline for remediation of this indicator.

3. SP19E: Health Care Staff Current with Suicide Prevention

The Special Master requests Defendants add the following language to the KPI documentation: *"The pop-up summary table includes separate percentages for Medical, Mental Health, and Nursing staff current with Suicide Prevention Training."*

Please note the requested change is to SP19, which was remediated on December 15, 2023, not SP19E, as it is not specific to the PIPs. Further, the request from the Special Master is based on a concern that the version history will not show changes to the pop-up screenshot, which already includes separate percentages for medical, mental health, and nursing staff, as noted in our April 24, 2024 letter. As discussed during the data remediation meeting on April 30, 2024, the version history will show if the screenshot is replaced, thus the additional language requested by the Special Master's team is unnecessary. However, to move this indicator forward, CDCR will add the requested language to the "Pop-Up" section on the KPI documentation.

During the April 30, 2024 data remediation meeting, Mr. Hayes revealed that he will not report the agreed upon summary statistic, which is a sum of the training compliance for medical, mental health, and nursing staff, in future monitoring. The summary statistic of each remediated indicator, including the numerator and denominator, was painstakingly negotiated by all stakeholders, including the Special Master's team, during the data remediation process.

Special Master
Page 6

Confirmation that the Special Master's data expert will not report on the agreed upon summary statistic, and instead will report separately on sub-statistics for each group of staff, is disheartening; it calls into question the agreements made by the Special Master's team during data remediation and undermines the entire data remediation process.

4. SP6E: Required MH Clinical Staff with Completed SRE Mentoring and Biennial Training

The Special Master requests Defendants add the following language to the KPI documentation: *"The pop-up summary table includes separate percentages for staff current with required Biennial Training and Initial SRE Mentoring."*

Please note the requested change is to SP6, which was remediated on November 22, 2023, not SP6E, as it is not specific to the PIPs. Further, the request from the Special Master's team is based on a concern that the version history will not show changes to the pop-up screenshot, which already includes separate percentages for medical, mental health, and nursing staff, as noted in our April 24, 2024 letter. As discussed during the data remediation meeting on April 30, 2024, the version history will show if the screenshot is replaced, thus the additional language requested by the Special Master's team is unnecessary. However, to move this indicator forward, CDCR will add the requested language to the "Pop-Up" section on the KPI documentation.

As detail above, Mr. Hayes revealed that he will not report the agreed upon summary statistic for SP19E. CDCR is concerned that Mr. Hayes will take a similar approach with SP6E. The summary statistic of each remediated indicator, including the numerator and denominator, was painstakingly negotiated by all stakeholders, including the Special Master's team, during the data remediation process. Such deviation from an agreed upon and remediated summary statistic undermines the entire data remediation process.

5. SP10E: Observed Initial Health Screenings in a Confidential Setting

The Special Master requests Defendants revise the audit instructions to include PIP-specific intake screening, and requests that the reporting interface allow such data to be reported. For the first time, the Special Master also requests that CDCR revise the remediated indicator to include a question regarding whether the 16 mental health suicide risk questions were all asked.

The first request from the Special Master is specific to the PIP extension of SP10. As noted during the data remediation meeting on April 30, 2024, despite the review of SP10E by Plaintiffs and the Special Master's team, the Special Master's team now believes the indicator was not in fact extended to the PIPs. The request by the Special Master's team is essentially a re-write of the indicator to include the PIPs. During the April 30th discussion, Dr. Cartwright asked the Special Master's team how SP10E made it nearly through the data remediation process without the Special Master's team raising these concerns. We have not received a response to that question.

Special Master
Page 7

CDCR is reviewing the Special Master's concerns but needs more time to determine what changes to SP10E may be appropriate. While assessing the substantive revisions that have been requested, CDCR will also consider how PIP specific data may be provided. As noted in Defendants April 11th response regarding SP10E, the indicator as currently designed cannot filter between PIP and non-PIP data nor provide separate reporting. As with SC2E, SC3E, SC7E, and SC9E, the Special Master only recently made clear that separate reporting was recommended for the PIP extension indicators. CDCR will not be able to appropriately consider how best to revise SP10E to address the Special Master's concerns and move the revised version of the indicator through the necessary data remediation steps by the May 10th deadline.

The second request from the Special Master asks Defendants to add a question to SP10, which was remediated on April 3, 2023, not SP10E, as it is not specific to the PIPs.[6] This request was not raised in the previous correspondence from the Special Master's team on April 8, 2024 regarding the 41 indicators pending remediation. This request was also not raised during the April 30, 2024 data remediation meeting. The continuing requests for revisions to remediated indicators are incredibly concerning, as detailed above.

SP10 was remediated by the Special Master's data expert on April 3, 2023 without the question requested by the Special Master. Remediation occurred only after review and discussion of the indicator between Defendants, Plaintiffs, and the Special Master's team. Although the indicator was originally titled Percentage of Observed R&R and Reception Center Screens in Confidential Setting and Correct Documentation Used, the title and scope of the indicator was revised during the initial discussions in 2022. During those initial discussions, the stakeholders agreed that correct documentation in this indicator was interpreted as whether the correct form was used. It was not interpreted to measure whether all questions were asked. The stakeholders agreed to exclude questions regarding correct documentation from the indicator as there is only one appropriate form for this nursing audit in the non-PIP setting.

Whether all mental health questions on the initial health screening were asked was discussed in 2022. The stakeholders, including the Special Master's team, agreed that whether all questions were asked would be part of the Guidebook, but not part of the SP10 indicator.[7] Instead, the parties and the Special Master's team agreed during validation of SP10 that the only question in the indicator would pertain to confidentiality.

The Special Master and his experts had the chance to review SP10 during the initial validation process. They did so and approved of the content and scope of the indicator resulting in

---

[6] Defendants sent an email to Kerry Walsh on May 3, 2024 requesting clarification regarding whether the request to add a question to SP10 applied only to the PIPs or also to the non-PIPs. Defendants have not received a response. Given the looming deadline, Defendants have provided this response based on the understanding that the Special Master is requesting this change for SP10 and not only for SP10E. Please let us know if the request was meant to apply only to SP10E.

[7] The Guidebook audit underlying SP10 includes the following questions: (2) Did the nurse(s) complete the intake medical screening by asking all 16 required questions, including both questions (#3, #16) pertaining to bad news?; and (3) Were all questions asked? (ECF No. 8180-6 at 133.) These questions are asked by auditors when on-site but are not included in an indicator.

remediation by the Special Master's data expert. Defendants will not disregard prior agreements in data remediation and re-open remediated indicators for substantive revisions unless there is a significant changed circumstance.

6. SP15.1E MHCB and Acute/ICF Out of Cell Time- Yard

The Special Master requests that Defendants revise the indicator to apply a 10-hour per week threshold of out of cell time for MHCB and PIP patients. Please note the requested change would require changes to both SP15.1E as well as to SP15.1, which was remediated on June 26, 2023.

As explained in Defendants' April 24, 2024 letter in response to the indicators pending remediation in Category B, there is currently no policy setting a minimum requirement for yard time for patients in the MHCB or PIPs, regardless of their custody status. CDCR's long established MHCB privileges memo, which is referenced in the Special Master's email, sets no minimum threshold. (ECF No. 7333-1 at 379.) The February 14, 2017 policy was released in response to concerns and a recommendation raised in Mr. Hayes's initial audit. (ECF No. 5259 at 33, 34, finding that the "allowance of visits, telephone calls or yard for an MHCB inmate is not addressed" by the Program Guide and recommending that "CDCR, under the guidance of the Special Master, should examine and consider taking reasonable corrective actions to address" this issue.) The draft policy was discussed with the Special Master's suicide prevention expert and Plaintiffs at numerous all parties' meetings in 2016 and 2017 including on September 28, 2016, December 7, 2016, December 19, 2016, and January 19, 2017. The parties came to final agreement during the January 19, 2017 meeting. The final memo was issued on February 14, 2017 and next steps were discussed during the February 16, 2017 all parties meeting. Since that time, CDCR has worked to implement and fully comply with the 2017 policy.

Mr. Hayes has audited the 2017 policy five times since its inception and has never recommended that the policy be revised to set a minimums threshold. (*See* ECF Nos. 5672 at 7-10, 5994 at 13-15, 6879 at 24, 6879-1 at 16-19, 7636 at 28, 7636-1 at 26-32, 8143-1 at 27-34.) In fact, during his fourth reaudit, Mr. Hayes recommended that CDCR stop issuing memorandum and instead "begin focusing on development of CAPs for each of the facilities…found to have deficient practices for possession and privileges afforded MHCB patients." ECF No. 6879-1 at 19. Likewise, the Special Master has never recommended minimum thresholds for this population and instead twice reporting to the court that for CDCR to be found compliant with this part of Mr. Hayes's Recommendation 32, CDCR "should ensure that each audited CDCR facility with a MHCB unit maintain at least 90 percent compliance with adequate practices regarding possessions and privileges afforded MHCB patients as *required by policy*." (ECF Nos. 6879 at 24 and 7636 at 28, emphasis added.)

Notably, during the data remediation meeting on April 30, 2024, the Special Master's suicide prevention expert admitted there is currently no policy underlying the request for 10-hour threshold for MHCB and PIP patients.

Finally, in addition to the robust negotiation of the 2017 policy and subsequent years of monitoring detailed above, the 2017 policy was also discussed at length by the stakeholders in

Special Master
Page 9

the development of SP15.1. Remediation occurred only after review and discussion of the indicator by Defendants, Plaintiffs, and the Special Master's team. After initial validation, the Special Master's team, including the Special Master's suicide prevention expert, approved of the content and scope of the audit resulting in remediation of the indicator by the Special Master's data expert on June 26, 2023. Defendants will not disregard prior agreements in data remediation and re-open a remediated indicator for substantive revisions unless there is a substantive change to the policy underlying the indicator.

III.    Conclusion

As articulated above, Defendants have serious concerns with the new approach for the review of the indicators pending remediation as set forth in the Special Master's emails on April 8, 10, 12, 22, and May 2, 2024. Such significant changes, including revisions to already remediated indicators, jeopardizes not only the looming deadline for the remediation of these indicators, but completion of the data remediation project as a whole. If, however, the Special Master reverts to the prior process, Defendants believe timely completion of this work is possible.

Respectfully,

*/s/ Melissa C. Bentz*

MELISSA C. BENTZ
Attorney IV
Office of Legal Affairs
California Department of Corrections & Rehabilitation

# Exhibit K

# KPI:
# MHCB and Acute/ICF Out of Cell Activities - Yard

## Summary
Percentage of MHCB and Acute/ICF patients who were offered yard according to policy.

| Numerator | Denominator |
|---|---|
| The sum of responses to the following question from the audits in the denominator:<br><br>**MHCB or Acute/ICF Yard Time:**<br>• Of those, how many patients have documentation in the 114-A or NCAT identifying yard was offered? | The sum of responses to the following question in the Privileges - Hayes Item 14 audits during the review period:<br><br>**MHCB or Acute/ICF Yard Time:**<br>• How many patients who have had an initial IDTT are NOT restricted from yard time (due to clinical reason) by the clinical team? |

## Component Business Rules
MHCB and Acute/ICF Privileges-Yard.

## Reporting Location
The institution and placement where the audits were completed.

## Pop-up
Click here for general pop up information
KPI-specific pop-up information:
11. **Date:** the date the auditor entered into the CQIT application.
12. **Count:** number entered into the numerator question. Clicking on the number will direct the user to the specific audit on audit report.
13. **Details:** Audit date, Sub Area and the score the auditor entered into the

CQIT application.

**Quick List:** ▮▮▮▮▮
**MHCB and Acute/ICF Out of Cell Activities - Yard from 2/01/24 thru 2/29/24**
**Placement: MHCB**
**Data last refreshed 3/28/2024 6:39:00 AM**

| | Measurements | Count | Compliance |
|---|---|---|---|
| MHCB and Acute/ICF Out of Cell Activities - Yard | 9 | 1.2 | 67% |
| MHCB Out of Cell Activities - Yard | 9 | 1.2 | 67% |

**Details**

| Audit | Placement | Inst | Date (11) | Count (12) | Details (13) |
|---|---|---|---|---|---|
| MHCB Out of Cell Activities - Yard (5) | MHCB | ▮▮▮ | 2/5/2024 12:00:00 AM | 5 | Test Record. Audit Date: 02/05/2024 Sub Area: Yard A Score: 5/5 |
| | MHCB | ▮▮▮ | 2/5/2024 12:00:00 AM | 1 | Test Record. Audit Date: 02/05/2024 Sub Area: Yard A Score: 1/1 |
| | MHCB | ▮▮▮ | 2/5/2024 12:00:00 AM | 0 | Test Record. Audit Date: 02/05/2024 Sub Area: Yard A Score: 0/0 |
| | MHCB | ▮▮▮ | 2/5/2024 12:00:00 AM | 0 | Test Record. Audit Date: 02/05/2024 Sub Area: Yard C Score: 0/3 |
| | MHCB | ▮▮▮ | 2/5/2024 12:00:00 AM | 0 | Test Record. Audit Date: 02/05/2024 Sub Area: Yard A Score: 0/0 |



## Release Note

[Release Note 64](#).

## Additional Information

Refer to the most recent version of the Comprehensive Continuous Quality Improvement Audits Guidebook for additional information on how the audit is conducted, including sampling requirements. Archived versions of the guidebook can be found here: Archived Guidebooks.

For internal use only: Item #SP15.1

## Rationale

None.

## Known Issues

None found.

## Potential limitations
### Global CQIT limitations

Custody auditors rely on the MH issue order listing activities allowed that is located at the Cell front and do not have access to patient records in EHRS.

## Verification
Verification testing implemented in production on 3/4/2024.

## FAQs
None.

[CAPC] **Approval Date 4/18/2024**
The date the KPI was approved by the Mental Health Change Committee
(CAPC: Change Advisory Prioritization Committee)

| MHCB and Acute/ICF Out of Cell Activities - Yard (1219058) |
| --- |
| **Category** |
| Suicide Prevention |
| **Business Rule** |
| • MHCB and Acute/ICF Privileges – Yard |
| **Effective Period** |
| Effective 2001-01-01 to present. |
| **First Release Date** |
| 5/6/2023 |
| **Latest Release Date** |
| 5/6/2023 |

| Links |
| --- |
| Performance Report |

| SPO Version | Version # |
| --- | --- |
| Previous | 0.1 |
| Approved by CAPC | 1.0 |
| Verified | 2.0 |
| Current | 4.0 |

# BR:
# MHCB and Acute/ICF Privileges - Yard

| |
|---|
| **MHCB and Acute/ICF Privileges – Yard(1219058)** |
| **Effective Period** |
| Effective 2001-01-01 to present. |
| **First Release Date:** |
| 5/6/2023 |
| **Latest Release Date:** |
| 5/6/2023 |

| Links |
|---|
| KPI Link: MHCB Out of Cell Activities - Yard |
| Workflow Link |
| On Demand Homepage Link |

| SPO Version | Version # |
|---|---|
| Previous | 0.1 |
| Approved by CAPC | 1.0 |
| Verified | 2.0 |
| Current | 4.0 |

## Overview

Measurement of eligible patients in the MHCB and Acute/ICF that were offered yard.

## Policy

### MEMO:  Mental Health Crisis Bed Privileges Revision 2/14/2017

This memorandum supersedes the memorandum dated June 23, 2016, titled "Mental Health Crisis Bed Privileges" (attached). The purpose of this

memorandum is to ensure privileges are provided to all inmate-patients (IPs) admitted to the Mental Health Crisis Bed (MHCB) units only. Privileges shall not apply to Alternative Housing settings. Effective immediately, **all MHCB units shall provide the privileges, as documented below, to IPs admitted to the MHCB unit.** The Interdisciplinary Treatment Team (IDTT) shall review and update privileges at every IDTT meeting. Following the initial IDTT, the primary clinician in conjunction with the psychiatrist and recreational therapist may consider additional privileges or removal of privileges based on changes to the IPs treatment goals and mental health status. Any restrictions of privileges shall be specifically noted by the MHCB IDTT and the rationale for restriction shall be documented on the treatment plan. Within one business day of the decision, restrictions shall be communicated to custody and nursing staff. For institutions not yet using the Electronic Health Records System (EHRS), mental health staff shall complete a CDC Form 128-C, Chrono Medical, Psych., Dental, also known as an "Informational Chrono." For institutions using the EHRS, staff will complete the Mental Health Inpatient Issue Order which is configured to print a requisition in the MHCB for custody and nursing review.

## Out-of-Cell Activity

IPs admitted to the MHCB shall attend out-of-cell activities consistent with their custody designation unless specifically restricted by the MHCB IDTT. Any restrictions of out-of-cell activities shall be determined by the MHCB IDTT, ordered in the healthcare record, and the rationale for restriction documented on the treatment plan. Restrictions shall be communicated to custody and nursing staff via a CDC Form 128-C or a printed requisition from the EHRS within one business day of the decision.

## Documentation of Privileges Received

Each time an IP receives or participates in out-of-cell activities and/or receives an identified privilege, custody staff shall be responsible for noting the occurrence on the CDC Form 114-A, Inmate Segregation Record to provide proof of practice. All offerings of out-of-cell activities and/or privileges refused by an IP shall be noted on the CDC Form 114-A as well.

## MEMO:  COVID-19 QUARANTINE AND TEST-TO-PROGRAM UPDATES 9/14/2022

**Test-to-Program for Residents who are in COVID Quarantine (revised process)**

Asymptomatic patients in exposure-related COVID-19 quarantine will be eligible to program, if:

- They have no COVID related symptoms
- They consent to POC COVID testing on days 1, 3, 5, and 7 of the quarantine period
- Each POC COVID test is negative
- They consistently wear at least a procedure mask while out of their housing cell

The test-to-program option shall not apply to residents who are in movement-related quarantine. Asymptomatic residents who test negative for COVID shall, while masked, be eligible for all routine programing including but not limited to work, school, in-person visiting, religious services, library, canteen, yard and health care appointments including mental health groups and ISUDT programing. Test to program does not apply to overnight family visiting.

Full implementation of the Test-to-Program initiative is dependent upon staff resources to complete the testing as determined by the Warden and CEO.

Residents who are asymptomatic and refuse testing shall receive S time until which time they are cleared from quarantine status or elect to comply with the COVID testing-to-program process.

Testing shall remain optional but strongly encouraged. Should a patient decline to test, he/she shall be limited to in-wing, cohorted activities until they are released from quarantine. Arrangements shall be made to accommodate essential clinical care.

**Access to Health Care**

All patients regardless of COVID quarantine status shall have access to routine, urgent, and emergent medical care. Appropriate precautions (facial coverings, using well-ventilated spaces, etc.) shall be taken to minimize risks to the employee and resident population.

## Rule Population
All MHCB and Acute/ICF patients.

## Trigger
Completion of Privileges – Hayes Item 14.

## Exception
None.

## Fulfillment
Completion of Privileges – Hayes Item 14.

## Time Frame
N/A.

## Release Note
Release Note 64.

## Rationale
None

## Known Issues
None found.

## Potential Limitations
Global CQIT limitations

**Additional Info**

Refer to the most recent version of the Comprehensive Continuous Quality Improvement Audits Guidebook for additional information on how the audit is conducted, including sampling requirements. Archived versions of the guidebook can be found here: Archived Guidebooks.
For internal use only: Item #SP15.1

**Verification**

Verification testing implemented in production on 3/4/2024.

**FAQs**

None.

**Approval Date** 2/01/2024

The date the Business Rule was approved by the Mental Health Change Committee (CAPC: Change Advisory Prioritization Committee)

# DE: Privileges - Hayes Item 14

**Overview**

An on-site Continuous Quality Improvement Tool item measuring the out of cell activities offered to MHCB and Acute/ICF patients.

**Data Pathway**

CQI Tool -> Dashboard -> Privileges - Hayes Item 14



## Audit

Conduct Audit  >  Conduct Audit  >  Audit

Fields marked with a * are required

**Export**    **History**

| | | | |
|---|---|---|---|
| Institution : RJD (RJ Donovan Correctional Facility) | Review Period : PO DATA VALIDATION ONLY | Review Period Start Date: 9/14/2023 | Review Period End Date: 9/21/2023 |
| Area : MHCB | Audit : Privileges – Hayes Item 14 | Review Type : Suicide Prevention ONLY MH On-Site Observation Audits | Audit Status: Not Started |
| Auditor Status : Not Started | | | Audit Submitted Date/Time: |

**Sub Area***

**Start Date***

mm/dd/yyyy

**End Date***

mm/dd/yyyy

---

Question - 1    How many patients who have had an initial IDTT are NOT restricted from yard time (due to clinical reason) by the clinical team?    ✕

**Numeric**

Enter a value from 0 to 10,000

**Comments**

Add an optional comment for question 1

---

Question - 2    Of those, how many patients have documentation in the 114-A or NCAT identifying yard was offered?    ✕

**Numeric N/A**

Enter a value from 0 to 100

☐ N/A

**Comments**

Add an optional comment for question 2

Question - 3    How many patients who have had an initial IDTT are NOT restricted from phone calls (due to clinical reason) by the clinical team?    ✖

**Numeric**

Enter a value from 0 to 10,000

**Comments**

Add an optional comment for question 3

Question - 4    Of those, how many patients have documentation in the 114-A or NCAT identifying a phone call was offered at least once per week?    ✖

**Numeric N/A**

Enter a value from 0 to 100

☐ N/A

**Comments**

Add an optional comment for question 4

Question - 5    How many patients who have had an initial IDTT are NOT restricted from visits (due to clinical reason) by the clinical team AND had a visit/visitor arrive at the institution during their time at the MHCB or Acute/ICF?    ✖

**Numeric**

Enter a value from 0 to 10,000

**Comments**

Add an optional comment for question 5



Question - 6  Of those, how many patients were offered a visit?  ✖

Numeric N/A

Enter a value from 0 to 100

☐ N/A
Comments

Add an optional comment for question 6.


Question - 7  For those patients who had a visitor arrive at the institution for a visit, were any visits denied?  ✖

Yes, No or N/A

[                                                ⌄]

Comments

Add an optional comment for question 7.


Question - 8  How many MHCB and Acute/ICF patients were reviewed?  ✖

Numeric

Enter a value from 0 to 10,000

Comments

Add an optional comment for question 8.



Question - 9    Of those, how many patients were offered a shower at least three (3) times per week?    ✕

Numeric N/A

Enter a value from 0 to 100

☐ N/A
Comments

Add an optional comment for question 9.

Question - 10    How many patients who have had an initial IDTT are NOT restricted from dayroom (due to clinical reason) by the    ✕
clinical team?

Numeric

Enter a value from 0 to 10,000

Comments

Add an optional comment for question 10.

Question - 11    Of those, how many patients have documentation in the 114-A or NCAT identifying dayroom was offered?    ✕

Numeric N/A

Enter a value from 0 to 100

☐ N/A
Comments

Add an optional comment for question 11.

Conduct Audit Comments

Save    Save and Close    Cancel

Privileges – Hayes Item 14

a) General Guidelines

- This item is completed by custody auditors.
- While onsite, review the 114-As for the patients currently housed in the MHCB and the NCAT for the patients currently housed in Acute/ICF.
- From the list, randomly select 10 MHCB patients, 10 Acute non-enhanced observation patients, and 10 ICF non-enhanced observation patients and review their 114-As or NCAT.
  - In cases where the MHCB or Acute/ICF has more than one subarea, conduct one audit per subarea.
  - If each audited subarea has less than 10 patients, then audit all patients.
- Next, audit the 114-As or the NCAT for all patients on enhanced observation institution wide.
- Exclude Patient days where they have been out to court or out to medical during their inpatient stay for an entire 8-hour shift of second watch.
- Use the issue orders, which are posted on the cell door to determine clinical restrictions.
- Ensure that despite a facility and/or housing unit being on 'modified program' or patient on 'quarantine status,' MHCB and Acute/ICF patients are still permitted all out-of-cell-activities
- If a patient was clinically cleared but was not offered dayroom and/or yard due to physical plant design, the auditor will indicate the deficiency in the comments section of the audit.
- Identify other potential barriers to patients not receiving authorized privileges, e.g., yard and other out-cell activities not offered in absence of RT.
- Verify that patients on maximum security status have access to out of cell time, including yard, and phone calls, unless restricted due to a documented clinical/custodial reason.  i.e., the MHCB yard has a small management yard (SMY). CQIT Audit Fields (see CQIT Audit Fields section for field definition):
  - Start Date
  - End Date

- Subarea

b) Standardized Questions:

1. How many patients who have had an initial IDTT are NOT restricted from yard time (due to clinical reason) by the clinical team?

2. Of those, how many patients have documentation in the 114-A or NCAT identifying yard was offered?
   - Note the CDCR number and the reason (e.g., documented custody factors such as RVR sanction) why the patient was not offered yard in the comment box.

3. How many patients who have had an initial IDTT are NOT restricted from phone calls (due to clinical reason) by the clinical team?

4. Of those, how many patients have documentation in the 114-A or NCAT identifying a phone call was offered at least once per week?
   - Note the CDCR number and the reason (e.g., documented custody factors such as RVR sanction) why the patient was not offered phone call in the comment box.

5. How many patients who have had an initial IDTT are NOT restricted from visits (due to clinical reason) by the clinical team AND had a visit/visitor arrive at the institution during their time at the MHCB or Acute/ICF?

6. Of those, how many patients were offered a visit?
   - Instructions: pull SOMS visiting history for all patients currently housed in the MHCB and Acute/ICF to verify whether a visitor arrived for a visit.

7. For those patients who had a visitor arrive at the institution for a visit, were any visits denied?
   - Note any denied visits in comments section and address this in your report.
   - If a visit was denied, identify the reason(s) in the notes and the report if appropriate/not appropriate.

8. How many MHCB and Acute/ICF patients were reviewed?

9. Of those, how many patients were offered a shower at least three (3) times per week?

10. How many patients who have had an initial IDTT are NOT restricted from dayroom (due to clinical reason) by the clinical team?

11. Of those, how many patients have documentation in the 114-A or NCAT identifying dayroom was offered?

**Automation**
None.

**Known Issues**
None Found.

**Potential limitations**
Global CQIT limitations

**Additional Information**
Refer to the most recent version of the Comprehensive Continuous Quality Improvement Audits Guidebook for additional information on how the audit is conducted, including sampling requirements. Archived versions of the guidebook can be found here: Archived Guidebooks.

*Footnote: The information located in the demographic section on the screenshot is an example. Institution, area, date, etc. will be different in the actual audit.*

For internal use only: Item #SP15.1, SP15.2, SP15.3, SP15.4, SP15.5

**Verification**

Verification testing implemented in production as of 3/4/2024.

**FAQs**
None.

**Data Source**
CQIT