Exhibit B

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION								GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



June 13, 2024

Paul Mello
Hanson Bridgett
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached please find the California Department of Corrections and Rehabilitation's June 2024 quarterly Status Update for the Three-Judge Court proceeding.

Sincerely,

*Phillip Lindsay*
*On behalf of*

Jennifer Neill
General Counsel
Office of Legal Affairs
California Department of Corrections and Rehabilitation

cc: Corinna Albiter, Deputy Attorney General

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION  GAVIN NEWSOM, GOVERNOR



# June 15, 2024 Quarterly Update to the Three-Judge Court

On February 10, 2014, the Three-Judge Court ordered CDCR to reduce the in-state adult prison population to 137.5 percent of design capacity by February 28, 2016. (ECF Nos. 2766/5060 & 2767/5061.) Defendants first informed the Court that its population was below 137.5 percent of design capacity on February 17, 2015 (ECF No. 2838/5278). Since then, Defendants have submitted 90 reports. Defendants have complied with the population cap for nine years. On March 25, 2022, the Court granted Defendants' unopposed motion to reduce the frequency of these reports from monthly to quarterly. (ECF No. 3795/7515.) As a result, reports are filed on the 15th of March, June, September, and December of each year, until further order of the Court.

On December 6, 2022, CDCR announced its plans to close certain institutions and facilities, and terminate its contract for the use of California City Correctional Facility (CAC).[1] The lease with CAC terminated in March 2024. CDCR has deactivated Folsom Women's Facility (FWF) (deactivated in January 2023), Facility A in California Rehabilitation Center (CRC) (deactivated in April 2023), Facility D in California Institution for Men (CIM) (deactivated in April 2023), Facility D in California Correctional Institution (CCI) (deactivated in June 2023), West Facility in California Men's Colony (CMC) (deactivated in November 2023), Facility C at Pelican Bay State Prison (PBSP) (deactivated in December 2023), and California Correctional Center (CCC) (closed June 30, 2023).

As of June 5, 2024, CDCR's institutional design capacity is 75,526, and the adult institutional population is 89,898, occupying 119.0 percent of design capacity. (*See* Exhibit A at 1, attached.) Below are updates regarding Defendants' population reduction efforts and evidence of durable compliance with the 137.5 percent benchmark.

### A. Update on Proposition 57 Measures:

Proposition 57, passed in November 2016, is the State's durable remedy that enacts many Court-ordered reforms, expands credit-earning opportunities, and creates a parole consideration process for nonviolent incarcerated persons who have served the full term of their primary offense in state prison. Information about these regulations can be found at https://www.cdcr.ca.gov/proposition57/. Details regarding measures CDCR implemented can be found in previously-filed monthly status reports. (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).) Updated statistics showing the impact of these regulations are included below.

1. Increased credit-earning opportunities for all incarcerated persons except the condemned and those serving life without parole sentences:

    4,157 incarcerated persons released between March 1, 2024, and May 31, 2024, earned an estimated average of 280.1 days of additional credit towards their advanced release

---

[1] *See* ECF No. 3866/7857.

date.[2]  This does not include incarcerated persons released from fire camps.

2. Determinately-sentenced nonviolent offender parole process:

    Between July 1, 2017, and May 31, 2024, CDCR has made 38,272 referrals to the Board for this parole process.  The Board has reviewed 34,389 of these referrals on the merits, approving 4,856 incarcerated persons for release and denying 29,533.  3,548 referrals have been closed because the Board's jurisdictional review of the incarcerated persons' criminal history and central file revealed they were not eligible for parole consideration.  The remaining referrals are pending review, including those within the 30-day period for written input from incarcerated persons, victims, and prosecutors.

3. Indeterminately-sentenced nonviolent offender parole process:

    Since January 2019, when CDCR began screening indeterminately-sentenced, nonviolent offenders for eligibility, CDCR has referred 3,057 incarcerated persons to the Board for a parole consideration hearing.  As of May 31, 2024, 132 of these referrals were closed because the Board's jurisdictional review of criminal histories and central files revealed those incarcerated persons were not eligible for parole consideration.  The Board has conducted 3,199 hearings for indeterminately sentenced nonviolent offenders resulting in 844 grants, 2,025 denials, and 330 stipulations to unsuitability.  An additional 2,887 hearings were scheduled, but postponed, waived, continued, or canceled.  The remaining referrals are pending parole consideration hearings.

B. **Updates on Other Population Reduction Measures:**

1. Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:

    Six incarcerated people are housed at the Community Prisoner Mother Program as of June 5, 2024.  (*See* Exhibit A.)

2. Expanded medical parole process:

    The Board conducts expanded medical parole hearings for incarcerated persons referred to the Board by the head physician at their institutions.  The Board's medical parole hearing decision approving an incarcerated person for placement in a skilled nursing facility is forwarded to the California Correctional Health Care Services (CCHCS) and Receiver's Office, which place the incarcerated person in a community facility that will accept the person and enforce any restrictions imposed by the Board.  If CCHCS is unable to place the incarcerated person within 120 days of the decision, the decision expires and the person remains in CDCR custody.  Between July 1, 2014, and June 9, 2024, the Board has held 392 medical parole hearings, resulting in 269 approvals and 123

---

[2] Pursuant to the December 2023 holding in *Criminal Justice Legal Foundation, et al. v. the California Department of Corrections and Rehabilitation, et al.*, Case No. 34-2022-80003807-CU-WM-GDS, in the Superior Court of California, County of Sacramento, CDCR exceeded its authority when it promulgated regulations allowing application of earned credits towards an incarcerated person's Minimum Eligible Parole Date.  An appeal is pending.

denials. An additional 100 hearings were scheduled, but postponed, continued, or canceled.

3. Parole process for elderly incarcerated persons:

    Under Penal Code section 3055, incarcerated persons aged 50 and above who serve at least 20 years of continuous incarceration qualify for elderly parole consideration. Certain persons sentenced under strike-sentencing laws (Penal Code sections 667(b)-(i) or 1170.12) or convicted of first-degree murder of a peace officer are excluded from the statutory scheme, but are eligible for elderly parole consideration as set forth in the February 10, 2014 order, which covers incarcerated persons aged 60 and above who serve at least 25 years of continuous incarceration. Previous status reports further detail these parole processes. (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).)

    Between February 11, 2014, and May 31, 2024, the Board has held 11,197 hearings for eligible incarcerated persons, resulting in 3,221 grants, 6,931 denials, 1,044 stipulations to unsuitability, and one tie vote. The Board scheduled 6,917 additional hearings that were waived, postponed, continued, or canceled.

4. Male community reentry programs:

    The State continues to refer eligible incarcerated persons for possible placement in Male Community Reentry Programs (MCRPs). As of June 5, 2024, 596 incarcerated persons are housed in MCRP facilities the State contracts within San Diego, Los Angeles, Kern, and Butte counties.

5. Expanded alternative custody program:
    The Custody to Community Transitional Reentry Program (CCTRP), the State's expanded alternative custody program for female incarcerated persons, provides a range of rehabilitative services that assist with substance use recovery, employment, education, housing, family reunification, and social support. As of June 5, 2024, 393 females are participating in the CCTRP, and are housed at facilities in San Diego, Santa Fe Springs, Bakersfield, Stockton, Sacramento, and Los Angeles.

6. Incarcerated Persons Released Under Proposition 36
    Proposition 36, passed in November 2012, revised the State's three-strikes law to permit resentencing for qualifying incarcerated persons whose third strike was not serious or violent. As of May 31, 2024, approximately 2,258[3] persons have been released under this measure.

7. Incarcerated Persons Released Under Proposition 47
    Proposition 47, passed on November 4, 2014, requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits incarcerated persons previously sentenced for these reclassified crimes to petition for resentencing. As of May 31, 2024, approximately 4,761 persons have been released under this measure.

---

[3] This number excludes inmates who were eligible for Proposition 36 resentencing but released in other ways (e.g. Proposition 47 resentencing or nonviolent parole process).