Rob Bonta, State Bar No. 202668
Attorney General of California
Monica N. Anderson, State Bar No. 182970
Senior Assistant Attorney General
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Namrata Kotwani, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
Paul B. Mello, State Bar No. 179755
Samantha D. Wolff, State Bar No. 240280
Kaylen Kadotani, State Bar No. 294114
David C. Casarrubias, State Bar No. 321994
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                        Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                                        Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' REQUEST FOR LEAVE TO FILE MOTION TO STAY MAY 20, 2024 ORDER (ECF NO. 8242)** |

Defendants request leave to file the motion to stay attached hereto as Exhibit A. The parties stipulated that Defendants could file this motion on or before June 14, 2024. (ECF No. 8272.) The Court has not yet responded to that stipulation.

**CERTIFICATION**

In preparing this filing, Defendants' counsel certify that they have reviewed the following relevant orders: ECF Nos. 5726, 640, 1773, 6846, 7305, 7456, 8066, 8209, and 8242.

/ / /

/ / /

| | | |
|---|---|---|
| 1 | Dated: June 14, 2024 | Respectfully submitted, |
| 2 | | ROB BONTA |
| | | Attorney General of California |
| 3 | | DAMON MCCLAIN |
| 4 | | Supervising Deputy Attorney General |
| 5 | | **/s/ *Elise Owens Thorn* ** |
| | | Elise Owens Thorn |
| 6 | | Deputy Attorney General |
| 7 | | *Attorneys for Defendants* |
| 8 | | HANSON BRIDGETT LLP |
| 9 | | **/s/ *Samantha D. Wolff* ** |
| | | PAUL B. MELLO |
| 10 | | SAMANTHA D. WOLFF |
| | | DAVID C. CASARRUBIAS |
| 11 | | *Attorneys for Defendants* |

2

# Exhibit A

1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
     1300 I Street, Suite 125
6    P.O. Box 944255
     Sacramento, CA 94244-2550
7    Telephone: (916) 210-7318
     Fax: (916) 324-5205
8    E-mail: Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

   HANSON BRIDGETT LLP
   PAUL B. MELLO, State Bar No. 179755
   SAMANTHA D. WOLFF, State Bar No. 240280
   KAYLEN KADOTANI, State Bar No. 294114
   DAVID C. CASARRUBIAS-GONZALEZ, State Bar No. 321994
     1676 N. CALIFORNIA BLVD., SUITE 620
     WALNUT CREEK, CALIFORNIA 94596
     TELEPHONE: 925-746-8460
     FACSIMILE: 925-746-8490
   *Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al. <br><br> Defendants. | Case No. 2:90-CV-00520- KJM-DB <br><br> **DEFENDANTS' MOTION TO STAY MAY 20, 2024 ORDER (ECF NO. 8242)** <br><br> Judge: Hon. Kimberly J. Mueller |

## NOTICE OF MOTION

Please take notice that Defendants move this Court under Federal Rule of Civil Procedure 62(c) to stay the May 20, 2024 order directing implementation of a pilot program to treat *Coleman* class members with severe personality disorders. (ECF No. 7865-2 at 2.) Defendants ask this Court to stay the implementation of the pilot program pending the appeal of the May 20 Order.

## INTRODUCTION

The Court's May 20, 2024 order directing Defendants to implement by August 31, 2024, a pilot of the START-NOW treatment modality for class members with personality disorders imposes a new obligation on Defendants to treat such disorders even though the Program Guide

20785376.1

excludes them, when standing alone, from treatment governed by this action. The Court imposed this new obligation by incorrectly concluding that the obligation to treat personality disorders is part of the plan to remediate the original Eighth Amendment violations in this case. (ECF No. 8242 at 5-6.) Defendants disagree and the history of this case does not bear out that such responsibility exists. Moreover, the Court imposed this prospective injunctive relief without providing Defendants the opportunity to fully brief this issue and without making the required PLRA findings. As a result, Defendants appealed the May 20 order to the Ninth Circuit Court of Appeals. (ECF Nos. 8262.)

The May 20 Order should be stayed pending that appeal because Defendants have a substantial case for relief on the merits, will be irreparably harmed absent a stay, the balance of equities favors Defendants, and the public interest favors a stay. Defendants request that the Court expeditiously resolve this stay request because the May 20 order—now on appeal—requires Defendants to implement the pilot by August 31, 2024. (ECF No. 8242 at 7.) To avoid directing the limited state resources to the substantial undertaking of creating and implementing programs that are not required by the Program Guide while challenging the court's order that states otherwise, the May 20 order should be stayed pending appeal.

**PROCEDURAL AND FACTUAL BACKGROUND**

The genesis for the May 20 order began in 2019 in response to the Court's concerns about inmate suicides, an increase in the number of mentally ill inmates in California's prisons, and whether there was sufficient bed capacity to provide adequate access to Mental Health Crisis Bed (MHCB) and inpatient levels of care. (ECF No. 7305 at 2:10-16.) Those concerns led to a September 13, 2021 order summarizing the history of prior unmet need assessments and directing Defendants to conduct an unmet needs assessment (UNA) to determine whether there were class members who needed inpatient care but were not receiving it. (*Id.* at 2-13, 15:12-16:5.) But nothing in the May 20 and September 13 orders addressed a requirement under the Eighth Amendment to provide treatment for personality disorders. Indeed, no court order or party submission ever dealt directly with the issue of whether personality disorders were part of the remedy in this case. (ECF No. 8209 at 3:10-19.) Instead, the Court raised the issue *sua sponte* in

2021 following its communication with the Special Master:

> The Special Master has informed the court that there is a subset of class members with severe personality disorders associated with significant function impairments who have special treatment needs not yet available in an inpatient setting. The Special Master will be directed to ensure that the scope of the unmet bed needs study conducted in accordance with this order is sufficient to identify with specificity the size of that need and what is required to ensure that it is met, as well as to adequately identify whether there is any other ongoing unmet need for inpatient care.

(ECF No. 7305 at 15:6-11.)

Over CDCR's objections to the need for an UNA, as ordered, the parties worked with the Special Master to conduct the UNA and the Court found that "the record demonstrates the UNA Report reflects a very comprehensive assessment conducted both diligently and collaboratively by all stakeholders.  As a consequence, the Report is persuasive in its finding that CDCR has enough inpatient beds and mental health crisis beds (MHCBs) to meet class member need for these levels of care."  (ECF No. 8066 at 3:6-12.)  The UNA conclusively showed that Defendants were meeting the needs of *Coleman* class members for MHCB and inpatient levels of care.  CDCR also identified a subset of class members who "may" benefit from treatment for their personality disorders.  (ECF No. 7865-2 at 2.)  To address this potential need, CDCR proposed a 12-month plan "guided by a thoughtful and rigorous evaluation of patient needs."  (ECF No. 8209 at 4.)

The UNA specifically noted that the identification of patients with personality disorders does not "automatically equate a diagnosis of personality disorder with inclusion in the *Coleman* class, nor does it suggest that a *Coleman* remedy is necessarily inclusive of a treatment program for these disorders."  (*Id*.)  In other words, CDCR proposed to further study if certain programs for personality disorders, which standing alone do not qualify an inmate to be included in the Coleman class, would indeed benefit the subset of Coleman class members identified in the UNA.

The November 15 order on the UNA contained one directive—that the parties "meet and confer under the supervision of the Special Master to discuss more prompt development of a pilot program for this subgroup of class members, with the specific goal of developing a plan for the pilot program within three months and implementing the pilot program within six months thereafter."  (ECF No. 8066 at 20-24.)  This directive was based on the information presented in

the UNA report and CDCR's identification of 470 class members who may benefit from treatment for a personality disorder. (*Id.* citing ECF No. 7865-2 at 2.) While the Court embraced most of the UNA, it ignored CDCR's finding and recommendation that developing a new program to treat personality disorder patients was premature because this group and potential treatment options needed further study and evaluation. (ECF No. 7865-3 at 11.)

As required by the November 15 order, over the six months between the UNA order and the May 20 order, CDCR investigated its options to develop a formal treatment plan for class members with a co-occurring personality diagnosis. (ECF No. 8209 at 4.) CDCR presented a proposed treatment plan with four options to treat non-mental health, behavioral issues of *Coleman* class members with personality disorder diagnoses, along with a proposal to roll out the plan at limited institutions to determine its feasibility. (*Id.* at. 4:18-6:- 7:17; Exhibit A.) Defendants also reported on the plan to move forward with this limited roll-out at the April 26, 2024 status conference. (ECF No. 8244, Tr. at 9-16.)

Defendants initially accepted that they must explore options that go beyond the remedy in this case. But in an order dated May 20, 2024, the Court decided, after nearly three decades of litigation, that treatment of personality disorders is part of the remedy to address the original Eighth Amendment violations in this case. (ECF No. 8242 at 5-6.) The Court's finding that specific programs addressing personality disorders must be provided to class members who have personality disorders to remedy Eighth Amendment violations is simply incompatible with the Court's original findings made decades ago and the resulting remedial plan. Until the Special Master's 2021 communication to the Court, Defendants are not aware of reports by the Special Master that Defendants were failing to provide special treatment programs for personality disorders.

Moreover, the sudden new finding sends a message to Defendants that any voluntary efforts to exceed requirements of the remedial plan will result in the Court further raising the Constitutional floor against which CDCR will be measured. The Court ordered this expansion of the remedy without making the requisite PLRA findings demonstrating that a lack of a specific treatment plan violates the Eighth Amendment or finding that the pilot programs are the most

narrowly drawn and least restrictive means to provide treatment.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 62, the Court can stay its May 20 Order to ensure Defendants' rights are secured pending appeal. Fed. R. Civ. P. 62(c). A party seeking a stay must make a four-factor showing: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm in the absence of relief; (3) that the balance of equities weigh in its favor; and (4) that a stay is in the public interest. *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 897 (9th Cir. 2009); *see also Nken v. Holder*, 556 U.S. 418, 434-35 (2009). The likelihood of success on the merits and irreparable harm factors "are the most critical." *Nken*, 556 U.S. at 434 (explaining that when those are satisfied, courts will assess "the harm to the opposing party" and weigh the public interest).

**ARGUMENT**

**I.   DEFENDANTS HAVE A SUBSTANTIAL CASE FOR RELIEF ON THE MERITS**

The likelihood-of-success factor cannot be rigidly applied. *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004). Rather, the rule fairly contemplates that courts may properly stay their own orders where there is a "substantial case" on the merits and the status quo should be maintained. *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (granting stay pending appeal of injunction requiring changes to Texas prison system). Regarding likelihood of success, Defendants "need not demonstrate that it is more likely than not that they will win on the merits," but only that they have "a substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F. 3d 962, 966-68 (9th Cir. 2011).

The May 20 order makes findings and conclusions based on prior reports and orders that do not directly address the scope of the obligation to provide treatment for personality disorders under the Eighth Amendment. (ECF No. 7305 at 6.) Nothing in the record—including the 2006 Program Guide—establishes that personality disorders, standing alone, qualify as a mental illness under the 1995 judgment and the remedial plan. The Court's reference to the 2006 Program Guide and the orders confirming that remedial plan—which exclude as class members those persons

1 diagnosed solely with personality disorders—is therefore misplaced.  Nor does the reference in the
2 Program Guide that CDCR will treat *Coleman* class members who also have a personality disorder
3 provide support for the Court's suggestion that a specific treatment plan for personality-disorders
4 is part of Defendants' existing obligations under the Eighth Amendment.

5 　　　　The reference to treatment must be read in the context of the Program Guide and the
6 history of this case, including the glaring omission of prior recommendations concerning any
7 obligation to formulate plans to treat class members' personality disorders.  Most important is the
8 fact that the 1995 judgment that outlines the elements required for a constitutionally adequate
9 mental health program does not require the treatment of personality disorders to satisfy Eighth
10 Amendment violations.  Thus, the Court erred in requiring a specific treatment plan for personality
11 disorders, and further erred by failing to conduct a PLRA analysis before ordering new
12 prospective injunctive relief that expanded the remedy in this case.

13 **II.   DEFENDANTS WILL BE HARMED ABSENT A STAY.**

14 　　　　The May 20 order, requiring a full roll-out of the pilot program at two institutions by
15 August 31, 2024, adds to an already significant workload for CDCR's mental health program.
16 CDCR should not direct limited resources to pilot programs where the UNA showed and
17 recommended further study was needed, those pilot programs are not a part of the existing
18 remedy, and Defendants have challenge the order requiring the pilot programs based on the
19 Court's failure to satisfy PLRA requirements.  Moreover, by implementing the ordered pilot
20 programs pending appeal, Defendants risk having to defend against future arguments by Plaintiffs,
21 the Special Master, and the Court, that they have conceded the issue.  And Defendants also risk
22 wasting scarce resources to comply with an order that the Ninth Circuit might overturn.No harm
23 would arise from a stay because all *Coleman* class members—including those with personality
24 disorders—will continue to receive treatment.  On the other hand, Defendants would be
25 significantly prejudiced absent a stay.  Accordingly, this Court should stay the May 20 Order until
26 the important legal questions raised by Defendants' appeal are addressed by the Ninth Circuit.
27 / / /
28 / / /

### III. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH HEAVILY IN DEFENDANTS' FAVOR

The balance of equities tips sharply in Defendants' favor, and supports staying the roll-out of the treatment plan pilot until the Ninth Circuit resolves Defendants' appeal of the May 20 order. As stated above, the roll-out of the pilot program will consume valuable resources, including the time of mental health professionals, clinicians and CDCR mental health leadership. This alone favors the imposition of a stay. Moreover, the other remedies under the 1995 Order will remain in place, unaffected by a stay of the Court's May 20 Order. Thus, there is no likelihood that the plaintiff class will be injured. Accordingly, the equities in this case favor a stay of the Order pending appeal.

Similarly, the public interest in preserving the substantial expenses that will be incurred to effect a pilot program that is based on an un-validated need is strong.

## CONCLUSION

For the reasons stated above, this Court should stay its Order requiring the roll-out of the personality disorder treatment program by August 31, 2024.

## CERTIFICATION

In preparing this filing, Defendants' counsel certify that they have reviewed the following relevant orders: ECF Nos. 640, 1773, 6846, 7305, 7456, 8066, 8209, and 8242. This motion sets forth arguments that have not been resolved by prior court orders as they are specifically tailored to address the merits of Defendants' motion to stay the appealed May 20 order. Counsel acknowledges this Court's prior orders concerning the underlying judgment and the Program Guide, but those orders do not foreclose this motion. Counsel make this filing under their obligation to represent their clients zealously under their right to relief under Fed. R. Civ. P. 62(c), *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988), and to satisfy Federal Rule of Appellate Procedure 8(a)(1)(A)'s requirement. Counsel certify that they have conducted a reasonable inquiry and have determined that this filing is well grounded in fact, legally tenable, and not presented for an improper purpose, to harass, cause unnecessary delay, or

needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b)(1); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990). Each factual contention made in this filing is supported by a reference to evidence in the record and the legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2).

DATED: June 14, 2024

ROB BONTA
Attorney General of California
DAMON MCCLAIN
Supervising Deputy Attorney General

**/s/ *Elise Owens Thorn***
Elise Owens Thorn
Deputy Attorney General
*Attorneys for Defendants*

*HANSON BRIDGETT LLP*

*/s/ Samantha D. Wolff*
PAUL B. MELLO
SAMANTHA D. WOLFF
DAVID C. CASARRUBIAS
*Attorneys for Defendants*