UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

           Plaintiffs,

   v.

GAVIN NEWSOM, et al.,

           Defendants.

No. 2:90-cv-0520 KJM DB P

ORDER

      As required by court order, Apr. 18, 2024 Order, ECF No. 8206, the parties have filed a Joint Report providing the last proposal for a medical holds exception to the Program Guide transfer timelines for transfer to the Correctional Clinical Case Management System (CCCMS) and Enhanced Outpatient Program (EOP) levels of care together with statements of their respective positions regarding whether the court should require defendants to adopt that proposal as an addendum to the Program Guide. ECF No. 8216.

**I.    BACKGROUND**

      The background relevant to this issue is set out at pages 14 to 17 of the court's November 16, 2023 order, ECF No. 8069, and incorporated herein full by reference. In that order, the court held that a policy conflict between a medical holds policy set out in the HCDOM and the CCCMS and EOP transfer timelines set out in the Program Guide would have to be resolved "for defendants to comply with the Eighth Amendment." *Id*. at 17. The court directed

1

the parties to meet and confer under the supervision of the Special Master "to develop proposed exceptions to the Program Guide timelines for transfer to CCCMS and EOP levels of care that comport with other court-approved exceptions to Program Guide transfer timelines and avoid unnecessary conflict with relevant provisions of the HCDOM [Health Care Departmental Operations Manual]." *Id*. at 17. The parties were unable to reach agreement on proposed exceptions. ECF No. 8090 at 2. Therefore, on April 18, 2024, the court ordered the parties to submit the outstanding conflict to the court "for review and final resolution." Apr. 18, 2024 Order, at 4, ECF No. 8206. Specifically, the court directed the parties to "file a joint statement of their respective final positions as presented in the meet and confer process . . . accompanied by the last proposal discussed prior to the parties' determination they could not reach agreement and a brief statement setting out their respective positions as to whether the court should require defendants to adopt that proposal as an addendum to the Program Guide." *Id*. at 4-5. On April 25, 2024, the parties timely filed the required joint statement. ECF No. 8216.

## II.  DISCUSSION

The last proposal discussed by the parties is as follows:

> If a patient has a medical condition that cannot be treated at the endorsed institution and the medical condition is deemed more urgent than the mental health treatment need at or after the time of endorsement, as determined by a joint team of medical and mental health clinicians, a medical hold shall be ordered. The relative urgency of the medical and mental health needs, as dictated by the patient's condition, shall be continually monitored by the joint team, and mental health staff shall document in the electronic healthcare record the reasons that the medical need continues to outweigh the mental health need. At each discussion of the continuing appropriateness of the medical hold, the joint team shall determine when the next discussion should take place. Mental health staff shall document the discussion in the electronic healthcare record, including the names and positions of those who participated in the discussion, the date and time the discussion occurred, the determination reached, and the specific rationale for the determination.
>
> If, upon resolution of the medical issue, there are fewer than 30 days remaining on the original transfer timeline or if the transfer timeline has already expired, the patient shall be placed on the expedited transfer list and transferred within 30 days. When a medical hold is removed, the provider removing the hold shall contact the referring mental health clinician and document the communication of removal of

> the medical hold in a progress note. The [provider responsible] for lifting the medical hold will notify the C&PR to ensure expedited transfer and the patient shall be transferred as expeditiously as possible.

ECF No. 8216-1 at 20, as modified by ECF No. 8216 at 3-4. Two disputes remain: "(1) the scope of the review by the joint medical and mental health team concerning the reasonableness of the medical hold when weighing it against the need to transfer the patient to a mental health program; and (2) whether there is a need for an oversight mechanism of the joint medical and mental health teams' reviews." ECF No. 8216 at 4.

The first dispute arises from plaintiffs' proposal that the exception include language to require the joint medical and mental health team to determine both that the medical need is more urgent than the mental health need and that the medical need cannot be treated at any institution that has the appropriate level of mental health care to which the patient has been referred. *Id*. at 7. Specifically, plaintiffs propose the exception include the following language:

> If the medical condition is deemed more urgent than the mental health treatment needed, and the joint team determines that the medical condition cannot be appropriately treated at a CCCMS or EOP institution where the patient would otherwise be transferred, a medical hold shall be ordered in accordance with current policy if one is not already in place, or an existing medical hold may be maintained. If the medical condition is deemed more urgent than the mental health treatment need, but the joint team determines that the condition may be treated appropriately at a CCCMS or EOP institution, the medical hold shall be lifted.

*Id*. at 13.

Defendants object to this proposal principally due to the many complexities that attend institutional placement decisions. *See id*. at 7-8. Defendants suggest the balancing test they proposed is the same as that found in three other medical exception policies the court has approved. *Id*. at 8. Plaintiffs contend medical exceptions for compliance with transfer timelines to psychiatric inpatient programs (PIPs) and from desert institutions include provisions similar to the one they propose here. *Id*. at 13.

The CCCMS and EOP mental health programs are the largest in the California Department of Corrections and Rehabilitation's (CDCR) Mental Health Services Delivery System (MHSDS). CCCMS programs are offered at twenty-eight of CDCR's thirty-two prison

3

institutions, and EOP programs are offered at nineteen prisons. *See* Summary of Mental Health Population by Institution and Level of Care (H1) (provided by *Coleman* Special Master from CDCR Secure Website for Monthly Reports).[1] As defendants explain, prison administrators consider several factors in deciding to which institution an inmate-patient should be transferred. *See id*. at 7-8. Absent violation of constitutional standards, the court defers to the judgment of prison officials in such administrative decisions. *Cf. Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). The court accepts defendants' position that the proper focus of this medical hold exception is on whether necessary medical care can be provided at the institution to which an inmate-patient has been endorsed for transfer and therefore will not require the additional language proposed by plaintiffs.

Plaintiffs also suggest the medical exception policy should "incorporate an oversight mechanism to ensure that the joint teams' balancing discussions are occurring as required and that their decision-making processes are appropriately documented." ECF No. 8216 at 14. Defendants object to this proposal on the grounds that none of the other court-approved exceptions include similar oversight provisions and that such oversight is unnecessary and counterproductive in this context. *Id*. at 9-10. Plaintiffs contend the exception must include some auditing or oversight mechanism to ensure the ongoing monitoring required by the exception actually occurs and transfers to mental health units are not unconstitutionally delayed. *Id*. at 15.

As noted above, this dispute has arisen in the context of the ongoing data remediation process. The data remediation process is central to defendants' development of an adequate quality management system, "a required part of the remedy in this action." ECF No. 8069 at 2. Defendants represent they can include data on the medical hold exceptions approved by this order as drill-down data for the indicators for these transfer timelines, ECF No. 8040 at 7, and they shall do so.[2]

/////

---

[1] The court takes judicial notice of this document. *See* Fed. R. Evid. 201(b).

[2] The court anticipates the drill-down data collected for these indicators will be sufficient to replicate the Special Master's monitoring in this area; if it is not the Special Master will bring that to the attention of the parties and, if necessary, the court.

Finally, the parties dispute whether the medical holds exception policy approved by this order must be included in the Program Guide. The court has approved all other medical hold exceptions as addenda to the Program Guide. *See* Dec. 15, 2017 Order, ECF No. 5750, Sept. 27, 2019 Order, ECF No. 6295, Sept. 17, 2019 Order, ECF No. 6296. Defendants contend that requiring the medical holds exception to be included in the Program Guide is inconsistent with the court's February 7, 2022 order, ECF No. 7456, which relieved the parties of the obligation to file annual updates to the Program Guide, and that the exception will be adequately integrated into the relevant remediated data indicators. *Id*. at 10-11. Plaintiffs contend the exception "necessarily modif[ies] the current Program Guide transfer requirements" and should be included as an amendment to those transfer requirements to avoid unnecessary conflicts or confusion. *Id*. at 15.

In its February 7, 2022 order, the court discontinued the parties' obligation to file annual updates to the Program Guide. ECF No. 7456 at 4. In making that order, the court anticipated it would give final approval to a list of continuous quality improvement tool (CQIT) indicators by the end of 2022 and that such final approval would obviate the need for further Program Guide updates. *Id*. Final approval of the list of CQIT indicators is delayed pending completion of the ongoing data remediation process. The court recently clarified that while its February 7, 2022 order "relieved defendants of their obligation to notify the court of administrative updates," the court did not affect defendants' obligation to comply with court orders to implement the Program Guide. May 20, 2024 Order at 5, ECF No. 8243. The medical hold exception approved by this order substantively modifies defendants' obligations under the Program Guide with respect to transfer timelines to CCCMS and EOP by authorizing certain delays in compliance with those transfer timelines. The Program Guide must be amended accordingly, and the policy approved by this order shall be included as an addendum to the operative version of the Program Guide.

### III. CONCLUSION

In accordance with the above, the court approves defendants' final proposal for the medical holds exception to the Program Guide transfer timelines for transfer to the Correctional Clinical Case Management System (CCCMS) and Enhanced Outpatient Program (EOP) levels of

care discussed by the parties and including the agreed upon resolution for expedited transfers, as follows:

> If a patient has a medical condition that cannot be treated at the endorsed institution and the medical condition is deemed more urgent than the mental health treatment need at or after the time of endorsement, as determined by a joint team of medical and mental health clinicians, a medical hold shall be ordered. The relative urgency of the medical and mental health needs, as dictated by the patient's condition, shall be continually monitored by the joint team, and mental health staff shall document in the electronic healthcare record the reasons that the medical need continues to outweigh the mental health need. At each discussion of the continuing appropriateness of the medical hold, the joint team shall determine when the next discussion should take place. Mental health staff shall document the discussion in the electronic healthcare record, including the names and positions of those who participated in the discussion, the date and time the discussion occurred, the determination reached, and the specific rationale for the determination.
>
> If, upon resolution of the medical issue, there are fewer than 30 days remaining on the original transfer timeline or if the transfer timeline has already expired, the patient shall be placed on the expedited transfer list and transferred within 30 days. When a medical hold is removed, the provider removing the hold shall contact the referring mental health clinician and document the communication of removal of the medical hold in a progress note. The provider responsible for lifting the medical hold will notify the C&PR to ensure expedited transfer and the patient shall be transferred as expeditiously as possible.

The medical holds exception approved by this order shall be included as an Addendum to the Program Guide. The CQIT indicators for transfers to CCCMS and EOP programs shall be designed to capture drill-down data on the medical holds exception approved by this order.

   IT IS SO ORDERED.

DATED: June 17, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE