DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
ADRIENNE PON HARROLD – 326640
AMY XU – 330707
ADRIENNE SPIEGEL – 330482
BENJAMIN W. HOLSTON – 341439
MAYA E. CAMPBELL – 345180
LUMA KHABBAZ – 351492
JARED MILLER – 353641
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al., <br><br> Defendants. | Case No. 2:90-CV-00520-KJM-DB <br><br> **PLAINTIFFS' RESPONSE TO MAY 16, 2024 ORDER (ECF No. 8238)** <br><br> Judge: Hon. Kimberly J. Mueller |

[4511734.15]

1

**TABLE OF CONTENTS**

**Page**

2

3    INTRODUCTION ......................................................................... 1

4    I.    THE COURT'S FIRST QUESTION: DEFENDANTS' NON-
           COMPLIANCE WITH ALMOST ALL RECOMMENDATIONS
5          SUPPORTS CONTEMPT PROCEEDINGS ............................. 3

6          A.    Recommendation 3: Suicide Prevention Training........................... 7

7          B.    Recommendation 7: Adequacy of Intake Screening Process...................... 10

8          C.    Recommendation 8: Confidentiality/Privacy of Intake Screening
                 Process ....................................................................... 12
9
           D.    Recommendation 9: Suicide-Risk Evaluation Training................................ 13
10
           E.    Recommendation 10: Completion of Suicide-Risk Evaluations.................. 17
11
           F.    Recommendations 12 & 13: Use of Suicide-Resistant Cells for Newly
12               Admitted IPs in Administrative Segregation.................................. 18

13         G.    Recommendation 17: Adequate Safety Planning Upon Discharge
                 From MHCBs and Alternative Housing......................................... 21
14
           H.    Recommendation 18: Safety Planning Training ........................... 24
15
           I.    Recommendation 21: Suicide Watch and Suicide Precaution
16               Observation ................................................................... 26

17         J.    Recommendation 28: Custody Checks of IPs Discharged from
                 MHCBs or Alternative Housing................................................. 28
18
           K.    Recommendation 29: Clinician Checks of IPs Discharged from
19               MHCBs or Alternative Housing................................................. 31

20         L.    Recommendation 31: Effectiveness of Local SPRFITs................................. 33

21         M.    Recommendation 32A: MHCB Practices for Inmate-Patient
                 Possessions and Privileges .................................................. 37
22
           N.    Recommendation 32B: Continuous Quality Improvement ("CQI")............. 40
23
           O.    Recommendation 32C: Reception Center Practices...................................... 41
24
     II.   THE COURT'S SECOND QUESTION:  THE COURT SHOULD DIRECT
25         MR. HAYES TO RE-AUDIT COMPLIANCE WITH
           RECOMMENDATIONS AT INSTITUTIONS WHERE THERE IS A
26         FACTUAL DISPUTE REGARDING COMPLIANCE............................ 42

27   III.  DEFENDANTS' NON-COMPLIANCE WITH CERTAIN SPECIFIC
           RECOMMENDATIONS IS ATTRIBUTABLE IN PART, BUT NOT
28         SOLELY, TO THE ONGOING MENTAL HEALTH UNDERSTAFFING

THE COURT IS ADDRESSING IN SEPARATE ORDERS...................................45

    A.    Recommendation 3: Suicide Prevention Training............................................45

    B.    Recommendation 9: Suicide-Risk Evaluation Training....................................45

    C.    Recommendation 10: Completion of Suicide-Risk Evaluations....................46

    D.    Recommendations 17: Adequate Safety Planning Upon Discharge
           From MHCBs and Alternative Housing............................................................47

    E.    Recommendation 18: Safety Planning Training .............................................48

    F.    Recommendation 29: Clinician Checks of IPs Discharged from
           MHCBs or Alternative Housing......................................................................48

    G.    Recommendation 31: Effectiveness of Local SPRFITs.................................48

    H.    Recommendation 32B: Continuous Quality Improvement.............................48

IV.    ADDITIONAL RESPONSE TO SECTION IV OF DEFENDANTS'
      OBJECTIONS ...........................................................................................................49

    A.    Recommendations 7 and 8: Defendants Repeat Objections that the
           Court Should Once Again Reject ....................................................................49

    B.    Recommendation 10: Defendants' Objection to Mr. Hayes's Criticism
           of the Use of the Columbia Suicide Risk Assessment Is Misplaced.............50

    C.    Recommendations 12 and 13: Mr. Hayes Rightfully Audited LAC's
           Compliance with this Recommendation Through Both Visual
           Observation and Record Review ....................................................................52

    D.    Recommendation 18: The Court Should Reject Defendants' Argument
           that Their Staff Was Not Required to Complete Safety Planning
           Training Until June 2023................................................................................53

    E.    Recommendation 21: Mr. Hayes's Recommendation of a CAP to
           Address Suicide Observation Issues at KVSP and RJD was Proper.............53

    F.    Recommendations 28 & 29: Defendants Have No Basis to Request
           that the Court Lower the Compliance Thresholds for these
           Recommendations ...........................................................................................54

    G.    Recommendation 31: Mr. Hayes Properly Audited Defendants'
           SPRFIT Practices, and Defendants' Objections Are Another Attempt
           to Change What They Were Ordered to Do .................................................55

    H.    Recommendation 32A: Defendants are Wrong to Argue That CDCR
           Policy Does Not Have a Minimum Out-of-Cell Requirement for
           MHCB Patients, and Their Objections to Mr. Hayes's
           Recommendations for Corrective Action Are Without Merit......................57

    I.    Recommendation 32B: Defendants' Continuous Quality Improvement
           Process Has Glaring Issues that Mr. Hayes Should Continue to

[4511734.15]

Monitor ................................................................................................ 58

V.   THE COURT SHOULD ADOPT MR. HAYES'S RECOMMENDATIONS
REGARDING THE PIPS AND SHOULD DIRECT MR. HAYES TO RE-
AUDIT THE PIPS TO ASSESS COMPLIANCE WITH THE COURT-
ORDERED PIP CAPS ............................................................................ 60

    A.   The Court Should Overrule Defendants' Objections Regarding
Suicide Resistant Beds ................................................................ 60

        1.   Defendants' Objection Regarding Using Multi-Person Dorms
and Cells at CMF-PIP Is Meritless ...................................... 60

        2.   Defendants Should Verify that They Have Retrofitted Cells in
SVSP-PIP, and the Court Should Adopt Mr. Hayes's
Recommendation that Defendants Install a Barrier to Protect
Against Suicidal Patients Jumping from the Second Tier of
Buildings C-5 and C-6 .......................................................... 61

    B.   Defendants' Objections Regarding Observation of Suicidal Patients
are Meritless ................................................................................ 63

        1.   The Court Should Reject Defendants' Improper Effort to
Modify One of the Court-Ordered PIP CAPs Regarding
Suicide Observation .............................................................. 63

        2.   The Court Should Direct Mr. Hayes to Confirm that CIW-PIP
Has Stopped Using "Behavioral Suicide Watch" and that
Patients on Suicide Observation at SVSP-PIP Are Being
Assessed Daily ...................................................................... 64

    C.   Defendants' Objection to Mr. Hayes's Recommendation Regarding
Clothing and Possessions at CHCF-PIP and CMF-PIP Lack Merit ............. 65

    D.   The Court Should Overrule Defendants' Objections Regarding Out-
of-Cell Activities ........................................................................ 66

    E.   Defendants' Attacks on Mr. Hayes's Findings and Recommendations
Regarding PIP IDTT Quality Fail ............................................... 68

    F.   The Court should Adopt Mr. Hayes's Recommendations Regarding
Safety Planning and Direct Mr. Hayes to Re-audit Safety Planning at
CHCF-PIP, CMF-PIP, and SVSP-PIP ........................................ 69

    G.   The Court Should Adopt Mr. Hayes's Recommendation Regarding
the SPRFIT CAPs and Should Direct Mr. Hayes to Re-Audit Certain
PIPs Regarding Compliance with These CAPs ............................ 70

        1.   The Court Should Adopt Mr. Hayes's Recommendation
Regarding SPRFIT Quorums in the PIPs and Direct Him to Re-
Audit Compliance with this CAP at CHCF-PIP, CMF-PIP,
SVSP-PIP, and CIW-PIP ...................................................... 70

        2.   Tracking Corrective Actions ................................................. 71

[4511734.15]

iii

CONCLUSION..................................................................................................... 72

CERTIFICATION ................................................................................................ 73

1

## TABLE OF AUTHORITIES

2

**Page**

3

<u>**CASES**</u>

4

5

*Gen. Signal Corp. v. Donallco, Inc.*,
    787 F.2d 1376 (9th Cir. 1986) ................................................................................... 55

6

*Vertex Distribg., Inc. v. Falcon Foam Plastics, Inc.*,
    689 F.2d 885 (9th Cir. 1982) ................................................................................... 55

7

8

<u>**STATUTES**</u>

9

Cal. Code. Regs. § 3348 ........................................................................................................ 57

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

In 2013, in response to Defendants' motion to terminate all prospective relief in this case, this Court wrote:

> [F]or over a decade a disproportionately high number of inmates have committed suicide in California's prison system.  Review of those suicides shows a pattern of identifiable and describable inadequacies in suicide prevention in the CDCR.  Defendants have a constitutional obligation to take and adequately implement all reasonable steps to remedy those inadequacies.  The evidence shows they have not yet done so.

Apr. 5, 2013 Order, ECF No. 4539 at 43.[1]  More than a decade later, little has changed: CDCR continues to see a disproportionately high number of incarcerated persons commit suicide within their prison system—the 2019, 2020 and 2023 suicide rates were the highest in CDCR since at least 1990, *see* Lindsay Hayes's Sixth Re-Audit of CDCR's Suicide Prevention Practices, ECF No. 8143-1 (hereinafter "Hayes's Sixth Re-Audit Report") at 86; Lindsay Hayes's First Audit, ECF No. 5259 at 3; Annual Report on Suicide Prevention and Response Within CDCR (Oct. 1, 2020), available at https://cchcs.ca.gov/wp-content/uploads/sites/60/MH/CDCR-2019-SB-960.pdf, at 7—and Defendants have continued to fail to implement nearly half of the suicide prevention measures recommended by the Special Master almost ten years ago.  *See generally* Hayes's Sixth Re-Audit Report.

It is within this context that the Court requested that Plaintiffs respond to Defendants' litany of largely baseless objections to Mr. Hayes's Sixth Re-Audit Report.  *See* May 16, 2024 Order, ECF No. 8238; Defendants' Objections to Hayes's Sixth Re-Audit Report, ECF No. 8179 (hereinafter "Defs.' Objections").  In February 2023, the Court had found that "further delay in the defendants' full implementation of the required suicide prevention measures is unacceptable" and set a final deadline of April 1, 2023, for Defendants to comply with the Special Master's court-ordered recommendations.  Feb. 28, 2023 Order, ECF No. 7743 at 3-4.  The Court also stated that "[f]ines in the amount of

---

[1] Page citations to documents in the docket are based on ECF pagination.

$1,000 per outstanding recommendation per institution per day will begin accumulating" on that date, and that the Court would "confirm the total amount of fines accumulated, if any, in its order on the sixth round re-audit report." *Id.* at 4-5.  After Lindsay Hayes found that Defendants were still non-compliant with 14 of the 15 remaining recommendations, the Court directed that Plaintiffs answer the following questions:

(1) "Do some or all of Mr. Hayes's findings of non-compliance with these recommendations or any other of the fourteen outstanding suicide prevention recommendations support contempt proceedings because defendants would remain out of compliance even if the court were to sustain all of their specific objections to Mr. Hayes's findings as to particular suicide prevention recommendations?  If so, which ones?"

(2) "Do any of defendants' specific objections suggest the need for a further re-audit by Mr. Hayes as to one or more of the outstanding recommendations.  If so, which ones, and what is the most expeditious and fully effective method for completing any necessary re-audit?"

(3) "Is defendants' non-compliance with one or more of the specific recommendation(s) attributable to the ongoing mental health understaffing the court is addressing in separate orders so as to suggest the non-compliance with a recommendation is solely a consequence of defendants' contempt of the court's orders to remedy mental health understaffing in California's prisons?"

ECF No. 8238 at 5.

Plaintiffs' analysis shows that, for nearly every recommendation, there is no genuine factual dispute regarding compliance for several CDCR institutions.  The question regarding these institutions where non-compliance is factually undisputed is whether Defendants have taken all reasonable steps to comply with the Court's orders, such that a finding of contempt is appropriate.  The Court should therefore confirm the total amount of fines accumulated for Defendants' non-compliance, based on the institutions and recommendations set forth below where there is no genuine factual dispute, *see* Section I, *infra*, and set the matter for contempt proceedings.

Where Defendants have raised genuine factual disputes about a particular recommendation at an institution, the Court should have Mr. Hayes re-audit those institutions, as described in more detail below.  *See* Section II, *infra*.  For some of the recommendations, such as those involving CDCR staff's completion of certain training requirements, a re-audit may not require an onsite tour.  For others, the Court should institute a separate contempt proceeding if the re-audited institutions are still found to be non-compliant after further review.

Regarding the third question, there is evidence that Defendants' failure to comply with some of the recommendations at some institutions was exacerbated by clinical understaffing.  As to some of those recommendations, there is evidence that other factors also contributed to Defendants' non-compliance.  Non-compliance was not "solely" the consequence of Defendants' issues with mental health understaffing for any recommendation.  *See* Section III, *infra*.

As permitted by the Court's order, *see* ECF No. 8238 at 6, Plaintiffs also respond to Defendants' other objections regarding both Mr. Hayes's original suicide prevention recommendations, *see* Section IV, *infra*, and his Psychiatric Inpatient Program ("PIP") suicide prevention recommendations, *see* Section V, *infra*, and offer objections to Defendants' evidence that accompanied their original objections to Mr. Hayes's Sixth Re-Audit.  *See* Plaintiffs' Evidentiary Objections to Defendants' Objections to Special Master's Sixth Re-Audit Report.  As was the case with Defendants' General Objections, *see* Plaintiffs' Response to Defendants' General Objections to Special Master's Sixth Re-Audit Report, ECF No. 8241, Defendants' various objections do not show that Mr. Hayes or the Special Master committed clear error.  They should be overruled.

## I.   THE COURT'S FIRST QUESTION: DEFENDANTS' NON-COMPLIANCE WITH ALMOST ALL RECOMMENDATIONS SUPPORTS CONTEMPT PROCEEDINGS

*The court's initial review of defendants' objections suggests that even if the court were to sustain all of defendants' objections to specific findings in the Sixth Re-Audit Report, defendants would remain out of compliance with Recommendations 3, 9, 18, 21, 28, 29, 31 and 32, and that defendants have offered no facts to rebut the specific findings of non-compliance in the Report with respect to Recommendations*

*17 and 31. Defendants argue principally that Recommendation 17 is "redundant" of other recommendations and should be stricken, and they object that Mr. Hayes' findings with respect to Recommendation 31 are in some way or another "improper" but do not make a factual showing of compliance with this Recommendation. Do some or all of Mr. Hayes' findings of non-compliance with these recommendations or any other of the fourteen outstanding suicide prevention recommendations support contempt proceedings because defendants would remain out of compliance even if the court were to sustain all of their specific objections to Mr. Hayes' findings as to particular suicide prevention recommendations? If so, which ones?*

The answer to the Court's first question is yes: Even if the Court were to sustain all of Defendants' specific objections in which they offer facts to rebut Mr. Hayes's findings, Defendants would still be considered in non-compliance with nearly every single recommendation, such that contempt proceedings would be appropriate.[2] This includes:

- Recommendation 3: Suicide Prevention Training
- Recommendation 7: Adequacy of Intake Screening Process
- Recommendation 8: Confidentiality/Privacy of Intake Screening Process
- Recommendation 9: Suicide-Risk Evaluation Training
- Recommendation 10: Completion of Suicide-Risk Evaluations
- Recommendations 12/13: Use of Suicide-Resistant Cells for Newly Admitted Incarcerated Patients ("IPs") in Administrative Segregation
- Recommendation 17: Adequate Safety Planning Upon Discharge from Mental-Health Crisis Beds ("MHCBs") and Alternative Housing
- Recommendation 18: Safety Planning Training
- Recommendation 21: Suicide Watch and Suicide Precaution Observation
- Recommendation 28: Custody Checks of IPs Discharged from MHCBs or

---

[2] As discussed in more detail below, there are several recommendations where Defendants made "specific objections" that are identical to their "general objections." These objections, if sustained by the Court, would negate Defendants' noncompliance with these recommendations (Recommendations 7, 8, 9, 10, 17, and 31), because the Court would be agreeing that Mr. Hayes had been auditing these recommendations incorrectly. The Court's question, however, focuses on instances in which Defendants offered facts to dispute Mr. Hayes's findings. Plaintiffs therefore answer the first question by identifying recommendations and institutions where Defendants did *not* offer any factual counter to the Special Master's findings.

Alternative Housing

- Recommendation 29: Clinician Checks of IPs Discharged from MHCBs or Alternative Housing
- Recommendation 31: Effectiveness of Local Suicide Prevention and Response Focused Improvement Teams (SPRFITs)
- Recommendation 32A: MHCB Practices for IP Possessions and Privileges
- Recommendation 32C: Reception Center Practices

The following chart summarizes the factually undisputed non-compliance for each recommendation, listing the institutions that Mr. Hayes found to be non-compliant with his recommendation and the institutions for which Defendants provide alternative data:

**Table 1: Summary of Undisputed Non-Compliant Institutions[3]**

| Rec | Institutions Found Non-Compliant by Lindsay Hayes (Total #) | Institutions Where Non-Compliance Disputed by Defendants (Total #) | Institutions Where Non-Compliance is Factually Undisputed (Total #) |
|---|---|---|---|
| 3 | CIW, CMC, CMF, LAC, SAC, SATF, HDSP, SQ, CHCF, MCSP, SVSP (11) | CMC, CMF, SATF, HDSP, MCSP, SVSP (6) | CIW, LAC, SAC, SQ, CHCF (5) |
| 7 | SQ, CHCF, CMC, CIM (4) | SQ (1) | CHCF, CMC, CIM (3) |
| 8 | CCI, WSP, SVSP, CIM, CIW (5) | CCI, WSP, SVSP (3) | CIM, CIW (2) |
| 9 | CCI, CCWF, CMC, CMF, | CCI (1) | CCWF, CMC, CMF, |

[3] This response uses the following abbreviations for institutions: California Correctional Institution ("CCI"), California Health Care Facility ("CHCF"), California Institution for Men ("CIM"), California Institution for Women ("CIW"), California Men's Colony ("CMC"), California Medical Facility ("CMF"), California State Prison – Corcoran ("COR"), California State Prison – Los Angeles County ("LAC"), California State Prison – Sacramento ("SAC"), California State Prison – Solano ("SOL"), Central California Women's Facility ("CCWF"), High Desert State Prison ("HDSP"), Kern Valley State Prison ("KVSP"), Mule Creek State Prison ("MCSP"), North Kern State Prison ("NKSP"), Pelican Bay State Prison ("PBSP"), Richard J. Donovan Correctional Facility ("RJD"), Salinas Valley State Prison ("SVSP"), San Quentin Rehabilitation Center ("SQ"), Substance Abuse Treatment Facility and State Prison ("SATF"), Wasco State Prison ("WSP").

| Rec | Institutions Found Non-Compliant by Lindsay Hayes (Total #) | Institutions Where Non-Compliance Disputed by Defendants (Total #) | Institutions Where Non-Compliance is Factually Undisputed (Total #) |
|---|---|---|---|
| | CHCF, LAC, SOL, COR, SATF, PBSP (10) | | CHCF, LAC, SOL, COR, SATF, PBSP (9) |
| 10 | CHCF, CMC, SOL, SATF, NKSP, RJD (6) | None | CHCF, CMC, SOL, SATF, NKSP, RJD (6) |
| 12/13 | CIM, CMC, LAC, KVSP, SVSP, WSP, RJD (7) | CIM, CMC, LAC, KVSP, SVSP, WSP (6) | RJD (1) |
| 17 | CCI, CCWF, CHCF, CIM, CMC, CMF, COR, LAC, SAC, SOL, SATF, HDSP, KVSP, MCSP, NKSP, PBSP, RJD, SVSP, WSP (19) | None | CCI, CCWF, CHCF, CIM, CMC, CMF, COR, LAC, SAC, SOL, SATF, HDSP, KVSP, MCSP, NKSP, PBSP, RJD, SVSP, WSP (19) |
| 18 | CIW, SAC, WSP, SATF, COR, LAC (6) | CIW, SAC, WSP (3) | SATF, COR, LAC (3) |
| 21 | CIM, CMC, LAC, COR, KVSP, MCSP, NKSP, SVSP (8) | None | CIM, CMC, LAC, COR, KVSP, MCSP, NKSP, SVSP (8) |
| 28 | SQ, MCSP, COR, SATF, KVSP, HDSP, SAC, CCI, CHCF, RJD, LAC, SVSP, CCWF (13) | SQ, MCSP, COR, SATF, KVSP, HDSP (6) | SAC, CCI, CHCF, RJD, LAC, SVSP, CCWF (7) |
| 29 | WSP, MCSP, COR, SATF, KVSP, NKSP, SAC, CCI, PBSP, RJD, LAC, SVSP, CCWF, CIM, CMF (15) | WSP, MCSP, COR, SATF, KVSP, NKSP (6) | SAC, CCI, PBSP, RJD, LAC, SVSP, CCWF, CIM, CMF (9) |
| 31 | MCSP, COR, SATF, KVSP, NKSP, CIW, CCI, PBSP, SOL, LAC, SVSP, CCWF, CHCF, CMF (14) | None | MCSP, COR, SATF, KVSP, NKSP, CIW, CCI, PBSP, SOL, LAC, SVSP, CCWF, CHCF, CMF (14) |
| 32A | SAC, CIM, CHCF, WSP, CIW, SATF, CCWF, COR, | SAC, CIM, CHCF, WSP, CIW, SATF, | COR, KVSP, PBSP, CMF, RJD (5) |

| Rec | Institutions Found Non-Compliant by Lindsay Hayes (Total #) | Institutions Where Non-Compliance Disputed by Defendants (Total #) | Institutions Where Non-Compliance is Factually Undisputed (Total #) |
|---|---|---|---|
| | KVSP, PBSP, CMF, RJD (12) | CCWF (7) | |
| 32B | N/A | N/A | N/A |
| 32C | WSP, CCWF, NKSP (3) | WSP (1) | CCWF, NKSP (2) |

The following sections detail the state of compliance for each recommendation:

**A.      Recommendation 3: Suicide Prevention Training**

Recommendation 3 requires that Defendants "[e]nsure that all custody and health care staff receive both pre-service and **annual suicide prevention training**."  Hayes's Sixth Re-Audit Report at 6 (emphasis in original).  "In order to achieve compliance with implementation of this recommendation, defendants must ensure that at least 90 percent of custody, medical and mental health staff at all audited CDCR facilities receive annual suicide prevention training.  Each discipline must have at least 90 percent compliance." Special Master's Fifth Re-Audit Report, ECF No. 7636 at 23.

For the Sixth Re-Audit, Mr. Hayes found that 11[4] of the 21 audited institutions were non-compliant with this recommendation, because they had annual suicide prevention training completion rates under 90 percent for at least one of the three disciplines.  Hayes's Sixth Re-Audit Report at 54.  Mr. Hayes provided training completion rates for 2022.  *Id.*

In attempting to demonstrate compliance, Defendants provided updated data from 2023 for annual suicide prevention training for the 11 institutions found to be non-compliant.  *See* Defs.' Objections at 82-83.  Defendants argue that their data show that six

---

[4] The body of Mr. Hayes's report indicates that 10 institutions were non-compliant, but the appendices of his report indicate that it was actually 11 institutions.  Hayes's Sixth Re-Audit Report at 98, 124, 132, 143, 157, 178, 224, 246, 259, 278, 289; *see also* Defs.' Objections at 82 (also pointing out that there were more institutions found to be non-compliant than indicated in the body of Mr. Hayes's report).

additional institutions—MCSP, SVSP, CMC, CMF, HDSP, and SATF—are also compliant, because their data show that those institutions had training-compliance rates over 90 percent for the disciplines in which Mr. Hayes had found them to be non-compliant.  *Id.*

Thus, even if this Court were to accept that Defendants' data prove Defendants' compliance for those institutions[5], there are still five institutions that Defendants admit have failed to achieve compliance with this recommendation: CIW, LAC, SAC, CHCF and SQ.  The following table demonstrates the current state of Defendants' compliance, with the institutions still out of compliance (if accepting Defendants' data) in bold:

**Table 2: Recommendation 3 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's findings (from 2022) | Defendants' Alternative Data (from 2023) | Citation |
|---|---|---|---|
| **CIW** (5/15-17/2023) | 1) Custody: 100% compliance 2) Medical: 69% compliance 3) Mental Health: 100% compliance | 1) Custody: None given 2) Medical: 83% compliance 3) MH: None given | ECF No. 8143-1 at 124; ECF No. 8179 at 83. |
| CMC (10/10-11/2023) | 1) Custody: 93% compliance 2) Medical: 81% compliance 3) Mental Health: 92% compliance | 1) Custody: None given 2) Medical: 94% compliance 3) MH: None given | ECF No. 8143-1 at 259; ECF No. 8179 at 83. |
| CMF (9/25- | 1) Custody: 95% compliance | 1) Custody: None given | ECF No. 8143-1 at 246; ECF No. 8179 at |

---

[5] In their objections, Defendants only provided the 2023 data for the disciplines in which Mr. Hayes reported non-compliance for each institution.  They did not, however, demonstrate that those institutions had achieved at least 90 percent compliance in all three disciplines for each of those institutions for 2023.  *See* Defs.' Objections at 82-83; Declaration of Travis Williams ("Williams Decl."), ECF No. 8180-6 at 16.  Without that data, Defendants have not proven that those institutions have achieved compliance.  The current data also potentially supports contempt proceedings for these additional six institutions.

| Institution (Date of Audit) | Lindsay Hayes's findings (from 2022) | Defendants' Alternative Data (from 2023) | Citation |
|---|---|---|---|
| 26/2023) | 2) Medical: 87% compliance 3) Mental Health: 90% compliance | 2) Medical: 92% compliance 3) MH: None given | 83. |
| **LAC** (8/23-24/2023) | 1) Custody: 85% compliance 2) Medical: 63% compliance 3) Mental Health: 75% compliance | 1) Custody: 91% compliance 2) Medical: 87% compliance 3) MH: 87% compliance | ECF No. 8143-1 at 224; ECF No. 8179 at 83. |
| **SAC** (4/4-6/2023) | 1) Custody: 91% compliance 2) Medical: 80% compliance 3) Mental Health: 91% compliance | 1) Custody: None given 2) Medical: 88% compliance 3) MH: None given | ECF No. 8143-1 at 98; ECF No. 8179 at 83. |
| SATF (6/29-30/2023) | 1) Custody: 94% compliance 2) Medical: 79% compliance 3) Mental Health: 91% compliance | 1) Custody: None given 2) Medical: 93% compliance 3) MH: None given | ECF No. 8143-1 at 178; ECF No. 8179 at 83. |
| HDSP (10/31/2023-11/1/2023) | 1) Custody: 99% compliance 2) Medical: 84% compliance 3) Mental Health: 100% compliance | 1) Custody: None given 2) Medical: 94% compliance 3) MH: None given | ECF No. 8143-1 at 289; ECF No. 8179 at 83. |
| **SQ** (5/23-25/2023) | 1) Custody: 91% compliance 2) Medical: 89% compliance 3) Mental Health: 92% compliance | 1) Custody: None given 2) Medical: 84% compliance 3) MH: None given | ECF No. 8143-1 at 132; ECF No. 8179 at 83. |

| Institution (Date of Audit) | Lindsay Hayes's findings (from 2022) | Defendants' Alternative Data (from 2023) | Citation |
|---|---|---|---|
| **CHCF** (6/8-9/2023) | 1) Custody: 97% compliance 2) Medical: 87% compliance 3) Mental Health: 86% compliance | 1) Custody: None given 2) Medical: 83% compliance 3) MH: 82% compliance | ECF No. 8143-1 at 157; ECF No. 8179 at 83. |
| MCSP (6/6-7/2023) | 1) Custody: 94% compliance 2) Medical: 92% compliance 3) Mental Health: 82% compliance | 1) Custody: None given 2) Medical: None given 3) MH: 96% compliance | ECF No. 8143-1 at 143; ECF No. 8179 at 83. |
| SVSP (10/12-13/2023) | 1) Custody: 96% compliance 2) Medical: 96% compliance 3) Mental Health: 82% compliance | 1) Custody: None given 2) Medical: None given 3) MH: 95% compliance | ECF No. 8143-1 at 278; ECF No. 8179 at 83. |

## B.    Recommendation 7: Adequacy of Intake Screening Process

Recommendation 7 requires that "[t]he nurse's office should be of sufficient size to conduct adequate **intake screening** and the door to the office (which should contain a large viewing window) should remain closed during the screening process."  Hayes's Sixth Re-Audit Report at 6 (emphasis in original).  "Compliance with the implementation of this recommendation requires defendants to ensure nurse's office doors are always closed and that nurses consistently ask all 15 mental health/suicide risk questions on the Initial Health Screening form."  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 23.  In addition, as described in Plaintiffs' Response to Defendants' General Objections to the Special Master's Sixth Re-Audit Report, since Mr. Hayes's first audit in 2015, and in every audit thereafter, he has judged Defendants' compliance with this recommendation based on "the adequacy of the intake screening form and the completeness of nursing

staff's conduct of the intake process." *See* ECF No. 8241 at 19-20 (citing ECF No. 5259 at 9-12; Hayes's First Re-Audit Report, ECF No. 5396 at 6-8; Hayes's Second Re-Audit Report, ECF No. 5672 at 3-4; Hayes's Third Re-Audit Report, ECF No. 5993-1 at 4-5; Hayes's Fourth Re-Audit Report, ECF No. 6879-1 at 7-9; Hayes's Fifth Re-Audit Report, ECF No. 7636-1 at 12-14).

For the Sixth Re-Audit, Mr. Hayes found that 4 of the 20 audited institutions were non-compliant with this recommendation, because he had observed inadequate practices regarding the nursing staff's intake screening process in those institutions.  Hayes's Sixth Re-Audit Report at 15-16.

Defendants make several "specific" objections to Mr. Hayes's findings that Plaintiffs have either addressed in their response to Defendants' General Objections, *see* ECF No. 8241 at 19-20, or respond to in the section below.  *See* Section IV(A), *infra*. Defendants also attempt to demonstrate compliance by providing data from their 2023 Suicide Prevention and Response Focused Improvement Team (SPRFIT) audits.  Defs.' Objections at 31-38.  Their audits purport to show compliance with Recommendation 7 for one additional institution: SQ.  *Id.*

Thus, even if this Court were to accept that Defendants' data prove Defendants' compliance for that institution, there are still three institutions that Defendants admit have failed to achieve compliance with this recommendation: CHCF, CMC, and CIM.  The following table demonstrates the current state of Defendants' compliance, with the institutions still out of compliance (if accepting Defendants' data) in bold:

**Table 3: Recommendation 7 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| SQ (5/23-25/2023) | Not compliant | 2/27/23 Audit: Non-Compliant 10/11/23 Audit: Compliant | ECF No. 8143-1 at 128-29; ECF No. 8180-5 at 15, 73. |
| **CHCF** | Not compliant | None given | ECF No. 8143-1 at |

| Institution (Date of Audit) | Lindsay Hayes's findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| (6/8-9/2023) | | | 152-153. |
| **CMC** (10/10-11/2023) | Not compliant | None given | ECF No. 8143-1 at 254. |
| **CIM** (5/18-19/2023) | Not compliant | None given | ECF No. 8143-1 at 125. |

### C.       Recommendation 8: Confidentiality/Privacy of Intake Screening Process

Recommendation 8 states that "[n]urse and officer safety should remain the top priority during the intake screening process.  If an IP's screening classification or unknown security status creates a safety concern, the screening should be conducted in the least restrictive setting that ensures both staff safety and inmate **confidentiality**."  Hayes's Sixth Re-Audit Report at 6-7 (emphasis in original).  "Upon completion of the steps outlined for Recommendation 7 above, to include the screening process completed outside the presence of custody personnel, compliance with the implementation of Recommendation 8 will be achieved."  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 23-24.

For the Sixth Re-Audit, Mr. Hayes found that 5 of the 20 audited institutions were non-compliant with this recommendation, because he had observed inadequate practices regarding confidentiality during the intake process.  Hayes's Sixth Re-Audit Report at 15-16.

Similar to Recommendation 7, Defendants make several "specific" objections to Mr. Hayes's findings that Plaintiffs have either addressed to in their response to Defendants' General Objections, *see* ECF No. 8241 at 19-20, or that Plaintiffs respond to in section IV(A) below.  Defendants also again attempt to demonstrate compliance by providing data from their 2023 SPRFIT audits.  Defs.' Objections at 31-38.  Their audits purport to show compliance with Recommendation 8 in three additional institutions: CCI, WSP, and SVSP.  *Id.*

Thus, even if this Court were to accept that Defendants' data prove Defendants' compliance for those institutions, there are still two institutions that Defendants admit have

failed to achieve compliance with this recommendation: CIW and CIM. The following table demonstrates the current state of Defendants' compliance, with the institutions still out of compliance (if accepting Defendants' data) in bold:

**Table 4: Recommendation 8 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| CCI (4/20-21/2023) | Not compliant | 1/19/23 Audit: Compliant 7/25/23 Audit: Compliant | ECF No. 8143-1 at 116; ECF No. 8180-1 at 14-15, 177. |
| WSP (4/18-19/2023) | Not compliant | 5/17-18/23 Audit: Non-Compliant 8/28-29/23 Audit: Compliant 11/13-14/23 Audit: Compliant | ECF No. 8143-1 at 101-02; ECF No. 8180-1 at 161, 216, 301. |
| SVSP (10/12-13/2023) | Not compliant | 2/9/23 Audit: Compliant 12/21/23 Audit: Compliant | ECF No. 8143-1 at 273; ECF No. 8180-2 at 14, 111. |
| **CIM** (5/18-19/2023) | Not compliant | None given | ECF No. 8143-1 at 125. |
| **CIW** (5/15-17/2023) | Not compliant | None given | ECF No. 8143-1 at 121. |

### D.    Recommendation 9: Suicide-Risk Evaluation Training

Recommendation 9 states that "CDCR should revise its **SRE Mentoring** Program to eliminate its "graduation" component after completion of two adequate assessments, conduct ongoing mentoring throughout the year, and audit clinicians' SREs on a regularly scheduled basis." Hayes's Sixth Re-Audit Report at 7 (emphasis in original). "Compliance with the implementation of this recommendation will require defendants to ensure that at least 90 percent of mental health clinicians at each audited CDCR facility are compliant with the requirements of both the seven-hour SRE training and SRE mentoring program." Special Master's Fifth Re-Audit Report, ECF No. 7636 at 24.

For the Sixth Re-Audit, Mr. Hayes found that 10 of the 21 audited institutions were non-compliant with this recommendation, because those institutions did not have 90 percent of their mental health clinicians complete both the seven-hour Suicide Risk Evaluation (SRE) training and the SRE mentoring program.  Hayes's Sixth Re-Audit Report at 35-40.

Defendants make an additional "specific" objection, arguing that Mr. Hayes did not audit Defendants' compliance with Recommendation 9 based on the text of Recommendation 9.  *See* Defs.' Objections at 63-64.  This objection is identical to the objection made in Defendants' "General Objections," *see* Defs.' Objections at 24-25, which Plaintiffs already addressed in their response thereto.  *See* ECF No. 8241 at 19-22. Defendants also attempt to demonstrate compliance by providing updated data regarding their clinicians' training completion rates.  Defs.' Objections at 63; Williams Decl., ECF 8180-6 at 12.  While Defendants provide updated data for seven of the ten non-compliant institutions, their data (if accepted) only show that one institution is now compliant: CCI. *Id.*  The other data provided, for CCWF, CMC, CMF, LAC, and CHCF, only show that the clinicians at those institutions are potentially compliant with one training requirement but not both.  *Id.*

Thus, even if this Court were to accept that Defendants' data prove Defendants' compliance for those institutions, Defendants admit that they have failed to achieve compliance with this recommendation at nine institutions: CCWF, CMC, CMF, LAC, CHCF, SOL, COR, SATF and PBSP.  The following table demonstrates the current state of Defendants' compliance, with the institutions still out of compliance (if accepting Defendants' data) in bold:

/ / /

/ / /

/ / /

/ / /

/ / /

**Table 5: Recommendation 9 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| CCI (4/20-21/2023) | 1) SRE Mentoring Program: 85% completion 2) SRE biennial training: 100% completion (as of Apr. 2023) | 1) SRE Mentoring Program: 94.38% 2) SRE biennial training: 98.76% completion (as of end of 2023) | ECF No. 8179 at 119; ECF No. 8180-6 at 12. |
| **CCWF** (11/14-15/2023) | 1) SRE Mentoring Program: 78% completion 2) SRE biennial training: 98% completion (as of Oct. 2023) | 1) SRE Mentoring Program: None given 2) SRE biennial training: 90.29% (as of end of 2023) | ECF No. 8143-1 at 305; ECF No. 8180-6 at 12. |
| **CMC** (10/10-11/2023) | 1) SRE Mentoring Program: 47% completion 2) SRE biennial training: 92% completion (as of Sep. 2023) | 1) SRE Mentoring Program: None given 2) SRE biennial training: 93.52% (as of end of 2023) | ECF No. 8143-1 at 259; ECF No. 8180-6 at 12. |
| **CMF** (9/25-26/2023) | 1) SRE Mentoring Program: 0% completion 2) SRE biennial training: 93% completion (as of Sep. 2023) | 1) SRE Mentoring Program: None given 2) SRE biennial training: 92.99% (as of end of 2023) | ECF No. 8143-1 at 246; ECF No. 8180-6 at 12. |
| **CHCF** (6/8-9/2023) | 1) SRE Mentoring Program: 38% completion 2) SRE biennial training: 94% completion (as of May 2023) | 1) SRE Mentoring Program: None given 2) SRE biennial training: 92.99% (as of end of 2023) | ECF No. 8143-1 at 157; ECF No. 8180-6 at 12 |

| Institution (Date of Audit) | Lindsay Hayes's findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| **LAC** (8/23-24/2023) | 1) SRE Mentoring Program: 73% completion 2) SRE biennial training: 93% completion (as of July 2023) | 1) SRE Mentoring Program: None given 2) SRE biennial training: 97.25% (as of end of 2023) | ECF No. 8143-1 at 224; ECF No. 8180-6 at 12. |
| **SOL** (9/27-28/2023) | 1) SRE Mentoring Program: 73% completion 2) SRE biennial training: 38% completion (as of Sep. 2023) | None given | ECF No. 8143-1 at 253. |
| **COR** (6/27-28/2023) | 1) SRE Mentoring Program: 68% completion 2) SRE biennial training: 62% completion (as of June 2023) | None given | ECF No. 8143-1 at 168. |
| **SATF** (6/29-30/2023) | 1) SRE Mentoring Program: 22% completion 2) SRE biennial training: 30% completion (as of May 2023) | None given | ECF No. 8143-1 at 178. |
| **PBSP** (11/2-3/2023) | 1) SRE Mentoring Program: 78% completion 2) SRE biennial training: 94% completion (as of Oct. 2023) | None given | ECF No. 8143-1 at 298. |

### E.      Recommendation 10: Completion of Suicide-Risk Evaluations

Recommendation 10 states that "[e]ach facility's SPRFIT should audit the quality of **completed SREs** on a monthly basis." Hayes's Sixth Re-Audit Report at 7 (emphasis in original).  This Recommendation requires 100 percent compliance "because failure to complete such evaluations can result in death by suicide within CDCR facilities." Special Master's Fifth Re-Audit Report, ECF No. 7636 at 24.  "In order to achieve compliance with the implementation of Recommendation 10, defendants should ensure through the SPRFIT or other process that Suicide Risk Assessment and Self Harm Evaluations (SRASHEs) are always completed for inmates presenting as possible risk for suicide at each audited CDCR facility." *Id.*

For the Sixth Re-Audit, Mr. Hayes found that 6 of the 21 audited institutions were non-compliant with this recommendation at the 90-percent threshold, and that 19 of the 21 audited institutions were non-compliant with this recommendation at the 100-percent threshold.  Hayes's Sixth Re-Audit Report at 35-40.

As they did with Recommendation 9 (and other recommendations), Defendants make a "specific" objection to Mr. Hayes's findings that Mr. Hayes did not audit Defendants' compliance with Recommendation 10 based on the text of Recommendation 10.  *See* Defs.' Objections at 64-65.  Again, this objection is identical to the objection made in Defendants' section regarding their "General Objections", *see* Defs.' Objections at 24-26, which Plaintiffs already addressed it in their response thereto.  *See* ECF No. 8241 at 19-22.[6]  Otherwise, Defendants offer no alternative data to prove compliance with Recommendation 10.

Thus, there are 19 institutions that Defendants admit have failed to achieve

---

[6] Defendants also argue that "Mr. Hayes has not recommended, nor has the Court ordered, a compliance threshold [of 100 percent] for such findings."  Defs.' Objections at 64.  The language regarding Recommendation 10 in the Special Master's Fifth Re-Audit Report, noted above and adopted by this Court in full, proves this statement is false.  *See* ECF No. 6879 at 24; Jan. 6, 2023 Order, ECF No. 7696 at 21-22; *see also* Special Master's Fourth Re-Audit Report, ECF No. 6879 at 19 (making same recommendation); Dec. 3, 2020 Order, ECF No. 6973 at 12 (adopting Fourth Re-Audit Report in full).

compliance with this recommendation at the 100-percent compliance threshold.  Even if this Court were to find that these institutions' failure to achieve 100-percent compliance in the completion of SRASHEs does not support contempt proceedings, there are still six institutions that have failed to achieve 90-percent compliance: CHCF, CMC, SOL, SATF, NKSP, and RJD.  The following table lists the institutions that have failed to achieve 90-percent compliance:

**Table 6: Recommendation 10 Non-Compliant Institutions (at 90% threshold)**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| CHCF (6/8-9/2023) | 89% compliance | None given | ECF No. 8143-1 at 153. |
| CMC (10/10-11/2023) | 88% compliance | None given | ECF No. 8143- at 255. |
| SOL (9/27-28/2023) | 79% compliance | None given | ECF No. 8143-1 at 252. |
| SATF (6/29-30/2023) | 83% compliance | None given | ECF No. 8143-1 at 175. |
| NKSP (7/11-12/2023) | 88% compliance | None given | ECF No. 8143-1 at 184. |
| RJD (8/21-22/2023) | 76% compliance | None given | ECF No. 8143-1 at 208 |

**F.     Recommendations 12 & 13: Use of Suicide-Resistant Cells for Newly Admitted IPs in Administrative Segregation**

Recommendation 12 states that "CDCR should ensure that there are a **sufficient number of suicide-resistant retrofitted cells** to house newly admitted IPs (i.e., those within their first 72 hours of their housing in the unit) and the IPs of special concern or heightened risk of suicide (e.g. IPs recently released from suicide observation status)." Hayes's Sixth Re-Audit Report at 7 (emphasis in original).  "In order to achieve compliance, CDCR should … ensure that newly-arrived administrative segregation

inmates assigned to single cells are placed in suicide-resistant new intake cells for the first

72 hours of administrative segregation confinement."  Special Master's Fifth Re-Audit

Report, ECF No. 7636 at 25.

Recommendation 13 states that "CDCR should enforce its existing policy of

**housing only newly admitted IPs in retrofitted cells**, and immediately re-house IPs

remaining in the retrofitted cells beyond their first 72 hours."  Hayes's Sixth Re-Audit

Report at 7 (emphasis in original).  "To achieve compliance with the implementation of

this recommendation, defendants must ensure that each audited CDCR facility maintain at

least 90 percent compliance with adequate practices regarding the suicide-resistant housing

of newly admitted inmates into administrative segregation during their first 72 hours of

placement."  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 25.

Together, Recommendations 12 and 13 require that Defendants maintain at least 90

percent compliance with ensuring that 1) newly arrived administration segregation

incarcerated persons assigned to single cells are placed in suicide-resistant new intake cells

for the first 72 hours of confinement, and that 2) those patients are moved out of those cells

to other housing following the first 72 hours of confinement.  For the Sixth Re-Audit,

Mr. Hayes found that 7 of the 20 audited institutions were non-compliant with these

recommendations, because his review revealed that these institutions did not have adequate

practices for housing newly arrived incarcerated persons in administrative segregation.

Hayes's Sixth Re-Audit Report at 19-22.

Defendants attempt to demonstrate compliance by providing data from their 2023

SPRFIT audits.  Defs.' Objections at 40-47.  Their audits purport to show compliance with

Recommendations 12 and 13 at six additional institutions: CIM, CMC, LAC, KVSP,

SVSP, and WSP.  *Id.*

Thus, even if this Court were to accept that Defendants' data prove Defendants'

compliance for those institutions, there is still one institution that Defendants admit has

failed to achieve compliance with this recommendation: RJD.  The following table

demonstrates the current state of Defendants' compliance, with the institutions still out of

compliance (if accepting Defendants' data) in bold:

**Table 7: Recommendations 12 & 13 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| CIM (5/18-19/2023) | Non-compliant | 2/6/23: Non-Compliant 4/4/23: Non-Compliant 7/5/23: Non-Compliant 10/3/23: Compliant | ECF No. 8143-1 at 125; ECF No. 8180-4 at 24, 35, 86, 122. |
| CMC (10/10-11/2023) | Non-compliant | 3/14/23: Compliant 6/14/23: Compliant | ECF No. 8143-1 at 254-55; ECF No. 8180-2 at 19, 48. |
| LAC[7] (8/23-24/2023) | Non-compliant | 1/25/23: Non-Compliant 4/26/23: Non-Compliant 7/27/23: Non-Compliant 10/17/23: Non-Compliant | ECF No. 8143-1 at 216; ECF No. 8180-1 at 24, 104, 187, 251. |
| KVSP (7/13-14/2023) | Non-compliant | 2/13/23: Compliant 5/15/23: Non-Compliant 11/8/23: Compliant | ECF No. 8143-1 at 192-93; ECF No. 8180-1 at 47, 131, 273, 275. |
| SVSP (10/12-13/2023) | Non-compliant | 2/9/23: Compliant 6/28/23: Compliant | ECF No. 8143-1 at 273-74; ECF No. 8180-2 at 8, 64. |
| WSP (4/18-19/2023) | Non-compliant | 5/17/23: Compliant 8/28/23: Compliant 11/13/23: Compliant | ECF No. 8143-1 at 102-03; ECF No. 8180-1 at 154, 208, 293. |

---

[7] Defendants claim that their data shows that LAC was compliant with the "underlying protective purpose of Recommendations 12 and 13—to ensure that new RHU inmates are placed in an intake cell during their first seventy-two hours." Defs.' Objections at 44-45. But Defendants' data show that, in each of the four audits cited, individuals housed in RHUs were inappropriately kept in retrofitted cells past the initial 72 hours. *Id.* at 44 ("CDCR's Region 3 SPRFIT Coordinator visited LAC four times in 2023 and did observe inmates in intake cells beyond seventy-two hours."). Thus, it appears that Defendants' own data show a lack of compliance with this metric. Plaintiffs' response to Defendants' objections to Mr. Hayes's findings regarding LAC's compliance are below. *See* Section IV(C), *infra*.

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| **RJD** (8/21-22/2023) | Non-compliant | None given | ECF No. 8143-1 at 205. |

### G.      Recommendation 17: Adequate Safety Planning Upon Discharge From MHCBs and Alternative Housing

Recommendation 17 states that "CDCR should adopt the recommendations made in connection with SREs (Recommendations 9 and 10) set forth above, which will also improve **safety planning** contained in the SREs section above." Hayes's Sixth Re-Audit Report at 7 (emphasis in original). "To achieve compliance with the implementation of this recommendation, defendants need to implement the new safety planning model and ensure that each audited CDCR facility maintain adequate treatment (safety) plans in at least 90 percent of reviewed cases." Special Master's Fifth Re-Audit Report, ECF No. 7636 at 25-26.

For the Sixth Re-Audit, Mr. Hayes found that 19 of the 21 audited institutions were non-compliant with this recommendation, because those institutions had not achieved 90-percent compliance in developing adequate safety plans for patients discharged from Alternative Housing and/or MHCBs. Hayes's Sixth Re-Audit Report at 40-47.

Defendants make an additional "specific" objection that Mr. Hayes did not audit Defendants' compliance with Recommendation 17 based on the text of Recommendation 17. *See* Defs.' Objections at 67-68. Again, this objection is identical to the objection made in Defendants' "General Objections", *see* Defs.' Objections at 24-26, and Plaintiffs have already responded to this objection in their response to Defendants' General Objections. *See* ECF No. 8241 at 19-22.[8] Otherwise, Defendants offer no alternative data

---

[8] Defendants also argue that "Mr. Hayes has not recommended, nor has the Court ordered, a compliance threshold [of 100 percent] for such findings." Defs.' Objections at 64. The language regarding Recommendation 10 in the Special Master's Fifth Re-Audit Report, noted above and adopted by this Court in full, proves this statement is false. *See* ECF (footnote continued)

to prove compliance with Recommendation 17.

Thus, there are 19 institutions that Defendants admit have failed to achieve compliance with this recommendation: CCI, CCWF, CHCF, CIM, CMC, CMF, COR, LAC, SAC, SOL, SATF, HDSP, KVSP, MCSP, NKSP, PBSP, RJD, SVSP, and WSP. The following table lists the institutions that have failed to achieve compliance, with the relevant data from Mr. Hayes's report:

**Table 8: Recommendation 17 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| CCI (4/20-21/2023) | 1) MHCB discharge: N/A<br>2) Alt Housing discharge: <75% compliance | None given | ECF No. 8143-1 at 116-18. |
| CCWF (11/14-15/2023) | 1) MHCB discharge: 14% compliance<br>2) Alt Housing discharge: 30% compliance | None given | ECF No. 8143-1 at 299-303. |
| CHCF (6/8-9/2023) | 1) MHCB discharge: 60% compliance<br>2) Alt Housing discharge: 17% compliance | None given | ECF No. 8143-1 at 153-55. |
| CIM (5/18-19/2023) | 1) MHCB discharge: 89% compliance<br>2) Alt Housing discharge: N/A | None given | ECF No. 8143-1 at 125-27. |
| CMC (10/10-11/2023) | 1) MHCB discharge: 65% compliance<br>2) Alt Housing discharge: 45% compliance | None given | ECF No. 8143-1 at 255-56. |
| CMF (9/25-26/2023) | 1) MHCB discharge: 15% compliance | None given | ECF No. 8143-1 at 241, 243. |

No. 7636 at 24; Jan. 6, 2023 Order, ECF No. 7696 at 21-22; *see also* Special Master's Fourth Re-Audit Report, ECF No. 6879 at 19 (making same recommendation); Dec. 3, 2020 Order, ECF No. 6973 at 12 (adopting Fourth Re-Audit Report in full).

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| | 2) Alt Housing discharge: <31% compliance | | |
| COR (6/27-28/2023) | 1) MHCB discharge: 87% compliance<br>2) Alt Housing discharge: 22% compliance | None given | ECF No. 8143-1 at 164-65, 167. |
| LAC (8/23-24/2023) | 1) MHCB discharge: 35% compliance<br>2) Alt Housing discharge: 0% compliance | None given | ECF No. 8143-1 at 216-19, 221. |
| SAC (4/4-6/2023) | 1) MHCB discharge: <90% compliance<br>2) Alt Housing discharge: N/A | None given | ECF No. 8143-1 at 93-97. |
| SOL (9/27-28/2023) | 1) MHCB discharge: 65% compliance<br>2) Alt Housing discharge: N/A | None given | ECF No. 8143-1 at 251-52. |
| SATF (6/29-30/2023) | 1) MHCB discharge: 5% compliance<br>2) Alt Housing discharge: 0% compliance | None given | ECF No. 8143-1 at 174, 176 |
| HDSP (10/31/2023-11/1/2023) | 1) MHCB discharge: N/A<br>2) Alt Housing discharge: 20% compliance | None given | ECF No. 8143-1 at 286-88. |
| KVSP (7/13-14/2023) | 1) MHCB discharge: 20% compliance<br>2) Alt Housing discharge: 40% compliance | None given | ECF No. 8143-1 at 193-94. |
| MCSP (6/6-7/2023) | 1) MHCB discharge: 50% compliance<br>2) Alt Housing discharge: 47% compliance | None given | ECF No. 8143-1 at 139-40. |
| NKSP | 1) MHCB discharge: 20% | None given | ECF No. 8143-1 |

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| (7/11-12/2023) | compliance<br>2) Alt Housing discharge: 5% compliance | | at 183-84. |
| PBSP (11/2-3/2023) | 1) MHCB discharge: 25% compliance<br>2) Alt Housing discharge: N/A | None given | ECF No. 8143-1 at 292-94. |
| RJD (8/21-22/2023) | 1) MHCB discharge: 85% compliance<br>2) Alt Housing discharge: <75% compliance | None given | ECF No. 8143-1 at 205-06, 209. |
| SVSP (10/12-13/2023) | 1) MHCB discharge: 25% compliance<br>2) Alt Housing discharge: 10% compliance | None given | ECF No. 8143-1 at 274-77. |
| WSP (4/18-19/2023) | 1) MHCB discharge: <90% compliance (not specified)<br>2) Alt Housing discharge: <87% compliance (not specified) | None given | ECF No. 8143-1 at 103-106. |

### H.     Recommendation 18: Safety Planning Training

Recommendation 18 states that "CDCR should develop a specific timetable for the **training** of its mental health clinicians on treatment planning for the suicidal IP, using its PowerPoint presentation, 'Safety/Treatment Planning for Suicide Risk Assessment.'" Hayes's Sixth Re-Audit Report at 7 (emphasis in original).  "In order to achieve compliance, defendants must ensure that at least 90 percent of mental health clinicians at each audited CDCR facility are compliant with the requirements of the new safety planning training."  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 26.

For the Sixth Re-Audit, Mr. Hayes found that 6 of the 21 audited institutions were non-compliant with this recommendation, because those institutions did not have at least 90 percent of their clinicians complete the required safety plan training.  Hayes's Sixth Re-

Audit Report at 46.

Defendants attempt to demonstrate compliance by providing data from their SPRFIT audits regarding updated safety planning training completion rates for their clinicians.  Defs.' Objections at 69-70.  Their audits purport to show compliance with Recommendation 18 for three additional institutions: CIW, SAC, and WSP.  *Id.*

Thus, even if this Court were to accept that Defendants' data prove Defendants' compliance for those institutions, Defendants admit that they have failed to achieve compliance with this recommendation at three institutions:  SATF, COR, and LAC.  The following table demonstrates the current state of Defendants' compliance, with the institutions still out of compliance (if accepting Defendants' data) in bold:

**Table 9: Recommendation 18 Non-Compliance**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
| --- | --- | --- | --- |
| CIW (5/15-17/2023) | 38% compliance | 11/28/23: 100% compliance | ECF No. 8143-1 at 124; ECF No. 8180-4 at 147. |
| SAC (4/4-6/2023) | 36% compliance | 3/14-17/23: 97% compliance (former safety planning training) 8/1-3/23: 95% compliance 10/18-19/23: 98% compliance | ECF No. 8143-1 at 98-99; ECF No. 8180-5 at 32, 48, 88-89, |
| WSP (4/18-19/2023) | 31% compliance | 5/17-18/23: 89% compliance 8/28-29/23: 96% compliance 11/13-14/23: 100% compliance | ECF No. 8143-1 at 107; ECF No. 8180-1 at 161, 215, 300. |
| **SATF (6/29-30/2023)** | 0% compliance (except 4 supervisors) | None given | ECF No. 8143-1 at 178. |

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| **COR** (6/27-28/2023) | 33% compliance | None given | ECF No. 8143-1 at 168. |
| **LAC** (8/23-24/2023) | 71% compliance | None given | ECF No. 8143-1 at 224. |

### I.  Recommendation 21: Suicide Watch and Suicide Precaution Observation

Recommendation 21 states that "CDCR should enforce its Program Guide requirements authorizing only the two levels of **observation** which may be provided for suicidal IPs: (1) observation at staggered intervals not exceeding every 15 minutes for inmates on Suicide Precaution, and (2) continuous observation for IPs on Suicide Watch." Hayes's Sixth Re-Audit Report at 8 (emphasis in original). "Observation of suicidal patients must be automatic; therefore, 100 percent compliance is required because failure to observe a suicidal patient can result in death by suicide within CDCR facilities. To achieve compliance with the implementation of this recommendation, defendants should ensure that all suicidal patients are always observed on either Suicide Precaution or Suicide Watch at each audited facility." Special Master's Fifth Re-Audit Report, ECF No. 7636 at 27.

For the Sixth Re-Audit, Mr. Hayes found that all 18 of the 18 audited institutions were non-compliant with this recommendation at the 100-percent threshold, and that 8 of the 18 audited institutions were still non-compliant at the 90-percent threshold, because staff at those institutions had not properly observed patients on Suicide Watch and/or Suicide Precaution status. Hayes's Sixth Re-Audit Report at 23-27.[9]

---

[9] Defendants appear to be correct that Mr. Hayes made an error when he wrote that "eight or 56 percent of the facilities … were able to obtain 90 percent or more compliance with both Suicide Precaution and Suicide Watch observation." Defs.' Objections at 48 (quoting (footnote continued)

Defendants also make a "specific" objection, repeating an objection made in their "General Objections" section—that a 100-percent compliance threshold is too stringent. Defs.' Objections at 48-51; *id.* at 14-16. Plaintiffs have already responded to this objection in their response to Defendants' General Objections. *See* ECF No. 8241 at 9-12. Otherwise, Defendants offer no alternative data to prove compliance with Recommendation 21.

Thus, there are 18 institutions that Defendants admit have failed to achieve compliance with this recommendation at the 100-percent compliance threshold. Even if this Court were to adopt a 90 percent threshold, , there are still eight institutions that have failed to achieve 90-percent compliance: CIM, CMC, LAC, COR, KVSP, MCSP, NKSP, and SVSP. The following table lists the institutions that have failed to achieve 90-percent compliance:

**Table 10: Recommendation 21 Non-Compliant Institutions (at 90-Percent Threshold)**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| **CIM** (5/18-19/2023) | 1) Suicide Watch ("SW"): 83% compliance 2) Suicide Precaution ("SP"): 95% compliance | None given | ECF No. 8143-1 at 126. |
| **CMC** (10/10-11/2023) | 1) SW: 84% compliance 2) SP: 98% compliance | None given | ECF No. 8143-1 at 255. |
| **LAC** (8/23-24/2023) | 1) SW: 68% compliance 2) SP: 83% compliance | None given | ECF No. 8143-1 at 219. |
| **COR** (6/27-28/2023) | 1) SW: 72% compliance 2) SP: 89% compliance | None given | ECF No. 8143-1 at 165. |
| **KVSP** | 1) SW: 89% compliance | None given | ECF No. 8143- |

Hayes's Sixth Re-Audit Report at 24). This error appears to be merely typographical, as Mr. Hayes correctly stated in that section that 56 percent (corresponding to 10 of 18) of the facilities were compliant at the 90-percent threshold, and he correctly states elsewhere in the report that 10 institutions were compliant at the 90-percent threshold. *See* Hayes's Sixth Re-Audit Report at 8. Defendants are actually also incorrect when they write that nine institutions are compliant, *see* Defs.' Objections at 48; the appendices show that CHCF was also compliant at the 90-percent threshold, in addition to the nine institutions identified by Defendants. *See* Hayes's Sixth Re-Audit Report at 153.

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| (7/13-14/2023) | 2) SP: 97% compliance | | 1 at 193. |
| MCSP (6/6-7/2023) | 1) SW: 65% compliance 2) SP: 94% compliance | None given | ECF No. 8143-1 at 139. |
| NKSP (7/11-12/2023) | 1) SW: 88% compliance 2) SP: 96% compliance | None given | ECF No. 8143-1 at 183. |
| SVSP (10/12-13/2023) | 1) SW: 80% compliance 2) SP: 99% compliance | None given | ECF No. 8143-1 at 275. |

**J.      Recommendation 28: Custody Checks of IPs Discharged from MHCBs or Alternative Housing**

Recommendation 28 states that "[a]ll IPs discharged from an MHCB or alternative housing, where they had been housed due to suicidal behavior, should be observed at **30-minute intervals by custody staff**, regardless of the housing units to which they are transferred." Hayes's Sixth Re-Audit Report at 8 (emphasis in original). "In order to achieve compliance, defendants should ensure that custody personnel in each audited CDCR facility adequately complete the second page of the two-page 'Discharge Custody Check Sheet' (CDCR MH-7497) form in at least 90 percent of reviewed cases." Special Master's Fifth Re-Audit Report, ECF No. 7636 at 27.

For the Sixth Re-Audit, Mr. Hayes found that 13 of the 20 audited institutions were non-compliant with this recommendation, because the custody staff at those institutions did not accurately complete Page 2 of the "Discharge Custody Check Sheet", where they are required to note that they have observed patients at 30-minute intervals upon their release from an MHCB or alternative housing. Hayes's Sixth Re-Audit Report at 47-50.

Defendants attempt to demonstrate compliance with Recommendation 28 by providing data from their SPRFIT audits regarding this metric. Defs.' Objections at 73-78. Their audits purport to show compliance with Recommendation 28 for six additional

institutions: SQ, MCSP, COR, SATF, KVSP, and HDSP.  *Id.*[10]

Thus, even if this Court were to accept that Defendants' data prove Defendants' compliance for those institutions, there are still seven institutions that Defendants admit have failed to achieve compliance with this recommendation:  SAC, CCI, CHCF, RJD, LAC, SVSP, and CCWF.  The following table demonstrates the current state of Defendants' compliance, with the institutions still out of compliance (if accepting Defendants' data) in bold:

**Table 11: Recommendation 28 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| SQ (5/23-25/2023) | 88% compliance | Feb. 2023: 99.7% compliance Mar. 2023: 94% compliance Apr. 2023: 97% compliance May 2023: 98% compliance June 2023: 98% compliance July 2023: 99% compliance Aug. 2023: 99% compliance | ECF No. 8143-1 at 131; ECF No. 8180-5 at 69. |
| MCSP (6/6-7/2023) | 87% compliance | Sep. 2023: 97% compliance Oct. 2023: 95% compliance Nov. 2023: 94% | ECF No. 8143-1 at 142-43; ECF No. 8180-5 at 98. |

---

[10] Defendants also argue that, even without their own data, five of these institutions (SQ, MCSP, COR, SATF, KVSP), as well as CCWF, should be deemed to be in "substantial compliance" with Recommendation 28, because their compliance rates, according to Mr. Hayes, are 85 percent or above.  Defs.' Objections at 72.  Defendants' definition of "substantial compliance" is incorrect, and there is no basis for the Court to find Defendants compliant at these institutions when those institutions did not reach the court-ordered 90-percent threshold.  *See* Section IV(F), *supra.*

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| | | compliance | |
| COR (6/27-28/2023) | 85% compliance | July 2023: 93.2% compliance Aug. 2023: 92.9% compliance Sep. 2023: 87.5% compliance | ECF No. 8143-1 at 167-68; ECF No. 8180-1 at 332-33. |
| SATF (6/29-30/2023) | 87% compliance | July 2023: 93.4% compliance Aug. 2023: 96.9% compliance Sep. 2023: 98.1% compliance | ECF No. 8143-1 at 177; ECF No. 8180-1 at 355-56. |
| KVSP (7/13-14/2023) | 85% compliance | July 2023: 96.5% compliance Aug. 2023: 97% compliance Sep. 2023: 95.7% compliance | ECF No. 8143-1 at 196; ECF No. 8180-1 at 279. |
| HDSP (10/31/2023-11/1/2023) | 77% compliance | Apr. 2023: 96% compliance May 2023: 100% compliance June 2023: 89% compliance July 2023: 90% compliance | ECF No. 8143-1 at 288; ECF No. 8180-5 at 57. |
| SAC (4/4-6/2023) | 67% compliance | None given | ECF No. 8143-1 at 98. |
| CCI (4/20-21/2023) | 70% compliance | None given | ECF No. 8143-1 at 118-19. |
| CHCF (6/8-9/2023) | 66% compliance | None given | ECF No. 8143-1 at 157. |
| RJD (8/21-22/2023) | 74% compliance | None given | ECF No. 8143-1 at 209. |

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| LAC (8/23-24/2023) | 16% compliance | None given | ECF No. 8143-1 at 222. |
| SVSP (10/12-13/2023) | 62% compliance | None given | ECF No. 8143-1 at 277-78. |
| CCWF (11/14-15/2023) | 87% compliance | None given | ECF No. 8143-1 at 304. |

### K.    Recommendation 29: Clinician Checks of IPs Discharged from MHCBs or Alternative Housing

Recommendation 29 states that "[t]he length of time an IP is observed at 30-minute intervals following MHCB or alternative housing discharge should be **determined on a case-by-case basis by the mental health clinician** and clinically justified in the IP's treatment plan.  No other frequency of observation should be authorized."  Hayes's Sixth Re-Audit Report at 8 (emphasis in original).  "In order to achieve compliance, defendants should ensure that mental health personnel in each audited CDCR facility adequately complete the first page of the two-page 'Discharge Custody Check Sheet' (CDCR MH-7497) form in at least 90 percent of reviewed cases."  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 27-28.

For the Sixth Re-Audit, Mr. Hayes found that 15 of the 20 audited institutions were non-compliant with this recommendation, based on the fact that the mental health personnel at those institutions did not accurately complete Page 1 of the "Discharge Custody Check Sheet," where they are required to note daily that made a clinical judgment as to the continuation of 30-minute checks following the patient's release from MHCBs or alternative housing.  Hayes's Sixth Re-Audit Report at 47-50.

Defendants attempt to demonstrate compliance with Recommendation 29 by providing data from their SPRFIT audits regarding this metric.  Defs.' Objections at 73-78.  Their audits purport to show compliance with Recommendation 29 for six additional

1  institutions:  WSP, MCSP, COR, SATF, KVSP, and NKSP.  *Id.*[11]

2      Thus, even if this Court were to accept that Defendants' data prove Defendants'

3  compliance for those institutions, there are still nine institutions that Defendants admit

4  have failed to achieve compliance with this recommendation:  SAC, CCI, PBSP, RJD,

5  LAC, SVSP, CCWF, CIM, and CMF.  The following table demonstrates the current state of

6  Defendants' compliance, with the institutions still out of compliance (if accepting

7  Defendants' data) in bold:

8  **Table 12: Recommendation 29 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| WSP (4/18-19/2023) | 89% compliance | July 2023: 98% compliance Aug. 2023: 98.6% compliance Sep. 2023: 98.6% compliance | ECF No. 8143-1 at 106-07; ECF No. 8180-1 at 297-98. |
| MCSP (6/6-7/2023) | 89% compliance | Sep. 2023: 97% compliance Oct. 2023: 95% compliance Nov. 2023: 94% compliance | ECF No. 8143-1 at 142-43; ECF No. 8180-5 at 98. |
| **COR**[12] (6/27-28/2023) | 88% compliance | July 2023: 93.2% compliance Aug 2023: 92.9% compliance Sep 2023: 87.5% compliance | ECF No. 8143-1 at 167-68; ECF No. 8180-1 at 332-33. |
| SATF (6/29-30/2023) | 74% compliance | July 2023: 93.4% compliance Aug 2023: 96.9% compliance | ECF No. 8143-1 at 177; ECF No. |

---

[11] As was the case for Recommendation 28, Defendants again argue that, even without their own data, four of these institutions (WSP, MCSP, COR, and KVSP), as well as four other institutions (CCI, CIM, PBSP, and CCWF), should be deemed to be in "substantial compliance" with Recommendation 29, because their compliance rates, according to Mr. Hayes, are 85 percent or above.  Defs.' Objections at 72-73.  As with Recommendation 28, Defendants' definition of "substantial compliance" is incorrect, and there is no basis for the Court to find Defendants compliant at these institutions when those institutions did not reach the court-ordered 90-percent threshold.  *See* Section IV(F), *supra*.

[12] Defendants' own data reveal a compliance rate for this recommendation under 90 percent for the last reported month (September); thus, it appears that their own data show COR to not be in compliance.

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| | | Sep 2023: 98.1% compliance | 8180-1 at 355-56. |
| KVSP (7/13-14/2023) | 87% compliance | July 2023: 96.5% compliance Aug 2023: 97% compliance Sep 2023: 95.7% compliance | ECF No. 8143-1 at 196; ECF No. 8180-1 at 279. |
| NKSP (7/11-12/2023) | 81% compliance | July 2023: 100% compliance Aug 2023: 100% compliance Sep 2023: 99.5% compliance | ECF No. 8143-1 at 187; ECF No. 8180-1 at 313-14. |
| SAC (4/4-6/2023) | 81% compliance | None given | ECF No. 8143-1 at 98. |
| CCI (4/20-21/2023) | 85% compliance | None given | ECF No. 8143-1 at 118. |
| PBSP (11/2-3/2023) | 88% compliance | None given | ECF No. 8143-1 at 297. |
| RJD (8/21-22/2023) | 80% compliance | None given | ECF No. 8143-1 at 209. |
| LAC (8/23-24/2023) | 40% compliance | None given | ECF No. 8143-1 at 222. |
| SVSP (10/12-13/2023) | 74% compliance | None given | ECF No. 8143-1 at 277-78. |
| CCWF (11/14-15/2023) | 85% compliance | None given | ECF No. 8143-1 at 304. |
| CIM (5/18-19/2023) | 87% compliance | None given | ECF No. 8143-1 at 127. |
| CMF (9/25-26/2023) | 48% compliance | None given | ECF No. 8143-1 at 245. |

**L.      Recommendation 31: Effectiveness of Local SPRFITs**

Recommendation 31 states that "CDCR, under the guidance of the Special Master,

1  should re-examine and revise its local **SPRFIT** model to make the local SPRFITs a more

2  effective quality assurance/improvement tool."  Hayes's Sixth Re-Audit Report at 8

3  (emphasis in original).  "In order to achieve compliance, defendants should enact its new

4  SPRFIT 'reboot' process and ensure that each audited CDCR facility maintain at least 90

5  percent compliance with adequate SPRFIT practices that are consistent with the SPRFIT

6  policy."  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 28.  Those practices

7  consist of:

8  > 1) the degree to which SPRFITs achieved six consecutive months of meeting
   > quorums for all mandatory members or their designees; 2) the degree to
9  > which each SPRFIT conducted either semi-annual [root-cause analyses
   > (RCAs)] or clinical case summaries of serious suicide attempts when
10 > appropriate; 3) the degree to which each SPRFIT tracked IPs in the Suicide
   > Risk Management Program (SRMP) and reviewed them during monthly
11 > meetings as required by policy; 4) the degree to which facilities had local
   > operating procedures (for SPRFIT, Inmate-Patients Receiving Bad News,
12 > SRMP and [Crisis Intervention Teams (CITs)]); and 5) the degree to which
   > each SPRFIT tracked prior corrective actions [CAPs] recommended by this
13 > reviewer and/or regional SPRFIT clinicians.

14  Hayes's Sixth Re-Audit Report at 52.

15  For the Sixth Re-Audit, Mr. Hayes found that 14 of the 21 audited institutions were

16  non-compliant with this recommendation, because those institutions had not instituted

17  adequate practices in at least one of those five areas.[13]  Hayes's Sixth Re-Audit Report at

18  50-53.

19  Defendants make a "specific" objection that Mr. Hayes did not audit Defendants'

20  compliance with Recommendation 31 based on the text of Recommendation 31.  *See*

21  Defs.' Objections at 79-81.  Again, this objection is nearly identical to the objection made

22  in Defendants' "General Objections", *see* Defs.' Objections at 24-26, and Plaintiffs have

23  already responded to this objection in their response to Defendants' General Objections.

24  *See* ECF No. 8241 at 19-22.  Otherwise, Defendants offer no alternative data to prove

25  _____

26  [13] Mr. Hayes reported that he conducted an audit of SPRFITs' RCAs or case reviews that
    was "more informal than formal", because the requirement for conducting a case review as
27  an alternative to an RCA did not become effective until June of 2023.  *See* Hayes's Sixth
    Re-Audit Report at 52 n.12.  Mr. Hayes therefore did not include the compliance rate for
28  this metric in his analysis.  *Id.* at 52.

1  compliance with Recommendation 31.

2      Thus, there are 14 institutions that Defendants admit have failed to achieve

3  compliance with this recommendation: MCSP, COR, SATF, KVSP, NKSP, CIW, CCI,

4  PBSP, SOL, LAC, SVSP, CCWF, CHCF, and CMF.  The following table lists the

5  institutions that have failed to achieve compliance, with the relevant data from

6  Mr. Hayes's report:

7  **Table 12: Recommendation 31 Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| MCSP (6/6-7/2023) | 1) Did not track & review SRMP patients 2) Did not track prior CAPs 3) Did not include RCAs or case summaries of serious suicide attempts | None given | ECF No. 8143-1 at 143. |
| COR (6/27-28/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums 2) Did not have LOPs consistent with SPRFIT memo | None given | ECF No. 8143-1 at 168. |
| SATF (6/29-30/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums 2) Did not have LOPs consistent with SPRFIT memo 3) Did not track prior CAPs 4) Did not include RCAs or case summaries of serious suicide attempts | None given | ECF No. 8143-1 at 178. |
| KVSP (7/13-14/2023) | 1) Did not have LOPs consistent with SPRFIT memo 2) Did not track & review SRMP patients | None given | ECF No. 8143-1 at 196-97. |
| NKSP (7/11-12/2023) | 1) Did not track prior CAPs | None given | ECF No. 8143-1 at 187. |

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| CIW (5/15-17/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums<br>2) Did not track & review SRMP patients | None given | ECF No. 8143-1 at 124. |
| CCI (4/20-21/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums<br>2) Did not track & review SRMP patients | None given | ECF No. 8143-1 at 119. |
| PBSP (11/2-3/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums | None given | ECF No. 8143-1 at 297-98. |
| SOL (9/27-28/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums<br>2) Did not track & review SRMP patients | None given | ECF No. 8143-1 at 253. |
| LAC (8/23-24/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums<br>2) Did not include RCAs or case summaries of serious suicide attempts | None given | ECF No. 8143-1 at 223-24. |
| SVSP (10/12-13/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums<br>2) Did not track & review SRMP patients | None given | ECF No. 8143-1 at 278. |
| CCWF (11/14-15/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums | None given | ECF No. 8143-1 at 305. |
| CHCF (6/8-9/2023) | 1) Did not have LOPs consistent with SPRFIT memo<br>2) Did not track & review | None given | ECF No. 8143-1 at 157. |

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
|  | SRMP patients |  |  |
| CMF (9/25-26/2023) | 1) Did not have 6 consecutive months of SPRFIT meeting quorums 2) Did not track & review SRMP patients 3) Did not track prior CAPs | None given | ECF No. 8143-1 at 245-46. |

**M.    Recommendation 32A: MHCB Practices for Inmate-Patient Possessions and Privileges**

Recommendation 32 states that "CDCR, under the guidance of the Special Master, should examine and consider taking reasonable corrective actions to address these miscellaneous issues: **Possessions and Privileges for IPs in MHCBs, Continuous Quality Improvement, and Reception Centers**."  Hayes's Sixth Re-Audit Report at 8-9 (emphasis in original).  For the first part of this recommendation regarding possessions and privileges for patients in MHCBs, "[i]n order to achieve compliance, defendants should ensure that each audited CDCR facility with a MHCB unit maintain at least 90 percent compliance with adequate practices regarding possessions and privileges afforded MHCB patients as required by policy."  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 28.

For the Sixth Re-Audit, Mr. Hayes found that 12 of the 18 audited institutions with MHCBs were non-compliant with this subpart of Recommendation 32, because those 12 institutions did not have adequate practices in the provision of clothing, possessions, and privileges (i.e., out-of-cell activities) provided to MHCB patients.  Hayes's Sixth Re-Audit Report at 27-34.

Defendants object in part to Mr. Hayes's findings regarding three institutions (SAC, CIM, and CHCF), arguing that Mr. Hayes improperly found those three institutions non-compliant based on those institutions not offering enough yard time.  Defs.' Objections at

52-53.  Plaintiffs respond to this objection in the section below.  *See* Section IV(H), *infra*.  In addition, Defendants attempt to demonstrate compliance by providing data from their SPRFIT audits regarding this compliance metric.  Defs.' Objections at 53-60.  Their audits purport to show compliance with Recommendation 7 for those three institutions (SAC, CIM, and CHCF), as well as four other institutions: WSP, CIW, SATF, and CCWF.  *Id.*

Thus, even if the Court were to accept Defendants' arguments regarding minimum out-of-cell time, and if the Court were to agree that Defendants' data prove Defendants' compliance for those institutions, there are still five institutions that Defendants admit have failed to achieve compliance with this recommendation: COR, KVSP, PBSP, CMF, and RJD.  The following table demonstrates the current state of Defendants' compliance, with the institutions still out of compliance (if accepting Defendants' data and/or arguments) in bold:

**Table 13: Recommendation 32A Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| **COR** (6/27-28/2023) | Noncompliant with providing sufficient out-of-cell activities | None given | ECF No. 8143-1 at 166-67. |
| SATF (6/29-30/2023) | Noncompliant with providing sufficient out-of-cell activities | 3/23/23: Non-compliant 9/20/23: Non-compliant 12/14/23: Compliant | ECF No. 8143-1 at 176; ECF No. 8180-1 at 74-75, 229, 352. |
| **KVSP** (7/13-14/2023) | Noncompliant with providing sufficient out-of-cell activities | None given | ECF No. 8143-1 at 194. |
| CCWF (11/14-15/2023) | Noncompliant with providing sufficient out-of-cell activities | 2/22/24: Compliant | ECF No. 8143-1 at 302-03; ECF No. 8180-2 at 136. |

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| CIW (5/15-17/2023) | Noncompliant with providing sufficient out-of-cell activities | 1/24/23: Compliant 4/18/23: Compliant 7/11/23: Non-compliant 11/28/23: Compliant | ECF No. 8143-1 at 122-23; ECF No. 8180-4 at 10, 68-69, 103, 140. |
| CHCF (6/8-9/2023) | Noncompliant with providing sufficient out-of-cell activities | 3/9/23: Compliant 11/2/23: Compliant 1/16/24: Compliant | ECF No. 8143-1 at 155; ECF No. 8180-2 at 36, 96, 123. |
| **PBSP** (11/2-3/2023) | Noncompliant with providing sufficient out-of-cell activities | None given | ECF No. 8143-1 at 293-94. |
| CIM (5/18-19/2023) | Noncompliant with providing sufficient out-of-cell activities | 2/6/23: Compliant 4/4/23: Compliant 7/7/23: Compliant 10/3/23: Compliant | ECF No. 8143-1 at 126-27; ECF No. 8180-4 at 26, 37, 88, 124. |
| **CMF** (9/25-26/2023) | Noncompliant with providing sufficient out-of-cell activities | None given | ECF No. 8143-1 at 242-43. |
| SAC (4/4-6/2023) | Noncompliant with providing sufficient out-of-cell activities | 3/14-17/23: Non-compliant 8/1-3/23: Compliant 10/18-19/23: Compliant | ECF No. 8143-1 at 95; ECF No. 8180-5 at 28, 43, 84-85. |
| **RJD** (8/21-22/2023) | Noncompliant with providing sufficient out-of-cell activities | None given | ECF No. 8143-1 at 208-09. |

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| WSP (4/18-19/2023) | Noncompliant with providing sufficient out-of-cell activities | 5/17/23: Non-compliant 8/28/23: Non-compliant 11/13/23: Compliant | ECF No. 8143-1 at 104; ECF No. 8180-1 at 157, 211, 296. |

### N.    Recommendation 32B: Continuous Quality Improvement ("CQI")

For the second part of Recommendation 32, "[i]n order to achieve compliance, two steps are required.  First, defendants should incorporate all of Mr. Hayes's 19 Suicide Prevention Audit Checklist measures into their CQI guidebook(s).  Second, any CQI audit report of a facility's suicide prevention practices should be formatted to contain data on all 19 suicide prevention measures."  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 28-29.

For the Sixth Re-Audit, Mr. Hayes found that Defendants were not in compliance with this subpart of Recommendation 32 because Defendants' *Suicide Prevention On-Site Guidebook* had not been "fully implemented" and because the "quarterly regional SPRFIT on-site reviews are not always timely and do not always include the required 19 suicide prevention measures."  Hayes's Sixth Re-Audit Report at 11.  Mr. Hayes also levied several other criticisms of Defendants' CQI process, including: the fact that many deficiencies observed during his assessment should have been observed and corrected by regional SPRFIT coordinators; the fact that Defendants are not conducting quarterly SPRFIT audits, as pledged in their January 2023 "Report on the Status of Outstanding Suicide Prevention Recommendations; and the fact that several of the 57 SPRFIT audits that were completed contained deficiencies."  *Id.* at 57-63.

Defendants make several objections to Mr. Hayes's findings of non-compliance, to which Plaintiffs respond more substantively below.  *See* Section IV(I), *infra*.  Given the many issues that Mr. Hayes identifies with Defendants' CQI process, the Court should not

1  "find CDCR fully compliant with this recommendation," as Defendants request.  Defs.'

2  Objections at 101.  However, because Mr. Hayes's report on Defendants' CQI process

3  goes beyond the steps that the Special Master laid out for Defendants to achieve

4  compliance in the Fifth Re-Audit, *see* ECF No. 7636 at 28-29, Plaintiffs do not now seek

5  contempt proceedings for this subpart of Recommendation 32.

6  **O.  Recommendation 32C: Reception Center Practices**

7  For the third part of Recommendation 32, Defendants were directed that:

> In order to achieve compliance, defendants should provide verification to the Special Master that all reception center facilities are aware of their suicide prevention responsibilities.  Those responsibilities include the following: (1) placement of suicide prevention posters in the offices utilized for direct patient care by reception center nurses and diagnostic clinicians, as well as reception center housing unit bulletin boards and pill call windows; (2) diagnostic clinicians being required to review the nurse's Initial Health Screening form, any county jail records, and other pertinent document contained within the Electronic Health Records System and the Strategic Offender Management System for each inmate; (3) diagnostic clinicians completing the Mental Health Screening Interview form are to request that the inmate sign a CDCR 7385 Authorization for Release of Protected Health Information (or ROI) form during the screening process if a prior history of mental health treatment is reported; and (4) diagnostic clinicians completing the Mental Health Screening Interview form are required to complete a SRASHE if the screening and/or inmate's behavior suggests a possible current risk for suicide.

17  Special Master's Fifth Re-Audit Report, ECF No. 7636 at 29.

18  For the Sixth Re-Audit, Mr. Hayes found that all three of the audited Reception

19  Centers (RCs) were non-compliant with this subpart of Recommendation 32, based on the

20  fact that clinicians at all three of those institutions had issues with conducting a thorough

21  review of nursing intake forms and county jail records, as well as issues with requesting a

22  signed release-of-information form during the screening process for patients with a

23  reported mental health history Hayes's Sixth Re-Audit Report at 67-69.

24  Defendants make no objections regarding this subpart of Recommendation 32

25  except to provide alternative data regarding the compliance of one institution, WSP, and

26  only by the time of the SPRFIT Coordinator's third 2023 audit of WSP.  Defs.' Objections

27

28

1  at 101-103.[14]

2        Thus, even if the Court were to agree that Defendants' data prove Defendants'

3  compliance for WSP, there are still RCs that Defendants admit have failed to achieve

4  compliance with this recommendation: CCWF and NKSP.  The following table

5  demonstrates the current state of Defendants' compliance, with the institutions still out of

6  compliance (if accepting Defendants' data) in bold:

7  **Table 14: Recommendation 32C Non-Compliant Institutions**

| Institution (Date of Audit) | Lindsay Hayes's Findings | Defendants' Alternative Data | Citation |
|---|---|---|---|
| WSP (4/18-19/2023) | Noncompliant with appropriate Reception Center practices | 5/17/23: Non-compliant 8/28/23: Non-compliant 11/13/23: Compliant | ECF No. 8143-1 at 102; ECF No. 8180-1 at 161-62, 216, 301. |
| **CCWF** (11/14-15/2023) | Noncompliant with appropriate Reception Center practices | None given | ECF No. 8143-1 at 298-99. |
| **NKSP** (7/11-12/2023) | Noncompliant with appropriate Reception Center practices | None given | ECF No. 8143-1 at 181-83. |

## II.   THE COURT'S SECOND QUESTION:  THE COURT SHOULD DIRECT MR. HAYES TO RE-AUDIT COMPLIANCE WITH RECOMMENDATIONS AT INSTITUTIONS WHERE THERE IS A FACTUAL DISPUTE REGARDING COMPLIANCE

*Do any of defendants' specific objections suggest the need for a further re-audit by Mr. Hayes as to one or more of the outstanding recommendations.  If so, which ones, and what is the most expeditious and fully effective method for completing any necessary re-audit?*

---

[14] Notably, while Defendants only mention the November SPRFIT audit in their objections, their own May and August audits of WSP's Reception Center practices show that WSP was non-compliant with this subpart of Recommendation 32 at these times.  *See* Mintz Decl., ECF No. 8180-1 at 161-162 (May audit), 216 (Aug. audit).

The Court should direct Mr. Hayes to re-audit and issue reports on an institution-by-institution basis regarding compliance with each of the recommendations at each institution for which there is a factual dispute regarding compliance.  The Court should move forward with contempt proceedings on all other recommendations where there are no factual disputes regarding non-compliance.[15]

The table below lists the recommendations for which there is a factual dispute organized by institution—the institutions and recommendations that Mr. Hayes should re-audit.

**Table 15:  Factual Disputes Regarding Compliance Organized by Institution**

| Institution | Recommendations Involving Factual Disputes Regarding Compliance |
| --- | --- |
| CCI | Recommendations 8, 9 |
| CCWF | Recommendation 32A |
| CIM | Recommendations 12, 13, 32A |
| CIW | Recommendations 18, 32A |
| CHCF | Recommendation 32A |
| CMC | Recommendations 3, 12, 13 |
| CMF | Recommendation 3 |
| COR | Recommendations 28, 29 |
| HDSP | Recommendations 3, 28 |
| KVSP | Recommendations 12, 13, 28, 29 |
| LAC | Recommendations 12, 13 |
| MCSP | Recommendations 3, 28, 29 |
| NKSP | Recommendation 29 |

---

[15] The institutions where non-compliance is factually undisputed and is ripe for contempt proceedings is listed in the column titled "Institutions Where Non-Compliance is Factually Undisputed" in Table 1 in Section I above.

| Institution | Recommendations Involving Factual Disputes Regarding Compliance |
|---|---|
| SAC | Recommendations 18, 32A |
| SATF | Recommendations 3, 28, 29, 32A |
| SVSP | Recommendations 3, 8, 12, 13 |
| SQ | Recommendations 7, 28 |
| WSP | Recommendations 12, 13, 29, 32A, 32C |

These audits should include on-site tours, as is the standard practice for Mr. Hayes's audits, except for those institutions where Mr. Hayes determines that he can effectively audit compliance with recommendations remotely.  The Court should also order that all parties are permitted to attend and observe these audits.  This process would establish a clear and recent shared factual basis from which the Court and the parties can move forward with contempt proceedings on an institution-by-institution basis for non-compliance identified through these audits.  This approach would allow the parties to focus on the steps necessary to bring about compliance rather than litigating predicate factual disputes.

The Court can structure this process in a variety of ways.  The Court could direct Mr. Hayes to first audit institutions with the largest number of factual disputes regarding compliance, starting with KVSP, SATF, SVSP, and WSP.  Alternatively, the Court could direct Mr. Hayes to first re-audit the institutions with the largest number of suicides in recent years, starting with SAC, SVSP, CCI, and KVSP.  Not. of Submission of the CDCR's Revised 2022 Annual Suicide Report (June 7, 2024), ECF No. 8264 at 79-80.  Plaintiffs recommend the latter—prioritizing the institutions with the most suicides over the last decade.  The Court should also adopt timelines for the individual institution audit draft reports, comments on the draft reports, and final versions of the reports.

In order to assure that Defendants' compliance with these life-saving recommendations is both durable and sustainable, it is important that Mr. Hayes continue to monitor even institutions that are not in contempt of Court.  Defendants, unfortunately,

1  are not ready to self-monitor in this area, as many of the CQI indicators concerning

2  compliance with these recommendations are not remediated.  Tr. 4/26/23 at 36:9-37:18.

3  The Court should thus direct Mr. Hayes to attend and monitor Regional SPRFIT audits and

4  to prepare a report and recommendations about that process, already part of

5  Recommendation 32.  Hayes's Sixth Re-Audit Report at 8-9.

6  **III.  DEFENDANTS' NON-COMPLIANCE WITH CERTAIN SPECIFIC RECOMMENDATIONS IS ATTRIBUTABLE IN PART, BUT NOT SOLELY, TO THE ONGOING MENTAL HEALTH UNDERSTAFFING THE COURT IS ADDRESSING IN SEPARATE ORDERS.**

7

8       *Is defendants' non-compliance with one or more of the specific recommendation(s)*

9       *attributable to the ongoing mental health understaffing the court is addressing in*

10      *separate orders so as to suggest the non-compliance with a recommendation is*
        *solely a consequence of defendants' contempt of the court's orders to remedy*
        *mental health understaffing in California's prisons?*

11

12       The answer to the Court's third question is no:  Clinical understaffing contributes to

13  Defendants' non-compliance with Recommendations 3, 9, 10, 17, 18, 29, 31, and 32B.

14  Other factors contribute as well.

15       In contrast, Defendants' non-compliance with Recommendations 7, 8, 12, 13, 21,

16  28, 32A, and 32C appears to be independent of clinical understaffing.  Plaintiffs address

17  the recommendations that are linked to clinical understaffing below.

18       **A.     Recommendation 3: Suicide Prevention Training**

19       In the Sixth Re-Audit Report, Mr. Hayes concludes that "staff shortages negatively

20  impacted compliance with annual suicide prevention training (for medical staff)."  Hayes's

21  Sixth Re-Audit Report at 14.  Mr. Hayes's conclusion is consistent with extensive

22  evidence that Defendants' failure to complete *other* mandatory trainings is, in significant

23  part, a product of understaffing.  *See* Subsection III(B) below.

24       **B.     Recommendation 9: Suicide-Risk Evaluation Training**

25       Extensive evidence shows the connection between clinical understaffing and

26  Defendants' non-compliance with Recommendation 9, which relates to SRE training and

27  SRE mentoring.   For example, Mr. Hayes reports in his Sixth Re-Audit that, "[a]ccording

28  to local mental health leadership at local facilities," the "regression" in their institutions'

compliance with Recommendation 9 is "not surprising" and is "attributable to systemwide clinical staff shortages and prioritization of other suicide prevention responsibilities." Hayes's Sixth Re-Audit Report at 37.  Defendants' own Annual Suicide Report for 2022 includes similar findings linking non-compliance with Recommendation 9 to systemwide understaffing, *see* ECF No. 8064 at 12, 15, 18—a conclusion that CDCR's Deputy Director of Statewide Mental Health, Dr. Amar Mehta, agreed with during his testimony at the staffing contempt hearing in October 2023.  *See* Tr. 10/4/23 at 138:9-139:4.  In addition, certain evidence that Defendants submitted with their objections to the Sixth Re-Audit links their non-compliance at CMC and CMF to mental health understaffing.  *See* Declaration of Heather Stahl, ECF No. 8180-2 ("Stahl Decl.") at 26, 54-55 (Regional SPRFIT audit connecting non-compliance with SRE Mentoring requirements to "staffing shortages at CMC"); Declaration of Joseph H. Obegi, ECF No. 8180-5 ("Obegi Decl.") at 121 (Regional SPRFIT audit noting that compliance with training requirements was "uneven and a consequence of critical staffing levels").

Other factors also contribute.  For example, Mr. Hayes reports that, although the Chief of Mental Health at RJD informed him that an outdated form "was only being utilized" at RJD "due to the current staffing shortage" there, Mr. Hayes reports that "all other facilities" have prohibited the use of this form except as a supplement to the required one—despite the existence of severe staffing shortages at many of these facilities.  Hayes's Sixth Re-Audit Report at 38-39.  The fact that other facilities with severe staffing shortages nevertheless managed to use the correct form shows that factors other than staffing shortages also contributed to RJD's non-compliance in this area.

## C.      Recommendation 10: Completion of Suicide-Risk Evaluations

Mr. Hayes has recommended that the accurate and timely completion of SRASHEs should be aided by proper oversight from local SPRFIT audits, and he also found that local SPRFITs have historically failed to review whether SRASHEs are consistently being completed for all mental health referrals related to suicidal ideation.  *See* Hayes's Sixth Re-Audit Report at 7, 35-36.  Recommendation 10 saw only 2 of 21 institutions achieve

1   100 percent compliance, and the Sixth Re-Audit described untimely and/or poor quality

2   local SPRFIT audits at several institutions, including CMF and SVSP, where Mr. Hayes

3   described those issues as being connected to staffing shortages.  *See id.* at 246, 285.  In

4   addition, as noted above, the Sixth Re-Audit links the widespread use of an outdated SRE

5   form at RJD to clinical understaffing.  *Id.* at 38-39.  Defendants also included evidence in

6   their objections that links staffing shortages at SATF and LAC to the high percentages of

7   SRASHEs being conducted in non-confidential settings at those institutions.  *See*

8   Declaration of Sean Mintz, ECF No. 8180-1 at 109-10 (noting "protracted clinical staffing

9   shortage" at LAC and concluding that "it is possible" this shortage made it "difficult to

10  offer confidential contacts consistently"); *id.* at 229 (similar findings at SATF).

11      **D.      Recommendations 17: Adequate Safety Planning Upon Discharge From
            MHCBs and Alternative Housing**

12

13      Extensive evidence links Defendants' non-compliance with Recommendation 17 to

14  systemwide shortages of clinical staff or shortages of these staff at specific institutions.

15  *See, e.g.*, Hayes's Sixth Re-Audit Report at 14 (CMF and SVSP), 45-46 (RJD), 135 (CMF)

16  141-42 (MCSP), 245 (CMF); *see also* Mintz Decl., ECF No. 8180-1 at 312 (limited or no

17  supervisory review of discharge safety plans at NKSP due to clinical staffing shortages),

18  338 (COR); Stahl Decl., ECF No. 8180-2 at 10, 66 (similar findings at SVSP), 49-50

19  (similar findings at CMC); Declaration of Nina Hudspeth, ECF No. 8180-4 ("Hudspeth

20  Decl.") at 87 (similar findings at CIM); Obegi Decl., ECF No. 8180-5 at 108, 115 (similar

21  findings at CMF); Defs.' Amended 2022 Annual Suicide Rpt, ECF No. 8264 at 15 (noting

22  headquarters decision not to require use of MHCB chart-auditing tool at any institution due

23  to staffing shortages); Tr. 10/4/23 at 139:5-140:10 (same).

24      Other factors also contribute for at least two institutions.  *See* Hayes's Sixth Re-

25  Audit Report at 45-46 (reporting "myriad of reasons for noncompliance" at RJD, including

26  staff ignorance of relevant requirements in addition to understaffing); Hudspeth Decl.,

27  ECF No. 8180-4 at 87 ("CIM reported various barriers" to compliance, including "staffing

28  and scheduling").

1

**E.      Recommendation 18: Safety Planning Training**

2      Mr. Hayes has not reported a link to understaffing for Recommendation 18.  The

3  other training requirements, however, are closely linked with understaffing, such as the

4  SRE mentoring and training requirements in Recommendation 9, *see* Section III(B), *supra*.

5  Training requires adequate staff to conduct the training and to provide relief for those

6  attending the training.  It is reasonable to infer that understaffing contributes to failures in

7  Safety Planning Training, just as with the other required trainings.

8

**F.      Recommendation 29: Clinician Checks of IPs Discharged from MHCBs
         or Alternative Housing**

9

10      Mr. Hayes has not reported a link between staffing and non-compliance with

11  Recommendation 29.  Mr. Hayes has, however, linked staffing to the related

12  documentation obligations of mental health clinicians at and/or shortly after the time of a

13  patient's discharge from a crisis bed.  *See, e.g.*, Section III(D), *supra*.  It is therefore

14  reasonable to infer that Defendants' clinical understaffing is a contributing factor to their

15  non-compliance with Recommendation 29 as well.

16

**G.      Recommendation 31: Effectiveness of Local SPRFITs**

17      Defendants' declarations link staffing to their non-compliance with

18  Recommendation 31 at three institutions.  *See, e.g.*, Obegi Decl., ECF No. 8180-5 at 107

19  (due to clinical understaffing at CMF, "the ability of the SPRFIT committee to monitor

20  and respond to deficiencies is severely impeded"); Stahl Decl., ECF No. 8180-2 at 7, 63

21  (multiple audits reporting no designated SPRFIT coordinator at SVSP due to

22  understaffing); Mintz Decl., ECF No, 8180-1 at 356 (no permanent SPRFIT coordinator at

23  SATF due to understaffing, and "back-up" coordinator unable to collect and present

24  relevant information during SPRFIT meetings).

25

**H.      Recommendation 32B: Continuous Quality Improvement**

26      Extensive evidence links Defendants' clinical understaffing to their non-compliance

27  with the portions of Recommendation 32 that relate to Continuous Quality Improvement.

28  *See, e.g.*, Hayes Sixth Re-Audit Report at 13-14 (noting that "several chart audit tool

1    assessments for suicide prevention" were either "'paused' or declared as 'optional'

2    because of the staffing shortage," and that clinical vacancies "negatively impacted" several

3    other "CQI efforts" as well); ECF No. 8064 at 12, 15, 18 (similar findings in Defendants'

4    2022 Annual Suicide Report); Tr. 10/4/23 at 138:2-140:10 (similar testimony from

5    Dr. Mehta during the staffing contempt hearing in October 2023); *see also* Hayes's Sixth

6    Re-Audit Report at 142 (reporting statement of MHCB supervisor at MCSP that "Due to

7    critical staffing and coverage needs CQIT No. 13 MHCB/PIP: Supervisory Review of

8    MHCB Discharge Safety Plans were not completed during part of January 2023 through

9    April 1, 2023").

10   **IV.   ADDITIONAL RESPONSE TO SECTION IV OF DEFENDANTS'
           OBJECTIONS**

11

12          Defendants make several other objections that were not addressed by Plaintiffs'

13   response to the three questions put forth in the Court's May 16, 2024 order.  This section

14   addresses those objections for each recommendation.

15          **A.   Recommendations 7 and 8: Defendants Repeat Objections that the
                  Court Should Once Again Reject**

16

17          Apart from providing additional data, Defendants make two "specific" objections to

18   the Special Master's findings regarding Recommendations 7 and 8: (1) that Mr. Hayes

19   improperly found CHCF, CMC and SQ non-compliant with those recommendations

20   because he judged those institutions based on criteria that was not part of the text of those

21   recommendations, and (2) that Mr. Hayes findings of noncompliance for the eight

22   institutions highlighted were "based on statistically insignificant samples to draw the

23   conclusion" of systemic noncompliance.  Defs.' Objections at 29-30.  As noted above, *see*

24   Sections I(B) & I(C), *supra*, the first objection is identical to an objection made by

25   Defendants in their "General Objections", *see* Defs.' Objections at 24-26 to which

26

27

28

1   Plaintiffs have already responded.  *See* ECF No. 8241 at 19-20.[16]  As for the second

2   objection, Defendants made an identical objection in their response to the Special Master's

3   Fifth Re-Audit Report.  S*ee* ECF No. 7654 at 7 (citing Mr. Hayes's analysis of

4   Recommendations 7 and 8 in arguing that "[s]uch an alleged, isolated and de minimis

5   occurrence cannot equate to institutional noncompliance, much less systemic

6   noncompliance").  The Court previously overruled that objection, as the Court found that

7   Mr. Hayes's findings "are more than sufficient to support his conclusion that defendants

8   have not yet fully implemented recommendations 7 and 8."  Jan. 6, 2023 Order, ECF

9   No. 7696 at 20.  Mr. Hayes has judged Defendants' compliance with these

10  recommendations by observing the practices taking place at CDCR institutions during his

11  site visits for nearly a decade, and Defendants bring forth no new authority to support their

12  position that this monitoring is improper.  The Court should reaffirm its previous ruling

13  and overrule Defendants' objection.

14   **B.      Recommendation 10: Defendants' Objection to Mr. Hayes's Criticism of
              the Use of the Columbia Suicide Risk Assessment Is Misplaced**

15

16       Defendants complain that Mr. Hayes improperly criticized the use of the Columbia-

17  Suicide Severity Rating Scale (C-SSRS) suicide screening tool during emergent/urgent

18  mental health referrals at RJD—where Mr. Hayes found that clinicians were at times using

19  this screening tool in place of the mandated Suicide Risk Assessment and Self-Harm

20  Evaluation (SRASHE) "due to the current staffing shortage at RJD."  Defs.' Objections at

21  66; Hayes's Sixth Re-Audit Report at 38-39.  Even though Defendants admit that "the

22  Program Guide requires a SRASHE", they attempt to evade this requirement by citing to

23  the opinion of their hired expert, Dr. Joel Andrade, that the "use of the [C-SSRS] as a

24

25  _____

26  [16] As noted above, *see* Sections I(D), I(E), I(G), & I(L), *supra*, Defendants also made
    identical "specific" objections regarding Recommendations 9, 10, 17 and 31 in their
    section on "General Objections", in which they argued that the Court should find CDCR to

27  be in compliance with these recommendations because Mr. Hayes did not conduct his audit
    based on the text of those recommendations.  Having already responded to this argument,

28  *see* ECF No. 8241 at 19-20, Plaintiffs do not repeat that response here.

1  screening tool is clinically appropriate." Defs.' Objections at 66. But Dr. Andrade's

2  opinion fails to make the distinction—as Mr. Hayes does—between the use of the C-SSRS

3  as a screening tool *in general* and the use of the C-SSRS for someone who is currently

4  expressing suicidal ideation or is otherwise at a high risk of suicide. *See* Hayes's Sixth Re-

5  Audit Report at 38 n.10; Declaration of Dr. Joel T. Andrade, ECF No. 8180-3 at 13. As

6  Mr. Hayes noted in his report, the C-SSRS was only permitted as a suicide screening tool

7  for someone expressing suicidal ideation as an emergency measure following the onset of

8  COVID-19. Hayes's Sixth Re-Audit Report at 38-39. Following the return of normal

9  operations in July 2022, CDCR staff were no longer permitted to use the C-SSRS,

10  precisely because the parties agreed that the SRASHE is a more comprehensive and

11  appropriate screening measure than the C-SSRS for someone who is a danger to

12  themselves. *Id.* Moreover, Dr. Andrade's opinion about whether C-SSRS is a clinically

13  appropriate screening tool is irrelevant and should be excluded, *see* Plaintiffs' Evidentiary

14  Objections to Defendants' Objections to Special Master's Sixth Re-Audit Report at 5-6;

15  the Program Guide is the court-approved remedy and requires that staff utilize CDCR's

16  standardized SRASHE in these circumstances, *see* ECF No. 7333-1 at 175, so Dr.

17  Andrade's opinion about its efficacy is besides the point.

18  　　Apparently recognizing this fact, Defendants make a second argument that

19  Mr. Hayes was wrong to say that the use of the C-SSRS was "a violation of CDCR

20  directives", since the Program Guide permits clinicians to opt not to complete a new

21  SRASHE and instead simply document no change in suicide risk when a patient who has

22  previously reported suicidal ideation continues to express suicidal ideation but without

23  intent or a plan. Defs.' Objections at 66. They claim that this provision implies that the

24  use of the unsanctioned C-SSRS in circumstances like this is appropriate, and that

25  Mr. Hayes therefore had no basis to criticize its use. *Id.* But Defendants' argument

26  attempts to obscure the fact that Mr. Hayes's findings at RJD for this recommendation focus

27  on clinical staff's assessments made during *emergent or urgent mental health referrals*,

28  rather than in the scenario that Defendants describe. Mr. Hayes reported that RJD clinicians

1   inappropriately used the C-SSRS screening form in 14 percent of reviewed emergent/urgent

2   mental health referrals, and that RJD's Chief of Mental Health had informed him that

3   clinicians were using the C-SSRS not because they were merely documenting a lack of

4   change in suicide risk, but because RJD was understaffed and they were resorting to the use

5   of this less-intensive, unsanctioned screening tool as a result.  Hayes's Sixth Re-Audit

6   Report at 38-39.  Mr. Hayes was correct to criticize RJD's use of the C-SSRS as a violation

7   of Program Guide directives, and Defendants' objection is without merit.

8       **C.**    **Recommendations 12 and 13: Mr. Hayes Rightfully Audited LAC's Compliance with this Recommendation Through Both Visual**

9                 **Observation and Record Review**

10         Defendants complain that Mr. Hayes improperly audited LAC's compliance in

11   ensuring that patients newly admitted to RHUs are housed in suicide-resistant intake cells

12   for the first 72 hours (Recommendations 12 and 13).  Defs.' Objections at 44.  They argue

13   that Mr. Hayes's observation that he could not confirm the new-intake status of patients

14   housed in the short-term restrictive housing unit ("STRH") because the unit did not have any

15   "ASU Door Tags" was inappropriate because those recommendations do not require the

16   presence of "ASU Door Tags" on intake cells.  *Id.*  They also argue that Mr. Hayes's

17   confirmation that patients had been improperly housed in the C-5 Administrative

18   Segregation Unit ("ASU") overflow unit—where there are no suicide-resistant intake cells—

19   through a record review was inappropriate, because record reviews are not permitted by the

20   remediated audit measure.  *Id.*

21         The Court should overrule these objections because Mr. Hayes was right to audit

22   LAC's compliance in this fashion.  Recommendation 13 requires that an institution move a

23   newly admitted patient from a retrofitted intake cell after 72 hours in order to free space

24   for other, newly-admitted patients, and Mr. Hayes was merely pointing out that it was

25   impossible to know whether LAC was compliant with this recommendation without any

26   information that designated when a patient had arrived on the unit—which is what the

27   "ASU Door Tags" show.  *See* Hayes's Sixth Re-Audit Report at 216.  As for Mr. Hayes's

28   record review, even if the remediated audit calls for a site visit of the intake cells, there is

1    nothing that prevents Mr. Hayes from supplementing his site visit with a record review.

2    Mr. Hayes inquired of LAC staff as to whether this unit, which was not equipped to house

3    new intakes, did in fact house new intakes, and LAC staff informed him that the records

4    showed at least three new intake patients being placed in these unsafe cells.  *Id.*  To have

5    Mr. Hayes ignore this record of noncompliance merely because the remediated audit

6    measure requires *Defendants'* auditors to have a visual inspection of the cells defies

7    common sense.

8        **D.    Recommendation 18: The Court Should Reject Defendants' Argument
              that Their Staff Was Not Required to Complete Safety Planning
9              Training Until June 2023**

10       Defendants argue that Mr. Hayes should not have found any institution non-

11   compliant with the requirement that their staff complete safety plan training

12   (Recommendation 18) before June 16, 2023, because their staff was not expected to

13   complete that training before that date.  Defs.' Objections at 68.  But Defendants' delay in

14   ensuring that their staff complete safety plan training is no one's fault but Defendants'.

15   Defendants had previously agreed with Mr. Hayes's findings that CDCR's previously-

16   implemented Safety Planning Intervention model was problematic and needed to be

17   replaced, and CDCR officials began revision of that process as early as August 2020.

18   Hayes's Sixth Re-Audit Report at 40-41.  Although the new safety planning program was

19   estimated to be completed by May 2021, multiple delays ensued, and CDCR's new "Safety

20   Planning" policy was not finally made effective until February 13, 2023.  *Id.*  Defendants'

21   own delay in implementing the new safety planning model made timely completion of the

22   training more difficult.  That does not excuse their non-compliance with the April 1, 2023

23   deadline.  *See* Feb. 28, 2023 Order, ECF No. 7743 at 4-5.  The Court should overrule

24   Defendants' objection.

25       **E.    Recommendation 21: Mr. Hayes's Recommendation of a CAP to
              Address Suicide Observation Issues at KVSP and RJD was Proper**
26

27       Defendants ask the Court to reject Mr. Hayes's recommendation that the Court

28   order Defendants to develop a Corrective Action Plan ("CAP") for KVSP and RJD

1   because his conclusions about their non-compliance were allegedly incorrect.  Defs.'

2   Objections at 51-52.  Specifically, they contend that Mr. Hayes's criticism of clinicians at

3   KVSP and RJD failing to move patients experiencing suicidal ideation to Suicide

4   Precaution (SP) or Suicide Watch (SW) is not valid because the Program Guide only

5   requires that clinicians move patients to that status "when clinically indicated" and

6   Mr. Hayes is not in the position to question the clinical judgment of CDCR staff.  *Id.*

7   However, Mr. Hayes's monitoring did not involve him making independent clinical

8   judgments.  He reviewed the charts of several patients at KVSP and RJD and found several

9   instances of patients being kept on normal 30-minute observation in the MHCB despite

10  report of those patients consistently reporting active suicidal ideation.  Hayes's Sixth Re-

11  Audit Report at 24-25.  In most if not all of those examples, the clinicians did not offer *any*

12  valid clinical justification for not placing those patients on SP or SW status.  *Id.*  To be

13  compliant with the Program Guide requirement regarding the placement of patients on SP

14  or SW status, CDCR staff must justify why they are not placing patients with active

15  suicidal ideation on one of those statuses.  ECF No. 7333-1 at 182.  Since the clinicians at

16  KVSP and RJD failed to consistently do that, Mr. Hayes was justified in recommending a

17  CAP to correct the issue.

18      **F.    Recommendations 28 & 29: Defendants Have No Basis to Request that**
          **the Court Lower the Compliance Thresholds for these**
19          **Recommendations**

20      For both Recommendations 28 and 29, regarding CDCR's compliance of practices

21  for patients discharged from MHCBs and alternative housing, Defendants argue that the

22  Court should find them in compliance at institutions where they reached 85 percent

23  compliance rates because, they claim, 85-percent compliance shows that they are in

24  "substantial compliance."  Defs.' Objections at 72-73.  Defendants are wrong.  They

25  already made this argument when they attempted to claim that having staffing fill rates

26  close to 90 percent meant that they were in substantial compliance with their obligation to

27  fill at least 90 percent of certain positions allocated pursuant to their 2009 Staffing Plan, as

28  modified.  *See* Defendants' Opening Trial Brief for Staffing Contempt Proceedings, ECF

No. 7951 at 16-17.  But in its ruling tentatively finding Defendants in contempt for not meeting those requirements, the Court flatly rejected that argument, finding that its orders had actually required 100-percent compliance and that the 90-percent threshold was the outer limit of what could be considered substantial compliance.  Mar. 8, 2024 Order, ECF No. 8147 at 3 ("[A]nything greater than a ten percent vacancy rate cannot be considered substantial compliance.").  The same principle applies here:  The Court has ordered Defendants to fully institute their practice of appropriately checking on patients following those patients' discharge from MHCBs and alternative housing, and the 90-percent compliance threshold is the outer limit of what could be considered substantial compliance.

Moreover, while substantial compliance is a potential defense to civil contempt where the violating party has taken all reasonable steps to comply but has still committed technical or inadvertent violations of the order, *see Vertex Distribg., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir. 1982); *Gen. Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986), it is not an appropriate objection here.  The Court has already ordered that a 90-percent threshold is the metric by which Defendants' compliance is measured for these two recommendations.  *See* Special Master's Fourth Re-Audit Report, ECF No. 6879 at 22-23; Dec. 3, 2020 Order, ECF No. 6973 at 12 (adopting Fourth Re-Audit Report in full).  If Defendants wish to change those thresholds, they must seek to do so through the appropriate process.  *See* Dec. 24, 2020 Order, ECF No. 7003.

### G.  Recommendation 31: Mr. Hayes Properly Audited Defendants' SPRFIT Practices, and Defendants' Objections Are Another Attempt to Change What They Were Ordered to Do

Defendants make several objections to Mr. Hayes's auditing of Defendants' local SPRFIT practices that all center around the contention that Mr. Hayes's auditing does not match the text of Recommendation 31.  Defs.' Objections at 79-81.  First, Defendants reject Mr. Hayes's definition of quorum as requiring all mandatory team members or designees at SPRFIT meetings and point to the fact that four institutions (CCI, CIW, COR, SVSP) were deemed noncompliant only for not having one team member attend various

monthly meetings. *Id.* at 80. Defendants conveniently omit that their own "Enhancements to the Suicide Prevention and Response Focused Improvement Teams" memorandum, issued in February 2018, states that a meeting "quorum" includes all mandatory members or designees. *See* CDCR Memorandum, "Enhancements to the Suicide Prevention and Response Focused Improvement Teams" (Feb. 2, 2018) at 2 ("A SPRFIT meeting shall include mandatory members or designees to establish a quorum."); Hayes's Sixth Re-Audit Report at 50 (describing this memorandum and its definition of "quorum"). Mr. Hayes is auditing by way of *Defendants'* definition of quorum and its requirements, not his own. Furthermore, all four of the institutions where Defendants accuse Mr. Hayes of being too strict in his definition of a quorum also had other independent compliance problems with Recommendation 31 and would have been deemed non-compliant regardless. *See* Section I(L), *supra*.

Second, Defendants complain about Mr. Hayes using the presence of up-to-date local operating procedures (LOPs) as another criterion in determining whether an institution is compliant with adequate SPRFIT practices, arguing that this finding "has no real connection to … whether a committee is functioning adequately." *Id.* at 81. Defendants fail to acknowledge that this Court has ordered them to issue up-to-date LOPs since at least the Fourth Re-Audit and have not moved for relief from having to fulfill this requirement. ECF No. 6879-1 at 30-33; Dec. 3, 2020 Order, ECF No. 6973 at 12 (adopting Fourth Re-Audit Report in full) ECF 7636-1 at 46-50; Jan. 6, 2023 Order, ECF No. 7696 at 21-22 (adopting Fifth Re-Audit Report in full). Lastly, Defendants argue that it is not an issue that the local SPRFIT committees have not addressed several of Mr. Hayes's recommended corrective actions, because those "corrective action plans are long since stale." Defs.' Objections at 81. The point of a corrective action is to ensure that an institution improves upon a deficiency until that deficiency is fixed; if there is still a deficiency—and Mr. Hayes's report proves that there are dozens of them remaining—that issue can in no way be considered "stale." Defendants' objections regarding Mr. Hayes's auditing of this recommendation should be overruled.

1
2
3

**H.      Recommendation 32A: Defendants are Wrong to Argue That CDCR Policy Does Not Have a Minimum Out-of-Cell Requirement for MHCB Patients, and Their Objections to Mr. Hayes's Recommendations for Corrective Action Are Without Merit**

In providing their own data regarding their institutions' compliance with the requirement that Defendants provide appropriate privileges to MHCB patients (the first subpart of Recommendation 32), Defendants also argue that Mr. Hayes's findings of noncompliance based on insufficient yard time are not appropriate.  Defs.' Objections at 52-60.  They claim that "[n]either Mr. Hayes's own Court-ordered recommendation nor the CDCR Program Guide policy that he audits sets a minimum out-of-cell-time hours requirement."  Defs.' Objections at 53.

This is untrue.  As noted by Mr. Hayes, CDCR issued a memorandum in 2017 on MHCB privileges that permitted patients in a crisis bed to access out-of-cell activities such as yard or dayroom "consistent with their custody designation unless restricted by their treatment team."  Hayes's Sixth Re-Audit Report at 27 (citing ECF No. 7333-1 at 379).  While the policy does not explicitly state a minimum out-of-cell-time hours, CDCR regulations set the minimum number of hours of out-of-cell time for incarcerated patients at even the *highest custody levels* is ten hours per week.  *See* 15 Cal. Code. Regs. § 3348.  Thus, CDCR Program Guide policy does, in fact, require CDCR to offer a minimum of ten hours per week of out-of-cell time, and even more for patients who are at lower security levels.[17]  Mr. Hayes's auditing of the number of hours of out-of-cell time is therefore appropriate, and CDCR's SPRFIT audits that only examined whether out-of-cell time was offered at all, *see* Defs.' Objections at 53-60, are insufficient proof of compliance.

Defendants also object to two recommendations for corrective action made by Mr. Hayes.  They first object to Mr. Hayes's recommendations for CAPs at the 12 facilities

---

[17] The issue of whether Defendants must audit the number of offered out-of-cell hours for MHCB patients is currently being disputed in the data remediation process, with Plaintiffs' response due on June 20, 2024.

1  that he found were noncompliant with this recommendation, claiming that his findings are

2  "stale" and that subsequent CDCR SPRFIT audits "confirm[] that the institutions are in

3  compliance with the recommendations."  Defs.' Objections 60-61.  But Defendants' claims

4  are incorrect.  As noted above, Defendants provided subsequent audits supposedly

5  demonstrating compliance with only seven of the 12 institutions; there is no factual dispute

6  that the other five institutions are still noncompliant with this recommendation and that a

7  CAP for those institutions is appropriate.  *See* Section I(M), *supra*.  Moreover, given the

8  current dispute between the parties as to whether Defendants' auditors must account for

9  the number of hours that a patient is offered out-of-cell time when housed in the MHCB

10  unit, it is an open question as to whether the SPRFIT auditors' definition of "compliance"

11  with this recommendation is accurate.  It also has long been the case that Mr. Hayes's

12  reports and recommendations are published many months after his visits to those

13  institutions, but this does not mean that those recommendations are inherently "stale."  In

14  the course of every site visit, Mr. Hayes conducts exit meetings with institution staff and

15  explains the deficiencies that he has seen, with the hopes that those deficiencies can be

16  remedied promptly.  But even if those problems are fixed in the short term, it is still

17  appropriate for Mr. Hayes to recommend CAPs to ensure that the remedy is sustainable.

18      Defendants' other objection is to Mr. Hayes's recommendation that CDCR issue a

19  clarifying memo regarding phone-access privileges for MHCB patients.  Defs.' Objections at

20  53.  Defendants argue that their telephone call policy is "sufficiently clear" and that a

21  clarifying memo is thus unnecessary.  *Id.*  Defendants' claim is belied by the numerous

22  examples cited by Mr. Hayes in which CDCR staff misinterpreted the policy to prohibit

23  certain MHCB patients from having regular access to telephone calls.  *See* Hayes's Sixth Re-

24  Audit Report at 28-33.  Mr. Hayes's report laid a factual foundation for his recommendation

25  that clarification to staff is necessary, and that recommendation is thus appropriate.

26  **I.      Recommendation 32B: Defendants' Continuous Quality Improvement Process Has Glaring Issues that Mr. Hayes Should Continue to Monitor**

27

28      Defendants also object to Mr. Hayes's finding of non-compliance with the subpart

of Recommendation 32 that covers Defendants' Continuous Quality Improvement process. The CQI process is one of, if not the, most important metrics for Defendants to achieve compliance, as their ability to self-audit and correct deficiencies going forward is paramount to Defendants achieving lasting and meaningful reform in suicide prevention. Defendants argue that the Court should find them to be in compliance with this subpart of Recommendation 32 because they have completed the requirements set forth in the two prongs described by Mr. Hayes and the Special Master in the Fourth and Fifth Re-Audits: (1) incorporating all of Mr. Hayes's 19 Suicide Prevention Audit Checklist measures into their CQI guidebook, and (2) ensuring that all CQI audit reports are formatted to contain data on all 19 suicide prevention measures.  ECF No. 6879 at 24; ECF No. 7636 at 28-29.

Defendants may be correct that they have technically achieved compliance with the two prongs above[18], but it is certainly not accurate to say that Defendants are compliant with the CQI process overall.  As Mr. Hayes discussed, the fact that there are so many deficiencies in so many different aspects of Defendants' suicide prevention practices—deficiencies that were readily apparent to Mr. Hayes despite each institution having weeks' advance notice of his audit—is the strongest evidence that the local and regional SPRFIT staff are not appropriately identifying and addressing deficient practices.  Hayes's Sixth Re-Audit Report at 57.

Still, unlike other recommendations where Mr. Hayes and the Special Master had given specific criteria to Defendants in order to properly judge compliance, Defendants' CQI process is in early enough stages that completion of the two prongs above do not correspond with the full implementation of a functioning CQI system.  In addition, as discussed at the April 26, 2024 status conference, not all of the data indicators related to suicide prevention practices have been remediated.  *See* Tr. 4/26/23 at 36:9-37:18.

---

[18] Mr. Hayes wrote in his report that "the template of the regional SPRFIT coordinator reports is **more or less consistent** with this reviewer's audit reports," Hayes's Sixth Re-Audit Report at 59 (emphasis added), but it is unclear from the evidence available to Plaintiffs whether all of the SPRFITS contain data on all 19 suicide prevention measures.

1   Plaintiffs therefore request that Mr. Hayes continue to monitor Defendants' CQI process

2   and make any additional recommendations that may be necessary.  After all suicide-related

3   data indicators have been remediated, he should also ensure that Defendants' regional

4   SPRFIT audits properly use the remediated data indicators to measure compliance.

5   **V.    THE COURT SHOULD ADOPT MR. HAYES'S RECOMMENDATIONS**
**REGARDING THE PIPS AND SHOULD DIRECT MR. HAYES TO RE-**
6   **AUDIT THE PIPS TO ASSESS COMPLIANCE WITH THE COURT-**
**ORDERED PIP CAPS**
7

8        Defendants object to Mr. Hayes's findings and recommendations regarding suicide

9   prevention in the PIPs.  As discussed below, Defendants' attacks are meritless and fall far

10  short of demonstrating that Mr. Hayes's findings and recommendations are clearly

11  erroneous.  The Court should adopt Mr. Hayes's findings and recommendations regarding

12  the PIPs.  The Court should also direct Mr. Hayes to re-audit Defendants' compliance with

13  the sixteen court-ordered PIP CAPs.  *See* Mar. 7, 2023 Order, ECF No. 7754; Proposed

14  Joint Schedule to Implement CAPs for Suicide Prevention in CDCR's PIPs, ECF

15  No. 7714.

16       **A.    The Court Should Overrule Defendants' Objections Regarding Suicide**
**Resistant Beds**
17
**1.    Defendants' Objection Regarding Using Multi-Person Dorms and**
18  **Cells at CMF-PIP Is Meritless**

19       Defendants object to Mr. Hayes's admonishment that "[m]ulti-occupancy cells,

20  including dorms, should never be utilized for suicide observation at the CMF-PIP"

21  because, they argue, Mr. Hayes does not explain why doing this is wrong and does not

22  identify any CDCR policy that bans this practice.  Defs.' Objections at 104.  To the

23  contrary, Mr. Hayes clearly explains that multi-occupancy dorms and cells should not be

24  used to monitor patients on suicide precaution because "they are not suicide-resistant."

25  Hayes's Sixth Re-Audit Report at 74.  In other words, such dorms have attachment points,

26  such as in the corners of the bunks, and in ventilation grates, that patients can use to hang

27  themselves.  This explanation is clear and logical; patients who are in inpatient care and

28  suicidal should not be housed in cells that are not resistant to efforts to commit suicide.

1   Defendants do not explain why any further justification for Mr. Hayes's opposition to this

2   practice is needed.

3          Defendants' argument that placing PIP patients on suicide precaution in multi-

4   person dorms or cells is appropriate because the Program Guide permits double celling

5   patients newly admitted to administrative segregation is deeply flawed.  Defs.' Objections

6   at 105.  Patients on suicide precaution in the PIP are differently situated from patients

7   newly admitted to administrative segregation.  In particular, patients on suicide precaution

8   status in the PIPs have actually expressed suicidal or self-harm ideation, in contrast with

9   patients newly admitted to administrative segregation, so use of suicide resistant cells is

10  even more critical to ensure the safety of patients on suicide precaution status.

11  Furthermore, even the policy to which Defendants point only permits double celling of

12  patients in limited circumstances and recognizes the importance of retrofitted suicide

13  resistant intake cells.  *See* ECF No. 7333-1 at 569-70.

14         Defendants' speculation, unsupported with any evidence, that there could be

15  "clinical utility in conducting suicide precautions with cell mates present" is insufficient to

16  show that Mr. Hayes's recommendation that the practice not be used is clearly erroneous.

17  Defs.' Objections at 104.  The Court should reject this objection.

18         **2.      Defendants Should Verify that They Have Retrofitted Cells in**
                     **SVSP-PIP, and the Court Should Adopt Mr. Hayes's**
19                   **Recommendation that Defendants Install a Barrier to Protect**
                     **Against Suicidal Patients Jumping from the Second Tier of**
20                   **Buildings C-5 and C-6**

21         Defendants' objections to Mr. Hayes findings and recommendations regarding

22  retrofitting cells and facilities in SVSP-PIP should be rejected.  First, regarding

23  Mr. Hayes's recommendation that Defendants erect a safety barrier to prevent patients

24  from jumping off the second tier in C-5 and C-6, Defendants admit that they have "no

25  plans to install barriers to the second floor of C-5 and C-6."  Defs.' Objections at 105.

26  Instead, Defendants argue that the jumping risk on the second tier of C-5 and C-6 is

27  minimal or non-existent because "[t]here is no finding that C-5 or C-6 are jumping risks"

28  and because patients have not yet jumped from C-5 or C-6.  *Id.*  Defendants are wrong

about prior findings.  Mr. Hayes found that the second tier in C-5 and C-6 poses a jumping risk in his Fifth Re-Audit Report, which the Court has adopted in full.  ECF No. 7636-1 at 307; ECF No. 7696 at 21-22.  Furthermore, given that the risk of suicidal patients jumping off the tier is both serious and obvious—and because at least five class members *have* died in this manner since 2013, *see* ECF No. 7511 at 25—there is no reason to wait, as Defendants imply, until after such a tragedy happens to install a protective barrier.  Defs.' Objections at 105.

Defendants also characterize installing a protective barrier as an "extreme measure," suggesting that this remedy is disproportionate to any risk that exists.  Defs.' Objections at 105.  However, Defendants fail to provide any explanation or evidence to show that installing a protective barrier would be prohibitively expensive, administratively burdensome, or problematic in any other way.  *Id.*  Finally, Defendants assert that installing a protective barrier is unnecessary because they have "procedures in place to prevent suicidal inmates from accessing and jumping from the second tier of SVSP PIP's C-5 and C-6 housing units."  *Id.*  However, Defendants failed to support this vague claim by providing any details regarding—much less a written copy of—these procedures, and the fact that Defendants claim to have any such procedures at all undermines their argument that the jumping risk is illusory.

Defendants also objected to Mr. Hayes's recommendation that Defendants "[p]rovide verification that all cells designated to house suicidal patients at SVSP-PIP are now suicide-resistant."  Defs.' Objections at 105.  However, Defendants admit that they have not yet fully implemented the CAP—Defendants are not scheduled to finish retrofitting cells in TC1 and TC2 until the end of July 2024.  *Id.*  Mr. Hayes's recommendation on this point is therefore appropriate, and the Court should order Defendants to either provide verification that they have completed the retrofits or, if the retrofits have not been completed, report on the status of the retrofits, the reason for the delay, and the date by which Defendants anticipate that they will complete the retrofits.

1

**B.    Defendants' Objections Regarding Observation of Suicidal Patients are Meritless**

2

3

**1.    The Court Should Reject Defendants' Improper Effort to Modify One of the Court-Ordered PIP CAPs Regarding Suicide Observation**

4

5    Defendants object to Mr. Hayes's recommendation that Defendants "[p]rovide

6    verification that the previous CAP to ensure that all patients on suicide observation status

7    are always adequately observed" at four of the five PIPs.  Defs.' Objections at 106.

8    Defendants cite to data from the Sixth Re-Audit Report showing that compliance rates

9    with suicide observation requirements at these PIPs were at or above 90% and argue that

10   this level of compliance is good enough.  *Id.*  Defendants misread this court-ordered CAP.

11   Use of the terms "all patients" and "always adequately observed" makes clear that

12   implementation of this CAP requires 100% compliance.  Defendants argue that "[a] 100

13   percent standard is impossible given the number of checks."  *Id.* at 107.  Defendants could

14   have, but did not, raise this argument in their objections to Mr. Hayes's Fifth Re-Audit—

15   before the Court ordered Defendants to implement Mr. Hayes's sixteen recommended PIP

16   CAPs, including this one regarding suicide observation.  *See generally* ECF No. 7654.

17   Defendants' current objection, which amounts to a challenge to this court-ordered CAP, is

18   improper in an objection to the Sixth Re-Audit Report.  If Defendants wish to seek relief

19   from this CAP, they must move for relief from the Court's prior order adopting the PIP

20   CAPs in accordance with the December 24, 2020 Order (ECF No. 7003).  The Court

21   should overrule this objection.

22   Furthermore, the data showing non-compliance that Defendants point to in

23   Mr. Hayes's Report was gathered *before* the December 31, 2023 deadline to fully

24   implement this CAP.  Hayes's Sixth Re-Audit Report at 308, 315, 321, 327-28, 330

25   (providing suicide observation data from CMF-PIP for January 2023, CHCF-PIP for

26   December 2022, SVSP-PIP for January 2022, CIW-PIP for April 2023, and SQ-PIP for

27   May 2023); Defs.' Objections at 106 (listing and citing same); Prop. Joint Sched. to

28   Implement CAPs for Suicide Prevention in CDCR's PIPs (Feb. 7, 2023), ECF No. 7714 at

5-6.  Now that the compliance deadline has passed, the Court should order Defendants to comply with Mr. Hayes's recommendation that Defendants "[p]rovide verification that the previous CAP to ensure that all patients on suicide observation status are always adequately observed" in the PIPs.  Hayes Sixth Re-Audit Report at 90.

        **2.**      **The Court Should Direct Mr. Hayes to Confirm that CIW-PIP Has Stopped Using "Behavioral Suicide Watch" and that Patients on Suicide Observation at SVSP-PIP Are Being Assessed Daily**

Defendants object to Mr. Hayes's recommendation that CDCR "[p]rovide verification that 'Behavioral Suicide Watch' is no longer utilized at CIW-PIP."  Defs.' Objections at 106-07.  Mr. Hayes's recommendation is based on his observations that patients in the CIW-PIP were placed on "Behavioral" suicide watch in November and December 2022 and April and May 2023.  Hayes's Sixth Re-Audit Report at 76. Mr. Hayes's recommendation on this point relates to the court-ordered CAP to "ensure that only Suicide Precaution and Suicide Watch statuses are permitted for the observation for suicidal patients, and that terms such as 'stags', 'mental health observation', 'Q-11', 'behavioral suicide watch', and 'enhanced observation' are prohibited to be used in provider orders and progress notes," which had a court ordered deadline of December 31, 2023.  ECF No. 7754 at 2; ECF No. 7714 at 5.  Defendants assert that CIW-PIP has ceased using "Behavioral" suicide watch, and in support, they produced an SPRFIT audit from February 2024 wherein the regional SPRFIT Coordinator for Region 4 appears to report that this CAP has been fully implemented.  Defs.' Objections at 107; Hudspeth Decl., ECF No. 8180-4 at 3, 188.

Defendants also object, with respect only to SVSP-PIP, to Mr. Hayes's recommendation that they "[p]rovide verification that suicidal patients are being assessed by a mental health clinician on a daily basis at CHCF-PIP, CIW-PIP, CMF-PIP, and SVSP-PIP."  Defs.' Objections at 107-08.  (Defendants do not challenge Mr. Hayes's recommendation regarding CHCF-PIP, CIW-PIP, and CMF-PIP.  *Id.*) Regarding SVSP-PIP, Mr. Hayes found that "suicidal patients were not always seen on a daily basis while on suicide observation."  Hayes Sixth Re-Audit Report at 76.  Defendants assert that

1    SVSP-PIP subsequently corrected this deficiency, and in support, Defendants provided a

2    declaration from a Regional SPRFIT Coordinator and two SPRFIT audits conducted after

3    Mr. Hayes's Sixth re-audit of SVSP.  Defs.' Objections at 107; Stahl Decl., ECF No. 8180-

4    2 at 3, 82-83, 110-11.

5         Because Defendants did not "[p]rovide verification that suicidal patients are being

6    assessed by a mental health clinician on a daily basis at CHCF-PIP, CIW-PIP, [and] CMF-

7    PIP," the Court should adopt Mr. Hayes's recommendation that Defendants provide this

8    verification as to those PIPs.  *See* Defs.' Objections at 107.  Furthermore, given both

9    Mr. Hayes's extensive concerns about the quality and accuracy of Defendants' SPRFIT

10   audits, Hayes Sixth Re-Audit at Report 57-63, and the need to ensure that Defendants'

11   remedy of suicide prevention deficiencies are durable, the Court should direct Mr. Hayes

12   to monitor and confirm whether CIW-PIP has ceased using "Behavioral suicide

13   observation" and whether mental health clinicians are assessing suicidal patients on a daily

14   basis at SVSP-PIP in his second re-audit of the PIPs.

15        **C.    Defendants' Objection to Mr. Hayes's Recommendation Regarding**
             **Clothing and Possessions at CHCF-PIP and CMF-PIP Lack Merit**
16

17        Defendants object to Mr. Hayes's recommendation to "[p]rovide verification . . . that

18   all provider orders regarding clothing and possessions are clinically justified in medical

19   charts, and that patients not on Suicide Watch or Suicide Precaution are provided all clothing

20   and possessions at both CHCF-PIP and CMF-PIP have been fully implemented."  Defs.

21   Objection at 108.  As explained below, these objections lack merit.

22        Defendants incorrectly contend that this CAP is fully implemented at CHCF

23   because the Regional SPRFIT Coordinator directed CHCF-PIP "to add this issue to their

24   Improvement Priorities List and Project Pipeline."  *Id.*  In fact, full implementation of this

25   CAP at CHCF-PIP also requires that CHCF conduct its own review and that CHCF

26   implement additional corrective actions as needed to correct the deficiencies.  ECF

27   No. 7714 at 6.  Defendants fail to verify or even assert that these steps have been

28   completed for CHCF-PIP.  Defs.' Objections at 108.  Furthermore, even the CHCF

1  SPRFIT audit that Defendants point to acknowledges that there are "continued

2  deficiencies" with ensuring that provider orders regarding clothing and privileges are

3  clinically justified.  Hudspeth Decl., ECF No. 8180-4 at 60; *id.* at 52 ("nine patients had

4  inadequate justification for the observation status and issue on at least one of the days

5  reviewed. . . .  [T]here has been limited progress in the quality of the justification of . . .

6  partial issue.").  The CHCF-PIP SPRFIT audit in January 2024 found "no progress in

7  improving compliance" with justification of partial issue—all five out of five patients

8  audited "had inadequate justification for the observation status or issue on at least one of

9  the days reviewed."  *Id.* at 159-60.

10        Regarding CMF-PIP, Defendants claim that no further orders are needed because,

11  in December 2023, the SPRFIT auditor found only "minor issues" and that "the orders

12  were up-to-date and generally accurate."  Defs.' Objections at 108; Obegi Decl., ECF

13  No. 8180-5 at 109.  However, the SPRFIT audit that Defendants point to does not even

14  report on whether patients not on suicide precaution or suicide watch had clothing and

15  property, and it found ongoing problems with internally inconsistent issue orders and a

16  failure to issue bed linens to patients on full issue.  *Id.*

17        Given that Defendants' evidence shows that CHCF-PIP has not resolved the clothing

18  and property issues after the December 31, 2023 deadline to fully implement these CAPs,

19  *see* ECF No. 7714 at 6, the Court should direct Mr. Hayes to re-audit the scope of these

20  problems at CHCF-PIP and recommend additional steps that CHCF should take to remedy

21  these deficiencies if he finds that they persist.  In addition, because Defendants' evidence of

22  ongoing problems with clothing and issue at CMF-PIP was gathered before the deadline to

23  fully implement these CAPs, the Court should order Defendants to verify that they have

24  fully implemented these CAPs at CMF-PIP and direct Mr. Hayes to monitor and report on

25  whether Defendants have resolved these issues during his next re-audit of CMF-PIP.

26        **D.      The Court Should Overrule Defendants' Objections Regarding Out-of-
                 Cell Activities**

27

28        Defendants object to Mr. Hayes's finding that "policy required ten hours of out of

1   cell time during his tours." Defs.' Objections at 108-09. This is not what Mr. Hayes

2   found.[19] Instead, Mr. Hayes acknowledged that PIP LOPs did not address minimum

3   required out-of-cell time. Hayes Sixth Re-Audit Report at 78. Nevertheless, he audited

4   and reported on the provision of privileges to class members in the PIPs. *Id.* at 79-80. The

5   Court should overrule this objection.

6       Defendants also contend that they need not provide verification "that the CAPs to

7   ensure that suicidal patients have access to out-of-cell activities that are clinically justified,

8   including those on maximum-security status, at CHCF-PIP, CIW-PIP, CMF-PIP, and

9   SVSP-PIP have been fully implemented" because SPRFIT auditors "routinely" audit the

10  non-clinical activities tracking tool to determine whether patients received adequate out-of-

11  cell activities. Defs.' Objections at 109. While Defendants attest that they have

12  implemented this CAP, Defendants' showing is insufficient to demonstrate that patients are

13  being provided adequate out-of-cell privileges. *Id.* Furthermore, some SPRFIT audits fail to

14  confirm that all appropriate out-of-cell privileges are being provided. *See, e.g.*, Obegi Decl.,

15  ECF No. 8180-5 at 109 (CMF-PIP SPRFIT audit finding "a pattern of not recording phone

16  privileges"). Other SPRFIT audit reports contain inadequate, brief discussions of out-of-cell

17  privileges that fail to convey the size of the sample of patients reviewed, all out-of-cell

18  activities provided, and the amount of out-of-cell time provided. *See* Hudspeth Decl.. ECF

19  No. 8180-4 at 52 (SPRFIT audit of CHCF-PIP stating only that "Review of a random sample

20  of patients in every unit from March 20 to April 10, 2023 indicated that patients in all units

21  were being offered showers, meals, phone calls, yard and other out of cell activities."); *id.* at

22  160 (SPRFIT audit of CHCF-PIP states only that "[a] review of a random sample of patients

23  in every unit from January 1 to January 17, 2024, indicated that patients in all units were

24  being offered showers, meals, phone calls, yard, and other out-of-cell activities.").

25

26  _____

27  [19] The parties are currently litigating whether the court's August 23, 2023 order requires
    Defendants to offer the 10 hours of out-of-cell time proposed in their PIP minimum
    treatment standards to patients in the PIPs. *See* Pls' Motion to Clarify Order Re: PIP
28  Minimum Treatment Standards, ECF No. 8207.

1   The Court should adopt Mr. Hayes's findings and recommendations regarding out-

2   of-cell activities because Defendants failed to demonstrate that they are clearly erroneous.

3   Because Defendants have failed to demonstrate that suicidal patients receive adequate out-

4   of-cell privileges in the PIPs, the Court should also direct Mr. Hayes to re-audit this issue.

5   **E.      Defendants' Attacks on Mr. Hayes's Findings and Recommendations Regarding PIP IDTT Quality Fail**

6

7   Defendants argue that Mr. Hayes's findings that IDTT quality was inadequate at

8   CHCF-PIP, CMF-PIP, CIW-PIP, and SVSP-PIP are improper because Mr. Hayes is not a

9   clinician.  Defs.' Objections at 109-110.  Mr. Hayes audited the quality of IDTTs in the

10  PIPs in his Fifth Re-audit, and Defendants did not object to the findings regarding PIP

11  IDTTs or any of his other findings on the basis that he is not a clinician, and the Court

12  adopted Mr. Hayes's entire Fifth Re-audit Report, including Mr. Hayes's findings

13  regarding the quality of IDTTs in the PIPs.  ECF No. 7636 at 62-63; *see generally* ECF

14  No. 7654;  ECF No. 7696 at 22.  In fact, Mr. Hayes has audited some IDTT practices at

15  other levels of care for years.  See, *e.g.*, ECF No. 6879-1 at 23-24 (discussing audits of

16  safety planning in IDTTs in MHCBs in prior re-audit rounds).  Defendants failed to

17  identify any court order or any other authority that calls Mr. Hayes's practice of auditing

18  IDTTs into doubt, and Plaintiffs are aware of none.  Defs.' Objections at 111-12.

19  Indeed, some members of the IDTTs are not themselves clinicians, and the

20  deficiencies that Mr. Hayes observed, such as a failure to discuss observation level and

21  possessions for patients on suicide watch, do not require clinical expertise to identify.

22  Other than making a conclusory assertion, Defendants fail to identify why Mr. Hayes, with

23  his extensive experience auditing suicide prevention measures in prisons generally and in

24  CDCR in particular, including other clinical practices such as SREs and safety planning, is

25  unqualified to audit IDTT quality.  Defs.' Objections at 109-10.  Nor does Defendants'

26  representation that Defendants' SPRFIT Coordinators audit IDTTs demonstrate that

27  Mr. Hayes's findings regarding PIP IDTTs are unsound.

28  Defendants failed to demonstrate that Mr. Hayes's findings and recommendations

1   regarding PIP IDTTs are clearly erroneous. The Court should overrule this objection and

2   adopt Mr. Hayes's recommendation regarding IDTT quality in the PIPs and direct

3   Mr. Hayes to re-audit IDTT quality in his next re-audit of the PIPs.

4         **F.**     **The Court should Adopt Mr. Hayes's Recommendations Regarding**
                    **Safety Planning and Direct Mr. Hayes to Re-audit Safety Planning at**

5                       **CHCF-PIP, CMF-PIP, and SVSP-PIP**

6         Defendants object to Mr. Hayes's recommendation that Defendants "[p]rovide

7   verification that the CAPs to improve the adequacy of safety planning, as well as

8   supervisory review of safety plans, at CHCF-PIP, CMF-PIP, and SVSP-PIP have been

9   fully implemented." Defs.' Objections at 110. Defendants contend that no further orders

10   are necessary because safety planning is monitored using CDCR's Chart Audit Tool and a

11   remediated data indicator, and because supervisors use a statewide SharePoint to document

12   safety plan reviews. *Id.* However, Defendants fail to demonstrate and do not even claim

13   that they have remediated safety planning deficiencies and inadequate supervisory review

14   of safety plans at CHCF-PIP, CMF-PIP, and SVSP-PIP. *Id.*

15         Defendants also object to Mr. Hayes's recommendation that Defendants "[p]rovide

16   verification that SVSP-PIP is no longer utilizing the 'Discharge Readiness Tool,' 'PIP

17   Supervisor Review,' and 'Discharge Review' EHRS templates in its supervisory review of

18   safety plans." *Id.* Defendants argue that no further action is needed regarding the use of

19   these templates because a Regional SPRFIT Coordinator regularly audits SVSP-PIP, and

20   the audits show that SVSP-PIP no longer uses these templates. *Id.* However, the SPRFIT

21   audits for SVSP-PIP that Defendants produced do not actually address whether supervisors

22   use the improper templates in their review of safety plans. *See* Stahl Decl., ECF No. 8180-2

23   at 10 (explaining that supervisory review of safety plans had been "paused"); *Id*. at 81

24   (explaining that "SVSP PIP supervisor's review of discharge safety plans' tracking

25   mechanism was not provided"); *id.* at 108 (providing two paragraphs on supervisory review

26   of safety plans that do not discuss whether the improper templates were used).

27         Defendants' arguments fall far short of demonstrating that Mr. Hayes's findings and

28   recommendations regarding safety planning are clearly erroneous. Given that Defendants

1  have not demonstrated that these deficiencies have been resolved, the Court should adopt

2  Mr. Hayes's safety planning recommendations and direct Mr. Hayes to re-audit the safety

3  planning issues discussed above.

4       **G.    The Court Should Adopt Mr. Hayes's Recommendation Regarding the
   SPRFIT CAPs and Should Direct Mr. Hayes to Re-Audit Certain PIPs
   Regarding Compliance with These CAPs**

5

6       Defendants have failed to demonstrate that they have fully implemented the CAPs

7  regarding local SPRFIT Committees at certain PIPs.  While Defendants have proffered

8  evidence of compliance for certain PIPs, in some cases, the evidence is insufficient to

9  demonstrate that the underlying deficiencies have been resolved.  Therefore, as discussed

10  below, the Court should adopt Mr. Hayes's recommendations regarding these CAPs and

11  direct him to re-audit the local SPRFIT Committees in the PIPs.  Hayes Sixth Re-audit

12  Report at 90-91.

13       **1.    The Court Should Adopt Mr. Hayes's Recommendation
   Regarding SPRFIT Quorums in the PIPs and Direct Him to Re-
   Audit Compliance with this CAP at CHCF-PIP, CMF-PIP, SVSP-
   PIP, and CIW-PIP**

14

15

16       Defendants object to Mr. Hayes's recommendation to "[p]rovide verification that

17  the CAPs to ensure that CHCF-PIP, CIW-PIP, CMF-PIP, and SVSP-PIP CDCR achieved

18  six consecutive months of SPRFIT meeting quorums for all mandatory members or their

19  designees have been fully implemented."  Defs.' Objections at 111.  Defendants argue that

20  the "recommendation should be modified with respect to CHCF PIP, CIW PIP, and SVSP

21  PIP as Regional SPRFIT Coordinators have recently found that no issues with quorum

22  occurred."  *Id.*

23       However, Defendants did not claim or produce evidence showing that quorums

24  were met at SPRFIT meetings *for six consecutive months* at these three PIPs.  *Id.* at 111-

25  12; Hudspeth Decl., ECF No. 8180-4 at 161.  In fact, Defendants' SPRFIT audits show

26  ongoing problems with achieving quorums and even auditing the quorum issue at CIW-

27  PIP.  Hudspeth Decl., ECF No. 8180-4 at 144 (quorum not met for October 18, 2023

28  SPRFIT meeting); *id.* at 108 ("SPRFIT Coordinator has been unable to observe CIW's

1  (institution and PIP) monthly SPRFIT meetings since the previous review.").  The SVSP-

2  PIP SPRFIT audits produced do not even state whether quorums were achieved at SPRFIT

3  meetings.  *See* .Stahl Decl., ECF No. 8180-2 at 82-83, 108-09.

4      The Court should therefore adopt Mr. Hayes's recommendation that Defendants

5  should "[p]rovide verification that the CAPs to ensure that CHCF-PIP, CIW-PIP, CMF-

6  PIP, and SVSP-PIP CDCR achieved six consecutive months of SPRFIT meeting quorums

7  for all mandatory members or their designees have been fully implemented."  Hayes's

8  Sixth Re-Audit Report at 90.  The Court should also direct Mr. Hayes to re-audit quorums

9  at SPRFIT meetings in these PIPs, given that Defendants' SPRFIT audit reports reflect

10  multiple failures to audit and/or report on whether quorums were achieved.

11              **2.        Tracking Corrective Actions**

12      Defendants object, with respect to CHCF-PIP, CIW-PIP, and CMF-PIP, to

13  Mr. Hayes's recommendation that they "[p]rovide verification that the CAPs to ensure that

14  SPRFITs at CHCF-PIP, CIW-PIP, CMF-PIP, and SVSP-PIP tracked prior corrective

15  actions recommended by this reviewer and/or regional SPRFIT clinicians in either monthly

16  SPRFIT minutes or in separate documentation have been fully implemented."  Defs.'

17  Objections at 112-13.  Defendants claim that the recommendation is unnecessary because

18  "Regional SPRFIT Coordinators have recently found that the local SPRFIT committees

19  were adequately tracking and reviewing corrective action plans."  *Id.* at 112.

20      Regarding CHCF-PIP, Defendants did not claim or produce any evidence showing

21  that the local SPRFIT tracked CAPs issued by Mr. Hayes.  *Id.* at 113.  Instead, Defendants

22  pointed to one audit of three months of SPRFIT meetings indicating that the SPRFIT was

23  tracking corrective action plans issued by only Regional SPRFIT audits.  *Id.*  One audit is

24  insufficient verification to demonstrate that the CAP regarding tracking corrective actions

25  from even only Regional SPRFIT audits have been fully and durably implemented.

26      CIW has open corrective action plans from Mr. Hayes despite Defendants' claim to

27  the contrary.  *Compare* Defs.' Objections at 113, *with* Hayes's Sixth Re-Audit Report at

28  76, 79-80 (finding improper use of "behavioral suicide observation," non-compliance with

suicide prevention training requirements, and concerns with access to phone privileges at CIW and listing several open CAPs applicable to CIW, including CAPs regarding suicide observation, suicide prevention training, and out-of-cell activities).  In fact, some of the sixteen court-ordered Hayes CAPs applicable to CIW were open at the time of Defendants' SPRFIT audits of CIW-PIP in 2023.  *See e.g.*, ECF No. 7714 at 5 (CAP to permit only suicide watch and suicide precaution for suicidal patients and eliminate use of "behavioral suicide watch").

Defendants argue that the Court should not adopt Mr. Hayes's recommendation with respect to CMF-PIP because one SPRFIT audit found that the local SPRFIT committee tracked CAPs at one meeting.  Defs.' Objections at 113.  However, the audit that Defendants cite does not specifically state that the local SPRFIT Committee tracks Mr. Hayes's CAPs applicable to the PIP.  Even if that one Regional SPRFIT audit found that the local SPRFIT Committee tracked Mr. Hayes's recommendations, a single audit does not demonstrate that the local SPRFIT Committee is consistently tracking Mr. Hayes's CAPs (or CAPs issued by the Regional SPRFIT Coordinator) on an ongoing basis.

Given that Defendants failed to show that CHCF-PIP, CIW-PIP, and CMF-PIP are consistently tracking CAPs issued by Mr. Hayes, the Court should adopt Mr. Hayes's recommendation that Defendants provide additional verification that the local SPRFITs at these three PIPs are properly tracking prior corrective actions.  The Court should also direct Mr. Hayes to re-audit this CAP during his next audit of the PIPs to monitor whether the local SPRFIT Committees have begun tracking CAPs he has issued and to ensure that, to the extent that the local SPRFIT Committees are tracking CAPs issued by Regional SPRFIT Coordinators, that practice continues and has thereby been durably implemented.

## CONCLUSION

The time has come for the Court to move forward with contempt proceedings against Defendants for their failure to implement fourteen of Mr. Hayes's suicide prevention recommendations.  As detailed in this response, Defendants do not contest that they are non-compliant with almost every single court-ordered recommendation, across

several institutions.  The Court should institute contempt proceedings for the institutions and recommendations where Defendants have not made a factual showing of compliance and order Mr. Hayes to conduct an immediate re-audit of institutions where there is a genuine dispute of fact, while still continuing to monitor all institutions' compliance with these recommendations going forward.  As Defendants have not otherwise demonstrated that Mr. Hayes has committed clear error, the Court should also overrule their remaining objections as to both the mainline and PIP institutions, and adopt the Special Master's and Mr. Hayes's reports in full.

## CERTIFICATION

Plaintiffs' counsel certifies that he reviewed the following orders in preparing this filing: ECF Nos. 4539, 6973, 7003, 7696, 7743, 7754, 8147, 8238.

DATED:  June 17, 2024　　　　　　Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael S. Nunez*
　　　Michael S. Nunez

Attorneys for Plaintiffs

DATED:  June 17, 2024　　　　　　ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Jared Miller*
　　　Jared Miller

Attorneys for Plaintiffs