| | |
|---|---|
| DONALD SPECTER – 083925 | MICHAEL W. BIEN – 096891 |
| STEVEN FAMA – 099641 | ERNEST GALVAN – 196065 |
| MARGOT MENDELSON – 268583 | LISA ELLS – 243657 |
| PRISON LAW OFFICE | JENNY S. YELIN – 273601 |
| 1917 Fifth Street | THOMAS NOLAN – 169692 |
| Berkeley, California 94710-1916 | MICHAEL S. NUNEZ – 280535 |
| Telephone: (510) 280-2621 | MARC J. SHINN-KRANTZ – 312968 |
| | ALEXANDER GOURSE – 321631 |
| CLAUDIA CENTER – 158255 | ADRIENNE PON HARROLD – 326640 |
| DISABILITY RIGHTS EDUCATION | AMY XU – 330707 |
| AND DEFENSE FUND, INC. | ADRIENNE SPIEGEL – 330482 |
| Ed Roberts Campus | BENJAMIN W. HOLSTON – 341439 |
| 3075 Adeline Street, Suite 210 | MAYA E. CAMPBELL – 345180 |
| Berkeley, California 94703-2578 | LUMA KHABBAZ – 351492 |
| Telephone: (510) 644-2555 | JARED MILLER – 353641 |
| | ROSEN BIEN |
| | GALVAN & GRUNFELD LLP |
| | 101 Mission Street, Sixth Floor |
| | San Francisco, California 94105-1738 |
| | Telephone: (415) 433-6830 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520-KJM-DB |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTE RE SP15.1/15.1E** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |
| | Judge: Hon. Kimberly J. Mueller |

[4514246.7]

**INTRODUCTION**

SP15.1 and SP15.1E currently measure whether patients in the MHCB and PIP are offered any yard, absent clinical restrictions imposed by their IDTTs. But that is not the remedial requirement. The Special Master's proposal has identified multiple potential solutions to ensure that SP15.1/SP15.1E accurately and completely measure and report on the frequency of yard provided to class members in the MHCB and PIP to track these core remedial requirements. (ECF No. 8274, Appendix A "Special Master Proposed Resolution"). The Court should overrule Defendants' objections and adopt the Special Master's proposal.

**I.     STANDARD OF REVIEW**

"The Special Master is well-suited to resolve any disputes regarding whether and indicator must be modified to capture what he has monitored …." ECF 7847 at 8. Because "[h]is resolution of these disputes will be grounded in established facts of record concerning the scope of his monitoring and his knowledge of the requirements of all court orders in this action," the Special Master's data dispute decisions will be reversed only if they are clearly erroneous. *Id.* at 8-9. A finding is "clearly erroneous if, on review of the entire evidence, the reviewing court arrives at the firm conviction that the finding is mistaken." *In re U.S.A. Motel Corp.*, 450 F.2d 499, 503 (9th Cir. 1971); *see also McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) ("To be clearly erroneous, a decision must strike the court as more than just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." (internal citations and quotation marks omitted)). The objecting party has the burden of proving clear error. *See Oil, Chemical & Atomic Workers Int'l Union v. N.L.R.B.*, 547 F.2d 575, 580 (D.C. Cir. 1976).

**II.     THE SPECIAL MASTER'S FINDINGS ARE NOT CLEARLY ERRONEOUS AND HIS PROPOSAL IS SUPPORTED BY THE PROGRAM GUIDE AND HIS MONITORING**

The Special Master's Proposed Resolution contains two parts, which Plaintiffs address in turn. Because Defendants have not identified clear error with respect to any of

[4514246.7]                                                                 1

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S PROPOSED
RESOLUTION OF DATA REMEDIATION DISPUTE RE SP15.1/15.1E

his findings, and because modifications to SP15.1 and SP15.1E are necessary to properly measure and report on Program Guide and other court-ordered remedial requirements, this Court should adopt both.

### A. SP15.1 and SP15.1E Must Be Modified to Report the Number of Hours of Yard Offered to Each Patient Per Week

The first part of the Special Master's proposal recommends, "[a]t a minimum," that SP15.1 and SP15.1E be modified to "to report the number hours of yard offered to each patient per week." Special Master Proposal at 2. There is no question that change must be made to both indicators in order to allow for reporting consistent with the Court's orders and the Special Master's monitoring.

#### 1. SP15.1

SP15.1 is specific to the MHCB. As a "core principle," "CQIT key indicators must be operationalized to properly measure the core requirements of the Program Guide and the Compendium." ECF No. 7847 at 6. Defendants' relevant policy, incorporated into the Program Guide states, "IPs admitted to the MHCB shall attend out-of-cell activities consistent with their custody designation unless specifically restricted by the MHCB IDTT." ECF No. 7333-1 at 379. At present, SP15.1/15.1E only measures how many patients in MHCB and PIP were offered *any* yard and does not measure how much yard was offered. Special Master Proposal at 2. The Program Guide clearly lays out more parameters than whether out of cell time such as yard was offered at all.

As the Special Master explains, Defendants' policy governing the provision of out-of-cell activity in the MHCB was specifically modified in 2017 to make clear not only that such activity is mandatory, as reflected by the shift from the permissive "may" in the earlier policy to the current policy's "shall," but also must be provided to patients "consistent with their custody designation." Special Master Proposal at 4. But Defendants' indicator only measures whether any yard at all is offered – which nullifies the point of the policy's specifically added language that yard provision must be provided "consistent with their custody designation." While Defendants disagree with the Special

1  Master's recommendation that the threshold be set for 10 hours, *see* ECF No. 8274 at 10,
2  they offer no explanation of what that language means if it does not relate to some
3  minimum frequency.  *See infra* Section III.A.  As such, they do not and cannot contest
4  that the first part of his proposal must be adopted requiring SP15.1 to report the number of
5  hours of yard offered to conform to the Court's orders.
6        Along with accurately measuring the Program Guide, CDCR must measure
7  according to the Special Master's monitoring.  *See* ECF No. 7847 at 7 ("Each key indicator
8  must substantively track the areas the Special Master has monitored so that the court can
9  assess defendants' compliance with the Eighth Amendment . . . Thus, each key indicator
10  must be designed and operationalized to accurately capture the corresponding information
11  gathered and reported on by the Special Master as part of his monitoring
12  responsibilities."); *see also id.* at 7 (CQIT key indictors should "replicate" the Special
13  Master's monitoring).
14        Over the years, the Special Master's suicide prevention expert, Lindsay Hayes, has
15  measured whether yard was offered and the frequency and duration of offered yard time,
16  recently measuring it against the minimum out-of-cell time required in CDCR's
17  regulations.  Special Master Proposal at 2.  Notably, CDCR has routinely failed to ensure
18  MHCB patients access to yard – which typically has meant that Mr. Hayes reports a
19  frequency of zero yard offered at all.  In Mr. Hayes's first audit, he found that recreation
20  "rarely, if ever, included yard time" and "[m]any clinicians appeared indifferent to the
21  issue or dismissed it as a 'custody' issue."  ECF No. 5259 at 33 (adopted in full by ECF
22  No. 5271).  In his re-audit in 2016, he found that at one institution "some clinicians were
23  unaware that they could exercise clinical judgment to order yard privileges for a patient
24  that were consistent with his custody classification."  ECF No. 5396 at 29-30 (adopted in
25  full by ECF No. 5429).   At another institution, all patients were placed under a no-yard
26  restriction, despite the reasoning not being consistent with the Program Guide.  *Id.* at 30.
27  In the second re-audit, almost no audited facilities offered appropriate privileges to patients
28  in the MHCB.  One of the problems identified was "providing yard only to patients who

[4514246.7]
3
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S PROPOSED
RESOLUTION OF DATA REMEDIATION DISPUTE RE SP15.1/15.1E

requested it." ECF No. 5672 at 11 (adopted in full by ECF No. 5762). In the third re-audit, Mr. Hayes found that patients were having to choose between yard or program office privileges. "There was little use of the yard." ECF No. 5993-1 at 14 (adopted in full by ECF No. 6212). The fourth re-audit continued to find, based on reviews of 114-A forms, that institutions provided MHCB patients with limited out-of-cell and yard time. ECF No. 6879-1 at 17 (adopted in full by ECF No. 6973). In the fifth re-audit, Mr. Hayes reported a series of conflicting reasons at each institution as to why patients were not offered yard in the MHCBs, as well as reporting the amount and frequency of yard offered to MHCB patients at the few institutions where they received it. ECF No. 7636-1 at 27-31 (adopted in full by ECF No. 7696); *see also id.* at 185. In his report, Mr. Hayes emphasized that CDCR policy for out-cell-activities is "based upon a patient's custody designation and only restricted based upon the clinical judgment of the IDTT." *Id.* at 30.

It is clear from the Special Master's suicide prevention expert reports that CDCR institutions routinely, and for years, failed to offer any yard at all to class members in the MHCBs, even after the 2017 memo was revised to make clear they were entitled to out-of-cell activities commensurate with their custody designation. Because of this "chronic problem of MHCB staff misinterpreting both *Program Guide* and MHCB privileges memoranda," Mr. Hayes's early monitoring focused on whether MHCB patients were being offered any out-of-cell time at all. Special Master Proposal at 5-6. But over time, as the 2017 policy at least partially took hold, and as the Special Master explains, Mr. Hayes began reporting the frequency and duration of yard in the MHCB, starting with the fifth re-audit and continuing through the sixth re-audit. *Id.* But even with the sixth re-audit, it is clear that compliance with this requirement remains a serious and persistent problem. Mr. Hayes determined that only 33% of audited facilities were adequate with respect to MHCB privileges, including the amount of yard offered based on a review of patients' 114-A forms, which was a marked regression from the already poor results of the fifth re-audit, which found only 53% compliance. ECF No. 8143-1 at 28. Again, while Defendants dispute the minimum threshold for compliance with their policy and whether Mr. Hayes's

1  monitoring accurately reflected that, *see* ECF No. 8274 at 10, they cannot contest that the
2  Special Master's expert reports on the frequency of yard offered to class members in the
3  MHCB.

4  Therefore, as it is currently structured, SP15.1/SP15.1E is incomplete.  It measures
5  only half of the requirement laid out by the Program Guide.  It is also not a substitute for
6  the Special Master's monitoring.  The first part of the Special Master's recommendation as
7  to SP15.1, which would require Defendants to measure and report on the number of
8  weekly yard hours offered to MHCB patients, must be adopted.  This is especially
9  important given that Defendants' suicide rate for 2023 was among the highest on record.
10  *See* ECF No. 8282 at 7.

11  Defendants' complaints that the Special Master's proposed resolution comes too
12  late in the process fail for the reasons Plaintiffs discuss in their related filing responding to
13  Defendants' objections the Special Master's proposed resolution as to SP10/SP10E, which
14  they incorporate by reference here.  *See generally* ECF No. 8286.  In short, the Special
15  Master has identified a disconnect between Defendants' key indicators and this Court's
16  orders as well as his own monitoring.  It must be rectified for Defendants' CQIT
17  monitoring to eventually allow for self-monitoring and an end to federal oversight.  That
18  change can happen now, or it can happen later, but it must happen, and it is far more
19  efficient to fix the problem now.

20  Nor will the change be unduly burdensome.  SP15.1 as currently written relies on an
21  in-person audit of patients' 114-A forms.  Custody staff already record each patient's time
22  in and out to yard on that form, not just whether yard was offered.  As such, it does not
23  require significant change in the audit or the indicator to simply report the actual yard time
24  provided.  And while Defendants object that changing SP15.1/15.1 E would then require
25  changes to other indicators, ECF No. 8274 at 7, they specifically point to only
26  SP15.5/SP15.5E (dayroom), which the Special Master offered CDCR to combine
27  previously and again in their proposal.  *See* Special Master Proposal at 8.  To the extent
28  rework to those indicators is necessary, it is a consequence of Defendants' own choice to

[4514246.7]
5

reject the Special Master's offer.

### 2. SP15.1E

SP15.1E addresses the provision of yard to patients in the PIPs. Again, Defendants' refusal to report on the number of hours of yard offered weekly to PIP patients contravenes this Court's orders and the Special Master's monitoring.

Following the Special Master's repeated conclusion that minimum treatment standards, including for unstructured out-of-cell activities, were necessary to remediate the unconstitutional conditions in the PIPs, this Court required Defendants to develop such standards. *See* ECF No. 7924 at 5-8 (recounting recommendations and orders giving rise to August 23, 2023 order). As the Special Master explained to Defendants in his 2022 inpatient report, the stated purpose of his recommendation was "to improve provided PIP treatment by establishing *specific, objective, and verifiable* minimum standards for the provision of structured therapeutic activities, unstructured out-of-cell activities, treatment planning, and individual treatment in order to provide PIP patients with adequate inpatient care," so that "effective programming in accordance with these minimum standards [could] be developed, implemented, and tracked." ECF No. 7555 at 35 (emphasis added). Defendants understood that this recommendation required setting a weekly minimum out-of-cell time requirement, and proposed 10 hours. *See* ECF No. 7787 at 6-7 & n.4 (defining unstructured programming as including "yard and dayroom" and setting a 10-hour weekly minimum for PIP patients in both APP and ICF settings). While the parties dispute the effect of the Court's August 23, 2023 Order on the aspect of Defendants' remedial plan that sets this 10-hour minimum, *see infra* Section III.B, there is no question that numeric reporting on the number of yard hours provided to PIP patients weekly is required for SP15.1E to be reflective of the Court's requirement to set objective minimum standards.

Moreover, the Special Master routinely monitors and reports on yard time offered to PIP patients by specifying the frequency in terms of weekly hours. *See, e.g.*, ECF No. 7833 at 151, 199, 229, 292. Defendants do not contest this, or that the Special Master also routinely reports that the amount offered is inadequate to remediate the constitutional

[4514246.7]

6

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S PROPOSED RESOLUTION OF DATA REMEDIATION DISPUTE RE SP15.1/15.1E

1  violations in the PIPs. *See id*. at 126.

2      As such, there can be no dispute that SP15.1E must be modified to report the

3  number of hours of yard offered to PIP class members each week, and thus the first part of

4  the Special Master's proposal as to SP15.1E must be adopted.

5      **B.    The Court Should Adopt the Special Master's Proposal Requiring SP15.1 and SP15.1E Be Modified to Allow for Reporting of a Minimum Threshold**

6

7      As discussed above, Defendants should be required to report the number of hours of

8  yard offered to each patient each week. This Court should also adopt the second part of

9  the Special Master's proposal, which would require that SP15.1 and SP15.1E be made

10  amenable to reporting against some minimum threshold. *See* Special Master Proposal at 3

11  & n.4. Defendants take exclusive aim at one of the multiple alternatives offered by the

12  Special Master in the second part of his proposal – the proposal that SP15.1 and SP15.1E

13  be modified to provide for a 10-hour minimum threshold. Again, their arguments are

14  misplaced, and miss the forest for the trees.

15      Taking SP15.1E first, Defendants' own proposal to the Court provided for a 10-

16  hour minimum out-of-cell-time requirement. *See* ECF No. 7787 at 6-7 & n.4 (defining

17  unstructured programming as including "yard and dayroom" and setting a 10-hour weekly

18  minimum for PIP patients in both APP and ICF settings). Following the Court's August

19  23, 2023 Order, Defendants' draft policy, circulated to the parties in April 2024, reflected

20  that minimum. *See* Special Master Proposal at 6. And, as discussed in Plaintiffs' pending

21  motion to clarify that order, *see generally* ECF Nos. 8207, 8230, while Plaintiffs

22  specifically moved the Court to require Defendants to provide 20-hours of weekly out-of-

23  cell time for patients in the PIPs, the August 23, 2023 Order did not grant that relief. As

24  such, the 10-hour minimum Defendants proposed to comply with the Special Master's

25  remedial recommendation, which the Court adopted, is the governing remedial threshold.

26      Nonetheless, to the extent the Court denies Plaintiffs' motion to clarify or otherwise

27  establishes a different minimum threshold consistent with the Special Master's (repeated)

28  minimum-treatment standard recommendation, the Special Master's recommended

[4514246.7]

7

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S PROPOSED
RESOLUTION OF DATA REMEDIATION DISPUTE RE SP15.1/15.1E

1  resolution for SP15.1E is flexible and amenable to such a resolution: His recommendation
2  is not tied to the 10-hour minimum in Defendants' plan and draft policy, but instead
3  provides that the Court require the indicator be "designed to accommodate any minimum
4  threshold the court may establish." Special Master Proposal at 3 & n.4. While Defendants
5  repeatedly point to their pending appeal of the August 23, 2023 Order (ECF No. 8274 at 2,
6  11), that appeal concerns only the 20-hour minimum structured treatment requirement; it
7  has nothing to do with any other part of the PIP minimum treatment standards, which
8  Defendants not only did not object to when the Special Master twice recommended them –
9  they agreed to voluntarily set them (and then did not). Moreover, Defendants have never
10 sought a stay of the August 23, 2023 order, and have never questioned the Court's ongoing
11 jurisdiction to clarify it pursuant to the pending motion. Nothing about the appellate or
12 district court proceedings relating to the PIP minimum out-of-cell time requirements
13 affects the Special Master's recommendation that SP15.1E be "designed to accommodate
14 any minimum threshold the court may establish." Special Master Proposal at 3 & n.4.

15      Nor do Defendants offer any reason to reject that proposal as to SP15.1.
16 Defendants hotly contest Mr. Hayes's use of a 10-hour minimum threshold for yard in the
17 MHCBs, even though that limit is generous to them. Special Master Proposal at 7.
18 Defendants' policy actually requires MHCB patients' out-of-cell time to be provided
19 commensurate with their custody designation, which, for lower custody patients, could in
20 fact allow for more than the 10 hours required for the highest-custody patients allowed by
21 Title 15. *See* 15 Cal. Code. Regs. § 3348; Special Master Proposal at 2.

22      Defendants claim that MHCB out-of-cell privileges do not "follow a patient solely
23 because of their . . . custody status." ECF No. 8274 at 9. But Defendants have not given
24 any explanation as to why this is not the case, much less any explanation of what the
25 phrase "consistent with the custody designation" they inserted into their 2017 MHCB
26 privileges policy means if it is not this. When patients go to MHCB or PIP, their clinical
27 designation may change, but the policy is not tied to clinical designation; it is tied to
28 custody designation. Certainly, Defendants have maintained that maximum-custody status

[4514246.7]

8

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S PROPOSED
RESOLUTION OF DATA REMEDIATION DISPUTE RE SP15.1/15.1E

follows patients to the PIPs – and have used that as a justification to offer those patients essentially no treatment at all for years. *See* ECF No. 7833 at 32-33; ECF No. 7555 at 43-44 & nn.26-27. And Mr. Hayes has routinely reported how maximum custody or administrative segregation status has impeded the provision of yard and other out-of-cell activities in MHCBs, regardless of Defendants' claim that somehow custody status does not follow patients into the MHCB. *See, e.g.*, ECF No. 8143-1 at 8-9, 33; ECF No. 7636-1 at 16, 27; ECF No. 6879-1 at 17, 32;ECF No. 5993-1 at 94, 166.

The Special Master has also offered Defendants the possibility of actually measuring their MHCB policy's requirements more specifically, by measuring whether each patients was offered yard "consistent with their custody designation." Special Master Proposal at 7. This would certainly be more complicated since it may be different for each patient, but the complexity cannot be a reason to only measure half the requirement. Defendants offer no substantive reason why this alternative is unacceptable. To the extent the Court finds this resolution preferable, the parties could work through how to reflect this threshold in the SP15.1 documentation during the stakeholder review process – so long as the Court adopts the Special Master's proposed resolution that SP15.1 be made amenable to such reporting in the first place.

In any event, the Special Master has been generous in proposing that Defendants measure all patients against the most conservative 10-hour minimum for all patients despite their custody level, as that is what his suicide prevention expert has used the assess compliance with this requirement. Special Master Proposal at 5-6. But he also recognizes that Defendants' objections on this point to his expert's report remain pending. Special Master Proposal at 3 & n.4. At a minimum, Defendants have identified no legitimate basis to oppose the Special Master's ultimate recommendation which allows for the Court's resolution of the pending objections while still moving data remediation along: That the indicator be designed to account for some minimum threshold, whatever that may be.

## CONCLUSION

The Court should overrule Defendants' objections and adopt the Special Master's

[4514246.7]

9

proposal requiring both (1) that CDCR revise SP15.1/SP15.1E to "report the number hours of yard offered to each patient per week" in the MHCB and PIP, and that (2) those indicators be revised accommodate a minimum threshold of the Court's choosing, pending resolution of Defendants' objections to Mr. Hayes's sixth re-audit and Plaintiff's motion to clarify the PIP minimum treatment standards order.

**CERTIFICATION**

Plaintiffs' counsel certifies that she reviewed the following orders in preparing this filing: ECF Nos. 5429, 5271, 5762, 6212, 6846, 6973, 7847, 7696, 7924, 8008, 8181.

DATED: June 20, 2024            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Luma Khabbaz*
      Luma Khabbaz

Attorneys for Plaintiffs