# Attachment B
# Order filed 02/28/2023
# Document # 7742

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiff, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

To correct longstanding Eighth Amendment violations in this decades-old class action lawsuit, defendants must remedy ongoing inadequate mental health staffing levels in California's prisons. *See, e.g.*, *Coleman v. Brown*, 938 F. Supp. 2d 955, 984-88 (E.D. Cal. 2013). That remedial effort requires defendants' full implementation of their staffing plans. October 10, 2017 Order, ECF No. 5711, at 1. Eight years after the California Department of Corrections and Rehabilitation (CDCR) defendants filed their mental health staffing plan, the court gave these defendants one year to "take all steps necessary to come into complete compliance with the staffing ratios in their 2009 Staffing Plan and the maximum ten percent vacancy rate required by the court's June 13, 2002 order." October 10, 2017 Order, ECF No. 5711, at 30.[1] The court set a

---

[1] The court has approved one set of proposed revisions to the 2009 Staffing Plan. *See* January 27, 2021 Order, ECF No. 7035. In addition, in April 2022, the parties stipulated to an eighteen-month period during which plaintiffs would not "seek enforcement of the 1:50 ratio for

1

further status conference for October 11, 2018 to discuss, "as necessary, issues pertaining to enforcement" of its order and "durability of the staffing remedy." *Id*. As recently as 2022, the CDCR Secretary confirmed defendants' commitment to proper mental health staffing in the state's prisons. *See* February 17, 2022 Minute Order, ECF No. 7467 (quoting Reporter's Transcript of Proceedings (RT 2/11/2022), ECF No. 7461, at 15).

Despite that commitment and the court's orders, staffing levels remain inadequate, many years later than they should have been cured. Some delay, but by no means all, is attributable to a whistleblower report by CDCR Chief Psychiatrist Dr. Michael Golding and proceedings prompted by that report. *See generally Coleman v. Newsom*, 424 F. Supp. 2d 925 (E.D. Cal. 2019). Fundamentally, defendants have not achieved a systemwide vacancy rate of ten percent or less in any of the mental health classifications they are required to report. *See* ECF No. 7717 at 2, 5-9. As of December 2022, defendants have a total of 2,395.5 allocated mental health staff positions.[2] *See id*. More than ten percent of those positions are vacant across all classifications; the vacancy rate among psychiatrists is eighteen percent, the vacancy rate among psychologists is thirty-three percent, the vacancy rate among social workers is thirty-one percent, the vacancy rate among recreation therapists is fourteen percent, and the vacancy rate among medical assistants is twenty-seven percent. *Id*.

On January 6, 2023, this court issued an order outlining the need for enforcement in several areas in this action, including staffing, and invited the United States Attorney General to attend a status conference on February 10, 2023 to address the United States' position on the state's failure to comply with court orders. *See generally* January 6, 2023 Order, ECF No. 7699. The United States Attorney General accepted the court's invitation, filed a Response to the Court's January 6, 2023 Order, ECF No. 7713, and attended the February 10 status conference

---

Senior Psychiatrist Supervisors from the 2009 Staffing Plan." ECF No. 7526. The court's October 10, 2017 order is hereby **modified** to incorporate these two changes into its terms.

[2] The court assumes without deciding these allocations are derived from application of the staffing ratios in defendants' 2009 Staffing Plan, as modified *see supra* note 1, to the existing population of mentally ill inmates at each level of care in CDCR's Mental Health Services Delivery System (MHSDS).

2

1  through Deputy Chief Kerry K. Dean.  At the status conference, the court elicited the views of the
2  parties and the United States regarding monetary sanctions to compel compliance with the court's
3  orders on staffing, among other topics.  In addition to raising other arguments at hearing,
4  defendants requested an opportunity to respond in writing before the court issued any order.
5  After careful consideration, the court denies that request.  The court will follow the same
6  procedure it has used in the past in this action to compel compliance with its orders.  *See* April 19,
7  2017 Order, ECF No. 5610, at 8-11, *appeal dismissed for lack of jurisdiction*, *Coleman v. Brown*,
8  No. 17-16080 (9th Cir. Nov. 28, 2018).³  Under that procedure, defendants will have ample
9  opportunity to be heard and preclude the need for additional proceedings.
10      The facts leading to this order are well known to the parties and reviewed in numerous
11  court orders, including the October 10, 2017 order, ECF No. 5711 and most recently in the
12  court's January 6, 2023 order, ECF No. 7699.  Those orders are incorporated herein by reference.
13  In short, for twenty years defendants have been under court order to maintain a mental health
14  staffing vacancy rate among case managers of no more than ten percent.  June 13, 2002 Order,
15  ECF No. 1383.  For more than four years, the CDCR defendants have been out of compliance
16  with the October 10, 2017 order.  *See* ECF No. 7717 at 5-9.
17      In its filing with the court, the United States articulates the settled principle that "adequate
18  staffing is essential to ensuring constitutional mental health care," ECF No. 7713 at 5 (citing,
19  among others, *Lemire v. Ca. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013)), and
20  observes, correctly, "that the plaintiffs and the Court have agreed with the state's own 2009
21  staffing plan that, if implemented, would resolve the staffing shortfalls, but the state has still not
22  complied with this plan." *Id*. at 6 (citing ECF No. 7699 at 2-3).  The United States notes that
23  repeated unsuccessful and ineffective efforts to address staffing deficiencies are not a defense to
24  this ongoing constitutional violation and observes that "[i]f defendants cannot provide

---

27  ³ The legal standards set out on page 9 of the court's April 19, 2017 order, ECF No. 5610, are incorporated in this order in full.

3

1   constitutionally adequate services with their existing mental health staff, they must increase staff
2   or reduce caseloads." *Id*.
3       At hearing, plaintiffs contended the size of the mentally ill population in California's
4   prisons, which they represented has now grown to 34 percent of the total prison population,
5   should be addressed as part of a comprehensive effort to end staffing violations. *See* Reporter's
6   Transcript of Proceedings (RT 2/10/23), ECF No. 7726, at 11. The number of mental health staff
7   required by the 2009 Staffing Plan is derived from ratios "expressed as one mental health staff
8   person per x number of inmate patients." ECF No. 5711 at 3 (citing ECF No. 3693 at 12-33).
9   Decreasing the denominator of that ratio, namely the number of mentally ill inmates in
10  California's prisons, would decrease the number of mental health staff required. However, this
11  court acting alone is without authority to unilaterally impose reductions in the prison population.
12  *See* 18 U.S.C. § 3626(a)(3).
13      Defendants urge the court to adopt plaintiffs' previous suggestion "that the parties meet
14  and confer and that a plan be arrived at to come into compliance within a year." ECF No. 7726 at
15  14. Defendants have had more than thirteen years to implement their 2009 Staffing Plan and
16  more than five years to comply with the court's October 2017 order, which includes a period of
17  time during which the parties agreed the COVID-19 pandemic affected defendants' ability to
18  comply with various aspects of the remedy in this case. *See*, *e.g.*, ECF No. 6718 (Stipulation and
19  Update Addressing Current COVID-19-Related Departures from Program Guide Requirements);
20  ECF No. 7176 (same). At this point in time, the court will not countenance any further delay.
21      Defendants also argue their "efforts are robust" and they are at the mercy of nationwide
22  labor markets. This argument acknowledges the ongoing constitutional violation in mental health
23  staffing but misses the essential issue: tight labor markets do not relieve defendants of their
24  constitutional obligations. *Cf. Coleman v. Brown*, 938 F. Supp. 2d at 988-89 (citing, *inter alia*,
25  *Hadix v. Johnson*, 367 F.3d 513, 516 (6th Cir. 2004)) (concluding "[d]efendants were found to be
26  deliberately indifferent at the initial phase of these proceedings" and therefore "must either
27  comply with the court-ordered relief to remedy the identified violation or establish that the
28  identified violation has been remedied in another way"; holding, in remedial phase, ongoing

4

"objectively unconstitutional conditions evidence the subjective component of deliberate indifference").

    Defendants must increase the size of their mental health staff, decrease the size of the plaintiff class or effect some combination of each approach to comply with the Eighth Amendment. This court can require only the former. Accordingly, fines as set out in this order will begin accumulating on March 31, 2023. Beginning with the monthly staffing vacancy report to be filed March 31, 2023, the court will calculate fines using the average of the maximum salary for each class in the state's salary schedules, *see* ECF No. 7727, as follows:

- Defendants shall include in the vacancy charts columns with the total number of vacant positions in each class that must be filled in order to comply with the October 10, 2017 order, as modified. Subject to resolution of outstanding questions related to the allowable vacancy rate among medical assistants and recreational therapists, *see infra*, defendants must calculate this number by multiplying the total number of allocated positions by 0.90, then subtracting the total number of filled positions from the result.
- Beginning with the monthly vacancy report to be filed March 31, 2023, fines will accumulate, as follows: For each class of vacancies, the number of vacancies reported as required by the preceding paragraph will be multiplied by the average maximum monthly salary for each class[4], as follows:
    - Staff Psychiatrist: $23,040.70
    - Senior Psychiatrist (Specialist): $23,981.50
    - Senior Psychiatrist (Supervisor): $24,042.00
    - Chief Psychiatrist: $27,905.50
    - Clinical Psychologist: $9,973.00
    - Senior Psychologist (Specialist): $10,869.00

---

[4] The salary calculations for each class are based on the salary schedules defendants filed on February 13, 2023. ECF No. 7727.

5

- Senior Psychologist (Supervisor): $11,210.00
- Chief Psychologist: $13,866.25
- Medical Assistant: $4,553.00
- Clinical Social Worker: $8,460.71
- Supervising Psychiatric Social Worker I: $8.192.00
- Supervising Psychiatric Social Worker II: $8,787.00
- Recreation Therapist: $5,841

- The total monthly fine will be double the sum of the category-by-category calculations arrived at through the process specified above. The fine will accumulate month to month.
- Beginning with the monthly vacancy report to be filed March 31, 2023, defendants shall include a separate chart of the fines accumulated for that month and, in subsequent months, a total of fines accumulated to date.
- If fines accumulate for three consecutive months, the court will schedule a hearing on contempt and payment of the accumulated fines.
- Fines will continue to accumulate during the time needed for any contempt and payment proceedings.

The maximum ten percent vacancy rate in the June 13, 2002 order applies to "psychiatrists and case managers," *see* ECF No. 1383 at 4; it covers psychologist and social worker positions as well. The court has not set a maximum vacancy rate for recreational therapists or medical assistants. The court currently intends to extend the maximum ten percent vacancy requirement to these positions and so uses that requirement for those positions for purposes of this order. The court will adjust the calculation applicable to these positions, as necessary, after review of the parties' positions. To that end, within fourteen days of the filed date of this order, the parties must meet and confer and file a joint statement of their respective positions on the maximum vacancy rate for recreational therapists and medical assistants.

/////

/////

6

In accordance with the above, IT IS HEREBY ORDERED that:

1. Within fourteen days from the date of this order the parties shall meet and confer and file a joint statement of their respective positions on the maximum vacancy rate that should apply to recreation therapist and medical assistant classifications.

2. The court's October 10, 2017 Order, ECF No. 5711, is deemed modified by its January 27, 2021 order, ECF No. 7035, and the parties' stipulation filed April 13, 2022, ECF No. 7526.

3. Beginning with the monthly vacancy report to be filed on March 31, 2023, and continuing until further order of the court, defendants shall identify in each monthly vacancy report the dollar amounts as required by this order.

4. All dollar amounts identified in each monthly vacancy report will accumulate as fines. If fines accumulate for three consecutive months, the court will set a date for a hearing on findings of contempt and payment of fines that have accumulated on or after March 31, 2023.

5. The Clerk of the Court is directed to serve a courtesy copy of this order on:

> Kerry K. Dean, Deputy Chief
> United States Department of Justice
> Civil Rights Division
> Special Litigation Section
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C. 20530

DATED: February 27, 2023.

CHIEF UNITED STATES DISTRICT JUDGE