ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
LAWRENCE M. CIRELLI, SBN 114710
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS-GONZÁLEZ, SBN 321994
MOLLIE H. LEVY, SBN 333744
SAMANTHA M. BACON, SBN 351561
1676 N. CALIFORNIA BLVD., SUITE 620
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE:  925-746-8460
FACSIMILE:  925-746-8490
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.<br><br>　　　Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY THE JUNE 25 AND 27, 2024 ORDERS FINDING DEFENDANTS IN CIVIL CONTEMPT AND ORDERING PAYMENT OF FINES (ECF NOs. 8291, 8299)**<br><br>Judge:　Hon. Kimberly J. Mueller |

**TABLE OF CONTENTS**

Page

INTRODUCTION ..........................................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ...................................................................2

LEGAL STANDARD ....................................................................................................................4

ARGUMENT .................................................................................................................................4

I.      THE COURT SHOULD ISSUE A STAY ........................................................................4

        A.      Defendants Have a Substantial Case for Relief on the Merits. ...............................4

        B.      Defendants Will Be Irreparably Harmed Absent a Stay. ..........................................7

        C.      The Balance of the Equities and the Public Interest Weigh in Defendants' Favor ..........................................................................................................................7

II.     THE COURT SHOULD EXERCISE ITS DISCRETION TO WAIVE THE SUPERSEDEAS BOND REQUIREMENT .....................................................................8

CONCLUSION ............................................................................................................................10

CERTIFICATION .......................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bolt v. Merrimack Pharm., Inc.*,
   No. S-04-0893 WBS DAD, 2005 WL 2298423 (E.D. Cal. Sept. 20, 2005) ............................. 8

*Carmichael v. Southern Coal & Coke Co.*,
   301 U.S. 495 (1937) .................................................................................................................. 8

*Dillon v. City of Chicago*,
   866 F.2d 902 (7th Cir. 1988) ............................................................................................. 9, 10

*Hardesty v. Sacramento Metropolitan Air Quality Management District*,
   No. 2:10-cv-02414 KJM KJN, 2019 WL 2715616 (E.D. Cal. June 28, 2019) ............... 8, 9, 10

*Humane Soc'y of U.S. v. Gutierrez*,
   558 F.3d 896 (9th Cir. 2009) .................................................................................................... 4

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) .................................................................................................... 4

*Nken v. Holder*,
   556 U.S. 418 (2009) .................................................................................................................. 4

*NLRB v. Westphal*,
   859 F.2d 818 (9th Cir. 1988) .................................................................................................... 8

**Federal Statutes**

11 U.S.C.
   § 101(40) .................................................................................................................................. 9
   § 109(c) .................................................................................................................................... 9
   § 903 ......................................................................................................................................... 9

**Other Authorities**

Fed. R. Civ. P.
   62 ......................................................................................................................................... 1, 4
   62(b) ..................................................................................................................................... 8, 9
   62(c) ......................................................................................................................................... 4

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: Please take notice that subject to the Court's granting leave, Defendants will, and hereby do, move this Court under Federal Rule of Civil Procedure 62 to stay the June 25 and 27, 2024 orders requiring certain Defendants to execute certifications and Defendants to pay $111,939,244 in fines and additional accumulated monthly fines related to the Court's findings of contempt. ECF Nos. 8291, 8299. Defendants ask this Court to stay enforcement of its orders and exercise its discretion to waive the supersedeas bond requirement pending the Ninth Circuit's review of the Court's contempt finding.

# MOTION TO STAY THE JUNE 25 AND 27, 2024 ORDERS

## INTRODUCTION

Almost thirty years after entry of judgment in this case, in the middle of a nationwide shortage of mental health professionals, and while inmates in the California Department of Corrections and Rehabilitation (CDCR) have greater access to mental health care than the average Californian, this Court has found CDCR's Secretary, Jeffrey Macomber, CDCR's Undersecretary of Health Care Services, Dr. Diana Toche, and CDCR's Deputy Director of its Statewide Mental Health Program, Dr. Amar Mehta, in contempt for not hiring enough mental health staff. The Court has also ordered the State to deposit just shy of $10,000,000 into the Court's registry by July 8, 2024, almost $112,000,000 into the Court's registry by July 25, 2024, and continue to deposit millions of dollars monthly if staffing fill rates do not reach 90-100%. Also, the Court ordered the Governor, Director of Department of State Hospitals (DSH), and Director of the California Department of Finance to review voluminous monthly staffing vacancy reports and provide the Court with a summary of steps taken to address understaffing at CDCR.[1]

The June 25 and 27, 2024 orders should be stayed pending appeal because Defendants

---

[1] The Court subsequently clarified it would permit proxy reports in the limited case of illness, pre-planned vacation, or work commitment that makes timely review of the reports and certification impossible. ECF No. 8299 at 2. However, the executive branch leaders would be held to the designee's certification. *Id.*

1  have a substantial case for relief on the merits, will be irreparably harmed absent a stay, the
2  balance of equities favors Defendants, and the public interest favors a stay and waiver of the
3  supersedeas bond requirement.  Defendants request that the Court expeditiously resolve this
4  request because of the imminent deadlines set by the June 25 and 27, 2024 orders.  ECF Nos. 8291
5  at 72, 8299 at 2.[2]

## PROCEDURAL AND FACTUAL BACKGROUND

The genesis for the June 25 and 27, 2024 orders began in June 2002, when this Court, based on a recommendation from the Special Master and without making Prison Litigation Reform Act findings, ordered Defendants to "maintain the vacancy rate among psychiatrists and case managers at a maximum of ten percent, including contracted services."  ECF No. 1383 at 4:1-2.  Seven years later, in June 2009, this Court ordered Defendants to prepare a staffing plan "under the guidance of the Special Master following the model that was used to develop the activation schedules and the short-term and intermediate plan before the court."  ECF No. 3613 at 2:26-3:2.  On September 30, 2009, Defendants filed a staffing plan that set forth "a comprehensive, optimal staffing model."  ECF No. 3693 at 9.  However, the staffing plan specified that not "all of the programs and/or staffing identified in the Plan are required by the *Coleman* Court" and did not concede that the "proposed staffing and services are constitutionally required."  *Id.* at 7 fn. 1.  In October 2017, this Court discussed Defendants' historical staffing challenges and noted that "defendants must do more to address ongoing mental health staffing shortages, particularly among psychiatrists, in order to achieve long-overdue complete remediation."  ECF No. 5711 at 28:17-19.  The Court set a one-year deadline for Defendants to achieve the required staffing levels, and set future status conferences to discuss Defendants' progress on staffing and to address "as necessary, any required enforcement orders and the time staffing levels must be maintained at court-ordered levels, under court supervision, in order for the court to be satisfied the remedy has been achieved and is durable."  *Id.* at 28:26-29:2.  In the years that followed, Defendants redoubled their efforts to increase the number of psychiatrists.  The result was a drop in the vacancy rate so that psychiatry

---

[2] Page citations are to the ECF assigned page numbers at the top of each document.

positions in the aggregate historically achieved a 90% fill rate for much of 2021, and the fill rate has since hovered close to 90% since that time. ECF No. 8019 8:18-19. Unfortunately, during the global pandemic, CDCR saw an increase in vacancies in other mental health classifications. *Id*. at 8-9.

On February 28, 2023, as the state emerged from a global pandemic and in the midst of the Great Resignation, this Court ordered Defendants to include in their monthly staffing vacancy reports a calculation of fines for vacant positions up to the 90% fill rate using the average of the maximum salary for each class in the state's salary schedules, then doubling the total sum of the category-by-category calculations. *See* ECF No. 7742 at 5-6. Even though there was a well-documented national shortage of healthcare workers, and CDCR was reporting an unprecedented increase in vacancies for psychologists and clinical social workers that started during the pandemic, the Court said it would set a hearing date for findings of contempt and payment of fines if fines accumulated for three consecutive months. *Id.* at 7:11-14. The Court did so despite compelling evidence demonstrating a nationwide mental health staffing shortage.

On June 12, 2023, the Court set this matter for hearing for consideration of findings of contempt and imposition of fines. ECF No. 7856. From September 29, 2023 to October 5, 2023, the Court held an evidentiary hearing. ECF No. 8013.

Following the hearing, the Court's issuance of its tentative decision, and mediation sessions with a Ninth Circuit mediator, Plaintiffs requested leave from the Court for the parties to file supplemental briefing addressing the timing and scope, among other things, of any fines the Court may impose pursuant to its February 28, 2024 and March 8, 2024 orders regarding Defendants' contempt of staffing orders. ECF No. 8233 at 2:1-5; *see* ECF Nos. 7742, 8147. Plaintiffs' request was granted on May 14, 2024. ECF No. 8235. Plaintiffs filed their supplemental brief on May 28, 2024, arguing that the Court should finalize its tentative contempt findings and force Defendants to immediately deposit accumulated fines with the Court's registry. ECF No. 8251 at 1-3.

Defendants filed their response to Plaintiffs' Supplemental Briefing regarding staffing contempt fines on June 4, 2024. ECF No. 8260. In that briefing, and before, Defendants set out

the results of their myriad efforts, which showed fines are unnecessary because Defendants are, and have been, taking all reasonable actions to comply with the Court's order.

On June 25, 2024, the Court issued its contempt findings. Defendants immediately appealed that order. On June 27, 2024, the Court modified its June 25, 2024 order. Defendants amended their prior notice of appeal to appeal that order as well, and now seek a stay of both orders.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 62, the Court may stay its June 25 and 27, 2024 orders to ensure Defendants' rights are secured pending appeal. Fed. R. Civ. P. 62(c). A party seeking a stay must make a four-factor showing: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm in the absence of relief; (3) that the balance of equities weigh in its favor; and (4) that a stay is in the public interest. *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 897 (9th Cir. 2009); *see also Nken v. Holder*, 556 U.S. 418, 434-35 (2009). The likelihood of success on the merits and irreparable harm factors "are the most critical." *Nken*, 556 U.S. at 434. Further, district courts maintain discretion to grant a motion to stay, as well to set or waive the amount of a supersedeas bond.

## ARGUMENT

### I. THE COURT SHOULD ISSUE A STAY

#### A. Defendants Have a Substantial Case for Relief on the Merits.

Defendants' tangible and reasonable steps towards complying with the Court's staffing orders in the face of an undisputed nationwide shortage of mental health care professionals demonstrate their substantial case for relief on the merits of the underlying claim. Defendants "need not demonstrate that it is more likely than not that they will win on the merits," but only that they have "a substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966-68 (9th Cir. 2011).

The record demonstrates that both before and after the evidentiary hearing, Defendants have taken all reasonable steps to ameliorate the staffing issues CDCR faces. Whether it be using new classifications for mental health professionals, the establishment of new telemental health

programs to widen the recruiting pool (notwithstanding objections from Plaintiffs and limitations imposed by the Court and suggested by the Special Master), the streamlining of hiring practices, or the salary increases and established pay differentials for certain clinicians, there is ample evidence of Defendants' efforts to reach compliance.  Moreover, the Court's order did not address unrebutted evidence in the record that documentation and other requirements imposed by this case have contributed to the staffing challenges, which Defendants maintain is a relevant factor in assessing the reasonableness of Defendants' actions.  ECF No. 8019 at 8-9 n. 5.  These varied and continuous efforts by Defendants, in the face of changing worker expectations and nationwide staffing shortages, which currently make staffing to the required 90-100% fill rate impossible within Defendants' legal authority, demonstrate that the fines ordered by the Court are unnecessary to coerce Defendants' compliance with staffing requirements, as they have been and continue to take steps towards reaching full compliance, even with lower-than-ideal numbers in the hiring pool.  As Defendants have consistently brought to light in their briefing, the imposition of fines will not and cannot improve the hiring efforts when there is a shortage of mental health professionals even outside of the prison system, within California and nationwide.  9/29 RT 49:17-8; ECF No. 8019.  By imposing substantial fines, this Court is punishing Defendants for the staffing shortage, not coercing them into compliance.  Thus, this Court should allow Defendants to pursue their appellate rights before requiring the State to deposit $111,939,244 in the Court's registry (plus additional monthly fines) when CDCR has repeatedly shown its efforts towards compliance—and has periodically achieved substantial or full compliance through those efforts.

Further, the Court's conclusion that Defendants had not taken all reasonable steps to comply with the order rests on the finding Defendants could have, but did not, request permission to violate state law.  ECF No. 8260 at 8-9.  It is worth noting that plaintiffs did not seek waivers of state law prior to the contempt proceeding.  Similarly, and despite the fact that it has the inherent authority to issue an injunction *sua sponte* if the requirements of the PLRA are satisfied, the Court has never issued any orders requiring Defendants to waive state law to address mental health staffing vacancies.  That those options were not exercised shows Defendants' decision to comply with state law is not a suitable basis for contempt.

Additionally, implicit in the Court's finding is the concession that Defendants—the state officials who are defendants in their official capacities—lack the authority to take actions that the Court seems to believe are necessary.  But if the Court's unspecified remedial solution depends on actions state officials cannot take, then it cannot yield a durable solution.  It is therefore objectively reasonable for Defendants not to pursue actions that violate state law, even if the Court could authorize them, because those actions could not continue beyond this Court's supervision of this case.  Accordingly, Defendants have a substantial case on the merits that this finding is legally erroneous.

In sum, although the Court dismissed Defendants' efforts as "business as usual," the record belies that conclusion: Defendants have taken decisive steps, including the proposed establishment of new programs and other strategies to expand the recruitment pool for qualified clinicians and improve retention.  Defendants have thus pursued all avenues within their legal authority, and the scope and pace of developing and implementing those efforts are reasonable within the context of this litigation and the complex system that is CDCR's mental health system.

In addition, Defendants request the certification requirement set forth in the Court's June 25 and 27, 2024 orders also be stayed.  Defendants are unaware of any federal court that has ever ordered a Governor to "certify they have reviewed the data in the [monthly staffing] report[s] and provide a summary of the steps within their respective authority they have taken in the preceding month to address mental health understaffing."  ECF No. 8291 at 71.[3]  Not only is this order unprecedented, it arguably requires the Governor and other high-ranking executive branch members, including the Director of DSH who has no role in CDCR's hiring efforts, to disclose information that is protected by the deliberative process, executive, attorney-client, and work product privileges.  In light of this unprecedented certification requirement, this Court should allow Defendants to obtain appellate review before imposing such a monthly burden on high-ranking state officials.

---

[3] These orders build on a prior order directing various Defendants to personally review portions of transcripts from the contempt hearing reflecting witness testimony.  (ECF No. 7757 at 1:25-3:4.)

**B.    Defendants Will Be Irreparably Harmed Absent a Stay.**

Defendants will suffer at least two distinct irreparable harms if the June 25th and June 27th orders are not stayed. First, the requirement that individuals certify monthly they have read vacancy reports and tell the Court what they have done to address CDCR's staffing issues intrudes on state sovereignty and the separation of powers between the executive and judicial branches. This is especially true as this portion of the order is applied to the Governor insofar as it directs how he should use his time and requires the Governor to waive executive and deliberative process privileges by disclosing the steps taken to address staffing. Once the Governor—and others—are forced to do that, the damage is done and, under the order, repeated each month.

Second, the order foreshadows additional orders that will direct how the fines collected shall be spent. This too will be an irreparable harm because money spent to increase staffing—erroneously if Defendants prevail on appeal—is necessarily money that the State cannot spend on other priorities. Requiring the State to part with nearly $112 million dollars in funds and potentially millions more on a monthly basis, with no clear path to recourse should the Ninth Circuit find those funds to have been wrongly paid, may negatively impact the State's ability to provide necessary services to its citizens. The State budget is limited, and the fines imposed are significant—the funds allocated to these fines could be used elsewhere to directly benefit citizens, including California's incarcerated population.

**C.    The Balance of the Equities and the Public Interest Weigh in Defendants' Favor.**

The balance of equities tips sharply in favor of Defendants and supports staying the payment of fines and enforcement of the certification requirement until the Ninth Circuit resolves Defendants' appeal. As stated above, the Court's commandeering of State tax dollars unnecessarily consumes valuable resources, especially when the Court has yet to determine how it believes the money should be spent. This alone favors the imposition of a stay. Moreover, the unprecedented certification requirement will burden the State's high-ranking officials on a monthly basis. In the meantime, Defendants will continue to implement and pursue options to fill staffing vacancies and provide constitutionally adequate care to patients in the Plaintiff class.

1  Accordingly, the equities in this case favor a stay of the orders pending appeal.

2  Similarly, the public interest in preserving the substantial expenses that will be incurred to pay the fines that have not been shown to improve patient care is strong. The Supreme Court has consistently recognized that the public purposes of a state, including expenditures for its general welfare, are within the broad discretion of the state legislature. *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 514 (1937). In other words, the question of whether an expenditure serves a public purpose is one properly answered by the legislature, which must answer to the public. *Carmichael*, 301 U.S. at 515. Here, the Court circumvents the legislative process by unilaterally deciding how $111,939,244 and counting of taxpayer funds should be spent. Because the contempt proceedings were held without a jury, and because the Court—with Article III life tenure—is insulated from the political process, the public interest cuts in favor of having the Court's orders affecting hundreds of millions of dollars in tax revenue stayed pending review.

## II.   THE COURT SHOULD EXERCISE ITS DISCRETION TO WAIVE THE SUPERSEDEAS BOND REQUIREMENT

As Plaintiffs themselves have recognized, there is no risk that Defendants will be unable to pay the fines should they be found to be proper on appeal. ECF No. 8266 at 7. District courts maintain discretion to set the amount of the supersedeas bond. As this Court stated in *Hardesty v. Sacramento Metropolitan Air Quality Management District*, No. 2:10-cv-02414 KJM KJN, 2019 WL 2715616 (E.D. Cal. June 28, 2019), "[t]he purpose of a supersedeas bond under Rule 62(b) is to secure an appellee from the 'risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment' that may result from the stay." *Id*. at *3 (quoting *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).) The Eastern District's Local Rules generally require a bond in the amount of 125 percent of the judgment amount and an "'unsecured stay is reserved for 'unusual circumstances' as determined in the court's discretion.'" *Id.* at *3 (*quoting Bolt v. Merrimack Pharm., Inc.*, No. S-04-0893 WBS DAD, 2005 WL 2298423, at *2 (E.D. Cal. Sept. 20, 2005)); L.R. 151(d). Here, however, there is no risk of an uncollectible judgment, and so no bond should be required. Moreover, Plaintiffs "do not object to a waiver of the bond requirement." ECF No. 8266 at 7:4-5.

20941119.16

8

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO STAY THE JUNE 25 AND 27, 2024 ORDERS

In *Hardesty*, this Court considered the County's request to stay enforcement and waive the supersedeas bond requirement under Federal Rule of Civil Procedure 62(b), applying the following factors (referred to as the *Dillon* factors): (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position. *Hardesty* at *4; *see also Lewis v. County of San Diego*, No. 13-CV-02818-H-JMA, 2018 WL 1071704 (S.D. Cal. Feb. 27, 2018), at *2. The key factors under the *Dillon* test are "the degree of confidence that the district court has in the availability of funds to pay the judgment," and "whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money." *Dillon v. City of Chicago*, 866 F.2d 902, 904-905 (7th Cir. 1988).

Here, as explained in prior briefing, the State can promptly pay the full amount of the contempt fine once the appeal is resolved. Indeed, unlike the County in *Hardesty*, the California Legislature has accounted for the fines in the recently-enacted 2024 Budget Act by authorizing the Department of Finance to order the State Controller to pay the fines. Provision 13 of Item 5225-002-0001 of Section 2.00 of the Budget Act of 2024 provides:

> Upon order of the Department of Finance, the Controller shall issue payment to the United States District Court for the Eastern District of California for any fines related to staffing vacancies ordered in *Coleman v. Newsom*. Payment shall be made from the General Fund. The Department of Corrections and Rehabilitation shall provide quarterly reports to the Joint Legislative Budget Committee on any fines paid to the court pursuant to this provision. Senate Bill No. 108, sec. 201 (2024).

Both houses of the Legislature passed the bill containing this provision on Wednesday, June 26, 2024, and the bill took effect immediately after the Governor signed the bill on June 29, 2024.

Separately, while municipalities may declare bankruptcy, states may not. *See* 11 U.S.C. §§ 109(c), 101(40), 903. A bond pending appeal is therefore unnecessary because there is no risk that

20941119.16

9

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO STAY THE JUNE 25 AND 27, 2024 ORDERS

the State could declare bankruptcy to evade or reduce its obligation, and the cost of obtaining a bond would further deplete already scarce State resources. *See Dillon*, 866 F.2d at 904-05. Indeed, similar concerns exist here as were present in *Hardesty*, where this Court stated that its decision was "informed in part by the public policy implications of requiring a public entity to divert a large sum away from public programs to secure a bond as large as this one would be." *Hardesty* at *5. The above-described processes exist to ensure payment of federal fines (and writs), and accordingly, no bond should be required here. Defendants, therefore, request that this Court exercise its discretion to waive the supersedeas bond requirement pending the Ninth Circuit's consideration of this Court's anticipated contempt finding.

## CONCLUSION

For the reasons stated above, this Court should stay its Orders requiring certifications and payment of fines related to staffing contempt and exercise its discretion to waive the supersedeas bond requirement. Defendants request that the Court rule on this motion to stay by July 3, 2024, so that Defendants have adequate time to seek a stay in the Ninth Circuit if this motion is denied. Alternatively, if the Court is not inclined to rule quickly on this motion to stay to provide Defendants sufficient time to seek a stay from the Ninth Circuit in advance of the July 8, 2024, deadlines, Defendants request an extension of the July 8, 2024, certification and deposit deadlines until July 25, 2024. And should such an extension of the July 8, 2024, deadlines be granted, Defendants request that the Court rule on this motion to stay by July 12, 2024, so that Defendants have adequate time to seek a stay in the Ninth Circuit if this motion is denied.

## CERTIFICATION

In preparing this filing, Defendants' counsel certify that they have reviewed the following relevant orders: 547, 612, 640, 659, 694, 1010, 1055, 1262, 1383, 1773, 1929, 2204, 3613, 3666, 4539, 5171, 5307, 5564, 5592, 5711, 5786, 5850, 5852, 5886, 5928, 6050, 6214, 6296, 6312, 6427, 6794, 6846, 6863, 6886, 6938, 7035, 7456, 7504, 7699, 7704, 7742, 7766, 7804, 7806, 7807, 7856, 8087, 8116, 8147, 8182, 8291, and 8299. This motion sets forth arguments that have not been resolved by prior court orders as they are specifically tailored to address the merits of Defendants' motion to stay the appealed June 25 and 27, 2024 order. Counsel acknowledges this

1  Court's prior orders concerning staffing requirements, but those orders do not foreclose this

2  motion.  Counsel make this filing under their obligation to represent their clients zealously under

3  their right to relief under Fed. R. Civ. P. 62(c), *Operating Engineers Pension Trust v. A-C Co.*,

4  859 F.2d 1336, 1344 (9th Cir. 1988), and to satisfy Federal Rule of Appellate Procedure

5  8(a)(1)(A)'s requirement. Counsel certify that they have conducted a reasonable inquiry and have

6  determined that this filing is well grounded in fact, legally tenable, and not presented for an

7  improper purpose, to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

8  Fed. R. Civ. P. 11(b)(1); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990).  Each factual

9  contention made in this filing is supported by a reference to evidence in the record and the legal

10 contentions are warranted by existing law or by a nonfrivolous argument for extending,

11 modifying, or reversing existing law or for establishing new law.  Fed. R. Civ. P. 11(b)(2).

DATED: July 1, 2024                                ROB BONTA
                                                   Attorney General of California


                                                   By:     /s/ *Elise Owens Thorn*
                                                   DAMON MCCLAIN
                                                   Supervising Deputy Attorney General
                                                   ELISE OWENS THORN
                                                   Deputy Attorney General
                                                   *Attorneys for Defendants*


DATED: July 1, 2024                                HANSON BRIDGETT LLP


                                                   By:     */s/ Paul B. Mello*
                                                   PAUL B. MELLO
                                                   SAMANTHA D. WOLFF
                                                   DAVID V. CASARRUBIAS-GONZALEZ
                                                   *Attorneys for Defendants*