1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
    1300 I Street, Suite 125
6   P.O. Box 944255
    Sacramento, CA 94244-2550
7   Telephone:  (916) 210-7318
    Fax:  (916) 324-5205
8   E-mail:  Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

   HANSON BRIDGETT LLP
   LAWRENCE M. CIRELLI, SBN 114710
   PAUL B. MELLO, SBN 179755
   SAMANTHA D. WOLFF, SBN 240280
   KAYLEN KADOTANI, SBN 294114
   DAVID C. CASARRUBIAS-GONZÁLEZ,
   SBN 321994
   SAMANTHA M. BACON, SBN 351561
   1676 N. CALIFORNIA BLVD., SUITE 620
   WALNUT CREEK, CALIFORNIA 94596
   TELEPHONE:   925-746-8460
   FACSIMILE:   925-746-8490
   *Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520- KJM-DB |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS' OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)** |
| v. | |
| GAVIN NEWSOM, et al. | |
| Defendants. | Judge:    Hon. Kimberly J. Mueller |

Defendants respond to Plaintiffs' Evidentiary Objections to Defendants' Objections and Responses to Special Master's Sixth Re-Audit Report (ECF No. 8283) ("Plfs' Objections").

Plaintiffs' objections to the Declaration of Dr. Joel Andrade (ECF No. 8180-3) ("Andrade Decl.") and the Declarations of Dr. Travis Williams (ECF No. 8180-6, 8249-1) ("Williams Decl." and "Williams 8249-1 Decl.," respectively) are misplaced, meritless, and puzzling. Defendants respectfully request that the Court overrule Plaintiffs' objections for the reasons set forth below.

20953445.3

1

DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS'
OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)

I.    **PLAINTIFFS' OBJECTIONS TO THE DECLARATION OF DR. JOEL ANDRADE (ECF No. 8180-3) ARE MERITLESS AND SHOULD BE OVERRULED.**

   A.    **Dr. Andrade is qualified to provide expert opinion on the subject matter set forth in his declaration and his opinions are directly relevant to the matters at issue.**

While it is not exactly clear, Plaintiffs' objections to Dr. Andrade's declaration appear to include a number of vague general objections to the entirety or unspecified portions of Dr. Andrade's opinions (Plfs' Objections, at 2:15-4:14)[1], followed by more-specific objections to individual paragraphs from his declaration (*Id.*, at 4:15-6:1.)[2] The Court should overrule Plaintiffs' general, vague, and non-specific objections as improper. See, *Bond v. Arrowhead Reg. Med. Ctr.*, 2015 WL 509823, at *5 (C.D. Cal. Feb. 5, 2015) ("Objections to evidence must state the specific ground on which the objection rests as to each particular item of evidence.")

Plaintiffs' first general objection that Dr. Andrade lacks sufficient qualifications to provide expert testimony is plainly meritless and should be overruled. (Plfs' Objections, at 2:15-22.) Federal Rule of Evidence ("FRE") 702 states:

   A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

   (b) the testimony is based on sufficient facts or data;

   (c) the testimony is the product of reliable principles and methods; and

   (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[1] All page references are to the ECF stamp at the top of the page.

[2] Objections to evidence are typically presented in a way that permits the opposing party and the court to clearly identify the specific evidence and the legal support for each objection, such as with enumerated headings and/or in table format. *See, e.g.*, Judge Karen L. Stevenson & James E. Fitzgerald, Fed. Civ. Proc. Before Trial (Calif. and 9th Cir. Edition), ¶¶ 14:110, Form 14:F (2024). As a result, while Defendants make their best effort to address the objections and arguments raised by Plaintiffs in narrative form, any perceived omission on a particular issue is inadvertent and should not be deemed as an implied concession or waiver by Defendants.

Rule 702 does not require absolute certainty for expert testimony to be admissible. *U.S. v. Fleishman*, 684 F.2d 1329, 1337 (9th Cir. 1982) (implicitly overruled on other grounds in *U.S. v. Ibarra-Alcarez*, 830 F.2d 968 (9th Cir. 1987). Rather, any lack of certainty goes to the weight of such testimony. *Ibid.* Moreover, the focus of the inquiry is not whether the proffered expert opinion is correct by a preponderance of the evidence, but instead on whether the proffered opinion is reliable by a preponderance of the evidence. FRE 702, Advisory Committee Notes, 2000 Amendments (citing *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994). Naturally, the "evidentiary requirement of reliability is lower than the merits standard of correctness." *Id*. This reliability requirement set forth by the Supreme Court in *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 589 (1993), is a "flexible" inquiry that "**should be applied with a 'liberal thrust' favoring admission**." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021). "Basically, [in applying FRE 702] the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable. The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc*., 738 F.3d 960, 969-970 (9th Cir. 2013).

Finally, the trial court's "gatekeeping" function under FRE 702 is far less critical where, as is the case here, the judge is serving as the factfinder since there is little danger of prejudicing the judge who, after reviewing the expert's testimony, can determine what, if any, weight it deserves. See, *Fed. Trade Comm'n v. DIRECTV, INC., et al.*, 15-cv-01129-HSG, 2017 WL 412263, at *2 (N.D. Cal. Jan 31, 2017).

Here, it is unquestionable that Dr. Andrade is qualified to provide expert opinion on the matters set forth in his declaration, including issues relating to suicide prevention in correctional facilities, such as CDCR, and the findings and recommendations set forth in the Special Master's Report on Mr. Hayes' Sixth Re-Audit report (ECF No. 8143) ("Sixth Re-Audit Report"). The full breadth of Dr. Andrade's relevant and extensive educational background, experience, and expertise is set forth in his declaration and CV. (Andrade Decl., ¶¶ 1-10; Exhibit A.) Dr. Andrade holds a Ph.D. and MSW in clinical social work and is a Licensed Independent Clinical Social

1  Worker (LICSW) in Massachusetts, among numerous other credentials, memberships, leadership

2  roles, publications, presentations, and awards in the correctional mental healthcare setting.

3  (Andrade Decl., ¶¶ 1-9.)

4          Specifically, for example, as part of his 15 years' experience with the Massachusetts

5  Department of Correction, Dr. Andrade conducted clinical assessments of individuals' risk for

6  future violence and suicide and provided expert witness testimony in hundreds of cases as to the

7  individual's need for hospitalization. (*Id.*, ¶ 2.) Dr. Andrade was the clinical director overseeing all

8  mental health services with the Massachusetts Department of Correction, which included

9  implementation of several initiatives relating to mental health classifications and treatment

10 alternatives. (*Ibid.*) During this timeframe, Dr. Andrade also held a leadership role in overhauling

11 Massachusetts' suicide prevention program, which included numerous CQI initiatives to

12 "**improve the identification of individuals at risk for suicide, developing an annual full-day**

13 **training on the 'Assessment of Suicide Risk in Corrections' for clinical staff, and improving**

14 **and providing new employee and annual suicide prevention training for all staff (including**

15 **correctional, medical, programs, etc.)**." (*Id.*, ¶ 3.)

16         Dr. Andrade has also held a leadership role with a correctional healthcare company

17 through which he worked with 19 different Departments of Correction and several county jails to

18 develop, implement, monitor, and manage correctional mental health programs. (*Id.*, ¶ 4.) He has

19 also authored peer-reviewed articles and book chapters on directly relevant subjects and is the

20 editor of *The Handbook of Violence Risk Assessment: A Practical Guide for Mental Health*

21 *Professionals.* (*Id.*, ¶ 8.)

22         Plaintiffs' suggestion that Dr. Andrade is somehow not qualified to opine on these issues is

23 puzzling and clearly meritless. Dr. Andrade's education, experience, skills, and training in the

24 field of mental health care in the corrections setting, and specifically in suicide risk and

25 prevention, far exceeds the threshold set by FRE 702. And based on this experience and education,

26 his opinions will undoubtedly help the trier of fact to understand the evidence and/or to determine

27 a fact in issue. *Alaska Rent-A-Car, supra,* 738 F.3d at 969-70 ("The district court is not tasked

28 with deciding whether the expert is right or wrong, just whether his testimony has substance such

20953445.3

4

DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS'
OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)

that it would be helpful to a jury."). Indeed, Dr. Andrade's opinions are based on sufficient facts and data, and he consistently supports his opinions with reliable principles and methods, all of which are reliably applied to the specific matters at issue in the Sixth Re-Audit Report.

Plaintiffs also generally object, without *any* legal support, that Dr. Andrade's opinions should be excluded because they support Defendants' alleged "collateral attacks" against Mr. Hayes's recommendations and methodologies that were adopted by the Court in prior reports. (Plfs' Objections, at 3:6-24.) Even assuming for argument's sake that Plaintiffs' assertions were true, which Defendants deny because their objections are aimed at the Sixth Re-Audit Report which is a new report with new findings, that in itself is not grounds to exclude expert opinion that is otherwise relevant and admissible. Defendants are not foreclosed from asserting any proper challenge or objection to the Report.

Plaintiffs also vaguely object that "many" of Dr. Andrade's opinions should be stricken under FRE 401 as irrelevant evidence. (Plfs' Objections, 3:25-4:2.) However, because Plaintiffs objection here appears to be global in nature without reference to any specific evidence, it is not possible for Defendants to respond or, more importantly, for the Court to make a ruling on the objection. Nevertheless, as the statements in Dr. Andrade's declaration are directly in response to the matters set forth in the Sixth Re-Audit Report, his opinions are unquestionably relevant under FRE 401. See, *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.").

Finally, Plaintiffs also generally and vaguely object to Dr. Andrade's "other" opinions for lack of "specialized knowledge" (Plfs' Objections, at 4:3-12), but those arguments are also meritless and should be overruled. FRE 702(a) states that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." In making this objection, Plaintiffs are applying an unsupported, incomplete, and hyper-technical meaning to this subpart. Indeed, this phrase is not meant to set a heightened bar in terms of the type of evidence that qualifies as expert opinion. Rather, the standard is relatively low in the sense that the expert's knowledge or experience on a particular subject must only be more likely than not to help the jury understand the underlying evidence and issues. See, FRE 702,

20953445.3

5

DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS'
OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)

1  Advisory Committee Notes, 2023 Amendments; *Alaska Rent-A-Car, supra,* 738 F.3d at 969-70;

2  see also, *Hardeman, supra,* 997 F.3d at 960 (FRE 702 "should be applied with a 'liberal thrust'

3  favoring admission" of the expert opinion).) Any dispute as to an expert's depth of knowledge or

4  experience is not grounds to exclude his or her opinions, but instead goes to the weight of the

5  evidence. *U.S. v. Bilson*, 648 F.2d 1238, 1239 (9th Cir. 1981).

6      Here, Dr. Andrade's opinions are clearly sufficient under FRE 702(a)'s standard. Dr.

7  Andrade's extensive education, experience, and specialized knowledge in mental health care in the

8  correctional setting inform his opinions with respect to the methodologies and recommendations

9  set forth and utilized in the Sixth Re-Audit Report. This Report, of course, is the product of Mr.

10  Hayes's appointment as an expert and his ongoing assessment of CDCR's suicide prevention

11  practices. Naturally, the contents and subject matter of the Report are complex and beyond the

12  common knowledge and experience of a layperson. Accordingly, Defendants properly sought

13  feedback and opinions from their own expert in evaluating the Report's findings and

14  recommendations. As a result, Plaintiffs' contention that some of Dr. Andrade's opinions are not

15  based on sufficient "specialized knowledge" is incorrect and should be overruled.

16      **B.      Andrade Declaration ¶¶ 12 & 13**

17      Plaintiffs object to paragraphs 12 and 13 of Dr. Andrade's declaration on relevancy and

18  foundational grounds, arguing that Dr. Andrade's opinion as to Mr. Hayes's methodologies is not

19  a proper expert opinion. This objection is meritless and nonsensical, and should be overruled.

20  Experts routinely opine on and critique opposing experts' processes, methodologies, formulae, and

21  the like. There is nothing in FRE 702 that prohibits such testimony. In fact, the Rule contemplates

22  different forms of expert testimony ("A witness who is qualified as an expert . . . may testify in the

23  form of an opinion *or otherwise*…"). Accordingly, it is completely valid and appropriate for one

24  expert to comment on the methodologies utilized or relied upon by an opposing expert as a way to

25  discredit his or her competing opinions.  Dr. Andrade's testimony about the methodology utilized

26  by Mr. Hayes is relevant and appropriate under the applicable evidentiary rules.

27      **C.      Andrade Declaration ¶ 14**

28      Contrary to Plaintiffs' argument, Dr. Andrade's opinion that certain requirements from the

Program Guide result in an institution's inability to pass a section of an audit even though clinical care is not negatively affected is relevant to highlight, and provide context for, Defendants' objection that the Sixth Re-Audit Report fails to show a correlation between the perfect implementation of Mr. Hayes's recommendations and self-harm events, completed suicides, or an increase in suicide risk. (See, Defendants' Objections to Sixth Re-Audit Report, ECF No. 8179, pgs. 8-9.) Dr. Andrade goes on to provide an example relating to the completion of a SRASHE by social workers, which demonstrates that the standard utilized under the Program Guide and therefore audited as part of the Sixth Re-Audit Report is nearly impossible for CDCR to pass in an audit, even though the clinical care is not negatively affected. (Andrade Decl., ¶ 14.) Defendants therefore objected based on "Mr. Hayes' failure to analyze whether technical and perfect implementation of every recommendation would actually result in the prevention of a suicide or related harm." (Defendants' Objections to Sixth Re-Audit Report, pg. 9:19-21.)  For these reasons, Dr. Andrade's opinions in this regard are absolutely relevant. *Primiano, supra,* 598 F.3d at 565 ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.").

Plaintiffs also vaguely assert that Dr. Andrade has failed to lay a proper foundation, but that argument is plainly refuted by the entirety of paragraph 14, which sets forth a clear example and explanation for the subject opinion, along with the numerous introductory paragraphs that set forth Dr. Andrade's extensive qualifications and experience in implementing, assessing, and studying the delivery of mental health care in the correctional setting.

For these reasons, Plaintiffs' objection to paragraph 14 should be overruled.

### D.    Andrade Declaration ¶¶ 15 & 16

Plaintiffs' objections to paragraphs 15 and 16 are baseless and should be overruled. As discussed above, because the Sixth Re-Audit Report is itself an expert report containing complex and specialized issues, Defendants properly utilized their own expert to assist in evaluating the merits of the Report. A layperson would not be familiar with the complexities and nuances of mental health care in prisons and, in particular, the specific findings and recommendations set forth in the Sixth Re-Audit Report. Accordingly, as an expert in this field with extensive

20953445.3

7

DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS'
OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)

education, experience, and training, Dr. Andrade has the requisite specialized knowledge[3] to evaluate and comment on the Report, including the applicable framework and methods that were utilized by Mr. Hayes.  In paragraphs 15 and 16, Dr. Andrade, utilizing his specialized knowledge and experience, discusses what he essentially perceives as inconsistencies and reliability issues with the auditing methodology used by Mr. Hayes, including the addition of new requirements into certain recommendations and improperly assessing certain recommendations.

Plaintiffs also (again) make a vague objection based on foundation, but it is not clear what exactly Plaintiffs contend is lacking. As previously discussed, Dr. Andrade is qualified and consistently demonstrates through his declaration that he is familiar with the subject matter discussed therein.

### E.    Andrade Declaration ¶¶ 17-19

Dr. Andrade's opinions that relate to or are based on national state and federal suicide rates are absolutely relevant, are properly within the purview of his specialized knowledge and experience, and are based on proper and adequate foundation. This evidence is relevant as it provides much-needed context to the Sixth Re-Audit Report's criticism of CDCR for an increase in its suicide rate. Indeed, by presenting data and information demonstrating that suicide rates nationwide have been steadily increasing over the years, Dr. Andrade provides a more-complete picture of the issue and thus offers an additional mitigating factor in assessing CDCR's performance. In other words, this much-needed context will help the trier of fact understand the evidence and the underlying matters at issue. It is again unclear how Dr. Andrade has not laid a proper foundation for this testimony since his declaration sets forth his relevant background and experience, as well as the relevant specifics as it relates to the cited data and information. And if for some reason additional foundation is required, such information can be readily furnished upon request.

---

[3] Plaintiffs' objection based on the "specialized knowledge" language from FRE 702 is puzzling as it suggests that the statements made by Dr. Andrade are not, in fact, opinions, but matters of common knowledge. Or, in other words, expert opinion is not necessary to reach the conclusion that "Mr. Hayes is adding additional requirements into various recommendations" and that he "appears to audit something different than what each recommendation actually requires."

20953445.3

8

DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS'
OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)

1          **F.      Andrade Declaration ¶¶ 20-24**

2          Plaintiffs' next vaguely lump together objections to paragraphs 20, 21, and 22 of Dr.

3    Andrade's declaration based on relevancy and foundation. Paragraph 20 includes Dr. Andrade's

4    analysis and opinion with respect to the manner in which the Sixth Re-Audit Report fails to clearly

5    identify where each institution falls in terms of compliance and requires the reader to review the

6    appendices and then make inferences to determine compliance. In Dr. Andrade's opinion, an

7    improvement in this process would enable more expeditious compliance.  Accordingly, this

8    opinion is relevant and based on adequate foundation.

9          In paragraph 21, Dr. Andrade opines that requiring 100% compliance for certain

10   recommendations is unreasonable and there are other ways to monitor and improve compliance

11   with critical suicide prevention tasks. Dr. Andrade then discusses an example – the observation

12   rates for suicidal IPs – to illustrate how 100% compliance with this recommendation would be

13   nearly impossible to achieve. Dr. Andrade concludes this section with a proposed alternative

14   approach, which in his opinion would "allow the CDCR system to more quickly identify the root

15   cause of the specific issues and provide training, corrective action, or in some cases, staff specific

16   counseling, to remedy this important area." In sum, because this opinion relates directly to the

17   matters at issue and is adequately supported though Dr. Andrade's extensive qualifications and a

18   specific example, Plaintiffs' objections should be overruled.

19         Next, in paragraph 22, Dr. Andrade opines that the structure of certain recommendations –

20   which include numerous subparts – is a significant impediment to compliance. Dr. Andrade then

21   discusses an example to demonstrate the multiple layers and subparts within a single

22   recommendation, which makes compliance with that recommendation "nearly impossible." For

23   similar reasons as above, this opinion is both relevant and adequately supported. Dr. Andrade's

24   opinion and criticism is directly relevant to the Court's review of the Sixth Re-Audit Report and

25   CDCR's compliance with Mr. Hayes's recommendations.

26         Plaintiffs next object under FRE 702 to paragraph 23 in which Dr. Andrade indicates his

27   agreement with Mr. Hayes's finding that CDCR's Suicide Case Review process is robust and a

28   strength of the overall program.  This objection should be overruled because this opinion does, in

1   fact, aid the trier of fact in understanding the evidence or underlying matters at issue. Indeed, the

2   fact that Dr. Andrade agrees with a finding of Mr. Hayes helps to convey the weight of this

3   particular evidence. Further, Dr. Andrade does not just agree for the sake of agreeing, but also sets

4   forth in his declaration a thorough explanation that supports his opinion.  Accordingly, Plaintiffs'

5   objection should be overruled.

6          Finally, Plaintiffs object to Dr. Andrade's endorsement of CDCR's use of the Columbia-

7   Suicide Severity Rating Scale (C-SSRS) (Andrade Decl., ¶ 24) on relevancy grounds. This

8   objection should be overruled, however, because this evidence relates directly to the Sixth Re-

9   Audit Report. Dr. Andrade opines that use of the C-SSRS tool is a reasonable approach for

10  documenting suicide risk. Contrary to Mr. Hayes' findings, the use of a C-SSRS is within the

11  guidelines. (Defendants' Objections to Sixth Re-Audit Report, pg. 66.)  This objection should be

12  overruled.

13  **II.    PLAINTIFFS' OBJECTIONS TO THE DECLARATION OF DR. TRAVIS
        WILLIAMS (ECF NO. 8180-6) ARE BASELESS AND WITHOUT MERIT.**

14
        **A.    Dr. Williams's Testimony in Paragraphs 6-8, 21, 26, 43, and 60 are Based
15              Upon His Personal Knowledge and Experience.**

16          Plaintiffs' contention that Dr. Williams failed to provide an adequate explanation of

17  personal knowledge of his testimony in Paragraphs 6-8, 21, 26, 43, and 60 is also baseless. Under

18  Rule 602 of the Federal Rules of Evidence, sufficient personal knowledge is defined as knowledge

19  that a witness possesses, derived from their own senses and experiences. *See, e.g.*, *In re Akins,* 640

20  B.R. 721 (E.D. Cal. 2022); *U.S. v. Lopez*, 762 F.3d 852 (9th Cir. 2014). This can include firsthand

21  observations or experiences that the witness directly perceives through any of the five senses. *Los*

22  *Angeles Times Comms., LLC v. Dept. of Army*, 442 F.Supp.2d 880 (C.D. Cal. 2006).

23          Here, based on the information contained in his declaration, Dr. Williams affirmatively

24  established that the facts in his declaration are based on his personal knowledge. Dr. Williams

25  stated that he is testifying from his "role as a Mental Health Administrator for CDCR" where he

26  "regularly work[s] on the Coleman Class Action as part of CDCR's Mental Health leadership

27  team." (Williams Decl. at ¶ 2.) He is also testifying from his personal knowledge and familiarity

28  with the "existing Program Guide policies," information gained by his "regular[] attend[ance of]

1  the small workgroup meetings held with experts on the Special Master's team," his

2  "involve[ment] in CDCR's efforts to develop and maintain a durable suicide prevention program,"

3  and his "involve[ment] in extensive measures taken by CDCR to improve its suicide practices."

4  (*Id.* at ¶¶ 2-4.) Based on his personal experience, Dr. Williams's testimony with respect to

5  CDCR's compliance in Paragraphs 6 through 8 and the Regional SPRFIT Coordinators' quarterly

6  audits in Paragraph 60 are well within his purview as Mental Health Administrator for CDCR and

7  a member of CDCR's Mental Health leadership team.

8      Moreover, Dr. Williams is under no obligation to "explain. . . sources. . . of [] data points"

9  or "discuss[] updates to data indicators and Defendants' CQI guidebook" as Plaintiffs' wrongfully

10  suggest. (Plfs' Objections at 7-8.) Dr. Williams's personal knowledge on this subject is extensive

11  and has been appropriately established. (Williams Decl. at ¶¶ 2-4.) Indeed, Dr. Williams's

12  testimony in Paragraphs 26 and 43, much like the testimony throughout his entire declaration, is

13  based off of his experience and personal knowledge in this subject matter. Plaintiffs' belief that

14  Dr. Williams is incapable of having knowledge of statistics and CDCR's processes in an area at

15  the core of his daily obligations as Mental Health Administrator for CDCR is wrong.

16      In addition, Plaintiffs' framing of Dr. Williams's testimony in Paragraph 21 is misleading.

17  Again, Dr. Williams is intimately familiar with suicide prevention through his experience as

18  Mental Health Administrator for CDCR and CDCR's Mental Health leadership team. (Williams

19  Decl. at ¶ 2.) Surely, it is reasonable for Dr. Williams to have personal knowledge of the

20  approximate number of Suicide Precaution or Suicide Watch observations in a given year, which

21  is exactly what is included in his testimony in Paragraph 21. (*See* Williams Decl. at ¶ 21 ["[O]ver

22  *ten million* Suicide Prevention or Suicide Precaution or Suicide Watch observations were required

23  in 2023 alone."] [emphasis in original].) Plaintiffs' wrongfully assume that Dr. Williams required

24  "calculations" to reach such an estimate, separate and apart from his stated and presumed personal

25  knowledge on the topic. (Plfs' Objections at 7.) Thus, Dr. Williams's testimony does not rely on

26  "unauthenticated numbers" but rather personal knowledge.

27      Despite Plaintiffs' attempts to convince this Court otherwise, Dr. Williams's personal

28  knowledge adequately supports the testimony provided in his declaration. Plaintiffs' cherry

20953445.3

11

DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS'
OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)

1   picking of testimony from Dr. Williams's declaration is nothing more than a thinly veiled attempt

2   to exclude relevant and useful evidence from the record because it directly contradicts Plaintiffs'

3   narrative. However, Dr. Williams appropriately established his personal knowledge on these topics

4   and there is no basis for this Court to exclude his testimony in Paragraphs 6-8, 21, 26, 43, and 60.

5

6               **B.     Dr. Williams Provided Sufficient Information to Identify and Authenticate the
                         Tables Included in Paragraphs 9 and 21.**

7               Contrary to Plaintiffs' suggestion otherwise, the table included in Paragraphs 9 and 21 of

8   Dr. Williams's declaration have been adequately identified and the information included therein

9   was authenticated. "To satisfy the requirement of authenticating or identifying an item of

10  evidence, the proponent must produce evidence sufficient to support a finding that the item is what

11  the proponent claims it is." FRE 901(a). "Testimony that an item is what it is claimed to be" from

12  a "witness with knowledge" is an example of "evidence that satisfies the requirement." FRE

13  901(b)(1).

14              Dr. Williams's declaration states that "CDCR's Regional SPRFIT Coordinators conduct

15  regular suicide prevention audits. . . . These audits are conducted using a standardized audit tool

16  called the Suicide Prevention Continuous Quality Improvement Tool Guidebook ("SP CQI

17  Guidebook"). . . ." (Williams Decl. at ¶ 9.) The subsequent chart is clearly labeled as listing "Mr.

18  Hayes's nineteen Suicide Prevention Audit Checklist measures" contained in the SP CQI

19  Guidebook. (*Id.*) Moreover, the most recent SP CQI Guidebook was attached to Dr. Williams's

20  declaration as Exhibit A. (*Id.*) Therefore, the chart in Paragraph 9 merely compares Mr. Hayes's

21  measures with the indicators listed in the SP CQI Guidebook.

22              Similarly, Dr. Williams clearly states that the table in Paragraph 21 is "[a] true and correct

23  copy of Statewide data from the Mental Health Observation Reporting Tool." (Williams Decl. at ¶

24  21.) The table is not a summary of complex records as wrongfully suggested by Plaintiffs, but

25  rather copied directly from Statewide data as referenced. (*Compare* Plfs' Objections at 7 *to*

26  Williams Decl. at ¶ 21.) Dr. Williams has provided adequate authentication for the table in

27  Paragraph 21 as it is merely lifted from another identified resource.

28              In sum, Dr. Williams has adequately identified the charts included in Paragraphs 9 and 21

1  and the basis of the information listed therein. There is no proper basis under the Federal Rules of

2  Evidence to exclude the charts listed in Paragraphs 9 and 21 from Dr. Williams's declaration and

3  it is inappropriate for this Court to do so.

4

5  **C.    Plaintiffs' Objections on the Basis of Hearsay are Misleading and Directly Contradict Dr. Williams's Testimony in Paragraphs 18, 45, 50, and 58**

6  Plaintiffs' hearsay objections to Dr. Williams's testimony in Paragraphs 18, 45, 50, and 58

7  are misleading. To raise a valid hearsay objection, the declarant must make a statement, outside of

8  his testimony, that is offered for its truth. *See* FRE 801. However, Dr. Williams's declaration does

9  not mention or imply any alleged conversations with CDCR Regional SPRFIT Coordinators or

10  "unidentified statements" separate from those included in his declaration as Plaintiffs wrongfully

11  suggest. (Plfs' Objections at 6, 8-9.) Rather, Dr. Williams's testimony in Paragraphs 18, 45, 50,

12  and 58 relies on his personal knowledge in his "role as a Mental Health Administrator for CDCR"

13  where he "regularly work[s] on the Coleman Class Action as part of CDCR's Mental Health

14  leadership team." (Williams Decl. at ¶ 2.) Accordingly, Dr. Williams's testimony in Paragraphs

15  18, 45, 50, and 58 is rooted in his personal knowledge of the CDCR Regional SPRFIT

16  Coordinators' suicide prevention audits at CDCR institutions, including their use of the SP CQI

17  Guidebook to conduct these audits. (Williams Decl. at ¶¶ 18, 45, 50, 58.)

18  Surprisingly, Plaintiffs do not take issue with Dr. Williams's testimony with respect to the

19  use of the SP CQI Guidebook elsewhere in his declaration. (*See, e.g.,* Williams Decl. at ¶¶ 11, 15,

20  23, 33, 40, 41, 56, 57, 62, 63.) Nor do Plaintiffs' question the authenticity or potential hearsay

21  implications of other statements in Dr. Williams's declaration regarding CDCR Regional SPRFIT

22  Coordinators' processes or procedures. (*See, e.g.,* Williams Decl. at ¶¶ 11, 15, 22, 23, 30, 36, 40,

23  41, 49, 53.) Therefore, the Court should not assume the statements in Paragraphs 18, 45, 50, and

24  58 are any different. In short, Dr. Williams's testimony in Paragraphs 18, 45, 50, and 58 is not

25  hearsay and should not be excluded from Dr. Williams's declaration.

26  ///

27  ///

28

20953445.3

13

DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS' OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)

### III.    PLAINTIFFS' EVIDENTIARY OBJECTIONS TO THE DECLARATION OF DR. TRAVIS WILLIAMS (ECF NO. 8249-1) ARE BASELESS AND WITHOUT MERIT

#### A.    Dr. Williams's Testimony in Paragraph 5 Regarding Correspondence Received by Mr. Hayes is Adequately Supported by his Personal Knowledge and is Not Hearsay

Plaintiffs' objection with respect to Dr. Williams's alleged failure to provide an adequate explanation of personal knowledge of his testimony in Paragraph 5 is meritless. Inferences and opinions can be included as part of personal knowledge if they are grounded in these observations or experiences. *Cleveland v. Groceryworks.com,LLC*, 200 F.Supp.3d 924 (N.D. Cal. 2016). Similarly to the arguments raised above, Dr. Williams affirmatively established that the statements in his declaration were made based on his personal knowledge given he is testifying from his "role as a Mental Health Administrator for CDCR". (Williams 8249-1 Decl. at ¶ 2.) Dr. Williams is also testifying from his experience given his "active[] involve[ment] in CDCR's efforts to develop and maintain a durable suicide prevention program." (*Id.* at ¶ 3.)

Interestingly, Plaintiffs do not dispute the authenticity of the June 2023 correspondence between Dr. Williams and Mr. Hayes attached to Dr. Williams's declaration as Exhibit A. (*See* Williams 8249-1 Decl. at ¶ 4.) Yet, Plaintiffs' surprisingly question how Dr. Williams has personal knowledge of his own "impression[s]" with respect to the discrete issue of "exit calls" discussed in that correspondence. (Plfs' Objections at 10.) Given his role as Mental Health Administrator for CDCR, Dr. Williams has extensive experience and personal knowledge of CDCR's implementation of suicide prevention measures and any interpretation or opinion rendered based on Mr. Hayes's correspondence is well within the scope of Dr. Williams's personal knowledge. Moreover, Plaintiffs' suggestion that Dr. Williams's own thoughts with respect to an email he personally received should be excluded as hearsay runs afoul of the Federal Rules of Evidence. *See* FRE 801.

Alternatively, Dr. Williams's statements regarding Mr. Hayes's letter, and his impression that Mr. Hayes suggested that questions and comments were inappropriate for exit calls, are admissible not for their truth, but for their effect on Dr. Williams. *See L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 934-35 (9th Cir. 2002) (citing *United States v. Payne*, 944 F.2d 1458,

1  1472 (9th Cir. 1991); *see, also*, ECF No. 8292 at 5 (admitting hearsay statements from other

2  CDCR employees on the same grounds).)

3  Dr. Williams's testimony in Paragraph 5 is adequately based on personal knowledge and

4  not hearsay. Thus, this Court should not exclude the permissible testimony in Paragraph 5 of Dr.

5  Williams's declaration.

6  **B.    Dr. Williams's Testimony in Paragraph 7 is Based on his Personal Knowledge**

7  **and is not Offered as Expert Opinion**

8  The testimony provided in Paragraph 7 of Dr. Williams's declaration is not a "broad

9  claim" or conclusion, nor is it offered as expert testimony. (*See* Plfs' Objections at 10.) Rather, it

10  is a statement further explaining the findings of Defendants' Suicide Reports and Quality

11  Improvement Plant Reports in light of his observation and experience as Mental Health

12  Administrator for CDCR. (Williams 8249-1 Decl. at ¶ 7 ["Defendants' Suicide Reports and

13  Quality Improvement Plan reports track all policy violations. Thus, when conducting a suicide

14  case review, both ordinary policy violations and casual policy violations are considered. *This*

15  *means* that even if a suicide case review makes note of staffing issues as an ordinary policy

16  violation, it does not mean that staffing was casually related to a given suicide."] [emphasis

17  added].) As explained above, Dr. Williams's testimony is based on his experience and knowledge

18  gained in his role at CDCR and his "active[] involve[ment] in CDCR's efforts to develop and

19  maintain a durable suicide prevention program." (Williams 8249-1 Decl. at ¶¶ 2-3.) This Court

20  cannot justifiably ignore Dr. Williams's personal knowledge and inherent ability to testify on

21  these issues. Therefore, the Court should not exclude Dr. Williams's statement in Paragraph 7 of

22  his declaration.

23  **IV.    CONCLUSION**

24  For the reasons discussed above, Plaintiffs' objections to the Declarations of Dr. Andrade

25  and Dr. Williams should be overruled.

26  **V.    CERTIFICATION**

27  In preparing this filing, Defendants' counsel certify that they have reviewed the following

28  relevant orders: ECF Nos. 5271, 5429, 5762, 6212, 6973, 7696, 8292. This brief sets forth

1  arguments that have not been resolved by prior court orders as they are specifically tailored to

2  address the merits of Plaintiffs' response to the May 16, 2024 order. Counsel make this filing

3  under their obligation to represent their clients zealously. Counsel certify that they have conducted

4  a reasonable inquiry and have determined that this filing is well grounded in fact, legally tenable,

5  and not presented for an improper purpose, to harass, cause unnecessary delay, or needlessly

6  increase the cost of litigation. Fed. R. Civ. P. 11(b)(1); *Cooter & Gell v. Hartmax Corp.*, 496 U.S.

7  384, 393 (1990). Each factual contention made in this filing is supported by a reference to

8  evidence in the record and the legal contentions are warranted by existing law or by a nonfrivolous

9  argument for extending, modifying, or reversing existing law or for establishing new law.  Fed. R.

10  Civ. P. 11(b)(2).

11

12  DATED:  July 1, 2024                    ROB BONTA
                                          Attorney General of California
13

14

15                              By:_____*/s/ Elise Owens Thorn*_____
                                    DAMON MCCLAIN
16                                  Supervising Deputy Attorney General
                                    ELISE OWENS THORN
17                                  Deputy Attorney General
                                    *Attorneys for Defendants*
18

19

20  DATED: July 1, 2024                    HANSON BRIDGETT LLP

21

22                              By:_____*/s/ Kaylen Kadotani*_____
                                    PAUL B. MELLO
23                                  SAMANTHA D. WOLFF
                                    KAYLEN KADOTANI
24                                  DAVID V. CASARRUBIAS-GONZÁLEZ
                                    *Attorneys for Defendants*
25

26

27

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANTS'
OBJECTIONS AND RESPONSES TO SPECIAL MASTER'S SIXTH RE-AUDIT REPORT (ECF No. 8283)