1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
     1300 I Street, Suite 125
6    P.O. Box 944255
     Sacramento, CA 94244-2550
7    Telephone: (916) 210-7318
     Fax: (916) 324-5205
8    E-mail: Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

   HANSON BRIDGETT LLP
   LAWRENCE M. CIRELLI, SBN 114710
   PAUL B. MELLO, SBN 179755
   SAMANTHA D. WOLFF, SBN 240280
   KAYLEN KADOTANI, SBN 294114
   DAVID C. CASARRUBIAS-GONZÁLEZ,
   SBN 321994
   MOLLIE H. LEVY, SBN 333744
   SAMANTHA M. BACON, SBN 351561
   1676 N. California Blvd., Suite 620
   WALNUT CREEK, CALIFORNIA 94596
   TELEPHONE:  925-746-8460
   FACSIMILE:  925-746-8490
   *Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.<br><br>        Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' NOTICE OF ERRATA OF JULY 1, 2024 MOTION TO STAY AND REQUEST FOR LEAVE TO FILE MOTION TO STAY CARE (ECF NO. 8308)**<br><br>Judge:    Hon. Kimberly J. Mueller |

On July 1, 2024, Defendants filed a document titled Defendants' Notice of Motion and Motion to Stay the June 25 and 27, 2024 Orders Finding Defendants in Civil Contempt and Ordering Payment of Fines and attached to that motion as Exhibit A the request for leave to file the motion to stay. (ECF No. 8308.) The filing should have been titled Request for Leave to File Motion to Stay the June 25 and 27 Orders, attaching the motion to stay. Defendants now file the corrected request for leave and related motion attached hereto.

1

1    DATED: July 1, 2024                         ROB BONTA
                                                  Attorney General of California
2

3
                                         By:_____/s/ Elise Owens Thorn_____
4                                             DAMON MCCLAIN
                                              Supervising Deputy Attorney General
5                                             ELISE OWENS THORN
                                              Deputy Attorney General
6                                             *Attorneys for Defendants*

7

8    DATED: July 1, 2024                         HANSON BRIDGETT LLP
9

10

11                                       By:_____/s/ Paul B. Mello_____
                                             PAUL B. MELLO
12                                           SAMANTHA D. WOLFF
                                             DAVID V. CASARRUBIAS-GONZALEZ
13                                           *Attorneys for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| ROB A. BONTA, State Bar No. 202668 | HANSON BRIDGETT LLP |
| Attorney General of California | LAWRENCE M. CIRELLI, SBN 114710 |
| DAMON MCCLAIN, State Bar No. 209508 | PAUL B. MELLO, SBN 179755 |
| Supervising Deputy Attorney General | SAMANTHA D. WOLFF, SBN 240280 |
| ELISE OWENS THORN, State Bar No. 145931 | KAYLEN KADOTANI, SBN 294114 |
| NAMRATA KOTWANI, State Bar No. 308741 | DAVID C. CASARRUBIAS-GONZALEZ, SBN |
| Deputy Attorneys General | 321994 |
| 1300 I Street, Suite 125 | MOLLIE H. LEVY, SBN 333744 |
| P.O. Box 944255 | SAMANTHA M. BACON, SBN 351561 |
| Sacramento, CA 94244-2550 | 1676 N. CALIFORNIA BOULEVARD, SUITE 620 |
| Telephone: (916) 210-7318 | WALNUT CREEK, CA 94596 |
| Fax: (916) 324-5205 | TELEPHONE: (925) 746-8460 |
| E-mail: Elise.Thorn@doj.ca.gov | FAX: (925) 746-8490 |
| *Attorneys for Defendants* | E-MAIL: PMELLO@HANSONBRIDGETT.COM |
| | *ATTORNEYS FOR DEFENDANTS* |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | Case No. 2:90-cv-00520 KJM-DB (PC) |
| Plaintiffs, | **REQUEST FOR LEAVE TO FILE MOTION TO STAY THE JUNE 25 AND 27, 2024 ORDERS [ECF NO. 8291]** |
| v. | |
| **GAVIN NEWSOM, et al.,** | Judge: The Hon. Kimberly J. Mueller |
| Defendants. | |

On June 25 2024, this Court entered an order holding Defendants in contempt and assessing fines for their failure to fill allocated mental health staffing positions at ninety percent or better. (ECF No. 8291 at 72.) On June 25, 2024, Defendants appealed the order to the Ninth Circuit Court of Appeals. (ECF Nos. 8293.) On June 27, 2024, this Court modified its June 25, 2024 order. (ECF No. 8299.) Because the June 25 and 27 orders require payment of fines and certifications by state officials by Monday July 8, as well as full payment of accrued fines in the amount of $111,939,244, Defendants seek an immediate stay of the June 25 and 27 orders,

20950144.3 [3905252.1]                                        1

Stip. Request and [Prop.] Order Granting Defs. Leave to File Motion to Stay  (2:90-cv-00520 KJM-DB (PC))

1  including the Court's exercise of its discretion to waive the supersedeas bond requirement

2  pending the Ninth Circuit's review of the Court's contempt finding.

3       Defendants contacted Plaintiffs to meet and confer on the request for leave and the stay

4  motion.  Plaintiffs agreed that they would not oppose Defendants' request for leave to file a stay

5  motion, but stated they would oppose any stay of the June 25 and 27 orders.

6       Due to the exigency concerning the impact of the June 25 and 27 orders, Defendants

7  request that this Court promptly deny the request for leave or grant the request to file the attached

8  motion to stay the June 25 and 27 orders, and file the motion forthwith.  Defendants' motion for

9  stay, should this request for leave is granted, is attached here as Exhibit A.

10       Defendants certify that they have reviewed the orders referenced in the attached Motion to

11  Stay the June 25, 2024 and June 27, 2024 Orders.

12  Dated:  July 1, 2024                            ROB A. BONTA
                                                   ATTORNEY GENERAL OF CALIFORNIA
13                                                 DAMON MCCLAIN
                                                   SUPERVISING DEPUTY ATTORNEY GENERAL
14

15                                                 /s/ Elise Owens Thorn
                                                   ELISE OWENS THORN
16                                                 DEPUTY ATTORNEY GENERAL
                                                   Attorneys for Defendants
17  Dated:  July 1, 2024                            HANSON BRIDGETT LLP

18
                                                   /s/ Paul B. Mello
19                                                 PAUL B. MELLO
                                                   SAMANTHA D. WOLFF
20                                                 DAVID V. CASARRUBIAS-GONZALEZ
                                                   Attorneys for Defendants
21

22

23

24

25

26

27

28

# EXHIBIT A

1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
    1300 I Street, Suite 125
6   P.O. Box 944255
    Sacramento, CA 94244-2550
7   Telephone: (916) 210-7318
    Fax: (916) 324-5205
8   E-mail: Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*
9

HANSON BRIDGETT LLP
LAWRENCE M. CIRELLI, SBN 114710
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS-GONZÁLEZ,
SBN 321994
MOLLIE H. LEVY, SBN 333744
SAMANTHA M. BACON, SBN 351561
1676 N. CALIFORNIA BLVD., SUITE 620
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE:   925-746-8460
FACSIMILE:   925-746-8490
*Attorneys for Defendants*

10              **UNITED STATES DISTRICT COURT**

11              **EASTERN DISTRICT OF CALIFORNIA**

12                   **SACRAMENTO DIVISION**

13

14  RALPH COLEMAN, et al.,

15              Plaintiffs,

16       v.

17  GAVIN NEWSOM, et al.

18              Defendants.

Case No. 2:90-CV-00520- KJM-DB

**DEFENDANTS' NOTICE OF MOTION
AND MOTION TO STAY THE JUNE 25
AND 27, 2024 ORDERS FINDING
DEFENDANTS IN CIVIL CONTEMPT
AND ORDERING PAYMENT OF FINES
(ECF NOs. 8291, 8299)**

Judge:    Hon. Kimberly J. Mueller

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ........................................................2

LEGAL STANDARD ...........................................................................................................4

ARGUMENT .........................................................................................................................4

I.       THE COURT SHOULD ISSUE A STAY ..............................................................4

         A.       Defendants Have a Substantial Case for Relief on the Merits. ...................4

         B.       Defendants Will Be Irreparably Harmed Absent a Stay. ............................7

         C.       The Balance of the Equities and the Public Interest Weigh in Defendants'
                  Favor. ..........................................................................................................7

II.      THE COURT SHOULD EXERCISE ITS DISCRETION TO WAIVE THE
         SUPERSEDEAS BOND REQUIREMENT ..........................................................8

CONCLUSION ....................................................................................................................10

CERTIFICATION ...............................................................................................................10

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Bolt v. Merrimack Pharm., Inc.,*
5
    No. S-04-0893 WBS DAD, 2005 WL 2298423 (E.D. Cal. Sept. 20, 2005) ............................ 8

6
*Carmichael v. Southern Coal & Coke Co.,*
    301 U.S. 495 (1937) ....................................................................................................... 8

7
*Dillon v. City of Chicago,*
8
    866 F.2d 902 (7th Cir. 1988) ........................................................................................ 9, 10

9
*Hardesty v. Sacramento Metropolitan Air Quality Management District,*
10
    No. 2:10-cv-02414 KJM KJN, 2019 WL 2715616 (E.D. Cal. June 28, 2019) .............. 8, 9, 10

11
*Humane Soc'y of U.S. v. Gutierrez,*
    558 F.3d 896 (9th Cir. 2009) .......................................................................................... 4
12

13
*Leiva-Perez v. Holder,*
    640 F.3d 962 (9th Cir. 2011) .......................................................................................... 4

14
*Nken v. Holder,*
15
    556 U.S. 418 (2009) ...................................................................................................... 4

16
*NLRB v. Westphal,*
    859 F.2d 818 (9th Cir. 1988) .......................................................................................... 8

17

**Federal Statutes**

18
11 U.S.C.
19
    § 101(40) ....................................................................................................................... 9
20
    § 109(c) ......................................................................................................................... 9
    § 903 ............................................................................................................................. 9

21

**Other Authorities**

22
Fed. R. Civ. P.
23
    62 ............................................................................................................................... 1, 4
    62(b) ........................................................................................................................... 8, 9
24
    62(c) ............................................................................................................................. 4

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: Please take notice that subject to the Court's granting leave, Defendants will, and hereby do, move this Court under Federal Rule of Civil Procedure 62 to stay the June 25 and 27, 2024 orders requiring certain Defendants to execute certifications and Defendants to pay $111,939,244 in fines and additional accumulated monthly fines related to the Court's findings of contempt. ECF Nos. 8291, 8299. Defendants ask this Court to stay enforcement of its orders and exercise its discretion to waive the supersedeas bond requirement pending the Ninth Circuit's review of the Court's contempt finding.

**MOTION TO STAY THE JUNE 25 AND 27, 2024 ORDERS**

**INTRODUCTION**

Almost thirty years after entry of judgment in this case, in the middle of a nationwide shortage of mental health professionals, and while inmates in the California Department of Corrections and Rehabilitation (CDCR) have greater access to mental health care than the average Californian, this Court has found CDCR's Secretary, Jeffrey Macomber, CDCR's Undersecretary of Health Care Services, Dr. Diana Toche, and CDCR's Deputy Director of its Statewide Mental Health Program, Dr. Amar Mehta, in contempt for not hiring enough mental health staff. The Court has also ordered the State to deposit just shy of $10,000,000 into the Court's registry by July 8, 2024, almost $112,000,000 into the Court's registry by July 25, 2024, and continue to deposit millions of dollars monthly if staffing fill rates do not reach 90-100%. Also, the Court ordered the Governor, Director of Department of State Hospitals (DSH), and Director of the California Department of Finance to review voluminous monthly staffing vacancy reports and provide the Court with a summary of steps taken to address understaffing at CDCR.[1]

The June 25 and 27, 2024 orders should be stayed pending appeal because Defendants

---

[1] The Court subsequently clarified it would permit proxy reports in the limited case of illness, pre-planned vacation, or work commitment that makes timely review of the reports and certification impossible. ECF No. 8299 at 2. However, the executive branch leaders would be held to the designee's certification. *Id.*

1   have a substantial case for relief on the merits, will be irreparably harmed absent a stay, the

2   balance of equities favors Defendants, and the public interest favors a stay and waiver of the

3   supersedeas bond requirement.  Defendants request that the Court expeditiously resolve this

4   request because of the imminent deadlines set by the June 25 and 27, 2024 orders.  ECF Nos. 8291

5   at 72, 8299 at 2.[2]

6                       **PROCEDURAL AND FACTUAL BACKGROUND**

7           The genesis for the June 25 and 27, 2024 orders began in June 2002, when this Court, based

8   on a recommendation from the Special Master and without making Prison Litigation Reform Act

9   findings, ordered Defendants to "maintain the vacancy rate among psychiatrists and case managers

10  at a maximum of ten percent, including contracted services."  ECF No. 1383 at 4:1-2.  Seven years

11  later, in June 2009, this Court ordered Defendants to prepare a staffing plan "under the guidance of

12  the Special Master following the model that was used to develop the activation schedules and the

13  short-term and intermediate plan before the court."  ECF No. 3613 at 2:26-3:2.  On September 30,

14  2009, Defendants filed a staffing plan that set forth "a comprehensive, optimal staffing model."

15  ECF No. 3693 at 9.  However, the staffing plan specified that not "all of the programs and/or

16  staffing identified in the Plan are required by the *Coleman* Court" and did not concede that the

17  "proposed staffing and services are constitutionally required."  *Id.* at 7 fn. 1.  In October 2017, this

18  Court discussed Defendants' historical staffing challenges and noted that "defendants must do

19  more to address ongoing mental health staffing shortages, particularly among psychiatrists, in

20  order to achieve long-overdue complete remediation."  ECF No. 5711 at 28:17-19.  The Court set

21  a one-year deadline for Defendants to achieve the required staffing levels, and set future status

22  conferences to discuss Defendants' progress on staffing and to address "as necessary, any required

23  enforcement orders and the time staffing levels must be maintained at court-ordered levels, under

24  court supervision, in order for the court to be satisfied the remedy has been achieved and is

25  durable."  *Id*. at 28:26-29:2.  In the years that followed, Defendants redoubled their efforts to

26  increase the number of psychiatrists.  The result was a drop in the vacancy rate so that psychiatry

27

28  [2] Page citations are to the ECF assigned page numbers at the top of each document.

1   positions in the aggregate historically achieved a 90% fill rate for much of 2021, and the fill rate

2   has since hovered close to 90% since that time.  ECF No. 8019 8:18-19.  Unfortunately, during the

3   global pandemic, CDCR saw an increase in vacancies in other mental health classifications.  *Id*. at

4   8-9.

5        On February 28, 2023, as the state emerged from a global pandemic and in the midst of the

6   Great Resignation, this Court ordered Defendants to include in their monthly staffing vacancy

7   reports a calculation of fines for vacant positions up to the 90% fill rate using the average of the

8   maximum salary for each class in the state's salary schedules, then doubling the total sum of the

9   category-by-category calculations.  *See* ECF No. 7742 at 5-6.  Even though there was a well-

10  documented national shortage of healthcare workers, and CDCR was reporting an unprecedented

11  increase in vacancies for psychologists and clinical social workers that started during the

12  pandemic, the Court said it would set a hearing date for findings of contempt and payment of fines

13  if fines accumulated for three consecutive months.  *Id.* at 7:11-14.  The Court did so despite

14  compelling evidence demonstrating a nationwide mental health staffing shortage.

15       On June 12, 2023, the Court set this matter for hearing for consideration of findings of

16  contempt and imposition of fines.  ECF No. 7856.  From September 29, 2023 to October 5, 2023,

17  the Court held an evidentiary hearing.  ECF No. 8013.

18       Following the hearing, the Court's issuance of its tentative decision, and mediation

19  sessions with a Ninth Circuit mediator, Plaintiffs requested leave from the Court for the parties to

20  file supplemental briefing addressing the timing and scope, among other things, of any fines the

21  Court may impose pursuant to its February 28, 2024 and March 8, 2024 orders regarding

22  Defendants' contempt of staffing orders.  ECF No. 8233 at 2:1-5; *see* ECF Nos. 7742, 8147.

23  Plaintiffs' request was granted on May 14, 2024.  ECF No. 8235.  Plaintiffs filed their

24  supplemental brief on May 28, 2024, arguing that the Court should finalize its tentative contempt

25  findings and force Defendants to immediately deposit accumulated fines with the Court's registry.

26  ECF No. 8251 at 1-3.

27       Defendants filed their response to Plaintiffs' Supplemental Briefing regarding staffing

28  contempt fines on June 4, 2024.  ECF No. 8260.  In that briefing, and before, Defendants set out

1   the results of their myriad efforts, which showed fines are unnecessary because Defendants are,

2   and have been, taking all reasonable actions to comply with the Court's order.

3       On June 25, 2024, the Court issued its contempt findings.  Defendants immediately

4   appealed that order.  On June 27, 2024, the Court modified its June 25, 2024 order.  Defendants

5   amended their prior notice of appeal to appeal that order as well, and now seek a stay of both

6   orders.

7                                          **LEGAL STANDARD**

8       Under Federal Rule of Civil Procedure 62, the Court may stay its June 25 and 27, 2024

9   orders to ensure Defendants' rights are secured pending appeal.  Fed. R. Civ. P. 62(c).  A party

10  seeking a stay must make a four-factor showing: (1) there is a likelihood of success on the merits;

11  (2) there is a likelihood of irreparable harm in the absence of relief; (3) that the balance of equities

12  weigh in its favor; and (4) that a stay is in the public interest.  *Humane Soc'y of U.S. v. Gutierrez*,

13  558 F.3d 896, 897 (9th Cir. 2009); *see also Nken v. Holder*, 556 U.S. 418, 434-35 (2009).  The

14  likelihood of success on the merits and irreparable harm factors "are the most critical."  *Nken*, 556

15  U.S. at 434.  Further, district courts maintain discretion to grant a motion to stay, as well to set or

16  waive the amount of a supersedeas bond.

17                                            **ARGUMENT**

18  **I.    THE COURT SHOULD ISSUE A STAY**

19        **A.    Defendants Have a Substantial Case for Relief on the Merits.**

20      Defendants' tangible and reasonable steps towards complying with the Court's staffing

21  orders in the face of an undisputed nationwide shortage of mental health care professionals

22  demonstrate their substantial case for relief on the merits of the underlying claim.   Defendants

23  "need not demonstrate that it is more likely than not that they will win on the merits," but only that

24  they have "a substantial case for relief on the merits."  *Leiva-Perez v. Holder*, 640 F.3d 962, 966-

25  68 (9th Cir. 2011).

26      The record demonstrates that both before and after the evidentiary hearing, Defendants

27  have taken all reasonable steps to ameliorate the staffing issues CDCR faces.  Whether it be using

28  new classifications for mental health professionals, the establishment of new telemental health

programs to widen the recruiting pool (notwithstanding objections from Plaintiffs and limitations imposed by the Court and suggested by the Special Master), the streamlining of hiring practices, or the salary increases and established pay differentials for certain clinicians, there is ample evidence of Defendants' efforts to reach compliance.  Moreover, the Court's order did not address unrebutted evidence in the record that documentation and other requirements imposed by this case have contributed to the staffing challenges, which Defendants maintain is a relevant factor in assessing the reasonableness of Defendants' actions.  ECF No. 8019 at 8-9 n. 5.  These varied and continuous efforts by Defendants, in the face of changing worker expectations and nationwide staffing shortages, which currently make staffing to the required 90-100% fill rate impossible within Defendants' legal authority, demonstrate that the fines ordered by the Court are unnecessary to coerce Defendants' compliance with staffing requirements, as they have been and continue to take steps towards reaching full compliance, even with lower-than-ideal numbers in the hiring pool.  As Defendants have consistently brought to light in their briefing, the imposition of fines will not and cannot improve the hiring efforts when there is a shortage of mental health professionals even outside of the prison system, within California and nationwide.  9/29 RT 49:17-8; ECF No. 8019.  By imposing substantial fines, this Court is punishing Defendants for the staffing shortage, not coercing them into compliance.  Thus, this Court should allow Defendants to pursue their appellate rights before requiring the State to deposit $111,939,244 in the Court's registry (plus additional monthly fines) when CDCR has repeatedly shown its efforts towards compliance—and has periodically achieved substantial or full compliance through those efforts.

Further, the Court's conclusion that Defendants had not taken all reasonable steps to comply with the order rests on the finding Defendants could have, but did not, request permission to violate state law.  ECF No. 8260 at 8-9.  It is worth noting that plaintiffs did not seek waivers of state law prior to the contempt proceeding.  Similarly, and despite the fact that it has the inherent authority to issue an injunction *sua sponte* if the requirements of the PLRA are satisfied, the Court has never issued any orders requiring Defendants to waive state law to address mental health staffing vacancies.  That those options were not exercised shows Defendants' decision to comply with state law is not a suitable basis for contempt.

1    Additionally, implicit in the Court's finding is the concession that Defendants—the state

2    officials who are defendants in their official capacities—lack the authority to take actions that the

3    Court seems to believe are necessary.  But if the Court's unspecified remedial solution depends on

4    actions state officials cannot take, then it cannot yield a durable solution.  It is therefore

5    objectively reasonable for Defendants not to pursue actions that violate state law, even if the Court

6    could authorize them, because those actions could not continue beyond this Court's supervision of

7    this case.  Accordingly, Defendants have a substantial case on the merits that this finding is legally

8    erroneous.

9    In sum, although the Court dismissed Defendants' efforts as "business as usual," the record

10    belies that conclusion: Defendants have taken decisive steps, including the proposed establishment

11    of new programs and other strategies to expand the recruitment pool for qualified clinicians and

12    improve retention.  Defendants have thus pursued all avenues within their legal authority, and the

13    scope and pace of developing and implementing those efforts are reasonable within the context of

14    this litigation and the complex system that is CDCR's mental health system.

15    In addition, Defendants request the certification requirement set forth in the Court's June

16    25 and 27, 2024 orders also be stayed.  Defendants are unaware of any federal court that has ever

17    ordered a Governor to "certify they have reviewed the data in the [monthly staffing] report[s] and

18    provide a summary of the steps within their respective authority they have taken in the preceding

19    month to address mental health understaffing."  ECF No. 8291 at 71.[3]  Not only is this order

20    unprecedented, it arguably requires the Governor and other high-ranking executive branch

21    members, including the Director of DSH who has no role in CDCR's hiring efforts, to disclose

22    information that is protected by the deliberative process, executive, attorney-client, and work

23    product privileges.  In light of this unprecedented certification requirement, this Court should

24    allow Defendants to obtain appellate review before imposing such a monthly burden on high-

25    ranking state officials.

26

27    _____

[3] These orders build on a prior order directing various Defendants to personally review portions of

28    transcripts from the contempt hearing reflecting witness testimony.  (ECF No. 7757 at 1:25-3:4.)

**B.    Defendants Will Be Irreparably Harmed Absent a Stay.**

Defendants will suffer at least two distinct irreparable harms if the June 25th and June 27th orders are not stayed.  First, the requirement that individuals certify monthly they have read vacancy reports and tell the Court what they have done to address CDCR's staffing issues intrudes on state sovereignty and the separation of powers between the executive and judicial branches.  This is especially true as this portion of the order is applied to the Governor insofar as it directs how he should use his time and requires the Governor to waive executive and deliberative process privileges by disclosing the steps taken to address staffing.  Once the Governor—and others—are forced to do that, the damage is done and, under the order, repeated each month.

Second, the order foreshadows additional orders that will direct how the fines collected shall be spent.  This too will be an irreparable harm because money spent to increase staffing— erroneously if Defendants prevail on appeal—is necessarily money that the State cannot spend on other priorities.  Requiring the State to part with nearly $112 million dollars in funds and potentially millions more on a monthly basis, with no clear path to recourse should the Ninth Circuit find those funds to have been wrongly paid, may negatively impact the State's ability to provide necessary services to its citizens.  The State budget is limited, and the fines imposed are significant—the funds allocated to these fines could be used elsewhere to directly benefit citizens, including California's incarcerated population.

**C.    The Balance of the Equities and the Public Interest Weigh in Defendants' Favor.**

The balance of equities tips sharply in favor of Defendants and supports staying the payment of fines and enforcement of the certification requirement until the Ninth Circuit resolves Defendants' appeal.  As stated above, the Court's commandeering of State tax dollars unnecessarily consumes valuable resources, especially when the Court has yet to determine how it believes the money should be spent.  This alone favors the imposition of a stay.  Moreover, the unprecedented certification requirement will burden the State's high-ranking officials on a monthly basis.  In the meantime, Defendants will continue to implement and pursue options to fill staffing vacancies and provide constitutionally adequate care to patients in the Plaintiff class.

1   Accordingly, the equities in this case favor a stay of the orders pending appeal.

2          Similarly, the public interest in preserving the substantial expenses that will be incurred to

3   pay the fines that have not been shown to improve patient care is strong.  The Supreme Court has

4   consistently recognized that the public purposes of a state, including expenditures for its general

5   welfare, are within the broad discretion of the state legislature.  *Carmichael v. Southern Coal &*

6   *Coke Co.*, 301 U.S. 495, 514 (1937).  In other words, the question of whether an expenditure

7   serves a public purpose is one properly answered by the legislature, which must answer to the

8   public.  *Carmichael*, 301 U.S. at 515.  Here, the Court circumvents the legislative process by

9   unilaterally deciding how $111,939,244 and counting of taxpayer funds should be spent.  Because

10  the contempt proceedings were held without a jury, and because the Court—with Article III life

11  tenure—is insulated from the political process, the public interest cuts in favor of having the

12  Court's orders affecting hundreds of millions of dollars in tax revenue stayed pending review.

13  **II.     THE COURT SHOULD EXERCISE ITS DISCRETION TO WAIVE THE**
        **SUPERSEDEAS BOND REQUIREMENT**
14

15          As Plaintiffs themselves have recognized, there is no risk that Defendants will be unable to

16  pay the fines should they be found to be proper on appeal.  ECF No. 8266 at 7.  District courts

17  maintain discretion to set the amount of the supersedeas bond.  As this Court stated in *Hardesty v.*

18  *Sacramento Metropolitan Air Quality Management District*, No. 2:10-cv-02414 KJM KJN, 2019

19  WL 2715616 (E.D. Cal. June 28, 2019), "[t]he purpose of a supersedeas bond under Rule 62(b) is

20  to secure an appellee from the 'risk of a later uncollectible judgment and compensates him for

21  delay in the entry of the final judgment' that may result from the stay."  *Id*. at *3 (quoting *NLRB v.*

22  *Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).)  The Eastern District's Local Rules generally

23  require a bond in the amount of 125 percent of the judgment amount and an "'unsecured stay is

24  reserved for 'unusual circumstances' as determined in the court's discretion.'"  *Id.* at *3 (*quoting*

25  *Bolt v. Merrimack Pharm., Inc.*, No. S-04-0893 WBS DAD, 2005 WL 2298423, at *2 (E.D. Cal.

26  Sept. 20, 2005)); L.R. 151(d).  Here, however, there is no risk of an uncollectible judgment, and so

27  no bond should be required.  Moreover, Plaintiffs "do not object to a waiver of the bond

28  requirement."  ECF No. 8266 at 7:4-5.

1    In *Hardesty*, this Court considered the County's request to stay enforcement and waive the

2    supersedeas bond requirement under Federal Rule of Civil Procedure 62(b), applying the

3    following factors (referred to as the *Dillon* factors): (1) the complexity of the collection process;

4    (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree

5    of confidence that the district court has in the availability of funds to pay the judgment; (4)

6    whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a

7    waste of money; and (5) whether the defendant is in such a precarious financial situation that the

8    requirement to post a bond would place other creditors of the defendant in an insecure position.

9    *Hardesty* at *4; *see also Lewis v. County of San Diego*, No. 13-CV-02818-H-JMA, 2018 WL

10    1071704 (S.D. Cal. Feb. 27, 2018), at *2.  The key factors under the *Dillon* test are "the degree of

11    confidence that the district court has in the availability of funds to pay the judgment," and

12    "whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a

13    waste of money."  *Dillon v. City of Chicago*, 866 F.2d 902, 904-905 (7th Cir. 1988).

14    Here, as explained in prior briefing, the State can promptly pay the full amount of the

15    contempt fine once the appeal is resolved.  Indeed, unlike the County in *Hardesty*, the California

16    Legislature has accounted for the fines in the recently-enacted 2024 Budget Act by authorizing the

17    Department of Finance to order the State Controller to pay the fines. Provision 13 of Item 5225-

18    002-0001 of Section 2.00 of the Budget Act of 2024 provides:

19    
20    
21    
22    
23    
> Upon order of the Department of Finance, the Controller shall issue payment to the
> United States District Court for the Eastern District of California for any fines
> related to staffing vacancies ordered in *Coleman v. Newsom*. Payment shall be
> made from the General Fund. The Department of Corrections and Rehabilitation
> shall provide quarterly reports to the Joint Legislative Budget Committee on any
> fines paid to the court pursuant to this provision. Senate Bill No. 108, sec. 201
> (2024).

24    Both houses of the Legislature passed the bill containing this provision on Wednesday,

25    June 26, 2024, and the bill took effect immediately after the Governor signed the bill on June 29,

26    2024.

27    Separately, while municipalities may declare bankruptcy, states may not.  *See* 11 U.S.C. §§

28    109(c), 101(40), 903.  A bond pending appeal is therefore unnecessary because there is no risk that

1   the State could declare bankruptcy to evade or reduce its obligation, and the cost of obtaining a

2   bond would further deplete already scarce State resources. *See Dillon*, 866 F.2d at 904-05.

3   Indeed, similar concerns exist here as were present in *Hardesty*, where this Court stated that its

4   decision was "informed in part by the public policy implications of requiring a public entity to

5   divert a large sum away from public programs to secure a bond as large as this one would be."

6   *Hardesty* at *5.  The above-described processes exist to ensure payment of federal fines (and

7   writs), and accordingly, no bond should be required here.  Defendants, therefore, request that this

8   Court exercise its discretion to waive the supersedeas bond requirement pending the Ninth

9   Circuit's consideration of this Court's anticipated contempt finding.

10                                          **CONCLUSION**

11          For the reasons stated above, this Court should stay its Orders requiring certifications and

12  payment of fines related to staffing contempt and exercise its discretion to waive the supersedeas

13  bond requirement.  Defendants request that the Court rule on this motion to stay by July 3, 2024,

14  so that Defendants have adequate time to seek a stay in the Ninth Circuit if this motion is

15  denied.  Alternatively, if the Court is not inclined to rule quickly on this motion to stay to provide

16  Defendants sufficient time to seek a stay from the Ninth Circuit in advance of the July 8, 2024,

17  deadlines, Defendants request an extension of the July 8, 2024, certification and deposit deadlines

18  until July 25, 2024.  And should such an extension of the July 8, 2024, deadlines be granted,

19  Defendants request that the Court rule on this motion to stay by July 12, 2024, so that Defendants

20  have adequate time to seek a stay in the Ninth Circuit if this motion is denied.

21                                          **CERTIFICATION**

22          In preparing this filing, Defendants' counsel certify that they have reviewed the following

23  relevant orders:  547, 612, 640, 659, 694, 1010, 1055, 1262, 1383, 1773, 1929, 2204, 3613, 3666,

24  4539, 5171, 5307, 5564, 5592, 5711, 5786, 5850, 5852, 5886, 5928, 6050, 6214, 6296, 6312,

25  6427, 6794, 6846, 6863, 6886, 6938, 7035, 7456, 7504, 7699, 7704, 7742, 7766, 7804, 7806,

26  7807, 7856, 8087, 8116, 8147, 8182, 8291, and 8299.  This motion sets forth arguments that have

27  not been resolved by prior court orders as they are specifically tailored to address the merits of

28  Defendants' motion to stay the appealed June 25 and 27, 2024 order.  Counsel acknowledges this

1  Court's prior orders concerning staffing requirements, but those orders do not foreclose this

2  motion.  Counsel make this filing under their obligation to represent their clients zealously under

3  their right to relief under Fed. R. Civ. P. 62(c), *Operating Engineers Pension Trust v. A-C Co.*,

4  859 F.2d 1336, 1344 (9th Cir. 1988), and to satisfy Federal Rule of Appellate Procedure

5  8(a)(1)(A)'s requirement. Counsel certify that they have conducted a reasonable inquiry and have

6  determined that this filing is well grounded in fact, legally tenable, and not presented for an

7  improper purpose, to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

8  Fed. R. Civ. P. 11(b)(1); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990).  Each factual

9  contention made in this filing is supported by a reference to evidence in the record and the legal

10  contentions are warranted by existing law or by a nonfrivolous argument for extending,

11  modifying, or reversing existing law or for establishing new law.  Fed. R. Civ. P. 11(b)(2).

12

13  DATED: July 1, 2024                    ROB BONTA
                                           Attorney General of California
14

15
                                    By:_____/s/ *Elise Owens Thorn*_____
16                                         DAMON MCCLAIN
                                           Supervising Deputy Attorney General
17                                         ELISE OWENS THORN
                                           Deputy Attorney General
18                                         *Attorneys for Defendants*

19

20  DATED: July 1, 2024                    HANSON BRIDGETT LLP
21

22

23                                  By:_____/s/ *Paul B. Mello*_____
                                           PAUL B. MELLO
24                                         SAMANTHA D. WOLFF
                                           DAVID V. CASARRUBIAS-GONZALEZ
25                                         *Attorneys for Defendants*

26

27

28