1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:    (510) 280-2621

5  CLAUDIA CENTER – 158255
   DISABILITY RIGHTS EDUCATION
6  AND DEFENSE FUND, INC.
   Ed Roberts Campus
7  3075 Adeline Street, Suite 210
   Berkeley, California  94703-2578
8  Telephone:    (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
ADRIENNE PON HARROLD – 326640
AMY XU – 330707
ADRIENNE SPIEGEL – 330482
BENJAMIN W. HOLSTON – 341439
MAYA E. CAMPBELL – 345180
LUMA KHABBAZ – 351492
JARED MILLER – 353641
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830

11  Attorneys for Plaintiffs

13  UNITED STATES DISTRICT COURT

14  EASTERN DISTRICT OF CALIFORNIA

16  RALPH COLEMAN, et al.,

17          Plaintiffs,

18      v.

19  GAVIN NEWSOM, et al.,

20          Defendants.

Case No. 2:90-CV-00520-KJM-DB

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY MARCH 6, 2024 ORDER PENDING APPEAL**

Judge:   Hon. Kimberly J. Mueller

[4520481.4]

**INTRODUCTION**

Defendants have moved to stay the Court's March 6, 2024 Order ("March 6 Order" or "Order") pending appeal.  ECF Nos. 8269, 8246, 8144.  But they have not met their burden under any of the four factors that govern stays pending appeal, and most importantly have failed to show any likelihood that they will suffer irreparable injury.  The Court should deny Defendants' request in full.

## I.   DEFENDANTS HAVE NOT IDENTIFIED ANY IRREPARABLE HARMS, LET ALONE PROVED THAT SUCH HARMS ARE "PROBABLE."

The first and most important factor the Court must consider is "whether the [stay] applicant will be irreparably injured absent a stay." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Doe #1 v. Trump*, 957 F.3d 1050, 1061-62 (9th Cir. 2020).  "[S]imply showing 'some possibility of irreparable injury'" is not enough.  *Nken*, 556 U.S. at 434-35.  It is Defendants' burden to establish that "irreparable harm is probable, not merely possible," and they "cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record."  *Doe #1*, 957 F.3d at 1059-60.  None of the harms claimed by Defendants are irreparable, and the potential harms they do identify are either unsupported by evidence or too speculative to warrant a stay.

As an initial matter, Defendants repeatedly assert that the March 6 Order irreparably harms them because it prevents "self-assessment," "self-monitor[ing]," and "self-correct[ion]."  *See, e.g.*, ECF No. 8246 at 6, 7, 9, 10, 14.  This is simply false.  The March 6 Order temporarily prevents Defendants from conducting a duplicative and unnecessarily burdensome study that they repeatedly concede is intended for future use in this litigation.  *See, e.g., id.* at 6 (asserting that the Order "imposes strict limitations on Defendants' litigation strategy"), 15 (arguing that "the delay in resuming the expert tours could improperly deprive Defendants of the ability to support litigated positions").  In the meantime, Defendants retain the ability to study and evaluate their system through multiple other channels.  These include Defendants' regular formal and informal headquarters and regional oversight of institutional operations, their regional SPRFIT

1   audits of suicide prevention practices, and DAI audits of custody policies impacting

2   *Coleman* class members.  The parties and the Special Master have also spent countless

3   hours remediating Defendants' data system, including refining the court-ordered

4   Continuous Quality Improvement Tool, which Defendants will be able to utilize to assess

5   their own compliance and "self-correct" any deficiencies they identify.  Moreover,

6   Defendants are free to have their retained litigation experts continue studying their system,

7   by reviewing documents, data, and patient records.  The March 6 Order imposes no

8   limitations whatsoever on Defendants' ability to self-monitor—it only limits their ability to

9   conduct these particular litigation-focused tours.

10          Defendants next argue that the March 6 Order "interferes with CDCR's contract

11  with VRJS/Falcon."  ECF No. 8246 at 14.  According to Defendants, "CDCR contracted

12  for an assessment that would be based on, among other things, tours of their facilities," and

13  the March 6 Order denies CDCR "the benefit of that bargain."  *Id.*  But Defendants do not

14  provide the contract the Order allegedly "interferes with"—or cite any evidence

15  whatsoever to support their conclusory allegations of harm.  *Id.*  That fact alone is

16  sufficient grounds to reject this argument.  *See Doe #1*, 957 F.3d at 1059-60.  Even if

17  Defendants *had* supported their assertions with evidence, moreover, they do not explain

18  how or why the alleged "interference" with the contract is "irreparable" harm.  The fact

19  that the government has entered into a contract does not itself establish that it will be

20  irreparably harmed if that contract is not immediately fulfilled; Defendants "may yet

21  pursue and vindicate" their freedom to contract without the purported "interference" of the

22  March 6 Order during the course of the appeal.  *Washington v. Trump*, 847 F.3d 1151,

23  1168 (9th Cir. 2017) (holding that abstract injuries to the separation of powers "do not

24  alone amount to an injury that is 'irreparable'"); *see also Texas v. United States*, 787 F.3d

25  733, 767-68 (5th Cir. 2015) (executive-branch defendant's "claims that the injunction

26  offends separation of powers and federalism" did not establish irreparable injury because

27  "it is the resolution of the case on the merits, not whether the injunction is stayed pending

28  appeal, that will affect those principles").  If the mere fact that Defendants entered into a

1  contract were sufficient to establish irreparable harm, they could manufacture grounds for

2  a stay anytime the Court enters an order they do not like simply by contracting around it.

3      Defendants next assert that "further delays will impact the ability of Defendants'

4  experts to complete the system-wide evaluation of CDCR's MHSDS proposed by

5  VRJS/Falcon." ECF No. 8246 at 14. But delay itself is not irreparable harm; Defendants

6  must show that the specific *consequences* of delay amount to irreparable harm under the

7  circumstances. *See Texas*, 787 F.3d at 768 ("[T]he government's allegation that the

8  injunction is delaying preparatory work is unpersuasive. Injunctions often cause delays,

9  and the government can resume work if it prevails on the merits."); *Al Otro Lado v. Wolf*,

10  952 F.3d 999, 1008 (9th Cir. 2020) ("Even assuming that short term additional

11  administrative delays can in some circumstances constitute irreparable harm, the record

12  here does not show cognizable irreparable harm to the government").

13      The fact that Defendants waited *eleven weeks* to seek a stay of the March 6 Order

14  casts serious doubt on their assertions that the consequences of delay in this case will

15  amount to irreparable harm. *See* ECF Nos. 8246, 8144; *Beame v. Friends of the Earth*,

16  434 U.S. 1310, 1313 (1977) (delay in seeking a stay "vitiates much of the force of [the stay

17  applicants'] allegations of irreparable harm"). The only *potential* "impact[]s" of delay that

18  Defendants identify are the "diminished availability of experts" and "a disconnect"

19  between future data collection efforts and "other non-tour data previously collected by

20  VRJS/Falcon." ECF No. 8246 at 14-15. As to the alleged "diminished availability of

21  experts," Defendants concede that their consultants hired approximately thirty experts to

22  work on the VRJS/Falcon study. *Id.* Yet they have not identified a single one who is

23  likely to become permanently unavailable if the tours do not resume before Defendants'

24  appeal is resolved. *Id.* Nor have they identified anyone who could not be replaced in the

25  event they do become permanently unavailable. In fact, one of Defendants' consultants

26  concedes that "recruiting other experts is an option." Declaration of Elizabeth Falcon,

27

28

[4520481.4]

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY MARCH 6, 2024 ORDER PENDING
APPEAL

1  Psy.D. ("Falcon Decl."), ECF No. 8005-1 ¶ 6.[1]  And as noted above, Defendants' experts

2  are free to continue their work reviewing Defendants' system while the appeal is

3  pending—they are only precluded from conducting in-person tours of the facilities.  None

4  of this suggests that Defendants are likely to suffer irreparable harm absent a stay.

5      So too with Defendants' assertions about a "disconnect" in data collection.  *See*

6  ECF No. 8246 at 15.  The only evidence in the record that supports this argument is a

7  single sentence in Elizabeth Falcon's declaration stating, in full: "The further delays in

8  collecting data from the prison tours *could* create a disconnect with the other non-tour data

9  collected, leading to fragmented data sets that lack context, incomplete information, an

10  inability to capture evolving conditions, limited perspective, and missed opportunities for

11  follow-up investigations."  ECF No. 8005-1 ¶ 8 (emphasis added).  These vague,

12  conclusory assertions do not establish that the alleged harms are likely or that they would

13  be irreparable even if they occur.  It is simply not enough that the alleged harms "could"

14  arise absent a stay, as Dr. Falcon states in her declaration.  *Id.*  Defendants must prove that

15  these harms are "probable, not merely possible," and they have not done so.  *Doe #1*, 957

16  F.3d at 1059-60; *see also East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778

17  (9th.Cir. 2018) ("The claimed irreparable injury must be *likely* to occur; 'simply showing

18  some 'possibility of irreparable injury' is insufficient." (quoting *Nken*, 556 U.S. at 434)).

19  Defendants do not explain why, if they prevail on appeal, they and/or their consultants

20  could not simply collect new data that is complete and is not "fragmented," "lack[ing]" in

21

22  _____

23  [1] Even if the Court credits Dr. Falcon's conclusory assertions that this would require
   "extensive training that has already been provided to our existing group," ECF No. 8005-1
   ¶ 6, or that "[r]eplacing *a significant portion* of experts would result in a loss of specific

24  expertise in CDCR behavioral health practices and documentation," *id.* (emphasis added),
   this still would not suffice.  "Mere injuries, however substantial, in terms of money, time

25  and energy necessarily expended…are not enough."  *Al Otro Lado*, 952 F.3d at 1008
   (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  There is no evidence in the record

26  that Defendants or their contractors cannot provide the training again, or that any loss of
   "specific expertise" that does occur could not be repaired through the recruitment and

27  training of new experts.  Neither Defendants nor Dr. Falcon explain what she means by the
   loss of a "significant proportion" of experts, let alone establish that such "a significant

28  proportion" of experts are likely to become permanently unavailable.

1    "context," or "limited" in "perspective" (whatever these phrases mean).  Nor do they

2    explain why they could not use data collected by the Special Master's experts to fill in any

3    remaining gaps—besides a vague, conclusory, and unsupported assertion that "the Special

4    Master's monitoring reports….remain something of a black box for Defendants[.]"  ECF

5    No. 8246 at 15; *Al Otro Lado*, 952 F.3d at 1008-09 (denying stay because government

6    could have but chose not to mitigate its asserted harm by using data from third-party

7    sources, even though that data was "underinclusive" and "not entirely reliable" in certain

8    respects).

9        The Court should deny Defendants' motion because their alleged harms are neither

10    irreparable nor likely to occur in the first place.

11    **II.    DEFENDANTS HAVE NOT MADE THE REQUISITE "STRONG
         SHOWING" THAT THEY ARE "LIKELY" TO PREVAIL ON APPEAL.**

12

13        The "second most important" factor is "whether the stay applicant has made a

14    **strong showing** that he is **likely** to succeed on the merits"—not whether there is "a

15    substantial case for relief on the merits," as Defendants assert.  *Doe #1*, 957 F.3d at 1062;

16    *Nken*, 556 U.S. at 434 (emphasis added); ECF No. 8246 at 8.  The more lenient

17    "substantial case" standard is not appropriate "[w]here, as here, the showing of irreparable

18    harm is weak at best."  *Al Otro Lado*, 952 F.3d at 1010; *see* Section I, *supra*.  In such

19    cases, "the government must make a commensurately strong showing of a likelihood of

20    success on the merits to prevail under the sliding scale approach."  *Al Otro Lado*, 952 F.3d

21    at 1010.  The "substantial case" standard also should not apply where, as here, the district

22    court's order *preserved* the status quo and a stay would actually upend it by allowing the

23    challenged policy to be implemented, effectively granting in full the very relief Defendants

24    seek on appeal.  *See East Bay Sanctuary Covenant*, 932 F.3d at 778 (denying stay motion

25    where "a stay of the district court's order would not preserve the status quo: it would

26    upend it" by allowing defendant to implement the policy change at issue); *Washington*,

27    847 F.3d at 1168 (similar); *Doe #1*, 957 F.3d at 1068-69 (similar).

28        Regardless of which standard applies, however, Defendants do not come close to

[4520481.4]                                        5

1  meeting their burden.

2      **A.    The March 6 Order is Not Appealable.**

3        As an initial matter, Defendants have *no* chance of prevailing on appeal because the

4  Court of Appeals clearly lacks jurisdiction.  It is well settled that "[a]n order by a federal

5  court that relates only to the conduct or progress of litigation…ordinarily is not considered

6  an injunction and therefore is not appealable under [28 U.S.C.] § 1291(a)(1)."  *Nat'l*

7  *Wildlife Fed. v. Nat'l Marine Fisheries Svc.*, 886 F.3d 803, 825 (9th Cir. 2018) (quoting

8  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988)); *see also*

9  *Gon v. First State Ins. Co.*, 871 F.2d 863, 865-66 (9th Cir. 1989).  This category of

10  unappealable orders includes, *inter alia*, scheduling orders, *see Plata v. Brown*, 754 F.3d

11  1070, 1075 (9th Cir. 2014); orders staying discovery indefinitely pending resolution of

12  other case matters, *see Marchetti v. Bitterolf*, 968 F.2d 963, 964, 967 (9th Cir. 1992); and

13  orders precluding *ex parte* communication with potential witnesses, including those whom

14  a party would otherwise be free to contact, *see Allendale Mut. Ins. Co. v. Bull Data*

15  *Systems, Inc.*, 32 F.3d 1175, 1176-78 (7th Cir. 1994).  The March 6 Order serves precisely

16  the same purposes as the orders found to be unappealable in these cases.  The Court should

17  not permit Defendants to subject Plaintiffs and the Court alike to "a costly and time-

18  consuming detour" that would needlessly prolong, rather than resolve, this decades-old

19  case.  ECF No. 8144 at 7.

20      **B.    None of Defendants' Arguments Raise Even A Substantial Case on the Merits.**

21

22        Even if the Court of Appeals has jurisdiction—and it does not—it is extraordinarily

23  unlikely that Defendants will prevail on the merits.  Although case management orders like

24  the March 6 Order "must be a reasonable response to a specific problem" and "cannot

25  contradict any express rule or statute," *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016), they are

26  reviewed only for abuse of discretion, *id.* at 51.  Defendants do not argue that the March 6

27  Order contradicts any express rule or statute.  Instead, they offer a series of unsupported

28  arguments that the Court "did not correctly weigh its case-management interests against

1  Defendants' interests." ECF No. 8246 at 9. None of these arguments comes close to

2  establishing an abuse of discretion.

3        Defendants first note that this case has been in the remedial phase for nearly three

4  decades, and argue that this establishes, on its own, a substantial case on the merits. *Id*.

5  But it is Defendants' own fault that this case has dragged on for so long; their persistent

6  non-compliance with the Constitution says nothing about whether the Court gave sufficient

7  consideration to their interests when it issued the March 6 Order. Defendants cite no

8  authority whatsoever for this argument and the Court should summarily reject it.

9        Defendants next argue that the Court was required to make findings "independently

10  required under the Prison Litigation Reform Act (PLRA)" because "assessing the prison

11  system's delivery of mental health care independent of the court's monitor" is a "core

12  executive function." ECF No. 8246 at 10. But Defendants do not say what

13  "independently required" findings were omitted here, and it is clear in any event that the

14  prerequisites for an injunction under the PLRA are not required where the Court merely

15  exercises its "broad authority to manage complex litigation." *Plata*, 754 F.3d at 1077.

16  Defendants cite no authority for their conclusory assertion that "the court's case

17  management powers do not extend to enjoining conduct that does not, at this time, affect

18  Defendants' delivery of mental health care." ECF No. 8246 at 10. The premise of that

19  argument is preposterous in any event—the entire point of the tours, according to

20  Defendants themselves, is to compile evidence about their mental health system for future

21  use in this litigation, including by observing patients' confidential 1:1 appointments with

22  their mental health clinicians. *See* ECF No. 8246 at 6-8, 15; ECF No. 8005 at 14-15.

23  Without question, the Court's case management authority permits it to control the timing

24  and scope of discovery, including by postponing *all* discovery until other case matters are

25  resolved. *See Marchetti*, 968 F.2d at 964, 967. This authority is not limited to the types of

26  formal discovery outlined in the Federal Rules of Civil Procedure; it also extends to

27  informal discovery and can justify orders that prevent a party from conducting informal

28  investigations they would be free to pursue in other circumstances. *See, e.g., Allendale*, 32

[4520481.4]

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY MARCH 6, 2024 ORDER PENDING
APPEAL

1   F.3d at 1178-79 (dismissing appeal of order prohibiting *ex parte* communications with a

2   potential witness, notwithstanding objections that the order unreasonably burdened certain

3   parties' due process "right to investigate" the claims against them).

4           Defendants next suggest that the March 6 Order is unreasonable because it

5   "mandates a chronological impossibility; Defendants are not permitted to collect all the

6   evidence needed to support the threshold showing the Court has mandated as a condition to

7   resume those same tours." ECF No. 8246 at 11. But Defendants previously asserted that

8   their experts *already made the findings in question*—according to Defendants, those

9   findings are what justifies additional tours in the first place. *See, e.g.*, ECF No. 8005 at 6.

10  Defendants' own refusal to share the basis for these findings with the Court does not make

11  the Court's order unreasonable, and certainly does not support a stay. *See Al Otro Lado*,

12  952 F.3d at 1008 (government's "largely self-inflicted" harm "severely undermine[d]" its

13  argument for a stay). Regardless, Defendants do not explain why any tours at all are

14  needed to make the threshold showings that "Program Guide standards exceed nationwide

15  standards" and "whether, or how, those national standards themselves satisfy the Eighth

16  Amendment." ECF No. 8246 at 11. The Program Guide is available in digital form, as are

17  the Court's many orders in this case. *See, e.g.*, ECF No. 7333-1. Defendants and their

18  experts are free to review them from the comfort of their living rooms, and there is no need

19  for them to tour a single prison to determine what they require. Presumably the same is

20  true of the unidentified "nationwide standards" Defendants assert the Program Guide

21  "exceed[s]." ECF No. 8005 at 6.

22          Finally, Defendants assert that the tours are necessary for Defendants to "contest"

23  the Special Master's factual findings in various monitoring reports. ECF No. 8246 at 11-

24  12. But Defendants contest those findings all the time using data collected through their

25  existing extensive self-monitoring programs, as well as their own contemporaneous on-site

26  observations. *See, e.g.*, ECF Nos. 8179 (Defendants raising more than 100 pages of

27  objections to findings of Special Master's suicide prevention expert, using data and

28  information collected during Defendants' existing self-monitoring programs that are not

1   affected by the March 6 Order).  Defendants do not explain why their existing self-

2   monitoring programs are insufficient for this purpose, or why the extraordinarily

3   burdensome tours they propose are needed to contest the accuracy of the Special Master's

4   factual findings.  In any event, Defendants' repeated concessions that the tours are

5   intended to support their litigation positions—*see* ECF No. 8246 at 6, 11-12, 15—confirm

6   that the March 6 Order is an unappealable discovery order, and that Defendants have no

7   chance of success on the merits because the Court of Appeals lacks jurisdiction.  *See, e.g.*,

8   *Marchetti*, 968 F.2d at 967; *Allendale*, 32 F.3d at 1176-79.

9          The Court should deny Defendants' Motion because they have not even shown a

10  substantial case on the merits, let alone made the requisite "strong showing" that they are

11  "likely" to succeed on appeal.

12  **III.    PLAINTIFFS WILL SUFFER SUBSTANTIAL HARM AND THE PUBLIC
            INTEREST DOES NOT SUPPORT A STAY.**

13

14         The Court need not consider the final two factors of the *Nken* standard—"whether

15  issuance of the stay will substantially injure the other parties interested in the proceeding,"

16  and "where the public interest lies"—because Defendants do not come close to meeting

17  their burden on either the irreparable harm factor or the likelihood-of-success factor.  *See*

18  *Doe #1*, 957 F.3d at 1061-62; *Nken*, 556 U.S. at 434.  Regardless, Defendants' evidence

19  with regard to the final two factors is plainly insufficient.  Defendants assert that the tours

20  will not injure Plaintiffs in any way, but in doing so they ignore the abundant record

21  evidence establishing that the tours will unreasonably interfere with the already

22  substandard mental health treatment being provided to the Plaintiff class today.  *See* ECF

23  No 8110 at 13-17 (summarizing and citing to this evidence).  Defendants also do not

24  engage at all with the Court's findings that the proposed tours would be "at best…largely

25  redundant" and will amount to "a costly detour from the established roadmap to the end of

26  this litigation."  ECF No. 8144 at 10.  Such a "costly detour" would not be in the public

27  interest, particularly in light of the fact that the Court recently found Defendants in

28  contempt and ordered them to pay more than $100 million in fines.  *See* ECF No. 8291.

[4520481.4]

9

1 | The Court should deny Defendants' Motion in full.

2 | **CONCLUSION**

3 |      The Court should deny Defendants' Motion because they have not met their burden

4 | under the standard for a stay pending appeal.

5 | **CERTIFICATION**

6 |      Plaintiffs' counsel certifies that he reviewed the following orders in preparing this

7 | filing: ECF Nos. 8291, 8269, 8247, 8239, 8144, 8029, 7918, 7897, 7003.

8 |

9 | DATED:  July 3, 2024         Respectfully submitted,

10 |         ROSEN BIEN GALVAN & GRUNFELD LLP

11 |

12 |         By: */s/ Alexander Gourse*

13 |            Alexander Gourse

14 |         Attorneys for Plaintiffs