Rob Bonta, State Bar No. 202668
Attorney General of California
Monica N. Anderson, State Bar No. 182970
Senior Assistant Attorney General
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Namrata Kotwani, State Bar No. 308741
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
Lawrence M. Cirelli, SBN 114710
Paul B. Mello, SBN 179755
Samantha D. Wolff, SBN 240280
Kaylen Kadotani, SBN 294114
David C. Casarrubias-González, SBN 321994
1676 N. California Blvd., Suite 620
  Walnut Creek, California 94596
  Telephone: 925-746-8460
  Facsimile: 925-746-8490
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.<br><br>    Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY MARCH 6, 2024 ORDER**<br>**(ECF NO. 8144)**<br><br>Judge: Hon. Kimberly J. Mueller |

## INTRODUCTION

On May 22, 2024, Defendants moved to stay the March 6, 2024 order (March 6 Order or Order) denying Defendants' motion to lift the injunction halting the VRJS/Falcon tours. (ECF. No. 8246.) Plaintiffs oppose the request for leave and the motion to stay, arguing that "Defendants have not met their burden under any of the four factors that govern stays pending appeal, and most importantly have failed to show any likelihood that they will suffer irreparable injury." (ECF No. 8317.) Plaintiffs are mistaken, as explained below.

I. **PLAINTIFFS' CONTENTION THAT THERE IS A LACK OF IRREPARABLE HARM IS WRONG.**

Plaintiffs concede that the March 6 Order prevents Defendants from conducting their expert tours. (ECF No. 8317 at 2-3.) While they describe the tour ban as temporary, they point to nothing in the record where the Court unequivocally states that it will allow the tours to resume at some point in the future. Instead, the March 6 Order sets the threshold showing, requiring Defendants to prove the tours will bring Defendants into constitutional compliance before the Court will consider allowing the tours to move forward. (ECF No. 8144 at 10:20-23.)

Plaintiffs suggest that Defendants are not harmed by the stay because they retain the ability to study and evaluate the system through "other channels." (ECF No. 8317 at 2-3.) But those purported other channels only look at discreet issues, do not provide a holistic system-wide review, or do not take the place of or provide the information Defendants are entitled to gather through their experts.

Plaintiffs also suggest that Defendants have somehow failed to provide evidence of harm as a result of the Court's interference with Defendants' contract with its expert (ECF No. 8317 at 3), and cite to *Doe #1 v. Trump*. 957 F.3d 1050, 1059-60 (9th Cir. 2020). But that decision merely stands for the unremarkable proposition that there must be some evidence to support the claim of irreparable harm. The other cases Plaintiffs cite, which are focused on separation of powers issues, do not support Plaintiffs' position that irreparable harm cannot arise from this Court's preclusion of Defendants' experts' contract performance. Defendants' position is not that the tour ban causes irreparable harm because it offends separation of powers and federalism; rather, it is that the ban precludes Defendants' experts from completing a complex study that they had already commenced.

The harm arising from the tour ban is detailed at pages 13 through 16 of the motion to stay and those details demonstrate that Plaintiffs' position regarding a lack of harm or speculative harm is wrong. (ECF No. 8246.) Defendants' claim is supported by two declarations from expert Elizabeth Falcon, Psy.D., which detail the work the expert team has been contracted to perform and the real impacts the tour ban is actually having on the study. (*See* ECF Nos. 7884 and 8005-1

at 2-4.) While Plaintiffs may disagree with Dr. Falcon's statements, they have not shown that her statements are speculative or that the facts presented in support of Defendants' motion are likewise speculative or insufficient to support a stay of the tour ban. Examples of the harm include the inability to complete the system-wide evaluation of CDCR's MHSDS, which will interfere with Defendants' responsibility to self-monitor and self-correct any deficiencies; having to replace a significant proportion of experts which will result in a loss of specific expertise in CDCR behavioral health practices and documentation; loss of the insights and recommendations provided by the experts who have gone through the entire study without disruption are crucial for enhancing the effectiveness of the MHSDS program; and loss of the experts could result in a less comprehensive and thorough evaluation overall. (ECF No. 8005 at 12-13.)

Plaintiffs, in what seems to be a misunderstanding or mischaracterization of Defendants' position, argue that mere delay is insufficient to support a stay pending appeal. (ECF No. 8317 at 4.) But as Defendants have articulated, it is not the delay itself that is the irreparable harm; the harm comes from the real impacts of the delay and the fact that the delays are causing some of the experts' work to become stale. Contrary to Plaintiffs' position, these harms are not avoidable by simply re-doing the study.

Plaintiffs question whether Defendants will suffer irreparable harm as a consequence of waiting to complete the tours until the appeal has been decided. They contend that Defendants' filing of the motion to stay 11 weeks after the March 6 order "cast[s] serious doubt on their assertion." (ECF No. 8317 at 3.) Again, Plaintiffs misuse the import of the delay here, which Defendants describe quite clearly as the "many months" it will take to complete the appeal process. (ECF No. 8246 at 13.) Plaintiffs' citation to *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977), is distinguishable from the facts here as the delay in *Beame* related to an adverse economic impact, not the loss of experts and data. Plaintiffs assert that Defendants were required to present evidence regarding whether the experts could be replaced, but they provide no evidence that actually counters the Falcon declarations. Defendants' evidence of harm does not concern potential monetary losses—it concerns Defendants' ability to timely complete collection of evidence and data without unnecessary interference.

## II. PLAINTIFFS DO NOT REFUTE DEFENDANTS' SHOWING OF A SUBSTANTIAL CASE FOR RELIEF ON THE MERITS.

### A. Plaintiffs Err In Disregarding The Substantial Case On The Merits Standard.

Plaintiffs' argue that Defendants must show that they are likely to prevail on the merits of the appeal and that the "substantial case" on the merits standard does not apply. Plaintiffs are wrong.

Plaintiffs' position is based on the holding in *Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020), which is limited to the facts of that case where the irreparable harm was limited to potential delays in the review process of immigrants and the impact it would have on government resources. *Id*. at 1008. Also, that decision notes that the government could have taken steps to avoid the delays caused by the injunction. *Id*. at 1010. In this case, the tour ban precludes Defendants from moving forward to finish collecting evidence of the mental health system's performance.

Plaintiffs also, relying on *Al Otro Lado,* maintain that a stay of the order is improper because the March 6 order preserves the status quo. But that is also wrong. The tour ban does not preserve the status quo as the expert tours had started in July 2023 and the Court affirmatively intervened to halt their completion. Accordingly, in light of these facts, Plaintiffs' reliance on the "likely to prevail" standard is mistaken.

### B. The March 6 Order is Appealable.

Plaintiffs contend that the March 6 Order is not appealable because it is merely an order that relates to the conduct or progress of litigation. (ECF No. 8317 at 7.) But Plaintiffs' reading of the order is too narrow. As Defendants presented in their motion, although the Court framed the order as a "case management" order, the order actually *enjoined* Defendants from conducting the self-assessment of their own mental health care system, interfering with Defendants' rights to operate their prison system without Court intervention. *See Bell v. Wolfish*, 441 U.S. 520, 548 (1979). That the experts' study may also be used for the purpose of litigation does not render the Court's injunction an order that only relates to the conduct of litigation. The cases Plaintiffs cite to support their position do not require a different result. The March 6 Order is much more than a

simple case management order. It impeded Defendants' substantive rights in this case without making all necessary findings to support an injunction, including those independently required under the Prison Litigation Reform Act (PLRA).

### C. The March 6 Order is not a Discovery Limitation under the Court's Case Management Authority.

Plaintiffs attempt to rehabilitate the overreach in the March 6 Order by describing it as a discovery control mechanism. (ECF No. 8317 at 8-9.) But as Defendants have stated in their motion and above, the March 6 Order goes much further. The Order is not confined to limiting communications with expert or lay witnesses, or imposing timelines and limitations to make its impact less burdensome on the parties. Without support in the Federal Rules of Civil Procedure or any rules of court, the Order wholly precludes Defendants from completing an impartial, systemic evaluation by conditioning Defendants' ability to study and collect data from CDCR's prison system. (ECF No. 8144 at 6-7.)

While Plaintiffs assert that the threshold showing could be satisfied by simply comparing the Program Guide with national standards from the comfort of their living rooms, the order is certainly not that limited. (ECF No. 8144 at 10:20-23.)The Special Master and Plaintiffs are never so constrained and the March 6 Order does not discuss the nature or quality of the evidence it would require to decide the threshold showing.

Finally, Plaintiffs criticize Defendants' assertion that the expert tours are necessary to contest the Special Master's reports. (*Id.* at 9.) But Defendants' point here was directed at the Court's statement in the March 6 Order that Defendants do not need any additional evidence beyond what is available to them within the confines of the Special Master's monitoring. (ECF No. 8246 at 11.) The March 6 Order suggested that Defendants do not need access to their own prisons to assess compliance when they can simply read the Special Master's reports. (ECF No. 8144 at 8-10.) As detailed at pages 11 through 13 of the motion to stay, however, this is an improper constraint on Defendants' substantive rights in this case under the Order of Reference, which recognizes the parties will not always agree with the Special Master's monitoring or findings and sets forth a process to resolve such disputes. (ECF No. 8246 at 11-13, citing ECF

1 No. 640 at 4 and ECF No. 6230 at 2.)

### III. PLAINTIFFS HAVE NOT SHOWN THEY WILL BE HARMED BY A STAY OF THE MARCH 6 ORDER.

Plaintiffs assert that the tours will harm the Plaintiffs as a result of their impact on patient care. This position is nonsensical in the context of this case, where touring has been a constant for over twenty years. Plaintiffs even acknowledge that Defendants' expert tours are akin to the Special Master's tours "which are essential, unbiased evaluations of compliance that permit the Court to perform its constitutional obligation to oversee the ongoing remedy in this case." (ECF No. 8110 at 14.) Plaintiffs' arguments concerning theoretical disruptions are based on speculation and do not provide evidence of actual or likely harm to the mental health patients, nor can they given their support for other similar tours.

### IV. PLAINTIFFS DO NOT REFUTE DEFENDANTS' SHOWING THAT THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH HEAVILY IN DEFENDANTS' FAVOR.

Plaintiffs only site to the cost of the tours as support for their position that the public interest does not support the issuance of a stay. (ECF No. 8317 at 10.) But in reality, both the Court and Plaintiffs oppose not the expense to the State, but Defendants' ability to conduct their own independent review and observation of the care being provided in CDCR's institutions. Indeed, that is the basis for the Court's order. (ECF No. 8144 at 7-10.)

### CONCLUSION

Because a stay of the March 6 Order would allow Defendants to exercise their right to fully assess their mental health system pending the appeal of the Order, and for the reasons stated above and in the motion to stay and prior filings referred to therein, this Court should stay its Order precluding the expert tours pending the Ninth Circuit's decision.

### CERTIFICATION

In preparing this filing, Defendants' counsel certify that they have reviewed the following relevant orders: ECF Nos. 4361, 4539, 5131, 5711, 6017, 7003, 7807, 7897, 7918, 8005, 8029, 8144, 8239, 8247, 8269, 8291. This motion sets forth arguments that have not been resolved by

prior court orders as they are specifically tailored to address the merits of Defendants' motion to stay the appealed March 6 order. Counsel acknowledges this Court's prior orders concerning the subject expert tours (ECF Nos. 7897, 7918, 8029, and 8144), but those orders do not foreclose this motion. Counsel make this filing under their obligation to represent their clients zealously under their right to relief under Fed. R. Civ. P. 62(c), *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988), and to satisfy Federal Rule of Appellate Procedure 8(a)(1)(A)'s requirement. Counsel certify that they have conducted a reasonable inquiry and have determined that this filing is well grounded in fact, legally tenable, and not presented for an improper purpose, to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b)(1); and *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) (internal quotation marks omitted). Each factual contention made in this filing is supported by a reference to evidence in the record and the legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2).

DATED: July 10, 2024

ROB BONTA
Attorney General of California
DAMON MCCLAIN
Supervising Deputy Attorney General

**/s/ *Elise Owens Thorn***
Elise Owens Thorn
Deputy Attorney General
*Attorneys for Defendants*

HANSON BRIDGETT LLP

**/s/ *Paul B. Mello***
PAUL B. MELLO
SAMANTHA D. WOLFF
DAVID C. CASARRUBIAS
*Attorneys for Defendants*