1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RALPH COLEMAN, et al.,                    No. 2:90-cv-0520 KJM DB P

12                    Plaintiffs,              ORDER AND

13        v.                                   ORDER TO SHOW CAUSE

14   GAVIN NEWSOM, et al.,

15                    Defendants.

16

17        Defendants have not complied with multiple court orders requiring full implementation of

18   key remedial measures.  The court has found three defendants in contempt of court with respect to

19   orders requiring adequate mental health staffing levels in three of four levels of care in the

20   California Department of Corrections and Rehabilitation (CDCR) Mental Health Services

21   Delivery System (MHSDS).[1]  Based on its civil contempt finding, the court has ordered payment

---

[1] The three defendants are CDCR Secretary Jeff Macomber, Undersecretary for Health Care
Services for CDCR Diana Toche, D.D.S., and Deputy Director of the Statewide Mental Health
Program for CDCR Amar Mehta.  June 25, 2024 Order at 4, 72, ECF No. 8291.  These
defendants have assumed the positions occupied by other individuals in October 10, 2017, when
the court ordered "the CDCR defendants [to] take all steps necessary to come into complete
compliance with the staffing ratios in their 2009 Staffing Plan" within one year.  October 10,
2017 Order at 31, ECF No. 5711, appended as Attachment A to ECF No. 8291.  These three
defendants are successor defendants under Federal Rule of Civil Procedure 25; the contempt
findings reflect the failure of CDCR defendants in these roles to comply with the court's orders
over many years.  In an abundance of caution, the court limited its contempt findings to "CDCR

1

1    of fines.[2]  *See* June 25, 2024 Order, ECF No. 8291.  Contempt proceedings will also begin soon

2    in two other key components of the remedy if defendants do not achieve compliance.  *See*

3    Oct. 11, 2023 Order, ECF No. 8009 (requiring compliance with CDCR's psychiatric inpatient

4    program (PIP) Staffing Plan within six months, subject to maximum ten percent vacancy rate);

5    June 28, 2024 Order, ECF No. 8301 (finding non-compliance with October 11, 2023 order, fines

6    accumulating for four months will trigger enforcement, as necessary, by civil contempt); *see also*,

7    *e.g.*, Feb. 28, 2023 Order, ECF No. 7743 (requiring compliance with outstanding suicide

8    prevention measures, setting fine schedule enforceable through civil contempt).  Each step of the

9    way, defendants have filed multiple appeals, which of course is their right.  But the nature and

10   volume of those appeals signal defendants are pursuing them at least in part for improper

11   purposes, such as to delay and to frustrate completion of the remedy the court has required.

12        The court has done every single thing within its authority to allow defendants to achieve

13   compliance while still exercising a great degree of discretion and autonomy.  As the court

14   indicated recently, it issued its recent order imposing civil contempt fines reluctantly, without

15   wishing to do so but having exhausted virtually every other mechanism available to the court to

16   enforce its orders and hold defendants to account.  Since the court issued its civil contempt order,

17   defendants have done nothing to signal their acceptance of it or their willingness or determination

18   to finally achieve compliance, in any number of ways available to them.  Rather, as they seek

19   further delays, defendants have repeatedly asserted positions the court has found are not

20   supported by the record – a record defendants have had ample opportunity to develop.

21        As noted, the court has exhausted virtually every mechanism for prodding defendants to

22   finally achieve compliance.  There is one step the court has taken great pains to avoid.  But at this

---

defendants" but also expressly clarified that the requirements of the October 10, 2017 order apply to the other defendants in this action.  *See* ECF No. 8291 at 72.

[2] CDCR's MHSDS has programs at each of four levels of care: Correctional Clinical Case Management System (CCCMS), Enhanced Outpatient Program (EOP), Mental Health Crisis Beds (MHCBs), and inpatient programs that provide both acute and intermediate levels of inpatient care. *See generally* 2021 Program Guide Update, ECF No. 7333-1. As explained in the June 25, 2024 Order, the contempt proceedings to date have focused on inadequate mental health staffing levels across the CCCMS, EOP, and MHCB levels of care. ECF No. 8291 at 7 n.8.

1    point, having carefully considered what provisions to put in place for disbursement of the civil

2    contempt fines, the court concludes the only way to achieve full compliance in this action is for

3    the court to appoint its own receiver.  While the court describes below interim measures for

4    disbursement of the fines owing, it tentatively finds that further civil contempt proceedings are

5    unlikely to have the effect the court has intended, namely, to coerce compliance with its orders

6    focused on remediation of defendants' longstanding violation of the Eighth Amendment rights of

7    the class members in this case.  This order describes next steps toward appointment of a receiver,

8    and provides the parties an opportunity to respond with their positions in response to the court's

9    plan.

10   I.       BACKGROUND

11            Since its inception, the remedial phase of this action has proceeded under a "carefully

12   constructed process supervised by a Special Master that was designed to moderate court intrusion

13   in defendants' own remedial efforts and is arguably more respectful of defendants' knowledge of

14   their operations and their management prerogatives than a process whereby oversight is

15   transferred to a receivership; it is also more hopeful that defendants can best determine how to

16   meet their constitutional obligations to the seriously mentally ill inmates in their custody."

17   *Coleman v. Newsom*, 424 F. Supp. 3d 925, 929 (E. D. Cal. 2019).  The Special Master has served

18   the court since his appointment in February 1996, and he and his team of experts have extensive

19   knowledge of this action and the many obstacles to compliance that have plagued the remedial

20   process for almost three decades.  Notwithstanding the deference and respect afforded defendants

21   by the process the court and the Special Master have relied on to date, in at least three key areas

22   discussed below, defendants have not achieved the required remediation in critical areas.

23            A.       **Compliance with Court Orders to Fully Implement 2009 Staffing Plan**
24                     **Subject to Ten Percent Maximum Vacancy Rate**

25            Defendants have not succeeded in remedying unconstitutionally low mental health

26   staffing levels in most programs in their MHSDS.  In late 2023, the court held an evidentiary

27   hearing on enforcement of its prior orders directing defendants to fully implement their 2009

28   Staffing Plan subject to the required ten percent maximum vacancy rate.  ECF No. 8291 at 5.  On

1    March 8, 2024, the court issued a tentative ruling, "announcing [its] intention to hold some or all

2    of the defendants in contempt and impose fines . . . until defendants achieve compliance in

3    delivering the critically necessary, long-overdue staffing relief for members of the plaintiff class."

4    *Id*. at 5-6.  The court delayed issuing a final order and imposing the fines pending a sixty day

5    period of mediation supervised by a Ninth Circuit Mediator.  *Id*. at 6.  The mediation proved

6    unsuccessful, and the court issued its final order finding three defendants in contempt and

7    imposing fines.  *See generally* ECF No. 8291.  Defendants immediately appealed the court's

8    June 25, 2024 order and its June 27, 2024 order, ECF No. 8299, clarifying, at defendants' request,

9    certain provisions of the June 25, 2024 order.  ECF Nos. 8293, 8302.  Their motion to stay the

10   June 25, 2024 and June 27, 2024 orders is pending before the court.  ECF No. 8311-1.

11   Defendants' monthly vacancy report for May 2024 shows mental health staffing levels remain

12   below required levels across all classifications.  ECF No. 8305 at 5-9; *see also* ECF No. 8291 at

13   60-61.

14        **B.**     **Compliance with CDCR PIP Staffing Plan Subject to Maximum Ten Percent**
15                     **Vacancy Rate**

16        As noted above, on October 11, 2023, the court ordered defendants to come into complete

17   compliance with the CDCR PIP Staffing Plan, subject to a maximum ten percent vacancy rate,

18   within six months.  ECF No. 8009.  On June 24, 2024, the court issued an order finding

19   defendants out of compliance with the October 11, 2023 order and setting a fine schedule

20   enforceable through civil contempt if compliance is not achieved within four months.  ECF

21   No. 8301.  The four-month period started on July 1, 2024.  *Id*. at 2.

22        **C.**     **Suicide Prevention**

23        On February 3, 2015, without objection from either party, the court ordered defendants to

24   adopt thirty-two measures[3] recommended by the Special Master's suicide prevention expert,

25   Lindsay M. Hayes, and to work with Mr. Hayes and the Special Master to implement those

---

[3] In several orders, these measures are referred to as "recommendations."  As explained in this order, the court has issued several orders requiring defendants to implement the "recommendations"; for the sake of clarity the court will now and going forward refer to these as measures, rather than recommendations.

1    measures.  *See generally* Feb. 3, 2015 Order, ECF No. 5271.  In 2018, the court adopted

2    Mr. Hayes' recommendation to withdraw three of his recommendations, leaving twenty-nine

3    measures to be implemented.  Jan. 25, 2018 Order at 3, ECF No. 5762.  The court's

4    January 25, 2018 order was made following Mr. Hayes' second re-audit of suicide prevention

5    practices in CDCR prisons.  *Id*.  Since then, Mr. Hayes has conducted four additional re-audits.

6    *See* Jan. 6, 2023 Order at 3-5, ECF No. 7696 (discussing original audit report and reports on first

7    through fifth re-audits); *see also* ECF No. 8143-1 (Sixth Re-Audit Report).

8        On September 3, 2020, the court issued a comprehensive order confirming the
9        overall remedial framework "for the requirements defendants must satisfy to
10       achieve compliance with the Constitution and against which their progress toward
11       constitutional compliance is being measured." Sept. 3, 2020 Order, ECF No. 6846,
12       at 2. In that order, the court confirmed its findings regarding suicide prevention
13       articulated in [its] July 3, 2019 order [ECF No. 6212] that compliance with the court-
14       ordered suicide prevention recommendations was "long overdue" and that
15       "defendants must complete any outstanding work on those recommendations"
16       before Mr. Hayes' fifth auditing round began so that "Mr. Hayes can report full
17       compliance in his fifth re-audit report." *Id*. at 22.  The court specifically ordered that
18       "[t]he twenty-nine recommendations must be completely and durably implemented
19       to allow comprehensive assessment of their efficacy in reducing the ongoing number
20       of foreseeable and/or preventable inmate suicides in California's prison system." *Id*.

21   ECF No. 7696 at 5.  Defendants did not complete implementation of the required measures by the

22   time of Mr. Hayes' fifth re-audit.  *See* ECF No. 7743 at 4.

23       On February 28, 2023, with fifteen suicide prevention measures still outstanding, the court

24   ordered defendants to complete implementation of those measures by April 1, 2023.  *Id*.  The

25   court ordered that "[f]ines in the amount of $1,000 per outstanding [measure] per institution per

26   day" would start accumulating on April 1, 2023 and that its order would be enforceable, as

27   necessary, through contempt proceedings and payment of accumulated fines.  *Id*. at 4-5.

28       On March 1, 2024, as directed by the court, Feb. 26, 2024 Minute Order, ECF No. 8137,

29   the Special Master filed his Report on His Expert's Sixth Re-Audit and Update of Suicide

30   Prevention Practices in the Prisons of the California Department of Corrections and

31   Rehabilitation and Re-Audit of Suicide Prevention Practices in the Psychiatric Inpatient

5

1   Programs, together with the Sixth Re-Audit Report.[4]  ECF Nos. 8143, 8143-1.  Mr. Hayes

2   reported defendants still remained out of compliance with fourteen suicide prevention measures.

3   *See* ECF No. 8143-1 at, *e.g.*, 6-9.[5]  On April 1, 2024, defendants filed extensive objections to the

4   Sixth Re-Audit Report together with a request for judicial notice of several declarations.  ECF

5   Nos. 8179, 8180.  After additional briefing from the parties, on May 16, 2024, the court ordered

6   plaintiffs to respond to certain questions presented by some of defendants' objections and granted

7   defendants leave to respond to plaintiffs' additional brief.  May 16, 2024 Order at 5, ECF

8   No. 8238.  The first question posed by the court asked whether, even if the court sustained "all of

9   defendants' objections to specific findings in the Sixth Round Re-Audit Report, defendants would

10  remain out of compliance with" eight measures (numbers 3, 9, 18, 21, 28, 29, 31, and 32) and

11  whether "some or all of Mr. Hayes' findings of non-compliance . . . support contempt

12  proceedings because defendants would remain out of compliance even if the court were to sustain

13  all of their specific objections. . ."  *Id*.  The parties' briefing supports the conclusion defendants

14  remain out of compliance with more than a few key suicide prevention measures.  *See*, *e.g.*, ECF

15  Nos. 8282 at 11-13 (plaintiffs' summary of measures where non-compliance is factually

16  undisputed); *see also* ECF No. 8179 at, *e.g.,* 49-50, 70, 72-73, 83 (defendants' objections failing

17  to raise factual disputes with respect to some institutions and some measures for which Mr. Hayes

18  reported non-compliance).[6]  The parties' only dispute is whether the court should move forward

---

[4] For ease of reference throughout this order, the expert report, prepared by the Special Master's suicide prevention expert Lindsay M. Hayes, and docketed at ECF No. 8143-1, will be referred to as the Sixth Re-Audit Report or the Sixth Round Re-Audit Report.

[5] Throughout this order citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page numbers assigned by ECF and located in the upper right hand corner of the page.

[6] The pages of defendants' objections cited here are representative, but not an exhaustive list of suicide prevention measures where the record would show ongoing non-compliance even if defendants' specific objections are sustained.  Nothing in this order is a ruling on the merits of any of defendants' objections to Mr. Hayes' Sixth Re-Audit Report; the court will rule on those objections in a separate order.  While recognizing defendants raise several arguments in opposition to contempt proceedings, including a request to revisit standards long-settled in this action as well as for additional review of the current status of implementation of certain suicide prevention measures, for purposes of this order it is sufficient that defendants do not, in their briefing, make a factual showing of full compliance with the court's February 28, 2023 order.

1    with contempt proceedings, not over whether defendants have achieved the necessary

2    compliance.  *Compare generally*, *e.g.*, ECF Nos. 8179, 8282, 8307.

3          **D.**     **Other Delayed Remedial Efforts**

4          More comprehensively, four years ago the court issued an order that "review[ed] and

5    confirm[ed] the remedial framework for this action and the road map to the end of federal court

6    oversight."  *See generally* ECF No. 6846.  Today, in addition to the incomplete remedial work

7    discussed above, finalization of defendants' quality assurance process and the Continuous Quality

8    Improvement Tool (CQIT), and completion of data remediation required by defendants' knowing

9    presentation of misleading evidence to the court and the Special Master, *see generally*, *Coleman*

10   *v. Newsom*, 424 F. Supp. 3d 925, *supra*, are unduly delayed without reasonable justification.  The

11   data remediation project alone had an initial due date of the end of December 2023, *see* Oct. 11,

12   2023 Order at 2, ECF No. 8008), citing Apr. 29, 2022 Minute Order, ECF No. 7541; at a recent

13   status conference defendants estimated it will take at least another two years.  *See* Apr. 2, 2024

14   Order at 6, ECF No. 8181 Data remediation is a complex task, but it could be much further along

15   if not complete if defendants had brought a single-minded focus to cooperating with the Special

16   Master to get the job done.  *See*, *e.g.,* Feb. 1, 2024 Order at 3-5 (overruling defense objections to

17   Special Master's Status Report and two recommendations contained therein); May 24, 2023

18   Order at 6-9 (clarifying purpose of data remediation).

19         **E.**     **Summary**

20         Defendants are not in compliance with three components of the remedy in this case.  They

21   are in contempt for failure to comply with respect to staffing generally, and on its current course,

22   the court is moving toward contempt proceedings in PIP staffing and suicide prevention, as well.

23   Additionally, the core remedial work of data remediation, full development of an adequate quality

24   assurance program, and transition of monitoring from the Special Master to defendants also is

25   stalled in a seemingly endless cycle of conflict and delay.

26   /////

1   **II.      DISCUSSION**

2        **A.      Appointment of a Receiver**

3        "[I]f government fails to fulfill [its] obligation to [provide adequate mental health care],

4   the courts have the responsibility to remedy the resulting Eighth Amendment violation. . . . Courts

5   faced with the sensitive task of remedying unconstitutional prison conditions must consider a

6   range of available options. . . ." *Brown v. Plata*, 563 U.S. 493, 511 (2011).  As this court

7   explained in its June 25, 2024 order:

8        State officials have "primary responsibility for curing" constitutional violations in
9        the scope of their jurisdiction. *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978) (citing
10       *Milliken v. Bradley*, 433 U.S. 267, 281 (1977)), *abrogated on other grounds by*
11       *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024). Where
12       those officials "fail in their affirmative obligations . . . judicial authority may be
13       invoked." *Id*. (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1,
14       15 (1971)). Where a court has issued orders to remedy identified constitutional
15       violations and those orders remain disobeyed, the court has "ample authority to go
16       beyond earlier orders" and enter an order necessary to "bring an ongoing violation
17       to an immediate halt." *Id*. at 687 & n.9.

18   ECF No. 8291 at 29.  Indeed, the court is required to take further action where unconstitutional

19   conditions remain.  *Brown*, 563 U.S. at 511.  Several equitable tools are available to a court to

20   obtain obedience to its orders and bring continuing constitutional violations "to an immediate

21   halt."  *Hutto*, 437 U.S. at 687 & n.9.  These tools include contempt proceedings, *see*, *e.g.*,

22   *Shillitani v. United States*, 384 U.S. 364, 370 (1966), appointment of a special master or

23   appointment of a receiver, *see*, *e.g.*, *Brown v. Plata*, 563 U.S. 493, 511 (2011).  Each of these is a

24   distinct remedy to which different standards apply.  *Cf.*, *e.g.*, *Morgan v. McDonough*,

25   540 F.2d 527, 533 (1st Cir. 1976) (affirming appointment of receiver where "more usual remedies

26   contempt proceedings and further injunctions were plainly not very promising, as they invited

27   further confrontation and delay").

28        The court's appointment of a Special Master thirty years ago deployed one of the

29   available tools.  The Special Master's role has been to supervise development and implementation

30   of plans required to remedy the extensive constitutional violations identified at the trial of this

31   matter and in the court's September 13, 1995 order, *Coleman v. Wilson*, 912 F. Supp. 1282

8

1    (E.D. Cal. 1995).  *See* Dec. 11, 1995 Orders, ECF Nos. 639, 640.  The first Special Master was J.

2    Michael Keating, Jr.; his successor, Matthew A. Lopes, Jr., was appointed to the Special Master's

3    team in early 1996 and succeeded Mr. Keating as Special Master in November 2007, *see* Apr. 24,

4    2024 Order at 8-9, ECF No. 8212.  Both successfully supervised defendants in the development

5    of the remedial framework for this action, which consists of primary remedial plans developed by

6    defendants and approved by the court, as well as other additional remedial measures in aid of

7    implementation of defendants' primary remedial plan for the delivery of mental health care, the

8    Program Guide.  *See* ECF No. 6846 at 2-6.  The Special Master has continued to supervise

9    implementation through now thirty rounds of monitoring.

10          While the court will continue to rely on the Special Master and his team of experts, it has

11   become evident defendants are no longer cooperating fully with the Special Master to allow his

12   performance of his duties.  Certain defendants and their representatives also, increasingly, have

13   declined to treat the Special Master and members of his team with the respect they are due in

14   spite of repeated cautions from the court.  *See*, *e.g.*, Reporter's Transcript of Proceedings at

15   17:14-18:16, ECF No. 8244 (striking footnote concerning Special Master in defense briefing as

16   "but one facet of an approach that is corrosive, unprofessional and disappointing"); *see also, e.g.*,

17   Nov. 16, 2023 Order at 18-20, ECF No. 8069 (addressing defendants' failure to continue

18   discussions with the Special Master; reminding defendants "Special Master is not a party in this

19   action; he is an arm of the court" and defendants "are required to cooperate fully in response to

20   the Special Master's requests and direction").

21          The court also has deployed the additional tool of civil contempt, first indicating its intent

22   to hold defendants in contempt in an effort to coerce defendants into complying with their own

23   court-ordered remedial plans.  Now that the court has found defendants in contempt and imposed

24   fines with respect to part of the staffing remedy, there is no indication defendants are motivated as

25   result to focus their efforts on coming into compliance.  There also is no indication the threat of

26   civil contempt and fines with respect to another part of the staffing remedy—as well as the

27   required suicide prevention remedial measures—will spur defendants to compliance.  Rather, the

28   /////

1    defendants appear to see each new court order as further fuel to stoke the fire of this seemingly

2    intractable litigation.

3         With respect to the court's contempt order regarding staffing, for example, in their

4    pending motion to stay, defendants call into question whether they can comply with both the

5    Eighth Amendment and state law, and they contend contempt is not an appropriate remedy if they

6    have "pursued all avenues within their legal authority."  ECF No. 8311-1 at 10.  Defendants had

7    an opportunity at evidentiary hearing to present evidence in support of their claim then that

8    impossibility prevented their compliance and they have in fact taken all steps within their legal

9    authority to address the ongoing Eighth Amendment violation in inadequate mental health

10   staffing levels in California's prisons.[7]  And it is settled that "otherwise valid state laws or court

11   orders cannot stand in the way of a federal court's remedial scheme if the action is essential to

12   enforce the scheme."  *Stone v. City and County of San Francisco*, 968 F.2d 850, 862 (9th Cir.

13   1992) (quoting *North Carolina State Bd. Of Educ. v. Swann*, 402 U.S. 43, 45 (1971).  "Elected

14   officials must obey the Constitution."  *Morgan v. McDonough*, 540 F.2d 527, 534 (citing , *inter*

15   *alia*, *United States v. Nixon*, 418 U.S. 683 (1974); *Powell v. McCormack*, 395 U.S. 486 (1969);

16   *Reynolds v. Sims*, 377 U.S. 533 (1964)).

17        Because a Special Master's supervision and the threat of civil contempt have not

18   prompted defendants' compliance with the court's order, the court believes it now has no option

19   but to entertain a receivership.  *See Brown v. Plata*, 563 U.S. at 511 ("Courts faced with the

20   sensitive task of remedying unconstitutional prison conditions must consider a range of available

21   options, including appointment of [a] receiver[ ].")  "[R]eceiverships are recognized equitable

---

[7] Only one defendant, Dr. Amar Mehta, testified at hearing.  As the court found, "[a]ll the other defendants in this action are at higher levels of authority within CDCR or the State of California, with more authority than Dr. Mehta and without question more options available to them.  The absence of any testimony from any of these defendants leaves a gaping hole in the record regarding what all available reasonable steps actually are."  ECF No. 8291 at 58.  Even Dr. Mehta's testimony that "he could not think of anything else he could do 'at [his] level' and 'pursuant to the rules that apply' to him, to fill staffing vacancies to court-ordered levels", *id*., is called into question by defendants' identification in their supplemental brief filed June 4, 2024 of several steps they have taken since the end of the contempt proceedings to improve mental health staffing levels.  *See* ECF No. 8260 at 7-9.

1    tools available to the courts to remedy otherwise uncorrectable violations of the Constitution or

2    laws." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1093-94 (9th Cir. 2010) (collecting cases).

3    Receivers, of course, have greater powers than a Special Master, and can take steps necessary to

4    enforce compliance with federal law. *See*, *e.g.*, *Morgan*, at 533 (citing cases).  While the court

5    until now has maintained its principled belief that a Special Master model is preferable in this

6    case, given the authority reserved to the defendants who must ultimately implement a sustainable

7    constitutionally compliant remedy, defendants have repeatedly demonstrated they simply are not

8    willing to exercise their authority to complete the remedy required; now, at this late date, they

9    apparently contend they lack any of the requisite authority under state law. *See* ECF No. 8311-1

10   at, *e.g.*, 9-10.[8]  Enough is enough.  The court has been exceedingly tolerant, but it cannot and will

11   not allow defendants to exploit the court's patience any longer.

12          As the trial court explained in *Plata*, the court applies a "multi-pronged test . . . to guide

13   the trial courts in making th[e] often difficult determination" whether to appoint a receiver.  *Plata*

14   *v. Schwarzenegger*, 2005 WL 2932253, slip op. at 23 (N.D. Cal. 2005).  The test includes the

15   following elements, the first two of which are given predominant weight:

16          (1) Whether there is a grave and immediate threat or actuality of harm to plaintiffs;

17          (2) Whether the use of less extreme measures of remediation have been exhausted
18          or prove futile;

19          (3) Whether continued insistence that compliance with the Court's orders would lead
20          only to confrontation and delay;

21          (4) Whether there is a lack of leadership to turn the tide within a reasonable period
22          of time;

23          (5) Whether there is bad faith;

24          (6) Whether resources are being wasted; and

25          (7) Whether a receiver is likely to provide a relatively quick and efficient remedy.

26   *Id*.

27   /////

_____

        [8] It should go without saying, but the court does not "concede" that defendants lack the requisite authority to comply with their constitutional obligations.  *Cf*. ECF No. 8311-1 at 10.

1    In this case, the record is replete with evidence of both threatened and actual harm to

2   members of the plaintiff class as a result of defendants' ongoing non-compliance with the court's

3   orders to fulfill the defendants' 2009 Staffing Plan and satisfy a maximum ten percent staffing

4   vacancy rate ordered twenty-two years ago.  In addition to the court's voluminous findings of

5   non-compliance in a separate order following the staffing contempt proceedings, ECF No. 8291,

6   as discussed above defendants have not yet, in over nine years, achieved full compliance with

7   court-ordered suicide prevention measures and the threat of coercive contempt sanctions has so

8   far been insufficient to motivate defendants to comply with the court's orders.  As the court

9   reviewed with the parties in a special status hearing on June 27, 2024, the record also shows

10   defendants are not close to compliance with the October 11, 2023 order requiring adherence to

11   their 2021 CDCR PIP Staffing Plan and the required maximum ten percent vacancy rate.  *See*

12   ECF No. 8254 at 11-15 (monthly vacancy report for April 2024); Reporter's Transcript of

13   Proceedings at 6:25-9:6, ECF No. 8315.

14    The court has made dozens of orders directing less extreme measures, including  first

15   threatening and then imposing the coercive civil contempt sanctions to remediate ongoing

16   constitutional staffing violations, threatening coercive contempt sanctions to remedy non-

17   compliance with required suicide prevention remedies and now moving forward to enforce PIP

18   staffing requirements.  Despite the court's persistent efforts, it tentatively concludes those efforts

19   are in virtually all material respects futile.

20    It also appears completely clear at this point that the court's continued insistence that

21   defendants comply with its orders will lead only to further confrontation and delay.  For some

22   time now, defendants have persisted in carrying out a "distracting and costly scorched earth

23   litigation strategy," which has consumed countless hours of valuable court time and party

24   resources as defendants reflexively appeal many if not most of the court's orders and even some

25   of its non-orders -- without materially altering the standards that guide remediation in this action.

26   Jan. 6, 2023 Order at 3-4, ECF No. 7699.[9]  Even as the court must proceed with enforcement of

[9] Over the past decade, defendants have filed at least fifteen appeals, which went nowhere --
many of which the court cited in its January 6, 2023 Order, ECF No. 7699 at 3 n.2.  *See* Order,

1    its orders that have been disobeyed, it is deeply concerned that seriatim contempt proceedings to

2    coerce compliance will lead to even more unending litigation, litigation, litigation.  This is not to

3    minimize defendants' rights to seek appellate review and to be heard.  The court has no intent to

4    deprive defendants of those rights.  But federal courts have both statutory and inherent power to

5    put an end to litigation a party employs to improper ends.  *See generally, e.g.*, *Chambers v.*

6    *NASCO, Inc.*, 501 U.S. 32 (1991).  The right to appeal is not a right to make constant

7    interruptions; the right to be heard is no right to be heard endlessly.

8           While the court has retained the hope through successive rounds of gubernatorial

9    appointees that defendants would demonstrate the leadership required to turn the tide, that hope is

10   fast diminishing and is on the verge of evaporating.  Any optimism has been eroded by conduct

11   well-documented in the record.  Over the past dozen years defendants or their counsel have

12   (1) violated ethical rules meant to constrain counsel, *see Coleman v. Brown*, 938 F. Supp. 2d 955,

13   962-969 (E. D. Cal. 2013) and, more recently, (2) knowingly presented misleading information to

14   the court and the Special Master, *see generally Coleman v. Newsom*, 424 F. Supp. 3d 925

---

*Coleman v. Newsom*, No. 22-15570 (9th Cir. filed Aug. 17, 2022), Dkt. No. 7 (voluntarily dismissed); Order, *Coleman v. Newsom*, No. 22-15369 (9th Cir. filed Oct. 12, 2022), Dkt. No. 12 (dismissed on defendants' motion); Order, *Coleman v. Newsom*, No. 22-15065 (9th Cir. filed Feb. 28, 2022), Dkt. No. 8 (voluntarily dismissed); Order, *Coleman v. Newsom*, No. 21-16884 (9th Cir. filed Oct. 12, 2022), Dkt. No. 19 (dismissed on defendants' motion); Order, *Coleman v. Newsom*, No. 21-15039 (9th Cir. filed May 17, 2021), Dkt. No. 17 (dismissed on stipulation for voluntary dismissal); Order, *Coleman v. Newsom*, No. 20-16734 (9th Cir. filed Oct. 5, 2022), Dkt. No. 83-1 (dismissed as moot); Order, *Coleman v. Newsom*, No. 20-16062 (9th Cir. filed Oct. 9, 2022), Dkt. No. 11 (dismissed on defendants' unopposed motion); Order, *In re: Gavin Newsom*, No. 19-71493 (9th Cir. June 19, 2019), Dkt. No. 8 (petition for writ of mandamus denied); Order, *Coleman v. Newsom*, No. 19-15006 (9th Cir. Jan. 4, 2020), Dkt. No. 35 (voluntarily dismissed); Order, *In re: Edmund G. Brown, Jr.*, No. 18-72816 (9th Cir. Oct. 18, 2018), Dkt. No. 5 (petition voluntarily withdrawn); Order, *Coleman v. Newsom*, No. 18-16445 (9th Cir. Dec. 24, 2019), Dkt. No. 45-1 (dismissed for lack of jurisdiction); Orders, *Coleman v. Brown*, No. 17-17328 (9th Cir. Nov. 28, 2018), Dkt. No. 50 (orders affirmed), (9th Cir. Dec. 31, 2018), Dkt. No. 54 (motion to stay mandate for 90 days or until final disposition by U.S. Supreme Court granted) & (9th Cir. Feb. 14, 2019), Dkt. No. 56 (motion to lift stay of mandate granted); Order, *Coleman v. Brown*, No. 17-16080 (9th Cir. Nov. 28, 2018), Dkt. No. 70-1 (dismissed for lack of jurisdiction); Order, *Coleman v. Brown*, Nos. 13-16637 and 14-16691 (9th Cir. filed Jan. 14, 2015), Dkt. No. 9 in No. 14-16691 (stipulated dismissal).
        As of the date of this order, defendants have six appeals from orders of this court pending in the United States Court of Appeals for the Ninth Circuit, all filed since May 2023:  *Coleman v. Newsom*, Nos. 23-15755, 23-2485, 24-2263, 24-2938, 24-3707, and 24-4023.

1    (E.D. Cal. 2019).  This deeply disappointing conduct itself has caused unnecessary delays.  Most

2    recently, the court has had to signal it will impose monetary sanctions on defense counsel if the

3    "recurring pattern of defendants' disregard for this court's orders, which appears to be either

4    willful or a significant derogation of duty on the part of counsel" continues.  May 16, 2024 Order

5    at 6, ECF No. 8239.  *See also* ECF No. 8212 at 5-7 (noting "at least one serious inconsistency"

6    between position taken by defendants on paper versus position on same issue taken in open court

7    and observing that "defendants' strategy for ending [judicial] oversight appears focused primarily

8    on litigation rather than expedited compliance with . . . longstanding remedies in this action,"

9    which "inevitably delay[s] progress toward the end of judicial oversight"; ECF No. 8069, *supra*;

10   Apr. 13, 2023 Order at 7, ECF No. 7808 (noting defendants' false contention that Special Master

11   failed to identify source of data relied on and defendants' failure to acknowledge Special Master's

12   response to their objection); Apr. 12, 2023 Order at 10, ECF No. 7807 (defendants cannot ignore

13   existing court orders and must, instead, seek relief if warranted); Feb. 20, 2019 Order at 4-7, ECF

14   No. 6096 (reminding defense counsel of ethical obligations under Rule 11 given their "selective

15   quoting" of hearing transcript, disregard of prior court orders, and "treatment of potentially

16   privileged information during . . independent investigation"; Nov. 16, 2017 Order, at 7, 9-10,

17   ECF No. 5726 (discussing defendants' disregard for law of the case and prior relevant court

18   orders).   Against this backdrop, subject to hearing from the parties, the court sees no choice but

19   to conclude that professional, neutral leadership, external to the named defendants and their

20   institutions, will be necessary to complete remediation in this action on a reasonable timetable, as

21   an alternative to the serial contempt proceedings the court is otherwise prepared to convene.  *See*

22   *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882,  897 (E. D. Cal./N. D. Cal. 2009) (citing *Plata*

23   *v. Schwarzenegger*, slip op. at 33) (*Plata* trial "court held the contempt remedy in abeyance after

24   concluding that a finding of contempt not a prerequisite to appointment of a receiver).  Given the

25   history of this case, the court tentatively concludes that compared to the current pace of

26   remediation a receiver would provide a more prompt and efficient complete remedy.

27   /////

28   /////

1    While any receiver would "be imbued with the power and authority to act in the name of

2  the Court as the Court's officer, ultimate authority, as well as responsibility" would of course

3  continue to lie with court alone.  *Plata*, 2005 WL 2932253, slip op. at 33.

4        **B.        Interim Procedure Pending Appointment of a Receiver**

5        To ensure continued progress toward a complete staffing remedy, pending the court's

6  consideration of possible appointment of a receiver, the following procedures are effective

7  immediately:

8        • Defendants and plaintiffs shall meet and confer under the supervision of the

9          Special Master to develop and submit to the court within thirty days a written plan

10         for expenditures of accumulated fines, including but not limited to requests for any

11         necessary waivers of state law, to remedy ongoing mental health understaffing in

12         the CDCR units covered by the 2009 Staffing Plan.

13       • The court will convene a hearing to review the plan and clarify implementation

14         details as needed.  Following hearing the court will issue an order approving

15         expenditures.

16       • The Special Master will oversee court-approved expenditures under the plan

17         adopted by the court.

18       For the reasons explained above and good cause appearing, IT IS HEREBY ORDERED

19  that:

20       1.    Within twenty-one days from the date of the of this order the parties shall
21             SHOW CAUSE in writing, if any they have, why the court should not
22             initiate formal proceedings to appoint a temporary receiver to assume
23             responsibility, with this court's oversight, for completion of all tasks
24             necessary to implementation of the remedy in this action.  The parties may
25             file simultaneous replies within fourteen days after their first responses are
26             filed.

27       2.    The order to show cause is set for hearing on August 20, 2024 at
28             10:00 a.m. in Courtroom # 3.

29             The following interim procedures are effective immediately pending
30             appointment of a temporary receiver:

31             a.    Within thirty days from the date of this order the parties shall meet and
32                   confer under the supervision of the Special Master to develop and submit

15

to the court a written plan for expenditure of accumulated fines, including but not limited to requests for any necessary waivers of state law, to remedy ongoing mental health understaffing in the CDCR units covered by the 2009 Staffing Plan.

b. The court will convene a hearing to review the plan and clarify implementation details as needed.  Following hearing the court will issue an order approving expenditures.

c. The Special Master will oversee court-approved expenditures under the plan adopted by the court.

IT IS SO ORDERED.

DATED:  July 12, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE

16