1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
    1300 I Street, Suite 125
6   P.O. Box 944255
    Sacramento, CA 94244-2550
7   Telephone:  (916) 210-7318
    Fax:  (916) 324-5205
8   E-mail:  Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

HANSON BRIDGETT LLP
LAWRENCE M. CIRELLI, SBN 114710
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS-GONZALEZ,
SBN 321994
SAMANTHA M. BACON, SBN 351561
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone:  (925) 746-8460
 Fax:  (925) 746-8490
 E-mail:  PMello@hansonbridgett.com
*Attorneys for Defendants*

9

10                  IN THE UNITED STATES DISTRICT COURT

11              FOR THE EASTERN DISTRICT OF CALIFORNIA

12                         SACRAMENTO DIVISION

13

14

15  **RALPH COLEMAN, et al.,**

                                         Plaintiffs,
16

17          **v.**

18  **GAVIN NEWSOM, et al.,**

19                                       Defendants.

2:90-cv-00520 KJM-DB (PC)

**DECLARATION OF AMAR MEHTA, M.D. IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S TELEMENTAL HEALTH REPORT AND REVISED POLICY**

20

21

22

23

24

25

26

27

28

1

Decl. Mehta ISO Defs.' Resp. Pls.' Objections Special Master's Telemental Health Report & Revised Policy (2:90-cv-00520 KJM-DB (PC))

19900160.1

1

2 **DECLARATION OF AMAR MEHTA, M.D.**

3      I, Amar Mehta, M.D., declare:

4      1.      I am the Deputy Director of the Statewide Mental Health Program for the

5 California Department of Corrections and Rehabilitation (CDCR).  I submit this declaration in

6 support of Defendants' Response to Plaintiffs' Objections to the Special Master's Telemental

7 Health Report and Revised Policy.  I have personal knowledge of the statements in this

8 declaration and could testify to them if called to do so.

9      2.      I understand that Plaintiffs claim teleclinicians will not be able to advocate for

10 their patients, form working relationships with custody staff, or de-escalate conflicts.  CDCR's

11 decades of experience providing patients with care from telepsychiatrists shows that Plaintiffs'

12 claim is incorrect, and the clinical literature does not support their claim.  Based on CDCR's

13 experience with the telemodality, teleproviders do advocate for their patients on a daily basis,

14 form working relationships with custody staff, and are often able to de-escalate conflicts

15 involving their patients.  In fact, having a familiar clinician assist in de-escalating their own

16 patient via teleconnection is arguably superior to calling in another clinician with less patient

17 familiarity merely because they happen to be on site.

18      3.      The Special Master's proposed requirement that one full-time equivalent on-site

19 primary clinician be assigned to each Restrictive Housing Unit (RHU) unit is problematic for two

20 reasons.  First, the requirement does not rest on any evidence or common community standards,

21 and in fact runs counter to some standards such as the continuity of care.  While it is not a strict

22 requirement, I have treated my own patients as a telepsychiatrist as they progressed through

23 administrative segregation (now called RHU), and based on my experience, an on-site provider

24 would not necessarily be better than someone more familiar with the patient's past behavior, or

25 the history of medications and other treatments, such as the patient's assigned teleprovider.

26 Second, per the Special Master's proposed policy, the total number of FTE clinicians assigned to

27 the RHU should be based on "the number of RHU beds in a particular institution."  (ECF No.

28

Decl. Mehta ISO Defs.' Resp. Pls.' Objections Special Master's Telemental Health Report & Revised Policy (2:90-cv-00520 KJM-DB (PC))

19900160.1

1   8165 at 32; ECF No. 8165-1 at 16.)  This contradicts the 2009 Staffing Plan, which bases staffing

2   ratios on the patient population, not on the number of beds in a particular unit.  (ECF No. 3693 at

3   20, 31, 33, 39, 41 (noting the ratios are based on the number incarcerated persons with a certain

4   housing unit classification).)  Therefore, allocating clinician positions to each RHU based on the

5   number of beds would be inconsistent with the 2009 Staffing Plan.

6         4.      I am aware that Plaintiffs claim that requiring in-person attendance at IDTTs for

7   CCCMS patients would not be burdensome because they typically have only one IDTT per year.

8   CCCMS patients also receive IDTTs when they transfer to new institutions, or when a higher

9   level of care is being considered, or when a chrono for a housing change or other accommodation

10   is considered by the treatment team, or after various other triggers.  So it is possible, and in fact

11   expected, that more than one annual IDTT may be required for CCCMS patients.  In past

12   discussions, everyone understood that one annual IDTT was a minimum that was often exceeded.

13   Even so, Plaintiffs' point might be valid if telemental health clinicians only cared for one or two

14   patients, but like virtually all clinicians they carry significant caseloads.  Annual IDTTs are

15   generally based on transfer dates and are therefore scattered throughout the year.  Forcing a

16   teleclinician to travel across the state to an institution repeatedly over the course of the year to do

17   individual IDTTs for their entire caseload would be an extremely inefficient way to deliver

18   healthcare and would likely hurt retention rates for telemental health providers.  Huge amounts of

19   time for direct patient care would be lost to travel, significant additional expenditures would

20   accrue that do not contribute to salaries and in fact would decrease the quality of life for these

21   clinicians, and all for a practice that has absolutely no basis in evidence or common standards.

22         5.      The Prison Rape Elimination Act (PREA) and the national standards promulgated

23   to implement PREA require a timely mental health consultation for any prisoner who reports

24   being sexually assaulted.  But those standards do not require that any such consultation be in

25   person.  It comes as no surprise that there is no such requirement in the national standards

26   because there is no evidence that such a requirement is necessary.

27         6.      CDCR's telemental health recruitment efforts continue to pull in significant

28   numbers of social workers and psychologists from outside of CDCR.  And to the extent some

1 | telepositions have been filled by on-site providers who were already working for CDCR,

2 | providing those employees with the opportunity to work as teleclinicians helps ensure that CDCR

3 | does not lose them to other organizations that are hiring teleproviders.  As of July 12, 2024,

4 | CDCR has hired about 33 telesocial workers (20 have already started working), and about 23 of

5 | them were from outside of CDCR.  As of July 12, 2024, CDCR has hired about 27

6 | telepsychologists (8 have already started working), and about 12 of them were from outside of

7 | CDCR.  CDCR should be permitted to run its telemental health services in a manner consistent

8 | with the high quality care we have been able to provide for over a decade.

9 |

10 |      I declare under penalty of perjury under the laws of the United States of America that the

11 | foregoing is true and correct.

12 |      Executed on this 12th day of July, 2024, at San Francisco, California.

13 |

14 | */s/ Amar Mehta*

15 | Amar Mehta

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

4

Decl. Mehta ISO Defs.' Resp. Pls.' Objections Special Master's Telemental Health Report & Revised Policy (2:90-cv-00520 KJM-DB (PC))

19900160.1

# CERTIFICATE OF SERVICE

Case Name:   **Coleman v. Newsom, et al.,**            No.     **2:90-cv-00520 KJM-DB (PC)**

I hereby certify that on <u>July 12, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF AMAR MEHTA, M.D. IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S TELEMENTAL HEALTH REPORT AND REVISED POLICY**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 12, 2024</u>, at San Francisco, California.

|  |  |
|---|---|
| G. Guardado | /s/ *G. Guardado* |
| Declarant | Signature |

CF1997CS0003