1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:   (510) 280-2621

5  CLAUDIA CENTER – 158255
   DISABILITY RIGHTS EDUCATION
6  AND DEFENSE FUND, INC.
   Ed Roberts Campus
7  3075 Adeline Street, Suite 210
   Berkeley, California  94703-2578
8  Telephone:   (510) 644-2555
   Attorneys for Plaintiffs

   MICHAEL W. BIEN – 096891
   ERNEST GALVAN – 196065
   LISA ELLS – 243657
   JENNY S. YELIN – 273601
   THOMAS NOLAN – 169692
   MICHAEL S. NUNEZ – 280535
   MARC J. SHINN-KRANTZ – 312968
   ALEXANDER GOURSE – 321631
   ROSEN BIEN
   GALVAN & GRUNFELD LLP
   101 Mission Street, Sixth Floor
   San Francisco, California  94105-1738
   Telephone:   (415) 433-6830

9

10

11

12

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

13

14

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ORDERS FINDING DEFENDANTS IN CIVIL CONTEMPT AND ORDERING PAYMENT OF FINES**<br><br>Judge:  Hon. Kimberly J. Mueller |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[4528025.1]

1

2

**TABLE OF CONTENTS**

**Page**

3     INTRODUCTION ...................................................................................... 1

4     I.     DEFENDANTS HAVE NOT IDENTIFIED ANY IRREPARABLE
             HARMS, LET ALONE PROVED SUCH HARMS ARE "PROBABLE." ............. 1
5

6     II.    DEFENDANTS HAVE NOT MADE THE REQUISITE "STRONG
             SHOWING" THAT THEY ARE "LIKELY" TO PREVAIL ON APPEAL. ............ 4

7     III.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF A STAY IS
             GRANTED, AND SUCH A STAY WOULD NOT BE IN THE PUBLIC
8            INTEREST. ................................................................................... 9

9     CONCLUSION ......................................................................................... 10

10    CERTIFICATION ..................................................................................... 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[4528025.1]

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ORDERS FINDING DEFENDANTS IN
CIVIL CONTEMPT AND ORDERING PAYMENT OF FINES

1

## INTRODUCTION

2      Defendants have moved to stay the Court's June 25 and June 27 orders ("Orders")

3   finding them in contempt, ordering them to pay more than $110 million in fines, and

4   requiring certain Defendants to submit monthly summaries of the steps they have taken to

5   fill staffing vacancies.  *See* ECF Nos. 8311-1, 8299, 8291.  Pursuant to the parties'

6   stipulation, *see* ECF No. 8319, the Court subsequently extended Defendants' deadline to

7   submit an initial deposit and approved two modifications to the Orders' certification

8   requirements, *see* July 12, 2024 Order, ECF No. 8329 at 3-4.  The Court also ordered

9   Plaintiffs to file their full opposition to Defendants' stay motion ("Motion"), which

10   remains pending.  *Id*. at 3.

11      The Court should deny Defendants' Motion in full because they have not met their

12   burden under any of the four factors that govern stays pending appeal, and most

13   importantly have failed to show any likelihood that they will suffer irreparable injury.

14   **I.    DEFENDANTS HAVE NOT IDENTIFIED ANY IRREPARABLE HARMS, LET ALONE PROVED SUCH HARMS ARE "PROBABLE."**

15

16      The first and most important factor the Court must consider is "whether the [stay]

17   applicant will be irreparably injured absent a stay."  *Nken v. Holder*, 556 U.S. 418, 434

18   (2009); *Doe #1 v. Trump*, 957 F.3d 1050, 1061-62 (9th Cir. 2020).  "[S]imply showing

19   'some possibility of irreparable injury'" is not enough.  *Nken*, 556 U.S. at 434-35.  It is

20   Defendants' burden to establish that "irreparable harm is probable, not merely possible,"

21   and they "cannot meet this burden by submitting conclusory factual assertions and

22   speculative arguments that are unsupported in the record."  *Doe #1*, 957 F.3d at 1059-60.

23   None of the harms claimed by Defendants are irreparable, and the potential harms they

24   identify are either unsupported by evidence or too speculative to warrant a stay.

25      Defendants first argue they will be irreparably harmed by the Orders' certification

26   requirement because it "intrudes on state sovereignty and the separation of powers" and

27   "requires the Governor [and certain other executive-branch officials] to waive executive

28   and deliberative process privileges by disclosing the steps taken to address staffing."  ECF

1   No. 8311-1 at 11.  But neither of these harms justifies a stay.  The asserted harm to "state

2   sovereignty and the separation of powers" is not irreparable as a matter of law.  *See, e.g.*,

3   *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (holding abstract injuries to the

4   separation of powers "do not alone amount to an injury that is 'irreparable'"); *Texas v.*

5   *United States*, 787 F.3d 733, 767-68 (5th Cir. 2015) (executive-branch defendant's "claims

6   that the injunction offends separation of powers and federalism" did not establish

7   irreparable injury because "it is the resolution of the case on the merits, not whether the

8   injunction is stayed pending appeal, that will affect those principles").

9          Defendants provide nothing more than bare assertions to support their claim that the

10  certifications from two state officials—the Director of the Department of Finance and a

11  senior official in the Governor's office—will require privileged information.  Neither of

12  the now-affected officials has submitted a declaration or any other evidence in support of

13  Defendants' sweeping, conclusory invocation of multiple privileges.  Nor have Defendants

14  explained what type of privileged information they would be required to disclose in order

15  to the comply with the certification requirements.  Indeed, after they filed their Motion,

16  Defendants proceeded to file the first round of the required certifications without

17  disclosing any assertedly privileged information.  *See* ECF Nos. 8322, 8322-1, 8322-2,

18  8322-3.  As the Court has already explained, *see* ECF No. 8329 at 3, nothing in the Orders

19  necessarily requires Defendants "to waive executive and deliberative process privileges,"

20  as they claim, ECF No. 8311-1 at 11.  Rather, the Orders simply require the affected

21  officials to acknowledge, once a month, that they have reviewed CDCR staffing vacancy

22  data and that they have taken steps in the preceding month to address the ongoing

23  Constitutional violation that is harming the health and safety of more than 34,000 class

24  members each day.  *See* ECF No. 8291 at 4, 72 (requiring certification that the officials

25  reviewed the monthly staffing reports Defendants file on the public docket each month,

26  and that they provide the Court with "a summary of the steps they *have taken* in the

27  preceding month to address mental health understaffing in CDCR prisons") (emphasis

28  added).  Defendants do not explain why they believe such a "summary" of the officials'

1  *past acts* will necessarily include privileged information.  The deliberative process privi-

2  lege, for example, protects only information that is both "predecisional" and "delibera-

3  tive." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089-91 (9th Cir. 2002).  It does

4  not shield from disclosure a post-decisional document that merely identifies certain actions

5  an executive branch official took during the preceding month.  Defendants themselves con-

6  cede as much in their reply.  *See* ECF No. 8324 at 2 ("Thus, under the deliberative process

7  privilege, 'factual material is protected '*to the extent that [it] reveal[s] the mental process*

8  *of decisionmakers*'" (quoting *Plata v. Newsom*, No. 01-1351 JST, ECF No. 3155 at *2

9  (N.D. Cal. Sept. 12, 2019) (emphasis added)).  *See also FTC v. Warner Communications,*

10  *Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) ("Purely factual material that does not reflect

11  deliberative processes is not protected.").  Defendants do not say how the factual informa-

12  tion required by the Orders would "reveal the mental process of decisionmakers."

13          Indeed, it is entirely speculative whether the Court would, after briefing and a

14  hearing, order one or more Defendants to produce assertedly privileged information.

15  While the disclosure of deliberative, predecisional information *could* become necessary, as

16  Defendants' dysfunctional administrative processes are themselves core issues in the

17  staffing enforcement proceedings—*see* ECF No. 8291 at 55-58; June 14, 2006 Order, ECF

18  No. 1840 (privilege does not apply where the party's deliberative process is at issue in the

19  litigation); *New York v. Salazar*, 701 F.Supp.2d 224, 237-38 (N.D.N.Y. 2010) (same)—

20  nothing in the Orders makes this outcome likely or probable, let alone requires it.  *See* ECF

21  No. 8329 at 3.  Defendants themselves admit that their alleged invasion of privilege is

22  currently hypothetical.  ECF No. 8324 at 2 ("There are myriad circumstances that *could*

23  arise wherein the Defendants' monthly compliance with the orders requires a waiver of the

24  executive and deliberative process privileges, among others to demonstrate to the court

25  what steps are being taken to reduce vacancy rates.") (emphasis added).  Unless and until

26  the Court issues such an order, Defendants will not suffer any actual harm, so Defendants

27  have not met their burden of showing that the asserted harm is "probable" or "likely."  The

28  Orders at issue simply do not do what Defendants assert they do.

1   Defendants' alleged harms from the payment of fines are similarly insufficient.
2   Defendants claim that paying the fines will harm them because the state will not be able to
3   spend the money on "other priorities" while their appeal is pending.  ECF No. 8311-1 at
4   11.  But Defendants completely ignore the bedrock principle that "monetary injury is not
5   normally considered irreparable."  *Doe #1*, 957 F.3d at 1060; *see also hiQ Labs, Inc. v.*
6   *LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022).  Every money judgment necessarily
7   limits a party's control over the money it is ordered to pay; if this alone were sufficient,
8   monetary harm would *always* qualify as irreparable harm.

9   Defendants also assert that payment of the fines "may negatively impact the State's
10  ability to provide necessary services."  ECF No. 8311-1 at 11.  But Defendants do not pro-
11  vide any evidence at all to support this claim.  In fact, they do not even *allege* any further
12  details about the supposed "impact[s]."  They do not allege any specific service cuts,
13  because they cannot—the fines are calculated based on the amounts already appropriated
14  for mental health staffing but not spent due to Defendants' non-compliance with the
15  required staffing levels.  *See* ECF No. 8291-3 ¶¶ 19-20; *see also,* ECF No. 8311-1 at 13
16  (conceding that the Legislature "has accounted for the fines in the recently-enacted 2024
17  Budget Act.").  Defendants cannot meet their burden "by submitting conclusory factual
18  assertions and speculative arguments that are unsupported in the record."  *Doe #1*, 957
19  F.3d at 1059-60.  Because that is all Defendants have offered, the Court should deny their
20  Motion in full.

21  **II.   DEFENDANTS HAVE NOT MADE THE REQUISITE "STRONG
22          SHOWING" THAT THEY ARE "LIKELY" TO PREVAIL ON APPEAL.**

23  The "second most important" factor is "whether the stay applicant has made a
24  **strong showing** that he is **likely** to succeed on the merits"—not whether there is "a
25  substantial case for relief on the merits," as Defendants assert.  *Doe #1*, 957 F.3d at 1062;
26  *Nken*, 556 U.S. at 434 (emphasis added); ECF No. 8311-1 at 8-9.  The more lenient
27  "substantial case" standard is not appropriate "[w]here, as here, the showing of irreparable
28  harm is weak at best."  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020); *see*

1  Section I, *supra*.  In such cases, "the government must make a commensurately strong

2  showing of a likelihood of success on the merits to prevail under the sliding scale

3  approach." *Al Otro Lado*, 952 F.3d at 1010.  Regardless of which standard applies,

4  however, Defendants do not come close to meeting their burden of demonstrating the

5  requisite likelihood of success on the merits.

6      "Civil contempt … consists of a party's disobedience to a specific and definite court

7  order by failure to take all reasonable steps within the party's power to comply." *Institute*

8  *of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935, 945 (9th Cir.

9  2014) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693,

10  695 (9th Cir. 1993)).  If there is clear and convincing evidence the court's specific and

11  definite orders have been violated, "the burden then shifts to the contemnors to demon-

12  strate … they took every reasonable step to comply." *Stone v. City and County of San*

13  *Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992); *see also Kelly v. Wengler*, 822 F.3d

14  1085, 1096 (9th Cir. 2016).  District courts have "wide latitude" to determine whether an

15  alleged contemnor took all reasonable steps to comply with their orders, and their findings

16  in this regard are reviewed only for an abuse of discretion.  *Stone*, 986 F.2d at 856.

17  "Deference to the district court's exercise of discretion is heightened where," as here, "the

18  court has been overseeing a large, public institution for a long period of time."  *Id.*

19      Defendants are extraordinarily unlikely to prevail under this highly deferential

20  standard.  It is undisputed that the Court's orders were sufficiently definite and specific to

21  be enforceable by contempt.  *See* ECF No. 8291 at 5.  It is also undisputed that Defendants

22  have not complied with those orders.  *Id.*  As a result, to obtain a stay Defendants must

23  make a strong showing that the Court abused its discretion by finding that compliance was

24  possible and that Defendants did not take all reasonable steps to comply.  That is a tall

25  order.

26      Defendants first argue that the record contains "ample evidence of Defendants'

27  efforts to reach compliance."  ECF No. 8311-1 at 9.  But "efforts to reach compliance" is

28  not the standard Defendants had to meet.  It was Defendants' burden to demonstrate they

5

took "*all* reasonable steps to comply," *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (emphasis in original), and the June 25 Order includes extensive findings about multiple reasonable steps they failed to take.  *See, e.g.*, ECF No. 8291 at 55-63. Defendants do not engage with these findings at all; instead, they simply assert in conclusory fashion that the measures the Court found insufficient were, in fact, sufficient. *See* ECF No. 8311-1 at 8-9.  This does not suggest a "substantial case on the merits," let alone a "strong showing" that Defendants are "likely" to prevail on appeal.  *Nken*, 556 U.S. at 434; *Doe #1*, 957 F.3d at 1062.

Defendants next suggest the only steps they failed to take were not "reasonable" steps, and thus cannot justify the Court's contempt finding.  *See* ECF No. 8311-1 at 9-10. But this argument is premised on a blatant misrepresentation.  Defendants assert the Orders "rest[] on the finding Defendants could have, but did not, request permission to violate state law."  ECF No. 8311-1 at 9.  This is completely false.  The Court found, *inter alia*, that Defendants did not "raise salary levels, benefits, and recruitment and retention bonuses to the levels necessary" to fill the required mental health positions, ECF No. 8291 at 55; that Defendants did not even "attempt[] to analyze what wages and benefits they would have to offer mental health clinicians to fill staffing vacancies," *id.* at 56; that Defendants failed to "cluster" mental health patients in institutions near major metro- politan areas, where the evidence at trial showed it is easier to recruit staff, *id.* at 58; that Defendants failed to present any evidence regarding efforts to "reduc[e] … the total population of seriously mentally ill inmates," which would reduce the number of mental health positions they are required to fill, *id.*; and that "to the extent [Defendants] have launched new hiring initiatives they have done so within the months leading up to the evidentiary hearing, without the urgency required to finally solve the understaffing crisis," *id.* at 57.  Defendants do not say what state laws they would need to "violate" in order to do what the Court found they failed to do.  *See* ECF No. 8311-1 at 9-10.  Nor did they present any evidence at the contempt hearing in support of their current claim regarding the purported legal impossibility of compliance.  *See* ECF No. 8330 at 10.  Rather than

1  engaging the specific factual findings the Court made after a four-day trial and multiple

2  rounds of briefing, Defendants attack a straw man of their own making,[1] disconnected

3  from the Orders they now ask the Court to stay.[2]  Their argument is completely meritless

4  and they are highly unlikely to prevail on appeal.

5          Finally, Defendants claim the Orders' certification requirement is likely to be

6  reversed because it is "unprecedented" and "arguably requires the Governor and other

7  high-ranking executive branch members … to disclose information that is protected by the

8  deliberative process, executive, attorney-client, and work product privileges."  ECF No.

9  8311-1 at 10.  These arguments too are highly unlikely to succeed.  For one thing, the

10  certification requirement is *not* unprecedented—this Court has repeatedly required similar

11  certifications and reporting from Defendants in this case.  *See, e.g.*, April 28, 2009 Order,

12  ECF No. 3573 at 2 (requiring Defendants to certify "that the remaining painting and

13  change order work at the [Salinas Valley Intermediate Care Facility] Project is complete or

14  to explain any delays in completing this work"); April 10, 2014 Order, ECF No. 5131 at 73

15  (requiring Defendants to provide the Court and Special Master with "monthly reports on

16  whether each EOP ASU hub meets Program Guide requirements for an EOP ASU level of

17  care"); Dec. 3, 2020 Order, ECF No. 6973 at 12, Dec. 24, 2020 Order, ECF No. 7004 at 2,

18  May 4, 2021 Order, ECF  No. 7150, May 27, 2021 Order, ECF No. 7187, and Oct. 7, 2021

19  Order, ECF No. 7339 (together requiring Defendants to file monthly activation schedules

20  regarding their progress implementing the outstanding Hayes suicide prevention measures,

21  including interim deadlines, identification of all persons responsible for completing each

22

23  ─────────────
[1] The only citation Defendants offer for their claim about what the Orders say is an
24  unsupported assertion in one of their own briefs that was filed before the Court issued the
   Orders.  *See* ECF No. 8311-1 at 9:23 (citing ECF No. 8260).  Notably, that brief also does
25  not cite any state laws or regulations to support its claim that compliance would require
   Defendants to violate state law.  *See* ECF No. 8260 at 12-13.

26  [2] Defendants also completely ignore the "settled" principles that "otherwise valid state
   laws or court orders cannot stand in the way of a federal court's remedial scheme if the
27  action is essential to enforce the scheme," and that "[e]lected officials must obey the
   Constitution."  ECF No. 8330 at 10 (quoting *Stone*, 968 F.2d at 862, and *Morgan v.*
28  *McDonough*, 540 F.2d 527, 534 (1st Cir. 1976)).

1   step, and any delays and updated projected completion dates); March 13, 2023 Order, ECF

2   No. 7757 at 1-3 (requiring "all counsel and all principals who participate in preparation of

3   briefing, presentation of evidence, or oral argument on the pending motion" to file an

4   affidavit attesting they have read certain Court orders); *see also* Nov. 6, 2017 Order, ECF

5   No. 5726 at 10 (requiring certifications from counsel regarding the orders they have read

6   "relevant to any issue addressed in such brief").

7          Even if the Contempt Orders' certification requirements *were* "unprecedented,"

8   moreover, that would not make them an abuse of discretion.  Defendant Amar Mehta,

9   M.D., CDCR's Deputy Director for Mental Health Services, testified "he could not think

10  of anything else he could do '*at [his] level*' *and 'pursuant to the rules that apply'* to him,

11  to fill staffing vacancies to court-ordered levels."  ECF No. 8291 at 58 (emphasis added).

12  None of the other Defendants in this case, all of whom have "more authority than

13  Dr. Mehta and without question more options available to them," offered testimony; nor

14  did anyone else more senior to Dr. Mehta in State government testify.  *Id.*  Defendants

15  have offered no explanation whatsoever for their failure take additional steps within their

16  authority.  As the Contempt Orders explain, this "leaves a gaping hole in the record

17  regarding what all available reasonable steps actually are."  *Id.*  Requiring senior officials

18  with direct authority over Defendants' compliance—including the State's finances and

19  hiring practices—to review monthly staffing data and inform the Court of the actions they

20  took during the preceding month to comply with its staffing orders is entirely reasonable

21  under the circumstances.   Indeed, given Defendants' ongoing failures to act, the

22  certification requirements are clearly "necessary to sharpen the focus and magnify

23  defendants' sense of urgency to finally achieve a lasting remedy for chronic mental health

24  understaffing in the state's prison system."  *Id.* at 65.

25         Defendants do not elaborate on their other argument about certification—i.e., that it

26  would require them to disclose privileged information.  *See* ECF No. 8311-1 at 10.  That

27  argument is clearly wrong with regard to the deliberative process and executive privileges,

28  as explained in Section I, *supra*.  And Defendants do not explain why they think

[4528025.1]

8

1  certification implicates the attorney-client and work-product privileges as well.

2  Defendants' conclusory assertions do not come close to justifying a stay. *See Doe #1*, 957

3  F.3d at 1059-60.

4  **III.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF A STAY IS
         GRANTED, AND SUCH A STAY WOULD NOT BE IN THE PUBLIC
5        INTEREST.**

6        The Court can give minimal weight to the final two factors of the *Nken* standard

7  because Defendants do not come close to meeting their burden on either the irreparable

8  harm or likelihood-of-success factors. *See Doe #1*, 957 F.3d at 1061-62. Regardless,

9  Defendants' positions on the final two factors are clearly insufficient.

10       Defendants do not address the third *Nken* factor--"whether issuance of the stay will

11 substantially injure the other parties interested in the proceeding"—at all. *Nken*, 556 U.S.

12 at 434. They simply assert that "the Court's commandeering of State tax dollars unneces-

13 sarily consumes valuable resources" and that "the unprecedented certification requirement

14 will burden the State's high-ranking officials on a monthly basis." ECF No. 8311-1 at 11-

15 12. For the reasons explained in Section I, *supra*, Defendants are not likely to suffer any

16 irreparable injury as a result of the Orders. And any harm to Defendants would be far

17 outweighed by the irreparable harm Plaintiffs will suffer if the Orders are stayed for the

18 full duration of Defendants' appeal. Such a stay would effectively eliminate Defendants'

19 obligation to fulfill their constitutional duty to the plaintiff class for years. *See Melendres*

20 *v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation

21 of constitutional rights 'unquestionably constitutes irreparable injury'" (quoting *Elrod v.*

22 *Burns*, 427 U.S. 347, 373 (1976)); *see also Washington*, 847 F.3d at 1169.

23       As to the fourth *Nken* factor—"where the public interest lies"—Defendants argue

24 that the public interest lies "in preserving the substantial expenses that will be incurred to

25 pay the fines." *Id.* at 12. But Defendants concede the Legislature has already allocated the

26 necessary funds—first for the allocated-but-unfilled positions, and then to pay the fines

27 now at issue. *See* ECF No. 8311-1 at 13 (conceding that the Legislature "has accounted

28 for the fines in the recently-enacted 2024 Budget Act"). And they cite no authority that

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ORDERS FINDING DEFENDANTS IN
CIVIL CONTEMPT AND ORDERING PAYMENT OF FINES

1   holds reducing public expenditures inherently benefits the public.  *Carmichael v. Southern*
2   *Coal* says nothing about this proposition—in fact, it upheld a tax enacted for the purpose
3   of funding additional spending.  *See* 301 U.S. 495, 514 (1937).  Nor does *Carmichael* hold
4   that state legislatures have unreviewable discretion to determine what is in the public
5   interest—a proposition the Supreme Court has already rejected in this case.  *See Brown v.*
6   *Plata*, 563 U.S. 493, 511 (2011) (acknowledging states' "interest in punishment, deter-
7   rence, and rehabilitation," but holding "courts nevertheless must not shrink from their
8   obligation 'to enforce the constitutional rights of all persons, including prisoners'").  The
9   public indisputably has a strong interest in judicial enforcement of Constitutional rights,
10  including the Eighth Amendment rights of the *Coleman* class.  *Id.*; *see also Melendres*. 695
11  F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's
12  constitutional rights.").  No matter what, given Defendants' failure to meet their burden on
13  any of the other three *Nken* factors, the "competing public interests" at stake here "do not
14  justify a stay."  *Washington*, 847 F.3d at 1169.

## CONCLUSION

16      The Court should deny Defendants' Motion because they have not met their burden
17  under the standard for a stay pending appeal.  In the event the Court does issue a stay
18  Plaintiffs' do not oppose Defendants' request to waive the bond requirement.

## CERTIFICATION

20      Plaintiffs' counsel certifies that he reviewed the following orders in preparing this
21  filing: ECF Nos. 8330, 8329, 8328, 8321, 8299, 8291, 7757, 7339, 7187, 7150, 6973,
22  5726, 5131, 3573, 1840.

23  DATED:  July 15, 2024              Respectfully submitted,

24                                     ROSEN BIEN GALVAN & GRUNFELD LLP

25                                     By:  */s/ Alexander Gourse*

26                                          Alexander Gourse

27                                     Attorneys for Plaintiffs

28

[4528025.1]

10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ORDERS FINDING DEFENDANTS IN
CIVIL CONTEMPT AND ORDERING PAYMENT OF FINES