Rob Bonta, State Bar No. 202668
Attorney General of California
Monica N. Anderson, State Bar No. 182970
Senior Assistant Attorney General
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Namrata Kotwani, State Bar No. 308741
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
LAWRENCE M. CIRELLI, SBN 114710
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS-GONZÁLEZ, SBN 321994
MOLLIE H. LEVY, SBN 333744
SAMANTHA M. BACON, SBN 351561
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: 415-777-3200
Pmello@hansonbridgett.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al. <br><br> Defendants. | Case No. 2:90-CV-00520- KJM-DB <br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY THE JUNE 25 AND 27, 2024 ORDERS FINDING DEFENDANTS IN CIVIL CONTEMPT AND ORDERING PAYMENT OF FINES (ECF NOs. 8291, 8299)** <br><br> Judge: Hon. Kimberly J. Mueller |

## I. INTRODUCTION

Plaintiffs oppose a stay of the Court's June 25 and 27, 2024 Orders, contending that, absent a stay, Defendants will suffer no irreparable harm and are unlikely to succeed on appeal. Plaintiffs also contend they will suffer irreparable harm and a stay is not in the public interest. As explained below, each contention fails.

## II. ARGUMENT

### A. Defendants' Motion to Stay Identified Two Irreparable Harms Absent a Stay

Defendants will suffer probable, not speculative, harms absent a stay. The requirement that high-ranking government officials inform the Court monthly of all steps they have taken to address CDCR's staffing issues intrudes on state sovereignty and the separation of powers between the executive and judicial branches. *See* ECF 8308 at 7; ECF 9324 at 1-2. This is especially true as applied to the Governor's senior official[1] and the Director of Finance insofar as it dictates the specific issue (*i.e.*, reducing mental health staffing vacancies) on which the Governor's administration should focus its time and potentially requires the Governor's Office to waive executive and deliberative process privileges, among others, by disclosing the steps taken to address staffing. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (noting the "irreparable harm a party likely will suffer if erroneously required to disclose privileged materials or communications").

Defendants need not list nor explain the policies under consideration to address staffing vacancies to demonstrate probable harm. Similarly, requiring Defendants to describe specifically how the requirement to "summar[ize]. . . the steps they have taken in the preceding month to address mental health understaffing in CDCR prisons" [ECF 8291 at 72] would "reveal the mental process of decisionmakers" to demonstrate probable harm. The certification requirement is a *monthly* obligation that arguably requires the Governor's Office and the Director of Finance to reveal internal deliberations that are ongoing, confidential, and not yet final. Under the Court's

---

[1] Per the Court's July 12, 2024 order, a senior official from the Governor's Office, as opposed to Governor Newsom himself, is now obligated to comply with the certification requirement. ECF 8329 at 4.

order, Defendants appear to be required to provide an update on collective bargaining discussions to be responsive to the Court's mandate. But doing so would violate privileges and interfere with the negotiations. Moreover, it is also possible that the steps taken in the month prior include steps that were considered, but not taken because they would require legal action, bargaining, or attempts to bring about legislative change. Under the order, disclosing these steps would violate privileges, potentially chill executive deliberations and impair decision-making, and complicate negotiations with unions or the legislature, among other concerns.

In addition, the fact that Defendants filed the "first round" of certifications without disclosing privileged information is irrelevant. ECF 8334. *Nken* does not require the movant suffer imminent or absolute harm absent a stay. *See* 556 U.S. 418 (2009). It is "probable, not merely possible" that both the Governor, by way of his senior official, and the Director of Finance[2] will be placed in the impossible position of choosing on a monthly basis between waiving privilege and complying with the certification requirement on a monthly basis. *Doe #1 v. Trump*, 957 F.3d 1050, 1061 (9th Cir. 2020) citing *Nken*, 556 U.S. at 434.

Additionally, the Court's direction on how the fines collected shall be spent will cause irreparable harm because money spent to increase staffing is necessarily money that the State cannot allocate to other priorities. Requiring the State to deposit with the Court nearly $112 million dollars in funds and potentially millions more on a monthly basis, with no clear path to recourse should the Ninth Circuit find those funds to have been wrongly paid, negatively impacts the State's ability to provide necessary services to its residents.[3]  *See, e.g.*, ECF 8251 at 6:23-28 (Plaintiffs proposing the appointment of a Fund Administrator to issue initial recommendations for the expenditure of the funds to increase compensation "to a level that will swiftly reduce the vacancies at issue" within 30 days of appointment). Plaintiffs' attempt to equate the Court's $112,000,000 contempt fines with any other "money judgment" is not persuasive considering the

---

[2] The Department of State Hospitals Director, Stephanie Clendenin, is no longer obligated to comply with the certification requirement. *See* ECF 8239 at 3-4.

[3] The Court has ordered the parties to meet and confer under the supervision of the Special Master to come up with a written plan for the expenditure of accumulated fines. The Special Master will oversee court-approved expenditures under the plan adopted by the Court.  ECF 8330 at 15:8-17.

significant amount of fees imposed and the source of the funds (the state of California and its taxpayers), and the reality that the Court has ordered that the funds be spent, and once spent, cannot be retrieved. *See* ECF 8334. The State budget is limited, and the funds allocated to these fines could be used elsewhere to directly benefit residents, including other priorities that impact California's incarcerated population.

### B. Defendants' Motion to Stay Showed They Have a Substantial Case for Relief on the Merits

The likelihood-of-success factor requires parties seeking a stay to demonstrate that they have "a substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966–68 (9th Cir. 2011). This standard does not require movants to show that they are more likely than not to win on the merits. *Id.*

Defendants' decades-worth of tangible and reasonable steps towards complying with the Court's staffing orders in the face of an undisputed nationwide shortage of mental health care professionals demonstrate their substantial case for relief on the merits of the underlying claim. *See Leiva-Perez*, 640 F.3d at 966-68. What Plaintiffs appear to take issue with is that Defendants did not take steps outside their control to address the staffing issue. That is, Plaintiffs expect Defendants to seek permission to violate state laws. But that is not required. And the record demonstrates that both before and after the evidentiary hearing, Defendants have taken all reasonable steps to ameliorate the staffing issues CDCR faces. For example, Defendants have implemented new classifications for mental health professionals, new telemental health programs to widen the recruiting pool, streamlined hiring practices, and adopted salary increases and pay differentials for certain clinicians. *See* ECF 8260 at 7-9. That is ample evidence of Defendants' efforts to reach compliance to substantiate success on appeal. Moreover, the Court's orders did not address unrebutted evidence in the record that documentation and other requirements imposed by this case have contributed to the staffing challenges, which Defendants maintain is a relevant factor in assessing the reasonableness of Defendants' actions. ECF 8019 at 8-9 n. 5.

These varied and continuous efforts by Defendants demonstrate that the fines ordered by the Court are unnecessary to coerce Defendants' compliance with staffing requirements. That

those efforts have yet to achieve complete compliance underscores the Special Master's previous conclusion that "there are no clear . . . solutions to the defendants' vacancies problem" [ECF 1032] and suggests that it is impossible to comply with the Court's orders. Defendants have also consistently shown that the imposition of fines will not and cannot improve the hiring efforts when there is a shortage of mental health professionals outside of the prison system, within California and nationwide. ECF 8019 at 21.

Further, with respect to the certifications, Defendants are unaware of any federal court that has ordered a Governor to "certify they have reviewed the data in the [monthly staffing] report[s] and provide a summary of the steps within their respective authority they have taken in the preceding month to address mental health understaffing." ECF 8291 at 71. Indeed, Plaintiffs did not cite to a single case imposing such a certification requirement on a state governor or high-ranking state administrative official. The certification requirement *generally* is not what makes the Court's orders unprecedented,[4] but rather the individuals required to comply with this requirement on a monthly basis and arguably require the Governor's Office and the Director of Finance to disclose information that is protected by the deliberative process, attorney-client, and work product privileges, makes this certification requirement unprecedented. *See* Section II A., *supra*.

Thus, this Court should allow Defendants to pursue their appellate rights before requiring the State to deposit $111,939,244 in the Court's registry (plus presumably millions more every month) when CDCR has repeatedly shown its efforts towards compliance—and has periodically achieved substantial or full compliance through those efforts.

### C. Plaintiffs Will Not Suffer Irreparable Harm if a Stay is Granted and a Stay is in the Public Interest

The Court's commandeering of State tax dollars unnecessarily consumes valuable resources. This alone favors the imposition of a stay. Moreover, the unprecedented certification requirement will burden the State's high-ranking officials on a monthly basis. Plaintiffs also do not face any immediate harm if the contempt orders are stayed because Defendants will continue

---

[4] Defendants agree that the Court has previously ordered certification requirements in this matter. *See, e.g.*, ECF 3573, 5131, 5726, 6973, 7004, 7150, 7187, 7339, and 7757.

to implement and pursue options to fill staffing vacancies and provide constitutionally adequate care to patients in the Plaintiff class.

Similarly, the public interest in preserving the substantial expenses that will be incurred to pay the fines that have not been shown to improve patient care is strong. The Supreme Court has consistently recognized that the public purposes for which a state may use funds, including expenditures for its general welfare, are within the broad discretion of the state legislature. *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 514 (1937). The public interest is best advanced by ensuring public funds are spent in a way that has been approved by the State democratically elected legislature, rather than by the Court.

## III.   CONCLUSION

For the foregoing reasons and as previously briefed, Defendants respectfully request that the Court stay its June 25 and 27, 2024 orders requiring certifications and payment of fines related to staffing contempt and exercise its discretion to waive the supersedeas bond requirement, which Plaintiffs do not oppose. ECF 8334 at 10.

## IV.   CERTIFICATION

In preparing this filing, Defendants' counsel certify that they have reviewed the following relevant orders:  640, 659, 1010, 1055, 1262, 1383, 1773, 2204, 3613, 3666, 4539, 5171, 5307, 5564, 5592, 5711, 5786, 5850, 5852, 5886, 6214, 6312, 6427, 6886, 6938, 7035, 7456, 7504, 7704, 7742, 7766, 7804, 7806, 7807, 7856, 8087, 8116, 8147, 8291, 8299, and 8329. This motion sets forth arguments that have not been resolved by prior court orders as they are specifically tailored to address the merits of Defendants' motion to stay the appealed June 25 and 27, 2024 order. Counsel acknowledges this Court's prior orders concerning staffing requirements, but those orders do not foreclose this motion. Counsel make this filing under their obligation to represent their clients zealously under their right to relief under Fed. R. Civ. P. 62(c), *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988), and to satisfy Federal Rule of Appellate Procedure 8(a)(1)(A)'s requirement. Counsel certify that they have conducted a reasonable inquiry and have determined that this filing is well grounded in fact, legally tenable, and not presented for an improper purpose, to harass, cause unnecessary delay, or needlessly

increase the cost of litigation. Fed. R. Civ. P. 11(b)(1); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990). Each factual contention made in this filing is supported by a reference to evidence in the record and the legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2).

DATED: July 17, 2024

ROB BONTA
Attorney General of California

By: */s/ Elise Owens Thorn*
DAMON MCCLAIN
Supervising Deputy Attorney General
ELISE OWENS THORN
Deputy Attorney General
*Attorneys for Defendants*

DATED: July 17, 2024

HANSON BRIDGETT LLP

By: */s/ Samantha Wolff*
PAUL B. MELLO
SAMANTHA D. WOLFF
DAVID V. CASARRUBIAS-GONZALEZ
*Attorneys for Defendants*