| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>MARGOT MENDELSON – 268583<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California  94710-1916<br>Telephone:   (510) 280-2621<br><br>CLAUDIA CENTER – 158255<br>DISABILITY RIGHTS EDUCATION<br>AND DEFENSE FUND, INC.<br>Ed Roberts Campus<br>3075 Adeline Street, Suite 210<br>Berkeley, California  94703-2578<br>Telephone:   (510) 644-2555 | MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>LISA ELLS – 243657<br>JENNY S. YELIN – 273601<br>THOMAS NOLAN – 169692<br>MICHAEL S. NUNEZ – 280535<br>MARC J. SHINN-KRANTZ – 312968<br>ALEXANDER GOURSE – 321631<br>BENJAMIN W. HOLSTON – 341439<br>MAYA E. CAMPBELL – 345180<br>LUMA KHABBAZ – 351492<br>JARED MILLER – 353641<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California  94105-1738<br>Telephone:   (415) 433-6830 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>           Plaintiffs,<br><br>     v.<br><br>GAVIN NEWSOM, et al.,<br><br>           Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**DECLARATION OF DONALD SPECTER IN RESPONSE TO ORDER TO SHOW CAUSE RE: RECEIVERSHIP**<br><br>Judge:  Hon. Kimberly J. Mueller |

[4536492.2]

DECLARATION OF DONALD SPECTER IN RESPONSE TO ORDER TO SHOW CAUSE RE: RECEIVERSHIP

I, Donald Specter, declare:

1. I am a member of the Bar of this Court and co-counsel for Plaintiffs in the above-entitled action.

2. I am aware that this Court has issued an Order to Show Cause why the Court should not appoint a Receiver. July 12, 2024 Order, ECF No. 8330. Because I am also counsel for Plaintiffs in *Plata v. Newsom*, I submit this declaration to provide the Court with some information about how the *Plata* Receivership is actually working.

3. Judge Henderson appointed J. Clark Kelso, a law professor who has a history of fixing serious problems in various state agencies, as Receiver in 2008. At the time Mr. Kelso was appointed, California prisons housed more than 150,000 people in over 30 prisons. In addition to severe overcrowding, the CDCR suffered from a lack of space to provide care, a bureaucracy that was dysfunctional, insufficient healthcare and custodial staff and an acute inability to find and resolve issues that were causing serious harm to patients.

4. I doubt that there is anyone familiar with the remedial process in *Plata* who would reasonably deny that the Receivership has been successful in substantially improving access to medical care and the quality of that care. In 2015, the Receiver issued a special report on the progress to that date. *See Plata v. Brown*, No. 4:01-CV-01351-JST (N.D. Cal.), Receiver's Special Report: Improvements in the Quality of California's Prison Medical Care System, ECF No. 2840-1. The Receiver summarized what the reforms have meant to patients: "With respect to outcomes, there has been a significant reduction in definitely preventable deaths and a similar reduction in possibly preventable deaths. In addition, our population health measures indicate that our outcomes, on a population basis, are better than outcomes achieved in Medi-Cal, Medicaid and national HMO populations for a number of important health measures." *Id*. at 3. From 2006 to 2013 "likely preventable deaths" went from 18 to 0. *Id.* at 59.

5. The court established a mechanism to delegate the healthcare operations of individual prisons back to the CDCR once the Receiver determines that the system of care

1  at a particular prison meets constitutional standards.  *See Plata v. Brown*, No. 4:01-CV-
2  01351-JST (N.D. Cal.), Order Modifying Receivership Transition Plan dated March 10,
3  2015, ECF No. 2840.  As of today, the Receiver has delegated 26 state prisons back to the
4  CDCR.

5       6.       There is no doubt in my mind that these accomplishments could not have
6  occurred in a timely manner without a Receivership.  With guidance, support and
7  supervision from both Judge Henderson and Judge Tigar, the Receiver has been able to
8  obtain from the state government funds necessary to provide essential medical services.
9  The authority vested in the Receiver has enabled him to respond to changes in the
10 healthcare industry and the economy more promptly than the state government ever has.
11 For example, many years ago he created an electronic medical record and related quality
12 management functions that not only document individual medical decisions but provide an
13 incredible amount of data for system analysis and patient care.[1]  When market conditions
14 or other factors created excessive vacancies among primary care providers, the Receiver
15 was instrumental in getting the State to increase compensation.  When there was a mass
16 hunger strike at Pelican Bay State Prison to protest solitary confinement, Mr. Kelso
17 promptly hired extra nurses to respond to the emergent medical needs that occur when
18 people do not eat.  Another particularly telling example is the Receiver's response to the
19 opioid crisis in California's prisons.  After Dr. Michael Puisis, a court appointed expert,
20 reported that opioid overdoses were a leading cause of death, the Receiver, with the
21 encouragement and support from Judge Tigar, implemented the Integrated Substance
22 Disorder Treatment (ISUDT) program, which involves providing incarcerated individuals
23 who are at risk of overdose with Medicated Assistant Treatment in 2020.  Under the
24 Receiver's leadership and in cooperation with the CDCR, the ISUDT became one of the
25 largest providers of Medicated Assisted Treatment in the nation.  The results of this
26 program are dramatic.  In 2019, the overdose death rate in California's prisons was 52 per

---

[1] *See* https://cchcs.ca.gov/dashboard/

100,000; in 2021 the overdose death rate fell by more than 50 percent to 25 per 100,000.[2] There is no question in my mind that if the implementation of this program was left to the state, it would never have been implemented this quickly nor produced anywhere near the same result.

7. Almost all of the progress that the Receiver has made has come about without the need for court orders. Early in the Receivership, the Receiver requested and received a waiver of state laws to avoid the incredibly complex and bureaucratic task of contracting for certain services and raising salaries.[3] Since that time, Mr. Kelso, acting with the authority of the federal court, has been able to work with the state agencies and the legislature in most instances to obtain necessary resources and processes to improve the medical care system. Although further court orders have rarely been necessary, the Receiver's authority as an agent of the federal court has ensured the cooperation of the state government.

8. In contrast to *Coleman*, there has been very little adversarial litigation in *Plata*. The last motion arose out of the pandemic and the Receiver's request for a court order to compel vaccination of staff. Outside of the unique context of the COVID-19 pandemic the last dispute filed with the Court was in 2019 regarding the production of certain documents.

9. With the exception of one instance in 2017, no party has objected to the Receiver's decision to delegate or not delegate a prison back to the jurisdiction of the state. Instead of litigation, the parties rely on continuous communication with Mr. Kelso and his team. For example, before deciding whether to delegate a prison back to the control of the

---

[2] ISUDT 2nd Annual Outcome Report at 4, https://cchcs.ca.gov/wp-content/uploads/sites/60/2023-ISUDT-Report_v36.pdf

[3] See https://cchcs.ca.gov/wp-content/uploads/sites/60/2017/08/2006_10_17_Order_Granting_Waiver_of_Law_Re_Employee_Salaries.pdf; https://cchcs.ca.gov/wp-content/uploads/sites/60/2017/08/2006_03_30_Order_Re_State_Contracts.pdf; https://cchcs.ca.gov/wp-content/uploads/sites/60/2017/08/2006-11-08_Supplemental_Order_Re_State_Contracts.pdf

state, Plaintiffs' counsel obtains documents from the prison, tours the prison, provides Mr. Kelso with a letter summarizing our position and meets with Mr. Kelso to discuss the points raised in the letter. Mr. Kelso then meets with representatives of the State and issues a decision.

10. Mr. Kelso is also available on an ad hoc basis to discuss issues that arise. This type of communication has been essential to focusing efforts on removing new and existing barriers to providing care to patients.

11. In *Plata*, no party has ever suggested that Mr. Kelso's budget is excessive or that the funds are not being spent wisely. On the contrary, I believe that the State is satisfied with the improvements that have been made and that there is a path that eventually will lead to the end of the case.

12. Providing healthcare to thousands of people is a complex endeavor, and that is made more difficult by the demands of custody. The Receivership is not a magic bullet that solves all the problems in reforming a prison healthcare system. But, having a person with experience in managing government agencies who has the authority of the federal court has made a world of difference in promoting compliance with the Constitution. In *Plata*, the Receivership has taken time, financial resources, skill and perseverance, but ultimately it has been enormously effective. Many of my clients are alive because of it.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 2, 2024 in Berkeley, California.

*/s/ Donald Specter*
Donald Specter