1  DONALD SPECTER – 083925  
   STEVEN FAMA – 099641  
2  MARGOT MENDELSON – 268583  
   PRISON LAW OFFICE  
3  1917 Fifth Street  
   Berkeley, California 94710-1916  
4  Telephone: (510) 280-2621  

5  CLAUDIA CENTER – 158255  
   DISABILITY RIGHTS EDUCATION  
6  AND DEFENSE FUND, INC.  
   Ed Roberts Campus  
7  3075 Adeline Street, Suite 210  
   Berkeley, California 94703-2578  
8  Telephone: (510) 644-2555  

   MICHAEL W. BIEN – 096891  
   ERNEST GALVAN – 196065  
   LISA ELLS – 243657  
   JENNY S. YELIN – 273601  
   THOMAS NOLAN – 169692  
   MICHAEL S. NUNEZ – 280535  
   MARC J. SHINN-KRANTZ – 312968  
   ALEXANDER GOURSE – 321631  
   BENJAMIN W. HOLSTON – 341439  
   MAYA E. CAMPBELL – 345180  
   LUMA KHABBAZ – 351492  
   JARED MILLER – 353641  
   ROSEN BIEN  
   GALVAN & GRUNFELD LLP  
   101 Mission Street, Sixth Floor  
   San Francisco, California 94105-1738  
   Telephone: (415) 433-6830  

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | Case No. 2:90−CV−00520−KJM−SCR<br><br>**JOINT SUBMISSION OF PLAN FOR EXPENDITURE OF STAFFING CONTEMPT FINES AND [PROPOSED ORDER]**<br><br>Judge: Hon. Kimberly J. Mueller |

[4547056.9]

## INTRODUCTION

On June 25, 2024, the Court found Defendants in contempt of the court's orders to come into full compliance with Defendants' 2009 Staffing Plan and ordered Defendants to pay all fines that had accumulated since April 1, 2023. *See* June 25, 2024 Order, ECF No. 8291. As of Defendants' July 2024 Staffing Vacancy Report, that figure stood at $131,050,237.00. *See* ECF No. 8345 at 23 (listing total accumulated fines at $144,710,156.00 as of June 30, 2024); ECF No. 8291 at 4 n.3 (calculating imposed fines as total accumulated minus $13,659,919.00 in fines that accumulated in February and March 2023). On July 12, 2024, the Court ordered the parties to meet and confer under the supervision of the Special Master and then "submit to the court a written plan for expenditure of accumulated fines … to remedy ongoing mental health understaffing in the CDCR units covered by the 2009 staffing plan" within thirty days. July 12, 2024 Order, ECF No. 8330. The parties requested an extension of that deadline, which the Court granted, to August 23, 2024. Aug. 9, 2024 Order, ECF No. 8354.

The parties and the Special Master have now met several times to discuss the expenditure plan. Plaintiffs' counsel made a proposal at the beginning of the meet-and-confer process that included a menu of ideas for improving recruitment and retention, based largely on evidence from the 2023 contempt trial and insight from additional sources with relevant expertise. During the course of the subsequent meet-and-confer process, the parties and the Special Master team discussed and refined those proposals, and Defendants provided critical input, including information about administrative and logistical challenges and past experience. The parties' resulting plan is attached as **Exhibit A**.

The proposed plan consists of multiple efforts on two general timelines: (1) Immediate expenditures (90 days following lifting of stay and approval), including staff and referral bonuses, funds to improve working conditions and purchase mental-health-related supplies, the hiring of a third-party recruitment firm to expand and streamline CDCR's hiring capabilities, and the hiring of a third-party consulting firm to further identify the most effective measures to improve hiring and retention rates; and

1   (2) longer-term (6-12 months after deposit of funds) expenditures, including the potential
2   implementation of consultant recommendations as well as the development and
3   implementation of a hybrid work policy for mental health staff.  The plan will disperse
4   significant funds quickly but also reserve additional amounts to fund alternative and
5   additional measures the parties may propose for the court's approval at a later date if the
6   fill rates do not sufficiently increase in response to these measures.

7   The Special Master and his team participated in and commented on the
8   development of the attached plan and support its implementation.  A representative from
9   the Department of State Hospitals (DSH) was also present during the meet-and-confer
10  process.  The plan includes provisions to minimize migration from DSH to CDCR
11  facilities, and both parties agree that it will be necessary to closely monitor staffing issues
12  at DSH going forward.

13  The Court's July 12, 2024 order also directed the plan to include "requests for any
14  necessary waivers of state law."  ECF No. 8330 at 16.  If the plan were to be implemented,
15  the waiver of several statutes and regulations related to the provision of additional
16  compensation outside of the collective bargaining process would be necessary, similar to
17  the waiver of state laws ordered in 2006 by this Court.  *See* Dec. 15, 2006 Order, ECF No.
18  2083.  These laws are detailed below.  There are additional state laws related to the state
19  contracting and procurement process that would have to be waived in order to allow for the
20  rapid hiring of the third-party contractors described in the attached plan.  However, the
21  parties require additional time to determine exactly what statutes and regulations bar an
22  expedited contracting process and request that they be able to move the Court to waive
23  these provisions in a subsequent filing if they determine such waivers are necessary to
24  implement the proposed plan.

25  Defendants also have identified legal and logistical issues connected to a state
26  agency administering funds that have been deposited with the Court and then transferred
27  back to that agency for the purpose of making expenditures.  As Defendants have
28  previously informed the court, the Legislature made an appropriation for the fines in the

2024 Budget Act and Defendants are able to deposit those funds with the Court if the stay of the Court's June 25 and 27, 2024 orders is lifted. *See* Defs.' Mot. Stay, ECF No. 8308 at 12. However, once that deposit is made with the Court, the process by which the Court might transfer funds back to the State Controller's Office, and then for CDCR to receive and be authorized to use those funds, is legally uncertain and requires more time to examine. Moreover, CDCR's use of any funds deposited with the Court and then transferred back to the State via the State Controller's Office will also be logistically complicated and time consuming. Defendants therefore request that they be able to consult further with the Special Master and Plaintiffs regarding these issues, including discussing alternative methods of administering the court-adopted plan with the allocated funding that does not require first depositing the funds with the Court. The parties will provide additional information and requests for more specific orders regarding these logistical issues, if necessary, to the Court after those additional discussions.

## STATE LAW WAIVERS

In October of 2006, the *Plata* Court granted the Receiver's request to waive several state laws in order to allow the Receiver to institute salary increases across several classifications outside of the normal collective bargaining process. *See* ECF No. 8020-3 (Order Re: Receiver's Motion for A Waiver of State Law, filed October 17, 2006, at ECF No. 554 in *Plata v. Newsom*, 01-CV-013351-JST (N.D. Cal.)). These included Government Code Sections 19816, 19826, 19829, 19832, 19836, 3516.5, and 3517, as well as Section 599.681 of Title 2 of the California Code of Regulations. *Id.* at 7-8. In December of 2006, this Court granted the Special Master's request to waive the same laws in this case, in order to increase salaries for several mental health classifications. Dec. 15, 2006 Order, ECF No. 2083; Exhibit T to Special Master's 16th Round Monitoring Report, ECF No. 2081-11 at 9-14. Those laws have not substantively changed since 2006, with the exception of Section 19816, which vested the Department of Personnel Administration with all duties and powers with respect to the administration of salaries for civil service and exempt employees and was replaced in 2011 by Section 19815.2, creating the

1 Department of Human Resources (CalHR) and vesting CalHR with those duties and
2 powers instead.  There is an additional law, Government Code Section 19837, that governs
3 the payment of salary to a civil service employee above the maximum rate permitted for
4 their class, which was not waived in 2006 in *Plata* or by this Court but should be waived in
5 order to allow for the attached plan to proceed.  Accordingly, all of the laws waived in
6 2006, in addition to Section 19837, would need to be waived in order to increase
7 compensation for civil service employees outside of the collective bargaining process, as
8 provided for in the attached plan.  Specifically, the requested laws are:

- Government Code Sections 19815.2, 19826, 19829, 19832, 19836, 19837, 3516.5, and 3517; and
- Title 2, Section 599.681 of the California Code of Regulations.

As noted above, the waiver of additional laws related to the state contracting and procurement process, in addition to laws related to CDCR's administration of funds that have not been budgetarily allocated, may be necessary.

## DEFENDANTS' SEPARATE STATEMENT

On June 25, 2024, the Court issued a ruling holding certain Defendants in contempt for Defendants' inability to comply with Court ordered staffing requirements and imposed fines totaling approximately $120,000,000, with ongoing fines accruing on a monthly basis.  (ECF No. 8330 at 15.)  Defendants immediately appealed that ruling to the Ninth Circuit and on July 1, 2024, filed a motion to stay the Court's June 25 and 27 Orders pending appeal.  (ECF No. 8310.)  On July 24, 2024, the Court denied Defendants' motion to stay the orders pending appeal.  (ECF No. 8339.)

On July 8, 2024, Defendants filed a motion to stay the June 25 and 27 orders in the Ninth Circuit.  That motion is fully briefed and pending before the Ninth Circuit.  On July 26, 2024, the Ninth Circuit administratively stayed the June 25 and 27 orders pending its ruling on Defendants' motion to stay the orders pending appeal.  (ECF No. 8341.)

On July 12, 2024, the Court ordered the parties to meet and confer under the supervision of the Special Master and then "submit to the court a written plan for

[4547056.9]
4
JOINT SUBMISSION OF PLAN FOR EXPENDITURE OF STAFFING CONTEMPT FINES AND [PROPOSED ORDER]

expenditure of accumulated fines . . . to remedy ongoing mental health understaffing in the CDCR units covered by the 2009 staffing plan" within thirty days. (ECF No. 8330.) Defendants have complied with this order by working with Plaintiffs and the Special Master to develop the attached plan for the expenditure of fines, including by running cost estimates on various possible uses identified by Plaintiffs across multiple scenarios and providing feedback on implementation and administrability issues around certain proposed uses.

Defendants intend to present an argument to the Ninth Circuit that the Court erred in its rulings and orders regarding contempt and fines. Thus, the submission of this plan does not constitute waiver of any issue previously raised before this Court and which may be raised in the Ninth Circuit. Additionally, Defendants recognize that their currently pending motion to stay the Order may be denied without prejudice or on the basis that the mere depositing of fines does not constitute irreparable injury. Defendants do not believe that their rights can or should be compromised by their good-faith compliance with this Court's order to develop a plan for expending fines while their request for a stay of the underlying order imposing the fines remains pending. Accordingly, Defendants also reserve the right to seek relief from any order of this Court implementing the proposed plan or otherwise directing the expenditure of fines accrued if Defendants' currently pending stay request is denied on the grounds noted above.

## PLAINTIFFS' SEPARATE STATEMENT

Plaintiffs appreciate Defendants' active participation in the process of developing this plan, including their responses to Plaintiffs' proposals and their proffering of various counter-proposals. Defendants have appeared to participate in the court-ordered process in good faith, and have represented to Plaintiffs and the Special Master that they do not object to the plan submitted here as Exhibit A. Plaintiffs expect that if the Ninth Circuit lifts the current administrative stay of the Court's June 25 and June 27 orders and does not issue a stay pending appeal, Defendants will comply with the Court's orders and their existing legal obligations to fully implement the plan adopted by the Court without delay.

## CONCLUSION

The parties jointly submit the attached plan pursuant to the Court's July 12, 2024 Order, ECF No. 8330.  If the plan is implemented, Government Code Sections 19815.2, 19826, 19829, 19832, 19836, 19837, 3516.5, and 3517, and Title 2, Section 599.681 of the California Code of Regulations would have to be waived, for the sole purpose of instituting the provision of this plan.  Lastly, if the plan is approved for implementation, the parties request additional time to discuss and potentially submit additional information and requests regarding the implementation of the plan.

## CERTIFICATION

Plaintiffs' counsel and Defendants' counsel certify that they reviewed the following orders in preparing this filing: ECF Nos. 2083, 8291, 8299, 8313, 8329, 8330, 8339, 8340, 8351, 8354.

Respectfully submitted,

DATED:  August 23, 2024    ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Jared Miller*
Jared Miller

Attorneys for Plaintiffs

| | | |
|---|---|---|
| DATED: August 23, 2024 | | ROB BONTA<br>Attorney General of California<br>Damon G. McClain<br>Supervising Deputy Attorney General |
| | By: | */s/ Damon McClain*<br>Damon McClain<br>Deputy Attorney General |
| DATED: August 23, 2024 | | HANSON BRIDGETT LLP |
| | By: | */s/ Paul B. Mello*<br>Paul B. Mello |
| | | Attorneys for Defendants |

## [PROPOSED] ORDER

The parties' "Plan for the Expenditure of Staffing Contempt Fines" is approved, and Defendants are ordered to implement the plan as written.

Government Code Sections 19815.2, 19826, 19829, 19832, 19836, 19837, 3516.5, and 3517, and Title 2, Section 599.681 of the California Code of Regulations are waived for the sole purpose of implementing the provisions of this plan.

IT IS SO ORDERED.

DATED: _____, 2024

                                          Honorable Kimberly J. Mueller

# EXHIBIT A

## PLAN FOR THE EXPENDITURE OF STAFFING CONTEMPT FINES

I. **Immediate Expenditures**

    A. **One-time Retention and Recruitment bonuses**

- <u>Description</u>:
  - Bonuses of $10,000 to current CDCR staff in all classifications covered by the 2009 staffing plan ("the five classifications" (psychiatrists, psychologists, social workers, recreational therapists, and medical assistants)), including mental health clinical executives (i.e., chief, supervising, and senior positions) as well as staff in the same classifications working in the Psychiatric Inpatient Programs (PIPs).
  - Bonuses of $10,000 to new hires in the five classifications, including mental health clinical executives and those working in the PIPs, who start while this provision is in effect, but only to the extent the new hires come from outside CDCR and DSH.
- <u>Timeline for Implementation</u>:
  - Implementation of this provision will commence immediately once any stay of the June 25 and 27, 2024 orders is lifted, *and* the Court has approved this plan for expenditure of fines.
  - This bonus provision will be in effect for one year.
  - For existing staff, bonuses are paid in one lump sum at 90 days after the later of the lifting of any stay of the June 25 and June 27, 2024 orders ("stay lift date" and the date the Court approves the plan for expenditure of fines ("court approval date").
  - For new staff, bonuses are paid at six months following a staff member's start date.

- Defendants will take all steps necessary to ensure the timeline for implementation is met. However, because implementation also involves entities that are not parties to the litigation, Defendants cannot represent that every individual who is eligible to receive a bonus will be paid within the timeframe provided. Defendants will provide periodic updates to Plaintiffs and the Special Master on the status of bonus payments.
- Cost Estimates:
  - Currently-filled positions: $14,009,000
  - Currently-vacant positions: $8,736,000

**B.     Monthly bonuses to augment take-home pay**

- Description:
  - $20,000 bonuses for all current psychologists and social workers, including Chief Psychologists, Senior and Supervising Psychologists, and Supervising Social Workers, and including mental health clinical executives and staff in the same classifications working in the PIPs. This bonus will also be provided to new hires who start when this provision is in effect, but only to the extent the new hires come from outside CDCR and DSH. This bonus is to be divided into twelve equal payments of $1666.67 and paid on a monthly basis for a period of one year.
  - $5,000 bonuses for all current psychiatrists, recreational therapists, and medical assistants, including Chief and Senior Psychiatrists, as well as all psychiatrists, recreational therapists, and medical assistants working in the PIPs. This bonus will also be provided to new hires who start when this

provision is in effect, but only to the extent the new hires come from outside CDCR and DSH. This bonus is to be divided into twelve equal payments of $416.67 and paid on a monthly basis for a period of one year.

- Timeline for Implementation:
    - Implementation of this provision will commence immediately once any stay of the June 25 and 27, 2024 orders is lifted, *and* the Court has approved this plan for expenditure of fines.
    - This bonus provision will be in effect for one year.
    - For existing staff, bonuses will begin at 90 days after the later of the stay lift date and the court approval date.
    - For new staff, bonuses will be available at 90 days after the later of the stay lift date and the court approval date, and will commence on that date or the first pay period following the employee's start date, whichever is later.
    - Defendants will take all steps necessary to ensure the timeline for implementation is met. However, because implementation also involves entities that are not parties to the litigation, Defendants cannot represent that every individual who is eligible to receive a bonus will be paid within the timeframe provided. Defendants will provide periodic updates to Plaintiffs and the Special Master on the status of bonus payments.
- Cost Estimates:
    - Currently-filled positions: $19,961,104
    - Currently-vacant positions: $13,824,494

C. **Institution-Specific Funds for Supplies and Working Conditions**

- <u>Description</u>:
  - One-time estimated $50,000 payments (twice per year) to all prisons with mental health programs to purchase supplies (e.g., materials for group and recreational therapy); the exact amount may be adjusted in consideration of the size of an institution's mental health program.
  - One-time estimated $100,000 payments to all CCCMS programs to improve working conditions (e.g., furniture, improvements to treatment and office spaces); the exact amount may be adjusted in consideration of the size of an institution's mental health program.
  - One-time estimated $200,000 payments to all EOP programs to improve working conditions (e.g., furniture, improvements to treatment and office spaces); the exact amount may be adjusted in consideration of the size of an institution's mental health program.
  - One-time estimated $300,000 payments to all PIP programs to improve working conditions (e.g., furniture, improvements to treatment and office spaces); the exact amount may be adjusted in consideration of the size of an institution's mental health program.
- <u>Timeline for Implementation</u>:
  - Implementation of this provision will commence immediately once any stay of the June 25 and 27, 2024 orders is lifted, and the Court has approved this plan for expenditure of fines.
  - Defendants will prepare a draft policy regarding the appropriate use of these funds by the institutions, on which

        Plaintiffs and the Special Master will then comment. The plan shall be finalized and disseminated to institutional leadership within 60 days after the later of the stay lift date and the court approval date.

- Within 90 days of the later of the stay lift date and the court approval date, the funds shall be made available for expenditure by the receiving institutions.

### D. Referral Bonuses

- Description:
  - $5,000 for any CDCR employee (not limited to the classifications at issue) who refers an individual who is not a current DSH employee and who is successfully hired by CDCR in any one of the five classifications at issue and remains employed for at least 90 days.
- Timeline for Implementation:
  - Implementation of this provision will commence immediately once any stay of the June 25 and 27, 2024 orders is lifted, *and* the Court has approved this plan for expenditure of fines.
- This bonus provision will be in effect for one year.
- The $5,000 bonus is to be paid to the referring employee the month after the new employee has been employed with CDCR for 90 days.
- Defendants will take all steps necessary to ensure the timeline for implementation is met. However, because implementation also involves entities that are not parties to the litigation, Defendants cannot represent that every individual who is eligible to receive a bonus will be paid within the timeframe provided. Defendants will provide periodic updates to

Plaintiffs and the Special Master on the status of bonus payments.

E. **Hiring of Third-Party Recruitment/Hiring Contractor**

- Description:
  - Defendants will hire a third-party head-hunting/recruitment firm to augment or replace CDCR's existing processes for purposes of recruitment, advertising, review of applications and scheduling of interviews, more frequent contact with applicants throughout the hiring process, and improved onboarding.
- Timeline for Implementation:
  - Implementation of this provision will commence immediately once any stay of the June 25 and 27, 2024 orders is lifted, *and* the Court has approved this plan for expenditure of fines.
  - Within 60 days of the later of the stay lift date and the court approval date, Defendants will issue a Request for Proposals (RFPs).
  - Within 90 days of the later of the stay lift date and the court approval date, Defendants will select a vendor, with assistance from the Special Master, and will submit the vendor for approval by the Court.
  - Within 120 days of the later of the stay lift date and the court approval date, Defendants will sign a contract with vendor

F. **Hiring of Third-Party Human Resources/Recruiting Consulting Firm**

- Description:
  - The parties will hire a third-party consultant that will conduct a root-cause analysis of CDCR's recruitment and retention issues and make recommendations regarding short- and long-term

[4547056.9]

13

strategies to address those issues.  This would include the development of a compensation strategy, identification of weaknesses in CDCR's recruitment and HR process, determination of ways to improve CDCR's culture and morale, and creation of mechanisms for the creation and tracking of data to ensure that strategies are adjusted when necessary.  This may or may not be the same contractor selected pursuant to Section E above.

- Timeline for Implementation:
    - Implementation of this provision will commence immediately once any stay of the June 25 and 27, 2024 orders is lifted, *and* the Court has approved this plan for expenditure of fines.
    - Within 60 days of the later of the stay lift date and the court approval date, Defendants will issue a Request for Proposals (RFPs).
    - Within 90 days of the later of the stay lift date and the court approval date, Defendants will select a vendor, with the assistance of the Special Master, and submit the vendor for approval by the Court.
    - Within 120 days of the later of the stay lift date and the court approval date, Defendants will sign a contract with a vendor.

II. **Longer-Term Initiatives**

  A. **Development of Hybrid Work Policy**

  - Description:
      - Defendants will develop a hybrid work policy that will permit onsite mental health staff to spend a portion of their working time off-site.  Contempt fines may be used to fund costs incurred in connection with the expansion of hybrid work,

[4547056.9]

14

JOINT SUBMISSION OF PLAN FOR EXPENDITURE OF STAFFING CONTEMPT FINES AND [PROPOSED ORDER]

      including the provision of secure web conferencing platforms, IP licensing, and an increase in staffing of telepresenters.

- Timeline for Implementation:
  - Implementation of this provision will commence immediately once any stay of the June 25 and 27, 2024 orders is lifted, *and* the Court has approved this plan for expenditure of fines.
  - Within 60 days of the later of the stay lift date and the court approval date, Defendants will issue draft policy.
  - Within 30 days of Defendants' submission of a draft policy, the parties will meet and confer with Special Master regarding the draft policy and Defendants will issue a final policy.
  - Within 30 days of the issuance of the final hybrid work policy, Defendants will implement the policy for existing employees and update recruitment materials to offer and advertise for hybrid-work positions.

**B. Reporting Requirements and Implementation of Additional Measures, Including Consultant Recommendations**

- Description:
  - The parties will meet regularly and share information about recruitment and retention initiatives funded by the contempt fines as well as Defendants' ongoing regular programs. Beginning with the last day of the month following implementation of the plan, and on a monthly basis thereafter, Defendants will be obligated to provide a reporting of the plan's progress to the Court and the parties, including, at a minimum, the amount of funds spent in the previous month, and the number of job applicants, offers made, and new hires in the previous month at each institution.

- The parties also anticipate that the hired consultants will make recommendations that may require the expenditure of additional funds. No later than seven months after the implementation of this plan, the parties will report to the court about the need for additional initiatives funded by the contempt fines, including but not limited to possible continuation or increases of the bonuses detailed above.
- <u>Timeline for Implementation</u>:
  - Immediate and Ongoing