```
 1                       UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF CALIFORNIA
 2                                  --oOo--

 3    RALPH COLEMAN, ET AL,         ) Docket No. 90-CV-520
                                    ) Sacramento, California
 4                 Plaintiffs,      ) August 21, 2024
                                    ) 1:03 p.m.
 5          v.                      )
                                    )
 6    GAVIN NEWSOM, ET AL.,         ) Re: Further show cause hearing
                                    )
 7                 Defendants.      )

 8              TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS
              BEFORE THE HONORABLE KIMBERLY J. MUELLER
 9                 CHIEF UNITED STATES DISTRICT JUDGE

10    APPEARANCES (via Zoom):

11    For the Plaintiffs:      ROSEN BIEN GALVAN & GRUNFELD, LLP by
                               MR. MICHAEL BIEN
12                             MS. LISA ADRIENNE ELLS
                               Attorneys at Law
13                             101 Mission Street, Sixth Floor
                               San Francisco, CA 94105
14
      For the Defendant:       OFFICE OF THE ATTORNEY GENERAL by
15                             MR. PAUL MELLO
                               MS. ELISE THORN
16                             MS. SAMANTHA WOLFF
                               MR. DAMON GRANT McCLAIN
17                             Attorneys at Law
                               1300 I Street, Suite 125
18                             Sacramento, CA 94244

19         (Appearances continued next page.)

20

21

22    Remotely Reported By:    JENNIFER COULTHARD, RMR, CRR
                               501 I Street, Suite 4-200
23                             Sacramento, California 95814
                               jenrmrcrr2@gmail.com
24                             (530)537-9312

25     Reported using mechanical steno - computer-aided transcription
```

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

```
1     APPEARANCES (Via Zoom cont'd)

2                              OFFICE OF THE GOVERNOR by
                               MR. DAVID B. SAPP
3                              Attorney at Law
                               1021 O Street, Suite 9000
4                              Sacramento, CA 95814

5                              PRISON LAW OFFICE by
                               MR. DONALD SPECTER
6                              Attorney at Law
                               1917 Fifth Street
7                              Berkeley, CA 94710

8

9                                   --oOo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

VIDEOCONFERENCE PROCEEDINGS

1                    SACRAMENTO, CALIFORNIA

2       <u>Tuesday - August 27, 2024</u>                            1:03 p.m.

3                       P R O C E E D I N G S

4                              --oOo--

5          (In open court via Zoom.)

6              THE CLERK:  Calling civil case 90-520, Coleman, et al.

7    versus Newsom, et al.  This is on calendar for a further show

8    cause hearing.

9              THE COURT:  All right.  Appearing for plaintiffs, lead

10   counsel?

11             MR. BIEN:  Michael Bien and I'm accompanied, Your

12   Honor, by Don Specter and Lisa Ells.

13             THE COURT:  All right.  Good afternoon.  I see

14   Mr. Specter is wearing a coat, so I'll credit that.  This is

15   Court too.

16             And for the defense?

17             MR. MELLO:  Good afternoon, Your Honor.  This is Paul

18   Mello, lead counsel.  I'm joined by Samantha Wolff, Damon

19   McClain, Elise Thorn and David Sapp from the Governor's Office.

20   Thank you.

21             THE COURT:  All right.  Good afternoon to you all.  I

22   wanted to follow up on our discussion yesterday and provide an

23   update, provide an advisement in the process I'm following now

24   and I give you homework assignments.

25             One is I do -- I plan to speak with Judge Tigar today

1   just to ask if he can tell me would the receiver be available
2   for appointment or to participate in a competitive process
3   considering appointment of a receiver in Coleman.  So I have
4   that call on the books.
5          If Judge Tigar signals the answer to those questions
6   to each question is yes, then here's what I would like to do,
7   subject to providing this advisement and giving you a chance to
8   respond:  Courts can appoint technical advisers, and I've
9   reviewed the press -- the case law that describes the reasons
10  for technical advisers.  I'm contemplating a very discrete
11  retention of a technical adviser to assist me in really
12  objectifying my thinking about the appointment of a receiver
13  and the possibility of the *Plata* receiver serving as a receiver
14  in Coleman as well.  I shared with you yesterday concerns.  I
15  asked questions I have about that.  I shared with you my strong
16  instinct to have an open process, but in order to really ensure
17  that I'm objectifying this and I'm thinking this through in a
18  way that also takes account of a good organizational practice,
19  an area I'm lacking in, I would like to retain discretely, for
20  a relatively few hours, I believe, someone to help me think
21  that through.
22         In terms of the cases -- and I'll put this in a short
23  order confirming, but I'm looking particularly at *The*
24  *Association of Mexican American Educators* case, and the cite
25  for that is 231 F.3d 572.  Judge Tashima's dissent has become a

1  source of factors the Court considers in appointing a technical
2  adviser.
3          This is a rare circumstance, also a very discrete
4  circumstance; but given the complexity of the question, not a
5  simple question, that appointment of receiver generally and
6  that the parties' joint status poses for the Court, I think
7  this is a case where very surgical use of a technical adviser
8  could assist the Court in getting to the right decision.
9          The factors are:  Utilize a fair and open procedure
10 for appointment.  This is the beginning of that procedure.  I
11 must address any allegations of bias, partiality or lack of
12 qualification.  I'm going to tell you who I would like to
13 retain.  I'll give you a chance to consider and provide any
14 objections.  I must clearly define and limit the technical
15 adviser's duties.  I will do that.  It's a very focused
16 assignment that I'm thinking of, which is really looking at
17 executive summary materials with respect to the organizations
18 currently in place both for Plata and for Coleman and best
19 organizational practice looking at the chronology of the cases,
20 looking at the reasons for the two cases and just providing me
21 with observations and questions to answer in my own mind to
22 think about whether or not, in particular, what the parties are
23 proposing in the first instance can satisfy this Court's
24 concerns.  And then the Court would make clear to the technical
25 adviser that any advice given to the Court cannot be based on

1    extra-record information apart from the adviser's own
2    expertise, really an organizational structure and then the
3    Court would make explicit, through a report or a record of
4    ex-party communications, the nature and content.  The Court
5    would be free to have one-to-one confidential discussions that
6    wouldn't be subject to discovery or deposition practice, but I
7    would make a record and I'd do that in the presence of the
8    technical adviser so the parties would understand what I
9    gleaned from the discussions.
10            So that's -- having thought about yesterday's hearing
11   and having thought about my role and what I need to really make
12   certain I'm giving full weight to what the parties are
13   suggesting, that's my plan, assuming that you don't bring to my
14   attention objections or concerns that would throw me off
15   course.
16            The person I'm contemplating is someone I -- I know
17   this person personally and professionally and it's why the
18   person has come to mind.  Many years ago I served on a board
19   with this person.  The person has a firm and has engaged in
20   consulting, leadership consulting and organizational consulting
21   for many years.  His name is Eric Douglas, D-O-U-G-L-A-S.  I
22   will provide his C.V.  He's senior partner and president and
23   founder of an organization called Leading Resources,
24   Incorporated, here in Sacramento.  He has worked for State
25   entities, other public entities, private entities, nonprofit

1  entities.  And my belief is that he has helped think through
2  sometimes complex, challenging organizational questions, and
3  it's why he occurs to me as someone I would benefit from, if I
4  could just have some focused discussions.  His hourly rate is
5  probably less than all of yours, $375.  I think this would be
6  five to ten hours max and I believe could be done quickly.
7          So that is -- that's what I would like to do.  I will,
8  if not by this afternoon yet by tomorrow morning I'll put on
9  the docket his C.V., a proposed description of the task, just
10 provide a summary of the factors and the case law that I've
11 consulted in thinking about appointing a technical adviser, and
12 then I'd ask you, as quickly as possible, to let me know if you
13 would have any objection because I do believe time is of the
14 essence here.  So let me just ask, are there any questions or
15 comments based on what I've said so far before I turn to some
16 more homework assignments, Mr. Bien?
17         MR. BIEN:  No, Your Honor.  We think it would be --
18 sounds like a very appropriate plan to help you with a complex
19 decision.
20         THE COURT:  All right.  Mr. Mello?
21         MR. MELLO:  No concerns.
22         THE COURT:  All right.  So I'll get this on the docket
23 by tomorrow morning.  I don't want to push you.  On the other
24 hand I said I think time is of the essence, so I'm going to
25 initially say if you do develop any concerns, let me know by

1    the close of business Friday.  And if you want more time, let
2    me know, but otherwise I will -- I will move forward
3    post-haste.
4         So assuming I do need -- do need to move forward, I do
5    have, I believe, an organizational chart from the special
6    master for Plata but could -- Mr. Mello, could the defendants
7    please provide to me what you consider to be the current
8    organizational chart for Plata and do that by, say, noon
9    tomorrow?
10        MR. MELLO:  Are you looking for the CCHCS
11   organizational chart that's --
12        THE COURT:  If there's more than one, I'll take more
13   than one.
14        MR. MELLO:  On.
15        THE COURT:  Whatever is relevant.  Whatever is
16   happening in Plata.
17        MR. MELLO:  I'll work with the clients and we will get
18   you an org chart or two.
19        THE COURT:  All right. Here's the other -- it's a
20   request.  I can't force you to put anything in writing and sign
21   it, but I would also request a clarification based on a
22   question I asked yesterday.  And so if you are prepared to
23   provide a further clarification, I believe your responses could
24   be important to the way I think about this.
25        I did ask each party if I were to appoint a receiver,

1    in particular to appoint the Plata receiver, are the parties
2    telling me they accept the law of the case in Coleman?  I
3    recognize there's one appeal pending, but let's say, you know,
4    that -- that could affect the landscape in part, but are the
5    parties prepared to accept the law of the case in Coleman so as
6    not to keep litigating those questions?  Are they prepared to
7    accept the program guide fundamentally as the remedial "bible,"
8    as it were, recognizing, as Mr. Bien said, of course things
9    might get -- you know, there might be some implementation
10   details that get refined as things go along, but fundamentally
11   the Court would anticipate telling any receiver, you know, this
12   is what the Court has decided, that this is -- this is the
13   remedial plan in Coleman and the receiver is empowered to
14   implement it.
15           And so I wasn't certain I heard a full-throated
16   endorsement of that concept from Mr. Mello and I -- I can order
17   it.  I think any receiver I would order it to, but I need to
18   understand if there's any qualification embedded in the
19   parties' request that would run counter to the way I think
20   about what a Coleman receiver would do here.  And so to the
21   extent you're in a position to supplement the record, if you
22   want to tell me what you think should happen with suicide
23   prevention, you know, any other issue that's coming up for
24   enforcement, you can do that; but really, I need to understand
25   what the positions are and is there some carveout going on

1    there.

2           And Mr. Mello, it's really your response to my
3    question yesterday that has me asking this question.  Ideally,
4    what I would see is a declaration signed by Mr. Sapp that fully
5    clarifies.  I think he's the right person to make any
6    representation the defendants can make.  And again, I can't put
7    words in anyone's mouth, but I'd appreciate that.  And that
8    clarification, you know, I can give you seven days come up with
9    if you wish to supplement the record.

10          So any questions or comments with that, Mr. Mello?

11          MR. MELLO:  No questions.  I understand the request,
12   Your Honor.

13          THE COURT:  All right.  Mr. Bien?

14          MR. BIEN:  I understand, Your Honor.

15          THE COURT:  All right. And if you want to make it
16   joint, that's fine; but otherwise at least separate -- any
17   separate supplemental filings by a week from today, Wednesday,
18   close of business.

19          All right.  That's all I had.

20          Any questions before we sign off, Mr. Mello?

21          MR. MELLO:  No questions, Your Honor.  Thank you.

22          THE COURT:  Mr. Bien?

23          MR. BIEN:  No, Your Honor.  Thank you.

24          MR. SPECTER:  Your Honor, I do have one question.

25          THE COURT:  This is Mr. Specter.

1        MR. SPECTER:  Are you planning on letting the parties
2    know about not necessarily the details of your conversation
3    with Judge Tigar but the bottom line about whether this is
4    going to be possible or not?
5        THE COURT:  I would just let you know if he says the
6    Plata receiver would not consider appointment.  If he says the
7    Plata receiver would not consider appointment or he would not
8    free the Plata receiver to do that, then I go to an open
9    process.
10       MR. SPECTER:  Okay.
11       THE COURT:  I consider -- I clarify my position
12   regarding the defense request for an evidentiary hearing, but
13   then I think the only option is an open process.
14       MR. SPECTER:  Understood.  Thank you.  That's very
15   helpful.
16       THE COURT:  It's either a yes or no.
17       MR. SPECTER:  Right.
18       THE COURT:  I can put -- probably in a minute order I
19   can say either I'm proceeding with the technical adviser
20   because this appears to be a possibility or it's not and then
21   I'll resolve the question by an evidentiary hearing and then
22   move forward.
23       MR. SPECTER:  That would be fine.  Thank you.
24       THE COURT:  All right.  All right.  Thank you very
25   much.  You may sign off.

1          (Concluded at 1:18 p.m.)

2

3                    C E R T I F I C A T E

4

5     I certify that the foregoing is a true and correct

6  transcript of the record of proceedings in the above-entitled

7  matter.

8
   _____             August 27, 2024
9  JENNIFER L. COULTHARD, RMR, CRR                    DATE
   Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25