# EXHIBIT A

| From: | Ryan, Jr., Michael F. |
|---|---|
| To: | Thind, Sundeep@CDCR; Bentz, Melissa@CDCR |
| Cc: | Weber, Nicholas@CDCR; Yip, Jonathan@CDCR; Nguyen, Tiffany@CDCR; Garland, Latoya@CDCR; Cartwright, Steven@CDCR; Henry A. Dlugacz; Walsh Kerry F.; Gribbin Rachel; Coleman Special Master; "Lisa Ells (LElls@rbgg.com)"; Jenny Yelin; Coleman Team - RBG Only; Worrell, Wendy; Kirby, Melissa@CDCR; "Steve Fama" |
| Subject: | Programming and Verification |
| Date: | Friday, June 28, 2024 12:21:00 PM |
| Attachments: | RE MH Verification follow-up.msg |

Good morning:

I write to follow-up on the stakeholders' discussion during the June 26, 2024 BRMR meeting.  In response to Dr. Cartwright's request for guidance regarding our collaborative efforts to finish the data remediation project, Mr. Dlugacz highlighted the need for the broader stakeholder group to have a better understanding of the status of the indicators currently in the Programming and Verification stages of the remediation process.

As you may recall, Dr. Potter requested an overview of the status of the key indicators in the verification stage during the January 31, 2024 BRMR meeting.  In the attached February 5, 2024 email, I delineated the contours of our team's request.

Nearly five months later, the need for transparency in furtherance of the stakeholders' common understanding of the status of indicators in the later stages (i.e. programming and verification) of the remediation process is even greater.

In addition to renewing our request for the specific information outlined in my February 5, 2024 email, at this point it would be most helpful to include the following in the presentation:

We request that CDCR's programming and verification teams prepare a presentation for the stakeholders with information about where each indicator is in the programming and verification stages, for how many days they have been at that stage, and any obstacles CDCR has encountered or anticipates encountering to completing either stage.  To the extent possible, please also include an estimate of when the indicators will complete the stage they are in.  Finally, we ask that the presentation include descriptions of what occurs when an already remediated indicator stops passing tests and, if applicable, how many indicators currently fall into this category.

We ask for this presentation to be added to the next BRMR's QAC agenda.  If you have any questions between now and the next BRMR meeting regarding this request, please let us know.

Thank you.

**Michael F. Ryan, Jr., Senior Counsel**
mryan@pldolaw.com
P 401.824.5100 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**

Northwoods Office Park Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com  •  Legal Disclaimer

| | |
|---|---|
| **From:** | Ryan, Jr., Michael F. |
| **To:** | "Thind, Sundeep@CDCR"; "Bentz, Melissa@CDCR" |
| **Cc:** | "Weber, Nicholas@CDCR"; "Yip, Jonathan@CDCR"; "Nguyen, Tiffany@CDCR"; "Garland, Latoya@CDCR"; "Cartwright, Steven@CDCR"; Henry A. Dlugacz; Walsh Kerry F.; Gribbin Rachel; Coleman Special Master; "Lisa Ells (LElls@rbgg.com)"; "Jenny Yelin"; "Coleman Team - RBG Only"; "Worrell, Wendy"; "Kirby, Melissa@CDCR"; "Steve Fama" |
| **Subject:** | RE: Programming and Verification |
| **Date:** | Friday, July 19, 2024 2:50:00 PM |

Good morning:

On behalf of the Special Master's data team, I write to follow-up on the July 10, 2024 BRMR discussion of the status of indicators in the verification stage of the remediation process and the July 17, 2024 discussion regarding next steps in the data remediation process overall.

Thank you for facilitating an informative presentation and status update from the verification team. We appreciate the hard work CDCR and CCHCS staff continue to dedicate to each stage of the data remediation process. The July 10, 2024 presentation will help build a common understanding among the stakeholders regarding the ongoing work in this later stage of the remediation process.

Our team has reflected on the discussion at the July 17, 2024 BRMR meeting regarding identification of the next tranche of indicators. Our team believes that we can make substantial overall progress in the near future by focusing on completing remediation of the groups of indicators discussed below.

Additionally, to the extent identifying a third tranche of indicators to focus on in BRMR now will not interfere with defendants' efforts to move indicators out of the verification stage and onto final review or with completion of the already identified tranches, we will identify a third tranche for the parties' consideration. Specifically, we will consider CDCR's recommendation to focus on either the treatment offered or timely clinical contact series or indicators.

1. Indicators in Final Review

First, as of the time of the writing, there are 14 indicators pending remediation. Dr. Potter will complete his final review of these items by close of business July 26, 2024. By that time, he will be in a position to either mark those indicators off as remediated or provide focused guidance to defendants as to what they would need to do for him to mark the indicators off as remediated.

2. Indicators In Programming, and Verification

Second, there are currently 35 indicators in the programming and verification stage of the remediation process. This group of indicators currently accounts for 13 percent of the 267 key indicators and are in the latter stages of the remediation process. Accordingly, expediting remediation of this group of indicators presents us with a major opportunity to make significant progress quickly, thereby advancing our shared goal of completing this project.

To that end, we are requesting an estimate from defendants as to when each of these indicators can complete the verification stage and be ready for Dr. Potter's final review. Please let us and plaintiffs

know what, if anything, we can do collectively or individually to assist moving these items along in the process.

3. <u>Medication Management</u>

Third, we note there are 29 un-remediated medication management indicators, 18 of which are currently in BRMR. Our hope and expectation is that the substantial amount of work dedicated to narrowing the issues on the requirements-wise version of these indicators and our collective focus on medication management as the next tranche of indicators after suicide prevention will enable us to remediate all medication management indicators expeditiously.

Together, the categories of indicators described above [i.e., those in final review (14); those in programming and verification (35); and the medication management indicators in BRMR (18)] amount to 67 indicators. When we complete remediation of these 67 indicators, the count of remediated indicators will be at least 219, or 82 percent of the 267 current indicators. This, in turn, would demonstrate significant progress and build momentum to completing the home stretch of this daunting project.

Progress has been made on the first tranche of indicators we identified some months ago – the suicide prevention indicators. Still, work on this group of indicators remains incomplete. As of the time of this writing, there are now four suicide prevention indicators in "pre-BRMR" (i.e. the stakeholders have not been provided with initial or updated documentation), and two in BRMR. We encourage CDCR to expedite completion of the remaining work on the suicide prevention tranche of indicators.

During the July 17, 2024 BRMR meeting, defendants asked which group of indicators our team will be identifying as the "third tranche" of indicators to focus our efforts on in BRMR. We are still considering this request and as indicated above, to the extent identifying a third tranche now will not interfere with defendants' efforts to move indicators out of the verification stage and onto final review, with completion of the suicide prevention or medication management indicators, or with any effort required by the final review of the of the 14 indicators in the final review stage, we will identify a third tranche for the parties' consideration. Specifically, we will consider CDCR's recommendations as to the next tranche to focus on.

Data remediation of a complex system is an arduous undertaking but one from which we cannot desist. We see a tremendous opportunity to get significantly closer to its completion by focusing our collective efforts as described above.

Thank you.

**Michael F. Ryan, Jr., Senior Counsel**
mryan@pldolaw.com
P 401.824.5100 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**

Northwoods Office Park Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com  •  Legal Disclaimer

---

**From:** Ryan, Jr., Michael F.
**Sent:** Friday, June 28, 2024 12:22 PM
**To:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Cc:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Yip, Jonathan@CDCR <Jonathan.Yip@cdcr.ca.gov>; Nguyen, Tiffany@CDCR <Tiffany.Nguyen@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; Henry A. Dlugacz <HDlugacz@BLHNY.com>; Walsh Kerry F. <kwalsh@pldolaw.com>; Gribbin Rachel <rgribbin@pldolaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; 'Lisa Ells (LElls@rbgg.com)' <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; 'Steve Fama' <sfama@prisonlaw.com>
**Subject:** Programming and Verification

Good morning:

I write to follow-up on the stakeholders' discussion during the June 26, 2024 BRMR meeting.  In response to Dr. Cartwright's request for guidance regarding our collaborative efforts to finish the data remediation project, Mr. Dlugacz highlighted the need for the broader stakeholder group to have a better understanding of the status of the indicators currently in the Programming and Verification stages of the remediation process.

As you may recall, Dr. Potter requested an overview of the status of the key indicators in the verification stage during the January 31, 2024 BRMR meeting.  In the attached February 5, 2024 email, I delineated the contours of our team's request.

Nearly five months later, the need for transparency in furtherance of the stakeholders' common understanding of the status of indicators in the later stages (i.e. programming and verification) of the remediation process is even greater.

In addition to renewing our request for the specific information outlined in my February 5, 2024 email, at this point it would be most helpful to include the following in the presentation:

We request that CDCR's programming and verification teams prepare a presentation for the stakeholders with information about where each indicator is in the programming and verification stages, for how many days they have been at that stage, and any obstacles CDCR has encountered or anticipates encountering to completing either stage.  To the extent possible, please also include an estimate of when the indicators will complete the stage they are in.  Finally, we ask that the presentation include descriptions of what occurs when an already remediated indicator stops passing tests and, if applicable, how many indicators currently fall into this category.

We ask for this presentation to be added to the next BRMR's QAC agenda.  If you have any questions between now and the next BRMR meeting regarding this request, please let us know.

Thank you.

**Michael F. Ryan, Jr., Senior Counsel**
mryan@pldolaw.com
P 401.824-5100 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com  •  Legal Disclaimer

| | |
|---|---|
| **From:** | Walsh Kerry F. |
| **To:** | Thind, Sundeep@CDCR; Bentz, Melissa@CDCR |
| **Cc:** | Weber, Nicholas@CDCR; Yip, Jonathan@CDCR; Nguyen, Tiffany@CDCR; Garland, Latoya@CDCR; Cartwright, Steven@CDCR; hdlugacz@blhny.com; Gribbin Rachel; Coleman Special Master; "Lisa Ells (LElls@rbgg.com)"; Jenny Yelin; Coleman Team - RBG Only; Worrell, Wendy; Kirby, Melissa@CDCR; "Steve Fama"; jeffrey.metzner@cuanschutz.edu; hdlugacz@blhny.com; lhayesta@msn.com; trougeux@hotmail.com; karenrea01@gmail.com; Dan Potter; Ryan, Jr., Michael F.; Gribbin Rachel; Walsh Kerry F. |
| **Subject:** | RE: Programming and Verification |
| **Date:** | Friday, July 26, 2024 4:07:45 PM |

Good afternoon everyone:

On behalf of the Special Master's data team, I write to follow-up on item #1 in the July 19, 2024 email from Michael Ryan below. My earlier email from today (appended hereto) included an update and suggested next steps for the 10 CMHPP indicators pending remediation as of last Friday. Those ten indicators were also included in the 14 indicators referenced in item #1 of Mr. Ryan's 7/19/2024 email. Below are updates and suggested next steps for the other 4 non-CMHPP indicators.

**Re: AC2.2 PC Contacts Completed by a Senior Psychologist or SPSW**

Subject to a review of the verified AC2.2 report using the link MH provides (as requested on July 25, 2024),
Dr. Potter expects to mark AC2.2 as remediated, effective 7/10/24.

**Re: MM12 Involuntary Medication Court Orders**
During his review of the BRMR MM12 documentation, Dr. Potter found an outstanding request for summary statistics beyond counts and that the "Current" data columns are populated "at the time of the report run date/time." He recommends adding percentages and modifying (or expanding) the "Current" column data to include data as of the end of the reporting period (i.e., Midnight on the Institution End Date parameter or NOW, whichever is earlier. If NULL is selected for the Institution End Date parameter, use of NOW is also acceptable).

If CDCR can agree to add these changes, subject to a review of the actual MM12 report using the link MH provides (as requested on July 25, 2024), Dr. Potter expects to mark of MM12 as remediated (effective 7/15/24) based on its current design and the fact that it is passing its verification test. Please let us know if CDCR is willing to agree to this.

**Re: RH17 Segregation LOS**
Given that the final RHU regulations have not yet been issued, this indicator is not ripe for final review.
The Plaintiffs also have outstanding requests from 5/17/24 and 2/22/24 for information regarding overflow housing and RH17.

**Re: SC8.5E Timely RVR MH Assessment Request**
During the review of BRMR SC8.5E documentation, Dr. Potter found an outstanding request for and discussion of filtering by MHI (as of the date of the RVR incident). He recommends the addition of a column of such data and a corresponding reporting interface filter.

If CDCR can agree to adding these changes, subject to a review of the actual MM12 report using the link MH provides (as requested on July 25, 2024), Dr. Potter expects to mark SC8.5E off as remediated now (effective 3/29/2024) based on its current design and the fact it is passing its verification test.

Thank you

Good afternoon all:

Attached please find the spreadsheet for Dr. Potter's suggested numerator and denominator improvements and comments for all 15 CMHPP indicators included in CDCR's denominator and numerator spreadsheet of June 18, 2024.  We are also providing an update for the ten CMHPP indicators pending remediation as of last Friday. (Please see the attached spreadsheet for comments on the other 5 CMHPP indicators).

Dr. Potter has marked off CMHPP indicators 1 through 6 below based on our understanding that:

- CDCR will document how its audit-based indicators aggregate results for different reporting periods; and
- CDCR will make the numerator and denominator language for audit-based indicators more consistent.

1. CM2.1 Custody Staff CMHPP Annual Training, effective 4/26/2024.
2. CM3.1 Required Staff Attendance of Quarterly Partnership Round Table Training, effective 7/19/2024.
3. CM3.2 Quarterly Partnership Round Table Training Completed as Required, effective 7/10/2024.
4. CM5.2 ML CCCMS and RC CCCMS Weekly Supervisory Meetings with Required Attendees, effective 5/3/2024.
5. CM5.4 ML CCCMS and RC CCCMS CMHPP Monthly Joint Supervisory Program Tours, effective 7/19/2024.
6. CM5.5 ML CCCMS and RC CCCMS CMHPP Monthly Joint Supervisory Program Tours with Required Attendees, effective 7/19/2024.

Regarding,

7. CM1.1 CMHPP MH Huddle Documentation of Required Attendees
8. CM4.1 CMHPP Monthly Executive Leadership Joint Rounding

Dr. Potter will need to review the final documentation for these indicators once the defendants have addressed any questions or concerns plaintiffs may have, if any, after they have reviewed the documentation.

Regarding,

9. CM1.2 CMHPP MH Huddle Documentation of Supervisor Attendees

When stakeholders provided comments and discussed CM1.2, its questions were included in the same audit that collects data for CM1.1 and CM1.3, which gathers data per housing unit weekly. Please advise how CDCR will gather supervisor attendance data for this indicator.

Regarding,

10. CM5.1 ML CCCMS and RC CCCMS CMHPP Weekly Supervisor Meetings

Dr. Potter cannot mark this indicator off at present because he has yet to see documentation on how the data system would be able to determine the value for the denominator for CM5.1. Please provide access to such documentation.  Alternatively, he suggests that CDCR revise

this denominator into a form that can be operationalized.

Thank you.


**Kerry F. Walsh, Partner**
kwalsh@pldolaw.com
P 401.824.5118 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park  Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com • Legal Disclaimer

---

**From:** Ryan, Jr., Michael F. <mryan@pldolaw.com>
**Sent:** Friday, July 19, 2024 2:51 PM
**To:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Cc:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Yip, Jonathan@CDCR <Jonathan.Yip@cdcr.ca.gov>; Nguyen, Tiffany@CDCR <Tiffany.Nguyen@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; hdlugacz@blhny.com; Walsh Kerry F. <kwalsh@pldolaw.com>; Gribbin Rachel <rgribbin@pldolaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; 'Lisa Ells (LElls@rbgg.com)' <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; 'Steve Fama' <sfama@prisonlaw.com>
**Subject:** RE: Programming and Verification

Good morning:

On behalf of the Special Master's data team, I write to follow-up on the July 10, 2024 BRMR discussion of the status of indicators in the verification stage of the remediation process and the July 17, 2024 discussion regarding next steps in the data remediation process overall.

Thank you for facilitating an informative presentation and status update from the verification team. We appreciate the hard work CDCR and CCHCS staff continue to dedicate to each stage of the data remediation process. The July 10, 2024 presentation will help build a common understanding among the stakeholders regarding the ongoing work in this later stage of the remediation process.

Our team has reflected on the discussion at the July 17, 2024 BRMR meeting regarding identification of the next tranche of indicators.  Our team believes that we can make substantial overall progress in the near future by focusing on completing remediation of the groups of indicators discussed below.

Additionally, to the extent identifying a third tranche of indicators to focus on in BRMR now will not interfere with defendants' efforts to move indicators out of the verification stage and onto final

review or with completion of the already identified tranches, we will identify a third tranche for the parties' consideration.  Specifically, we will consider CDCR's recommendation to focus on either the treatment offered or timely clinical contact series or indicators.

1. Indicators in Final Review

First, as of the time of the writing, there are 14 indicators pending remediation.  Dr. Potter will complete his final review of these items by close of business July 26, 2024.  By that time, he will be in a position to either mark those indicators off as remediated or provide focused guidance to defendants as to what they would need to do for him to mark the indicators off as remediated.

2. Indicators In Programming, and Verification

Second, there are currently 35 indicators in the programming and verification stage of the remediation process.  This group of indicators currently accounts for 13 percent of the 267 key indicators and are in the latter stages of the remediation process.  Accordingly, expediting remediation of this group of indicators presents us with a major opportunity to make significant progress quickly, thereby advancing our shared goal of completing this project.

To that end, we are requesting an estimate from defendants as to when each of these indicators can complete the verification stage and be ready for Dr. Potter's final review.  Please let us and plaintiffs know what, if anything, we can do collectively or individually to assist moving these items along in the process.

3. Medication Management

Third, we note there are 29 un-remediated medication management indicators, 18 of which are currently in BRMR.  Our hope and expectation is that the substantial amount of work dedicated to narrowing the issues on the requirements-wise version of these indicators and our collective focus on medication management as the next tranche of indicators after suicide prevention will enable us to remediate all medication management indicators expeditiously.

Together, the categories of indicators described above [i.e., those in final review (14); those in programming and verification (35); and the medication management indicators in BRMR (18)] amount to 67 indicators.  When we complete remediation of these 67 indicators, the count of remediated indicators will be at least 219, or 82 percent of the 267 current indicators.  This, in turn, would demonstrate significant progress and build momentum to completing the home stretch of this daunting project.

Progress has been made on the first tranche of indicators we identified some months ago – the suicide prevention indicators. Still, work on this group of indicators remains incomplete.  As of the time of this writing, there are now four suicide prevention indicators in "pre-BRMR" (i.e. the stakeholders have not been provided with initial or updated documentation), and two in BRMR.  We encourage CDCR to expedite completion of the remaining work on the suicide prevention tranche of indicators.

During the July 17, 2024 BRMR meeting, defendants asked which group of indicators our team will be identifying as the "third tranche" of indicators to focus our efforts on in BRMR. We are still considering this request and as indicated above, to the extent identifying a third tranche now will not interfere with defendants' efforts to move indicators out of the verification stage and onto final review, with completion of the suicide prevention or medication management indicators, or with any effort required by the final review of the of the 14 indicators in the final review stage, we will identify a third tranche for the parties' consideration. Specifically, we will consider CDCR's recommendations as to the next tranche to focus on.

Data remediation of a complex system is an arduous undertaking but one from which we cannot desist. We see a tremendous opportunity to get significantly closer to its completion by focusing our collective efforts as described above.

Thank you.

**Michael F. Ryan, Jr., Senior Counsel**
mryan@pldolaw.com
P 401.824.5100 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com • Legal Disclaimer

**From:** Ryan, Jr., Michael F.
**Sent:** Friday, June 28, 2024 12:22 PM
**To:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Cc:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Yip, Jonathan@CDCR <Jonathan.Yip@cdcr.ca.gov>; Nguyen, Tiffany@CDCR <Tiffany.Nguyen@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; Henry A. Dlugacz <HDlugacz@BLHNY.com>; Walsh Kerry F. <kwalsh@pldolaw.com>; Gribbin Rachel <rgribbin@pldolaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; 'Lisa Ells (LElls@rbgg.com)' <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; 'Steve Fama' <sfama@prisonlaw.com>
**Subject:** Programming and Verification

Good morning:

I write to follow-up on the stakeholders' discussion during the June 26, 2024 BRMR meeting. In response to Dr. Cartwright's request for guidance regarding our collaborative efforts to finish the data remediation project, Mr. Dlugacz highlighted the need for the broader stakeholder group to

have a better understanding of the status of the indicators currently in the Programming and Verification stages of the remediation process.

As you may recall, Dr. Potter requested an overview of the status of the key indicators in the verification stage during the January 31, 2024 BRMR meeting.  In the attached February 5, 2024 email, I delineated the contours of our team's request.

Nearly five months later, the need for transparency in furtherance of the stakeholders' common understanding of the status of indicators in the later stages (i.e. programming and verification) of the remediation process is even greater.

In addition to renewing our request for the specific information outlined in my February 5, 2024 email, at this point it would be most helpful to include the following in the presentation:

We request that CDCR's programming and verification teams prepare a presentation for the stakeholders with information about where each indicator is in the programming and verification stages, for how many days they have been at that stage, and any obstacles CDCR has encountered or anticipates encountering to completing either stage.  To the extent possible, please also include an estimate of when the indicators will complete the stage they are in.  Finally, we ask that the presentation include descriptions of what occurs when an already remediated indicator stops passing tests and, if applicable, how many indicators currently fall into this category.

We ask for this presentation to be added to the next BRMR's QAC agenda.  If you have any questions between now and the next BRMR meeting regarding this request, please let us know.

Thank you.

**Michael F. Ryan, Jr., Senior Counsel**
mryan@pldolaw.com
P 401.824.5100 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com  •  Legal Disclaimer

| From: | Bentz, Melissa@CDCR |
|---|---|
| To: | Walsh Kerry F.; Thind, Sundeep@CDCR |
| Cc: | Weber, Nicholas@CDCR; Yip, Jonathan@CDCR; Nguyen, Tiffany@CDCR; Garland, Latoya@CDCR; Cartwright, Steven@CDCR; hdlugacz@blhny.com; Gribbin Rachel; Coleman Special Master; "Lisa Ells (LElls@rbgg.com)"; Jenny Yelin; Coleman Team - RBG Only; Worrell, Wendy; Kirby, Melissa@CDCR; "Steve Fama"; jeffrey.metzner@cuanschutz.edu; hdlugacz@blhny.com; lhayesta@msn.com; trougeux@hotmail.com; karenrea01@gmail.com; Dan Potter; Ryan, Jr., Michael F.; Gribbin Rachel; Walsh Kerry F. |
| Subject: | RE: Programming and Verification |
| Date: | Friday, August 30, 2024 3:39:28 PM |

Mike and Kerry,

I write in response to your respective July emails regarding indicators in programming and verification and final review.

Indicators in Programming and Verification

On July 19th, Mike requested an estimate as to when each of the indicators in programming and verification will complete this step and be ready for Dr. Potter's final review. Responses regarding the Suicide Prevention indicators, Medication Management indicators, and indicators currently pending remediation have been or will be sent separately as these topics are related to subsequent emails sent by the Special Master's team.

On July 10th, CDCR shared a list of all items currently in verification. There were 38 indicators on the list provided; however, 10 of those indicators (SPTSR2.3.5.7.9.10.11.14 and AC14.1 and 14.3) were previously remediated and are being re-verified due to small changes that were previously discussed with Plaintiffs' counsel and the Special Master's team. One report (SP9) was in programming and verification but has been pulled from this step after it was determined changes were required to allow the filtering recently requested by the Special Master's team. (See email from S. Thind re: Coleman: Notification to Stakeholder SP9 Mental Health Observation Reporting Tool, dated June 20, 2024.) This leaves 27 indicators on the list that have not previously been remediated.

Dr. Potter previously mentioned that SPTSR1.4.8E was previously remediated. However, that is inconsistent with our records. SPTSR1.4.8 was remediated effective November 10th, 2023. But the extended version of this report has not been marked as remediated in the KanBan. If the Special Master's team has a different recollection, please let us know. At this time, SPTSR1.4.8E has completed verification and is pending remediation.

Of those indicators that were not previously remediated, 21 are still in verification. Many of those are on pause due to revisions required due to verification or court orders. For example, AC7.1 and AC7.4 were in verification when the court issued a new order allowing medical hold exceptions. CDCR is in the process of operationalizing that court order and revising the documentation appropriately. Once the documentation is revised, it will be sent out for review to Plaintiffs' counsel and the Special Master's team.

Recently, Dr. Potter marked CM1.2 remediated effective August 5th. However, CDCR disagrees with the remediation of this item as the Special Master's team has requested additional revisions to this indicator. Please see my August 6th and Ms. Thind's August 26th emails regarding the CMHPP indicators that reference the next step for the CM indicators.

Several more indicators are actively in programming and verification, such as the MM diagnostic monitoring measures. CDCR continues to work hard to complete these items, but they are complex and will take some time.

As noted in prior BRMR meetings and in my July 31st email, it would be incredibly helpful if the Special Master's team could respond to emails regarding documentation changes as a result of CAPC, programming, or verification as soon as possible to assist CDCR in avoiding delays during these steps. We note that the recent responses have been quick which we greatly appreciate.

Indicators in Final Review

On July 26th, Kerry followed up on Mike's prior email with an email regarding the 10 CMHPP indicators in final review at that time. I responded to that email on August 6th and revisions to those indicators were sent out on August 26th. The Special Master's team sent further revisions on August 28th, which CDCR is now considering. Separately, Kerry sent an email regarding the four other indicators in final review at that time with the Special Master's team's understanding of the status and some requests. These indicators are AC2.2, MM12, RH17, and SC8.5.

1. AC2.2: PC Contacts Completed by a Senior Psychologist or SPSW

Kerry's July 26th email noted that AC2.2 was close to being remediated subject to review of the verified AC2.2 report. CDCR provided the verified report and on August 5th, Dr. Potter contacted CDCR staff regarding several proposed revision, including technical requests, documentation changes, and the addition of columns to the report. CDCR sent a response to these requests to the Special Master's team and Plaintiffs' counsel on August 23rd and requested responses by August 27th. Once the changes are reviewed, AC2.2 will go back to CAPC and through programming and verification again. Upon completion of verification, if no further changes are requested, AC2.2 will be ready for remediation.

2. MM12: Involuntary Medication Court Orders

The July 26th email states that Dr. Potter found an outstanding request for summary statistics beyond the counts that are currently provided in MM12 and requested percentages be added to the report. Dr. Potter also requested that the "current" data column be revised to populate "at the time of the report run date/time." CDCR asked for additional clarification regarding these requests which was provided on August 2nd.

Regarding the percentages, the Special Master's team requests that CDCR add the percent of emergency and non-emergency PC2602s petitions granted, renewed, expired intentionally, and expired unintentionally. First, as previously discussed, CDCR cannot measure whether petitions were "intentionally" or "unintentionally" expired. Instead, the stakeholders agreed that the report would provide a number of PC2602 court orders with a non-renewal form filed and those that expired without a non-renewal form.

Second, CDCR does not agree that percentages are necessary. The request for percentages was not "outstanding" as the current version of MM12 was reviewed numerous times without percentages being applied. Additionally, the stakeholders have agreed that this report is informational only and does not directly measure a remedial requirement. Finally, please note that even if percentages are added they would not reflect the performance of the chosen institution. The report was created, per the request of the Special Master's team, to include all patients who had been at the user-selected institution for at least one day between the start date and end date chosen, not where the PC2602 is initiated. Therefore, a percentage of how many PC2602s were initiated would include data for every patient on the report, not just those PC2602s initiated at the chosen institution. Such percentages

could be misleading.

Regarding the "current" data column, CDCR disagrees with this proposed change. CDCR purposefully used the "current" data in the creation and documentation of the report as knowing a patient's current institution, cell bed, MHI, and assigned MHMD and MHPC is operationally more important than knowing that information as of the end of the user-selected reporting period. None of the information in those columns are necessary for calculating the numbers in the report. Therefore, CDCR does not believe verification of these columns are required for remediation.

   3.   RH17: Segregation LOS

The July 26th email notes that this report should be held until the final RHU regulations are issued and CDCR responds to Plaintiffs' outstanding request regarding "overflow" housing. The RHU regulations were finalized as permanent and effective as of July 31, 2024. CDCR has also confirmed that RH17 does not capture Max Custody patients in a non-Max Custody setting. Therefore, if a Max Custody patient is in any RHU setting, even one not appropriate for their level of care, the patient will be captured on the RH17 report. However, if a Max Custody patient is in a general population housing unit they would not appear on the RH17 report. CDCR is working closely with all institutions to ensure that incarcerated persons on Max Custody are not placed in non-RHU overflow settings. DAI's Mental Health Compliance Team checks whether any institution is in RHU overflow twice per week and works with those institutions nearing the need for RHU overflow into a non-overflow setting to prevent such situations from occurring.

   4.   SC8.5E: Timely RVR MH Assessment Request

The July 26th email noted that Dr. Potter found an outstanding request for and discussion of filtering by MHI. CDCR does not see such an outstanding request in the documentation. More importantly, SC8.5 was remediated effective March 28, 2024 without such filtering capabilities. The filtering request for SC8.5E is not specific to the PIP extension of the indicator and would change the underlying remediated indicator as well.

As previously discussed, the Performance Report does not allow filtering by MHI, but by placement. Adding such a filtering option at this late stage would require CDCR to either redesign the Performance Report or to remove SC8.5 from the Performance Report and create a new interface. Neither of these options was contemplated when SC8.5 or SC8.5E were discussed. Although CDCR does not believe such substantive changes are appropriate when an indicator has completed BRMR, programming, and verification, and is simply an extension of a remediated indicator, we propose including the patient's MHI at the time of the RVR in the "Details" column of the drilldown. Users will not be able to filter based on this information, but it would be readily available. Please let us know if this compromise resolves this issue. If so, CDCR will make the necessary changes and determine the next steps for this indicator.

All of the indicators discussed above previously completed the BRMR process and are close to remediation. CDCR hopes the above information brings these items closer to remediation. However, any requests for changes during the later stages of the data remediation process may cause an indicator to move backwards in the process, thus delaying remediation.

Please let us know if it would be helpful to discuss any of these items in an upcoming BRMR meeting.

Respectfully,

*Melissa C. Bentz*
Attorney IV, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO
NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE
AUTHOR.

---

**From:** Walsh Kerry F. <kwalsh@pldolaw.com>
**Sent:** Friday, July 26, 2024 1:08 PM
**To:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Cc:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Yip, Jonathan@CDCR <Jonathan.Yip@cdcr.ca.gov>; Nguyen, Tiffany@CDCR <Tiffany.Nguyen@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; hdlugacz@blhny.com; Gribbin Rachel <rgribbin@pldolaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; 'Lisa Ells (LElls@rbgg.com)' <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; 'Steve Fama' <sfama@prisonlaw.com>; jeffrey.metzner@cuanschutz.edu; hdlugacz@blhny.com; lhayesta@msn.com; trougeux@hotmail.com; karenrea01@gmail.com; Dan Potter <dpotter@alumni.brown.edu>; Ryan, Jr., Michael F. <mryan@pldolaw.com>; Gribbin Rachel <rgribbin@pldolaw.com>; Walsh Kerry F. <kwalsh@pldolaw.com>
**Subject:** RE: Programming and Verification

**CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon everyone:

On behalf of the Special Master's data team, I write to follow-up on item #1 in the July 19, 2024 email from Michael Ryan below. My earlier email from today (appended hereto) included an update and suggested next steps for the 10 CMHPP indicators pending remediation as of last Friday. Those ten indicators were also included in the 14 indicators referenced in item #1 of Mr. Ryan's 7/19/2024 email. Below are updates and suggested next steps for the other 4 non-CMHPP indicators.

**Re: AC2.2** PC Contacts Completed by a Senior Psychologist or SPSW

Subject to a review of the verified AC2.2 report using the link MH provides (as requested on July 25, 2024),
Dr. Potter expects to mark AC2.2 as remediated, effective 7/10/24.

**Re: MM12** Involuntary Medication Court Orders
During his review of the BRMR MM12 documentation, Dr. Potter found an outstanding request for

summary statistics beyond counts and that the "Current" data columns are populated "at the time of the report run date/time." He recommends adding percentages and modifying (or expanding) the "Current" column data to include data as of the end of the reporting period (i.e., Midnight on the Institution End Date parameter or NOW, whichever is earlier. If NULL is selected for the Institution End Date parameter, use of NOW is also acceptable).

If CDCR can agree to add these changes, subject to a review of the actual MM12 report using the link MH provides (as requested on July 25, 2024), Dr. Potter expects to mark of MM12 as remediated (effective 7/15/24) based on its current design and the fact that it is passing its verification test. Please let us know if CDCR is willing to agree to this.

**Re: RH17 Segregation LOS**
Given that the final RHU regulations have not yet been issued, this indicator is not ripe for final review.
The Plaintiffs also have outstanding requests from 5/17/24 and 2/22/24 for information regarding overflow housing and RH17.

**Re: SC8.5E** Timely RVR MH Assessment Request
During the review of BRMR SC8.5E documentation, Dr. Potter found an outstanding request for and discussion of filtering by MHI (as of the date of the RVR incident). He recommends the addition of a column of such data and a corresponding reporting interface filter.

If CDCR can agree to adding these changes, subject to a review of the actual MM12 report using the link MH provides (as requested on July 25, 2024), Dr. Potter expects to mark SC8.5E off as remediated now (effective 3/29/2024) based on its current design and the fact it is passing its verification test.

Thank you


Good afternoon all:

Attached please find the spreadsheet for Dr. Potter's suggested numerator and denominator improvements and comments for all 15 CMHPP indicators included in CDCR's denominator and numerator spreadsheet of June 18, 2024. We are also providing an update for the ten CMHPP indicators pending remediation as of last Friday. (Please see the attached spreadsheet for comments on the other 5 CMHPP indicators).

Dr. Potter has marked off CMHPP indicators 1 through 6 below based on our understanding that:

- CDCR will document how its audit-based indicators aggregate results for different reporting periods; and
- CDCR will make the numerator and denominator language for audit-based indicators more consistent.

1. CM2.1 Custody Staff CMHPP Annual Training, effective 4/26/2024.
2. CM3.1 Required Staff Attendance of Quarterly Partnership Round Table Training, effective 7/19/2024.
3. CM3.2 Quarterly Partnership Round Table Training Completed as Required, effective

7/10/2024.

4. CM5.2 <u>ML CCCMS and RC CCCMS Weekly Supervisory Meetings with Required Attendees</u>, effective 5/3/2024.

5. CM5.4 <u>ML CCCMS and RC CCCMS CMHPP Monthly Joint Supervisory Program Tours</u>, effective 7/19/2024.

6. CM5.5 <u>ML CCCMS and RC CCCMS CMHPP Monthly Joint Supervisory Program Tours with Required Attendees</u>, effective 7/19/2024.

Regarding,

7. CM1.1 <u>CMHPP MH Huddle Documentation of Required Attendees</u>

8. CM4.1 <u>CMHPP Monthly Executive Leadership Joint Rounding</u>

Dr. Potter will need to review the final documentation for these indicators once the defendants have addressed any questions or concerns plaintiffs may have, if any, after they have reviewed the documentation.

Regarding,

9. CM1.2 <u>CMHPP MH Huddle Documentation of Supervisor Attendees</u>
-

When stakeholders provided comments and discussed CM1.2, its questions were included in the same audit that collects data for CM1.1 and CM1.3, which gathers data per housing unit weekly. Please advise how CDCR will gather supervisor attendance data for this indicator.

Regarding,

10. CM5.1 <u>ML CCCMS and RC CCCMS CMHPP Weekly Supervisor Meetings</u>

Dr. Potter cannot mark this indicator off at present because he has yet to see documentation on how the data system would be able to determine the value for the denominator for CM5.1. Please provide access to such documentation. Alternatively, he suggests that CDCR revise this denominator into a form that can be operationalized.

Thank you.

**Kerry F. Walsh, Partner**
kwalsh@pldolaw.com
P 401.824.5118 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park  Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com  •  Legal Disclaimer

---

**From:** Ryan, Jr., Michael F. <mryan@pldolaw.com>
**Sent:** Friday, July 19, 2024 2:51 PM
**To:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Cc:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Yip, Jonathan@CDCR <Jonathan.Yip@cdcr.ca.gov>; Nguyen, Tiffany@CDCR <Tiffany.Nguyen@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; hdlugacz@blhny.com; Walsh Kerry F. <kwalsh@pldolaw.com>;

Gribbin Rachel <rgribbin@pldolaw.com>; Coleman Special Master
<colemanspecialmaster@pldolaw.com>; 'Lisa Ells (LElls@rbgg.com)' <LElls@rbgg.com>; Jenny Yelin
<JYelin@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Worrell,
Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; 'Steve
Fama' <sfama@prisonlaw.com>
**Subject:** RE: Programming and Verification

Good morning:

On behalf of the Special Master's data team, I write to follow-up on the July 10, 2024 BRMR
discussion of the status of indicators in the verification stage of the remediation process and the July
17, 2024 discussion regarding next steps in the data remediation process overall.

Thank you for facilitating an informative presentation and status update from the verification team.
We appreciate the hard work CDCR and CCHCS staff continue to dedicate to each stage of the data
remediation process. The July 10, 2024 presentation will help build a common understanding among
the stakeholders regarding the ongoing work in this later stage of the remediation process.

Our team has reflected on the discussion at the July 17, 2024 BRMR meeting regarding identification
of the next tranche of indicators.  Our team believes that we can make substantial overall progress in
the near future by focusing on completing remediation of the groups of indicators discussed below.

Additionally, to the extent identifying a third tranche of indicators to focus on in BRMR now will not
interfere with defendants' efforts to move indicators out of the verification stage and onto final
review or with completion of the already identified tranches, we will identify a third tranche for the
parties' consideration.  Specifically, we will consider CDCR's recommendation to focus on either the
treatment offered or timely clinical contact series or indicators.

1. Indicators in Final Review

First, as of the time of the writing, there are 14 indicators pending remediation.  Dr. Potter will
complete his final review of these items by close of business July 26, 2024.  By that time, he will be in
a position to either mark those indicators off as remediated or provide focused guidance to
defendants as to what they would need to do for him to mark the indicators off as remediated.

2. Indicators In Programming, and Verification

Second, there are currently 35 indicators in the programming and verification stage of the
remediation process.  This group of indicators currently accounts for 13 percent of the 267 key
indicators and are in the latter stages of the remediation process.  Accordingly, expediting
remediation of this group of indicators presents us with a major opportunity to make significant
progress quickly, thereby advancing our shared goal of completing this project.

To that end, we are requesting an estimate from defendants as to when each of these indicators can
complete the verification stage and be ready for Dr. Potter's final review.  Please let us and plaintiffs

know what, if anything, we can do collectively or individually to assist moving these items along in the process.

3. <u>Medication Management</u>

Third, we note there are 29 un-remediated medication management indicators, 18 of which are currently in BRMR. Our hope and expectation is that the substantial amount of work dedicated to narrowing the issues on the requirements-wise version of these indicators and our collective focus on medication management as the next tranche of indicators after suicide prevention will enable us to remediate all medication management indicators expeditiously.

Together, the categories of indicators described above [i.e., those in final review (14); those in programming and verification (35); and the medication management indicators in BRMR (18)] amount to 67 indicators. When we complete remediation of these 67 indicators, the count of remediated indicators will be at least 219, or 82 percent of the 267 current indicators. This, in turn, would demonstrate significant progress and build momentum to completing the home stretch of this daunting project.

Progress has been made on the first tranche of indicators we identified some months ago – the suicide prevention indicators. Still, work on this group of indicators remains incomplete. As of the time of this writing, there are now four suicide prevention indicators in "pre-BRMR" (i.e. the stakeholders have not been provided with initial or updated documentation), and two in BRMR. We encourage CDCR to expedite completion of the remaining work on the suicide prevention tranche of indicators.

During the July 17, 2024 BRMR meeting, defendants asked which group of indicators our team will be identifying as the "third tranche" of indicators to focus our efforts on in BRMR. We are still considering this request and as indicated above, to the extent identifying a third tranche now will not interfere with defendants' efforts to move indicators out of the verification stage and onto final review, with completion of the suicide prevention or medication management indicators, or with any effort required by the final review of the of the 14 indicators in the final review stage, we will identify a third tranche for the parties' consideration. Specifically, we will consider CDCR's recommendations as to the next tranche to focus on.

Data remediation of a complex system is an arduous undertaking but one from which we cannot desist. We see a tremendous opportunity to get significantly closer to its completion by focusing our collective efforts as described above.

Thank you.

**Michael F. Ryan, Jr., Senior Counsel**
mryan@pldolaw.com
P 401.824.5100 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**

Northwoods Office Park Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com  •  Legal Disclaimer

---

**From:** Ryan, Jr., Michael F.
**Sent:** Friday, June 28, 2024 12:22 PM
**To:** Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Bentz, Melissa@CDCR
<Melissa.Bentz@cdcr.ca.gov>
**Cc:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Yip, Jonathan@CDCR
<Jonathan.Yip@cdcr.ca.gov>; Nguyen, Tiffany@CDCR <Tiffany.Nguyen@cdcr.ca.gov>; Garland,
Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Cartwright, Steven@CDCR
<Steven.Cartwright@cdcr.ca.gov>; Henry A. Dlugacz <HDlugacz@BLHNY.com>; Walsh Kerry F.
<kwalsh@pldolaw.com>; Gribbin Rachel <rgribbin@pldolaw.com>; Coleman Special Master
<colemanspecialmaster@pldolaw.com>; 'Lisa Ells (LElls@rbgg.com)' <LElls@rbgg.com>; Jenny Yelin
<JYelin@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Worrell,
Wendy <Wendy.Worrell@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>; 'Steve
Fama' <sfama@prisonlaw.com>
**Subject:** Programming and Verification

Good morning:

I write to follow-up on the stakeholders' discussion during the June 26, 2024 BRMR meeting.  In
response to Dr. Cartwright's request for guidance regarding our collaborative efforts to finish the
data remediation project, Mr. Dlugacz highlighted the need for the broader stakeholder group to
have a better understanding of the status of the indicators currently in the Programming and
Verification stages of the remediation process.

As you may recall, Dr. Potter requested an overview of the status of the key indicators in the
verification stage during the January 31, 2024 BRMR meeting.  In the attached February 5, 2024
email, I delineated the contours of our team's request.

Nearly five months later, the need for transparency in furtherance of the stakeholders' common
understanding of the status of indicators in the later stages (i.e. programming and verification) of the
remediation process is even greater.

In addition to renewing our request for the specific information outlined in my February 5, 2024
email, at this point it would be most helpful to include the following in the presentation:

We request that CDCR's programming and verification teams prepare a presentation for the
stakeholders with information about where each indicator is in the programming and verification
stages, for how many days they have been at that stage, and any obstacles CDCR has encountered or
anticipates encountering to completing either stage.  To the extent possible, please also include an
estimate of when the indicators will complete the stage they are in.  Finally, we ask that the
presentation include descriptions of what occurs when an already remediated indicator stops
passing tests and, if applicable, how many indicators currently fall into this category.

We ask for this presentation to be added to the next BRMR's QAC agenda.  If you have any questions between now and the next BRMR meeting regarding this request, please let us know.

Thank you.

**Michael F. Ryan, Jr., Senior Counsel**
mryan@pldolaw.com
P 401.824-5100 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com  •  Legal Disclaimer

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

# EXHIBIT B

| From: | Walsh Kerry F. |
|---|---|
| To: | Bentz, Melissa@CDCR; Coleman Special Master; Coleman Team - RBG Only |
| Cc: | Weber, Nicholas@CDCR; Thind, Sundeep@CDCR; Cartwright, Steven@CDCR; Worrell, Wendy; Leung, Pak Yan@CDCR; Garland, Latoya@CDCR; Kirby, Melissa@CDCR; Walsh Kerry F.; Lopes Matthew; hdlugacz@blhny.com; Dan Potter; Ryan, Jr., Michael F.; Gribbin Rachel |
| Subject: | RE: Coleman: Request for Special Master Team"s Comments on SC8.1 |
| Date: | Friday, August 16, 2024 5:22:18 PM |
| Attachments: | Documentation for indicators that allow patient-wise scoring including SC8.1 v0.2.docx |
| | image003.png |

Good afternoon Melissa,

We write in response to your email of 3/7/2024, *Coleman: Request for Special Master Team's Comments on SC8.1.*

Previously, Dr. Potter provided written feedback suggesting how CDCR could define and implement various summary statistics available for the SC8.1 KPI and other indicators that include patient-wise statistics. See, for example, the information included in the May 24, 2023, "Coleman: TCM Methodology" email thread initiated by OLA and Kerry Walsh's "TCM" email from December 18, 2023, as well as the BRMR documents related to SC8.1 located here.

The attached draft document reviewed by Dr. Potter and which contain his comments, provides SPO pages that consolidate the information needed for stakeholders and CDCR programmers to understand and compute these statistics for indicators focused on whether service requirement deadlines are being met timely.

The document also contains a revised version of the SC8.1 Timely Submission of MH RVR MH Assessment Results KPI documentation, which demonstrates how adding a small section of text to an existing KPI is sufficient to document the patient-wise and degree-of-impact statistics available for it, including a KPI-specific set of default patient-wise and degree-of-impact constraints. Since all the statistics can be computed based on per centage Overdue or percentage Underdue (aka per centage Late), Dr. Potter believes CDCR will find it straightforward to implement.

Dr. Potter believes that the logical next step would be for CDCR to provide this documentation to the appropriate CDCR programmers to work on, and Dr. Potter and our team as needed, and to identify a straightforward way for programming and verifying these statistics, including their row-level case data. A key goal is to create an approach that allows each indicator's current KPI design and business rules to be leveraged as much as possible. In 2023, Dr. Potter provided mental health with recommendations to achieve this, many of which were shared with plaintiffs by mutual agreement with CDCR via the 12/18/24 email referenced above. In early 2022, Dr. Leidner and Dr. Potter created a relevant proof of concept which is worth revisiting.

As this process occurs, the documentation's language can be clarified and refined if necessary. At the appropriate time, after one TCM indicator to measure one-off requirements and one TCM indicator used to measure ongoing requirements have been implemented, the Stakeholders could review and comment on the refined documentation via the usual stakeholder validation/BRMR process.

In the future, Dr. Potter believes that CDCR can maintain a dedicated SharePoint page with a list of KPIs that support patient-wise statistics and their default patient-wise and degree-of-impact constraints. CDCR can also work to revise the KPI documentation for each TCM indicator using a refined and validated version of the documentation provided as a guide.

Alternatively, CDCR can create new KPI pages for each possible patient-wise and degree-of-impact statistic and this would allow CDCR to make a copy of the attached SC8.1 KPI documentation for each numerator and denominator pair listed in the *Draft copy of the SPO page: [patient-wise view]* in the attached documentation. However, as CDCR is aware, Dr. Potter believes that this is not the most efficient method.

We look forward to further discussions on this issue. Thank you.

**Kerry F. Walsh, Partner**
kwalsh@pldolaw.com
P 401.824.5118 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park  Suite 215 N

1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com • Legal Disclaimer

---

**From:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Sent:** Thursday, March 7, 2024 4:52 PM
**To:** Coleman Special Master <colemanspecialmaster@pldolaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Cc:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Leung, Pak Yan@CDCR <PakYan.Leung@cdcr.ca.gov>; Garland, Latoya@CDCR <latoya.garland@cdcr.ca.gov>; Kirby, Melissa@CDCR <Melissa.Kirby@cdcr.ca.gov>
**Subject:** Coleman: Request for Special Master Team's Comments on SC8.1

Kerry,

As discussed in BRMR yesterday, it would be incredibly helpful if Dr. Potter could provide any specific comments or revisions he has on SC8.1 patient-wise flexible (PWF) and degree of impact (DOI) to all stakeholder as soon as possible. During our conversations over the last two days, it became clear that during the prior stakeholder review period Dr. Potter provided general comments regarding PWF and DOI statistics and how he believed we could make documentation of these types of indicators more efficient. However, those comments did not include specific revisions to SC8.1 PWF and DOI despite having concerns about some of the language. While we appreciate the time spent discussing the PWF and DOI items this week, it was incredibly confusing for a lot of CDCR staff as we were unclear that the original comments were meant to be broad comments and did not see any SC8.1 specific comments until yesterday's BRMR meeting. I understand that Dr. Potter sent specific comments on SC8.1 DOI to Ms. Kirby at 11:30am just as BRMR was starting. But those comments were not widely disseminated to Plaintiffs or Defendants. Our goal is to receive Dr. Potter's comments and follow the normal process of conducting our internal review, making appropriate changes, and then bringing the items to BRMR for discussion as needed. This is necessary not only to move the SC8.1 items forward, but also to allow CDCR to fully understand the PWF and DOI methodologies so we can start creating documentation for other timely compliance methodology indicators.

Please let us know when we may expect all of Dr. Potter's comments on SC8.1 PWF and DOI.

Respectfully,

*Melissa C. Bentz*
Attorney IV, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385



ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

# EXHIBIT C

| | |
|---|---|
| **From:** | Walsh Kerry F. |
| **To:** | Bentz, Melissa@CDCR; Elise Thorn; Kirby, Melissa@CDCR; Cartwright, Steven@CDCR; LElls@rbgg.com; Jenny Yelin; Maya Campbell; Coleman Team - RBG Only |
| **Cc:** | Walsh Kerry F.; jeffrey.metzner@cuanschutz.edu; hdlugacz@blhny.com; trougeux@hotmail.com; lhayesta@msn.com; karenrea01@gmail.com; Dan Potter; Ryan, Jr., Michael F.; Millham, Sofia A. |
| **Subject:** | Done or Overdue |
| **Date:** | Tuesday, March 19, 2024 6:10:45 PM |

Good afternoon Melissa – as stated in the BRMR meeting today, I am writing in regards to ways the quality assurance system could adequately assess and report on late service requirements as proposed below by Dr. Potter.

Specifically, we have requested that CDCR include all service requirements completed ("done") or overdue during the reporting period, including any overdue requirements coming into the reporting period. See, for example, our stakeholder review comments from November 2022 on mental health's G1 Timely Compliance Methodology glossary item. This was also discussed in January and February of 2022.

However, as of today, many MH timeliness indicators have been designed (or redesigned) to have denominators that only include the number of requirements that became due during the reporting period.

We appreciate that CDCR has potentially offered to create a user interface for certain indicators, allowing stakeholders to view a separate report listing each overdue service and outstanding service requirement at the beginning of a reporting period (or perhaps as of a date entered by the user).

However, we disagree that CDCR's due-date-based approach and a simple list of overdue requirements provide sufficient insight into how well CDCR meets the minimum standards in the Program Guide and other aspects of the remedy.

But in the spirit of compromise, we are willing to accept CDCR's due-date-based approach for non-patient-wise (TCM) indicators if CDCR is willing to provide stakeholders the ability to view the following degree-of-lateness statistics and relevant row-level data.

I.   The percentage of service requirements more than [X%] overdue relative to all overdue requirements (during the reporting period, including any outstanding service requirements coming into the reporting period), i.e.,

**"% of overdue requirements that are more than X% overdue"** =

$$\frac{\#\{\text{service requirements more than [X\%] overdue}\}}{\#\{\text{overdue service requirements}\}}$$

II.  The percentage of service requirements more than X% overdue relative to all completed requirements or overdue requirements (during the reporting period, including any outstanding service requirements coming into the reporting period), i.e.,

**"% service requirements that are more than X% overdue"** =

$$\frac{\#\{\text{service requirements more than [X\%] overdue}\}}{\#\{\text{service requirements that were completed or were overdue}\}}$$

Additional Comments:

    a.   X% is a parameter controlled by the should be user-controlled, so for example, X% = 50% would provide these statistics concerning requirements that are more than 50% overdue.

    b.   The anchor location/time/MHI for each of these statistics is where the patient was when the requirements were completed; for overdue requirements, the anchor location/time/MHI is where they were first overdue during the reporting period.

    c.   These indicator percentages must allow access to numerator and denominator values (i.e., will provide numerator and denominator counts, as is standard in much of mental health's reporting system already). We have also consistently requested that CDCR indicators and reports include details on all "active cases/service requirements," including those excluded from the denominator. That request would also apply here.

    d.   These statistics are the "requirement-wise" versions of the patient-wise degree-of-impact/lateness statistics suggested for many patient-wise (TCM) indicators and discussed since January 2022. The definitions above match the ones the Special Master's team was recently asked to provide for SC8.1.

Regarding Defendant's email of 1/5/24, *Done or Overdue for RH1 and AC9 [IMAN-DMS.FID12440],* we disagree with CDCR's stance that this issue was previously addressed and resolved for many indicators.  Our view is that this has remained an outstanding issue for non-patient-wise (TCM) indicators that measure timeliness.

As always, we are happy to work with CDCR to develop examples and provide additional details as requested.  Dr. Potter is also available to meet with CDCR's technical staff to discuss how they could efficiently implement this approach for its automated and report-based indicators (like RH1 and AC9).

Thank you and talk to you tomorrow.

**Kerry F. Walsh, Partner**
kwalsh@pldolaw.com
P 401.824.5118 • F 401.824.5123

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park  Suite 215 N
1301 Atwood Avenue, Johnston, RI 02919
www.pldolaw.com • Legal Disclaimer

# EXHIBIT D

| From: | Weber, Nicholas@CDCR |
|---|---|
| To: | Marc Shinn-Krantz; Coleman Special Master; Bentz, Melissa@CDCR; Thind, Sundeep@CDCR; Stafford, Carrie@CDCR; CDCR OLA Coleman CAT Mailbox |
| Cc: | Coleman Team - RBG Only; Steve Fama; Elise Thorn; Namrata Kotwani; Damon McClain; Samantha Wolff; Paul B. Mello; Caballero, Michael@DSH-S; Reden, Brent@DSH-S; Kent, Kristopher@DSH-S |
| Subject: | RE: Outdated Policies in 2021 Program Guide [IMAN-DMS.FID12440] |
| Date: | Wednesday, January 31, 2024 8:00:06 PM |
| Attachments: | Ltr. NW-MSK re Ps Request to Update and Expand Remedy 1.31.24.pdf |

CDCR's response to your December 29, 2023 letter is attached.


Nick Weber

Attorney

Department of Corrections & Rehabilitation

(916) 217-1949

1515 S Street, Suite 314S

Sacramento, CA  95811-7243


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.


**From:** Marc Shinn-Krantz <MShinn-Krantz@rbgg.com>

**Sent:** Friday, December 29, 2023 1:15 PM

**To:** Coleman Special Master <colemanspecialmaster@pldolaw.com>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Stafford, Carrie@CDCR <Carrie.Stafford@cdcr.ca.gov>; CDCR OLA Coleman CAT Mailbox <OLAColemanCAT@cdcr.ca.gov>

**Cc:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <elise.thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain <Damon.McClain@doj.ca.gov>; Samantha Wolff <SWolff@hansonbridgett.com>; Paul B. Mello <Pmello@hansonbridgett.com>; Caballero, Michael@DSH-S <Michael.Caballero@dsh.ca.gov>; Reden, Brent@DSH-S <Brent.Reden@dsh.ca.gov>; Kent, Kristopher@DSH-S <Kristopher.Kent@dsh.ca.gov>

**Subject:** Outdated Policies in 2021 Program Guide [IMAN-DMS.FID12440]

**CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.


Dear Office of Legal Affairs and Special Master Lopes:

Please see the attached letter regarding policies that Defendants have issued that supersede or modify existing court-ordered policies in the 2021 Program Guide, Pocket Parts, and Compendium. We request to meet and confer regarding these policies and the next steps for updating the Court and that Defendants inform us no later than **January 16, 2024** whether they will agree to inform the Court of these updates after meeting and conferring.  If we do not hear from you by that date, we will proceed with filing an update with the Court.

Best wishes for the New Year,
Marc

**Marc J. Shinn-Krantz**
(he/him)
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
MShinn-Krantz@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at mshinn-krantz@rbgg.com.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Marc J. Shinn-Krantz
Email: MShinn-Krantz@rbgg.com

December 29, 2023

<u>VIA EMAIL ONLY</u>

Matthew A. Lopes Jr.              Nicholas Weber
Special Master                    Melissa Bentz
                                  Sundeep Thind
                                  Carrie Stafford
                                  CDCR Office of Legal Affairs

Re:   *Coleman v. Newsom*: Superseded or Modified Policies in 2021 Program
      Guide (ECF No. 7333-1) and Compendium (ECF No. 7333-2)
      <u>Our File No. 0489-03</u>

Dear Special Master Lopes and CDCR Office of Legal Affairs:

We write to identify policies that Defendants have issued that supersede or modify existing court-ordered policies in the 2021 Program Guide, Pocket Parts, and Compendium (collectively, "the Program Guide") (ECF Nos. 7333-1; 7333-2). We request to meet and confer regarding these policies and the next steps for updating the Court.

Defendants committed to meeting and conferring to reconcile updated memos, policies, and procedures related to the remedial plan, and including the Special Master and his team in those discussions. *See, e.g.*, Sept. 13, 2023 Email from D. Hockerson RE: Updated Process and Procedure for ASU Intake Cell Usage Within CDCR Reporting Memo. To initiate these discussions, Plaintiffs have developed the below list of policies that have been issued since the parties finalized the Program Guide that we understand Defendants contend supersede or update the Program Guide. We have also included policies that we understand Defendants contend do not supersede or update the Program Guide, but likely do so in practice. As we have repeatedly stated, it is our position that Court must be informed of these updates and approve of any modifications to the existing remedial plans.

In its February 4, 2022 Order discontinuing the parties' obligation to file further annual updates to the Program Guide, the Court stated that it "*anticipate[d]* that final approval of a list of CQIT indicators will replace the need for annual updates to the

[4179135.8]

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 2

Program Guide and the Compendium." ECF No. 7456 at 4 (emphasis added). This plan has yet to be confirmed, including because the Court has yet to finally approve the key indicator list, which cannot occur until the end of the ongoing data remediation process. More importantly, nothing in the February 2022 Order gives Defendants' leave to unilaterally modify the remedial policies included in the Program Guide, nor does it obviate the need for Court approval of any such modifications, including in instances where the parties agree.

Plaintiffs do not seek to "revise the Program Guide." *See* Sept. 3, 2020 Order, ECF No. 6846 at 3 ("[R]emedial planning for this action is substantially complete."). However, the Court's requirement for transparency necessitates that we alert the Court of the policies in the publicly-filed and court-ordered 2021 Program Guide that are currently out of date due to Defendants' policy changes, and provide copies of the operative policies that have superseded and/or modified them.

If Defendants do not agree to notify the Court of the revisions to the Program Guide that have occurred in recent years—after meeting and conferring with Plaintiffs and the Special Master about the scope of the modifications—we will proceed to inform the Court ourselves based on the below list of policies.

We have identified the following relevant policies. We have included several relevant policies that we understand are in draft form as of the date of this letter. We will continue to search for and reserve the right to identify additional policies, and we welcome input from Defendants and the Special Master team to supplement this list with anything we may have missed. Note that some of the policies listed below either existed, or modify policies that existed, prior to the adoption of the 2021 Program Guide but were erroneously omitted from it.

## FINALIZED POLICIES

| Key | Finalized Policy that Replaced Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| A | Updated Mental Health Crisis Bed – Referral, Referral Rescission, and Discharge Policy and Procedures, September 18, 2018<br><br>(Erroneously omitted from 2021 Program Guide) | Mental Health Crisis Bed – Referral, Referral Rescission, and Discharge Policy, 12/23/14, ECF No. 7333-1 at 548-561. |

[4179135.8]

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 3

| Key | Finalized Policy that Replaced Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| B | MH HQ Memo - Supervisory Review Of Mental Health Crisis Bed Discharge Safety Plans, March 10, 2020<br><br>(Erroneously omitted from 2021 Program Guide) | Release of Revised 5-Day Follow-up Form, 5/31/16, ECF No. 7333-1 at 390-395;<br><br>Transfer of Inmates to and From Mental Health Crisis Beds, 12/23/14 (including Mental Health Crisis Bed – Referral, Referral Rescission, and Discharge Policy, 12/23/14), ECF No. 7333-1 at 541-561. |
| C | Contact Requirements For Patients In The Mental Health Services Delivery System Before Interdisciplinary Treatment Team Meetings, And After Discontinuation Of Medications For Correctional Clinical Case Management System And Enhanced Outpatient Program Programs, June 23, 2022 | Requirement for Initial Contacts to be Completed Prior to the Interdisciplinary Treatment Team, March 16, 2020, ECF No. 7333-1 at 641. |
| D | MH HQ Policy and Revised Procedure - Suicide Risk Evaluation Mentoring Program, July 12, 2022 | 13-0117 Memo – Suicide Risk Evaluation Mentoring Program, 1/17/2013, ECF No. 7333-1 at 476-78. |
| E | MH HQ - Memo, Policy and Procedure 12.11.2103, Release of Use of Inpatient Flex Beds Policy and Procedure, January 4, 2023 | Chapter 5 (Mental Health Crisis Bed) ECF No. 7333-1 at 72-106;<br><br>Chapter 6 (Department of Mental Health Inpatient Program), and Appendix D (Clarifying Memo to Chapter 6 of the Program Guide) (collectively "PIP"), ECF No. 7333-1 at 107-25, 645-47. |

[4179135.8]

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 4

| Key | Finalized Policy that Replaced Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| F | MH HQ Policy – Safety Planning Policy and Procedure, February 13, 2023 | Release of Revised 5-Day Follow-Up Form, 5/31/16, ECF No. 7333-1 at 390-395;<br><br>Transfer of Inmates to and From Mental Health Crisis Beds, 12/23/14 (including Mental Health Crisis Bed – Referral, Referral Rescission, and Discharge Policy, 12/23/14), ECF No. 7333-1 at 541-561. |
| G | HQ Memo, Policy, and Procedure – Correctional Clinical Case Management System Level of Care and Minimum Support Facilities, April 10, 2023 | 16-0125 Memo – Correctional Clinical Case Management System (CCCMS) Level of Care (LOC) and Minimum Support Facilities (MSF), January 25, 2016, ECF No. 7333-1 at 314-27. |
| H | MH MQ Memo - Update to Enhancements to the Suicide Prevention and Response Focused Improvement Teams (SPRFIT), June 14, 2023 | Memo - Enhancements to the Suicide Prevention and Response Focused Improvement Teams (SPRFIT), 2/2/2018, ECF No. 7333-1 at 611-27. |
| I | Amended – Inmate Patient Property In the Psychiatric Inpatient Program, July 11, 2023 | Chapter 6 and Appendix D (PIP) at 12-6-11, ECF No. 7333-1 at 117. |

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 5

| Key | Finalized Policy that Replaced Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| J | Updated Rules Violation Report Mental Health Assessment Policy and Procedure, July 17, 2023 | Rules Violation Report Mental Health Assessment (RVR MHA) policy (12.07.601) and procedure (12.07.601.P1) ECF No. 7333-1 at 268-69, 292-93;<br><br>Implementation of Revised Rules Violation Report Processes Involving Inmate Participants in the Mental Health Services Delivery System and Developmental Disability Program, September 11, 2015 Memorandum, ECF No. 7333-1 at 563-67. |
| K | Reiteration of Priority Case-By-Case Review of Mental Health Services Delivery System Long-Term Segregated Inmates, July 20, 2023 | Priority Case-by-Case Review of Mental Health Delivery System Long-Term Segregated Inmates, September 15, 2014, ECF No. 7333-1 at 535-39. |
| L | MH HQ Memo – Updated Pre-Release Program Policy and Procedure, August 21, 2023 | 10-0311 Memo- Release Planning for Inmates;<br><br>Participating in the Institution's Mental Health Services Delivery System (MHSDS), March 11, 2010, ECF No. 7333-1 at 306-12. |
| M | Use of Mechanical Restraints in Psychiatric Inpatient Program and Mental Health Crisis Bed, September 5, 2023 | Memo - Use of Mechanical Restraints in a Mental Health Crisis Bed Unit, March 1, 2016, ECF No. 7333-1 at 402-03. |
| N | MH HQ Policy - Telemental Health Program, September, 21 2023 (revising 9/19/23 version erroneously sent to the field) | Modifies the Telepsychiatry Policy approved by May 9, 2023 Order ECF No. 7830, and numerous aspects of the Program Guide including most importantly sections regarding primary clinician contacts, *e.g.*: |

[4179135.8]

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 6

| Key | Finalized Policy that Replaced Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| | | Chapter 3 (CCCMS) at 12-3-15, Chapter 4 (EOP) at 12-4-9, Chapter 5 (MHCB) at 12-5-13, 12-5-29, Chapter 6 & Appendix D (PIP) at 12-6-7 (ECF No. 7333-1 at 48, 59, 84, 100, 113). |
| O | Clinician Attendance At Institutional Classification Committee In Restricted Housing Programs, September 25, 2023 | ICC attendance policy: Program Guide sections 12-7-1, 12-8-4, and 12-9-5 (ECF No. 7333-1 at 126, 144, 158) |
| P | MH HQ Memo - Psychiatric Inpatient Program Housing Review Least Restrictive Housing, September 26, 2023 | June 30, 2017, Policy Housing Review/Least Restrictive Housing (12.11.2111), Compendium of Custody-Related Remedial Measures, ECF No. 7333-2 at 5. |
| Q | October 4, 2023 CDCR Emergency Rulemaking Package for Restrictive Housing Units;<br><br>October 7, 2023 CDCR Memorandum "Restricted Housing Unit Out of Cell Time Requirements."<br><br>(We understand that the emergency rulemaking package is subject to further revision through the regular rulemaking process. We also understand that CDCR may be calling back the October 7, 2023 Memorandum and revising this policy. See below table of draft policies at Row Z regarding further pending changes: the draft version of Mental Health Restricted Housing Unit Program Policy, December 19, 2023 and regarding NCR 23-15 RHU | Numerous policies in the 2021 Program Guide, ECF No. 7333-1 at 126-167, 443-59, 470-71, including most importantly (but not limited to) the chapters governing ASU, SHU, PSU and the STRH and LTRH memos, as follows:<br><br>Chapter 7 (ASU);<br><br>Chapter 8 (SHU);<br><br>Chapter 9 (PSU);<br><br>16-0208 Policy- Short Term Restricted Housing (STRH) Mental Health (MH) Requirements 12 06 801; |

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 7

| Key | Finalized Policy that Replaced Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| | rulemaking package released for public comment on December 15, 2023) | 16-0204 Memo- Short Term and Long Term Restricted Housing (STRH & LTRH) Policies; 15-0115 Memo- Creation of Correctional Clinical Case Management System (CCCMS) Short & Long Term Restricted Housing (STRH) & (LTRH); 16-0303 Memo- Transfer of Correctional Clinical Case Management System (CCCMS) Inmate-Patients to Male Short Term Restricted Housing (STRH) Units; 16-0208 Policy- Long Term Restricted Housing (LTRH) Mental Health (MH) Requirements 12.06.802. |
| R | Revised Indecent Exposure and Sexual Disorderly Conduct Operating Procedures, October 7, 2023 | Rules Violation Report Mental Health Assessment (RVR MHA) policy (12.07.601) and procedure (12.07.601.P1) ECF No. 7333-1 at 268-69, 292-93;. Implementation of Revised Rules Violation Report Processes Involving Inmate Participants in the Mental Health Services Delivery System and Developmental Disability Program, September 11, 2015 Memorandum, ECF No. 7333-1 at 563-67; Chapter 1 (Overview), at 12-1-6 (Exhibitionism Treatment), ECF No. 7333-1 at 9. |

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 8

| Key | Finalized Policy that Replaced Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| S | MH HQ Memo -Psychiatrist Placement of Medical Holds, dated October 31, 2023 | Modifies 2021 Program Guide provisions relating to transfer timeframes and medical holds including: ECF No. 7333-1 at 19 (page 12-1-16 summarizing transfer timeframes), 457 (medical hold in STRH), 632-33 (medical hold in desert institution), 643-44 (MHCB transfer timeframes exceptions). |

## DRAFT POLICIES

| Key | Draft Policy that Would Replace Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| T | Chemical Agents Policy Change; Additional Updated DOM provisions, if any, regarding Clarification of Use of Force Policy per Assembly Bill 1196 and Deadly Force Investigation Team Review of Intentional Baton Head Strikes (M. Shinn-Krantz sent email to Defendants on December 28, 2023 asking for an update on the status of this draft policy.) | "Department Operations Manual (DOM) sections 51020.1 through 51020.24, Use of Force" (Compendium ECF No. 7333-2 at 3 and n.1); April 10, 2014 Order Regarding Use of Force, Segregation, and Discipline, ECF No. 5131, Compendium ECF No. 7333-2 at 5; February 26, 2021 memo Clarification of Use of Force Policy per Assembly Bill 1196 and Deadly Force Investigation Team Review of Intentional Baton Head Strikes, Compendium ECF No. 7333-2 at 5 and n.2. |

[4179135.8]

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 9

| Key | Draft Policy that Would Replace Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| U | Documentation Expectations for Mental Health Services Provided<br><br>(M. Bentz 11/8/23 email with draft and J. Yelin 12/20/23 email re status. Plaintiffs and the Special Master have noted that this memo, once finalized, will modify, supersede, or impact several provisions of the Program Guide.) | Affected policies include but are not limited to:<br><br>15-0508 Memo- Consulting Staff Name Documentation in Health Care Records, 5/8/15, ECF No. 7333-1 at 300;<br><br>15-0512 Memo- Documentation of Mental Health (MH) Evaluations and Treatment (Tx) Plans, 5/12/15, ECF No. 7333-1 at 331-32;<br><br>14-1117 Policy- Documentation Required for Referral to Mental Health Crisis Bed (MHCB) 12.05.601, effective date November 2014, ECF No. 7333-1 at 366-67;<br><br>15-0904 Memo- Mental Health Crisis Bed (MHCB) Referral Notification, 9/4/2015, ECF No. 7333-1 at 369-70;<br><br>20-0207 MH HQ Memo – Clinical Contacts and<br><br>Documentation, 2/7/2020, ECF No. 7333-1 at 636-39. |
| V | Mental Health Appointment Resolution Guidelines and Clarification of Clinical Contacts, No Shows vs. Refusals of Clinical Contact, and Wellness Checks<br><br>(M. Shinn-Krantz sent email to Defendants on December 28, 2023 asking for an update on the status of this draft policy.) | Clinical Contacts and Documentation, 2/7/2020, ECF No. 7333-1 at 636-39 |

[4179135.8]

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 10

| Key | Draft Policy that Would Replace Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| W | Updated Process and Procedure for Segregated Housing Program Intake Cell Usage Within California Department of Corrections and Rehabilitation Reporting<br><br>(C. Trapani sent latest email with comments on 10/3/23 regarding revised draft received from D. Hockerson 9/1/23.) | "Revised Administrative Segregation Unit Intake Cell Procedure", October 15, 2015, ECF No. 7333-1 at 569-71;<br><br>"Administrative Segregation Unit Requirements Regarding Clustering and Entertainment Appliances", dated March 20, 2013 (Compendium ECF No. 7333-2 at 2);<br><br>September 29, 2010 memo titled "Administrative Segregation Unit Intake Cell Procedure," (Program Guide at ECF No. 7333-1 at 571). |
| X | Mental Health Restricted Housing Unit Program Policy, December 19, 2023 Draft;<br><br>Proposed Rulemaking, NCR 23-15 RHU rulemaking package released for public comment on December 15, 2023<br><br>(See the above table at Row X regarding changes already made or temporarily made in October 2023: October 4, 2023 CDCR Emergency Rulemaking Package for Restrictive Housing Units and October 7, 2023 CDCR Memorandum "Restricted Housing Unit Out of Cell Time Requirements.") | Numerous policies in the 2021 Program Guide, ECF No. 7333-1 at 126-167, 443-59, 470-71, including most importantly (but not limited to) the chapters governing ASU, SHU, PSU and the STRH and LTRH memos, as follows:<br><br>Chapter 7 (ASU);<br><br>Chapter 8 (SHU);<br><br>Chapter 9 (PSU);<br><br>16-0208 Policy- Short Term Restricted Housing (STRH) Mental Health (MH) Requirements 12 06 801;<br><br>16-0204 Memo- Short Term and Long Term Restricted Housing (STRH & LTRH) Policies;<br><br>15-0115 Memo- Creation of Correctional Clinical Case Management System (CCCMS) Short & Long Term Restricted Housing (STRH) & (LTRH); |

[4179135.8]

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 11

| Key | Draft Policy that Would Replace Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|-----|------------------------------------------------------------|-----------------------------------------------|
|  |  | 16-0303 Memo- Transfer of Correctional Clinical Case Management System (CCCMS) Inmate-Patients to Male Short Term Restricted Housing (STRH) Units; |
|  |  | 16-0208 Policy- Long Term Restricted Housing (LTRH) Mental Health (MH) Requirements 12.06.802. |
| Y | Notice of Draft Regulations re Intake Cells and Security Welfare Checks (Revised version received 11/21/23).<br><br>(D. Hockerson sent draft on 10/5/23, A. Xu and L. McClendon-Hunt sent comments on 11/6/23.  N. Weber sent response on 11/21/23 confirming the underlying policy memorandum "Updated Process and Procedure for Segregated Housing Program Intake Cell Usage Within California Department of Corrections and Rehabilitation Reporting" is not yet final, and asserting that the regulations are consistent with Program Guide requirements for intake cells and security welfare checks.) | Administrative Segregation Unit Intake Cell Procedure, September 29, 2010, ECF No. 7333-1 at 571;<br><br>Administrative Segregation Unit Requirements Regarding Clustering and Entertainment Appliances, March 20, 2013, Compendium, ECF No. 7333-2 at 2.<br><br>Process and Procedures for Administrative Segregation Unit Intake Cell Usage within the Strategic Offender Management System, memo dated April 26, 2022, which, in turn, incorporated and superseded: Revised Administrative Segregation Unit Intake Cell Procedure," October 30, 2015, ECF No. 7333-1 at 569-70;<br><br>Implementation of the Security/Welfare Check Procedure Utilizing the Guard One System, May 9, 2014, ECF No. 7333-1 at 515-23. |
| Z | New Suicide Risk Evaluation Form and Expectations Memorandum & New Suicide Risk Screener (SRS) / Suicide Risk Evaluation Form (SRE) | Chapter 10, Suicide Prevention and Response, ECF No. 7333-1 at 168-96. |

[4179135.8]

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 12

| Key | Draft Policy that Would Replace Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| | (M. Bentz sent draft on 12/5/23.  K. Walsh sent comments on 12/22/23.  T. Nolan sent comments on 12/29/23.) | |
| AA | Use of Psychology Practicum and Social Work Interns in the Provision of Mental Health Services.<br><br>(D. Hockerson sent draft policy on 9/13/23.  M. Nunez and L. McClendon-Hunt each sent comments on 10/13/23.) | Chapter 1, Program Guide Overview, 12-1-10, ECF No. 7333-1 at 13. |
| BB | Notice of Rescheduling Mental Health Appointments Memorandum<br><br>(D. Hockerson sent draft policy on 2/3/23, K. Walsh sent comments on 2/28/23, A. Xu sent comments on 3/6/23, D. Hockerson responded 5/12/23, C. Irizarry responded on 7/14/23, C. Trapani requested status update on 9/27/23, L. Ells requested status update on 12/15/23. | Affects numerous portions of the 2021 Program Guide including at least those sections referenced in the Business Rules for the KPIs below and the below glossary items, all of which  Defendants have noted will be impacted by the draft memorandum:<br><br>1. AC1 Timely MH Referrals<br>2. AC5 Treatment Offered<br>3. AC2 Timely PC Contacts<br>4. AC3 Timely MHMD Contacts<br>5. AC18 Appointments Seen As Scheduled<br>6. Glossary: EHRS MH Appointment<br>7. Glossary: Structure Treatment<br>8. NM1 Timely Response to Critical Med Non-Adherence Notification<br>9. NM2 Timely Response to Non-Critical Med Non-Adherence Order<br>10. NM3 Timely Response to Non-Critical Med Non-Adherence Notification<br>11. AC4 Timely IDTTs<br>12. SP22 MHCB Daily Provide Checks |

Matthew A. Lopes Jr. & CDCR Office of Legal Affairs
December 29, 2023
Page 13

| Key | Draft Policy that Would Replace Version in 2021 Program Guide | Original Policy Located in 2021 Program Guide |
|---|---|---|
| | | 13. QC10 Primary Clinician Continuity of Care<br>14. QC11 Psychiatrist Continuity of Care<br>15. SC8 Timely MH RVR Assessments |
| CC | Update to the Process for Conducting Supervisory Reviews of Inpatient Discharge Safety Plans<br><br>(D. Hockerson sent draft 9/28/23. M. Nunez and L. McClendon-Hunt sent comments on 10/12/23.) | Although not final, this memorandum appears to supplement the memoranda identified above in this table at Exhibits A through C, which in turn update several Program Guide policies. |

\*       \*       \*

We look forward to setting up a time to meet with Defendants and the Special Master team regarding the above policies and any others that may be identified. We ask that Defendants inform us no later than **January 16, 2024** whether you will agree to inform the Court of these updates after meeting and conferring. If we do not hear from you by that date, we will proceed with filing an update with the Court.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Marc J. Shinn-Krantz*

By:   Marc J. Shinn-Krantz

MSK

cc: *Coleman* Co-counsel          Elise Thorn              Michael Caballero
    *Coleman* Special Master Team  Namrata Kotwani          Brent Reden
    OLA Class Action Mailbox       Damon McClain            Kris Kent
                                   Samantha Wolff
                                   Paul Mello

[4179135.8]

# EXHIBIT E

**Gribbin Rachel**

---

| | |
|---|---|
| **Subject:** | FW: 31st Round CDCR Psychiatric Inpatient Program Monitoring Tours |
| **Attachments:** | 31st Monitoring Round PIP Document Request 8.16.2024.docx |

---

**From:** Patricia Williams <harconwil@gmail.com>
**Sent:** Saturday, August 17, 2024 12:28 PM
**To:** Toche, Diana@CDCR <diana.toche@cdcr.ca.gov>; Dr. Joseph@CDCR' <Joseph.Bick@cdcr.ca.gov>; Amar@CDCR'
<Amar.Mehta@cdcr.ca.gov>; Michael W. Bien <MBien@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Weber, Nicholas@CDCR
<Nicholas.Weber@cdcr.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Owens, Teresa@CDCR
<Teresa.Owens@cdcr.ca.gov>; Minter, Daisy@CDCR <Daisy.Minter@cdcr.ca.gov>; Steven Fama
<Sfama@prisonlaw.com>
**Cc:** Lopes Matthew <mlopes@pldlaw.com>; Walsh Kerry F. <kwalsh@pldlaw.com>; McClendon-Hunt, LaTri-c-ea
<lmcclendonhunt@pldlaw.com>; Ryan, Jr., Michael F. <mryan@pldlaw.com>; Gribbin Rachel
<rgribbin@pldlaw.com>; Irizarry, Cristina <cirizarry@pldlaw.com>; Gonzalez, Janissa H. <jgonzalez@pldlaw.com>;
Tavares, Zelia M <ztavares@pldlaw.com>
**Subject:** 31st Round CDCR Psychiatric Inpatient Program Monitoring Tours

Dear Colleagues:

The *Coleman* Special Master will conduct his onsite review of compliance by the California Department of
Corrections and Rehabilitation (CDCR) with the plans, policies, and protocols of the Mental Health Services
Delivery System Program Guide (Program Guide) and relevant court orders and policies at the below listed
CDCR Psychiatric Inpatient Programs (PIPs) covering the stated review periods.  All tours taking place that
week will only cover the PIPs and not the main institutions. Please make responses to our document request
available on or before the dates listed.

| PIP Institution/Monitoring Tour | Review Period | Responses Due |
|---|---|---|
| CMF: September 17 – 20, 2024 | February 1, 2024 – July 31, 2024 | **September 3, 2024** |
| SVSP: September 17 – 20, 2024 | February 1, 2024 – July 31, 2024 | **September 3, 2024** |
| CHCF: September 24 – 27, 2024 | February 1, 2024 – July 31, 2024 | **September 10, 2024** |

All tours will start at 8:00 a.m. on the first day.

The onsite reviews will focus on the areas outlined in the attached Thirty-First Monitoring Round Document
Request. Also, **please submit patient rosters for the review period for each PIP by August 23, 2024, via
SharePoint.** The rosters should include the patient name, CDCR number, and date of admission and discharge.

As with prior site visits, documents submitted in response to the document request will be submitted to the
Special Master's office via SharePoint.  Please make the responses available on or before the dates provided
above and inform Kerry Walsh (kwalsh@pldlaw.com), Michael Ryan (mryan@pldlaw.com), Patricia
Williams (harconwil@gmail.com), and Rachel Gribbin (rgribbin@pldlaw.com).

As with past site visits, responses to the document request and proof of practice binders should be available
onsite in hard copies which we may retain for our records. Any additional documents not previously uploaded
to the SharePoint should be provided onsite in hard copy and electronic format where available for review by

the *Coleman* team. It is our understanding that such documents will subsequently also be uploaded to the SharePoint.

*The document requests in no way preclude the Coleman Special Master from requesting additional documents not included in the document requests.*

Finally, as in prior rounds, plaintiffs' counsel may provide a monitoring memorandum for our tours.

Please contact me if you have questions.

Patricia Williams, Esq.
Deputy Special Master

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

**Gribbin Rachel**

---

**Subject:**                          FW: Coleman: CHCF PIP Tour

---

**From:** Patricia Williams <harconwil@gmail.com>
**Sent:** Thursday, September 5, 2024 3:04 PM
**To:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Cc:** Walsh Kerry F. <kwalsh@pldolaw.com>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Gribbin Rachel <rgribbin@pldolaw.com>
**Subject:** Re: Coleman: CHCF PIP Tour

Good afternoon, Melissa,

I was able to arrange a team and can accommodate your request to conduct the CHCF PIP tour from October 15-18, 2024.  Also, could you check on the documentation for CMF PIP and SVSP PIP?  It was due on Tuesday, September 3rd and it has not yet been uploaded to the SharePoint site.

I appreciate your assistance.

Best,

Patricia Williams
Deputy Special Master

On Wed, Sep 4, 2024 at 12:49 PM Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov> wrote:

Good morning,

It has come to our attention that the CHCF PIP tour is scheduled to occur at the same time as the CHCF *Armstrong* tour. Both tours are incredibly staff intensive and require significant preparation and assistance from the institution. Would it be possible to move the CHCF PIP tour to either the week of October 14th (first choice) or September 30th (second choice)?

Please let me know.

Respectfully,

*Melissa C. Bentz*

Attorney IV, Class Action Team

Office of Legal Affairs

California Department of Corrections and Rehabilitation

Email: Melissa.Bentz@cdcr.ca.gov

Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

**Gribbin Rachel**

---

**Subject:**                FW: Coleman: CHCF PIP Tour

---

**From:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Sent:** Thursday, September 5, 2024 3:29 PM
**To:** harconwil@gmail.com
**Cc:** Walsh Kerry F. <kwalsh@pldolaw.com>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Gribbin Rachel <rgribbin@pldolaw.com>
**Subject:** RE: Coleman: CHCF PIP Tour

Thank you very much, Tricia. We appreciate your team's flexibility.

We are working on the SVSP and CMF document production, but it takes quite a bit of time to assess the request and pull together the requested information. We will try to provide the documents as soon as possible and will notify you when everything is uploaded to the SharePoint.

Respectfully,

*Melissa C. Bentz*
Attorney IV, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

---

**From:** Patricia Williams <harconwil@gmail.com>
**Sent:** Thursday, September 5, 2024 12:04 PM
**To:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Cc:** Walsh Kerry F. <kwalsh@pldolaw.com>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Gribbin Rachel <rgribbin@pldolaw.com>
**Subject:** Re: Coleman: CHCF PIP Tour

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon, Melissa,

I was able to arrange a team and can accommodate your request to conduct the CHCF PIP tour from October 15-18, 2024.  Also, could you check on the documentation for CMF PIP and SVSP PIP?  It was due on Tuesday, September 3rd and it has not yet been uploaded to the SharePoint site.

I appreciate your assistance.

Best,

Patricia Williams
Deputy Special Master

On Wed, Sep 4, 2024 at 12:49 PM Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov> wrote:

Good morning,

It has come to our attention that the CHCF PIP tour is scheduled to occur at the same time as the CHCF *Armstrong* tour. Both tours are incredibly staff intensive and require significant preparation and assistance from the institution. Would it be possible to move the CHCF PIP tour to either the week of October 14th (first choice) or September 30th (second choice)?

Please let me know.

Respectfully,

**Melissa C. Bentz**

Attorney IV, Class Action Team

Office of Legal Affairs

California Department of Corrections and Rehabilitation

Email: Melissa.Bentz@cdcr.ca.gov

Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

**Gribbin Rachel**

---

**Subject:**                    FW: CMF PIP and SVSP PIP documents

**From:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Sent:** Wednesday, September 11, 2024 2:27 PM
**To:** harconwil@gmail.com; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Cc:** Walsh Kerry F. <kwalsh@pldolaw.com>
**Subject:** RE: CMF PIP and SVSP PIP documents

Good morning, Tricia,

CDCR is working diligently to provide the requested information. We received the PIP document request on Saturday, August 16th with a request to provide the responsive information by September 3rd. However, the scope of the request and the work required to provide complete, consistent, and transparent information made meeting that deadline impossible. As previously mentioned, CDCR ideally needs at least 30 days to gather the requested information for large tours, such as the PIP, EOP, or CCCMS tours. More time may be necessary for the first set of tours with a new document request, as CDCR requires additional time to assess the request and determine what data, reports, or information is most accurate and responsive.

We appreciate your patience and understand the importance of providing the requested information. CDCR anticipates providing the documents for SVSP and CMF via the SharePoint on Friday but will provide the information sooner if possible.

Respectfully,

*Melissa C. Bentz*
Attorney IV, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

**From:** Patricia Williams <harconwil@gmail.com>
**Sent:** Wednesday, September 11, 2024 7:19 AM
**To:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Cc:** Walsh Kerry F. <kwalsh@pldolaw.com>
**Subject:** CMF PIP and SVSP PIP documents

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning, Melissa and Nick,

I hope you are both well.  As of this morning, the requested documents from CMF PIP and SVSP PIP have not been uploaded to the SharePoint site.  While I understand these are very busy times for all, these documents are extremely important for the *Coleman* team to review before the visits to maximize our on-site efficiency.

Please provide an update as soon as possible.

I greatly appreciate your assistance.

Patricia Williams
Deputy Special Master

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

**Gribbin Rachel**

---

**Subject:**                    FW: Coleman: SVSP and CMF PIP Document Production

---

**From:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Sent:** Friday, September 13, 2024 7:12 PM
**To:** harconwil@gmail.com; Walsh Kerry F. <kwalsh@pldolaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steven Fama (sfama@prisonlaw.com) <sfama@prisonlaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; Sam Wolff (swolff@hansonbridgett.com) <swolff@hansonbridgett.com>; Elise Thorn <elise.thorn@doj.ca.gov>; Damon McClain <Damon.McClain@doj.ca.gov>; Christian Georgely <Christian.Georgely@doj.ca.gov>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Worrell, Wendy <Wendy.Worrell@cdcr.ca.gov>; Nguyen, Tiffany@CDCR <Tiffany.Nguyen@cdcr.ca.gov>; Gilstrap, Sunny@CDCR <Sunny.Gilstrap@cdcr.ca.gov>; Nguyen, Peter <Peter.Nguyen2@cdcr.ca.gov>; Owens, Teresa@CDCR <Teresa.Owens@cdcr.ca.gov>
**Subject:** Coleman: SVSP and CMF PIP Document Production

Good afternoon,

We appreciate your patience. SVSP and CMF's PIP document productions are available for review at the following links:

Mental Health/Coleman - CMF PIP Review - September 2024 - All Documents (sharepoint.com)

Mental Health/Coleman - SVSP PIP Review - September 2024 - All Documents (sharepoint.com)

There are a few items that CDCR continues to work on, including a synopsis of what was provided for each request and any available source information or data caveats. We anticipate providing the remaining items on Monday. CDCR inform the Special Master's team and Plaintiffs as items are added to the SharePoint.

Also, please note that all on-site document requests will be uploaded to the SharePoint as well.

Please let me know if you have any issues accessing the information.

Respectfully,

*Melissa C. Bentz*
Attorney IV, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

---

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.