1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF CALIFORNIA
2                           --oOo--

3   RALPH COLEMAN, ET AL,        ) Docket No. 90-CV-520
                                 ) Sacramento, California
4                  Plaintiffs,   ) September 30, 2024
                                 ) 1:03 p.m.
5            v.                  )
                                 )
6   GAVIN NEWSOM, ET AL.,        ) Re: Hearing
                                 )
7                  Defendants.   )

8                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE KIMBERLY J. MUELLER
9                 UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For the Plaintiffs:     ROSEN BIEN GALVAN & GRUNFELD, LLP by
                            MR. MICHAEL BIEN
12                          MS. JENNY YELIN
                            Attorneys at Law
13                          101 Mission Street, Sixth Floor
                            San Francisco, CA 94105
14
    For the Defendant:      HANSON BRIDGETT, LLP by
15                          MR. PAUL MELLO
                            MS. SAMANTHA WOLFF
16                          Attorneys at Law
                            425 Market Street, 26th Floor
17                          San Francisco, CA 94105

18       (Appearances continued next page.)

19

20

21  Reported By:            JENNIFER COULTHARD, RMR, CRR
                            501 I Street, Suite 4-200
22                          Sacramento, California 95814
                            Jennifer_Coulthard@Yahoo.com
23                          (530)537-9312

24
    Reported using mechanical steno - computer-aided transcription
25

```
 1   APPEARANCES (Cont'd):

 2   For the Defendant:        OFFICE OF THE ATTORNEY GENERAL by
                               MR. DAMON GRANT MCCLAIN
 3                             Assistant Attorney General
                               455 Golden Gate Avenue, Suite 11000
 4                             San Francisco, CA 94102

 5                             MR. CHRISTIAN MICHAEL GEORGELY
                               Assistant Attorney General
 6                             1300 I Street, Suite 125
                               Sacramento, CA 95814

 7

 8
     Also Present:             MATTHEW LOPES, Special Master
 9                             JEFF MACOMBER, Secretary
                               DIANA TOCHE, Undersecretary
10

11

12                            --oOo--

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS

1                    SACRAMENTO, CALIFORNIA

2     September 30, 2024                              1:34 p.m.

3                    P R O C E E D I N G S

4                           --o0o--

5          (In open court:)

6             THE CLERK:  Calling civil case No. 90-0520, Coleman

7     versus Newsom, et al., on for in-court hearing regarding

8     objections to special master's expert's sixth re-audit report

9     and status of appointment of a receiver.

10            THE COURT:  All right.  Good afternoon.  Appearances,

11    please, for plaintiffs?

12            MR. BIEN:  Good afternoon, Your Honor; Michael Bien

13    and Jenny Yelin for plaintiffs.

14            THE COURT:  Good afternoon to each of you.

15            For the defendants?

16            MR. MELLO:  Good afternoon, Your Honor; Paul Mello,

17    Samantha Wolff, Damon McClain and Christian Georgely for

18    defendants.

19            THE COURT:  All right.  Good afternoon to all of you.

20            And I believe you have principals present?

21            MR. MELLO:  Also present are Secretary Macomber from

22    CDCR and Undersecretary Toche from CDCR.

23            THE COURT:  All right.  Good afternoon to each of

24    them.  The special master is present.

25            Special Master Lopes?

PROCEEDINGS

1           SPECIAL MASTER LOPES:  Yes, Your Honor.

2           THE COURT:  You have at least one member of your team

3    present, correct?

4           SPECIAL MASTER LOPES:  Yes, Your Honor.

5           THE COURT:  If you could identify that person?

6           SPECIAL MASTER LOPES:  Yes.  Our suicide prevention

7    expert Lindsay Hayes is with us today.

8           THE COURT:  All right.  Good afternoon to each of you.

9    And the Court's law clerk also is present.

10          Just a couple of matters first before we get to

11   objections.  The primary purpose of this afternoon's session is

12   for the Court to rule on the pending objections with respect to

13   suicide prevention.

14          First, a complete housekeeping matter.  It's the time

15   of year when we take a look at motions and cases pending and,

16   as a result, I've identified a defense motion for redaction of

17   a second whistleblower report by Dr. Golding filed back in

18   February of 2023.  And so I just wanted to ask if that is still

19   on anyone's mind?  I apologize for not addressing it sooner.

20   Is that motion moot, do you know, Mr. Mello?

21          MR. MELLO:  I'm sorry.  I have a vague recollection.

22   I don't -- I don't know the status of that or what our position

23   is.  I apologize.

24          THE COURT:  All right.  I believe plaintiff also made

25   requests in connection with that matter.  Does that ring a bell

PROCEEDINGS

1   for you Mr. Bien or Ms. Yelin?

2            MR. BIEN:  No, Your Honor.  We can check our records

3   and get back to you.

4            THE COURT:  All right.  I'm inclined to think it's

5   moot due to the passage of time and the fact that no one else

6   remembers.  I'm thinking I might be right about that, but just

7   let me know.  Let me know by the end of the day Wednesday if

8   that is still pending and if you have a joint position on that,

9   you can let me know in a very simple filing.

10           All right.  And then I also added to the calendar the

11   status of appointment of a receiver and I wanted to just give

12   you a brief report on discussions I had with the technical

13   adviser already reflected in the one invoice his office

14   submitted, but then I also wanted to ask if you have any

15   further input at this point before the Court moves forward.

16           So first I wanted to make certain you know the

17   documents I provided to the technical adviser.  This goes back

18   several weeks, at least a month I think, four or five weeks.

19   Consistent with my obligations to you, I have provided the

20   technical adviser with an electronic folder of 15 documents.

21   One set of documents provided background regarding Coleman.  It

22   included the Court's September 3rd, 2020, order at ECF No. 6846

23   and the Court's June 25th, 2024, contempt order at ECF 8291,

24   particularly pointing the adviser to pages 1 through 29.

25           Secondly, documents related to establishment of a

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

1  receivership, the Court's OSC at ECF No. 8330 and the parties'

2  joint response at ECF No. 8347.

3          A third set of documents regarding the relationship

4  between Coleman and *Plata*.  The Court's November 19th, 2019,

5  order at ECF 6396; its December 17th, 2019, order at ECF 6427,

6  especially pages 34 and 43 to 44; the May 8th, 2020, order,

7  ECF 6661, especially pages 7 through 10 and a cover memo and

8  minutes related to the May 2024 coordination meeting.

9          Also a set of documents comprising organizational

10  charts, CCHCS and CDCR executive organizational charts filed by

11  defendants at ECF No. 8369; an organizational chart for the

12  special mastership provided by the special master; and a

13  state-wide mental health program management overview provided

14  by the special master; and then finally, a set of four

15  documents regarding the current status of Coleman and *Plata*,

16  EOP conclusions at ECF No. 8095, PIP conclusions at ECF

17  No. 7833, DSH conclusions at ECF 8085 and the receiver's 56th

18  tri-annual report at ECF No. 8255.

19          For the court reporter, I do have a typed version of

20  that, if it would help you to consult it.

21          So before -- before receiving very recently the *Plata*

22  receiver's email via the special master, I did review with the

23  technical advisers the parties' joint response to my OSC.  That

24  joint response again is 8347 and the gist of my discussions

25  with that -- with the technical adviser were what are the

PROCEEDINGS

1   considerations for me in determining whether or not to consider

2   the *Plata* receiver as a receiver here; are there any

3   organizational issues I should be thinking about, anything that

4   should prevent the Court's even considering that?  Bottom line

5   no, nothing prevented my considering that and remaining open to

6   that possibility.  The technical adviser's basic message to the

7   Court was the remedy is established.  What a receiver in

8   Coleman would need to accomplish is established, and that's the

9   key.

10          The technical adviser affirmed the Court's instinct

11  that it didn't make sense to first appoint a receiver and then

12  ask for a plan and so that -- I took that into account as I

13  moved forward not appointing the *Plata* receiver in the first

14  instance, as had been suggested.  In retrospect, it appears

15  that probably made some sense.

16          So then I asked the special master to communicate with

17  the receiver.  I've otherwise told you the status of those

18  discussions and that they occurred.  The *Plata* receiver

19  expressed interest and a desire for further communications

20  culminating in his email to the special master conveyed to the

21  Court last week, wherein the *Plata* receiver declines

22  consideration as a receiver in this case.

23          The *Plata* receiver has identified the potential for

24  improved coordination.  That potential has always been there.

25  There have been times of good coordination, times where

PROCEEDINGS

1   coordination hasn't been maximized, but I have blessed whatever

2   coordination will move this case forward, and the special

3   master knows that.

4       So the Court does plan to move forward with

5   appointment of a receiver.  The question or the direction is,

6   if the parties have further suggestions they wish the Court to

7   consider, I would ask that they file those by the end of this

8   week.

9       And if there is anything you want me to hear now about

10  the matter, I'm happy to listen briefly.

11      Mr. Bien, anything to say?

12      MR. BIEN:  We appreciate that the Court is going to

13  continue in the receivership, as we think it should.  We think

14  it's the way the case should go at this time and I guess we'd

15  like to hear more about what process you'd like to undertake

16  and we'll cooperate, of course, as best we can.

17      THE COURT:  All right.  Mr. Mello?

18      MR. MELLO:  I think defendants would like to know the

19  process that the Court is contemplating as well.  I do want it

20  to be clear to the Court that defendant's position has not

21  changed and as articulated in the joint response to the OSC

22  that if Mr. Kelso were not appointed and accepted the

23  appointment as a *Plata* receiver, defendant's position has not

24  changed that they believe that an evidentiary hearing should be

25  appropriate, but, of course, I'm just restating our position.

PROCEEDINGS

1   The Court probably knew that and --

2           THE COURT:  I assumed that.

3           MR. MELLO:  -- I think it would be -- I apologize.  I

4   didn't mean to speak over you, but we would like to know what

5   process you're contemplating, of course, Your Honor, but our

6   position has not changed.  Thank you.

7           THE COURT:  Well, let me ask:  Is there any need to

8   give you until the end of the week to file any further

9   suggestions?  Because, if not -- I'm not going to take further

10  time today, but if there's no request for time to provide

11  further suggestions, then I can plan as soon as possible to

12  give you some further thoughts on the next steps I would take

13  without further input from the parties.  Mr. Bien?

14          MR. BIEN:  I would like to suggest perhaps that we

15  have more than just this week and that we explore with

16  defendants whether or not there are some candidates they would

17  consider and I just think it's a little tight to get back to

18  you by Friday.  We hadn't really been thinking about this

19  possibility and haven't really had a chance to engage.

20          THE COURT:  All right.  Well, let me ask Mr. Mello --

21  I did hear what you said -- is there any possibility the

22  defendants might change their position as to only one person

23  being appropriate as the receiver in Coleman?

24          MR. MELLO:  So again, that's what our papers said.  I

25  agree with Mr. Bien that it might make sense for defendants and

PROCEEDINGS

1    plaintiffs to talk, but our position remains the same.  I don't

2    have authority in real time to change defendant's position but

3    I do think that communicating with plaintiff's counsel makes

4    sense on this issue.  So, again, I can't change my client's

5    position, but I -- we've been communicating well and I would

6    hate to not have a conversation with counsel.

7            THE COURT:  All right.  Two weeks enough?

8            MR. BIEN:  I think that would be -- we can do it with

9    that.

10           THE COURT:  Okay.  I'm not that patient, but I'll give

11   you two weeks --

12           MR. BIEN:  Okay.

13           THE COURT:  -- because time is of the essence.

14           I mean, the three obvious categories of options here:

15   Identify a certain person and see if that person would accept

16   appointment, familiarity with this case would be ideal;

17           Second option, identify a set of persons based on

18   criteria, qualifications, that could be approached and asked.

19   I don't quite know how I would make that happen, but a set of

20   people.  I'm certain there's an obvious set that comes to mind;

21           Third, open process.  While I have always wanted as

22   open a process as possible, I recognize that the full open

23   hiring process would take time and might identify someone with

24   no familiarity with the case even if that person otherwise has

25   the skill-set that is required here.

PROCEEDINGS

1     So, I mean, that's -- that's the extent of what I've

2     thought about so far.

3          MR. MELLO:  And if I may --

4          THE COURT:  If you do -- if you do come forward with

5     specific names so we don't have the same kind of delay

6     associated with the Court's willing to entertain Mr. Kelso, if

7     you can tell me whether or not you've talked to the person, is

8     the person available if the Court feels comfortable with that

9     person, that would be helpful.

10         Mr. Bien?

11         MR. BIEN:  I was about to ask that question because I

12    didn't want to overstep, but that would be more efficient if we

13    can at least check if the person would be considered.

14         THE COURT:  I don't have any objection to that.  You

15    can't make any promises.

16         MR. BIEN:  Right.

17         THE COURT:  Even if there's a stipulation doesn't mean

18    I'm going to accept it because ultimately I have to feel

19    comfortable.  It's not just about me, it's about the

20    institution of the Court and the Coleman case, and so thinking

21    about a range of considerations, but I don't think I object to

22    your -- I guess I assumed some folks would talk to Mr. Kelso.

23    Maybe I'm incorrect about that.

24         Mr. Mello, you wanted to say something?

25         MR. MELLO:  Yeah.  I was just going to say that we

PROCEEDINGS

1    appreciate the time and for efficiency purposes if my client's

2    position has not changed after we communicate with Mr. Bien,

3    we'll let you know.  So if it's less than two weeks, we'll get

4    back to you sooner.  I just -- again, I don't have the

5    authority to change positions, but I appreciate the opportunity

6    to communicate with counsel.

7            THE COURT:  Understood.  All right.  So two weeks from

8    now, that's two weeks from now 5:00 p.m., no later than.  Just

9    let me know your thoughts on that.

10           And the Court has not -- the Court does plan to

11   appoint a receiver.  And that affects the way I'm going to

12   frame the rules on the objections.  In fact, it's -- some of

13   what I'm going to say assumes the appointment of a receiver.

14           Just as a background as a way to think big picture

15   about what's going on with suicide, I did -- I've taken a look

16   at the current stats going back to 2019.  I just reviewed the

17   numbers for this year through the end of last week because I

18   understand that there are 18 completed suicides.  And so the

19   issue continues to be one of great concern to the Court.

20           What I'm going to do is first rule from the bench on

21   general objections and then I'm going to work through specific

22   objections.  There's some overlap, but in some cases the need

23   to make fine-grained rulings on objections is mooted by the

24   bottom line of the Court's de novo review, assuming without

25   deciding I've engaged in de novo review.  Assuming without

PROCEEDINGS

1    deciding that that's the standard required here.

2          And I'm, you know, for better or worse I'm going to do

3    most of the speaking.  I may have a few questions along the

4    way, but really I'm just trying to get these resolved as

5    efficiently as possible creating the Court's record, so the

6    transcript will serve as the ruling on the objections, unless I

7    defer a ruling.

8          So just looking at the general objections this is the

9    first part of the defendant's filing at 8179 and the

10   plaintiff's responses, these are all directed to the sixth

11   re-audit report filed with the Court on March the 21st, 2024,

12   which concluded that 14 of the 15 recommendations still

13   outstanding were not fully implemented.  Just generally in

14   terms of defendant's objection that they were prejudiced by the

15   Court's order directing that the special master file the report

16   directly with the Court, I'm not persuaded and that objection

17   is overruled.

18         I have, as consistent with de novo review, reviewed

19   Dr. Williams' declaration and the attachment.  I just can't

20   find, based on anything before the Court, that the defendant

21   were chilled from presenting evidence of compliance during the

22   period April 1st, 2023 and March 1st, 2024.

23         Mr. Hayes presented his top-line findings to

24   institution staff and regional coordinators following his

25   completion of site visits and the defendants should have been

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

PROCEEDINGS

1    prepared to demonstrate to Mr. Hayes at the time of his site

2    visits and before he filed his report that they had implemented

3    the required measures.

4         So the Court's directive was part of its attempt to

5    manage this case to get to the substance.  The objections, in

6    many respects, don't grapple with the substance, although in

7    some cases they do.  I still think the Court's moving forward

8    based on the procedural history leading to its consideration of

9    this report is warranted by the long-standing need for

10   defendants to come into compliance.

11        Moving to the second and third general objections,

12   those objections that the monitoring -- the special master's

13   monitoring -- conflates compliance with implementation and the

14   compliance standards are unduly strict, these objections simply

15   reiterate objections the Court previously has overruled.  The

16   defendants acknowledge as much.  They're creating a record so

17   as to avoid waiver or forfeiture.  They clearly, if the Court

18   thinks about the merits, are an improper attempt to relitigate

19   prior Court orders, specifically the Court's December 3rd,

20   2020, and January 6th, 2023, orders.  Defendants appear to seek

21   reconsideration of those orders.  In any event, those

22   objections are overruled.

23        In terms of the next objection, defendants object that

24   Mr. Hayes has not provided a correlation between perfect -- as

25   they say -- perfect implementation of his recommendations in

PROCEEDINGS

1   self-harm events, completed suicides or an increase in suicide

2   risk.  This is another example of the defendant's attempting to

3   relitigate an issue that's been resolved over at least a decade

4   of Court orders, including the Court's December 3rd, 2020,

5   order.  That objection is overruled.

6        The defendants also object that Mr. Hayes' analysis is

7   based on faulty methodology and objectively unverifiable

8   evidence pointing to a number of different findings.  The

9   parties go back and forth on those objections.

10        The objection, in particular, that Mr. Hayes'

11   observations are not based on verifiable evidence is frivolous.

12        Mr. Hayes reports his observations arose from

13   continuing discussion with both mental health and custody

14   leadership at most facilities regarding critical staffing

15   willing shortages.  This is the staffing issue and those

16   observations are, in fact, echoed in defendant's own reports

17   from 8 completed inmate suicides in 2023, all of which include

18   references to the impacts of critical staffing shortages.

19        The objection to Mr. Hayes' comparison of CDCR's 2023

20   suicide rate with the nationwide rate is also meritless.

21        Mr. Hayes explains not only that national data after

22   2019 is not yet available but that also caution should be

23   exercised when viewing comparative suicide rate data.  That

24   objection is overruled.

25        Defendants object that the suicide prevention measures

1    are vague and overbroad, focusing on certain measures; for

2    example, measure No. 32.  Here's another example of an

3    objection which comes nine years after the Court, without

4    objection, ordered defendants to adopt the measures and four

5    years after the Court approved the compliance standards that

6    guide Mr. Hayes' assessment.

7            Mr. Hayes has filed seven reports with the Court on

8    status of implementation.  For the first time now to raise this

9    objection is an improper attempt to relitigate.  This objection

10   is overruled.

11           Those are the broad general objections even if they do

12   reference specific measures, suicide prevention measures.  And

13   then whether or not they are framed as general objections or

14   specific objections, the bulk of the remaining objections do

15   address specific measures and also table 3, so I'm going to

16   work through those, start with Measure No. 3 to which I believe

17   there's only a specific recommendation.

18           Here defendants make a number of objections.  And

19   again, I'm looking at document 8179 at pages 81 through 83.

20   Here the objection that the Court should require Mr. Hayes to

21   amend his report with tables clearly identifying which

22   institutions were noncompliant and why, that objection is

23   overruled.  That's a hyper-technical objection.  The Court's

24   de novo review took about 30 minutes and it's just a "make

25   work" objection.

PROCEEDINGS

1           In terms of some inconsistency between the body of the

2    report and the appendices, objection sustained.  There are some

3    inconsistencies.  And then with respect to evidence of suicide

4    prevention training for calendar year 2023, defendants have

5    provided some data but have not provided comprehensive data for

6    2023.  Agreed, Mr. Mello?

7           MR. MELLO:  If that's what we said in our report, our

8    response to the report, then yes.

9           THE COURT:  That's plaintiff's position -- correct? --

10   Mr. Bien or Ms. Yelin?

11          MR. BIEN:  Yes.

12          THE COURT:  Yeah.

13          So even if -- let's just put aside -- there are a

14   number of cases where defendants say Mr. Hayes should have

15   looked at data that it appears was not available to him at the

16   time it was optimal for him to corporate it and consider it in

17   the preparation of his report.  I'm not going to get into the

18   weeds on that, but let's just say, for sake of argument, that I

19   accept defendant's evidence now before the Court and assume

20   that no other institutions slipped.  I believe conducting a

21   de novo review the compliance rate is still at only about 76

22   percent, so that's making critical assumptions.

23          And looking at the complete record before the Court,

24   my inclination here is to defer a final ruling and direct the

25   defendants to file a complete report on suicide prevention

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

PROCEEDINGS

1    trainings for 2023 summarized by institution and discipline so

2    that can I fully assess the state of suicide prevention.  And

3    so my question would be I assume that data is all available

4    now.  Could that be filed -- what's earliest that could be

5    filed, Mr. Mello?

6            MR. MELLO:  Three weeks?

7            THE COURT:  All right.  Any reason not to accept that,

8    Mr. Bien?

9            MR. BIEN:  No, Your Honor.

10           THE COURT:  All right.  Then defendants are so

11   ordered.

12           Moving on to measure 7 where there are both general

13   and specific objections, the gist of the objections is that

14   requiring nurses to ask all 15 questions on the mental health

15   suicide risk form is not part of measure 7.  Essentially the

16   defendants argue that that metric is a constantly evolving

17   standard.

18           Measure 7 was included in Mr. Hayes' initial audit of

19   initial intake screenings and the environment in which those

20   intake screenings are conducted.  That's going back to 2015, an

21   order the Court issued in 2015, ECF No. 2259 at 9 and also

22   looking at ECF 6973.  Mr. Hayes specifically reported that he

23   had audited two areas of intake screening, the adequacy of the

24   intake screening form and the completeness of nursing staff's

25   conduct of the intake process and the adequacy of privacy and

PROCEEDINGS

1    confidentiality during the process.  Each re-audit report since

2    then has specified the focus of the original measure and

3    subsequent re-audits have included assessment of whether

4    nursing staff ask all intake screening questions during

5    screening.  Those re-audit reports are all on the docket.

6         I'd note I think the objection may be untimely, but

7    I'm not -- I'm not holding that against defendants in this

8    instance.  I'm going to the merits.

9         Essentially, the defendants here object because the

10   prospect of contempt proceedings forces them to raise the

11   objection to show the Court's orders are not sufficiently

12   specific and definite but for quite some time now the

13   defendants have acknowledged that they understand precisely

14   what is required and that proper completion of intake screening

15   forms is required to show full compliance with measure 7.  So

16   this is an example of an objection that is much belatedly

17   seeking to relitigate a well-established principle in this

18   case.  To the extent there's a general objection tied to

19   measure 7, it is overruled.

20        With regard to the specific objection, even assuming

21   those objections are sustained based on de novo review,

22   defendant's evidence is it's sufficient to show compliance with

23   measure 7.  I do understand that there's currently a data

24   remediation dispute that may address this measure, and so I

25   anticipate issuing a short order soon.

PROCEEDINGS

1          Do the parties have anything to say about findings

2   based on a limited number of screenings?  I see the defendant's

3   evidence is also based on a sample size, and so I'm not -- I'm

4   not understanding why the defendants would object based on

5   sampling as a method here.  Anything to say about that,

6   Mr. Mello?

7          MR. MELLO:  So I think our briefing touched on this

8   issue.  I think it's the size of the sample and the sequence of

9   the information that was provided.  And I may have this

10  recommendation -- I may be conflating it with other ones where

11  the information we gathered was subsequent to Mr. Hayes' tours,

12  so it's newer information and then the size of the sample size.

13  But other than those general comments, Your Honor, I don't have

14  anything further than was in our briefing.

15         THE COURT:  Mr. Bien, on this do the plaintiffs have a

16  view as to whether or not the data report will be based on a

17  certain size of sample, on observations, on review of the

18  screening forms in the EHRS system?

19         MR. BIEN:  I'm sorry.  I don't have the details of the

20  data process in mind.

21         THE COURT:  All right.  All right.  Well, in any

22  event, I will be issuing an order providing clarification on

23  data remediation, but at this point the record does not show

24  compliance, even assuming defendant's objections are sustained.

25         Turning to measure 8, here again there are both

 1    general and specific objections.  Defendant's objection to

 2    Mr. Hayes' findings regarding this recommendation collapse his

 3    findings into his findings about measure 7 and so distort and

 4    mischaracterize Mr. Hayes' actual findings.

 5          Defendants do object to Mr. Hayes' recommendation that

 6    CDCR should develop caps for the eight facilities referenced

 7    above related to the intake screening process.  They say that

 8    recommendation is overbroad but, reviewing the record and

 9    Mr. Hayes' recommendations in the context of the entire record,

10    Mr. Hayes recommends development of specific caps focused on

11    the issues identified in the paragraphs preceding his

12    recommendations regarding measure 8.  So the general

13    objections, to the extent they apply to measure 8, are

14    overruled.  In terms of specific objections, defendants contend

15    Mr. Hayes is not properly focused on nurse and officer safety.

16          With respect to defendant's new evidence, the 2023

17    evidence, do the plaintiffs accept that evidence Mr. Bien, if

18    you know?

19          If Ms. Yelin is the one to speak, that's fine.

20          MR. BIEN:  Yeah.  No.  I think that our point that we

21    made was that even if you accept their evidence, there's still

22    noncompliance at several institutions.

23          THE COURT:  Do you agree here it does look as if

24    defendants are pretty close to compliance.

25          MR. BIEN:  Yeah.  This is one where they --

PROCEEDINGS

1          THE COURT:  I think they could be -- if High Desert is

2    included, they're at about 86 percent if not at 90 percent, so

3    close but -- but not right there.  Does that sound right,

4    Mr. Bien, Ms. Yelin?

5          MR. BIEN:  I think so.

6          THE COURT:  Here's what -- I think the record needs to

7    be more clear, and so my plan here, unless someone talks me out

8    of it, is to direct the defendants to submit declarations

9    within 30 days for CIW, CIM and SVSP stating either -- I think

10   this is the right direction -- either that TTMs are installed

11   or max custody inmates are in handcuffs with an officer

12   outside, the nurse with a personal alarm.  Would that give me

13   the information to know if, in fact, the defendants are in

14   compliance here, Mr. Bien?

15         MR. BIEN:  Yes, Your Honor.

16         THE COURT:  Mr. Mello, any reason not to direct to you

17   file those declarations within 30 days?

18         MR. MELLO:  I don't have anything more from our

19   briefing, so no, Your Honor, on this issue.

20         THE COURT:  All right.

21         Just so it's clear, that direction doesn't address

22   something else the defendants say that -- in their objections

23   they say "The presence of custody officers doesn't compromise

24   privacy or confidentiality because CDCR officers are bound by

25   HIPAA and generally present at treatment team meetings."

1        I don't see that plaintiffs have responded to that.

2    Do plaintiffs accept that characterization?

3        MR. BIEN:  No, Your Honor.  I think for suicide

4    screening there should be confidentiality and with a clinician,

5    so I think that a custody officer can be nearby and, you know,

6    on call but they should not be present so that there can be an

7    open communication.  And a team meeting is a different kind

8    of --

9        THE COURT:  Right.  I am not accepting defendant's

10   characterization with respect to the presence of custody

11   officers not compromising privacy or confidentiality.  And is

12   that a specific part of that objection I need to especially

13   rule on, Mr. Mello?

14       MR. MELLO:  Again, I feel like that kid in class in

15   the pop quiz.  I don't have anything further --

16       THE COURT:  Well --

17       MR. MELLO:  -- Your Honor from the briefing on this

18   issue.  If we raised it, I think that the Court should have to

19   address our objections, so I think you would have to rule on

20   it.

21       THE COURT:  All right.  Well, then to the extent

22   that's a free-standing objection, I'm overruling it.  And I've

23   done so having looked at the program guide, looking at

24   ECF 7333-1 at 42.  It does call for custody officers who have

25   direct knowledge of the inmate patient to attend or provide the

1   information at IDTT meetings, but it also goes on and provides

2   detailed provisions regarding confidentiality, 7333-1 at 15.

3   And the intake screenings at issue here are when an inmate

4   first arrives at CDCR or an institution and privacy and

5   confidentiality at that stage should be completely protected

6   and respected because, by definition, in this context the

7   officer would not have knowledge of the inmate and the focus is

8   on the environment for screening and the nurse must obtain

9   accurate information without any breach of confidentiality.  So

10  I think the direction I've given to defendants makes clear the

11  way the Court is reading that.  Now the requirement as

12  applicable here and the objection we've just discussed is

13  overruled.

14          Measure 9, general and specific objections.  In some

15  respects, this can be considered together with objections 10,

16  17 and 31.  I believe objection -- the objection to measure 20

17  is effectively moot.  I'll get into that in a bit.

18          So here the defendants object that Mr. Hayes has

19  substituted the special master and Mr. Hayes have substituted

20  new requirements.  And upon de novo review the Court finds that

21  Mr. Hayes' monitoring of measure 9 tracks the requirements of

22  the Court's December 3rd, 2020, order and use the compliance

23  benchmark the Court has previously established.  And again

24  that's referencing ECF No. 6973 at page 7 in particular.  So

25  that objection is overruled.  Looking at the record overall,

1    even assuming defendants' objections are sustained, the

2    defendant's evidence is insufficient to show compliance with

3    measure 9.  Again accepting, for purposes of ruling on

4    objections, defendant's 2023 evidence they're at 57 percent

5    compliance.  So noncompliant on measure 9 regardless.

6          Measure 10.  Here Mr. Hayes' decision to assess

7    compliance with measure 10 by conducting its own review of the

8    matter CDCR -- the matters that CDCR supervising entities are

9    required to review is entirely appropriate.

10          And based on the de novo review of the record, the

11    Court's de novo review, his findings support a clear inference

12    that super fits are not yet properly auditing completion of

13    suicide risk evaluations to the degree required by the Court.

14          I don't see that the defendants have offered any

15    specific evidence of compliance with measure 10, so stand on

16    the objections.

17          In terms of the criticism Mr. Hayes included in his

18    report of RJD for using the Columbia suicide severity rating

19    scale, the defendants object that that criticism is misplaced,

20    but Mr. Hayes doesn't report that the form used in RJD was just

21    to document no change in suicide risk.  So I think rather it's

22    the objection that is misplaced.  That objection is overruled.

23          Measure 12 to which defendants have lodged only

24    specific objections based on super fit coordinator visits in

25    2023 to six of seven institutions, there's specific objections

1    about AASC door tags.  This is an instance, I believe, of

2    Mr. Hayes not receiving, in what he would consider a timely

3    way, the information he needed to fully take account of what

4    the defendants thought is the relevant information because it

5    does appear that super fit coordinator visits happened before

6    the audit.  I understand -- I don't know if it's this category

7    of documents in particular, but I understand that some

8    documents were not loaded into Sharepoint until Mr. Hayes

9    specifically requested that they be loaded, and then he only

10   had access to them at a later time than he needed to properly

11   conduct his audit.  I'm not -- I'm not going to get into the

12   weeds on that.

13         I think there's a pattern there that could be fixed

14   going forward.  Bottom line, based on a de novo review, it

15   looks like placement in intake cells is moving in the right

16   direction.  If the Court takes account of all of the evidence

17   the defendants have presented in connection with their

18   objections it looks as if they're at 85 percent.  The Court's

19   not saying that that's full compliance, but it looks promising,

20   and so it could be that we're moving to the point where the

21   focus would be on durability, but that's really an aside.

22         Would you agree, Mr. Bien, Ms. Yelin, that defendants

23   are close here, accepting the 2023 data they've provided?

24         MR. BIEN:  Yes.  It seems like RJD stands out a little

25   bit but certainly it's an improvement over prior reports

1    substantially.

2         THE COURT:  That seems fair.

3         All right.  So even assuming I sustain all the

4    objections there's not complete compliance but it looks

5    promising.

6         I'm going to circle back and do a global review of

7    what all this means with respect to contempt in the context of

8    the Court's plan to appoint a receiver.

9         Just to deal with some of the granular details of this

10   objection, to the extent the defendants are saying door tags

11   are not part of the requirement, for example, at CSPLAC, that

12   objection is overruled.  Defendant's own super fit coordinator

13   reported that absence of tags on one site visit to SVSP made it

14   very difficult to assess when placement started and was due to

15   end.  So with that clarification, I've resolved what I plan to

16   today with respect to measure 12.

17        Measure 13, specific objections as well.  This measure

18   focuses on ensuring inmates are newly admitted -- ensuring

19   inmates newly admitted to administrative segregation units, now

20   RHUs, are moved out of suicide resistant cells after 72 hours,

21   providing room for new intakes.

22        Here as well it looks like defendants are moving

23   towards compliance.  Crediting what the defendants are saying

24   in the context of objections, they're at 80 percent compliance.

25   Agreed, Mr. Bien?

1          MR. BIEN:  Yes, Your Honor.

2          THE COURT:  Measure 17, both general and specific

3     objections.  With respect to the general objections as with

4     measure 9 the Court finds that Mr. Hayes' monitoring of measure

5     17 tracks the requirements of the Court's December 3rd, 2020,

6     order and it's not entertaining attempts to relitigate that

7     order.

8          Specifically with respect to 17, and as Mr. Hayes has

9     previously explained, for example, in his fifth re-audit

10    report, the planning covered by measure 17 is required by the

11    program guide and has been regularly audited.  To the extent

12    that the defendants say that this measure is redundant, it's

13    frivolous, the objection is overruled.  Moreover, even if the

14    Court accepts all the information the defendants now provide,

15    they are not in compliance with measure 17.

16         Measure 18, specific objections.  The measure provides

17    for a specific timetable for training all mental health

18    clinicians on treatment planning using a PowerPoint

19    presentation.  Here even if I accept all of the information

20    defendants provide in connection with their objections, they

21    are not in compliance at three institutions.  This is another

22    indication -- this is another instance in which it's not clear

23    that Mr. Hayes had the super fit reports that defendants rely

24    on in their objections even though it appears he should have.

25    They're still below 90 percent compliance but close.  I believe

1   the number is 86 percent if I accept all of the defendant's

2   current information.

3            Agree with that, Mr. Bien?

4            MR. BIEN:  Yeah.  I think three institutions are still

5   outstanding if you accept all of their representations.

6            THE COURT:  Is this a case where there's a gap in the

7   record and a declaration would show full compliance?  This is

8   training with a PowerPoint.

9            Mr. Mello, any view on that?

10           MR. MELLO:  I think --

11           THE COURT:  I mean, are you conceding that even

12  with -- have you provided me with everything there is to

13  consider here and so there's still three institutions not in

14  compliance?

15           MR. MELLO:  Again, I think we provided everything that

16  was available at the time that we briefed the issue.  I'm not

17  sure if there's more current information about those three

18  institutions, Your Honor.

19           THE COURT:  All right.  Well, I'm going to put that in

20  the moving in the right direction.  Maybe someday soon

21  durability will become the issue as long as there's no

22  slippage.

23           All right.  Measure 20.  Here Mr. Hayes has found

24  compliance -- has found compliance, so -- but the defendants

25  still object, right?  You're objecting to the fact that he made

PROCEEDINGS

1    findings about SATF saying they don't match the region 3 super

2    fit coordinator's audit findings, but he's found you in

3    compliance on this.  So are you standing on that objection,

4    Mr. Mello?

5            MR. MELLO:  I think defendant's position was that if

6    there were audits that were subsequent and where we provided

7    information that was subsequent that the -- that that

8    information should be considered by the Court.  Of course we

9    like to be found in compliance, so if the Court is going to say

10   that we are in compliance with 20, we are not going to object

11   to that finding.

12           THE COURT:  All right.  Well, I don't think there's

13   any reason not to find defendants in compliance with measure

14   20, but I think the objection, if I understand it correctly, is

15   to the form of auditing.  And so to the extent that's what

16   defendants are saying, that objection is overruled.  And even

17   if the defendants are right that super fit coordinators found

18   compliance at SATF, it doesn't automatically show that

19   Mr. Hayes' findings were incorrect.

20           And here, just to note with respect to durability,

21   there's a key indicator on the list of provisionally approved

22   indicators designed to measure whether psych tech rounds are

23   completed according to program guide requirements, and so

24   there's a mechanism in place to demonstrate hopefully ongoing

25   compliance or at least a level of compliance.

1          Anything else to say about that, Mr. Bien, No. 20?

2          MR. BIEN:  I don't, Your Honor.

3          THE COURT:  All right.

4          Moving to 21 where there are specific objections, this

5     is regarding levels of observation for those at suicide risk.

6     The defendants object the compliance rate is too high

7     fundamentally but that compliance threshold was established

8     four years ago.  Defendants appealed the order and dismissed

9     the appeal.  This is not the right forum for an objection.

10    It's overruled.

11         Measure 28, there's also a specific objection.  I do

12    have a question about -- if defendants can answer it -- about

13    the way they've presented the evidence, but bottom line, if the

14    Court accepts defendant's representations as summarized in

15    their brief, and assuming the information speaks to completion

16    of page 2 of the form, it appears defendants have shown

17    compliance at Mule Creek SATF and Kern Valley.  That's looking

18    at ECF 8179 at 74 to 78.  Two other institutions, High Desert

19    and Corcoran have achieved at least 90 percent compliance on a

20    couple of audits but fell below on one audit each otherwise.

21    Even if the Court accepts all of the defendant's evidence as to

22    all five institutions, they are in 60 percent compliance, so

23    not in compliance.

24         Agree with that, Mr. Mello?

25         MR. MELLO:  If that's what our evidence demonstrated.

PROCEEDINGS

1    I think our position was that they've taken corrective action

2    and that compliance was improving, but I don't have anything

3    further specific for you on this one, Your Honor.

4            THE COURT:  Can you answer my question about the form

5    here?  I'm not certain I can tell from the way you've presented

6    it.  Defendant's evidence -- it looks as if defendants reviewed

7    the 7497 packet as a whole rather than just page 2.  Is that --

8    do I have that right?

9            MR. MELLO:  Quite honestly, Your Honor, I don't recall

10   at this moment if -- how we were doing it.

11           THE COURT:  All right.  Well, regardless, even if I

12   sustain all the objections, noncompliant.

13           Anything to say on this, Mr. Bien?

14           MR. BIEN:  That's correct, Your Honor.

15           THE COURT:  Measure 29 where there are specific

16   objections and this is -- the objections are focused on page 1

17   of that 7497 form and defendants say they have reports showing

18   subsequent compliance, so here again, even if I accept all of

19   defendant's evidence, including for Corcoran, where compliance

20   fell below 90 percent in one month, the overall compliance is

21   at 55 percent, and so noncompliance on 29 based on a de novo

22   review and giving defendants the benefit of the doubt.

23           Anything to say about that, Mr. Mello?

24           MR. MELLO:  Nothing further, Your Honor.

25           THE COURT:  Mr. Bien?

1          MR. BIEN:  No, Your Honor.

2          THE COURT:  Measure 31 there are both general and

3     specific objections.  So regarding 31, the Court ordered

4     defendants on January 25th of 2018 to provide the special

5     master a local super fit policy revised in accordance with

6     Mr. Hayes' critique and the requirements of the program guide

7     so that the policy could be fully implemented before Mr. Hayes

8     began his third re-audit.  And that January 25th, 2018, order

9     is at ECF No. 5762.  I'm quoting from page 4.

10          The revised policy is set out in the February 2nd,

11    2018 memo included in appendix C to the program guide, and

12    that's ECF 7333-1 at 611, and the revised policy speaks for

13    itself.

14          Those policy requirements track the metrics Mr. Hayes

15    has audited as required by the Court's 2018 order, January 2018

16    order.

17          And so the objection here is an attempt to relitigate

18    a matter that's been established.  The general objection is

19    overruled.

20          Looking at the specific objections, there are -- there

21    are some discrepancies between Mr. Hayes' report, what the

22    Court can discern from a de novo review of the record and

23    plaintiff's own review, and so my plan is to ask Mr. Hayes to

24    review six months of local super fit meeting minutes for all

25    institutions and submit an updated report to the Court so I can

PROCEEDINGS

 1   get to the bottom of what's going on here.  Any reason not to

 2   do that, Mr. Bien?

 3            MR. BIEN:  No, Your Honor.

 4            THE COURT:  Anything else to say about 31?

 5            MR. BIEN:  No.  I think a re-audit is --

 6            THE COURT:  All right.

 7            MR. BIEN:  -- is appropriate.

 8            THE COURT:  Mr. Mello?

 9            MR. MELLO:  Nothing further to say.

10            THE COURT:  All right.  So that's how the Court's

11   resolving the specific objection for now, deferring it.

12            Special Master Lopes, do you have an estimate of how

13   long it would take Mr. Hayes to provide an updated report?

14            SPECIAL MASTER LOPES:  It would be six weeks if the

15   data is given to the expert promptly.

16            THE COURT:  All right.  Can the defendants provide all

17   of the local super fit meeting minutes for all institutions by

18   the end of this week, Mr. Mello?

19            MR. MELLO:  Yes.

20            THE COURT:  All right.  So that's the order.  Is there

21   anything else Mr. Hayes would need?  Is it just local super fit

22   meeting minutes for all institutions, six months?

23            SPECIAL MASTER LOPES:  Mr. Hayes would need the local

24   policies as well addressed within the report, Your Honor.

25            THE COURT:  All right.  So local policies plus meeting

1    minutes.  We'll memorialize any bench order in the minutes, but

2    is that still realistic, policies plus minutes by the end of

3    the week?

4            MR. MELLO:  Can we have until the end of next week?

5            THE COURT:  All right. so two weeks, meaning a week

6    from this coming Friday.

7            MR. MELLO:  And of course if they're available

8    earlier --

9            THE COURT:  Yeah.

10           MR. MELLO:  -- we will provide them earlier.

11           THE COURT:  All right.  And then so eight weeks from

12   now for Mr. Hayes to complete that updated report.

13           Measure 32, there are specific objections and here

14   this measure is focused on the CDCR examining and considering,

15   taking reasonable corrective actions to address miscellaneous

16   issues, three issues.  Plaintiff is not seeking contempt at

17   this point on the continuous quality improvement.  I'm

18   sustaining the objection as to that aspect of this measure, but

19   it leaves possessions and privileges in MHCBs and reception

20   centers, and so those two prongs of this measure are what I'm

21   addressing now.  That said, I am prepared to refer the CQIT

22   issues back to the special master for a supplemental report.

23           And Special Master Lopes, do you have an estimate on a

24   reasonable period of time for that supplemental report?

25           SPECIAL MASTER LOPES:  Same period, Your Honor.

PROCEEDINGS

1          THE COURT:  Okay.  Let's just say eight weeks.  Thank

2    you.

3          So on those other two prongs of measure 32, even if

4    the Court accepts all of the defendant's evidence provided with

5    the objections, defendants are not in compliance.

6          Is there an outstanding dispute here that I need to

7    resolve about a 10-hour timeframe, Mr. Bien?

8          MR. BIEN:  I'm not sure if it's been briefed.  Has it?

9          MS. YELIN:  I don't remember if it is.

10         MR. BIEN:  Yeah, but I think there is a dispute that's

11   coming up through the data remediation process --

12         THE COURT:  Ah.

13         MR. BIEN:  -- and it also came up here as to what is

14   exactly required.

15         THE COURT:  All right.  Anything else to say about

16   that, the 10 hours?  I understood -- I'm not finding my exact

17   notes here, but I understood there was a dispute.  Can I just

18   wait for anything to come out of data remediation to resolve

19   it, Mr. Mello?

20         MR. MELLO:  So I think our position was that the

21   10-hour for the first time showed up in the 6/3 audit with

22   respect to inmate CB individuals.  I think that's our position.

23   And they didn't have notice of that change, of the change in

24   the methodology and auditing until later, but maybe it makes

25   sense for this to just be looked at.  So our position was that

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

1    the 10 hours was a new requirement for which they didn't have

2    notice until they received that 6/3 audit report.  That was our

3    position.  But I think it is also tied up in data remediation,

4    Your Honor.

5          THE COURT:  All right.  Let me -- we're going to take

6    a break to give you all a break from my droning on here, and

7    I'll double check to see where I know my notes here are on the

8    10 hours.  So we'll come back to that after the break, but

9    finally on table 3, the defendants do lodge a general objection

10   to table 3.  I think plaintiffs have it right the table is not

11   a finding of fact that the Court needs to review, and there's

12   nothing to suggest that its contents are clearly erroneous.

13   The Court views table 3 as part of Mr. Hayes' consistent effort

14   to do the job the Court requires of him.

15          And I do think it illustrates a rise in emergent or

16   urgent mental health referrals.  Anyway, it's a useful tool.

17   So the objection to the table is overruled.

18          I believe that addresses all the objections.  To the

19   extent I haven't called out a specific objection, it's because

20   I have credited the defendant's evidence and ultimately have

21   found even with that evidence considered the defendants, for

22   the most part, are not in compliance.  Again, I'll do a review

23   of all the measures that are still before the Court and talk

24   about the implications when I come back.

25          Is there anything else you want to say before we take

1  a 15-minute break, Mr. Bien?

2          MR. BIEN:  No, Your Honor.

3          THE COURT:  Mr. Mello?

4          MR. MELLO:  No, Your Honor.

5          THE COURT:  All right.  15-minute break.  During that

6  break if you can consider do you think I've missed an objection

7  that's important for me to rule on.

8          I've looked at everything before the Court.  I've

9  addressed what I believe I need to.  I understand defendant's

10  position that I need to rule on these objections.  I believe I

11  have done so in full, but if you think I missed one, please let

12  me know when I come back.

13          All right.  Fifteen minutes.

14      (Recess at 2:46 p.m. to 3:04 p.m.)

15          THE COURT:  All right.  We're back on the record.  To

16  follow up on that 10 hours, I found my notes and I understand

17  the defendants -- there is a dispute about this 10-hour metric.

18  Mr. Hayes says he's used it in prior reports.  It didn't show

19  up for the first time in the sixth re-audit report but, bottom

20  line, de novo review with respect to the last measure we

21  discussed, 32, on the two prongs, defendants are not in

22  compliance.  I do think there's a data remediation dispute

23  coming to me, and so I will address that.

24          Mr. Hayes did just advise the Court that we've

25  received notice that over the weekend there was another suicide

PROCEEDINGS

1    at Kern Valley, so there's now 19 for this year.

2              So just to review and wrap up where we are with

3    respect to the remaining measures that the Court is addressing

4    in these proceedings, measure 3 I'm deferring a final ruling on

5    objections subject to receiving a report from defendants in

6    three weeks' time.

7              Measure 7, defendants are not in compliance after the

8    Court's ruling on objections.

9              Measure 8, the defendants are in compliance, assuming

10   the Court credits the defendant's evidence, and so the focus

11   there moves to durability.

12             Measure 9, after the Court's ruling on objections,

13   defendant's not in compliance.

14             Measure 10, after the Court's ruling on objections,

15   defendant's not in compliance.

16             Measure 12, as the Court noted, the defendants are

17   close and while the Court is not adjusting the rate needed to

18   achieve full compliance, it appears that the Court would not,

19   if it reached the question, for example, find the defendants in

20   contempt when they are so close.  And so I -- hopefully full

21   compliance is shown next time and then it becomes a question of

22   durability.

23             No. 13, the same thing.  Not fully compliant but

24   close.  The Court would not find contempt if it ultimately

25   reaches the question of contempt.

PROCEEDINGS

1          Measure 17, defendants are not in compliance.

2          Measure 18, defendants are close enough the Court

3    would not find contempt if it reached ultimately a finding of

4    contempt.

5          Measure 20, defendants are compliant.

6          Measure 21, defendants are not compliant after the

7    Court's ruling on objections.

8          Measure 28, not compliant after ruling on the

9    objections.

10          Measure 29, not compliant.

11          Measure 31, I'm deferring an ultimate ruling on

12    objections.  The defendants will provide to Mr. Hayes within

13    two weeks, a Friday within two weeks, minutes and policies as

14    requested.  Mr. Hayes will provide an update to the Court

15    within 8 weeks.

16          Measure 32 narrowed to not include continuous quality

17    improvement.  Defendant's not in compliance and I am awaiting a

18    report from the special master on the schedule he provided.

19    Eight weeks.

20          Table 3 I addressed, but it's not material to full

21    compliance.

22          So at this point eight measures --

23          MR. MELLO:  Your Honor.

24          THE COURT:  -- I'm wrapping up still -- eight measures

25    the defendants are not in compliance.

PROCEEDINGS

1          The Court at this time is not planning to move forward

2    with contempt proceedings.  This assumes that the appointment

3    of a receiver proceeds apace.  If there are delays in

4    appointment of a receiver, then I will revisit the question of

5    setting this set of measures for contempt proceedings and by

6    then I'll also have further information and will have ruled on

7    objections with respect to measures 3 and 31.

8          So I will all closely monitor appointment of receiver

9    proceedings and decide what to do ultimately once I have a

10   complete record on the remaining measures.

11         Here are my -- here are my two questions for the

12   defendants:  One is how do you plan to make certain that the

13   field knows the practical impact of my ruling on objections

14   when I've clarified certain things, for example, with ASU door

15   tags, with confidentiality?  I assume you'll get a copy of the

16   transcript -- that seems to be standard practice -- within a

17   short period of time here.  I'd like to have you report back to

18   me confirming that you have conveyed what the Court's rulings

19   on the objections mean so that those in the field understand

20   what it means for their conduct.  So do you have a suggestion

21   as to how to do that?

22         MR. MELLO:  I would -- I would frankly like to talk to

23   my clients and figure out the best way and talk to Dr. Williams

24   and my clients and talk about the best way to let leadership as

25   well as the field know these and then maybe come back to the

PROCEEDINGS

 1   Court and say:  This is our proposal or -- but I would have to

 2   check with them what's the best way to accomplish this.

 3          And when the moment is right, I do have one clarifying

 4   question about the information we're providing to Mr. Hayes.

 5          THE COURT:  All right.

 6          MR. MELLO:  Is now okay?

 7          THE COURT:  That's fine.

 8          MR. MELLO:  Okay.  So the clarifying question is we

 9   are supposed to provide -- I think the Court said all super fit

10   minutes.  Just for workload, I understand that Mr. Hayes did

11   not go to all institutions, so is it the local super fit

12   minutes for those institutions that he monitored or all

13   institutions?  We're hoping that it's for those that he

14   monitored in the sixth round, and I may have it wrong.

15          THE COURT:  I'm pretty certain I said "all."

16          Let me ask Mr. Hayes does he have a modification of

17   that direction?

18          MR. HAYES:  Your Honor, I think Mr. Mello is

19   reasonable that I would only be requesting those super fit

20   minutes from the 21 facilities that I audited in 2023.

21          THE COURT:  All right.  So that would be sufficient

22   from your purposes?

23          MR. HAYES:  Yes.

24          THE COURT:  I accept Mr. Hayes' professional

25   evaluation of that and so therefore modify it to those 21

PROCEEDINGS

1 | facilities.

2 | MR. MELLO:  Thank you.

3 | THE COURT:  All right.

4 | Anything so say about how the defendants can

5 | demonstrate to the Court relaying the implication of its

6 | rulings on the objections to the field, Mr. Bien?

7 | MR. BIEN:  No.  I think that the method that Mr. Mello

8 | suggested, which is that they'll come up with a plan including

9 | a memo which would be, I assume, clarifying the instructions

10 | for particular processes that became credited and developed

11 | defendants that they were confused about, we can clarify those

12 | disputes and perhaps have a session with Mr. Hayes and the

13 | special master and make sure we all get it right before it goes

14 | out to the field.

15 | THE COURT:  All right.  Are the defendants hoping to

16 | be meeting and conferring with plaintiffs and proposing within

17 | a reasonable period of time a joint report to the Court

18 | identifying areas of agreement and any disagreements as to the

19 | communication to the field?

20 | MR. MELLO:  That sounds reasonable.  I would note I

21 | understand there's a suicide summit in the next month.  That

22 | would also be a place where the field could be notified, but

23 | we're glad to digest the transcript and the order that this

24 | Court issues and then have those conversations.

25 | THE COURT:  What's the date of the Summit?

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

1      MR. MELLO:  I don't know.  I think --

2      MR. BIEN:  Jenny thought it was next week, but --

3      THE COURT:  Oh.

4      MR. MELLO:  Oh.  Sooner than I thought, Your Honor.

5      THE COURT:  Well, if there's a way to headline that

6  something is coming, that might be good.

7      Why don't we say -- what's the earliest you can get me

8  something after meet and conferring, so moving quickly but

9  carefully to make certain the message is clear?  What do you

10  think the period of time is to get me something?

11      MR. MELLO:  Again, I have to meet with my clients, but

12  I assume that we can probably check in with counsel late this

13  week or early next week.

14      MR. BIEN:  We may need a transcript before that, and

15  so that becomes a delay factor.

16      MR. MELLO:  Oh.  That's a good point.

17      THE COURT:  Well, let me say -- I would encourage to

18  you meet and confer if there's a way to take advantage of the

19  summit and get some message out there.

20      MR. MELLO:  Correct.

21      THE COURT:  But let's say no later than four weeks

22  from now you'll provide a joint report on the best way for

23  defendants to clarify their understanding of the Court's

24  rulings and their proposed method for relaying the implications

25  to the field.

PROCEEDINGS

1           MR. MELLO:  Okay.

2           THE COURT:  And if any ruling needs to be clarified,

3    you can seek that clarification.

4           Then finally, at one point the defendants offered to

5    accelerate regional super fit audits and hold them quarterly.

6    I don't think that's currently a requirement, but it was an

7    offer.  The Court has had repeated conversations with the

8    defendants.  I know prior it was a particular interest of

9    Secretary Allison, so I do know there was that suggestion.  I

10   understand that those regional audits are occurring now at most

11   two to three times per facility, but in the joint report can

12   you provide an update?  Are defendants able to move forward on

13   that suggestion, that very good suggestion that the audits

14   occur quarterly to keep the focus on?

15          MR. MELLO:  Understood.

16          THE COURT:  All right.  I think that's all we need to

17   cover today.

18          Anything else, Mr. Bien?

19          MR. BIEN:  No, Your Honor.

20          THE COURT:  Mr. Mello?

21          MR. MELLO:  No, Your Honor.

22          THE COURT:  All right.  Thank you all very much.

23       (Concluded at 3:16 p.m.)

24

25

1

2                         C E R T I F I C A T E

3

4        I certify that the foregoing is a true and correct

5   transcript of the record of proceedings in the above-entitled

6   matter.

7
    _____        October 3, 2024
8   JENNIFER L. COULTHARD, RMR, CRR              DATE
    Official Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312