1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RALPH COLEMAN, et al.,                          No. 2:90-cv-0520 KJM SCR P

12                        Plaintiffs,                 ORDER

13         v.

14    GAVIN NEWSOM, et al.,

15                        Defendants.

16

17           On August 16, 2024, as part of his comprehensive thirtieth round of monitoring in this

18    action the Special Master filed a monitoring report on the delivery of mental health care at

19    thirteen institutions in the California Department of Corrections and Rehabilitation (CDCR) with

20    Correctional Clinical Case Management (CCCMS) Programs (30D Report).  ECF No. 8359 at 1,

21    15.[1]  The Special Master makes numerous findings in the 30D Report but no "formal

22    recommendations" or "request(s) for additional court orders."  *Id*. at 109.  On August 26, 2024,

23    defendants filed objections to the 30D Report, ECF No. 8374; with leave of court, Sept. 4, 2024

24    Minute Order, ECF No. 8386, on September 9, 2024, plaintiffs filed a response to defendants'

25    objections, ECF No. 8393.   The court resolves defendants' objections by this order.

---

[1] Citations to page numbers in documents filed in the Court's Electronic Case Filing
(ECF) system are to page numbers assigned by ECF and located in the upper right hand corner of
the page.

1

1

2   **I.    LEGAL STANDARD**

3        Paragraph C of the Order of Reference provides in relevant part:

4        [A]ny compliance report of the special master filed in accordance with paragraph
5        A(5) above shall be adopted as the findings of fact and conclusions of law of the
6        court unless, within ten days after being served with the filing of the report, either
7        side moves to object or modify the report. . . .  The objecting party shall note each
8        particular finding or recommendation to which objection is made, shall provide
9        proposed alternative findings or recommendations, and may request a hearing before
10       the court.  Pursuant to Fed. R. Civ. P. 53(e) (2), the court shall accept the special
11       master's findings of fact unless they are clearly erroneous.

12   Dec. 11, 1995 Order at 8, ECF No. 640.  As required, the court adopts the Special Master's

13   findings of fact unless those findings are "clearly erroneous."  *Id*.  "A finding is 'clearly

14   erroneous' when although there is evidence to support it, the reviewing court on the entire

15   evidence is left with the definite and firm conviction that a mistake has been committed." *United*

16   *States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (quoted in *Anderson v. City of Bessemer*

17   *City, N.C.*, 470 U.S. 564, 573 (1985)).

18        In their objections, defendants acknowledge the standard of review for the Special

19   Master's factual findings set out in the Order of Reference, ECF No. 640.  At the same time, as

20   they have before, defendants note that Federal Rule of Civil Procedure 53 "was 'revised

21   extensively' in 2003,' and notably, the standard of review was changed for findings of fact made

22   or recommended by a master."  ECF No. 8374 at 5 (quoting Committee Note on Rules – 2003

23   Amendment).  In relevant part, the 2003 amendment requires the court to "decide de novo all

24   objections to findings of fact made or recommended by a master unless the parties, with the

25   court's approval, stipulate that . . . the findings will be reviewed for clear error."  Fed. R. Civ. P.

26   53(f)(3).  Defendants observe that the parties have not stipulated to application of a standard of

27   review other than the *de novo* standard now set out in Rule 53(f)(3).  *Id*.  They  acknowledge that

28   in 2009, the court declined to apply the *de novo* standard of review in current Rule 53(f)(3) to

29   factual findings covered by the Order of Reference because "[t]he question of whether the

30   provisions of Fed. R. Civ. P. 53(f)(3) should apply in these proceedings has not been briefed by

31   the parties, and plaintiffs cite no authority mandating its application," Nov. 23, 2009 Order at

1   2 n.1, ECF No. 3731 (quoted in ECF No. 8374 at 5),[2] and that both this court and its predecessor

2   have in several orders continued to apply the clearly erroneous standard of review.  ECF No.

3   8374 at 5 and orders cited therein.  It is not clear whether defendants contend the court should

4   now apply the *de novo* standard of review set out in the current version of Rule 53(f)(3) to the

5   Special Master's factual findings in the 30D Report.  The question of whether that standard

6   "should apply in these proceedings [still] has not been briefed by the parties, and [defendants] cite

7   no authority mandating its application."  ECF No. 3731 at 2 n.1.  Nor have the parties briefed the

8   question of whether this court should reconsider the November 23, 2009 order, which the

9   previously-assigned district judge issued.  *Cf. Zeyen v. Bonneville Joint District # 93*, 114 F.4th

10  1129, 1137-38 (9th Cir. 2024) (clarifying standard for review of interlocutory order by prior

11  judge in same case is found in *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1027 (9th Cir.

12  2001) and includes as one prong that prior decision is "clearly erroneous and its enforcement

13  would work a manifest injustice").  Given the record and the posture of the defendants' pending

14  objections, the court reviews for clear error the Special Master's factual findings.  *See* ECF No.

15  640 at 8.

16         Defendants also contend the court should apply a *de novo* standard of review to "any

17  conclusions of law made or recommended by the Special Master."  ECF No. 8374 at 5 (citing

18  Fed. R. Civ. P. 53(f)(4)).  The court has always applied a *de novo* standard of review to its

19  consideration of legal questions, and does so here.  *See, e.g., N.L.R.B. v. FMG Industries*, 820

20  F.2d 289, 291 (9th Cir. 1987) ("A Special Master's conclusions of law receive no deference.")

21  /////

22  /////

---

[2] The 2009 order resolved a defense motion to modify the Special Master's expert's Report on Suicides Completed in [CDCR] in Calendar Year 2007, opposed by plaintiffs.  *See* ECF No. 3731 at 1.  Plaintiffs pointed to Rule 53(f)(3) in a footnote in their opposition in which they observed defendants had not, in their motion, identified "the relevant standard of review with regard to their objections."  ECF No. 3714 at 6 n.1.  Plaintiffs there contended that under either the "clearly erroneous" standard set out in the Order of Reference, citing former Fed. R. Civ. P. 53(e)(2), or the *de novo* standard set out in Rule 53(f)(3), defendants' motion failed.  *Id.*

1   **II.   DISCUSSION**

2       **A.   Defendants' Objections[3]**

3       Defendants' objections fall into four categories:  (1) objections arising from the Special

4   Master's alleged failure to provide defendants with information underlying certain findings in the

5   30D Report; (2) objections to inferences defendants contend are suggested by findings in the 30D

6   Report or conclusions the Special Master draws from his findings; (3) objections to the Special

7   Master's decision to use sample sizes smaller than those recommended by his data expert for

8   certain assessments; and (4) objections to factual findings in the 30D Report.  The previously-

9   assigned district judge addressed the impropriety of objections that fall into the second category.

10  *See*, *e.g.*, February 28, 2013 Order at 9-10, ECF No. 4361 (overruling objections to conclusions

11  drawn by "Special Master and his experts [who are] well-qualified to draw conclusions from

12  findings on matters within the scope of their duties" "without prejudice to defendants' right to

13  make appropriate argument" in proper substantive motion); *see also id*. at  9 n.11 (discussing

14  "perva[sive] defect [in] defendants objections to "'any implication or conclusion'" to be drawn

15  from reported facts without objecting to underlying facts themselves.).  Defendants have shown

16  no grounds for revisiting the court's determination that these types of objections are improper.

17  *Cf. Zeyen*, *supra*.  Except where additional discussion is required, objections that fall into this

18  second category will be summarily overruled.

---

[3] In the introduction to their objections, defendants contend they now have a Hobson's choice in raising objections following the court's admonishment in its May 16, 2024 order adopting the Special Master's Thirtieth Round Monitoring Report – Part C.  In that order, the court cautioned counsel that they will be sanctioned for raising arguments that disregard the law of the case unless they bring an appropriate motion under established procedures.  ECF No. 8239 at 7.  Defendants contend they must now either risk sanctions by raising objections to the 30D Report that "are based on the same factual and legal positions" they have taken in the past except that they are focused on findings made during the most recent monitoring round and therefore "not previously reported to the court," or they can "giv[e] up their right to file objections to findings in the Report."  ECF No. 8374 at 4.  Defendants mischaracterize the court's order. Defendants are always free to raise good faith objections to findings in the Special Master's monitoring reports under applicable standards.  What defendants may no longer do without risking imposition of sanctions is ignore or disregard application of legal principles the court previously has determined when raising those objections.

1          **1.     Request for Information on Patient Reviews**

2          Defendants' first objection falls into the first category:  defendants contend the 30D

3   Report "omits information Defendants request regarding the identity of the twenty or fewer

4   patients reviewed at each level of care at each institution."  ECF No. 8374 at 6.[4]  Defendants

5   contend that "[w]ithout information regarding which patients were reviewed, including the

6   timeframe of the review and the level of care, CDCR does not have the information available to

7   properly review and comment on the Report."  *Id*.  Plaintiffs contend the objection "does not

8   attack a factual finding"; they say defendants have all patient information relied on by the Special

9   Master and "can use their own records to refute findings if they have legitimate objections."  ECF

10  No. 8395 at 5.

11         This objection arises in the context of the Special Master's review of "each institution's

12  satisfaction of Program Guide requirements for timeliness of initial and routine clinical contacts

13  and IDTTs."  ECF No. 8359 at 20; *see* ECF No. 8359-1 at 7.[5]  The Special Master's findings were

14  based on "manual review of patient records" by his monitors at the prison institutions they visited

15  during the thirtieth monitoring round.  ECF No. 8359 at 20; *see also id*. at, *e.g.,* 418 (Special

16  Master's monitor "randomly selected and reviewed the healthcare records of 20 mainline 3CMS

17  patients" at Wasco State Prison).  The patient records at issue are created and maintained by

18  defendants and their agents and made available to the Special Master by defendants and their

19  agents.  Defendants are responsible in the first instance for complying with Program Guide

20  requirements.  *See* Mar. 3, 2006 order at 2, ECF No. 1773 (ordering defendants to "immediately

21  implement" Program Guide).  As part of their duty to provide adequate mental health treatment to

22  the plaintiff class, defendants and their agents at prison institutions that provide mental health

23  care should know routinely whether Program Guide requirements, including those for timely

---

[4] The parties both note the Special Master has agreed to provide this information going
forward.  *Id*.; ECF No 8393 at 5.  For the reasons explained in this section, regardless of any
action the Special Master may take voluntarily going forward, he is not required to provide the
information defendants seek.

[5] "The Program Guide is defendants' plan, approved by the court, to remedy identified
violations in the delivery of mental health care to the plaintiff class."  Sept. 3, 2020 Order at 4,
ECF No. 4.

1    initial and routine clinical contacts, are being met and if not, why not.  After thirty rounds of

2    monitoring, defendants and their agents are well aware of the substantive areas monitored by the

3    Special Master and the substantive information he requires to complete his monitoring

4    responsibilities.  If defendants are not aware of the current status of their compliance with

5    Program Guide requirements, which the Special Master regularly monitors, they have access to

6    all the records necessary to glean that information.

7         The court overrules this objection.

8                    **2.    Requests for Clarification of Document Requests**

9         The Special Master reports that following the conclusion of the thirtieth monitoring round

10   he requested documents from defendants in preparation for his tours of new Enhanced Outpatient

11   Program (EOP) units as part of his thirty-first monitoring round, which commenced at the end of

12   May 2024.  In response to this request, Melissa Bentz, an attorney with CDCR's Office of Legal

13   Affairs, sent him a twelve page letter "outlining myriad demands, questions, concerns, and

14   '*objections*.'"  ECF No. 8359 at 39 (citing Exhibit L to 30D Report) (emphasis in 30D Report).

15   The Special Master reports that defendants subsequently have represented that the objections

16   raised in the letter "were 'standing objections' going forward"; he "suggest[s] that [defendants']

17   aggressive litigation tactics may have crossed the line into resistance to (and the impeding of) the

18   Special Master's performance of his basic, court-ordered duties."  *Id*. at 40.  Defendants object to

19   the Special Master's characterization and say their requests were not "efforts to obstruct

20   monitoring," but instead were intended "to clarify whether remediated data would be used and

21   asking detailed questions about the requests."  ECF No. 8374.  Plaintiffs contend the objection is

22   meritless, requires no court action, and that defendants do not contend this section of the 30D

23   Report is "inaccurate" or that it should be rejected.  ECF No. 8393 at 5-6.

24        This objection is not properly before the court.  Good cause appearing, however, given

25   that the court has reviewed the letter, the court will set a special status conference to discuss the

26   letter with Melissa Bentz, Esq., who shall be directed to appear for discussion at the status

27   conference in person.

                                              6

1          **3.    Findings Concerning Telepsychiatry**

2          Defendants object that the 30D Report "incorrectly suggests that CDCR is having

3     difficulty recruiting and retaining staff through the Telepsychiatry Program, and that

4     telepsychiatry has not had a positive impact on the overall psychiatry fill rate."  ECF No. 8374 at

5     6-7.  Plaintiffs respond defendants have failed to cite any specific findings that form the basis for

6     this objection, and the objection is "explicitly rebutted" by the statement in the 30D Report that

7     "'the Special Master and the Court support the use of telepsychiatry and acknowledge that it has

8     been helpful in reducing psychiatry vacancies.'"  ECF No. 8393 at 6 (quoting ECF No. 8359 at

9     50).

10         This objection falls into the second category described above.  It is summarily overruled.

11         **4.    Sample Sizes**

12         Defendants next question the Special Master's purported failure to explain in the 30D

13    Report why his monitors used smaller sample sizes than recommended by the Special Master's

14    data expert to assess the timeliness of initial evaluations, clinical contacts, or IDTT

15    [Interdisciplinary Treatment Team] meetings.  ECF No. 8374 at 8-9.  Plaintiffs contend this

16    objection repeats an objection the court has previously overruled and, in any event, is without

17    merit.  ECF No. 8393 at 8-9.

18         This objection falls into the third category above, and mirrors a nearly identical objection

19    defendants raised to the Special Master's 30C Monitoring Report (hereafter 30C Report).

20    *Compare* ECF No. 8374 at 8-9 & n.2 *with* ECF No. 8108 at 9-10. While the court did not provide

21    an extended discussion of this aspect of defendants' objections in its order on the 30C Monitoring

22    Report, *see generally* ECF No. 8239, it did explicitly reject defendants' request for an "order

23    directing the Special Master to 'use . . . remediated data and on-site audits, including sample size,

24    audit questions, and scoring, in all future monitoring rounds.'"  *Id*. at 6.  The court's reasons for

25    rejecting that request apply with equal force to the present objection.  The 30D Report straddles

26    the transition period between the disclosure that defendants were presenting misleading data to

27    /////

28    /////

1   the court and prospective full remediation of defendants' data system.  Defendants have not

2   shown error in the present report as a result of sample sizes the Special Master selected.

3         The court overrules this objection.

4              **5.      Status and Impact of Data Remediation**

5         Defendants object to what they characterize as "criticism" of "CDCR for asking that the

6   Special Master's expert respond to their data remediation requests within a certain timeframe as

7   an attempt to obstruct the Special Master's monitoring," contending this suggestion lacks context.

8   ECF No. 8374 at 9.  Plaintiffs contend the objection is irrelevant and does not negate any of the

9   findings in the report.  ECF No. 8393 at 9.

10        This objection falls primarily into the second category above.  It arises from findings

11  included by the Special Master to support his assessment that defendants are "weaponiz[ing the

12  data remediation process] as a means to hinder the Special Master's access to needed

13  information" as part of an overall pattern of "resistance to the court-ordered duties of the Special

14  Master and his role as an 'arm of the court'. . . ."  ECF No. 8359 at 41.  The findings challenged

15  by defendants are reported at ECF No. 8359 at 42.

16        Defendants do not dispute these facts, nor do the additional facts they offer for "context"

17  alter the impact of these events on the Special Master's authority or his exercise of his

18  supervisory authority over the data remediation process.

19        The court overrules this objection.[6]

20              **6.      Thresholds for Determining Compliance**

21        Defendants object that the Special Master has applied "incorrect thresholds for

22  determining compliance" in seven areas.  ECF No. 8374 at 11-16.  Plaintiffs contend these

23  objections are without merit.  ECF No. 8393 at 11-16.  These objections fall generally into the

24  fourth category above.  The court addresses each in turn below.

_____

      [6] As noted, the Special Master has filed a status report on the data remediation process.
The court has directed the Special Master to restructure the data remediation process, as necessary
to ensure its prompt and efficient completion.

1
2                            a)        MHCB Initial Psychiatry Contacts

3          Defendants object to the Special Master's findings that "timely initial psychiatry contacts

4   for MHCB patients were compliant if they occurred before the initial IDTT and within 24 hours

5   of arrival," contending "that is not the appropriate standard for initial psychiatry contacts in the

6   MHCB." ECF No. 8374 at 11.[7]   Defendants cite to pages 137, 233, 260, and 449 of the 30D

7   Report to support their objection. *Id*.  The objection conflates Program Guide requirements for

8   initial mental health evaluations following admission to MHCBs with Program Guide

9   requirements for psychiatry contacts required "to address psychiatric medication issues" among

10  MHCB patients.  ECF No. 7333-1 at 85.

11         The Program Guide includes the following requirements relevant to this objection:

12         •   At the time an inmate is referred to an MHCB, the referring clinician is required to

13             complete a CDCR Form 7386, entitled "*Mental Health Evaluation.*"  ECF No.

14             7333-1 at 82 (italics in original).

15         •   "An admission note [must] be completed within 24 hours of admission to the

16             MHCB by the admitting clinician. . . ."  *Id*. at 81.

17         •   "Upon admission to the MHCB unit" the *Mental Health Evaluation* form must be

18             reviewed and updated "immediately" determining, "[a]t a minimum, a provisional

19             diagnosis"; "an initial plan in the 'Recommended Follow Up/Initial Treatment

20             Plan' section of the [*Mental Health Evaluation* form], shall be formulated within

21             24 hours for immediate care planning . . ."  ECF No. 7333-1 at 82 (italics in

22             original).

23         •   An initial IDTT meeting must be held within 72 hours.  *Id*. at 83.

24         •   "An inmate-patient's condition [must] be assessed and monitored daily by the

25             treating clinician, either a psychiatrist or psychologist."  *Id*. at 84.

_____

[7] Defendants rely in part on the parties in the data remediation process having reached an agreement to require initial MHCB psychiatry contacts within 72 hours.  ECF No. 8374 at 11. The Special Master declined to revise this section of his Draft Report because the parties reached the data remediation agreement after the end of his monitoring period.  ECF No. 8359 at 24-25.

- "The assigned psychiatrist shall evaluate each MHCB inmate-patient at least twice weekly to address psychiatric medication issues." *Id*. at 85.

Within the pages and page ranges referenced by the defendants, the Special Master reports on both the timeliness of the initial clinical evaluations that must be completed within 24 hours and in advance of initial IDTT meetings, and the timeliness of "routine psychiatry contacts." *See* ECF No. 8359 at 137, 233-34, 260, 449.  Defendants have not shown error in these findings.

The court overrules this objection.

   b)  Timeline Requirements for Routine Clinical Contacts in Short-term Restricted Housing Units (STRHUs)

Defendants object that the Special Master applied a seven-day timeline requirement in evaluating the timeliness of routine primary clinician contacts in the STRHUs, rather than the definition of "weekly" agreed to by all stakeholders in the data remediation process in their December 18, 2023 stipulation, ECF No. 8374 at 13; under the stipulation, "weekly" is defined "as occurring 'at least once per calendar week, but not to exceed ten days between contacts' for purposes of measuring clinical contact timeframes."  ECF No. 8359 at 24.  The Special Master acknowledged the stipulation in the 30D Report but did not change the content of the 30D Report because the agreement postdated the periods of review covered in the report.  *Id*.  This was not error.

The court overrules this objection.

   c)  Clinical Contacts Conducted in a Non-confidential Setting

Defendants object the 30D Report fails to make clear that clinical contacts reported as "non-confidential" due to "patient refusal" are nonetheless compliant with the Program Guide. ECF No. 8374 at 13.  As plaintiffs observe, the Special Master does not find these types of contacts non-compliant with the Program Guide.  ECF No. 8393 at 12.  Rather, the Special Master expressly excludes non-confidential contacts due to patient refusal from his findings concerning the "overall rate" of non-confidential clinical contacts set out in summary of his findings.  ECF No. 8359 at 66-67.

The court overrules this objection.

1          d)      Yard Time in STRHUs

2          Defendants next object to the Special Master's use of the term "yard" rather than

3    "exercise out of their cell" to report 100 percent compliance with the Program Guide requirement

4    that CCCMS inmates in STRHUs "'be offered 18.5 weeks of exercise out [sic] of their cell.'"

5    ECF No. 8374 at 13 (quoting ECF No. 7333-1 at 452).  As defendants note, the Special Master

6    reports 100 percent compliance with this requirement.  *See* ECF No. 8359 at 231.  Defendants'

7    objection frivolously elevates semantics over substance.

8          The court overrules this objection.

9
10         e)      Initial Interdisciplinary Treatment Team Meetings (IDTTs) in
11                 Reception Centers (RCs)

12         Defendants object to the Special Master's finding that "'[n]otably, RC patients [at North

13   Kern State Prison] were placed in RC 3CMS without an IDTT and generally transferred prior to a

14   required annual IDTT,'" contending the Program Guide "does not require initial IDTTs for RC

15   CCCMS patients," that the challenged sentence impermissibly implies otherwise, and that the

16   parties have agreed during data remediation to exclude RC CCCMS patients "from the initial

17   IDTT business rule."  ECF No. 8374 at 14 (quoting ECF No. 8359 at 443).  The Special Master

18   declined to modify the 30D Report in response to this objection because the data remediation

19   agreement was reached after the end of the monitoring period.  ECF No. 8359 at 24-25; *see also*

20   note 7 *supra*.

21         The finding to which defendants object is included in a discussion of class members at

22   North Kern State Prison's reception center who were placed in the CCCMS program at that

23   reception center after the reception process was complete.  *See* ECF No. 8359 at 437-443

24   (findings concerning reception center at NKSP).  The Program Guide requires the development of

25   "initial treatment plans" for all inmate-patients at Reception Centers "who are identified as

26   requiring mental health services."  ECF No. 7333-1 at 29.  These plans are developed by

27   psychologists or psychiatrists, and by psychiatrists when medication is required.  *Id*. at 27.

28   Reception center inmate-patients must be provided with "regular treatment" in accordance with

29   these plans.  *Id*. at 29.  The Program Guide requires initial IDTTs for inmate-patients arriving at

1    CCCMS programs to be held "no later than 14 working days of the arrival" to the program, *id*. at

2    641, and that reception center CCCMS inmate-patients be transferred to mainline CCCMS

3    programs within 90 days of referral to the CCCMS level of care, or 60 days "if clinically

4    indicated." *Id*. at 19.  Thereafter, IDTTs for CCCMS inmate-patients "are updated at least

5    annually. . . ." *Id*. at 44.

6          The sentence defendants challenge does not include any finding of non-compliance with

7    relevant Program Guide requirements and defendants neither contend nor present evidence that

8    the facts reported by the Special Master are incorrect.

9          The court overrules this objection.

10                    f)      Findings Concerning Confidentiality of CCCMS IDTTs

11         Defendants next object to findings that IDTTs observed at NKSP and WSP were "'not

12   confidential, as there was a camera in the rooms at NKSP and WSP and officers stood in the room

13   at WSP.'"  ECF No. 8374 at 15 (quoting ECF No. 8359 at 121).  Defendants acknowledge the

14   Program Guide defines a "'confidential setting'" as one that "'affords confidentiality of sight and

15   sound from other inmates and confidentiality of sound from staff members. . . ,'" *id*. at 14-15

16   (quoting ECF No. 7333-1 at 636), but they assert sound was not enabled on the cameras at either

17   prison and that the Program Guide authorizes correctional officers to attend IDTTS, *id*. at 15.

18   Plaintiffs respond, correctly, that defendants have presented no evidence to support their

19   assertions concerning the sound capabilities of the cameras.  ECF No. 8393 at 13.  Plaintiffs also

20   respond that defendants have omitted from their objections the Special Master's observations that

21   the correctional officers in question "walked in and out of the room during the meeting" and 'did

22   not contribute to the IDTT process and provided no information."  ECF No. 8359 at 26 (cited in

23   ECF No. 8393 at 14).  Defendants have not shown these findings are erroneous.

24         The court overrules this objection.

25   /////

26   /////

27   /////

1    g)    Failure to Note that Mainline CCCMS Group Treatment Exceeds
2          Program Guide Requirements.

3    Defendants have not shown that the statements they challenge concerning groups offered

4    to mainline CCCMS patients are factually incorrect.  Moreover, defendants' assertion that

5    provision of groups led by clinicians in CCCMS units goes "above and beyond what the Program

6    Guide requires," ECF No. 8374 at 16, is erroneous:  the Program Guide includes a requirement

7    that "group psychotherapy" be "provided as clinically indicated" in CCCMS units.  ECF No.

8    7333-1 at 36.

9    The court overrules this objection.

10          **7.    Staffing Data**

11    Finally, defendants object that some of the staffing information in the 30D Report does

12    not match data in the comparable monthly staffing report defendants have filed with the court.

13    ECF No. 8374 at 16-17.  The Special Master is not required to rely on any particular data source

14    in making his monitoring reports and defendants have not shown the data he chose to report is

15    incorrect.

16    In response to an inquiry from the court, the Special Master has provided a chart entitled

17    "WSP Facility Mental Health Staffing and Telemedicine:  July 1, 2023 to December 31, 2023,"

18    which defendants provided to the Special Master's monitor during the site visit to WSP.  A copy

19    of the chart is included as Attachment A to this order.  The chart adequately supports the Special

20    Master's reported finding.  Specifically, the Special Master's summary of the fill rate for

21    telepsychiatrist positions is consistent with the data in the chart  showing that WSP had five

22    telepsychiatrist positions available to it during the review period, and that four of those were

23    filled.  *See* ECF No. 8359 at 47-50; *see also* Attachment A.

24    This court overrules this objection.

25    /////

26    /////

27    /////

1    **III.     CONCLUSION**

2             In accordance with the above, IT IS HEREBY ORDERED that the Special Master's

3    August 16, 2024 Thirtieth Round Monitoring Report Part D, ECF No. 8359, is ADOPTED in full.

4    DATED:  October 29, 2024.

5

6
                                                            _____
                                                            UNITED STATES DISTRICT JUDGE