UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM SCR P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Defendants object to each of two resolutions to data remediation disputes proposed by the Special Master, ECF Nos. 8273, 8274. Plaintiffs have responded to defendants' objections. ECF Nos. 8286, 8287. In this order, the court resolves both sets of objections.[1]

## I.     LEGAL STANDARD

The court applies the same legal standard to resolution of both objections. The court adopts the Special Master's findings of fact unless those findings are "clearly erroneous." December 11, 1995 Order of Reference, ECF No. 640, at 8; *see also* ECF No. 7847 at 8-9. "A finding is 'clearly erroneous' when although there is evidence to support it, the

---

[1] In their objections, defendants request the court defer ruling on certain issues pending the court's resolution of their objections to the Special Master's suicide prevention expert's sixth re-audit report on CDCR's implementation of suicide prevention practices. *See, e.g.* ECF No. 8273 at 7-8. The court has now resolved the latter objections. *See generally* Reporter's Transcript of Proceedings, ECF No. 8433.

1

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (quoted in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

**II.   DISCUSSION**

   **A.   SP10/SP10E**

Defendants' objection raised in ECF No. 8273 is focused on Suicide Prevention indicators 10 and 10E, which measure "Observed Initial Health Screenings in a Confidential Setting." SP10 measures observed initial health screenings in outpatient settings and SP10E measures observed initial health screenings in the CDCR PIPs. *See* ECF No. 8286-1 at 6 & n.2. These indicators are intended to measure certain suicide prevention measures monitored by the Special Master's suicide prevention expert, Lindsay Hayes, specifically "1) the adequacy of the intake screening form and the completeness of nursing staff's conduct of the intake process, and 2) the adequacy of privacy and confidentiality during the process." ECF No. 8286-1 at 7 (quoting ECF No. 5259 at 9, adopted in full by Feb. 3, 2015 Order and Dec. 3, 2020 Order, ECF No. 6973). The Special Master's data expert marked Indicator SP10 fully remediated in April 2023. Decl. of Cartwright at 4, ECF No. 8273-1. Through a series of events not directly relevant to the court's determination here, it subsequently became clear to the stakeholders in the data remediation process that the SP10 indicator does not measure whether nursing staff ask all required questions during intake screening. The Special Master proposes the indicator be modified to align with Mr. Hayes' monitoring practice, which includes assessment of whether nurses ask all required questions during intake screening.

Defendants make several arguments in their objection to this proposal, none of which the court finds persuasive. The record makes clear that Mr. Hayes has for more than nine years audited whether nursing staff ask all required questions during intake screening. *See* ECF No. 5259 at 9 (initial audit), Feb. 3, 2015 Order, ECF No. 5271 (requiring defendants to adopt recommendations in initial audit); ECF No. 6973 (adopting in full findings of initial audit report); *see also* ECF No. 5396 at 6 (first re-audit), *adopted in full by* Apr. 5, 2016 order, ECF No. 5429;

1  ECF No. 5671-1 at 3-4 (second re-audit), *adopted in full by* Jan. 25, 2018 Order, ECF No. 5762[2];

2  ECF No. 5993-1 at 4-5 (third re-audit), *adopted in full by* July 3, 2019 Order, ECF No. 6212;

3  ECF No. 6879-1 at 7 (fourth re-audit), *adopted in full by* ECF No. 6973; ECF No. 7636-1 at 5, 12

4  (fifth re-audit), *adopted in full by* Jan. 6, 2023 Order, ECF No. 7696. The court previously

5  determined the key indicators proceeding through data remediation "must be designed and

6  operationalized to accurately capture the corresponding information gathered and reported on by

7  the Special Master as part of his monitoring responsibilities." May 24, 2023 Order at 7, ECF No.

8  7847.

9  In light of these aspects of the record, defendants' objection to the Special Master's

10  proposed resolution in this respect is without merit. The court overrules the objection. To the

11  extent defendants contend the dispute over SP10E is not yet ripe for resolution, *see* ECF No. 8273

12  at 8, going forward indicator SP10E shall be finalized in accordance with this order.

13  **B.    SP15.1/SP15.1E**

14  Defendants' objection raised in ECF No. 8274 is focused on Suicide Prevention indicators

15  15.1 and 15.1E, which measure "Out of Cell Activities – Yard" for mental health crisis bed

16  (MHCB) patients (SP15.1) and patients in the CDCR PIPs (SP15.1E). This indicator is intended

17  to measure a suicide prevention measure that Mr. Hayes monitors Mr. Hayes, namely whether

18  patients in MHCBs and PIPs are offered adequate out-of-cell time, also known as yard. *See, e.g.*,

19  ECF No. 8143-1 at 27-34. The Special Master's data expert marked Indicator SP 15.1 fully

20  remediated in June 2023. Decl. of Cartwright at 3, ECF No. 8274-1. In their current iteration,

21  both Indicator SP 15.1 and Indicator SP 15.1E measure whether patients in the MHCBs and PIPs,

22  respectively, are offered any yard time. The Special Master proposes these indicators "be

23  modified to report the number of hours of yard offered to each patient per week" and that the

24  indicators "be designed to accommodate a minimum threshold for weekly yard time offered to

25  patients in MHCBs and PIPs." ECF No. 8274 at 15-16. He recommends one of two options for

---

[2] ECF No. 5671-1 was originally docketed as ECF No. 5672. All references in the court's January 25, 2018 order to ECF No. 5672 are to the re-audit report now docketed at ECF No. 5671-1.

3

the minimum threshold requirement: that "the indicator's language" be modified to measure (1) "whether patients were offered clinically-approved yard on a weekly basis 'consistent with custody designation'" or (2) "whether patients were offered clinically-approved yard at a minimum of ten hours per week." *Id*. at 16.

Defendants make several arguments in their objection to this proposal. The court resolves the objection by conducting two inquiries: (1) whether the remedy in this action requires defendants to offer a minimum amount of out-of-cell time to class members in MHCBs and PIPs and, if so, what the minimum requirement is; and (2) how whatever minimum threshold that is required should be written into the documentation for the indicators. For MHCBs, the answer to these questions is in the Program Guide, the primary remedial plan for the delivery of constitutionally adequate mental health care to the plaintiff class. *See*, *e.g.*, Sept. 3, 2020 Order at 4, ECF No. 6846. On February 7, 2022, the court approved the 2021 Program Guide Update, ECF No. 7333-1, which is the currently operative version. Feb. 7, 2022 Order, ECF No. 7456; *see also* May 20, 2024 Order (defendants not required to notify court of administrative updates to Program Guide, but Program Guide may not be substantively or materially altered without court approval). For PIPs, the answers are in defendants' March 28, 2023 Plan to Provide Minimum Treatment Standards for CDCR's PIPs, ECF No. 7787. That plan, as modified by the court's August 23, 2023 order is also part of the remedy in this action. *See generally* Aug. 23, 2023 Order, ECF No. 7924. The court considers each question in turn below.

    **1.    Do remedial plans in this action require defendants to offer a minimum amount of out-of-cell time to inmate-patients in MHCBs (Indicator SP15.1) and the CDCR PIPs (Indicator SP15.1E)?**

    **a.   MHCBs**

Prior to 2016, the Program Guide did not address the question of out-of-cell time for MHCB patients. *See* ECF No. 5259 at 33, *adopted in full by* Feb. 3, 2015 Order, ECF No. 5271, *as amended by* Dec. 3, 2020 Order, ECF No. 6973. In the face of increasingly extended stays in MCHBs, in the February 3, 2015 order the court directed defendants to "examine and consider taking reasonable corrective actions" to address this issue. ECF No. 5271, *adopting recommendations in* ECF No. 5258 (Special Master's recommendation to adopt suicide

4

prevention measures recommended by Mr. Hayes in initial audit of suicide prevention practices in CDCR, ECF No. 5259). In response to this order, on June 23, 2016, defendants issued a memorandum on MHCB privileges; this memorandum was "slightly revised" by CDCR's later February 14, 2017 memorandum also covering MHCB privileges. ECF No. 8274 at 17. The February 14, 2017 memorandum is included in the 2021 Program Guide Update, ECF No. 7333-1 at 379, and it updates page 12-5-11 of the Program Guide, which describes assessment and treatment services required in MHCBs, *see id*. at 82, 233, 247. As modified by the February 14, 2017 memorandum, the Program Guide provides in relevant part that patients in MHCBs "shall attend out-of-cell activities consistent with their custody designation unless specifically restricted by the MHCB IDTT" and that "all MHCB units shall provide" those out-of-cell activities. *Id*. at 379. Mr. Hayes measures compliance with this requirement in terms of whether defendants offer the required out-of-cell activities rather than by actual attendance. *See* ECF No. 8274 at 17.

Defendants contend the Special Master's proposal to have the SP15.1 indicator include a minimum threshold would improperly impose a new minimum requirement for out-of-cell time for MHCB inmates that does not otherwise exist. *Id*. at 10. But in his proposal, the Special Master explains that

> Custody designation means Maximum, Close A, Close B, Medium, and Minimum custody. . . Unless restrictions exist, a mainline incarcerated person would normally be offered yard every day for several hours. On the other extreme, maximum custody IPs are required (pursuant to Title 15) to be offered a minimum of ten hours per week out of cell time.

ECF No. 8274 at 17 n.5. In an attempt to demonstrate this explanation is clearly erroneous, defendants contend that "an incarcerated person's custody designation may affect what times of day they can be out of cell due to count times and the level of custody supervision required; there is no custody designation that alone requires a certain amount of out-of-cell time." *Id*. at 10 (citing Title 15, section 3377.1). The court is not persuaded.

Section 3377.1 of Title 15 establishes six custody levels: Maximum Custody, Close Custody, Medium A Custody, Medium B Custody, Minimum A Custody, and Minimum B Custody. 15 C.C.R. § 3377.1(a). Maximum custody inmates "shall be" housed in restricted

5

housing units (RHUs) "as described in sections 3335 through 3335.3." 15 C.C.R. § 3377.1(a)(1). Inmates housed in RHUs, including class members at the Enhanced Outpatient (EOP) and Correctional Clinical Case Management System (CCCMS) levels of care, must

> be offered a minimum of 20 hours of out of cell time per week, unless security and safety considerations preclude such activity. Exercise periods shall be offered a minimum of three (3) days per week for a total of not less than ten (10) hours a week. The remaining ten (10) hours may be comprised of a combination of additional exercise periods, individual or group programs, and rehabilitation programs.

15 C.C.R. § 3348(i). Defendants are correct that § 3377.1 does not otherwise specify required minimum amounts of out-of-cell time. However, that alone does not mean the Special Master's finding, that mainline inmates are "normally offered yard every day for several hours per day," is clearly erroneous. Section 3377.1 authorizes all custody levels of inmates to "participate in program assignments and activities" and although the section does not specify a minimum amount of participation that must be offered at each level of custody the language of the regulation gives rise to a clear inference that supports the Special Master's finding. Defendants have not shown otherwise.

The Program Guide requires a minimum threshold of out-of-cell time for MHCB inmates; while the requirement is quantified with respect to patient's custody designation, rather than a minimum hourly requirement, it is nonetheless a requirement.

### b. PIPS

Defendants' plan for minimum treatment standards in the PIPs requires defendants to offer each patient "a minimum of 10 hours of unstructured programming per week." ECF No. 7787 at 6-7. For the reasons explained in this court's August 16, 2024 order, ECF No. 8351, that part of defendants' plan was unaffected by the court's August 23, 2023 order.

### c. Conclusion

In accordance with the above, the answer to the first question is that defendants must offer patients in MHCBs and PIPs minimum amounts of out-of-cell time. It is undisputed that at present neither Indicator SP15.1 nor Indicator SP15.1E measures the amount of yard time defendants offer to patients in either MHCBs or PIPs. The Special Master's determination that

the indicators are incomplete and must be rewritten to report on the amount of yard time offered to MHCB and PIP patients is not clearly erroneous.

### 2. What minimum threshold requirements should be written into Indicators SP15.1 (MHCBs) and SP15.1E (PIPs)?

The Special Master also proposes these indicators be "designed to accommodate a minimum threshold for yard time" to be offered inmates in the MHCBs and the PIPs.

#### a. MHCBs

For Indicator SP15.1, he proposes the minimum threshold either track the Program Guide requirement that MHCB patients be offered out-of-cell time commensurate with their custody classification or that the minimum threshold be set at ten hours. Defendants contend the Special Master's proposal to have the indicator include a minimum threshold would improperly impose a new minimum requirement for out-of-cell time for MHCB patients that does not otherwise exist. *Id*. at 10. But as discussed above, the Program Guide requires a minimum threshold of out-of-cell time for MHCB inmates; while the requirement is quantified with respect to patient's custody designation, rather than a minimum hourly requirement, it is nonetheless a requirement.

As plaintiffs recognize, the Special Master's proposal to set the minimum threshold at ten hours is "the most conservative" standard that could apply in assessing this remedial requirement. ECF No. 8287 at 10. As discussed above, the Special Master's finding that inmates not in RHUs are generally offered out-of-cell time every day for several hours is not clearly erroneous and is a reasonable inference from applicable regulations. The RHU regulations require maximum custody inmates be provided a minimum of twenty hours of out of cell time, including ten hours of exercise and ten hours of other programming. For the reasons explained above, the clear inference is that inmates classified other than maximum custody generally receive more out of cell time than that. Thus, the ten hour minimum standard for MHCB inmates proposed by the Special Master is "conservative" when measured against the Program Guide requirements.

Defendants, however, contend the proposed ten-hour standard would be a "new" requirement, and they object to such an alleged change to substantive requirements through the data remediation process. *See* ECF No. 8274 at, *e.g.*, 2. The Special Master recommends the ten-

7

1  hour threshold as "most consistent with Mr. Hayes' recent monitoring" and "more straightforward
2  to operationalize." *Id*. at 16.  Nonetheless, given defendants' objection and the Special Master's
3  presentation of alternative proposals, the court at this point will require that Indicator SP15.1 be
4  written to include reporting on whether MHCB patients are offered out-of-cell time consistent
5  with their custody designation, rather than the ten hour minimum alternatively proposed by the
6  Special Master.  At the same time, given the Special Master's observation that "more
7  straightforward" operationalization of this requirement is achieved with a ten hour minimum
8  threshold and that the parties may be able to reach agreement on this issue, the court will entertain
9  a stipulation of the parties, if they can reach a stipulation, to modify the minimum out-of-cell time
10 requirement for MHCB patients to ten hours.  Otherwise, the SP15.1 indicator must be designed
11 to track the remedial requirement that MHCB patients be offered out-of-cell time consistent with
12 their custody designation unless otherwise clinically indicated.

### b.  PIPS

14 Defendants contend the court should defer ruling on this objection until it has resolved a
15 motion for clarification filed by plaintiffs, ECF No. 8207, and the United States Court of Appeals
16 has resolved defendants' appeal from the court's August 23, 2023 order, ECF No. 7924.  Both are
17 now resolved.  *See* Aug. 16, 2024 Order, ECF No. 8358 (granting plaintiffs' motion to clarify);
18 *see also* Aug. 30, 2024 Memorandum, ECF No. 8385 (Ninth Circuit resolution of appeal), *and*
19 ECF No.  8407 (formal mandate).  The SP15.1E indicator must be designed so that it tracks the
20 remedial requirement of defendants' March 28, 2023 plan that PIP inmates be offered a minimum
21 of ten hours of yard per week.

### 3.  Conclusion

23 For the foregoing reasons, defendants' June 12, 2024 objection, ECF No. 8274 is
24 overruled.
25 /////
26 /////
27 /////

### III. CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' June 12, 2024 Objection, ECF No. 8273, is overruled.
2. Defendants' June 12, 2024 Objection, ECF No. 8274, is overruled.

IT IS SO ORDERED.

DATED: November 4, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE