```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
 2                             --oOo--

 3    RALPH COLEMAN, ET AL.,        ) Docket No. 90-CV-520
                                    ) Sacramento, California
 4                   Plaintiffs,    ) September 30, 2024
                                    ) 3:34 p.m.
 5              v.                  )
                                    )
 6    GAVIN NEWSOM, ET AL.,         ) Re: Motion hearing
                                    )
 7                   Defendants.    )

 8
                         TRANSCRIPT OF PROCEEDINGS
 9          BEFORE THE HONORABLE KIMBERLY J. MUELLER
               UNITED STATES SENIOR DISTRICT JUDGE
10
      APPEARANCES:
11
      For the Plaintiffs:    ROSEN BIEN GALVAN & GRUNFELD LLP by
12                           MR. MICHAEL BIEN
                             MS. JENNY SNAY YELIN
13                           101 Mission Street
                             Sixth Floor
14                           San Francisco, CA 94105

15          (Appearances continued on next page.)

16

17

18

19

20    Reported by:         JENNIFER COULTHARD, RMR, CRR
                           501 I Street, Suite 4-200
21                         Sacramento, California 95814
                           Jennifer_Coulthard@Yahoo.com
22                         (530)537-9312

23    Proceedings reported via mechanical steno - transcript produced
      via computer-aided transcription
24

25
```

```
 1   For the Defendants:
                     OFFICE OF THE ATTORNEY GENERAL by
 2                   MS. ELISE OWENS THORN
                     MR. CHRISTIAN MICHAEL GEORGELY
 3                   1300 I Street, Suite 125
                     Sacramento, CA 94244
 4
                     HANSON BRIDGETT, LLP by
 5                   MR. PAUL MELLO
                     MS. SAMANTHA DERIN WOLFF
 6                   425 Market Street, 26th Floor
                     San Francisco, CA 94105
 7                     --and--

 8                   MR. DAMON GRANT McCLAIN
                     455 Golden Gate Avenue, Suite 1100
 9                   San Francisco, CA 94102

10
     Also Present:   SPECIAL MASTER LOPES
11                   LINDSAY HAYES (suicide prevention expert)
                     SECRETARY JEFF MACOMBER
12                   UNDERSECRETARY DIANA TOCHE

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS

1                    SACRAMENTO, CALIFORNIA

2    Monday - September 30, 2024                    3:34 p.m.

3                    P R O C E E D I N G S

4                         --oOo--

5        (In open court:)

6            THE CLERK:  Calling civil Case Number 90-0520, Coleman

7    versus Newsom, et al., on for in-court hearing regarding

8    objections to Special Master's Expert's Sixth Re-audit Report

9    and status of appointment of a receiver.

10           THE COURT:  All right.  Good afternoon.

11           Appearances, please, for plaintiffs.

12           MR. BIEN:  Good afternoon, Your Honor; Michael Bien

13   and Jenny Yelin for plaintiffs.

14           THE COURT:  Good afternoon to each of you.

15           For the defendants?

16           MR. MELLO:  Good afternoon, Your Honor; Paul Mello,

17   Samantha Wolff, Damon McClain and Christian Georgely for

18   defendants.

19           THE COURT:  All right.  Good afternoon to all of you.

20           And I believe you have principals present?

21           MR. MELLO:  Also present are Secretaries Macomber from

22   CDCR and Undersecretary Toche from CDCR.

23           THE COURT:  All right.  Good afternoon to each of

24   them.

25           The Special Master is present.  Special Master

PROCEEDINGS

1  Lopes --

2          SPECIAL MASTER LOPES:  Yes, Your Honor.

3          THE COURT:  -- you have at least one member of your

4  team present, correct?

5          SPECIAL MASTER LOPES:  Yes, Your Honor.

6          THE COURT:  If you could identify that person.

7          SPECIAL MASTER LOPES:  Yes.  Our suicide prevention

8  expert, Lindsay Hayes, is with us today.

9          THE COURT:  All right.  Good afternoon to each of you.

10          And the Court's law clerk also is present.

11          Just a couple of matters first, before we get to

12  objections.  The primary purpose of this afternoon's session is

13  for the Court to rule on the pending objections with respect to

14  suicide prevention.

15          First, a complete housekeeping matter.  It's the time

16  of year when we take a look at motions and cases pending and,

17  as a result, I've identified a defense motion for redaction of

18  a second whistleblower report by Dr. Golding filed back in

19  February of 2023, and so I just wanted to ask if that is still

20  on anyone's mind.  I apologize for not addressing it sooner.

21  Is that motion moot, do you know, Mr. Mello?

22          MR. MELLO:  I'm sorry.  I have a vague recollection.

23  I don't -- I don't know the status of that or what our position

24  is.  I apologize.

25          THE COURT:  All right.  I believe plaintiff also made

PROCEEDINGS

1    requests in connection with that matter.  Does that ring a bell

2    for you, Mr. Bien or Ms. Yelin?

3        MR. BIEN:  No, Your Honor.  We can check our records

4    and get back to you.

5        THE COURT:  All right.  I'm inclined to think it's

6    mooted due to the passage of time and the fact that no one else

7    remembers.  I'm thinking I might be right about that, but just

8    let me know.

9        Let me know by the end of day Wednesday if that is

10   still pending.  And if you have a joint position on that, you

11   can let me know in a very simple filing.

12       All right.  And then I also added to the calendar the

13   status of appointment of a receiver and I wanted to just give

14   you a brief report on discussions I had with the technical

15   adviser already reflected in the one invoice his office

16   submitted, but then I also wanted to ask if you have any

17   further input at this point before the Court moves forward?

18       So first I wanted to make certain you know the

19   documents I provided to the technical adviser.  This goes back

20   several weeks, at least a month, I think, four or five weeks.

21   Consistent with my obligations to you I have provided the

22   technical adviser with an electronic folder of 15 documents.

23   One set of documents provided background regarding Coleman.  It

24   included the Court's September 3rd, 2020, order at ECF Number

25   6846 and the Court's June 25th, 2024, contempt order at

1    ECF 8291, particularly pointing the adviser to pages 1 through

2    29.

3            Secondly, documents related to establishment of a

4    receivership, the Court's OSC at ECF Number 8330 and the

5    parties' joint response at ECF Number 8347, a third set of

6    documents regarding the relationship between Coleman and *Plata*;

7    the Court's November 19th, 2019, order at ECF 6396; its

8    December 17th, 2019 order at ECF 6427, especially pages 34 and

9    43 to 44; the May 8th, 2020 order, ECF 6661, especially pages 7

10   through 10; and a cover memo and minutes related to the May

11   2024 coordination meeting; also a set of documents comprising

12   organizational charts, CCHCS and CDCR organizational charts

13   filed by defendants at ECF Number 8369; an organizational chart

14   for the special mastership provided by the Special Master and a

15   state-wide amendment program management overview provided by

16   the Special Master; and then finally, a set of four documents

17   regarding the current status of Coleman and *Plata*, EOP

18   conclusions at ECF Number 8095, PIP conclusions at ECF Number

19   7833, DSH conclusions at ECF 8085 and the receiver's 56th

20   Tri-annual Report at ECF Number 8255.

21           For the court reporter I do have a typed version of

22   that, if it would help you to consult it.

23           So before -- before receiving very recently the *Plata*

24   receiver's email via the Special Master, I did review with the

25   technical advisers the parties' joint response to my OSC.  That

PROCEEDINGS

1    joint response, again, is 8347 and the gist of my discussions

2    with that -- with the technical adviser were what are the

3    considerations for me in determining whether or not to consider

4    the *Plata* receiver as a receiver here; are there any

5    organizational issues I should be thinking about, anything that

6    should prevent the Court's even considering that?  Bottom line

7    no, nothing prevents my considering that and remaining open to

8    that possibility.

9         The technical adviser's basic message to the Court was

10   the remedy is established.  What a receiver in Coleman would

11   need to accomplish is established, and that's the key.

12        The technical adviser affirmed the Court's instinct

13   that it didn't make sense to first appoint a receiver and then

14   ask for a plan, and so that -- I took that into account as I

15   moved forward, not appointing the *Plata* receiver in the first

16   instance, as had been suggested.  In retrospect, it appears

17   that probably made some sense.

18        So then I asked the Special Master to communicate with

19   the receiver.  I've otherwise told you the status of those

20   discussions and that they occurred.  The *Plata* receiver

21   expressed interest in and a desire for further communications

22   culminating in his email to the Special Master conveyed to the

23   Court last week wherein the *Plata* receiver declines

24   consideration as a receiver in this case.

25        The *Plata* receiver has identified the potential for

PROCEEDINGS

 1  improved coordination.  That potential has always been there.

 2  There have been times of good coordination, times where

 3  coordination hasn't been maximized, but I have blessed whatever

 4  coordination will move this case forward, and the Special

 5  Master knows that.

 6          So the Court does plan to move forward with

 7  appointment of a receiver.  The question or the direction is if

 8  the parties have further suggestions they wish the Court to

 9  consider, I would ask that they file those by the end of this

10  week.  And if there is anything you want me to hear now about

11  the master, I'm happy to listen briefly.  Mr. Bien, anything to

12  say?

13          MR. BIEN:  We appreciate that the Court is going to

14  continue in the receivership, as we think it should.  We think

15  it's the way the case should go at this time.

16          And I guess we'd like to hear more about what process

17  you'd like to take and we'll cooperate, of course, as best we

18  can.

19          THE COURT:  All right.  Mr. Mello?

20          MR. MELLO:  I think defendants would like to know the

21  process that the Court is contemplating as well.

22          I do want it to be clear to the Court that defendant's

23  position has not changed, as articulated in the joint response

24  to the OSC that if Mr. Kelso were not appointed and accepted

25  the appointment as *Plata* receiver, defendant's position has not

PROCEEDINGS

1   changed that they believe that an evidentiary hearing should be

2   appropriate but, of course, I'm just restating our position.

3   The Court probably knew that and --

4           THE COURT:  I assumed that.

5           MR. MELLO:  -- I think would be -- I apologize.  I

6   didn't mean to speak over you, but we would like to know what

7   process you're contemplating, of course, Your Honor, but our

8   position has not changed.  Thank you.

9           THE COURT:  Well, let me ask is there any need to give

10  you until the end of the week to file any further suggestions

11  because, if not, I'm not going to take further time today.  But

12  if there's no request for time to provide further suggestions,

13  then I can plan as soon as possible to give you some further

14  thoughts on the next steps I would take without further input

15  from the parties.

16          Mr. Bien?

17          MR. BIEN:  I would like to suggest perhaps that we

18  have more than just this week and that we explore with

19  defendants whether or not there are some candidates they would

20  consider.  And I just think it's a little tight to get back to

21  you by Friday.  We hadn't really been thinking about this

22  possibility and haven't really had a chance to engage.

23          THE COURT:  All right.  Well, let me ask Mr. Mello.  I

24  did hear what you said.  Is there any possibility the

25  defendants might change their position as to only one person

PROCEEDINGS

1    being appropriate as the receiver in Coleman?

2            MR. MELLO:  So again, that's what our papers said.  I

3    agree with Mr. Bien that it might make sense for defendants and

4    plaintiffs to talk, but our position remains the same.

5            I don't have authority, in realtime, to change

6    defendant's position, but I do think that communicating with

7    plaintiff's counsel makes sense on this issue.  So again, I

8    can't change my client's position, but I -- we've been

9    communicating well and I would hate to not have a conversation

10   with counsel.

11           THE COURT:  All right.  Two weeks enough?

12           MR. BIEN:  I think that would be -- we can do it with

13   that.

14           THE COURT:  I'm not that patient, but I'll give you

15   two weeks --

16           MR. BIEN:  Okay.

17           THE COURT:  -- because time is of the essence.  I

18   mean, the three obvious categories of options here:  Identify a

19   certain person and see if that person would accept

20   appointment -- familiarity with this case would be ideal;

21           Second option, identify a set of persons based on

22   criteria qualifications that could be broached and asked.  I

23   don't quite know how I would make that happen, but a set of

24   people -- I'm certain there's an obvious set that comes to

25   mind;

PROCEEDINGS

1      Third, open process.  While I have always wanted as

2  open a process as possible, I recognize that the full open

3  hiring process would take time and might identify someone with

4  no familiarity with the case even if that person otherwise has

5  the skill-set that is required here.  So, I mean, that's --

6  that's the extent of what I've thought about so far.

7      MR. MELLO:  And if I may --

8      THE COURT:  If you do -- if you do come forward with

9  prospective names so we don't have the same kind of delay

10  associated with the Court's willingness to entertain Mr. Kelso,

11  if you can tell me whether or not you've talked to the person,

12  is the person available if the Court feels comfortable with

13  that person, that would be helpful.

14      Mr. Bien?

15      MR. BIEN:  I was about to ask that question because I

16  didn't want to overstep, but that would be more efficient if we

17  can at least check if the person would be considered.

18      THE COURT:  I don't have any objection to that.  You

19  can't make any promises.

20      MR. BIEN:  Right.

21      THE COURT:  Even if there's a stipulation doesn't mean

22  I'm going to accept it because, ultimately, I have to feel

23  comfortable -- it's not just about me; it's about the

24  institution of the Court and the Coleman case -- and to think

25  about a range of considerations, but I don't think I object to

PROCEEDINGS

1   your -- I guess I assumed some folks would talk to Mr. Kelso.

2   Maybe I'm incorrect about that.

3        Mr. Mello, you wanted to say something?

4        MR. MELLO:  Yeah.  I was just going to say that we

5   appreciate the time and, for efficiency purposes, if my

6   client's position has not changed after we communicate with

7   Mr. Bien, we'll let you know, so if it's less than two weeks,

8   we'll get back to you sooner.  I just -- again, I don't have

9   the authority to change positions, but I appreciate the

10  opportunity to communicate with counsel.

11       THE COURT:  Understood.  All right.  So two weeks from

12  now, 5:00 p.m. -- no later than -- just let me know your

13  thoughts on that.

14       And the Court has not -- the Court does plan to

15  appoint a receiver, and that affects the way I'm going to frame

16  the rulings on the objections.  In fact, it's obvious -- some

17  of what I'm going to say assumes the appointment of a receiver.

18       Just as background as a way to think big picture about

19  what's going on with suicide, I did -- I've taken a look at the

20  current stats going back to 2019.  I just reviewed the numbers.

21  For this year through the end of last week, as I understand it,

22  there are 18 completed suicides, and so the issue continues to

23  be one of great concern to the Court.

24       What I'm going to do is first rule from the bench on

25  general objections and then I'm going to work through specific

1    objections.  There's some overlap.  But in some cases the need

2    to make fine-grained rulings on objections is mooted by the

3    bottom line of the Court's de novo review, assuming without

4    deciding I've engaged in de novo review, assuming without

5    deciding that that's the standard required here.

6          And I'm -- you know, for better or worse I'm going to

7    do most of the speaking.  I may have a few questions along the

8    way, but really I'm just trying to get these resolved as

9    efficiently as possible creating the Court's record, so the

10   transcript will serve as the ruling on the objections unless I

11   defer a ruling.

12         So just looking at the general objections, this is the

13   first part of the defendant's filing at 8179 and the

14   plaintiff's responses.  These are all directed to the Sixth

15   Re-audit Report filed with the Court on March the 21st, 2024,

16   which concluded that 14 of the 15 recommendations still

17   outstanding were not fully implemented.  Just generally, in

18   terms of defendant's objections that they were prejudiced by

19   the Court's order directing that the Special Master file the

20   report directly with the Court, I'm not persuaded and that

21   objection is overruled.

22         I have, as consistent with de novo review, reviewed

23   Dr. Williams' declaration and the attachment.  I just can't

24   find, based on anything before the Court, that the defendants

25   were chilled from presenting evidence of compliance during the

PROCEEDINGS

1    period April 1st, 2023, and March 1st, 2024.

2           Mr. Hayes presented his top-line findings to

3    institution staff and regional coordinators following his

4    completion of site visits, and the defendants should have been

5    prepared to demonstrate to Mr. Hayes at the time of his site

6    visits and before he filed his report that they had implemented

7    the required measures.  So the Court's directive was part of

8    its attempt to manage this case, to get to the substance.

9           The objections, in many respects, don't grapple with

10   the substance; although, in some cases they do.  I still think

11   the Court's moving forward based on the procedural history

12   leading to its consideration of this report is warranted by the

13   longstanding need for defendants to come into compliance.

14          Moving to the second and third general objections,

15   those objections that the monitoring, the Special Master's

16   monitoring conflates compliance with implementation and the

17   compliance standards are unduly strict.  These objections

18   simply reiterate objections the Court previously has overruled.

19   The defendants acknowledge as much.  They're creating a record

20   so as to avoid waiver or forfeiture.

21          They clearly, if the Court thinks about the merits,

22   are an improper attempt to relitigate prior court orders,

23   specifically the Court's December 3rd, 2020, and January 6th,

24   2023, orders.  Defendants appear to seek reconsideration of

25   those orders.  In any event, those objections are overruled.

PROCEEDINGS

1          In terms of the next objection, defendants object that

2    Mr. Hayes has not provided a correlation between perfect -- as

3    they say -- perfect implementation of his recommendations in

4    self-harm events, completed suicides or an increase in suicide

5    risk.

6          This is another example of the defendant's attempting

7    to relitigate an issue that's been resolved over at least a

8    decade of court orders, including the Court's December 3rd,

9    2020, order.  That objection is overruled.

10          The defendants also object that Mr. Hayes' analysis is

11    based on faulty methodology and unverifiable evidence pointing

12    to a number of different findings.  The parties go back and

13    forth on those objections.  The objection, in particular, that

14    Mr. Hayes' observations are not based on verifiable evidence is

15    frivolous.

16          Mr. Hayes reports his observations arose from

17    continuing discussion with both mental health and custody

18    leadership at most facilities regarding critical staffing

19    shortages.  This is the staffing issue and those observations

20    are, in fact, echoed in defendant's own reports from 8

21    completed inmate suicides in 2023, all of which include

22    references to the impacts of critical staffing shortages.

23          The objection to Mr. Hayes' comparison of CDCR 2023

24    suicide rate with a nationwide rate is also meritless.

25          Mr. Hayes explains not only that national data after

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

1   2019 is not yet available but that also caution should be

2   exercised when viewing comparative suicide rate data.  That

3   objection is overruled.

4        Defendants object that the suicide prevention measures

5   are vague and overbroad, focusing on certain measures; for

6   example, Measure Number 32.  Here's another example of an

7   objection which comes nine years after the Court without

8   objection ordered defendants to adopt the measures and 4 years

9   after the Court approved the compliance standards that guide

10   Mr. Hayes' assessment.

11        Mr. Hayes has filed seven reports with the Court on

12   status of implementation.  For the first time now to raise this

13   objection is an improper attempt to relitigate.  This objection

14   is overruled.  Those are the broad general objections even if

15   they do reference specific measures, suicide prevention

16   measures.  And then whether or not they are framed as general

17   objections or specific objections, the bulk of the remaining

18   objections do address specific measures and also Table 3, so

19   I'm going to work through those starting with Measure Number 3

20   to which I believe there's only a specific recommendation.

21        Here defendants make a number of objections and,

22   again, I'm looking at document 8179 at pages 81 through 83.

23   Here the objection that the Court should require Mr. Hayes to

24   amend his report with tables clearly identifying which

25   institutions were noncompliant and why, that objection is

PROCEEDINGS

1  overruled.

2          That's a hypertechnical objection.  The Court's

3  de novo review took about 30 minutes, and it's just a "make

4  work" objection.

5          In terms of some inconsistency between the body of the

6  report and the appendices, objection sustained.  There are some

7  inconsistencies.

8          And then with respect to evidence of suicide

9  prevention training for calendar year 2023, defendants have

10 provided some data but have not provided comprehensive data for

11 2023.  Agreed, Mr. Mello?

12         MR. MELLO:  If that's what we said in our report, our

13 response to the report, then yes.

14         THE COURT:  That's plaintiff's position, correct,

15 Mr. Bien or Ms. Yelin?

16         MR. BIEN:  Yes.

17         THE COURT:  Yeah.

18         So even if -- let's just put aside -- there are a

19 number of cases where defendants say Mr. Hayes should have

20 looked at data that it appears was not available to him at the

21 time it was optimal for him to corporate it and consider it in

22 the preparation of his report.  I'm not going to get into the

23 weeds on that, but let's just say, for sake of argument, that I

24 accept defendant's evidence now before the Court and assume

25 that no other institutions slipped.  I believe, conducting a

1  de novo review, the compliance rate is still at only about 76

2  percent.  So that's making critical assumptions and looking at

3  the complete record before the Court.  My inclination here is

4  to defer a final ruling and direct the defendants to file a

5  complete report on suicide prevention trainings for 2023

6  summarized by institution and discipline so that can I fully

7  assess the state of suicide prevention.

8          And so my question would be -- I assume that data's

9  all available now -- could that be filed -- what's earliest

10  that could be filed, Mr. Mello?

11          MR. MELLO:  Three weeks?

12          THE COURT:  All right.  Any reason not to accept that,

13  Mr. Bien?

14          MR. BIEN:  No, Your Honor.

15          THE COURT:  All right.  Then defendants are so

16  ordered.

17          Moving on to Measure 7 where there are both general

18  and specific objections, the gist of the objections is that

19  requiring nurses to ask all 15 questions on the mental health

20  suicide risk form is not part of Measure 7.  Essentially, the

21  defendants argue that that metric is a constantly evolving

22  standard.

23          Measure 7 was included in Mr. Hayes' initial audit of

24  initial intake screenings in the environment in which those

25  intake screenings are conducted.  That's going back to 2015, an

1    order the Court issued in 2015, ECF Number 2259 at 9 and also

2    looking at ECF 6973.

3         Mr. Hayes specifically reported that he had audited

4    two areas of intake screening, the adequacy of the intake

5    screening form and the completeness of nursing staff's conduct

6    of the intake process and the adequacy of privacy and

7    confidentiality during the process.

8         Each re-audit report since then has specified the

9    focus of the original measure and subsequent re-audits have

10   included an assessment of whether nursing staff ask all intake

11   screening questions during screening.  Those re-audit reports

12   are all on the docket.

13        I'd note I think the objection may be untimely, but

14   I'm not -- I'm not holding that against defendants in this

15   instance.  I'm going to the merits.

16        Essentially, the defendants here object because the

17   prospect of contempt proceedings forces them to raise the

18   objection to show the Court's orders are not sufficiently

19   clear, specific and definite, but, for quite some time now, the

20   defendants have acknowledged that they understand precisely

21   what is required and that proper completion of intake screening

22   forms is required to show full compliance with Measure 7.  So

23   this is an example of an objection that is much belatedly

24   seeking to relitigate a well-established principle in this

25   case.  To the extent there's a general objection tied to

PROCEEDINGS

1    Measure 7, it is overruled.

2              With regard to the specific objection, even assuming

3    those objections are sustained, based on de novo review,

4    defendant's evidence is insufficient to show compliance with

5    Measure 7.

6              I do understand that there's currently a data

7    remediation dispute that may address this measure, and so I

8    anticipate issuing a short order soon.

9              Do the parties have anything to say about findings

10   based on a limited number of screenings?  I see the defendant's

11   evidence as also based on a sample size, and so I'm not -- I'm

12   not understanding why the defendants would object based on

13   sampling as a method here.

14             Anything to say about that, Mr. Mello?

15             MR. MELLO:  So I think our briefing touched on this

16   issue.  I think it's the size of the sample and the sequence of

17   the information that was provided and I may have this

18   recommendation -- I may be conflating it with other ones where

19   the information we gathered was subsequent to Mr. Hayes'

20   tours -- so it's newer information -- and then the size of the

21   sample size.  But other than those general comments, Your

22   Honor, I don't have anything further than was in our briefing.

23             THE COURT:  Mr. Bien, on this do the plaintiffs have a

24   view as to whether or not the data report will be based on a

25   certain size of sample, on observations, on review of the

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

PROCEEDINGS

1  screening forms in the EHRS system?

2        MR. BIEN:  I'm sorry.  I don't -- I don't have the

3  details of the data process in mind.

4        THE COURT:  All right.  All right.  Well, in any

5  event, I will be issuing an order providing clarification on

6  data remediation, but at this point the record does not show

7  compliance, even assuming defendant's objections are sustained.

8        Turning to Measure 8, here again, there are both

9  general and specific objections.  Defendant's objection to

10  Mr. Hayes' findings regarding this recommendation collapse his

11  findings into his findings about Measure 7 and so distort and

12  mischaracterize Mr. Hayes' actual findings.

13        Defendants do object to Mr. Hayes' recommendation that

14  CDCR should develop caps for the eight facilities referenced

15  above related to the intake screening process.  They say that

16  recommendation is overbroad.  But reviewing the record and

17  Mr. Hayes' recommendations in the context of the entire record,

18  Mr. Hayes recommends development of specific caps focused on

19  the issues identified in the paragraphs preceding his

20  recommendations regarding Measure 8.  So the general

21  objection's, to the extent they apply to Measure 8, are

22  overruled.

23        In terms of specific objections, defendants contend

24  Mr. Hayes is not properly focused on nurse and officer safety.

25  With respect to defendant's new evidence, the 2023 evidence, do

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312

1    the plaintiffs accept that evidence, Mr. Bien, if you know?  If

2    Ms. Yelin is the one to speak, that's fine.

3        MR. BIEN:  Yeah.  No.  I think that our point that we

4    made was that even if you accept their evidence, there's still

5    noncompliance at several institutions.

6        THE COURT:  Do you agree here it does look as if

7    defendants are pretty close to compliance?

8        MR. BIEN:  Yeah.  This is one where they --

9        THE COURT:  I think they could be -- if High Desert is

10   included, they're at about 86 percent if not at 90 percent, so

11   close but -- but not right there.

12       Does that sound right Mr. Bien, Ms. Yelin?

13       MR. BIEN:  I think so.

14       THE COURT:  Here's what -- I think the record needs to

15   be more clear, and so my plan here -- unless someone talks me

16   out of it -- is to direct the defendants to submit declarations

17   within 30 days for CIW, CIM and SBSP stating either -- I think

18   this is the right direction -- either that TTMs are installed

19   or max custody inmates are in handcuffs with an officer

20   outside, the, nurse with a personal alarm.  Would that give me

21   the information to know if, in fact, the defendants are in

22   compliance here, Mr. Bien?

23       MR. BIEN:  Yes, Your Honor.

24       THE COURT:  Mr. Mello, any reason not to direct you to

25   file those declarations within 30 days?

PROCEEDINGS

1        MR. MELLO:  I don't have anything more from our

2   briefing, so no, Your Honor, on this issue.

3        THE COURT:  All right.

4        Just so it's clear, that direction doesn't address

5   something else the defendants say.  In their objections they

6   say, "The presence of custody officers doesn't compromise

7   privacy or confidentiality because CDCR officers are bound by

8   HIPAA and generally present at treatment team meetings."  I

9   don't see that plaintiffs have responded to that.  Do

10  plaintiffs accept that characterization?

11       MR. BIEN:  No, Your Honor.  I think for suicide

12  screening, there should be confidentiality and -- with a

13  clinician, so I think that a custody officer could be nearby

14  and on -- you know, on call, but they should not be present so

15  that there can be an open communication.  And a team meeting is

16  a different kind of --

17       THE COURT:  Right.

18       I am not accepting defendant's characterization with

19  respect to the presence of custody officers not compromising

20  privacy or confidentiality.  And is that a specific part of

21  that objection I need to especially rule on, Mr. Mello?

22       MR. MELLO:  Again, I feel like that kid in class in

23  the pop quiz.  I don't have anything further --

24       THE COURT:  Well ...

25       MR. MELLO:  -- Your Honor, from the briefing on this

1    issue.  If we raised it, I think that the Court should have to

2    address our objections, so I think you would have to rule on

3    it.

4             THE COURT:  All right.  Well, then to the extent

5    that's a freestanding objection, I'm overruling it.  And I've

6    done so having looked at the program guide, looking at

7    ECF 7333-1 at 42.  I mean, it does call for custody officers

8    who have direct knowledge of the inmate patient to attend or

9    provide the information at IDTT meetings, but it also goes on

10   and provides detailed provisions regarding confidentiality,

11   7333-1 at 15.  And the intake screenings at issue here are when

12   an inmate first arrives at CDCR or an institution and privacy

13   and confidentiality at that stage should be completely

14   protected and respected because, by definition, in this context

15   the officer would not have knowledge of the inmate and the

16   focus is on the environment for screening and the nurse must

17   obtain accurate information without any breach of

18   confidentiality.  So I think the direction I've given to

19   defendants makes clear the way the Court is reading that, the

20   requirement as applicable here, and the objection we've just

21   discussed is overruled.

22            Measure 9, general and specific objections.  In some

23   respects, this can be considered together with objections 10,

24   17 and 31.  I believe objection -- the objection to Measure 20

25   is effectively moot.  I'll get into that in a bit.

PROCEEDINGS

1          So here the defendants object that Mr. Hayes has

2    substituted -- the Special Master and Mr. Hayes have

3    substituted new requirements and upon de novo review the Court

4    finds that Mr. Hayes' monitoring of Measure 9 tracks the

5    requirements of the Court's December 3rd, 2020, order and used

6    the compliance benchmark the Court has previously established.

7    And again, that's referencing ECF Number 6973 at page 7 in

8    particular, so that objection is overruled.

9          Looking at the record overall, even assuming

10   defendants' objections are sustained, the defendant's evidence

11   is insufficient to show compliance with Measure 9.  Again,

12   accepting, for purposes of ruling on objections, defendant's

13   2023 evidence they're at 57 percent compliance, so noncompliant

14   on Measure 9 regardless.

15         Measure 10.  Here Mr. Hayes' decision to assess

16   compliance with Measure 10 by conducting his own review of the

17   matters CDCR -- the matters that CDCR supervising entities are

18   required to review is entirely appropriate.  And based on the

19   de novo review of the record, the Court's de novo review, his

20   findings support a clear inference that super fits are not yet

21   properly auditing completion of suicide risk evaluations to the

22   degree required by the Court.

23         I don't see that the defendants have offered any

24   specific evidence of compliance with Measure 10, so stand on

25   the objections.

1          In terms of the criticism Mr. Hayes included in his

2    report of RJD for using the Columbia Suicide Severity Rating

3    Scale, the defendants object that that criticism is misplaced,

4    but Mr. Hayes doesn't report that the form used at RJD was just

5    to document no change in suicide risk.  So I think, rather, the

6    objection is misplaced.  That objection is overruled.

7          Measure 12 to which defendants have lodged only

8    specific objections based on super fit coordinator visits in

9    2023 to six of seven institutions, there's specific objections

10   about AASC door tags.  This is an instance, I believe, of

11   Mr. Hayes not receiving in what he would consider a timely way

12   the information he needed to fully take account of what the

13   defendants thought is the relevant information because it does

14   appear that super fit coordinator visits happened before the

15   audit.  I understand -- I don't know if it's this category of

16   documents in particular, but I understand that some documents

17   were not loaded into SharePoint until Mr. Hayes specifically

18   requested that they be loaded, and then he only had access to

19   them at a later time than he needed to properly conduct his

20   audit.  I'm not -- I'm not going to get into the weeds on that.

21   I think there's a pattern there that could be fixed going

22   forward.

23          Bottom line based on a de novo review, it looks like

24   placement in intake cells is moving in the right direction.  If

25   the Court takes account of all of the evidence the defendants

1    have presented in connection with their objections, it looks as

2    if they're at 85 percent.  The Court's not saying that that's

3    full compliance, but it looks promising, and so it could be

4    that we're moving to the point where the focus would be on

5    durability, but that's really an aside.

6         Would you agree, Mr. Bien, Ms. Yelin, that defendants

7    are close here, accepting the 2023 data they've provided?

8         MR. BIEN:  Yes.  It seems like RJD stands out a little

9    bit, but certainly it's an improvement over prior reports

10   substantially.

11        THE COURT:  That seems fair.  All right.  So even

12   assuming I sustain all the objections, there's not complete

13   compliance, but it looks promising.

14        I'm going to circle back and do a global review of

15   what all this means with respect to contempt in the context of

16   the Court's plan to appoint a receiver.

17        Just to deal with some of the granular details of this

18   objection, to the extent the defendants are saying door tags

19   are not part of the requirement, for example, at CSP LAC, that

20   objection is overruled.  Defendant's own super fit coordinator

21   reported that absence of tags on one site visit to SBSP made it

22   very difficult to assess when placement started and was due to

23   end.  So with that clarification, I've resolved what I plan to

24   today with respect to Measure 12.

25        Measure 13, specific objections as well.  This measure

PROCEEDINGS

1    focuses on ensuring inmates are newly admitted -- ensuring

2    inmates newly admitted to administrative segregation units now

3    RSUs are moved out of suicide resistant cells after 72 hours,

4    providing them for new intakes.

5            Here as well it looks like defendants are moving

6    towards compliance crediting what the defendants are saying in

7    the context of their objections, they're 80 percent compliant.

8    Agreed, Mr. Bien?

9            MR. BIEN:  Yes, Your Honor.

10           THE COURT:  Measure 17, both general and specific

11   objections.  With respect to the general objections as with

12   measure 9 the Court finds that Mr. Hayes' monitoring of Measure

13   17 tracks the requirements of the Court's December 3rd, 2020,

14   order, and it's not entertaining attempts to relitigate that

15   order.  Specifically with respect to 17, and as Mr. Hayes has

16   previously explained, for example, in his Fifth Re-audit

17   Report, the planning covered by Measure 17 is required by the

18   program guide and has been regularly audited.

19           To the extent that the defendants say that this

20   measure is redundant, it's frivolous and the objection is

21   overruled; moreover, even if the Court accepts all the

22   information the defendants now provide, they are not in

23   compliance with Measure 17.

24           Measure 18, specific objections.  The measure provides

25   for a specific timetable for training all mental health

PROCEEDINGS

1    clinicians on treatment planning, using a PowerPoint

2    presentation.  Here even if I accept all of the information

3    defendants provide in connection with their objections, they

4    are not in compliance at three institutions.  This is another

5    indication -- this another instance in which it's not clear

6    that Mr. Hayes had the super fit report that defendants rely on

7    in their objections even though it appears he should have.

8    They're still below 90 percent compliance but close.  I believe

9    the number is 86 percent if I accept all of the defendant's

10   current information.

11            Agree with that, Mr. Bien?

12            MR. BIEN:  Yeah.  I think three institutions were

13   still outstanding if you accept all of their data -- their

14   representations.

15            THE COURT:  Is this a case where there's a gap in the

16   record and a declaration would show full compliance?  This is

17   training with a PowerPoint.

18            Mr. Mello, any view on that?

19            MR. MELLO:  I think --

20            THE COURT:  I mean, are you conceding that even

21   with -- are you providing me with everything there is to

22   consider here and so there's still three institutions not in

23   compliance?

24            MR. MELLO:  Again, I think we provided everything that

25   was available at the time that we briefed the issue.  I'm not

1   sure if there's more current information about those three

2   institutions, Your Honor.

3           THE COURT: All right. Well, I'm going to put that in

4   the moving in the right direction. Maybe some day soon

5   durability will become the issue as long as there's no

6   slippage.

7           All right. Measure 20. Here Mr. Hayes has found

8   compliance -- has found compliance, so -- but the defendants

9   still object, right? You're objecting to the fact that he made

10  findings about SATF saying they don't match the region 3 super

11  fit coordinator's audit findings but he's found you in

12  compliance on this. So are you standing on that objection,

13  Mr. Mello?

14          MR. MELLO: I think defendant's position was that if

15  there were audits that were subsequent and where we provided

16  information that was subsequent that the -- that that

17  information should be considered by the Court. Of course we

18  like to be found in compliance, so if the Court is going to say

19  that we are in compliance with 20, we are not going to object

20  to that finding.

21          THE COURT: All right. Well, I don't think there's

22  any reason not to find defendants in compliance with measure

23  20, but I think the objection, if I understand it correctly, is

24  to the form of auditing. Instead of -- to the extent that's

25  what defendants are saying, that objection is overruled. And

1    even if the defendants are right that super fit coordinators

2    found compliance at SATF it doesn't automatically show that

3    Mr. Hayes' findings were incorrect.  And here, just to note

4    with respect to durability, there's a key indicator on the list

5    of provisionally approved indicators designed to measure

6    whether psych tech rounds are completed according to program

7    guide requirements, and so there's a mechanism in place to

8    demonstrate, hopefully, ongoing compliance or at least a level

9    of compliance.

10        Anything else to say about that Mr. Bien, Number 20?

11        MR. BIEN:  I don't, Your Honor.

12        THE COURT:  All right.  Moving to 21 where there are

13    specific objections.  This is regarding levels of observation

14    for those at suicide risk.  The defendants object the

15    compliance rate is to high fundamentally, but that compliance

16    threshold was established four years ago.  Defendants appealed

17    the order and dismissed the appeal.  This is not the right

18    forum for an objection.  It's overruled.

19        Measure 28, there's also a specific objection.  I do

20    have a question about -- if defendants can answer it -- about

21    the way they've presented the evidence, but bottom line, if the

22    Court accepts defendant's representations as summarized in

23    their brief, and assuming the information speaks to completion

24    of page 2 of the form, it appears defendants have shown

25    compliance at Mule Creek SATF and Kern Valley.  That's looking

PROCEEDINGS

1  at ECF 8179 at 74 to 78.  Two other institutions High Desert

2  and Corcoran have achieved at least 90 percent compliance on a

3  couple of audits but fell below on one audit each otherwise.

4  Even if the Court accepts all of the defendant's evidence as to

5  all five institutions, they are in 60 percent compliance, so

6  not in compliance.

7          Agree with that, Mr. Mello?

8          MR. MELLO:  If that's what our evidence demonstrated.

9  I think our position was that they've taken corrective action

10  and that compliance was improving, but I don't have anything

11  further specific for you on this one, Your Honor.

12          THE COURT:  Can you answer my question about the form

13  here?  I'm not certain I can tell from the way you've presented

14  it.  Defendant's evidence -- it looks as if defendants reviewed

15  the 7497 packet as a whole rather than just page 2.  Is that --

16  do I have that right?

17          MR. MELLO:  Quite honestly, Your Honor, I don't recall

18  at the moment how we were doing it.

19          THE COURT:  All right.  Well, regardless, even if I

20  sustain all the objections, noncompliant, anything to say on

21  this Mr. Bien?

22          MR. BIEN:  That's correct, Your Honor.

23          THE COURT:  Measure 29 where there are specific

24  objections -- and this is -- the objections are focused on Page

25  1 of that 7497 form and defendants say they have reports

1  showing subsequent compliance, so here, again, even if I accept

2  all of defendant's evidence, including for Corcoran, where

3  compliance fell below 90 percent in one month, the overall

4  compliance is at 55 percent, and so noncompliance on 29 based

5  on a de novo review and giving defendants the benefit of the

6  doubt.  Anything to say about that, Mr. Mello?

7          MR. MELLO:  Nothing further, Your Honor.

8          THE COURT:  Mr. Bien?

9          MR. BIEN:  No, Your Honor.

10         THE COURT:  Measure 31, there are both general and

11  specific objections.  So regarding 31, the Court ordered

12  defendants on January 25th of 2018 to provide the Special

13  Master a local super fit policy revised in accordance with

14  Mr. Hayes' critique and the requirements of the program guide

15  so that the policy could be fully implemented before Mr. Hayes

16  began his third re-audit.  And that January 25th, 2018 order is

17  at ECF Number 5762.  I'm quoting from page 4.

18         The revised policy is set out in the February 2nd,

19  2018, memo, included in appendix C to the program guide, and

20  that's ECF 77333-1 at 611, and the revised policy speaks for

21  itself.  Those policy requirements track the metrics Mr. Hayes

22  has audited as required by the Court's 2018 order, January 2018

23  order.  And so the objection here is an attempt to relitigate a

24  matter that's been established.  The general objection is

25  overruled.

PROCEEDINGS

1          Looking at the specific objections, there are -- there

2    are some discrepancies between Mr. Hayes' report, what the

3    Court can discern from a de novo review of the record and

4    plaintiff's own review, and so my plan is to ask Mr. Hayes to

5    review six months of local super fit meeting minutes for all

6    institutions and submit an updated report to the court so I can

7    get to the bottom of what's going on here.  Any reason not to

8    do that, Mr. Bien?

9          MR. BIEN:  No, Your Honor.

10         THE COURT:  Anything else to say about 31?

11         MR. BIEN:  No.  I think the re-audit is --

12         THE COURT:  All right.

13         MR. BIEN:  -- is appropriate.

14         THE COURT:  Mr. Mello?

15         MR. MELLO:  Nothing further to say.

16         THE COURT:  All right.  So that's how the Court's

17   resolving the specific objection for now, deferring it.

18         Special Master Lopes, do you have an estimate of how

19   long it would take Mr. Hayes to provide an updated report?

20         SPECIAL MASTER LOPES:  It would be six weeks if the

21   data is given to the expert promptly.

22         THE COURT: All right.  Can the defendants provide all

23   of the local super fit meeting minutes for all institutions by

24   the end of this week, Mr. Mello?

25         MR. MELLO:  Yes.

PROCEEDINGS

1          THE COURT:  All right.  So that's the order.

2          Is there anything else Mr. Hayes would need?  Is it

3   just local super fit meeting minutes for all institutions, six

4   months?

5          SPECIAL MASTER LOPES:  Mr. Hayes would need the local

6   policies as well addressed within the report, Your Honor.

7          THE COURT:  All right.  So local policies plus meeting

8   minutes.

9          We'll memorialize any bench order in the minutes, but

10  is that still realistic, policies plus minutes by the end of

11  the week?

12         MR. MELLO:  Can we have until the end of next week?

13         THE COURT:  All right.  So two weeks meaning a week

14  from this coming Friday.

15         MR. MELLO:  And of course if they're available

16  earlier, we will provide them earlier.

17         THE COURT:  All right.  And then -- so eight weeks

18  from now for Mr. Hayes to complete that updated report.

19         Measure 32 there are specific objections, and here

20  this measure is focused on the CDCR examining and considering,

21  taking reasonable corrective actions to address miscellaneous

22  issues, three issues.  Plaintiff is not seeking contempt at

23  this point on the continuous quality improvement.  I'm

24  sustaining the objection as to that aspect of this measure; but

25  it leaves possessions and privileges in MHCBs and reception

1  centers and so those two prongs of this measure are what I'm

2  addressing now.  That said, I am prepared to refer the CQIP

3  issues back to the special master for a supplemental report.

4          And Special Master Lopes do you have an estimate on a

5  reasonable period of time for that supplemental report?

6          SPECIAL MASTER LOPES:  Same period, Your Honor.

7          THE COURT:  Okay.  Let's just say eight weeks.  Thank

8  you.

9          So on those other two prongs of Measure 32, even if

10  the Court accepts all of the defendant's evidence provided with

11  the objections, defendants are not in compliance.

12          Is there an outstanding dispute here that I need to

13  resolve about a 10-hour timeframe, Mr. Bien?

14          MR. BIEN:  I'm not sure if it's been briefed, yeah,

15  but I think there is a dispute that's coming up through the

16  data remediation process --

17          THE COURT:  Ah.

18          MR. BIEN:  -- and it also came up here as to what is

19  exactly required.

20          THE COURT:  All right.  All right.  Anything else to

21  say about that, the 10 hours?  I understood -- I'm not finding

22  my exact notes here, but I understood there was a dispute.

23          Can I just wait for anything to come out of data

24  remediation to resolve it, Mr. Mello?

25          MR. MELLO:  So I think our position was that the

1    10-hour for the first time showed up in the sixth re-audit with

2    respect to inmate CB individuals.  I think that's our position

3    and they didn't have notice of that change, of the change in

4    the methodology and auditing until later, but maybe it makes

5    sense for this to just be looked at.  So our position was that

6    the 10-hour was a new requirement for which they didn't have

7    notice until they received that Sixth Re-audit Report.  That

8    was our position, but I think it is also tied up in data

9    remediation, Your Honor.

10        THE COURT:  All right.  Let me -- we're going to take

11   a break to give you all a break from my droning on here and

12   I'll double check to see where I know my notes here are on the

13   10 hours.  So we'll come back to that after the break, but

14   finally on Table 3, the defendants do lodge a general objection

15   to Table 3.  I think plaintiffs have it right that the table is

16   not a finding of fact that the Court needs to review and

17   there's nothing to suggest that its contents are clearly

18   erroneous.

19        The Court views Table 3 as part of Mr. Hayes'

20   consistent effort to do the job the Court requires of him.  And

21   I do think it illustrates a rise in emergent or urgent mental

22   health referrals.  Anyway, it's a useful tool.  So the

23   objection to the table is overruled.

24        I believe that addresses all the objections.  To the

25   extent I haven't called out a specific objection, it's because

PROCEEDINGS

1    I have credited the defendant's evidence and ultimately have

2    found, even with that evidence considered, the defendants, for

3    the most part, are not in compliance.

4           Again, I'll do a review of all the measures that are

5    still before the Court and talk about the implications when I

6    come back.  Is there anything else you want to say before we

7    take a 15-minute break, Mr. Bien?

8           MR. BIEN:  No, Your Honor.

9           THE COURT:  Mr. Mello?

10          MR. MELLO:  No, Your Honor.

11          THE COURT:  All right.  15-minute break.  During that

12   break if you can consider do you think I've missed an objection

13   that's important for me to rule on?  I have -- I've looked at

14   everything before the Court.  I've addressed what I believe I

15   need to.  I understand defendant's position that I need to rule

16   on these objections.  I believe I have done so in full, but if

17   you think I missed one, please let me know when I come back.

18   All right.  Fifteen minutes.

19          (Recess at 4:46 to 5:04 p.m.)

20          THE COURT:  All right.  We're back on the record.  To

21   follow up on that 10 hours, I found my notes and I understand

22   the defendants -- there is a dispute about this 10-hour metric.

23   Mr. Hayes says he's used it in prior reports.  It didn't show

24   up the first time in the Sixth Re-audit Report, but bottom line

25   the de novo review with respect to the last measure we

PROCEEDINGS

1    discussed, 32, on the two prongs, defendants are not in

2    compliance.  I do think there's a data remediation dispute

3    coming to me, and so I will address that.

4              Mr. Hayes did just advise the Court that we've

5    received notice that over the weekend there was another suicide

6    at Kern Valley, so there's now 19 for this year.

7              So just to review and wrap up where we are with

8    respect to the remaining measures that the Court is addressing

9    in these proceedings, Measure 3 I'm deferring final ruling on

10   objections subject to receiving a report from defendants in

11   three weeks' time.

12             Measure 7:  Defendants are not in compliance after the

13   Court's ruling on objections.

14             Measure 8:  The defendants are in compliance, assuming

15   the Court credits the defendant's evidence, and so the focus

16   there moves to durability.

17             Measure 9:  After the Court's ruling on objections,

18   defendant's not in compliance.

19             Measure 10:  After the Court's ruling on objections,

20   defendant's not in compliance.

21             Measure 12:  As the Court noted, the defendants are

22   close and while the Court is not adjusting the rate needed to

23   achieve full compliance, it appears that -- the Court would

24   not, if it reached the question, for example, find the

25   defendants in contempt when they are so close.  And so I --

PROCEEDINGS

1   hopefully full compliance is shown next time and then it

2   becomes a question of durability.

3           Number 13:  The same thing.  Not fully compliant but

4   close.  The Court would not find contempt if it ultimately

5   reaches the question of contempt.

6           Measure 17:  Defendants are not in compliance.

7           Measure 18:  Defendants are close enough the Court

8   would not find contempt if it reached ultimately a finding of

9   contempt.

10          Measure 20:  Defendants are compliant.

11          Measure 21:  Defendants are not compliant after the

12  Court's ruling on objections.

13          Measure 28:  Not compliant after ruling on the

14  objections.

15          Measure 29:  Not compliant.

16          Measure 31:  I'm deferring an ultimate ruling on

17  objections.  The defendants will provide to Mr. Hayes within

18  two weeks -- a Friday within two weeks minutes and policies as

19  requested.  Mr. Hayes will provide an update to the Court

20  within 8 weeks.

21          Measure 32 narrowed to not include continuous quality

22  improvement.  Defendants not in compliance.

23          And I am awaiting a report from the Special Master on

24  the schedule he provided.  Eight weeks.

25          Table 3 I addressed.  It is it's not material to full

PROCEEDINGS

1  compliance.

2          So at this point eight measures -- I'm wrapping up

3  still eight measures the defendants are not in compliance.

4          The Court at this time is not planning to move forward

5  with contempt proceedings.  This assumes that the appointment

6  of a receiver proceeds apace.  If there are delays in

7  appointment of a receiver, then I will revisit the question of

8  setting this set of measures for contempt proceedings and by

9  then I'll also have further information and will have ruled on

10  objections with respect to Measures 3 and 31.

11          So I will -- I'll closely monitor appointment of

12  receiver proceedings and decide what to do ultimately once I

13  have a complete record on the remaining measures.

14          Here are my -- here are my two questions for the

15  defendants:  One is how do you plan to make certain that the

16  field knows the practical impact of my ruling on objections

17  when I've clarified certain things; for example, with ASU door

18  tags, with confidentiality.

19          I assume you'll get a copy of the transcript -- that

20  seems to be standard practice -- within a short period of time

21  here.  I'd like to have you report back to me confirming that

22  you have conveyed what the Court's rulings on the objections

23  mean so that those in the field understand what it means for

24  their conduct.  So do you have a suggestion as to how to do

25  that?

PROCEEDINGS

1       MR. MELLO:  I would -- I would frankly like to talk to

2   my clients and figure out the best way and talk to Dr. Williams

3   and my clients and talk about the best way to let leadership as

4   well as the field know these and then maybe come back to the

5   Court and say this is our proposal or -- but I would have to

6   check with them what's the best way to accomplish this.

7       And when the moment is right, I do have one clarifying

8   question about the information we're providing to Mr. Hayes.

9       THE COURT:  All right.

10      MR. MELLO:  Is now okay?

11      THE COURT:  That's fine.

12      MR. MELLO:  Okay.  So the clarifying question is, we

13  are supposed to provide -- I think the court said -- all super

14  fit minutes.  Just for workload, I understand that Mr. Hayes

15  did not go to all institutions, so is it the local super fit

16  minutes for those institutions that he monitored or all

17  institutions?  We're hoping it's for those that he monitored in

18  the sixth round, and I may have it wrong.

19      THE COURT:  I'm pretty certain I said "all."  Let me

20  ask Mr. Hayes.  Does he have a modification of that direction?

21      MR. HAYES:  Your Honor, I think Mr. Mello is

22  reasonable that I would only be requesting those super fit

23  minutes from the 21 facilities that I audited in 2023.

24      THE COURT:  All right.  So that would be sufficient

25  from your purposes?

PROCEEDINGS

1          MR. HAYES:  Yes.

2          THE COURT:  I accept Mr. Hayes' professional

3    evaluation of that and so, therefore, modified to those 21

4    facilities.

5          MR. MELLO:  Thank you.

6          THE COURT:  All right.

7          Anything so say about how the defendants can

8    demonstrate to the Court relaying the implication of its rules

9    on the objections to the field, Mr. Bien?

10          MR. BIEN:  No.  I think that the method that Mr. Mello

11    suggested, which is that they'll come up with a plan, including

12    a memo, which would be, I assume, clarifying the instructions

13    for particular processes that became credited and developed

14    defendants that they were confused about that we can clarify

15    those disputes and perhaps have a session with Mr. Hayes and

16    the Special Master and make sure we all get it right before it

17    goes out to the field.

18          THE COURT:  All right.  Are the defendants hoping to

19    meet and conferring with plaintiffs and proposing, within a

20    reasonable period of time, a joint report to the Court

21    identifying areas of agreement and any disagreements as to a

22    communication to the field?

23          MR. MELLO:  That sounds reasonable.  I would note I

24    understand there's a suicide summit in the next month.  That

25    would also be a place where the field could be notified.  But

PROCEEDINGS

1    we're glad to digest the transcript and the order that this

2    Court issues and then have those conversations.

3                THE COURT:  What's the date of the Summit?

4                MR. MELLO:  I don't know.  I think --

5                MR. BIEN:  Jenny thought it was next week, but --

6                THE COURT:  Oh.

7                MR. MELLO:  Oh.  Sooner than I thought, Your Honor.

8                THE COURT:  Well, if there's a way to headline that

9    something is coming, that might be good.

10                Why don't we say -- what's the earliest you can get me

11    something after meeting and conferring, so moving quickly but

12    carefully to make certain the message is clear?  What do you

13    think the period of time is to get me something?

14                MR. MELLO:  Again, I have to meet with my clients, but

15    I assume that we can probably check in with counsel late this

16    week or early next week.

17                MR. BIEN:  We may need a transcript before that, and

18    so that becomes a delay factor.

19                MR. MELLO:  Oh.  That's a good point.

20                THE COURT:  Well, let me say -- I would encourage to

21    you meet and confer if there's a way to take advantage of the

22    summit and get some message out there.

23                MR. MELLO:  Correct.

24                THE COURT:  But let's say no later than four weeks

25    from now you'll provide a joint report on the best way for

PROCEEDINGS

1    defendants to clarify their understanding of the Court's

2    rulings and their proposed method for relaying the implications

3    to the field.

4                MR. MELLO:  Okay.

5                THE COURT:  And if any ruling needs to be clarified,

6    you can seek that clarification.

7                Then finally, at one point the defendants offered to

8    accelerate regional super fit audits and hold them quarterly.

9    I don't think that's currently a requirement, but it was an

10   offer.  The Court has had repeated conversations with the

11   defendants.  I know prior it was a particular interest of

12   Secretary Allison, so I do know there was that suggestion.  I

13   understand that those recent audits are occurring now at most

14   two to three times per facility, but in the joint report can

15   you provide an update?  Are defendants able to move forward on

16   that suggestion, that very good suggestion that the audits

17   occur quarterly to keep the focus on.

18               MR. MELLO:  Understood.

19               THE COURT:  All right.  I think that's all we need to

20   cover today.  Anything else, Mr. Bien?

21               MR. BIEN:  No, Your Honor.

22               THE COURT:  Mr. Mello?

23               MR. MELLO:  No, Your Honor.

24               THE COURT:  All right.  Thank you all very much.

25           (Concluded at 3:16 p.m.)

1

2                          C E R T I F I C A T E

3

4        I certify that the foregoing is a true and correct

5    transcript of the record of proceedings in the above-entitled

6    matter.

7
                                              November 19, 2024
8    JENNIFER L. COULTHARD, RMR, CRR                DATE
     Official Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JENNIFER COULTHARD - U.S. DISTRICT COURT STENOGRAPHER - (530)537-9312