**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

RALPH COLEMAN, et al.,
    **Plaintiffs**

    **vs.**                                **No. 2:90-CV-0520 KJM-SCR**

GAVIN NEWSOM, et al.,
    **Defendants**

---

**SPECIAL MASTER'S REPORT ON HIS SUICIDE PREVENTION EXPERT'S
SUPPLEMENTAL REPORT REGARDING MEASURES 31 AND 32 IN RESPONSE TO
THE COURT'S SEPTEMBER 30, 2024 DIRECTIVE (ECF NO. 8414)**

On March 1, 2024, the Special Master filed his suicide prevention expert's, Mr. Lindsay Hayes [hereinafter referred to as either "the Special Master's suicide prevention expert" or "Mr. Hayes"], Sixth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Re-Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs [hereinafter Sixth Re-Audit Report]. *See* ECF Nos. 8143 (Special Master's Report) and 8143-1 (Suicide Prevention Expert's Sixth Re-Audit Report). The Sixth Re-Audit Report included Mr. Hayes' findings as to the remaining 15 suicide prevention measures yet to be fully implemented at the conclusion of his prior re-audit round. *See* ECF No. 8143 at 6-7. In the Sixth Re-Audit Report, Mr. Hayes found defendants had fully implemented one additional measure (Measure 20), leaving 14 suicide prevention measures to be implemented. *Id.* at 8.

1

Defendants filed objections to the Sixth Re-Audit Report on April 1, 2024.  ECF No. 8192.  Thereafter, the parties extensively briefed the issues presented by defendants' objections.[1]

On September 30, 2024, the Court convened a hearing and ruled from the bench on both defendants' general and specific objections to the Sixth Re-Audit Report.  *See* September 9, 2024 Minute Order, ECF No. 8390; *see also* September 30, 2024 Transcript of Proceedings, ECF No. 8433.  At hearing, the Court ruled that one measure (Measure 20) had been fully implemented, ECF No. 8433 at 40, consistent with the Special Master's suicide prevention expert's Sixth Re-Audit Report findings.  *See* ECF No. 8143-1 at 8.  Further, the Court found defendants had not yet fully implemented ten measures (Nos. 7, 9, 10, 12, 13, 17, 18, 21, 28, and 29).  ECF No. 8433 at 39-40.

Finally, with respect to four suicide prevention measures, the Court directed defendants to file supplemental reports regarding Measures 3 and 8 and the Special Master's suicide prevention expert to file a supplemental report regarding Measures 31 and 32.  *See* ECF No. 8433 at 20-22, 39-40; *see also* ECF No. 8414.  Specifically, with respect to Measure 31, the Court deferred ruling on defendants' objections and directed Mr. Hayes to file a supplemental report based on his review of an additional "six months of local SPRFIT meeting minutes for the 21 facilities Mr. Hayes audited in 2023."  ECF No. 8414.  Regarding Measure 32, the Court sustained defendants' objections to Mr. Hayes' findings as to one of its three subcomponents, Continuous Quality Improvement, and directed Mr. Hayes to file a supplemental report.  *See id.*; *see also* ECF No. 8433 at 35.

---

[1] *See* ECF Nos. 8198, 8241, 8282 (plaintiffs' briefs); ECF Nos. 8208, 8249, 8307 (defendants' responses to plaintiffs' briefs).

The Special Master's suicide prevention expert's supplemental report regarding Measures 31 and 32 required by the Court's September 30, 2024 ruling is attached hereto as Appendix A.

Measure 31

Measure 31 relates to local Suicide Prevention and Response Focused Improvement Teams (SPRFITs), specifically:  1) the degree to which SPRFITs achieved six consecutive months of meeting quorums for all mandatory members or their designees; 2) the degree to which each SPRFIT conducted either semi-annual root cause analyses (RCAs) or clinical case summaries of serious suicide attempts when appropriate; 3) the degree to which each SPRFIT tracked patients in the Suicide Risk Management Program (SRMP) and reviewed them during monthly meetings as required by policy; 4) the degree to which facilities had suicide prevention local operating procedures (LOPs) for SPRFIT, Inmate-Patients Receiving Bad News, SRMP, and Crisis Intervention Team (CIT); and 5) the degree to which each SPRFIT tracked prior corrective actions recommended by regional SPRFIT coordinators and/or this reviewer.  *See* ECF No. 8143-1 at 52; *see also* ECF No. 6879-1 at 31; ECF No. 7636-1 at 47-48.[2]

Based on his supplemental review, the Special Master's suicide prevention expert found 14 of 21, or 67 percent, of reviewed institutions compliant with Measure 31.  Appendix A at 11.

Measure 32

Measure 32 has three subparts,[3] only one of which (Continuous Quality Improvement (CQI)) is subject to Mr. Hayes' attached supplemental report.  The CQI component of Measure

---

[2] In addition, the Special Master's suicide prevention expert "also examined whether the three (3) reception center (RC) facilities adequately collected data and assessed compliance with various RC expectations and reported such findings during monthly SPRFIT meetings as required by policy."  *See* ECF No. 8143-1 at 52.

[3] Recommendation 32 has the following three subparts: 1) Possessions and Privileges for MHCB patients, 2) Continuous Quality Improvement, and 3) Reception Centers.  *See, e.g.*, ECF No. 8143-1 at 8-9.

32 requires that CDCR: (1) incorporate all of the Special Master's suicide prevention expert's 19 "Suicide Prevention Audit Checklist" measures into any CQI Guidebook; and (2) any CQI audit report of an individual facility's suicide prevention practices should be formatted to contain data on all 19 suicide prevention measures.  ECF No. 6879 at 24.

Based on his supplemental review, Mr. Hayes' found defendants' not in compliance with the CQI component of Measure 32, because while "regional SPRFIT coordinator reports were generally thorough and each coordinator monitored most, but not all" of the 19 suicide prevention measures, the regional SPRFIT audit reports "did not consistently 'contain data on all 19 suicide prevention measures.'"  Appendix A at 21.

Conclusion

The Special Master has reviewed his suicide prevention expert's supplemental report and agrees with Mr. Hayes' findings and recommendations.

Therefore, the Special Master requests the Court adopt in full Mr. Hayes' supplemental report on Measures 31 and 32.

Respectfully submitted,

*/s/ Matthew A. Lopes, Jr.*
Matthew A. Lopes, Jr.
Special Master

Dated: November 25, 2024

# APPENDIX A

**Supplemental Report on <u>Measure 31</u> (Local Suicide Prevention and Response Focused Improvement Teams-SPRFITs) and <u>Measure 32</u> (Continuous Quality Improvement)**

**Lindsay M. Hayes, M.S.**
**November 25, 2024**

**<u>Measure 31</u>: (Local Suicide Prevention and Response Focused Improvement Teams-SPRFITs)**

On February 2, 2018, CDCR issued the "Enhancements to the Suicide Prevention and Response Focused Improvement Teams" memorandum that "clarifies, modifies, and establishes requirements and responsibilities." It also reemphasized that a meeting "quorum" included all mandatory members or designees. The revised memorandum became effective on March 1, 2018 and contained 19 responsibilities that included, but were not limited to, monitoring suicide prevention training, safety planning, and five-day follow-up compliance; review the quality of SRASHEs to ensure they are clinically appropriate; conducting semi-annual root cause analyses (RCAs) of serious suicide attempts; providing assistance and coordination for the activities of visiting SMHP and DAI suicide case reviewers following a suicide; and conducting self-assessments related to compliance with suicide prevention items developed by the SMHP's Quality Improvement Unit.

This reviewer's current (and previous) assessment(s) focused on five (5) areas of <u>Measure 31</u>: 1) the degree to which SPRFITs achieved six consecutive months of meeting quorums for all mandatory members or their designees; 2) the degree to which each SPRFIT conducted either semi-annual RCAs or clinical case summaries of serious suicide attempts when appropriate;[4] 3) the degree to which each SPRFIT tracked patients in the Suicide Risk Management Program (SRMP) and reviewed them during monthly meetings as required by policy; 4) the degree to which facilities had suicide prevention local operating procedures (LOPs) for SPRFIT, Inmate-Patients Receiving Bad News, SRMP, and CIT; and 5) the degree to which each SPRFIT tracked prior corrective actions recommended by regional SPRFIT

---

[4] The 2018 SPRFIT memorandum defined "serious suicide attempt" as involving outside hospital treatment with a medical severity rating of "3" based upon Centers for Disease Control guidelines. On June 14, 2023, CDCR issued an "update" to the 2018 SPRFIT memorandum to "require the local SPRFIT Committees to conduct *either* (a) semi-annual aggregate RCA of serious suicide attempts, *or* (2) clinical case reviews of serious suicide attempts. All other aspects of the February 2, 2018 memorandum shall remain in effect." Each mental health clinical review was required to include the following seven (7) areas: mental health history and course, if applicable; discussion of the unique factors that influenced the individual's decision to take their own life; identification of risk factors; relevant clinical issues; adequacy of institution's suicide prevention process and systems (including the functioning, interaction, and integration of various organizational components); adequacy of emergency response (in conjunction with the Emergency Medical Response Review Committee); and contributing findings and plans of action. "The results of the mental health clinical review, including remedial action, shall be presented and discussed at an upcoming institutional SPRFIT Committee meeting for discussion and review.

coordinators and/or this reviewer. In addition, this reviewer also examined whether the three (3) reception center (RC) facilities adequately collected data and assessed compliance with various RC expectations and reported such findings during monthly SPRFIT meetings as required by policy. See *Sixth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Re-Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs*, ECF No. 8143-1 at 50-53.

As requested by the *Coleman* Court on September 30, 2024, this reviewer reviewed six months of recent local Suicide Prevention and Response Focused Improvement Teams (SPRFIT) meeting minutes and relevant LOPs on suicide prevention at the 21 CDCR facilities previously audited during the Sixth Re-Audit assessment. This reviewer's findings are presented as follows.

1) **California State Prison/Sacramento (CSP/Sac)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Meeting minutes included the tracking and brief review of patients in the Suicide Risk Management Program (SRMP). Meeting minutes identified two (2) serious suicide attempts with a medical severity rating of "3," but clinical case reviews or root cause analyses (RCAs) of these incidents were not included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

Summary: **Compliant (4 of 5 areas assessed as adequate)**

2) **Wasco State Prison (WSP)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings failed to have quorums of all required mandatory members or designees for three months caused by the lack of psychiatric technician attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Meeting minutes identified one (1) serious suicide attempt with a medical severity rating of "3," but a clinical case review or RCA of this incident was not included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

In addition, because WSP is a reception center (RC), the SPRFIT was required, pursuant to CDCR's "Reception Center Suicide Prevention Reporting Expectations" memorandum,

effective January 27, 2021, to ensure that: suicide prevention placards were displayed in designated areas (including offices of the RC diagnostic clinicians); diagnostic clinicians were reviewing the nurses' Initial Health Screening Forms, county jail records, and other pertinent documents within EHRS and SOMS; diagnostic clinicians were requesting that incarcerated persons" (IPs) sign ROI forms when reporting histories of prior mental health services in the community; and diagnostic clinicians complete SRASHEs when IPs present with possible current risk for suicide. SPRFIT coordinators or designees were required to collect data and assess compliance with these four expectations, as well as report such findings during SPRFIT meetings, on a quarterly basis. Review of SPRFIT minutes indicated that the required audits and subsequent presentation of findings occurred on a monthly basis.

**Summary: <u>Compliant</u> (4 of 6 areas assessed as adequate)**

### 3)    <u>California Correctional Institution (CCI)</u>

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included some discussion on compliance data and improvement projects, but the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations was either inadequately presented or missing from most meeting minutes. Most, but not all, meeting minutes included a brief review of patients in the SRMP. Most meeting minutes did not include a severity determination of serious suicide attempts, and at least one serious suicide attempt with a medical severity rating of "3" that was identified by the regional SPRFIT coordinator did not result in either a clinical case review or RCA documented in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Not Compliant</u> (only 3 of 5 areas assessed as adequate)**

### 4)    <u>California Institution for Women (CIW)</u>

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that one meeting failed to have a quorum of all required mandatory members or designees caused by the lack of psychiatry attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Meeting minutes included inconsistent tracking, but brief review of patients in the SRMP. Meeting minutes identified three (3) serious suicide attempts with a medical severity rating of "3" during the first quarter, but only one (1) clinical case review was included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Not Compliant</u> (only 3 of 5 areas assessed as adequate)**

5)      **California Institution for Men (CIM)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that one meeting failed to have a quorum of all required mandatory members or designees caused by the lack of psychiatric technician attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Because there were not any serious suicide attempts involving outside hospital treatment (i.e., with a medical severity rating of "3") during the review period, clinical case reviews or RCAs were not required. (However, one non-lethal suicide attempt not requiring outside hospital treatment did result in a clinical case review.) A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Compliant</u> (3 of 4 areas assessed as adequate)**

6)      **San Quentin Rehabilitation Center (SQRC)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that one meeting failed to have a quorum of all required mandatory members or designees caused by the lack of psychiatric technician attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Most meeting minutes did not include a severity determination of serious suicide attempts, and at least one serious suicide attempt with a medical severity rating of "3" that was identified by the regional SPRFIT coordinator did not result in either a clinical case review or RCA documented in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Not Compliant</u> (only 3 of 5 areas assessed as adequate)**

7)      **Mule Creek State Prison (MCSP)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Because there were not any serious suicide attempts involving outside hospital treatment

(i.e., with a medical severity rating of "3") during the review period, clinical case reviews and/or RCAs were not required.  A current SPRFIT LOP, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure" were not provided for review.

**Summary: <u>Compliant</u> (3 of 4 areas assessed as adequate)**

**8)    <u>California Health Care Facility (CHCF)</u>**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that one meeting failed to have a quorum of all required mandatory members or designees caused by the lack of psychiatric technician attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Because there were not any serious suicide attempts involving outside hospital treatment (i.e., with a medical severity rating of "3") during the review period, clinical case reviews and/or RCAs were not required. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Compliant</u> (3 of 4 areas assessed as adequate)**

**9)    <u>California State Prison, Corcoran (CSP/Corcoran)</u>**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Meeting minutes included the tracking and brief review of patients in the SRMP. Meeting minutes identified at least one (1) serious suicide attempt with a medical severity rating of "3," but a clinical case review or RCA of this incident was not included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Compliant</u> (4 of 5 areas assessed as adequate)**

**10)    <u>California Substance Abuse Treatment Facility (CSATF)</u>**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that all of the meetings failed to have a quorum of all required mandatory members or designees caused by the lack of psychiatry attendance. Meeting minutes included discussion on

compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included tracking and brief review of patients in the SRMP. Meeting minutes identified three (3) serious suicide attempts with a medical severity rating of "3" during the review period, and two (2) clinical case reviews were included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Compliant</u> (4 of 5 areas assessed as adequate)**

**11)    <u>North Kern State Prison (NKSP)</u>**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Meeting minutes identified two (2) serious suicide attempts with a medical severity rating of "3," but only one clinical case review (albeit brief) was included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

In addition, because NKSP is a reception center (RC), the SPRFIT was required, pursuant to CDCR's "Reception Center Suicide Prevention Reporting Expectations" memorandum, effective January 27, 2021, to ensure that: suicide prevention placards were displayed in designated areas (including offices of the RC diagnostic clinicians); diagnostic clinicians were reviewing the nurses' Initial Health Screening Forms, county jail records, and other pertinent documents within EHRS and SOMS; diagnostic clinicians were requesting that IPs sign ROI forms when reporting histories of prior mental health services in the community; and diagnostic clinicians complete SRASHEs when IPs present with possible current risk for suicide. SPRFIT coordinators or designees were required to collect data and assess compliance with these four expectations, as well as report such findings during SPRFIT meetings, on a quarterly basis. Review of SPRFIT minutes indicated that the required audits and subsequent presentation of findings occurred on a monthly basis.

**Summary: <u>Compliant</u> (5 of 6 areas assessed as adequate)**

**12)    <u>Kern Valley State Prison (KVSP)</u>**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included discussion on compliance data, improvement projects, as well

as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Meeting minutes identified three (3) serious suicide attempts with a medical severity rating of "3," and cited that these three cases were discussed, but there were not any clinical case reviews included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

Summary: **Compliant (4 of 5 areas assessed as adequate)**

**13)    Richard J. Donovan Correctional Facility (RJD)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings failed to have quorums of all required mandatory members or designees for two months caused by the lack of custody and psychiatric technician attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Meeting minutes identified six (6) serious suicide attempts, with only one case classified as a medical severity rating of "3." Despite only one case being required for review, very comprehensive clinical case reviews were completed in each of the six cases, including three cases with medical severity ratings of "2" and two cases with medical severity ratings of "1." The completion of clinical case reviews for serious suicides attempts that did not reach a medical severity rating of "3" exceeded policy requirements and would be considered "best practice." A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

Summary: **Compliant (4 of 5 areas assessed as adequate)**

**14)    California State Prison/Los Angeles County (CSP/LAC)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that two meetings failed to have a quorum of all required mandatory members or designees caused by the lack of psychiatric technician attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Meeting minutes included tracking and brief review of patients in the SRMP. Meeting minutes identified one (1) serious suicide attempt with a medical severity rating of "3" during the review period, but a clinical case review or RCA was not included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving

Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Not Compliant</u> (only 3 of 5 areas assessed as adequate)**

15)    **<u>California Medical Facility (CMF)</u>**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that one meeting failed to have a quorum of all required mandatory members caused by the lack of psychiatric technician attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Meeting minutes did not include any tracking and/or brief review of patients in the SRMP. Meeting minutes identified two (2) serious suicide attempts with a medical severity rating of "3" during the review period, but clinical case reviews and/or RCAs were not included in minutes or appendices. In one case, only a six-sentence summary was offered.  A current SPRFIT LOP was in effect, as well as an LOP consistent with the following required CCHCS policy from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News."  However, the two other required LOPs ("Crisis Intervention Team Policy and Procedure" and "Suicide Risk Management Program Policy and Procedure") were not provided.

**Summary: <u>Not Compliant</u> (only 1 of 5 areas assessed as adequate)**

16)    **<u>California State Prison/Solano (CSP/Solano)</u>**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that one meeting failed to have a quorum of all required mandatory members or designees caused by the lack of custody (associate warden or captain) attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions (albeit brief) based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes for only three meetings included any reference to the SRMP and it was unclear how many patients, if any, were currently in the program.  Because there were not any serious suicide attempts involving outside hospital treatment (i.e., with a medical severity rating of "3") during the review period, clinical case reviews or RCAs were not required. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required two CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News" and "Suicide Risk Management Program Policy and Procedure." Because the facility did not have a CIT program, CCHCS's "Crisis Intervention Team Policy and Procedure," effective July 8, 2021, was not applicable. Of note, meeting minutes were very brief, ranging from 3-4 pages each month.

**Summary: <u>Not Compliant</u> (only 2 of 4 areas assessed as adequate)**

### 17)     **California Men's Colony (CMC)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Meeting minutes included the tracking and brief review of patients in the SRMP. Meeting minutes identified at least two (2) serious suicide attempts with a medical severity rating of "3," but other than a few brief facts regarding one case, clinical case reviews or RCAs of these incidents were not included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Compliant</u> (4 of 5 areas assessed as adequate)**

### 18)     **Salinas Valley State Prison (SVSP)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that two meetings failed to have a quorum of all required mandatory members or designees caused by the lack of psychiatry and/or psychiatric technician attendance. (Of note, the supervising psychiatric technician was incorrectly listed as a "guest, non-voting" participant in several monthly meetings, but credited as a mandatory member by this reviewer.) Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included tracking and brief review of patients in the SRMP. Meeting minutes identified one (1) serious suicide attempt with a medical severity rating of "3" during the review period, but a clinical case review or RCA was not included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

**Summary: <u>Not Compliant</u> (only 3 of 5 areas assessed as adequate)**

### 19)     **High Desert State Prison (HDSP)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Because there were not any serious suicide attempts involving outside hospital treatment (i.e., with a medical severity rating of "3") during the review period, clinical case reviews and/or RCAs were not required. A current SPRFIT LOP was in effect, as well as an LOP consistent

with the following required CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News" and "Suicide Risk Management Program Policy and Procedure." However, the required LOP on "Crisis Intervention Team Policy and Procedure" was not provided.

**Summary: <u>Compliant</u> (3 of 4 areas assessed as adequate)**

**20)   Pelican Bay State Prison (PBSP)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that one meeting failed to have a quorum of all required mandatory members or designees caused by the lack of psychiatry attendance. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. (Of note, the facility's meeting minutes best exemplified documentation of corrective action plans by listing each measure, description of the problem, responsible person, and monthly status update.) Minutes included the tracking and brief review of patients in the SRMP. Because there were not any serious suicide attempts involving outside hospital treatment (i.e., with a medical severity rating of "3") during the review period, clinical case reviews and/or RCAs were not required. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required two CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News" and "Suicide Risk Management Program Policy and Procedure." Because the facility did not have a CIT program, CCHCS's "Crisis Intervention Team Policy and Procedure," effective July 8, 2021, was not applicable.

**Summary: <u>Compliant</u> (3 of 4 areas assessed as adequate)**

**21)   Central California Women's Facility (CCWF)**

A review of six months (January 2024 through June 2024) of SPRFIT meeting minutes found that meetings had quorums of all required mandatory members or designees for all six months. Meeting minutes included discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations. Minutes included the tracking and brief review of patients in the SRMP. Meeting minutes identified two (2) serious suicide attempts with a medical severity rating of "3," but clinical case reviews or RCAs were not included in minutes or appendices. A current SPRFIT LOP was in effect, as well as LOPs consistent with the following required three CCHCS policies from 2021 related to the SPRFIT: "Local Operating Procedure for Inmate-Patients Receiving Bad News," "Crisis Intervention Team Policy and Procedure," and "Suicide Risk Management Program Policy and Procedure."

In addition, because CCWF is a reception center (RC), the SPRFIT was required, pursuant to CDCR's "Reception Center Suicide Prevention Reporting Expectations" memorandum, effective January 27, 2021, to ensure that: suicide prevention placards were displayed in designated areas (including offices of the RC diagnostic clinicians); diagnostic clinicians were reviewing the nurses' Initial Health Screening Forms, county jail records, and

other pertinent documents within EHRS and SOMS; diagnostic clinicians were requesting that IPs sign ROI forms when reporting histories of prior mental health services in the community; and diagnostic clinicians complete SRASHEs when IPs present with possible current risk for suicide. SPRFIT coordinators or designees were required to collect data and assess compliance with these four expectations, as well as report such findings during SPRFIT meetings, on a quarterly basis. Review of SPRFIT minutes indicated that the required audits and subsequent presentation of findings (albeit brief) occurred on a monthly basis.

**Summary: <u>Compliant</u> (5 of 6 areas assessed as adequate)**

**<u>Conclusion</u>**

Overall, although none of the facilities were compliant with all five (5) non-RC focus areas of SPRFIT, this reassessment found that 67 percent (14 of 21) of facilities were compliant with the vast majority of SPRFIT audited responsibilities.  As shown in Table 1, five facilities (CHCF, CIM, HDSP, MCSP, and PBSP) were compliant with 3 of 4 focus areas, six facilities (CMC, CSATF, CSP/Corcoran, CSP/Sac, KVSP, and RJD) were compliant with 4 of 5 focus areas, and the three RC facilities were compliant with either 4 of 6 (WSP) or 5 of 6 focus areas (NKSP and CCWF).  The remaining seven (7) facilities were only compliant with 3 of 5 SPRFIT focus areas (CCI, CIW, CSP/LAC, SQRC, and SVSP), 2 of 4 focus areas (CSP/Solano), and 1 of 5 focus areas (CMF).

| Facility | All Meetings had Quorums | Serious Suicide Attempts Resulting in Case Reviews / RCAs | SRMP Tracked Monthly | Regional SPRFIT / Hayes CAPs | All Applicable LOPs | RC Responsibilities | Total | |
|---|---|---|---|---|---|---|---|---|
| CSP/Sac | Yes | No (0-2) | Yes | Yes | Yes | | Compliant | 4 of 5 areas assessed as adequate |
| WSP | No | No (0-1) | Yes | Yes | Yes | Yes | Compliant | 4 of 6 areas assessed as adequate |
| CCI | Yes | No (0-1) | Yes | No | Yes | | Not Compliant | only 3 of 5 areas assessed as adequate |
| CIW | No | No (1-3) | Yes | Yes | Yes | | Not Compliant | only 3 of 5 areas assessed as adequate |
| CIM | No | N/A | Yes | Yes | Yes | | Compliant | 3 of 4 areas assessed as adequate |
| SQ | No | No (0-1) | Yes | Yes | Yes | | Not Compliant | only 3 of 5 areas assessed as adequate |
| MCSP | Yes | N/A | Yes | Yes | No | | Compliant | 3 of 4 areas assessed as adequate |
| CHCF | No | N/A | Yes | Yes | Yes | | Compliant | 3 of 4 areas assessed as adequate |
| CSP/Corcoran | Yes | No (0-1) | Yes | Yes | Yes | | Compliant | 4 of 5 areas assessed as adequate |
| CSATF | No | Yes (2-3) | Yes | Yes | Yes | | Compliant | 4 of 5 areas assessed as adequate |
| NKSP | Yes | No (1-2) | Yes | Yes | Yes | Yes | Compliant | 5 of 6 areas assessed as adequate |
| KVSP | Yes | No (0-3) | Yes | Yes | Yes | | Compliant | 4 of 5 areas assessed as adequate |

| Facility | All Meetings had Quorums | Serious Suicide Attempts Resulting in Case Reviews / RCAs | SRMP Tracked Monthly | Regional SPRFIT / Hayes CAPs | All Applicable LOPs | RC Responsibilities | Total | |
|---|---|---|---|---|---|---|---|---|
| RJD | No | Yes (6-6) | Yes | Yes | Yes | | Compliant | 4 of 5 areas assessed as adequate |
| CSP/LAC | No | No (0-1) | Yes | Yes | Yes | | Not Compliant | only 3 of 5 areas assessed as adequate |
| CMF | No | No (0-2) | No | Yes | No | | Not Compliant | only 1 of 5 areas assessed as adequate |
| CSP/Solano | No | N/A | No | Yes | Yes | | Not Compliant | 2 of 4 areas assessed as adequate |
| CMC | Yes | No (0-2) | Yes | Yes | Yes | | Compliant | 4 of 5 areas assessed as adequate |
| SVSP | No | No (0-1) | Yes | Yes | Yes | | Not Compliant | only 3 of 5 areas assessed as adequate |
| HDSP | Yes | N/A | Yes | Yes | No | | Compliant | (3 of 4 areas assessed as adequate) |
| PBSP | No | N/A | Yes | Yes | Yes | | Compliant | (3 of 4 areas assessed as adequate) |
| CCWF | Yes | No | Yes | Yes | Yes | Yes | Compliant | (5 of 6 areas assessed as adequate) |
| **TOTAL** | **9-21 (43%)** | **2-15 (13%)** | **19-21 (90%)** | **20-21 (95%)** | **18-21 (86%)** | **3-3 (100%)** | **14-21 (67%)** | |

13

With regard to individual focus areas, this reassessment found that:

- 43 percent (9 of 21) of facilities achieved six consecutive months of meeting quorums;
- 13 percent (2 of 15) of facilities that reported one or more serious suicide attempts with a medical severity rating of "3" during the review period presented clinical case reviews of those cases that were included within meeting minutes or appendices;
- 90 percent (19 of 21) of facilities documented the tracking and brief review of patients in the SRMP within meeting minutes;
- 95 percent (20 of 21) of facilities documented the discussion on compliance data, improvement projects, as well as the status of corrective actions based upon regional SPRFIT audits and/or this reviewer's previous recommendations within meeting minutes;
- 86 percent (18 of 21) of facilities forwarded current SPRFIT LOPs, as well as the three suicide prevention related CCHCS policies, if applicable to their facility; and
- All three reception centers documented their RC auditing responsibilities related to suicide prevention within monthly SPRFIT minutes.

**<u>Recommendations</u>**:

CDCR should develop CAPs to ensure that facilities adhere to the SPRFIT policy requirements of: 1) maintaining monthly meeting quorums for all mandatory members or their designees; and 2) conducting and presenting either semi-annual root cause analyses or clinical case reviews on serious suicide attempts with a medical severity rating of "3" during monthly meetings.

14

<u>Measure 32</u>: **Continuous Quality Improvement**[5]

This reviewer's current (and previous) assessment(s) of Measure 32 focused on two (2) areas: 1) the degree to which CDCR incorporated all of this reviewer's 19 "Suicide Prevention Audit Checklist" measures[6] into any continuous quality improvement guidebook (CQI), and 2) the degree to which any CQI audit report of an individual facility's suicide prevention practices was formatted to contain data on all 19 suicide prevention measures.

By way of background, the defendants were directed by order of the *Coleman* court (ECF No. 4232, filed August 30, 2012; ECF No. 4561, filed April 23, 2013; ECF No. 5092, filed March 3, 2014) to develop an improved quality improvement process by which CDCR could identify issues and improve its performance levels in the delivery of mental health care. The result was the development of a Continuous Quality Improvement Tool (CQIT). During an earlier portion of the Suicide Prevention Management Workgroup (SPMW) process, CDCR agreed to incorporate this reviewer's "Suicide Prevention Audit Checklist" into its overall CQI process (see previous Recommendation 32). The checklist included 19 measures. *See supra* note 3.

Previous review of the suicide prevention related aspects of CDCR's revised "Continuous Quality Improvement On-Site Audit Guidebook," revised multiple times over the years, found it included many, but not all, of this reviewer's 19 Suicide Prevention Audit Checklist measures. During SPMW and All-Parties Workgroup meetings in 2019, CDCR repeatedly stated that all 19 measures would be incorporated into either the CQIT or other CQI processes. At a larger *Coleman* policy meeting with the parties on November 22, 2019, this reviewer was presented with a rebranded version of the "Continuous Quality Improvement On-Site Audit Guidebook"

---

[5]Measure 32 is a miscellaneous area containing three sub-sections: 1) Possessions and Privileges for MHCB patients, 2) Continuous Quality Improvement, and 3) Reception Centers. The Court directed this reviewer to provide a supplemental report only on the "Continuous Quality Improvement" sub-section of Measure 32.  ECF No. 8433 at 35.

[6]The measures were: 1) Observation of R&R intake screening by nursing/RC screening by diagnostic clinicians; 2) Confirming R&R/RC screening completeness and privacy and confidentiality; 3) Administrative segregation new intake IPs housed in retrofitted new intake cells for 72 hours; 4) Psych Tech rounds in administrative segregation, SHU, and PSU; 5) Guard One compliance in administrative segregation, SHU, and PSU; 6) SRASHEs required for emergent/urgent mental health referrals for SI/SIB/SA; 7) Use of Alternative Housing; 8) Suicide-resistant MHCBs; 9) SRASHEs required for admission/discharge in MHCB and alternative housing; 10) Observation of MHCB patients; 11) Clothing/property/privileges orders for MHCB patients; 12) Safety planning for suicidal patients in MHCBs; 13) Five-day clinical follow-ups for MHCB, Alternative Housing, DSH, and Psychiatric Inpatient Program (PIP) returns; 14) Clinical and Custody 30-minute Discharge Checks for non-ASU IPs returning from MHCB, Alternative Housing, DSH, and PIP (Form 7497); 15) Emergency response equipment in housing units; 16) CPR training for custody and medical staff; 17) Annual suicide prevention training for custody, medical, and mental health staff; 18) SRE Mentoring/7-hour SRE training/Safety Planning training for clinicians; and 19) SPRFIT responsibilities.

entitled "Continuous Quality Improvement Suicide Prevention: Self-Audit Guidebook." This rebranded version was still dated August 16, 2019 and contained most, but not all, of this reviewer's 19 suicide prevention audit measures. During the meeting, CDCR reiterated that the 19 measures would be gathered by a variety of sources, including on-site CQI audits, chart audits by the SMHP, and utilization of "On-Demand" data. It was further explained that the "Continuous Quality Improvement Suicide Prevention: Self-Audit Guidebook" was designed to be utilized by local SPRFITs in auditing of suicide prevention practices in their respective facilities. At that point, it still remained unclear why all 19 suicide prevention audit measures were not included in the Guidebook. Finally, during that November 2019 *Coleman* Policy Meeting, a SMHP administrator interjected by stating "if SPRFITs were going to be responsible for replicating Mr. Hayes's suicide prevention audits in the future, all of the (19) items needed to be included in the Guidebook."

On September 23, 2020, this reviewer's *Fourth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections* was filed (ECF No. 6879-1) and recommendations regarding CDCR's CQI process were as follows: "As CDCR has previously committed to doing, it should immediately: 1) incorporate all of this reviewer's 19 "Suicide Prevention Audit Checklist" measures into any CQI Guidebook, and, 2) any CQI audit report of an individual facility's suicide prevention practices should be formatted to contain data on all 19 suicide prevention measures." *Id.* at 35-36.

In the first "Defendants Updated Activation Schedule for Completion of Court-Ordered Suicide Prevention Recommendations," CDCR stated that it "continues to work to finalize the template of the CQI-Suicide Prevention tool. Work to complete the language to present to the OSM (Office of the Special Master) is underway and we will schedule consultation meetings with the OSM as we move closer to a complete draft." ECF No. 7024 at 8. At that time, the project was scheduled to be completed, to include staff training, before April 30, 2021. *Id.* Nine months later on September 13, 2021, CDCR informed the *Coleman* court and Special Master in the "Defendants Updated Activation Schedule for Completion of Court-Ordered Suicide Prevention Recommendations" that: "Upon further review, and in consultation with the OSM [Office of the Special Master], Defendants are revising this item to document that full and final roll out of this item is inextricably tied to the SPRFIT Reboot project…..Given this analysis, the revised completion is being moved to 2/28/2022. It should be noted that the development of the manual self-assessment tool for use at the local level is actively being utilized by the four test institutions in the SPRFIT Reboot trial implementation. The full CQIT contains all 19 suicide prevention indicators, as identified by Mr. Hayes, to be used at the regional/statewide level." ECF No. 7306 at 9.

CDCR hired four regional SPRFIT coordinators during 2021 and they were assigned to each of the four regions and report directly to the Suicide Prevention Response Unit (SPRU) at SMHP headquarters. These coordinators have multiple responsibilities, including, but not limited to, providing technical assistance and support to facilities in their region, completing scheduled site visits to assess suicide prevention practices utilizing draft versions of the CQI guidebook, and preparing each assigned facility for this reviewer's suicide prevention assessments.

On February 23, 2022, the Special Master received another version of the "Continuous Quality Improvement On-Site Audit Guidebook," dated February 3, 2022. Although this reviewer was subsequently informed by CDCR that the Guidebook contained all 19 suicide prevention measures, review of the suicide prevention related portions of this revised version of the Guidebook found that it did not. Five days later, on February 28, 2022, CDCR again reversed course and informed the *Coleman* court and Special Master in the "Defendants Updated Activation Schedule for Completion of Court-Ordered Suicide Prevention Recommendations" that:

> CDCR recognizes that continuous quality improvement for suicide prevention requires multiple layers of oversight. At the institutional level, as part of the SPRFIT Reboot Project (see recommendation 31) a self-assessment tool is under development and is currently being tested with the four pilot institutions. It is anticipated this self-assessment tool will be finalized simultaneously with the larger SPRFIT Reboot project, by 6/30/2022. At the regional/statewide level, the suicide prevention coordinators for each region regularly complete site visits to all institutions that mimic an official Lindsay Hayes site visit. At the outcome of these tours a report is created with findings and any recommendations or corrective action that the institution must act upon to come into compliance with any deficiencies noted. Given these regional suicide prevention coordinator positions are relatively new, we are continuing to refine the language in these reports and align methodology of audits with those of Mr. Hayes when he conducts his visits. It is anticipated that these reports, as well as a finalized schedule for ongoing visits to institutions, based upon the size and scope of their mental health mission, will be completed by 6/30/2022.

ECF No. 7480 at 8 (filed February 28, 2022).

On May 10, 2022, this reviewer received the first draft of CDCR's "Suicide Prevention On-Site Audit Guidebook." As subsequently related to this reviewer by SPRU leadership, this guidebook, when finalized, would be utilized internally by the four regional SPRFIT coordinators on an interim basis until the larger "Continuous Quality Improvement On-Site Audit Guidebook" was finalized and approved by the Special Master and *Coleman* court. This reviewer's extensive critique of the first draft was returned to SPRU leadership on July 25, 2022.

On October 24, 2022, this reviewer's *Fifth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs* was filed (ECF No. 7636-1) and stated the following regarding CDCR's CQI process: "this reviewer's preceding (Fourth Re-Audit) assessment recommended that 'CDCR immediately: (1) incorporate all of this reviewer's 19 "Suicide Prevention Audit Checklist" measures into any CQI Guidebook, and, (2) any CQI audit report of an individual facility's suicide prevention practices should be formatted to contain data on all 19 suicide prevention measures. To date, although a suicide prevention audit guidebook is in a first draft, CDCR has not yet implemented either of these recommendations." *Id.* at 51-54.

On March 1, 2024, this reviewer's *Sixth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Re-Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs* was filed (ECF No. 8143-1). In regard to the CQI process, and with the exception of some notable concerns detailed in the report, this reviewer found that "regional SPRFIT coordinator reports were generally thorough and each coordinator monitored most, but not all, of the measures audited by this reviewer…. There were, however, several clear examples of deficient monitoring, as well as multiple examples of regional SPRFIT coordinators reporting very disparate findings then from this reviewer for comparable review periods. In conclusion, regional SPRFIT coordinator monitoring of suicide prevention practices utilizing the Suicide Prevention On-Site Audit Guidebook remains a very promising and evolving process." *Id.* at 62-63.

On September 30, 2024, the *Coleman* Court directed that this reviewer reexamine and provide a supplemental report on the CQI section (Measure 32) of the *Sixth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Re-Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs* (ECF No. 8143-1 at 54-63) to ensure that review of the CQI process was consistent with monitoring contained in previous reports by the Special Master's suicide prevention expert. ECF No. 8433 at 35.

Consistent with Measure 32's criteria that (1) all of this reviewer's 19 "Suicide Prevention Audit Checklist" measures should be incorporated into any CQI Guidebook, and (2) any CQI audit report of an individual facility's suicide prevention practices should be formatted to contain data on all 19 suicide prevention measures," this reviewer's findings are presented as follows.

**<u>Current Findings</u>:**

The most recent version of the "Suicide Prevention On-Site Audit Guidebook" was last revised on October 31, 2024. Although this reviewer's 19 suicide prevention measures are now adequately addressed in the Guidebook, the measures have not been fully implemented because the Guidebook continues to be periodically revised. Despite its periodic revision, the four regional SPRFIT coordinators began to utilize the Guidebook in their facility audits of suicide prevention practices in 2022. Through examination of the 57 regional SPRFIT coordinator reports that were completed during 2023, this reviewer found that although the template of the regional SPRFIT coordinator reports was more or less consistent with the CQI Guidebook, the reports did <u>not</u> consistently "contain data on all 19 suicide prevention measures," and were <u>not</u> always comprehensive regarding methodology, particularly in the area of the sample size of medical chart review.

The following are examples of deficiencies in the current CQI process attributable to audit reports *not always containing data on all 19 suicide prevention measures* required by Measure 32:

- As exemplified by multiple regional SPRFIT reports in which auditors were onsite for only one day rather than multiple days, there were fewer

18

opportunities to review critical areas such as intake screening by nursing staff, crisis intervention team (CIT) responses, multiple interdisciplinary treatment team (IDTT) meetings in MHCB units. In one region, for example, the coordinator was unable to observe intake screening by nursing staff during any of the four one-day onsite reviews of two facilities during the entirety of 2023. In another region, the regional SPRFIT coordinator did not any collect data during 2023 on Reception Center diagnostic screening. In a third region, the regional SPRFIT coordinator bluntly stated: "Given that this reviewer did not conduct a site review during Q4 of 2022, and that no IDTTs were able to be observed during the Q3 visit, this is the first MHCB IDTT that this reviewer has observed in nearly a year;"

- Similarly, when regional SPRFIT audits are conducted remotely, data on several required indicators cannot be collected because onsite auditing is required for observation of the intake screening by nursing staff, observation of psychiatric technician rounds, observation of officers conducting Guard 1 rounds, independent verification that new intake IPs are housed in RHU new intake cells, observation of CIT responses, and observation of MHCB IDTT meetings;[7]

- Contrary to a CQI Guidebook requirement, none of the regional SPRFIT coordinator reports presented separate data for compliance with both Page 1 and Page 2 of the "Discharge Custody Check Sheet" (CDCR MH-7497) forms; instead, a composite compliance score was presented;

- Contrary to a CQI Guidebook requirement, none of the regional SPRFIT coordinator reports for 2023 addressed the local SPRFIT requirement to review patients in the Suicide Risk Management Program during monthly SPRFIT meetings;

- Contrary to a CQI Guidebook requirement that measures compliance with urgent and emergent mental health referrals through completion of a suicide risk evaluation (SRE), as well as SRE completion for patients discharged from Alternative Housing, one regional SPFIT incorrectly allowed compliance in a facility utilizing the Columbia-Suicide Severity Rating Scale (C-SSRS) screening form, resulting in the collection and reporting of inaccurate performance data;

---

[7] In the Joint Status Update filed with the *Coleman* Court on October 28, 2024, Document 8445, the Defendants acknowledged their intention to continue to rely upon remote monitoring by stating: "CDCR is considering modifying this process *to allow remote monitoring in some quarters when an institution has demonstrated a pattern of sustained compliance, when mission complexity is low, or when an on-site visit is otherwise not warranted*" (emphasis added).

19

- Contrary to a CQI Guidebook requirement, quorums in monthly SPRFIT meeting minutes were not consistently addressed by two regional SPRFIT coordinators;

- Regional SPRFIT coordinator reports from at least two regions incorrectly suggested that maximum-security MHCB patients were only required to be offered one telephone call per month, with one report stating: "Because all MAX custody inmates are only allowed one phone call per month, some patients understandably had no phone call privileges recorded." This error resulted in the collection and reporting of inaccurate data;

- There were inconsistencies with the collection of data regarding "Quality of Safety Planning" (within the CQI Guidebook) for patients discharged from either the MHCB or Alternative Housing. A few regional SPRFIT coordinators were very thorough in their critique of safety plan quality. Others were not and simply relied upon a facility's self-audit data. At least one regional SPRFIT coordinator did not collect and review data regarding safety plans for patients discharged from Alternative Housing;

- Contrary to a CQI Guidebook requirement, regional SPRFIT coordinators rarely collected data regarding the requirement to offer "out-of-cell" privacy and confidentiality for clinical contacts arising crisis responses and assessments following Alternative Housing placements;

- Despite a CQI Guidebook requirement to collect data on ensuring that "incarcerated persons (IPs) housed in RHU for the first 72 hours are either double celled with an appropriate cell partner or are celled alone in a retrofitted intake cell," thus determining if any IPs are housed in unsafe cells, one regional SPRFIT coordinator failed to collect the required data by simply reporting the entirety of the new intake cell process as follows: "Intake Cells: During the time of the review, (facility) has 16 designated intake cells which are retrofitted and found to be suicide resistant."  As a result, there was no data collected on whether or not new intake IPs were correctly housed in the RHU; and

- One regional SPRFIT coordinator incorrectly collected data regarding the CQI Guidebook indicator for "corrective action plans" (CAPs) by reporting that "Temporarily, due to the severe mental health staffing shortage, new CAPs pertaining to mental health deficiencies will be deferred. Instead, all such deficiencies will be listed as recommendations. When mental health staffing improves, some recommendations will be changed to CAPs." Such subjectivity is not allowed within the CQI process. The CQI Guidebook makes a clear distinction between "CAPs" and "Recommendations," stating (at page 108): "Recommendations for areas to improve can also be made during the audit. These would be areas that don't rise to the level of needing a formal CAP, but that would help improve the health of the institution's suicide

20

prevention program."  As such, there is <u>no</u> allowance in the CQI Guidebook for substituting a "recommendation" for a "CAP" based upon staff shortages, and by doing so, incomplete data was collected and reported.

Finally, as an example of one of 19 suicide prevention measures not being fully implemented because the CQI Guidebook continues to be periodically revised, as well as required data not always contained in audit reports, this reviewer has always monitored the requirement for SRE completion following an urgent or emergent mental health referral when the referral was mislabeled and not correctly marked for danger to self despite evidence of suicidal ideation, self-harm, or other concerning behavior that precipitated the referral. Prior to release of the most recent version of the CQI Guidebook on October 31, 2024, previous Guidebook versions, as well as regional SPRFIT coordinator reports, only contained reference to "Urgent and Emergent Referrals for Danger to Self" and the measurement was based on OnDemand data rather than auditors conducting medical chart reviews. Consistent with this reviewer's original 19 suicide prevention measures, the October 2024 version of the CQI Guidebook now for the first time contains a new section entitled "Urgent and Emergent Referrals *Not* Marked as for Danger to Self" and the revised indicator now requires the auditor to review medical charts rather than utilizing OnDemand data.

In conclusion, regional SPRFIT coordinator reports were generally thorough and each coordinator monitored most, but not all, of the measures required within the CQI Guidebook under Measure 32. However, as noted in the above examples of deficiencies, these audit reports did not consistently "contain data on all 19 suicide prevention measures" as required by Measure 32. In addition, and as exemplified above in the recent revision of one of the indicators (now entitled "Urgent and Emergent Referrals *Not* Marked as for Danger to Self"), these 19 measures have not been fully implemented because the CQI Guidebook continues to be periodically revised.

**<u>Recommendation</u>**:

To ensure that CQI audit reports consistently contain data on all 19 "Suicide Prevention Audit Checklist" measures, CDCR should correct the deficiencies cited above and improve overall consistency within regional SPRFIT coordinator reports.