Rob Bonta, State Bar No. 202668
Attorney General of California
Monica N. Anderson, State Bar No. 182970
Senior Assistant Attorney General
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Christian M. Georgely, State Bar No. 322952
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
Attorneys for Defendants

Hanson Bridgett LLP
LAWRENCE M. CIRELLI, SBN 114710
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS-GONZÁLEZ,
SBN 321994
MOLLIE LEVY, SBN 333744
SAMANTHA BACON, SBN 351561
425 Market Street, 26th Floor
  San Francisco, California 94105
  Telephone:  415-777-3200
  E-mail: PMello@hansonbridgett.com
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                              Plaintiffs,<br><br>        v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                              Defendants. | 2:90-cv-00520 KJM-SCR<br><br>**DEFENDANTS' RESPONSE TO THE SPECIAL MASTER'S REPORT ON HIS SUICIDE PREVENTION EXPERT'S SUPPLEMENTAL REPORT REGARDING MEASURES 31 AND 32 [ECF NO. 8475**<br><br>Judge:         The Honorable Kimberly J. Mueller |

# TABLE OF CONTENTS

Page

Introduction ................................................................................................................... 1

Discussion ...................................................................................................................... 2

I.    Response to the Supplemental Report on Measure 31 - Local SPRFIT ................. 2

(See ECF No. 8475 at 17-18.) ...................................................................... 3

A.    The Standard of Perfection for Meetings with a Quorum is Unreasonable. ............................................................................................. 3

B.    The Supplemental Report's Findings Should be Amended for Three of the Seven Institutions Reported as Not Compliant. ................................. 4

    1.    San Quentin Rehabilitative Center (SQRC) ................................... 4

    2.    California Medical Facility (CMF). ................................................ 5

    3.    California State Prison-Solano (SOL) ............................................. 6

II.    Measure 32 – Continuous Quality Improvement ....................................... 6

A.    The Supplemental Report Restates Prior Findings. ................................... 6

B.    The Guidebook Contains All 19 Suicide Prevention Items Confirming that the Measure Has Been Fully Implemented. .................... 7

C.    The SPRFIT Reports Are Consistent with the CQI Guidebook. .............. 8

D.    The Findings of Deficiencies are Inaccurate. ............................................ 8

    1.    Issue 1—Insufficient on-site observations. .................................... 9

    2.    Issue 2—Remote monitoring. ....................................................... 10

    3.    Issue 3—Reporting data for compliance with 5-day follow-up Form (7497). ....................................................................... 11

    4.    Issue 4—Whether Local SPRFIT Committees reported on patients in the SRMP. ................................................................. 12

    5.    Issue 5—Reporting the use of the Columbia-Suicide Severity Rating Scale. ............................................................... 12

    6.    Issue 6 —SPRFIT Coordinators' failure to address the issue of quorums in monthly SPRFIT meetings. .................................. 13

    7.    Issue 7—SPRFIT Coordinators report policy error concerning phone privileges. .......................................................... 13

    8.    Issue 8—Inconsistencies in data collection on the quality of safety planning for patients discharged from MHCBs or Alternative Housing. ...................................................................... 14

    9.    Issue 9—Collection of data on offers of out-of-cell clinical contacts. ........................................................................................ 15

    10.    Issue 10—Reporting of data on housing patients in RHU intake cells. ................................................................................... 16

    11.    Issue 11 – Reduction of a CAP to a recommendation. ................. 17

    12.    Issue 12 —SREs following urgent/emergent referrals ................. 17

i

# TABLE OF CONTENTS
(continued)

**Page**

Conclusion ............................................................................................................. 18

Certification Of Orders ......................................................................................... 18

Defs.' Response to Suppl. Report on Suicide Prevention  (2:90-cv-00520 KJM-SCR)

**INTRODUCTION**

On November 25, 2024, the Special Master submitted his report on his suicide expert's supplemental report regarding Measures 31 and 32 in response to the Court's September 30, 2024 bench order (Supplement Report).  (ECF No. 8475.)  With respect to Measure 31, the Court deferred ruling on Defendants' objections to the Special Master's March 1, 2024 report and directed the expert to file a supplemental report based on his review of an additional "six months of local SPRFIT[1] meeting minutes for the 21 facilities Mr. Hayes audited in 2023." (ECF No. 8414.)  Regarding Measure 32, the Court sustained Defendants' objections to Mr. Hayes' findings as to one of its three subcomponents, Continuous Quality Improvement, and directed Mr. Hayes to file a supplemental report.  (*See id.*; *see also* ECF No. 8433 at 35.)

For Measure 31, the Supplemental Report found that seven institutions were not compliant with the SPRFIT requirements.  The SPRFIT requirements are required under the 2021 Program Guide as part of CDCR's February 2, 2018 memorandum, *Enhancements to the Suicide Prevention and Response Focused Improvement Teams*, issued in response to this Court's January 25, 2018 order, .  (ECF No. 5762 at 3, ECF No. 6879-1 at 30-31, and ECF No. 7773-1 at 611-618.)  For the first time, the Supplemental Report reveals that under Hayes' methodology, compliance requires that an institution achieve four of the five SPRFIT markers, which are (1) meeting quorum, (2) Suicide Risk Management Program (SRMP), (3) Corrective Action Plans (CAPs), (4) Root Cause Analyses (RCA), and (5) Local Operating Procedures (LOPs). Specifically, the Supplemental Report provides that the California State Prison/Sacramento SPRFIT was compliant by achieving four of five areas assessed as adequate (ECF No. 8475 at 7); the Wasco State Prison (WSP) SPRFIT was graded as adequate for reaching four of six markers (*id.* at 8)[2]; and the California Correctional Institution (CCI) SPRFIT was graded as not compliant for only meeting three of five areas as adequate (*id.*)  This Hayes grading standard is also apparent from the last two columns on the table presented at the end of the section on the assessment of Measure 31.  (*Id.* at 17-18.)  For CDCR to achieve a compliance rate of at least

---

[1] SPRFIT stands for Suicide Prevention and Response Focused Improvement Teams.
[2] WSP as a Reception Center has an addition marker.

1

Defs.' Response to Suppl. Report on Suicide Prevention   3 (2:90-cv-00520 KJM-SCR)

90% on Recommendation 31, five of the seven institutions (19/21 total) previously reported out of compliance would need to be compliant with at least four of the five markers.[3]  The facts show that of the seven noncompliant institutions, at least three were also compliant.  Although this does not demonstrate compliance at a rate of 90% or better under the strict suicide prevention standards, it does demonstrate progress toward compliance.  Defendants ask the Court to recognize this progress and to clarify the record by acknowledging that three of the seven reviewed institutions were compliant.

For Measure 32, the Supplemental Report rehashes the findings regarding continuous quality improvement reported in the March 1, 2024 report.  Defendants objected to the findings concerning Measure 32 in April, 2024.  (ECF No. 8179 at 83-101.)  Those objections were sustained.  (ECF No. 8344 at 35:18.)  The Supplemental Report does not respond to any of Defendants' stated objections and does not include a report on Hayes' review of any additional reports beyond the same 57 reports covered by the March 1, 2024 report.  Although numerous additional reports prepared in 2024 were available for the expert's review, the Supplemental Report did not consider any reports from 2024.  Instead, the Supplemental Report finds that the 2023 reports do not align with the October 2024 CQI Guidebook and asserts this as evidence of noncompliance.  (ECF No. 8475 at 26.)

Defendants respond to the Supplemental Report to identify findings that are at odds with the facts available to the suicide expert, to clarify the record of compliance with Measures 31 and 32, to update the status of work completed to attain compliance with Measures 31, and to restate previously filed objections that were not addressed in the Supplemental Report.

## DISCUSSION

### I. RESPONSE TO THE SUPPLEMENTAL REPORT ON MEASURE 31 - LOCAL SPRFIT

In its September 30 bench order, the Court overruled Defendants' general objections to Measure 31 and described "discrepancies between Mr. Hayes' report, what the Court can discern from a de novo review of the record and plaintiff's own review" concerning Defendants' specific

---

[3]  If five of the seven institutions were found to be compliant, then a total of 19 institutions out of the 21 institutions assessed (about 90.5%) would be compliant.

2

Defs.' Response to Suppl. Report on Suicide Prevention   3 (2:90-cv-00520 KJM-SCR)

objections.  (ECF No. 8433 at 33:17 – 34:1.)  The Court ordered Mr. Hayes to review six months of local SPRFIT meeting minutes for all institutions and submit an updated report to the Court. (*Id.*)  While the Supplemental Report includes findings on the 21 institutions' SPRFIT meetings, including the identification of the seven institutions that were previously found noncompliant with Recommendation 31, it is important to note that the findings are not based on observations of the actual SPRFIT meetings.  They are based solely on a review of the meeting minutes, which are unlikely to reflect all the work done by the committee.  (ECF No. 8179 at 80.)  Defendants request that the Court consider this fact when evaluating the Supplemental Report's findings. Additionally, as discussed further below, some of the findings are inconsistent with information contained in the SPRFIT meeting minutes.

The table below shows the seven institutions that were reported as non-compliant in the Supplemental Report, including how each scored on the five SPRFIT markers.

| Institution | Quorum | CAPs | SRMP | RCA | LOP |
|---|---|---|---|---|---|
| CCI | Yes | No | Yes | No | Yes |
| CIW | No | Yes | Yes | No | Yes |
| SQRC | No | Yes | Yes | No | Yes |
| LAC | No | Yes | Yes | No | Yes |
| CMF | No | Yes | No | No | No |
| SOL | No | Yes | No | Yes | Yes |
| SVSP | No | Yes | Yes | No | Yes |

(See ECF No. 8475 at 17-18.)

**A.  The Standard of Perfection for Meetings with a Quorum is Unreasonable.**

The Special Master's expert grades an institution as compliant with the requirement that SPRFIT meetings must have a quorum only if the institution met the quorum requirement for six

3

1  consecutive months.  (ECF No. 8475 at 3 and 6.)  All eight required attendees or their designees

2  must be present for the expert to find that a quorum was achieved.  (ECF No. 7333-1 at 612.)

3  Under the expert's standard, if a single required attendee is absent from a single SPRFIT meeting

4  during the reviewed period, the institution will fail the quorum requirement.  (ECF No. 8475 at

5  6.)  And as described below, the expert deemed institutions noncompliant even when they

6  designated a substitute attendee to take the place of an absent required attendee.  Defendants

7  request that the Court consider whether such a high standard is proper in the context of a monthly

8  meeting that requires all eight SPRFIT members' attendance to meet the expert's quorum

9  requirement.

10       **B.**     **The Supplemental Report's Findings Should be Amended for Three of the**
                 **Seven Institutions Reported as Not Compliant.**

11

12       The Supplemental Report provides a narrative summary of the SPRFIT performance at the

13 twenty-one institutions under review in the Sixth Re-Audit.  (ECF No. 8575 at 7 – 19.)

14 Defendants acknowledge and appreciate the improved reporting and the clear statements of

15 compliance and noncompliance.  However, for three of the institutions reported as noncompliant,

16 some of the facts were not accurately portrayed in the Supplemental Report.  The Supplemental

17 Report should have deemed each of those three institutions compliant with the SPRFIT meeting

18 requirements, and Defendants request that the Court consider and acknowledge the correct

19 information so that the institutions' compliance is clear in the record.

20       **1.**     **San Quentin Rehabilitative Center (SQRC).**

21       SQRC was reported as noncompliant because it did not meet quorum and RCA

22 requirements.  (ECF No. 8475 at 9.)  The Supplemental Report states that one SQRC SPRFIT

23 meeting lacked a psychiatric technician.  (*Id.*)  CDCR's review of the minutes suggests this was

24 the March 2024 meeting.  But the records also show that SQRC should not have been marked

25 noncompliant for this meeting because the Director of Nursing was present at the meeting as a

26 designee for the psychiatric technician.  (Williams Decl. ¶ 5, Exhibit A-002.)  The Director's

27 presence should have satisfied the quorum requirement.  The Supplemental Report also correctly

28 stated that the clinical case review for a serious suicide attempt was not mentioned in SQRC's

4

1 SPRFIT meeting minutes.  (ECF No. 8475 at  9.)  However, this was an oversight, and the

2 completed review shows that the RCA was conducted during the SPRFIT meeting.  (Williams

3 Decl. ⁋ 5, Exhibit B.)  Given this information, SQRC should have been found compliant for

4 Recommendation 31.

5      **2.     California Medical Facility (CMF).**

6      CMF was marked noncompliant for (a) failing to have a quorum during one SPFIT

7 meeting; (b) failing to track and review patients in the Suicide Risk Management Program

8 (SRMP); (c) failing to conduct clinical case reviews for serious suicide attempts; and (d) missing

9 two LOPs.  (ECF No. 8475 at 13.)  The noncompliant meeting lacked a psychiatric technician for

10 May 2024, but the Supplemental Report omitted that the meeting minutes show that a nurse

11 (SRNIII) was designated in place of the psychiatric technician for this meeting.  (Williams Decl.

12 ⁋ 6, Ex. C at C-032.)  The Supplemental Report also incorrectly states that the SPRFIT minutes

13 did not track the SRMP.  (ECF No. 8475 at 13.)  In fact, all CMF minutes from January through

14 June 2024 reference the SRMP.  (Williams Decl. ⁋ 6, Ex. C.)  The minutes from the non-

15 compliant meeting reference a discussion about patients enrolled in the SRMP.  (*Id*.)

16      The Supplemental Report also states that there should have been two clinical case reviews

17 for serious suicide attempts but there were none.  (ECF No. 8475 at 13.)  However, the January

18 minutes for the CMF SPRFIT meeting mention a medically severe suicide attempt, which

19 occurred in late December.  Although the minutes do not discuss the incident at length, the

20 accompanying slides show that it was discussed during the SPRFIT meeting.  (Williams Decl. ⁋

21 6, Exhibit C at C-007-8.)

22      Finally, the Supplemental Report criticizes the CMF SPRFIT meeting because it was

23 missing the LOPs for the Crisis Intervention Team (CIT) and the SRMP.  (ECF No. 8475 at 13.)

24 In fact, those LOPs were in place during the review period.  (Williams Decl. ⁋ 7, Exhibit D.)

25      In light of these facts, the Supplemental Report should have found CMF compliant with

26 Recommendation 31.

27 ///

28 ///

5

Defs.' Response to Suppl. Report on Suicide Prevention   3 (2:90-cv-00520 KJM-SCR)

1        **3.       California State Prison-Solano (SOL).**

2        The Supplemental Report states that SOL was noncompliant with the quorum and SRMP

3   requirements.  (ECF No. 8475 at 13.)  However, CDCR's records show that SOL achieved

4   meeting quorums for every SPRFIT meeting from January 2024 through June 2024.  (Williams

5   Decl. ¶ 8, Exhibit E.)  The Supplemental Report asserted that a May SPRFIT meeting lacked a

6   quorum due to the absence of an Associate Warden (AW) or captain.  However, in May the

7   healthcare captain position was vacant, and SOL designated an appropriate substitute: the

8   healthcare lieutenant.  (*Id.*)  With this designee, the quorum was achieved.

9        The SOL SPRFIT was also marked as noncompliant because "only three meetings included

10  any reference to the SRMP."  (ECF 8475 at 13.)  Although technically correct, the other meeting

11  minutes did not reference the SRMP because SOL had no patients eligible for SRMP during those

12  months.  (Williams Decl. ¶ 8.)  It was reasonable for SOL to omit from its minutes topics for

13  which there was no qualifying data.

14       In light of these facts, the Supplemental Report should have found SOL compliant with

15  Recommendation 31.

16  **II.      MEASURE 32 – CONTINUOUS QUALITY IMPROVEMENT**

17       **A.      The Supplemental Report Restates Prior Findings.**

18       The Supplemental Report's Recommendation 32 findings are based on the same reviews

19  addressed in the March 1, 2024 report.  To the extent that the Supplemental Report restates the

20  findings in the March 1 report based on the same data reviewed for the March 1 report,

21  Defendants incorporate their previously asserted objections by reference.  (ECF No. 8179.)  The

22  Supplemental Report contains little new analysis related to Recommendation 32, and much of the

23  Supplemental Report's section on Measure 32 merely repeats—often word for word—the March

24  1, 2024 report.

25       The findings in the Supplemental Report are based on the same 57 regional SPRFIT

26  coordinator reports completed in 2023.  (ECF No. 8475 at 23; compare to ECF No. 8143-1 at 60,

27  noting that Mr. Hayes determined that 57 reports were completed in 2023.)  As of September 30,

28  2024, over 50 new reports were available for the expert's review in the same SharePoint that Mr.

6

1   Hayes used to access the 2023 reports earlier this year.  (Williams Decl. ¶ 9.)  These new reports

2   constitute the best evidence of the current level of compliance with Measure 32, but the

3   Supplemental Report does not reference any of them.  As a result, the findings are repetitive and

4   do not provide an updated status of compliance with Measure 32.

5       The Supplemental Report presents eleven criticisms of the 2023 SPRFIT reports.  Eight of

6   the criticisms were previously raised in the March 1 report—some of them verbatim.  Defendants

7   rebutted each of those eight criticisms in response to the March 1 report, but the Supplemental

8   Report does not address any part of Defendants' rebuttals.  (*See* ECF No. 8179 at 83-101.)

9   Defendants restate those objections below in response to the Supplemental Report.

10      **B.      The Guidebook Contains All 19 Suicide Prevention Items Confirming that
            the Measure Has Been Fully Implemented.**

11

12      The Supplemental Report makes clear that the current version of the CQI Guidebook

13   contains Hayes' 19 suicide prevention measures.  (ECF No. 8475 at 23.)  This is consistent with

14   his findings from his March report in which he found that the suicide prevention measures were

15   "adequately addressed in the Guidebook."  (ECF No. 8143-1 at 59.)  But the Supplemental Report

16   seems to qualify this finding by stating that "the Guidebook continues to be periodically revised."

17   (ECF No. 8475 at 23.)  This criticism is repeated verbatim from the March 1 report (*compare*

18   ECF No. 8143-1 at 59), which Defendants addressed in their objections to the March 1 report

19   (ECF No. 8179 at 88):

20          Sadly, after spending so many years monitoring the system and approving

21          the SP CQI Guidebook, Mr. Hayes's findings on CQI are inconsistent with
            the goals of a quality improvement system. He reports that the "measures

22          have not been fully implemented because the Guidebook continues to be
            periodically revised." (ECF No. 8143-1 at 59.) But he knows that CDCR's

23          Continuous Quality Improvement Tool, of which the Suicide Prevention
            Guidebook is a part (*see Id*. at 55-56), is designed to be "periodically

24          revised" to ensure alignment with any changes in policy or auditing
            methodology. (Williams Decl. ¶ 43.) In this sense, Mr. Hayes will never be

25          satisfied that the Suicide Prevention On-Site Audit Guidebook is complete

26          because it is designed to always be adapted to comport to revised policies or
            updates in methodology. Mr. Hayes's finding here is wrong because it is

27          inconsistent with the Court-ordered CQI process, is improper, and should be
            disregarded.

28

7

1    Defendants' objections on this point were sustained (EF No. 8433 at 35:18), so it is unclear why

2    the Supplemental Report makes the identical finding again.  Moreover, repeating this criticism

3    makes little sense given that the October 2024 version of the CQI Guidebook contains all 19

4    measures.  The Supplemental Report could have addressed Defendants' concerns and the

5    foregoing objection head on.  Instead, the Supplemental Report lacks any explanation for what is

6    meant by the statement "measures have not been fully implemented because the Guidebook

7    continues to be periodically revised."  Defendants request that the Court adopt the finding

8    regarding compliance and reject the speculative concern that full implementation has not been

9    achieved because there may be a need for revisions in the future.

10          **C.      The SPRFIT Reports Are Consistent with the CQI Guidebook.**

11          The Supplemental Report criticizes the SPRFIT Coordinators' reports because they "did not

12   consistently contain data on all 19 suicide prevention measures" and were "not always

13   comprehensive regarding methodology, particularly in the aera of the sample size of medical

14   chart reviews." (ECF No. 8475 at 23.)  This criticism is also identical to one raised in the March

15   report.  (ECF No. 8143-1 at 59.)  Defendants rebutted the criticism by pointing out that the

16   sample size is part of the Suicide Prevention On-Site Audit Guidebook and many key

17   performance indicators.  The SP CQI Guidebook includes a section on sample sizes which can be

18   cross referenced with the audit reports if certain sample sizes are not clear in the individual

19   reports. (ECF No. 8179 at 90; ECF No. 8180-6, Williams Decl. at ¶ 44.)  Again, rather than

20   address Defendants' April 2024 objections, the Supplemental Report simply repeats the criticism

21   from the March 1 report, leaving Defendants without any explanation for Mr. Hayes'

22   disagreement with Defendants' position.

23          **D.      The Findings of Deficiencies are Inaccurate.**

24          Like the March 1 report, the Supplemental Report provides findings of what Mr. Hayes

25   considers to be qualifying deficiencies in the audit reports.  (ECF No. 8475 at 23-26.)  The

26   majority of the twelve examples included were previously reported in the March 1 report, and the

27   Court sustained Defendants' April objections to those findings.  (ECF No. 8179 at 90-101, and

28   ECF No. 8433 at 35.)  The Supplemental Report provides no new findings and simply ignores

8

Defs.' Response to Suppl. Report on Suicide Prevention   3 (2:90-cv-00520-KJM-SCR)

1   Defendants' previous sustained objections.  Defendants restate those objections below in addition

2   to responding to the Supplemental Reports few new findings.

3           **1.    Issue 1—Insufficient on-site observations.**

4           In the March report, Mr. Hayes cited the auditors' one day site visits as deficiencies

5   because they limit opportunities to observe intake screening, crisis intervention teams, and

6   interdisciplinary treatment team meetings in the Mental Health Crisis Bed units (MHCBs).  (ECF

7   No. 8143-1 at 60, bullet 4.)  The Supplemental Report again raises that same issue.  (ECF No.

8   8475 at 23-24.)  Defendants' previous objection to this criticism was sustained.  (ECF No. 8179 at

9   93-94, and ECF No. 8433 at 35.)  Of note, none of the expert's 19 suicide prevention measures

10  prescribe a requisite number of days auditors must be onsite.

11          The Supplemental Report also restates a prior finding that "during four one-day tours, one

12  auditor did not observe any intake screening."  (ECF No. 8475 at 24.)  Defendants previously

13  addressed this critique in prior objections that the Court sustained. (ECF No. 8179 at 94.)  The

14  Special Master and his experts are aware that on any given day, intake screenings may be a rare

15  occurrence.  For example, Mr. Hayes observed none at the California Correctional Institution

16  (CCI) or at High Desert State Prison (ECF No. 8143-1 at 116 and 286) and only one each at the

17  California Institution for Men (CIM), California State Prison-Corcoran (COR), the Substance

18  Abuse Treatment Facility (SATF), the Ronald J. Donovan Correctional Facility (RJD), Solidad

19  State Prison (SOL), Salinas Valley State Prison (SVSP), and Pelican Bay State Prison (PBSP) (*id.*

20  at 125, 164, 173, 205, 251, 273, and 291.)  While CDCR attempts to audit intake screenings

21  during each SPRFIT Coordinator site visit, sometimes scheduling or lack of new intakes preclude

22  the ability to audit intakes.

23          The Supplemental Report raised as a new example of a deficiency an auditor's failure to

24  collect any data on Reception Center (RC) diagnostic screening.  (ECF No. 8475 at 24.)  This

25  criticism appears to be a new issue.  But it is not readily apparent which of the 19 suicide

26  prevention requirements relate to this example and the Supplemental Report does not elaborate on

27  how this demonstrates noncompliance with any measure.

28  ///

9

Defs.' Response to Suppl. Report on Suicide Prevention   3 (2:90-cv-00520 KJM-SCR)

Finally, the Supplemental Report repeats a prior finding that in one of the 2023 reports, the SPRFIT Coordinator reported that the MHCB Interdisciplinary Treatment Team (IDTT) meeting was the first he had observed in nearly a year. (*Id.*) This same issue was raised in the March 1 report (ECF No. 8143-1 at 60, bullet 3), and refers to a SATF report from March 2023. (ECF No. 8179 at 92-93.) As Defendants reported in their April 2024 objections, the auditor observed five IDTTs during the March 2023 visit, another five in September 2023, and five more in December 2023. (ECF No. 8180-1, Mintz Decl. Ex. D at 5, Ex. K at 4, Ex. Q at 4.) Since then, the SPRFIT Coordinator observed five IDTTs in March 2024 (Williams Decl. ¶ 10, Exhibit F at F-005), five IDTTs in June 2024 (*id.* at F-023-024), and five IDTTs in September 2024 (*id.* at F-044).

## 2. Issue 2—Remote monitoring.

The Supplemental Report found that remote monitoring is an example of a deficient process because it " is not a substitute for on-site auditing because data collection for numerous items must be collected on-site." (ECF No. 8475 at 24.) This same concern was raised in Mr. Hayes' March 1 report which stated that this "concern" only applied to one of the 57 reports initially reviewed: "[o]ne of these reports was completed remotely without an onsite review and did not measure all of the required suicide prevention areas." (ECF No. 8143-1 at 60.) The basis for Mr. Hayes's findings from the Supplemental Report are the same as his findings in the March 1 report.

SPRFIT Coordinators are able to rely on other sources of data when on-site observations are not possible. For example, Mr. Hayes stated that remote reviews did not permit observation of "intake screening by nursing staff" in Receiving & Release (R&R). (ECF No. 8475 at 24.) While technically correct, every institution is required to complete in-person audits of intake screenings in R&R, and those findings are presented in SPRFIT minutes. (Williams Decl. ¶ 11.) SPRFIT Coordinators have access to those audits and can rely on them. (*Id.*)

Citing to Defendants' October 28, 2024 Joint Status Update (ECF No. 8445), Mr. Hayes reports that CDCR intends to rely on remote monitoring. (ECF No. 8475 at 24, fn. 7.) CDCR is considering setting parameters around when remote monitoring may or may not be appropriate. CDCR's proposed revision is forthcoming and would not permit open ended remote monitoring.

10

1

### 3.  Issue 3—Reporting data for compliance with 5-day follow-up Form (7497).

2

3      The Supplemental Report states that "[c]ontrary to a CQI Guidebook requirement, none of

4   the regional SPRFIT coordinator reports presented separate data for compliance with both Page 1

5   and Page 2 of the 'Discharge Custody Check Sheet (CDCR MH-7497) forms; instead, a

6   composite compliance score was presented."  (ECF No. 8475 at 24.)  Mr. Hayes raised this same

7   issue in his March 1 report.  (See ECF No. 8143-1 at 61, third bullet.)  Defendants objected to this

8   criticism twice in response to the March 1 report, and the Court sustained those objections.  (ECF

9   No. 8433 at 35.)  The Supplemental Report does not address those sustained objections, and it is

10  unclear why it continues to assert this purported compliance issue.

11     Defendants first addressed this criticism in response to Mr. Hayes' reporting on CDCR's

12  compliance with 7497.  (ECF No. 8179 at 71-72.)  In 2023, the CQI Guidebook mandated audits

13  of the Form 7497s, but did not require a page by page separate audit.  This supports the

14  conclusion that the 57 SPRFIT Coordinator reports that Mr. Hayes reviewed as part of the

15  Supplemental Report, which were each issued in 2023, were not "contrary to a CQI guidebook

16  requirement" when they were issued, as Mr. Hayes suggests.

17     SP12 measures compliance with the 7497 process.[4]  That indicator was remediated on

18  September 15, 2023. (ECF No. 8180-6, Williams Decl., Ex. A at 95.)  In late 2023, after SP12

19  was remediated by the Special Master's data expert, Mr. Hayes complained that the indicator did

20  not break apart compliance by page and he decided that it is not enough that a form be completed

21  adequately, but instead each page must also be graded separately as its own compliance metric.

22  (Williams Decl. ¶ 12.)  Despite the indicator having already been remediated, CDCR agreed to

23  revise SP12 to measure each page individually.  (*Id.*)  The revised SP12 indicators were not

24  remediated until October 11, 2024, making it impossible for SPRFIT reports from 2023 to have

25  adhered to the new SP12 methodology approved in late 2024.

26  ///

27  ────────────────
        [4]  Because Mr. Hayes requested that the audit separately measure both pages of the 7497
28  form, the current indicator has been split into two indicators – SP12.1 and SP12.2 – each
    measuring a different page.

11

Defs.' Response to Suppl. Report on Suicide Prevention  3 (2:90-cv-00520 KJM-SCR)

The March 1 report also raised this issue in the context of reporting on the SPRFIT CQI reports. This was the seventh criticism in the March report. (ECF No. 8143-1 at 61.) Defendants again objected to his findings and explained that at the time of the SPRFIT reports, the scoring was consistent with statewide policy and the remediated indicator. (ECF No. 8179 at 95-96.) This is also consistent with the current SP CQI Guidebook. (Williams Decl. ¶ 13, Exhibit G.) The Court sustained Defendants' objection. (ECF No. 8433 at 35.)

### 4. Issue 4—Whether Local SPRFIT Committees reported on patients in the SRMP.

The Supplemental Report repeats the criticism that the SPRFIT reports do not comply with the requirement to review patients in the SRMP during the monthly SPRFIT meetings. (ECF No. 8475 at 24.) This issue is identical to the eighth criticism in the March 1 report. (ECF No. 8143-11 at 61.) As demonstrated in Defendants' April objections, which the Court sustained, this finding is false. (ECF No. 8179 at 96, and ECF No. 8433 at 35.) Consequently, it is unclear why the Supplemental Report reiterates the same finding.

SPRFIT Coordinators monitor local SPRFIT compliance with audit criteria according to the SP CQI Guidebook, which Mr. Hayes has approved. (ECF No. 8180-6, Williams Decl. ¶ 50, Ex. A at 94, 96-100.) CDCR's SP CQI Guidebook requires that auditors review SPRFIT meeting minutes and attend SPRFIT meetings. (*Id.*) The auditor is required to check if "the committee discuss[ed] SRMP patients." (*Id*., Ex. A at 97.) Similarly, the auditor is required to check meeting minutes to see if "the minutes reflect SRMP patients are tracked and reviewed." (*Id*., Ex. A at 99.) These requirements remain in current versions of the CQI Guidebook as well. (Williams Decl. ¶ 13, Exhibit G at 99.)

### 5. Issue 5—Reporting the use of the Columbia-Suicide Severity Rating Scale.

The Supplemental Report cites again, as an example of a deficiency, one Regional's finding that a facility was compliant even though it used the Columbia-Suicide Severity Rating Scale (CSSRS) screening form. (ECF No. 8475 at 24.) The use of the CSSRS was litigated in Defendants' April 2024 objections to a different section of Mr. Hayes's March report. (ECF Nos.

12

1    8179 at 66 and 8143-1 at 38.)  Defendants' objection here was overruled and institutions have

2    stopped using the CSSRS.  (Williams Decl. ¶ 14.)  Yet, this cannot be a fair criticism of the

3    SPRFIT Reports from 2023 because the Court's ruling on this disputed issue did not occur until

4    September 2024.  (ECF No. 8344 at 25:17-22.)  Furthermore, CDCR confirms that this was an

5    issue at only one institution, and that institution has stopped using the CSSRS.  (Williams Decl. ¶

6    14.)

###       6.       Issue 6 —SPRFIT Coordinators' failure to address the issue of quorums in monthly SPRFIT meetings.

9         The Supplemental Report found that two SPRFIT Coordinators did not consistently address

10   whether quorums were achieved in monthly SPRFIT meeting minutes.  (ECF No. 8475 at 25.)

11   The March 1 report also found that that only two regional SPRFIT coordinators consistently

12   addressed the issue of meeting quorums.  (ECF No. 8143-1 at 61.)  Defendants objected to the

13   March 1 finding and the Court sustained that objection.  (ECF No. 8179 at 96-97.)  The

14   Supplemental Report provides no new findings or facts, but asserts the same finding that the

15   Court rejected based on Defendants' objections.

16        As Defendants previously explained, the audit that looks at the SPRFIT's review of local

17   SPRFIT committees requires that the Regional SPRFIT Coordinator audit whether the local

18   SPRFIT established a quorum. (ECF No. 8180-6, Williams Decl. ¶ 51, Ex. A. at 98.)  Regional

19   SPRFIT Coordinators check meeting minutes to see if they "reflect all mandatory members or

20   authorized designees were present." (*Id*.)  Each SPRFIT Coordinator report includes a discussion

21   of local SPRFIT practices.  (*Id*.)  Thus, the SPRFIT quorum is reviewed by each SPRFIT

22   Coordinator, and the review is included in their reports.

###       7.       Issue 7—SPRFIT Coordinators report policy error concerning phone privileges.

25        Next, the Supplemental Report finds that in 2023 "two regionals incorrectly suggested that

26   maximum-security MHCB patients were only require to offered one telephone call per month."

27   (ECF No. 8475 at 25, bullet two.)  This finding was carried over, nearly verbatim, from Mr.

28

13

Defs.' Response to Suppl. Report on Suicide Prevention   3 (2:90-cv-00520-KJM-SCR)

1    Hayes's March 1 report.  (Compare ECF No. 8143-1 at 61, bullet six.)  Defendants objected to

2    this finding and the Court sustained those objections.  (ECF No. 8179 at 97.)

3         The Supplemental Report found that citing an incorrect phone privileges policy constituted

4    an error that resulted in the collection and reporting of inaccurate data.  (ECF No. 8745 at 26.)  As

5    Defendants already explained in their sustained April objections, Mr. Hayes's findings failed to

6    take into account that Max custody phone privileges have evolved rapidly over the past few years.

7    Initially, patients in this privilege group received phone calls "on an emergency basis only as

8    determined by institution/facility staff."  (Cal. Code Reg., Title 15 § 3044(c)(6)(A), (g)(3)(C).)

9    During COVID, CDCR authorized weekly phone calls for inmates in this privilege group.  (ECF

10   No. 8180-6, Williams Decl. ¶ 52.)  That policy ended in September 2023, but went back into

11   effect in December 2023.  (*Id*.)  If one or more Regional SPRFIT Coordinators misstated the Max

12   custody crisis bed phone call privilege policy in one or more reports, this is at worst a minor error

13   in reciting an evolving policy decision by CDCR.  It is not evidence that the reports are flawed or

14   inadequate.

15        This misunderstanding of policy was corrected and is no longer reflected in the available

16   2024 reports that Mr. Hayes did not review.  (Williams Decl., ¶ 15.)

**8.    Issue 8—Inconsistencies in data collection on the quality of safety planning for patients discharged from MHCBs or Alternative Housing.**

19        The Supplemental Report alleges that there were inconsistencies with the collection of data

20   regarding the "Quality of Safety Planning" (within the CQI Guidebook) for patients discharged

21   from either the MHCB or Alternative Housing.  (ECF No. 8745 at 26, third bullet.)  This is

22   identical to a concern raised in the March 1 report.  (ECF No. 8143-1 at 62, first bullet.)

23   Defendants objected to this alleged deficiency by pointing out that Mr. Hayes failed to identify

24   which reports were allegedly deficient, and by failing to explain how using a Chart Audit Tool

25   (self-audit data) is an inadequate way to conduct monitoring.  (ECF No. 8179 at 98.)  The Court

26   sustained this objection.  (ECF No. 8433 at 35.)  Although not mentioned in the March 1 report or

27   the Supplemental Report, CDCR SPRFIT coordinators employ a wide range of tools in their

28   audits, including CATs, to gauge the quality of certain documents.  One of those CATs is part of

14

1  a remediated key performance indicator, Quality of Safety Planning to Reduce Suicide Risk

2  (SP3.4).[5]  (ECF No. 8180-6, Williams Decl. ¶ 53.)

3      "CQIT key indicators must be operationalized to properly measure the core requirements of

4  the Program Guide and the Compendium." (ECF No. 7847 at 6, citing ECF Nos. 7216 at 4, 6996

5  at 8, 6846 at 28.)  Suggesting that SPRFIT coordinators were not "thorough" because they used

6  an indicator designed to measure requirements of the Program Guide is particularly troubling

7  given the considerable resources devoted to the data remediation process.  And the March 1 and

8  Supplemental Report fail to demonstrate that reliance on a CAT is inadequate.  As such, this is

9  not an example of a deficiency, and the Court should sustain Defendants' objection.

10      **9.    Issue 9—Collection of data on offers of out-of-cell clinical contacts.**

11      The Supplemental Report next finds that "[c]ontrary to a CQI Guidebook requirement,

12  regional SPRFIT coordinators rarely collected data regarding the requirement to offer 'out-of-

13  cell' privacy and confidentiality for clinical contacts arising [from] crisis responses and

14  assessments following Alternative Housing placements."  (ECF No. 8475 at 25, bullet four.)  This

15  finding is the same as one made in Mr. Hayes's March 1 report.  (ECF No. 8143-1 at 62, bullet

16  three.)  Defendants objected to that finding and the Court sustained the objection.  (ECF No. 8179

17  at 99.)  It is not clear why the Supplemental Report makes the identical finding despite the

18  Court's previous ruling.  Regardless, this finding is not aligned with any of the 19 suicide

19  prevention measures.  (Compare ECF No. 8475 at 20, fn. 6.)  In this respect, the overruled Hayes

20  finding is irrelevant to whether CDCR has an adequate suicide prevention CQI practice.

21      The finding is also too vague to be of any meaningful value to SPRFIT coordinators

22  because the expert's reports fail to identify the SPRFIT coordinators, the institutions, or the

23  SPRFIT reports for which this was an issue.  Both expert reports also omit any reference to

24  evidence that there was a lack of privacy during the crises responses that were audited by the

25  CDCR SPRFIT coordinator.  Despite objecting to this evidentiary omission from the March 1

26  report, the Supplemental Report did nothing to clarify these findings.  Absent that evidence, there

27

28
_____

[5] SP3.4 is also integrated into the CQI Suicide Prevention Guidebook and labeled as part
of Hayes Item 4.  (ECF No. 8179 at 85, 8180-6 at 113-114.)

15

is nothing to support a requirement that reports must include a discussion of "lack of privacy and confidentiality."  Defendants repeat their position that these findings are speculative, and the Court should not adopt them.

### 10.    Issue 10—Reporting of data on housing patients in RHU intake cells.

Next, the Supplemental Report criticizes one regional SPRFIT Coordinator's collection of data on whether patients were housed in retrofitted intake cells during their first seventy-two hours in restricted housing.  (ECF No. 8475 at 25, bullet five, quoting the SPRFIT report as stating the institution "has 16 designated intake cells which are retrofitted and found to be suicide resistant.".)  This finding appears to be based on reports auditing the California Men's Colony (CMC) reports issued in April and July 2023.  (ECF No. 8180-2 at 19, 48.)  However, reading further into those same reports reveals additional information about CMC's compliance with intake cell usage included under the "Entertainment appliance" header.  For instance, the April 12, 2023 CMC report read as follows:

> **Intake Cells:** During the time of the review, CMC has 16 designated intake cells which are retrofitted and found to be suicide resistant.
>
> **Entertainment appliance**: There were 28 patients on 21-day intake status and two patients on the 72-hour intake status. All patients were appropriately housed in intake cells. Each occupied intake cell had a sign on the door which noted the patient's arrival date, end date and whether an electronic appliance was provided. Five patients did not possess an entertainment appliance. Both patients on the 72-hour intake and three patients on the 21-day status did not have entertainment appliances.

(ECF No. 8180-2 at 19.)  Similarly, the July 6, 2023 CMC report reads as follows:

> **Intake Cells:** During the time of the review, CMC has 16 designated intake cells which are retrofitted and found to be suicide resistant.
>
> **Entertainment appliance**: There were three patients on the 72-hour intake status. All patients were appropriately housed in intake cells. Each occupied intake cell had a sign on the door which noted the patient's arrival date, end date and whether an electronic appliance was provided. All patients possessed an entertainment appliance.

(*Id.* at 48.)  In both the April and July 2023 CMC reports, the SPRFIT Coordinator reported on whether patients were appropriately housed in intake cells.

1    According to the April 2023 report, all patients were appropriately housed in intake cells,

2    and each occupied intake cell had a sign on the door which noted the patient's arrival date, end

3    date and whether an electronic appliance was provided.  (*Id.* at 19.)  The June 2023 report

4    identified three patients on the 72-hour intake status.  (*Id.*)  All patients were appropriately housed

5    in intake cells.  (*Id.*)  Each occupied intake cell had a sign on the door which noted the patient's

6    arrival date, end date and whether an electronic appliance was provided.  (*Id.*)  All patients

7    possessed an entertainment appliance. (ECF No. 8180-2 at 19, Ex. D.)

8    CDCR's SPRFIT Coordinator reports for 2024—which were available to Mr. Hayes—

9    continue to demonstrate compliance with the required reporting.  The 2024 reports follow roughly

10   the same format as the 2023 reports but with more detail.  The deficient institution, CMC, issued

11   reports in February, May, and July 2024.  Although Mr. Hayes did not review those reports, they

12   include the required data.  (Williams Decl. ¶ 16, Exhibit H.)

### 11.   Issue 11 – Reduction of a CAP to a recommendation.

14   The Supplemental Report found that a SPRFIT coordinator improperly reduced a corrective

15   action plan (CAP) to a recommendation.  (ECF No. 8475 at 25-26, sixth bullet.)  This criticism is

16   repeated from the March report.  (ECF No. 8143-1 at 62, fourth bullet.)  The Supplemental

17   Report includes a finding that the CQI Guidebook does not permit this action.  But the Guidebook

18   does not prohibit this action.  Furthermore, the SPRFIT coordinator's issuance of CAPs and

19   recommendations are not part of the 19 Hayes Measures and the alleged deficiency described

20   here and the Court should not adopt this finding.

### 12.   Issue 12 —SREs following urgent/emergent referrals.

22   Finally, although Mr. Hayes acknowledges that the CQI Guidebook adequately addresses

23   his 19 suicide prevention measures (ECF No. 8475 at 23), he finds that past versions of the SP

24   CQI Guidebook did not align with how he measures SRE completion following an

25   urgent/emergent MH referral when the referral was mislabeled and not marked for danger to self,

26   despite evidence of suicide ideation.  (*Id.* at 26.)  The Supplemental Report then acknowledges

27   that the most recent version of the SP CQI Guidebook includes a new section, "Urgent and

28   Emergent Referrals Not Marked as for Danger to Self."  (*Id.*)  This new version was released in

17

1   October 2024, and requires auditors to review medical charts for this issue and not just rely on

2   data from On Demand reports.  (Williams Decl. ⁋ 13, Exhibit G.)

3        The Supplemental Report does not explain how or why this continues to be an issue of

4   noncompliance.  CDCR agreed to this methodology for the indicator and the SP CQI Guidebook

5   was updated with the remediated indicator.  SPRFIT Coordinator audits and reports are consistent

6   with the CQI Guidebook in place at the time of the audit.  Any findings regarding noncompliance

7   based on a 2023 review should be disregarded because it would require retroactive application of

8   the indicator.

9                                         **CONCLUSION**

10       The Supplement Report was intended to update the findings on compliance with Measures

11   31 and 32, informed by a review of additional and updated reports.  With respect to Measure 31,

12   the Supplemental Report found that the seven reviewed institutions were noncompliant with

13   SPRFIT meeting requirements.  Defendants, however, have demonstrated that three of those

14   seven institutions were compliant.  For Measure 32, because the Supplemental Report did not

15   supplement the March 1 report, the Court should continue to find that Defendants are in

16   compliance with Recommendation 32 because the current version of the CQI Guidebook and the

17   Regional SPRFIT Reports have been fully implemented.

18                               **CERTIFICATION OF ORDERS**

19       In preparing these objections, the undersigned counsel for the Defendants reviewed the

20   following Court orders relevant to the issues in this filing: ECF Nos. 640, 5271, 5429, 5762,

21   6212, 6441, 6846, 6973, 7004, 7006, 7696, 7699, 7731, 7743, 7808, 8137, 8238, 8433, and 8475.

22

23

24

25

26

27

28

Defs.' Response to Suppl. Report on Suicide Prevention   3 (2:90-cv-00520 KJM-SCR)

1  Dated:  December 26, 2024                    Respectfully submitted,

2                                               ROB BONTA
                                                Attorney General of California
3                                               DAMON G. MCCLAIN
                                                Supervising Deputy Attorney General
4

5                                               /s/ Elise Owens Thorn

6                                               ELISE OWENS THORN
                                                Deputy Attorney General
7                                               Attorneys for Defendants
                                                Jeff Macomber
8

9  Dated:  December 26, 2024                    HANSON BRIDGETT LLP

10                                              /s/ Samantha D. Wolff

11                                              PAUL B. MELLO
                                                SAMANTHA D. WOLFF
12                                              DAVID C. CASARRUBIAS-GONZÁLEZ
                                                Attorneys for Defendants

13

14
   CF1997CS0003
15 38655880.docx

16

17

18

19

20

21

22

23

24

25

26

27

28