# Exhibit F

 

**CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES**

# MEMORANDUM

| | |
|---|---|
| **Date:** | 04/16/2024 |
| **To:** | Statewide Suicide Prevention and Response – Focused Improvement Team Committee |
| **From:** | ███████████, Psy.D. |
| | Sr. Psychologist Specialist-Suicide Prevention Unit-R3 |
| **Subject:** | SUBSTANCE ABUSE TREATMENT FACILITY SUICIDE PREVENTION TOUR-Quarter 1 March 2024 |

On March 13th and 14th, the Statewide Suicide Prevention and Response Focused Improvement Team (SPRFIT) Coordinator for Region III conducted a review at Substance Abuse Treatment Facility (SATF). Although not on site with this reviewer, the Region III Mental Health Compliance (MHCT) lieutenants ███████ and ███████; and Regional Nurse Consultant ███████, RN were consulted as necessary. The focus of the review centered on the Restricted Housing Unit (RHU) and Mental Health Crisis Bed (MHCB) to ensure compliance with statewide suicide prevention and response policies. Also incorporated are the preliminary findings of Office of Special Master (OSM) expert Lindsay Hayes from his most recent review on June 29-30, 2023. Attached is the report based upon the Suicide Prevention On-site Audit Guidebook that will be provided to the Statewide SPRFIT committee for review and follow-up.

| | |
|---|---|
| Lindsay Hayes Corrective Action Plans (CAPs) that can be closed | 0 |
| CAPs generated by this reviewer during prior review that can be closed | 2 |
| Lindsay Hayes CAPs that remain open | 1 |
| CAPs previously generated by this reviewer that remain open | 1 |
| New CAPs generated as a result of this review | 1 |
| New recommendations generated as a result of this review | 0 |

**Total open CAPs=3**
**Total open recommendations=0**
**Total closed CAPs=2**

Should you have any questions or require further clarification, please contact me at (916) ███-███ or s███████@cdcr.ca.gov

# MEMORANDUM

## Restricted Housing Units [ASU, STRH, ASU EOP HUB]

### Short Term Restricted Housing

### Second Watch Morning Meeting

The second watch morning meeting was observed as part of this site review and it was a strong meeting. All required attendees were present including a social worker, the sergeant, the program supervisor, and two psychiatric technicians (PTs). The team discussed new arrivals, patients in the SRMP program, patients with behavioral concerns, patients on five-day follow-ups, and anticipated new arrivals. The meeting was collaborative.

### Psychiatric Technician (PT) Rounds – Hayes Item 9 [ASU, ASU EOP HUB, PSU, STRH, LTRH]

Two regular PTs were observed completing rounds and both were good with one having only a minor concern. Both PTs interacted well with all patients, documented in real time, and provided handouts. Patient focused services were demonstrated by both PTs. For example, one assisted a patient who was unable to read and write, in completing a medical request form. However, only one of the PTs directly queried about suicidal and homicidal ideation while the other asked about it indirectly, saying "are you thinking about hurting yourself." This was noted in the quarter 3 2023 site review and it was since reported by institutional nursing leadership, that training has been delivered. This deficiency was not noted again in the last (quarter 4) site review and it seems to be individual specific. Given this, it was determined in consultation with the regional nurse consultant, that a CAP is not warranted at this time. PT rounds documentation was audited locally and SPRFIT minutes from January 2024 indicate that compliance was 100%.

### Intake Cells – Hayes Item 2 [ASU, ASU EOP HUB, STRH RC, STRH]

Consistent with the last site review, the STRH at SATF is equipped with 10 retrofitted intake cells (100-109). On the first day of this site review, four were occupied and on the second day, five were. All five patients had been in intake cells for less than 72 hours. Placards were present on all of the intake cell doors and the placards denoted the start and stop time of intake status for all patients. There were not any inmates on intake status who were not properly housed in an intake cell. For the month of January 2024, the institution reported in SPRFIT subcommittee that local audits found 100% compliance with the appropriate housing of RHU inmates. This demonstrates sustained progress that was achieved during the last site review.

### Entertainment Appliances [ASU, ASU EOP HUB, STRH RC, STRH]

This reviewer interviewed all five patients in intake cells to ensure that they had been supplied with an entertainment appliance in a timely fashion. All five indicated that they had been. This indicates sustained improvement in this area since the last site review. This variable was reported in the SPRFIT subcommittee in January 2024 and compliance was noted to be 100%.

EXHIBIT F-003

# MEMORANDUM

### Welfare Check Completion (Guard One) – Hayes Item 8 [ASU, ASU EOP HUB, PSU, STRH RC, STRH, STRH Female, LTRH, Condemned]

On the day of this site review, one officer was observed completing checks and he seemed to do so appropriately. The officer took the time to look into each cell and seemingly established a view of living, breathing flesh before moving to the next cell. The monitoring report indicates that for the month of November 2023, there were a total of 93,576 checks expected at the STRH and 91,656 were completed timely (not exceeding 35 minutes apart) for a compliance rate of 97.95%. This variable was reported in the SPRFIT subcommittee in January 2024 and compliance was noted to be 100%. This continues to be an area of ongoing compliance at SATF.

### RHU Pre-Placement Screening ("ASU Pre-Placement Form") [ASU, ASU EOP HUB, STRH RC, STRH

There were not any RHU pre-placement screenings observed as none occurred. A review of the performance report from the fourth quarter of 2023, indicates that compliance was 89%, which was stagnant since the last review period. Minutes from the month of December reflect that compliance with ASU pre-screens was discussed using the Power BI report. For the third consecutive review period however, prescreens conducted in a confidential setting was not reported in SPRFIT. The reason that was provided to this reviewer during the last (quarter 4 2023) review period was that none of the ASU pre-screens occurred during normal business hours and as such, nursing leadership was not available to observe any of them. It is suggested that such barriers to this data collection be articulated in the minutes.

## 70.1 ASU Pre-Screens



### RHU Post-Placement Screening ("ASU Screening Questionnaire") [ASU, ASU EOP HUB, STRH RC, STRH]

There were not any RHU Post-placement screens observed as part of this site review as none occurred. A review of the performance report for the fourth quarter of 2023, indicates that compliance for that time period was 99%.

## 70.2 ASU GP Screens



## Inpatient Units (MHCB and/or PIP)

### Suicide-Resistant Cells – Hayes Item 10

MHCB cells at SATF had previously been noted to be suicide resistant.

### Interdisciplinary Treatment Teams (IDTT)

This reviewer observed five IDTTs during this site review; two of which were initial IDTTs and one of which was a discharge IDTT. One of the IDTTs was held in absentia because the patient refused. In all of the remaining four, the senior psychologist supervisor, who served as IDTT leader, stated the purpose of the IDTT. All members of the team were engaged in all of the IDTTs and each IDTT included an interactive discussion about the patient's safety plan. Orders for observation and issue were documented in EHRS in all five cases and they were discussed in four of the five. The safety plan was discussed in three of the four applicable cases (one patient had not been admitted for DTS). In the one case in which the patient was being discharged, a safety plan was completed prior to the discharge IDTT but was not discussed during it. Although the treatment team opined that this particular patient was not at elevated risk and frequently utilized suicidal language for secondary gain, a relevant discussion of the safety plan was still required. Overall, improvement to the IDTT process was noted since the last site review. The MHCB supervisor began using the SharePoint site to complete supervisory reviews of discharge safety plans on February 23, 2024, which also demonstrates overall improvement.

### Suicide Watch and Suicide Precaution

On the first day of this site review, there were 14 patients in the MHCB; 9 of whom were on Suicide Precautions (Q11-Q15 checks), 3 patients were on suicide watch (1:1 direct observation), and 3 were on Q30 minute observations. It was observed that all three patients on suicide watch were under direct observation. Over the course of two days, two different nurses were observed conducting suicide precaution rounds. Observed was a total of 11 checks with 10 different patients (one patient was observed being checked twice). Both nurses were observed to conduct all rounds appropriately as they both established visual contact with the patient and documented in real time in CERNER. There were up to date issue and observation orders on the doors for all 14 patients on the first day of this review.

A review of the Mental Health Observation report for February 2024, indicates that rounds for suicide precautions were completed timely at 97.4%% and they were staggered 99.3% of the time. This remains an area of strength for SATF.

### Observation and Issue Orders – Hayes Item 3

The charts were reviewed for 10 patients who completed a MHCB stay at SATF for DTS during Q4 2023 to ensure that orders for issue and observation were present in the charts, and that a clinical note justifying partial issue was present when indicated. The sample yielded a total of 20

patient days and consistent with prior reviews, deficiencies continue to be noted. However, an additional caveat is available this time. The review found that an order for observation was present in the chart in all 20 cases but an order for issue was present in only 10. Additionally, a justification note was only present for five cases. As was noted in the last (quarter 4 2023) report, it was identified by the institution that staffing problems, related to both a high vacancy rate and performance problems (see Q4 2023 report for details), were responsible for such deficiencies. Since December 2023 however, the institution has been vigilant in addressing this issue through training, progressive discipline, hiring, and changing the staffing in the MHCB. Since January 2024, MHCB clinicians have been given the responsibility of entering and updating issue and observation orders. All staff have also been provided training and the MHCB has gained two new licensed providers. Any positive impacts that resulted from these changes would not be noticeable until at least the quarter 2, 2024 review so as such, the CAP will remain open with this understanding and will be closed if improvement is noted during the next review. The local audit of this variable was presented in the January 2024 SPRFIT subcommittee and was found to be only 29% compliant, which is generally consistent with this review.

### Timelines for Suicide Risk Assessments

A review of the performance report for the fourth quarter of 2023 (October-December), indicates that SATF completed Suicide Risk Evaluations timely 91% of the time overall, which is an improvement since the last site review.

## 10.2 Suicide Risk Evaluation



**91%**
**(959)**

Of the 959 SRASHEs that were completed at SATF during that time, the closed appointments report identified 263 of them. Of those 263, 198 (75%) were completed in a confidential setting. Of the 65 contacts that were not completed in a confidential setting, 10 were "as planned." The remaining 55 non-confidential contacts were due to reasons outside of the control of the clinician, with custody modified program (N=20) being the modal reason. This represents the fourth consecutive review period in which SATF has demonstrated an acceptable effort to complete suicide risk evaluations in a confidential setting.

### Privileges – Hayes Item 14

Since the last site review, SATF has demonstrated significant regression with regards to the offering of privileges in the MHCB. On the first day of the site review, there were 13 patients in the MHCB who had been there for at least 72 hour and the automated 114s were reviewed for all 13. Only 9 (69%) of the 13 had been offered yard, 10 (77%) had been offered dayroom, and 7 (54%) had been offered phone calls. During their site review on February 29, 2024, the regional

# MEMORANDUM

Mental Health Compliance Lieutenants audited this variable and found 100% compliance. In addition, the institution's local audit was reported in the SPRFIT subcommittee meeting in January 2024 and appropriate privileges were offered at a rate of 100% compliance. Therefore, it is likely that the results of this audit were non-representative of SATF's overall sustainability with regards to offering privileges to patients in the MHCB and as such, the closed CAP related to this item will not be reopened unless compliance is found to be below 90% again in the next (quarter 2 2024) review.

## Clinical Discharge Follow-Ups

A review of the performance report indicates that clinical discharge follow-ups were completed timely 91% of the time during the fourth quarter of 2023.



10.4 Timely Clinical Discharge follow-ups

This reviewer selected for audit, a random sample of 15 charts for patients who completed 5 full days of clinical discharge checks during quarter 4 of 2023. Of the 75 patient days yielded by this sample, 56 were completed by a mental health clinician. This included the last day in all 15 cases, which demonstrates improvement since the last site review. Although the safety plan was present in the chart for all 56 days, documentation reflected that it was only reviewed on 36 (64%) of those days. Eight different clinicians were responsible for those omissions. Of those eight clinicians, six had received the safety plan training since the last date of omission. Considering this, along with the fact that safety planning training is already an open CAP, a separate CAP is not indicated at this time.

## Alternative Housing – Hayes Item 5

SATF's LOP 464, Alternative/Temporary Housing outlines SATF's Alternative Housing process and was most recently updated in December 2023. It lists the prioritization of housing locations as follows:

1. *Correctional Treatment Center (CTC) licensed medical beds*
   - *Prior to housing a patient in a CTC licensed medical bed, staff shall ensure the following:*
   - *Prior to housing a patient in a CTC licensed medical bed staff must obtain approval from HCPOP.*
   - *Prior to admitting a patient to a CTC licensed medical bed staff shall obtain admitting orders from a physician.*
   - *CTC licensed medical beds do not have the same design as designated MHCB rooms. CTC licensed medical beds have not been retrofitted for optimal patient safety e.g. reduced anchor points around light fixtures and air vents, non-operational electrical outlets, high visibility.*

- *Use of licensed medical CTC beds for MHCB overflow shall be considered alternative housing; however, because CTC is a licensed setting, all patients placed in CTC pending transfer to a designated MHCB must be provided inpatient level of services in accordance with California Code of Regulations, Title 22. Patients shall not be placed in the CTC beds for mental health issues unless a referral to the MHCB has been made. The alternative housing requirements as set forth in this policy shall be followed when patients are placed into these beds.*

2. *Therapeutic treatment modules with access to water/toilets including, but not limited to, "wet cells," and/or "clinic cells." Many CTC buildings have holding cells located outside of the entrance to the licensed bed area. These are typically located in the Specialty Care Clinic area. These cells are permissible for temporary housing pending transfer without violating licensing restrictions of the licensed bed area of the CTC building.*
   a. *SATF CTC Specialty Area Holding Cell 114 (water and toilet). **Except for those patients who are on Administrative Segregation Status.***
   b. *SATF CTC Specialty Area Holding Cell 115 (water and toilet). **Except for those patients who are on Administrative Segregation Status.***

*If the need for ATH exceeds available space in CTC, reference section IV.E. within this OP.*

3. *Therapeutic Treatment Modules without toilets*
4. *Triage and Treatment Area (TTA) or other clinic exam room*
5. *Other unit-housing where complete and constant visibility can be maintained.*

*When the necessity for ATH exceeds the available areas designated in the CTC, the following areas shall be utilized according to the patient's classifications needs:*

*1- Patients, who are on Administrative Segregation status shall be placed in STRH cells 110 and 111.*

*2- Facility "E-1" shall be utilized for all patients requiring ATH. If vacant cells are available, Facility E Building 1 cells 126, 127, 128, 129, 130, 131, 132 and 133 shall be used and authorized to house patients from facilities A,D,E,F, and G.*

*3- Facility "C" shall be utilized for all General Populations patients requiring ATH. If vacant cells are available, Facility C, Building 5 shall be primarily utilized and authorized to house patients from facilities B and C.*

*4- The Facility Captain shall be responsible for providing alternative activities for non-ATH inmates who are housed in units that are being utilized for ATH (e.g., dayroom in adjoining section or yard). Movement surrounding ATH areas shall be controlled.*

   a. *Facility C - The cells used specifically for ATH are:*
      - *C5-111*
      - *C5-112*
   b. *Cells 111 and 112 shall be available 7 days a week, 24 hours a day. Permission to use these cells for ATH is granted by a Health Care Manager (Health Care Captain or Health Care Associate Warden) during regular business hours. The*

> *Administrative Officer of the Day (AOO) shall grant permission to use these cells during non-business hours.*

*5- Should overflow be necessary, Facility D shall be utilized for all Sensitive Need Yard/Non-Designated programming facility patients requiring ATH. Facility D-3 shall primarily be utilized.*

> *c.      Facility D - The cells used specifically for ATH are:*

- *O3 -114*
- *O3 - 115*
- *O3-116*
- *D3 - 117*

*Cells 116 and 117 shall be available  7 days a week, 24 hours a day.  Permission to use these cells for ATH is granted by a Health Care Manager during regular business hours.  The AOD shall grant permission to use these cells during non-business hours.*

SATF has "EZ Bed" ("stack-a-bunk") and a mattress accessible for all patients on suicide watch in alternative housing. There were not any patients on suicide watch in alternative housing during this site review.

During the fourth quarter, SATF regained compliance with the completion of suicide risk evaluations completed after MHCB rescission, with a compliance of 90%. A sample of 10 charts were selected for audit. These were the charts of patients who were referred to the MHCB for DTS during quarter 4 of 2023 but rescinded before physical placement into a MHCB. A SRASHE was present in all 10 of those cases and 8 of those 10 contained adequate clinical justification for rescission. Although they were largely qualitatively poor (see *Quality of Safety Planning* section), a safety plan was quantitatively present in all 10 charts. Both of these variables demonstrate improvement since the last site review.

A review of the performance report indicates that the institution was in compliance with alternative housing stays at 98% for the fourth quarter of 2023.



## Suicide Risk Management Program (SRMP)

SATF's LOP 230 *Suicide Risk Management Program (SRMP),* continues to be the LOP that addresses SRMP. It was most recently revised in September 2023 and remains unchanged since the last site review. It is consistent with statewide policy. At the time of this site review, there were 44 patients enrolled in the SRMP (a 5 patient increase since the last site review) at SATF

and 5 who met an objective criterion but were not enrolled (a 4 patient decrease since the last site review). Of the five patients who were not enrolled, one had been readmitted to the MHCB before returning to IDTT. A random sample of 15 patients in the SRMP program were selected for chart review and there were treatment plan goals and interventions present in the most recent Master Treatment Plan for 6 of them. The SPRFIT coordinator at SATF is developing a training to assist the individual program supervisors in running the SRMP list regularly, and also to ensure that the clinicians understand the requirements of the LOP 230. It is anticipated that this training will be delivered prior to the next (quarter 2 2024) site review and when it is, the open CAP related to this will be closed out.

## Discharge Custody Checks – Hayes Items 7 and 11

For the fourth quarter of 2023, Discharge Custody Checks (7497s) compliance is as follows:

| Month | Overall compliance |
|---|---|
| October | 93.4% |
| November | 94.9% |
| December | 85.9% |

Despite the decreasing in overall compliance that occurred in December, which was likely attributable to staffing problems, SATF continues to maintain adequate compliance with custody discharge checks. Specifically, 10 consecutive months of overall compliance had been demonstrated prior to December.

## Institution SPRFIT Committee Observation – Hayes Item 19a

The minutes for all three months of the fourth quarter were submitted and it is noted that deficiencies continue. The committee achieved quorum all three months. While the committee generally demonstrates a commitment to the SPRFIT measurement plan, not all quarterly domains were appropriately addressed in October. For example, SRE quality audits were not done and the minutes incorrectly indicate that the supervisory review of discharge safety plan process was "on hold." There were two serious self-harm events at SATF within the last six months of 2023 including one that occurred prior to the December 2023 SPRFIT committee meeting, yet there was not a clinical case review or aggregate RCA presented within the six-month period. Furthermore, improvement was not noted in the qualitative discussion of patients who were not enrolled in the SRMP. It is recognized that the last (quarter 4) site review was completed in close proximity to the end of quarter 4 so as such, the institution has not had the opportunity to make recommended adjustments accordingly. However, given that there was already a recommendation, and a CAP, related to deficient minutes prior to this review, a revised CAP will be opened with the expectation that improvement will be noted by the quarter 3 2024 review.

# MEMORANDUM

## Inmate Family Council and Inmate Advisory Council

Consistent with last review cycle, the institution has not reliably established SPRFIT representation at the Inmate Advisory Council (IAC) and Inmate Family Council (IFC) committees.

## Urgent and Emergent Referrals for Danger to Self – Hayes Item 12

During the fourth quarter of 2023, SATF was in compliance with the completion of emergency suicide risk evaluations in cases of Danger to Self (DTS) at 93%. Additionally, 99% (130/131) of all DTS cases during the quarter were appropriately triaged as emergent referrals.

| | | | |
|---|---|---|---|
| SRE after Em.Consult (except PIP) for Suicidality | 130 | 42.1 | 93% |
| SRE after Ur.Consult (except PIP) for Suicidality | 1 | 0.0 | 100% |

The month-by-month breakdown for the quarter is as follows:

| | DTS CALLS WITH A COMPLETED SRASHE | DTS CALLS APPROPRIATELY CLASSIFIED AS EMERGENT |
|---|---|---|
| October | 96% | 100% |
| November | 92% | 100% |
| December | 91% | 98% |
| Q4 2023 | 93% | 99% |

Also selected for review was a sample of 15 emergent referrals and 15 urgent referrals from quarter 4 2023. Only one of the urgent referrals had a DTS component and although a SRASHE was not completed in that case, the associated progress note offers an adequate explanation as to why. No deficiencies were noted in any of the other 29 cases. There was a DTS component in 14 of the 15 emergent referrals and a SRASHE was completed in 13 of those cases. In the one case in which a SRASHE was not completed, the referral was clinically inappropriate and unnecessary as the patient screened positive in the initial nursing screen at Receiving and Release (R&R) when arriving to SATF for MHCB placement. Ensuring the accurate urgency of mental health referrals and the timely completion of SRASHEs when indicated, continues to be a strength for SATF.

## Suicide Risk Evaluations – Hayes Item 13

Overall, suicide risk evaluations were compliant at 91% for the fourth quarter of 2023. Compliance for evaluations completed at the time of referral to a MHCB was 99%, and for rescinded MHCB referrals it was 90%. For the fourth consecutive review period, the institution remained below compliance with the completion of suicide risk evaluations at MHCB discharge (78%) and the SPRFIT committee minutes continue to lack a substantive discussion as to why. A random sample of 10 charts for patients who were rescinded from alternative housing during

quarter 4, and 10 who were discharged from the MHCB in quarter 4, found that a SRASHE was present in the chart in all 20 cases and that there was adequate justification for clinical discharge in 18 of the 20 cases. ,

## Quality Improvement Plans (QIPs) Generated by Suicide Case Reviews

The following QIPs from a suicide in 2021 and another in 2022, remain in a status of ongoing monitoring as of the time of this review.

| Issue Identified | QIP | Status |
|---|---|---|
| Patient #1 | | |
| Psychiatry-The psychiatric nurse practitioner (PNP) clinical note on September 28, 2021 includes a written plan to see the patient again in four weeks (four weeks from the September 28th appointment). Review of the electronic medical record did not reveal a scheduling order for a four-week appointment with PNP/psychiatrist and did not reveal a PNP or psychiatry clinical contact four weeks following the September 28th appointment, as was planned in the September 28, 2021 note. | **CEO and Chief Psychiatrist at SATF** will investigate and identify any individual or procedural elements/failures that contributed to this omission and enact strategies to prevent reoccurrence. | This remains unchanged since the last site review. SATF still does not have a chief psychiatrist and has not developed an alternative manner for which to track this. However, SATF is in the process of hiring a chief psychiatrist. This QIP will continue to be deferred in the meantime and will be closed out once this process is established. |
| Patient #2 | | |
| The treatment plan dated May 25, 2022 had an absence of pertinent clinical updates in the clinical summary and case formulation section of the treatment plan regarding the inmate's functioning and presentation during the review period. More specifically, current information found in other clinical documentation, including but not limited to: frequency/severity of auditory hallucinations, coping tools utilized, programming on the yard, psychiatric medication refusals, sleep disturbance, low energy, and compliance/ participation in the MAT program. Additionally, the transfer/discharge planning section did not have any meaningful clinical information, therefore, there was an absence of justification for the level of care. Per MHSDS Program Guide, 2009 Revision (12-7-12) "*The IDTT shall generally be responsible for developing and updating treatment plans. This process shall include input from the inmate-patient and other pertinent* | **The SATF-CSP CMH and/or designee** shall audit documentation for five additional inmate-patients for the identified clinician within the past 6 months (to include progress notes and treatment plans). Based on results of this audit, the CMH shall determine the best course of action. At minimum, the clinician shall be re-trained on the importance of regularly updating treatment plans in correspondence with Program Guide requirements. | This remains unchanged since the last site review. The identified clinician attended the SRASHE Core Competency training on June 12, 2023. The results of local supervisory audits have not been provided and this QIP will remain open until they are. |

| clinical information that may indicate the need for a different level of care." | | |
|---|---|---|
| Psychiatry clinical note authored on February 10, 2022 referenced "Follow up with psychiatry in 90 days …".  The psychiatrist entered scheduling order for " MH ML CCCMS Routine MHMD Contact … once every 90 days for one year" on February 10th.  Review of the chart reveals no scheduled appointment 90 days after the order was placed on February 10th. | SATF-CSP CEO and/or CMH will research this scheduling omission to discover specifics and will consider implementation of strategies to prevent reoccurrence. | This remains unchanged since the last site review. SATF still does not have a chief psychiatrist and has not developed an alternative manner for which to track this. However, SATF is in the process of hiring a chief psychiatrist. This QIP will continue to be deferred in the meantime and will be closed out once this process is established. |

## Training and Mentoring Compliance

### Clinical Training Compliance

The following was obtained from both the court ordered training SharePoint site through the end of January, as well as data reported by the institution to represent updated compliance through the end of February.

| Training | Clinicians trained/total clinicians | Compliance percentage | Compliance reported by institution |
|---|---|---|---|
| SRE Mentoring | 32/48 | 66.7% | 67% |
| Suicide Risk Evaluation (Suicide Prevention and SRASHE Core Competency Building) Training | 47/51 | 92.16% | 92% |
| Safety Planning Training | 25/42 | 57.14% | 86% |
| Suicide risk management program training | 44/53 | 83.01% | NA |
| Columbia-Suicide Severity Rating Scale Training | 25/43 | 58.14% | 58% |
| Discontinue the use of safety contracts | 61/63 | NA | (61/63) 97% |

Training compliance has improved since the last site review, however it remains poor. The institution has prioritized the delivery of SRE mentoring, due to that compliance being the lowest.

*Annual IST Suicide Prevention Training Compliance for calendar year 2023*

| Discipline | Total staff | Total in compliance | Compliance percentage |
|---|---|---|---|
| Custody | 1125 | 1044 | 92.8% |
| Mental Health | 102 | 90 | 88.2% |
| Nursing | 254 | 224 | 88.2% |

*CPR Training for calendar year 2023*

| Discipline | Total staff | Total in compliance | Compliance percentage |
|---|---|---|---|
| Custody | 1102 | 1008 | 91% |
| Nursing | 225 | 225 | 100% |

## Receiving and Release (R&R) Screening – Hayes Item 1

There were not any R&R screenings observed during this site review. The physical environment continues to be conducive to the process. The SPRFIT subcommittee minutes from January 2024 indicate that this variable was found to be 100% compliant based on the local audit.

## Crisis Intervention Team (CIT)

SATF's LOP 484 *Crisis Intervention Team* continues to serve as the institution's CIT policy. It was updated in November 2023 and aligns with statewide policy. During this onsite review, CIT was active but there were not any CIT calls observed. According to the CIT reporting tool, there were only two full CIT events during the entire fourth quarter of 2023. This low sample size is consistent with the observation made during the last site review.

## Corrective Action Plans (CAPs) Generated by a Site Review Conducted by Lindsay Hayes

OSM expert Lindsay Hayes conducted a site review of SATF on February 7-8, 2022. Table A below describes the CAPs from that visit based on his preliminary report, as well as status as of this site review. Appendix B contains a summary of site-specific progress towards Lindsay Hayes' statewide recommendations.

| Title | Definition of the Problem | March 2024 Update | Status |
|---|---|---|---|
| Safety plans | Although safety plans were required in 49 cases of patients admitted into the MHCB unit for DTS, the review found that safety plans were completed in only 31 percent (15 of 49) of the cases. Safety plans were not completed in 69 percent of the cases because clinicians incorrectly assumed that such plans were not required because the patients had been discharged from the MHCB unit at low acute risk for suicide. Such a rationale ignores the fact that MHCB patients should be at low acute risk for suicide when they are discharged from an MHCB. This reviewer's examination of the data found problems in untimely supervisory | Supervisory reviews of discharge safety plans are occurring more reliably, however safety plan quality remains poor. | **Remain open.** |

| | | |
|---|---|---|
| | review. For example, discharge SRASHEs are required to be completed prior to or during the anticipated discharge IDTT meeting, and the examination found that several supervisory reviews were occurring well after the IDTT meetings. In addition, the MHCB supervisory review did not identify the very problematic practice identified above in which MHCB clinicians (and perhaps the MHCB supervisor) incorrectly assumed that safety plans were not required because the patients had been discharged from the MHCB unit at low acute risk for suicide (pg 201-202). | |

**Preliminary findings from the most recent Lindsay Hayes site review:**

Below is a summary of the progress on the preliminary findings from Mr. Hayes' most recent review on June 29th and 30th, 2023.

| Concern | Status |
|---|---|
| Poor quality safety plans and safety plans that were not complete. | This is already an active CAP that will remain open. |
| Poor PT rounds | Significant deficiencies were not noted. |
| Safety plans not being reviewed by the MHCB supervisor. | This is already an active CAP. Improvement has been made. |
| MHCB IDTTs in which mental health leadership who does not normally attend, attended. | This remains unchanged since last review. It will likely rise to the level of a CAP, however the institution has stabilized staffing so that this is no longer problematic. |
| Inappropriate placement of patients into alternative housing upon their return from PIP or MHCB. | This practice has reportedly been discontinued and was not noted during this review. |
| Patients not being seen regularly in the MHCB. | This was noted again during this review. It is likely the result of staffing shortages that have recently stabilized, but will likely rise to the level of a CAP. |
| RNs not attending CIT. | CIT LOP reflects this requirement and is now up-to-date. CIT was not observed during this review. |
| Privileges not being reliably offered in the MHCB. | This CAP was closed during the last (Q4) review. |
| Non-compliance with training. | This was remain open |

**Assignment of Corrective Action Plans (CAPs) and Recommendations (See summary on Appendix B).**

An exit meeting was conducted with the backup SPRFIT coordinator, Chief of Mental Health, the Warden, the Chief Deputy Warden, the Chief Nursing Executive, and Healthcare Captain. During the exit, staff were informed this memorandum will be submitted to the Statewide SPRFIT committee for oversight purposes. The following is a summary of CAPs that remain open from prior reviews and their current status.

| CAP | March 2024 Update | Status |
|---|---|---|
| Measurable treatment goals and interventions are absent from the treatment plans for patients enrolled in the SRMP program. | Improvement is not noted since the last site review but a training is being planned. | **Remain open. Continue to monitor.** |
| ASU pre-placement screenings not being discussed in SPRFIT subcommittee per the measurement plan. | Improvement has not been made, however mitigation strategies have been developed. Additionally, a CAP related to overall SPRFIT minutes quality will be developed. | **Close as of Q1 2024 in favor of new CAP.** |
| Inadequate presence, and quality, of notes justifying observation and limited issue in the MHCB. | This remains problematic, but local interventions have been made and it is anticipated that improvement will be demonstrated by next site review. | **Remain open. Continue to monitor.** |
| Poor compliance with trainings (safety planning, SRE mentoring, and 7-hour SRASHE core competency. | A CAP was created and compliance is improving, but remains poor. | **Remain open.** |
| Update expired LOPs (for example CIT and alternative housing). | CIT and alternative housing policies have been updated. | **Close as of Q1 2024 review.** |

Below are concerns that did not rise to the level of a CAP from prior reviews, as well as updates and status:

| Concern | December 2023 Update | Status |
|---|---|---|
| It is recommended that the SPRFIT coordinator attend IFC and IAC every six months and that a qualitative discussion of the meeting be presented in the SPRFIT minutes the following month. | Not resolved, but will be remain in deferred status for one more review period in light of staffing shortages and greater priorities. | **Close in favor of the new CAP.** |

No recommendations not rising to the level of a Corrective Action Plan (CAP) were generated as a result of this review.

Below is the new Corrective Action Plan (CAP) that has been generated as a result of this review.

| Concern | Corrective Action Plan |
|---|---|
| The institution has not demonstrated full adherence to the SPRFIT measurement plan. Some elements of reporting are omitted from minutes. | Refresh SPRFIT committee members of SPRFTI requirements by reviewing, as a committee, the SPRFIT measurement plan and the memorandum titled *Enhancements to the Suicide Prevention and Response Focused Improvement Teams dated February 02, 2018* in the next SPRFIT meeting after receipt of this report. |

Please ensure the CAPs are updated on the project pipeline and that the project pipeline is uploaded to the SharePoint site Suicide Prevention and Response - SATF - All Documents (sharepoint.com) monthly following the SPRFIT subcommittee meeting.

**Appendices**

**APPENDIX A** – Status of deficiencies as noted in the Fifth Re-Audit and Update of Suicide Prevention Practices in the prisons of the California Department of Corrections and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs written by Lindsay M. Hayes dated October 24, 2022

| | Summary of problem identified by Lindsey Hayes in 2021 | Progress | Follow-up status |
|---|---|---|---|
| 1 | Safety plans | Minimal | **Remain open** |

**APPENDIX B-** Summary of previous CAPs assigned in prior SPRFIT site reviews.

|   | Summary of concern | Progress | Follow up status |
|---|---|---|---|
| 1 | SRMP treatment plans | Moderate | **Remain open.** |
| 2 | SPRFIT minutes | New | **Remain open** |

Appendix C: SATF's status regarding compliance with outstanding Recommendations in Lindsay Hayes' October 2022 Report

| Aspect of Recommendation that Remains Outstanding | SATF'S status | Comment |
|---|---|---|
| No. 7: Confidentiality of nursing screens in R&R | Compliant | |
| No.8: Nurse and officer safety during R&R screenings | Compliant | |
| No. 9: SRE mentoring program | Non-compliant | Less than 100% |
| No. 10: Auditing SRE quality | Non-compliant | Audits are not being done quarterly. |
| No. 12: Completing SREs (for urgent/emergent referrals for DTS | Compliant | |
| No. 13: Use of retrofitted cells in first 72 hours of ASU placement | Compliant. | |
| No. 17: Completing safety plans, supervisory audit of safety plans | Partially compliant | Safety plans are being competed, supervisory reviews have begun. |
| No. 18: Safety planning training | Partially compliant | Approaching 90% |
| No. 20: Audit psych tech practices in ASU | Compliant | |
| No. 21: Using only suicide precaution and suicide watch for patients | Compliant | |
| No. 28: Accurate completion of page 2 of the "Discharge custody check sheet" | Compliant | |
| No. 29: Accurate completion of page 1 of the "Discharge custody check sheet." | Compliant | |
| No. 31: Achieving quorum for SPFRIT meetings, incomplete local policies | Compliant | |
| No. 32: Privileges for MHCB inmates, Continuous Quality Improvement Audit, Reception Center screening. | Partially compliant | Privileges are now being reliably offered, CQIT is a statewide issue, and SATF does not have a Reception Center |

 **CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES** 

# MEMORANDUM

| | |
|---|---|
| **Date:** | 6/26/24 |
| **To:** | Statewide Suicide Prevention and Response – Focused Improvement Team Committee |
| **From:** | ▮▮▮▮▮▮, Psy.D.<br>Sr. Psychologist Specialist-Suicide Prevention Unit-R3 |
| **Subject:** | SUBSTANCE ABUSE TREATMENT FACILITY SUICIDE PREVENTION TOUR-Quarter 2 June 2024 |

On June 12th and 13th, the Statewide Suicide Prevention and Response Focused Improvement Team (SPRFIT) Coordinator for Region III conducted a review at Substance Abuse Treatment Facility (SATF). Although not on site with this reviewer, the Region III Mental Health Compliance (MHCT) lieutenants Greg Boyer and Jesse Arnett, were consulted as necessary. The focus of the review centered on the Restricted Housing Unit (RHU) and Mental Health Crisis Bed (MHCB) to ensure compliance with statewide suicide prevention and response policies. Also incorporated are the preliminary findings of Office of Special Master (OSM) expert Lindsay Hayes from his most recent review on June 29-30, 2023. Attached is the report based upon the Suicide Prevention On-site Audit Guidebook that will be provided to the Statewide SPRFIT committee for review and follow-up.

| | |
|---|---|
| Lindsay Hayes Corrective Action Plans (CAPs) that can be closed | 0 |
| CAPs generated by this reviewer during prior review that can be closed | 1 |
| Lindsay Hayes CAPs that remain open | 1 |
| CAPs previously generated by this reviewer that remain open | 3 |
| New CAPs generated as a result of this review | 1 |
| New recommendations generated as a result of this review | 1 |

**Total open CAPs=5**
**Total open recommendations=1**
**Total closed CAPs=1**

Should you have any questions or require further clarification, please contact me at (916) ▮▮▮▮
▮▮▮ or ▮▮▮▮▮▮▮▮▮▮

## Restricted Housing Units [ASU, STRH, ASU EOP HUB]

### CCCMS Restricted Housing

### Second Watch Morning Meeting

The second watch morning meeting was observed as part of this site review and consistent with prior reviews, it was a strong meeting. All required attendees were present and the team discussed new arrivals, patients in the SRMP program, patients with behavioral concerns, patients on five-day follow-ups, and recent new arrivals. The meeting was collaborative.

### Psychiatric Technician (PT) Rounds – Hayes Item 9 [ASU, ASU EOP HUB, PSU, STRH, LTRH]

One regularly assigned PT was observed completing rounds and it was done well. The PT asked all required questions of all patients including queries about sleep and appetite and suicidal ideation. The PT had a supply of puzzles that were offered to all patients. The PT checked upcoming appointments for patients as indicated, asked clarifying questions when appropriate, and generated a referral when indicated. This demonstrates improvement since the last site review. PT rounds documentation was audited locally and SPRFIT minutes from March 2024 indicate that compliance was 100%.

### Intake Cells – Hayes Item 2 [ASU, ASU EOP HUB, STRH RC, STRH]

Consistent with the last site review, the STRH at SATF is equipped with 10 retrofitted intake cells (100-109), three of which were occupied on the day of observation. All three patients had been there for less than 72 hours and there were not any patients inappropriately housed. Placards were present on all the intake cell doors and the placards denoted the start and stop time of intake status for all patients. For the month of March 2024, the institution reported in SPRFIT subcommittee that local audits found 100% compliance with the appropriate housing of RHU inmates. This demonstrates the third consecutive review period of sustained compliance.

### Entertainment Appliances [ASU, ASU EOP HUB, STRH RC, STRH]

To ensure the timely issuance of entertainment appliances, this reviewer selected 10 patients, including the 3 in intake cells, for either interview or visual inspection of the cell. All 10 had been provided a radio timely. This demonstrates the third consecutive review period of sustained improvement. As indicated during the last review, this variable was reported in the SPRFIT subcommittee in January 2024 and compliance was noted to be 100%. It is due to be reported again in July and those results will be discussed during the next (quarter 3) review.

### Welfare Check Completion (Guard One) – Hayes Item 8 [ASU, ASU EOP HUB, PSU, STRH RC, STRH, STRH Female, LTRH, Condemned]

On the day of this site review, one officer was observed completing checks and he seemed to do so appropriately. The officer took the time to look inside of each cell and seemingly established a view of living, breathing flesh before moving to the next cell. The monitoring report indicates that for the month of May 2024, there were a total of 98,471 checks expected at the

RHU and 96,984 were completed timely (not exceeding 35 minutes apart) for a compliance rate of 98.49%. As indicated in the last site review report, this variable was reported in the SPRFIT subcommittee in January 2024 and compliance was noted to be 100%. It is due to be reported again in July.

### RHU Pre-Placement Screening ("ASU Pre-Placement Form") [ASU, ASU EOP HUB, STRH RC, STRH

There were not any RHU pre-placement screenings observed as none occurred. A review of the performance report from the first quarter of 2024, indicates that compliance was 90%, which was stagnant since the last review period. Minutes from the month of January reflect that prescreens conducted in a confidential setting was presented in the SPRFIT meeting and that compliance was 100%.

## 70.1 RHU PreScreens



### RHU Post-Placement Screening ("ASU Screening Questionnaire") [ASU, ASU EOP HUB, STRH RC, STRH]

There were not any RHU Post-placement screens observed as part of this site review as none occurred. A review of the performance report for the first quarter of 2024, indicates that compliance for that time period was 96%.

## 70.2 ASU GP Screens



## Inpatient Units (MHCB and/or PIP)

### Suicide-Resistant Cells – Hayes Item 10

MHCB cells at SATF had previously been noted to be suicide resistant.

### Interdisciplinary Treatment Teams (IDTT)

This reviewer observed five IDTTs during this site review; one of which was an initial IDTT, three were discharge IDTTs, and one was a referral to an Intermediate Care Facility (ICF). All but one

of the IDTTs were for patients who were initially admitted for Danger to Self with the one exception being a discharge IDTT for a patient who had been admitted for Danger to Others (DTO). All of the IDTTs included all of the required disciplines and all were collaborative in nature with all team members contributing appropriately. The IDTT supervisor was present and served as the IDTT leader. Orders for issue and observation were discussed as necessary and a note justifying issue and observation was present in the chart in all but one case. Safety planning was discussed for only one patient and the safety plan was not thoroughly reviewed with the patient in any of the discharge IDTTs. A review of the charts for both patients indicated that neither a SRASHE nor a safety plan was present in the chart at the time of the discharge IDTT in either case. Although a review of the SharePoint site indicates that supervisory reviews of discharge safety plans have been completed ongoingly, they were not completed prior to the IDTT in either case during this review. It is noted that there has been recent turnover in the position of MHCB supervisor and that this is the second consecutive site review in which this specific deficit was noted. Prior to the next site review, the Suicide Prevention and Response Coordinator assigned to region III will provide MHCB staff an onsite training on the review of safety plans during IDTT.

## Suicide Watch and Suicide Precaution

On the first day of this site review, there were 15 patients in the MHCB; 10 of whom were on Suicide Precautions (Q11-Q15 checks) and 4 of whom were on suicide watch (1:1 direct observation). There were 17 patients in the MHCB on the second day of review, 2 of whom were on suicide watch, 13 of whom were on suicide precautions, and 2 of whom were on Q30 minute observations. It was observed that all six patients on suicide watch were under direct observation. Over the course of two days, two different nurses were observed conducting suicide precaution rounds. Observed was a total of 11 checks with 9 different patients. Both nurses were observed to conduct all rounds appropriately as they both established visual contact with the patient and documented in real time in CERNER. There were up to date issue and observation orders present on the doors in all but one case and that was brought to the attention of nursing staff and rectified in real-time.

A review of the Mental Health Observation report for May 2024, indicates that rounds for suicide precautions were completed timely at 97.4%% and they were staggered 99.4% of the time. This remains an area of strength for SATF.

## Observation and Issue Orders – Hayes Item 3

The charts were reviewed for 10 patients who completed a MHCB stay at SATF for DTS during Q1 2024 to ensure that orders for issue and observation were present in the charts, and that a clinical note justifying partial issue was present when indicated. The sample yielded a total of 46 patient days. A note justifying limited issue was quantitatively present on 22 patient days and a note justifying observation was quantitatively present on 23 patient days. There were nine patient days in which the patient was not seen by a mental health provider at all, which continues to be a concern at SATF and is likely the result of limited staffing. Of the notes that

# MEMORANDUM

were quantitatively present, justification was poor in five cases. The institution conducted a local audit of this variable and presented the results in January and they were reported as 29%, which is largely consistent with what was discovered by this reviewer. Given the ongoing concerns, this CAP will remain open and the regional SPRFIT coordinator will conduct a training for MHCB staff prior to the next site review.

## Timelines for Suicide Risk Assessments

A review of the performance report for the first quarter of 2024 (January-March), indicates that SATF completed Suicide Risk Evaluations timely 93% of the time overall.



Of the 926 SRASHEs that were completed at SATF during that time, the closed appointments report identified 212 of them. Of those 212, 179 (84%) were completed in a confidential setting, which reflects improvement since the last review period. Of the 33 contacts that were not completed in a confidential setting, 29 were for reasons that were outside of the control of the clinician, such as the patient's refusal or modified program. This represents the fifth consecutive review period in which SATF has demonstrated an acceptable effort to complete suicide risk evaluations in a confidential setting.

## Privileges – Hayes Item 14

On the second day of the site review, there were 9 patients in the MHCB who had been there for at least 72 hour and the automated 114s were reviewed for all 9. Seven of the nine (77%) had been offered yard, six of the nine (66%) had been offered dayroom, and eight of the nine (89%) had been offered phone calls. During the January SPRFIT meeting, the committee presented their local audit results as 100%. Additionally, the most recent audit by the regional lieutenants indicated 100% compliance.

## Clinical Discharge Follow-Ups

A review of the performance report indicates that clinical discharge follow-ups were completed timely 93% of the time during the first quarter of 2024.

## 20.3 Timely Clinical Discharge follow-ups



**93%**
**(740)**

This reviewer selected for audit, a random sample of 15 charts for patients who completed 5 full days of clinical discharge checks during quarter 1 of 2024. Of the 75 patient days yielded by this sample, 56 were completed by a mental health clinician. This included the last day in all 15 cases, which demonstrates the second consecutive site review of compliance. Of those 56 days, the safety plan was reviewed on 41 patient days, which demonstrates improvement since the last site review. Additionally, the local SPRFIT coordinator conducted a training with all mental health staff during this site review and it included reiteration of the requirement to review safety planning during the five-day follow-up process.

### Alternative Housing – Hayes Item 5

SATF's LOP 464, Alternative/Temporary Housing outlines SATF's Alternative Housing process and was most recently updated in December 2023. It lists the prioritization of housing locations as follows:

1. *Correctional Treatment Center (CTC) licensed medical beds*
   - *Prior to housing a patient in a CTC licensed medical bed, staff shall ensure the following:*
   - *Prior to housing a patient in a CTC licensed medical bed staff must obtain approval from HCPOP.*
   - *Prior to admitting a patient to a CTC licensed medical bed staff shall obtain admitting orders from a physician.*
   - *CTC licensed medical beds do not have the same design as designated MHCB rooms. CTC licensed medical beds have not been retrofitted for optimal patient safety e.g. reduced anchor points around light fixtures and air vents, non-operational electrical outlets, high visibility.*
   - *Use of licensed medical CTC beds for MHCB overflow shall be considered alternative housing; however, because CTC is a licensed setting, all patients placed in CTC pending transfer to a designated MHCB must be provided inpatient level of services in accordance with California Code of Regulations, Title 22. Patients shall not be placed in the CTC beds for mental health issues unless a referral to the MHCB has been made. The alternative housing requirements as set forth in this policy shall be followed when patients are placed into these beds.*
2. *Therapeutic treatment modules with access to water/toilets including, but not limited to, "wet cells," and/or "clinic cells." Many CTC buildings have holding cells located outside of the entrance to the licensed bed area. These are typically located in the Specialty Care Clinic area. These cells are permissible for temporary housing pending transfer without violating licensing restrictions of the licensed bed area of the CTC building.*
   a. *SATF CTC Specialty Area Holding Cell 114 (water and toilet). **Except for those patients who are on Administrative Segregation Status.***

b. *SATF CTC Specialty Area Holding Cell 115 (water and toilet).* ***Except for those patients who are on Administrative Segregation Status.***

*If the need for ATH exceeds available space in CTC, reference section IV.E. within this OP.*

3. *Therapeutic Treatment Modules without toilets*
4. *Triage and Treatment Area (TTA) or other clinic exam room*
5. *Other unit-housing where complete and constant visibility can be maintained.*

*When the necessity for ATH exceeds the available areas designated in the CTC, the following areas shall be utilized according to the patient's classifications needs:*

*1- Patients, who are on Administrative Segregation status shall be placed in STRH cells 110 and 111.*

*2- Facility "E-1" shall be utilized for all patients requiring ATH. If vacant cells are available, Facility E Building 1 cells 126, 127, 128, 129, 130, 131, 132 and 133 shall be used and authorized to house patients from facilities A,D,E,F, and G.*

*3- Facility "C" shall be utilized for all General Populations patients requiring ATH. If vacant cells are available, Facility C, Building 5 shall be primarily utilized and authorized to house patients from facilities B and C.*

*4- The Facility Captain shall be responsible for providing alternative activities for non-ATH inmates who are housed in units that are being utilized for ATH (e.g., dayroom in adjoining section or yard). Movement surrounding ATH areas shall be controlled.*

a. *Facility C - The cells used specifically for ATH are:*

- *C5-111*
- *C5-112*

b. *Cells 111 and 112 shall be available 7 days a week, 24 hours a day. Permission to use these cells for ATH is granted by a Health Care Manager (Health Care Captain or Health Care Associate Warden) during regular business hours. The Administrative Officer of the Day (AOO) shall grant permission to use these cells during non-business hours.*

*5- Should overflow be necessary, Facility D shall be utilized for all Sensitive Need Yard/Non-Designated programming facility patients requiring ATH. Facility D-3 shall primarily be utilized.*

c. *Facility D - The cells used specifically for ATH are:*

- *03 -114*
- *03 - 115*
- *O3-116*
- *D3 - 117*

*Cells 116 and 117 shall be available 7 days a week, 24 hours a day. Permission to use these cells for ATH is granted by a Health Care Manager during regular business hours. The AOD shall grant*

*permission to use these cells during non-business hours.*

SATF has beds and a mattress accessible for all patients on suicide watch in alternative housing. It was reported that in practice however, the specialty clinic areas (cells 114 and 115) are now only being used for patients requiring certain accommodations and otherwise, the first priority is E-1. It is recommended that an addendum to OP 464 be written to reflect this. There was one patient on suicide watch in alternative housing during this site review at RHU and it was observed that the nurse was providing constant direct observation.

A sample of 10 charts were selected for audit. These were the charts of patients who were referred to the MHCB for DTS during quarter 1 of 2024 but rescinded before physical placement into a MHCB. A SRASHE was present in all 10 of those cases and 9 of those 10 contained adequate clinical justification for rescission. A safety plan was quantitatively present in all 10 charts. Both variables demonstrate the second consecutive review period of improved performance.

A review of the performance report indicates that the institution was compliant with alternative housing stays at 98% for the first quarter of 2024, which was exactly the same as the last review period.

## 110.1 Alternative Housing Stays



## Suicide Risk Management Program (SRMP)

SATF's LOP 230 *Suicide Risk Management Program (SRMP),* continues to be the LOP that addresses SRMP. It was most recently revised in September 2023 and as such, remains unchanged since the last site review. It is consistent with statewide policy. At the time of this site review, there were 51 patients enrolled in the SRMP (a 7 patient increase since the last site review) at SATF and 4 who met an objective criterion but were not enrolled (a 1 patient decrease since the last site review). Of the four patients who were not enrolled, three had not yet been to IDTT since meeting criteria and one had been readmitted to the MHCB before returning to IDTT. A sample of 15 patients in the SRMP program were selected for chart review and there were treatment plan goals and interventions present in the most recent outpatient Master Treatment Plan for 7 of them. This demonstrates stagnant performance since the last site review. The institution reported that in May 2024, they established a desk reference for clinical staff to utilize and a training was delivered to the supervisory staff on how to monitor the SRMP list and review it during IDTT. This occurred later than the majority of the SRMP treatment plans audited during this review. Although progress has not been noted, this CAP can be closed now that the institution has established a system of self-monitoring.

## Discharge Custody Checks – Hayes Items 7 and 11

For the first quarter of 2024, the local audit of Discharge Custody Checks (7497s) compliance is as follows:

| Month | Overall compliance |
|---|---|
| January | 92.9% |
| February | 92.1% |
| March | 92.6% |

Despite an increase in overall compliance, the institution continues to struggle with the logistical issues related to the valid auditing of 7497s, such as the lack of timely submission of the forms for auditing. During the first quarter of 2024, the SPRFIT meeting discussed 7497 compliance only briefly and did not discuss deficiencies specifically.

## Institution SPRFIT Committee Observation – Hayes Item 19a

The minutes for all three months of the first quarter of 2024 were submitted. January's meeting did not meet quorum as neither the SPRFIT coordinator, nor a psychiatrist, were present. The committee therefore tabled approval of the minutes. Quorum was met the other two months of the quarter. Like what was noted in October (see quarter one report), supervisory review of discharge safety plans and quality of suicide risk evaluations, were not discussed in January. Additionally, where deficiencies are noted, the minutes do not suggest that those deficiencies are reliably considered for improvement projects or that known reasons for deficiencies are discussed. Self-harm events are tracked and reliably discussed in the SPRFIT subcommittee, however an aggregate RCA or a clinical case review of the two most serious self-harm events, still has not been. SATF experienced one serious self-harm event in January and while it was discussed in a cursory fashion the following month, a clinical case review was not presented. Finally, while the number of patients in the SRMP is reliably discussed in the SPRFIT meetings, the minutes do not reflect that the committee engaged in a discussion about the patients who meet criteria but are not enrolled.

In response to the open CAP concerning SPRFIT minutes, the institution indicated that the SPRFIT measurement plan was reviewed with the committee in May. Additionally, it was noted during this onsite review that the SPRFIT coordinator issued prompting and reminders to all disciplines regarding data that was due to be submitted during the June SPRFIT meeting. Additionally, there has been turnover in the position of SPRFIT coordinator at SATF. It is hoped that improvement will be noted during the next (quarter 3) site review.

## Inmate Family Council and Inmate Advisory Council

While the SPRFIT coordinator or designee has not yet attended either of these meetings per the SPRFIT minutes, the institutional CAP response indicates that the SPRFIT coordinator intends to do so during the next IAC meeting which is scheduled for July 2024.

## Urgent and Emergent Referrals for Danger to Self – Hayes Item 12

During the first quarter of 2024, SATF was in compliance with the completion of emergency suicide risk evaluations in cases of Danger to Self (DTS) at 98%. Additionally, 96.5% of all DTS cases during the quarter were appropriately triaged as emergent referrals.

| | Measurements | Time Overdue | Compliance |
|---|---|---|---|
| Suicide Risk Evaluation | 848 | 1.9 | 92% |
| SRE after Em.Consult (except PIP) for Suicidality | 110 | 3.1 | 98% |
| SRE after Em.Consult (except PIP) for Suspected OD | 4 | 0.0 | 100% |
| SRE after Ur.Consult (except PIP) for Suicidality | 4 | 0.0 | 100% |

The month-by-month breakdown for the quarter is as follows:

| | DTS CALLS WITH A COMPLETED SRASHE | DTS CALLS APPROPRIATELY CLASSIFIED AS EMERGENT |
|---|---|---|
| January | 99% | 98.7% |
| February | 100% | 97.5% |
| March | 97% | 100% |
| Q1 2024 | 98% | 96.5% |

Also selected for review was a sample of urgent referrals and 15 emergent referrals that were not for DTS, from quarter 1 2024. None of the urgent referrals involved a DTS concern, Nine of the emergent referrals contained a DTS concern and a SRASHE was completed timely in each case. Ensuring the accurate urgency of mental health referrals and the timely completion of SRASHEs when indicated, continues to be a strength for SATF.

## Suicide Risk Evaluations – Hayes Item 13

Overall, suicide risk evaluations were compliant at 92% for the first quarter of 2024. Compliance for evaluations completed at the time of referral to a MHCB was 100%, and for rescinded MHCB referrals it was 88%. For the fifth consecutive review period, the institution remained below compliance with the completion of suicide risk evaluations at MHCB discharge (82%) and the SPRFIT committee minutes continue to lack a substantive discussion as to why. A random sample of 10 charts for patients who were rescinded from alternative housing during quarter 1, and 10 who were discharged from the MHCB in quarter 1, found that a SRASHE was present in the chart in all 20 cases and that there was adequate justification for clinical discharge in 18 of the 20 cases.

# MEMORANDUM

## Quality Improvement Plans (QIPs) Generated by Suicide Case Reviews

The following QIPs from a suicide in 2021 and another in 2022, remain in a status of ongoing monitoring as of the time of this review.

| Issue Identified | QIP | Status |
|---|---|---|
| **Patient #1** | | |
| Psychiatry-The psychiatric nurse practitioner (PNP) clinical note on September 28, 2021 includes a written plan to see the patient again in four weeks (four weeks from the September 28th appointment). Review of the electronic medical record did not reveal a scheduling order for a four-week appointment with PNP/psychiatrist and did not reveal a PNP or psychiatry clinical contact four weeks following the September 28th appointment, as was planned in the September 28, 2021 note. | **CEO and Chief Psychiatrist at SATF** will investigate and identify any individual or procedural elements/failures that contributed to this omission and enact strategies to prevent reoccurrence. | This remains unchanged since the last site review. SATF still does not have a chief psychiatrist. There is a new plan of action currently in progress including a newly hired SRNII and an OT dedicated to addressing the backlog and scheduling appointments. This process became effective April 2024 and as such, **this can be closed out.** |
| **Patient #2** | | |
| The treatment plan dated May 25, 2022 had an absence of pertinent clinical updates in the clinical summary and case formulation section of the treatment plan regarding the inmate's functioning and presentation during the review period. More specifically, current information found in other clinical documentation, including but not limited to: frequency/severity of auditory hallucinations, coping tools utilized, programming on the yard, psychiatric medication refusals, sleep disturbance, low energy, and compliance/ participation in the MAT program. Additionally, the transfer/discharge planning section did not have any meaningful clinical information, therefore, there was an absence of justification for the level of care. Per MHSDS Program Guide, 2009 Revision (12-7-12) "*The IDTT shall generally be responsible for developing and updating treatment plans. This process shall include input from the inmate-patient and other pertinent clinical information that may indicate the need for a different level of care.*" | **The SATF-CSP CMH and/or designee** shall audit documentation for five additional inmate-patients for the identified clinician within the past 6 months (to include progress notes and treatment plans). Based on results of this audit, the CMH shall determine the best course of action. At minimum, the clinician shall be re-trained on the importance of regularly updating treatment plans in correspondence with Program Guide requirements. | This remains unchanged for the third consecutive site review. The identified clinician attended the SRASHE Core Competency training on June 12, 2023. The results of local supervisory audits have not been provided and this QIP will remain open until they are. |
| Psychiatry clinical note authored on February 10, 2022 referenced "Follow up with psychiatry in 90 days …". The psychiatrist entered scheduling order | **SATF-CSP CEO and/or CMH** will research this scheduling omission to discover specifics and will consider | There is a new plan of action currently in progress including the SRNII and an OT dedicated to addressing the backlog and scheduling appointments in a |

| for " MH ML CCCMS Routine MHMD Contact … once every 90 days for one year" on February 10th.  Review of the chart reveals no scheduled appointment 90 days after the order was placed on February 10th. | implementation of strategies to prevent reoccurrence. | timely manner. The SPRFIT coordinator regularly attends the meetings related to this. **This can now be closed out.** |

There was another death by suicide that occurred at SATF on June 5, 2024 and at the time of this report, the SCR process had not yet been completed. Should any mental health QIPs arise from it, those will be discussed in the next (quarter 3) review.

## Training and Mentoring Compliance

### Clinical Training Compliance

The following was obtained from both the court ordered training SharePoint site through the end of April 2024, as well as data reported by the institution to represent updated compliance through the end of May 2024.

| Training | Clinicians trained/total clinicians | Compliance percentage | Compliance reported by institution |
| --- | --- | --- | --- |
| SRE Mentoring | 5/50% | 10% | 33/58 (57%) |
| Suicide Risk Evaluation (Suicide Prevention and SRASHE Core Competency Building) Training | 51/56 | 91.07% | 50/57 (87.7%) |
| Safety Planning Training | 34/58 | 58.62% | 50/63 (79.4%) |
| Suicide risk management program training | 58/61 | 95.08% | 56/63 (89%) |
| Columbia-Suicide Severity Rating Scale Training | 25/47 | 53.2% | 28/47 (59.6%) |
| Discontinue the use of safety contracts | 61/63 | NA | 74/77 (96.1%) |

Training compliance at SATF remains problematic, however the SPRFIT continues to regularly discuss strategies for improving compliance in light of staffing shortages.

*Annual IST Suicide Prevention Training Compliance thus far for calendar year 2024*

| Discipline | Total staff | Total in compliance | Compliance percentage |
| --- | --- | --- | --- |
| Custody | 1126 | 374 | 33.2% |
| Mental Health | 143 | 40 | 28% |
| Nursing | 333 | 110 | 33% |

*CPR Training for calendar year 2023*

| Discipline | Total staff | Total in compliance | Compliance percentage |
|---|---|---|---|
| Custody | 1126 | 354 | 31% |
| Nursing | 287 | 282 | 98% |

## Receiving and Release (R&R) Screening – Hayes Item 1

There were two R&R screening observed during this site review. The first nurse did the screening appropriately by asking all of the questions and documenting in CERNER. The second nurse also conducted an efficient interview with the exception of having not asked the second bad news question, however there was not likely any impact on the nurse's referral decision. The physical environment continues to be conducive to the process as it affords confidentiality and safety. The SPRFIT minutes indicate that local audits of this variable were 100% compliant for all three months of the first quarter of 2024.

## Crisis Intervention Team (CIT)

SATF's LOP 484 *Crisis Intervention Team* continues to serve as the institution's CIT policy. It was updated in November 2023 and as such, remain unchanged as of this review. It aligns with statewide policy. During this onsite review, CIT was active but there were four full CIT calls observed. According to the CIT reporting tool, there were 14 full CIT events during the first quarter of 2024. When direct admissions to the MHCB are outcounted, 100% of the CIT calls included the full composition of the team and the majority included nursing documentation.

During this onsite review, there was one emergency contact for DTS observed. Although OP 484 reflects that a full CIT should convene during normal business hours, there was only a responding clinician. Consistent with statewide policy, OP 484 indicates that the local SPRFIT is responsible for determining CIT hours based on utilization rates and during each month of the first quarter, the SPRFIT minutes reflect simply that there was no updated CIT data for the month. With regards to the contact itself, the clinician completed an appropriate SRASHE and arrived at a sensible disposition.

## Corrective Action Plans (CAPs) Generated by a Site Review Conducted by Lindsay Hayes

OSM expert Lindsay Hayes conducted a site review of SATF on February 7-8, 2022. Table A below describes the CAPs from that visit based on his preliminary report, as well as status as of this site review. Appendix B contains a summary of site-specific progress towards Lindsay Hayes' statewide recommendations.

| Title | Definition of the Problem | June 2024 Update | Status |
|-------|---------------------------|------------------|--------|
| Safety plans | Although safety plans were required in 49 cases of patients admitted into the MHCB unit for DTS, the review found that safety plans were completed in only 31 percent (15 of 49) of the cases. Safety plans were not completed in 69 percent of the cases because clinicians incorrectly assumed that such plans were not required because the patients had been discharged from the MHCB unit at low acute risk for suicide. Such a rationale ignores the fact that MHCB patients should be at low acute risk for suicide when they are discharged from an MHCB. This reviewer's examination of the data found problems in untimely supervisory review. For example, discharge SRASHEs are required to be completed prior to or during the anticipated discharge IDTT meeting, and the examination found that several supervisory reviews were occurring well after the IDTT meetings. In addition, the MHCB supervisory review did not identify the very problematic practice identified above in which MHCB clinicians (and perhaps the MHCB supervisor) incorrectly assumed that safety plans were not required because the patients had been discharged from the MHCB unit at low acute risk for suicide (pg 201-202). | Supervisory reviews of discharge safety plans are occurring more reliably, however safety plan quality remains poor. | **Remain open.** |

**Preliminary findings from the most recent Lindsay Hayes site review:**

Below is a summary of the progress on the preliminary findings from Mr. Hayes' most recent review on June 29th and 30th, 2023.

| Concern | Status |
|---------|--------|
| Poor quality safety plans and safety plans that were not complete. | This is already an active CAP that will remain open. |
| Poor PT rounds | Significant deficiencies continue to not be noted. This can be resolved. |
| Safety plans not being reviewed by the MHCB supervisor. | Resolved. Reviews are being conducted. |

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

| | |
|---|---|
| MHCB IDTTs in which mental health leadership who does not normally attend, attended. | This is no longer problematic. Resolved. |
| Inappropriate placement of patients into alternative housing upon their return from PIP or MHCB. | Resolved. |
| Patients not being seen regularly in the MHCB. | This was noted again during this review and is likely the continued result of staffing shortages. |
| RNs not attending CIT. | CIT LOP reflects this requirement and is now up-to-date. CIT was not observed during this review. |
| Privileges not being reliably offered in the MHCB. | This CAP was closed during the last (Q4) review. Resolved. |
| Non-compliance with training. | This was remain open |

## Assignment of Corrective Action Plans (CAPs) and Recommendations (See summary on Appendix B).

An exit meeting was conducted with the SPRFIT coordinator, Chief of Mental Health, the Chief Executive Officer, the Acting Warden, the Associate Warden of Healthcare, the Chief Nursing Executive, and Healthcare Captain. During the exit, staff were informed this memorandum will be submitted to the Statewide SPRFIT committee for oversight purposes. The following is a summary of CAPs that remain open from prior reviews and their current status.

| CAP | June 2024 Update | Status |
|---|---|---|
| Measurable treatment goals and interventions are absent from the treatment plans for patients enrolled in the SRMP program. | The institution has established a process of self-monitoring. | Close as of Q2 2024. |
| Inadequate presence, and quality, of notes justifying observation and limited issue in the MHCB. | This remains problematic. The regional SPRFIT will conduct a training prior to August 2024. | Remain open. Continue to monitor. |
| Poor compliance with trainings (safety planning, SRE mentoring, and 7-hour SRASHE core competency. | A CAP was created and compliance continues to improved, but remains poor. | Remain open. |
| The institution has not demonstrated full adherence to the SPRFIT measurement plan. Some elements of reporting are omitted from minutes. | The committee has reviewed the SPRFIT measurement plan and the memorandum titled *Enhancements to the Suicide Prevention and Response Focused Improvement Teams dated February 02, 2018.* | Remain open in monitoring status. |

There are no outstanding concerns that did not rise to the level of a CAP from prior reviews.

Below is the recommendation not rising to the level of a Corrective Action Plan (CAP) were generated as a result of this review.

| Concern | Recommendation |
|---|---|
| The institution is not following its own LOP regarding alternative housing placement (see alternative housing section). | Create an addendum to OP464 to reflect the updated housing priorities. |

Below is the new Corrective Action Plan (CAP) that has been generated as a result of this review.

| Concern | Corrective Action Plan |
|---|---|
| Safety plans are not reliably completed prior to discharge IDTT and safety plans were not adequately reviewed. | The Region III SPRFIT coordinator will provide MHCB clinicians with an onsite training prior to August 2024. |

Please ensure the CAPs are updated on the project pipeline and that the project pipeline is uploaded to the SharePoint site Suicide Prevention and Response - SATF - All Documents (sharepoint.com) monthly following the SPRFIT subcommittee meeting.

**Appendices**

**APPENDIX A** – Status of deficiencies as noted in the Fifth Re-Audit and Update of Suicide Prevention Practices in the prisons of the California Department of Corrections and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs written by Lindsay M. Hayes dated October 24, 2022

| | Summary of problem identified by Lindsey Hayes in 2021 | Progress | Follow-up status |
|---|---|---|---|
| 1 | Safety plans | Minimal | **Remain open** |

**APPENDIX B**- Summary of previous CAPs assigned in prior SPRFIT site reviews.

|  | Summary of concern | Progress | Follow up status |
|---|---|---|---|
| 1 | SRMP treatment plans | Moderate | **Close.** |
| 2 | Issue and observation justification | Minimal | **Remain open** |
| 3 | Training compliance | Moderate | **Remain open** |
| 4 | SPRFIT minutes | Moderate | **Remain open** |

**Appendix C: SATF's status regarding compliance with outstanding Recommendations in Lindsay Hayes' October 2022 Report**

| Aspect of Recommendation that Remains Outstanding | SATF'S status | Comment |
|---|---|---|
| No. 7: Confidentiality of nursing screens in R&R | Compliant | |
| No.8: Nurse and officer safety during R&R screenings | Compliant | |
| No. 9: SRE mentoring program | Non-compliant | Less than 100% |
| No. 10: Auditing SRE quality | Non-compliant | Audits are not being done quarterly. |
| No. 12: Completing SREs (for urgent/emergent referrals for DTS | Compliant | |
| No. 13: Use of retrofitted cells in first 72 hours of ASU placement | Compliant. | |
| No. 17: Completing safety plans, supervisory audit of safety plans | Partially-compliant | See IDTT section above. |
| No. 18: Safety planning training | Partially compliant | Approaching 90% |
| No. 20: Audit psych tech practices in ASU | Compliant | |
| No. 21: Using only suicide precaution and suicide watch for patients | Compliant | |
| No. 28: Accurate completion of page 2 of the "Discharge custody check sheet" | Compliant | |
| No. 29: Accurate completion of page 1 of the "Discharge custody check sheet." | Compliant | |
| No. 31: Achieving quorum for SPFRIT meetings, incomplete local policies | Partially-compliant | Quorum was not met one of 3 months. |
| No. 32: Privileges for MHCB inmates, Continuous Quality Improvement Audit, Reception Center screening. | Partially compliant | Privileges are now being reliably offered, CQIT is a statewide issue, and SATF does not have a Reception Center |

# MEMORANDUM

EXHIBIT F-040

 **CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES** 

# MEMORANDUM

| | |
|---|---|
| **Date:** | 10/17/2024 |
| **To:** | Statewide Suicide Prevention and Response – Focused Improvement Team Committee |
| **From:** | ███████, Psy.D.<br>Sr. Psychologist Specialist-Suicide Prevention Unit-R3 |
| **Subject:** | SUBSTANCE ABUSE TREATMENT FACILITY SUICIDE PREVENTION TOUR-Quarter 3 September 2024 |

On September 18th and 19th, the Statewide Suicide Prevention and Response Focused Improvement Team (SPRFIT) Coordinator for Region III conducted a review at Substance Abuse Treatment Facility (SATF). Although not on site with this reviewer, the Region III Mental Health Compliance (MHCT) lieutenants Greg Boyer and Jesse Arnett, were consulted as necessary. The focus of the review centered on the Restricted Housing Unit (RHU) and Mental Health Crisis Bed (MHCB) to ensure compliance with statewide suicide prevention and response policies. Also incorporated are the preliminary findings of Office of Special Master (OSM) expert Lindsay Hayes from his most recent review on June 29-30, 2023. Attached is the report based upon the Suicide Prevention On-site Audit Guidebook that will be provided to the Statewide SPRFIT committee for review and follow-up.

| | |
|---|---|
| Lindsay Hayes Corrective Action Plans (CAPs) that can be closed | 0 |
| CAPs generated by this reviewer during prior review that can be closed | 0 |
| Lindsay Hayes CAPs that remain open | 1 |
| CAPs previously generated by this reviewer that remain open | 4 |
| New CAPs generated as a result of this review | 0 |
| New recommendations generated as a result of this review | 0 |

**Total open CAPs=5**
**Total open recommendations=0**
**Total closed CAPs=0**

Should you have any questions or require further clarification, please contact me at (916) 385-4177 or sean.mintz@cdcr.ca.gov

# MEMORANDUM

## Restricted Housing Units [ASU, STRH, ASU EOP HUB]

### CCCMS Restricted Housing

### Second Watch Morning Meeting

The second watch morning meeting was observed as part of this site review and it was noted to be a strong meeting. All required attendees were present and the team discussed new arrivals, patients in the SRMP program, patients with behavioral concerns, patients on five-day follow-ups, and recent new arrivals. Although the meeting included a discussion of intake cell usage, the accuracy of the reporting is questionable (see *Intake Cells* section below).

### Psychiatric Technician (PT) Rounds – Hayes Item 9 [ASU, ASU EOP HUB, PSU, STRH, LTRH]

One regularly assigned PT was observed completing rounds and overall, rounding was strong. This PT was noted to have a positive rapport with all the patients with whom he interacted. The PT asked all required questions of all patients including queries about sleep and appetite, treatment adherence, and suicidal ideation. PT rounds documentation was audited locally and SPRFIT minutes from all three months of the second quarter of 2024 indicate that compliance was 100% each month.

### Intake Cells – Hayes Item 2 [ASU, ASU EOP HUB, STRH RC, STRH]

Consistent with the last site review, the CCCMS RHU at SATF is equipped with 10 retrofitted intake cells (100-109), 8 of which were occupied on the day of observation. One of the occupied intake cells housed two individuals for a total of nine individuals in intake cells. All nine patients had been there for less than 72 hours. There was one patient inappropriately housed as this patient had been at the RHU for less than 72 hours but was neither in an intake cell nor housed with a cellmate. There was at least one intake cell available at RHU, plus the additional intake cells at E-1. This matter was discussed with custody leadership in real-time. Placards were present on all the intake cell doors and the placards denoted the start and stop time of intake status for all patients. The institution reported in SPRFIT subcommittee that local audits found 100% compliance with the appropriate housing of RHU individuals during each month of the second quarter. While the local audits demonstrate the fourth consecutive review period of sustained compliance, the local observation demonstrates a regression in performance. Prior to the finalization of this report, the regional mental health compliance lieutenants conducted a review of the intake cells at SATF on September 26th and found that the institution was compliant. Given that, as well as the institution's own local auditing results, this will not rise to the level of a CAP at this time. Rather, this reviewer will conduct a mid-quarter onsite observation of the intake cells and based on the results of that observation, it will be determined whether or not a CAP is indicated.

### Entertainment Appliances [ASU, ASU EOP HUB, STRH RC, STRH]

To ensure the timely issuance of entertainment appliances, this reviewer selected 10 patients, including 6 of the individuals in intake cells and 4 others who had been at the unit for less than 21 days. It was determined, either through interview or observation, that all 10 had been issued a radio. This variable was reported in the SPRFIT subcommittee in July 2024 and compliance was noted to be 100%.

### Welfare Check Completion (Guard One) – Hayes Item 8 [ASU, ASU EOP HUB, PSU, STRH RC, STRH, STRH Female, LTRH, Condemned]

On the day of this site review, one officer was observed completing checks and he seemed to do so appropriately. The officer took the time to look inside of each cell and seemingly established a view of living, breathing flesh before moving to the next cell. The monitoring report indicates that for the month of August 2024, there were a total of 111,517 checks expected at the RHU and 109,901 were completed timely (not exceeding 35 minutes apart) for a compliance rate of 98.55%. This variable was reported in the SPRFIT subcommittee in July 2024 and compliance was noted to be 100%.

### RHU Pre-Placement Screening ("ASU Pre-Placement Form") [ASU, ASU EOP HUB, STRH RC, STRH

There were not any RHU pre-placement screenings observed as none occurred. A review of the performance report from the second quarter of 2024, indicates that compliance was 87%, which was a slight decrease since the last review period, however the institution conducted 45 more such screens. Minutes from the month of July reflect that prescreens conducted in a confidential setting was presented in the SPRFIT meeting and that compliance was 100%.

**70.2 RHU PreScreens**



### RHU Post-Placement Screening ("ASU Screening Questionnaire") [ASU, ASU EOP HUB, STRH RC, STRH]

There were not any RHU Post-placement screens observed as part of this site review as none occurred. A review of the performance report for the second quarter of 2024, indicates that compliance for that period was 87%. This represents a 9% decrease since the last review period, however the institution conducted 14 more such evaluations.

**70.3 RHU GP Screens**



## Inpatient Units (MHCB and/or PIP)

### Suicide-Resistant Cells – Hayes Item 10

MHCB cells at SATF had previously been noted to be suicide resistant.

### Interdisciplinary Treatment Teams (IDTT)

This reviewer observed five IDTTs during this site review; one of which was an initial IDTT and the other four were discharge IDTTs. All five patients had initially been admitted for Danger to Self (DTS). All required members of the IDTT were present and there were three different psychologists, including the MHCB supervisor, who served as primary clinician. Issue and observation were discussed in four of the five cases and justification for such was present in the chart in all five cases. The safety plan was discussed with the patient in all five cases as indicated, however it was noted that the safety plans were being completed with the patient in real time during the IDTT, rather than in advance of the IDTT. This reviewer provided this feedback to the mental health leadership at SATF. Despite this deficiency, it represents improvement since the last site review. Although review of the one discharge safety plan was not entered into the SharePoint site, a review of that site indicates that the supervisor has been reliably and regularly completing those audits. Quality of IDTT was locally audited in June and reported in July as 77% compliant. In summary, the IDTT process at SATF is on a trajectory of improvement.

### Quality of Safety Planning – Hayes Item 4

According to the performance report, there were five safety plan audits conducted locally at SATF during the second quarter of 2024. This reviewer conducted an audit of 20 safety plans that were completed during that same quarter (10 for patients who were discharged from the MHCB and 10 for patients who were rescinded from alternative housing) and 7 (35%) were determined to be adequate. This reviewer conducted an onsite refresher training specific to safety planning, however that training was delivered after the conclusion of the second quarter. Additionally, the MHCB supervisor has been conducting ongoing local audits and has noticed improvements since this training was conducted. If 80% of the safety plans or more are determined to be adequate during the next (quarter 4) site review, the open CAP related to safety planning will be closed at that time.

### Suicide Watch and Suicide Precaution

On the day of observation, there were 18 patients in the MHCB; 13 of whom were on suicide precautions (Q11-Q15 checks), 4 of whom were on suicide watch (1:1 direct observation), and 1 of whom was on Q30 observation. Two different nurses were observed conducting suicide precaution rounds on a total of nine different patients and all rounds were conducted appropriately. The observer looked into the room and established visual contact with the patient each time and also charted in real time in CERNER. All four of the patients on suicide watch were

being constantly and attentively observed as well. Up to date issue and observation orders were present on all the observed cell doors.

A review of the Mental Health Observation report for August 2024, indicates that rounds for suicide precautions were completed timely at 83.7% which represents a significant decrease since the last site review. The checks were staggered 97.9% of the time.

## Observation and Issue Orders – Hayes Item 3

The charts were reviewed for 10 patients who completed a MHCB stay at SATF for DTS during Q2 2024 to ensure that orders for issue and observation were present in the charts, and that a clinical note justifying partial issue was present when indicated. The sample yielded a total of 44 patient days. Orders for both issue and observation were present in the chart each day and a note justifying both limited issue and observation was quantitatively present on 35 patient days. This demonstrates improvement since the last site review. Of those 35 notes, 26 were deemed to be of adequate quality. The justification for limited issue was insufficient in seven cases and in the other two cases, the note was inconsistent with the order (for example, the note says the patient is on "suicide watch" when the order is for suicide precautions). This reviewer conducted a training on July 31, 2024 and it included proper issue and observation justification. The CAP related to this will be closed if improvement is noted in the next (quarter 4) review.

## Timelines for Suicide Risk Assessments

A review of the performance report for the second quarter of 2024 (April-June), indicates that SATF completed Suicide Risk Evaluations timely 91% of the time overall.

**20.4 Suicide Risk Evaluation**



Of the 1,122 SRASHEs that were completed at SATF during that time, the closed appointments report identified 242 of them. Of those 213, 179 (88%) were completed in a confidential setting, which reflects an ongoing pattern of sustained improvement since the last review period.

## Privileges – Hayes Item 14

Of the 18 patients who were in the MHCB on the day of this review, 11 had been there for at least 72 hours and the automated 114s were reviewed for all 11. All 11 had been offered dayroom, 9 of the 11 had been offered yard, and 8 of the 11 had been offered phone calls.

## Clinical Discharge Follow-Ups

A review of the performance report indicates that clinical discharge follow-ups were completed timely 93% of the time during the second quarter of 2024.

**20.6 Timely Clinical Discharge follow-ups**



This reviewer selected for audit, a random sample of 15 charts for patients who completed 5 full days of clinical discharge checks during quarter 2 of 2024. Of the 75 patient days yielded by this sample, 51 were completed by a mental health clinician. This included the last day in all 15 cases, which demonstrates the third consecutive site review of compliance. Of those 51 days, the safety plan was reviewed on 29 patient days, which demonstrates a decline in performance since the last site review. The local SPRFIT coordinator conducted a refresher training on five-day follow-ups June 12, 2024, and this training included the need to review the safety plan during each day of the five day follow up process. Only 4 of the 15 patients selected for audit were seen after the date of that training and as such, the effectiveness of this training can be more accurately determined based on data from the next quarterly review.

## Alternative Housing – Hayes Item 5

SATF's LOP 464, Alternative/Temporary Housing outlines SATF's Alternative Housing process and has been revised since the last site review and is due for approval in November of 2024. It states that *the following have been identified as primary ATH cells within SATF and shall be utilized according to the patient's classification needs:*

1. *Patients, who are classified as Maximum Custody status shall be placed in Restricted Housing Unit (RHU) cells 110 and 111.*

2. *Facility "E-1" shall be utilized for all patients requiring ATH. If vacant cells are available, Facility E Building 1 cells 126, 127, 128, 129, 130, 131, 132 and 133 shall be used and authorized to house patients from all facilities.*

   a. *In the event the patient is designated as DPW, the patient shall be placed in the CTC cell 114.*

3. *Facility "C" shall be utilized for all General Populations patients requiring ATH. If vacant cells are available, Facility C Building 5 shall be primarily utilized and authorized to house patients from Facilities B and C.*

4. *The Facility Captain shall be responsible for providing alternative activities for non-ATH incarcerated persons who are housed in units that are being utilized for ATH (e.g., dayroom in adjoining section or yard). Movement surrounding ATH areas shall be controlled.*

  a. *Facility C - The cells used specifically for ATH are:*

- *C3 – 112*
- *C5 – 111*

  b. *Cells C3 - 112 and C5 - 111 shall be available seven (7) days a week, 24 hours a day. Permission to use these cells for ATH is granted by a Health Care Manager (Health Care Captain or Health Care Associate Warden) during regular business hours. The Administrative Officer of the Day (AOD) shall grant permission to use these cells during non-business hours.*

  c. *Facility D - The cells used specifically for ATH are:*

- *D3 - 114*
- *D3 - 115*
- *D3 - 116*
- *D3 – 117*

  d. *Cells D3 - 116 and D3 - 117 shall be available seven (7) days a week, 24 hours a day. Permission to use these cells for ATH is granted by a Health Care Manager during regular business hours. The AOD shall grant permission to use these cells during non-business hours.*

 5. *For overflow purposes, Facility "D" shall be utilized for all Sensitive Needs Yard patients requiring ATH.*

 6. *Staff shall ensure that patients housed in ATH have reasonable access to water and toilets.*

There was one patient on suicide watch in alternative housing during this site review at E-1 and it was observed that the nurse was providing constant direct observation.

A sample of 10 charts were selected for audit. These were the charts of patients who were referred to the MHCB for DTS during quarter 2 of 2024 but rescinded before physical placement into a MHCB. A SRASHE was present in all 10 of those cases and 9 of those 10 contained adequate clinical justification for rescission. A safety plan was quantitatively present in all 10 charts. Both variables demonstrate the third consecutive review period of improved performance.

A review of the performance report indicates that the institution was compliant with alternative housing stays at 99% for the second quarter of 2024, which demonstrates ongoing compliance.



## Suicide Risk Management Program (SRMP)

SATF's LOP 230 *Suicide Risk Management Program (SRMP),* continues to be the LOP that addresses SRMP. It was most recently revised in August 2024 and was in draft format at the time of this review. It is consistent with statewide policy. At the time of this site review, there were 65 patients enrolled in the SRMP (a 14 patient increase since the last site review) at SATF and 13 who met an objective criterion but were not enrolled (a 9 patient increase since the last site review); however several were false positives and the institutional SPRFIT was aware of this. Of the four patients who were not enrolled, three had not yet been to IDTT since meeting criteria and one had been readmitted to the MHCB before returning to IDTT. A sample of 15 patients in the SRMP program were selected for chart review and there were treatment plan goals and interventions present in the most recent outpatient Master Treatment Plan for 9 of them. This demonstrates a slight improvement in performance since the last site review. The institution continues to have a system of self-monitoring.

## Discharge Custody Checks – Hayes Items 7 and 11

For the second quarter of 2024, the local audit of Discharge Custody Checks (7497s) compliance is as follows:

| Month | Overall compliance | Domains impacting compliance |
|-------|-------------------|------------------------------|
| April | 92.6% | NA |
| May | 92.6% | NA |
| June | 71.8% | Supervisor review, checks discontinued after no more than 72 hours. |

SPRFIT minutes suggest that the institution continues to monitor the 7497 compliance.

## Institution SPRFIT Committee Observation – Hayes Item 19a

This reviewer attended the SPRFIT subcommittee meeting on September 18, 2024, and it was strong. The chief psychiatrist was not present and the MHCB served as the approved designee. The committee otherwise met quorum and all required measures were discussed per the measurement plan. The team discussed self-harm incidents, progress on CAPs and improvement projects, and upcoming LOP revisions. The meeting was generally collaborative. Additionally, the minutes for all three months of the second quarter of 2024 were submitted. Although all three months indicate that quorum was met, this is incorrect as there was not a psychiatrist present during any of the meetings. Additionally, although a Senior Psychologist Supervisor was assigned as a designee each month, that individual was also not in attendance in June. Improvement has since been made as the institution has hired a chief psychiatrist. For the third

consecutive review period, supervisory review of discharge safety plans and quality of suicide risk evaluations, were not discussed quarterly. Otherwise, the committee has made substantial improvements in ensuring that all measures are discussed per the measurement plan. The team discussed self-harm incidents each month. There was one severe self-harm incident in May and as such, there was a clinical case review presented in June.

In summary, the SPRFIT minutes reflect improvement in some areas that had previously been deemed deficient; for example adherence to the measurement plan and presentation of clinical summaries or Root Cause Analyses (RCAs) for severe self-harm incidents; however other deficiencies remain; for example quorum and presentation of quarterly audit results. As such, the CAP related to SPRFIT minutes will remain open and in monitoring status.

## Inmate Family Council and Inmate Advisory Council

The SPRFIT coordinator attended IFC in August 2024.

## Urgent and Emergent Referrals for Danger to Self – Hayes Item 12

During the second quarter of 2024, SATF was in compliance with the completion of emergency suicide risk evaluations in cases of Danger to Self (DTS) at 95% and 99% of all DTS cases during the quarter were appropriately triaged as emergent referrals.

|  | Measurements | Time Overdue | Compliance |
|---|---|---|---|
| Suicide Risk Evaluation | 1122 | 6.0 | 91% |
| SRE after Em.Consult (except PIP) for Suicidality | 165 | 20.0 | 95% |
| SRE after Em.Consult (except PIP) for Suspected OD | 1 | 0.0 | 100% |
| SRE after Ur.Consult (except PIP) for Suicidality | 1 | 257.0 | 0% |

The month-by-month breakdown for the quarter is as follows:

|  | DTS CALLS WITH A COMPLETED SRASHE | DTS CALLS APPROPRIATELY CLASSIFIED AS EMERGENT |
|---|---|---|
| April | 100% | 97.4% |
| May | 99% | 100% |
| June | 86% | 98% |
| Q2 2024 | 95% | 99% |

Also selected for review was a sample of 15 urgent referrals and 15 emergent referrals that were not for DTS, from quarter 2 2024. Only one of the urgent referrals involved a DTS concern and as such, should have been triaged as emergent. Of the 15 emergent referrals, 10 contained a

DTS concern and a SRASHE was completed timely in each case. Ensuring the accurate urgency of mental health referrals and the timely completion of SRASHEs when indicated, continues to be a strength for SATF.

## Suicide Risk Evaluations – Hayes Item 13

The institution completed 15 suicide risk evaluation audits during the second quarter and none were deemed to have passed. Overall, suicide risk evaluations were compliant at 91% for the second quarter of 2024. Compliance for evaluations completed at the time of referral to a MHCB was 97%, and for rescinded MHCB referrals it was 85%. Suicide risk evaluations at MHCB discharge was 92% compliant and this demonstrated improvement since the last site review. A random sample of 10 charts for patients who were rescinded from alternative housing during quarter 2, and 10 who were discharged from the MHCB in quarter 2, found that a SRASHE was present in the chart in all 20 cases and that there was adequate justification for clinical discharge in 18 of the 20 cases.

## Quality Improvement Plans (QIPs) Generated by Suicide Case Reviews

As of this review, there is a QIPs from a suicide in 2022 that remains in a status of ongoing monitoring (patient #1). Also below is the current status on QIPs regarding a death by suicide that occurred on June 5, 2024 that resulted in one mental health QIP at SATF (patient #2), one that occurred on June 6, 2024 at SATF resulted in five mental health QIPs (patient #3), and one that occurred on June 16, 2024 that resulted in five QIPs at SATF (patient #4).

| Issue Identified | QIP | Status |
|---|---|---|
| Patient #1 | | |
| The treatment plan dated May 25, 2022 had an absence of pertinent clinical updates in the clinical summary and case formulation section of the treatment plan regarding the inmate's functioning and presentation during the review period. More specifically, current information found in other clinical documentation, including but not limited to: frequency/severity of auditory hallucinations, coping tools utilized, programming on the yard, psychiatric medication refusals, sleep disturbance, low energy, and compliance/ participation in the MAT program. Additionally, the transfer/discharge planning section did not have any meaningful clinical information, therefore, there was an absence of justification for the level of care. Per MHSDS Program Guide, 2009 Revision (12-7-12) "*The IDTT shall generally be responsible for developing* | **The SATF-CSP CMH and/or designee** shall audit documentation for five additional inmate-patients for the identified clinician within the past 6 months (to include progress notes and treatment plans). Based on results of this audit, the CMH shall determine the best course of action. At minimum, the clinician shall be re-trained on the importance of regularly updating treatment plans in correspondence with Program Guide requirements. | Some progress has been made since the last site review. The identified clinician attended the SRASHE Core Competency training on June 12, 2023. Local supervisory audits were conducted and they yielded unsatisfactory results. This clinician was referred for re-mentoring and was assigned a new mentor on July 6, 2024 but is currently out on medical leave. This will remain open until this clinician returns to work and is re-mentored. |

| *and updating treatment plans. This process shall include input from the inmate-patient and other pertinent clinical information that may indicate the need for a different level of care."* | | |
|---|---|---|
| **Patient #2** | | |
| The safety plan completed on June 2, 2024, as part of the discharge suicide risk assessment was low quality. Although the content was clinically relevant, it was repeated in each field of safety plan form and not responsive to each field's purpose. | **The Chief Mental Health at SATF** shall conduct a review to determine what actions or training is required. | The Chief of Mental Health or designee at SATF shall submit a memorandum describing actions taken or training completed and include proof of practice as indicated. **Recommended follow-up:** The CMH proactively addressed this concern by instructing the local SPRFIT coordinator to provide all staff with training on July 10, 2024. Since then, the new SRE has become available for statewide use and the CMH will provide training on this on October 16, 2024. Given that the SRE chart audit is presently on hold, the October 16th training will suffice to close this out once it occurs. |
| **Patient #3** | | |
| During the year prior to the patient's death, multiple EOP contacts, one MHCB daily contact, and an Initial IDTT, were not completed within Program Guide timelines. Also, an average of 10 hours of structured treatment hours were not offered per policy. | **The CMH or designee at SATF** shall review their local triage plan in light of the identified problems to determine if any changes are indicated. | If changes to the triage plan are indicated, please submit a revised version of the plan. Otherwise, submit the most recent version of the triage plan. **Recommended Follow-up:** SATF has submitted the most recent triage plan and revisions have not been deemed necessary. It is unlikely that this concern will fully resolve until staffing improves and as such, **this can now be closed out.** |
| SRASHE's completed on March 21, 2024, March 24, 2024, and May 27, 2024, contained incorrect information within the chronic and acute risk factors section which was not updated during subsequent contacts. | **The CMH or designee at SATF** shall determine the best course of action to address the quality of the SRASHE documentation. The CMH shall determine whether re-training on SRASHE documentation should be completed for the identified clinicians or all mental health clinicians. | Please provide a memorandum detailing the review of the factors contributing to these concerns and any identified course of action. Please submit all memorandums or policy generated because of these concerns or training materials provided to the staff and all 844's. **Recommended Follow-up:** The CMH proactively addressed this concern by instructing the local SPRFIT coordinator to provide all staff with training on July 10, 2024. Since then, the new SRE has become available for statewide use and the CMH will provide training on this on October 16, 2024. Given that the SRE chart audit is presently on hold, the October 16th training will suffice to close this out once it occurs. |
| Concerns regarding safety plans were identified, including safety plans not | **The CMH or designee at SATF** shall review this concern and provide | Please provide a memorandum detailing the review of the factors |

| | | |
|---|---|---|
| being updated during the 5-day follow-up process. | refresher Safety Plan trainings to their clinical staff. One component of the refresher trainings should include the concerns identified in this case. | contributing to these concerns and any identified course of action. Please submit all memorandums or policy generated because of these concerns or training materials provided to the staff and all 844's. **Recommended follow-up:** Prior to this issue being identified, SATF had proactively addressed this concern via an audit of 5-day follow-ups. A training was delivered to all staff on June 12 and a desk-reference was created. A follow-up audit indicated that additional training was indicated for some clinicians, which they received on July 17, 2024. This will be closed out if the Q4 site review indicates 80% compliance with the reviewing of safety plans during the five-day follow-up process. |
| While at SATF, the scheduling and completion of psychiatry contacts were often untimely. Several instances were identified where psychiatry contacts were late or missing. | **The Chief Psychiatrist or designee** will address these omissions with schedulers and/or other relevant staff, giving some special attention to the scheduling of consults. | Chief Psychiatrist or designee will provide memorandum (or similar) documenting discussion of strategies or remedies to prevent future recurrences. **Recommended follow-up:** The Chief Psychiatrist at SATF has indicated that a process will be developed in collaboration with psychiatry providers and schedulers and that it will be presented during a staff meeting on November 5, 2024. Assuming receipt of 844s, this can be closed out during the next (quarter 4) site review. |
| On or around April 4, 2024, psychiatry failed to complete the Master Tx Plan Psychiatry Review power form. | **The Chief Psychiatrist or designee** will address this omission with psychiatrist(s). | Chief Psychiatrist or designee will provide memorandum (or similar) documenting discussion or instruction. **Recommended follow-up:** The Chief Psychiatrist at SATF has indicated that a training regarding compliance with program guide timelines, will be provided during a staff meeting on November 5, 2024. Assuming receipt of 844s, this can be closed out during the next (quarter 4) site review. |
| | **Patient #4 (Beadles)** | |
| Several issues were found in review of SRASHEs completed at SATF over a several month period. The SRASHEs in question were dated September 5, 2023, September 6, 2023 (two separate assessments), November 29, 2023, and January 17, 2024. *(See Disc/Conc section for additional information).* | **The CMH or designee** shall review the identified issues and decide the best course of action, which may include additional training on completion of risk assessment.<br><br>Regarding concerns with quality of Safety Plans, which is an open CAP for SATF, **the CMH or designee** shall | **The CMH or designee** shall provide a memorandum detailing the review of the factors contributing to poor risk assessment and any identified course of action. If training is provided, please include all training materials, 844s, and supporting documentation. **Recommended follow-up:** Of the three identified clinicians, one retired, one had not completed SRASHE mentoring |

| | review their current plan to improve safety planning at SATF. | as of the time of the incident, and one was reenrolled in Safety Planning training. **This portion of this QIP can now be closed out.**<br><br>Regarding concerns with Safety Plans, **the CMH or designee** shall provide a memorandum detailing what the institution is already doing/has done to improve the quality of safety planning, such as working to increase the number of staff who have completed the statewide Safety Plan training. **Recommended follow-up:** Prior to this issue being identified, SATF had proactively addressed this concern via an audit of 5-day follow-ups. A training was delivered to all staff on June 12 and a desk-reference was created. A follow-up audit indicated that additional training was indicated for some clinicians, which they received on July 17, 2024. This will be closed out if the Q4 site review indicates 80% compliance with the reviewing of safety plans during the five-day follow-up process. |
| Several issues were found in review of a Five-Day Follow-up series completed between September 6, 2023 and September 12, 2023. Specifically, the mental health clinician did not complete all sections of the Power Form on September 7, 2023 and September 8, 2023. The Safety Plan was not reviewed with the patient on September 10, 2023 and September 12, 2023. None of the four mental health clinicians who completed the Five-Day Follow-ups modified the Safety Plan despite there being no documented information in the Self-Harm to *Affect External Changes and Environmental/Safety Concerns* sections, both of which were relevant for the patient. | This issue was identified by SATF earlier this year and the SPR FIT Coordinator provided an in-depth Five-Day Follow-up training to all mental health clinicians in June 2024. Thus, the **CMH or designee** shall conduct an audit to determine if the training was effective in improving the quality of Five-Day Follow-ups at the institution. | **The CMH or designee** shall provide a memorandum detailing how the audit was completed and the results. If the audit demonstrates further improvement is needed, please submit the institution's plan to address this issue. If remedies are undertaken and include re-training or instruction, a Form 844 (Sign-in Sheet) and all training materials needs to be submitted with the memorandum. **Recommended follow-up:** The issue was identified by SATF prior to this review and the SPRFIT coordinator provided an in-depth Five-Day Follow-Up training to all mental health clinicians in June 2024. In August, an internal audit of 25 randomly selected internal MHCB discharges was conduced and as a result, individualized training was provided. The last of which was conducted on September 12, 2024. The SPRFIT coordinator will conduct 25 more audits in September and 25 more in October to assess if further action is needed and as such, this will be addressed during the next (Q4 review). |

| | | |
|---|---|---|
| The patient attended his EOP IDTT on November 8, 2023. The Maste Treatment Plan was missing pertinent information with nothing documented in the *Clinical Summary, Case Formulation (other than "see prior)*. *Patient's Strengths, Patient's verbalized treatment goals, Treatment Plan,* and *Discharge Plan* boxes. | **The CMH or designee** shall review the identified issues and decide the best course of action, which may include additional training on treatment planning. | **The CMH or designee** shall provide a memorandum detailing the review of the factors contributing to these concerns and any identified course of action. If training is provided, please include all training materials, 844s, and supporting documentation. **Recommended follow-up:** The identified clinician attended Case Formulation training on February 14, 2024. However, an audit by the CMH and a designee of 20 Master Treatment Plans from August found missing case formulation updates, treatment goals, and discharge plans across the institution. As a result, the SPRFIT coordinator provided individual training to staff on case formulation. SATF will continue to monitor and report on this measure for 60 days from September 24, 2024 and assess what additional interventions might be needed. Therefore, this QIP will be addressed again in the next (quarter 4) review. |
| The patient's referral to the MHCB was rescinded on September 7, 2023 and he was returned to the EOP LOC. However, his Initial EOP IDTT was not completed until November 8, 2023. According to the MHSDS Program Guide 2009 Revision, the IDTT shall be held "within 14 calendar days from arrival at the EOP." Additionally, between September 5, 2023 and April 2, 2024 while at the EOP Mainline, Mr. Beadles' was offered no more than three hours of structured therapeutic group per weeks, with some weeks having no offered therapeutic groups. | **The CMH or designee** shall review their current plan to address this deficiency. | **The CMH or designee** shall submit, in a memorandum, a plan to address this deficiency regarding low therapeutic group hours offered to EOP patients. **Recommended follow-up:** This was deemed to be a function of inadequate staffing at SATF. Staffing for both mental health clinicians and recreation therapists, has since slightly improved and as such, so has treatment hours offered. This variable ranged between 35% and 62% for the six-month period between February and July 2024 and will likely remain stagnant until staffing improves further. As such, **this can now be closed.** |

## Training and Mentoring Compliance

### Clinical Training Compliance

The following was obtained from both the court ordered training SharePoint site through the end of August 2024, as well as data reported by the institution to represent updated compliance through the end of August 2024.

| Training | Clinicians trained/total clinicians | Compliance percentage | Compliance reported by institution |
|---|---|---|---|
| SRE Mentoring | 31/53 | 58.5% | 32/45 (71%) |
| Suicide Risk Evaluation (Suicide Prevention and SRASHE Core Competency Building) Training | 55/56 | 98.21% | 55/56 (98.2%) |
| Safety Planning Training | 56/57 | 98.24% | 56/57 (98.2%) |
| Suicide risk management program training | 58/60 | 96.7% | 58/60 (96.6%) |
| Columbia-Suicide Severity Rating Scale Training | 29/52 | 55.77% | 29/52 (55.7%) |
| Discontinue the use of safety contracts | NA | NA | 79/84 (94%) |

Training compliance at SATF continues to be on a trajectory of improvement.

*Annual IST Suicide Prevention Training Compliance thus far for calendar year 2024*

| Discipline | Total staff | Total in compliance | Compliance percentage |
|---|---|---|---|
| Custody | 1047 | 737 | 70.4% |
| Mental Health | 136 | 95 | 69.9% |
| Nursing | 325 | 214 | 65.8% |

*Bi-annual CPR Training so far for calendar year 2024*

| Discipline | Total staff | Total in compliance | Compliance percentage |
|---|---|---|---|
| Custody | 1029 | 1029 | 100% |
| Nursing | 284 | 284 | 100% |

## Receiving and Release (R&R) Screening – Hayes Item 1

There was one R&R screening observed during this site review and it was adequate with one minor concern. Specifically, rather than asking the patient if he had a mental health diagnosis, the nurse asked him what his mental health level of care was and documented accordingly. Otherwise, the nurse asked all the required questions and documented appropriately in CERNER. The physical environment continues to be conducive to the process as it affords confidentiality and safety. The SPRFIT minutes indicate that local audits of this variable were 100% compliant for all three months of the second quarter of 2024.

## Crisis Intervention Team (CIT)

SATF's LOP 484 *Crisis Intervention Team* continues to serve as the institution's CIT policy. It was updated in August 2024. It continues to align with statewide policy. During this onsite review,

CIT was active and there was one full CIT call observed. The call involved a patient in R&R and the full composition of the team (R&R sergeant, R&R RN, and psychologist) convened before the call and discussed the case afterwards. The RN and the sergeant were both dismissed prior to the conclusion of the contact, but in this case, it was clinically indicated to do so. The psychologist completed the SRE and the CIT powerform. The team arrived at a clinically appropriate disposition. According to the CIT reporting tool, there were 60 full CIT events during the second quarter of 2024; 12 in which the patient was referred to a MHCB and 48 in which the patient was not. For cases in which the patient was referred to a MHCB, the correct composition of the team was present in 67% of the cases and 75% of the cases contained correct nursing documentation. For cases in which the patient was not referred to a MHCB, the full composition of the team was present 67% of the time and nursing documentation was completed 63% of the time.

## Corrective Action Plans (CAPs) Generated by a Site Review Conducted by Lindsay Hayes

OSM expert Lindsay Hayes conducted a site review of SATF on February 7-8, 2022. Table A below describes the CAPs from that visit based on his preliminary report, as well as status as of this site review. Appendix B contains a summary of site-specific progress towards Lindsay Hayes' statewide recommendations.

| Title | Definition of the Problem | September 2024 Update | Status |
|-------|---------------------------|------------------------|--------|
| Safety plans | Although safety plans were required in 49 cases of patients admitted into the MHCB unit for DTS, the review found that safety plans were completed in only 31 percent (15 of 49) of the cases. Safety plans were not completed in 69 percent of the cases because clinicians incorrectly assumed that such plans were not required because the patients had been discharged from the MHCB unit at low acute risk for suicide. Such a rationale ignores the fact that MHCB patients should be at low acute risk for suicide when they are discharged from an MHCB. This reviewer's examination of the data found problems in untimely supervisory review. For example, discharge SRASHEs are required to be completed prior to or during the anticipated discharge IDTT meeting, and the examination found that several supervisory reviews were occurring well after the IDTT meetings. In addition, the MHCB | Supervisory reviews of discharge safety plans are occurring more reliably, and safety plan quality is improving. | **Remain open.** |

| | supervisory review did not identify the very problematic practice identified above in which MHCB clinicians (and perhaps the MHCB supervisor) incorrectly assumed that safety plans were not required because the patients had been discharged from the MHCB unit at low acute risk for suicide (pg 201-202). | | |
|---|---|---|---|

**Preliminary findings from the most recent Lindsay Hayes site review:**

Below is a summary of the progress on the preliminary findings from Mr. Hayes' most recent review on June 29th and 30th, 2023.

| Concern | Status |
|---|---|
| Poor quality safety plans and safety plans that were not complete. | This is already an active CAP that will remain open for one more review period at least. |
| Patients not being seen regularly in the MHCB. | This was not noted again during this review and will stay in monitoring phase. |
| RNs not attending CIT. | CIT LOP reflects this requirement and is now up-to-date. This concern was not noted during this review. |
| Non-compliance with training. | SRE mentoring remains out of compliance. |

**Assignment of Corrective Action Plans (CAPs) and Recommendations (See summary on Appendix B).**

An exit meeting was conducted with the SPRFIT coordinator, Chief of Mental Health, the Warden, the Associate Warden of Healthcare, and Healthcare Captain. During the exit, staff were informed this memorandum will be submitted to the Statewide SPRFIT committee for oversight purposes. The following is a summary of CAPs that remain open from prior reviews and their current status.

| CAP | September 2024 Update | Status |
|---|---|---|
| Inadequate presence, and quality, of notes justifying observation and limited issue in the MHCB. | This remains problematic. The regional SPRFIT conducted a training and improvement is expected to be seen next review. | **Remain open for one more site review. Continue to monitor.** |
| Poor compliance with trainings (safety planning, SRE mentoring, and 7-hour SRASHE core competency. | Only SRE mentoring remains non-compliant but improvement has been noted. | **Remain open.** |
| The institution has not demonstrated full adherence to the SPRFIT | Moderate improvement noted. | **Remain open in monitoring status.** |

| | | |
|---|---|---|
| measurement plan. Some elements of reporting are omitted from minutes. | | |
| Safety plans are not reliably completed prior to discharge IDTT and safety plans were not adequately reviewed. | The Region III SPRFIT coordinator provided MHCB clinicians with an onsite training on July 31, 2024. | **Remain open. Close if improvement is noted next review.** |

Below is the recommendation not rising to the level of a Corrective Action Plan (CAP) that was generated as a result of a prior review.

| Concern | Recommendation | September 2024 Status |
|---|---|---|
| The institution is not following its own LOP regarding alternative housing placement (see alternative housing section). | Create an addendum to OP464 to reflect the updated housing priorities. | Resolved. Close out |

There are no new CAPs or recommendations not rising to the level of a CAP as the result of this site review.

Please ensure the CAPs are updated on the project pipeline and that the project pipeline is uploaded to the SharePoint site Suicide Prevention and Response - SATF - All Documents (sharepoint.com) monthly following the SPRFIT subcommittee meeting.

# MEMORANDUM

**Appendices**

**APPENDIX A** – Status of deficiencies as noted in the Fifth Re-Audit and Update of Suicide Prevention Practices in the prisons of the California Department of Corrections and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs written by Lindsay M. Hayes dated October 24, 2022

| | Summary of problem identified by Lindsey Hayes in 2021 | Progress | Follow-up status |
|---|---|---|---|
| 1 | Safety plans | Minimal | **Remain open** |

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

# MEMORANDUM

**APPENDIX B**- Summary of previous CAPs assigned in prior SPRFIT site reviews.

| | Summary of concern | Progress | Follow up status |
|---|---|---|---|
| 1 | Issue and observation justification | Minimal | **Remain open** |
| 2 | Training compliance | Moderate | **Remain open** |
| 3 | SPRFIT minutes | Moderate | **Remain open** |
| 4 | Completion of safety plans prior to DC IDTT. | Minimal | **Remain open.** |

# MEMORANDUM

Appendix C: SATF's status regarding compliance with outstanding Recommendations in Lindsay Hayes' October 2022 Report

| Aspect of Recommendation that Remains Outstanding | SATF'S status | Comment |
|---|---|---|
| No. 7: Confidentiality of nursing screens in R&R | Compliant | |
| No.8: Nurse and officer safety during R&R screenings | Compliant | |
| No. 9: SRE mentoring program | Partially-compliant | Less than 90% but improving. |
| No. 10: Auditing SRE quality | Deferred. | Audits are on hold. |
| No. 12: Completing SREs (for urgent/emergent referrals for DTS | Compliant | |
| No. 13: Use of retrofitted cells in first 72 hours of ASU placement | Partially-Compliant. | Non-compliance noted by this reviewer but compliance noted by MHC Lts. |
| No. 17: Completing safety plans, supervisory audit of safety plans | Partially-compliant | See IDTT section above. |
| No. 18: Safety planning training | Compliant | |
| No. 20: Audit psych tech practices in ASU | Compliant | |
| No. 21: Using only suicide precaution and suicide watch for patients | Compliant | |
| No. 28: Accurate completion of page 2 of the "Discharge custody check sheet" | Partially-compliant | See relevant section above. |
| No. 29: Accurate completion of page 1 of the "Discharge custody check sheet." | Partially-compliant | See relevant section above. |
| No. 31: Achieving quorum for SPFRIT meetings, incomplete local policies | Partially-compliant | Quorum was not met all 3 months. |
| No. 32: Privileges for MHCB inmates, Continuous Quality Improvement Audit, Reception Center screening. | Partially compliant | Privileges are now being reliably offered, CQIT is a statewide issue, and SATF does not have a Reception Center |

**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758