| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>MARGOT MENDELSON – 268583<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Telephone: (510) 280-2621 | MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>LISA ELLS – 243657<br>JENNY S. YELIN – 273601<br>THOMAS NOLAN – 169692<br>MICHAEL S. NUNEZ – 280535<br>MARC J. SHINN-KRANTZ – 312968<br>ALEXANDER GOURSE – 321631 |
| CLAUDIA CENTER – 158255<br>DISABILITY RIGHTS EDUCATION<br>AND DEFENSE FUND, INC.<br>Ed Roberts Campus<br>3075 Adeline Street, Suite 210<br>Berkeley, California 94703-2578<br>Telephone: (510) 644-2555 | ADRIENNE PON HARROLD – 326640<br>BENJAMIN W. HOLSTON – 341439<br>MAYA E. CAMPBELL – 345180<br>LUMA KHABBAZ – 351492<br>JARED MILLER – 353641<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California 94105-1738<br>Telephone: (415) 433-6830 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | Case No. 2:90−CV−00520−KJM−SCR<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S EXPERT'S SUPPLEMENTAL REPORT REGARDING SUICIDE PREVENTION MEASURES 31 AND 32**<br><br>Judge: Hon. Kimberly J. Mueller |

[4640526.3]

Case No. 2:90−CV−00520−KJM−SCR

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S EXPERT'S SUPPLEMENTAL REPORT REGARDING SUICIDE PREVENTION MEASURES 31 AND 32

**INTRODUCTION**

Defendants object to the Special Master's Suicide Prevention Expert's Sixth Re-Audit Supplemental Report regarding his Recommendations 31 and 32. They challenge Special Master expert Lindsay Hayes's findings as to Measure 31 and argue that Mr. Hayes should have re-audited Measure 32 with Defendants' 2024 reports. *See* Defendants' Response to the Supplemental Report, ECF No. 8475 (hereinafter "Defendants' Response"). Defendants' evidence and their arguments do not establish compliance on either front. Plaintiffs urge the Court to overrule Defendants' objections, or, at a minimum, defer ruling on the objections to Measure 32 so that Mr. Hayes can do a complete review of the new materials on which Defendants rely as part of his Seventh Re-Audit round.

Measure 31 of the Special Master's Expert's Recommendations for Suicide Prevention relates to Defendants' Suicide Prevention and Response Focused Improvement Teams (SPRFITs). Defendants respond to Mr. Hayes's updated finding that seven of their institutions were non-compliant with this measure by offering evidence purporting to show that three of those seven institutions are, in fact, in compliance. *See* Defendants' Response at 5-9.[1] Defendants' arguments are specious and should be rejected. The offered evidence does not show that Mr. Hayes committed any error in his supplemental report. The Court should adopt the Special Master's finding that seven institutions are non-compliant with this measure.

As for Measure 32, the subpart of that measure that is the subject of this supplemental report is Defendants' suicide prevention Continuous Quality Improvement (CQI) process. Defendants argue that new evidence from their 2024 audit reports show that they are compliant with the relevant criteria for this metric. *See* Defendants' Response at 9-21. They also criticize Mr. Hayes for not examining this evidence. *See id.* at 9-10.

---

[1] Citations to documents in the record use ECF pagination.

Yet the Court never ordered Mr. Hayes to do so, *see* Tr. 9/30/24 at 35:13-36:2, and the 2024 reports are not within the scope of the Sixth Re-Audit audit period of April 2022 through December 2023. *See* Hayes's Sixth Re-Audit of CDCR's Suicide Prevention Practices, ECF No. 8143-1 at 1. Moreover, the Court has ordered that the data remediation process must conclude by May 1, 2025, and Defendants' CQI process cannot be assessed in full until all indicators have been remediated. *See* Dec. 6, 2024 Order, ECF No. 8485 at 2-3. Given this timeline and the fact that Mr. Hayes has not yet viewed Defendants' purported evidence of compliance, this Court should either overrule Defendants' objections as to Measure 32, or adopt the remainder of the Sixth Re-Audit report, defer ruling on this issue, and order Mr. Hayes to review Defendants' new audit reports as part of his next round of monitoring.

## I. DEFENDANTS' OBJECTIONS AS TO MEASURE 31 IGNORE DEFENDANTS' LACK OF COMPLIANCE WITH THEIR OWN POLICIES

Measure 31 measures whether 1) SPRFITs achieved six consecutive months of meeting quorums for all mandatory members or their designees; (2) the degree to which each SPRFIT conducted either root cause analyses (RCAs) or clinical case reviews of serious suicide attempts; (3) the degree to which each SPRFIT tracked patients in the Suicide Risk Management Program (SRMP) and reviewed them during monthly meetings; (4) the degree to which facilities had Local Operating Procedures (LOPs) for various suicide-prevention-related issues; and (5) the degree to which each SPRFIT tracked prior corrective actions recommended by regional SPRFIT coordinators or by Mr. Hayes. *See* Special Master's Report on his Suicide Prevention Expert's Supplemental Report Regarding Measures 31 and 32, ECF No. 8475 (hereinafter "Hayes Supp. Report") at 6. Defendants' objections to Mr. Hayes's supplemental report on this measure lack merit and should be overruled.

### A. Measure 31 Appropriately Assesses Defendants' Compliance with Their Own Policy Regarding SPRFIT Meetings

As they already stated in their original objections, *see* ECF No. 8179 at 80,

1  Defendants first complain that Mr. Hayes's requirement of attendance of all mandatory
2  members or their designees is too stringent.  Defendants' Response at 6-7; *see also*
3  Plaintiffs' Response to May 16, 2024 Order, ECF No. 8282 at 61-62 (responding to
4  Defendants' original objection).  Defendants misrepresent that this "standard of
5  perfection" is "the expert's standard." *Id.*  Just as is the case with all other components of
6  Measure 31, Mr. Hayes has not made these requirements up out of whole cloth.  He is
7  simply measuring Defendants' compliance with *their own policies*:  Their February 2018
8  Memorandum on "Enhancements to the Suicide Prevention and Response Focused
9  Improvement Teams," which was updated in 2023, requires that "[a] SPRFIT meeting
10 shall include mandatory members or designee to establish a quorum."  *See* 2021 Revised
11 Program Guide, ECF No. 7333-1 at 611; Declaration of Jared Miller (hereinafter "Miller
12 Decl.") ¶ 2 & Ex. A.  In overruling Defendants' general objections regarding Measure 31,
13 the Court also made this clear.  *See* Tr. 9/30/24 at 33:2-19 (detailing how Defendants
14 developed a SPRFIT policy and that those requirements "track the metrics Mr. Hayes has
15 audited as required by the Court's 2018 order").[2]

16      Requiring attendees from all disciplines makes sense as a policy matter as well.
17 The SPRFIT meetings cover issues that touch on psychiatry, psychology, nursing,
18 restricted housing, and custody, among others.  *See* ECF No. 7333-1 at 612-16.  Each
19 member designated in Defendants' own policy covers a different area related to suicide
20 prevention, necessitating their presence, or that of an assigned designee, at each meeting.
21 For example, a Director of Nursing cannot take the place of a Senior Psychiatric
22 Technician or Psychiatric Technician, as Defendants claim.  *See* Defendants' Response at
23 7-8.  As the policy makes clear, psychiatric technicians are part of the SPRFIT mandatory
24 membership because they can speak on issues specific to patients housed in restrictive

---

[2] Despite making this objection, Defendants appear to recognize that Mr. Hayes's auditing metrics come from this policy, given that they cited this same policy in their own brief. *See* Defendants' Response at 4.

housing. *See* ECF No. 7333-1 at 618. For that reason, Defendants' policy does not permit nurses to serve as designees for the psychiatric technician role. *Id.* What Defendants claim is an inappropriately "high standard," *see* Defendants' Response at 7, is proper because it ensures that *all* of an institution's suicide prevention practices are appropriately reviewed. The Court should continue to require the same.

### B. The Evidence Submitted by Defendants Should Not Change Mr. Hayes's Conclusion that Seven Institutions are Non-Compliant with Measure 31

Defendants concede that four of the institutions included in Mr. Hayes's Supplemental Report were non-compliant with Measure 31. Defendants submitted various documents from the SPRFIT meetings at San Quentin Rehabilitative Center (SQRC), California Medical Facility (CMF), and California State Prison-Solano (SOL), in order to claim that those institutions were compliant with Measure 31. Defendants' arguments are baseless, given that their own evidence and their own policies do not support a finding of compliance for those three institutions. The Court should find that those institutions are not compliant with Measure 31, in addition to the four other institutions where the non-compliance is uncontested.

#### 1.  SQRC

Defendants challenge Mr. Hayes's finding that SQRC was non-compliant for the criteria of 1) having a quorum for all mandatory members or designees at six consecutive SPRFIT meetings; and 2) whether the SPRFIT conducted either semi-annual RCAs or clinical case summaries of serious suicide attempts when appropriate. *See* Defendants' Response at 7-8.

For the quorum metric, they claim that Mr. Hayes should not have found SQRC to be non-compliant because the Director of Nursing was present at the meeting as a designee for the psychiatric technician. *Id.* at 7. This is incorrect. First, Defendants' own evidence admits non-compliance: The document Defendants rely on lists the Director of Nursing as an attendee as part of the SPRFIT Committee for the *Psychiatric Inpatient Programs*, not the SPRFIT committee at issue here, and it explicitly answers the question, "Quorum Met

1  this Meeting?" with a check next to the box that reads: "No."  Ex. A to Defendants'

2  Response, ECF No. 8505-2 at 2.  Moreover, as noted above, Defendants' own policy also

3  does not permit a Director of Nursing to serve as a designee for a psychiatric technician.

4  *See* ECF No. 7333-1 at 612 ("A SPRFIT meeting shall include mandatory members or

5  designees to establish a quorum.  Designees are only allowed if the mandatory member is

6  absent or must attend to an emergency or other critical situation."); *id.* at 618 (requiring

7  either a Senior Psychiatric Technician or Psychiatric Technician to attend SPRFIT

8  meetings, with no other designees listed).  Defendants' objection is meritless.

9       Defendants' attempt to establish compliance with respect to the requirement of an

10 RCA or clinical case summary is also insufficient.  Defendants claim compliance by

11 asserting that an "RCA was conducted during [an unspecified] SPRFIT meeting,"

12 submitting evidence of a completed clinical case review.[3]  *See* Defendants' Response at 7-

13 8; Ex. B to Defendants' Response, ECF No. 8505-3.  But merely conducting a clinical case

14 review does not show that "[t]he results of the mental health clinical review, including

15 remedial action" were "presented and discussed at an upcoming [SPRFIT] meeting for

16 discussion and review," as Defendants' policy requires, because there is no documentation

17 of any discussion of the case review in the meeting minutes.  *See* Miller Decl. ¶ 2 & Ex. A

18 at 2; Ex. A to Defendants' Response, ECF No. 8505-2.  In fact, Defendants concede this

19 lack of documentation.  *See* Defendants' Response at 7-8.[4]  It was reasonable for

20 Mr. Hayes to conclude that the required discussion did not take place.  Finally, even if this

21 clinical case review did occur in a timely fashion, and even if the SPRFIT Committee did

---

[3] To clarify, Defendants appear to have mistakenly claimed that an RCA was conducted while instead offering a clinical case review as evidence.  The difference is inconsequential for these purposes, as their policy does allow for SPRFIT Committees to either conduct a semi-annual aggregate RCA of serious suicide attempts during the past six months, or prepare clinical case reviews of each serious suicide attempt.  *See* Miller Decl. ¶ 2 & Ex. A at 1.

[4] The lack of a date on the submitted case review makes it even more difficult to establish that the case review was discussed at a specific SPRFIT meeting.  *See* Ex. B to Defendants' Response.

1  discuss it, the case review also appears to be non-compliant with Defendants' policy.
2  Their policy requires every clinical review to include a "discussion of the unique factors
3  that influenced the individual's decision to take their own life," an "[i]dentification of risk
4  factors," and a review of the "[a]dequacy of emergency response," among other elements.
5  *See* Miller Decl. ¶ 2 & Ex. A at 2.  None of these elements are contained in the two-page
6  document.  *See* Ex. B to Defendants' Response.  Defendants' attempt at establishing
7  compliance again fails here.

### 2. CMF

9  Defendants take issue with four different areas of non-compliance at CMF: (1) lack
10 of quorums; (2) failure to track and review patients in the SRMP; (3) lack of RCAs or
11 clinical case reviews for serious suicide attempts; and (4) missing LOPs for the Crisis
12 Intervention Team (CIT) and SRMP.  Defendants' Response at 8.

13 Their objections are similarly insufficient.  On the issue of quorums, as with SQRC,
14 Defendants claim compliance based on the fact that a nurse was designated in place of a
15 psychiatric technician for the May 2024 meeting.  *Id.*  Again, this substitution is not
16 compliant with Defendants' own policy.  ECF No. 7333-1 at 612, 618.

17 For the SRMP metric, Defendants argue CMF is compliant based on the fact that all
18 SPRFIT minutes "reference" the SRMP.  Defendants' Response at 8.  These references to
19 the SRMP consist of a single sentence that covers the percentage of patients eligible for the
20 SRMP but who are <u>not</u> enrolled in the program.  *See* Exhibit C to Defendants' Response,
21 ECF No. 8505-4 at 6, 16, 26, 37, 47, 57.  Mr. Hayes' auditing clearly requires that the
22 SPRFIT "track[] patients in the [SRMP] and review[] them during monthly meetings as
23 required by policy."  *See* Hayes Supp. Report at 3.  The point of the SRMP is to provide
24 extra attention to patients who are at high risk of suicide; simply "referenc[ing]" the SRMP
25 and, in particular, not at all discussing patients actually currently in the program does not
26 qualify as compliance with that policy.

27 For the issue with clinical case reviews, Defendants respond to the fact that there
28 should have been two clinical case reviews for serious suicide attempts by claiming that

the slides accompanying the minutes for the January SPRFIT meeting show that a December suicide attempt was discussed at that meeting. Defendants' Response at 8. The cited pages of the exhibit contain five sentences giving a very short description of the patient's history; the document does not actually contain any slides at all. *See* Ex. C to Defendants' Response. Moreover, even if slides did exist that showed that the committee did discuss this suicide attempt, that does not mean that any staff member completed an actual *case review* or that the committee discussed that case review. Most importantly, Defendants nowhere address the fact that Mr. Hayes pointed to *two* serious suicide attempts without a case review, not just one. *See* Hayes Supp. Report at 13.[5]

### 3. SOL

Defendants also contest Mr. Hayes's findings that SOL was not compliant with the quorum and SRMP requirements. Again, their arguments are unconvincing.

On the issue of quorums, they claim compliance because a healthcare lieutenant appeared at a meeting in lieu of the Associate Warden for Healthcare Access or a captain. Defendants' Response at 9. The fact that the captain position was vacant at the time is irrelevant considering Defendants' policy specifically requires the attendance of the Associate Warden or a designee that "must be a classification no lower than a Captain." ECF No. 7333-1 at 618.

For the SRMP requirement, they argue for compliance because SOL's SPRFIT minutes referenced the SRMP in three out of six months, and the committee did not discuss the SRMP during the other three meetings because SOL "had no patients eligible for SRMP during those months." Defendants' Response at 9. Again, Defendants seem to

---

[5] Defendants also claim that they had LOPs in place for the CIT and the SRMP during the review period. *See* Defendants' Response at 8. The document provided by Defendants—a general policy covering "Suicide Prevention Program Procedures"—does not appear to contain these two LOPs. *See* Ex. D to Defendants' Response, ECF No. 8505-5. Even if it did, the fact that Defendants did not provide Mr. Hayes with these documents during his audit should weigh in favor of a finding of non-compliance. *See* Hayes Supp. Report at 13.

misunderstand what their SPRFIT committees are required to do: They must substantively "track" and "review" patients in the SRMP, not just reference them, in the SPRFIT meetings. Hayes Supp. Report at 6. If there are no patients in the program, the SPRFIT minutes should still reflect this fact. *Id.* at 13. This Court should not deem SOL compliant when there is no evidence that its SPRFIT even discussed the SRMP.

Plaintiffs urge the Court to overrule Defendants' objections to the Supplemental Report's findings regarding Measure 31.

## II. THE COURT SHOULD OVERRULE THE OBJECTIONS REGARDING MEASURE 32 OR DEFER RULING AND ORDER A RE-AUDIT OF THIS MEASURE AS PART OF THE NEXT ROUND

At this early stage of establishing that Defendants' CQI process functions properly with respect to suicide prevention, Mr. Hayes's auditing of this aspect of Measure 32 focuses on ensuring that Defendants' SPRFIT coordinators are examining all metrics related to the appropriate suicide prevention policies. As a result, his auditing criteria currently covers only two aspects of Defendants' compliance: (1) whether all 19 "Suicide Prevention Audit Checklist" measures are incorporated into the CQI guidebook; and (2) whether each individual facility's CQI audit report is formatted to contain data on all 19 suicide prevention measures. Hayes Supp. Report at 23. He ultimately praises the regional SPRFIT coordinator reports for being "generally thorough," but concludes that Defendants are not yet in compliance, because the CQI Guidebook has not been finalized, and because "each coordinator monitored most, but not all, of the measures required within the CQI Guidebook." *Id.* at 23-26.

Defendants complain that Mr. Hayes did not look at any new evidence in reaching this conclusion, restating many of the same objections that they lodged in their objections to his original reporting on the CQI process. *Compare* Defendants' Response at 9-21 *with* Defendants' Objections to the Sixth Re-Audit, ECF No. 8179 at 83-101. They ignore the fact that, unlike with Measure 31, the Court did not order Mr. Hayes to examine any new data as part of compiling this supplemental report. *Compare* Tr. 9/30/24 at 33:20-35:12 (ordering Defendants to provide Mr. Hayes with six months of new SPRFIT meeting

1  minutes and asking him to re-audit this data) *with id.* at 35:13-22 (sustaining an objection
2  as to the CQI process and "refer[ring] the CQIT issues back to the special master for a
3  supplemental report," but with no directive to examine new information that post-dated his
4  Sixth Re-Audit report).  This supplemental report is part of the Sixth Re-Audit, which
5  covers Defendants' compliance from April 2022 through December 2023.  *See* Hayes's
6  Sixth Re-Audit of CDCR's Suicide Prevention Practices, ECF No. 8143-1 at 1.  It would
7  not make sense for Mr. Hayes to examine data outside of that time period unless the Court
8  had specifically directed him to do so.  And while the supplemental report does not
9  examine new data, it does respond to Defendants' objections to his original report by
10 eliminating references to issues that go beyond those two metrics.  For example, while
11 Mr. Hayes previously criticized the fact that SPRFIT auditors did not come close to
12 conducting four quarterly audits for all 21 institutions in 2023, *see* ECF No. 8143-1 at 59-
13 60, he excised this critique from his supplemental report, *see* Hayes Supp. Report at 23-26,
14 as the Court identified that it had never ordered Defendants to undertake quarterly audits.
15 *See* Tr. 9/30/24 at 45:4-15.

16    Defendants also put far too much weight on a single statement made by the Court at
17 the September 30 hearing—that the Court is "sustaining the objection as to [the continuous
18 quality improvement] aspect of this measure." *Id.* at 35:17-18.  Defendants appear to have
19 interpreted this statement to mean that all four of their original objections (including 15
20 different subparts to one of their objections) were all sustained.  *See* ECF No. 8179 at 83-
21 101.  That interpretation strains credulity.  This Court sustained the objection in the context
22 of the fact that "Plaintiff[s are] not seeking contempt at this point on the continuous quality
23 improvement." Tr. 9/30/24 at 35:16-17.  That ruling did not mean that the Court agreed
24 that every single criticism of Mr. Hayes's original report levied by Defendants was valid.
25 It simply meant that the Court agreed that contempt was not appropriate at this juncture,
26 for this aspect of this measure.

27    Defendants have asked this Court to find that their CQI process is in compliance,
28 but as Mr. Hayes noted, the Suicide Prevention On-Site Audit Guidebook—which

provides CDCR's auditors with the metrics they must use in their auditing—has not been finalized. *See* Hayes Supp. Report at 23. Defendants call this concern "speculative" and argue that Mr. Hayes "will never be satisfied that the [Guidebook] is complete." Defendants' Response at 10-11. This is untrue. Mr. Hayes cannot say that Defendants' CQI process is in compliance at this juncture, when Defendants' CQI process depends on the final remediation of their data indicators—an effort that has now taken over five years but is scheduled to conclude by May 1, 2025. *See* ECF No. 8485 at 2-3. Once that project is finally complete, Defendants can show in the next auditing round that their auditors are appropriately examining and reporting data on all 19 suicide prevention measures using the finalized Guidebook. As this Court has repeatedly recognized, the "all-important" CQI tool and a functioning CQI process are vital to ensuring that Defendants can adequately self-monitor the provision of mental health care to the plaintiff class. *See* Sept. 30, 2020 Order, ECF No. 6846 at 25; Dec. 17, 2020 Order, ECF No. 6996 at 6-8. It makes sense for Mr. Hayes to re-assess Defendants' compliance with the CQI component of Measure 32 once the indicators are finalized.

The Court should either overrule Defendants' objections or defer ruling and order Mr. Hayes to re-examine Defendants' compliance with this subpart of Measure 32 as part of the Seventh Re-Audit. Defendants claim that had Mr. Hayes examined their 2024 audit reports, he would have seen "the best evidence of the current level of compliance with Measure 32." Defendants' Response at 9-10. Mr. Hayes can review those reports, as well as any relevant 2025 reports, during his next audit, and determine at that point whether Defendants' CQI process is in full compliance with his recommendation.

## CONCLUSION

This Court should reject Defendants' proffered evidence regarding Measure 31 and find, consistent with the Special Master's expert's report, that they are out of compliance with this measure for seven of 21 institutions. For the CQI subpart of Measure 32, the Court should either overrule Defendants' objections or adopt the remainder of Mr. Hayes's Sixth Re-Audit and defer ruling on these objections pending a re-auditing of Defendants'

2024 and/or 2025 CQI reports during his next round of auditing.

**CERTIFICATION**

Plaintiffs' counsel certifies that he reviewed the following orders in preparing this filing: ECF Nos. 8485, 8475, 8473, 8460, 8433, 8414, 8238, 8192, 8137, 7743, 6996, 6846.

DATED: February 7, 2025

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Jared Miller*
    Jared Miller

Attorneys for Plaintiffs

[4640526.3]

11

Case No. 2:90−CV−00520−KJM−SCR

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER EXPERT'S SUPPLEMENTAL REPORT REGARDING SUICIDE PREVENTION MEASURES 31 AND 32