Rob Bonta, State Bar No. 202668
Attorney General of California
Monica N. Anderson, State Bar No. 182970
Senior Assistant Attorney General
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Namrata Kotwani, State Bar No. 308741
Christian M. Georgely, State Bar No. 322952
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
Lawrence M. Cirelli, SBN 114710
Paul B. Mello, SBN 179755
Samantha D. Wolff, SBN 240280
Kaylen Kadotani, SBN 294114
David C. Casarrubias-González,
SBN 321994
Mollie Levy, SBN 333744
Samantha Bacon, SBN 351561
425 Market Street, 26th Floor
 San Francisco, California 94105
 Telephone: 415-777-3200
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

|  |  |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | Case No. 2:90-CV-00520- KJM-SCR<br><br>**DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S THIRTY-FIRST ROUND FOCUSED HEAT PLAN MONITORING REPORT (ECF NO. 8558)**<br><br>Judge: Hon. Kimberly J. Mueller |

**INTRODUCTION**

The Special Master filed a Thirty-first Round Focused Heat Plan Monitoring Report on February 28, 2025 (Heat Plan Report)[1]. The Heat Plan Report discusses and responds to the informal objections Defendants raised to the draft heat plan report (*see* Exhibit C to the Heat Plan

---

[1] All references to Heat Plan Report are to the February 28, 2025 filing at ECF No. 8558, and references to the exhibits to the Heat Plan Report at ECF No. 8558-1. References to page numbers in those documents filed in the court's Electronic Case Filing (ECF) system are to the page numbers assigned by the ECF system and located in the upper right-hand corner of the page.

1

Report, ECF No. 8558-1 at 23-27), and corrects a handful of errors that Defendants identified. (Heat Plan Report at 11-23.)

After reviewing the draft report, Defendants have identified only a small number of remaining issues. For the most part, the Heat Plan Report is a helpful summary of the California Department of Corrections and Rehabilitation's (CDCR) implementation of the 2024 Heat Plan Memorandum. (Exhibit A, ECF No. 8558-1 at 2-17.) But Defendants maintain their limited objections and ask the Court to review the objections and the Heat Plan Report to either correct the errors identified below or decline to adopt the Special Master's findings based on those errors.

I. **COMPLIANCE SHOULD NOT REQUIRE PERFECT ADHERENCE TO THE HEAT PLAN**

The Heat Plan Report includes findings that institutions were noncompliant based on a small number of policy deviations. In response to the draft report, Defendants asked that the Special Master reconsider whether such minor policy violations reasonably support the Special Master's determination that those institutions are truly not compliant with elements of the heat plan. (*Id.* at 24-27.)

The Special Master declined to revise his findings of noncompliance in these instances, notwithstanding that the reported institutions were compliant at levels that were near or greater than ninety percent. Defendants respectfully suggest that a review of the Heat Plan Report and the uncontroverted evidence of not only substantial compliance, but of compliance at levels approved by this Court, warrant the rejection of the findings of noncompliance addressed below.

A. **Compliance with Monthly Summary Reports**

Pursuant to the 2024 Heat Plan and Updates memo, each institution must submit a Monthly Summary Report, signed by the Warden and CEO, to headquarters from May 1 through October 31 each year. (Heat Plan report at 27.) The Special Master's Heat Plan Report found ten institutions compliant with the Monthly Summary Report requirement and three institutions noncompliant. (*Id.* at 28.) The Heat Plan Report determined that two of the noncompliant institutions—California Correctional Women's Facility (CCWF), and Substance Abuse Treatment Facility (SATF)—were noncompliant because their monthly reports contained a handful of minor discrepancies. (*Id.* at 16.) In other words, despite the fact that these institutions

2

Defs.' Objections to the Special Master's Heat Plan Report  (2:90-cv-00520 KJM-SCR)

21605693.1

fully complied with the requirement to submit the monthly reports, the Special Master found them noncompliant with the policy because of minor discrepancies in one or more of the submitted reports.

For example, the Heat Plan Report found CCWF noncompliant because it did not report on an alleged heat-related death in July 2024. But as discussed *infra* at 7-8, that death has not been found to be heat-related and the autopsy remains pending. The Heath Plan Report also found CCWF noncompliant because the June 2024 Summary Report stated that there were three Stage II heat alerts, but local temperature logs examined by the Special Master's monitors identified four Stage II heat alerts. (Heat Plan Report at 51.)

At SATF, the Summary Report noted zero Stage II alerts in the month of May 2024, but an indoor temperature log from unit C7 noted one Stage II alert in May. (*Id.* at 67.) SATF's June Summary Report noted no Stage II alerts, but unit logs in A3 and F3 each reflected a Stage II alert in June. (*Id.*).

The Heat Plan Report cited a similar minor discrepancy in the monthly reporting at CHCF PIP. CHCF PIP's Summary Report noted 54 Stage I heat alerts while the local documentation noted 52. (*Id.* at 59.) In response to Defendants' objections to the draft report, the Special Master declined to revise his findings regarding compliance with Monthly Summary Report requirements as to CCWF and SATF, but revised the Heat Plan Report to reflect CHCF-PIP was deemed compliant notwithstanding minor deviations from policy. (*Id.* at 16.)

Defendants object to the noncompliance finding for CCWF and SATF. Such minor reporting discrepancies do not support a finding of noncompliance with the policy requiring institutions to prepare and submit monthly heat-plan reports. Although the Special Master has not shared his methodology for determining compliance with this policy, it appears that he applies an unreasonable compliance standard requiring not only that 100% of the reports be submitted, but that the reports be nearly error free. Under such a standard, even one minor discrepancy in a single report results in a finding that the institution was noncompliant with the policy to submit monthly reports for the entire reporting period. This is not a fair or reasonable way of assessing policy compliance. Because CCWF and SATF fully complied with the requirement to submit

3

Defs.' Objections to the Special Master's Heat Plan Report  (2:90-cv-00520 KJM-SCR)

21605693.1

monthly reports, and only minor discrepancies or errors were identified, Defendants object to the Special Master's finding that they were noncompliant with the policy.

### B. Staff Knowledge of Heat Plan Policy and Procedures

Defendants objected to the Special Master's findings in the draft report that four institutions were noncompliant with the 2024 Heat Plan's requirement that staff be knowledgeable about the heat plan policy and procedure. (ECF No. 8558-1 at 25-26.) Defendants asked the Special Master to reconsider his findings of noncompliance for those institutions because the institutions showed high levels of compliance despite a few instances of observed policy violations. (*Id.*) The Special Master reviewed each of the institutions' levels of compliance and ultimately maintained the findings of noncompliance. (Heat Plan Report at 15-21.) For the reasons set forth below, Defendants request that the Court reject the Special Master's findings of noncompliance at issue.

First, at CCWF, the Special Master team audited fourteen housing units ("11 housing units, the RHU, Reception Center, and the MHCB") and concluded that CCWF was noncompliant because of a few instances where staff provided incorrect explanations of the heat-plan policy. (Heat Plan Report. at 52.) The Heat Plan Report found that a *few* officers reported that the heat-risk patient list was provided weekly instead of daily, and officers in one of the fourteen housing units incorrectly noted that patients returned from outdoors during heat alerts only during hourly "unlock periods," and that these hourly returns may occur in a second housing unit if staffing was an issue. (*Id*.) These two issues should not result in a finding of noncompliance given that the Heat Plan Report did not find issues with staff's knowledge of the heat plan in the vast majority of CCWF housing units.

Second, at California Institution for Women (CIW), the Special Master reported noncompliance because after auditing ten different housing units at CIW he found that "*some* officers indicated that [the heat medication patient list] was updated weekly as opposed to daily." (*Id.* at 65, emphasis added.) However, the Report also indicates that those same custody staff "produced the most up-to-date heat-risk incarcerated person list" during the audits. (*Id*.) The Special Master also found CIW noncompliant with the staff-knowledge requirement based on

4

Defs.' Objections to the Special Master's Heat Plan Report (2:90-cv-00520 KJM-SCR)

21605693.1

alleged "unlock periods." (*Id.*) However, this finding appears to be solely based on patient interviews. (*Id.*, "[i]nterviewed patients indicated...the 'unlock period,'" "[p]atients indicated that they were often required to remain outside.") Patient interviews should not be a basis for making findings about whether CIW staff have knowledge of heat plan requirements.

Third, at SATF, the Special Master audited twelve housing units. (*Id.* at 82.) The only issue found was on a single facility—Facility G—where one "officer was unable to locate a current heat-risk incarcerated persons list." (*Id.*) This example of a single officer's lack of knowledge cannot fairly lead to a finding that SATF is noncompliant with the staff-knowledge requirement in the heat plan.

Fourth, at Pleasant Valley State Prison (PVSP), the Special Master audited housing units on Facilities A, B, C and D as well as the Minimum Support Facility (MSF). The Special Master agreed to revise the wording in the Report to accurately reflect that the custody staff on Facilities A, B, C and D had demonstrated adequate heat-plan knowledge and it was only the MSF officers who were noncompliant with the knowledge requirement.[2] (*Id.* at 21.) But the Special Master refused to reconsider his ultimate finding that PVSP was noncompliant even though only two of PVSP's twenty-two[3] audited housing units were noncompliant—a compliance rate of over 90 percent. (*Id.*) While Defendants agree that "understanding the requirements of the heat plan on MSF yards is especially important," the level of compliance the Special Master requires here seems inconsistent with the Court's earlier recognition and approval of the Special Master's use of a 90 percent compliance rate for the remedial plans. (ECF No. 9669 at 9:11-16.)

Because staff knowledge was only incomplete in a small fraction of the housing units audited and a small fraction of the staff who were interviewed, it appears that the Special Master requires a perfect audit score before he will deem an institution compliant with this requirement.

---

[2] This is consistent with the institution's exit call where the monitor stated that "[a]ll housing units and officers except for dorms one and two were knowledgeable of the heat plan and had a current heat risk list available." (ECF No. 8558-1 at 26.)

[3] Twenty GP housing units on Facilities A through D and two housing units on the MSF. It is unclear from this section of the report whether this same audit occurred at the PVSP's CCCMS RHU – a 23rd housing unit. Other sections of this report make clear that the Special Master team audited PVSP's CCCMS RHU (Heat Plan Report at 120-121) but it is not clear from the narrative whether they surveyed staff knowledge while in that housing unit.

5

Defs.' Objections to the Special Master's Heat Plan Report  (2:90-cv-00520 KJM-SCR)
21605693.1

Such a standard is neither reasonable nor fair, and Defendants therefore object to the Special Master's findings that CCWF, CIW, SATF and PVSP were noncompliant with the staff-knowledge requirement.

### C. Indoor Temperature Logs

The Special Master monitored indoor temperature logs, thermometer placement, and thermometer functionality. (Heat Plan Report at 33-36.) Defendants object to the Special Master's finding of noncompliance at three institutions, as discussed below, based on their high rate of compliance.

First, at California Correctional Institution (CCI), the Special Master found that the institution had adequate temperature logs and thermometer placement, but concluded that the institution was noncompliant with this element of the Heat Plan because thermometers were not working properly in two of CCI's twenty-one housing units (A5 and B5). (*Id.* at 21-22, 47.)

Second, at California State Prison, Corcoran (COR), the Special Master found that the entire institution had adequate temperature logs and thermometer placement but concluded that the institution was noncompliant because thermometers were not working properly in three of COR's thirty-three housing units (4A1, 4A3, and 3A3). (*Id.* at 22, 90.)

Finally, at Mule Creek State Prison (MCSP), the Special Master found that the institution had adequate thermometer placement and function but found the entire institution noncompliant with this element of the Heat Plan because two of its twenty-two housing units (C14 and B7) did not properly log temperatures. (*Id.* at 23, 116.)

Given the Special Master's noncompliance findings despite the high rates of compliance across the many housing units audited at these three institutions, it appears that the Special Master requires error-free audit scores before he will deem an institution compliant with this policy. Such a standard is not reasonable or fair, or even consistent with the Special Master's previously established 90% compliance threshold, and Defendants therefore object to the findings.

///
///
///

6

Defs.' Objections to the Special Master's Heat Plan Report  (2:90-cv-00520 KJM-SCR)
21605693.1

## II. THE HEAT PLAN REPORT PREMATURELY AND IMPROPERLY ASSESSED CAUSATION IN A JULY 2024 DEATH.

The Heat Plan Report cites as a "tragic reminder of the very real harm that can result from failing to properly monitor and treat patients on heat sensitive medication" a July 5, 2024 death of a Correctional Clinical Case Management System (CCCMS) patient at Central California Women's Facility (CCWF). (Heat Plan Report at 12.) Defendants do not dispute that there were high outdoor temperatures on the day in question, but no coroner's report has yet issued concerning the cause of this death, and there are indicators that other factors unrelated to heat may have been at play, thus making any determination as to causation both premature and speculative.

The Heat Plan Report relies heavily on CDCR's initial notice of class member death, which must be issued within twenty-four hours of a death, that referenced heat stroke along with several other possible causes of death. But, the same notice listed the manner of death as "unknown." (*Id.* at 82.) As the Special Master is aware, the notice of class member death is not an official finding of the cause of death and it is not uncommon for official coroner or autopsy findings to contradict what is initially reported in a notice of class member death. Accordingly, Defendants object to the Special Master's statement because it assumes that the class member's death was heat related based on insufficient information.

Defendants requested the Special Master defer discussion of this death until a finalized autopsy report has issued and that conclusions about the cause of death be tabled until a conclusive coroner's report is received by CDCR, but the request was ignored. (ECF No. 5885-1 at 23-24.) The Special Master added additional information concerning the death to the final report, including that one of the possible causes of death was a possible drug overdose, and that the cause of death was officially listed as "unknown." (Heat Plan Report at 13-15.) But the additional information provided by the Special Master does not ameliorate the unsupported conclusion that this death is an example of "the very real harm that can result from failing to properly monitor and treat patients on heat sensitive medication." (*Id.* at 40.)

7

Defs.' Objections to the Special Master's Heat Plan Report (2:90-cv-00520 KJM-SCR)
21605693.1

As requested of the Special Master, Defendants now request that the Court reject the Special Master's reported findings concerning this death. At a minimum, the Court should defer ruling on the findings until the coroner's investigation concludes and a report issues stating the official cause of death. Consistent with the normal course of proceedings in this case, unknown causes of death are updated with notice to the Special Master and Plaintiffs once the cause has been established. There is no reason to expect that such a report will not be generated and transmitted to the Special Master upon receipt of the coroner's report.

## CONCLUSION

Defendants appreciate the Special Master's findings in the Heat Plan Report and do not dispute the majority of his findings, but the issues Defendants have identified above are important both in terms of making sure that causation of a class member's death is accurately reported and ensuring that a reasonable and consistent methodology underlies the Special Master's findings in monitoring reports. For the latter, it is evident from the examples identified above that the Special Master employs an error-free compliance standard in a case where perfection is not and should not be required. Defendants respectfully request that the Court sustain their limited objections to the Heat Plan Report.

## ORDERS CERTIFICATION

In preparing this filing, Defendants' counsel certify that they have reviewed the following relevant orders: *Coleman v. Brown*, 912 F. Supp. 1282 (E.D. Cal. 1995), ECF Nos. 232, 640, and 9669.

These objections present arguments that have not been resolved by prior court orders as they are specifically tailored to address the merits of Defendants' objections to the Report and not objections to prior reports. Counsel acknowledges this Court's prior orders concerning the some of the issues raised in the objections (ECF Nos. 7847 and 8239), but those orders do not foreclose the objections stated herein. Counsel make this filing under their obligation to represent their clients zealously under their right to relief under Fed. R. Civ. P. 62(c), *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988), and to satisfy Federal Rule of Appellate Procedure 8(a)(1)(A)'s requirement. Counsel certify that they have conducted a

8

Defs.' Objections to the Special Master's Heat Plan Report  (2:90-cv-00520 KJM-SCR)

21605693.1

reasonable inquiry and have determined that this filing is well grounded in fact, legally tenable, and not presented for an improper purpose, to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b)(1); and *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) (internal quotation marks omitted). Each factual contention made in this filing is supported by a reference to evidence in the record and the legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2).

Dated: March 10, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
DAMON G. MCCLAIN
Supervising Deputy Attorney General

*/s/ Elise Owens Thorn*

ELISE OWENS THORN
Deputy Attorney General
*Attorneys for Defendants*

Dated: March 10, 2024

HANSON BRIDGETT LLP

*/s/ Paul B. Mello*

PAUL B. MELLO
SAMANTHA D. WOLFF
DAVID C. CASARRUBIAS-GONZÁLEZ
*Attorneys for Defendants*

CF1997CS0003

9

Defs.' Objections to the Special Master's Heat Plan Report  (2:90-cv-00520 KJM-SCR)
21605693.1