UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM SCR P |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

The District Judge referred several matters concerning Defendants' utilization of telepsychiatry and telemental health within California's prisons to the undersigned for issuance of findings and recommendations. Specifically, the District Judge referred the parties' contested positions on the Special Master's Proposed Telemental Health Report and Revised Policy, all outstanding issues regarding a final telepsychiatry policy, and related issues presented by a draft hybrid work policy agreed to by the parties. ECF Nos. 8398, 8438, 8553.

Following the referrals, on November 21, 2024, the parties filed a joint notice that they were working to resolve their outstanding disputes concerning both telepsychiatry and telemental health. ECF No. 8469. The undersigned set a status conference for December 12, 2024. Nov. 22, 2024, Minute Order, ECF No. 8470. At that status conference, the parties discussed the status of their negotiations and addressed the Special Master's review of their tentative

///

1

1  agreement. The court set a further status conference for January 23, 2025. Dec. 12, 2024,
2  Minutes, ECF No. 8490.
3      On January 22, 2025, the parties reported they had reached agreement on a draft unified
4  telepsychiatry and telemental health policy (hereafter Unified Policy) and were working on a draft
5  hybrid work policy (hereafter Hybrid Work Policy). ECF No. 8523. At the January 23, 2025,
6  status conference, the court discussed with the parties the Unified Policy as well as the status of
7  the Hybrid Work Policy. Jan. 23, 2025, Minutes, ECF No. 8525. On February 11, 2025, the
8  parties reported they had reached agreement on a Hybrid Work Policy. ECF No. 8541. On the
9  same day, they filed an updated version of the Unified Policy. ECF No. 8542. On February 14,
10 2025, the court held a further status conference and discussed with the parties the status of both
11 policies. Feb. 14, 2025, Minutes, ECF No. 8543.
12     For the reasons provided below, the undersigned recommends that the District Judge
13 approve the Unified Policy and defer approval of the Hybrid Work Policy so long as the stay
14 imposed by the November 12, 2024, Order of the United States Court of Appeals for the Ninth
15 Circuit, ECF No. 8462, remains in effect.

## I.  BACKGROUND

Defendants' utilization of telepsychiatry and telemental health has been the subject of significant recent litigation, which is recounted in summary here.

### A.  Telepsychiatry

On October 10, 2017, this court ordered defendants to "formaliz[e] . . . the use of telepsychiatry into an addendum to the Program Guide, the remedial plan for delivery of mental health care in California's prisons." April 12, 2023, Order at 1-2, ECF No. 7807 (citing October 10, 2017, Order, ECF No. 5711, at 20-23.) The court adopted several criteria for the telepsychiatry policy, recommended by the Special Master, as follows:

- "Telepsychiatry should serve as a supplement, rather than a substitute, for on-site psychiatry and should only be used when institutions are unable to recruit psychiatrists or have short-term vacancies that cannot be filled by contract psychiatrists." ECF No. 5711 at 30.

- The use of telepsychiatry should not relieve defendants of the obligation to continue to recruit full-time on-site psychiatrists.

- Telepsychiatry should not be used to allow on-site psychiatrists to "migrate to the comfort of remote off-site offices."

- "[T]elepsychiatry should not replace on-site psychiatry."

- Telepsychiatry is an appropriate option for inmate-patients at the Correctional 16 Clinical Case Management System (CCCMS) level of care provided the telepsychiatrists work on-site at least twice a year and "more frequently if feasible."

- Because the efficacy of telepsychiatry for Enhanced Outpatient Program (EOP) patients is unclear, a psychiatrist should be on-site at least quarterly to treat EOP inmates.

- Telepsychiatry is not appropriate for regular use at the Mental Health Crisis Bed (MHCB) level of care; it "should only be used as a last resort or in emergency Situations when an on-site psychiatrist is not available."

ECF No. 7807 at 2 (quoting ECF No. 5564 at 16-17.)[1]

The court provisionally approved the current telepsychiatry policy on March 27, 2020, for a period of eighteen months, ECF No. 6539, and—through a process explained in more detail below—granted final approval of that policy on April 12, 2023, ECF No. 7807. That current policy authorizes telepsychiatry to replace on-site psychiatry at the CCCMS level of care so long as telepsychiatrists visit their assigned institution within thirty days of assignment and thereafter work on-site biannually. ECF No. 6539 at 7, 9. The policy authorizes telepsychiatry to supplement on-site psychiatry at the EOP level of care, so long as at least one on-site psychiatrist is assigned to each EOP program and telepsychiatrists visit their assigned institution within thirty days of assignment and thereafter work on-site quarterly. *Id*. at 1, 7, 9. The policy prohibits use of telepsychiatry in MHCB units or Psychiatric Inpatient Programs ("PIPs") "except as a last resort in emergency situations when an on-site psychiatrists is not assigned to the program." *Id*.

///

---

[1] Citations to page numbers in documents filed in the Court's Electronic Case Filing System are to the page numbers assigned by ECF and located in the upper right hand corner of the page.

at 7-8. When a telepsychiatrist serves in an MHCB unit or a PIP, the policy requires notice and corrective action plans within specific time frames. *Id*.

At the end of the eighteen-month provisional approval period, as required, *see* ECF No. 6539 at 2-3, the parties met and conferred with the assistance of the Special Master in an effort to agree on a final telepsychiatry policy. In his December 15, 2022 report on the results of that process, the Special Master discussed eight proposed substantive changes raised by Defendants:

(1) Removing on-site psychiatrist requirement for EOP programs;

(2) Removing "last resort in emergency situations" standard for use of telepsychiatry in MHCBs and PIPs;

(3) Decreased frequency of site visits;

(4) Status of cell-front telepsychiatry contacts;

(5) Modified language regarding informed consent;

(6) Telepsychiatry from home / status of the telepsychiatry hubs;

(7) Night-Time Telepsychiatry;

(8) Continued good faith recruitment and retention of on-site psychiatrists;

and two raised by Plaintiffs:

(1) Status of CDCR's telepsychiatry EHRS identifier; and

(2) Plaintiffs' request for enhanced reporting of lack of on-site psychiatry coverage.

ECF No. 7682 at 25, 52-66. After review, the Special Master recommended the court give final approval to the provisionally approved policy without any of the disputed substantive changes, both (1) due to risks in removing on-site psychiatry from EOP programs (particularly in the context of on-going mental health understaffing), and (2) because of the criteria set out in controlling court orders. *Id*. at 66-70.

The parties each filed responses and supplemental responses to the Special Master's report and recommendations. ECF Nos 7702 (Defendants' response), 7703 (Plaintiffs' response), 7739 (Plaintiffs' supplemental response), 7772 (Defendants' supplemental response). Defendants maintained that all eight of their requested modifications should be made, noting there were no objections to their proposal concerning telepsychiatry from home or their proposed modifications

to clarify the role of night-time telepsychiatrists. ECF No. 7702 at 14-26. Plaintiffs contended the provisionally approved policy should be adopted as final. *See* generally ECF No. 7703.

On April 12, 2023, the court adopted the Special Master's findings and recommendation and approved the telepsychiatry policy as final. *Id*. at 11. The court held defendants were required to seek relief from the court's October 10, 2017 and July 3, 2018 orders under Federal Rule of Civil Procedure 60(b) if they wanted the court to alter the guidelines it had set in those orders for the telepsychiatry policy. Defendants appealed the April 12, 2023 order to the Ninth Circuit. ECF No. 7834. On May 9, 2023, this court approved a stipulation of the parties allowing telepsychiatrists to work from home after certain preconditions are met. ECF No. 7830. On September 26, 2024, the Ninth Circuit reversed the April 12, 2023 order, holding defendants were not required to bring a Rule 60 motion prior to seeking expansion of the criteria for use of telepsychiatry, and remanded the matter. ECF No. 8411.

**B.     Telemental Health**

In July 2023, the Special Master informed the court that defendants had circulated to him and to plaintiffs' counsel a draft policy for the use of telemental health. Aug. 3, 2023, Order at 2, ECF No. 7901. The court ordered the parties to meet and confer, supervised by the Special Master, and to file a joint report on the outcome of those discussions. *Id*. On September 5, 2023, the parties filed the required joint report, ECF No. 7935, setting out areas of agreement and disagreement as to the draft policy. *See* Dec. 15, 2023, Order at 1, ECF No. 8087 (citing ECF No. 7935). The parties identified six primary areas of disagreement, as follows:

- Whether there should be limits on the number of telemental health providers at the CCCMS and EOP levels of care and requirements for notice and a corrective plan where those limits are exceeded.

- "Whether there should be restrictions on the use of telemental health for certain clinical tasks, including suicide risk evaluations, provision of care in segregation units (restricted housing units), and evaluations under the Prison Rape Elimination Act (PREA)."

- Confidentiality and informed consent for telemental health services.

- "The use of telemental health for [MHCBs] and [PIPs] when on-site care is not available.

- Whether telemental health services provided cell front to a patient that refused to attend an appointment should count as a Program Guide required clinical contact.

- The frequency and duration of telemental health visits to assigned institutions."

ECF No. 7935 at 4. Thereafter, the court ordered another meet and confer, to be followed by a short report from the Special Master on the outcome of that meet and confer process and a proposed telemental health services policy. ECF No. 8087 at 2.

The Special Master filed the required Report and Proposed Telemental Health Policy on March 21, 2024. ECF No. 8165. In the Report, the Special Master discussed the outstanding areas of disagreement between the parties, *id*. at 24-35, areas of concern, and recommendations "to promot[e] the successful implementation of telemental health while creating limited guardrails for its use," *id*. at 15-17 (internal citations and quotations omitted), 19, 24-36. The Special Master appended as Appendix A to the Report a proposed telemental health policy, ECF No. 8165-1, and recommended the court provisionally approve it for a period of eighteen months. ECF No. 8165 at 36-38.

The Special Master's Report and Proposed Telemental Health Policy includes specific recommendations for the resolution of outstanding disputes over the provisions of any telemental health policy. These include:

- that mental health clinician allocations for CCCMS and EOP be filled by at least twenty percent and forty percent on-site providers, respectively, ECF No. 8165 at 35;

- the use of telemental health in MHCB units and PIPs be restricted to "emergency use only, *id*.;"

- one onsite clinician be assigned to each restricted housing unit (RHU) program, *id*. at 36;

- that CCCMS and EOP telemental health providers be required to visit their assigned institution within thirty days of assignment and, respectively, semi-annually and quarterly thereafter, ECF No. 8165-1 at 7;

- that telemental health providers be prohibited from conducting group therapy or five-day follow-up visits required by the Program Guide for patients transferred to a new level of care, that on-site clinicians be required

6

for use of force incidents, and that the use of telemental health be prohibited for suicide risk assessments and in response to "emergency/urgent mental health referrals or incidents involving danger to self/suicidality/self harm, except as a last resort in emergency situations when the institution's on-site crisis clinician" is not available, ECF No. 8165 at 31-35;

- that the following informed consent be obtained both in writing and orally at the start of a patient's first telemental health contact[2]:

    1. the benefits and risks of telemental health, especially as related to confidentiality and privacy,

    2. the benefits and risks of in-person mental health services, especially as related to confidentiality and privacy,

    3. the role of the telepresenter,

    4. the incarcerated person's option to not have the telepresenter in the room during the therapy session, confirmed at each appointment,

    5. the informed consent process should also make clear that participation in telemental health is voluntary and consent may be revoked at any time, and

    6. the informed consent process should include other options available for mental health services (i.e., treatment by an on-site clinician) if the patient declines to consent (e.g., potentially delayed services depending on staffing vacancies).

    7. The actions to be taken if a clinical emergency arises shall be discussed with the patient during the initial telemental health appointment. If a clinical emergency arises during a telemental health session (for example, a suicidal, violent, or homicidal patient), the telemental health provider shall immediately notify the appropriate institution staff, as identified by the institution's LOP. The telemental health provider shall coordinate with institutional mental health leadership and follow local institutional protocol for managing such emergencies. This may include, but is not limited to, coordinating arrangements for the patient to be seen by an on-site psychologist or LCSW, arrangements for safe holding, transport to an emergency triage area, communication with local emergency team members, and placing emergency orders as needed. ECF No. 8165-1 at 4.

- modification of defendants' proposed policy "to clarify that backup presenters must be appropriately trained and to ensure that joint appointments meet the requirements of the February 7, 2020, Clinical Contacts and Documentation memorandum[,]" ECF No. 8165 at 27; and,

---

[2] The Special Master also recommends that a telemental health provider be required to verify the patient's identity at the start of an "initial appointment." ECF No. 8165-1 at 3-4.

7

- with respect to patient refusals for telemental health care and whether cell-front contacts can count toward Program Guide clinical requirements, the Special Master recommends specific language.[3]

The parties filed objections to the report and proposed policy, ECF Nos. 8252 and 8253, responses to each other's objections, ECF Nos. 8331, 8332, and closing briefs, ECF Nos. 8343, 8344.

Plaintiffs object to the allowance for (1) 20 percent and 40 percent of on-site primary mental health care clinician allocations for CCCMS and EOP, respectively, contending "[t]hese minimums are too low to ensure [] a sufficiently robust" on-site clinical presence; (2) any telemental health for RHUs; (3) what in practice could be fully virtual treatment teams at the EOP level of care; and (4) the exclusion of emergency Prison Rape Elimination Act (PREA) evaluations from the list of services that must be provided by on-site clinicians. ECF No. 8252 at 7-24.

Defendants object to the proposals concerning (1) limits on the use of telemental health in MHCB units and PIPs; (2) informed consent; (3) patients' rights to choose in-person treatment; (4) the requirement that telemental health providers explain at the start of every mental health appointment that patients may request telepresenters leave the room and document that at every appointment; (5) minimum numbers of on-site providers; (6) on-site visits for telemental health clinicians; (7) cell-front mental health; and (8) revisions to the list of services that must be provided by on-site clinicians. ECF No. 8253 at 23-40.

---

[3] "[W]hen a patient receiving care at the CCCMS or EOP levels of care does not refuse a clinical encounter in person, the telemental health provider should go to the patient to encourage the patient to participate in a confidential contact, confirm the refusal, discuss the risks associated with refusing treatment, and discuss the reasons for the refusal. If a visit with the patient by the telemental health provider is not feasible, the patient should be seen by an on-site mental health clinician, who will address the issues listed. Any patient who reports refusing a clinical encounter due to the modality (i.e., use of telemental health) or who refuses two consecutive telemental health appointments, will be scheduled to be seen by an on-site clinician to determine the needs of the patient, including scheduling an IDTT to change treatment modalities. All patients who refuse scheduled individual appointments shall be re-scheduled as soon as possible and within Program Guide timeframes. Nonconfidential contacts for telemental health shall not be considered a Program Guide required clinical contact under any circumstances." ECF No. 8165-1 at 4-5.

### C. Hybrid Work Policy

The Hybrid Work Policy is part of a "longer-term initiative" in the court-ordered and -approved plan for expenditure of accumulated contempt fines to address ongoing mental health care understaffing (hereafter the Plan). *See* ECF No. 8381 at 15-16. The Plan provides for development of a draft hybrid work policy and implementation of that policy on a timeline that begins after the Ninth Circuit's stay of the district court's June 25, 2024, and June 27, 2024, orders is lifted. *Id*. at 16. By order filed August 29, 2024, the court approved the Plan and ordered defendants to implement it "as written." *Id*. at 8.

On February 11, 2025, the parties filed an agreed-upon, and effectively final, Hybrid Work Policy, ECF No. 8541, which the undersigned discussed with them at a February 13, 2025 status conference, ECF No. 8543. If implemented, the Hybrid Work Policy, among other things, will allow certain "<u>on-site</u>" mental health staff to work remotely nearly 50 percent of the time and, when so doing, provide care through telemental health and telepsychiatry. The parties dispute whether the court should approve the policy and order it implemented. Defendants take the position that the Hybrid Work Policy "does not conflict with – or require modification of – the Program Guide or the Court ordered remedy in the case." ECF No. 8541 at 3. At the February 13, 2025, status conference, Defendants expressed concern that court approval would signal "expansion" of the remedy in this action. *See* Reporter's Transcript of Videoconference Proceedings ("RT") at 9-10, ECF No. 8549. Plaintiffs argue the court should approve the Hybrid Work Policy and order it implemented because it was developed under the Plan required by the court and because approval will obviate any uncertainties about the scope of the Special Master's monitoring and access to information, ECF No. 8541 at 3-4. At the hearing, plaintiffs argued the Hybrid Work Policy is a part of the overall remedy and there is no basis for carving it out. ECF No. 8549 at 7-8. On February 26, 2025, the District Judge referred to the undersigned "any and all issues suggested" by this policy as necessary to resolve the other referred matters. ECF No. 8553.

9

## II. DISCUSSION

### A. Unified Telepsychiatry/Telemental Health Policy

The parties' agreed upon Unified Policy covers the use of videoconference by all mental health clinicians—both psychiatrists and other clinicians—in CDCR and refers to the provision of services through this modality as telemental health. A copy is included as Attachment A to these findings and recommendations. The Special Master takes the position that the Unified Policy is "minimally acceptable" and that his team will "closely monitor the delivery of mental health services to the plaintiff class under this negotiated policy and will keep the Court and parties abreast of our findings and any concerns related to the provision of adequate mental health treatment and the overall treatment milieu going forward." ECF No. 8523-3 at 2-3.

The Unified Policy would resolve all disputes between the parties and objections to the Special Master's Proposed Telemental Health Report and Revised Policy, as well as any remaining issues regarding telepsychiatry. The court briefly surveys key issues as resolved by the Unified Policy.

#### 1. Minimum number of on-site clinicians by level of care and use of telemental health in speficic settings or for specific purposes

The Unified Policy authorizes the use of telemental health at both the CCCMS and EOP levels of care. While it does not specify a minimum number of on-site clinicians for either level, it caps statewide allocations for telemental health providers at "50% of the total non-PIP allocations for psychiatry and 50% of the total non-PIP allocations for mental health primary clinician classifications." ECF No. 8542 at 4. The policy also requires institutions to ensure sufficient on-site staff to provide in-person services in the following contexts:

- Use of Force incidents;

- PREA evaluations;

- CITs (Crisis Intervention Teams), which will continue to function consistent with the current CIT policy;

- Follow ups on patients who refuse or did not show for scheduled appointments and require assessment due to clinical concerns, but cannot be adequately assessed remotely;

10

- Assessment of patients for whom there are clinical concerns that cannot be adequately assessed remotely either due to patient presentation/cooperation or inability to conduct a remote contact;

- Physical assessments, such as for restraints/seclusion, or emergent concerns related to neurological or medication side effects;

- Treatment for patients that the treatment team determined telemental health is not an appropriate treatment modality;

- Treatment in situations where technical limitations or malfunctions interfere with telemental health services; and,

- On-site specific duties during on-call coverage.

*Id*. at 7.

On-site providers "remain the preferred method of care" for MHCBs and PIPs. *Id*. at 4. The Unified Policy replaces the prior standard for use of telemental health in MHCB units and PIPs with language restricting its use in these units "to only circumstances when on-site care is not available and . . . for the shortest duration of time as necessary." *Id*. at 8. The policy specifies that use of telemental health in MHCBs for more than 14 consecutive calendar days and in PIPs for more than 30 days is "not consistent with the policy's objective" and retains from the current telepsychiatry policy specific notice and development of corrective plans in the event those timelines are exceeded. *Id*.

### 2. Frequency and duration of on-site visits

The Unified Policy reduces the requirements for on-site visits by all telemental health providers to one visit within thirty days of assignment and annually thereafter. *Id*. at 9. The policy also provides "[a]dditional site visits may be required for individual clinicians, based on the clinician's request or as decided by the supervisor in the telemental health program." *Id*.

### 3. Cell-front contacts

The Unified Policy permits a cell-front telemental health contact to be considered a Program Guide required clinical contact "when it is in response to a valid refusal as defined in the Program Guide." *Id*. at 7.

11

### 4. Confidentiality and informed consent

The Unified Policy reduces the content of the informed consent that telemental health providers must obtain from patients from that recommended by the Special Master, aligning its informed consent provisions with the provisions of the current telepsychiatry policy. *Compare* ECF No. 8542 at 6 (draft unified policy) *with* ECF No. 8165-1 at 3-4 *and* ECF No. 6539 at 6.

### 5. Night-time telemental health

The Unified Policy provides for telemental health providers to "contribute to on-call or after-hours coverage as assigned" and in accordance with applicable governing policies. ECF No. 8542 at 9. The policy also provides that telemental health providers are not required to be on-site to provide on-call or after hours cover, and that "[t]herefore, institutions receiving on-call or after-hours coverage from the Telemental Health Program must provide a backup clinician." *Id*.

### 6. Continued good faith recruitment and retention of on-site mental healthcare providers

The Unified Policy requires defendants to continue "good-faith efforts" to recruit and retain on-site mental health staff for MHCBs and PIPs, "and to ensure there are enough on-site staff" to meet the requirements of the draft unified policy. *Id*. at 4.

### B. Evaluation of the Unified Policy

The undersigned finds the Unified Policy reflects significant effort by parties—as guided by the Special Master—to develop a telemental health and telepsychiatry policy that will provide patients with access to constitutionally adequate mental health care. The policy includes important guardrails, including the 50 percent on-site requirement for non-PIP levels of care. It also reflects significant effort by the parties to resolve their differences over the proper utilization of this modality in a prison setting. However, the undersigned has concerns regarding the extent to which telemental health providers will be involved with their on-site colleagues and familiar with the carceral environment in which their patients live and receive treatment. The undersigned also has concerns about the manner in which the Hybrid Work Policy modifies the definition of on-site work to encompass part-time remote work. *See infra*, II.C. Robust monitoring by the Special Master and good faith efforts by Defendants to address issues raised in monitoring or by

12

1  Plaintiffs will be necessary to ensure that the Unified Policy results in constitutionally adequate
2  care.
3        For the foregoing reasons, the undersigned recommends that the district court approve the
4  draft unified policy and order it implemented forthwith.

5        **C.    Hybrid Work Policy**

6        Development of a draft hybrid work policy is an express component of the Plan that the
7  court approved and ordered implemented on August 19, 2024. ECF No. 8381 at 7, 14-16.
8  Although the Plan ties development and implementation of such a hybrid work policy to
9  resolution of defendants' appeal from the court's June 25, 2024, order holding certain defendants
10 in contempt, the parties elected to proceed with development of the policy prior to resolution of
11 defendants' appeal.[4] It is premature for the court to consider approval of the policy until the
12 mandate has issued from the Ninth Circuit.
13       However, certain provisions of the Hybrid Work Policy would affect the manner through
14 which the Unified Policy will be implemented. The undersigned briefly addresses those
15 provisions to ensure the Special Master accounts for them in the monitoring that will occur in
16 connection with the Unified Policy. The Hybrid Work Policy provides that, "On-site mental
17 health staff working a hybrid schedule must be on-site a minimum 50% of the work month plus
18 one additional day (e.g. if there 20 workdays per month, 11 days must be on-site)." ECF No.
19 8541-2 at 2. Such hybrid schedules are "available to on-site mental health staff at CCCMS and
20 EOP level of care but are not guaranteed." *Id*. However, the Hybrid Work Policy also requires
21 "an on-site presence on any given day to provide adequate in-person clinical support" for the
22 same list of itemized functions contained in the Unified Policy, including Use of Force incidents,
23 PREA evaluations, etc. *Compare id.* at 2-3 & ECF No. 8541-1 at 5-6. To summarize, the Hybrid
24 Work Policy effectively dilutes the definition of "on-site" work by allowing nearly 50 percent of
25 that work to occur remotely (i.e., off-site) for any of the mental staff positions designated as
26 "hybrid."

---

[4] On March 19, 2024, the Ninth Circuit affirmed in relevant part the court's June 25, 2024, and June 27, 2024, orders. ECF No. 8574. It has not yet lifted the stay of those orders. *See id*.

13

Should the court ultimately authorize the Hybrid Work Policy, robust monitoring by the Special Master will be crucial to ensuring that hybrid working arrangements for designated "on-site" clinicians does not undermine the guardrails in the Unified Policy. Defendants have no objection to the Special Master monitoring the Hybrid Work Policy. *See* RT at 5, ECF No. 8549.

### III. CONCLUSION

Consistent with the foregoing, the undersigned RECOMMENDS that District Judge:

1) Approve the Unified Policy and order it implemented forthwith; and
2) Independently evaluate whether to approve the Hybrid Work Policy once the Ninth Circuit's stay is lifted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **FIVE** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

DATED: March 25, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE