1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RALPH COLEMAN, et al.,                    No. 2:90-cv-0520 KJM SCR P

12                    Plaintiffs,               ORDER

13         v.

14    GAVIN NEWSOM, et al.,

15                    Defendants.

16

17        By this order, the court resolves defendants' objections to the salary and benefits the court

18  approved for Receiver-nominee Colette S. Peters and Deputy Receiver-nominee William

19  Lothrop, and the salary the court approved for Senior Advisor Martin Hoshino, in its order filed

20  April 2, 2025, ECF No. 8589.  The court makes one additional order concerning benefits for the

21  Receiver-nominee and the Deputy Receiver-nominee, and clarifies certain provisions of its

22  April 2, 2025 Order Appointing Receiver-nominee.

23  **I.      BACKGROUND**

24        On July 12, 2024, the court ordered the parties to show cause in writing why it should not

25  initiate formal proceedings to appoint a temporary receiver in this action.  July 12, 2024 Order

26  and Order to Show Cause, ECF No. 8330.  Thereafter, the court "entertained the parties'

27  suggestions and undert[ook] its own thorough search to identify a qualified candidate."

28  March 19, 2025 Order and Order to Show Cause at 1, ECF No. 8574.  At an *in camera* session on

February 25, 2025, the court disclosed to the parties the person it intended to appoint, Colette S. Peters, and at a second *in camera* session on March 18, 2025 "allowed the parties to indicate if they believe[d]" Ms. Peters was "not qualified to serve as receiver." *Id*. at 2. The parties agreed Ms. Peters "is qualified and did not identify any other reason counseling against her appointment while the defendants preserved their objections to appointment of a receiver in the first instance." *Id*.

On March 19, 2025, the court issued an order and order to show cause providing the parties with its tentative order formally appointing Ms. Peters as Receiver-nominee and directing the parties to meet and confer and file a joint statement concerning the court's planned order. ECF No. 8574. In relevant part, the tentative order included the following provisions:

> The Receiver-nominee shall be paid a reasonable compensation for her services in an amount to be approved by this court, taking account of the compensation paid to the Secretary of the CDCR [California Department of Corrections and Rehabilitation] and that paid to the *Plata* Receiver. The amount the court deems reasonable at this time, based on the information it has gathered regarding that compensation as of the date of this order, is $400,000 salary on an annualized basis, plus benefits as provided to the *Plata* Receiver, which amount will be prorated for the four-month period covered by this order. CDCR also will arrange to cover the reasonable expenses of Ms. Peters and her staff to be approved by the court.

> In order to allow Ms. Peters to begin the duties authorized by this order immediately, defendants shall take all steps necessary to have CDCR employ Ms. Peters, two deputies, and two Special Advisors so that such employment will be effective on the date of the court's order appointing Ms. Peters as Receiver-nominee is effective. [Footnote omitted.] The court currently anticipates the appointment take effect on or about April 1, 2025.

*Id*. at 5.

On March 28, 2025, the parties filed the required Joint Statement. ECF No. 8583. Defendants did not object to the Receiver-nominee's compensation in the annualized amount of $400,000.00, prorated for four months, "if that sum is the total amount of compensation." *Id*. at 5. Defendants contended it would be difficult for CDCR to provide benefits during the four-month term and they therefore proposed three alternatives, namely two different forms of consulting contracts or payment through the Court's registry. *Id*. at 5-6.

/////

1        Following its review of the Joint Statement, the court held a further status conference on

2   April 1, 2025 to discuss its planned order.  Reporter's Transcript of Proceedings at 1-2, ECF No.

3   8598.  At that status conference, the court indicated it would appoint two additional members of

4   Ms. Peters' team, Deputy Receiver-nominee William Lothrop and Senior Advisor Martin

5   Hoshino.  *Id*. at 5.  The court informed the parties of its understanding that the human resources

6   department of CDCR was "completely prepared" to hire and pay Ms. Peters, Mr. Lothrop, and

7   Mr. Hoshino for the four month period, and that the *Plata* Receiver had proposed this method of

8   payment.  *Id*. at 9.  The court confirmed the annualized salary rates it would approve for

9   Ms. Peters, Mr. Lothrop, and Mr. Hoshino,[1] as well as police officer/firefighter (POFF) status for

10  Mr. Peters and Mr. Lothrop for purposes of retirement benefits.  *Id*. at 16.  Defendants argued

11  that the salary for Ms. Peters was "significantly higher" than the *Plata* Receiver, that there were

12  questions whether California benefits could be provided to out of state candidates, and that

13  various state statutes and regulations might need to be waived.  *Id*. at 21.

14        On April 2, 2025, the court issued its order appointing Colette S. Peters as Receiver-

15  nominee, William Lothrop as Deputy Receiver-nominee, and Martin Hoshino as Senior Advisor,

16  all for a period of four months.  Apr. 2, 2025 Order, ECF No. 8589.  The court required the

17  defendants to pay all costs of this four month period.  *Id*. at 4.  To that end, the court directed the

18  California Department of Corrections and Rehabilitation (CDCR) to hire the Receiver-nominee

19  and identified members of her team as employees for purposes of payment of salary and benefits

20  only, *id*. and to pay  the salary and benefits discussed at the April 1, 2025 hearing and confirmed

21  in the order.  *Id*.  The court also directed defendants to file a brief explanation of state laws, rules

22  and regulations it had represented affected the CDCR's ability to comply with the order together

23  with proposed language for any necessary waivers of state law.  *Id*. at 5 n.3.  Defendants timely

24  filed their response.  ECF No. 8592, corrected by ECF Nos. 8596, 8596-1.  By minute order filed

25  April 7, 2025, the court directed defendants to clarify their position with respect to the salary and

26  benefits ordered by the court.  Apr. 7, 2025 Minute Order, ECF No. 8594.  Defendants have filed

---

[1] The salary rates are $400,000.00, $340,000.00, and an hourly rate based on an annualized rate of $390,000.00, respectively.  *Id*. at 16.

3

a response to that order.  ECF No. 8595, corrected by ECF Nos. 8597, 8597-1.  By this order, the court resolves defendants' remaining objections and orders certain waivers of state law.

## II.    COMPENSATION AND BENEFITS

### A.    Defendants' Objections[2]

#### 1.    Compensation

Defendants object to the salary levels the court ordered for the Receiver-nominee, Senior Advisor, and Deputy Receiver-nominee on the grounds that the Senior Advisor's last salary in state service standing alone is insufficient to support the court's decision because that employment was with the judicial branch of California's government and not the executive branch.[3]  Defendants contend the court should have considered salaries for the *Plata* Receiver, the current CDCR Secretary, and the Receiver-nominee and Deputy Receiver-nominee in their prior positions with the federal Bureau of Prisons.

#### 2.    Benefits

Defendants also object to the court's order directing CDCR to place the Receiver-nominee and the Deputy Receiver-nominee in the peace officer/firefighter (POFF) classification for purposes of retirement.  Defendants contend neither the Receiver-nominee nor the Deputy Receiver-nominee are eligible for POFF retirement benefits under applicable state statutes, rules and regulations, *see* ECF No. 8596-1 at 5-6, and that the *Plata* Receiver does not receive POFF retirement benefits, ECF No. 8597-1 at 3.[4]

### B.    Legal Standards

It is settled, and defendants concede, that a federal court appointing a receiver "has full power to fix the compensation of such receiver and the compensation of the receiver's" team.

---

[2] Defendants' objections to the court's waiving various provisions of state law as necessary is addressed in Section II below.

[3] The court observes the *Plata* Receiver is paid through the California Administrative Office of the Courts for his role as Receiver.  *See* ECF No. 8596-1 at 2-3.

[4] Defendants also state that neither Undersecretary of Health Care Services Diana Toche nor Deputy Director of Statewide Mental Health Program Dr. Amar Mehta, both of whom are defendants in this action, receive POFF benefits.  ECF No. 8596-1 at 6.  Defendants have not presented any evidence of the salary or other benefits paid to these two defendants.

1    *Drilling Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934); *see also* ECF No. 8596-

2    1 at 4. A receiver's compensation must be "reasonable." The court considers several factors in

3    setting a receiver's compensation, including the benefits obtained by the receiver's work, the time

4    and skills needed for "proper performance" of the duties imposed "and their fair value, measured

5    by the common business standards; and the degree of activity, integrity, and dispatch with which

6    the work of the receivership is conducted." *Walton N. Moore Dry Goods Co. v. Lieurance*, 38

7    F.2d 186, 192 (9th Cir. 1930). As explained below, all of these factors support the compensation

8    and benefits the court previously approved, as confirmed here.

9        **C.    Analsysis**

10            1.    **Compensation**

11        This class action has been in its remedial phase for almost thirty years. In spite of

12    numerous court orders as well as the concerted efforts of the court and its Special Master,

13    defendants have not yet met their Eighth Amendment obligation to deliver constitutionally

14    adequate mental health care to seriously mentally ill inmates in California's prison system. While

15    defendants have made progress, as the previously-assigned district judge held more than a decade

16    ago, that progress does not obviate defendants' obligation to "comply with outstanding court

17    orders and complete remediation of ongoing Eighth Amendment violations in the delivery of

18    mental health care to seriously mentally ill inmates in the state's prison system." *Coleman v.*

19    *Brown*, 938 F.Supp.2d 955, 989 (E. D. Cal. 2013). At this late date, the primary benefit to be

20    obtained by the Receiver-nominee's work is a comprehensive, detailed plan to finally achieve

21    "full and durable compliance with the court-approved and court-ordered remedies in this action."

22    ECF No. 8589 at 2. After thirty years of ongoing court supervision, the benefits derived from

23    development of that plan alone are great, if not incalculable.

24        The Receiver-nominee has agreed to prepare this plan in four months, a very compressed

25    period of time for a case of this magnitude. As the resumes attached to the court's March 19,

26    2025 Order, ECF No. 8574, and to the April 2, 2025 order show, the Receiver-nominee, the

27    Senior Advisor, and the Deputy Receiver-nominee all have extensive, high level experience in

28    prison administration. In the nineteen days since appointment of the Receiver-nominee and her

5

1     team members, they already have demonstrated a clear understanding of the urgency of the task at

2     hand and a high level of energy and focus as they embark on the myriad issues to be addressed,

3     resolved, and assembled into the comprehensive plan the court requires.

4          The salaries approved by the court are both fair and reasonable.  Defendants contend "the

5     *Plata* Receiver's salary provides an especially sound comparison in determining reasonable

6     compensation because he is in a remarkably similar receivership role. . . ."  ECF No. 8596-1 at 3.

7     The *Plata* Receiver was hired in January 2008 at a total annual salary of $280,000.00.  ECF No.

8     8597-1 at 3; ECF No. 1063, Case No. 01-1351 JST (N.D. Cal.).[5]  Using the U.S. Bureau of Labor

9     Statistics CPI Inflation Calculator to adjust for inflation  between January 2008 and March 2025,[6]

10    the  value of the starting salary for the *Plata* Receiver is equivalent to $424,216.98 today.  The

11    duties of the Receiver-nominee are comparable to the duties of the *Plata* Receiver at the start of

12    his tenure.  The Receiver-nominee's starting salary of an annualized rate of $400,000.00 for the

13    four month period covered by the April 2, 2025 order is below the original starting salary for the

14    current *Plata* Receiver, adjusted for inflation,[7] and the starting salary for her team members is

15    below that.  While the Receiver-nominee's salary is more than her immediate past salary, she is

16    now an arm of the court, developing a plan to bring defendants into compliance with their

17    constitutional responsibilities, which also supports a higher salary.

18         The court-approved rate for the Senior Advisor is reasonable for the additional reason that

19    he will be compensated at an hourly rate based on an annualized salary of $390,000.00 for this

20    four month period.  Mr. Hoshino's immediate past salary in this amount is relevant because he

---

[5] The court takes judicial notice of the date of the order appointing the *Plata* Receiver. *See Hornish v. King County*, 899 F.3d 680, 703 (9th Cir. 2018).

[6] The court takes judicial notice of the CPI calculator published by the United States Bureau of Labor Statistics, which "uses the Consumer Price Index for All Urban Consumers (CPI-U) . . . represent[ing] changes in the prices of all goods and services purchased for consumption by urban households," which are public records published by the United States Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last visited April 18, 2025).  *See* Fed. R. Evid. 201(b)(2), (c)(1).

[7] As defendants note, the *Plata* Receiver is also "compensated separately for his work as a professor of law at the University of the Pacific McGeorge School of Law."  Here, the Receiver-nominee and her team are working exclusively on the duties set out in the court's April 2, 2025 order.

1    was working in the judicial branch of state government and is now an arm of the federal court.

2    Moreover, an hourly rate calculation based on a forty-hour work week over fifty-two weeks

3    brings the Senior Advisor's hourly rate to $187.50, well below hourly rates the court has already

4    found reasonable on this record.  *See generally* Apr. 24, 2024 Order, ECF No. 8212.  The court

5    directs defendants to round this hourly rate to the nearest ten-dollar increment and to use an

6    hourly rate of $190.00 per hour to compensate Mr. Hoshino.

7        The salary for the Deputy Receiver-nominee, an annualized rate of $340,000.00 also is

8    reasonable.  The Receiver-nominee proposed that rate based on the annualized rates for her

9    Senior Advisor and herself.  The Deputy Receiver-nominee's salary is 15 percent less than the

10   Receiver-nominee's salary, and defendants have made no showing that calculation is

11   presumptively unreasonable.

12               2.    **Benefits**

13       The court based its order to require defendants to provide the Receiver-nominee and the

14   Deputy-Receiver nominee POFF status for purposes of retirement on a comparison of benefits

15   afforded the Secretary of CDCR.[8]  Defendants do not dispute that the Secretary of CDCR has

16   POFF status for retirement benefits.  Both the Receiver-nominee and the Deputy Receiver-

17   nominee had the equivalent of California's POFF status in prior employment; the Receiver-

18   nominee in her role as the Director of the Oregon Department of Corrections and the Deputy

19   Receiver-nominee in his career with the federal Bureau of Prisons.  Both have worked in public

20   safety and corrections for over thirty years; they are in this respect Secretary Macomber's peers.

21   Their roles require them to prepare a comprehensive plan to finally achieve constitutional

22   compliance in this action within four months, a task neither Governor Newsom, who has been in

23   office for five years, nor Secretary Macomber, who has been in his present role for almost two

24   and a half years, have been able to perform, nor have any of their predecessors.  Providing the

25   Receiver-nominee and the Deputy Receiver-nominee benefits commensurate with the experience

---

[8] The court specified this in the provision requiring all three to be eligible for bonuses and cost of living adjustments (COLAs) "to the same extent as the Secretary of CDCR" and for CDCR to determine their eligibility and pay such bonuses and COLAs according.  ECF No. 8589 at 5.

1  they bring to the table and with those provided to Secretary Macomber is entirely reasonable.

2  Defendants contend the court will have to waive numerous state statutes, rules and regulations for

3  the Receiver-nominee and the Deputy Receiver-nominee to receive retirement benefits

4  commensurate with those afforded to Secretary Macomber.  At this juncture, the court finds

5  defendants have not made a sufficient showing that  waivers are the only way to provide POFF

6  retirement benefits to these otherwise well-qualified individuals.  Specifically, defendants have so

7  far shown only that "[h]uman resources personnel do not have authority to waive state law

8  requirements" associated with payment of court-approved compensation and benefits for the

9  Receiver-nominee and members of her team.  ECF No. 8596-1.  Defendants have not shown that

10  the Governor, the Secretary of CDCR, or any other named defendant in this action lacks authority

11  to offer retirement benefits outside the strictures of state law to candidates for positions

12  equivalent to that filled by the Receiver-nominee and her team, nor have they shown that in fact

13  no such offers have been made or accepted during the history of this litigation.

14       For all the foregoing reasons, defendants' objection to the salary and benefit levels the

15  court approved for the Receiver-nominee, the Senior Advisor, and the Deputy Receiver-nominee

16  are OVERRULED.

17  **III.    WAIVERS OF STATE LAW**

18       **A.    Prison Litigation Reform Act of 1995**

19       As required by court order, ECF No. 8589 at 5 n.3, defendants have identified all state

20  laws, rules, or regulations that they represent affect CDCR's authority to employee the Receiver-

21  nominee as required by the April 2, 2025 order.  *See* ECF No. 8596-1 at 4-7.  Defendants contend

22  "the fact that implementing the Court's order would require the waiver of state statutes and rules

23  governing statement employment" shows the court's order does not meet the needs-narrowness-

24  intrusiveness requirements of the Prison Litigation Reform Act of 1995 (PLRA), 18 U.S.C.

25  § 3626(a)(1)(A).

26       "The PLRA states that no prospective relief shall issue with respect to prison conditions

27  unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal

28  right, and is the least intrusive means necessary to correct the violation. 18 U.S.C. § 3626(a)."

8

1   *Brown v. Plata*, 563 U.S. 493, 530 (2011).  The PLRA "defines 'prospective relief' as 'all relief

2   other than compensatory monetary damages.' 18 U.S.C. § 3626(g)(7).  'Relief,' in turn, is 'all

3   relief in any form that may be granted or approved by the court, and includes consent decrees but

4   does not include private settlements.' 18 U.S.C. § 3626(g)(9)."  *Gilmore v. People of the State of*

5   *California*, 220 F.3d 987, 999 (9th Cir. 2000).  The PLRA prohibits the court from ordering

6   　　　any prospective relief that requires or permits a government official to exceed his or
7   　　　her authority under State or local law or otherwise violates State or local law, unless-

8   　　　(i) Federal law requires such relief to be ordered in violation of State or local law;

9   　　　(ii) the relief is necessary to correct the violation of a Federal right; and

10  　　　(iii) no other relief will correct the violation of the Federal right.

11  18 U.S.C.A. § 3626(a)(1)(B)(i)-(iii).

12  　　　While appointment of a receiver is "prospective relief" within the meaning of the PLRA,

13  *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010), the court is aware of no authority

14  providing the amount of a receiver's compensation also is "prospective relief" under the PLRA.

15  *Cf.*, *e.g.*, *Coleman v. Wilson*, 933 F.Supp. 954 (E.D. Cal. 1996) ("compensation of a special

16  master is not 'relief' within the meaning of the" PLRA).  As this court's predecessor explained,

17  this precise question "is one of statutory construction." *Id*. at 956.

18  　　　Unfortunately, the statutory definition of "relief" violates the first rule of a
19  　　　meaningful definition, which is that "[t]he term being defined or a synonym of
20  　　　it should not appear in the definition." *Harris v. Tomczak,* 94 F.R.D. 687, 698
21  　　　n.17 (E.D.Cal.1982) (quoting Daniel S. Robinson, *The Principles of*
22  　　　*Reasoning:  Introduction of Logic and Scientific Method,* (3rd Ed., 1947) at p.
23  　　　58.) The reason for this rule is plainly demonstrated by the instant case. The
24  　　　statutory definition sheds no light on the disputed term's meaning since "relief" is
25  　　　in essence defined as all relief. Thus, while the definition teaches that it
26  　　　encompasses all instances of the term, it does not tell us what demarks and
27  　　　distinguishes those instances from others. Accordingly, the court must look
28  　　　elsewhere. Doing so leads to the conclusion that compensation of a special master
29  　　　is not "relief" within the meaning of the statute.

30  　　　Because "relief" in this context addresses a question concerning the orders of
31  　　　a court, it is appropriate to look to whether the term has a specialized
32  　　　legal  meaning. *See Youngberg v. The Bekins Co.*, 930 F.Supp. 1396, 1401 n.7
33  　　　(E.D. Cal. 1996) (quoting *Evans v. United States*, 504 U.S. 255, 259, 112 S.Ct.
34  　　　1881, 1885, 119 L.Ed.2d 57 (1992)). The standard legal dictionary suggests as a
　　　definition of relief in this context "... a general designation of the assistance,
　　　redress, or benefit

which a complainant seeks at the hands of a court, particularly in equity. It may be thus used of such remedies as specific performance, injunction, or the reformation of rescission of contracts." *Black's Law Dictionary,* 5th Ed., p. 1161. This definition, focusing on the ultimate legal form of remedy rather than the means of achieving the remedy, appears to favor plaintiffs' position. Moreover, to the extent that the definition points the court to the plaintiffs' requested remedy, i.e. "assistance, redress, or benefit which a complainant seeks," a review of the amended complaint indicates that the appointment of a special master was not sought by the plaintiffs.

*Id.* at 956-57. It is well-established that the court has full authority to set reasonable compensation for a receiver, *see Drilling Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934); *see also* ECF No. 8596-1 at 4. Accordingly, it is more likely that the reasonable compensation for a receiver meets the requirements of the PLRA where appointment of the receiver satisfies those requirements in the first place.

To date, the court has appointed a Receiver-nominee for a period of four months to develop a plan of action; appointment of a Receiver is pending the court's review and approval of that plan. Even assuming appointment of a Receiver-nominee is not an interim order but must itself satisfy the requirements of the PLRA, there can be no question this appointment meets those requirements. For all the reasons explained in the court's July 12, 2024 Order and Order to Show Cause, ECF No. 8330, there can be no good faith contention that "anything less than a receivership" will finally bring the state into compliance with their constitutional obligations to the plaintiff class. *Plata v. Schwarzenegger*, 603 F.3d 1088, 1097 (9th Cir. 2010). The state has not complied with the court's myriad orders designed to achieve that compliance, nor have defendants developed a comprehensive plan and meaningful timeline for doing so. The court has for years "attempt[ed] less drastic remedies, and after long periods of working closely with State authorities to try to bring them into compliance with the orders to which they had stipulated, justifiably concluded that the State's personnel simply could not or would not bring the State into constitutional compliance in the foreseeable future." *Id.* Moreover, the court is requiring the Receiver-nominee to develop a comprehensive plan in a compressed period as a necessary prerequisite to imposition of a receivership.

The record in this case demonstrates conclusively that all the steps the court has taken on the way to a final order establishing a receivership meet the requirements of the PLRA. For the

1   reasons explained above, the compensation and benefits for the Receiver-nominee approved by

2   the court are entirely reasonable and thus, if findings are required, also satisfy the requirements of

3   the PLRA.

4          **B.      Waivers Required for Salary**

5          Defendants represent that "the career executive assignment (CEA) is the most appropriate

6   classification" into which the Receiver-nominee and the Deputy Receiver-nominee should be

7   hired, and that certain provisions of state law must be waived to create those positions and pay the

8   required salaries.  ECF No. 8596-1 at 4 (citing Decl. Muhammad ¶ 3, ECF No. 8592-1).  As

9   discussed above, there appears to be no authority for the position a receiver's compensation

10  qualifies as "prospective relief" within the meaning of the PLRA or, therefore, that the provisions

11  of the PLRA regarding waivers of state law apply here.  At the same time, the court accepts

12  defendants' representations concerning the CEA classification, including the need to waive

13  certain provisions of state law to create the positions for the Receiver-nominee's team at the

14  required salary levels.  As discussed above, the Receiver-nominee's creation of the Receivership

15  Action Plan is essential to completion of the too-long delayed remedy in this case.  *See Stone v.*

16  *City and County of San Francisco*, 968 F.2d 850, 862 (9th Cir. 1992) ("otherwise valid state laws

17  . . . cannot stand in the way of a federal court's remedial scheme if the action is essential to

18  enforce the scheme").  For these reasons, the court finds the provisions of state law cited by

19  defendants with respect to the requisite CEA positions and salary levels established for the

20  Receiver-nominee and the Deputy Receiver-nominee must be waived and will order the necessary

21  waivers.

22         **C.      Waivers Required for Benefits**

23         Defendants contend the court will have to waive numerous state statutes, rules and

24  regulations for the Receiver-nominee and the Deputy Receiver nominee to receiver retirement

25  benefits commensurate with those afforded to Secretary Macomber.  *See* ECF No. 8592 at 5,

26  corrected by ECF No. 8596-1 at 6.   As discussed above, there appears to be no authority for the

27  proposition that benefits provided to a court-appointed receiver as part of a reasonable

28  compensation package are "prospective relief" within the meaning of the PLRA.  Moreover,

1   defendants have not established that the provisions of state law covering payment of benefits

2   they cite must be waived.  At this juncture, the court finds defendants have not made a sufficient

3   showing that waivers are the only way to provide POFF retirement benefits to these otherwise

4   well-qualified individuals.  Specifically, defendants have so far shown only that "[h]uman

5   resources personnel do not have authority to waive state law requirements" associated with

6   payment of court-approved compensation and benefits for the Receiver-nominee and members of

7   her team.  ECF No. 8596-1.  Defendants have not shown that the Governor, the Secretary of

8   CDCR, or any other named defendant in this action lacks authority to offer retirement benefits

9   outside the strictures of state law to candidates for positions equivalent to that filled by the

10  Receiver-nominee and her team, nor have they shown that in fact no such offers have been made

11  or accepted during the history of this litigation.

12          In their April 8, 2025 filing, ECF No. 8595, corrected by ECF No. 8597, defendants also

13  contend additional waivers of state law would be required "to void mandatory peace

14  officer/firefighter (POFF) vesting requirements for Ms. Peters and Mr. Lothrop."  ECF No. 8597-

15  1 at 3.  At this juncture, neither Ms. Peters nor Mr. Lothrop have requested waiver of any state

16  law vesting requirements and the court will not consider such waivers *sua sponte*.

17          For all of these reasons, the court's order to provide POFF benefits is CONFIRMED.

18  **IV.    ANNUAL LEAVE**

19          The Receiver-nominee has informed the court that CDCR human resources personnel

20  advised her a court order would be required for CDCR to provide her and Mr. Lothrop with 20

21  hours of annual leave per month, which leave is commensurate with that provided to Secretary

22  Macomber.  That will be the order of the court.

23  **V.     CLARIFICATIONS TO APRIL 2, 2025 ORDER**

24          Paragraph II(B)(1) of the April 2, 2025 Order Appoint Receiver-Nominee is amended as

25  follows:

26          The Receiver-nominee has accepted the offer of the Special Master to provide

27  administrative and clerical support staff to assist with ministerial duties.  The court approves this

28  arrangement.

1       The last paragraph of Paragraph II(C)(1) of the April 2, 2025 Order Appointing Receiver-

2  nominee is amended as follows:

3       The Receiver-nominee will submit to the court monthly invoices of reasonable expenses

4  incurred by the Receiver-nominee and her staff including per diem and travel expenses, which

5  shall be paid by defendants at the direction of the court.

6       In accordance with the above, IT IS HEREBY ORDERED that:

7      1.    The court OVERRULES defendants' objections to the compensation levels
8              for the Receiver-nominee, the Deputy Receiver-nominee, and the Senior
9              Advisor approved by the court in its April 2, 2025 order.

10      2.    The court directs defendants to create and fill the CEA positions required
11             by its April 2, 2025 order and waives the following provisions of state law
12             to enable compliance with this order:

13          • California Government Code, sections 18547, 19818.10, 19826,
14             19828, 19829, 19889, 19889.3;

15          • California Code of Regulations, title 2, sections 249.1, 548.3,
16             548.5, 599.990; and

17          • California Human Resources Manual, Rules 1203, 3006.

18      3.    The court OVERRULES defendants' objections to the benefits for the
19             Receiver-nominee and the Deputy Receiver-nominee approved by the court
20             in its April 2, 2025 order and finds defendants have not established that
21             waivers of state law are required for compliance with that order.

22      4.    Defendants shall provide the Receiver-nominee and the Deputy Receiver-
23             nominee with 20 hours of annual leave per month.

24      5.    The April 2, 2025 Order Appointing Receiver-nominee is amended in
25             accordance with Section V of this order.

26  DATED: April 21, 2025.

SENIOR UNITED STATES DISTRICT JUDGE