UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM SCR P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On February 28, 2025, the Special Master filed a Thirty-First Round Focused Heat Plan Monitoring Report (Heat Plan Report). ECF No. 8558. Defendants have filed limited objections to the Heat Plan Report, ECF No. 8564 and, with leave of court, ECF No. 8650, plaintiffs have filed a response to defendants' objections, ECF No. 8664. The court addresses the Heat Plan Report and the parties' responses now, given that the summer season is beginning and also to clarify this matter for purposes of the Receiver-nominee's consideration in her preparation of the Receivership Action Plan, which is underway.

The background and history of the Heat Plan are set out in Section I(A) of the Heat Plan Report, ECF No. 8558 at 6-7,[1] which the court incorporates in this order in full. The Special

---

[1] All references to page numbers in documents filed in the Court's Electronic Case Filing (ECF) System are to the page numbers assigned by ECF, located in the upper right hand corner of the page.

1

1   Master has reported on the status of defendants' implementation of the Heat Plan in his regular
2   monitoring reports. *See*, *e.g.*, ECF No. 8359 at 44. The Special Master explains he prepared the
3   more focused monitoring report on defendants' implementation of the Heat Plan due to "the
4   excessive heat impacting the State of California during the 2024 heat season as well as specific
5   'concerning practices and policy violations' uncovered during monitoring tours of newly-
6   established EOP [Enhanced Outpatient Program] programs in CDCR [California Department of
7   Corrections and Rehabilitation] institutions." ECF No. 8558 at 4-5.
8         Defendants raise objections to several of the Special Master's findings of institutional
9   non-compliance included in the Heat Plan Report. *See* ECF No. 8564 at 2-7. Defendants do not
10  dispute the Special Master's finding each instance set out in the Heat Plan Report was, in fact, a
11  departure from requirements of the Heat Plan. Instead, defendants argue, variously, that the
12  departures were de minimis or based on an "unreasonable" compliance standard. *See*, *e.g.*, *id*. at
13  2, 3. These objections do not account for the Special Master's role with respect to the court's
14  overarching role, as the court has explained in numerous prior orders. Fundamentally, the Special
15  Master reports defendants' compliance with remedial requirements "'from zero percent to 100
16  percent'" while the court resolves "'ultimate questions of constitutional compliance.'" May 16,
17  2024 Order at 5, ECF No. 8239 (quoting May 24, 2023 Order at 9, ECF No. 7847 (additional
18  citations omitted)).
19        Defendants' objections conflate the distinct ways "compliance" is measured in this action.
20  Specifically, the question before the Special Master in his monitoring reports, and then before the
21  court in evaluating his reports, is the degree to which defendants have implemented the long-
22  standing remedial requirements in this action. The question for the court then is whether
23  defendants have implemented remedial requirements to a degree of compliance necessary to
24  satisfy the Eighth Amendment. The latter question is not before the court at this time. The
25  objections raised by defendants in Section 1(A)-(C) are OVERRULED.
26        Defendants also object to the Special Master's statement in the Heat Plan Report
27  concerning the July 5, 2024 death of a Correctional Clinical Case Management System (CCCMS)
28  patient at Central California Women's Facility (CCWF). ECF No. 8564 at 7-8  In its entirety, the

2

sentence reads, "Sadly, with the suspected heat-related death of a female incarcerated person at CCWF on July 5, 2024, [footnote omitted], this year's heat season began with a tragic reminder of the very real harm that can result from failing to properly monitor and treat patients on heat sensitive medication." ECF No. 8558 at 40.  Defendants challenge the second half of the sentence beginning with the phrase "tragic reminder. . ." ECF No. 8564 at 7.  Defendants object to this statement because the final coroner's report on the cause of this inmate's death has not been issued "and there are indicators that other factors unrelated to heat may have been at play . . . ." ECF No. 8564 at 7.

In response to defendants' objections to the draft Heat Plan Report, which included the objections raised here, the Special Master added additional information to the report now before the court, as follows:

> In light of defendants' concerns, the Special Master provides the following additional information – generated by defendants prior to the time the Draft Report was distributed – regarding the patient death at CCWF discussed in the Draft Report.
>
> On July 8, 2024, the Special Master received a "Notification of Class Member Death" from defendants that indicated that on July 5, 2024 at approximately 0203 hours, a CCWF incarcerated person, who was a member of the MHSDS program in the 3CMS level of care, was pronounced deceased. *See Exhibit E.* The CDCR representative indicated that "[t]he cause of death [was] listed as loss of consciousness, status, epilepticus, *heat stroke*, and possible overdose." (emphasis added). *Id*. The *manner* of death was listed as "unknown". *See id*.
>
> Later that evening, on July 8, 2024, Plaintiff's counsel forwarded the notice and indicated to the defendants and Special Master that at the time of her death, the deceased patient was prescribed Lithium, a CCHCS-listed heat sensitive medication. *See Exhibit F*.
>
> In their request for additional information, Plaintiff's counsel indicated that a review of the patient's EHRS record included a July 6, 2024 document titled "Outside Records – Hospital" which stated that the patient's body temperature upon arrival on July 4, 2024 at approximately 2300 hours was 106.7 degrees Fahrenheit and that "[p]er prison guards" the patient had been "outside all day". *Id*.
>
> On August 13, 2024, counsel for the defendants responded to plaintiffs inquires and provided indoor and outdoor temperature logs for the week of July 1, 2024. *See Exhibit G*. The defendants did not indicate that the date of the patient's death was different than what was initially reported in the July 8, 2024 death notification. The defendants also indicated that the cause of death "may have been the result of an ongoing medical condition and not heat related but will be

3

determined by the coroner's office." *See id.* Notably, the defendants did not provide any information which supported their assertion that death may not have been heat-related as was initially determined by a medical authority. Additionally, in the August 13, 2024 correspondence, the defendant's indicated that on July 4, 2024, the day of the patient's hospitalization, "the swamp cooler in Building 514 was blowing warm air but was fixed the same day." *See id*.

The monitor reviewed the indoor and outdoor temperature logs attached to the August 13, 2024 email which reflected that on July 4, 2024, a Stage I heat alert was activated at CCWF at 10:00 A.M. and remained active through 9:00 P.M. with outside temperatures reaching as high as 101 degrees. *See Exhibit H*. Further, indoor temperature logs from the patient's housing unit 514 indicated that indoor temperatures reached as high as 87.3 degrees on July 4, 2024. *See Exhibit I*.

Defendant's contention that the Special Master assumed that the death was heat related and that those assumptions were not established by medical authority as being heat related, is misplaced. CDCR's *own representative*, in its death notification to the Special Master, indicated that the patient's cause of death was heat related and that the date of death was July 5, 2024 and not July 6, 2024 as the defendants' indicate in their January 21, 2025 letter. Additionally, CDCR offered no additional medical support to substantiate the claims made on August 13, 2024 that the death was not heat related as previously indicated by medical authority.

Therefore, the Special Master finds this possible heat-related death relevant to the Court's consideration of CDCR's compliance with the 2024 Heat Plan and Updates Memorandum, Expectations Relative to Institutional Oversight of Heat Plan Operations Memorandum, and the May 7, 1992 Stipulated Order. Accordingly, as noted, the report has only been amended to reflect that the patient was at the 3CMS level of care at the time of her death and that the coroner's report is still pending.

ECF No. 8558 at 13-15 (transcribed verbatim).

Viewed in context, the Special Master properly describes the death in question as a "suspected" or "possible" heat-related death. He reports ample facts to support this description, including that the individual had been pronounced dead by a physician at Mercy Hospital in Merced who included heat stroke among the identified causes of death. *Id*. at 13 and Ex. E, ECF No. 8558-1. Defendants do not dispute the decedent was on Lithium, nor do they dispute the facts reported about the swamp cooler and indoor and outdoor temperatures at times adjacent to the individual's death. The Special Master's characterization of the death as "suspected" or possibly heat-related, combined with the undisputed facts about relevant surrounding circumstances, provide the setting for his observation regarding the very real risks of heat

4

exposure for inmates on psychotropic medication. Given a reasonable reader's ability to digest and comprehend the words the Special Master employed, assigning appropriate weight to them, the court declines to strike or modify the portion of the sentence to which defendants object. This objection is OVERRULED.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' March 10, 2025 objections to the Special Master's Thirty-First Round Focused Heat Plan Monitoring Report are OVERRULED; and

2. The Special Master's Thirty-First Round Focused Heat Plan Monitoring Report, ECF No. 8558, is ADOPTED IN FULL.

DATED: June 10, 2025.

SENIOR UNITED STATES DISTRICT JUDGE