UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv- 0520 KJM SCR P |
| Plaintiffs, | ORDER APPROVING RECEIVER'S ACTION PLAN |
| v. | |
| GAVIN NEWSOM, et al., | |

On April 2, 2025, the court issued an order appointing Colette S. Peters as Receiver-nominee with the powers and duties set out in that order. Apr. 2, 2025 Order and Order Appointing Receiver-Nominee, ECF No. 8589. The court directed the Receiver-nominee to develop and present to the court a "detailed Receivership Action Plan" (hereafter Plan) within four months, *id*. at 2, as a prerequisite to the court's consideration of her appointment as Receiver in this action. The Receiver-nominee timely submitted the proposed Plan. Aug. 4, 2025 Order at 1, ECF No. 8721; Plan, ECF No. 8722. The parties have filed responses to the Plan, as directed by the court. ECF No. 8721 at 1 (court order); ECF Nos. 8735 (plaintiffs), 8739 (defendants). The court held a status conference on August 22, 2025 to clarify certain issues raised by the parties' respective positions concerning the Plan. Aug. 19, 2025 Minute Order, ECF No. 8743; Reporter's Transcript of Proceedings (RT 8/22/25), ECF No. 8751.

/////

1

1    Concurrently with this order, the court has appointed Colette S. Peters to serve as
2    Receiver in this action. By this order, the court approves the Receiver's Action Plan with certain
3    clarifications and instructions.[1] This order also incorporates by reference all findings and rulings
4    made by the court at the status conference on August 22, 2025. *See generally* RT(8/22/25), ECF
5    No. 8751.
6        The Plan includes an Executive Summary followed by two sections setting out,
7    respectively, an overview of this action and the steps taken and considerations brought by the
8    Receiver-nominee and her team in developing the Plan. ECF No. 8722 at 3–16.[2] The Executive
9    Summary provides a succinct and helpful overview of the substance of the Plan. ECF No. 8722
10    at 3 (Section 1). Section 2 of the Plan, entitled "Overview of *Coleman*," *id*. at 4–7, demonstrates
11    the Receiver-nominee has gained more than adequate knowledge of the complex history and
12    remedial requirements of this action to assume the responsibilities vested in her by her
13    appointment as Receiver. The Plan does not include an exhaustive list of court orders governing
14    the remedies in this action. *See, e.g.,* Appendix C, ECF No. 8722-3 (citing Special Master's 22nd
15    Round Monitoring Report, but not including, *e.g.*, Sept. 3, 2020 Order, ECF No. 6846). The
16    court is satisfied, however, that the Receiver-nominee recognizes the universe of court orders in
17    place that define the parameters of her work, that she has full access to all relevant orders, and
18    that she is alert to the potential need to return to the court to seek modification of orders as she
19    deems necessary to complete implementation of the remedy in this action and achieve the
20    remedy's durability.
21        Section 3 of the Plan, entitled "Development of the Action Plan," ECF No. 8722 at 7–16,
22    details the extraordinary four-month effort by the Receiver-nominee and her two deputies to gain
23    necessary knowledge and involve all stakeholders while maintaining the independence necessary

---

[1] The Plan estimates costs for its implementation, including compensation for the Receiver and two Deputy Receivers. ECF No. 8722-4. The court addresses the issue of compensation for the Receiver and two Deputies by separate order issued concurrently.

[2] Citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by ECF and located in the upper right-hand corner of the page.

1    to develop the Plan objectively.  In this section, the Plan cogently identifies several dynamics that
2    have interfered with full and durable implementation of the remedies in this action, including, but
3    not limited to: an ineffective management and organizational structure in the California
4    Department of Corrections and Rehabilitation (CDCR) Mental Health Services Delivery System
5    (MHSDS); ongoing mental health staffing shortages; differences between CDCR's medical and
6    mental health care programs that negatively impact the delivery of mental health care, particularly
7    the disproportionate use of "triage plans" to limit mental health care; the absence of a centralized
8    approach to developing consistent mental health programming and ensuring accountability for
9    delivering the programming; and the absence of a "headquarters-driven approach to improving"
10   responses to inmate suicide.  *Id*. at 8–12.  The Plan also acknowledges the importance of the
11   continuous quality improvement tool (CQIT), its role in monitoring and quality assurance, and the
12   broader need for adoption of a quality assurance/improvement program.  *Id*. at 13–14.  Next, it
13   reviews the Receiver-nominee's considerations in prioritizing the remedies in this action and
14   prioritizes them.  *Id*. at 14.  It also discusses considerations unique to this action that the
15   Receiver-nominee recognizes and has accounted for in developing the Plan.  *Id*. at 14-15.

16          Finally, and importantly, the Plan identifies three conditions the Receiver-nominee
17   observes must be met in order to meet the aggressive timeline set out in the Plan:  first, the parties
18   must be willing to focus on a collaborative approach marked by constructive dialogue and to turn
19   away from litigation; second, the parties must be willing "to focus on implementing existing
20   remedies and ensuring they are durable," *id*. at 16; and third, the Receiver must have "the
21   resources necessary to implement the *Coleman* remedies," *id*.

22          The court is encouraged that the Receiver-nominee has laid a very strong foundation for
23   her assumption of the role of Receiver in this action, a foundation she is prepared to build on with
24   the energy and leadership she has exhibited since her appointment as Receiver-nominee at the
25   beginning of April this year.

26          In its discussion of considerations unique to this action, the Plan recognizes several key
27   steps.  *Id*. at 14–16.  One step involves the Receiver-nominee's proposal to provide "near-term
28   role clarity as to the Receiver and Special Master, while timely integrating key personnel and

3

1   experts as well as functions of the Office of the Special Master into a single, consolidated office
2   supervised by the Receiver." *Id*. at 15.  Defendants raise questions concerning the "legal status"
3   of the Office of the Special Master, taking the position that the court cannot have both a Special
4   Master and a Receiver in the same action. *See*, *e.g.*, ECF No. 8739 at 7; *see also*, RT 8/22/25 at,
5   *e.g.*, 32–33, ECF No. 8751.  The court need not resolve that question at this time. The Receiver-
6   nominee is committed to working closely with the Special Master upon her appointment as
7   Receiver to address the issues related to the integration the Receiver's Action Plan contemplates,
8   and the Special Master is committed to working with the Receiver to this end as well.  The court
9   will direct the Receiver, after consultation with the Special Master, to present to the court within
10  sixty days of the effective date of the Receiver's appointment a focused plan describing the
11  responsibilities the Special Master has borne that will transfer to the Receiver and addressing how
12  to most effectively and efficiently carry out ongoing field monitoring in the state's prisons in the
13  context of the Receivership, as well as the deployment of CQIT in the next round of monitoring.[3]
14  The court will review this plan promptly and make such further orders as it deems necessary to
15  clarify the organizational structure of the Receiver's Office and to modify the December 11, 1995
16  Order of Reference, ECF No. 640. To this end, the Receiver, in consultation with the Special
17  Master, may include with the plan required by this order a proposal regarding modifications to the
18  Order of Reference.  In the meantime, during the first sixty days of the Receivership, the Special
19  Master will finish his current monitoring round, which is now in the report-writing phase and is
20  expected to conclude on or about the end of November.  By the end of the sixty days, the Special
21  Master will provide the court and the Receiver with executive summaries of his current
22  monitoring round, aiming to provide his full reports to the court and the Receiver by the end of
23  November, to memorialize the information already gathered by the Special Master and his team.
24  /////

---

[3] As the Receiver-nominee indicated at the status hearing on August 22, 2025, subject to her appointment as Receiver, she anticipates the next round of monitoring will begin in January 2026.  By that time, the court will have clarified the way in which monitoring will proceed.  RT 8/22/25 at 35, ECF No. 8751.

The Plan also notes that the coordination agreements with the *Plata*[4] Receiver and *Armstrong*[5] Court Expert "should be revisited if the court approves a *Coleman* Receiver," given that "circumstances have changed since those agreements were entered." ECF No. 8722 at 9. As the court indicated at the status hearing on August 22, *see* RT 8/22/25 at 43–44, it anticipates the Receiver will meet and confer with the *Plata* Receiver and *Armstrong* Court Expert. The court now directs that, within thirty days of the effective date of her appointment, the Receiver propose modifications to the coordination agreements for this court's consideration in consultation with the *Plata* and *Armstrong* courts as well.

The court notes plaintiffs' request that the Plan "encompass Plaintiffs' continued monitoring, including but not limited to interviewing class members in person and conducting site visits, to assess progress and identify problems." ECF No. 8735 at 18–19. Neither plaintiffs nor defendants have played formal monitoring roles in this action, though each have been permitted to accompany the Special Master on monitoring tours. For the sake of clarity, the court declines to adopt the term "monitoring" to refer to any of the work performed by counsel for any party. Plaintiffs' counsel will retain the right and ability to meet with their clients as necessary to the performance of their role as counsel.

The Action Plan itself, ECF No. 8722 at 17–26, contains adequate vision and mission statements, as well as six strategic goals with specific objectives and associated actions. It identifies milestones and sets out an aggressive timeline, one that is realistic if the parties promptly transition from litigation to collaboration with the Receiver and if defendants focus on implementation and durability while timely providing the resources identified by the Receiver as necessary to accomplish her work. The Receiver-nominee has requested that the timelines set out in the Plan formally commence sixty days after her appointment, to give her time to implement all the details necessary to establishing the Office of the Receiver as contemplated by the Plan. The court grants that request.

/////

---

[4] *Plata v. Newsom*, Case No. 01-1351 JST (N.D. Cal.)
[5] *Armstrong v. Newsom*, Case No. C 94-2307 CW (N.D. Cal.)

1    The court specifically finds the prioritization of specific actions as reflected in the Plan are
2    reasonable under the circumstances, and is satisfied the Receiver-nominee recognizes the urgency
3    attendant in all the remaining work that must be accomplished.  To ensure that any momentum
4    initiated by the court's enforcement of the staffing remedy to date is maintained, and as the court
5    indicated at the special status hearing on August 22, 2025, the court will order the temporary
6    staffing bonuses the court previously approved be made permanent and the Receiver to effect
7    their permanency promptly.  The court also will order that the Receiver generally expend the
8    funds in the defendants' Special Deposit Fund accrued based on the contempt fines affirmed by
9    the Ninth Circuit Court of Appeals to address continuing staffing shortfalls.  The Receiver
10   otherwise shall direct the expenditure of the balance of the funds in the Special Deposit Fund to
11   implement her Plan according to the priorities she has identified.
12        In sum, the court finds the Plan provides a savvy, practical and workable framework that
13   takes account of the custodial environment in which constitutionally adequate mental health care
14   must be delivered in full to the plaintiff class.  The Plan has sufficient detail with clear milestones
15   to chart the path forward and reflects the Receiver-nominee's collaborative approach with
16   specific proposals for continuing that collaboration.  At the same time, the Plan demonstrates the
17   Receiver-nominee's understanding that as Receiver she must maintain the independence
18   necessary to make difficult decisions as they may arise.  The Plan also reflects a commitment to
19   maximum transparency and a robust communications strategy, exhausting problem-solving with
20   all parties at the table, and moving aggressively to finally achieve compliance with the remedy in
21   a durable manner and end court supervision.
22        The court approves the Receiver's Action Plan and directs the Receiver to begin
23   implementing it immediately upon the effective date of her appointment.
24        For the foregoing reasons, IT IS HEREBY ORDERED that:
25   1. The Receiver's Action Plan, ECF No. 8722, is APPROVED with clarifications as
26      contained in this order and reflected in the Reporter's Transcript of Proceedings from
27      the August 22, 2025 Status Conference, ECF No. 8751;
28   /////

2. Consistent with the priorities identified in the Receiver's Action Plan, the temporary staffing bonuses are made permanent and the Receiver shall effect their permanency promptly. The Receiver generally shall direct the expenditure of funds in the defendants' Special Deposit Fund accrued based on the contempt fines affirmed by the Ninth Circuit Court of Appeals to address continuing staffing shortfalls, and otherwise shall direct the expenditure of the balance of the funds in the Special Deposit Fund to implement the Plan according to the priorities she has identified.

3. Within sixty days from the effective date of her appointment, the Receiver, after consultation with the Special Master, shall present to the court a plan providing the details necessary to clarify and implement the integration of the Special Master's office and members of his team into the Office of the Receiver, as contemplated by the Receiver's Action Plan; and

4. All timelines in the Receiver's Action Plan will start to run on November 1, 2025;

5. The Special Master will provide executive summaries of the result of his current monitoring round to the court and the Receiver within sixty days of September 1 and shall aim to complete his full monitoring report by the end of November 2025.

DATED: August 27, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE