UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM SCR P |
| Plaintiffs, | ORDER RE COMPENSATION OF RECEIVER AND DEPUTY RECEIVERS |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

As the court required, the Receiver-nominee has presented a proposed Receiver's Action Plan (hereafter Plan), ECF Nos. 8722, 8722-1 to 8722-6, and the parties have filed responses to the Plan, ECF No. 8735 (plaintiffs); 8739 (defendants). In separate orders filed concurrently, the court has appointed the Receiver and approved the Plan. The Plan includes a proposed budget that continues the annual compensation for the Receiver and two deputies, if appointed, at essentially the same levels set in the court's June 12, 2025 and August 4, 2025 Orders, ECF Nos. 8675, 8723. *See* ECF No. 8722-4 at 1.[1] Plaintiffs do not oppose this proposal. *See* ECF No. 8735 at 21. Defendants maintain their objection to these compensation levels and contend

/////

---

[1] Citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by ECF and located in the upper righthand corner of the page.

1

their previously filed motion for reconsideration sets out "a simpler and more appropriate way to calculate those salaries." ECF No. 8739 at 11 n.5. Defendants also note their pending appeal from the court's June 12, 2025 and August 4, 2025 orders. *Id*.

The court's prior orders covered compensation for the Receiver-nominee and her two deputies for the months of June and July 2025, through the date of submission of the Plan, and also for August 2025, for as long as the court has been evaluating the Plan and deciding whether to appoint a Receiver. *See* ECF No. 8723. Those prior orders cease to have any effect upon the effective date of court's appointment of the Receiver of September 1, 2025.

The court has "full power" to set compensation for the Receiver. *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). As the court explained in its April 22, 2025 order, that compensation must be "reasonable," and the court looks to several factors in setting that compensation, "including the benefits obtained by the receiver's work, the time and skills needed for 'proper performance' of the duties imposed 'and their fair value, measured by the common business standards; and the degree of activity, integrity, and dispatch with which the work of the receivership is conducted.'" Apr. 22, 2025 Order at 5, ECF No. 8608 (quoting *Walton N. Moore Dry Goods Co. v. Lieurance*, 38 F.2d 186, 192 (9th Cir. 1930)).

In addition to considering those factors, the court has reviewed the alternative methods it considered in setting compensation for the Receiver-nominee and her two Deputies in the April 2, 2025 order (ECF No. 8589) and the June 12, 2025 order (ECF No. 8675), and the three options set out by defendants in the joint statement filed by the parties in response to the court's March 19, 2025 Order and Order to Show Cause (ECF No. 8574), ECF No. 8583 at 5–6. The court also takes notice of the proposal defendants set out in the motion for reconsideration appended to their July 2, 2025 request for leave to file that motion seeking reconsideration of the court's June 12, 2025 order (ECF No. 8675), ECF Nos. 8693, 8693-1, a request the court denied, July 14, 2025 Minute Order, ECF No. 8701.

/////

/////

/////

       The court initially required the California Department of Corrections and Rehabilitation (CDCR) to employ the Receiver-nominee and her two deputies at specific levels of salary and benefits. ECF No. 8589 at 4-5. After defendants asserted that the court would be required to waive numerous provisions of state law for CDCR to comply with that order and following discussion with counsel in open court, the court withdrew its prior directive to CDCR to employ the Receiver-nominee and her deputies and instead set specific salary and benefits levels for them for the two months remaining in the four-month appointment period, ECF No. 8675, an order it then extended by up to one month for purposes of facilitating the court's review of the Plan, ECF No. 8723. As noted, on July 2, 2025 defendants first requested leave to file a motion for reconsideration of the June 12, 2025 order, ECF No. 8693, a request the court denied because the Receiver already had spent time and performed work and briefing would not be complete before the order expired, ECF No. 8701; defendants have now appealed those orders, ECF No. 8726. Overall, the record shows the court has three options: state employment, a specifically calculated level of salary and benefits, or a set annual lump sum payable monthly.

       Assuming without deciding that defendants were correct in their assertion that the court would be required to waive numerous provisions of state law for CDCR to comply with the order to employ the Receiver-nominee and her two deputies, *see* ECF Nos. 8592, 8596-1, 8644, there are other adequate alternatives available, which the court is required to pursue before waiving provisions of state law. *See Stone v. City and County of San Francisco*, 968 F.2d 850, 864–65 (9th Cir. 1992) (court must find alternatives to waiver of state law are inadequate before ordering such waivers). Thus, requiring CDCR to employ the Receiver and her deputies is not the least intrusive option available to the court.

       Defendants' proposed motion for reconsideration, ECF No. 8693 at 5–21, suggests at a minimum that a determination of compensation based on established salary and a detailed calculation of benefits unnecessarily entangles the court in questions normally reserved for human resources staff and tax accountants. In addition, the calculations in the proposed motion are all predicated on the suggestion that compensation amounts for the Receiver-nominee and her deputies should be calculated the way the state would have calculated their compensation if they

were state employees. *See generally* Higginbotham Decl., ECF No. 8693 at 15–21. The state cannot have it both ways, contending the court cannot require CDCR to hire the Receiver-nominee and her two deputies without numerous waivers of state law, and also that the court must use state employment methodology to calculate reasonable compensation for the Receiver-nominee and her two deputies serving as independent contractors.

This leaves the third option, a reasonable lump sum amount. In the March 28, 2025 Joint Statement, ECF No. 8583, defendants proposed a lump sum payment payable through a consulting contract with the Receiver-nominee team. ECF No. 8583 at 5. After discussion with the parties, the court adopted the lump sum approach in its June 12, 2025 order, with which defendants agreed in principle but not in amount. *See generally* Reporter's Transcript of Proceedings (RT 6/03/25), ECF No. 8676.

Having carefully considered the parties' positions and the entirety of the record before it on this question, the court has determined the most straightforward method to set annual compensation for the Receiver and her Deputies is to assess whether the annual compensation included in the Receiver's budget, ECF No. 8722-4, is "reasonable" by determining the hourly rate underlying the proposed amounts of annual compensation by dividing a 2,080 hour full time equivalency standard (FTE) into those amounts and then assessing whether the hourly rate is reasonable. This is the methodology the Receiver-nominee has used in the proposed budget to justify continuation of the rates previously ordered by the court.[2] *See id*. The court agrees that this methodology is appropriate and the most straightforward way to determine annual compensation for full time staff in the Office of the Receiver going forward.

The annual compensation rates in the proposed budget are $812,784.00 for the Receiver, $700,552.00 for Deputy Receiver Lothrop, and $687,883.00 for Deputy Receiver Toomey, representing hourly rates of $390.76 for the Receiver, $336.80 for Deputy Receiver Lothrop, and

---

[2] The Receiver-nominee has explained to the court that she maintained the compensation levels previously ordered by the court in the proposed budget but that in fact she takes the view the Deputy Receivers should be compensated equally. As explained below, that view is consistent with the court's findings in its May 1, 2025 order, ECF No. 8625; the court will order equal compensation for the Deputy Receivers at the level set for Deputy Receiver-nominee Lothrop.

4

1  $330.71 for Deputy Receiver Toomey.³ The differential between the rates for Deputy Receiver
2  Lothrop and Deputy Receiver Toomey is explained solely by different tax rates the court used in
3  the methodology it applied in the June 12, 2025 order, *see* ECF No. 8675 at 4-6, a methodology it
4  finds is unnecessary to apply here. Otherwise, the court previously has found that equalizing
5  compensation for Ms. Toomey and Mr. Lothrop is "both fair and reasonable" because their
6  responsibilities would be "substantially equivalent" and because Ms. Toomey brought a high
7  level of experience and legal training to her role. ECF No. 8625 at 2; ECF No. 8675 at 4. The
8  court finds that for the period of the Receivership, the compensation for these two Deputies will
9  be equivalent, consistent with the court's reasoning in its May 1, 2025 order as confirmed in the
10 June 12, 2025 order. Specifically, the annual compensation for Deputy Receiver Lothrop and
11 Deputy Receiver Toomey will be $700,552.00 each, representing an hourly rate of $336.80.

12       Hourly rates of $390.76 and $336.80 are well within the range of hourly rates this court
13 has previously found reasonable in other contexts in this action, before entertaining the possibility
14 of appointing a receiver.⁴ *See, e.g.*, Apr. 24, 2024 Order, ECF No. 8212 (approving rate increases
15 for Special Master and team to a range between $225/hour and $390/hour billed on an hourly
16 basis after they had served for almost twenty years at rates that ranged from $190/hour to
17 $260/hour); *see also* Sept. 11, 2018 Order, ECF No. 5919 (approving rates between $225/hour
18 and $500/hour billed on hourly basis for labor economists appointed to Special Master team to
19 perform a discrete task). Courts within this district, including this court, also have approved
20 attorneys' fee awards at similar or even higher equivalent hourly rates in civil rights cases,
21 including class actions, requiring specialized work and qualifications. *See, e.g.*, *United States ex*
22 *rel. Terry v. Wasatch Advantage Grp., LLC*, No. 15-00799, 2025 WL 406589, at *4–5 (E.D. Cal.
23 Feb. 5, 2025) (collecting authority and approving hourly rates greater than $600 for experienced
24 attorneys); *Goodson v. County of Plumas*, No. 18-03105, 2024 WL 99847, at *3–4 (E.D. Cal. Jan.

---

³ As the Estimated Costs attached to the Plan make clear, compensation for the Receiver and employees of the Receiver's Office is separate from travel expenses for the Receiver and other employees of her office. *See* ECF No. 8722-4. The court confirms that travel expenses will be paid separately and will not come out of annual compensation.

⁴

5

9, 2024) (same). Finally, the rates are substantially below the hourly rate for the Court Expert in *Armstrong v. Newsom*, Case No. C 94-2307 CW (N.D. Cal.), appointed by the court to assist in the coordination process between and among *Armstrong*, *Plata*, and this action, *Armstrong* June 11, 2007 Order, ECF No. 1121, and to assist the court with the resolution of certain disputes, *Armstrong* Dec. 29, 2014 Order, ECF No. 2479. *See Armstrong*, Aug. 8, 2025 Order, ECF Nos. 3174, 3174-1 (approving payment to Court Expert at hourly rate of $975.00 per hour).[5] The proposed compensation here, whether considered on an annualized basis or in light of an hourly-rates analysis, is commensurate with the complex and highly specialized tasks the Receiver and Deputy Receivers will be required now to undertake in this case. They are qualified, as very few people are, with substantial experience in public administration and prison systems in general, and through intensive focused work over the last four months they have developed a keen understanding of California's prison system in particular and its current delivery of mental health care services. The stakes also are very high, potentially even life or death for class members with the greatest needs and at the highest risk. These are all relevant considerations, and all favor compensation at the levels described above. *See* ECF No. 8608 (describing relevant factors).

In addition, taken together, the annual compensation for the Receiver and two deputies totals $2,213,888.00. This is less than the $2,522,612.00 CDCR expended on attorneys' fees paid to the Office of the Attorney General and private counsel in fiscal year 2022/2023. *See* Cal. Dep't Corrections & Rehab., Class Action Capital Outlay Annual Legis. Rep. at 10 (FY 22/23).[6] In the context of this case, the costs for a Receiver promise to be far more productive and efficient than the continued expenditure on litigation that has not modified the remedy in any material respect or advanced the ball expeditiously toward complete remediation.

/////

/////

/////

---

[5] The court takes judicial notice of these orders by the *Armstrong* court. *See Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971).

[6] https://www.cdcr.ca.gov/wp-content/uploads/2024/02/FY-22-23_Class-Action-Budgetary-Report_SB154_01-31-24_FINAL.pdf (last visited Aug. 26, 2025).

1   For all of the foregoing reasons, IT IS HEREBY ORDERED that, beginning September 1,
2   2025, defendants shall pay annual compensation to Receiver Colette S. Peters in the amount of
3   $812,784.00 and annual compensation to Deputy Receivers William W. Lothrop and Kathleen T.
4   Toomey in the amount of $700,552.00 each.
5   DATED: August 27, 2025.

                                                   _____
                                                   SENIOR UNITED STATES DISTRICT JUDGE