UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | No. 2:90-cv-0520 KJM SCR P<br><br>ORDER |

On February 11, 2025, the parties filed an agreed-upon hybrid work policy (hereafter Hybrid Work Policy), ECF No. 8542, attached as Attachment A to this order. The parties first proposed development of this policy in the court-ordered and court-approved Plan for Expenditure of Staffing Contempt Fines. *See generally* ECF No. 8381. The court referred consideration of the Hybrid Work Policy to the magistrate judge, Feb. 26, 2025 Minute Order, ECF No. 8553, who recommended this court independently evaluate whether to approve the Hybrid Work Policy once the United States Court of Appeals for the Ninth Circuit issued the mandate following its resolution of defendants' appeal from the court's June 25, 2024 contempt order. Mar. 25, 2025 Findings and Recommendations at 14, ECF No. 8580. On April 7, 2025, the court adopted that recommendation while "acknowledg[ing] and shar[ing] the concerns raised by the magistrate judge about the proper use of telemental health in a prison setting and how the modification to the definition of on-site work to include part-time remote work, reflected in the

1

1  Hybrid Work Policy may affect implementation" of the separately approved unified telemental
2  health and telepsychiatry policy.  Apr. 7, 2025 Order at 2, ECF No. 8593.  The Ninth Circuit
3  issued the mandate on April 10, 2025.  ECF No. 8602.

4  As required by court order, Apr. 2, 2025 Order, ECF No. 8589, on August 1, 2025, the
5  Receiver-nominee presented a proposed Receivership Action Plan (hereafter Plan), which the
6  court ordered filed on August 4, 2025.  Aug. 4, 2025 Order, ECF No. 8721, ECF No. 8722 (Plan).
7  In the Plan, the Receiver-nominee proposes the court approve the Hybrid Work Policy.  ECF No.
8  8722 at 23.  On August 4, 2025, the court ordered the parties to address "whether they continue to
9  agree to the Hybrid Work Policy as they previously submitted it to the court and therefore support
10 the Receiver-nominee's proposal that the court adopt it now."  ECF No. 8721 at 2.  Both parties
11 support the Receiver-nominee's recommendation.  ECF No. 8735 at 3[1] (plaintiffs); ECF No. 8739
12 at 17.  The parties confirmed their positions at hearing on August 22, 2025, and agreed the court
13 need only approve the policy, rather than order its implementation.  Accordingly, the court will
14 approve the policy.  The court expects the Receiver-nominee will consider fully the above-noted
15 concerns raised by the court and the magistrate judge once she assumes her role as Receiver in
16 this action.

17 In accordance with the above, IT IS HEREBY ORDERED that the Hybrid Work Policy
18 attached as Attachment A to this order is APPROVED.
19 DATED:  August 27, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] Citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by ECF and located in the upper right-hand corner of the page.

# Attachment A

| VOLUME 12:<br>MENTAL HEALTH | Effective Date: | |
|---|---|---|
| CHAPTER 1:<br>ACCESS TO CARE | Revision Date(s): | |
| | Supersedes: | |
| 12.01.901<br>TELEMENTAL HEALTH | Attachments: | Yes ☐   No ☒ |
| | Director Approval: | |

**Purpose**   This policy ensures services provided by the Telemental Health Program comply with the California Department of Correction and Rehabilitation (CDCR) Mental Health Services Delivery System (MHSDS) Program Guidelines. Telemental health providers shall conduct care consistent with CDCR rules, regulations, policies, and Local Operating Procedures (LOP) of the institution(s) to which they provide services. This policy is intended to reflect best practices in a correctional setting (not the constitutional minimum) and will be updated periodically to incorporate insights and lessons learned from experience, and to maintain consistency with evolving best practices and new advancements in care recommendations.

**Policy**   Telemental health enables mental health providers, including psychiatrists, psychologists, clinical social workers (CSW), marriage and family therapists (MFTs), and professional clinical counselors (PCCs), to provide real-time evaluations and treatment to patients by utilizing videoconferencing to facilitate live communication between the telemental health provider, the patient, and the patient's treatment team. Telemental health is designed to facilitate improved patient outcomes and thereby reduce the need for hospitalization and emergency services. Telemental health is a safe and efficient vehicle to increase access to care for CDCR patients.

Telemental health provides mental health services to the Correctional Clinical Case Management System (CCCMS) and Enhanced Outpatient (EOP) levels of care and may, under specified circumstances outlined in this policy and procedure, be utilized for higher levels of mental health care. On-site mental health providers shall remain the preferred method of care for the Mental Health Crisis Bed (MHCB) and Psychiatric Inpatient Program (PIP) programs. Good-faith efforts shall be made to recruit and retain on-site providers to provide services at the MHCB and PIP levels of care, and to ensure there are enough on-site staff to deliver care according to the requirements outlined below. Statewide allocations for telemental health providers shall not exceed 50% of the total non-PIP allocations for psychiatry and 50% of total non-PIP allocations for mental health primary clinician classifications (psychologist, CSW, MFT, and PCC). PIP mental health treatment is expected to be provided on-site consistent with this policy.

Telemental health providers will work in the State of California, be supervised by civil service telemental health supervisors and will be assigned to caseloads at the institution(s) they serve. Telemental health will attempt to make assignments in a way that protects and values continuity of care, however, caseload assignments may be changed based on institutional and program need. As appropriate, some telemental health providers may be split between half-time allocations or may not be assigned to caseloads and may instead provide comprehensive after-hours coverage, focused services such as assisting the Crisis Intervention Team (CIT), or short-term coverage during times when the assigned on-site provider or telemental health provider is unavailable to provide treatment to their assigned caseload.

**Equipment**

Telemental health providers shall work in CDCR hubs or in home offices located in the State of California that meet the following requirements.

The telemental health provider shall be given the following equipment and resources:
- Computer, monitor, speaker, microphone, camera, and state cell phone.
- Computer access to all resources, or equivalent resources utilized by their on-site counterparts, including the Electronic Health Records System.
- Internet access of sufficient speed and stability to allow a videoconference where the patient and telemental health provider can be seen and heard clearly. Telemental health providers working from home must provide the same standard of internet access.

Telemental health providers working from home must provide a confidential space with their own office furniture. Telemental health providers will also have access to office space at a CDCR-operated hub should they prefer or need to work from the hub. Each hub office will be a single, enclosed, and confidential space with a door, desk, and chair, as well as a full technological set-up. This office space will be sound-proofed, where possible.

Telemental health providers must onboard and begin their clinical assignments while working from the CDCR-operated hub. Prior to transitioning to work from home, telemental health providers must demonstrate appropriate use of the technology and workflow, adequate integration with their on-site team(s), and reliability and responsivity while working in the hub. Only once the telemental health supervisors, with input from local on-site supervisors, are fully satisfied with both the provider's performance while working in the hub and ability to function effectively from home will the transition be allowed.

Work from home is allowed only for civil service telemental health providers. It is not an available assignment for registry telemental health providers, who must work from a CDCR hub.

**Physical Environment**

The patient's interview room and environment shall allow for both the telemental health provider and the patient to be seen and heard clearly by each other. The patient's and telemental health provider's cameras shall be positioned to allow their faces to be clearly visible to each other. The telemental health provider shall also be able to clearly see the patient's body to assess for any signs of movement that may be clinically relevant. When indicated, the telemental health provider can request assistance from the telepresenter, who shall receive appropriate training on how to assess for such physical signs. The telemental health leadership and the institution receiving services shall ensure others are not able to enter the telemental health provider's or patient's rooms accidently or overhear conversations from inside or outside the rooms.

Seating and lighting should be adjusted to provide the clearest video and audio transmission, as well as to ensure the safety of the participants. Rooms for the telemental health provider and the patient shall be appropriately sound-proofed, when possible, or alternative mechanisms shall be utilized (for example, sound-cancelling devices) to ensure privacy. When possible, the telepresenter should be seated closest to the door.

**Professional and Patient Identity and Informed Consent**

At the beginning of an initial appointment with a patient, the telemental health provider shall introduce themself and verify the patient's identity verbally and/or by having the patient show their CDCR-issued photo identification card on the video screen. At the beginning of the patient's first telemental health contact, the telemental health provider shall obtain informed consent for the method of treatment by, at a minimum, explaining the treatment modality and addressing potential concerns, including a description of the role of the telepresenter, and a plan for what staff and the patient will do in response to interruption in services.

**Participation in Interdisciplinary Treatment Teams, Meetings, and Huddles**

Telemental health providers must participate in the receiving institution's Interdisciplinary Treatment Team (IDTT) meetings as required by their assigned clinical duties. In addition to IDTT meetings, telemental health providers shall participate to the same extent as on-site providers in all meetings and huddles relevant to the clinical care of their assigned patients. To facilitate their participation in IDTT and huddles, such meetings and huddles that include a telemental health provider shall be held in a location with videoconference capabilities that allow for the telemental health provider's full participation when their patients are being reviewed.

**Refusals**

If a patient refuses a telemental health encounter for any reason, the patient's telemental health provider(s) shall confer with the other members of the patient's treatment team to consider mental health reasons, behavioral issues, custodial issues, or any other relevant factors to determine what barriers exist and whether telemental health is an appropriate delivery method for the patient. The treatment team shall work toward resolving any issues contributing to the patient's refusal of telemental health services. A member from the treatment team may utilize brief, focused cell-front discussions with the patient to determine the reasons for appointment refusals. If the patient requires a clinical contact, the telemental health provider may request a consultation from an on-site provider or conduct a cell-front telemental health contact, as clinically indicated.

If a patient continues to refuse treatment specifically due to the tele-modality, an IDTT meeting shall be convened as soon as clinically appropriate taking into account the full clinical picture, and no more than 30 days unless the treatment team determines that it is clinically appropriate to await the next scheduled IDTT. During this IDTT meeting, the treatment team shall discuss whether it is clinically appropriate to reassign the patient to an on-site provider. Contingency plans shall also be developed to provide on-site mental health care to the patient as needed.

If the treatment team concludes telemental health is not an appropriate treatment modality for the patient, the team shall report this finding to mental health leadership (Chief of Mental Health and the provider's relevant Chief and/or Senior Supervisor by classification) at the institution receiving telemental health services, who shall ensure the patient is reassigned to an on-site provider. The relevant telemental health Chief and/or Senior Supervisor must also be notified. If a patient's request to be reassigned to an on-site provider is determined by the team to not be clinically appropriate, mental health leadership at the institution must review the case and either confirm the team's decision or reassign the patient to an on-site provider.

### Cell Front Telemental Health

Telemental health providers conduct a cell front contact when it is necessary for the telemental health provider to speak with a patient who did not attend a scheduled appointment. Non-confidential telemental health contacts, including cell-front contacts, shall only satisfy a Program Guide required clinical contact when it is in response to a valid refusal as defined in the Program Guide. Whenever possible, a cell-front contact in response to a patient not attending their scheduled appointment should be conducted by the provider with whom the appointment was scheduled, regardless of modality.

### Contraindications for Telemental Health

While there are no absolute contraindications to telemental health, telemental health providers and supervisors should consider a patient's full clinical picture, including cognitive capacity, level of reality testing, history regarding cooperativeness with treatment, current and past difficulties with effective communication, and histories of violence or self-injurious behavior when considering the appropriate use of telemental health services. Telemental health providers should also determine whether there are any aspects of care that would require an in-person examination of the patient on a regular basis. If the patient's IDTT determines that the patient needs to be seen by an on-site provider, they will work with mental health leadership at the institution to ensure the patient has an appropriate provider assigned.

### On-site Staffing Requirements

Institutions shall ensure there are a sufficient number of on-site staff to provide in-person services for:
- Use of Force incidents;
- PREA evaluations;
- CITs will continue to function consistent with the current CIT policy;
- Follow ups on patients who refuse or did not show for scheduled appointments and require assessment due to clinical concerns, but cannot be adequately assessed remotely;
- Assessment of patients for whom there are clinical concerns that cannot be adequately assessed remotely either due to patient presentation/cooperation or inability to conduct a remote contact;
- Physical assessments, such as for restraints/seclusion, or emergent concerns related to neurological or medication side effects;
- Treatment for patients that the treatment team determined telemental health is not an appropriate treatment modality;
- Treatment in situations where technical limitations or malfunctions interfere with telemental health services; and,
- On-site specific duties during on-call coverage.

### Telemental Health and Levels of Care

Telemental health providers will be assigned to CCCMS and EOP levels of care. CDCR seeks to employ mental health providers who can deliver in-person, on-site treatment and care to patients in all inpatient facilities. CDCR will not use telemental health in lieu of on-site mental health providers at the inpatient levels of care for any reason other than a lack of availability of on-site mental health providers.

Night Shift providers cover all levels of care except for PIP, similar to on-site on-call services.

**Correctional Clinical Case Management Services and Enhanced Outpatient Program**

Telemental health services may be utilized to treat patients at the CCCMS and EOP levels of care provided all other conditions pertaining to the CCCMS and EOP levels of care and on-site staffing needs contained within this policy are followed.

**Mental Health Crisis Bed and Psychiatric Inpatient Program**

The use of telemental health services in the MHCB and PIP levels of care is restricted to only circumstances when on-site care is not available and shall be used for the shortest duration of time as necessary. If a telemental health provider is required to serve in an MHCB for greater than 14 consecutive calendar days, this would not be consistent with this policy's objective. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel. Within 16 calendar days from the provision of the notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how the staffing issue was resolved. If a telemental health provider is required to serve in a PIP for greater than 30 consecutive calendar days, this would not be consistent with this policy's objective. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel. Within 30 calendar days from the provision of the notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how the staffing issue was resolved. All contacts are equivalent to on-site contacts of the same nature.

**Clinical Emergency Management**

If a clinical emergency arises during a telemental health session (for example, the patient displays self-harm behaviors, violence, or homicidal behaviors), the telemental health provider shall immediately notify the appropriate institution staff, as identified by the institution's LOP. The telemental health provider shall coordinate with institutional mental health leadership and follow local institutional protocol for managing such emergencies. This may include, but is not limited to, coordinating arrangements for safe holding, transport to an emergency triage area, communication with local emergency team members, and placing emergency orders as needed. If it is clinically determined that the telemental health provider is not the best clinician to work with the emergency team, arrangements must be made for the patient to be seen by an on-site provider.

**MHCB and Psychiatric Inpatient Programs**

To facilitate familiarity with the program and patients, and in the event that a telemental health provider is needed in an MHCB or inpatient setting, the telemental health provider shall participate in clinical staff meetings and case conferences, and coordinate patient care. On-site staff shall ensure that the telemental health services provider has the necessary and pertinent information about the patient and the unit for the ongoing assessment and treatment of the patient. Similar to on-site providers, telemental health providers shall be involved in treatment and discharge decisions.

All elements of seclusion and restraint protocol shall follow existing policies and procedures and all applicable laws and regulations, including the need for a backup physician (psychiatrist or medical provider) who can physically examine the patient within the mandated timeframes. In the event that a telepsychologist is contacted for seclusion and restraint, a psychiatrist shall also be consulted to assess for the need for emergency medication, as clinically indicated. Emergency medications may be ordered by telepsychiatrists, as clinically appropriate.

To ensure continuity of care, telemental health providers shall provide relevant clinical information

during the hand-off to the on-call provider to convey details regarding a new admission, to coordinate patient care tasks that require follow up during after-hours coverage,

or if they anticipate specific patient concerns. Telemental health and clinical staff, including nursing staff when needed, shall have access to each other to address patient needs.

### Site Visits

Telemental health providers are responsible for maintaining relationships with members of their assigned on-site treatment team through regular communication and by visiting institutions. Telemental health providers shall visit their assigned institution within 30 days of assignment and no less than annually thereafter. Additional visits may be required for individual clinicians, based on the clinician's request or as decided by the supervisor in the telemental health program. The telemental health provider will spend at least one day during each site visit at the facility. During this visit, the telemental health provider shall participate in the IDTT, meet with necessary health care staff, attend staff meetings if applicable on that day, and may see patients in-person.

### Organizational Structure

All telemental health staff shall report as appropriate within the Telemental Health Program supervisory chain.

### Workflow Interruptions

In the event of technology or equipment failure, telemental health providers shall immediately notify their direct supervisor and mental health leadership at the institution, as well as the Integrated Communications Technology Unit. The telemental health provider shall also make arrangements with institutional mental health leadership to ensure appropriate patient coverage based on patient need (for example, coverage by an on-site provider or rescheduling of appointments). Telemental health providers may also be redirected to another telemental health assignment when this occurs.

If a telemental health provider has a sustained interruption in technology or significant equipment malfunction, or if there are supervisory concerns that interfere with their ability to see and treat patients, they may be required to report to an office space in the hub.

### On-Call or After-Hours Coverage by Telemental Health Providers

Telemental health providers shall contribute to on-call or after-hours coverage as assigned, and their provision of services shall be in accordance with applicable California Correctional Health Care Services (CCHCS) Health Care Department Operations Manual (HCDOM) policies, statewide mental health policies, and applicable bargaining unit Memorandums of Understanding.

Telemental health providers are not required to travel to the institution where they are providing on-call or after-hours coverage. Therefore, institutions receiving on-call or after- hours coverage from the Telemental Health Program must provide a backup clinician.

### Telepresenters

A dedicated and appropriately clinically trained telepresenter who facilitates the patient encounter from the originating site to the telemental health provider and is responsible for providing clinical support and coordination. Telepresenters are not expected to be in the room with the

patient for the entirety of an encounter. The patient may request that the telepresenter leave the room at any point. However, the ultimate decision as to whether the telepresenter remains for part or all of an encounter is at the telemental health provider's discretion, in order to facilitate an on-site component of the encounter and/or to ensure patient's safety, particularly during a clinical emergency. The telepresenter shall be required to introduce themselves when they are in the room and explain that they are subject to the same confidentiality requirements as the telemental health provider and other treatment providers. Responsibilities include, but are not limited to, reviewing the patient health record prior to the appointment, facilitating the videoconferencing connection with the telemental health provider, assisting with on-site correspondence and care coordination, and remaining immediately available to the patient during the appointment. Telepresenters shall be assigned from, but not limited to, position classifications in the following order of priority: medical assistant, certified nursing assistant, psychiatric technician assistant, psychiatric technician, licensed vocational nurse, registered nurse, clinical nurse specialist, nurse practitioner, rec/rehab therapist, marriage and family therapist, professional clinical counselor, social worker, psychologist, psychiatrist, other physicians, or other mental health professionals. When the telepresenter is a Mental Health Primary Clinician (MHPC) or Mental Health Medical Doctor (MHMD), the clinical contact may be considered a joint appointment if each clinician has a meaningful contact with the patient consistent with policy.

**Responsibilities**

The institution receiving telemental health services shall be responsible for providing the following:

- Timely access for patients to the telemental health provider.
- A dedicated and appropriately clinically trained telepresenter as outlined above
- A backup telepresenter when the primary telepresenter is on leave or unavailable.
- Availability of appropriate clinical staff.
- Support staff responsible for scheduling appointments and processing clinical paperwork, as appropriate.
- An institutional contact list of important names and numbers for the telemental health provider. This includes, but is not limited, to the following:
    1. Laboratory
    2. Pharmacy
    3. Nursing station(s)
    4. Housing unit(s)
    5. Custody Health Care Access Unit staff
    6. Primary Clinician(s)
    7. Medical Provider(s)
    8. Mental Health Supervisor(s)
    9. Chief of Mental Health
    10. IT Department
    11. Chief and Senior Psychologist
    12. Chief Psychiatrist or Senior Psychiatrist Supervisor
    13. Scheduler
    14. Medical Records Supervisor
    15. Watch Commander
- The contact information for telemental health providers assigned to the institution made available to relevant on-site staff, including but not limited to telepresenters,

- on-site leadership, nursing, laboratory, and pharmacy staff.
- A confidential treatment space to facilitate patient encounters. This space shall include all equipment needed to facilitate the telemental health encounter, including, but not limited to a computer, phone, scanner, printer, desk, and chair.
- Caseload assignments and scheduled appointments for the telemental health provider.
- Maintenance of teleconferencing connectivity between institutions and telemental health providers.
- Confirmation that telemental health providers are appropriately privileged to provide clinical services to any licensed or inpatient units, when applicable.
- Audit reports for local compliance indicators.
- Organized tours for the telemental health providers during their initial visits to the institution.
- On-site clinical contingency plans and patient prioritization strategies to manage absences of telemental health providers.
- An LOP for telemental health services that shall be submitted to the telemental health leadership for review and approval prior to local distribution or implementation. Any revisions of the LOP for telemental health shall be reviewed and approved by telemental health leadership prior to implementation at the institution. The LOP must be reviewed annually.
- Routine system tests to ensure that telemental health equipment is safe, operational, and secure

| | |
|---|---|
| **Compliance Requirements** | To be in compliance with this policy, the following requirements shall be met jointly by the Telemental Health Program and the institution receiving services:<br><br>1. Telemental health providers are provided with the appropriate equipment and resources.<br>2. Telemental health providers participate in the same manner as on-site providers in the receiving institutions' IDTTs and all meetings and huddles relevant to the clinical care of their assigned patients.<br>3. On-site staff and members of the treatment team communicate with the telemental health providers regarding any important patient issues and concerns related to patient care.<br>4. Telemental health providers have access to all necessary clinical information via the patient's health record.<br>5. Telemental health providers communicate any important patient issues and concerns related to patient care to the on-site staff and members of the treatment team.<br>6. Telemental health providers complete all documentation in the health record by the close of each business day.<br>7. Telemental health provider and patient identity are verified at the beginning of a mental health treatment videoconference.<br>8. Telemental health providers visit their receiving institutions as directed by this policy.<br>9. Ongoing mandatory trainings are completed for all telemental health providers.<br>10. Telemental health providers are privileged at each licensed or inpatient unit they serve.<br>11. The institution maintains a sufficient number of on-site staff (which can be supervisors) to provide in-person services for functions designated for on-site staff. |
| **References** | - CDCR Mental Health Services Delivery System Program Guide, 2021 Revision<br>- CCHCS Health Care Department Operations Manual<br>- Bargaining Unit 19 Memorandum of Understanding |
| **Questions** | If you have any questions or need any additional information related to this policy, you may contact the policy unit via e-mail at: CDCR MHPolicyUnit@CDCR |