UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM SCR P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

I.    INTRODUCTION

On September 25, 2025, defendants filed a document styled "Defendants' Notice of Compliance with Section VI of Amended Order Setting Out Powers and Duties of Receiver," which the court refers to as the "Notice" in this order. ECF No. 8778 at 1.[1] The Notice confirms defendants' compliance with the court's order requiring them to promptly notify certain state agencies and employees of their obligation to cooperate fully with the Receiver in the discharge of her duties under the amended order setting out those powers and duties. *See id.* at 1-2 (citing Sept. 5, 2025 Amended Order at 8:7-22, ECF No. 8765). Within the Notice, defendants provided a link to a report (the "Falcon Report" or "report") prepared by Voorhis Robertson Justice

---

[1] Citations to page numbers in documents filed in this action are to the page number(s) assigned by the Court's Electronic Case Filing (ECF) system and located in the upper righthand corner of the page.

1

1  Services, LLC (VRJS) and Falcon Correctional and Community Services, Incorporated. (Falcon).
2  *Id*. at 3.  On September 29, 2025, the court directed the parties, within seven days, to "meet and
3  confer and file a joint status report informing the court of their views, jointly or separately, of the
4  import of the report given the current posture of this case."  Sept. 29, 2025 Minute Order, ECF
5  No. 8781.  The parties have filed the joint status report.  ECF No. 8790.  Plaintiffs have separately
6  filed a request for judicial notice of a press release issued by the California Department of
7  Corrections and Rehabilitation (CDCR) after the joint status report was filed.  ECF No. 8791.
8      For the reasons explained below, the Notice is STRICKEN, defendants are directed to
9  refile the Notice without any reference to the Falcon Report, and plaintiffs' request for judicial
10 notice is GRANTED.

11    **A.  The Falcon Report**

12     In the Notice, defendants represent the Falcon Report is the work product of a group of
13 "nationally-recognized mental health experts" who defendants retained "to conduct a fulsome
14 evaluation of CDCR's Mental Health Services Delivery System (MHSDS)."  ECF No. 8778 at 2.
15 Defendants initially contracted with these experts five years ago.  Mar. 6, 2024 Order at 2, ECF
16 No. 8144.  In 2023, after receiving an initial report and recommendation from the same experts,
17 defendants retained them to conduct an expanded study, including through conducting prison
18 tours.  *Id*. at 3.  On July 28, 2023, the court stayed any further prison tours by the experts pending
19 further order of the court, Jul. 28, 2023 Order at 4, ECF No. 7897, and on March 6, 2024, the
20 court exercised its case management authority to deny defendants' motion to lift the stay, ECF
21 No. 8144.  In particular, the court found no evidence to support a finding that the court-approved
22 remedial plan for the delivery of mental health care, the Program Guide, "exceeds nationwide
23 standards . . . and, importantly, no analysis of whether, or how, those national standards
24 themselves satisfy the Eighth Amendment" and, therefore, "no basis to find that the proposed
25 tours will aid in the most expeditious resolution of this action at this point . . . particularly . . .
26 where the tours would be a costly and time-consuming detour from the tasks remaining to
27 implement the Program Guide, whose nexus to the requirements of the Eighth Amendment is
28 well-established."  *Id*. at 7.  The court also found the tours unnecessary to an analysis of whether

2

1  the record would support a motion to terminate this action, given that "the record is replete with
2  the court's factual findings of the present state of mental health care delivery to class members."
3  *Id*. The court did not preclude defendants from "monitor[ing] their own prison facilities" but
4  expressly stated that "for purposes of this litigation the mechanisms for evaluating and monitoring
5  defendants' MHSDS and for transitioning that evaluation and monitoring to defendants are well-
6  established." *Id*. at 10.[2]

7  According to defendants' Notice, the Falcon Report is the result of the expanded study,
8  completed without any additional prison tours and shared by defendants now "with the hope that
9  the report aids" in the efforts of the Receiver and her team. ECF No. 8778 at 2-3.

10  **B.  Appointment of Receiver**

11  Effective September 1, 2025, the court appointed a Receiver "to take control of the
12  delivery of mental health services to the plaintiff class. . . ." ECF No. 8765 at 1. The Receiver is
13  required to provide "leadership and executive management of mental health care with the goal of
14  fully implementing the court-approved and court ordered remedies in this case to provide
15  constitutionally adequate mental health services to all class members as soon as practicable"; to
16  that end, the Receiver is required to implement the court-approved Action Plan and is vested with
17  both "the authority and, as necessary, the duty to control, oversee, supervise, and direct all
18  administrative, personnel, financial, accounting, contractual, legal, and other operational
19  functions necessary to the delivery of mental health care to class members." *Id*. at 2. The
20  Receiver has assumed the powers and duties of the Secretary of CDCR as they relate to the
21  delivery of mental health care to class members, and the Secretary's exercise of those powers is
22  "suspended for the duration of the Receivership. . . ." *Id*. at 3. In short, the Receiver's job is to
23  fully implement the court-ordered and court-approved remedies in this case. *See id*. at 2.

24  The court also has approved the Receiver's Action Plan with certain clarifications and
25  instructions and with the specific findings "that the Receiver-nominee recognizes the universe of

---

[2] A copy of the court's March 6, 2024 order is appended to this order and incorporated by reference. Defendants' appeal from that order was dismissed for lack of jurisdiction. *See* May 30, 2025 Order, *Coleman v. Newsom*, Ct. of Appeals Dkt. # 24-2263, ECF No. 8661.

1  court orders in place that define the parameters of her work, that she has full access to all relevant
2  orders, and that she is alert to the potential need to return to the court to seek modification of
3  orders as she deems necessary to complete implementation of the remedy in this action and
4  achieve the remedy's durability." Aug. 27, 2025 Order at 2, ECF No. 8753.

### C. Parties' Positions

In the joint status report, defendants represent the Falcon Report was "only just completed and finalized last month" and it was "sheer happenstance" that "[t]he timing of the report's completion coincided with the appointment of the Receiver." ECF No. 8790 at 2. Defendants represent they would have used the work completed by the experts "in running CDCR's MHSDS if they still retained authority over the system" and they wanted the Receiver to have the benefit of that work as she refines her Action Plan. *Id*. Defendants state they shared the link to the report in the interests of transparency, to keep the court and the parties' apprised of the experts' work, and as "an information tool that may be considered or used by the Receiver at her discretion." *Id*. at 3. Defendants object to plaintiffs' request that the notice be stricken, as they did not ask for any relief from the court or ask the Receiver to take any specific action based on the report.

Plaintiffs contend the Falcon Report "has no import whatsoever at this stage in the case" and ask the court to strike the Notice and order defendants to refile the notice without reference to the Falcon Report. *Id*. at 4. Plaintiffs contend the reference to the Falcon Report and the report itself "are 'precisely the type of extraneous material' the Court intended for its December 24, 2020 Order to 'ke[ep] out of the record.'" *Id*. (citing ECF No. 7003). Specifically, plaintiffs contend there is nothing before the court that requires testimony from the Falcon experts, and they contend defendants could not properly file it as a litigation expert report because "such reports are not evidence." *Id*. Plaintiffs also argue they have not had any opportunity to "test the veracity of the Report." *Id*. They believe the Report "is unreliable and inherently suspect on its face" for several reasons:

> The Report's conclusion that Defendants are complying with the existing *Coleman* remedy is premised on old data, uses a "proprietary" formula the Report does not disclose, *see* Report at 28, and squarely contradicts Defendants' own remediated data, the Special Master's fully vetted findings, and the Court's own factual findings

|   |   |
|---|---|
| 1 | in support of its decision to appoint the Receiver, which Defendants did not appeal. |
| 2 | *See* Aug. 27, 2025 Appointment Order, ECF No. 8752. Further, the Report recycles |
| 3 | arguments this Court has already rejected, urges actions that have already been |
| 4 | taken, and threatens to undermine the receivership and this Court's orders. |
| 5 | Defendants' request that the Receiver consider what is effectively an expert witness |
| 6 | report in support of modification or termination of the *Coleman* remedy, without |
| 7 | filing a motion, is a dangerous distraction from the Receiver's court-ordered mission |
| 8 | to durably implement the settled remedy. |

ECF No. 8790 at 4-5 (footnote omitted). Plaintiffs contend "[d]efendants' decision to file the Report on the docket now, one month *after* the Receiver's appointment, represents an attempt to informally erode the settled remedy via the Receiver, rather than moving formally before the Court" and "is fundamentally inconsistent with the Court's receivership orders." *Id*. at 7 (emphasis in original). Plaintiffs suggest defendants' conduct "is damaging to the receivership itself because of the likelihood the Report will mislead the public" and appears to violate this court's signal that action that "thwarts or delays the Receiver's performance of her duties under this order [will be] subject to contempt proceedings. . . ." ECF No. 8765 at 8 (quoted in ECF No. 8790 at 8).

As noted, plaintiffs ask the court to strike the Notice and "order it refiled with just the current version's first paragraph." ECF No. 8790 at 11. Plaintiffs also request that the court "confirm that the Receiver may, at her discretion, ignore or delay consideration of the Report, in whole or in part, and require that Defendants produce the underlying data, documentation, methodology, and communications on which the Report's conclusions are based, as a condition of her consideration of a recommendation." *Id*.

In support of their arguments, plaintiffs ask the court to take judicial notice of a press release issued by CDCR entitled "NEW STUDY: California's Mental Health Care for Incarcerated Individuals Exceeds Key National Standards." ECF No. 8791. CDCR issued the press release on October 6, 2025, the day the parties filed the joint statement. *Id*. at 5.

**II.    ANALYSIS**

    **A.    Request for Judicial Notice**

Federal Rule of Evidence 201 permits courts to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* 201(c)(2). Under Rule 201, a court "may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, [but] not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal citations omitted). As relevant here, the CDCR press release is published on the "News Releases" section of CDCR's website.[3] The court thus takes judicial notice of the contents of the press release, its publication on October 6, 2025 and its continuing availability, at least as of the date the court is signing this order. Plaintiffs' request for judicial notice is GRANTED to this extent.

**B.    The Court Takes No Action on the Falcon Report**

As of September 1, 2025, the court-appointed Receiver has assumed responsibility for implementation of the court-ordered and approved constitutional remedies in this case. Those constitutional remedies are settled. *See*, *e.g.*, July 9, 2019 Order at 17, ECF No. 6214 ("Given the years that have passed since the 2006 order [to immediately implement the remedial plan for delivery of mental health care to the plaintiff class, known as the Program Guide] except as specifically noted . . . , all remedial planning is complete."). The Receiver's work is focused on and guided by those remedies.

The court accepts certain of the parties' representations about the Falcon Report without independently reviewing its contents. To the extent the Falcon Report recommends steps for the delivery of mental health care to class members congruent with the court-approved remedies in this case, it is likely redundant. To the extent the Falcon Report implies the court-ordered remedies or defendants' delivery of mental health care meet constitutional standards, it likely contradicts this court's previous findings and orders. Plaintiffs have not had an opportunity to test the evidence or expert opinions underlying the Falcon Report and they challenge its reliability and its relevance. *See* ECF No. 8290 at 4-8. They also challenge the potential impact of the

---

[3] https://www.cdcr.ca.gov/news/2025/10/06/new-study-californias-mental-health-care-for-incarcerated-individuals-exceeds-key-national-standards/ (last visited Oct. 15, 2025).

6

report on the Receivership, as well as defendants' motivation in deciding to present and publicize the report now. *See id*. Determining which portions of the Falcon Report are redundant, determining which portions are contrary to this court's findings and orders, permitting plaintiffs to test the Falcon Report, or resolving the other issues raised by plaintiffs would be "a significant waste of public resources" that will only "prolong" the timelines necessary to fully implement the remedies in this action. *See*, *e.g.*, ECF No. 8752 at 20. The court need not and does not decide any of these issues at this time. The focus going forward must be on the cessation of litigation and full, good faith cooperation with the Receiver. ECF No. 8752 at, *e.g.*, 23.

### C. Receiver's Consideration of the Falcon Report

Plaintiffs also ask the court to "confirm that the Receiver has complete discretion to ignore the Report, in whole or in part, and to require the production of underlying data and methodology as a condition for considering any part of the Report for any purpose." *Id*. at 8. The court is confident the Receiver understands her role and does not find it necessary to issue specific instructions to the Receiver concerning the Falcon Report. For purposes of this order, it is sufficient to note that plaintiffs raise serious questions about the utility of the Report and whether it may properly be considered at this stage of these proceedings—and the risk of litigation to the extent the Report is relied upon as the basis for any particular course of action.

### D. Reference to Falcon Report Stricken

In December 2020, the court "signaled its intention to strike from the record all suggestions for court action presented under the guise of status reports and other documents the court deems non-responsive to its orders." Dec. 24, 2020 Order at 1, ECF No. 7003. Defendants' decision to present the link to the Falcon Report in a court document as, among other things, a means of communicating with the Receiver and her office, "with the hope that the report aids in their efforts," is in effect a "suggestion[ ] for court action," given that the Receivership is an arm of the court. Moreover, the reference to the Falcon Report is wholly outside the bounds of the notice required by the court's September 5, 2025 Amended Order, ECF No. 8765 at 8. For these reasons, in accordance with the December 24, 2020 order, defendants' Notice is STRICKEN.

/////

7

1 | Within five days, defendants shall file an Amended Notice that omits any references to or
2 | discussion of the Falcon Report.
3 |         IT IS SO ORDERED.
4 | DATED: October 15, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE