1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10    RALPH COLEMAN, et al.,                        No. 2:90-cv-0520 KJM SCR P

11                     Plaintiffs,

12         v.

13    GAVIN NEWSOM, et al.,

14                     Defendants.

15

16         On November 14, 2025, the Receiver presented a proposal outlining how she plans to

17    carry out the field auditing and CQIT testing required to assess compliance with the remedy in

18    this case and use the information gathered through auditing and testing to effect compliance on

19    the schedule set out in the Receiver Action Plan the court has approved.  *See* Receiver's Plan for

20    Resumption of Field Monitoring, CQIT Testing, and Development of a Rigorous and Sustainable

21    Quality Assurance Plan, ECF No. 8812.  The court gave the parties an opportunity to file

22    responses to the Receiver's auditing and testing proposal, which they did.  ECF Nos. 8815, 8816.

23    On December 11, 2025, the court held a special status to clarify with the Receiver certain

24    provisions of her proposal, and to allow the parties to provide further comments.  ECF No. 8830

25    (minutes).  Having carefully considered the Receiver's clarifications and the parties' comments,

26    the court approves the auditing and testing proposal subject to the clarifications provided below.

27    It also briefly addresses plaintiffs' concerns that the Receiver's proposal does not adequately

28    provide for continuity of monitoring and retention of institutional memory.

                                            1

**Clarifications**

First, the court confirms what it explained at the beginning of the special status on December 11th. The court did ask the Receiver if she requested the opportunity to present an amended proposal based on the parties' comments, as suggested by plaintiffs. But the Receiver advised the court she did not plan to submit an amendment. Tr. at 5, ECF No. 8835. The court understands the Receiver's position reflects her very regular communications with the parties to clarify and refine the proposal without altering its substance. Any amendment would quickly become stale and inevitably require further clarification, taking away from time best spent, in the Receiver's view, on getting the work done to ensure actual auditing and testing can begin as soon as possible in 2026. The court accepts the Receiver's position and has not required her to present an amended proposal.

In approving the proposal, the court memorializes its understanding of certain provisions, as confirmed by the Receiver at the special status:

— <u>Hiring of team to conduct auditing and testing</u>. The court previously determined the Receiver and the Special Master had reached an impasse in their efforts to agree on a plan for the Office of the Special Master to conduct the next round of field monitoring, with the Special Master reporting to the Receiver as contemplated by the Receiver Action Plan. The Special Master then conveyed his intent to resign his position, during a meeting the court had with the Special Master and his team. The Receiver reports she or a member of her team now has spoken to every member of the Special Master's team who expressed an interest in speaking with her. At the special status she represented she will be making offers to a person to serve as Senior Advisor and to members of the Special Master's team before the end of this year. The court understands the Receiver will be retaining persons with independent mental health expertise to serve as members of her auditing team. The court also understands the Receiver will have a team in place by early January 2026 to promptly prepare for and as soon as possible thereafter begin actual auditing and testing as envisioned by the proposal.

— <u>Start date for auditing and testing</u>. During the first quarter of 2026, the Receiver plans to train staff and begin auditing and testing a relatively small number of facilities. Auditing and

2

1   testing will continue and accelerate throughout the remainder of the year, without pauses for

2   lengthy report writing.  The Receiver plans to complete a first round by September 2026, with

3   additional auditing continuing into the fourth quarter of 2026 and the quarters after that.  While

4   the approach her team will deploy differs from the method previously used by the Office of the

5   Special Master, it is designed to cover the equivalent number of institutions in the equivalent

6   amount of time.  Her team will prepare streamlined reports on a rolling basis, which will allow

7   her to implement targeted remedial measures soon after identifying noncompliance.  In response

8   to plaintiffs' position that they should have continued access to institutions, *see, e.g.*, ECF No.

9   8816 at 9-11, the Receiver has made a commitment to facilitating plaintiffs' access commensurate

10  with past practices in this case.  The court expects she will continue her regular dialogue with

11  plaintiffs' counsel, as well as defendants' counsel, in the course of which she can clarify the

12  contours of plaintiffs' access in response to their concerns and in a manner that serves the best

13  interests of the case overall.

14       — Future suicide prevention audits.  While the Receiver's auditing proposal does not

15  specifically mention future suicide prevention audits, the Receiver clarified at hearing that her

16  auditing and testing proposal assumes robust continuation of suicide prevention audits, consistent

17  with the priority assigned this aspect of the *Coleman* remedy in the Receiver Action Plan.  Tr. at

18  7–8.

19       — Auditing of Department of State Hospitals (DSH).  In response to the plaintiffs' request

20  for the court to clarify the Receiver's responsibility for auditing within DSH, the Receiver agreed

21  it would be appropriate for the court to amend the order conferring authority upon her as Receiver

22  to expressly provide the authority to audit compliance with aspects of the remedy dependent on

23  DSH compliance.  Previously, the Receiver has reported to the court DSH's understanding it is

24  subject to auditing, and its agreement to cooperate in submitting to auditing.  At the special status,

25  defendants' counsel did not object in substance to the court's amending the scope of the

26  Receiver's authority in this way.  Tr. at 8.  The court is issuing a separate order shortly, amending

27  the Receiver's authority to cover auditing of DSH.

28  /////

3

— <u>Data remediation and data governance</u>.  The Receiver confirmed the parties' joint position is correct, that the most recent version of the CQIT Guidebook is dated May 2025.  Tr. at 10.  She clarified the training and end-user testing her proposal envisions, to ensure Key Performance Indicators (KPIs) function as needed, will take place early in 2026, given the parties' substantial familiarity with the important data remediation project compliance earlier this year.  *See, e.g.*, ECF 8815 at 4:23-5:4.  The Receiver also confirmed there will be no changes to KPIs or remediated data unless or until the court-approved KPIs have been tested and deployed in field auditing to assess their functionality.  Tr. at 9–10.  Only after at least one round of field auditing might the Receiver propose modification to KPIs, after consultation with the parties, if she believes modification is required to facilitate compliance with the remedy and achievement of durability in compliance.  The court understands the Receiver may propose modifications to KPIs, if any, at the same time she proposes compliance thresholds in or about April 2027.  *See* Receiver Action Plan at 25 (identifying date for recommending compliance thresholds).  Upon the court's approval of the compliance thresholds, and a final set of KPIs, the Receiver will then have a refined tool for carrying out the next phase of remediation, moving aggressively toward the goal of full and durable remediation within five to seven years, by 2032 at the outside.  *Id.* at 8, 15–16 (anticipated timeline for achieving compliance to allow case closure).

— <u>Responsibility for and mode of auditing</u>. The Receiver clarified her proposal's reference, for example, to "internal audits by MHSDS" and "independent audits by the Receiver's team" does not refer to duplicative or competing audits or the use of any auditing other than guided by the court-ordered remedy in this case.  *See* Tr. at 10–11.  Fundamentally, the auditing the Receiver plans will be independent in that it will be conducted by the Receiver's own team. To the extent her proposal references internal auditing conducted by MHSDS, that auditing will be subject to close oversight by the Receiver's auditors in the course of assessing transfer of the knowledge and skill sets required to conduct internal auditing and maintain durability.  *Id*.

— <u>Determining compliance and durability</u>. The Receiver clarified that her determination of sustained compliance with the remedy in any given institution will be made on a case by case basis.  Tr. at 12–13.  An institution may not achieve compliance with all aspects of the remedy at

the same time.  While the Receiver may be able to reduce the scope and frequency of audits of certain components of the remedy at a given institution, auditing may still continue of other aspects of the remedy, such as suicide prevention.  Ultimately, before the Receiver would notify the court she recommends termination of the case because full compliance has been achieved, she anticipates one final full round of auditing of all aspects of the remedy to ensure compliance has in effect been maintained.  *Id.*

— Reporting: The Receiver confirmed she will file quarterly reports with the court beginning in 2026, as required by the Receiver Action Plan.  Tr. at 6–7.  These reports will include detailed information on her auditing and auditing results.  The Receiver also will publish additional information between quarterly reports, on the MHSDS website and the Receiver's own website.

To address a minor housekeeping issue, the Receiver confirmed her use of the phrase "findings and recommendations" on page 9 of her proposal should be read as referencing prior court orders. Tr. at 14.

**Continuity of Independent Oversight and Retention of Institutional Memory**

Plaintiffs raise an important point about the need for continuity and retention of institutional memory.  Based on the clarifications provided above, the court is satisfied the Receiver will have a qualified team in place to carry out independent auditing in early 2026.  The schedule she contemplates is slightly delayed by the unexpected unavailability of the Office of the Special Master as previously constituted.  But the Receiver and her team have now undertaken a comprehensive and expedited process to designate independent professionals that will be well positioned to implement the Receiver's refined vision for auditing using the approach outlined in the Receiver Action Plan.  Her approach is designed to gather all the information required to test CQIT and measure compliance, and use that information strategically to improve compliance and achieve full implementation of the remedy.

Institutional memory matters too, of course — to the extent that memory informs future constructive effort laser-focused on finally delivering the promise to the individual members of the *Coleman* class embodied in the remedy the court adopted long ago.  The court and the

5

Receiver had fully expected the Office of the Special Master would work within the Receivership to continue monitoring adapted to the Receiver's Action Plan. That expectation has not been realized, not for lack of good faith time and effort. At this point, the Receiver indicates she is in the process of retaining members of the Office of the Special Master in forming the new team her auditing proposal describes. Because she currently is completing the employment-related processes required to finalize hiring, those details are not available at the time the court is issuing this order. But the court is satisfied they are forthcoming very soon. Ultimately, the court is satisfied she will have concluded hiring very soon to ensure qualified persons with deep, constructive institutional memory will be members of her auditing team.

Members of both plaintiffs' and defendants' teams of attorneys have their own knowledge of the case and what matters when it comes to full remediation. The court expects those attorneys to draw on their institutional knowledge as needed and in good faith, touched by the better angels of their nature, to meet and confer with the Receiver and her team if they believe some law of the case or past practice bears on the Receiver's plans. And of course the court's public docket memorializes the complete history of the case, at times in excruciating detail. The Receiver and her exceptionally qualified staff have full access to the docket and will continue to plumb it for the wisdom it offers to the person the court has placed in charge of the remedy's implementation.

The history of this case also is plagued with unhelpful memories, unnecessary litigation detours, and perceptions of other players that too often have ossified into obstinate barriers to forward progress. As the court has observed before, if all the resources poured into resisting compliance with court oversight and litigating soup to nuts had been applied in constructive effort and collaboration, this case could have been closed well before now. To the extent the dysfunctional history of this case has burdened it unnecessarily, that history should no longer hamper forward progress.

The Receiver comes to this case with a fresh perspective, with a clear vision and the energy and qualifications to realize it on behalf of the court. She understands the need to take account of the past while charting a course to a better future for those inmates within California's prisons whose right to constitutionally adequate mental health services the court has vindicated.

6

1    The court does not expect the road ahead to be without some bumps and hiccups.  But the court is

2    confident the Receiver is the right person for the job today.

3    **Conclusion**

4           The court accepts the Receiver's clarifications provided on the record at the special status

5    on December 11th, summarized above.  With these clarifications, having satisfied itself that

6    independent and rigorous auditing will begin early in 2026 and the Receiver is assembling an

7    independent auditing team that will move forward with an understanding of the history of this

8    case as required, the court APPROVES the Receiver's proposal.  In doing so, it seeks to honor the

9    memory of Ralph Coleman, whom the court had hoped would live to see the day the case bearing

10   his name could be closed because his goals had been achieved.  The court of course retains

11   ultimate authority to ensure the remedy in this case is delivered in full.  The Receiver,

12   implementing her proposal as an important part of the Receiver Action Plan, has the authority and

13   primary responsibility in the field to bring that day closer now.

14          This order APPROVES the Receiver's proposal filed on the court's docket at ECF No.

15   8812.

16          SO ORDERED.

17   DATED:  December 19, 2025.

18

19                                                        _____
                                                          UNITED STATES DISTRICT JUDGE
20

21

22

23

24

25

26

27

28

7