UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM SCR P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

The court issues this order just over a year after Ralph Coleman, for whom this case is named, passed away. The order, which addresses several outstanding issues, is a necessary step in moving this case closer to achieving Mr. Coleman's goals, with the hope the other members of the *Coleman* class will see the court-ordered remedy fully implemented soon.

On August 27, 2025, the court appointed a Receiver in this action, effective September 1, 2025. *See* Order Appointing Receiver, ECF No. 8752 at 24. The Receiver is responsible for providing "leadership and executive management of mental health care with the goal of fully implementing the court-approved and court-ordered remedies in this case to provide constitutionally adequate mental health services to all class members as soon as practicable." Further Amended Order Setting Out Powers and Duties of Receiver, ECF No. 8843 at 2.

When the court appointed the Receiver, it recognized the need for change in this case, given defendants' continuing inability to comply with the court-ordered remedy, and observed

1

1    that "progress [is] too slow and no end [is] in sight if the current framework remains in place."
2    ECF 8752 at 17.  In approving the Receivership Action Plan, the court, among other things,
3    directed the Receiver "after consultation with the Special Master, to present the court within sixty
4    days of the effective date of the Receiver's appointment a focused plan describing the
5    responsibilities the Special Master has borne that will transfer to the Receiver and addressing how
6    to most effectively and efficiently carry out ongoing field monitoring in the state's prisons in the
7    context of the Receivership as well as deployment of [the Continuous Quality Improvement Tool]
8    CQIT in the next round of monitoring."  Order Approving Receiver's Action Plan, ECF No. 8753
9    at 4.

10   On October 31, 2025, the court concluded the Receiver and Special Master had reached an
11   impasse and had exhausted the possibility of jointly identifying a proposal for the Receiver to
12   present to the court addressing the integration of the Special Master's office and members of his
13   team into the Receiver's office.  *See* Order, ECF No. 8805 at 2.  The court granted the Receiver's
14   request for an additional two weeks, until November 14, 2025, to develop a proposed plan for
15   "efficiently and effectively carry[ing] out ongoing field monitoring in the state's prisons … [and]
16   deployment of CQIT in the next round of monitoring."  *Id.* (alterations in original).  The Receiver
17   timely presented her proposed Plan for the Resumption of Field Monitoring, CQIT Testing, and
18   the Development of a Rigorous and Sustainable Quality Assurance Program ("Receiver's Plan")
19   to the court.  In developing her Plan, the Receiver "considered the well-known and contentious
20   history around CQIT and data remediation . . . [and] . . . a profound lack of trust in this case" and
21   set out an independent vision for field monitoring she believes will best meet the needs of this
22   case.  Receiver's Plan, ECF 8812, at 1.  The parties submitted their responses to that proposed
23   plan.  *See* ECF Nos. 8812, 8815, 8816.  On December 11, 2025, the court held a status conference
24   to discuss the Receiver's proposed plan.  *See* ECF 8830.  The court has now issued an order
25   approving the Receiver's plan subject to clarifications made of record at the status conference.
26   *See* ECF No. 8842.

27   In addition to the order approving the Receiver's Plan for continued field auditing and
28   CQIT, the court has issued a superseding Order Setting Out Powers and Duties of Receiver to

clarify the Receiver has the power and duty to audit the Department of State Hospitals, a responsibility previously assigned to the Special Master. ECF No. 8843. The court now addresses certain outstanding issues to take account of the other orders it has issued since appointing the Receiver, and to allow her to move forward with immediate implementation of her Action Plan.

**Consequences of Impasse Between Receiver and Special Master**

While the court had fully expected the Office of the Special Master to continue conducting field monitoring in this case, at least through the next round of monitoring, this expectation assumed that Office would merge into the Receiver's operation with the Special Master reporting directly to the Receiver, as contemplated by the Receivership Action Plan. ECF No. 8722-5 (Receiver's organizational chart). Given that the Receiver and Special Master were not able to agree on how to effect the anticipated merger and change in reporting relationships, the court has carefully considered all the options available to ensure the long-overdue remediation in this case is accomplished on the timetable the Receiver has proposed, which the court has approved. Among other options, the court has considered retaining the Special Master in his current position subject to the Order of Reference for at least the next round of monitoring; despite defendants' position the court could not do so, the court is persuaded it could. *See, e.g.*, ECF No. 8739 at 4–5 (defendant's assertion a court may not appoint both a Receiver and a Special Master to serve the court concurrently); *Brown v. Plata*, 563 U.S. 493, 516 (2011) (holding "multiple orders directing and adjusting ongoing remedial efforts" may be required in complex institutional reform actions such as this one); *Nunez v. N.Y.C. Dep't of Corr.*, 782 F. Supp. 3d 146 (S.D. N.Y. 2025) (appointing both "Remediation Manager" and "Monitoring Team"). The court also has considered directing the Receiver to retain all those working under the Special Master's supervision to staff the auditing she proposes, again for at least the next round. The court could issue such a directive to the Receiver, but doing so would be an exercise in micromanaging her operation in a way that could undermine her ability to act with the authority and fulfill the responsibility the court has given her.

/////

3

1       As the court has considered the best course forward, it has consulted regularly with the
2  Receiver and Special Master, who maintain a professional relationship, and received updates
3  from both.  Most recently, the court has received an update from the Receiver on the
4  communications she and her management team have had with members of the Special Master's
5  office.  The Receiver represents she personally has spoken with the team members who reached
6  out to her immediately upon learning of the Special Master's decision to submit his resignation to
7  the court.  These team members indicated a desire to speak with the Receiver about the potential
8  of working for her.  The Receiver also represents either she or a member of her management team
9  has spoken with all other members of the Special Master's office who responded to a follow-up
10 email.  The court understands the Receiver now is in the process of making offers to individuals
11 to join her team; she will seek from the court the appointment of a final list of individuals who
12 have agreed to accept her offer no later than the first full week of January 2026.
13      In addition to the Special Master, who the court appointed in 2007, ECF No. 2453, the
14 court has appointed all members of the Special Master's team by order.  A number of those
15 persons are court-appointed experts.  *See, e.g.*, ECF Nos. 670 (Metzner), 4857 (Hayes), 2216
16 (Dlugacz).  Others are court-appointed monitors and the Special Master's staff.  *See* ECF Nos.
17 5192 (citing appointment of Patricia Williams and Haunani Henry); *see also, e.g.*, ECF Nos. 931
18 & 2360 (orders authorizing staff appointments).  The court understands the Receiver anticipates
19 retaining persons from each category, which will ensure her team possesses institutional memory
20 in a way to facilitate constructive continuity. *See* ECF No. 8842 (order addressing continuity and
21 related issues).  The Receiver also will have the ability to contract with the Special Master or any
22 other member of his team as they remain available and as she deems necessary to fulfill her
23 responsibilities to the court.
24      While this court had hoped to be in a position to approve the Receiver's hiring of persons
25 who have been serving on the Special Master's team, the Receiver has advised she will not be
26 able to finalize her hiring requests before the first full week of January, when the undersigned will
27 no longer be serving as the assigned judge in this case, due to retirement.  Given the relatively
28 short time the Receiver has had to present her proposed field auditing plan to the court and the

4

1    time the court afforded the parties to comment on the plan, the court accepts that the Receiver has
2    moved as promptly as possible to identify members of her auditing team.  At the same time, given
3    the court's lengthy experience with this case and the knowledge it has developed of what is
4    needed for the remedy to take hold, the court has sufficient information to issue this order
5    providing the clarity all persons deserve — all those affected by the court's appointment of the
6    Receiver, acceptance of the impasse the Receiver and Special Master reached and the court's
7    recent approval of the Receiver's plan for continuation of monitoring as essential to assessing
8    compliance with the remedy and identifying ways to achieve full compliance as promptly as
9    possible.
10          In sum, the court has conferred on the Receiver powers and duties that encompass and
11   extend beyond those of the Special Master, after concluding the defendants were not going to
12   achieve compliance on their own with the Special Master's inherently more limited supervisory
13   authority.  *See* ECF Nos. 8843 (operative order on Receiver's duties), 8752 (order appointing
14   Receiver).  It is now the Receiver's responsibility to implement her Action Plan, which is
15   designed to achieve sustainable implementation of the court-ordered and court-approved relief in
16   this case and to finally resolve this case as promptly as possible.  Because the Receiver will be
17   retaining members of the Special Master's team, subject to court approval, the Office of the
18   Special Master will no longer have the capacity to begin another round of monitoring in early
19   2026.  Even if the Special Master could rebuild his office with new court-approved hires, a
20   separate monitoring function would be duplicative of the Receiver's efforts the court has
21   approved.  The court deeply appreciates all the effort the Special Master and his team have
22   devoted to this case, diligently and with great professionalism, over many years.  The court
23   observes in particular that two individuals, Special Master Lopes himself and Jeffrey Metzner,
24   first joined the Office of the Special Master in 1996 and have devoted a significant part of their
25   professional lives to implementing the court-ordered remedy.  Indeed, the Special Master and his
26   team have brought this case to the point where the next round of auditing can proceed apace, with
27   a focus on testing of the essential CQIT tool and data remediation as needed to ensure CQIT can
28   become the primary method of measuring compliance, transparently, paving the way to ultimate

1    termination of the case — once compliance is demonstrated durably.  *See, e.g.*, ECF No. 8722 at
2    13–14 (Receiver Action Plan discussing importance of CQIT).  With profound gratitude and
3    respect, and as a reflection of the successful culmination of the Special Master's efforts, the court
4    vacates the Order of Reference establishing the Special Mastership in this case, effective
5    January 30, 2026.  *See* Order of Reference, December 11, 1995, ECF No. 640.  Except as
6    described below, as of the close of business December 31, 2025, the Special Master's services as
7    provided by that order are no longer required by the court on this case.  At the same time the
8    court issues this order, it requests that Chief Judge Troy L. Nunley schedule a special session of
9    court in January 2026 to recognize the important work the Special Master and his team have
10   performed on behalf of the court.

        **Court-Appointed Experts**

As noted, the court has appointed a number of experts to serve as a member of the Special Master's team.  While these experts have worked closely with the Special Master, they have their own status as independent experts with a high level of expertise and are recognized as leading professionals in their respective fields. Some of these persons work subject to the court's order conferring authority upon them, as noted above.  *See* ECF Nos. 670, 4857, 2216, 5193.  Others are court-appointed monitors and members of the Special Master's staff.  *See* ECF Nos. 931 & 2360, 3858, 6496.  All are valued members of his team, and have provided essential service during the life of this case and the terms of their appointment.  Given their roles and qualifications, the court has carefully considered how to handle these appointments as well.  With the understanding, again, that the Receiver will be retaining a number of these persons, the court has concluded the best way to clarify the record, for them and the successor judge, and to ensure the Receiver can move forward to implement her Action Plan, is to vacate these orders of appointment as well as provided below.

        **Other Tasks Performed by Special Master**

The court also has deployed the Special Master in a range of other ways over the years, requesting and directing him to fulfill any number of tasks the court deemed essential to effecting the remedy in this case.  The court now vacates all other orders assigning responsibility for these

1  tasks to the Special Master. These orders either have been superseded by the Receiver's
2  appointment and the court's approval of the Receivership Action Plan or are addressed by recent
3  orders referring specific issues to the Receiver. For example, in a prior order the court directed
4  the Special Master to continue to monitor and assess CDCR suicide prevention efforts. *See, e.g.,*
5  ECF No. 4693. Addressing CDCR's suicide prevention efforts is now the responsibility of the
6  Receiver. *See* Action Plan at 25 (identifying suicide prevention, including completing
7  implementation of outstanding recommendations from the Special Master's 22nd Round
8  Monitoring Report, among the Receiver's strategic goals and objectives); *see also* ECF No. 8637
9  (issues presented by joint report re CDCR's annual suicide report proposal referred to Receiver-
10 nominee to address in Receiver Action Plan).
11      The court also has recently referred to the Receiver issues previously assigned to the
12 Special Master. As of September 1, 2025, the court conferred on the Receiver the authority to
13 direct expenditure of funds in the Special Deposit Fund the court previously approved. *See* ECF
14 No. 8753 at 7. Previously, defendants were required to obtain Special Master approval for
15 payments from the Special Deposit Fund. *See* ECF Nos. 8388, 8422. These are but a few
16 examples of the many issues the court has referred to the Special Master, given his capacity and
17 qualifications to address a broad range of issues. *See also* ECF Nos. 5343, 8829 (adopting
18 Special Master's 31st Round Monitoring Report Part A and directing Receiver and the Director of
19 DSH to finalize and issue policies, memoranda, and procedures regarding admission of *Coleman*
20 class members to DSH programs, including by amending the existing Memorandum of
21 Understanding); ECF No. 2119 (providing for monthly meetings and coordination with other
22 prison class action cases including *Plata*); ECF No. 4693 (providing for suicide
23 prevention/management work group and ongoing monitoring; providing updated clarification
24 regarding *Plata* Receiver and *Coleman* Special Master roles in court coordination process); ECF
25 No. 5212 (providing for implementation and monitoring of CDCR's CCCMS-Long Term
26 Restricted Housing Unit Plan); ECF No. 5196 (providing for implementation of use of force
27 policies and procedures with ongoing monitoring); ECF No. 6705 (Special Master report on data
28 system sharing); ECF No. 7608 (providing for defendants to submit plan for additional structured

treatment, with ongoing monitoring); ECF No. 7456 (providing for resolution of outstanding issues related to whether substantive provisions of certain policies still need to be reflected in CQIT); ECF No. 7597 (providing for implementation of systemwide measures to address sleep deprivation measures in response to welfare checks in segregated housing units, with ongoing monitoring); ECF No. 8116 (providing for flexibility in mode of monitoring, with institutional visits, paper review, or some combination acceptable, without leave of court); ECF No. 8242 (directing roll-out of START-NOW treatment modality for class members with personality disorders at San Quentin State prison and Valley State Prison, with ongoing monitoring); ECF No. 8593 (providing for Special Master to report on use of telemental health in prison setting and whether modification of definition of on-site work to include part-time remote work, reflected in Hybrid Work Policy, may impact implementation of the Unified Policy, with possibility of amendments to Policy to address concerns noted by magistrate judge in findings and recommendations).  A few of the court's prior orders directed to streamlining the Special Master's conduct of his monitoring rounds and, more recently, providing for the Special Master to work with the Receiver are now moot.  *See* ECF No. 8474 (providing process for addressing defendants' objections to Special Master's requests for documents during field monitoring); ECF No. 8574 (providing for Receiver-nominee to coordinate with Special Master to develop Receiver Action Plan); ECF No. 8608 (providing for Special Master to provide Receiver-nominee with clerical support).  All of these orders, to the extent they refer tasks to the Special Master, are vacated.

        To the extent the parties believe there is ambiguity regarding whether a prior court order has been superseded by the Receiver's appointment or recent court orders referring issues to the Receiver, the parties are directed to raise those issues with the Receiver in the first instance.  The Receiver is directed to attempt to reach agreement with the parties to resolve these issues.  The Receiver may seek further clarification or direction from the court if she deems it necessary. While the court hopes this process will preclude cluttering of the docket of this case with filings by the parties raising issues they should be able to resolve working in good faith with the

/////

Receiver, the parties are of course free to raise issues with the court subject to their obligations under Federal Rule of Civil Procedure 11 and the Local Rules of this court.

**Transfer of Information and Records**

In order to ensure completion of a smooth transition of functions and records of the Office of the Special Master, the Receiver and Special Master are directed to complete the following tasks, which are the only remaining tasks the court requires of the Special Master:

  A. The Special Master will transfer to the Receiver by January 30, 2026, all case-related information and documents, whether in paper or electronic format, including those not filed with the court. These documents will include all letters and communications from employees, advocates, and others who have raised case-related concerns with the court over the life of this case that the court referred to the Special Master. *See, e.g.*, ECF Nos. 5435 (order noting court in its discretion forwards certain documents to Special Master), 7925 (minute order referring to letters).

  B. The Receiver will maintain all information and documents received from the Special Master until the end of the case, at which point the court will determine their disposition.

  C. Upon completion of the work of transferring case-related information and documents to the Receiver the Special Master will submit a final invoice documenting the reasonable time and expense of this task.

  D. The Receiver may, at her discretion, meet with the Special Master in person or by videoconference or telephone to complete any transition items as she deems necessary.

**Conclusion**

For the reasons provided above, the court ORDERS as follows:

The Receiver is directed to present to the court no later than January 9, 2026, those persons from the Special Master's team for whom she seeks court approval to retain as staff to the Receiver.

The Receiver and Special Master are directed to work together to ensure transfer of all case-related information and documents from the Office of the Special Master by January 30,

1   2026, with the Special Master receiving compensation for the time and effort in ensuring the
2   transfer.
3       The court vacates the Order of Reference appointing the Special Master, ECF No. 640,
4   and all other orders referring tasks to the Special Master, with this part of this order taking full
5   effect by close of business on January 30, 2026.
6       The court vacates its appointment of other persons who have served as members of the
7   Special Master's team, *e.g.*, ECF Nos. 670, 931, 2216, 2360, 3858, 4857, 5193, 6496, also
8   effective January 30, 2026, or the date any such person is formally retained by the Receiver,
9   whichever is earlier.
10      To the extent orders referring tasks to the Special Master provide for work that is
11  continuing, those tasks are referred immediately to the Receiver to fulfill in the course of
12  implementing the Receivership Action Plan.  The Receiver shall provide to the court proposed
13  orders she deems are necessary to clarify referral of these tasks, if any, by February 28, 2026.
14      The court enters this order as a necessary step in furthering the change the court set in
15  motion in appointing the Receiver, to allow the Receiver to move expeditiously to implement her
16  Action Plan.  In signing off in this way, the court continues to urge the parties to give their all to
17  "giv[ing] the Receiver and the [Action] Plan a chance."  ECF 8752 at 19.
18      IT IS SO ORDERED.
19  DATED:  December 29, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE