ROB BONTA, State Bar No. 202668
Attorney General of California
NEAH HUYNH, State Bar No. 235377
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 210-7318
 Fax:  (916) 324-5205
 E-mail:  Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
LAWRENCE M. CIRELLI, SBN 114710
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS-GONZÁLEZ,
SBN 321994
MOLLIE LEVY, SBN 333744
425 Market Street, 26th Floor
 San Francisco, California 94105
 Telephone:   415-777-3200
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | Case No. 2:90-CV-00520-TLN-SCR<br><br>**DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS [ECF NO. 8888]**<br><br>Judge:  Hon. Troy L. Nunley |

## INTRODUCTION

The Special Master filed his Thirtieth Round Monitoring Report – Part B: Special Master's Monitoring Report on the Inpatient Health Care Programs at the California Department of State Hospitals (30B Report) on December 15, 2023.[1]  (ECF No. 8085.)[2]  Defendants filed objections

---

[1] Although the precise period of review is difficult to discern from the 30B Report, it must have covered some period of 2022 and possibly early 2023.  The Special Master provided the parties with a draft of the 30B Report on May 31, 2023. (ECF No. 8085 at 10.)  During roughly the same period, Defendants were conducting the 2022-2023 Unmet Needs Assessment, which confirmed that there was no unmet need for inpatient beds.  (ECF No. 7865-3 at 9; Nov. 15, 2023 Order, ECF No. 8066 at 3; ECF No. 8085 at 20-21.)

[2] Defendants cite to the record using the docket number as a short citation form throughout this response.  References to page numbers in documents filed in the court's

(continued…)

1

Defs.' Objection F&Rs [ECF No. 8888] (2:90-cv-00520 KJM-SCR)

22339339.1

to the 30B Report on January 4, 2024 (ECF No. 8106), and Plaintiffs filed a response to Defendants' objections on January 23, 2024 (ECF No. 8117).  At a status conference on December 11, 2025, Plaintiffs noted the Court had not resolved the objections to the report. (Order, ECF No. 8839 at 1.)  Thereafter, the Court referred the matter to Magistrate Judge Riordan for issuance of findings and recommendations and directed the parties to meet and confer and file a joint statement explaining their current positions regarding the previously submitted objections.  (Dec. 19, 2025 Order, ECF No. 8839 at 1-2.)  In their joint statement, the parties agreed that the Court should refrain from making any orders recommended by the 30B Report. (ECF No. 8851 at 2.)

Magistrate Judge Riordan filed his findings and recommendations (F&Rs) on April 28, 2026, which adopted the position that the Court should refrain from making the 30B Report's recommended orders: "At this stage, the Court should await further findings from the Receiver as part of her first auditing round with respect to what may currently be required to complete a durable remedy at the DSH programs that provide care to class members before entering any additional orders directed to DSH."  (F&Rs, ECF No. 8888 at 3.)

Thus, the F&Rs only resolve the factual disputes around Defendants' objections to the 30B Report.  Defendants object to two findings of the F&Rs—relating to the maximum staffing vacancy rate and utilization of DSH beds—to ensure that their positions are clear based on their reading of the F&Rs.

**BACKGROUND**

Before July 1, 2017, the Department of State Hospitals (DSH) (formerly the Department of Mental Health) operated three of the five  psychiatric inpatient units within CDCR's prisons.    In 2006, the Court ruled that DSH must be added as a defendant in *Coleman* for the just, orderly, and effective resolution of the case, and because it plays a critical role in creating sustainable and effective solutions for inpatient care within CDCR.  (June 28, 2006 Order, ECF No. 1855 at 2.) The Court further found that DSH's "attempts to remedy the shortage of inpatient beds has been

Electronic Case Filing (ECF) system are to the page numbers assigned by the ECF system and located in the upper right-hand corner of the page.

2

Defs.' Objection F&Rs [ECF No. 8888] (2:90-cv-00520 KJM-SCR)

22339339.1

marked by delay and difficulty." (*Id.*)  Thus, DSH was not added as a defendant based on any finding or ruling that its hospitals violated the constitutional rights of *Coleman* class members.

On July 1, 2017, CDCR took over operation of three of the psychiatric inpatient programs in its prisons previously operated by DSH.  (Special Master's 27th Round Report, ECF No. 5779 at 24-25.)  DSH continued to provide mental healthcare to *Coleman* patients in three of its state hospitals.  Moreover, the Court's primary bases for adding DSH as a defendant—a lack of sufficient inpatient beds and untimely transfers to inpatient care—no longer exist today.  CDCR's 2022-2023 Unmet Needs Assessment confirmed that there are sufficient inpatient beds to serve the needs of *Coleman* patients.  According to the Court:

> The record demonstrates the UNA Report reflects a very comprehensive assessment conducted both diligently and collaboratively by all stakeholders.  As a consequence, the Report is persuasive in its finding that CDCR has enough inpatient beds and mental health crisis beds (MHCBs) to meet class member need for these levels of care.

(Nov. 15, 2023 Order, ECF No. 8066 at 3.)  And CDCR has successfully addressed the waitlist and timely transfers issue and has had a near perfect record of timely transfers of *Coleman* patients to inpatient care since July 2023.[3]

## OBJECTIONS

### I.   MAXIMUM VACANCY RATE

The 30B Report recommended that the Court order DSH to comply with a maximum ten-percent-vacancy-rate requirement, purportedly already contained in DSH's staffing plan.  (ECF No. 8085 at 78.)  Defendants objected to the 30B Report on the grounds that neither DSH's

---

[3] *See* Defendants' monthly Census, Waitlists, and Transfer Timelines Compliance Reports for Inpatient Mental Health Care covering the period from July 2023 through March 2026.  (ECF Nos. 7921, 7947, 8014, 8067, 8086, 8109, 8132, 8158, 8199, 8237, 8280, 8333, 8357, 8402, 8432, 8464, 8495, 8516, 8547, 8571, 8603, 8641, 8679, 8705, 8734, 8774, 8796, 8813, 8834, 8849, 8859, 8867, 8885; *see also* the Receiver's reports for October 2025 through March 2026: CDCR Mental Health Crisis Bed Patient Census and Waitlist Report, CDCR Report on timeline for referrals that were rejected, rescinded or paroled, CDCR Psychiatric Inpatient Timelines Compliance Report, and CDCR Psychiatric Inpatient Programs (PIP) Coleman Patient Census and Waitlist Report at https://cchcs.ca.gov/reports/; *see also* Nov. 15, 2023 Order, ECF No. 8066 at 5 ("The court is encouraged by the progress defendants have made in returning to earlier gains in timely access to inpatient care.")

Defs.' Objection F&Rs [ECF No. 8888] (2:90-cv-00520 KJM-SCR)

22339339.1

staffing plan, the Program Guide, nor any Court orders require DSH to maintain a maximum ten-percent vacancy rate for mental-health staffing. (ECF No. 8106 at 4-5.) Indeed, the Special Master's Report would not have recommended such an order if it already existed.

Notwithstanding these facts, the F&Rs state that to "the extent [Defendants'] objection is construed as contention that there is no *legal or factual* basis for the Special Master's reliance on a ten percent vacancy rate in the DSH Staffing Plan to support his recommendation, it is plainly wrong." (ECF No. 8888 at 5 (emphasis added).) In support of this statement, the F&Rs cite dicta from a previous Court order stating that DSH's staffing plan "shows it assumes that a 10 percent vacancy rate applies, and that DSH has been largely successful in meeting that target." (Aug. 23, 2023 Order, ECF 7923 at 12.) This dicta alone is insufficient to support the Magistrate Judge's finding, which is contradicted by the facts.

Importantly, the DSH staffing plan made no reference whatsoever to a maximum ten-percent vacancy rate. Instead, in referencing staffing levels for certain classifications, it noted that DSH exceeded ninety percent. (DSH Staffing Plan, ECF No. 7078-1 at 2-3.) Had DSH intended to mandate a maximum ten-percent vacancy rate, it would have explicitly included that requirement in its staffing plan, and notably, none exists. The Magistrate Judge should not read language into the staffing plan where none exists.

Given that the Court has never issued an order mandating a maximum ten-percent vacancy rate for DSH, Defendants dispute that the DSH staffing plan either contained such a requirement or assumed DSH was legally required to comply with a maximum ten-percent vacancy rate. While a reference to staffing levels exceeding ninety percent in the DSH staffing plan could arguably provide *some* "basis" for the 30B Report's conclusion that the staffing plan assumes a maximum ten-percent vacancy rate, this passing reference is insufficient evidence—under a *de novo* standard of review[4]—that DSH's plan mandated a maximum ten-percent vacancy rate or that such vacancy rate is necessary to provide adequate mental healthcare to *Coleman* patients.

---

[4] Defendants maintain their position that, under Federal Rule of Civil Procedure 53(e)(2), the Court is required to assess the Special Master's findings and recommendations under a *de novo* standard of review. (*See* ECF No. 8503 and ECF No. 8851 at 2-4.)

4

Defs.' Objection F&Rs [ECF No. 8888] (2:90-cv-00520 KJM-SCR)

22339339.1

Although the F&Rs do not recommend that the Court adopt the 30B Report's recommendation for an order mandating a maximum ten-percent vacancy rate, Defendants note that the Court has never made factual findings or issued any ruling that DSH has failed to provide constitutionally adequate mental healthcare to the *Coleman* patients in its hospitals, much less that DSH hospital staffing levels have resulted in a constitutional violation.[5]  In fact, the former Special Master and Plaintiffs have long sought to increase the number of patients transferred to DSH because of the exceptional, high-quality care provided to *Coleman* patients in its hospitals, a fact that belies any claim that DSH hospitals do not provide constitutionally adequate care.  (*See, e.g.*, ECF No. 8085 at 19 (extolling the benefits of DSH treatment); ECF No. 7969 at 12 (advocating for more DSH referrals).)

Absent any finding that DSH has failed to provide constitutionally adequate care to *Coleman* patients, any order to maintain a specific staffing rate—or any other order for prospective relief—would exceed the Court's authority under the Prison Litigation Reform Act. 18 U.S.C. § 3626(a)(1)(A) (prospective relief in a civil suit involving prison conditions must be "necessary to correct the violation of a Federal right" and must be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right"); *see also id*. at § 3626(b)(2) (requiring immediate termination of prospective relief if such relief was granted in the absence of necessary findings of unconstitutionality).

## II.    UTILIZATION OF DSH BEDS

Defendants objected to the 30B Report's conclusion that DSH beds were underutilized during the period of review.  In fact, under the policies existing at the time of review, Defendants referred all appropriate patients who met the criteria for placement in DSH to the DSH inpatient programs.  (ECF No. 8106 at 17; ECF No. 8106-3 at ¶ 8; ECF No. 7969 at 5-11.)  Moreover, the

---

[5] The Special Master began monitoring the DSH programs in 2013 and the Court has since issued the following orders adopting most of the findings in the Special Master's monitoring reports on the DSH programs: ECF No. 4925 (adopting 9/24/13 Report); ECF No. 5188 (adopting 5/30/14 report) ECF No. 5573 (adopting the 5/25/16 report); ECF No. 7581 (adopting the 8/30/18 report); ECF No. 7605 (adopting the 1/28/21 report); ECF No. 7688 (adopting the 10/14/22 report); and ECF No. 8829 (adopting the 7/30/25 report).

Defs.' Objection F&Rs [ECF No. 8888] (2:90-cv-00520 KJM-SCR)

22339339.1

2022-2023 Unmet Needs Assessment confirmed that during this same period, there was no unmet need for inpatient care.  (ECF No. 7865-3 at 9; ECF No. 8066 at 3:10-12; ECF No. 8085 at 20-21.)  The UNA's conclusion that there was no unmet need for inpatient care is further supported by the Special Master's oversight and monitoring of inpatient referrals through a small workgroup with CDCR and DSH representatives that had been regularly meeting since the onset of the COVID-19 pandemic, which facilitated the Special Master's close monitoring of referrals to DSH hospitals.  (*See* ECF No. 8085 at  25.)

The F&Rs found that the 30B Report's conclusion that DSH beds were underutilized is accurate because of lower referral rates and a lower *Coleman* patient census during the period of review.  (ECF No. 8888 at 15.)  Defendants object to this finding.  The 2022-2023 Unmet Needs Assessment showed that the decrease in admissions to DSH programs during this period was commensurate with the overall decrease in inpatient referrals beginning in 2020, as demonstrated in the data presented in the Unmet Needs Assessment.  (ECF No. 7865-3 at 46-47.)  The fact that the number of patients who can be safely treated in DSH hospitals may rise or fall over time has no bearing on whether DSH beds are underutilized.  So long as all *Coleman* patients who meet the requirements for treatment in DSH hospitals are referred and admitted to DSH, there is no underutilization of DSH beds regardless of the number of filled *Coleman* beds.  In other words, the goal is not to fill all DSH *Coleman* beds.  The goal is to ensure that all patients who meet applicable requirements for treatment at DSH are identified, referred, and admitted to DSH.

The F&Rs also cited a Court order that favorably referenced new trial processes that DSH implemented in 2023—after the Unmet Needs Assessment was completed—in an effort to further ensure that all patients who could possibly be safely treated at DSH were identified and referred.  (ECF No. 8888 at 15.)  According to the F&Rs, the implementation of these trial processes demonstrates that "*during the review period* there was an underutilization of DSH-Atascadero low custody beds for class members and that more work was necessary to fully utilize these beds, a key component of the remedial structure in this action."  (*Id.* (emphasis added).)  But conclusions about the previous utilization of DSH beds should not flow from later efforts to develop additional innovative policies to ensure appropriate bed utilization.  This reasoning seems

6

Defs.' Objection F&Rs [ECF No. 8888] (2:90-cv-00520 KJM-SCR)

22339339.1

to fault Defendants for making policy and process improvements.  Moreover, the increase in utilization after the implementation of the trial processes is not evidence of underutilization under the controlling policies and processes during the 30B Report's period of review.  Accordingly, Defendants object to the F&R's finding that DSH beds were underutilized during the period of review and further object to the extent the F&Rs conclude that the existence of unfilled *Coleman* beds demonstrates underutilization.

## CERTIFICATION

Defendants' counsel certifies that he reviewed the following orders in preparing this filing: ECF Nos. 640, 1383, 1855, 2236, 4925, 5188, 5573, 5711, 6639, 7064, 7108, 7581, 7605, 7608, 7688, 7742, 7766, 7806, 7854, 7923, 7967, 8066, 8752, 8829, 8839, 8843, and 8846.

Dated: May 12, 2026                              Respectfully submitted,

                                                 ROB BONTA
                                                 Attorney General of California
                                                 NEAH HUYNH
                                                 Senior Assistant Attorney General


                                                 */s/ Damon McClain*
                                                 DAMON MCCLAIN
                                                 *Attorneys for Defendants*

Dated: May 12, 2026                              HANSON BRIDGETT LLP

                                                 */s/ Samantha D. Wolff*
                                                 PAUL B. MELLO
                                                 SAMANTHA D. WOLFF
                                                 DAVID C. CASARRUBIAS-GONZÁLEZ
                                                 *Attorneys for Defendants*

CF1997CS0003

7

Defs.' Objection F&Rs [ECF No. 8888] (2:90-cv-00520 KJM-SCR)

22339339.1